# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
### Southern Division

| | | |
|---|---|---|
| **BEYOND SYSTEMS, INC.** | \* | |
| | \* | |
| **Plaintiff,** | \* | |
| | \* | |
| v. | \* | Case No. PJM 08-cv-0921 |
| | \* | |
| **WORLD AVENUE USA, LLC** | \* | |
| **Successor by merger to NIUTECH, LLC.,** | \* | |
| **dba "TheUseful" et al.** | \* | |
| | \* | |
| **Defendants.** | \* | |
| | \* | |

## PLAINTIFF'S SUPPLEMENTAL OPPOSITION TO DEFENDANT WORLD AVENUE HOLDINGS, LLC's MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(2) AND PARTIAL MOTION TO DISMISS THE CLAIMS BARRED BY THE STATUTE OF LIMITATIONS.

Plaintiff BEYOND SYSTEMS, INC. ("BSI"), by and through undersigned counsel, hereby files this Supplemental Opposition to Defendant WORLD AVENUE HOLDINGS, LLC ("HOLDINGS") Motion to Dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction over the Defendant HOLDINGS, as well as to HOLDINGS' Partial Motion to Dismiss the Amended Complaint due to the running of the Statute of Limitations. As discussed more fully below, HOLDINGS' Motion must be denied in its entirety.

The Plaintiff has alleged sufficient facts that would permit this Court to exercise personal jurisdiction against HOLDINGS. Assuming the truth of the allegations made by the Plaintiff,

1

there is now a genuine dispute as to the facts supporting the exercise of jurisdiction and BSI has exceeded the prima facie showing required by this Court.

Similarly, there is no basis in fact or in law for granting HOLDINGS' Partial Motion to Dismiss the Amended Complaint as to all emails received prior to December 22, 2005. As the harm to be prevented by the MD-CEMA is ongoing, the three-year statute of limitations period has not yet begun to run. In addition, the number of EMAILS AT ISSUE to be attributed to HOLDINGS for purposes of liability and damages is still in dispute. As that issue is not yet ripe for resolution, Defendant's Partial Motion to Dismiss should also be denied.

For purposes of this Motion, BSI incorporates by reference the contents, facts, and exhibits from PLAINTIFF's initial Opposition to HOLDINGS' MOTION TO DISMISS, as well as from BSI's Opposition to WAUSA's Motion to Dismiss.

## I. FACTUAL BACKGROUND

This lawsuit arises from the transmission and receipt of unsolicited commercial email in violation of the Maryland Commercial Electronic Mail Act. *See* Maryland Code Annotated, Commercial Law §14-3001 et seq. (hereinafter, "MD-CEMA") as well as the Florida Commercial Electronic Mail Act, Florida Statutes, Chapter 668 and in particular, §§668.603, and 668.606 (hereinafter, "FL-CEMA").

On July 14, 2009, the Parties appeared before this Court for oral argument regarding HOLDINGS' Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction and Partial Motion to Dismiss on the Grounds that the Claims are Barred by the Statute of Limitations. *See* Docket Entry No. 80 (Hearing held on July 14, 2009 re: Docket Entry No. 55).

On July 15, 2009, the Court issued an order at Docket Entry No. 81 stating in part:

1. The Court DEFERS ruling on World Avenue Holding's Motion to Dismiss Amended Complaint [Paper No. 55] pending jurisdictional discovery;

2. Plaintiff shall SERVE World Avenue Holdings with jurisdictional discovery requests within ten (10) days from the date of this Order, with Defendant having thirty (30) days thereafter to respond; and

3. Plaintiff shall FILE a supplemental response to World Avenue Holding's Motion to Dismiss within sixty (60) days from the date of this Order, and Defendant shall file any reply within thirty (30) days thereafter.

On July 24th, BSI propounded upon HOLDINGS interrogatory requests, document requests, a request to enter and inspect the PREMISES, and a Corporate Deposition Notice Upon WAUSA and HOLDINGS, all in support of jurisdictional discovery.

On August 24th, HOLDINGS served its responses upon BSI for its interrogatory requests and its document requests. HOLDINGS objected to the Notice of Inspection and the Corporate Deposition of WAUSA.

