1          IN THE U.S. DISTRICT COURT FOR MARYLAND
                      SOUTHERN DIVISION
2

3

4
BEYOND SYSTEMS, INC.,            )
5                               )
                                )
6            Plaintiff,          )
7       vs.                      )CASE NO. PJM08cv0921
                                )
8  WORLD AVENUE USA, LLC successor )
   By merger to NIUTECH, LLC, d/b/a )
9  "THE USEFUL", et al.          )
                                )
10                              )
             Defendant.          )
11 _____)

12

13

14                      * * *
                 DEPOSITION OF FIDEL DHANA
15                      * * *

16

17

18

19                      Fort Lauderdale, Florida
                        August 26, 2009
20                      11:00 o'clock a.m.

21

22

23

24

25

1

2  APPEARANCES:

3          FOR PLAINTIFF:
            LAW OFFICE OF STEPHEN H. RING, P.C.
4           BY MICHAEL S. ROTHMAN, ESQUIRE
            401 East Jefferson Street, Suite 201
5           Rockville, Maryland 20850
            301-251-9660

6

7

8          FOR DEFENDANT:
            GREENBERG TRAURIG,
9           BY SANFORD SAUNDERS, ESQUIRE,
            401 East Las Olas Boulevard, Suite 201
10          Fort Lauderdale, Florida 33301

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                     I N D E X

2  WITNESS                              DIRECT
   FIDEL DHANA                              4
3

4              E-X-H-I-B-I-T-S
          PLAINTIFFS              PAGE
5             1                    9
              2                    47
6             3                    79
              4                    90
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        Deposition of Fidel Dhana, a witness of lawful

2  age, taken on behalf of the Plaintiff herein, for the

3  purpose of discovery and for use as evidence in the

4  above-entitled matter, pending in the U.S. District

5  Court for Maryland, Southern Division, pursuant to

6  notice heretofore filed, before Christine de Moraes, a

7  Notary Public within and for the State of Florida at

8  Large, at the Law Office of Greenberg Traurig, LLP, 401

9  East Las Olas Boulevard, Suite 2000, in the City of Fort

10  Lauderdale, County of Broward, State of Florida, on the

11  26th day of August, 2009, commencing at or about 11:00

12  o'clock a.m.

13                    * * *

14        THEREUPON:

15                  FIDEL DHANA

16        A witness of lawful age, being called as a

17  witness by the Plaintiff, having been duly sworn, as

18  hereinafter certified, deposed and testified as follows:

19               DIRECT EXAMINATION

20        BY MR. ROTHMAN:

21    Q   Good morning, Mr. Dhana.  Is that correct?  Did

22  I pronounce that correctly?

23  A  (Witness nodding his head.)

24  Q  My name is Mike Rothman.  I'm the attorney for

25 the Plaintiff, Beyond Systems Inc.  I'm going to be

1  taking your deposition this morning regarding the topics

2  that were noticed in our Notice of Deposition to you.

3       Let me just layout some ground rules first.

4  When we have this deposition, I'm going to be asking the

5  questions.  You're going to be providing the answers.

6  Christine de Moraes is going to be recording your

7  answers and my questions.  So you have to speak slowly.

8  She's going to be taking down everything you say.

9       So if you don't understand a question of mine

10  or need a clarification, please feel free to stop me.

11  If there is something you don't understand, go ahead,

12  ask me to rephrase my question.  If you answer a

13  question, I'm going to assume you understood it.

14       Is that okay with you so far?  Do you

15  understand the ground rules?

16  A    Repeat them again for me please.

17  Q    Okay.  I'm going to be taking the deposition.

18  You're going to be answering the questions.  You're the

19  deponent and representative today of World Avenue

20  Holdings LLC.  You've been asked to appear and provide

21  answers to the topics listed in the Notice of

22  Deposition.

23          Do you understand?

24          MR. SAUNDERS:  Is that a question or a

25     statement?

1    MR. ROTHMAN:  Do you understand?  That's a

2    question.  Prior to that it was a statement.

3    MR. SAUNDERS:  Do the best you can.

4    BY MR. ROTHMAN:

5    Q    What part of what I just said do you not

6    understand or is causing you difficulty?

7    A    Sounds like there are multiple questions or

8    statements.

9    Q    Would you like me to say them one at a time?

10   A    Yes.

11   Q    My name is Mike Rothman.  I am here today to

12   take your deposition as the corporate representative of

13   World Avenue Holdings, LLC.

14   Do you understand that?

15   A    Yes.

16   Q    Do you understand that you will be providing me

17   answers here today to the best of your knowledge,

18   information and belief as the corporate representative

19   of World Avenue Holdings, LLC?

20   A    Yes.

21   Q    If you answer the question, I'm going to assume

22   you understood it unless you ask me a question about

23  what I have asked you.

24          Do you understand that?

25          MR. SAUNDERS:  I'm going to object.  Counsel,

1    you can assume whatever you want.

2        BY MR. ROTHMAN:

3    Q    Do you understand?

4        MR. SAUNDERS:  Go ahead and answer.

5        THE WITNESS:  Can you repeat that statement one

6    more time for me.

7        BY MR. ROTHMAN:

8    Q    Which part?

9    A    The entire thing.

10   Q    When you answer a question, I'm going to assume

11   you understood it unless you ask me to rephrase it in

12   some fashion.

13       MR. SAUNDERS:  Same objection, go ahead and

14   answer.

15       THE WITNESS:  I don't know how to answer that

16   question because I can't tell what you're assuming.

17       BY MR. ROTHMAN:

18   Q    Well, that's not what I'm asking.  I am asking

19   you -- actually, I'm telling you that I'm going to be

20   asking you questions.  And if you don't understand it,

21   ask me to please rephrase it.  Do you understand?

22       Maybe I should back up.  Do you have an answer

23  first of all?

24      A      I think I understand.

25      Q      Is English your primary language?  Do you speak

1 English?

2     A    I speak English.

3     Q    Were you educated in English?

4     A    I was educated in English.

5     Q    How far did you go in school?

6     A    I'm not sure I understand the question.

7     Q    Did you receive an education anywhere?

8     A    I did receive an education.

9     Q    Where did you receive that education?  Off the

10 record please.

11       (Thereupon, after a discussion off the record

12 outside the presence of the witness, the following

13 proceedings were had:)

14       BY MR. ROTHMAN:

15     Q    Back on the record.  Mr. Dhana, can you please

16 state your full name for the record please.

17     A    My name is Fidel Dunbar Dhana.

18     Q    Where are you currently employed?

19     A    I'm employed by World Avenue Holdings, LLC.

20     Q    How long have you been employed there?

21     A    Since 2006.

22     Q    Can you give me an exact date?

23     A     I believe it's May 30, 2006.

24     Q     Did World Avenue Holdings hire you at the time

25  on May 30, 2006?

1      A    I was hired to fill a role at World Avenue

2  Holdings.

3      Q    What role was that?

4      A    Vice president of finance and corporate

5  controller.

6      Q    Is that the position you hold today?

7      A    Yes, it is.

8      Q    Mr. Dhana, I'm going to show you what is going

9  to be marked as Plaintiff's Exhibit 1.

10          (Thereupon, the document referred to was marked

11  as Plaintiff's Exhibit No. 1 for identification.)

12          MR. SAUNDERS:  Counsel, I'm going to ask you

13          unless Mr. Wagner is typing something that's

14          designed to aide you in taking the deposition this

15          morning, I'm going to ask him to stop on the

16          computer because I'm finding it distracting and I

17          think it will be distracting for the witness.

18          MR. ROTHMAN:  He's simply taking notes.

19          MR. SAUNDERS:  If he's taking notes in relation

20          to the deposition, that's fine.

21          MR. ROTHMAN:  He's simply taking notes in

22          relation to the deposition.

23          BY MR. ROTHMAN:

24     Q    Mr. Dhana, I placed before you Plaintiff's

25  Exhibit 1.  Do you recognize that document?

1    A    Yes, I do.

2    Q    When was the first time you saw that document?

3    A    I believe the first time I saw this document

4 was yesterday.

5    Q    Have you had a chance to look over Exhibit

6 Number 1?

7    A    I've looked over it briefly.

8    Q    I'm going to ask you if you are here to answer

9 particular matters that are subject matters that are

10 contained within this document, this Notice.

11    Do you understand?

12    A    Yes.

13    Q    Let's turn to page three.  Do you see

14 three-quarters of the way down the page, there's

15 something called subject matter as a section?  Is that a

16 yes?  I see you nodding.

17    A    I see subject matters.

18    Q    Remember the court reporter is going to be

19 recording your answers, so anything you want to be in

20 the record is going to have to be audible, so the court

21 reporter can record it.

22    Do you understand?

23      A    I understand.

24      Q    As for the subject matters that are listed, are

25   you here to answer subject matter number one?  It's on

1  the same page that you are looking at.

2     A     Yes.  I will answer to subject matter number

3  one.

4     Q     Similarly number two, are you in a position to

5  answer that question on behalf of World Avenue Holdings?

6     A     I will be able to answer subject matter number

7  two on behalf of World Avenue Holdings.

8     Q     Likewise, number three?

9     A     I'll be able to answer subject matter number

10 three on behalf of World Avenue Holdings.

11    Q     Number four?

12    A     I will be able to answer subject matter number

13 four on behalf of World Avenue Holdings.

14    Q     Is there any of these numbers that you are

15 going to be unable to answer, any of these subject

16 areas, just to speed things along.  I'm just asking you

17 about the subject areas right now.

18          MR. SAUNDERS:  Through number thirteen?

19          BY MR. ROTHMAN:

20    Q     Through number thirteen; that's correct.

21    A     I will be able to answer on the subject matters

22 through number thirteen on behalf of World Avenue

23  Holdings.

24      Q    Thank you.  Now, did you help prepare

25  responses, document responses and gather documents on

1  behalf of World Avenue Holdings?

2      MR. SAUNDERS:  I'm going to object to the

3      question, beyond the scope of the deposition.

4      MR. ROTHMAN:

5  Q    I'll rephrase.  Did you provide any documents

6  to us in the areas indicated in the Notice under the

7  section entitled documents to be produced?

8      MR. SAUNDERS:  I'm going to object as it's

9      beyond the scope of the 30B6 Notice.

10     BY MR. ROTHMAN:

11  Q    You can answer.

12     MR. SAUNDERS:  Go ahead and answer.

13     THE WITNESS:  I'm sorry.  Can you repeat your

14     question.

15     MR. ROTHMAN:

16  Q    Did you help gather documents from World Avenue

17  Holdings to be produced today pursuant to the Notice?

18  A    To the extent that documents were available, we

19  did produce those documents.

20  Q    What does that mean to the extent the documents

21  were available?

22  A    Most of the items covered under your subject

23  matter, there are no documents available for them.

24       Q    Under the subject matters or under the

25  documents to be produced?  There are two sections in the

1  Notice.

2  A    I don't believe there were any documents

3  produced relating to the Request for Documents to be

4  Produced.

5  Q    There were no documents produced under any

6  categories, subject number one through fifteen?

7  MR. SAUNDERS:  Counsel, Mr. Dhana, World Avenue

8  Holdings produced documents in response to the

9  document requests to the extent the same documents

10  responsive to the document requests are ones that

11  are produced in response to this.

12  We made our objections.  Those are the

13  documents.  Mr. Dhana was one of the people that

14  helped us gather the documents that were produced in

15  connection with the document requests.  And that's

16  what you have.

17  MR. ROTHMAN:  So he was one of the people that

18  helped gather these documents?

19  MR. SAUNDERS:  Yeah.

20  MR. ROTHMAN:  Okay.

21  BY MR. ROTHMAN:

22  Q    With regard to where you looked for these

23   documents, can you describe to me where you searched?

24        A    We searched my files and my computer.

25        Q    When you say your files, that means what?

1      A      My physical files.

2      Q      Does that mean hard copy files?

3      A      That is correct?

4      Q      Where do those files reside?  Where are they

5   located?

6      A      Those files are located in my office.

7      Q      What do those files contain?

8             MR. SAUNDERS:  Object to the scope of the

9      question.  It's overbroad, but go ahead and answer

10      to the best you can.

11             THE WITNESS:  Business files covering a wide

12      range of topics and subjects.

13             BY MR. ROTHMAN:

14      Q      Are they financial records?

15      A      Some of them maybe financial records.

16      Q      Some of them maybe financial records.  What are

17   the remainder of the files?

18      A      Other types of business documents.

19      Q      Such as?

20      A      Communications with clients, business

21   agreements, financial statements, and other items of

22   that nature.

23      Q    So those are the physical files you searched,

24   correct?

25      A    Correct.

1     Q    Now, did you do an electronic search for

2  documents?

3     A    Correct.

4     Q    Is the answer yes?

5     A    Yes.

6     Q    Where did you search for the physical files --

7  I'm sorry, for the electronic files?

8     A    I searched on my computer.

9     Q    When you say on your computer, does that mean

10  just your hard drive or the company's hard drive?

11     A    I don't know what you mean by the term, the

12  company's hard drive.

13     Q    Did you search the company's files or did you

14  search just your files?

15     A    I searched the files which I have access.

16     Q    Which would be what?

17     A    The files on my computer and the finance and

18  accounting shared files.

19     Q    Are there any servers or network servers that

20  you use at World Avenue Holdings?

21     A    Yes, there are.

22     Q    Where are they located?

23    A    Do you mean physically where are the servers

24  located?

25    Q    Yes.  Where are the servers physically located?

1    A    I'm not absolutely sure.

2    Q    Why don't you tell me what you know.

3         MR. SAUNDERS:  Objection to the extent that it

4    calls for speculation.

5         BY MR. ROTHMAN:

6    Q    You can answer the question.

7         MR. SAUNDERS:  Go ahead and answer.

8         THE WITNESS:  I believe the servers maybe

9    located in our corporate offices.

10        BY MR. ROTHMAN:

11   Q    Which is where?

12   A    Corporate offices are in Sunrise, Florida.

13   Q    Is that the business address 136 -- well, why

14   don't you tell me.

15   A    Can you repeat your question.

16   Q    You said the servers maybe located at the

17   corporate office, correct?

18   A    Correct.

19   Q    Where are the corporate offices?

20   A    In Sunrise, Florida.

21   Q    Can you give me an address?

22   A    Yes.  1613 Northwest 136 Avenue, suite 100,

23  Sunrise, Florida 33323.

24      Q    Now, World Avenue Holdings is located at that

25  address?

1    A    That is correct.

2    Q    What else is located at that address, what

3 other corporate entities?

4    A    Are you asking me to give you a list of all the

5 entities that are at that address?

6    Q    Yes, to the extent that you know it?

7    MR. SAUNDERS:  I'm going to object to the form

8    of the question.  This is beyond the scope --

9    BY MR. ROTHMAN:

10    Q    You can answer.

11    MR. SAUNDERS:  No.  No.  Hang on a second.

12    MR. ROTHMAN:  Oh, pardon me.

13    MR. SAUNDERS:  That it's beyond the scope of

14    the Notice for Deposition for this witness.  And

15    I'll ask Counsel to proffer which subject matter

16    this question falls under.

17    MR. ROTHMAN:  Subject matters that this falls

18    under are going to be the deponents context number

19    one as well as the nature of the relationship.

20    Well, why don't I go ahead and ask the witness to

21    step out of the room please while you and I discuss

22    this matter.  Thank you.

23            (Thereupon, the following proceedings were had

24  outside the presence of the witness:)

25            MR. ROTHMAN:  This is directly related to

1    jurisdictional discovery.  If they're all located at

2    the same address, Sandy --

3         MR. SAUNDERS:  Where is it in your Notice?

4         MR. ROTHMAN:  It is encompassed in most of

5    these.

6         MR. SAUNDERS:  Show me one.

7         MR. ROTHMAN:  Deponents contacts.  I'm entitled

8    to know who works there.  I'm entitled to know what

9    they do while they're there.

10        MR. SAUNDERS:  Deponents -- let's read number

11   one.  Deponents contacts either directly or through

12   agents with persons in Maryland.  You're asking him

13   about persons in Florida.

14        MR. ROTHMAN:  Who have contacts with people in

15   Maryland.

16        MR. SAUNDERS:  That's not covered by this.

17        MR. ROTHMAN:  Who have contact with people in

18   Maryland, it sure is.

19        MR. SAUNDERS:  Deponents contacts, Holdings

20   contacts either directly or through agents.  You

21   haven't established anything about an agent.

22        MR. ROTHMAN:  I'm trying to figure out still

23      who works there.

24          MR. SAUNDERS:   Where is it covered in here?

25      Where is it?

1     MR. ROTHMAN:  Sandy, that is an awfully narrow,

2     narrow definition you're drawing.

3     MR. SAUNDERS:  No.  It's the plain meanings of

4     the word.  Just like the definition of you doesn't

5     include the affiliates.

