**IN THE U.S. DISTRICT COURT FOR MARYLAND,
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **BEYOND SYSTEMS, INC.** | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | **Case No. PJM 08 cv 0921** |
| | * | |
| **WORLD AVENUE USA, LLC** | * | |
| successor by merger to NIUTECH, LLC., | * | |
| **DBA THE USEFUL, ET AL.** | * | |
| | * | |
| Defendants | * | |

**PAINTIFF'S OPPOSITION TO
DEFENDANT HOLDINGS' MOTION TO QUASH**

Plaintiff opposes the motion to quash deposition notice filed by Defendant World Avenue Holdings, LLC ("Holdings") on September 9, 2009 at docket 104.

## I. Overview

On July 15, 2009 the Court issued an order at docket 81 stating in part:

1. The Court DEFERS ruling on World Avenue Holding's Motion to Dismiss Amended Complaint [Paper No. 55] pending jurisdictional discovery;

2. Plaintiff shall SERVE World Avenue Holdings with jurisdictional discovery requests within ten (10) days from the date of this Order, with Defendant having thirty (30) days thereafter to respond; and

3. Plaintiff shall FILE a supplemental response to World Avenue Holding's Motion to Dismiss within sixty (60) days from the date of this Order, and Defendant shall file any reply within thirty (30) days thereafter.

Pursuant to the order, Plaintiff issued interrogatories, document requests, a request to enter and inspect, and a deposition notice, all focused on jurisdictional discovery. Holdings objected to all of these discovery requests, refused to allow the inspection, provided incomplete and evasive responses to the written requests, and was less than cooperative in the deposition. Following Holdings' frustration of Plaintiff's discovery efforts including the deposition, Plaintiff

issued an amended deposition notice in an attempt to reconvene the deposition. The motion to quash is directed at that amended notice. Plaintiff asks that the motion to quash be denied, and that Plaintiff be permitted to resume the deposition under the amended notice.

## II.  Re-definition of "YOU"

Defendant re-defined and constricted the definition of "YOU" in Plaintiff's discovery requests, including the deposition notice, to suit its own purposes. For example, Plaintiff's interrogatories (excerpts attached) define "YOU" as follows:

> 8: YOU and YOUR is understood to mean defendants WORLD AVENUE HOLDINGS, LLC ("WAH") including its predecessors, successors and/or assignees, as well as WAH's current employees, attorneys, accountants, agents, affiliates, contractors, representatives, corporate affiliates, publishers, vendors, advertisers, ad networks, an/or anyone else over whom WAH directly controls, directs, or employs.

> In its responses to the interrogatories, Holdings re-defined "YOU" as follows:

> I. Holdings objects to the definition of "YOU" and "YOUR," on the grounds that it is overly broad, unduly burdensome and oppressive, and beyond the scope of the limited discovery, permitted by the Court's order dated July 14, 2009, to support  BSI's supplemental opposition to Holdings' motion to dismiss for lack of personal jurisdiction. . . . For purposes of responding to these jurisdictional interrogatory requests, Holdings understands the terms "YOU" and "YOUR" to mean Defendant World A venue Holdings, LLC.

> Plaintiff's original deposition notice, attached, contains the following definition:

> You means the party or parties to whom this Notice is addressed, and includes all successors, assigns, legal representatives, and in the event of a misnomer, the entity or person of like name who is clearly intended by context, from the facts alleged in the latest amended  complaint.

Plaintiff's use of the word "You" was intended to elicit information and to permit examination on Holdings' connections with other persons, including individuals and entities

within the World Avenue "family" of entities, to expose ties that might create an agency relationship for purposes of personal jurisdiction. Holdings' interactions with, control over, and/or receipt of revenues or benefits from others might establish such a connection. Defendant World Avenue USA, LLC (WAUSA) has already waived personal jurisdiction, presumably because it has sufficient ties to Maryland. Holdings' ties to, and interaction with, WAUSA are clearly discoverable. Without thorough discovery on point, it is impossible to fill in the complete picture of Holdings' ties to Maryland through WAUSA and any other entities within or without the World Avenue "family."1

At its Rule 30(b)(6) deposition on August 26, 2009, Holdings resisted questioning about its association or affiliation with persons who might be agents for purposes of personal jurisdiction, apparently based on its own redefinition of "YOU." Examples are cited below, and are shown in the exhibits, attached.

