# IN THE UNITED STATES DISTRICT COURT FOR MARYLAND, SOUTHERN DIVISION

BEYOND SYSTEMS, INC.  )
)
    Plaintiff )
    v. ) Case No. PJM 08 cv 0921
)
WORLD AVENUE USA, LLC, et al. )
    Defendants )
_____)

## WORLD AVENUE HOLDINGS, LLC'S SUPPLEMENTAL REPLY TO PLAINTIFF'S SUPPLEMENTAL OPPOSITION TO MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12 (b)(2) AND PARTIAL MOTION TO DISMISS

Defendant, World Avenue Holdings, LLC ("Holdings") submits this Supplemental Reply to Plaintiff, Beyond Systems Inc.'s, ("Plaintiff" or "BSI") Supplemental Opposition to Holdings' Motion to Dismiss the Amended Complaint for lack of personal jurisdiction and partial dismissal of claims barred by the statute of limitations. Although given a second chance by the Court to cure deficiencies to its Amended Complaint through jurisdictional discovery, Plaintiff fails to meet its burden of making a showing that jurisdiction over Holdings is proper.

In particular, Plaintiff fails to identify facts demonstrating a determination that Holdings is subject to jurisdiction in Maryland directly, or through its subsidiary World Avenue USA, LLC ("WAUSA"). Notwithstanding extensive jurisdictional discovery, Plaintiff identifies no facts supporting the existence of an agency relationship between Holdings and WAUSA or a level of control by Holdings over WAUSA so as to warrant piercing the corporate veil. Concomitantly, Plaintiff fails to demonstrate a nexus between the alleged conduct comprising minimum contacts and its alleged causes of action.

Similarly, Plaintiff fails to demonstrate that its claims are not time barred under the Maryland law. Contrary to its argument, Plaintiff provides no basis for applying any tolling doctrine, *i.e.*, "continuation of events" or "continuous violation" here.

As a result, the record before the Court reinforces Holdings' prior assertion that it is a holding company with no jurisdictional contacts with Maryland. Any additional Maryland proceedings involving Holdings would be in contravention of its due process rights. There is no factual dispute to be resolved by keeping Holdings in the case. Accordingly, the Court should dismiss with prejudice the case against Holdings for lack of personal jurisdiction and as being untimely regarding all emails purportedly received prior to December 22, 2005.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The facts underlying this litigation are well known to the Court and have not changed since the July 14, 2009 hearing. Therefore, Holdings incorporates by reference the facts stated in its Motion to Dismiss and Reply and focuses solely on relevant post-hearing developments such as the facts developed, or more aptly not developed, through jurisdictional discovery.

On April 15, 2009, Holdings filed a Motion to Dismiss for lack of personal jurisdiction and partial dismissal for claims barred by the statute of limitations ("Motion"). *See* DE 55. BSI failed to properly respond to Holdings' Motion and did not request jurisdictional discovery in its original opposition. *See* DE 77. At the July 14, 2009 hearing on the Motion, the Court stated "on the issue of the actual presence [of Holdings] through agent or otherwise ... [BSI's] ... case is really thin [and BSI's] papers do not establish a reasonable nexus between Holdings and the other [WAUSA]." Hearing Transcr. at pp. 40:22-25; 43:7-8; 44:14-20, attached as Composite Exhibit 1. The Court, *sua sponte,* granted Plaintiff limited jurisdictional discovery and ordered BSI to serve "World Avenue Holdings" with the jurisdictional discovery. *See* DE 81; Hearing Transcr. 45:03-13.

The Court also permitted BSI to file a Supplemental Opposition to Holdings' Motion, and directed it to "flush [it] out with the proper documents or the proper things that show some nexus

between Holdings" and WAUSA. Hearing Transcr. pp. 47:19-48:02. At the hearing, the Court warned Plaintiff:

> You know you folks [BSI] are becoming regular visitors of my court in a way that somehow inappropriately, I think, monopolizes the time of the Court. You're back on jurisdictional issues again and again. I think you've got to tighten your game a little bit. This time around certainly is a good example of it, because we have to scramble through to see exactly how these folks get into the case. ... I think you guys have been sloppy on this, I really do. You may have a case to make, but you've just let it go on this jurisdictional issue ... You folks seem to be in this business right now of suing spammers so-to-speak, what you believe to be spammers. If you're in the business, you've got to be much more careful on the jurisdictional issue because it's tortuous.

Exhibit 1, 29:22-30:03; 38:20-23, 48:17-22.

