# IN THE U.S. DISTRICT COURT FOR MARYLAND, SOUTHERN DIVISION

| | | |
|---|---|---|
| **BEYOND SYSTEMS, INC.** | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | **Case No. PJM 08 cv 0921** |
| | * | |
| **WORLD AVENUE USA, LLC** | * | |
| successor by merger to NIUTECH, LLC., | * | |
| **DBA "THE USEFUL," ET AL.** | * | |
| | * | |
| Defendants | * | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT WAUSA'S MOTION TO CHALLENGE SEALING

Plaintiff, Beyond systems, Inc. (BSI), opposes the motion filed by Defendant World Avenue, USA, LLC (WAUSA) at docket 119 to challenge the sealing of certain information produced in discovery.

I. The Stipulated Protective Order specifically provides for confidentiality of the emails at issue.

The protective order at docket 94-2, approved by order at docket 97, provides in part:

(v) With respect to copies of electronic mail messages produced by either party to
the other, those messages, data or metadata extracted from them (in particular IP
addresses, domain names and sender and recipient identifying information) will
not be shared with any person or company other than those specified in
Paragraphs 1(d)(i)-(iv) above. Notwithstanding the above, such materials may be shared with (1) consulta
hired in this case by the party and (2) persons who counsel in good faith deem
necessary to assist
in providing legal advice in this matter, including any affiliates and their
sub-contractors and vendors as long as they execute a Certification [attached
hereto as Exhibit A] before being permitted to view the emails. Each party shall
maintain the executed original Certification for disclosure pursuant to court order in the event the designa
cause of a potential breach of confidentiality.

Thus, the parties have jointly requested, and the Court has approved, language that protects the emails that give rise to this suit as confidential material, even before a specific designation of confidentiality. This point alone may be dispositive of the motion.

II. Additional reasons for designation of confidentiality.

WAUSA is correct in arguing that the advertising content of the emails is created by Defendants or their agents, and should therefore not be designated as confidential. It is undisputed that the advertisements are designed to generate "leads," by inducing viewers to enter their personal information (name, address, etc.) thus becoming part of a database of contacts sold to vendors for use in future solicitations. The advertising content of the emails is not the part that impels Plaintiff to seek confidentiality. Rather, it is the confirmed, functioning recipient email addresses, contained within the headers, that merit protection.

WAUSA spends considerable space in its motion ranting about BSI as a litigation mill rather than an ISP. Merits discovery has not yet resulted in any written responses from either side, and merits depositions have not yet begun. Nevertheless, WAUSA is ready to blast away with inflammatory and derogatory conclusions about BSI's operations.[1]

WAUSA's conclusions as to BSI's business operations are built on flawed perceptions and misunderstandings of key elements of BSI's operations, stemming from the routine sharing of functions between servers owned by two separate corporations. In particular, the transfer of emails from mail servers owned by Hypertouch, Inc. to servers owned by BSI appears to be at

---

[1] BSI's operations as an ISP are described briefly at docket 3-5, Initial Declaration of Paul A. Wagner. Additional affidavits of Mr. Wagner are at docket 34-15 (enumerating Defendants' domain names in the emails at issue) and at 77-2 (brief description of ISP services.) BSI will provide more detailed (and voluminous) information on its qualifications as a service provider under the applicable statutes when that issue is before the Court.

the root of WAUSA's irritation. The sharing of functions between the servers is not restricted to emails from these defendants; it applies equally to all incoming emails, including legitimate emails as well as the flood of millions of "spam" emails, or UCE; and has been set up as a matter of routine business operations to help manage the services provided by BSI and Hypertouch. Again, this topic will be the focus of extensive briefing later.

