IN THE U.S. DISTRICT COURT FOR MARYLAND,
SOUTHERN DIVISION

| | |
|---|---|
| **BEYOND SYSTEMS, INC.** | • |
| Plaintiff | • |
| v. | • **Case No. PJM 08 cv 0921** |
| **WORLD AVENUE USA, LLC** successor by merger to NIUTECH, LLC., **DBA "THE USEFUL," ET AL.** | • |
| Defendants | • |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT WAUSA'S MOTION FOR EXTENSION OF TIME TO COMPLY WITH JOINT
DEADLINE FOR RECIPROCAL EXCHANGE OF DISCOVERY AND ELECTRONICALLY STORED
INFORMATION DEPOSITION AND FOR PROTECTIVE ORDER**

Plaintiff and Defendant WAUSA have set, confirmed, and reconfirmed the date of January 14, 2010, for the "ESI deposition" of WAUSA in Miami. WAUSA now wants to postpone it. Plaintiff seeks an order compelling WAUSA to appear as scheduled.

**I. WAUSA'S Arguments**

The motion argues that the parties have cooperated on extensions in the past (true); that settlement talks have seriously interfered with discovery (false); that great pains were taken to set the January 14 deposition date (true); and that WAUSA's general counsel in Florida has undergone surgery (our condolences and best wishes; but irrelevant).

WAUSA has apparently kept score on the number of extensions each side has granted, as if this calculus were important. Plaintiff has not counted; nor does this scorecard have any relevance.

WAUSA argues that the recent settlement talks it initiated have paralyzed all of its other activity in the case. This is absurd. The parties have raised the concept of settlement at several

points, over a period of months. WAUSA has a team of lawyers and staff working this case feverishly, as noted in more detail below. Plaintiff has a much smaller team. WAUSA should be able to handle settlement talks while the proceedings move forward. If WAUSA's argument had any traction, litigation would freeze every time either side raised the possibility of settlement. The best impetus for settlement is to let the proceedings move ahead, not to create a freeze. It would be different if both sides agreed to seek a stay, with the mutual understanding that settlement was indeed imminent.

WAUSA argues as if the parties were close to settlement. On the contrary, both sides made it very clear that certain essential terms were not agreed upon; that ultimatums were not met; and that deadlines for acceptance of proposals have expired.

The disclosure of the personal medical situation of WAUSA's general counsel elicits our condolences and best wishes for his recovery, but has nothing to do with the current issues. WAUSA is represented by a large law firm with plenty of resources and talent. There has been no showing that the hip surgery has impaired WAUSA's ability to appear for a deposition as agreed and confirmed, or to respond to written discovery requests that were served 6 months ago. WAUSA fails to explain how its general counsel was able to participate in "four weeks" of settlement negotiations surrounding the surgery date, but that WAUSA finds itself unable to meet its discovery obligations due to that same surgery. BSI and its counsel have weathered personal travails as well, but have nevertheless provided their written responses and stand ready to proceed with the deposition.

## II. Importance of the ESI Deposition of WAUSA

The parties agreed to allow one ESI deposition of each side to establish what ESI

information exists, prior to merits discovery, so that later discovery and arguments could be better tailored to relevant facts and issues. WAUSA took its ESI deposition of BSI, recorded via stenographer and video, on September 17, 2009. Prior to that date BSI provided thousands of pages of electronic documents. After that deposition the parties explored dates for BSI's ESI deposition of WAUSA, and after several false starts, finally agreed on the date of January 14, 2010. For the convenience of WAUSA, and at its insistence, BSI agreed that the deposition be held near WAUSA's offices in Miami. See emails and correspondence between counsel, and deposition notice, attached.

The undersigned is about to enter a period of difficult scheduling for several months, and WAUSA's counsel likewise has in the past had a busy calendar. Cancellation of the existing, confirmed date would risk slippage of this deposition, possibly for several months, impairing subsequent discovery and other critical parts of the case. Given the past challenges in setting this deposition, and the equities that favor allowing Plaintiff to get it done, there is no sense in letting the current slide by.

