IN THE U.S. DISTRICT COURT FOR MARYLAND,
SOUTHERN DIVISION

BEYOND SYSTEMS, INC. )
    Plaintiff )
     )
    v. )    Case No.PJM 08 cv 0921
     )
WORLD AVENUE USA, LLC, et al. )
    Defendants )
_____ )

**DEFENDANT WORLD AVENUE USA, LLC'S AND WORLD AVENUE HOLDINGS, LLC'S REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR EXTENSION OF TIME TO COMPLY WITH JOINT DEADLINE FOR RECIPROCAL EXCHANGE OF DISCOVERY AND ELECTRONICALLY STORED INFORMATION <u>DEPOSITION AND FOR PROTECTIVE ORDER</u>**

Defendants WORLD AVENUE USA, LLC ("WAUSA") and WORLD AVENUE HOLDINGS, LLC ("Holdings") hereby submit their Reply Memorandum in Support of their Motion for Extension of Time To Comply With Joint Deadline For Reciprocal Exchange of Discovery and Electronically Stored Information Deposition and For Protective Order (the "Motion"), and in opposition to Plaintiff BEYOND SYSTEMS, INC.'s ("BSI") Memorandum in Opposition ("Opposition"), and state:

    I.    **<u>Introduction</u>.**

WAUSA and Holdings have requested a short extension of time for reciprocal merits discovery (requests for production of documents and interrogatories) exchanges between the parties and for the deposition of WAUSA as to Electronically Stored Information ("ESI Deposition"). *See* DE 142. As to Holdings, Defendant has pointed out in the same motion that an ESI deposition of Holdings is wholly inappropriate as it is not a party to the ESI Agreement. The request for extension of time was based upon the need to: (1) alleviate the prejudice caused by approximately four weeks of extensive and serious, confidential discussions which occurred

1

during the Holiday season and that ended the night before merits discovery was due--January 8, 2010; (2) alleviate the prejudice caused by the absence of WAUSA's General Counsel during the relevant time period; and (3) address three serious issues relating to the ESI Deposition that will prevent meaningful progress at such deposition. The protective order was necessary because BSI issued a 52-category ESI Deposition Notice that far exceeded the scope of what the parties agreed upon in the ESI Agreement.

Before proceeding to the merits of the Opposition, it should be noted that BSI's Opposition resolves three issues in the Motion. First, BSI apparently does not oppose an extension for merits discovery because it does not even mention the merits discovery in its Opposition. *See* Opposition, pp. 1-12. Second, BSI apparently does not oppose a protective order for the deposition notice that it issued to Holdings because BSI does not defend its request for a Holdings ESI Deposition in its Opposition, although the Holdings ESI Deposition was included in its Deposition Notice.[1] *See* Opposition, Exhibit 2. Third, BSI's Opposition concedes that the parties can try to "work out a new plan for the taking of" depositions of other entities in the World Avenue family. *See* Opposition, p. 7 & Exhibit 5 to Opposition (Plaintiff's Notice of FRCP 30(b)(6) Corporate Deposition Of Non-Parties For Purposes of ESI and Merits Discovery). Without conceding that such depositions are warranted, Defendants concur that BSI's concession on this issue is appropriate..

---

[1] As noted in the Motion, Holdings was not a party to the ESI Agreement, so the Notice for its "ESI Deposition" sought to invoke its submission to a deposition without its prior consent.

FTL 107,550,839v1 1-11-10

## II. An Extension and Protective Order Is Warranted.

### A. The Distraction Of All-Consuming Settlement Discussions For A Four (4) Week Period Prior To The Deadline Warrants An Extension.

