IN THE U.S. DISTRICT COURT FOR MARYLAND,
SOUTHERN DIVISION

BEYOND SYSTEMS, INC.        )
    Plaintiff          )
                            )
    v.                 )    Case No.PJM 08 cv 0921
                            )
WORLD AVENUE USA, LLC, et al. )
    Defendants         )
_____ )

**DEFENDANT WORLD AVENUE USA, LLC'S MOTION FOR PROTECTIVE ORDER
AS TO THE SCOPE OF
THE ELECTRONICALLY STORED INFORMATION DEPOSITION**

Defendant WORLD AVENUE USA, LLC ("WAUSA"), pursuant to Rules 26, 30, and 37 Fed. R. Civ. P., hereby moves for a protective order concerning the scope of the February 18, 2010 Electronically Stored Information Deposition set by Plaintiff BEYOND SYSTEMS, INC. ("BSI"), and states:

    **I.**    **INTRODUCTION.**

This Motion for Protective Order derives from an attempt by BSI to re-write an agreement between it and WAUSA to obtain discovery to which it is not entitled in a limited purpose deposition. WAUSA and BSI entered into an Agreement Regarding the Discovery of Electronically Stored Information ("ESI Agreement"). *See* DE 114. In the ESI Agreement, WAUSA and BSI agreed, among other things, that each side could conduct a limited purpose deposition for the purpose of asking questions about the location and accessibility of ESI. The scope of the deposition was described in detail in a succinct 74-word Paragraph. The Paragraph was negotiated over a period of several months.

1

WAUSA complied with the ESI Agreement by conducting a limited purpose ESI deposition of BSI. BSI's counsel, during the deposition, acknowledged the limited scope of the ESI deposition and objected to questions that exceeded that limited scope.

When BSI's turn came, however, all limits were off. BSI issued a 16-page ESI Deposition Notice to WAUSA, complete with six (6) pages of 28 definitions, fifty (50) topics of examination spanning nine (9) pages of text, and five (5) document requests. *See* Exhibit 1, attached hereto. The Court need only glance at the short 74-word Paragraph describing the ESI Deposition in the ESI Agreement and the gargantuan and ever-expanding BSI ESI Deposition Notice to know what has occurred here.

Despite months of good faith negotiation by WAUSA to try to narrow the scope of the ESI Deposition, it has only grown in the prolixity of its subject matter and breadth. Thus, WAUSA has been forced to file this Motion to enforce the ESI Agreement and confine BSI to what it agreed to in a contract adopted by the Court.

### II.   FACTUAL BACKGROUND.

#### A.   **WAUSA and BSI Stipulate To A Limited Purpose ESI Deposition That Excludes Examination of Entities Other Than WAUSA.**

On October 6, 2009, BSI and WAUSA jointly submitted the ESI Agreement. *See* DE 114. The ESI Agreement between BSI and WAUSA provided for reciprocal narrow depositions on ESI.

> Information relating to network design, the types of databases, database dictionaries, the access control list and security access logs and rights of individuals to access the system and specific files and applications, the ESI document retention policy, organizational chart for information systems personnel, or the backup and systems recovery routines, including, but not limited to, tape rotation and destruction/overwrite policy. **In addition, parties are entitled to a Rule 30(b)(6) deposition on this topic**.

*See* DE 114.

In the course of agreeing to the ESI Agreement, counsel spent significant time addressing the definition of the two signatory parties. Specifically, WAUSA proposed that "BSI" include Hypertouch as well as Paul Wagner and James Wagner individually. BSI opposed the definition as being overbroad. Similarly, BSI proposed to define WAUSA to include "World Avenue USA, LLC, World Avenue Holdings, LLC, World Avenue Management, Inc., World Avenue IP, LLC, World Avenue, Gift Reward Center, LLC, Niuniu Ji, and all related corporations and subsidiaries." *See* Exhibit 2, attached hereto containing WAUSA's deletion of BSI's change on Page 3 of the ESI Agreement. WAUSA rejected the broad scope of that definition. In order to resolve the dispute, BSI and WAUSA agreed to narrow the scope of the definition of each, and as a result, the ESI Agreement defines WAUSA as "World Avenue USA, LLC and its attorneys, employees, agents, and representatives, and all persons acting at its direction or on its behalf." *See* DE 114.

