## IN THE U.S. DISTRICT COURT FOR MARYLAND
### SOUTHERN DIVISION

| | | |
|---|---|---|
| BEYOND SYSTEMS, INC. | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | **Case No. PJM 08 cv 0921** |
| | * | |
| WORLD AVENUE USA, LLC | * | |
| successor by merger to NIUTECH, LLC., | * | |
| DBA THE USEFUL, ET AL. | * | |
| | * | |
| Defendants | * | |
| | * | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT WAUSA'S MOTION FOR PROTECTIVE ORDER REGARDING ESI DEPOSITION

Plaintiff BEYOND SYSTEMS, INC. ("BSI") files the present Opposition to Defendant WORLD AVENUE USA, LLC's ("WAUSA") Motion for a Protective Order to limit the scope of the WAUSA ESI Deposition currently scheduled for February 18, 2009 at 9:30 a.m.  In its Motion, WAUSA contends that the Subject Areas listed in BSI's Amended Notice of 30(b)(6) Corporate Deposition for the Purposes of ESI are too broad.  More specifically, Defendant claims that this is a limited purpose ESI deposition, that Plaintiff is trying to extend the depositions to non-parties to the ESI Agreement, that it did not take advantage of the Plaintiff when it conducted its ESI deposition, and that Plaintiff is essentially conducting merits discovery when this is only an ESI deposition.   Unfortunately, Defendant's Request for a Protective Order cannot be granted in light of its lack of merit, as well as its clear double standard for itself and Plaintiff.

First, the Subject Areas of the Amended Notice of Deposition are no broader than necessary to accomplish the limited goal of the ESI Deposition as stated in the Suggested

1

Protocol for Discovery of Electronically Stored Information, the Agreement Regarding

Discovery of Electronically Stored Information between the Parties, as well as Rules 26 and

30(b)(6) of the Federal Rules of Civil Procedure.

Secondly, as discussed below, the Defendants most certainly asked questions beyond the

scope of the nine "narrow" ESI Subject Areas it claims it followed during BSI's ESI deposition.

Defendant's deposition of Plaintiff for the limited purpose of ESI lasted for nearly seven hours

and filled nearly 250 pages of transcript.  This was after Plaintiff already produced thousands of

pages in initial disclosures.  In its ESI Deposition, Defendant covered over forty topics with the

Plaintiff and asked questions ranging from Plaintiff's litigation history to whether Wagner

considered a particular email deceptive.  Clearly not within the bounds of ESI discovery.

Finally, as the Defendant correctly points out, the Subject Areas of the 30(b)(6)

Corporate Deposition of WAUSA are wide-ranging.  This is because the Defendant has

intentionally created an interwoven network of companies in which the core business services of

its Internet-based affiliate marketing system are provided by one set of companies within the

World Avenue family, while the administrative overhead such as technology, accounting, and

human resources, is run by an entirely different set of World Avenue companies.

Accordingly, Plaintiff's Subject Areas in the Deposition Notice are designed to gather

information about how the Defendant has stored and designed its system across the family of

World Avenue companies to handle the multifaceted, multilayered affiliate marketing

organization over the Internet.  It is not Plaintiff's problem or concern that Defendant has chosen

to conceal its activities using shell corporations, corporate affiliates, unnamed and

unincorporated entities, and companies that conceal website operators.  This is how World

Avenue has chosen to conduct its business, and Plaintiff is entitled to inquire about such practices.

## I.      Factual Background

BSI's claims for damages arise from an ongoing stream of more than 68,300 deceptive, unsolicited commercial email it received from the Defendant and its affiliates using an Internet marketing scheme.  Through its discovery requests, Plaintiff seeks information about the unsolicited commercial email it received from Defendant, the individuals or entities who contracted for those emails to be sent;  the individuals or entities who actually sent those email; and the individuals or entities who were actually paid for sending those emails?  Conversely, the Defendant has intentionally created a host of incorporated and unincorporated entities under the umbrella of the World Avenue companies with confusingly similar names and identical addresses.  These World Avenue companies are controlled and directed by the same individual, the Defendant Niuniu Ji.

To create confusion, the Defendant has incorporated dozens of such entities and created hundreds of domain and trade names to perpetuate its email marketing and affiliate organization. Defendant has deliberately segregated the operations and administrative functions within the World Avenue family to keep the illicit marketing organization separated from the caretaking functions involving revenue.  Under this model, the deceptive, unsolicited commercial email is sent by one series of World Avenue entities and their affiliates.  On the other hand, the revenue and administrative functions of the entire umbrella organization is conducted and accounted for using another series of World Avenue companies.

