## IN THE U.S. DISTRICT COURT FOR MARYLAND
### Southern Division

| | | |
|---|---|---|
| **BEYOND SYSTEMS, INC.** | * | |
| | * | |
| **PLAINTIFF,** | * | **Case No. 8:08-cv-00921-PJM** |
| | * | |
| **-vs-** | * | **SECOND AMENDED** |
| | * | **COMPLAINT AND REQUEST** |
| **WORLD AVENUE U.S.A., LLC** | * | **AND JURY DEMAND** |
| | * | |
| **and** | * | |
| | * | |
| **WORLD AVENUE HOLDINGS, LLC** | * | |
| | * | |
| **and** | * | |
| | * | |

**The following defendants have been identified from among the previously unknown JOHN DOE defendants :**

**THEUSEFUL, LLC, 1613 NW 136th Avenue, Suite 100, Sunrise, Florida 33323**
**Serve: Corpdirect Agents, Inc., 515 East Park Ave.,Tallahassee, Florida 32301**

    **and**

**WORLD AVENUE MANAGEMENT, INC.,1613 NW 136th Avenue, Suite 100, Sunrise, Florida 33323**
**Serve: Corpdirect Agents, Inc., 515 East Park Ave.,Tallahassee, Florida 32301**

    **and**

**WORLD AVENUE IP, LLC, 1613 NW 136th Avenue, Suite 100, Sunrise, Florida 33323**
**Serve: Corpdirect Agents, Inc., 515 East Park Ave.,Tallahassee, Florida 32301**

    **and**

**NIUNIU JI d/b/a JINIUS CORPORATION, 1613 NW 136th Avenue, Suite 100, Sunrise, Florida 33323**
**Serve: Corpdirect Agents, Inc., 515 East Park Ave.,Tallahassee, Florida 32301**

    **and**

1

**INTREPID INVESTMENTS, LLC, 5326 Yacht Haven Grande, Suite 201, St. Thomas, VI 00802**
**Serve: Corpdirect Agents, Inc., 515 East Park Ave.,Tallahassee, Florida 32301**

       **and**

**Q INTERACTIVE, INC., One North Dearborn Street, 12th Floor, Chicago, IL 60602.**
**Serve: Mark Wise, One North Dearborn Street, 12th Floor, Chicago, IL 60602**

       **and**

**VENTE, INC., 4509 South 143rd St., Suite 9, Omaha, NE  68137**
**Serve: CT Corporation System, 1024 K Street, Lincoln, NE  68508**

       **and**

**BRISTOL INTERACTIVE, LLC d/b/a KITARA MEDIA, 5326 Yacht Haven Grande, Suite 201, St. Thomas, VI 00802**
**Serve: Corpdirect Agents, Inc., 515 East Park Ave.,Tallahassee, Florida 32301**

       **and**

**NIUNIU JI, 1613 NW 136th Avenue, Suite 100, Sunrise, Florida 33323**

       **and**

**JOHN DOES 1- 20**

                         **DEFENDANTS.**

---

## SECOND AMENDED COMPLAINT

Plaintiff Beyond Systems, Inc. ("BSI") files this Second Amended Complaint against

Defendants World Avenue U.S.A., LLC ("WAUSA"),  World Avenue Holdings, LLC ("WAH"),

TheUseful, LLC ("TheUseful"), World Avenue Management, Inc. ("WAMI"), World Avenue

IP, LLC ("WAIP"), NiuNiu Ji d/b/a Jinius Corporation ("JINIUS"), Intrepid Investments, LLC

("INTREPID");  Q Interactive, Inc. ("Q INTERACTIVE");   Vente, Inc. ("VENTE"); Bristol

Interactive, LLC d/b/a Kitara Media ("KITARA"),  Niuniu Ji ("JI"), and John Does 1- 20.

The identifier "WORLD AVENUE COMPANIES" shall hereinafter refer collectively to

the defendants WAUSA, WAH, TheUseful, WAMI, WAIP, JINIUS, INTREPID, Q

INTERACTIVE, VENTE, KITARA, JI, and such unknown JOHN DOE DEFFENDANTS 1

through 20 who assisted and conspired with THE WORLD AVENUE COMPANIES to commit

the acts described below.

The allegations in the original complaint and in the amended complaint are hereby

incorporated by reference.

## I.     <u>INTRODUCTION</u>

1.     This action arises from the transmission of unsolicited commercial electronic mail

messages (hereinafter, "email") to BSI in violation of the Maryland Commercial Electronic Mail

Act (Maryland Code Ann., Commercial Law §14-3001 et seq.; hereinafter, "MD-CEMA") and

the Florida Electronic Mail Communications Act (Florida Statutes Annotated § 668.60 et seq.;

hereinafter, "FL-CEMA").

## II.     <u>THE PARTIES</u>

2.     BSI is a corporation formed under the laws of the State of Maryland and

maintaining its principal place of business in Montgomery County, Maryland.  BSI is an

"interactive computer service provider" as defined under the MD-CEMA and an "interactive

computer service" as defined under FL-CEMA, providing computer services and Internet access

to multiple users simultaneously.  Interactive computer service providers and interactive computer services, such as BSI, are known generically as Internet Service Providers ("ISP").

3.      At all times relevant to this action, Defendant WAUSA was a limited liability company formed under the laws of Delaware, maintaining its principal business offices in Sunrise, Florida.

4.      At all times relevant to this action, Defendant WAH was a limited liability company formed under the laws of Florida, maintaining its principal offices in Sunrise, Florida.

5.      At all times relevant to this action, Defendant TheUseful, was a limited liability company formed under the laws of Delaware, maintaining its principal place of business in Sunrise, Florida.

6.      At all times relevant to this action, Defendant WAMI was a limited liability company formed under the laws of Florida, maintaining its principal place of business in Sunrise, Florida.

7.      At all times relevant to this action, Defendant WAIP was a limited liability company formed under the laws of Delaware, maintaining its principal place of business in Sunrise, Florida.

8.      At all times relevant to this action, Defendant JINIUS was a limited liability company formed under the laws of Delaware, maintaining its principal place of business in Sunrise, Florida.

9.      At all times relevant to this action, Defendant INTREPID was a limited liability company formed under the laws of the United States Virgin Islands, maintaining its principal place of business in St. Thomas, Virgin Islands.

10.      At all times relevant to this action, Defendant Q INTERACTIVE was a corporation formed under the laws of Delaware, maintaining its principal place of business in Chicago, Illinois.

11.      At all times relevant to this action, Defendant VENTE was a corporation formed under the laws of Delaware, maintaining its principal place of business in Omaha, Nebraska.

12.      At all times relevant to this action, Defendant KITARA was a limited liability company formed under the laws of the United States Virgin Islands, maintaining its principal place of business in St. Thomas, Virgin Islands.

