UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | |
|---|---|
| BEYOND SYSTEMS, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 8:08-cv-00921 PJM |
| ) | |
| WORLD AVENUE USA, LLC, ) | |
| Successor by merger to NIUTECH, LLC, ) | |
| DBA "The Useful," et al. ) | |
| ) | |
| Defendants. ) | |

### NON-PARTY DNSMADEEASY.COM LLC'S OPPOSITION AND MEMORANDUM OF AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONTEMPT AND FOR SANCTIONS AND MOTION TO QUASH

Non-party DNS Made Easy, a subsidiary of Tiggee, LLC (collectively "Tiggee"), by and through counsel, hereby files this Opposition to Plaintiff's Motion to Compel Non-Party DNSMADEEASY.COM, LLC to Respond Fully to Subpoena For Document Production, and For Contempt, and For Sanctions ("Motion to Compel") filed by Plaintiff Beyond Systems, Inc. ("Plaintiff" or "BSI") and further moves to quash the subpoena and in support states:

### BACKGROUND

Tiggee is a domain name service ("DNS service") that for a fee maps IP addresses to domain names. In 2009, Defendant World Avenue, LLC ("WA, LLC") contracted with Tiggee for Tiggee to provide it with DNS service. As part of that arrangement and as it does with every customer, Tiggee agreed to keep WA, LLC's personally identifiable information private and

confidential. Tiggee, pursuant to WA, LLC's opt-out request, also agreed to prevent release of ownership transfer information as well.[1]

On January 2, 2010, Tiggee received by certified mail a subpoena *duces tecum* in this action seeking information "related" to 163 domain names as well as all documents related to "World Avenue" from January 2004 to the present. The subpoena defined "World Avenue" as "World Avenue U.S.A., LLC and any of its former and current employees, officers, consultants, agents, affiliates, representatives, corporate affiliates, subsidiaries, and parent corporations []including, but not limited to, …World Avenue, LLC," and numerous additional entity names. A copy of the subpoena and attachment was appended to Plaintiff's Motion to Compel at Exhibit 1. The subpoena commanded Tiggee to produce the documents on January 15, 2010, at Plaintiff's counsel's office.

In response, Steven Job, President of Tiggee, wrote a timely letter of objection to counsel for BSI stating that

> there exists a DNS Made Easy account that lists 'World Avenue' as the company name and that we provide Domain Name System (DNS) services to that account. The Tiggee privacy policy prevents us from providing any personally identifiable information regarding our clients without a court order signed by a judge, but we can state that we have no contact information under this account that is any way different from what is publicly [sic] available on the World Avenue web site (e.g. addresses, phone numbers, etc.).

A copy of this letter of objection was appended to Plaintiff's Motion to Compel at Exhibit 3. Job went on to indicate that Tiggee provides "absolutely NO electronic mail services or web hosting services of any kind to the World Avenue account … [or] to any of the 163 internet domain names listed in this subpoena." (Emphasis in original.) Job concluded by stating that

---

[1] At page 10 of Plaintiff's Motion to Compel, Plaintiff states that "Tiggee has set its servers to deny the efficient Tiggee zone transfer of the domains they host[.]" This is only partially true, as Tiggee did this upon the express request of its customer, WA, LLC.

> Tiggee will provide a detailed report of all information regarding the DNS services for the domain in the 'WorldAvenue' account within DNS Made Easy. To the best of my knowledge, this will provide all of the information available to us according [to] our data records.

In response to the letter of objection, counsel for Tiggee and counsel for Plaintiff conferred and agreed that Tiggee would provide a sample production of information. Specifically, Tiggee agreed to produce a sampling of 15 domain names from the subpoena list, account information for WA, LLC and the name and address of the payor on the account along with the dates and amounts of payment, and confirm if payment was made by credit card (though no personal identification information would be produced about the credit card without a Court order). An email confirming this arrangement was appended to Plaintiff's Motion to Compel at Exhibit 7, p. 5. Counsel agreed that if after review of the sampling Plaintiff was satisfied that Tiggee does not possess the information Plaintiff requires, Tiggee would be released from the subpoena.