On August 26th, BSI conducted a FRCP 30(b)(6) corporate deposition of HOLDINGS Vice President of Finance and Corporate Controller of HOLDINGS at the Law Offices of Greenberg Traurig in Fort Lauderdale Florida.

On September 7th, BSI served an Amended Notice of Corporate Deposition under FRCP 30(b)(6) of HOLDINGS.

On September 9th, HOLDINGS filed a Motion to Quash the Amended Notice of

Corporate Deposition of HOLDINGS. *See* Docket Entry No. 104.

      A.      **THE PARTIES**

BSI is a Maryland-based Internet Service Provider ("ISP") providing email and Internet services to its customers, which include both individuals and businesses. BSI is a Maryland corporation and an "interactive computer service provider" as defined under MD-CEMA and an "interactive computer service" under FL-CEMA, providing computer services and Internet access to multiple users. *See* Amend. Compl. ¶ 2.

HOLDINGS is a limited liability company formed in 2006 under the laws of the State of Delaware, with its principal place of business in Sunrise, Florida. *See* Def.'s MTD (Declaration of Fidel D. Dhana), at ¶ 4.

In the Amended Complaint, Defendant NIUNIU JI, as well as the other entities owned, operated, and/or controlled by JI, are referred to collectively as "WORLD AVENUE." *See* Amend. Compl. ¶ 29; *see also* www.theUseful.com. The WORLD AVENUE entities controlled by JI include World Avenue U.S.A., LLC ("WAUSA"), World Avenue Holdings, LLC ("HOLDINGS"), Niuniu Ji ("JI"), as well as some of the as yet unnamed JOHN DOE defendants. *See* Amend. Compl. ¶¶ 5-6 & 29.

      B.      **THE EMAILS AT ISSUE**

Between July 20, 2004 and September 3, 2005, BSI received on its computer servers in Maryland over 68,300 unsolicited commercial electronic mail messages promoting products or services offered by WORLD AVENUE, including HOLDINGS, and its agents.

Since July 3, 2005 up to and including the present day, BSI has received thousands more of these messages from DEFENDANTS, including HOLDINGS. *See* Amend. Compl. ¶ 62-63. BSI did not solicit or opt-in to receive any of the EMAILS AT ISSUE, and had no business relationship with WORLD AVENUE, including HOLDINGS, its affiliates or agents. *See* Amend. Compl. ¶ 64.

All of the 68,300 EMAILS AT ISSUE in the present case promote DEFENDANTS, including HOLDINGS, trade names, domain names, and/or websites that promote DEFENDANTS' products and/or services. *See* Amend. Compl., ¶¶ 67-68 & Ex. 23 (Aff. of Paul A. Wagner Regarding Court of Emails Containing Certain Business Names and Domain Names).

In Exhibit 23, the Affidavit of Paul A. Wagner, the president of Plaintiff Beyond Systems, Inc., produced a list of search terms that quickly demonstrates how prevalent the DEFENDANTS, including HOLDINGS, trade names and/or domain names are amongst the EMAILS AT ISSUE in this case. Each of these names identifies with a unique website or domain name that belongs to or is controlled by DEFENDANTS, and in particular HOLDINGS. *See* Amend. Compl. ¶ 68.

C.  **HOLDINGS' CONDUCT AND ACTIVITY IN MARYLAND**

In the Amended Complaint, BSI alleges that HOLDINGS, directed, controlled, and eventually ordered that the EMAILS AT ISSUE be sent to the BSI on the dates that they were received by the PLAINTIFF, beginning before July 20, 2004. *See* Amend. Compl. ¶ 68.

5

As a world-wide internet marketing business, HOLDINGS generated, directed, and paid for the gathering of business leads for its clients through the use of third party "affiliates" and/or "publishers." *See* Amend. Compl, ¶ 43. According to WORLD AVENUE's own website, it describes itself as a "Web-based marketing and technology company" generating "3 million leads each month." Amend. Compl., ¶¶ 46-47 & Ex. 22A.