6     MR. ROTHMAN:  The plain meaning of the words --

7     as you heard Magistrate Day say, I can ask him who's

8     there and the logical repercussions of that.  Why

9     are you not allowing me to --

10    MR. SAUNDERS:  Because I'm making a point.

11    This is not covered.  I haven't instructed him to

12    answer or not to answer yet, but it's not here.  I

13    may give you some leeway, but this is the problem

14    you've got with how these topics are drafted.  They

15    don't cover these questions.

16    MR. ROTHMAN:  I disagree.  I disagree.

17    MR. SAUNDERS:  I have to make a record because

18    I'm not waiving.  So I have to, you know, as your

19    questions don't follow the topics, I've got to make

20    my objections because there's going to come a point

21    where I am going to tell him not to answer because

22    I'm only going to be so flexible.

23          MR. ROTHMAN:  Your objection is noted and we

24     can argue it --

25          MR. SAUNDERS:  Well, the question is whether we

1     contact the Magistrate now or whether we let this go

2     on a little more, so that we have a more fulsome

3     record which is probably more reasonable, more

4     reasonable from his prospective, gives him a better

5     context.  Also given the time I'm confident that

6     he's on the beach, so we would just be wasting time.

7     So I mean, I'm going to -- you know, I'm going

8     to let him answer as to what other companies are

9     there.  And I assume you're talking about -- you're

10    not asking him for every company that's in the

11    building.

12    MR. ROTHMAN:  No.  No.

13    MR. SAUNDERS:  Which is what your question was.

14    MR. ROTHMAN:  I was referring to suite 100

15    which is where he said the corporate offices are

16    located.

17    MR. SAUNDERS:  That wasn't your question, but

18    we can work through that one.  But we're going to

19    have a problem because these questions are not

20    covered by your topics.  And what you heard Day, Day

21    said you're limited to those topics.  And he's going

22    to enforce them.  The only question is when we go

23      back to him.

24           MR. ROTHMAN:  Well, my question to you is,

25      under the discovery guidelines, the way to resolve

1　　this is to place your objection on the record, to go

2　　forward to the extent possible, and then argue later

3　　over whether it's admissible or not.

4　　　　MR. SAUNDERS:  This is a limited purpose

5　　discovery, so you don't get to just ask -- you know,

6　　you can't throw the topics out the window and say

7　　I'm going to ask anything I want.

8　　　　MR. ROTHMAN:  I'm not intending to.

9　　　　MR. SAUNDERS:  You know, you've raised the

10　　issue of, let's just go to the Magistrate and let

11　　him answer.  So that may be the way to do this.

12　　Now, I'll probably let him answer this one, but

13　　we're not going to spend all day with you asking

14　　questions that aren't on your subject matters.

15　　　　There's going to come a point where I'm going

16　　to tell him not to answer.  And we can go back to

17　　Maryland or we can get him on the phone or we can go

18　　back to Maryland and you can file.

19　　　　MR. ROTHMAN:  I would prefer to go ahead and

20　　have him answer to the extent possible and then

21　　argue later over the narrow definitions you've

22　　drawn.

```
23          MR. SAUNDERS:  I understand that you want to do

24     that because your topics aren't covered.  So you

25     want to have your cake and eat it, too.  That's
```

1    great.

2        MR. ROTHMAN:  I disagree.

3        MR. SAUNDERS:  The Magistrate has already said

4    it earlier.  We don't have to answer questions that

5    are outside the scope of these topics.

6        MR. ROTHMAN:  I'm not trying to ask questions

7    beyond the scope of the topics, Sandy.  I'm trying

8    to get a simple answer to a simple question.

9        MR. SAUNDERS:  Well, it is a simple question.

10   The problem is, it's not listed here.  This first

11   one goes to deponent's contacts either directly or

12   through agents.  You haven't established anything

13   about an agent.  With persons in Maryland.  You're

14   asking him about people in Florida.

15       MR. ROTHMAN:  If I withdraw that question and

16   get to it later, what's going to be the difference

17   when he answers additional questions which would

18   lead me down that road.

19       MR. SAUNDERS:  We'll see whether you ask

20   questions to get him down that road.  I don't think

21   you can.  I think we're going to have a huge problem

22   because what you're trying to ask now is not what's

23    here.  So yeah, we're going to have a huge problem.

24         MR. ROTHMAN:  It's jurisdictional discovery

25    deposition here.  If I am not able to inquire simply

1    about who works there and what they do --

2    MR. SAUNDERS:  Where is it in your 30B6 topics,

3    who works at World Avenue Holdings and what do they

4    do?  Where is it in the topics?

5    MR. ROTHMAN:  Hold on a second.  She has to

6    take this down.

7    MR. SAUNDERS:  I asked you for a proffer.

8    MR. ROTHMAN:  My proffer is that I need to know

9    under these topics who works there in order to

10    determine what their contacts are.  If I cannot

11    determine who works there and I think it logically

12    flows from these subject matters, then you've

13    obviated the whole purpose of this deposition which

14    is jurisdictional discovery.

15    MR. SAUNDERS:  I haven't obviated a thing.  I

16    didn't draft these.

17    MR. ROTHMAN:  What do you think the term

18    deponent means in this particular case?

19    MR. SAUNDERS:  For this deposition it means

20    World Avenue Holdings.

21    MR. ROTHMAN:  And World Avenue Holdings is a

22    limited liability corporation, correct?

23          MR. SAUNDERS:  Yes.

24          MR. ROTHMAN:  Now, that's a fictional entity

25     contained with people in it, correct?

1          MR. SAUNDERS:  Yes.

2          MR. ROTHMAN:  So the entity acts through

3     people, correct?

4          MR. SAUNDERS:  Yes.

5          MR. ROTHMAN:  So why can I not inquire as to

6     the people who are the subject of the deponent?

7          MR. SAUNDERS:  But you've asked about others.

8     You didn't ask about people.  You asked about other

9     -- can you go back and find the question he asked

10    which I believe was other companies.

11         MR. ROTHMAN:  Well, why don't we call him in.

12    And I'll go back and start more slowly.  I'm happy

13    to do that for you.

14         MR. SAUNDERS:  Because the problem you have, he

15    answered questions about Holdings working there.

16         MR. ROTHMAN:  Yes.

17         MR. SAUNDERS:  Are you asking him the other

18    individuals who work at Holdings.

19         MR. ROTHMAN:  I'm going to, yes.

20         MR. SAUNDERS:  Which by the way isn't even

21    covered by this.

22         MR. ROTHMAN:  I completely disagree with that.

23    And if that is going to be your position --

24         MR. SAUNDERS:  You know what?  I'm going to let

25    him answer that because we'll get no where.  He can

1    answer who works at Holdings.  But when you go

2    farther when you go farther, you heard the

3    Magistrate.

4         MR. ROTHMAN:  Such as what?

5         MR. SAUNDERS:  I don't know.  You got to figure

6    out the questions to ask.

7         MR. ROTHMAN:  Tell me what's farther.

8         MR. SAUNDERS:  I'm not writing your questions

9    for you, Steve.

10        MR. ROTHMAN:  Mike.

11        MR. SAUNDERS:  Mike, I'm sorry.  I'm not

12   writing your questions for you.

13        MR. ROTHMAN:  I don't need you to.

14        MR. SAUNDERS:  You have to live with them.  You

15   don't need me to do it.  You picked these questions.

16   I have no doubt that you thought thoroughly and you

17   picked these questions.

18        And all I can say is I can make my objections

19   as beyond the scope.  The same way I objected to the

20   fact that in your definition of you, World Avenue

21   USA is not included or any other subsidiary of World

22   Avenue Holdings.  They're not included in the word

23     you.

24          And your reference to persons didn't get you

25     anywhere.  That doesn't work.  That doesn't link you

1    in either.  So we're talking persons in Maryland, in

2    Maryland.

3         MR. ROTHMAN:  No, it isn't.

4         MR. SAUNDERS:  Yes.  That's what you wrote.

5         MR. ROTHMAN:  No, it isn't.

6         MR. SAUNDERS:  Deponents contacts either

7    directly or through agents with persons in Maryland.

8         MR. ROTHMAN:  This definition of persons

9    includes as we read the definition, a host of

10   different people.  Plus, the other thing that I want

11   to ask you about is if he's supposedly participated

12   in the answers to the interrogatories regarding

13   jurisdictional discovery.

14        MR. SAUNDERS:  Yes.

15        MR. ROTHMAN:  Yes, he did?

16        MR. SAUNDERS:  Uh-huh.

17        MR. ROTHMAN:  So he's going to be answering

18   questions about his responses, correct?

19        MR. SAUNDERS:  To the extent those questions

20   are covered by your topics, but the question of who

21   prepared Holdings -- questions about the preparation

22   of Holdings interrogatory questions, not a topic.

```
23          MR. ROTHMAN:  Sandy, I --

24          MR. SAUNDERS:  You didn't ask.

25          MR. ROTHMAN:  I really disagree with your
```

1   interpretations.  And why don't we just go ahead and

2   you object to whatever you want to object to.  And

3   then we'll make the record.  And that's how we'll do

4   it because this is just a waste of time.

5       MR. SAUNDERS:  Let's go get the Magistrate back

6   on the phone.  You've identified two pockets.  You

7   want to question him about Holdings discovery

8   responses and the preparation.  And they're not on

9   the topics.

10      MR. ROTHMAN:  Are you honestly saying I cannot

11  ask him about his responses to our interrogatory

12  request?  Is that your position.

13      MR. SAUNDERS:  Well, if I hold you to your

14  subject matters, the answer to that would be yes.

15      MR. ROTHMAN:  That's your position.  That is an

16  untenable position.

17      MR. SAUNDERS:  Well, I gave you some leeway

18  because I allowed him to answer some.

19      MR. ROTHMAN:  What was the leeway you gave me?

20      MR. SAUNDERS:  You asked him about the records

21  he searched.

22      MR. ROTHMAN:  Are you telling me that I am not

23      allowed to inquire about the records he searched.

24      That's specifically available in the rules.  You

25      know that.

1    MR. SAUNDERS:  It's not in the topics.  Yes,

2    it's available in the rules.  These are all

3    permissible questions if they're set forth in the

4    topics.

5    A 30B6 deposition has the requirement that you

6    set forth the topics on which you want to question

7    the corporate designee.  He is designated.  You took

8    him through.  He is designated to respond to one

9    through thirteen.  That's it.

10   MR. ROTHMAN:  So under your definitions here,

11   he would not permissibly be able to give his name

12   because it wasn't listed as one of the subject

13   matters, right?

14   MR. SAUNDERS:  To identify him.  I'm not being

15   unreasonable.

16   MR. ROTHMAN:  I think you are.

17   MR. SAUNDERS:  I'm going to bring the witness

18   back in.

19   MR. ROTHMAN:  Please.

20   MR. SAUNDERS:  And you can ask him your

21   questions.  And then at lunch time we're call the

22   Magistrate back.

23          MR. ROTHMAN:  Okay, that's fine.

24          MR. SAUNDERS:  Because he was very clear on the

25     phone.  And the court reporter has it down.

1      MR. ROTHMAN:  I heard.  You heard.

2      MR. SAUNDERS:  That's right.

3      MR. ROTHMAN:  I get it.

4      MR. SAUNDERS:  You are limited to the topics --

5      MR. ROTHMAN:  I understand.

6      MR. SAUNDERS:  -- in the Notice.  And I don't

7  see Holdings responses to discovery in these topics.

8      (Thereupon, the following proceedings were had

9  with the witness being present:)

10     BY MR. ROTHMAN:

11     Q   We're still on the record.  Mr. Dhana, who

12  works at World Avenue Holdings?

13     MR. SAUNDERS:  I'm going to object to the

14     question as being beyond the scope of the subject

15     matters.  In an effort to move this along, I'm going

16     to let the witness answer the question, but unless

17     Counsel wants to proffer one for me, I do not see

18     any question in the subject matters regarding who

19     works at World Avenue Holdings as a designated

20     subject.

21     So if Counsel will agree that it's without

22     waiver of my objection, the witness can go ahead and

23     answer the question.

24          MR. ROTHMAN:  I agree without waiver, it's his

25     objection.

1          MR. SAUNDERS:  Go ahead and answer.

2          THE WITNESS:  World Avenue Holdings has six

3     employees.  The names of those employees are Dale

4     Baker, Michael Brant, Rob Hunter, Ann Antillon --

5          BY MR. ROTHMAN:

6     Q    How do you spell that last name?

7     A    I believe it's A-N-T-I-L-L-O-N, Linda Parlon.

8     Q    P-A-R-L-O-N?

9     A    And myself.

10    Q    Your position is the vice president of finance,

11    correct?

12         MR. SAUNDERS:  Objection.  I don't think that

13    accurately states his position.

14         BY MR. ROTHMAN:

15    Q    And corporate comptroller, I'm sorry?

16    A    I don't think you said my title correctly.

17    Q    Okay.  Go ahead and state it for the record.

18    A    Vice president of finance and corporate

19    controller.

20    Q    Mr. Baker, what position does he hold?

21    A    Mr. Baker is the president.

22    Q    Of World Avenue Holdings, correct?

23      A      That is correct.

24      Q      Mr. Brant?

25      A      Mr. Brant is senior vice president of finance

1   and chief financial officer of World Avenue Holdings.

2       Q    Mr. Hunter?

3       A    Mr. Hunter is senior director of business

4   development for World Avenue Holdings.

5       Q    Ms. Antillon?

6       A    Ms. Antillon is the executive assistant to Dale

7   Baker and Michael Brant.

8       Q    And Ms. Parlon?

9       A    I'm not sure what Ms. Parlon's title is, but

10  she's in charge of corporate communications.

11      Q    Now, what does World Avenue Holdings do?

12      A    World Avenue Holdings is a holding company.

13      Q    What does that mean?

14      A    World Avenue Holdings holds the equity of its

15  direct subsidiaries.

16      Q    Who are their direct subsidiaries?

17           MR. SAUNDERS:  Again --

18           MR. ROTHMAN:  An objection --

19           MR. SAUNDERS:  The objection is beyond the

20           scope.  And there's actually some very limited case

21           law here as to whether this is a permissible

22           question in jurisdictional discovery without a

23     foundation for what the subsidiaries do --

24          MR. ROTHMAN:  I didn't ask that question.

25          MR. SAUNDERS:  -- which would be -- well, I'm

1    saying that's the problem.  There's no foundation.

2    It's not necessarily relevant.  And the case law

3    goes, the question of subsidiaries can be more of a

4    fishing expedition for other defendants than as to

5    establish jurisdictional discovery.

6        That's the problem with the lack of the

7    foundation, so I'm trying to think of whether we

8    limit this to any subsidiary that does business in

9    Maryland and give you that answer and leave the

10   other subsidiaries out of it.

11       Again, there's the objection that it's beyond

12   the scope of the topics, but I'm going to go ahead

13   and answer the question.  You can identify the other

14   subsidiaries.

15       THE WITNESS:  So can you repeat your question.

16       MR. ROTHMAN:  Can you read back the last

17   question.

18       (Thereupon, the last question was read back by

19   the court reporter.)

20       THE WITNESS:  The subsidiaries of World Avenue

21   Holdings are the Useful LLC, World Avenue USA, LLC,

22   World Avenue Ireland Limited, IAD Express.  I can't

23    remember any of the other subsidiaries at this time.

24         BY MR. ROTHMAN:

25    Q    Now, what equitable interest does World Avenue

1    Holdings hold for the Useful LLC?

2        A    World Avenue Holdings is the sole member of the

3    Useful LLC.

4        Q    World Avenue USA, LLC, what equitable interest

5    does it hold -- I mean, World Avenue Holdings?

6        A    What equitable interest does World Avenue USA

7    hold?

8        Q    No, what equitable interest does World Avenue

9    Holdings hold of World Avenue USA?

10       A    World Avenue Holdings is the sole member of

11   World Avenue USA.

12       Q    As the sole member of the Useful, what does

13   World Avenue Holdings do?

14            MR. SAUNDERS:  Object to the form of the

15       question.  It's vague.

16            BY MR. ROTHMAN:

17       Q    What function does it perform?

18            MR. SAUNDERS:  Go ahead and answer.

19            THE WITNESS:  World Avenue Holdings serves as

20       the a holding company for all of the subsidiaries

21       and also provides management oversight.

22            BY MR. ROTHMAN:

23    Q    For which companies?

24    A    For all of the subsidiaries.

25    Q    What does management oversight consist of?

1          MR. SAUNDERS:  I'm going to object as being

2     beyond the subject matter of the deposition, the

3     topics, but the witness can go ahead and answer.

4          THE WITNESS:  Management oversight as provided

5     by World Avenue Holdings involves providing

6     strategic direction on high level management.

7          BY MR. ROTHMAN:

8     Q     What does strategic direction mean?

9     A     Strategic direction means high level

10    coordination as to what the entities are trying to

11    achieve in the marketplace.

12    Q     Can you give me an example?

13    A     I can not think of an example right now.

14    Q     What sort of high level coordination are you

15    talking about?

16    A     At a very high level how each of the entities

17    perform, what duties do they perform, and how they

18    interact with each other.