The re-definition of "YOU" is an artifice by which Holdings seeks to dodge legitimate questions designed to elicit information concerning its ties to other persons and entities that might qualify as its agents for purposes of personal jurisdiction. This re-definition of defined terms in the discovery requests is entirely improper.

### III.  More than a mere holding company.

Despite the lack of cooperation to date, discovery has revealed that Holdings is more than a "holding" company that merely owns stock in its subsidiaries.

---

1 Despite Holdings' recalcitrance in discovery, official records from the State of Florida Secretary of State, described below, and attached, shed at least some light on the interrelationships between Holdings on the one hand, and individuals and other entities within the World Avenue family of entities.

3

First, the testimony revealed that Holdings actually participates in the management of its subsidiaries. Attempts to question Mr. Dhana on the precise nature of this involvement were met largely with pat answers, repeating the mantra that Holdings' involvement is at a "high level." Nevertheless, the following relevant facts have emerged in discovery:

Holdings provides "management oversight services to World Avenue USA, LLC and other World Avenue companies." Response to Interrogatory 21. (We adopt the phrase, "World Avenue companies," from this source.) Holdings provides management oversight to all of its subsidiaries (Dhana, p. 33, l. 21) which include The Useful, LLC, Defendant WAUSA, World Avenue Ireland, Ltd., LAD Express, and others that Mr. Dhana could not recall. (Id. at 32.) Holdings engages in "high level coordination as to what the entities are trying to achieve in the marketplace." (Id. at 34, ll. 9 - 11.) Holdings determines "how each of the entities perform, what duties do they perform, and how they interact with each other." Id. At 34, ll. 16 – 18, and gets paid for its management services to its subsidiaries. Id. at 35. Mr. Dhana himself participates in these management and oversight services. Id. Holdings refused to testify precisely what "oversight and management services" it provided for The Useful. Id. at 35. Holdings admits that the Useful uses email marketing and "certain tools" in its email marketing activities (id. at 41, lines 20-21) but refuses to state what those tools are. Id. at 44, line 12. Holdings' involvement in the acquisition or use of those tools thus remains undisclosed. Holdings oversees the budgeting of all of its subsidiaries, and conducts auditing and collections work for them. Id. at 57. Holdings oversees its subsidiaries' disbursements. Id at 60. From the context, it would appear that these disbursements include payment to persons who send emails as part of the World Avenue marketing campaigns that generated the emails at issue in this case, but

4

questioning in the deposition was not permitted to that level of detail. Holdings insures that its policies and procedures are followed by its subsidiaries and that "approvals" are obtained before disbursements are made. Id. at 60. By virtue of these multiple lines of involvement (including involvement in WAUSA who has already waived personal jurisdiction), Plaintiffs contend that Holdings actively participates in the conduct of the subsidiaries' business, that this business includes the emails that give rise to this suit, and that Holdings effectively controls its subsidiaries in several ways including its holding the reigns over their finances.

Holdings has created for its subsidiaries a "Purchasing Policies and Procedures Manual." Dhana at 125, ll. 15 - 24. Holdings is the sole member of Defendant WAUSA and The Useful. Id. at 33. Holdings oversees the website at wordavenue.com, which is operated "for the benefit of Holdings." Dhana at 72. Two pages from that website are attached. The website is clearly aimed at soliciting business, and is clearly viewable in Maryland. Thus, Holdings is soliciting business in Maryland directly related to the lead-generation business of which the emails at issue are a part.