Thereafter, Plaintiff served Holdings twenty two interrogatories, twenty two requests for production of documents, a Rule 30(b)(6) Notice of Deposition of Holdings' corporate representative identifying thirteen (not including subparts) topics for questioning and requesting production of fifteen categories of documents, a Rule 30(b)(6) Notice of Deposition of WAUSA, and a Notice of Inspection of Premises. Contrary to the Court's directive, *none* of the discovery was directed to the relationship between Holdings and its subsidiary, WAUSA, or, any other Holdings' subsidiary. While in one request for production (# 21) and one interrogatory (# 20), Plaintiff asked about Holdings' relationship with 25 other named entities and individuals, none was a Holdings subsidiary. Furthermore, BSI's topics in its 30(b)(6) Deposition Notice to Holdings were narrowly focused to develop facts concerning Holdings' non-existent direct contacts with Maryland, more designed to address general jurisdiction which is not an issue here rather than Holdings' relation with its subsidiaries, its corporate organization, or its management structure.[1]

---

[1] *See* Holdings' Motion to Quash Plaintiff's Amended Notice of Rule 30(b)(6) Deposition, DE 104, 112.

## ARGUMENT

### 1. World Avenue Holdings, LLC Is Not Subject to Suit in Maryland

#### a. Standard of Review

The legal standard for personal jurisdiction in Maryland was thoroughly briefed by Holdings in its Motion to Dismiss and Original Reply. *See* Motion to Dismiss [DE 55] at pp. 3-14; Reply [DE 78] at pp. 2-6. To avoid repetition, Holdings will not repeat the standard, and will limit its references to certain key authorities. Holdings also cites new authority directly on point with facts in this case[2] to demonstrate how Plaintiff's alleged "factual support" for jurisdiction over Holdings is flawed and how the record actually establishes the existence of a standard parent/subsidiary relationship which is not grounds for derivative jurisdiction as a matter of law.

At this stage, the case is solely about specific jurisdiction.[3] Now that the Plaintiff has had jurisdictional discovery, it should be required to establish jurisdiction by a preponderance of evidence rather then merely by making a *prima facie* case.[4] Suppl. Opp. at p. 11. "To show that the court may assert personal jurisdiction plaintiff[s] must prove, *by a preponderance of the evidence*, that jurisdiction is proper under both the Due Process Clause of the Fourteenth Amendment, and the relevant Maryland statute." *Newman v. Motorola*, 125 F. Supp. 2d 717, 722, n.4 (D. Md. 2000) (emphasis added) (dismissing the case on jurisdictional grounds and

---

[2] See *infra*, pp 12-13.

[3] At the Motion to Dismiss hearing the Court asserted and Plaintiff's counsel conceded that BSI is not claiming general, but specific jurisdiction. Hearing Transcr. pp. 26:22-27:02, 27:17-19.

[4] Even if the Court applies the *prima facie* standard, Plaintiff cannot prevail. Although plaintiff's written allegations of jurisdictional facts are generally construed in its favor, a showing of personal jurisdiction must be based on specific facts set forth in the record in order to defeat defendant's motion to dismiss. *Sheppard v. Jacksonville Marine Supply, Inc.*, 877 F. Supp. 260, 264 (D. S.C. 1995)."In considering a [personal jurisdiction challenge [in absence of an evidentiary hearing], the court must construe *all relevant pleadings* allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Mylan*, 2 F.3d at 62, quoting *Combs v. Bakker*, 886 F.2d 673, 676 (emphasis in original). The facts presented by Plaintiff (Dhana's Testimony) do not contradict previously submitted Affidavit of Fidel Dhana and confirm that Holdings is mere a holding company with no direct or indirect contacts with Maryland.

distinguishing between when a "district court decides a pretrial personal jurisdiction dismissal motion without an evidentiary hearing [where] the plaintiff need prove only a prima facie case of personal jurisdiction" and the situation when the "[p]laintiffs were permitted to submit exhibits prior to [ ] hearing and were heard on the jurisdictional issues at that hearing ... and [t]hus they have the burden to prove personal jurisdiction by a preponderance of evidence.") (internal citation omitted).

Maryland law provides strict criteria for establishing specific jurisdiction: "(1) the non-forum defendant purposefully directed its activities toward residents of the forum state or purposefully availed itself of the privilege of conducting activities therein; (2) plaintiff's cause of action arises out of or results from the defendant's forum related contacts; and (3) the forum's exercise of personal jurisdiction in the case is reasonable, *i.e.*, is consistent with 'fair play and substantial justice.'" *Hardnett v. Duquesne Univ.*, 897 F. Supp. 920, 923 (D. Md. 1995) (Messitte, J.). Thus, the cause of action against Holdings must arise out of Holdings' minimum contacts with Maryland. *Beyond Systems, Inc. v. Kennedy Western Univ.*, Case No. DKC 2005-2446, 2006 WL 1554847, at *1, *5 (D. Md. 2006). Moreover, the minimum contacts from which the cause of action arose "are measured as of the time the claim arose," and contacts that exist on or after the filing of this case cannot "be taken into account, since the only time when contacts are measured is as of the time the claim arose." *Hardnett*, 897 F. Supp. at 923.