WAUSA's invectives should not distract the Court from the issue at hand: whether the emails merit designation as confidential under the terms of the protective order. As described in the attached Affidavit of Paul A. Wagner, the emails at issue contain hundreds of recipient e-mail addresses that have successfully received Defendant's commercial emails. Verification of functioning email addresses renders them more valuable as targets for unsolicited commercial email (UCE). Thus, the exposure of a list of such email addresses would be like honey to flies, for purposes of drawing spam. BSI has no desire to expose these email addresses.[2]

BSI contends that the hundreds of email addresses contained in the headers of the emails at issue were generated by the Defendants using automated means. In other words, the successful transmission of email does not require that the recipient email address be registered or even used by the recipient for outgoing emails. In many instances, any word or combination of characters, followed by "@beyondsystems.net," for example, will successfully receive an email message. Using automated means, including crawlers, bots, spiders and dictionary attacks,[3]

---

[2] WAUSA argues that Hypertouch, Inc., which is owned by Paul Wagner's brother, James Joseph Wagner (who has been named as a third-party defendant in this suit) has displayed lists of email addresses on its website in order to draw spam, as fodder for suits. As will be explained in more detail when appropriate, California law, since revised, implied or required that requests against spam identify the email addresses for which the request was made.

[3] "A dictionary attack uses a brute-force technique of successively trying all the words in an exhaustive list (from a pre-arranged list of values). In contrast with a normal brute force

3

spammers are able to ferret out which email addresses will successfully receive emails, and to assemble those email addresses into lists. Those lists become valuable due to the functionality of the email addresses. BSI does not want the recipient email addresses that have received the emails at issue to be exposed such that they might receive even more UCE.

    III. The impracticality of redaction.

The body of emails at issue continues to grow, as Defendants continue with their email campaigns. All of Defendant's arguments directed to limited time frames or limited quantities of emails are misdirected. While thousands of emails have indeed already been identified, it will only be via discovery that the complete scope of the emails at issue will be ascertainable. Counsel are in the process of scheduling the ESI deposition of WAUSA, which will be a major step toward identification of the full parameters of the data involved.

Due to the large and growing body of emails at issue, it would be impractical to attempt to redact just the confidential portions of the emails, and it is questionable what would be gained by this exercise. Defendant has failed to explain why the designation of confidentiality has created any insurmountable barriers to the proceedings in this case, and has failed to meet its burden to overcome the presumption in favor of sealing created by the express language in the protective order quoted above.

    IV. Practices in other suits.

Designation of large caches of emails as confidential is common practice in spam litigation, especially where the plaintiff is an ISP. See exhibits attached to Affidavit of Paul A.

---

attack, where a large proportion key space is searched systematically, a dictionary attack tries only those possibilities which are most likely to succeed, typically derived from a list of words in a dictionary." Wikipedia.

Wagner, also attached as an exhibit to this memorandum.

V. Conclusion.

For all of the above reasons the motion challenging sealing should be denied.

In summary, the basic reasons why BSI wants to protect its email addresses is that (1) the ad networks in these actions, such as World Avenue, have a long history of passing on email addresses to their spammers, contrary to industry best practice, (2) defendants acknowledge the value and purpose of keeps said email addresses confidential when they hire Lashback, (3) to avoid getting more spam or abuse to the disclosed address which include active contact email addresses required for clients, (4) to avoid nullifying the disclosed addresses and ramping up spam to the non-disclosed addresses, and (5) for the above reasons BSI regards the emails to be confidential research, development, or commercial information.

/s/
Stephen H. Ring
**STEPHEN H. RING, P.C.**
506 Main Street, Suite 215
Gaithersburg, Maryland 20878
MD Bar Id. No. 04731764; USDC, MD: #00405
Telephone: 301-563-9249

/s/
Michael S. Rothman
E. Jefferson Street
Suite 201
Rockville, MD 20850
Phone: (301) 251-9660
Fax: (301) 251-9610

*Attorneys for Plaintiff*

## Certificate of Service

I certify that a copy of the foregoing document was served on the date of ECF filing, via the ECF system, on all counsel of record.

_____/s/_____
Stephen H. Ring