### **III. No Settlement.**

There is no imminent settlement in this case, and there is no reason to postpone the deposition over speculation or hope that settlement might occur at any minute. WAUSA comes dangerously close to disclosing confidential communications, but BSI agrees with the representation that counsel for the parties have discussed some of the terms of a possible settlement over several weeks prior to a year-end deadline, which expired without the parties having reached a final agreement. Neither party can claim that the case is now close to settlement, due to continuing vigorous disagreements on key terms. The impending deposition

3

will likely turn up key information that will lead to further significant discovery relevant to BSI's case. If WAUSA were inclined to settle, that result would be facilitated by leaving the deposition <u>on</u>, not by postponing it.

## **IV. Reasons to Move Forward**

Plaintiff has been criticized first by WAUSA, and then by the Court in accepting some of WAUSA's arguments, for not pressing discovery. Some of this perception may have been caused by the extensions now catalogued by WAUSA in its motion. Regardless, BSI now calls the Court's attention to the following, demonstrating its diligence in trying to move this case forward:

● Plaintiff's interrogatories and document requests on the merits issued to WAUSA in June, 2009, attached.

● Plaintiff's Motion to Compel Holdings Regarding Jurisdictional Discovery (docket 138);

● emails and correspondence between counsel to schedule the ESI deposition of WAUSA, attached.

● Plaintiff's Notice of ESI Deposition of WAUSA, attached;

● Plaintiff's Notice of Deposition of WAUSA-affiliated entities, attached;

● Plaintiff's deposition subpoenas to WAUSA-affiliated entities, attached;

● Plaintiff's document subpoenas to non-parties, sample attached;

● Plaintiff's draft Second Amended Complaint, provided to WAUSA for discussion prior to filing (excerpts, first 3 pages), attached;

Discovery obtained during the battle over personal jurisdiction as to Defendant World

Avenue Holdings, LLC has led to additional sources of information that have turned up identification of over a dozen additional World Avenue entities, whose ties were not previously known to Plaintiff, and who appear to be part of World Avenue's spam-based marketing operations. The organizational chart produced by WAUSA so far, showing only two corporate names (WAUSA and Defendant World Avenue Holdings, LLC) in a field of empty squares, is about to be filled in. (See organizational chart at document WAH0001, filed at d. 138-13 under seal, and again here, under the new ECF sealing procedure.) The subpoenas to World Avenue Companies (See Notice of Subpoenas, attached) and the draft Second Amended Complaint (excerpts, attached) are part of Plaintiff's effort to identify the responsible parties among a plethora of related entities, a task that appears to require questioning of defendants' knowledgeable designees in depositions. (See, Billman, et al.v. State of Maryland Deposit Insurance Fund Corporation, 88 Md.App. 79, 593 A.2d 684 (1991), cert. denied, as to agency upstream and downstream among related entities.)

    Clearly, there is work to be done in lining up the correct defendants. The date for naming additional parties has been extended to January 19, 2010 by amendment of the scheduling order (joint motion at d. 127, order approving at d. 128). BSI would like to avoid having to move for a further extension of this deadline, but WAUSA's motion would force a request for such an extension.

## V. One-Way Conduct: Harrassment and Intimidation; then Evasion

    WAUSA has eagerly sought and obtained discovery from BSI's side of the fence, but is reluctant to allow information to flow back to BSI in reciprocal fashion. BSI is on the verge of an opportunity to extract from WAUSA for the first time, key information, via deposition, on

5

topics other than personal jurisdiction.  WAUSA appears to be running for cover.

WAUSA set the tone for its case initially with a salvo of several dozen stilted and lengthy "document hold" letters sent to persons associated with BSI, including Paul Wagner's parents and siblings, the wives of his brothers, and apparently an assortment of entities that have had even remote dealings with the Wagners.  See sample document hold letters, attached.

Next followed a "rain of subpoenas," launching thick packets of intimidating documents on dozens of entities and individuals commanding the production of a wide variety of documents, served on some of the same individuals who were targeted with the document hold letters.  These, as well, were served on Paul Wagner's retired parents, his siblings (some of whom are lawyers and doctors), and the wives of his brothers, who have nothing to do with BSI's business operations.  At least one intimidating and distressing subpoena was sent to St. Luke's House, a rehabilitation center for people suffering from mental illness, where Diane Wagner works as the coordinator of volunteer services.  See samples of subpoenas, attached.