WAUSA and Holdings have been prejudiced in the preparation of both the merits discovery and the ESI Deposition by dedication of extremely substantial time toward the settlement of the case from December 14, 2009 through January 8, 2010. BSI claims that it is "false" that "settlement talks have interfered with discovery." Opposition, p. 1. Nothing could be further from the truth. However, given BSI (and Defendants') mutual concern about "disclosing confidential communications" (*see* Opposition, p. 3), WAUSA and Holdings would prefer to make these disclosures confidentially to the Court at the hearing on this Motion. However, there should be no debate that the efforts were exhaustive and that the content and tenor of the settlement discussions were such as to virtually drive all litigation activity to a halt on the part of Defendants. For example, the parties met into the evening on New Year's Eve in an effort to reach agreement. They also prepared draft settlement documents exceeding 100 pages in length. It strains credulity to engage in the volume of settlement negotiations that occurred during three and a half (3 ½) weeks including Chanukah and Christmas holidays, and then claim that it had negligible impact on the case.

### B. An Extension Of Time Is Warranted Due to The Unavailability of WAUSA and Holdings' General Counsel During the Relevant Time Frame.

WAUSA then pointed out that its General Counsel, who was expected to be back full-time long before the ESI Deposition, only returned part-time last week, instead of in December as expected. BSI responded "our condolences and best wishes; but irrelevant" because WAUSA is represented by a large law firm. *See* Opposition, pp. 1-2. Setting aside the cavalier and frankly, callous tone of these comments, BSI's argument misses the mark. Although WAUSA is

3

represented by a large law firm, WAUSA only has one General Counsel who is primarily responsible for this case, and thus, the size of Defendants' counsel's firm is simply beside the point.[2] Moreover, responses to merits discovery (and preparation for an ESI Deposition) are matters where General Counsel's assistance with locating documents and informing outside counsel about how things were done as long ago as 2005 -- the date of virtually all of the EMAILS AT ISSUE -- is critical. Notably, in the several months immediately preceding initiation of the settlement negotiations in the instant case, WAUSA extended every professional courtesy and accommodated BSI's scheduling complications due to other matters, particularly the *Kraft* litigation before this Court. WAUSA not only agreed to extend BSI's deadline for amendment of pleadings, but told BSI's counsel it would agree to whatever he wanted. WAUSA did not churlishly refuse the requested courtesy to leverage BSI's counsel when he had too little time to meet his obligations is this case; nor did WAUSA raise the fact BSI is represented by three different firms, including Steptoe & Johnson in *Kraft*, as a pretext for doing so. *See* Declaration of Sanford M. Saunders, Jr., Esq., to be filed contemporaneously herewith.

      **C.    BSI's Opposition Side-Steps The Question of Whether It Is Entitled to Take The WAUSA ESI Deposition As Noticed.**

WAUSA and Holdings asked for a protective order concerning the WAUSA ESI Deposition. WAUSA and BSI agreed to a one-time deposition of one another limited to the issue of ESI. Their ESI Agreement states:

> Information relating to network design, the types of databases, database dictionaries, the access control list and security access logs and rights of

---

[2] BSI's claim that "Plaintiff has a much smaller team," Opposition, p. 2, conveniently neglects to mention that BSI, a professional spam litigant, has filed 20-25 cases over the same subject matter as this case, several of which are still ongoing. For BSI, these cases are replays with variations of the same thing they have done more than two dozen times. For their adversaries, such as Defendants, these cases are invariably new and unique.

individuals to access the system and specific files and applications, the ESI document retention policy, organizational chart for information systems personnel, or the backup and systems recovery routines, including, but not limited to, tape rotation and destruction/overwrite policy. **In addition, parties are entitled to a Rule 30(b)(6) deposition on this topic**.

*See* DE 114.

The Court need only glance at BSI's 15 page ESI Deposition Notice, and its 52 categories of topics, to know that BSI's ESI Deposition Notice for WAUSA far exceeds the narrow scope agreed to in the ESI Agreement. *Compare* Opposition, Exhibit 2, *with* DE 114.