      **B.**    **WAUSA Complies With The ESI Deposition Scope By Confining The Deposition To A Narrow Scope, And BSI's Counsel Confirms The Limited Scope of The ESI Deposition On The Record.**

On September 17, 2009, WAUSA conducted the ESI Deposition of BSI pursuant to a Notice that contained nine (9) specifically detailed categories:

    1.    Pursuant to the Maryland Suggested Protocol For The Discovery of Electronically Stored Information ("Protocol"), steps taken by Beyond Systems, Inc. ("BSI") to preserve Electronically Stored Information ("ESI") (as defined in the Protocol) steps taken by BSI to ensure that ESI is not deleted in the ordinary course of business, steps taken by BSI to avoid alteration of discoverable ESI, and BSI's criteria regarding the operation of spam or virus filters and the destruction of filtered ESI, for the period of time involved in this case, to wit, for the period from July 20, 2004 to September 3, 2005, and continuing to date (the "Time Period").

    2.    Location of, and manner of storage of ESI relevant to this case on BSI's computers and servers, for the Time Period.

3

  3. Location of, and manner of storage of ESI on computers, servers, and personal digital devices used and/or accessed locally or remotely by any employee of BSI, for the Time Period.

  4. Identification, configuration, ownership/title, physical location, and specifications of the BSI network or mail servers that received the EMAILS AT ISSUE as defined in the Amended Complaint for the Time Period.

  5. Identification, configuration, ownership/title, physical location, and specifications of the BSI web servers that host domains registered to BSI, and location of ESI on such web servers for the Time Period.

  6. Identification, configuration, ownership/title, upstream carrier, date of provisioning of all Internet Protocol addresses ("IP Addresses") provisioned to BSI over which BSI allegedly received the EMAILS AT ISSUE as defined in the Amended Complaint and over which BSI allegedly hosts the domains, for the Time Period, and location of ESI relating to such IP Addresses.

  7. Configuration of and location of ESI relating to e-mail processing rules on the mail servers that allegedly received the EMAILS AT ISSUE for validation and processing of incoming emails, including HELO/EHLO protocols, for the Time Period.

  8. Location of ESI relating to identification, dates of existence, configuration, ownership/title for all e-mail accounts that allegedly received the EMAILS AT ISSUE, for the Time Period.

  9. Configuration of and location of ESI relating to setup of Stalker and Communigate server software as used on mail servers that allegedly received the EMAILS AT ISSUE, for the Time Period.

*See* WAUSA Deposition Notice, attached as Exhibit 3.

At the deposition, BSI's counsel insisted on confining the line of questioning to the nine (9) noticed topics and the ESI Agreement. For example, in one of many scope objections made during the ESI Deposition, BSI's counsel stated:

```
16      BY MR. SAUNDERS: [WAUSA's counsel]
17   Q.  Let me try it this way.  It is incorrect
18   for me to assume that there's a client attached to
19   every e-mail that is something @Hypertouch.com?
20      MR. RING [BSI's Counsel]:  Note my objection.  We're way
21   outside the scope of the notice.
22      MR. SAUNDERS:  I disagree.  I'm trying to
```

```
 1  figure out how this network is structured.
 2        MR. RING:  Which item are we under right
 3  now?
 4        MR. SAUNDERS:  Sorry.  I put it away.
 5  Hang on.
 6        MR. RING:  Most of these have to do with
 7  location of data.
 8        MR. SAUNDERS:  I'm trying to get to number
 9  4.
10        MR. RING:  Configuration of and location
11  of ESI.  We're on number 4?
12        MR. SAUNDERS:  Yes.  The network.  The BSI
13  network.
14        MR. RING:  Identification, configuration,
15  ownership, title, physical location and
16  specifications of the BSI network or mail servers.
17  And you asked him about all that.  And now you are
18  going into how hypothetically certain e-mails might
19  be delivered when the first position in the e-mail is
20  a wild card, a blank, or just a random set of
21  characters, that's what I gather you are going to.
22  That's all hypothetical.  It is just not covered by
 1  the scope.
 2        MR. SAUNDERS:  I think it is covered by 4
 3  because it goes to the network.  It also goes to 8
 4  where we talk about e-mail accounts.
 5        But my understanding about e-mail accounts
 6  may be wrong.  I'd appreciate being educated.
 7        MR. RING:  **And I agree with you that this
 8  is an issue in the case on the merits.  But we're not
 9  here on the merits today.  We're here for a limited
10  purpose, ESI deposition**.
11        MR. SAUNDERS:  I'm not trying to take him
12  through all the e-mails.  I'm not trying to take him
13  through 68,000, I'm trying to ask some questions so I
14  can figure out how to do that.
15        MR. RING:  I understand that.  But that
16  would be -- **I submit the way you are doing this is
17  proper for merits discovery.  We are here today for a
18  limited purpose**.
19        I don't agree with you this falls under 4
20  or 8, the last few questions you asked him about how
21  certain types of e-mails with or without real names
22  would get delivered.
```

*See* Exhibit 4, attached hereto (emphasis added), containing selected Excerpts of the ESI

5

Deposition of BSI dated September 17, 2009, pp. 140, lines 16-22; p. 141, lines 1-22; p. 142, lines 1-22.