In the present case, Defendant WAUSA took its Corporate 30(b)(6) deposition of Plaintiff BSI on September 17, 2009.  Paul Wagner, President of BSI, appeared on the

3

corporation's behalf.  The deposition ran from 10:00 a.m. to 5:30 p.m. and consumed nearly 250 pages of transcript.

*The topics ranged from Wagner's background (pp. 1-10);  the status of a separate, unrelated entity named Hypertouch (pp. 7-11);  the services that BSI offers to its clients (pp. 12); Wagner's prior deposition history (pp. 11-12);  description of the servers (pp. 12-13);  mapping of emails (pp. 14-17);  retransmitting of emails (pp. 18-25);  the mail servers and their history (17-37);  server locations (pp. 37-39);  email addresses (pp. 42-44);  email functions (48-49); server controls/history (pp. 51-52);  maintenance (pp. 54-55);  server space (p. 58-60);  backup power (pp. 62);  fire suppression (pp. 64);  names of servers (pp. 65);  server IP addresses (pp. 69-73);  document retention policies (pp. 74-75);  who are BSI's clients (pp. 84-85);  rights of access to Hypertouch's servers (pp. 92-96);  BSI's DNS servers (pp. 97-99);  definition of host names (pp. 96-101);  primary and secondary servers (pp. 102-106);  system parameters (pp. 109);  domains and domain name hosting (pp. 110-115);  other types of services offered by BSI (pp. 117-128);  how do domain name addresses work (pp. 130-139);  how many domain names does BSI hold (pp. 149);  how many domain names does BSI host (pp. 151-153);  BSI's reasons for adding or dropping a domain names (pp. 153-158);  BSI policy with regard to wild card email addresses with BSI domain names (pp. 158-159);  who does BSI call a "client" and do they get paid? (pp. 160-161);  who owns what domain name (161-166);  BSI range of IP addresses and subnets (pp. 166-180);  how does mail get to a BSI mailbox (pp. 181);  where does BSI store its mail (pp. 181-187);  Spam filters (pp. 187-191);  how does BSI determine an email is deceptive (pp. 191-194);  storage and handling of emails received by BSI (pp. 195-214);  why didn't BSI save the links in the emails? (pp. 214-216);  have the emails at issue been the subject of litigation against any other party (pp. 216-220);  description of certain emails (Ex. 2) and*

4

*their characteristics as described by Wagner (pp. 220-225);  what does tracking a click-through*

*on a hyperlink mean?  (pp. 230-234);  Communigate Software (pp. 235-237);  BSI Document*

*destruction policy (pp. 247-248).*

Plaintiff served its original Notice of Corporate 30(b)(6) Deposition on Defendant

WAUSA on October 7, 2009.  After a protracted series of discussions, the parties finally agreed

that Defendant WAUSA would sit for its ESI deposition on January 14, 2010.  Unfortunately,

after confirming the date, Defendant reneged and filed a series of motions on January 8th

claiming that it needed at least 21 more days to comply with the reciprocal exchange of

discovery, to sit for its ESI Deposition, and to file a protective order.  *See* DE 142 and

Opposition at DE 144.

The Parties finally entered into a Joint Stipulation that the Defendant would sit for its ESI

Deposition on January 12, 2010.

On January 26th, Plaintiff served an amended Notice of Corporate Deposition of

Defendant WAUSA for purposes of ESI discovery.

Seventeen days later and only six days before the present ESI Deposition, Defendant filed

the instant Motion for a Protective Order.

## II.    Governing Law

Pursuant to the Scheduling Order and the Suggested Protocol for Discovery of

Electronically Stored Information, the Parties entered into an Agreement Regarding the

Discovery of Electronically Stored Information ("ESI Agreement").  *See* DE 114.  The Court

entered the Stipulation and Order to guide the handling of ESI. (DE 118 granting Stipulation at

DE 114).

Under the ESI Agreement between BSI and WAUSA, the Parties agreed that they would make certain initial disclosures from the other side and were entitled to conduct reciprocal Rule 30(b)(6) depositions of the opposing party in the Subject Areas listed . *See* ESI Agreement, § II(C)(1)(1).  In particular, the parties agreed to reciprocal depositions on the following topics :

> Information relating to network design, the types of databases, database dictionaries, the access control list and security access logs and rights of individuals to access the system and specific files and applications, the ESI document retention policy, organizational chart for information systems personnel, or the back up and systems recovery routines, including, but not limited to, tape rotation and destruction/overwrite policy.  **In addition, parties are entitled to a Rule 30(b)(6) deposition on this topic.**

*See* DE 114 (emphasis added).