13.      At all times relevant to this action Defendant JI was an individual residing in Sunrise, Florida, who owned a controlling interest in, and exercised control over the daily activities of the WORLD AVENUE COMPANIES.  Through the WORLD AVENUE COMPANIES, JI controlled, directed and participated in the email marketing programs and practices that provide for the present action.  Defendant JI received compensation derived from these marketing programs and resulting sales.

14.      Defendants JOHN DOES 1 through 20 are persons, organizations, and/or corporations who, along with the other Defendants, initiated, conspired in the initiation, or assisted in the transmission of the EMAILS AT ISSUE.  At all times relevant to this action, JOHN DOES 1 through 20, directed, controlled, assisted, and conspired with Defendant JI and

5

the WORLD AVENUE COMPANIES, to send unsolicited commercial email to the Plaintiff in violation of Maryland and Florida law.

15.     The WORLD AVENUE COMPANIES share office space, facilities, assets, funds, accounting functions and personnel to the extent that they are indistinguishable from one another.

16.     The names, "JOHN DOES 1 through 20" are fictitious. Plaintiff is now unaware of the true names and/or identities of these defendants.  These defendants are unknown at present because the links, domain names, and servers that would ordinarily identify the co-conspirators have been disabled.  Plaintiffs will seek leave to file another Amended Complaint alleging the true names of the John Doe Defendants once ascertained through discovery.

### III.     JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1332 (diversity jurisdiction).  Plaintiff is a resident of Maryland.  Defendants WAUSA, THEUSEFUL, WAIP, JINIUS, and Q Interactive are corporations formed under the laws of Delaware;  Defendants WAH, WAMI were formed and exist under the laws of the State of Florida; Defendant JI is a resident of the State of Florida and regularly conducts business in the State of Maryland;  INTREPID and KITARA were formed under the laws of the United States Virgin Islands;  Vente was formed under the laws of the State of Nebraska.  Defendants regularly conduct business in the State of Maryland.   Plaintiff claims more than $75,000 in damages, exclusive of costs, interest and attorney's fees.

6

18.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a)(2), (3) and (c), as the events giving rise to the present claims occurred in the District of Maryland.

## IV.     UNSOLICITED, COMMERCIAL EMAIL

**A.     Unsolicited Commercial Email Unfairly Shifts the Cost Burden from Sender to Recipient.**

19.     Unsolicited advertising over the Internet is often referred to as "unsolicited commercial email" or "UCE," "unsolicited bulk email," "junk email," or "Spam." See Beyond Systems, Inc. v. Realtime Gaming Holding Co., LLC, 388 Md. 1, 16 n. 12; 878 A.2d 567, 576 n.12 (quoting State v. Heckel, 143 Wn.2d 824, 24 P.3d 404, 406 n.1 (Wash. 2001)).

20.     The MD-CEMA defines "Commercial electronic mail" as "electronic mail that advertises real property, goods, or services for sale or lease." See Maryland Code Ann., Commercial Law §14-3001(b)(1).

21.     The MD-CEMA prohibits the initiation of a transmission, any conspiracy to initiate a transmission, or any assistance of a transmission of commercial electronic mail that is sent from a computer in the State or is sent to an email address is held by a resident of the State and that (i)  uses a third party's Internet domain name or email address without the permission of the third party;  (ii)  contains false or misleading information about the origin of the transmission path of the commercial email;  or (iii)  contains false or misleading information in the subject line that has the capacity, tendency, or effect of deceiving the recipient. See Maryland Code Ann., Commercial Law §14-3002(b).

22.     The FL-CEMA defines an "Unsolicited commercial electronic mail message" as "any commercial electronic mail message that is not a transactional or relationship message and

7

is sent to a recipient without the recipient's affirmative or implied consent." See Florida Statutes

Annotated § 668.602(14).

  23. FL-CEMA prohibits the initiation or the assistance in the transmission of an

unsolicited commercial electronic mail from a computer in the State or to an email address held

by a resident of the State that :  (a)  uses a third party's Internet domain name without

permission;  (b)  contains falsified or missing routing information or otherwise misrepresents,

falsifies, or obscures any information in identifying the point of origin or the transmission path of

the unsolicited commercial email message;  (c)  contains false or misleading information in the

subject line;  (d)  or contains false or deceptive information in the body of the message which is

designed and intended to cause damage to the receiving device of an addressee or of another

recipient of the message.  See Florida Statutes Annotated § 668.603.

  24. Spam poses a serious threat to electronic communication over the Internet for

consumers and businesses because the messages are rife with deception and fraud.  See

"National Do Not Email Registry:  A Report to Congress." FTC, June 2004, p. 1 & n. 2,

available at http://www.ftc.gov/reports/dneregistry/report.pdf  (last visited 12/21/08); 15 USC §

7701(a)(2) (2003) (CAN-SPAM Act); Exhibit 12, BARRACUDA NETWORKS, BARRACUDA

NETWORKS SPAM REPORT at 4 (2007).

  **B.** **Recent Litigation.**

  25. The courts have enforced anti-spam legislation in the recent litigation, as shown

in Complaint Exhibits 13 – 16B, attached.

**V.**  **ALLEGATIONS OF FACT**

8

### A.    PLAINTIFF BEYOND SYSTEMS, INC.

26.    BSI is an "[i]nteractive computer service provider" under MD-CEMA and an "[i]nteractive computer service" under FL-CEMA.  BSI is also an information service, system, and software provider enabling multiple users to access computer servers and a variety of services simultaneously.

27.    BSI owns, operates, and maintains its computers and other equipment from its multiple offices in Maryland.  As part of its services to clients, BSI operates specialized computers with a dedicated connection to the Internet ("servers") that process email messages and otherwise support its email services to multiple users at the same time.

### B.    THE WORLD AVENUE COMPANIES

28.    The WORLD AVENUE COMPANIES initiated, transmitted, conspired to transmit, or assisted in the transmission of Spam with the other defendants in the events alleged herein.

29.    The WORLD AVENUE COMPANIES have conducted business under multiple registered and unregistered trade names, including those compiled by the Florida Attorney General and listed in Complaint  Exhibit 17, "News Release:  Internet Company Sued for Deceptive Advertisements of "Free" Gifts." pp. 1-2.

30.    The Spam-related conduct of the WORLD AVENUE COMPANIES are accurately described in press articles.  *See* Complaint Exhibits 18 - 20.  In essence, these Defendants use Spam to generate leads and sales for themselves and their clients.

31.     The WORLD AVENUE COMPANIES caused the transmission of Spam having

all of the characteristics described below under "Section D. The Emails at Issue."

32.     Since at least January 1, 2005 the WORLD AVENUE COMPANIES initiated the

transmission, assisted in the transmission, conspired among themselves to initiate the

transmissions, and conspired with other persons to initiate the transmissions, of the email

messages that give rise to this suit.  Through these actions, the WORLD AVENUE

COMPANIES caused the transmission of tens of thousands of commercial electronic mail

messages to BSI, containing false and/or misleading information about the origin or the

transmission path of the e-mail, as alleged herein, and/or which contained false and/or

misleading information in the subject line that had the capacity, tendency, or effect of deceiving

the recipient, as alleged herein.