In the interim, prior to production of the sample, counsel for Defendants contacted counsel for Tiggee and advised that he would be moving to quash the subpoena and requested that Tiggee refrain from producing any information pursuant to the subpoena until after resolution of the subpoena dispute. In response, the undersigned contacted counsel for BSI and advised that in light of its customer's objection to the subpoena, Tiggee believed it was appropriate to allow Defendant to file its motion and await a ruling on a motion to quash and thereafter comply with any order entered by the Court. Plaintiff would suffer no prejudice. Defendant, World Avenue USA, LLC subsequently filed a Motion to Quash Plaintiff, BSI's Subpoena Issued to Non-Party DNS Made Easy ("Motion to Quash"). Rather than awaiting a

ruling on the Motion to Quash, however, BSI filed the instant Motion to Compel seeking an order to compel, as well as contempt and sanctions from Tiggee.[2]

Tiggee has not violated the subpoena without adequate reason and with impunity. Tiggee files this Opposition based on its contractual obligation to its customers to maintain their privacy and WA, LLC's specific request that it abstain from wholesale compliance with the subpoena until after resolution of the Motion to Quash. Tiggee takes no position in the lawsuit and will abide by any decision this Court renders.

## ARGUMENT

### A. Standard of Review

Rule 45 of the Federal Rules of Civil Procedure governs discovery of nonparties by subpoena. A non-party is subject to the same obligations and scope of discovery as if it were a party. Sabol v. Brooks, 469 F. Supp. 2d 324, 328 (D. Md. 2006). Under Fed. R. Civ. P. 26 (b), which is applicable through Fed. R. Civ. P. 34, discovery is permitted of any non-privileged material "relevant to any party's claim or defense." Fed. R. Civ. P. 26 also provides that discovery shall be limited if:

> (i) [t]he discovery sought is unreasonably cumulative or duplicative, or can be obtained from some source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

---

[2] The issue of what is produceable is between Plaintiff and Defendant. Tiggee would comply with any Court order, and in fact, since information requested was potentially confidential, Tiggee preferred for the Plaintiff and Defendant to address the issue with the Court and that any production be pursuant to a Court order. In what can be described as nothing less than an unreasonable approach, Plaintiff filed the motion against Tiggee rather than allowing the Court to deal with it between Plaintiff and Defendant.

Similarly, Fed. R. Civ. P. 45 provides that a court can quash or modify a subpoena if it "subjects a person to undue burden." The production of irrelevant information is considered to be an undue burden. Compaq Computer Corp. v. Packard Bell Elec., Inc., 163 F.R.D. 329, 335-36 (N.D. Cal. 1995). Finally, under subsection (c) (3) of Rule 45, a motion to quash is appropriate where protected commercial information is sought to be revealed.

Tiggee submits that the information requested by the subpoena is overbroad and commercially protected, and thus, the subpoena should be quashed. Additionally, Tiggee's actions in attempting to agree to a workable solution have been appropriate, and thus, the imposition of sanctions of contempt and fees is unwarranted.

### B.  Relevancy and Overbreadth of Service Users

The lawsuit regards alleged emails sent over a period of a few years to Plaintiff from certain domain names allegedly tied to Defendants in violation of anti-spam laws. At Request No. 1 attached to the subpoena, BSI seeks information "related to" 163 domain names. The requested information from Tiggee, however, substantially exceeds the domain names referenced by Plaintiff in its lawsuit, and in particular as set forth in Plaintiff's Complaint Exhibit 23, Affidavit of Paul A. Wagner Regarding Count of Emails Containing Certain Business Names and Domain Names. Thus, the subpoena appears to request irrelevant information and the request is further burdensome to Tiggee.