According to Fidel D. Dhana, the Vice President of Finance and Corporate Controller of HOLDINGS, World Avenue Holdings is the sole member of World Avenue USA, LLC, also known as "TheUseful". *See* Exhibit A, Dhana Depo., p 33:2-3. It serves as a "holding company" for all HOLDINGS subsidiaries, as well as providing "management oversight" to those subsidiaries. Ex. A, Dhana Depo., p. 33:19-21. Those subsidiaries include TheUseful, LLC; World Avenue USA, LLC; World Avenue Ireland LTD, LLC; and IAD express, to name a few. Ex. A, Dhana Depo., p. 32:20-23. HOLDINGS has six employees. Ex. A, Dhana Depo., p. 30:2-4.[1]

Dhana stated that HOLDINGS provided "management oversight" to its subsidiaries, which meant "providing strategic direction on high level management." Ex. A, Dhana Depo., p. 34:4-6. "Strategic direction" meant "high level coordination as to what the entities are trying to achieve in the marketplace." Ex. A, Dhana Depo., p. 33:19-21. However, Mr. Dhana was unable to provide an example as to the "strategic direction" that HOLDINGS allegedly provided. *See* Ex. A, Dhana Depo., p. 34:12-13.

"High level coordination" meant, "At a very high level how each of the entities perform, what duties to they perform, and how they interact with each other." Ex. A, Dhana Depo., p. 34:16-18. HOLDINGS gets paid for this management oversight. Ex. A, Dhana Depo., p. 35:2-3.

HOLDINGS meets with its subsidiaries on an "as needed basis." Ex. A, Dhana Depo., p. 39:19-20. This might include if a subsidiary wanted to procure goods and services over $ 10,000, then someone from HOLDINGS would be involved in the decision to disburse the funds. Ex. A, Dhana Depo., p. 40:3-6. However, there are "no limits" to the disbursements that HOLDINGS oversees. Ex. A, Dhana Depo., p. 58:9-14. Dhana was aware that the HOLDINGS subsidiary TheUseful, LLC was an internet marketing company, Ex. A, Dhana Depo., p. 40:13-14; and was aware "at a very high level" how TheUseful markets to its customers. Ex. A, Dhana Depo., p. 41:8-9.

HOLDINGS conducts the budgeting and auditing of all the subsidiaries. Ex. A, Dhana Depo., p. 57:9-11. HOLDINGS also does the collections for all the subsidiaries. Ex. A, Dhana Depo., p. 57:16-17.

As previously mentioned, HOLDINGS "provides oversight as to the disbursements at the subsidiaries." Ex. A, Dhana Depo., p. 60:17-18. In this particular case, "providing oversight" meant that HOLDINGS "Insure[s] that the policies and procedures in place regarding getting the appropriate approvals have been done before a disbursement is made." Ex. A, Dhana Depo., p. 60:21-23.

---

[1] The names of the six employees are Dale Baker (President); Michael Brant (Sr. VP, Finance); Rob Hunter (Sr. Dir., Business Development WAH); Ann Antillion, Linda Parlon (Corporate Communications): and Mr. Dhana

HOLDINGS operates one website located at "WorldAvenue.com," which displays information about World Avenue Holdings. Ex. A, Dhana Depo., p. 72:224.

BSI provided a sampling of some of the domain names that appeared in the EMAILS AT ISSUE and also appeared in Wagner's frequency search. *See* Amend. Compl., ¶ 51 & Ex. 23 (Aff. of Paul A. Wagner Regarding Court of Emails Containing Certain Business Names and Domain Names).

The "Terms and Conditions" hyperlinks on these websites listed above are identical in content, form, and trade dress, using the same colors, fonts, text, and language. *See* Amend. Compl., ¶ 53. Each of these websites also contains language indicating that the site is maintained by a company called, "Net Radiance LLC." *See* Amend. Compl. ¶ 54. According to the Florida Secretary of State, Net Radiance LLC is an inactive Florida Corporation owned by Niupercent, Inc. Niupercent, Inc. changed its name in December 2006 to World Avenue Management, Inc., which in turn owns HOLDINGS. *See* Amend. Compl., ¶¶ 53-56 & Exs. 28-30.