19    Q     For instance -- well, strike that.  Does World

20    Avenue Holdings get paid for this?

21         MR. SAUNDERS:  Object to the form as vague.  Go

22    ahead and answer if you can.

23          BY MR. ROTHMAN:

24      Q   Does it get paid for its management oversight?

25          MR. SAUNDERS:  Same objection.  Go ahead and

1    answer.

2    THE WITNESS:  Yes.  World Avenue Holdings does

3    get paid for providing management oversight.

4    BY MR. ROTHMAN:

5    Q    I'm sorry, the last part of your sentence?

6    A    World Avenue Holdings does get paid for

7 providing management oversight.

8    Q    Do you participate in the management oversight

9 of the subsidiaries?

10    A    Yes, I do.

11    Q    For instance, let's take the Useful LLC.  That

12 is one of World Avenue Holdings subsidiaries, correct?

13    A    The Useful is a subsidiary of World Avenue

14 Holdings.

15    Q    Now, what services, what management oversight

16 services does World Avenue Holdings perform for the

17 Useful, LLC?

18    MR. SAUNDERS:  I'm going to object.  And again,

19    it goes beyond the scope of the subject matter and

20    ask Counsel to proffer what subject matter listed in

21    the Notice of Deposition covers this question.

22    MR. ROTHMAN:  Mr. Dhana, you can step out for a

23    minute.

24          THE WITNESS:  Sure.

25          (Thereupon, the following proceedings were had

1    outside the presence of the witness:)

2       MR. ROTHMAN:  It seems self evident to me, but

3    he's just testified that the Useful is a subsidiary.

4    And that as a subsidiary World Avenue Holdings

5    performs management oversight.

6       I'm inquiring about the contacts between those

7    two companies and whether they have any contacts

8    with Maryland and what they --

9       MR. SAUNDERS:  I haven't heard a question about

10   Maryland yet in any of these questions.  See, the

11   question -- you're not answering the question.  I'm

12   asking you for a proffer as to what topic in the

13   subject matters this is responsive to.

14      MR. ROTHMAN:  It can be responsive to one.  It

15   will eventually will be responsive to two.  It will

16   possibly be responsive to three, possibly to four,

17   five, six, seven, eight potentially, nine, ten,

18   eleven, twelve, and thirteen.  I think everything.

19      MR. SAUNDERS:  At some point are you going to

20   try to tie it to something in these topics?

21      MR. ROTHMAN:  The deposition just started.  He

22   just started answering questions.  Plus, he's taking

23      an hour to answer each question.

24          MR. SAUNDERS:  He's not taking an hour to

25      answer each question.  You know, some of the

1    problems have been with your question.  So that's

2    not a fair shot at the witness because, you know, we

3    can go back and forth.

4        MR. ROTHMAN:  I asked him if he spoke English.

5    And he seemed to go ahead and take a couple of

6    minutes to answer that question.

7        MR. SAUNDERS:  And you should have stopped.

8    That was a snide abusive derogatory question.

9        MR. ROTHMAN:  It was not.  It was not.

10       MR. SAUNDERS:  And totally unprofessional.

11       MR. ROTHMAN:  He appeared to have trouble

12   understanding my question.

13       MR. SAUNDERS:  Because you started out by the

14   third question talking to him and making a statement

15   with the throw away at the end, do you understand

16   including the word -- compound question declaration

17   asking him  about what you would assume which isn't

18   a question for the witness.

19       So of course, that caused the witness a

20   problem.  It caused me a problem.  I've heard it

21   before.  So I knew the problems with it.  He had to

22   digest it for the first time.  So don't pick on him.

23      Don't mock him as to --

24           MR. ROTHMAN:  I'm not.

25           MR. SAUNDERS:  -- whether he understands the

1    English language.

2         MR. ROTHMAN:  I was truly concerned.

3         MR. SAUNDERS:  You were mocking the witness

4    which is totally unnecessary.  But I'll let it go

5    because we're trying to move the thing along.

6         MR. ROTHMAN:  We can ask anybody else in the

7    room, the court reporter whether she had the same

8    question.  And I would guarantee you she had the

9    same question.

10        MR. SAUNDERS:  It doesn't matter.  So let's get

11   the witness back, let him answer the questions, try

12   to tie it into the topics --

13        MR. ROTHMAN:  Absolutely.

14        MR. SAUNDERS:  -- because we're going to come

15   to a point where I am going to tell him to stop

16   answering.  And we're going to go to the Magistrate.

17        (Thereupon, the following proceedings were had

18   in the presence of the witness:)

19        BY MR. ROTHMAN:  Thank you.  Back on the

20   record.  Can you read back the last question.

21        (Thereupon, the last question was read back by

22   the court reporter.)

23          MR. SAUNDERS:  Go ahead and answer.

24          THE WITNESS:  Can you repeat it again.

25          (Thereupon, the last question was read back by

1    the court reporter.)

2            THE WITNESS:  World Avenue Holdings provides

3        strategic direction and also participates in making

4        high level management decisions for the Useful, LLC.

5            BY MR. ROTHMAN:

6    Q    Does World Avenue Holdings do that directly or

7    does it do that through agents?

8            MR. SAUNDERS:  Object to the form of the

9        question both to the extent it calls for a legal

10        conclusion and it's vague.  You can answer the best

11        you can.

12            BY MR. ROTHMAN:

13    Q    Do you meet directly with anyone from the

14    Useful, LLC to make these high level management

15    decisions?

16    A    We do meet directly with the employees of the

17    Useful.

18    Q    When do you meet with them, on a regular basis?

19    A    World Avenue Holdings employees meet with

20    employees of the Useful on an as needed basis.

21    Q    What would an as needed basis involve?  What's

22    something that would require your involvement?  By you,

23   I mean World Avenue Holdings.

24       A    If a high level management business or

25   strategic decision needed to be made by the Useful, then

1    World Avenue Holdings employees would be involved.

2        Q    Can you give me an example?

3        A    If the Useful had to or wanted to procure goods

4    and services over ten thousand dollars, then that

5    decision would involve someone from World Avenue

6    Holdings.

7        Q    Now, the Useful, LLC, one of World Avenue

8    Holdings subsidiaries, they're an advertising and media

9    company, correct?

10        MR. SAUNDERS:  I'm going to object to the

11        extent that it goes beyond the scope of the subject

12        matters, but go ahead and answer.

13        THE WITNESS:  The Useful is an internet

14        marketing company.

15        BY MR. ROTHMAN:

16        Q    Do you know how the Useful, LLC markets to its

17    customers?

18        MR. SAUNDERS:  Object again as to the scope of

19        the question as being beyond the subject matters,

20        the subject matters listed in the Notice of

21        Deposition for the Holdings witness.

22        Again, ask Counsel to proffer --

23          BY MR. ROTHMAN:

24     Q    You can go ahead and answer.

25          MR. SAUNDERS:  -- why Counsel is declining to

1      proffer what subject matter this question relates

2      to, but go ahead and answer.

3          THE WITNESS:  I'm sorry.  Can you repeat the

4      question.

5          MR. ROTHMAN:  Would you mind?

6          (Thereupon, the last question was read back by

7      the court reporter.)

8          THE WITNESS:  I am aware at a very high level

9      how the Useful markets to its customers.

10         BY MR. ROTHMAN:

11     Q    What is your understanding?

12     A    The Useful employs employees a variety of

13  internet tools whether web display, e-mail or otherwise

14  to generate the leads for sales on behalf of the

15  customers.

16     Q    Now, how does -- well, let's start with the

17  Useful.  Does World Avenue Holdings, the officers of

18  World Avenue Holdings have any contacts with the

19  officers of the Useful or do you regularly meet with the

20  officers of the Useful?

21         MR. SAUNDERS:  Objection to the form, compound

22     question.

23          BY MR. ROTHMAN:

24     Q    I can break it up if you need me to.

25     A    Could you please.

1      Q     Does World Avenue Holdings when it does its

2    high level oversight management, does it meet with

3    officers or agents of the Useful?

4            MR. SAUNDERS:  Objection.

5            BY MR. ROTHMAN:

6      Q     Let's start with officers.  Does it meet with

7    officers of the Useful?

8      A     Employees of World Avenue Holdings meets with

9    employees of the Useful whenever high level management

10   oversight decisions need to be made.

11     Q     Do those involve -- pardon me.  Do those high

12   level management decisions you just spoke about involve

13   the internet marketing that you just described.  Let me

14   rephrase.

15           Does World Avenue Holdings have discussions

16   with the Useful, people from the Useful about lead

17   generation, e-mail marketing, any of those.

18           MR. SAUNDERS:  Objection as to form, compound.

19   Go ahead and answer.

20           BY MR. ROTHMAN:

21     Q     I can ask them one at a time if you'd like.

22     A     Please.

23        Q     E-mail marketing, does World Avenue Holdings

24     meet with the Useful, LLC, its officers, employees

25     regarding the decisions made as to who to send e-mails

1   to?

2   A     World Avenue Holdings employees do not get

3   involved and are not involved with decisions regarding

4   sending e-mails by the Useful.

5   Q     Well, does World Avenue Holdings get involved

6   in the sending of e-mails by the Useful's agents?

7         MR. SAUNDERS:  Objection, form, vague, and

8         calling for a legal conclusion.  Go ahead and answer

9         to the best you can.

10        THE WITNESS:  I don't understand what the term

11        the Useful agents.

12        BY MR. ROTHMAN:

13   Q     Does the Useful send out e-mails to prospective

14   leads?

15        MR. SAUNDERS:  Object to the extent that this

16        is beyond the scope of the subject matters in the

17        deposition.  Go ahead and answer to the best you

18        can.  And we may need to get the Judge on the phone,

19        but go ahead and answer his question.

20        THE WITNESS:  I believe that the Useful does

21        send e-mails to prospective clients.

22        BY MR. ROTHMAN:

23      Q    Itself, the Useful does.  Pardon me.  The

24  Useful does send e-mails itself; meaning, its employees

25  send those e-mails?

1          MR. SAUNDERS:  Object to the form of the

2     question as vague and ambiguous.

3          BY MR. ROTHMAN:

4     Q    How does the Useful generate these leads?

5          MR. SAUNDERS:  Objection as to the form of the

6     question.  Go ahead and answer.

7          THE WITNESS:  Repeat your question for me.

8          BY MR. ROTHMAN:

9     Q    How does the Useful market to people?

10    A    The Useful employs a variety of internet tools

11    to market to its customers.

12    Q    What are those tools?

13         MR. SAUNDERS:  I'm going to object.  The

14    question is outside the scope of the subject matter

15    and the topics.  The witness is not here to testify

16    -- well, I don't want to make a speaking objection.

17    It is outside the scope.

18         I ask Counsel to proffer what subject matter

19    topic this question falls under for the record.

20         MR. ROTHMAN:  I did numerous times.

21         MR. SAUNDERS:  No, you haven't.

22         BY MR. ROTHMAN:

23      Q     But you can go ahead and answer unless your

24   Counsel instructs you not to.

25            MR. SAUNDERS:  Let the record reflect that

1    Counsel is refusing to proffer what topic that the

2    question is responsive to -- the question falls

3    under, so that we can make a record for the Judge.

4         MR. ROTHMAN:  Sandy, before we go any further,

5    I think we should try to limit our speaking

6    objections especially in front of the witness.

7         MR. SAUNDERS:  I have limited.  I haven't

8    touched on why I think these don't fall -- I've been

9    very careful.  I've limited my objections to the

10   form.  We're stating that they don't fall under the

11   subject matter.  I'm asking you to proffer.

12        MR. ROTHMAN:  Again, we are talking about

13   subject matter number one, the deponents contacts

14   either directly or through agents with persons in

15   Maryland.  I am simply trying to understand what

16   contacts the company has.

17        MR. SAUNDERS:  At this point why don't we try

18   to get the Judge on the phone because it's not what

19   you're doing.  And if the Judge wants to tell me I'm

20   wrong, he'll tell me I'm wrong.  And this will move

21   along.

22        And if the Judge wants to tell me I'm right,

23    we'll move along.  But you haven't asked the

24    questions.  You're not asking the questions that

25    fall within this topic, so why don't we -- I don't

1    know what time the Judge comes back on the bench.

2    Why don't we call the clerk and ask if we can speak

3    to him when he comes off for the lunch break --

4         MR. ROTHMAN:  That's fine.

5         MR. SAUNDERS:  -- and go from there and see

6    what we can do because in my opinion you've asked

7    very few questions that tie into the topics.  I've

8    tried to be flexible, but this is beyond the scope

9    of your subject matter.  I'm not going to argue in

10   front of the witness, argue it to the Judge.

11        MR. ROTHMAN:  Do you want me to continue or

12   would you rather we take a break and call the Judge?

13        MR. SAUNDERS:  Let's take a break and call the

14   Judge.  I mean, it's almost 12:30 anyway.

15        MR. ROTHMAN:  Then he may well be off the

16   bench.

17        MR. SAUNDERS:  So let's see or at least we can

18   find out what time he's going to be off the bench,

19   go back on the record and try to muddle through as

20   best we can and then talk to him.

21        MR. ROTHMAN:  That's fine.  Mr. Dhana, I think

22   we will excuse you for a moment and try this again.

23      I'm sorry for this.

24              (Thereupon, a recess was taken at 12:30 o'clock

25  p.m.)

1       CONTINUED DIRECT EXAMINATION

2       BY MR. ROTHMAN:

3   Q   Back on the record, Mr. Dhana, we are going to

4   put two things on the record.  Prior to lunch we had the

5   conference call with Magistrate Day.  Now, I just wanted

6   to add to the record, Plaintiff's Exhibit 2 which is the

7   letter from Mr. Ring dated today that describes the

8   discovery dispute that Judge Day went ahead and

9   addressed.  So Plaintiff's Exhibit 2 per your records.

10      MR. ROTHMAN:  You have a copy of that, correct?

11      MR. SAUNDERS:  Yes.

12      (Thereupon, the document referred to was marked

13  as Plaintiff's Exhibit No. 2 for identification.)

14      BY MR. ROTHMAN:

15  Q   In addition, Mr. Saunders and I just discussed

16  Mr. Wagner who's going to be recording, make an audio

17  recording with his computer of the proceedings beginning

18  now for unofficial purposes.  It's not an official

19  transcript.  It's not an official recording of this

20  proceeding.  And it's not going to be used for any

21  official purposes as per agreement.

22      MR. ROTHMAN:  And you'd like a copy of it?

23          MR. SAUNDERS:  And Counsel has agreed to

24     provide a copy to us.  It is going to be governed by

25     the confidentiality provisions that cover the

1     transcript of this deposition and to the extent that

2     Plaintiffs feel there is a discrepancy between the

3     transcript, the court reporter's transcript and what

4     is recorded on this audio, the audio tape is

5     irrelevant.  It is not usable for reference for any

6     purpose whether on the record or to correct the

7     record in this proceeding.

8          MR. ROTHMAN:  Any official purpose, you mean.

9     We're just going to be using it, listening to it

10    unofficially, so obviously it's not official.

11         MR. SAUNDERS:  That's fine, but for purposes of

12    trying to impact the record in this case as to any

13    potential discrepancy that you believe exists

14    between the court reporter's transcript and the

15    audio, the audio is not useable.  It cannot even be

16    referenced.

17         MR. ROTHMAN:  I agree and that wasn't in

18    contest at all.

19         MR. SAUNDERS:  My one question is, there

20    appears to be a video component to the device Mr.

21    Wagner has put on the table.  Is there video being

22    screened.

23          MR. WAGNER:  No.

24          MR. SAUNDERS:  Okay.

25          MR. ROTHMAN:  Okay.

1      BY MR. ROTHMAN:

2      Q      Mr. Dhana, good afternoon.

3      A      Good afternoon.

4      Q      Let's go back for a moment and just get the

5      basics regarding your education and how long you've been

6      at the company again because I don't think we finished

7      that portion.

8             Can you describe for me your educational

9      history.  Where have you gone to school?  How long have

10     you attended school?  And I can ask those individually

11     if you'd like me to.

12     A      Could you ask them individually please.

13     Q      Okay.  Did you attend school?

14     A      Yes.  I did attend school.

15     Q      Where did you attend school?

16     A      I attended high school in Montego Bay, Jamaica.

17     I attended Cornell College.  I attended college here in

18     South Florida at Florida International University.

19     Q      Pardon me one second.  Did you say Cornell

20     University?

21     A      Cornwall College.

22     Q      Oh, Cornwall College, okay.  When did you

23    graduate from high school?

24         A    1985.

25         Q    Okay.  And Cornwall, what was the remaining --

1    Cornwall high school, Cornwall College?

2        A    Cornwall College.

3        Q    Cornwall College.  And when did you attend

4    Cornwall College?

5        A    From about 1980 until 1985.

6        Q    Did you receive a degree?

7        A    I received a high school diploma.

8        Q    From Montego Bay, what was the name of your

9    high school?

10       A    Cornwall College.

11       Q    Oh, that is -- okay.  That is the high school,

12   okay.  Pardon me.  So you received a high school

13   diploma.