Despite prior representations that Holdings has no servers, Mr. Dhana testified that the corporation has servers at its corporate offices at 1613 Northwest 136th Avenue, Suite 100, Sunrise, Florida 33323. (Id. at 16; the "Sunrise address.") Plaintiff has not had the benefit of inspecting those servers and has not been told what information they may contain for Holdings, that might confirm its ties to Maryland either directly or through agents. Holdings meets with managers of The Useful, LLC (a subsidiary engaged in Internet marketing that includes email,

5

id. at 41)2 to make decisions on management, strategy and purchasing, including such things as purchases over $10,000. Id. at 39-40.

According to the Florida Secretary of State, Holdings shares its offices with several entities listing Defendant Niuniu Ji as a member, officer or director, at the Sunrise address. Those entities include Defendant World Avenue USA, LLC, original Defendant World Avenue Management, Inc., World Avenue IP, LLC, World Avenue Services, LLC, and The Useful, LLC. Those entities moved their offices from 6001 Broken Sound Parkway, Boca Raton, Florida (the "Boca Raton address") to the Sunrise address in late 2007. Thus, the World Avenue companies appear to operate mostly or entirely under a single roof, and have migrated together to a new home office. There have been name changes and mergers between and among these entities, in some instances with Mr. Ji as the signer on both sides of the transaction. See Florida Secretary of State documents, attached. Plaintiff wishes to inquire into the interactions, relationships and exercise of control among these entities as possible agents of Holdings for purposes of personal jurisdiction.

Holdings is the successor of another entity that was named "World Avenue, LLC" (Dhana at 73, line 14) that was not labeled as a holding company. The prior entity was formed on June 1, 2006, and its name was changed to World Avenue Holdings, LLC just two months later, on August 9, 2006. (See Secretary of state documents for Holdings, attached.) Strangely, the operating agreement for the new entity was amended effective "January 1, 2006," some eight months before the new name was inked, and six months before the older entity was created,

---

2 Defendants state, "The Useful is an Internet marketing company that promotes products and/or services to the consuming public through third party affiliate networks and e-mail marketing companies." Homer Appleby Declaration, Exhibit 25 attached to Amended Complaint (docket 34). Plaintiff alleges in the Amended Complaint that Defendant WAUSA trades as "The Useful" in its lead-generation activities on the Internet including the emails

6

suggesting the change of names was planned well in advance. Id. The activities of World Avenue, LLC remain undisclosed, as it does not fit within Holdings' narrow definition of "YOU."

### IV. Written Discovery Responses.

BSI has served a motion to compel concerning all of Holdings' responses to BSI's jurisdictional discovery efforts, including the written requests, the notice to inspect, and the deposition, and requests that the motion to compel be considered in conjunction with Holdings' motion to quash, as the issues are interrelated.

Holdings' responses to interrogatories are similar to the following, reprinted here as an example:

> INTERROGATORY NO.3:
> IDENTIFY all PERSONS located in Maryland, residing in Maryland, or with a registered email address in Maryland to whom YOU have sent any COMMERCIAL E·MAIL or other written and/or electronic communications since January I, 2004. YOU are considered to be on notice about an individual's state of residence pursuant to Md. Code Ann., Com. L. § 14-3002(c).
> RESPONSE TO INTERROGATORY NO.3:
> Holdings objects to this Interrogatory on the grounds that the term "YOU" is overly broad, unduly burdensome and oppressive, and beyond the scope of the limited discovery, permitted by the Court's order dated July 14, 2009, to support BSI's supplemental opposition to Holdings' motion to dismiss for lack of personal jurisdiction. For purposes of responding to these jurisdictional interrogatory requests, Holdings understands the terms "YOU" to mean Defendant World Avenue Holdings, LLC. Holdings further objects to Plaintiff's interpretation of the Md. Code Ann., Com. L. § 14-3002(c) and to any obligation Plaintiff seeks to impose beyond those provided for under Rules 26 or 33, Fed. R. Civ. P. Subject to and without waiving the foregoing objection, Holdings responds as follows: Holdings did not exist before June 1, 2006 and has no predecessor entity. Furthermore, Holdings' business activity is limited to that of a holding company,

---

at issue.

and, thus, it does not engage in the sending of Commercial E-mail. Therefore, Holdings has no information responsive to this interrogatory.