In its Supplemental Opposition, Plaintiff contends that Holdings is subject to suit in Maryland because "Holdings directed, controlled, and eventually ordered that the emails at issue be sent to BSI on the dates that they were received by Plaintiff, beginning before July 20, 2004." Suppl. Opp. at p. 5. Further, Plaintiff makes the conclusory assertion that it "alleged sufficient facts that would permit this Court to exercise personal jurisdiction against Holdings" and that it

5

"has demonstrated that it received the emails at issue from Holdings, its subsidiaries, agents, successors, affiliates and/or publishers that were directed and controlled by Holdings." *Id.* at pp. 1,12.

It is axiomatic that, a mere conclusory allegation regarding proper jurisdiction, such as that offered by Plaintiff here, is insufficient to satisfy the requirement for pleading minimum contacts either directly or through an agent. *Newman*, 125 F. Supp. 2d at 733. Plaintiff fails to meet its burden of proving specific jurisdiction over Holdings. The Court should decide the jurisdictional question on this Motion to Dismiss and there are no grounds for the Court to defer its ruling until trial because the Plaintiff has taken discovery and both parties point to the same deposition transcript as their evidence. *Beyond Systems*, 2006 WL 1554847, at *3 (noting that the court may only "defer ruling pending receipt at trial of evidence relevant to the jurisdictional question" where "jurisdiction turns on *disputed facts*." (emphasis added).

### b. There Is No Basis for Derivative Jurisdiction Over Holdings

It is well established in Maryland that a holding company cannot be subject to jurisdiction based solely on the ownership interest in a subsidiary doing business in Maryland. *Mylan Lab., Inc. v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir. 1993); *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 277 (4th Cir. 2005) ("[I]t is generally the case that the contacts of a corporate subsidiary cannot impute jurisdiction to its parent entity."); *see also United States v. Bestfood*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation ... is not liable for the acts of its subsidiaries.") (internal citations omitted). Holdings' status as a holding company does not

create *per se* jurisdiction.[5] Maryland law provides two narrow, well-defined exceptions whereby a parent can be subject to jurisdiction based on its ownership of a subsidiary: (1) the parent/subsidiary have an agency relationship, or (2) the parent must be the alter ego of the subsidiary. *Id.* at 61-62. Plaintiff fails to demonstrate either.

Plaintiff does not even address the legal requirements in its Supplemental Opposition, but instead it simply lays out a handful of facts, provides no analysis and declares it has met its burden. Plaintiff does not cite to any authority relevant to the issue of the nexus between Holdings and WAUSA. Instead, BSI relies on *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390 (4th Cir. 2003) and *ASL Scan, Inc. v. Digital Service Consultants, Inc.*, 291 F.3d 707 (4th Cir. 2005), previously distinguished, on the grounds neither involve the issue of a holding company's presence for purposes of jurisdiction either through an agent or directly. *See* Suppl. Opp. at p. 11; Reply at pp. 6-7. Moreover, these cases affirmatively compel dismissal of the claims against Holdings. *Id.*

    **c.**    **There is No Basis to Pierce the Corporate Veil between Holdings and WAUSA**

          **i.**    **The Applicable Legal Standard For Piercing The Corporate Veil**

Much like individual stockholders, a corporate parent also will not be liable for the obligations of its subsidiary absent showing of certain factors. *Iceland Telecom, Ltd. v. Information Systems and Networks Corp.*, 268 F. Supp. 2d 585, 589 (D. Md. 2003). Maryland is more restrictive than other jurisdictions in allowing a plaintiff to pierce the corporate veil, and the courts do so only where necessary to prevent fraud or enforce a paramount equity.

---

[5] The business definition of a holding company is "type of business organization that allows a firm (called parent) and its directors to control or influence other firms (called subsidiaries) ... [t]his arrangement makes venturing outside one's core industry possible and, under certain conditions, to benefit from tax consolidation, sharing of operating losses, and ease of divestiture. Available at http://www.businessdictionary.com/definition/holding-company.html#, last visited on October 13, 2009.

*Rheumatology Nurses Society, Inc. v. Phoenix Group Holdings, LLC*, Civil No. CCB-08-1675, 2009 WL 249233 (D. Md. 2009) (unreported) (citing *Residential Warranty Corp. v. Bancroft Homes Greenspring Valley*, Inc., 126 Md. App. 294, 728 A.2d 783, 789-91 (1999)); *U.S.A. v. Great American Insurance Company*, Civil. No. CCB-05-2430, 2006 WL 3247131, *3 (D. Md. 2006) ("The standard for piercing the corporate veil in Maryland - as well as under the federal law - is strict.").