Most of the information sought in the subpoenas had to do with the status of BSI, and potential third-party defendant Hypertouch, as providers of services related to computers and/or the Internet (ISP's), and is redundant with merits discovery requests directed to BSI.  The targets included over a dozen clients of BSI or Hypertouch.  WAUSA's recognition of these clients via this attack,  ironically, would seem to be an admission that these ISP's are the real thing, which runs counter to one of WAUSA's challenge to the standing of BSI and Hypertouch as ISP's.  Despite requests by counsel, WAUSA has failed to turn over the documents it received from most of the persons to whom it issued subpoenas, having provided copies from only a fraction of the 50-odd names in WAUSA's subpoena notices.  The inference we draw from this reluctance

to produce is that the unproduced documents are adverse to WAUSA's case.

Among the documents that have been produced by the subpoena recipients are personal web pages and blogs, addressing such personal information as honeymoons and family gatherings. While this type of material is of no relevance to the case, it demonstrates the intrusive nature of the subpoenas to non-parties. The more relevant subpoena-generated documents, and the ones BSI seeks from WAUSA, are those that confirm the services used and provided by BSI and Hypertouch in their roles as ISP's.

One of the subpoenas, addressed to William Wagner (Paul Wagner's father, age 70) was captioned in the U.S. District Court for the District of Columbia, despite the fact that he lives in Rockville and has no ties to D. C. When WAUSA was dissatisfied with William Wagner's response, it filed suit in that court for the sole purpose of enforcing that subpoena. After briefing, an order was issued denying the motion and inviting a submission for purposes of sanctions. See order, attached.

The plethora of letters and subpoenas was launched by an energetic, tech-savvy team at Greenber Traurig who were obviously tasked to "sick" BSI. They proceeded in these twin campaigns without waiting for merits discovery from BSI. This team obviously plumbed real estate records and other public sources of data, and assembled the identities and street addresses of dozens of persons who have known or dealt with BSI or Paul Wagner. If the goal was to harass and intimidate non-parties, and to generate ill will toward spam-based businesses like WAUSA,, it succeeded.

BSI had another taste of WAUSA's approach to this case in the deposition of Mr. Dhana in Miami, which provoked a firestorm of activity including court filings and a telephonic hearing

7

during the deposition. See motion to compel at d. 138. The deposition was marked by lack of cooperation, laconic and non-responsive answers, canned answers repeated mechanically as if scripted, and general resistance to questioning.

Given this history, BSI resists WAUSA's effort to slow down discovery and to shift the focus of these proceedings away from the core issues. We will not be easily side-tracked from taking this carefully planned deposition. BSI is intent on extracting essential information from WAUSA that will be necessary for the further prosecution of this suit.

### VI.  Miscellaneous

WAUSA argues that the scope of the subject matters in the notice for the ESI deposition is too broad. If past is prologue, this issue will not likely be resolved before the deposition. Counsel have already conferred on this point, and have essentially agreed to disagree. The deposition should proceed as far as possible, with objections as may be appropriate. Disagreement as to permissible scope is not a reason to abort or defer the deposition.

WAUSA agrees that the notice to depose other entities within the World Avenue family, with subpoenas, should be set for another date. BSI will agree to work out a new plan for the taking of those depositions in the near future. This point should not affect the ESI deposition of WAUSA.

The motion is defective for lack of the required certificate of good faith efforts, as argued in BSI's separate motion to strike. This opposition memorandum is not intended as a waiver of any argument in the motion to strike, and is intended to apply to any re-filing, amendment or supplementation of WAUSA's motion

### VII.   Relief Sought

The motion should be denied. Plaintiff requests an award of costs and attorney's fees for the preparation, filing and argument of this memorandum and all related issues, and for the interruption, disruption, postponement or rescheduling of any discovery events including depositions that may result from WAUSA's motion.