For starters, the ESI Deposition Notice directed to WAUSA defines "You" as "the party or entity to whom the request is addressed, including all AGENTS, ASSOCIATED ENTITIES, AFFILIATES, predecessors, successors and/or assignees, subsidiaries, attorneys, accountants, representatives, corporate affiliates, and/or anyone over whom the person has had control during the relevant time period." The ESI Agreement is specifically between WAUSA and BSI, and only WAUSA agreed to be deposed on its ESI, not the ESI of every other entity that could conceivably relate to WAUSA.[3]

The Notice also uses the term "ESI Subjects" to cover every conceivable topic in the case. "ESI SUBJECTS" is defined as "the creation, preservation, management and/or control of ESI, as well as the content of the ESI." See Opposition, Exhibit 2, p. 3. The Notice then asks for everything relating to the "ESI SUBJECTS," including all ESI SUBJECTS that "pertain to issues raised in this case," "pertain to the EMAILS AT ISSUE," "in the latest complaint or amended complaint," "in the PARTIES' interrogatories," "in the PARTIES' document requests," "that

---

[3] Rather than burden the Court with re-argument of matters stated elsewhere in the record, WAUSA and Holdings incorporate by reference their entire argument on BSI's improper definition of the word "You" in Holdings' filing at DE 138-17, pp. 7-11 (Holdings' Memorandum of Law In Opposition to BSI's Motion to Compel).

5

appear in any documents produced in this case," "related to topics addressed in the PARTIES' depositions," "that have arisen in other legal proceedings arising from allegations of YOUR improper use of electronic mail," and "that relate to the operation of computers." *See* Opposition, Exhibit 2, p. 2, ¶¶ 2-10. The Notice, on its face, is consequently a flagrantly over-reaching breach of the ESI Agreement.

The remaining categories are similarly not within the scope of the ESI Agreement. These categories essentially take a topic that could be asked in a merits deposition and ask for all ESI relating to that topic of merits discovery. *See* Opposition, pp. 7-14, ¶¶ 15-52. For example, Request 17 asks for the "[l]ocation and detailed description of ESI, and the identification, dates of existence, configuration, and operation of all software relating to YOUR business operations, and/or pertaining to any PROMOTIONAL CAMPAIGN or LEAD GENERATION CAMPAIGN intended to generate revenues to YOU, either directly or indirectly." *See* Opposition, pp. 7-8, ¶ 17. To prepare a person knowledgeable on the issue, WAUSA would need to first answer the merits questions: (1) what are the PROMOTIONAL CAMPAIGNS that are directly or indirectly intended to generate revenue to WAUSA or any entity with which it is conceivably associated (under the definition of YOU); (2) what are the LEAD GENERATION CAMPAIGNS that are directly or indirectly intended to generate revenue to WAUSA or any entity with which it is conceivably affiliated; (3) where is all ESI and all software relating to WAUSA's "business operations;" (4) For #1 and #2, what is the ESI relating to those PROMOTIONAL CAMPAIGNS and LEAD GENERATION CAMPAIGNS. In addition to being far outside the scope of the ESI Agreement, the question relates generally to PROMOTIONAL CAMPAIGNS and LEAD GENERATION CAMPAIGNS, and is not limited to the EMAILS AT ISSUE. The same objection applies to the remaining topics, which are similarly outside the scope of the ESI

Agreement. What BSI is doing is deliberately violating the ESI Agreement to have two shots at a merits deposition of WAUSA.

BSI admits that the parties dispute the scope of the ESI Deposition. *See* Opposition, p. 7 ("Counsel have already conferred on the point, and have essentially agreed to disagree"). However, BSI claims that "[d]isagreement to permissible scope is not a reason to abort or defer the deposition." Opposition, p. 7.

BSI's argument flies in the face of the Maryland Suggested Protocol for Discovery of Electronically Stored Information ("Protocol") and the Federal Rules. First, the Protocol specifically provides that the parties can agree to an ESI deposition and the scope of it so that the limits to such deposition can be enforced. Specifically, the Protocol provides for:

> Preliminary depositions of information systems personnel, and limits on the scope of such depositions. Counsel should specifically consider whether limitations on the scope of such depositions such be submitted to the Court with a proposed order that, if entered, would permit Counsel to instruct a witness not to answer questions beyond the scope of the limitation, pursuant to Fed. R. Civ. P. 30(d)(1).