      **C.    Contrary To The ESI Agreement, BSI Notices An Expansive 16-Page, 50 Topic ESI Deposition of WAUSA With The Intent To Cover WAUSA And All of Its Related Entities**

On December 19, BSI noticed the WAUSA ESI Deposition for January 14th on a broad range of topics far exceeding what was agreed to in the ESI Agreement. After WAUSA filed a Motion for Extension of Time and For Protective Order [DE 142-154], the parties entered into a Stipulation resolving the extension of time, postponing the ESI Deposition to a date certain of February 18, and providing that it was without prejudice to the Motion for Protective Order as to the scope of the ESI Deposition. [DE 155].

BSI issued a 16-page ESI Deposition Notice to WAUSA, complete with six (6) pages of 28 definitions, fifty (50) topics of examination spanning nine (9) pages of text, and five (5) document requests. *See* Exhibit 1.

**III.    SUMMARY OF ARGUMENT.**

This Court should grant a protective order to narrow the scope of the topics in BSI's ESI Deposition Notice to those categories that are within the scope of the ESI Agreement in a manner similar to WAUSA's ESI Deposition Notice. *See* Exhibit 3; DE 114. BSI's 16-page ESI Deposition Notice containing 28 definitions and 50 categories of knowledge far exceeds the scope of the narrowly-tailored ESI Agreement. In addition to being facially beyond the scope of the ESI Agreement, the ESI Deposition Notice attempts to require WAUSA to respond to questions about ESI of other related entities that are not parties to the ESI Agreement and which were specifically excluded from the scope of the ESI Agreement. *See* Exhibit 2; DE 114. Moreover, by using overbroad definitions, BSI's ESI Deposition Notice attempts to cover the

merits of the case by clothing the requests in the garb of ESI requests.  For these reasons and those set forth below, the Court should issue a Protective Order.

### IV. ARGUMENT.

#### A. The Applicable Law On Rule 30(b)(6) Depositions.

Federal Rule 26(c)(4) provides that a protective order can issue so that "certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters."  A 30(b)(6) notice containing numerous categories seeking irrelevant, overbroad, and duplicative information can be limited by the court. *E.E.O.C. v. Vail Corp.*, 2008 WL 5104811, at *1 (D. Colo. 2008) (granting protective order on 30 topics in notice where many of the remaining topics were "unnecessarily duplicative, burdensome or otherwise inappropriate"); *McBride v. Medicalodges, Inc.*, 250 F.R.D. 581 (D. Kan. 2008) (granting protective order where notice was overly broad in temporal and geographic scope and party seeking discovery failed to meet burden to show relevance); *Met. Life Ins. Co. v. Muldoon*, 2007 WL 4561142, at *1, *3 (D. Kan. 2007) (limiting notice where it was extremely broad and sought irrelevant information); *Krasney v. Nationwide Mut. Ins. Co.*, 2007 WL 4365677, at *1 (D. Conn. 2007) (granting protective order on overbroad notice that contained "amorphous" categories); *Jordan v. Equifax Info. Svcs.*, 2005 WL 327066, at *1 (N.D. Ga. 2005) (limiting notice to exclude those topics that are oppressive, burdensome, and unnecessary); *Evans v. Allstate Ins. Co.*, 216 F.R.D. 515, 519 (N.D. Okla. 2003) (limiting notice with 10 topics to those that were relevant).

As one court has stated:

> An overbroad Rule 30(b)(6) notice subjects the noticed party to an impossible task.  To avoid liability, the noticed party must designate persons knowledgeable in the areas of inquiry listed in the notice.  Where, as here, the defendant cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible.

*See Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000).

### B.  BSI's ESI Deposition Notice Improperly Attempts To Extend The ESI Deposition To Cover Non-Parties To The ESI Agreement.