Pursuant to the Suggested Protocol for Discovery of Electronically Stored Information, the Stipulated ESI Agreement is designed to assist the parties to litigation in identifying key holders of ESI;  to put in place a system for holding, preserving, and identifying such ESI prior to discovery;  and to avoid the disappearance or erasure of ESI or the waste of resources that comes with the production of data that is indecipherable.  Counsel in this case have agreed that ESI depositions will likely save time and expense by allowing the parties to see the landscape of data in advance of marching through it.  To this end, the Subject Matters for an ESI deposition should be broad enough to cover the categories of information that may be relevant for purposes of merits discovery later on.

Under the Federal Rules, the scope of discovery is quite broad :

> Unless otherwise limited by court order, the scope of discovery is as follows : Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.

Fed. R. Civ. P. 26(b)(1).

The federal rules provide that a party from whom discovery is sought may move for a protective order in the court where the action is pending.  The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.  *See* Fed. R. Civ. P. 26(c)(1).  This may include forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters.  *See* Fed. R. Civ. P. 26(c)(1)(D);  *see also* Def. Mtn. at 7.

### III.   Application of Facts to the Law

Defendant WAUSA seeks a protective order from some of the Subject Matter Areas contained in the Amended ESI Deposition Notice of January 26th.  In particular, Defendant believes that the notice is lacking because :  (1)  seeks information in categories that are irrelevant, overbroad, and duplicative,  *see* Def's Mtn. Protective Order at 7;  (2)  Improperly extends the subject areas beyond WAUSA, *see* Def's Mtn. Protective Order at 8-9;  (3) Improperly blurs any distinction between ESI discovery and merits discovery, *see* Def's Mtn. Protective Order at 10-11;  (4)  seeks information not reasonably calculated to lead to the discovery of admissible evidence, *see* Def's Mtn. Protective Order at 11-13;  (5)  that the Notice is overbroad Under Rule 30(b)(6), *see* Def's Mtn. Protective Order at 13;  and finally (6) Undermines the Suggested Protocol for Discovery of ESI, *see* Def's Mtn. Protective Order at 14.

Regardless of the reasons, Defendant's Motion for a Protective Order must be denied. Defendant cannot honestly or reasonably claim that the information requested is irrelevant, overbroad, or duplicative, as they have been instrumental in stonewalling Plaintiffs and their request for information.  *See* Def. WAUSA Motion to Dismiss (DE 13);  *see also* World Avenue Holdings, LLC Motion to Dismiss (DE 55);  *see also* Def. Mtn. to Quash 85 Unknown subpoenas (DE 157).

Moreover, Defendant cannot reasonably claim that it cannot gather the information required or that the information is not in Defendant's possession, custody or control.  The World Avenue family of companies, that includes the Defendant and its sister companies as well as its parent companies all exist at a common location, contain a common infrastructure, contain a common leadership, and use economies of scale to conduct its business.  The World Avenue family of companies does not end at Defendant WAUSA.  It would defy common sense to limit Plaintiff's inquiries as to the location of ESI information across the various World Avenue entities, when that information is clearly relevant and central to Plaintiff's case.

Finally, Defendant cannot reasonably say that Plaintiff's inquiries into its operations are unreasonable, as the Defendant's companies earn their revenue by sending emails of the kind described by the Plaintiff in its Complaint.

## Conclusion

For all these reasons, Plaintiff respectfully requests that this Court deny Defendant World Avenue USA, LLC's Motion for a Protective Order.


Respectfully submitted,


_____/s/_____
Stephen H. Ring
STEPHEN H. RING, P.C.
506 Main Street, Suite 215
Gaithersburg, Maryland 20878
MD Bar Id. No. 04731764; USDC, MD: #00405
Telephone: 301-563-9249



_____/s/_____                         _____2/18/10_____
Michael S. Rothman, Esq.                                              Date
401 E. Jefferson Street

8

Suite 201
Rockville, MD 20850
Phone: (301) 251-9660
Fax: (301) 251-9610

*Attorneys for Plaintiff*

## Certificate of Service

I certify that a copy of the foregoing documents was served on this 18th day of February 2010, via the ECF system, on all counsel of record.

_____/s/_____
Michael S. Rothman