**C.     THE WORLD AVENUE COMPANIES USE OF SPAM AS A
        BUSINESS/MARKETING TACTIC.**

33.     The Defendants either directly or through their agents, transmitted or caused the

transmission of millions of commercial e-mail advertisements. Defendants and/or their agents

engaged others to transmit, or to cause the transmission of, commercial e-mail advertisements to

recipients throughout the United States and to BSI as both an ISP and as an end recipient.

34.     At all times relevant to this action the Defendants and their agents advertise in,

send, direct, assist, encourage, conspire in, procure, initiate, participate in and/or facilitate the

sending of tens of thousands of e-mails at a time advertising various goods and services.

35.     At all times relevant to this action the Defendants and/or their agents paid others

based on the number of people who "clicked-through" the links in those commercial e-mail

10

advertisements and thereby were directed to Defendants' or third-party advertiser's websites and/or numbers of people who make a purchase, participate in an "incentive" program, leave personal information, or otherwise become a customer.

36.     Defendants and/or their agents tracked the results of the transmissions and all related sales and services, in part so that the bulk e-mailer who most directly caused the transmission of an e-mail message that successfully lured a recipient to click through to the advertiser site to be paid a commission. This tracking generated records that identify the participants in these activities, and the related times, dates, quantities and payment amounts.

37.     Since January 1, 2005 BSI has received tens of thousands of Spam messages from Defendants and/or their agents on its mail servers in Maryland, promoting the business of the WORLD AVENUE COMPANIES.  Examples of some of those Spam messages have been filed as Complaint Exhibits 1, 2, 3, 5, 6 and 8.

38.     Defendants and/or their agents advertised in commercial email advertisements sent via intermediary and/or third party computers and networks that were located in California to e-mail addresses both in California and other states.

39.     Defendants and/or their agents initiated and sent commercial e-mail advertisements from California and Florida to BSI in Maryland.

40.     The e-mails received by BSI contained or were accompanied by falsified, misrepresented and/or forged header information.

41.     The e-mails received by BSI had subject lines designed to mislead a recipient regarding the contents or subject matter of the message.  BSI received commercial e-mail

advertisements sent by Defendants and/or their agents containing false, misrepresented and/or forged header information, including false identification of the computers sending the e-mails, via false "HELO" parameters.  For example, in Complaint Exhibit 2, the sender used a computer at IP address 66.55.19 1.198, but that machine identified itself as "producttesterswanted.info", which the bulk e-mailer's own DNS server confirmed resided at a completely different IP address.  This false identification was designed to mask the identity of the sender of the e-mails and to make it more difficult, if not impossible, to find or contact the sender.

42.     BSI received commercial e-mail advertisements sent by Defendants and/or their agents containing false, misrepresented and/or forged header information because the e-mails contained one or more fictitious, false and/or misleading names in the "From:" lines of the message headers. Defendants and/or their agents attempted to mislead recipients by using different fictitious people's names in the "From:" lines of the message headers.

43.     Some of the emails at issue contained false information concerning their transmission path or origin, having opt-out links that were non-functional because the return address was connected with an invalid domain name or nonworking account. For example, the opt-out link in the email shown in Complaint Exhibit 6 on July 1, 2005, promoting "RECRUITINGPRODUCTTESTERS" was not accepting any e-mail communications. As such, the headers contained false information, designed by Defendants and/or their agents to mask the true identity of the senders, and to prevent complaining parties from contacting

44.     BSI received commercial e-mail advertisements sent by Defendants and/or their agents containing false, misrepresented and/or forged information in the message body itself. An

12

e-mail not only bears statement(s) "about the origin" in terms of the origin's location, but can also bear statement(s) "about the origin" in terms of the origin's relationship to the recipient. That is, these e-mails falsely claim to have been generated and sent to the recipient because the recipient requested the e-mail. The e-mails falsely indicate the recipient requested to receive the e-mail.

45.     BSI received commercial e-mail advertisements sent by Defendants and/or their agents containing false, misrepresented and/or forged information in the subject lines. This includes, for example, stating that the e-mail recipient had won a "Free" Gift. The subject lines were designed by Defendants and/or  their agents to deceive or attempt to deceive the recipient, and were likely to mislead a recipient.

46.     Since January 1, 2005 the Defendants and their agents transmitted or caused to be transmitted at least 70,000 false and/or deceptive commercial e-mail advertisements to Plaintiffs' servers in violation of  MD-CEMA and FL-CEMA.

47.     Defendants conspired among each other and with others to transmit the unlawful commercial e-mails that give rise to this suit.

48.     Each e-mail is a separate violation.

49.     Since at least January 1, 2005 the Defendants initiated the transmission, conspired among themselves to initiate the transmissions, and conspired with other persons including Defendants, to initiate the transmissions.  Through these actions, the Defendants caused the transmission of at least 70,000 commercial electronic mail messages to BSI, containing false and/or misleading information about the origin or the transmission path of the e-mail, as stated

herein, and/or which contained false and/or misleading information in the subject line that had

the capacity, tendency, or effect of deceiving the recipient, as stated herein.

### 1.    Highly-Incentivized Lead Generation Business Model.

50.    The WORLD AVENUE COMPANIES are large-volume participants in the

highly incentivized lead generation industry.  See Exhibit 21;  see also Exhibit 22,

(http://www.theuseful.com/site/aboutus.html last visited December 21, 2008).

51.    The WORLD AVENUE COMPANIES act together as a decentralized, online

advertiser and marketer that generates business leads for clients and itself by hiring third party

"affiliates" and/or "publishers" to drive traffic to its various websites and encouraging users to

divulge their personal identifying information.  The WORLD AVENUE COMPANIES  cause

millions of deceptive, unsolicited commercial emails to be sent each month, ostensibly offering a

prize, such as a "free laptop," but actually promoting a WORLD AVENUE COMPANIES'

incentive awards program.  Upon clicking on the sales link in such emails, the recipient is

brought to one of the WORLD AVENUE COMPANIES' web sites, to what is called the

"landing page," where the recipient then learns that he or she must enter personal identifying

information ("PII") and then buy a product or service from typically six to eight "sponsors" to

become eligible to receive a prize.

52.    The WORLD AVENUE COMPANIES are paid by the sponsors on a Cost Per

Action basis ("CPA").  See Exhibit 21;  see also See "A CAN-SPAM Informant Reward System:

A Report to Congress." FTC, September 2004, p. 16-17, available at

http://www.ftc.gov/reports/rewardsys/040916rewardsysrpt.pdf  (last visited 12/21/08).  In

addition, the WORLD AVENUE COMPANIES sell lists of the PII to other third-party customers.