As the Declaration of Rob Erie (attached to the Motion to Quash at Exhibit 5, paragraph 5) states, "none of the Domain Names owned by [World Avenue USA, LLC] are serviced through DNS Made Easy's services except for worldavenue.com and adinfocenter.com." Thus, the request for personally identifiable information regarding the remaining domain names listed in the supboena is overbroad. Additionally, as set forth in the Motion to Quash at 9, the

Declaration of Chadd Schlotter (attached to the Motion to Quash at Exhibit 6), indicates that none of the domain names owned by World Avenue USA, LLC are "the subject of the [Tiggee] Subpoena." Thus, the subpoena on its face appears to seek information that is completely irrelevant to the lawsuit, and Tiggee requests that a court determination be made as to relevancy before it turns over the "personally identifiable information" of 163 domain name owners which it agreed to keep confidential.

C. **Relevancy and Overbreadth of Time Period**

In addition to the number of domain names owners, the subpoena also seeks information about these owners for a period of six years. The period of time appears overbroad.

The lawsuit at ¶ 62 references emails sent over a period of a few years between July 20, 2004, and September 3, 2005. BSI, in that same paragraph, states that "[s]ince July 3, 2005 Plaintiff has received thousands of additional emails from World Avenue," but the dates of such email transmissions is not set forth. The Initial Declaration of Paul A. Wagner, Exhibit 4 to the Motion to Quash, sets forth a specified number of emails between 2005 and 2008 received by BSI from World Avenue. As for thereafter, the Declaration noted that "I have not yet searched for World Avenue emails that might have been sent in 2009." Thus, the emails about which Plaintiff appears to complain are dated between 2005 and 2008. Yet, the subpoena seeks ownership information for 2004 and 2009-2010, information that appears irrelevant. *See* Moon v. SCP Pool Corp., 232 F.R.D. 633 (C.D. Cal. 2005) (Subpoena to nonparty overbroad where it seeks to cover a greater period than that complained of in lawsuit).

As set forth in the Declaration of Steven Job attached to the Motion to Quash at Exhibit 2, DNS Made Easy did not enter into a contract with WA, LLC to provide it with DNS services until 2009. In fact, the Initial Declaration of Paul A. Wagner attached to the Motion to Quash at

Exhibit 4 confirms that Plaintiff "has not yet searched for World Avenue Emails that might have been sent in 2009," and thus, ownership information from 2009 to the present cannot be at issue. Nor can Plaintiff argue that current ownership is relevant since the "personally identifiable information" Plaintiff seeks regards ownership of domain names but a particular ownership in 2009 does not mean that the same ownership structure existed in 2005-2008.

### D.  Relevancy and Overbreadth of Documents/Lack of Specificity

As stated, Plaintiff seeks production of information "related to" 163 domain names and "World Avenue" as that term is defined in the subpoena. On its face, the subpoena lacks specificity.

In particular, Request No. 3 seeks "All DOCUMENTs RELATED to the purchase, lease or use of the domain names listed above." As Tiggee is in the business of DNS services, as a practical matter, the entirety of its books and records, both documentation and electronically stored, is "related to" "the purchase, lease or use" of domain names. Similarly, Request No. 5 seeks "All DOCUMENTs RELATED to hosting or provision of DNS service or any other service for the domain names listed above." Again, since Tiggee is in the business of providing DNS services, the request lacks specificity and appears to embrace all of Tiggee's records.

Request No. 7 seeks, *inter alia*, "All DOCUMENTs RELATED to ... communications with, any person who registered, purchased, leased, sold, resold, owned or used any of the domain names listed above, or received or paid for any service related to those domain names." Thus, Tiggee is required to search the entirety of its records and database to determine who it has ever communicated with and whether the communicating party has ever transacted any business with 163 domain names or entities providing services related to those domain names. For example, if John Smith from abc.com communicated with Tiggee and determined not to use its

DNS services for abc.com, and then John Smith on his own received a product from one of the services related to one of the 163 domain names, Tiggee would be required to divulge its communications with John Smith even if they had absolutely nothing to do with WA, LLC. Not only is such a search close to an impossibility, but it lacks relevancy and specificity. Finally, Request No. 10 seeks "All DOCUMENTs RELATED to WORLD AVENUE." Since "World Avenue" is defined to include its current and former employees, consultants, agents and affiliates, etc., this request is facially overbroad as it requires Tiggee to determine all entities and/or persons who have or had a relationship with World Avenue as that term is defined.