## II. PERSONAL JURISDICTION IN MARYLAND

### A. MARYLAND'S LONG ARM STATUTE.

The Maryland "Long-Arm" statute, Section 6-103 of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland, provides as follows :

> (a) If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.
>
> (b) A court may exercise personal jurisdiction over a person, who

---

(VP. of Finance and Corporate Controller of WAH, LLC).

directly or by an agent:

     (1) <u>Transacts any business or performs any character of work or service in the State;</u>

     (2) <u>Contracts to supply goods, food, services, or manufactured products in the State;</u>
. . .
     (4) Causes tortious injury in the State or outside the State by an act or omission outside the State <u>if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;</u>
. . .

     (c)(1)(i) In this subsection the following terms have the meanings indicated.

     (ii) "Computer information" has the meaning stated in § 22-102 of the Commercial Law Article.

     (iii) "Computer program" has the meaning stated in § 22-102 of the Commercial Law Article.

     (2) The provisions of this section apply to computer information and computer programs in the same manner as they apply to goods and services.

Md. Code Ann., Cts. & Jud. Proc., § 6-103 (emphasis added).

With respect to the recently added provisions in subsection (c) of the Maryland Long Arm Statute, the Commercial Law Article, Section 22-102 provides the following additional definitions:

     (9) "Computer" means an electronic device that accepts information in digital or similar form and manipulates it for a result based on a sequence of instructions.

     (10) "Computer information" means information in electronic form which is in a form capable of being processed by a computer. The term includes a copy of the information and any documentation or packaging associated with the

9

copy.

Md. Code Ann., Com. L. § 22-102.

B. **THE MARYLAND COMMERCIAL ELECTRONIC MAIL ACT**

The MD-CEMA defines "Commercial electronic mail" as "electronic mail that advertises real property, goods, or services for sale or lease." *See* Maryland Code Ann., Commercial Law §14-3001(b)(1). It also prohibits the initiation of a transmission, any conspiracy to initiate a transmission, or any assistance of a transmission of commercial electronic mail that is sent from a computer in the State or is sent to an email address is held by a resident of the State and that (i) uses a third party's Internet domain name or email address without the permission of the third party; (ii) contains false or misleading information about the origin of the transmission path of the commercial email; or (iii) contains false or misleading information in the subject line that has the capacity, tendency, or effect of deceiving the recipient. *See* Maryland Code Ann., Commercial Law §14-3002(b). *See also* Amend. Compl. ¶¶ 11-12

C. **APPLICATION OF THE LAW**

Applying the statutes to the instant case, this Court will be able to exercise *in personam* jurisdiction over HOLDINGS if it, directly or through an agent, transacted any business in Maryland, contracted to supply goods or services in Maryland, contracted to supply computer programs or computer information in Maryland, conducted or solicited business in Maryland, engaged in any other persistent course of conduct in Maryland, or derived substantial revenue from goods or services used or consumed in Maryland. <u>See</u> Md. Code Ann., Com. L. § 14-3002(b).

The purpose of the Maryland long-arm statute is to extend the scope of jurisdiction over non-resident defendants to the limits of the Fourteenth Amendment's Due Process Clause. *McGann v. Wilson*, 701 A.2d 873, 876 (Md. App. 1997). Accordingly, the analysis under Maryland law regarding personal jurisdiction mirrors the analysis under the Fourteenth Amendment's Due Process Clause. *See McGann*, 701 A.2d at 876.

In determining whether specific jurisdiction exists, the court considers (1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the State; (2) whether the Petitioners' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally "reasonable." See *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711-12 (4th Cir. 2002), cert. denied, 123 S. Ct. 868 (2003).

Maryland may, consistent with the Due Process Clause, exercise judicial power over a non-resident defendant when that person: (1) directs electronic activity into the State; (2) with the manifest intent of engaging in business or other transactions within the State; and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts. *See ALS Scan*, 293 F.3d at 713.