14            Did you attend school after high school?  Did

15   you attend any additional post secondary --

16       A    Yes, I did.

17       Q    Where did you attend?

18       A    I attended Florida International University.

19       Q    And when did you attend, what years?

20       A    From about 1990 until 1993.

21       Q    Did you receive a degree from Florida

22   International University?

23      A      Yes, I did.

24      Q      What degree did you receive?

25      A      I received a degree Bachelor of Science in

1   accounting.

2       Q       So that means you graduated, correct?

3       A       I did graduate from Florida International

4   University.

5       Q       Did you attend any graduate schools or any

6   additional post secondary education?

7       A       Yes, I did.

8       Q       Where did you attend school?

9       A       At Florida International University.

10      Q       Did you receive a masters or some degree of

11  equivalence?

12      A       No, I did not.

13      Q       Did you begin a program, a master's program?

14      A       Yes, I did.

15      Q       At Florida International University?

16      A       At Florida International University.

17      Q       What years did you attend school there not

18  including college and your undergraduate degree?

19      A       1993.

20      Q       That was the end of your time there?  Did you

21  receive a degree, a master's degree from Florida

22  International University?

23      A     No, I did not.

24      Q     Do you know how many credit hours you received

25   credit for?

1    A    I don't recall.

2    Q    Were you going for -- what degree were you

3    going for or were you a candidate for I should say?

4    A    I was a candidate for a master's degree in

5    accounting information systems.

6    Q    What does that degree -- what would that degree

7    have conferred or what disciplines are contained within

8    it, if you understand the question?

9    A    The degree would give me a better understanding

10   of accounting information systems, how to design and

11   implement those systems.

12   Q    When did you start with World Avenue Holdings?

13   A    May 30, 2006.

14   Q    Do you currently hold any other positions with

15   the World Avenue entity?

16   A    I don't understand what you mean by with a

17   World Avenue entity.

18   Q    Are you employed or do you hold a position as

19   an officer or employee in any other company other than

20   World Avenue Holdings?

21       MR. SAUNDERS:  Objection as to form, compound.

22       Go ahead and answer.

23          BY MR. ROTHMAN:

24      Q   I can break it up if you need me to.

25      A   Could you please.

1      Q     Sure.  Are you an officer in any corporation?

2  Let me rephrase that now.  I'll add now.

3      A     I am not an officer of World Avenue Holdings.

4      Q     My question was:  Are you an officer in any

5  other corporation right now, not just World Avenue

6  Holdings?

7      A     Yes, I am.

8      Q     Where are you an officer now?

9      A     I am a vice president for a corporation that my

10  wife operates.

11      Q     Is it unrelated to this litigation?

12      A     It is totally unrelated to this litigation.

13      Q     Okay.  Is the company top secret?  Is its name

14  known?

15      A     The company is not top secret.  If you go to

16  the Sunbiz.org Florida website, you can identify the

17  company.

18      Q     Okay.  Now, in the past have you held a -- were

19  you an officer in any corporation.  My question

20  previously was now.  And now I'm going backwards.

21           Have you ever held a position as an officer in

22  any corporation not including your wife's, of course,

23   because you've already mentioned that.

24       A    Yes.  I was an officer in a corporation before

25   this.

1    Q    What was the name of it?

2    A    Corporation was known as Caribshop.com.

3    Q    Can you spell that for me?

4    A    C-A-R-I-B-S-H-O-P dot com.

5    Q    What did you do for caribshop.com?

6    A    I was the president.

7    Q    Other than caribshop.com and your wife's

8    corporation, have you ever held an officer position in

9    any other company?

10    A    Not to my knowledge.

11    Q    Now, following -- following Florida

12    International University and the master's program you

13    were in, what did you do after that?  Were you employed?

14    A    When I left Florida International University, I

15    went to work for KPMG Pete Marwick.

16    Q    What years or year did you work there?

17    A    Worked with KPMG from 1993 until 1997.

18    Q    And what was your position with KPMG Pete

19    Marwick?

20    A    I was an auditor for KPMG Pete Marwick.

21    Q    Now, I noticed that your time with KPMG Pete

22    Marwick and your time at -- when you began at World

23   Avenue Holdings overlapped -- oh, pardon me.  I'm

24   reading the wrong year.  My bad.

25            Can you tell me what you did after KPMG Pete

1  Marwick?

2      A      I went to work for a company called Rewards

3  Network as their director of financial reporting.

4      Q      What years did you do that?

5      A      I worked with Rewards Network from 1997 until

6  2006.

7      Q      What did you do as the director of financial

8  reporting?

9      A      As director of financial reporting for Rewards

10 Network, I was responsible for compiling a financial

11 statement for the entity, preparing SCC filings,

12 coordinating budgets and audits.

13     Q      Coordinating budgets and audits, is that -- is

14 it budgets slash audits or coordinating audits as a

15 separate function?

16     A      Coordinating audits as a separate function.

17     Q      What did Rewards Network do?

18     A      Rewards Network was a restaurant dining rewards

19 program and marketing company.

20     Q      Did you have a job between Rewards Network and

21 World Avenue Holdings or was World Avenue Holdings your

22 next job?

23      A    World Avenue Holdings was my next job after

24   leaving Rewards Network.

25      Q    You began May 30, 2006 at World Avenue

1  Holdings?

2      A    I was hired on May 30, 2006 to fill the role of

3  VP of finance and corporate controller for World Avenue

4  Holdings.

5      Q    Is that the same job you hold today?

6      A    Yes.

7      Q    Can you tell me what you do in your current

8  position?

9      A    I oversee financial reporting, budgeting,

10  auditing, collections, and disbursements for World

11  Avenue Holdings.

12      Q    Do you oversee the budget for the Useful, LLC?

13          MR. SAUNDERS:  I'm going to object to the

14      question to the extent it goes beyond the scope of

15      the subject matters listed in the topics.  Go ahead

16      and answer.  We're not going to keep going down this

17      path.  Go ahead.

18          THE WITNESS:  I'm sorry.  Can you repeat the

19      question please.

20          BY MR. ROTHMAN:

21      Q    As part of your budgeting function with World

22  Avenue Holdings -- I'll make it broader.  Do you oversee

23  the Budgeting of any of the subsidiaries?

24      MR. SAUNDERS:  I'm also going to object on the

25      ground that it's vague, but go ahead and answer as

1   best you can.

2       THE WITNESS:  Yes.

3       BY MR. ROTHMAN:

4   Q   Okay.  Which entities?

5   A   I oversee the budgets for all entities.

6   Q   Do you likewise with auditing, do you audit all

7   entities, subsidiaries?

8   A   Can you repeat your question please.

9   Q   Certainly.  Do you oversee the auditing of all

10  of the entities?

11  A   Yes.

12  Q   Do you do the collections for all of the

13  entities?

14      MR. SAUNDERS:  Objection as to the form of the

15      question, vague, but go ahead and answer.

16      THE WITNESS:  I oversee the collections for all

17      the entities.

18      BY MR. ROTHMAN:

19  Q   And as far as disbursements goes, you mentioned

20  before ten thousand dollar limit; is that -- is that

21  correct?  Do you oversee disbursements for the entities

22  over ten thousand dollars?

23      MR. SAUNDERS:  Well, I'm going to object to the

24      extent -- I'm going to object as to form as to the

25      characterization of his prior testimony.

1          BY MR. ROTHMAN:

2     Q    I can make it broader if you'd like.  Do you

3  oversee the disbursements for all of the entities that

4  you just mentioned?

5          MR. SAUNDERS:  Object to the form as vague.  Go

6      ahead and answer.

7          THE WITNESS:  I do.

8          BY MR. ROTHMAN:

9     Q    Are there any limits to the disbursements that

10  you oversee?

11          MR. SAUNDERS:  I'm going to object to the

12      question as vague.  Go ahead and answer it.

13          THE WITNESS:  Not that I can think of right

14      now.

15          BY MR. ROTHMAN:

16     Q    Do all financial decisions at the entities you

17  mentioned have to come through you?

18     A    No.

19     Q    Is there a limit?

20          MR. SAUNDERS:  Objection as to form, vague.  Go

21      ahead and answer the best you can.

22          BY MR. ROTHMAN:

23      Q    Maybe I should say, when do you -- when do you

24    limit your involvement in the financial decisions of a

25    subsidiary?

1    MR. SAUNDERS:  Objection to the form of the

2    question as vague.  Go ahead and answer if you can.

3    THE WITNESS:  I'm not sure I can answer the

4    question.

5    BY MR. ROTHMAN:

6    Q    Well, which part of the question is giving you

7    trouble?

8    A    Can you repeat it again.

9    MR. ROTHMAN:  Would you go ahead and read that

10   back.

11   (Thereupon, the last question was read back by

12   the court reporter.)

13   THE WITNESS:  It's very difficult to answer

14   that question.

15   BY MR. ROTHMAN:

16   Q    What about the question is difficult to answer?

17   A    It's very vague.

18   Q    Okay.  Would you rather me go more specific?

19   A    Yes.

20   Q    Okay.  If a subsidiary decides they want to

21   make a financial decision, you had stated earlier that

22   that disbursements -- that you're responsible for

23  disbursements of subsidiaries, correct?

24          MR. SAUNDERS:  I'm going to object to the form

25      of the question.

1        BY MR. ROTHMAN:

2    Q    Okay.  Correct me please.  I don't want to

3  misstate things.

4    A    I said I provide oversight.

5    Q    Oversight, okay.

6    A    Yes.

7    Q    So you were overseeing the decisions made at

8  the subsidiaries, correct?

9        MR. SAUNDERS:  Object to the form of the

10        question.  It's vague and mischaracterizes what he's

11        already testified.

12        BY MR. ROTHMAN:

13    Q    Disbursements.

14    A    I'm sorry.  I'm not following your question.

15    Q    You said you oversee the disbursements from the

16  subsidiaries, correct?

17    A    Provide oversight as to disbursements at the

18  subsidiaries.

19    Q    Okay.  And by providing oversight, what

20  specifically does that mean?

21    A    Insure that the policies and procedures in

22  place regarding the getting the appropriate approvals

23   have been done before a disbursement is made.

24        Q    Does any disbursements made by a subsidiary

25   have to go through World Avenue Holdings first?

1       A       No.

2       Q       What are the limits you're thinking of?  Which

3    disbursements don't go through World -- don't need World

4    Avenue Holdings approval?

5       A       Disbursements for general operating expenses

6    and for the purchase of media.

7       Q       So Holdings does not oversee the disbursements

8    for the purchases of media, correct?

9       A       Correct.

10      Q       Do the subsidiaries themselves make their own

11    disbursements or purchases for media?

12              MR. SAUNDERS:  Objection as to form, vague, and

13          compound, but go ahead and answer it.

14              BY MR. ROTHMAN:

15      Q       I can break it up to purchases and media if you

16    need me to.

17      A       Could you please.

18      Q       Okay, no problem.  So the subsidiaries oversees

19    their own purchases of media, correct?

20              MR. SAUNDERS:  Objection as to form, lack of

21          foundation.

22              THE WITNESS:  The World Avenue subsidiaries are

23      responsible for approving their own purchases of

24      media.

25

1      BY MR. ROTHMAN:

2    Q   Are disbursements, publishers or affiliates

3  overseen by World Avenue Holdings?

4      MR. SAUNDERS:  Counsel, I would also now enter

5      an objection that this is beyond the scope of the

6      topics and the subject matters.  I've given you some

7      leeway.  I'll ask you to proffer where oversight --

8      where this question falls within one of the topics

9      identified in the Notice of Deposition.

10     MR. ROTHMAN:  I was specifically going for

11    number seven, but I can go down if you'd --

12     MR. SAUNDERS:  Number seven is commissions or

13    other compensation paid to anyone in Maryland

14    related to Defendant's promotional and lead

15    generational campaign.

16     Now, this is for Holdings.  And now you're

17    asking him about payments being made by the

18    subsidiaries.  And that's not Holdings.  So I'm

19    trying to give you a little leeway on the

20    relationship between Holdings and the subsidiaries,

21    but you're really going far afield because you're

22    not asking -- you're not asking questions about what

23      Holdings does.  You're asking questions about what

24      the subsidiaries do.

25

1      BY MR. ROTHMAN:

2      Q    All right.  Let's do it this way.  Holdings,

3   does World Avenue Holdings hire anyone besides its

4   employees.  We'll start there.

5           MR. SAUNDERS:  Object on the grounds that it's

6        vague.  Go ahead and answer if you can.

7           THE WITNESS:  I don't know how to answer that

8        question.

9           BY MR. ROTHMAN:

10     Q    Let's just start with subject number one.  I

11  know you've gone over these with Counsel.  World Avenue

12  Holdings contacts either directly or indirectly --

13  directly or through agents with persons in Maryland.

14  Okay.

15          Can you tell me whether World Avenue Holdings

16  has any contacts either directly or through its agents

17  with persons in Maryland?

18          MR. SAUNDERS:  I'm going to object to the form

19       of the question.  It's compound.  Go ahead and

20       answer if you can.

21          THE WITNESS:  I do not understand what the

22       definition of an agent is.

23          BY MR. ROTHMAN:

24      Q    Okay.  An agency for the purposes of this

25  question is a person or entity that you hire and

1   exercise control over in order to fulfill an objective

2   that you name.  Okay.

3        MR. SAUNDERS:  I'm going to object as to -- I

4        don't think that is maybe barely -- I'm going to

5        object, form of the question being vague and

6        incorrect.  Go ahead and answer if you can to the

7        extent it calls for a legal conclusion.  Go ahead

8        and answer if you can.

9        THE WITNESS:  To the best of my knowledge World

10       Avenue Holdings does not have contact either

11       directly or through agents with persons in Maryland.

12       BY MR. ROTHMAN:

13  Q    Does World Avenue Holdings -- well, let's back

14  up a bit.  Before you said World Avenue Holdings is --

15  performs a management and oversight function of the

16  other subsidiaries, correct?

17       MR. SAUNDERS:  I'm going to object to the form

18       of the question as vague, also asked and answered I

19       think three or four times, but go ahead and answer.

20       THE WITNESS:  World Avenue Holdings provides

21       management oversight to its subsidiaries.

22       BY MR. ROTHMAN:

```
23        Q    To its subsidiaries.  Does it do that directly?

24        A    The employees of World Avenue Holdings provides

25  management oversight to the subsidiaries of World Avenue
```

1  Holdings.

2      Q    Directly; meaning, they do it themselves?

3      A    They do it themselves, correct.

4      Q    And they do not hire anybody else to do

5  management or oversight of the subsidiaries?

6          MR. SAUNDERS:  I'm going to object to the form

7      of the question and state that it is outside the

8      scope of the subject matter.  I'll let you answer

9      this one.  I'll let you answer this one.  Go ahead.

10      And also objection, asked and answered.

11          THE WITNESS:  The employees of World Avenue

12      Holdings provides management oversight directly to

13      the subsidiaries of World Avenue Holdings.

14          BY MR. ROTHMAN:

15      Q    And they do so from Florida -- Sunrise,

16  Florida?

17      A    The employees of World Avenue Holdings provides

18  management oversight to the subsidiaries of World Avenue

19  Holdings from Sunrise, Florida.

20      Q    Are any of the subsidiaries or their agents

21  located in Maryland?

22          MR. SAUNDERS:  I'm going to object to the form

23     of the question as compound and outside the scope of

24     the subject matter of the deposition.  I'll ask you

25     to rephrase the question because there is part of

1       this question I will allow him to answer.  And then

2       I think we're going to draw a line.  And there's

3       part of this question, if I understand how you're

4       asking it, that I'm going to instruct him not to

5       answer.

6            MR. ROTHMAN:  Which part are you going to

7       instruct him not to answer.

8            MR. SAUNDERS:  I'm not rephrasing because I'm

9       not gonna be accused of, as you did earlier, of

10      trying to coach the witness.  So you have to ask

11      your questions.  I've made my objection as to form.

12           BY MR. ROTHMAN:

13      Q    Okay.  Are any of the subsidiaries located in

14  Florida?  I'm sorry.  Are any of the subsidiaries

15  located in Maryland.  Pardon me.  Strike that prior.

16      A    None of World Avenue Holdings subsidiaries are

17  located within the State of Maryland.

18      Q    Does World Avenue Holdings oversee any

19  subsidiary work done in Maryland?

20           MR. SAUNDERS:  I'm going to object to the form

21      of the question as no foundation and vague.  Go

22      ahead and answer.

23          THE WITNESS:  Can you repeat the question for

24     me please.

25

1       BY MR. ROTHMAN:

2       Q    Does World Avenue Holdings oversee any --

3            MR. ROTHMAN:  Would you mind reading that back.

4            (Thereupon, the last question was read back by

5       the court reporter.)

6            MR. SAUNDERS:  Same objection, go ahead.

7            THE WITNESS:  World Avenue Holdings provides

8       management oversight to its subsidiaries.

9            MR. ROTHMAN:

10      Q    Okay.  That wasn't my question.  It's

11      specifically related to Maryland.