OBJECTION 3: Holdings has improperly failed to identify persons in Maryland to whom it sent emails. This case arises from the transmission of emails into Maryland. These facts are clearly relevant to the issues that give rise to this suit.

Holdings has improperly redefined "YOU" as described in Section II., above, applying its own improperly restricted definition.

BSI has not been permitted to engage in close examination of the interrelationships, sharing of resources between and among Holdings and its subsidiaries, the melding of functions and identities, and the exercise of authority and control, that might render Holdings and its subsidiaries agents for each other for purposes of personal jurisdiction. Clearly there is significant interaction between Holdings and its subsidiaries. Precisely what level of interaction and control exists can only be known if closer questioning is permitted.

The interrogatory properly seeks information related to specific personal jurisdiction, as the transmission of emails to persons in Maryland is at the core of this case.

Thus, the response seeks to characterize Holdings as a mere holding company, ignoring its significant involvement in the operations of its subsidiaries that used bulk email for lead generation as detailed above. It further refuses to provide information about any entity or person other than Holdings, even though it operates under the same roof as the others and clearly has possession of information about them. It denies having a precursor entity despite existence of World Avenue, LLC, its precursor. The balance of the responses are similarly uncooperative.

## V. Deposition Testimony

The original deposition notice included the following designated subject matters:

1. The deponents' contacts, either directly or through agents, with persons in Maryland. . . .

9. Affiliates and publishers in Maryland who have promoted products or generated leads in Defendants' promotional and lead generation campaigns.

10. Contractors, IT professionals, and providers of any services pertaining to Defendants' promotional and lead generation campaigns who were located in Maryland when they conducted business with, or provided services to, Defendants.

11. Clients and customers of Defendants who were located in Maryland when they conducted business with Defendants.

12. Defendants' communications with persons in Maryland since January 1, 2004.
. . .

BSI attempted to explore the nature and extent of Holdings' Maryland contacts, "either directly or through agents," pursuant to the notice. However, this effort was cut short by frequent interruptions by counsel in speaking objections, and by the imposition of an unreasonably restricted interpretation of the notice that appeared to overlook the word, "agent," as if the notice were required to spell out the elements of agency.

BSI attempted to explore Holdings' activities and interactions with other entities, including its subsidiaries, and the extent of its control over such entities, as this information would bear on the issue of agency. Aside from the information detailed in the preceding section of this memorandum, this line of inquiry was largely precluded:

128

```
19   Q   Do you know if World -- if Holdings -- well,
20  strike that.  Do you know if any of Holdings
21  subsidiaries has business in Maryland?
22       MR. SAUNDERS:  I'll object.  That is outside
23    the scope of the Notice.  And we went through it
24    with the Magistrate that so far the only subsidiary
25    that's been named in this lawsuit is not contesting
```

129

```
1    jurisdiction.  And he said the questions over what
2    the subsidiaries do in Maryland are not the
```

```
     3    questions for the Holdings witness.  So based on
     4    that, I'm going to instruct the witness not to
     5    answer that question.
```

Mr. Dhana, Holdings' corporate designee, was also instructed not to answer at p. 107, l. 5-6.

The deposition was rife with speaking objections and threats to refuse to answer, effectively telegraphing to the witness that he should tighten his answers, to the point that he began simply repeating the same scripted response (Holdings provides "high level management," e.g. p. 39 at l. 24). The witness was asked to leave the room at least twice, and it became necessary to seek the referee services of Magistrate Judge Day during the deposition.  Judge Day ruled:

```
     2         To the extent that you want to ask them what
     3    their relationship is with what you believe to be a
     4    subsidiary and what you believe to be part of the
     5    agency relationship, you can ask them those
     6    questions, but they're responding as World Avenue
     7    Holdings, LLC, their successors, their assigned and
     8    their legal representatives only. . . .

          They can ask
     3    Holdings, LLC about any contacts, relationships they
     4    may have with any subsidiary or anyone else for that
     5    matter.  They can ask those questions, but the
     6    response is coming from the corporate designee of
     7    Holdings, LLC only.
```