For the court to pierce the corporate veil under Maryland law, there must be a showing of: (1) "complete domination, not only of the finances, but of policy and business practice in respect to the transaction so that the corporate entity as to *this* transaction had at the time no separate mind, will or existence of its own;" (2) that "such control [was] used by the defendant to commit fraud or wrong, to perpetrate the violation of the statutory or other positive legal duty, or dishonest and unjust act in contravention of the plaintiff's legal rights;" and (3) that such "control and breach of duty proximately caused the injury or unjust loss." *Hildreth v. Tidewater Equipment Company, Inc.*, 378 Md. 724, 838 A.2d 1204, 1210 (2003) (emphasis added); *see also Global Building Supply, Inc v. WNH Limited Partnership*, 995 F.2d 515, 521 (4th Cir. 1993) (noting that when there is no evidence that the exercised control was intentionally used to defraud the plaintiff the corporate forms should not be set aside). This standard is known as the "alter-ego" or "instrumentality" test.

In making its determination, the court must consider, "not isolated acts but the totality of the relationship between the parent and the subsidiary." *Call Carl, Inc. v. BP Oil Corporation*, 391 F. Supp. 367, 371 (D. Md. 1975). Because holding companies have to exercise some "control" or "oversight" concerning its subsidiaries, a court will attribute the actions of a subsidiary corporation to the foreign parent corporation only if the parent exerts complete

domination over the activities of the subsidiary. *See* Black's Law Dictionary (8th ed. 2004) (defining a holding company as "[a] company formed *to control* other companies"). *See Mylan*, 2 F.3d at 63; *Phoenix Group Holdings, LLC*, 2009 WL 249233 at *4; *Glynn v. EDO Corp.*, 536 F. Supp. 2d 595, 607 (D. Md. 2008).

### ii. BSI Fails To Meet The "Complete Domination" Test For The Actions Of Holdings Over WAUSA

In a flawed attempt to establish that jurisdiction against Holdings based on the acts of WAUSA, Plaintiff relies solely upon a few "purported" facts based on the testimony of Holdings' 30(b)(6) corporate representative. The Court should not be persuaded by Plaintiff's citations set forth below, because each, as demonstrated in a footnote, is either taken out of context or a misquote and does not reflect the clear meaning of the witness's answer:

- "Holdings is the sole member of WAUSA, also known as "TheUseful"[6] and "[i]t serves as a 'holding company' for all Holdings subsidiaries, as well as 'providing management oversight' to those subsidiaries;" Suppl. Opp. at p. 6.

- "'management oversight' means 'providing strategic direction on high level coordination as to what the entities are trying to achieve in the marketplace' and '[h]igh level coordination' meant '[a]t a very high level how each of these entities perform, what duties do they perform, and how they interact with each other;'" *Id.* at pp. 6-7.

- "Holdings meets with its subsidiaries on an "as needed basis,"[7] "[t]his might include if a subsidiary wanted to procure goods and services over $10,000,

---

[6] BSI misquotes the deposition transcript. The deponent testified that Holdings is the sole member of TheUseful, LLC. Dhana Tr., DE 108-2, 32: 25, 33: 1-3. He also testified that Holdings was the sole member of World Avenue USA, LLC ("WAUSA"). *Id.*, 33: 8-11. He did not testify that WAUSA is also known as TheUseful. *Id.*, pp. 32-33.

[7] BSI again misquotes the deposition transcript. The deponent testified that he meets with employees of TheUseful, LLC, a non-party to this action, on an "as needed basis." He did not testify that "Holdings meets with its *subsidiaries* on an 'as needed basis.'" *Compare* DE 108, p. 7 *with* Dhana Tr., 39:13-20 (Q: "Do you meet directly with anyone from the Useful, LLC to make these high level management decisions? A: We do meet directly with the employees of the Useful. Q: When do you meet with them, on a regular basis? A: "World Avenue Holdings employees meet with employees of the Useful on an as needed basis"). BSI then tries to use its miscitation to meetings between Holdings' employees and TheUseful, LLC employees to bootstrap itself into Holdings' control of *WAUSA*, which is completely unsupported by deposition testimony that was confined only to TheUseful.

9

then someone from Holdings would be involved in the decision to disburse the funds; *Id.* at p. 7.[8]

- "Holdings conducts budgeting and auditing of all its subsidiaries;" *Id.*[9]

- "Holdings also does the collections for all the subsidiaries;" *Id.*[10]

- "Holdings provides oversight as to the disbursement at the subsidiaries' and "[i]nsure[s] that the policies and procedures in place regarding the appropriate approvals have been done before a disbursement is made." *Id.*

- "Holdings operates one website located at 'WorldAvenue.com,' which displays information about Holdings." *Id.* at 8.[11]

*See* DE 108 (citing Transcript of Fidel Dhana filed in its entirety at DE 108-2 ("Dhana Tr.")).