_____/s/_____
Stephen H. Ring
STEPHEN H. RING, P.C.
506 Main Street, Suite 215 Gaithersburg, Maryland 20878
MD Bar Id. No. 04731764; USDC, MD: #00405  Telephone: 301-563-9249


_____/s/_____
Michael S. Rothman
S. Jefferson Street Suite 201
Rockville, MD 20850
Phone: (301) 251-9660  Fax: (301) 251-9610
*Attorneys for Plaintiff*


## **GROUNDS AND AUTHROTIES**


Local Rule 104. Discovery

3. Discovery to Proceed Despite Existence of Disputes
<u>Unless otherwise ordered by the Court, the existence of a discovery dispute as to one
     matter does not justify delay in taking any other discovery</u>. . . .

. . .

7. Conference of Counsel Required

Counsel shall confer with one another concerning a discovery dispute and make sincere attempts to resolve the differences between them. The Court will not consider any discovery motion unless the moving party has filed a certificate reciting (a) the date, time and place of the discovery conference, and the names of all persons participating therein, or (b) counsel's attempts to hold such a conference without success; and (c) an itemization of the issues requiring resolution by the Court.

8. Procedure Regarding Motions to Compel

The following procedure shall be followed in litigating motions to compel answers to interrogatories and requests for production or entry upon land as to which a response has been served. This procedure shall not govern motions to compel (a) answers to interrogatories or to requests for production or entry upon land where no responses at all have been served, (b) answers to deposition questions or (c) responses to discovery requests directed to a non-party. Such latter motions shall be filed with the Court and treated as any non-discovery motion, except that, as to disputes concerning discovery directed to a non-party, unless otherwise directed by the Court, the Court will not consider the motion until a conference has been held under L.R. 104.8.b and a certificate has been filed under L.R. 104.8.c.

FRCP 26 . . .

(c) PROTECTIVE ORDERS. Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(1) that the disclosure or discovery not be had;
(2) that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place;
(3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;
(4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain

matters;
(5) that discovery be conducted with no one present except
persons designated by the court;
(6) that a deposition, after being sealed, be opened only by
order of the court;
(7) that a trade secret or other confidential research,
development, or commercial information not be revealed
or be revealed only in a designated way; and
(8) that the parties simultaneously file specified documents or
information enclosed in sealed envelopes to be opened as
directed by the court.
If the motion for a protective order is denied in whole or in part,
the court may, on such terms and conditions as are just,
order that any party or other person provide or permit
discovery. The provisions of Rule 37(a)(4) apply to the
award of expenses incurred in relation to the motion.

(d) TIMING AND SEQUENCE OF DISCOVERY. Except in categories of proceedings exempted from initial disclosure under Rule 26(a)(1)(E), or when authorized under these rules or by order or agreement of the parties, a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f). Unless the court upon motion, for the convenience of parties and witnesses and in the interests of justice, orders otherwise, methods of discovery may be used in any sequence, and the fact that a party is conducting discovery, whether by deposition or otherwise, does not operate to delay any other party's discovery.

**Exhibits**

1. - emails and correspondence between counsel (September 22, October 15, 23, November 4, December 1, 7, 19, 2009; January 4, 2010)

2. - Plaintiff's Notice of ESI Deposition of WAUSA

3. - Plaintiff's interrogatories on the merits issued to WAUSA in July, 2009

4. - Plaintiff's document requests on the merits issued to WAUSA in July, 2009

5. - Plaintiff's Notice of Deposition of WAUSA-affiliated entities

6. - Plaintiff's deposition subpoenas to WAUSA-affiliated entities, samples

7. - Plaintiff's draft Second Amended Complaint, (excerpts, first 3 pages)

8.  - WAUSA's "document hold" letters, samples

9.  - WAUSA's subpoenas to non-parties, Wagner family members, samples

10. - WAUSA's notice and D.C. subpoena to non-party William Wagner, father of Paul Wagner

11. - Order, U.S. District Court, District of Columbia, denying motion to compel as to William Wagner

12. - emails forwarding Plaintiff's responses to written discovery.

## Certificate of Service

I certify that a copy of the foregoing documents was served on the date of ECF filing, via the ECF system, on all counsel of record.


_____/s/_____
Stephen H. Ring