*See* Protocol, p. 23, § 8(L). BSI's argument defeats the purpose of the Protocol. Following that Protocol, the parties negotiated a narrow scope of the ESI Deposition in the ESI Agreement. WAUSA obeyed that narrow scope in its ESI deposition of BSI's representative. BSI now seeks to ignore what it agreed to by issuing a Notice grossly outside the limits of the scope of the ESI Agreement, and in doing so potentially subject WAUSA to possible sanctions if the Court later decided that objections were improperly made in bad faith.

Second, limiting the topics at a deposition is *precisely* the purpose of a protective order. Federal Rule 26(c)(4) provides that a protective order may be issued so that "certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters." Thus, it is entirely appropriate that the Court issue a protective order to limit the scope of the

7

WAUSA ESI Deposition to that which BSI and WAUSA agreed to in the ESI Agreement.

### D. BSI's Speculation of Unavailability Is Insufficient.

BSI then argues that an extension is improper because BSI's counsel "is about to enter a period of difficult scheduling for several months," and that "[c]ancellation of the existing, confirmed date would risk slippage of this deposition." Opposition, pp. 2-3. However, BSI does not affirmatively state that it is unavailable for the proposed week, and gives no indication of what conflicts exist during the relevant time period.

### III. WAUSA and Holdings Made Abundant Good Faith Efforts To Resolve This Motion.

In a carefully-worded argument, BSI's Opposition claims that "the motion is defective for lack of the required certificate of good faith efforts." Opposition, p. 7. The Court should note that BSI does not argue that a good faith effort was not made, but only that the certification of the good faith effort was not made in a separate certificate. *See* Opposition, p. 7. Indeed, BSI concedes at Page 7 that "[c]ounsel have already conferred on this point [the scope of the ESI Deposition], and have essentially agreed to disagree." *See* Opposition, p. 7. WAUSA and Holdings' full good faith effort was detailed at Page 5 of the Motion:

> Given the approximately four-week hiatus in the case due to the intervening events, and the continued unavailability for full-time attention of WAUSA's General Counsel, counsel for WAUSA and World Avenue Holdings repeatedly consulted in early January with counsel for BSI to request an extension of the January 8 and January 14 deadlines, all to no avail. On January 7, 2009, counsel for WAUSA and World Avenue Holdings made, in writing, a good faith effort to obtain agreement to this motion, but counsel for BSI still refused.

*See* DE 142, p. 5, § D (footnote omitted). WAUSA and Holdings have also filed their Local Rule 104 Certification. *See* DE 137.

8

FTL 107,550,839v1 1-11-10

### IV. BSI's Remaining Arguments Do Not Warrant Denial of an Extension And Protective Order.

BSI's remaining argument that WAUSA is "running for cover" is incorrect. WAUSA is not seeking an indefinite extension, but only one of sufficient length to alleviate the prejudice described above.

BSI's remaining arguments are likewise incorrect and all are most accurately described as complaints that WAUSA and Holdings are aggressively defending themselves. BSI should have expected as much when it filed a complaint seeking in excess of $100 million in damages. First, BSI argues that WAUSA issued "document hold letters" to persons associated with BSI. *See* Opposition, p. 5 & Exhibit 8. BSI perhaps forgets that it commenced this case by issuing just such a demand to WAUSA and other Defendants, and then seeking permission from this Court to begin expedited discovery on precisely these issues. Regardless, the practice of sending "litigation hold letters" is specifically endorsed by the Maryland Suggested Protocol for Discovery of Electronically Stored Information. *See* Protocol, pp. 9-11, § 7(A)(4)(a)-(d) & § 7(A)5(a)-(d). BSI's counsel was specifically copied on the letters. If BSI's concern is that "litigation hold letters" are improper, that critique is more appropriately directed to Joint Bench-Bar Committee that formulated the Protocol. *See* http://www.mdd.uscourts.gov/localrules/localrules.html. The litigation hold letters were appropriately disseminated to "likely witnesses and persons with knowledge regarding relevant events." *See* Protocol, p. 7, § 7(A)(1)(c).