The Court need only glance at BSI's 16 page ESI Deposition Notice, and its 50 categories of topics, to know that BSI's ESI Deposition Notice for WAUSA far exceeds the narrow scope agreed to in the ESI Agreement. *Compare* Exhibit 1, attached hereto *with* DE 114. Only WAUSA -- and no other company or person -- agreed to a limited purpose ESI Deposition. Moreover, BSI's attempt to include those other related companies in the scope of the deposition was specifically rejected in the negotiation of the ESI Agreement. *See* Exhibit 2.

The ESI Deposition Notice directed to WAUSA defines "You" as "the party or entity to whom the request is addressed, including all AGENTS, ASSOCIATED ENTITIES, AFFILIATES, predecessors, successors and/or assignees, subsidiaries, attorneys, accountants, representatives, corporate affiliates, and/or anyone over whom the person has had control during the relevant time period." *See* Exhibit 1, p. 6, ¶24. In turn, the word "Agents" is defined as "a PERSON or entity who has agreed to provide some service or do some act for YOUR benefit and who is subject in any form to YOUR direction or control." *See id.*, p. 2, ¶2. The words "Associated Entity" are defined to mean "any subsidiary; any entity of which you are a subsidiary; any entity having two or more officers or directors, or at least one officer and one director, who also serve as an officer or director of YOU; or an LLC having common members with YOU; or any entity whose majority ownership is controlled either directly or indirectly by the same persons who hold majority ownership of YOU; or whose day to day operations are directed or conducted by the same persons who direct YOUR day to day operations." *See id.*, p. 2, ¶3. The word "Affiliate" is defined as "anyone authorized to promote or market products of another in return for a bonus, commission or other compensation, or to drive traffic to a

8

website." *See id.*, p. 2, ¶1.

BSI's Deposition Notice uses the words "you," "your", "your Agents", "Associated Entity", and "Affiliate" to obliterate the carefully-negotiated scope of the ESI Agreement between WAUSA and BSI. In short, BSI is attempting to re-write the ESI Agreement through a Deposition Notice to extract the concessions it was unable to obtain in negotiating the ESI Agreement. *Compare* Exhibit 1 *with* Exhibit 2. The objectionable definition of the word "You" or "Your" appears in Paragraphs 1, 7, 10, 12-13, 15-26, 28-32, 34-38, and 41-49. *See* Exhibit 1. The objectionable terms "Agent", "Associated Entity", and "Affiliate" appear in Paragraphs 12, 22-25, 27-28, 32, 36-38, 43-44, and 47. *See id*. The ESI Agreement is specifically between WAUSA and BSI, and only WAUSA agreed to be deposed for a limited purpose on its ESI, not the ESI of every other entity that could conceivably relate to WAUSA.[1]

In addition to violating the ESI Agreement, BSI's attempt to seek information concerning other related and unrelated companies is also improper under Rule 30(b)(6) because the other companies simply have no relevance. *Steil v. Humana Kansas City, Inc.*, 197 F.R.D. 442, 445 (D. Kan. 2000) ("Plaintiff has not carried his burden of showing the relevancy, in an insurance contract action, of his discovery request seeking information on other companies affiliated with defendant or other group health insurance plans issued by these affiliated companies"); *McBride*, 250 F.R.D. at 584 (denying companywide inquiry on 30(b)(6) notice involving disparate facilities).

---

[1] Rather than burden the Court with re-argument of matters stated elsewhere in the record, WAUSA incorporates by reference its entire argument on BSI's improper definition of the word "You" in Holdings' filing at DE 138-17, pp. 7-11 (Holdings' Memorandum of Law In Opposition to BSI's Motion to Compel).

### C. The ESI Deposition Notice Improperly Obliterates Any Distinction Between ESI Discovery And Merits Discovery.

Rather than being confined to the location and nature of ESI, BSI's ESI Deposition Notice crosses into merits discovery in the case and requires WAUSA's representative to be prepared to respond to merits questions. BSI's Notice crosses into merits discovery through two tactics.

First, the ESI Notice tries the accomplish this through the use of the term "ESI Subjects" to cover every conceivable topic in the case. "ESI SUBJECTS" is defined as "the creation, preservation, management and/or control of ESI, as well as the content of the ESI." *See* Exhibit 1, p. 4, ¶ 12. The Notice then asks for everything relating to the "ESI SUBJECTS," including all ESI SUBJECTS that "pertain to issues raised in this case," "pertain to the [approximately 68,300] EMAILS AT ISSUE," "in the latest complaint or amended complaint," "in the PARTIES' interrogatories," "in the PARTIES' document requests," "that appear in any documents produced in this case," "related to topics addressed in the PARTIES' depositions," "that have arisen in other legal proceedings arising from allegations of YOUR improper use of electronic mail," and "that relate to the operation of computers." *See id.*, p. 7, ¶¶ 2-7. The Notice, on its face, is consequently a flagrantly over-reaching breach of the ESI Agreement.