53.     The WORLD AVENUE COMPANIES create the e-mail advertising in conjunction with the sponsors, then make pre-fabricated e-mail templates, with the images and text, as well as the Subject line, the From line, instructions, and the pay out rates available on their websites to their affiliates who send out the e-mails. And, if the e-mails generate leads or sales, the spammer gets paid by the Defendants, which in turn get paid for the advertising by their sponsors.  The WORLD AVENUE COMPANIES additionally acted as an advertiser in the majority of the e-mails at issue, which promoted the WORLD AVENUE COMPANIES' incentive awards programs hosted on web sites controlled by the WORLD AVENUE COMPANIES.  The WORLD AVENUE COMPANIES' web sites in turn promoted the products of several third-party advertisers, requiring the recipient to patronize those sponsors in order to receive a "free" award.

54.     In the emails at issue in this case, the WORLD AVENUE COMPANIES targeted BSI'S personal information using Spam containing false and misleading claims and identifying information.  For example, the most common identifier among the emails BSI received from Defendants promoted the trade name or domain name "Superbrewards."  See Exhibit 23 (nearly 17,500 occurrences).  In one such email that Plaintiff received, WAUSA promoted the website located at the domain name "Superbrewards.com" using the promise of a "Free Laptop Computer."  See Exhibit 24.

55.     Once at the website, the consumer arrives at a landing page that is owned and operated by WORLD AVENUE.  The consumer must then provide personal information (name, address, email, credit card information) into a form in order to collect the free gift.

56.     Once on the registration or survey path to ostensibly qualify for the "free gift," the consumer must sign up for several different additional offers in order to qualify for the free item.

57.     In reality, the "free gift" advertised by WORLD AVENUE in the EMAILS AT ISSUE required the consumer to make one or more cash purchases and "the combined dollar amount of purchases required to receive the gift could exceed the retail value of the "free" gift." [FL AG, http://myfloridalegal.com/newsrel.nsf/newsreleases/D524FCB6D8B788B485257340004EA48D]

58.     WORLD AVENUE then sells the unsuspecting consumer's personal information as a "lead" to third-party list buyers

59.     As the FTC has accurately noted, a list of active email addresses would be a virtual "goldmine" for spammers and marketers alike.  Because there is no universal working directory of email addresses that are "born private," spammers cannot readily identify valid email addresses.  See "National Do Not Email Registry:  A Report to Congress." FTC, June 2004, pp. 16-18, available at http://www.ftc.gov/reports/dneregistry/report.pdf  (last visited 12/21/08).

### 2.     THE WORLD AVENUE COMPANIES Employ Third Party Marketing Agents to Send Spam on its Behalf

60.     The WORLD AVENUE COMPANIES contract with marketing agents ("affiliates" or "publishers") to send unlawful spam on its behalf advertising World Avenue-

controlled websites, as described below.  According to WAUSA's Vice-President and General

Counsel, Homer Appleby, "The Useful is an Internet marketing company that promotes products

and/or services to the consuming public through third party affiliate networks and e-mail

marketing companies."  Exhibit 25.

62.     According to its website, WAUSA describes itself as a "Web-based marketing

and technology company"  and "[O]ne of the largest media buyers on the Internet" generating "3

million leads each month."   See Complaint Exhibit 22.

62.     The WORLD AVENUE COMPANIES provide the following services for their

clients:  display/web advertising, lead generation marketing, email marketing, search engine

marketing, and affiliate marketing.  *See id.*

### 3.     The WORLD AVENUE COMPANIES Conduct Business Using Fictitious and/or Assumed Names to Conceal Their Identities.

63.     The WORLD AVENUE COMPANIES conduct business using a number of

fictitious or assumed names, most of which are not registered to do business in the State of

Maryland or Florida.

64.     The WORLD AVENUE COMPANIES conduct business using thousands of

domain names enrolled under proxies or identities that are not registered with the states of

Maryland or Florida.

65.     Domain name registrars are required to keep and maintain a list of registration

and contact information for each domain name it registers.  This information is available through

a collectively maintained database by issuing a "Whois" Command.  *See* "Internet Management:

Prevalence of False Contact Information for Registered Domain Names."  p. 23.  GAO Report to

the Subcommittee on Courts, the Internet, and Intellectual Property, House of Representatives,

November 2005, available at http://www.gao.gov/new.items/d06165.pdf  (last visited 12/21/08).

66.     Complaint Exhibit 26, shows true and correct copies of Whois queries and the

results for a sampling of the search terms listed in Exhibit 23, which appear in some of the

emails at issue :

> *ConsumerIncentivePromotions.com* – 13900 Jog Road, Suite 203-251, Delray Beach, FL
> *eMarketResearchGroup.com* – 14545 J Military Trail #189, Delray Beach, FL
> *MyChoiceRewards.com* – 14545 J Military Trail #189, Delray Beach, FL
> *MyPremiumRewards.com* – 123 N. Congress Ave. #351, Boynton Beach, FL
> *NationalSurveyPanel.com* – 13900 Jog Road, Suite 203-251, Delray Beach, FL
> *YourSmartRewards.com* – 123 N. Congress Ave. #351, Boynton Beach, FL
> *SuperbRewards.com* – 123 N. Congress Ave. #351, Boynton Beach, FL
> *ExclusiveGiftCards.com* -- 13762 W. SR. 84, Suite 612, Davie, FL 33325

67.     Each of the domain names listed above, and the websites hosted at the Uniform

Resource Locator addresses or ("URL's"), belong to WORLD AVENUE.

68.     The "Terms and Conditions" hyperlinks of the websites listed above are identical

in content, form, and trade dress, having the same colors, fonts, and text.

69.     Many of the websites described above are maintained and operated by a company

called "Net Radiance", which is referenced in the "Terms and Conditions" section of each of

these websites.  Exhibit 27 shows true and correct copies of these Terms and Conditions.

70.     According to the Florida Secretary of State, Net Radiance LLC is an inactive

limited liability company, last owned by Niupercent, Inc.  Exhibit  28 shows a true and correct

copy of registration information regarding Net Radiance LLC from the Florida Secretary of

State.  Net Radiance, LLC was dissolved effective 12/22/2006.  On 10/17/2006, TheUseful, LLC

applied for the trade name "Net Radiance."

71.     Niupercent, Inc. owns WAH.  Exhibit 29 shows a true and correct copy of information on World Avenue Holdings LLC from the Florida Secretary of State.  World Avenue Holdings LLC, in turn, owns Defendant World Avenue U.S.A. LLC.  Exhibit 30.