It has been held in this District that a request for "all documents concerning the operation of the Nottingham net branch of Synergy Mortgage Corp." is so broad as to be invalid. Sabol, 469 F. Supp. 2d at 329. The requests in this case are in the same vein, particularly since Plaintiff seeks all documents related to "World Avenue," which by its definition encompasses current and former employees, officers, agents, consultants, representative, affiliates, and subsidiaries and parent, and 28 specified entities. *See* Moon, *supra* (Subpoena to nonparty overbroad where it seeks documents related to a nonparty's business relationship with other nonparties).

In sum, the requests for documents fail to set out with specificity the particulars of what is sought such that Tiggee can comply without undue burden and with certainty. Thus, the subpoena should be quashed or modified.

### E. Relevancy Not Clear in the First Instance

Plaintiff has failed to explain how the information sought by the subpoena is relevant to its case. All that is said in this regard is at page 6 of its Motion to Compel: "Without tapping DNS data, an outsider does not have the ability to ascertain all of the domain names owned or used by the World Avenue companies. BSI does not have the ability to ascertain [sic]." This

8

tells virtually nothing about why BSI needs the requested information. In the Affidavit of Paul A. Wagner Regarding Domain Name Registration and DNS Service, filed February 23, 2010, Plaintiff further states at paragraph 37 that "BSI needs this information from Tiggee in part because (a) there are 192 million domain name registrations… and so Tiggee must identify which of these have [sic] related to World Avenue, and (b) Tiggee has set their DNS servers to deny the efficient and customary DNS zone transfer of the domains they host necessitating a unique request for each record type of each domain and subdomain." Not only is the second part of this statement misleading as the server setting is based on the customer's preference, but Tiggee is not obligated to do Plaintiff's research for it—at best Tiggee is only required, pursuant to a valid subpoena, to provide information about which is controls. BSI also asserts that it needs the Tiggee information to see if there are any complaints lodged against Defendants. Tiggee avers that such information is irrelevant as the matter at issue appears to be Defendants sending of unwanted emails to Plaintiff, and thus, Defendants acts *vis-à-vis* others is irrelevant.

As set forth in Gonzales v. Google, Inc., 234 F.R.D. 674, 681 (N.D. Cal. 2006), *citing* Northwestern Memorial Hosp. v. Ashcroft, 362 F.23d. 923, 931 (7th Cir. 2004), in determining whether the information sought by a subpoena to a nonparty is relevant, "the party seeking the information must first provide the Court with its plans for the requested information." In this case, BSI has failed to explain how Tiggee's records are germane to its claim that Defendants sent it spam in violation of anti-spam laws.

In sum, since the production of irrelevant information is considered burdensome, Tiggee requests that the Court enter an order identifying what information sought by BSI, if any, is relevant and quash those portions of the subpoena that seek irrelevant information.

### F.    Revelation of Confidential Information/Harm to Business

Fed. R. Civ. P. 45 permits the issuing court to quash a subpoena if it requires a person to disclose "a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45 (c) (3) (B) (i). In this case, compliance with the subpoena absent a court order will harm Tiggee's competitive position as well as its reputation with its customers.

"Confidential commercial information" has been defined as "information which, if disclosed, would cause substantial economic harm to the competitive position of the entity from whom the information was obtained." Diamond State Ins. Co. v. Rebel Oil Co., Inc., 157 F.R.D. 691, 697 (D. Nev. 1994). Here, the subpoena seeks "confidential commercial information" which has independent economic value by virtue of its possession by Tiggee and its non-possession by other DNS services, including BSI. By keeping the personally identifiable information of its customers secure, Tiggee not only protects the interests of its customers as set forth below, but protects itself as well since without contact information, a competitor has less ability to steal a Tiggee customer for itself.