**D.     BSI HAS MADE A PRIMA FACIE DEMONSTRATION OF JURISDICTION.**

To survive a motion to dismiss for lack of personal jurisdiction, BSI must allege a prima facie case for the exercise of personal jurisdiction over HOLDINGS. *See Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

Under the MD-CEMA, an entity may not "initiate the transmission, conspire with another

person to initiate the transmission, or assist in the transmission of commercial electronic mail" that is false or misleading as defined under the statute and that is sent from a computer in the state or to an electronic mail address that the sender knows or should have known is held by a resident of the State. *See* Md. Code Ann., Com. L. § 14-3002(b). Thus, MD-CEMA imposes liability not only on those who "initiate" the transmission of the offending email, but those who "conspire" with others to initiate the transmission, or who "assist" in the transmission.

In the present case, BSI has demonstrated that it received the EMAILS AT ISSUE from HOLDINGS, its subsidiaries, agents, successors, affiliates and/or publishers that were directed and controlled by HOLDINGS.

### III. PLAINTIFF'S CLAIMS ARE NOT TIME BARRED UNDER MARYLAND LAW

BSI's claims are not time-barred by the Maryland three-year statute of limitations. First, BSI notes in the Amended Complaint that *even today* it continues to receive Spam from WORLD AVENUE, including HOLDINGS. *See* Amend. Compl. at ¶ 63 (*see* definition of "EMAILS AT ISSUE"). Accordingly, under the MD-CEMA, which is a consumer protection statute, the wrong committed by the DEFENDANTS, including HOLDINGS, continues today. The three-year Statute of Limitations against HOLDINGS under CJP § 5-101 has not yet even started running because the prohibited messages continue unabated, albeit at a much diminished rate. *See* Wagner Aff. at ¶ 7-8.

Defendant HOLDINGS' Partial Motion to Dismiss is not really a motion requesting dismissal of any counts. Rather, HOLDINGS' Motion is actually an argument against imposing statutory damages against HOLDINGS for messages received by BSI prior to December 22,

2005. Defendant's argument is not ripe for decision right now and should properly be reserved for the damages portion of the trial.

## IV. CONCLUSION

The Amended Complaint pleads sufficient factual allegations to meet applicable standards for pleading both of its causes of action. As a result, Defendant WORLD AVENUE HOLDINGS,LLC's Motion to Dismiss and Partial Motion to Dismiss should be denied.

Respectfully submitted :

/s/
Stephen H. Ring, Esq.                                              Date
**STEPHEN H. RING, P.C.**
20300 Seneca Meadows Parkway, Suite 200
Germantown, Maryland 20876
MD Bar Id. No. 04731764; USDC, MD: #00405
Telephone: 301-540-8180


/s/
Michael S. Rothman, Esq.                                           Date
401 E. Jefferson Street
Suite 201
Rockville, MD 20850
Phone: (301) 251-9660
Fax: (301) 251-9610

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of September 2009, a copy of the foregoing Opposition was filed electronically in accordance with the Court's CM/ECF procedures, and served upon the counsel named below via the Court's electronic filing notification system :


Sanford M. Saunders, Jr., Esq.
USDC, MD #4734
GREENBERG TRAURIG, LLP
2101 L Street, NW
Suite 1000
Washington, DC 20037
202-331-3100
202-331-3101

John L McManus, Esq.
Greenberg Traurig PA
401 E Las Olas Blvd Ste 2000
Fort Lauderdale , FL 33301
19547688291
Fax: 19547651477
Email: mcmanusj@gtlaw.com
PRO HAC VICE
ATTORNEY TO BE NOTICED

Kenneth A Horky
Greenberg Traurig PA
401 E Las Olas Blvd Ste 2000
Fort Lauderdale , FL 33301
19547688273
Fax: 19547651477
Email: horkyk@gtlaw.com
PRO HAC VICE
ATTORNEY TO BE NOTICED

Nicoleta Burlacu
Greenberg Traurig LLP
2101 L Str NW Ste 1000
Washington , DC 20037

Attorney[s] for World Avenue HOLDINGS, LLC

_____/s/_____
Michael S. Rothman