12      A    World Avenue Holdings does not provide

13      management oversight within the State of Maryland.

14      Q    More specifically my question was:  Does it

15      oversee work done in the State of Maryland?

16      A    World Avenue Holdings does not provide

17      management oversight for work being done in the State of

18      Maryland.

19      Q    I want to go down to number two.  Have you had

20      a chance to read number two?

21      A    Yes.

22      Q    Does World Avenue Holdings -- has World Avenue

23  Holdings sent any e-mail to persons in Maryland as part

24  of a promotional or lead generation campaign?

25      A    World Avenue Holdings does not engage in

1   promotional or lead generation campaigns.

2      Q    Well, more specifically my question was:  Has

3   World Avenue Holdings sent any e-mails to someone in

4   Maryland as the result of a promotional or lead

5   generation campaign?

6           I didn't ask what they engage in.  I asked if

7   they sent any e-mails.

8      A    World Avenue Holdings does not send e-mails as

9   part of any promotional or lead generation campaign.

10     Q    To Maryland?

11     A    No.  I stand by my statement, period.

12     Q    Anywhere, period, okay.  But World Avenue

13  Holdings still does provide oversight to those functions

14  done by the subsidiaries, correct?

15          MR. SAUNDERS:  Objection, asked and answered

16      multiple times and also vague and ambiguous.  Go

17      ahead and answer if you can.

18          THE WITNESS:  Can you repeat.

19          MR. ROTHMAN:  I knew you were going to ask me

20      to do that.  If you wouldn't mind.

21          (Thereupon, the last question was read back by

22      the court reporter.)

23          MR. SAUNDERS:  Same objection.

24          BY MR. ROTHMAN:

25     Q    Do you understand what the question is asking?

1    A    No.

2    Q    World Avenue Holdings, does it oversee the lead

3    generation campaigns or promotional campaigns done by

4    the subsidiaries?

5         MR. SAUNDERS:  Objection, asked and answered.

6         Go ahead and answer.

7         BY MR. ROTHMAN:

8    Q    In Maryland?

9         MR. SAUNDERS:  Same objection, go ahead and

10        answer.

11        THE WITNESS:  World Avenue Holdings does not

12        provide day-to-day operational support to the

13        subsidiaries.  They provide high level oversight,

14        management oversight to the World Avenue

15        subsidiaries.

16        BY MR. ROTHMAN:

17   Q    What would be an example of a management

18   oversight decision that World Avenue Holdings might

19   make?

20        MR. SAUNDERS:  Objection, asked and answered.

21        Go ahead and answer if you can.

22        THE WITNESS:  World Avenue Holdings will make

23      corporate strategic decisions about the subsidiaries

24      and what functions they perform.

25

1        BY MR. ROTHMAN:

2        Q    So will World Avenue Holdings decide something

3    as minute as what type of media that a subsidiary might

4    engage in?

5        A    No.

6        Q    No.  Will it decide something such as who a

7    subsidiary might use to perform some task?

8        A    Depends upon the task.

9        Q    Like if they say we want to purchase -- would

10   World Avenue Holdings say something to a subsidiary such

11   as I want to see more banner adds?

12       A    No.  World Avenue Holdings does not get

13   involved in making decisions about banner adds at World

14   Avenue Holdings subsidiaries.

15       Q    What about who to use for campaigns?

16       A    World Avenue Holdings does not get involved in

17   decisions about who its subsidiaries use for its

18   marketing campaigns.

19       Q    Let's move to number three.  Have you had a

20   chance to read that?  Okay.  My question involves

21   Holdings and contacts in Maryland.  Okay.

22            Does World Avenue Holdings have any record --

23  strike that.  Let me make it smaller.   Does World

24  Avenue Holdings operate any website?

25      A    Not to my knowledge.

1     Q    Would there be anybody else who might have

2  better knowledge about this within Holdings?

3       MR. SAUNDERS:  I'm going to object to the form

4    of the question.  Go ahead and answer if you can.

5       THE WITNESS:  I don't know.

6       BY MR. ROTHMAN:

7     Q    You don't know if somebody would have better

8  knowledge?

9     A    I don't know if any of the other World Avenue

10  Holdings employees would have a better knowledge as to

11  whether World Avenue Holdings operates websites.

12     Q    Does World Avenue Holdings oversee websites

13  operated by subsidiaries?

14       MR. SAUNDERS:  I'm going to object on the

15    grounds that this goes outside the topics listed on

16    the deposition -- listed in the 30B6 Notice, but go

17    ahead and answer this.  Go ahead.

18       THE WITNESS:  Sure.  I believe there is one

19    website that is owned by a subsidiary that World

20    Avenue Holdings oversees.

21       BY MR. ROTHMAN:

22     Q    Can you tell me the name of that website?

23     A    I believe it's Worldavenue.com.

24     Q    So what does World Avenue -- pardon me.  Did

25  you say World Avenue Holdings oversees one website

1    operated by a subsidiary of World Avenue Holdings or is

2    it operated by World Avenue Holdings?  Pardon me.

3              Who operates the website?

4         A    I believe the website is registered in the name

5    of a subsidiary and operated for the benefit of World

6    Avenue Holdings.

7         Q    And which subsidiary operates that?

8              MR. SAUNDERS:  Can you read back his prior

9         answer.

10             (Thereupon, the last answer was read back by

11   the court reporter.)

12             THE WITNESS:  What was your question?

13             BY MR. ROTHMAN:

14        Q    Which subsidiary is the website operated for

15   the benefit of?

16        A    Can you restate that question.

17        Q    Your prior answer.  You remember your prior

18   answer?

19        A    Yes, I do.

20        Q    Okay.  Can you explain it more fully.

21        A    What part of it don't you understand?

22        Q    For the benefit of?

23      A     The Worldavenue.com website displays

24   information about World Avenue Holdings.

25      Q     Okay.  So who operates the website?

1    A   I am not sure who operates the website, but the

2  website is registered in the name of a subsidiary.

3    Q   Which subsidiary?

4    A   I believe that Worldavenue.com is registered to

5  World Avenue USA, LLC.

6    Q   Is World Avenue LLC still in existence?

7    MR. SAUNDERS:  Excuse me.

8    THE WITNESS:  I'm sorry?

9    BY MR. ROTHMAN:

10    Q   Is World Avenue LLC still in existence?

11    MR. SAUNDERS:  I'm going to object to the

12  question to the extent it's beyond the scope of the

13  30B6 Notice, but go ahead and answer if you can.

14    THE WITNESS:  World Avenue LLC was renamed

15  World Avenue Holdings, LLC.

16    BY MR. ROTHMAN:

17    Q   World Avenue LLC was renamed World Avenue

18  Holdings, LLC?

19    A   That is correct.

20    Q   So when I see World Avenue, LLC, that's the

21  same thing as World Avenue Holdings, correct?

22    MR. SAUNDERS:  I'm going to object to the

23     question to the extent it calls for a legal

24     conclusion.  Go ahead and answer.

25

1    BY MR. ROTHMAN:

2    Q    Based on what you just told me.

3        MR. SAUNDERS:  Same objection, but go ahead and

4    answer.

5        THE WITNESS:  Can you repeat your question for

6    me please.

7        MR. ROTHMAN:  Can you go two back.

8        (Thereupon, the question referred to was read

9    back by the court reporter.)

10       BY MR. ROTHMAN:

11   Q    Do you need the prior question or is that the

12   one you wanted repeated?

13   A    I don't know if when you see World Avenue, LLC,

14   if it is the same as World Avenue Holdings, LLC.

15   Q    Okay.  But World Avenue Holdings runs the

16   website according to what you just said.

17   A    I said that the Worldavenue.com website is

18   registered to World Avenue USA, LLC.

19   Q    That's different than what you just said.

20       MR. SAUNDERS:  Objection.

21       BY MR. ROTHMAN:

22   Q    You just said that --

23          MR. SAUNDERS:  Form --

24          BY MR. ROTHMAN:  Pardon me, go ahead.

25          MR. SAUNDERS:  To the form of the question.  Go

1    ahead and answer.  Go ahead and ask the question,

2    but it's --

3        BY MR. ROTHMAN:

4    Q    You just stated World Avenue -- World Avenue,

5    LLC is the same thing as World Avenue Holdings, LLC.

6    A    I did not say that.  I said that I am not sure

7    when you see the name World Avenue coma LLC that you can

8    assume that it is the same as World Avenue Holdings coma

9    LLC.

10   Q    Okay.  And then after that -- well, let's move

11   on.  Does -- what info -- information about World Avenue

12   Holdings is contained on the website?

13   A    I can't remember at this time.

14   Q    Does the Worldavenue.com website advertise

15   World Avenue Holdings?

16       MR. SAUNDERS:  Objection as to form, vague.  Go

17       ahead and answer if you can.

18       THE WITNESS:  I don't remember.

19       BY MR. ROTHMAN:

20   Q    When was the last time you visited the website?

21   A    I visited Worldavenue.com when the website was

22   redesigned and launched and relaunched.

23     Q     When was that?

24     A     I don't remember.

25     Q     A year ago?

1    A    I don't remember.

2    Q    Who puts the information -- strike that.  Let

3    me rephrase.  Does the information contained on the

4    Worldavenue.com website pertain to World Avenue

5    Holdings?

6         MR. SAUNDERS:  Objection to the form of the

7         question as vague.  Go ahead and answer.

8         THE WITNESS:  I can't remember.

9         BY MR. ROTHMAN:

10   Q    Would there be somebody better at World Avenue

11   Holdings who might be able to answer that question?

12   A    I don't know.

13   Q    What don't you know?

14   A    I don't know if there would be someone at World

15   Avenue Holdings who would be better able to describe the

16   Worldavenue.com website.

17   Q    Do you know who puts the content on the

18   Worldavenue.com website?

19   A    Yes, I do.

20   Q    Who is that?

21   A    That is Linda Parlon.

22   Q    And would Linda Parlon know more about the

23  content of the website?

24        A     I don't know what Linda Parlon knows or doesn't

25  know.

1    Q    Does the website have an interactive feature

2  where somebody might contact World Avenue Holdings with

3  a comment or a question?

4    A    I don't remember.

5    Q    Does -- would Ms. Parlon be the best person to

6  ask?

7    A    I don't know if she would be the best person to

8  ask about that feature.

9    Q    Do you know what is on the website?

10    A    I believe the website has information about

11  World Avenue Holdings.

12    Q    If somebody from Maryland wanted to go on and

13  hire World Avenue Holdings, would they be able to do so

14  or contact you at least through the website?

15        MR. SAUNDERS:  Objection as to form, compound

16        question.  Go ahead and answer if you can.

17        THE WITNESS:  Sure.  World Avenue Holdings is a

18        holding company for its subsidiaries.  It's not in

19        the business of soliciting external customers.

20        BY MR. ROTHMAN:

21    Q    If somebody wanted to hire World Avenue USA,

22  would they be able to do so from the website?

23        MR. SAUNDERS:  Objection as to the form of the

24     question and as it goes beyond the scope of the

25     Notice, but go ahead and answer if you can.

1          THE WITNESS:  Can you repeat the question for

2     me please.

3          BY MR. ROTHMAN:

4     Q     If somebody wanted to hire World Avenue USA as

5     its media company, would they be able to do so through

6     the Worldavenue.com website?

7     A     I don't believe so.

8     Q     Does the World Avenue -- well, strike that.  Do

9     any of the other World Avenue Holdings subsidiaries

10    operate their own website?

11    A     Yes.  I believe that one of the other

12    subsidiaries operates its own website.

13    Q     Which subsidiary is that?

14    A     The Useful.

15    Q     Do you know the website address?

16    A     I believe it's the useful.com.

17    Q     Does Holdings -- does Holdings oversee the

18    useful.com website?

19    A     World Avenue Holdings has nothing to do with

20    the useful.com website.

21    Q     It doesn't put content on there?

22    A     World Avenue Holdings does not put content on

23  the useful.com.

24       Q    Does World Avenue Holdings own any copyrights

25  that appear on either of those websites?

1     A     Can you repeat the question for me please.

2     Q     Does World Avenue Holdings own any copyrights

3 that appear on either of those websites?

4     A     World Avenue Holdings does not put content on

5 the useful.com and does not have any copyrights relating

6 to the useful.com.

7     Q     I'm going to show you now what's been marked as

8 Plaintiff's Exhibit 3 for identification.

9           (Thereupon, the document referred to was marked

10 as Plaintiff's Exhibit No. 3 for identification.)

11          MR. SAUNDERS:  Okay.

12          MR. ROTHMAN:  Since I only have one copy, would

13     you like me to make another copy?

14          MR. SAUNDERS:  Well, at some point we'll get

15     another copy.

16          BY MR. ROTHMAN:

17     Q     Okay.  Do you recognize that document?

18          MR. SAUNDERS:  I'm going to object to the

19     question.

20          BY MR. ROTHMAN:

21     Q     Do you recognize that document?

22          MR. SAUNDERS:  Well, go ahead and answer that.

23          THE WITNESS:  It appears to be a screen shot of

24      the Useful's website.

25

1          BY MR. ROTHMAN:

2     Q     Is that your electronic signature up on top of

3     that page?

4          MR. SAUNDERS:  Object to the form of the

5     question.  It's outside the scope of the Notice of

6     Deposition as this is -- the witnesses has

7     identified this as a screen shot of the Useful's

8     website.  And there's no reference to the Useful's

9     website in the Notice for the 30B6 deposition of

10    World Avenue Holdings.

11         MR. ROTHMAN:  Are you going to permit him to

12    answer questions about that?

13         MR. SAUNDERS:  No.

14         MR. ROTHMAN:  Will he be allowed to answer

15    questions about the copyright at the bottom for

16    World Avenue Holdings on the useful screen shot?

17         MR. SAUNDERS:  Depending upon what question you

18    ask.  I can only respond to the questions that you

19    ask because otherwise you're going to accuse me of

20    coaching the witness.

21         BY MR. ROTHMAN:

22    Q     Well, Mr. Dhana, you just told me a minute ago

23    that World Avenue Holding does not have any copyrights

24    that appear on the usful.com website and here's a screen

25    shot.

1       MR. SAUNDERS:  I'm not sure that accurately

2    characterizes -- I'm going to object.  I'm not sure

3    that accurately characterizes what he said.

4       MR. ROTHMAN:  We can read it back if you like.

5       BY MR. ROTHMAN:

6    Q    Mr. Dhana, would you like the reporter to read

7  back your response?

8    A    Yes please.

9       (Thereupon, the last answer was read back by

10  the court reporter.)

11      THE WITNESS:  I should have prefaced that by

12    saying to the best of my recollection.

13      BY MR. ROTHMAN:

14    Q    Now, given Exhibit Number 3, do you wish to

15  change your answer?

16    A    I'm sorry.  What's your question?

17      BY MR. ROTHMAN:

18    Q    Given the Exhibit that I just handed you, do

19  you wish to change your answer?

20    A    My answer to what?

21    Q    The prior question.

22    A    Can you read -- can we have the question read

23  again please.

24           (Thereupon, the question referred to was read

25  back by the court reporter.)

1          THE WITNESS:  I think I'm going to stand by my

2     original statement.

3          BY MR. ROTHMAN:

4     Q    Does World Avenue Holdings own any trade names

5     or trade marks?

6          MR. SAUNDERS:  I'm going to object to the form

7     of the question as outside the scope of the Notice

8     because the Notice is limited to the ownership of

9     item thirteen.

10         MR. ROTHMAN:  Item thirteen, correct.

11         MR. SAUNDERS:  Is limited to the ownership of

12    the trade names, domain name, IP addresses, URLs

13    that appear -- that appear in e-mails received by

14    Plaintiffs and others in Maryland.

15         So to the extent that we were talking about --

16    I think we're limited to the sixty-five or

17    sixty-eight thousand e-mails that you produced.  So

18    if we can get that list, then he can answer as to

19    those.

20         MR. ROTHMAN:  I'm sorry.  List of what?

21         MR. SAUNDERS:  Your -- category thirteen is

22    qualified by the e-mails received by Plaintiff.

23          MR. ROTHMAN:  And you have copies -- pardon me.

24          MR. SAUNDERS:  So it's your deposition.

25          MR. ROTHMAN:  You have copies of the

1     sixty-eight thousand e-mails, correct?

2     MR. SAUNDERS: Yeah, but you got to give him

3     the list. You got to give him the list. He hasn't

4     memorized the list.

5     MR. ROTHMAN: He's your 30B6 here.

6     MR. SAUNDERS: You've got to remind him of

7     what's in there. He doesn't have a photographic

8     memory of all those. You asked an open-ended

9     question about any, so that's -- I'm objecting to

10    the question.

11    MR. ROTHMAN: Okay, I'll rephrase.

12    BY MR. ROTHMAN:

13    Q   In the sixty-eight thousand three hundred

14  e-mails thus far received by the Plaintiff which have

15  been provided to your Counsel, do those e-mails contain

16  any trade marks or trade names registered to World

17  Avenue Holdings?

18    A   The best of my knowledge they do not.

19    Q   Have you examined any portion of the

20  sixty-eight thousand three hundred e-mails provided to

21  your Counsel?