Transcript at 15 -16.

```
    15         THE COURT:  Again, I understand your concern
    16    about the organizational structure.  Let's assume
    17    for the record that it's demonstrated that one of
    18    these other entities is a person in Maryland subject
    19    matter number one.  Certainly he can ask questions
    20    of the deponent about contacts with the persons in
    21    Maryland.
    22         MR. SAUNDERS:  That's right, Your Honor.
```

Id. at 17. Despite these rulings, the witness largely evaded questions about the identities of the affiliates, their interactions with Holdings, and their possible status as agents of Holdings. Likewise, the amount of information extracted from Mr. Dhana on the interactions between Holdings and other entities that might qualify as its agents for purposes of personal jurisdiction was constrained, as described above.

Upon returning to Maryland after the Miami deposition of Mr. Dhana, BSI issued the amended deposition notice in an attempt to fit in another session before the due date for the supplemental memorandum on September 14, 2009. The amended notice, attached, is much more detailed than the original. The timing was short, and Holdings filed its motion to quash, which effectively canceled the deposition. Accordingly, BSI filed its supplemental memorandum on personal jurisdiction without the full benefit of the jurisdictional discovery it sought.

## VI. <u>Inspection</u>

Plaintiff gave notice to inspect Holdings' servers pursuant to Rule 34, limited to a reasonable scope of information pertaining to personal jurisdiction, with precautions for confidentiality. The inspection was intended to coincide with the trip to Florida for the deposition. Holdings objected and refused to allow the inspection. (See Notice to Inspect; letter from counsel dated August 21, 2009, attached.) Holdings asserted it has no servers (letter, p. 1, bottom) but then testified in deposition that it does in fact have servers. Dhana at 16. It is inconceivable that Holdings could exercise the kind of oversight, policy implementation, and financial control that it has admitted, without computers.

Plaintiffs assert that the inspection would likely have resulted in the discovery of data pertaining to Holdings' interactions with persons who may qualify as its agents for purposes of

11

personal jurisdiction., including communications and dealings with persons over whom Holdings has exercised control at a "high level" or at any other "level." Holdings' refusal to produce documents responsive to most of Plaintiff's document requests, and its lack of cooperation during its deposition, further justify the requested inspection.

### VII.  Relief Sought

The motion to quash should be denied, and Plaintiff should be permitted to resume the deposition of Holdings under the amended notice.  In addition, Holdings should be ordered to provide full responses to Plaintiff's interrogatories and document requests, and to submit to the requested inspection of data.  This relief may be redundant with that sought in Plaintiff's motion to compel, which Plaintiff plans to file after the response time runs, and after the additional steps required by the rules.

| /s/ | September 21, 2009 |
|---|---|

Stephen H. Ring
**STEPHEN H. RING, P.C.**
506 Main Street, Suite 215
Gaithersburg, Maryland 20878
USDC, MD: #00405
Telephone: 301-563-9249
Facsimile: 301-563-9639

       /s/
Michael S. Rothman
401 E. Jefferson Street Suite 201
Rockville, MD 20850
Telephone: (301) 251-9660 Fax: (301) 251-9610

*Attorneys for Plaintiff*


## Exhibits

Plaintiff's First Set of Jurisdictional Interrogatories to
Defendant World Avenue Holdings, LLC (pp. 1 - 6 only)

Holdings' Responses to Interrogatories

Plaintiff's First Set of Jurisdictional Document Requests to
Defendant World Avenue Holdings, LLC (pp. 1 - 6 only)

Holdings' Responses to Document Requests

Plaintiff's Request to Enter and Inspect

Letter from Mr. Saunders, August 21, 2009

Plaintiff's Notice of Deposition  (also attached to Holdings' motion to quash)

Plaintiff's Amended Notice of Deposition (also attached to Holdings' motion to quash)

Transcript – Magistrate Judge Day hearing, August 26, 2009 (excerpts)

Transcript – Dhana deposition (filed at docket 108)

Affidavit of Stephen H. Ring re Florida SOS documents and World Avenue web page

Florida Secretary of State corporate filings

Worldave.com website, sample pages