Even if the Court accepts Plaintiff's misquotations of the witness's testimony, Plaintiff's references to these limited "facts" plead BSI out of court because they are insufficient to demonstrate that Holdings exercised the prerequisite control over WAUSA that would satisfy the "alter ego" test.[12] None of the facts alleged by Plaintiff provide a basis for finding that Holdings is subject to jurisdiction in Maryland based on the actions committed by its subsidiary. To the

---

[8] Building on its prior miscitation, BSI states that: "This might include if a subsidiary wanted to procure goods and services over $10,000, then someone from HOLDINGS would be involved in the decision to disburse the funds. DE 108, p. 7 (*citing* Dhana Tr., 40:3-6). However, the deponent only testified on this cited example to TheUseful, LLC, and not to WAUSA or other subsidiaries. *See* Dhana Tr., DE 108-2, 40:2-6.

[9] For at least the fourth time, BSI misquotes the deposition transcript. The deponent testified that Holdings "*oversees*" the "budgeting" and "auditing," not that Holdings "*conducts*" the "auditing" and "budgeting" for its subsidiaries. Dhana Tr., DE 108-2, 56:22-23, 57:5 (Q: "Do you oversee the Budgeting of any of the subsidiaries?... A: I oversee the budgets for all entities") & 57:6-13, 16-17 (Q: "Do you oversee the auditing of all of the entities. A: Yes").

[10] For the fifth time, BSI misquotes the deposition transcript. The deponent testified he "oversees" the collections, not that "Holdings also does the collections." *Compare* Dhana Tr., DE 108-2, 57:12-13, 16-17 (Q: Do you do the collections for all of the entities?...A: I oversee the collections for all the entities") *with* DE 108, p. 7.

[11] In its next misquotation, BSI points to deposition testimony that "Holdings operates one website . . .", when, in fact, the deponent clarified that "I am not sure who operates the website, but the website is registered in the name of a subsidiary," which was WAUSA. *Compare* DE 108, p. 8 *with* Dhana Tr., DE 108-2, 73: 1-2.

[12] Moreover, WAUSA could not be an "instrumentality" of Holdings for the purported sending of the unsolicited commercial email in 2005. Holdings was formed in 2006, while Plaintiff alleges that the 68,300 unsolicited commercial emails were received between July 20, 2004 and September 3, 2005, well before Holdings was created. Dhana's Decl. ¶4; Am. Compl. ¶66.

contrary, these facts demonstrate that Holdings exercises precisely the type of supervision that corresponds to its existence. A holding company has to exercise some "oversight" or "monitoring" concerning its subsidiary(ies). If contact such as that described by Plaintiff gave rise to jurisdiction, then the exception would swallow the rule and all holding companies would be subject to jurisdiction everywhere. *See supra* at pp. 7-8. Additionally, Plaintiff's reference to these facts cannot satisfy the causation prong, specifically that the corporate relationship between Holdings and WAUSA was the proximate cause of Plaintiff's alleged injury. Absent a showing of fraud and proof of sufficient facts that would contradict that WAUSA and Holdings are separate corporate entities and exist for distinct purposes, the Court should not disregard the corporate shield.

The Fourth Circuit, recently declined to pierce the corporate veil of an LLC under Maryland law, and observing that "Maryland courts generally will not pierce the corporate veil between a parent and a subsidiary corporation if the subsidiary has 'some independent reason for its existence, other than being under the complete domination and control of another legal entity simply for the purpose of doing its act and bidding." *Keisler v. Goldberg*, 478 F.3d 209, 213 (4th Cir. 2007) (quoting from *Mylan*, 2 F.3d at 62).

The *Oldcastle, Inc.* court held that it lacked personal jurisdiction over the holding company located in Georgia because the holding company did no more than monitor subsidiaries and provide certain customary collateral services, such as preparation of tax returns for its subsidiaries, coordination of tax returns, coordination of leasing programs with outside vendors to obtain preferred rates for services and charging of a management fee to its various subsidiaries and it did not manufacture, sell, distribute or take orders for products and services of its

subsidiaries, nor was it registered or licensed to do business in Maryland. *Burns & Russel Co. v. Oldcastle, Inc.,* 198 F. Supp. 2d 678, 690-91, 698 (D. Md. 2002).

The court in *Newman,* dismissed the case against the holding company on the grounds that the fact that the holding company and its subsidiaries submit a "consolidated financial statement," and consolidated tax return, the holding company has the power to control certain decisions and even must approve changes are insufficient to warrant piercing the corporate veil because the companies exist as separate corporate entities, maintain their own financial records, have separate purposes and there has been no allegation that a company exists solely as a sham corporation. 125 F. Supp. 2d at 723.