BSI next contends that WAUSA issued subpoenas that "have nothing to do with BSI's business operations." Opposition, p. 5. BSI knows better. This Court is well familiar with the BSI litigation machine. Paul Wagner's parents purport to host at their residence and condominium in Maryland the computer servers that supposedly received the E-MAILS AT

9

ISSUE. Paul Wagner's brother, Steven Wagner, is listed on a website (katka-steve.com) that contains embedded e-mail addresses for the purpose of attracting spam so that BSI can churn further spam litigation. Paul Wagner's sister-in-law, Lisa FitzGerald Wagner, owns yet other websites (motiongranted.com and reasonabledoubt.com) where even further embedded e-mail addresses are hosted to attract even further spam. One subpoena went to "St. Luke's House," which BSI had publicly averred in Interrogatory Answers was its "client." Opposition, p. 5. However, that "client" responded that it had no documents whatsoever about BSI. BSI complains that the subpoenas "are redundant with merits discovery," as if WAUSA must just accept BSI's word about all of its so-called "clients" and operations. To the contrary, the subpoenas have severely undermined any claim that BSI is an internet service provider.[5] Moreover, the claim that the subpoenas resulted in the production of a "few documents," is incorrect as the recipients of the subpoenas have produced hundreds of merits-related discovery documents. Again and again, the subpoenas have also revealed that claimed BSI "clients" have no documents or have not dealt with BSI for years.

BSI complains about a subpoena issued to William Wagner, who houses the BSI computer servers that supposedly received the E-MAILS AT ISSUE in his residence and condominium. *See* Opposition, p. 6 & Exhibit 11. To be certain, Wagner did not *object* to the Subpoena, but just claimed he had no documents. Although the District of Columbia District Court denied WAUSA's Motion to Compel (*see* Exhibit 11), it also invited WAUSA to "subpoena him for a deposition under Rule 45(a)(1)(B) and make further inquiries into the

---

[5] Defendants have previously provided results of the responses from third parties to the subpoenas to BSI, and will update BSI with new responsive documents from the third parties.

matter." *See* Opposition, Exhibit 11, p. 4, ¶ 1.

Finally, although BSI complains that the Fidel Dhana "deposition was marked by lack of cooperation and resistant answers to questions," the fact is that Mr. Dhana cooperated fully -- and notwithstanding its complaints, BSI has raised a grand total of two deposition questions for which it seeks more information in its Motion. *See* Opposition, p. 6, DE 138, and DE 138-17, pp. 23-24.

Thus, none of BSI's critiques serve as a basis to deny a protective order or the extension requested.

### V. Conclusion.

For the foregoing reasons, the Court should issue the requested extension and protective order.

Dated: January 11, 2010.

>Respectfully submitted,
>
>Sanford M. Saunders, Jr., Esq.
>USDC, MD #4734
>saunderss@gtlaw.com
>Nicoleta Burlacu, Esq.
>BurlacuN@gtlaw.com
>*Admitted Pro Hac Vice*
>GREENBERG TRAURIG, LLP
>2101 L Street, NW, Suite 1000
>Washington, DC 20037
>Telephone: 202-331-3100
>Facsimile: 202-331-3101
>
>--and--
>
>_____/s/ John L. McManus\_\_
>Kenneth Horky, Esq.
>Florida Bar No. 691194
>horkyk@gtlaw.com
>John L. McManus, Esq.
>Florida Bar No. 0119423
>mcmanusj@gtlaw.com
>*Admitted Pro Hac Vice*
>GREENBERG TRAURIG, P.A.
>401 East Las Olas Boulevard, Suite 2000
>Fort Lauderdale, FL 33301
>Telephone: 954-765-0500
>Facsimile: 954-765-1477
>
>*Attorneys for World Avenue USA, LLC and World Avenue Holdings, LLC*

12

FTL 107,550,839v1 1-11-10