Second, the ESI Notice essentially takes a topic that could be asked in a merits deposition and asks for all ESI relating to that topic of merits discovery. *See id.*, pp. 7-14, ¶¶ 15-50. For example, Request 17 asks for the "[l]ocation and detailed description of ESI, and the identification, dates of existence, configuration, and operation of all software relating to YOUR business operations, and/or pertaining to any PROMOTIONAL CAMPAIGN or LEAD GENERATION CAMPAIGN intended to generate revenues to YOU, either directly or indirectly." *See id.*, p. 9, ¶ 17.

To prepare a person knowledgeable on the issue, WAUSA would need to first answer the merits questions: (1) what are the PROMOTIONAL CAMPAIGNS that are directly or indirectly intended to generate revenue to WAUSA or any entity with which it is conceivably associated (under the definition of "YOU"); (2) what are the LEAD GENERATION CAMPAIGNS that are directly or indirectly intended to generate revenue to WAUSA or any entity with which it is conceivably affiliated; (3) where is all ESI and all software relating to WAUSA's "business operations;" (4) For #1 and #2, what is the ESI relating to those PROMOTIONAL CAMPAIGNS and LEAD GENERATION CAMPAIGNS. In addition to being far outside the scope of the ESI Agreement, the question relates generally to PROMOTIONAL CAMPAIGNS and LEAD GENERATION CAMPAIGNS, and is not limited to the EMAILS AT ISSUE.

Similarly, with Requests 15-16, and 18-50, BSI similarly requires WAUSA to be prepared to answer the merits question under the guise of asking about ESI about that topic. BSI abusing the limited discovery provision in the ESI Agreement to have two shots at a Rule 30(b)(6) merits deposition of WAUSA.

### C. BSI's 30(b)(6) ESI Notice Seeks Information Not Reasonably Calculated To Lead To The Discovery Of Admissible Evidence.

BSI's ESI Notice also seeks irrelevant information outside the scope of the ESI Agreement and this case. BSI's requests are irrelevant for two major reasons.

First, this case is about approximately 68,300 e-mails allegedly transmitted by WAUSA to BSI between 2004 and 2008. By BSI's own admission, e-mails transmitted during 2009 are

11

not at issue.[2]  Notwithstanding the complete lack of temporal relevance, BSI tries to require WAUSA to answer about e-mails in "since July 20, 2004, up to the present day, which shall include any e-mails received up to and including the date of the entry of any final, non-appealable judgment." *See* Exhibit 1, p. 3, ¶ 10.  Similarly, the time period is from "January 1, 2004 to the present" for documents.  *See* Exhibit 1, p. 7, ¶ 28.  Thus, despite its own tacit admission in the Wagner Declaration that e-mails during 2009 are not at issue, the ESI Notice improperly includes e-mails up to the present date, <u>including any unproduced to date by BSI</u>. *See* Exhibit 5.

Second, although this case is confined to e-mails sent to BSI, BSI's Notice covers any "Promotional Campaign," "Lead Generation Campaign," "Commercial E-Mail," and "Products," regardless of whether they relate to the E-Mails at issue in this case.  *See* Exhibit 1. "Promotional Campaign" is defined as the "dissemination, redirection or publication of information that promotes products or services, and also includes all such campaigns also conducted for purposes of lead generation." *See id.*, p. 3, ¶22.  "Lead Generation" is defined as "the process of obtaining names and addresses of prospective customers for products or services." *See id.*, p. 5, ¶ 17.  "Products" is "products, services, subscriptions or offers that YOU advertise or promote, either directly or indirectly, for sale, lease, rental, exchange, gift offer, or other disposition on behalf of third parties, and includes all products and services promoted in any campaign conducted for purposes of lead generation." *See id.*, p. 5, ¶ 21.  "Commercial E-

---

[2] *See* Paul Wagner Declaration dated May 27, 2009 (mistakenly dated 2008), attached hereto as Exhibit "5".  Wagner avers that "more than 50,000" of the Emails at Issues were transmitted in 2005, 454 were transmitted in 2006, 331 were sent in 2007 and only 14 were sent in 2008.  The Declaration does not mention any E-Mails At Issue in 2009, and concedes that Wagner has not even searched for them. *Id.*