72.     Like many active WORLD AVENUE COMPANIES web sites, www.superbrewards.com has a Terms & Conditions page that says "operated by Net Radiance." www.superbrewards.com is hosted at 213.200.112.198, which like 66.7.179.* and 213.200.112.*, are IPs assigned to "Bravatas, LLC" at 5255 N.Federal Hwy, Boca Raton, FL 33487.  However, "Bravatas, LLC" is not a registered corporate name, fictitious business name or trade name with the state of Florida. Similarly, a Whois lookup for the "superbrewards.com" domain name yields the following false identity:

> Registrant Contact:
> Superb Rewards
> Customer Service ()
> Fax:
> 13762 W. SR. 84  Suite 612
> Davie  FL 33325
> US

"Superb Rewards" is not a registered name in FL; it was once a trade name owned by JINIUS (an active FL corporation) from November 2005 to January 2007.

73.     Links on the *SuperbRewards.com* website redirect to *TheUseful.com*, and images appearing on the *SuperbRewards.com* website are actually hosted on *TheUseful.com*.  Exhibit 31 shows a true and correct copy of the image properties of an image appearing on *SuperbRewards.com*.

19

74.     In June 2007, the *San Francisco Chronicle* published an article accurately describing WORLD AVENUE's tangled web of corporate ownership, as well as the corporate interrelationships between the entities in that web.  *See* Exhibit 19.

75.     Moreover, DEFENDANTS themselves cannot argue that the WORLD AVENUE COMPANIES operate independently of each other, as many of the officers, directors, and employees of the WORLD AVENUE COMPANIES serve positions within more than one company simultaneously.  *See* Exhibit 23 (Wagner Aff.) and Exhibit 47.

### 4.     WORLD AVENUE is Non-Compliant with Advertising Laws and Ethical Guidelines.

76.     In August 2007, the Florida Attorney General sued WORLD AVENUE for its false advertising and deceptive business practices stemming from the company's Internet marketing practices, including the use of spam in the manner alleged in this Amended Complaint.  *See* Exhibit 17, Office of the Attorney General of Florida:  "Internet Company Sued for Deceptive Advertisements of "Free" Gifts."

77.     In January 2008, WORLD AVENUE settled the lawsuit with the State of Florida for $ 1 Million.  See press release, McCollum's CyberFraud Task Force Reaches $1 Million Agreement with Company over Internet Marketing Guidelines.  *See* Exhibit 32.

78.     In August 2007, the Direct Marketing Association published an accurate list of advertisers who were not in compliance with its Guidelines for Ethical Business Practice.  This list included the website "ExclusiveGiftCards.com," which is operated by WORLD AVENUE and which uses the same operating address and telephone numbers as the call centers listed for

the domain names above.  This information is confirmed by the Florida Secretary of State.  *See*

Exhibit 33, "DMA Ethics Committees Call Attention to Non-Compliant Companies."

**D.     THE EMAILS AT ISSUE**

79.      Between April 11, 2004 and December 31, 2006, Plaintiff received on its

computer servers in Maryland approximately 68,000 commercial electronic mail messages

promoting products or services offered by the WORLD AVENUE DEFENDANTS World

Avenue and its agents.  Since January 1, 2007 Plaintiff has received thousands of additional

emails from the defendants promoting the business of the WORLD AVENUE DEFENDANTS.

80.      As used herein, the term, "EMAILS AT ISSUE" means the unsolicited

commercial emails that Plaintiff received from the WORLD AVENUE DEFENDANTS,

including all emails received up to the date of the entry of any final, non-appealable judgment.

81.      BSI did not solicit or opt-in to receive any of the EMAILS AT ISSUE.  Plaintiff

gave no direct or indirect consent to receive commercial email from Defendants, and had no

business relationship with Defendants, its affiliates, or agents.

82.      Some of the EMAILS AT ISSUE are attached to the original Complaint as

Documents 1-2, 1-3, 1-4 and 1-5, and are reproduced and attached hereto as Exhibit 34.

83.      Between July 20, 2004 and September 3, 2005, BSI received at least 68,300

emails from DEFENDANTS.  Of those emails, BSI received 61,543 emails between April 11,

2005 and September 3, 2005.

84.      The 68,300 EMAILS AT ISSUE to date promote WORLD AVENUE's numerous

trade names and domain names; contain hyperlinks that direct the recipient to websites

21

controlled by WORLD AVENUE or its agents, and/or contain hyperlinks that direct the recipient to web servers containing image or text files provided by WORLD AVENUE.

85.     Exhibit 23 is an Affidavit of Paul A. Wagner accurately listing the trade names and/or domain names of WORLD AVENUE that appeared in the EMAILS AT ISSUE identified to date and stating the number of emails containing each name.  Each of these names identifies with a unique website or domain name that belongs to WORLD AVENUE.

86.     Upon cross-referencing the information contained within the spam it received, Plaintiff discovered additional domain names, trade names and addresses associated with the WORLD AVENUE COMPANIES.  *See* Exhibit 38.  Accordingly, Plaintiff can now attribute the emails depicted in Exhibits 39 and 40 to Defendants VENTE and Q INTERACTIVE, respectively.  Both emails contain false or misleading information about its origin, in part because both domains are registered to proxies.  *See* Exhibits 41 and 42.  Q INTERACTIVE acquired VENTE on or around October, 2, 2009.  *See* Exhibit 43.  Intrepid Investments acquired Q Interactive on or around September 9, 2008.  *See* Exhibit 44.

87.     Despite the filing of the original Complaint, the Defendants deluge of spam to the Plaintiff has continued unabated.  Plaintiff recently received the attached spam from the Defendants.  *See* Exhibit 45.  This email is linked to Defendant KITARA.  This email contains a sales link that redirected through the following sequence of servers:

http://mythreadshower.org/   ==>

http://aff.primaryads.com/   ==>

http://network.kitaramarketplace.com/        ==>

http://yourgiftzone.com/

88.     A WHOIS lookup for the site http://yourgiftzone.com/ clearly shows that the site

is owned and operated by KITARA.  *See* Exhibit 46.

89.     Defendant JI directed, participated in, stood to derive revenue, and actually

derived revenue, as a result of the transmission of the EMAILS AT ISSUE.  JI communicated

with the managing agents and employees of WORLD AVENUE, and those entities under

contract to him, on each of the dates of transmission of the EMAILS AT ISSUE, beginning on or

before July 20, 2004 and continuing up to the present, in furtherance of the campaigns to

transmit those emails.

90.     These communications occurred via email, text message and telephone.  JI sent

and received funds to and from these entities and persons, pertaining to the email campaigns.  JI

also directed others to conduct the activities alleged in this paragraph on his behalf, and in his

stead, and ratified those activities by endorsing, approving and confirming them afterward.