As stated, the subpoena seeks information regarding 163 domain names and Tiggee is in the business of providing DNS service to these customers. It earns its revenue based on the number of customers it services. BSI has stated that it is also in the business of providing DNS services. *See* Affidavit of Paul A. Wagner Regarding Domain Name Registration and DNS Service at paragraphs 9 and 11, filed February 23, 2010. Thus, to the extent Plaintiff can get access to Tiggee's customer contact information, it can solicit for business those customers. That is exactly what Plaintiff appears to be doing here by seeking contact information for 163 domain names.

Additionally, Tiggee contracts with its customers to maintain as private their personally identifiable information – indeed, this is one of the reasons for using a domain name service. In fact, as set forth in Tiggee's privacy statement attached to the Motion to Quash at Exhibit B to the Erie Declaration, Tiggee "takes [its customers'] privacy seriously" and "has one of the strictest privacy policies on the Internet. Your information is safe with us." To reveal such information, assuming it is possessed by Tiggee, without a court order could cause great harm to Tiggee's reputation. It is in part that reputation that contributed to WA, LLC's decision to contract with Tiggee for DNS services. *See* Erie Declaration at 4 and 7. As recognized by the Court in Google, 234 F.R.D. at 684, harm to reputation of a business in which privacy is expected by its users is a potential burden which must be recognized in the face of a third-party subpoena. While Tiggee is aware that given the nature of the internet and its business, it may occasionally be called upon to divulge customer information, it cannot lightly breach the confidentiality of its customer information and must take appropriate measures to insure that the revelation of this information is pursuant to valid court order. Accordingly, Tiggee requests that this Honorable Court quash the subpoena or take measures to protect Tiggee's customer contacts so that BSI cannot utilize Tiggee's commercial information for its own purposes.

G. **Fees/Sanctions**

Without citation to supporting authorities, BSI also seeks attorney's fees and a request for contempt in addition to a request for an order compelling Tiggee to produce the requested information. Plaintiff's request is wholly unjustified.

Despite Plaintiff's veiled suggestion to the contrary, there has been no contumacious conduct on the part of Tiggee to violate a court order necessitating the award of fees and sanctions. In actuality, upon receipt of the subpoena, Tiggee timely objected to it, yet was still

willing to cooperate to a limited degree to demonstrate to Plaintiff that it did not possess the information desired. It was only when its customer requested that it not produce such information until resolution of a motion to quash did Tiggee inform Plaintiff that it was withholding the offered discovery pending resolution by this Court of the motion to quash.

Fed. R. Civ. P. 45 (e) provides the sole authority for the imposition of sanctions against a nonparty for failure to comply with a subpoena *duces tecum*. This Rule states that failure by any person "without adequate excuse to obey the subpoena" served upon him may be deemed a contempt of the court from which the subpoena issued. Fed. R. Civ. P. 45 (c) (2) (B), however, allows a person to whom a subpoena is directed to serve a written objection within 14 days.

This is precisely what Tiggee did. Job's letter of January 19, 2010, to counsel for Plaintiff indicated that the subpoena 1) was overbroad and overly burdensome; 2) sought information not within Tiggee's possession; 3) violated Tiggee's privacy policy absent a signed court order; and 4) sought publically available information about which Plaintiff was attempting to shift the cost and effort of researching. The submission of a letter of objection serves as adequate excuse. *See* Kowalczyk v. U.S., 936 F. Supp. 1127, 1149-50 (E.D.N.Y. 1996), *aff'd*, 152 F.3d 918 (2nd Cir.), *cert. denied*, 525 U.S. 987, 119 S. Ct. 455 (1998) (Contempt under Fed. R. Civ. P. 45 (e) denied where police department's letter in response to subpoena that description of material sought was not specific enough was not evasion or a subterfuge and response constituted adequate excuse sufficient to excuse non compliance); *see also* Colorado Mill & Elevator Co. v. American Cyanamid Co., 11 F.R.D. 306 (W.D. Mo. 1951) (Where witness who had been ordered by court to produce documents for inspection refused to do so on advice of counsel, who sincerely believed that documents should not be produced because they contained

immaterial and somewhat confidential matters intermingled with other matters, witness would not be punished for contempt since adequate excuse existed).