22    A   I have not.

23    Q    So how can you say that you don't know if it

24  contains any trade marks or trade names?

25    A    I can say that those e-mails do not contain any

1   trade marks or trade names that belong to World Avenue

2   Holdings because World Avenue Holdings has no trade

3   marks or trade names.

4      Q   Well, you just told me a minute ago that World

5   Avenue Holdings holds no copyrights, correct?

6      MR. SAUNDERS:  Actually, no.  Well, I don't

7      know.  I'm objecting to the form of the question.

8      Go ahead and answer if you can.  I don't think that

9      characterizes what he said before, so go ahead.

10      THE WITNESS:  I don't believe that's what I

11      said.

12      BY MR. ROTHMAN:

13      Q   What did you say then?

14      A   Can we have the reporter go back and read the

15   transcript back.

16      BY MR. ROTHMAN:

17      Q   Well, I've read it.  And I've had her read it.

18   I want you to explain what you meant.

19      MR. SAUNDERS:  Counsel, the prior question that

20      she read back related to the website for the Useful

21      and was not a question relating to the full scope of

22      World Avenue Holdings.  So you've asked a question

23    as to the Useful website.  And that's what he

24    answered.

25         If you're talking about the question that we

1       re-read.  I don't want to argue with you, but the

2       question we've read back twice was a question

3       limited to the Useful website which is different

4       from what you're asking him now.

5            MR. ROTHMAN:  It was actually both websites,

6       the two that were mentioned previously, both

7       Worldavenue.com and the Useful.

8            MR. SAUNDERS:  If you're going back beyond

9       that, then go ahead.

10           MR. ROTHMAN:  That's why I asked him a broader

11      question, but you objected.  May I be permitted to

12      ask him that broader question in order to get to the

13      answer to this?

14           MR. SAUNDERS:  Go ahead and ask him what you

15      want.

16           BY MR. ROTHMAN:

17      Q    Does World Avenue Holdings own any trade marks

18  or trade names?

19      A    World Avenue Holdings does not hold or own any

20  trade names or trade marks.

21      Q    What about domain names?  Are any domain names

22  registered in World Avenue Holdings name?

23      A      Not to my knowledge.

24      Q      Would somebody at Holdings have better

25   knowledge?

1    A    I don't know.

2    Q    Is somebody at Holdings responsible for

3    overseeing the intellectual property assets of the

4    subsidiaries?

5    A    I believe the subsidiaries are responsible for

6    their own intellectual property.

7    Q    Do you know if World Avenue Holdings owns the

8    copyright to the useful.com web page?

9    A    I don't believe that is the case.

10    Q    Does World Avenue Holdings own any IP addresses

11    or URLs that appear in the e-mails received by the

12    Plaintiff?

13    A    I don't believe that World Avenue Holdings owns

14    URLs or IP addresses.

15    Q    You say you don't believe.  Have you made sure

16    prior to coming here and responding?

17    A    It did not confirm before coming here, but

18    based on my knowledge of World Avenue Holdings

19    disbursements, I don't believe World Avenue Holdings has

20    IP addresses or domain names.

21    Q    Can you explain that a little further.

22    A    I don't believe that World Avenue Holdings is

23  paying for or has purchased IP addresses or domain

24  names.

25      Q    Do you know if they do so through an agent or

1   through a subsidiary?

2       A     Not to my knowledge.

3       Q     Not to your knowledge you don't know or not to

4   your knowledge no, it doesn't?

5       A     I'm confused.

6       Q     Are you saying again you don't know or are you

7   saying no, they don't?

8       A     To my knowledge they do not.

9       Q     What have you done to check that your opinion

10  is correct?

11      A     I haven't done anything to check and insure

12  that my opinion is correct.

13      Q     Has World Avenue Holding -- Holdings, pardon

14  me, disbursed money to anyone in Maryland as a result of

15  the e-mails sent to the Plaintiff?

16      A     Can you repeat the question.

17            MR. ROTHMAN:  Sure.  Can you go ahead and

18      repeat the question.

19            (Thereupon, the last question was read back by

20      the court reporter.)

21            THE WITNESS:  Not to my knowledge.

22            BY MR. ROTHMAN:

23     Q     What have you done to check whether what you're

24   saying now is correct and accurate?

25     A     I searched the World Avenue Holdings vender

1   disbursement files to identify anyone in the State of

2   Maryland that received a disbursement from World Avenue

3   Holdings.

4       Q    Did you come up with any results?

5       A    There were no venders in the file that received

6   a disbursement from World Avenue Holdings that was also

7   located within the State of Maryland.

8       Q    This vender disbursement file contains what

9   type of venders?

10      A    All disbursements made by World Avenue

11  Holdings.

12      Q    Correct.  What type of venders are contained in

13  your vender disbursement files?

14      A    It's basically any vender that provided

15  services to World Avenue Holdings.

16      Q    Are these the same venders who provided

17  services to World Avenue Holdings subsidiaries also.

18           MR. SAUNDERS:  Objection as to form.  That's

19           outside the scope -- outside of the scope of the

20           deposition Notice.  There's nothing in here about

21           disbursements to venders for the subsidiaries.  This

22           is about disbursements.  And I'm assuming you're

23    looking at number seven which is directed at

24    Holdings.

25            MR. ROTHMAN:  Well, it refers to also as we've

1   gone through before, can be contacts either directly

2   or through agents.

3       MR. SAUNDERS:  Which he's answered.

4       MR. ROTHMAN:  And also number six potentially

5   -- well, number seven more likely and number nine

6   and number ten.

7       MR. SAUNDERS:  Which he's answered.

8       MR. ROTHMAN:  We haven't gotten to eight, nine

9   or ten yet.

10      MR. SAUNDERS:  He's answered -- well, given how

11  you've asked the question actually we have.  So as

12  to payments made by the subsidiaries to venders,

13  that's outside the scope of this Notice.  I'm going

14  to instruct him not to answer.

15      MR. ROTHMAN:  All right.  Let me rephrase.

16      MR. SAUNDERS:  I also want to know if we're at

17  a place to take a break.  We've been going for an

18  hour and forty-five minutes.

19      MR. ROTHMAN:  Okay.  Take a break.

20      (Thereupon, after a brief recess, the following

21  proceedings were had:)

22      BY MR. ROTHMAN:

23     Q    Back on the record.  I'm going to show you now

24   Mr. -- is it Dhana?

25     A    It's Dhana.

1    Q    Am I pronouncing it correct?

2    A    Dhana.

3    Q    Dhana, okay.  I'm going to show you now Mr.

4 Dhana a copy of your declaration if I may and I'm going

5 to mark it as Plaintiff's Exhibit 4.

6        (Thereupon, the document referred to was marked

7 as Plaintiff's Exhibit No. 4 for identification.)

8        BY MR. ROTHMAN:

9    Q    Do you recognize that document, Mr. Dhana?

10    A    Yes, I do.

11    Q    Okay.  Is that your signature on page three?

12    A    Yes, it is.

13    Q    Okay, good.  In paragraph five of your

14 Affidavit, you might read that into the record there for

15 us.

16    A    Paragraph five?

17    Q    Yes.

18    A    States Holdings does not engage in any other

19 business activities.  Holdings does not control the

20 day-to-day activity of the World Avenue.  Holdings and

21 World Avenue are separate entities which maintain their

22 own records and exist for different distinct purpose.

23      Q    Thank you.  Following on with that statement

    24    there, what is the purpose of World Avenue Holdings and

    25    how does it -- how does it different than World Avenue

1   USA?

2       MR. SAUNDERS:  I'm going to object on the

3   grounds that this question is outside the scope of

4   the topics set forth in the Notice of Deposition and

5   ask Counsel to proffer which topic this question

6   falls under.

7       MR. ROTHMAN:  Well, first of all, I think it

8   was following on from a question he answered earlier

9   with regard to what it does and why it's there.  I

10  mean, it could follow up on any number of these

11  different topics.  It can follow under -- do you

12  want me to list them all?

13      MR. SAUNDERS:  Yes.

14      MR. ROTHMAN:  It can follow under one.  It can

15  follow under two, seven, nine, and ten.

16      MR. SAUNDERS:  I'm going to go ahead and let

17  the witness answer this question, but I'm not gonna

18  -- I respectfully disagree.  And you know, if it

19  continues much more, I'm going to instruct the

20  witness not to answer.  Go ahead and answer this

21  question.

22      THE WITNESS:  Can you repeat the question

23    please.

24          BY MR. ROTHMAN:

25    Q    Sure.  The last sentence there where you said

1    World Avenue Holdings and World Avenue USA are separate

2    entities which maintain their own records and exist for

3    different purposes.  This is in paragraph five.  Do you

4    see?

5         A    Uh-huh.

6         Q    I wanted to know what you meant by that.

7    What's the purpose of World Avenue Holdings as distinct

8    from World Avenue USA?

9         MR. SAUNDERS:  I'm going to object, asked and

10        answered.  Go ahead.

11        THE WITNESS:  World Avenue Holdings is a

12        holding company whose purpose is to hold the equity

13        of its subsidiaries and provide high level

14        management oversight.

15        World Avenue USA, LLC is a professional service

16        firm that provides shared services primarily

17        accounting and finance, HR, and technology services

18        to other subsidiaries and companies within the

19        group.

20        BY MR. ROTHMAN:

21        Q    Would you describe -- would you describe

22   Holdings as a professional services firm?

```
23      A    I would describe Holdings as a holding company.

24      Q    What does that mean to you?

25      A    An entity that holds the equity of its
```

1  subsidiaries and provides high level management

2  oversight to those subsidiaries.

3      Q     But it is providing services to the

4  subsidiaries, correct?

5      A     World Avenue Holdings is providing management

6  oversight services to the subsidiary.

7      Q     Looking at paragraph number six, you had

8  written World Avenue Holdings does not derive

9  substantial revenue as a direct result of sending

10  commercial e-mail messages received in Maryland.

11          Do you see where that is?

12      A     Yes.

13      Q     Now, what did you mean by that?  Does it derive

14  some revenue as a result of sending commercial e-mail

15  messages received in Maryland?

16      A     World Avenue Holdings does not derive revenues

17  as a direct result of sending commercial e-mail messages

18  received in Maryland.

19      Q     Why did you put substantial in there?

20      A     I don't recall why I put substantial in there.

21      Q     Do you remember when you wrote this or drafted

22  this declaration?

23     A     Yes.

24     Q     When?

25     A     I believe it was back in April of 2009.

1    Q    Was it -- why did you draft this declaration

2  without getting into any conversations with the attorney

3  please?

4    A    Can you repeat your question to me please.

5    Q    You know, I'm going to strike it.  I'd rather

6  go on to use our time.  Are any of the disbursements

7  that you mentioned before from World Avenue Holdings,

8  are any of those disbursements made for the purposes of

9  commercial -- in connection with the sending or

10 receiving of commercial e-mail?

11       MR. SAUNDERS:  Objection, asked and answered.

12       Go ahead and answer.

13       THE WITNESS:  None of the disbursements made by

14       World Avenue Holdings relates to the sending of

15       commercial e-mails.

16       BY MR. ROTHMAN:

17   Q    How do you know that?

18   A    Because I have firsthand knowledge of the World

19 Avenue Holdings disbursements.

20   Q    You've checked that for this -- for this

21 hearing in preparation for today?

22   A    It's something that I have firsthand knowledge

23  of.

24      Q     When was the last time you checked?

25      A     It's not something that I need to check because

1   I have firsthand knowledge of it.

2       Q    How big of a company is World Avenue Holdings?

3       A    World Avenue Holdings has six employees.

4       Q    How much revenue does World Avenue Holdings log

5   in a year?

6           MR. SAUNDERS:  I'm going to object as being

7       outside the scope of the Notice of Deposition.  And

8       I'm going to instruct the witness not to answer that

9       question.

10          BY MR. ROTHMAN:

11      Q    When you just made your response regarding

12  disbursements paid for commercial -- for the sending or

13  receiving of commercial e-mails, did you take -- can you

14  distinguish between the states as far as who

15  disbursements are paid to?

16          MR. SAUNDERS:  I'm going to object to the form

17      of the question as being vague, but go ahead and

18      answer if you can.

19          BY MR. ROTHMAN:

20      Q    Meaning -- do you need further clarification?

21      A    Please.

22      Q    Okay.  I had asked you if World Avenue Holdings

23    made any disbursements for the sending or receiving of

24    commercial e-mail.  But we had limited it to Maryland.

25    Now, in your records is it possible to even distinguish

1   between the states for purposes of disbursements?

2      A    It is possible to distinguish between the

3   states.

4      Q    I'm sorry.  Go ahead.

5      A    That's the end of my response.

6      Q    Well, when you went searching for disbursements

7   in preparation for today, did you just check Maryland's,

8   check for disbursements to Maryland?

9      A    Can you you repeat your question again please.

10      Q    Did you just check for disbursements for

11   Maryland or to a Maryland entity?

12      A    I did a search of World Avenue Holdings vender

13   file to identify any venders in that file whose address

14   was in the State of Maryland.

15      Q    Now, who are venders?

16          MR. SAUNDERS:  I'm going to object to the form

17      of the question.  It is vague.

18          BY MR. ROTHMAN:

19      Q    Who are the venders in the vender file?

20      A    Anyone that receives a payment from World

21   Avenue Holdings.

22      Q    For any reason?

23      A    For any reason.

24      Q    How many venders are in the vender file if you

25   know?

1    A    I do not know.

2    Q    More than ten thousand?

3         MR. SAUNDERS:  Object to the question to the

4    extent it calls for speculation.  Answer if you can.

5         THE WITNESS:  I don't believe there are more

6    than ten thousand venders in the World Avenue

7    Holdings vender file.

8         BY MR. ROTHMAN:

9    Q    What makes you say that?

10   A    Based on my firsthand knowledge of the venders

11   that are paid by World Avenue Holdings.

12   Q    Is it more than five thousand?

13        MR. SAUNDERS:  Counsel, is your question

14   limited to the venders in the State of Maryland or

15   is it all venders?

16        MR. ROTHMAN:  No.  It's all venders because --

17        MR. SAUNDERS:  I'm going to object on the

18   grounds that it's beyond the scope of the Notice for

19   Jurisdictional Discovery.  I'm going to instruct the

20   witness not to answer.

21        BY MR. ROTHMAN:

22   Q    Let me ask you a question:  Is it your

23   assumption that when answering that question that just

24   because a vender is -- disbursement is made to Maryland

25   that they operate in Maryland?

1     MR. SAUNDERS:  Counsel, are you asking the

2     question of the witness that payments to people who

3     are not in Maryland?

4     MR. ROTHMAN: I'm asking about his assumption

5     that he just made in answering the previous

6     question.

7     MR. SAUNDERS:  I'm going to object to the

8     extent it seeks information outside of the scope of

9     the Notice.  Counsel, I would ask you as to limit

10    your questions as they say for example in number

11    seven, commissions or other compensation paid to

12    anyone in Maryland.

13    Contractors, IT -- number ten, contractors, IT

14    professionals, and providers of any services

15    pertaining to promotional or lead generation

16    campaigns who are located in Maryland, so who are --

17    MR. ROTHMAN:  Who were located.

18    MR. SAUNDERS:  Were located in Maryland.

19    MR. ROTHMAN:  When they conducted business with

20    or provided services to Defendant.

21    MR. SAUNDERS:  So my -- I would say to you that

22    -- I'm asking you whether you are limiting your

23      question the way you limited your topics?

24          MR. ROTHMAN:  Yes.  I'm trying to get at just

25      the Maryland people if that's your question.

1         MR. SAUNDERS:  Okay.  People physically located

2     in Maryland.

3         MR. ROTHMAN:  When they did their service, yes.

4         MR. SAUNDERS:  Thank you.

5         THE WITNESS:  Okay.  I'm sorry.  Can you repeat

6     the question.

7         MR. ROTHMAN:  If you wouldn't mind reading it

8     back please.

9         (Thereupon, the last question was read back by

10 the court reporter.)

11         BY MR. ROTHMAN:

12     Q    Is that the question you needed re-read or was

13 it the one before that?

14     A    Can you read the question before that.

15         (Thereupon, the question referred to was read

16 back by the court reporter.)

17         BY MR. ROTHMAN:

18     Q    All right.  Why don't I just move on.  Earlier

19 you had said that World Avenue Holdings provides

20 management and oversight services to the subsidiaries.

21         MR. SAUNDERS:  I'm going to object to the form

22     of the question.  I don't think that is totally

23      accurate that reflects what he says.  The record is

24      what the record is.  You can go ahead and answer.

25

1        BY MR. ROTHMAN:

2    Q    In performing those services World Avenue

3    Holdings, are you with me so far?  You're giving me a

4    puzzled look.

5    A    Because I don't think what you're saying is

6    what I had said before.

7    Q    Okay.  Well, then restate what you had said

8    before.

9        MR. SAUNDERS:  Asked and answered.  We can go

10       back and find it in the record.  Seriously, I think

11       you've asked him this question about eight times

12       now.