The *Hill-Rom Services, Inc. v. Verses Technology, Inc.* court dismissed the case for lack of personal jurisdiction on the grounds that plaintiff produced no evidence that the holding company defendant exercised sufficient control over the activities of its subsidiary, or that the holding company oversaw its subsidiary's manufacturing, VTA's disbursement of the allegedly infringing product or that holding company had control over the subsidiary's entrance into the agreement giving rise to defendant's claims and rejecting plaintiff's argument that "policy setting and financial oversight" is different from being involved in the "'day-to-day' activities of its subsidiaries or the manufacturing of the allegedly infringing product." 2006 WL 1540851, at * 7-8, n.16 (N.D.N.C. 2006).

In *Conwed Corp. v. R.J. Reynolds Tobacco Co.*, the court found no personal jurisdiction over a tobacco holding company even though it was involved in "strategic planning" for its subsidiaries because it did not manufacture or distribute cigarettes. 1999 U.S. Dist. Lexis 9641, at * 10-14 (D. Min. April 1, 1999).

In *Benjamin Obdyke Inc. v. Owens Corning*, the court dismissed the holding company from the lawsuit because its relationship to the infringing product which was manufactured by its subsidiary was "too attenuated to confer personal jurisdiction." 2004 WL 870701, at *2-3 (E.D. Pa. Mar. 29, 2004).

Holdings is analogous to the holding companies under review in the cases cited above and should be treated the same way. It is the holding company for WAUSA and does not engage in any direct business activities in Maryland. Nor does it engage in business indirectly in Maryland by virtue of its relationship with WAUSA or any other of its subsidiaries. Further, Holdings:

- does not get involved in the day-to-day operations of its subsidiaries. *See* Dhana Tr. attached hereto as Composite Exhibit 2, 121:18-20; 122:18-19.

- does not get involved with decisions regarding sending e-mails by its subsidiaries. *Id.*, 43:2-4.

- does not send e-mails as part of any promotional or lead generation campaign. *Id.*, 68:8-9.

- does not decide what type of media a subsidiary will engage in and it does not get involved in decisions about who its subsidiaries use for "[their]" marketing campaigns. *Id.*, 70:2-5; 70:16-18.

- does not own URL's or IP addresses. *Id.*, 86:13-14.

- none of Holdings subsidiaries are located within Maryland. *Id.*, 66:16-17.

- Holdings' subsidiaries are responsible for making their own payments to publishers and their affiliates. *Id.* 123:20-22.

- does not have either directly or through "agents" contacts with persons in Maryland.[13] *Id.*, 64:9-11; 63:23-25; 64:1-2.

- does not disburse funds to anyone in Maryland. *Id.*, 88:1-3.

- does not derive revenues as a direct result of sending commercial emails messages received in Maryland. *Id.*, 93:16-18.

---

[13] BSI defined "agents" as a "person or an entity that Holdings hires and exercises control over in order to fulfill an objective that Holdings names." *Id.* 123:20-22

13

Finally, for the reasons explained in the Reply [p. 7], BSI's reference to a passive website registered in WAUSA's name is insufficient to confer personal jurisdiction over Holdings because it does not rebut the uncontested evidence that Holdings engages in none of the conduct that BSI alleges. *See* Dhana Tr. 77:01-78:07 (attesting that the website does not have interactive features and "if somebody wanted to hire WAUSA as its media company" they would not be able to do so through the website.); *see also Carefirst*, 334 F.3d at 398 ("In sum, when CPC set up its generally accessible, semi-interactive Internet website, it did not thereby direct electronic activity into Maryland with the manifest intent of engaging in business or other interactions within that state in particular"); *Newman*, 125 F. Supp. 2d at 722 n. 6 ("Even if the court were inclined to give weight to this exhibit, it could not conclude that the website allows consumers to purchase products directly from Verizon. Indeed, there is no indication on the printed pages that the products are supplied by the parent company rather than one of its subsidiaries. Further, there is nothing in the website to refute BAC's assertion that, as a holding company, it does not manufacture or sell products or services at all"). Inexplicably, Plaintiff continues to rely upon the *Carefirst* decision despite the ruling that a mere passive website did not create a basis for jurisdiction in Maryland.

### iii. BSI Fails To Meet The Nexus Test To Establish *Alter Ego* Liability

BSI's so-called jurisdictional facts also fail for three equally critical reasons. First, BSI must not only show "complete domination" by Holdings of WAUSA, but that "complete domination" must be "in respect to the *transaction* so that the corporate entity as to *this transaction* had at the time no separate mind, will or existence of its own." *Hildreth,* 838 Md. at 724 (emphasis added). This "transactional" requirement dovetails neatly with the requirement

that the cause of action must arise out of the minimum contacts. *Hardnett*, 897 F. Supp. 923; *Beyond Systems*, 2006 WL 1554847, at *5. BSI's *alter ego* evidence fails both of these simple tests on every conceivable level.