Mail" is "electronic mail that advertises or is initiated for the purpose of advertising or promoting PRODUCTS for sale, lease, rental, exchange, gift offer, or other disposition." *Id.*, p. 2, ¶ 4. These objectionable terms are included in Subject Matters 8-9, 15-17, 19-21, 23-25, 28-30, 34-35, 37, 47, 49-50. Similarly, having to prepare a witness to respond to questions about "Products" would pose an impossible task which alone merits a protective order. By way of example, BSI's Notice would require a witness to respond to questions about in excess of 26,000-30,000 "Products" offered by a related company to WAUSA.

### C. BSI's Deposition Notice Is Independently Overbroad Under Rule 30(b)(6).

BSI's ESI Deposition Notice is also independently improper under Rule 30(b)(6). The Subject Matters designated in the Notice are so broad that it is impossible to locate or prepare any witness for the deposition. For example, Requests 2 through 7 refer to "the issues raised in this case," "date pertaining to those issues," "the latest complaint or amended complaint," "any defendant's answer to a complaint," "Plaintiff's interrogatories and document requests," "mentioned in any deposition in this action," "other legal proceedings arising from allegations of YOUR improper use of electronic mail." *See* Exhibit 1, p. 7, ¶¶2-7. Under applicable law, these Subjects Matters are so broadly worded that it is impossible to comply with the Deposition Notice. *See Lipari v. U.S. Bancorp., N.A.*, 2008 WL 4642618, at *1, *6 (D. Kan. 2008) (granting protective order where topics were overbroad and not described with reasonable particularity and covered "Plaintiff's Petition", "all documents…related to the conduct of its agents"). Thus, a protective order should issue as to these and other overbroad requests.

### D. BSI's Overbroad ESI Deposition Notice Undermines The Maryland Suggested Protocol for Discovery of Electronically Stored Information

BSI's argument flies in the face of the Maryland Suggested Protocol for Discovery of Electronically Stored Information ("Protocol") and the Federal Rules. The Protocol specifically provides that the parties can agree to an ESI deposition and the scope of it so that the limits to such deposition can be enforced. Specifically, the Protocol provides for:

> Preliminary depositions of information systems personnel, and limits on the scope of such depositions. Counsel should specifically consider whether limitations on the scope of such depositions such be submitted to the Court with a proposed order that, if entered, would permit Counsel to instruct a witness not to answer questions beyond the scope of the limitation, pursuant to Fed. R. Civ. P. 30(d)(1).

*See* Protocol, p. 23, § 8(L).

BSI's Notice defeats the purpose of the Protocol. Following that Protocol, the parties negotiated a narrow scope of the ESI Deposition in the ESI Agreement. WAUSA honored the narrow scope in its ESI deposition of BSI's representative. *See*, Exhibit 3, *supra*. BSI's counsel objected to questions outside the scope of that ESI Agreement. *See* Exhibit 4, *supra*. BSI now seeks to ignore what it agreed to by issuing a Notice grossly outside the limits of the scope of the ESI Agreement, and in doing so, potentially subject WAUSA to possible sanctions if the Court later decided that objections were improperly made in bad faith.

**WHEREFORE**, WORLD AVENUE USA, LLC respectfully requests the entry of a Protective Order respecting the scope of the BSI ESI Deposition Notice, for an award of attorneys' fees and costs pursuant to Federal Rule 37, and for such other and further relief as this Court deems just and appropriate.

Dated: February 12, 2010.

Respectfully submitted,

Sanford M. Saunders, Jr., Esq.
USDC, MD #4734
saunderss@gtlaw.com
Nicoleta Burlacu, Esq.
BurlacuN@gtlaw.com
*Admitted Pro Hac Vice*
GREENBERG TRAURIG, LLP
2101 L Street, NW, Suite 1000
Washington, DC 20037
Telephone: 202-331-3100
Facsimile: 202-331-3101

--and--

_____/s/_John L. McManus__
Kenneth Horky, Esq.
Florida Bar No. 691194
horkyk@gtlaw.com
John L. McManus, Esq.
Florida Bar No. 0119423
mcmanusj@gtlaw.com
*Admitted Pro Hac Vice*
GREENBERG TRAURIG, P.A.
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, FL 33301
Telephone: 954-765-0500
Facsimile: 954-765-1477

*Attorneys for World Avenue USA, LLC*