## VI.     FALSITY AND DECEPTION

91.     The EMAILS AT ISSUE sent by the Defendants have multiple elements of

falsified, misrepresented, and forged information contained in or accompanying the email

headers.  These categories correspond directly to conduct prohibited in the MD-CEMA and the

FL-CEMA.  These categories are as follows :

- Deceptive Subject Lines
- Deceptive From Lines
- Deceptive Registration of Sending Domain Names
- Deceptive Information about Origin or Transmission Path in Message Body
- Other Forged Header Information

23

A.      **Deceptive Subject Lines**

92.      The Federal Trade Commission accurately reported that of the Spam containing signs of falsity in the "Subject:" line, nearly one-third contained a line that bore no relationship to the content of the message and nearly forty-two percent misrepresented that there was a personal or business relationship with the recipient. *See* Exhibit 35 "False Claims in Spam: A report by the FTC's Division of Marketing Practices." FTC, April 30, 2003, p. 6, available at http://www.ftc.gov/reports/spam/030429spamreport.pdf  (last visited 12/21/08).

93.      In addition, DEFENDANTS' emails contained false and/or misleading information in the subject lines, including that which has the capacity, tendency, or effect of deceiving the recipient.  This includes, for example, "Win a Free Gift Card" when a purchase is required.  The subject lines of Defendants' emails were designed by Defendants and/or their agents in attempt to deceive the recipient. *See* Exhibit 36.

94.      DEFENDANTS' failure to include any caveats to the use of the word "Free" in the subject line is blatantly deceptive.

95.      The Federal Trade Commission has created specific guidelines for advertisers' use of the word "free." *See* www.ftc.gov/bcp/guides/free.htm.

96.      To avoid falsity or deception, any contingencies to the "Free" offer should be set forth clearly and conspicuously at the outset of the offer so as to leave no reasonable probability that the terms of the offer might be misunderstood.  <u>See</u> Federal Trade Commission, FTC Guide Concerning Use Of The Word "Free" And Similar Representations 16 C.F.R. § 251.1(c), available at http://www.ftc.gov/bcp/guides/free.htm.

24

97.     The FTC's general rules are expressly applicable to the Internet and email advertising.  *See* Federal Trade Commission, Dot Com Disclosures at *5, available at http://www.ftc.gov/bcp/edu/pubs/business/ecommerce/bus41.pdf

**B.      Deceptive From Lines**

98.     DEFENDANTS used fictitious names and/or used email addresses from individuals without their permission in the EMAILS AT ISSUE.

99.      In addition, the EMAILS AT ISSUE contained false and/or misleading header information in the "From:" line about the origin and/or the transmission path of the email because each email contained one or more fictitious, false and/or misleading names and/or email addresses in the "From:" lines.  For example, Exhibit 36A falsely states that the email was sent from "Sam's Club".

100.    On April 14, 2005, WORLD AVENUE sent hundreds of emails to BSI promoting a "Free Gift Card" on behalf of Consumer Incentive Promotions purporting to be from over 500 different people.  Exhibit 36B is one such email.  The "From:" line in each message contained a unique and randomly quoted name that was fictitious.

101.    By varying the domain names where it appears that an email originates, DEFENDANTS could avoid spam filters that may focus on bulk mailings while increasing the chance that the Spam will reach its intended audience.

102.    Exhibit 36C indicates that the sender used a computer at IP address 204.13.17.33, but the machine at that address incorrectly identified itself as "mailpool.jriad.info," which the bulk emailer's own DNS server confirmed did not resolve to that IP address.  This false

identification masks the identity of the sender of the emails and prevents the recipient from finding or contacting the sender.

**C.      Deceptive Registration of Sending Domain Names**

103.    DEFENDANTS and/or their agents sent "Incentive Awards" emails to Plaintiff BSI that included domain names which were registered to false and/or non-existent entities, to entities using false addresses and/or false telephone numbers, or under proxy identities.

104.    DEFENDANTS registered hundreds of throw-away domain names in order to send the EMAILS AT ISSUE to BSI.  DEFENDANTS also used fake names, addresses and/or proxy services in the Whois Registry for the domain to conceal its identity.

105.    The URL combinations used in the thousands of EMAILS AT ISSUE redirect to websites controlled by WORLD AVENUE.

**D.      Deceptive Information about Origin or Transmission Path in Message Body**

106.    The EMAILS AT ISSUE contained false or misleading information about the origin or the transmission path of the commercial electronic mail in the message body itself. Some of the EMAILS AT ISSUE falsely claim prior relationships with the recipient and/or that the recipient had requested the email.  For example, Exhibit 36D,  falsely states in part that "you were a official member of one of our range of online services."

107.    Exhibit 36E states the following in the message body:  "If you no longer wish to receive Consumer Incentive Promotions emails, ... write us at: Consumer Incentive Promotions, 14545 J Military Tr. #189, Delray Beach, FL 33484, USA."  This implies that Plaintiff once wished to receive Consumer Incentive Promotions emails, which is false.

108.    In addition, "Consumer Incentive Promotions" is not a corporate or trade name recognized by the state of Florida.

**E.      Other Forged Header Information**

109.    Standard email transmission protocol requires that the HELO/EHLO line in the email headers identify the sending mailserver domain name.  *See* Exhibit 36, "National Do Not Email Registry:  A Report to Congress." FTC, June 2004, Section III (pp. 3-13), available at http://www.ftc.gov/reports/dneregistry/report.pdf (last visited 12/21/08).

110.    When an email arrives, the transmitting computer sends a "HELO," which is a parameter typically showing the computer's name and/or IP address so as to identify to the recipient computer who is sending the email and where it came from.  In the case of thousands of these emails, the identities of the transmitting computers given in the HELO did not match the IP addresses of the transmitting computers.

111.    One example of falsity is shown in Exhibit 36F, in which the sender of the email used a computer at IP address 63.243.148.219.  The sending machine identified itself as "PRODUCTTESTERSWEWANT.INFO", which DEFENDANTS' own DNS server confirmed resided at a completely different IP address.  This false identification was designed to mask the identity of the sender of the emails and to make it more difficult, if not impossible, to find or contact the sender.

112.    One bulk emailer, which Plaintiff ultimately determined to be MailCompanyX, sent 57,305 emails to BSI containing To: lines with quoted names claiming to be to one of 90 different people at BSI's domain names.  Putting some quoted name (fake or accurate) into the

27

To: field elevates the email's appearance of legitimacy, as scored by spam filters or initially viewed by the recipient, versus just putting in a bare email address.  Since putting in the same false name in successive spam would make it easy for the recipient to filter them, this spammer rotates through multiple names in the To: field.

113.    57,305 of the messages contain X-Mailer: lines that purport to be software version numbers, such as this header in Exhibit 36F :

X-Mailer: Version 5.01.9544.9849

In these messages, the eight digit numbers (9544.9849 in the example above) are different in each message.  Software does not change from one message to the next--a single version of a single program is used to send all the mail in a session, whether an individual user's mail session or a million message spam run.  The unique numbers in these messages serve not to identify the mailer, but on the contrary to identify the recipient of the message, to allow the mailer to recover the recipient from redacted spam complaints.  Since the X-Mailer: header in these messages does not describe the software used to send the message, it is misleading information about the origin of the messages.  It further misleads message recipients who would falsely assume that they could protect their own privacy by redacting the addresses from copies of spam sent in complaints.