Moreover, given that Tiggee had filed timely written objections, Tiggee was not obligated to produce the subpoenaed documents until Plaintiff sought and obtained a court order directing their production. *See* Pennwalt Corp. v. Durand-Wayland, Inc., 708 F.2d 492, 494 (9th Cir. 1983). Accordingly, because Plaintiff has failed to obtain an order directing compliance with its subpoena, Tiggee's resistance to compliance is not a contempt under Rule 45 (e). *Id.*

Similarly, Plaintiff is not entitled to an award of attorney's fees. *See* N.L.R.B. v. Midwest Heating & Air Conditioning, Inc., 528 F. Supp. 2d 1172, *reconsid. denied*, 2008 WL 4330022 (D. Kan. 2007) (NLRB not entitled to attorney fees and costs incurred in filing its request for enforcement of administrative subpoenas where respondent entities to which subpoenas were issued were not parties to the underlying unfair labor practice decision and had not yet violated any court order enforcing administrative subpoena and compelling compliance therewith).

The Court's power to impose sanctions for failure to abide by discovery is permissible but such discretion must be exercised gently and never when it has been established that failure to comply was due to something other than willfulness, bad faith, or fault. *C.f.* Wilson v. Volkswagen of America, Inc., 561 F.2d 494 (4th Cir. 1977), *cert. denied*, 434 U.S. 1020, 98 S. Ct. 744 (1978), *on remand*, 445 F. Supp 1368 (1978) (Failure of a party to comply with a court order compelling production of documents). Tiggee timely noted objections to the broad subpoena requests and even agreed to work with Plaintiff to demonstrate it did not possess the information requested. Tiggee did this even while believing that Plaintiff was seeking the information in an attempt to pirate Tiggee's business and as a means of shifting the cost and

effort to research its case. Only when Tiggee was advised that a motion to quash would be filed did it suspend its efforts to cooperate after advising Plaintiff that it would await a Court order on the issue of compliance.[3] Such conduct is not only not contemptuous, but bespeaks of good faith. The request for sanctions and fees should be denied.

## CONCLUSION

As stated, Tiggee takes no position in the lawsuit and has not flouted the authority of this Court's subpoena power. It advised both Plaintiff's counsel and Defendants' counsel that it will abide by a court order setting forth the particulars of what it is required to provide to Plaintiff. Accordingly, for the foregoing reasons and any advanced at a hearing in this matter, non-party DNS Made Easy respectfully requests that Plaintiff's Motion to Compel Non-Party DNSMADEEASY.COM, LLC to Respond Fully to Subpoena For Document Production, and For Contempt, and For Sanctions be denied, and that the subpoena be quashed or modified as necessary and that this Court grant such other and further relief as is deemed just and proper.

---

[3] If Tiggee, as a non-party, receives a subpoena to produce potentially confidential information of a customer where the customer is a party in this case, and the customer has filed a motion to quash the subpoena in this Court, it is reasonable, if not probably preferable, for Tiggee to wait for a Court order resolving the validity of the subpoena.

Respectfully submitted,

SHULMAN, ROGERS, GANDAL,
PORDY & ECKER, P.A.

By: _____/S/_____
Glenn C. Etelson, Esq.
Bar No.: 06760
12505 Park Potomac Avenue
Sixth Floor
Potomac, Maryland 20854
(301) 231-0956

*Counsel for Non-party DNS Made Easy*

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of March 2010, a copy of the foregoing was sent via electronic mail through the U.S. District Court for the District of Maryland e-file system and mailed, first class, postage prepaid to:

Stephen H. Ring, Esq.
Stephen H. Ring, PC
506 Main Street, Suite 215
Gaithersburg, MD  20878

Sanford M. Saunders, Jr., Esq.
Greenberg Traurig LLP
2101 L Street, N.W., Suite 1000
Washington, DC  20037

Kenneth A. Horky, Esq.
Greenberg Traurig, PA
401 E Las Olas Boulevard, Suite 2000
Fort Lauderdale, FL  33301

_____/S/_____
Glenn C. Etelson

G:\133\Tiggee, LLC\Beyond Systems\Pleadings\Opp 2 mo 2 compel contempt and sanctions.docx