13       MR. ROTHMAN:  Well, I was bringing him back to

14       where we were before.  I can go back and just start

15       in with it, but I feel like he'll be confused by it.

16       So that's why I was giving him some background.

17       BY MR. ROTHMAN:

18   Q    You had stated earlier that Holdings oversees

19   financial reporting, correct?

20   A    No, that is not correct.

21   Q    Tell me where I'm wrong.

22   A    Okay.  I said to you that World Avenue Holdings

23    provides management oversight to its subsidiaries.

24        Q    Okay.  And in doing so you said that it does,

25    it provides budgeting oversight, correct?

1     A    Correct.

2     Q    Auditing oversight, correct?

3     A    Correct.

4     Q    Collections oversight, correct?

5     A    Correct.

6     Q    And disbursement oversight, correct?

7     A    Correct.

8     Q    Does World Avenue Holdings oversee the

9  disbursements paid by its subsidiaries to its affiliates

10  and publishers?

11      MR. SAUNDERS:  Objection, asked and answered.

12    Go ahead.

13      THE WITNESS:  The subsidiaries are responsible

14    for their own disbursements.

15      BY MR. ROTHMAN:

16     Q    That wasn't my question.  Do you need me to

17  repeat the question?

18      MR. SAUNDERS:  I'm going to object to the

19    extent that Counsel is arguing with the witness.

20      BY MR. ROTHMAN:

21     Q    Would you like her to repeat the question?

22     A    Let me repeat my response.  The subsidiaries

23  are responsible for their own disbursements.  World

24  Avenue Holdings provides management oversight.

25          MR. ROTHMAN:  If you wouldn't mind reading back

1      the last question.

2           (Thereupon, the last question was read back by

3      the court reporter.)

4           MR. SAUNDERS:  Objection.  I think he's asked

5      and answered it.  Objection, excuse me.

6           THE WITNESS:  I stand by my response.

7           MR. ROTHMAN:  What was his prior response?

8           (Thereupon, the answer referred to was read

9      back by the court reporter.)

10          BY MR. ROTHMAN:

11     Q    Okay.  Do you see the difference between the

12     two?

13     A    I believe what I said was the subsidiaries are

14     responsible for their own disbursements.  World Avenue

15     Holdings provides management oversight.

16     Q    Okay.  And how does it do that?

17     A    We provide the policies and procedures for how

18     disbursements are handled.

19     Q    When does it exercise its management and

20     oversight?

21     A    By the subsidiaries following the policies and

22     procedures.

```
23      Q    So are you saying the only management and

24   oversight you provide is by giving them policies and

25   procedures without follow-up?
```

1      A      World Avenue Holdings provides the policies and

2   procedures.  And we insure that they are followed.

3      Q      Well, my question more specifically was:  When

4   in the process do you exercise your management and

5   oversight, daily, yearly, monthly?

6           MR. SAUNDERS:  Objection as to form, vague and

7           compound.

8           BY MR. ROTHMAN:

9      Q      Go ahead.

10     A      I'm sorry.  I was distracted.  Can you repeat

11  the question.

12          MR. ROTHMAN:  I'm sorry.  Could you re-read the

13          question.

14          (Thereupon, the last question was read back by

15  the court reporter.)

16          BY MR. ROTHMAN:

17     Q      Does that help?

18     A      We exercise our oversight whenever

19  disbursements occur.

20     Q      When do they occur?

21     A      Disbursements occur on an as needed basis.

22     Q      So daily?

```
23      A     They occur on an as needed basis.

24      Q     So you're saying there's no regular schedule?

25      A     No, there is not.
```

1     Q    What I'm asking as far as the management and

2  oversight goes is:  What does it do to earn -- for World

3  Avenue Holdings to earn its fee?  When does it exercise,

4  what part in the process?

5        MR. SAUNDERS:  Objection as to form, lack of

6        foundation.

7        MR. ROTHMAN:  Should I break down the process

8        for him?

9        MR. SAUNDERS:  Again, I'm also going to object

10        on the grounds that this is beyond the scope of the

11        topics listed in the Notice of Deposition.

12        I would ask Counsel to proffer where any

13        oversight provided by World Avenue Holdings is

14        captured by -- overpayments made by subsidiaries is

15        captured in the topics.

16        MR. ROTHMAN:  Are we going to do this again?

17        MR. SAUNDERS:  Well, if you're going to keep

18        asking questions that are outside of the scope of

19        the topics, I'm going to keep objecting and asking

20        you to make a proffer, so that we can make a record

21        for Judge Day.

22        BY MR. ROTHMAN:

23     Q    Well --

24          MR. SAUNDERS:   And if your comment now is that

25     this has already been done, then that is

1    acknowledging that it's been asked and answered in

2    which case then we don't have to do it again.  You

3    can withdraw the question.

4         MR. ROTHMAN:  It has not been done again.  It

5    has not been done before.

6         MR. SAUNDERS:  Okay.  Then I ask you to make a

7    proffer as to how this question going to oversight

8    over disbursements by subsidiaries by World Avenue

9    Holdings in the payment of the fee comes under one

10   of the -- which topics does it come under?

11        MR. ROTHMAN:  I am proffering this -- do you

12   want me to give the subject matters?  Do you want me

13   to go ahead and tell you what I'm looking for?

14        MR. SAUNDERS:  No.  I want you to identify the

15   number of the topic that this is covered by.

16        MR. ROTHMAN:  I think this is the contacts.

17   And this is contact with persons potentially in

18   Maryland.  And I'm trying to figure out what

19   oversight role they play.  If they're directly --

20   World Avenue Holdings is directly in contact with

21   people that are providing services in Maryland.

22        MR. SAUNDERS:  Okay.  Now, by definition we

23    know from your question that is clearly not a direct

24    contact because you're asking about World Avenue

25    interaction with its subsidiary.  We know that none

1    of its subsidiaries are in Maryland, correct?

2        MR. ROTHMAN:  No.  We don't know that.

3        MR. SAUNDERS:  You already asked him.

4        MR. ROTHMAN:  He did not answer with regard to

5    agents.  He did not answer with regard to the

6    subsidiaries and their agents.  There's a big cloud

7    out there.

8        MR. SAUNDERS:  Subsidiaries and their agents

9    are not part of this question.

10        MR. ROTHMAN:  I have included in number one,

11    deponents either directly or through agents with

12    persons in Maryland.  I've also defined as

13    previously noted, I've defined person to include

14    that all of those entities.  And I've also included

15    you to include parties to whom this Notice is

16    addressed, successors, assigns, legal

17    representatives.

18        I've also gone ahead and noted that number one

19    includes contacts both -- either directly or through

20    agents, so that means indirectly.  And so I'm

21    getting at contacts in Maryland done through

22    subsidiaries.

23          MR. SAUNDERS:  Okay.  The Judge has already

24     told you that subsidiaries is not included in the

25     word you.  And you've already asked him whether any

1    of the subsidiaries exist in Maryland.  And he told

2    you no.  They exist in Florida.  I believe the

3    record will show.  The issue of the subsidiaries

4    agents is not part of number one.  And if that's

5    what you're driving at, I'm going to instruct him

6    not to answer because the Judge has already told you

7    that's not there.

8        MR. ROTHMAN:  Well, I guess we're going to have

9    to agree to disagree.  So I think the record is

10   clear.  You're instructing him not to answer.  I'll

11   move on.

12       MR. SAUNDERS:  If your question is about the

13   agents of subsidiaries, yes, I'm instructing him not

14   to answer.  If your question is about agents of

15   World Avenue Holdings, you can ask him the question.

16       The subsidiaries, he's already answered this

17   direct.  You're going over this for about the fourth

18   time.  And if now you're trying to work in, as you

19   said you were, the agents of subsidiaries, they are

20   not covered by topic number one.

21       MR. ROTHMAN:  I am talking about agents of

22   World Avenue Holdings via whatever form they're in.

23          MR. SAUNDERS:  Then ask that question.

24          MR. ROTHMAN:  Can you read the last question

25     back.

1          (Thereupon, the last question was read back by

2     the court reporter.)

3          BY MR. ROTHMAN:

4     Q     So does it exercise control over disbursements,

5     World Avenue Holdings.  Does it exercise control over

6     the disbursements to -- I'll follow on Sandy's term, Mr.

7     Saunders's term agent, not subsidiaries, agents and

8     we'll limit it to Maryland for now.

9          MR. SAUNDERS:  Objection, asked and answered.

10     Go ahead.

11          BY MR. ROTHMAN:

12     Q     Do you understand the question?

13     A     No.  Can you be more explicit.

14     Q     Okay.  When does World Avenue Holdings exercise

15     its management and control over the disbursements to its

16     agents?

17          MR. SAUNDERS:  Objection as to form.

18          THE WITNESS:  Your question is not clear.  You

19     need to be more explicit.

20          BY MR. ROTHMAN:

21     Q     Okay.  Which part is unclear to you?

22     A     Repeat your question again for me please.

23          BY MR. ROTHMAN:

24      Q    When does World Avenue Holdings exercise

25  control over the disbursements to its agents?

1        MR. SAUNDERS:  Objection as to form.

2        THE WITNESS:  World Avenue Holdings exercises

3    control over World Avenue Holdings disbursements by

4    following the policies and procedures that are in

5    place for World Avenue Holdings disbursements.

6        BY MR. ROTHMAN:

7    Q    Can you recall recently a disbursement that was

8    denied because it wasn't in conformance with World

9    Avenue Holdings policy?

10   A    At this time I cannot recall a World Avenue

11   Holdings disbursement that was denied because it was not

12   conforming to World Avenue Holdings policy for

13   disbursements.

14   Q    Does that mean it doesn't exist or does that

15   mean that you can't recall?

16   A    It means that I cannot recall.

17   Q    Okay.  Who might have better knowledge of that?

18   A    I don't know.

19   Q    Does World Avenue Holdings oversee

20   disbursements -- well, let me strike that.  Does World

21   Avenue Holdings oversee the disbursements made by the

22   the Useful, LLC?

23          MR. SAUNDERS:  I'm going to object as to this

24     question as being outside the scope of the Notice of

25     Deposition and ask Counsel to please proffer where

1     World Avenue Holdings oversight over disbursements,

2     by the subsidiaries Useful.  And at this point the

3     question is any disbursement is covered by the

4     thirteen categories in the Notice of Deposition.

5          MR. ROTHMAN:  Well, it appears self evident to

6     me that the contacts would encompass that point that

7     you're just making.  And also it's encompassed by a

8     bunch of different items including whether these

9     Useful disbursements went for the purposes of paying

10    someone for commercial e-mail.

11         MR. SAUNDERS:  Counsel, again it is contacts

12    either directly or through agents with persons in

13    Maryland.  I will ask you then to identify the agent

14    or are you asking him about oversight over World

15    Avenue Holdings -- what disbursements are you asking

16    him whether they exercise oversight authority for to

17    bring them within topic number one?

18         MR. ROTHMAN:  What disbursements?

19         MR. SAUNDERS:  What payments?  You're asking

20    him about oversight over payments, right?

21         MR. ROTHMAN:  I am.

22         MR. SAUNDERS:  Okay.  By whom?

23          MR. ROTHMAN:  World Avenue Holdings.

24          MR. SAUNDERS:  You're asking about World Avenue

25     Holdings oversight over World Avenue Holdings

1    payments.

2         MR. ROTHMAN:  No.

3         MR. SAUNDERS:  Well, that's what I just asked

4    you.  Whose payments?

5         MR. ROTHMAN:  It's agents of World Avenue which

6    we're saying -- I guess I don't understand your

7    problem with the question.  Go ahead.

8         MR. SAUNDERS:  My question, is to go through

9    the topic.  You're asking for Holdings contacts with

10   persons in Maryland, correct, either directly so

11   that would -- to the extent you're talking about

12   payments, you're talking about Holdings payments

13   directly to somebody in Maryland of which you've

14   asked him and he has answered.

15        MR. ROTHMAN:  I'm talking -- okay.  I

16   understand.  I understand.

17        MR. SAUNDERS:  Now the question is:  Is it

18   Holdings payments that would have to be through an

19   agent.

20        MR. ROTHMAN:  No, it was -- I understand.  The

21   payments would have been through the Useful or one

22   of the Useful agents.

23          MR. SAUNDERS:  And to the extent you are asking

24     for one of the Useful's agents, I am instructing him

25     not to answer because that is clearly not within the

1    scope of this topic because the Useful is not in the

2    predicate.  It is Holdings that is in the predicate

3    that is in the deponent's contacts.

4          MR. ROTHMAN:  Well, the deponents contacts --

5          MR. SAUNDERS:  Through it's -- you're going to

6    say -- you're saying that you wrote this as to say

7    through agents other than Holdings agents?

8          MR. ROTHMAN:  Through agents other than

9    Holdings agents.  No.  I was using Holdings agents

10    which would be in this particular case of my

11    question the Useful or one of the Useful's contacts.

12          MR. SAUNDERS:  So you're saying that if an

13    agent is an agent of the Useful, it automatically

14    makes them the agent of Holdings?

15          MR. ROTHMAN:  Well, I'm trying to figure out

16    what level of control they're exercising.

17          MR. SAUNDERS:  Well, why don't you find out

18    whether such an agent exists before you ask about

19    level of control to see if it comes within the

20    topic.

21          MR. ROTHMAN:  I'm trying and I did --

22          MR. SAUNDERS:  No, you haven't tried.

23        MR. ROTHMAN:  And you have gone ahead and not

24    allowed me to ask him any of the questions which

25    would have logically lead that.

1          MR. SAUNDERS:  No, you haven't.  You haven't

2     asked -- you've asked maybe two questions to

3     establish an agency relationship with anybody in

4     connection with category number one.

5          MR. ROTHMAN:  I'm not going to argue with you

6     over this.  Would you like me to continue?

7          MR. SAUNDERS:  Yes.

8          BY MR. ROTHMAN:

9     Q    Okay.  We're back to the disbursement and

10 oversight question.  Okay.

11         Do you recall where we were before?

12    A    No.

13         MR. ROTHMAN:  Would you mind reading back the

14    question.

15         (Thereupon, the last question was read back by

16 the court reporter.)

17         BY MR. ROTHMAN:

18    Q    Okay.  So we're going to revise that and say

19 just World Avenue USA oversee disbursements by any of

20 its agents?

21         MR. SAUNDERS:  This was not -- I object to the

22    form of the question.  Can you read the question

23      back please.

24                (Thereupon, the last question was read back by

25   the court reporter.)

1       MR. SAUNDERS:  Now, if I'm not mistaken -- no,

2    stop.  Go ahead.  Don't answer that question.

3    Instruct him not to answer that question.

4       BY MR. ROTHMAN:

5    Q    Okay.  Does World Avenue Holdings direct

6 disbursements by any of its subsidiaries?

7       MR. SAUNDERS:  Objection to the question.  It's

8    beyond the scope of the Notice.  I don't see

9    anything in here that is a question about World

10    Avenue Holdings -- strike that.  Object, beyond the

11    scope.  Again, I would ask Counsel to please

12    proffer.

13       BY MR. ROTHMAN:

14    Q    You can answer unless he instructs you not to.

15       MR. SAUNDERS:  All right.  Go ahead.

16       THE WITNESS:  World Avenue Holdings does not

17    direct the disbursements of its subsidiaries.

18       BY MR. ROTHMAN:

19    Q    Does it control any of the disbursements by its

20 subsidiaries?

21       MR. SAUNDERS:  Again, objection.  The question

22    is beyond the scope of the topics.  And again, we'll

23    ask Counsel to proffer what topic provides for the

24    question that has been asked.  Counsel?

25          MR. ROTHMAN:  Your question is which one --

1          MR. SAUNDERS:  Yes.

2          MR. ROTHMAN:  -- of these topics does this

3     pertain to?

4          MR. SAUNDERS:  Yes.  Which one does it pertain

5     to.  And read the question back please, so Counsel

6     is sure of what he's answering.

7          MR. ROTHMAN:  It directly refers to the

8     deponents contacts either directly or through agents

9     with persons in Maryland.

10         MR. SAUNDERS:  Okay.  Now, you're asking about

11    oversight over subsidiary payments, right?

12         MR. ROTHMAN:  Correct.

13         MR. SAUNDERS:  So obviously the subsidiary --

14    so that's an indirect payment because directly

15    refers to the deponent.

16         MR. ROTHMAN:  Correct.

17         MR. SAUNDERS:  Okay.  So now we're talking

18    about agents?

19         MR. ROTHMAN:  Correct.

20         MR. SAUNDERS:  Who's the agent?  It's the

21    deponent's agent.

22         MR. ROTHMAN:  Correct.

23          MR. SAUNDERS:  Okay.  Who's the agent?

24          MR. ROTHMAN:  I'm trying to get there, who's

25      the agent.

1      MR. SAUNDERS:  You haven't asked him who the

2      agent is.  You've asked him about oversight over

3      payments.  You haven't asked -- don't -- you haven't

4      asked but two questions about agency in this entire

5      deposition.