First, BSI's jurisdictional "facts" bearing on "complete domination" bear no relationship whatsoever to the "transaction," *to wit*, the sending of 68,300 e-mails. Indeed, it is undisputed that Holdings does not send e-mails as part of any promotional or lead generation campaign. Dhana Tr., 43:2-4, 68:8-9. More importantly, that Holdings does not get involved with decisions regarding sending e-mails by any subsidiary. *Id*. Thus, in this "transaction," Holdings has nothing to do with the sending of the e-mails by it or anyone else. *Hildreth*, 838 Md. at 724.

Second, BSI's so-called evidence of "complete domination" suffers from a second flaw as BSI produced no evidence whatsoever that any of Holdings' conduct was directed to, or had anything to do with Maryland. Indeed, it is undisputed that Holdings does not have either directly or through "agents" contacts with persons in Maryland, Holdings does not disburse funds to anyone in Maryland, and does not derive revenues as a direct result of sending commercial emails messages received in Maryland. *Id*., 64:9-11; 63:23-25; 64:1-2; 88: 1-3; 93: 16-18.

Third, BSI's so-called evidence of "complete domination" suffers from a fatal temporal disconnect. BSI alleges that "Holdings directed, controlled, and eventually ordered that the emails at issue be sent to BSI on the dates that they were received by Plaintiff, beginning before July 20, 2004." *See* DE 108, p. 5. Yet, just one page earlier, BSI contradicts itself, and

15

acknowledges that indeed, Holdings was "formed in 2006." Thus, there is a complete absence of evidence to support Holdings' complete dominion temporally.[14]

Thus, Plaintiff's jurisdictional discovery corroborates that Holdings serves as a holding company for WAUSA and there is no basis to assert that WAUSA acts as Holdings' *alter-ego* or vice versa. Therefore, there are no grounds to pierce the corporate veil or to assert jurisdiction over Holdings.

d. **Plaintiff Fails To Plead Facts that Demonstrate the Existence of Any Agency Relationship**

To demonstrate that an agency relationship exists between Holdings and WAUSA, Plaintiff must show (1) the agent's power to alter the legal relations of the principal; (2) the agent's duty to act primarily for the benefit of the principal; and (3) the principal's right to control the agent. *Beyond Systems, Inc. v. Realtime Gaming*, 878 A.2d 567, 583 (Md. 2005); *Beyond Systems*, 2006 WL 1554847, at *7. Except for a mere conclusion, Plaintiff does not allege sufficient facts to establish, or even indicate, a principal-agent or contractual relationship between Holdings and any third party allegedly engaged in sending spam into Maryland and ultimately contacts with Maryland. *Realtime Gaming*, 878 A.2d at 583.

In its Supplemental Opposition, Plaintiff fails to point to any facts that establish a principal-agent relationship or contractual relationship between Holdings and its subsidiaries or any third party engaged in the purported sending of spam into Maryland. Specifically, there is not one iota of evidence that WAUSA (or any subsidiary) has the power to bind or alter the legal relations of Holdings. Likewise, there is a complete absence of evidence that WAUSA (or any subsidiary) has

---

[14] It is undisputed that Holdings was formed on July 1, 2006, and that its subsidiary, WAUSA, was formed on September 22, 2006. *See* Plaintiff's Memo of Law in support if Motion to Compel Complete Jurisdictional Discovery, p. 3, ¶ 1 & Exhibit g. It is also undisputed that only 586 e-mails fewer than 1% of the alleged 68,300 e-mails at issues were supposedly received on or after June 1, 2006 and even fewer were received on or after September 22, 2006. Wagner Affidavit, DE 77-2, p. 2, ¶¶ 5-8.

a duty to act on behalf, or primarily for the benefit, of Holdings. Similarly with piercing the corporate veil argument, Plaintiff's purported "facts" demonstrate that there is no agency relationship between Holdings and WAUSA or any other subsidiary subject to the jurisdiction of this court and therefore the case should be dismissed. *See supra* at pp. 9-10.

Moreover, Plaintiff's causes of action do not arise out of the evidence that Plaintiff cites, and thus, Plaintiff completely lacks any basis for specific jurisdiction over Holdings. *Beyond Systems,* 2006 WL 1554847, at *5.

### e. Plaintiff Fails To Make A Prima Facie Case That Holdings Engaged in a Conspiracy

Finally, Plaintiff repeats *verbatim* the conclusory reference to a conspiracy "with others to initiate the transmission" of offending emails from its original Opposition to Holdings' Motion to Dismiss. *See* Opp. at p. 12. Holdings briefed in its original Reply that conclusory language is insufficient to plead a conspiracy claim under Maryland law and incorporates its argument by reference. *See* Holdings Reply at p. 6.

Thus, even after having engaging in jurisdictional discovery, Plaintiff failed to state sufficient facts to assert proper specific jurisdiction over Holdings under any tests or theories. Mr. Dhana's uncontroverted declaration and his Testimony demonstrate that Holdings does not transact business in Maryland directly or through an agent. Moreover, having been given ample opportunity, BSI has made no effort to prove that the "exercise of personal jurisdiction in the case is reasonable, *i.e.*, is consistent with 'fair play and substantial justice.'" *Hardnett,* 897 F. Supp. at 923. Accordingly, the Court should dismiss this action against Holdings for lack of personal jurisdiction.