114.    Plaintiff alleges the EMAILS AT ISSUE contained false and/or misleading header information about the origin or the transmission path of the email.  This includes, for example, that the email arrived at BSI's servers containing or accompanied by false information concerning the identities of the computers sending the emails.

### VII.   MD-CEMA

115.    DEFENDANTS violated the Maryland Commercial Electronic Mail Act, (MD-CEMA) §14-3001 et seq. of the Commercial Law Article of the Annotated Code of Maryland, by initiating, conspiring to initiate, and/or assisting in the transmission to Plaintiff BSI of commercial electronic mail having one or more of the following characteristics:

      i)      used a third party's Internet domain name or electronic mail address without that third party's permission;

      ii)     contained false or misleading information about the origin of the email or the path by which the email was transmitted; or;

      iii)    contained false or misleading information in the subject line.

116.    The false or misleading information in the electronic mail messages had the capacity, tendency, or effect of deceiving the recipient.

117.    DEFENDANTS initiated, conspired to initiate, and/or assisted in the transmission of the emails at issue to recipients in Maryland, including Plaintiff.

118.    The EMAILS AT ISSUE advertised property, goods or services for sale or lease, to person in Maryland.  DEFENDANTS derived substantial revenue as a result of these email messages to recipients in Maryland.  By this conduct, DEFENDANTS solicited sales and conducted business in Maryland on a regular basis, engaged in a persistent course of conduct in Maryland, and availed themselves of the protection of the laws of this State.

119.    DEFENDANTS planned, prepared, designed, executed, approved, modified, condoned and ratified the sending of the emails referenced above.

120.    DEFENDANTS paid others for services related to the transmissions, and received payment from advertisers and others for DEFENDANTS' services related to the

transmissions.  DEFENDANTS, either directly or indirectly, caused products and services to be sold and/or delivered as a result of the transmissions.  DEFENDANTS tracked the results of the transmissions and all related services, sales and commissions.  All of these activities generated records that identify the participants in these activities, and the related times, dates, quantities and payment amounts.

121.    All of the conduct alleged above was performed either directly by DEFENDANTS or by persons acting as their agents.  All persons who participated in the events alleged above acted as agents for Defendants.    All DEFENDANTS (including Does 1-20) authorized, participated in, acquiesced to, consented to and/or were the agents of the other DEFENDANTS in the acts alleged, and initiated, conspired, assisted, participated in, or otherwise encouraged the conduct alleged in furtherance of one or more conspiracies to initiate the emails.  The transmissions of the emails identified herein were actions that each of the DEFENDANTS authorized, controlled or directed, or had the ability to authorize, control or direct, and were actions for which each of the DEFENDANTS is liable.

122.    As a recipient of the emails at issue, under MCEMA §14-3003(1) Plaintiff BSI is entitled to the greater of $ 500 per violation or actual damages, plus attorney's fees and costs.  As an interactive computer service provider, under §14-3003(3) Plaintiff is entitled to the greater of $1,000 per violation or actual damages, plus attorney's fees and costs.

## VIII.   FL-CEMA

123.    FL-CEMA provides in relevant part as follows:

**668.603 Prohibited activity.**

A person may not:

(1)     Initiate or assist in the transmission of an unsolicited commercial electronic mail message from a computer located in this state or to an electronic mail address that is held by a resident of this state which:

       (a)     Uses a third party's Internet domain name without permission of the third party;

       (b)     Contains falsified or missing routing information or otherwise misrepresents, falsifies, or obscures any information in identifying the point of origin or the transmission path of the unsolicited commercial electronic mail message;

       (c)     Contains false or misleading information in the subject line; or

       (d)     Contains false or deceptive information in the body of the message which is designed and intended to cause damage to the receiving device of an addressee or of another recipient of the message. However, this section does not apply to electronic mail messages resulting from or created by a computer virus which are sent or retransmitted from a computer or other electronic device without the senders knowledge or consent.

    *     *     *

668.606 Remedies.

    *     *     *

(3)     A prevailing plaintiff in an action filed under this part is entitled to:

       (a)     An injunction to enjoin future violations of s. 668.603.

       (b)     Compensatory damages equal to any actual damage proven by the plaintiff to have resulted from the initiation of the unsolicited commercial electronic mail message or liquidated damages of $500 for each unsolicited commercial electronic mail message that violates s. 668.603.

       (c)     The plaintiffs attorneys fees and other litigation costs reasonably incurred in connection with the action.

**Violations of Section 668.603.**

31

(1)     A violation of s. 668.603 shall be deemed an unfair and deceptive trade practice within the meaning of part II of chapter 501. In addition to any remedies or penalties set forth in that part, a violator shall be subject to the penalties and remedies provided for in this part.

(2)     The remedies of this part are in addition to remedies otherwise available for the same conduct under federal or state law.

124.     The allegations in the preceding paragraphs of this complaint are hereby incorporated by reference.

125.     DEFENDANTS violated FL-CEMA by initiating or assisting in the transmission of unsolicited commercial electronic mail messages, including the emails at issue, from computers located in Florida.  Each of these emails contained falsified or missing routing information or otherwise misrepresented, falsified or obscured information in identifying the point of origin or the transmission path of the unsolicited commercial electronic mail message; and contained false and misleading information in the subject lines, and contained false and deceptive information in the body of the messages, designed and intended to cause damage to the receiving device of an addressee or of another recipient of the message.

126.     In particular, DEFENDANTS caused email messages to be sent as described in the preceding paragraphs of this complaint.

## IX.    COUNTS

### Count I - MCEMA

127.     The allegations above are incorporated by reference.

128.     DEFENDANTS, and each of them, initiated, conspired in the initiation, and assisted in the transmission, of the EMAILS AT ISSUE in this suit.

32

## Count II - FL CEMA

129.        The allegations above are incorporated by reference.

130.        DEFENDANTS, and each of them, initiated, conspired in the initiation, and assisted in the transmission, of the EMAILS AT ISSUE in this suit.

## PRAYER FOR RELIEF

Plaintiff seeks judgment as follows:

A.        Against all DEFENDANTS, jointly and severally, under §14-3003(1) of MD-CEMA, Plaintiff BSI seeks judgment in the amount of $500 for each of the commercial electronic mail messages at issue, in an aggregate amount of not less than Thirty-Four Million Dollars ($34,000,000);

B.        Against all DEFENDANTS, jointly and severally, under §14-3003(3) of MD-CEMA, Plaintiff BSI seeks judgment in the amount of $1,000 for each of the commercial electronic mail messages at issue, in an aggregate amount of not less than Sixty-Eight Million Dollars ($68,000,000), in addition to the damages sought in paragraph (a) above;

C.        Plaintiff seeks an order enjoining DEFENDANTS under Md. Code Ann., Com. Law. MD-CEMA from making any false or misleading statements in commercial emails, and from engaging in any further conduct in violation of MD-CEMA.