6      MR. ROTHMAN:  Mr. Dhana, would you step outside

7      a minute.

8      THE WITNESS:  Sure.

9      MR. ROTHMAN:  Thank you.

10     (Thereupon, the following proceedings were had

11  outside the presence of the witness:)

12     BY MR. ROTHMAN:  Sandy, the agency questions

13     I'm asking, okay, what is the problem --

14     MR. SAUNDERS:  You haven't -- because you

15     haven't asked an agency question.  You haven't

16     established -- you've asked one question that might

17     have gone to the issue of whether any of these

18     subsidiaries is an agent of Holdings.

19     And without going to that, the issue of whether

20     Holdings oversees their payments is not covered by

21     this -- by this deposition Notice.  You're just

22     badgering him.

23          MR. ROTHMAN:  You have instructed him not to

24    answer most of my questions that involve the agency

25    relationship.

1        MR. SAUNDERS:  What are you talking about?

2   I didn't instruct him not to answer like two

3   questions.  I have let him answer.  I have bent over

4   backwards to let him answer questions that couldn't

5   be found in these topics.

6        MR. ROTHMAN:  You have instructed him not to

7   answer and you have also said it's beyond the scope

8   of these questions.  So how do you expect me to go

9   ahead and ask him questions about agency if you

10  won't even let me explore the contacts between them.

11  I don't understand your rational.

12       MR. SAUNDERS:  I didn't stop you from asking

13  questions about the agency relationship.  You did

14  ask two and then you moved on.  You moved on on your

15  own.  You came back and asked two questions.  You

16  asked two questions that might go as to the

17  existence of an agency relationship between the

18  subsidiaries and Holdings after we came back.

19       When you started going through the categories,

20  we came back from lunch at 1:59.  We spent roughly a

21  half an hour on his educational background and the

22  issue of oversight in general where I gave you great

```
23      leeway in what to ask him.

24           And then when you started to move onto the

25      topics here, so I think -- and I wasn't keeping
```

1    track of the time precisely other than I noticed

2    that we spent approximately a half an hour if I

3    remember correctly on educational background.

4        And then you started asking questions about

5    subject matter number one where you asked a couple

6    of questions about agency.

7        And Counsel, I will leave it to you to figure

8    out the questions how to establish whether an agency

9    relationship exits between the subsidiaries and

10   World Avenue Holdings.

11       MR. ROTHMAN:  Okay.  If you'll let me go there,

12   I'm ready to go.

13       MR. SAUNDERS:  I'll point out what the funny

14   thing is -- and we went through this with the Judge

15   when we had him on the phone which even the Judge

16   recognized that what's not included, it's not

17   included in the topics.

18       I was giving you a little leeway.  You went

19   back and you asked it already.  You're just

20   retreading ground we started with before.

21       MR. ROTHMAN:  Well, that's certainly not my

22   purpose.  So if you'll let me go there, I'm ready to

23      go.  And if you want to talk with the witness, we

24      can about what to do and when he wants to end.

25           MR. SAUNDERS:  We're here to answer your

1    questions.  The rules say seven hours.  I never

2    thought we'd get to seven hours, but you know, we're

3    here to answer questions.

4         MR. ROTHMAN:  Okay.

5         MR. SAUNDERS:  Hopefully some that are tied to

6    this because the Judge made it really clear, the

7    thirteen topics are what to be covered.  And each

8    time you try to put the subsidiaries in there under

9    you, the Judge has told you, the subsidiaries are

10    not there under you.  So you've got to tie it back

11    to Holdings.

12         MR. ROTHMAN:  Okay.

13         (Thereupon, the following proceedings were had

14    in the presence of the witness:)

15         BY MR. ROTHMAN:

16    Q    Thank you, Mr. Dhana, sorry about that.  Back

17    on the record.

18         Does World Avenue Holdings have any connection

19    to its subsidiaries?

20         MR. SAUNDERS:  I have to object to the form of

21    that question as vague and ambiguous.

22         MR. ROTHMAN:  Okay.  As far as agency goes,

23    we're having -- I understand the miscommunication as

24    to how you want me to go through this.  I started as

25    broadly as I could.

1       MR. SAUNDERS:  I'm going to object to the form

2       of the question as vague and ambiguous.  The witness

3       can go ahead and answer.  Please read the question

4       back.

5       (Thereupon, the last question was read back by

6    the court reporter.)

7       THE WITNESS:  World Avenue Holdings is the

8       holding company for the subsidiaries.

9       BY MR. ROTHMAN:

10   Q    Does World Avenue Holdings meet regularly with

11    the heads of its subsidiaries?

12       MR. SAUNDERS:  Object to the form of the

13       question as vague and ambiguous.

14       THE WITNESS:  World Avenue Holdings meets with

15       the managers of its subsidiaries on an as needed

16       basis to provide management oversight.

17       BY MR. ROTHMAN:

18   Q    Are there contacts between World Avenue

19    Holdings and any of the other employees other than

20    managers?

21   A    I don't understand your question.

22   Q    Is World Avenue Holding on a day-to-day contact

23  with its subsidiaries?

24          MR. SAUNDERS:  Objection as to form.  Go ahead

25      and answer if you can.

1          THE WITNESS:  Can you repeat the question again

2     for me please.

3          BY MR. ROTHMAN:

4     Q    Sure.  Does World Avenue Holding have daily

5     contacts with employees from its various subsidiaries?

6          MR. SAUNDERS:  Objection as to form, vague,

7     ambiguous, and compound.

8          THE WITNESS:  The employees of World Avenue

9     Holdings provide management oversight on an as

10    needed basis to the subsidiaries of World Avenue

11    Holdings.

12         BY MR. ROTHMAN:

13    Q    Now, if a subsidiary of World Avenue Holdings

14    has a problem or concern with one of its clients, does

15    World Avenue Holdings get involved?

16         MR. SAUNDERS:  Objection as to form, vague and

17    ambiguous.  Go ahead and answer if you can.

18         THE WITNESS:  Sure.  World Avenue Holdings does

19    not get involved in the day-to-day operations of its

20    subsidiaries.

21         BY MR. ROTHMAN:

22    Q    Again, if there's a dispute with -- between a

23  subsidiary and one of its -- one of its contacts,

24  clients, whomever, does World Avenue -- will World

25  Avenue intervene?

1        MR. SAUNDERS:  Objection as to form.  Go ahead

2    and answer if you can.

3        THE WITNESS:  World Avenue Holdings does not

4    intervene in the relationship between its

5    subsidiaries and its subsidiaries clients.

6        BY MR. ROTHMAN:

7    Q    So the management and oversight function you

8    were talking about earlier does not pertain to the

9    subsidiaries contacts?

10       MR. SAUNDERS:  Objection as to form, vague and

11   ambiguous.

12       BY MR. ROTHMAN:

13   Q    Do you understand what I'm asking?

14   A    No, I don't.

15   Q    Okay.  Does World Avenue Holdings -- does World

16   Avenue Holdings involve itself in the -- at the

17   operational level of the subsidiaries?

18   A    World Avenue Holdings does not involve itself

19   in the operational level of its subsidiaries.

20   Q    You know, I'm going to take just a five-minute

21   break.

22       MR. SAUNDERS:  It's about that time.

23              (Thereupon, after a brief recess, the following

24    proceedings were had:)

25

     1          MR. ROTHMAN:  I'm going to go ahead and ask you

     2     a couple of questions with regards to the contacts.

     3     You go ahead and do as we've been doing.  And if you

     4     don't want him, Sandy, to go ahead and answer these

     5     questions, then just go ahead and instruct him not

     6     to answer, I guess.

     7          MR. SAUNDERS:  I've been trying to give you

     8     some leeway.  I've given you a lot of leeway, but

     9     let's see.  I just don't know.  Let's see what the

    10     question is.

    11          BY MR. ROTHMAN:

    12     Q    Does World Avenue Holdings oversee any of the

    13   payments by its successors or affiliates to publishers

    14   pardon me.  Strike that.  I am now getting -- does World

    15   Avenue Holdings oversee any payments by its subsidiaries

    16   to publishers or affiliates?  Does that make sense to

    17   you?

    18          MR. SAUNDERS:  I'll object to the form as

    19     vague, but go ahead and answer if you can.

    20          THE WITNESS:  The World Avenue Holdings

    21     subsidiaries are responsible for making their own

    22     payments to their publishers and affiliates.

23          BY MR. ROTHMAN:

24     Q    But World Avenue Holdings audits or oversees or

25     manages those payments, correct?

1        MR. SAUNDERS:  Whoa, whoa, whoa.  Objection,

2    compound.

3        BY MR. ROTHMAN:

4    Q    We'll do them one at a time.  Oversees?

5    A    World Avenue Holdings provides management

6    oversight to its subsidiaries.

7    Q    What does that oversight mean in the context of

8    the payments?

9    A    World Avenue Holdings insures that the

10   subsidiary follows the policies and procedures in making

11   disbursements.

12   Q    What if it doesn't?

13   A    I'm sorry.  When you say what if it doesn't,

14   what do you mean by that?

15       BY MR. ROTHMAN:

16   Q    What if a subsidiary doesn't follow a policy

17   and procedure set by Holdings?

18   A    Then a disbursement is not made.

19   Q    Disbursement is not made.

20   A    Correct.

21   Q    Can you think of a disbursement that was not

22   made?

23          MR. SAUNDERS:  I'm going to object.  This is

24     outside the scope of the Notice.  Go ahead and

25     answer if you can.  I would ask Counsel to proffer

1    which one of these things it follows under as to the

2    policy -- the subject matter of the question, but

3    you can go ahead and answer if you can.

4    THE WITNESS:  I don't think I can answer

5    because the question is so broad and vague.

6    BY MR. ROTHMAN:

7    Q    What is the name of this policies and

8  procedures memo that you're talking about or document

9  you're talking about?

10    MR. SAUNDERS:  Again, I'm going to object.

11    It's beyond the scope of the Notice.

12    BY MR. ROTHMAN:

13    Q    Go ahead and answer.

14    MR. SAUNDERS:  Go ahead and answer if you can.

15    THE WITNESS:  We have a purchasing policy and

16    procedure manual.

17    BY MR. ROTHMAN:

18    Q    Is that what it's called?

19    A    I believe so.

20    Q    Purchasing policy and procedure manual?

21    A    Uh-huh.

22    Q    Is that published or is that created by World

23  Avenue Holdings?

24      A    It was created by World Avenue Holdings.

25      Q    Now, the second and third part of that question

1   earlier is:  Does Holdings manage any of the

2   disbursements made by affiliates -- I'm sorry, made by

3   its subsidiaries to affiliates or publishers?

4           MR. SAUNDERS:  Same objection, beyond the scope

5       of the Notice.  Go ahead and answer if you can.

6           THE WITNESS:  World Avenue Holdings provides

7       management oversight.  The subsidiaries are

8       responsible for their own disbursements.

9           BY MR. ROTHMAN:

10  Q    But Holdings can disallow payments?

11          MR. SAUNDERS:  Same objection as to the scope

12      of the Notice.  Go ahead and answer.

13          THE WITNESS:  Sure.  To the extent that the

14      policies and procedures are set forth by World

15      Avenue Holdings are not followed by the subsidiary,

16      then employees of World Avenue Holdings can prevent

17      disbursements.

18          BY MR. ROTHMAN:

19  Q    Do you know if World Avenue -- if Holdings

20  oversees any disbursements made to any publishers or

21  affiliates in Maryland?

22          MR. SAUNDERS:  Objection, asked and answered.

23      Go ahead and answer.

24           THE WITNESS:  Repeat your question one more

25      time for me.

1     MR. ROTHMAN:  Would you mind?

2          (Thereupon, the last question was read back by

3     the court reporter.)

4          THE WITNESS:  World Avenue Holdings provides

5     management oversight to its subsidiaries.  The

6     subsidiaries are responsible for payments to their

7     publishers and affiliates.

8          BY MR. ROTHMAN:

9     Q    So is the answer you don't know?

10         MR. SAUNDERS:  Objection as to form,

11    argumentative.

12         THE WITNESS:  Are you asking me a question?

13         BY MR. ROTHMAN:

14    Q    Yes.  So is the answer you don't know because

15    the response you gave didn't seem to match my question.

16         MR. SAUNDERS:  Move to strike the last part.

17    It's not a question.  Can you read back if there was

18    a question.

19         (Thereupon, the last question was read back by

20    the court reporter.)

21         MR. SAUNDERS: Can you read back his answer.

22         (Thereupon, the last answer was read back by

23      the court reporter.)

24              BY MR. ROTHMAN:

25      Q    Do you need more guidance, instruction?

1        MR. SAUNDERS:  I would think we need a

2   question.

3        BY MR. ROTHMAN:

4   Q    Okay.  I'll restate the question.  Does World

5   Avenue Holdings oversee any disbursements made to any

6   publishers or affiliates in Maryland?

7        MR. SAUNDERS:  Objection as to form.  Go ahead

8   and answer.

9        THE WITNESS:  World Avenue Holdings provides

10  management oversight to its subsidiaries.  The

11  subsidiaries are responsible for their own

12  disbursements.

13       BY MR. ROTHMAN:

14  Q    We've asked what management oversight means.

15  Can you give me a little definition to that.

16  A    World Avenue Holdings insures that the

17  subsidiaries follow the policies and procedures as set

18  forth by World Avenue Holdings.

19  Q    Do you know if World -- if Holdings -- well,

20  strike that.  Do you know if any of Holdings

21  subsidiaries has business in Maryland?

22       MR. SAUNDERS:  I'll object.  That is outside

23      the scope of the Notice.  And we went through it

24      with the Magistrate that so far the only subsidiary

25      that's been named in this lawsuit is not contesting

1    jurisdiction.  And he said the questions over what

2    the subsidiaries do in Maryland are not the

3    questions for the Holdings witness.  So based on

4    that, I'm going to instruct the witness not to

5    answer that question.

6         MR. ROTHMAN:  Thank you.

7         BY MR. ROTHMAN:

8    Q    All right.  Last question for you.  Do you know

9 -- have you seen Mr. G recently?

10        MR. SAUNDERS:  Objection to the question as

11    beyond the scope of the Notice.  I'll ask Counsel to

12    proffer which topic this is responsive to.

13        MR. ROTHMAN:  I'll withdraw on that basis.  I

14    have nothing further.  We'll keep this open to

15    address my questions remaining.  I think I'm done

16    for today.

17        MR. SAUNDERS:  If you have questions remaining

18    that you haven't asked, I suggest you ask them.

19        MR. ROTHMAN:  No.  The questions I have you've

20    instructed him not to answer, so I think that we're

21    sort of at an impasse in that regard.

22        MR. SAUNDERS:  As to the questions that I've

23    instructed him not to answer if the Judge says he

24    has to answer them, then we'll answer them.  Thank

25    you.

1          MR. ROTHMAN:  Thank you.  Thank you for your

2     time.

3          (Thereupon, the deposition was concluded at

4     6:00 o'clock p.m.)

5

6               FURTHER DEPONENT SAITH NOT.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1   STATE OF FLORIDA      )

2                         Ss:

3   COUNTY OF BROWARD )

4

5

6

7                         _____

8                              FIDEL DHANA

9

10

11

12

13          SWORN to and SUBSCRIBED to before me this
            _____ day of _____, 2009, in and for
14   the City of Fort Lauderdale, County of Broward, State of
     Florida.

15

16

17                         _____
                                Notary Public,
18                              State of Florida at Large.

19

20

21

22
```

23

24

25

1                      ERRATA SHEET

2
    I, the undersigned,_____,do hereby certify
3    that I have read the foregoing deposition and that to
      the best of my knowledge said deposition is true and
4   accurate with the exception of the following corrections
                          listed below:
5             PAGE                        LINE
    NOTES
6            _____
    _____
7   _____
    _____
8   _____
    _____
9   _____

10           _____
    _____
11           Signature                       Date

12
            Sworn to and Subscribed before me this _____
13  day of _____, 2009.

14
                    _____
15                            Notary Public
                              State of Florida at Large
16

17

18

19

20

21

22

23

24

25

1                    C-E-R-T-I-F-I-C-A-T-E

2    State of Florida  )
                       ) Ss
3    County of Broward )

4

5         I, Christine de Moraes, a Registered

6    Professional Reporter, do hereby certify:

7         That prior to being examined, the witness in

8    foregoing proceedings was by me duly sworn to

9    testify to the truth, the whole truth, and nothing

10   but the truth;

11        That said proceedings were taken before me at

12   time and place therein set forth and were taken down

13   by me in shorthand and thereafter transcribed  into

14   typewriting under my direction and

15   Supervision;

16        I further certify that I am neither counsel

17   for, nor related to, any party to said

18   proceedings,nor in anywise interested in the outcome

19   thereof.

20        In witness whereof, I have hereunto subscribed

21   my name.

22        Dated this_____day of_____, 2009

23                            _____

                              Christine de Moraes,

                              My Commission #DD720144

24                            Expires:  November 21, 2011.

25