### 2. Plaintiff's Claims Are Time-Barred Under Maryland Law

In its Supplemental Opposition, Plaintiff asserts that its claims are not time-barred by the Maryland three-year statute of limitations[15] on the grounds "BSI *even today* continues to receive Spam from ... Holdings." Suppl. Opp. at p. 12. (emphasis in original); Wagner Declaration, DE 77-1, at ¶7-8. This is not only inaccurate,[16] but also irrelevant. Plaintiff simply re-hashes its prior argument that the emails constitute a continuous violation of MD-CEMA because it is a consumer protection statute. Suppl. Opp. at p. 12. Plaintiff offers no support for the proposition that consumer protection statutes are subject to a different statute of limitations. *Id.*

Indeed, BSI conceded the argument at oral argument, subject to producing some documents relating to mergers:

> 7 THE COURT: So there is some e-mails that you're
> 8 saying that were received post the formation or existence of
> 9 Holdings.
> 10 MR. ROTHMAN: Yes.
> 11 THE COURT: **And you're conceding that there are, there**
> 12 **can be no claim of liability for anything that's three years**
> 13 **before your filing as to Holdings?**
> 14 MR. ROTHMAN: **I'm conceding that with the caveat that**
> 15 **if World Avenue Holdings was merged from another organization,**
> 16 **which I wanted to show you some documents regarding, then**
> 17 **there -- according to the merger document, they would be**
> 18 **responsible for the liabilities --**
> 19 THE COURT: Understood.

*See* Composite Exhibit 1, attached hereto, at p. 28:7-19.

---

[15] Holdings and World Avenue do not waive their right to argue that the claims under MD-CEMA are subject to a one-year statute of limitations provided by the Md. Code of Courts & Judicial Proceedings § 5-107 which provides that "a prosecution or suit for a fine, penalty, or forfeiture shall be instituted within one year after the offense was committed." Md. Code Ann. Cts. & Jud. Pro. § 5-107.

[16] The assertion that BSI "even today" continues to receive e-mail is inaccurate as BSI's principal's Affidavit does not identify even a single e-mail in 2009; indeed, he declares under penalty of perjury that he has not even looked at 2009. *See* Wagner Declaration, DE 77-1.

18

To be sure, BSI has attached no merger papers to its Supplemental Opposition; yet, it continues to beat a hasty retreat from its representations to this Court at the hearing.[17]

In short, Plaintiff fails to meet its burden of proving the existence of any equitable reason or exception to toll the statute of limitations, because it does not contest that it was aware of the emails when received, but instead attempts to argue that the statute of limitations has not yet started to run because it alleges that the violations are continuing today. *Hecht v. Resolution Trust Corp.*, 333 Md. 324, 358, 635 A.2d 394, 411 (Md. 1994). As demonstrated in the Motion to Dismiss and original Reply, neither the "continuation of events" nor the "continuous violation" theories applies to the present facts and Plaintiff's argument is inapposite for several reasons. *See* Holdings Motion to Dismiss at p. 14; Reply at pp. 8-12. There is no equitable reason to toll the accrual of the statute of limitations because BSI pro-actively collects the alleged unsolicited commercial emails. It rejects conventional means of avoiding receipt of the emails and files suit at a time of its choosing, seeking damages in the amount of $500 and $1000.

Accordingly, BSI is precluded as a matter of law from pursuing its action of violation of MD-CEMA and its claims for the damages for the alleged 68,300 unsolicited commercial emails in the amount of $102,000,000 should be dismissed as time barred.

## CONCLUSION

For the reasons set forth above, World Avenue Holdings, LLC respectfully requests that the Court dismiss Plaintiff's Amended Complaint in its entirety, and with prejudice.

---

[17] As the court will recall, at the July 14th hearing, counsel proffered that Plaintiff had documents relevant to the formation of Holdings and clearly insinuated that these documents would link Holdings to activity that preceded its existence. The Court noted that first presenting them at the hearing was untimely. Plaintiff has not attached those documents to its Supplemental Opposition. Therefore, the Court should draw an adverse inference from this omission. *See* Hearing Trans. at pp. 23:7-25; 28:14:18; , attached as Exhibit 1.

Respectfully submitted,

GREENBERG TRAURIG, LLP
　　　　/s/
Sanford M. Saunders, Jr., Esq.
USDC, MD #4734
GREENBERG TRAURIG, LLP
2101 L Street, NW, Suite 1000
Washington, DC 20037
202-331-3100
202-331-3101
Attorneys for World Avenue USA, LLC
and for World Avenue Holdings, LLC

DATED: October 14, 2009