D.        Under MD-CEMA, against all DEFENDANTS, Plaintiff BSI seeks an award of attorney's fees, and the reasonable costs of this litigation.

E.        Aainst all DEFENDANTS, jointly and severally, under FL-CEMA, Plaintiff BSI seeks judgment in the amount of $ 500 for each of the commercial electronic mail messages at

issue, in an aggregate amount of not less than Thirty-Four Million Dollars ($34,000,000), in addition to the damages sought in the paragraphs above;

F.      Plaintiff seeks an order enjoining DEFENDANTS under FL-CEMA 668.606(3)(a) from making any false or misleading statements in commercial emails, and from engaging in any further conduct in violation of FL-CEMA.

G.      Under FL-CEMA, against all DEFENDANTS, Plaintiff BSI seeks an award of attorney's fees, and the reasonable costs of this litigation.

H.      Plaintiff BSI seeks damages for any continuing violations up to the time of entry of judgment, not limited to the quantities of violations known as of the filing of this complaint, and such other and further relief as the Court deems appropriate.

Respectfully submitted,

_____/s/_____                  _____03/08/10_____
Stephen H. Ring                                                    Date
STEPHEN H. RING, P.C.
506 Main Street, Suite 215
Gaithersburg, Maryland 20878
MD Bar Id. No. 04731764; USDC, MD: #00405
Telephone: 301-540-8180

_____/s/_____                  _____03/08/10_____
Michael S. Rothman                                              Date
401 E. Jefferson Street
Suite 201
Rockville, MD 20850
Phone: (301) 251-9660
Fax: (301) 251-9610

*Attorneys for Plaintiff*

## Jury Demand

Plaintiff requests a trial by jury as to all issues so triable.

_____/s/_____

Michael S. Rothman

## Exhibits

Exhibit 12 -   BARRACUDA NETWORKS, BARRACUDA NETWORKS SPAM REPORT at 4 (2007).

Exhibit 13 -   Order in Facebook, Inc. v. Guerbuez, et al., Case No. CO8003889 HRL (U.S. District Court, Northern District of California, November 10, 2008).

Exhibit 14 -   USDOJ Press Release:  "Brooklyn Man Sentenced to 30 months in Prison in Massive AOL Spam Scheme."

Exhibit 15 --  USDOJ Press Release, October 12, 2007:  "Two Men Sentenced For Running International Pornographic Spamming Business."

Exhibit 16A -- FTC Press Release:  "ValueClick to Pay $ 2.9 Million to Settle FTC Charges."

Exhibit 16B -- FTC, "Major Online Advertiser Settles FTC Charges.  "Free" Gifts Weren't Free; Settlement Calls for $650,000 Civil Penalty," Nov. 28, 2007.

Exhibit 17 -   Florida Attorney General, "News Release:  Internet Company Sued for Deceptive Advertisements of "Free" Gifts,"August 23, 2007.

Exhibit 18 -   Better Business Bureau Company Report for Niutech, LLC listing alternative dba's.

Exhibit 19 -   Lazarus, David, "No Such Thing as a free laptop."  San Francisco Chronicle, June 15, 2007.

Exhibit 20 --  RipOff Report on World Avenue, listing URLs and fictitious business names.

Exhibit 21 --  Royal Bank of Canada Capital Markets report on ValueClick & Lead Generation, April 26, 2007.

Exhibit 22A -- http://www.theuseful.com/site/aboutus.html, captured on 12/19/2008.

Exhibit 22B – FTC, Report to Congress, "A CAN-SPAM Informant Reward System," Sept. 2004, excerpt.

Exhibit 23 --   Affidavit of Paul A. Wagner Regarding Count of Emails Containing Certain Business Names and Domain Names, 3/08/10

Exhibit 24 --   www.SuperbRewards.com and other World Avenue destination web pages (landing pages).

Exhibit 25 --   Declaration of Homer Appleby, Esq., Oct. 19, 2006.

Exhibit 26 -   Whois registration lookups of World Avenue domain names, June 2007.

Exhibit 27 –   Terms Of Service of World Avenye web sites, April 19, 2007.

Exhibit 28 –   Florida Secretary of State corporate listing for Net Radiance LLC, 12/19/2008.

Exhibit 29 --   Florida Secretary of State corporate listing for World Avenue Holdings, LLC, 12/19/2008.

Exhibit 30 --   Florida Secretary of State corporate listing for World Avenue U.S.A., LLC, 12/19/2008.

Exhibit 31 --   www.superbrewards.com image refers to theuseful.com, 6/19/2007.

Exhibit 32 –   Florida Attorney General, "McCollum's CyberFraud Task Force Reaches $1 Million Agreement with Company over Internet Marketing Guidelines," January 16, 2008.

Exhibit 33 --   DMA publication, "DMA Ethics Committees Call Attention to Non-Compliant Companies," August 28, 2007.

Exhibit 34A -- sample spam--$250 gift card--prefer Starbucks or Dunkin Donuts.

Exhibit 34B -- sample spam--Sams Club gift card.

Exhibit 34C -- sample spam--$250 gift card--prefer Starbucks or Dunkin Donuts.

Exhibit 35 --   "FTC Guide Concerning Use of the Word "Free" and Similar Representations," (38 Stat. 717, as amended; 15 U.S.C. 41 - 58), [36 FR 21517, Nov. 10, 1971].

Exhibit 36 –    "National Do Not Email Registry:  A Report to Congress." FTC, June 2004, Section III (pp. 3-13), available at http://www.ftc.gov/reports/dneregistry/report.pdf  (last visited 12/21/08).

Exhibit 38 –    Additional Search Terms

Exhibit 39 –    Vente-figdiscounts.com-college_scholarship-12-18-09-email-rendered-castalia

Exhibit 40 --   Q Interactive-liveshoppingsecure.com-2009-06-25-email-rendered-linkcenter.pdf

Exhibit 41 --   whois-figdiscounts.com-2009-11-27-private-registrations.pdf

Exhibit 42 --   whois-liveshoppingsecure.com-2009-06-12-domains-by-proxy.pdf

Exhibit 43 --   Q Interactive acquires Vente, Inc.pdf

Exhibit 44 --   Intrepid Investments acquires Q Interactive.pdf

Exhibit 45 --   kitara-mythreadshower.org-2009-06-29-email-hasit.com.pdf

Exhibit 46 --   WhoIs Lookup for Yourgiftzone.com Bristol Interactive, LLC.pdf

Exhibit 47 --   Linked-In Profile Page Cross-Referencing Defendants' Employees Working for Multiple Entities Simultaneously.