IN THE U.S. DISTRICT COURT FOR MARYLAND,
SOUTHERN DIVISION

| | | |
|---|---|---|
| **BEYOND SYSTEMS, INC.** | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | **Case No. PJM 08 cv 0921** |
| | * | |
| **WORLD AVENUE USA, LLC, ET AL.** | * | |
| | * | |
| Defendants | * | |

**PLAINTIFF'S REPLY MEMORANDUM
IN SUPPORT OF MOTION FOR RECONSIDERATION
OF ORDER AT DE 213 REGARDING DNSMADEEASY, LLC dba TIGGEE.COM**

Plaintiff files this reply memorandum in support of its motion for reconsideration at Docket Entry 217.

### I. Overview

The Court has narrowed the scope of the document subpoena to DNS to just 41 domain names, by the order at DE 213. Defendant now seeks to apply this restriction across other discovery. (See letter from Mr. McManus to Plaintiff's counsel, April 16, 2010, attached.) Plaintiff contends the limits on document discovery from DNS are unduly restrictive because World Avenue uses multiple identities, far beyond the 41 domain names. It uses hundreds of domain names, fictitious names and trade names, and purports to divide its management functions among dozens of corporate names, in an intentionally confusing web, all tied to its email-based lead generation business. DNS has proven that it has at least some of the information sought.

Of critical importance is the fact that World Avenue denies association with many or all of the 41 names, so that discovery of the full panoply of names it uses is necessary in order to

track and/or confirm the matching of the emails within the scope of the claims asserted in this case.

Defendant seeks to restrict Plaintiff from discovery of the entire scope of domain and trade names used in its email-based lead generation business, as that would allow attribution of emails to Defendant, or further confirmation of such attribution. It argues that the motion for reconsideration contains no new information, and that the motions related to the subpoena to Tiggee have created a "digital forest."

## II. The Order Invites Additional Grounds.

The order at DE 213 states in relevant part:

Plaintiff seeks information regarding approximately 163 domain names. Defendant points out however, that pursuant to Paul A. Wagner's declaration under oath, only approximately 41 of these domain names have appeared in the "emails at issue." While Defendant cannot suggest an interest in the balance of the domain names or in any burden of production, it is equally true that <u>Plaintiff has not demonstrated an entitlement to the additional names</u> under the rules of discovery. <u>It is apparent that far more entities are identified in Plaintiff's subpoena for documents, than those attested to in Mr. Wagner's declaration</u> as being related to this lawsuit. Plaintiff shall be limited to the discovery of those items set forth <u>in the declaration</u> until some other good faith basis has been established . . .

Plaintiff shall be limited to the discovery of those items set forth in the declaration until some other good faith basis has been established.

DE 213 at 2. The Court's ruling relies on an affidavit from Mr. Wagner created in 2008. Considerable additional information has been learned about Defendant's lead generation business since then, including the documents from the Florida Attorney General and from the Florida Secretary of State, pertaining to a host of corporate names, fictitious names, trade names and domain names. An updated affidavit from Mr. Wagner was filed at DE 177-3 (re-filed with the Motion for Reconsideration at DE 217-3), addressed in more detail below, explaining how additional names were tied to World Avenue, and how the list of 168 names was generated.

The compilation of World Avenue's various names by the Florida Attorney General confirms many of the names in the list compiled by Mr. Wagner.  The aggregation of the vast array of names used in World Avenue's business would be nearly impossible without the benefit of an investigation like that done by the Florida AG: many of the names are fanciful, unregistered, or registered under false names, or registered to different-sounding entities within the World Avenue family, confounding the researcher.  For example, many of the fictitious names are registered under the name, "Magnacent, LLC" or "Jinius Corporation," which are part of the World Avenue family of entities, facts not readily apparent in public records. (See DE 217-1 at 8, 12.)  Some of the domain names are registered to "privacy services" that conceal the true owner, and list the physical address as a UPS store.  (See Affidavit and exhibits at DE 168; DE 217-2, registration as "Customer Service.")

Plaintiff has provided the "good faith basis' for discovery from Tiggee beyond the 41 domain names as follows:

- Declaration of Paul Wagner (March, 2010) at DE 177-3, 217-3, - 4

- Documents from Florida Attorney General demonstrating use of multiple names at DE 217-1.

-Denials of concealment by Defendant, in Answer to Amended Complaint.

### III.  The Florida Attorney General Documents Provided New Detailed Information; The "Digital Forest" is of Defendant's Making.

BSI responds initially that the documents from the Florida Attorney General, showing detailed facts concerning a pattern of deception by World Avenue, were not in fact available for use in the preparation of the opposition to World Avenue's motion to quash, having arrived after that filing.   They were then Bates numbered, reviewed, selected, and finally presented in

3

sufficient detail in the motion to reconsider to justify re-evaluation of a significant ruling that could have serious ramifications for the balance of this suit.  The order at DE 213 in fact invites Plaintiff to make such a showing to justify an expanded scope.  It is clearly within the Court's discretion to revise its ruling.

The so-called "digital forest" of filings related to the subpoena to Tiggee was precipitated by World Avenue's intervention.  DNSMadeEasy, LLC was prepared to make production in January, 2010 under the subpoena, when World Avenue intervened at the last minute with its motion to quash, forcing BSI and DNS to file motions to protect their interests.  World Avenue's efforts to prevent BSI from unmasking its various domain and trade names used in its spam-based lead generation business is obvious.  World Avenue depends on concealment of identities for the successful transmission of spam and the websites to which traffic is directed.

### IV.  Defendant's Denials Justify the Discovery Sought.

Defendant has complained about the large number of emails claimed (68,300 in the initial group, and over 2,000 additional, detected thus far during this litigation.) World Avenue denies any association with the domain names and trade names that appear in the emails, or those that appear in the websites or landing pages to which the links in the emails are connected.  Thus, World Avenue denies any association with, or responsibility for, the emails that give rise to the claims in this case, despite the substantial detailed allegations in the Amended Complaint and its supporting exhibits.

World Avenue's denials create the need for Plaintiff to press in discovery for all information by which the matching can be made.  Plaintiff should not be forced to rely exclusively on publicly available information where Defendant's very business plan is based on deception and concealment of the identities of the persons involved, including itself.

4

This scenario, including World Avenue's denials, creates the necessity of ferreting out from World Avenue the non-obvious and non-public information by which the emails might be attributed to World Avenue; or conversely, by which they might be excluded as <u>not</u> associated in any way with World Avenue. Thus, the information should work to the benefit of both sides; there is no reason to hide it.

Because of World Avenue's pattern of concealment, Plaintiff is forced to seek out, in discovery, the information by which the names used in connection with the World Avenue email campaigns, including the names tied to landing pages and websites, may be compared against the information in the emails that give rise to this suit, and the landing pages and websites to which they direct traffic.

The specific denials by World Avenue as to the specific allegations of deception and concealment in the Amended Complaint, are as follows:

Amended Complaint, DE 34:

49. WORLD AVENUE conducts business under hundreds of alternative domain names and using identities not registered with the State of Maryland or Florida

WAUSA's Answer at DE 76:

49. To the extent the allegations are directed at others, World Avenue is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they should be deemed denied.

Amended Complaint:

51. Exhibit 26, shows true and correct copies of Whois queries and the results for a sampling of the search terms listed in Exhibit 23, which appear in some of the emails at issue :

ConsumerIncentivePromotions.com – 13900 Jog Road, Suite 203-251, Delray Beach, FL
eMarketResearchGroup.com – 14545 J Military Trail #189, Delray Beach, FL
MyChoiceRewards.com – 14545 J Military Trail #189, Delray Beach, FL
MyPremiumRewards.com – 123 N. Congress Ave. #351, Boynton Beach, FL

NationalSurveyPanel.com – 13900 Jog Road, Suite 203-251, Delray Beach, FL
YourSmartRewards.com – 123 N. Congress Ave. #351, Boynton Beach, FL
SuperbRewards.com – 123 N. Congress Ave. #351, Boynton Beach, FL
ExclusiveGiftCards.com -- 13762 W. SR. 84, Suite 612, Davie, FL 33325
52. Each of the domain names listed above, and the websites hosted at the Uniform Resource Locator addresses or ("URL's"), belong to WORLD AVENUE.

ANSWER:

51. To the extent directed at World Avenue, World Avenue admits that Plaintiff attaches what it purports to be Whois queries and denies the remaining of the allegations in Paragraph 51. To the extent the allegations are directed at others, World Avenue is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they should be deemed denied.
52. To the extent directed at World Avenue, allegations in Paragraph 52 are denied.

Amended Complaint:

53. The "Terms and Conditions" hyperlinks of the websites listed above are identical in content, form, and trade dress, having the same colors, fonts, and text.
54. The websites listed above are maintained and operated by a company called "Net Radiance", which is referenced in the "Terms and Conditions" section of each of these websites. Exhibit 27 shows true and correct copies of these Terms and Conditions.
55. According to the Florida Secretary of State, Net Radiance LLC is an inactive limited liability company, owned by Niupercent, Inc. Exhibit 28 shows a true and correct copy of registration information regarding Net Radiance LLC from the Florida Secretary of State.

ANSWER:

53. Paragraph 53 does not contain any allegations concerning World Avenue and, therefore, no response is required. To the extent a response is necessary, denied.

54. Paragraph 54 does not contain any allegations concernmg World Avenue and, therefore, no response is required. To the extent a response is necessary, World Avenue admits that Plaintiff purports to attach a copy of one of the "Terms and Conditions" and denies the remaining allegations.

55. Paragraph 55 does not contain any allegations concernmg World Avenue and, therefore, no response is required. To the extent a response is necessary, World Avenue admits that Plaintiff purports to cite the registration information regarding Net Radiance LLC from the Florida Secretary of State and denies the remaining allegations. To the extent the allegations are directed at others, World Avenue is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they should be deemed denied.

AMENDED COMPLAINT:

56. Niupercent, Inc. owns WAH. Exhibit 29 shows a true and correct copy of information on World Avenue Holdings LLC from the Florida Secretary of State. World Avenue Holdings LLC, in turn, owns Defendant World Avenue U.S.A. LLC. Exhibit 30.

57. Links on the SuperbRewards.com website redirect to TheUseful.com, and images appearing on the SuperbRewards.com website are actually hosted on TheUseful.com. Exhibit 31 shows a true and correct copy of the image properties of an image appearing on SuperbRewards.com.

ANSWER:

56. Paragraph 56 does not contain any allegations concernmg World Avenue and, therefore no response is required. To the extent directed at World Avenue and a response is required, World Avenue admits that World Avenue Holdings is the Managing Member of World Avenue and that Plaintiff purports to attach a copy of certain registration information regarding World Avenue Holdings, LLC from the Florida Secretary of State, but denies that Niupercent, Inc. is currently the Managing Member of World Avenue Holdings and denies the remaining allegations of this Paragraph.

57. Paragraph 57 does not contain any allegations concerning World Avenue, and, therefore, no response is required. To the extent a response is necessary, World Avenue admits that Plaintiff purports to attach a copy of a website called SuperbRewards. com website and denies the remainder of the allegations. To the extent the allegations are directed at others, World Avenue is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they should be deemed denied.
58. Paragraph 58 does not contain any allegations concerning World Avenue and, therefore, no response is required. To the extent a response is necessary, World Avenue admits that Plaintiff purports to cite a San Francisco Chronicle article and denies the remaining allegations.

AMENDED COMPLAINT:

62. Between July 20, 2004 and September 3, 2005, Plaintiff received on its computer servers in Maryland over 68,000 commercial electronic mail messages promoting products or services offered by World Avenue and its agents. Since July 3, 2005 Plaintiff has received thousands of additional emails from WORLD AVENUE.

63. As used herein, the term, "EMAILS AT ISSUE" means the unsolicited commercial emails that Plaintiff received from WORLD AVENUE, including all emails received up to the date of the entry of any final, non-appealable judgment.

ANSWER:
62. To the extent that the allegations in Paragraph 62 are directed at World Avenue,

7

World A venue denies the allegations and notes that many of the emails Plaintiff is referring to were sent to it by a relative of one of the individuals who owns Plaintiff.

63. Denied.

AMENDED COMPLAINT:

67. The 68,300 EMAILS AT ISSUE to date promote WORLD AVENUE's numerous trade names and domain names; contain hyperlinks that direct the recipient to websites controlled by WORLD AVENUE or its agents, and/or contain hyperlinks that direct the recipient to web servers containing image or text files provided by WORLD AVENUE.

ANSWER:

67. To the extent that the allegations in Paragraph 67 are directed at World Avenue, World Avenue denies the allegations. To the extent the allegations are directed at others, World Avenue is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they are denied.

AMENDED COMPLAINT:

69. Defendant JI directed, participated in, stood to derive revenue, and actually derived revenue, as a result of the transmission of the EMAILS AT ISSUE. JI communicated with the managing agents and employees of WORLD AVENUE, and those entities under contract to him, on each of the dates of transmission of the EMAILS AT ISSUE, beginning on or before July 20, 2004 and continuing up to the present, in furtherance of the campaigns to transmit those emails.

ANSWER:

69. To the extent that the allegations in Paragraph 69 are directed at World Avenue, World Avenue admits that n is the chairman of World Avenue and denies the remaining allegations.

AMENDED COMPLAINT:

71. The EMAILS AT ISSUE sent by the Defendants have multiple elements of falsified, misrepresented, and forged information contained in or accompanying the email headers. These categories correspond directly to conduct prohibited in the MD-CEMA and the FL-CEMA. These categories are as follows :

• Deceptive Subject Lines
• Deceptive Sender Names
• Falsely Registered Sending Domain Names
• Deceptive Information about Origin or Transmission Path in Message Body
• Forged Mailserver Information

ANSWER:

71. Denied.

AMENDED COMPLAINT:

73. In addition, DEFENDANTS' emails contained false and/or misleading information in the subject lines, including that which has the capacity, tendency, or effect of deceiving the recipient. This includes, for example, "win a free gift card" when a purchase is required. The subject lines of Defendants' emails were designed by Defendants and/or their agents in attempt to deceive the recipient. (See Exhibit 34C.)

73. Denied.

AMENDED COMPLAINT:

79. In addition, the EMAILS AT ISSUE contained false and/or misleading header information in the "From:" line about the origin and/or the transmission path of the email because each email contained one or more fictitious, false and/or misleading names and/or email addresses in the "From:" lines. For example, Exhibit 36B falsely states that the email was sent from "Sam's Club".

81. By varying the domain names where it appears that an email originates, DEFENDANTS could avoid spam filters that may focus on bulk mailings while increasing the chance that the Spam will reach its intended audience.

ANSWER:
79. Denied.

81. Denied.

AMENDED COMPLAINT:

83. DEFENDANTS and/or their agents sent "Incentive Awards" emails to Plaintiff BSI that included domain names which were registered to false and/or non-existent entities, as well as entities using false addresses and/or false telephone numbers.

ANSWER:

83. Denied.

AMENDED COMPLAINT:

84. DEFENDANTS registered hundreds of throw-away domain names in order to send the EMAILS AT ISSUE to BSI. DEFENDANTS also used fake names, addresses

9

and/or proxy services in the Whois Registry for the domain to conceal its identity.

85. The URL combinations used in the thousands of EMAILS AT ISSUE redirect to websites controlled by WORLD AVENUE.

ANSWER:

84. Denied.

85. As to the e-mails referenced in the Amended Complaint, denied, and as to all other unproduced e-mails alleged by Plaintiff, World Avenue is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they are denied.

AMENDED COMPLAINT:

92. Plaintiff alleges the EMAILS AT ISSUE contained false and/or misleading header information about the origin or the transmission path of the email. This includes, for example, that the email arrived at BSI's servers containing or accompanied by false information concerning the identities of the computers sending the emails.

ANSWER:

92. Denied.

AMENDED COMPLAINT:

99. All of the conduct alleged above was performed either directly by DEFENDANTS or by persons acting as their agents. All persons who participated in the events alleged above acted as agents for Defendants. All DEFENDANTS (including Does 1-20) authorized, participated in, acquiesced to, consented to and/or were the agents of the other DEFENDANTS in the acts alleged, and initiated, conspired, assisted, participated in, or otherwise encouraged the conduct alleged in furtherance of one or more conspiracies to initiate the emails. The transmissions of the emails identified herein were actions that each of the DEFENDANTS authorized, controlled or directed, or had the ability to authorize, control or direct, and were actions for which each of the DEFENDANTS is liable.

ANSWER:

99. Denied.

    By the denials in its Answer, World Avenue has created the need for discovery as to the

domain names, trade names and fictitious names, in addition to the publicly registered entity

10

names, that are used in its email-based lead generation campaigns.  World Avenue has resisted full disclosure of this information, and Tiggee is one source of at least some of this information.  As supported by the Wagner Declarations, the scope of the names subject to inquiry should not be limited to a mere 41 domain names.

## V. BSI's Research Justifies the Broader Scope, Beyond 41 Domain Names.

Paul Wagner of BSI researched dozens of names that appear in emails that lead to World Avenue, via tedious lookups of trade names, domain names and corporate names appearing in emails or at websites or landing pages, and created Plaintiff's Exhibit 38, which is filed at DE 176-2 and addressed by Mr. Wagner in his affidavit at DE 177-3.  This reverse process, starting with suspected emails and working backward toward the source, is inefficient.  The better route, starting with the names associated with World Avenue, would allow much more direct and comprehensive matching of emails to World Avenue.

Mr. Wagner states:

Exhibit 38 lists (1) the original set of domain names, trade names and addresses from which Plaintiffs Exhibit 23 was derived; (2) a list of World Avenue domain names obtained from a Google search of "operated by Net Radiance"; (3) domains obtained by performing reverse lookups on IP addresses used by multiple World Avenue companies, 213.200.112.* and 66.7.179.*; and (4) domain names found by a reverse DNS lookup on a domain used by Kitara Media, coolpremiumsnow.com (at 69.17.220.125).

DE 177-3 at 3.

Defendant repeatedly argues that a plaintiff should have all data necessary to match the emails to their perpetrators in hand before filing suit.  We respond that this is not entirely possible where the Defendant's business is based on concealment of identities, although a significant quantity of matching, based on publicly available information, was obviously done prior to this suit.  The case entails claims of conspiracy under MCEMA; like any civil conspiracy

case, the full panoply of nicknames, matched to true legal names and roles played, may not be completely exposed until discovery is complete. Plaintiff included John Doe defendants to accommodate this scenario.

Because of the difficulty of proving a conspiracy by direct evidence, a conspiracy may be proved by circumstantial evidence. Daugherty v. Kessler, 264 Md. 281, 286 A. 2d 95 (1972). A "conspiracy may be shown by inferences drawn from the nature of the acts complained of, the individual and collective interests of the alleged conspirators, the situation and relation of the parties, their motives and all the surrounding circumstances preceding and attending the culmination of the common design." Id. at 292, 286 A. 2d at 101 (citing Western Md. Dairy v. Chenowith, 180 Md. 236, 23 A. 2d 660 (1942).

Despite the possibility of proving a conspiracy by inference, Plaintiff should not be forced to do so when more objective evidence is available. BSI should be permitted a reasonably broad scope to gather the information necessary to match conduct to the co-conspirators as alleged in the Amended Complaint. This is not a "fishing expedition" as defendant has argued. Rather, it is an effort to unmask an intentionally cloaked and concealed set of identities, used by those responsible for a defined set of actions. The "spray" of emails generated by those actions (as part of the "lead generation business") emanates from World Avenue and its agents; the unmasking is necessary to ascertain, as clearly as possible, which emails are attributable to World Avenue.

## VI.   DNSMadeEasy, LLC has Expressed Willingness to Cooperate.

DNSMadeEasy, LLC is apparently caught in the middle of the battle between Plaintiff and Defendant over the unmasking of World Avenue's various identities. Through counsel,

DNS has expressed its willingness to cooperate in producing documents, has made an initial production of some 23 pages on May 27, 2010 (copied to Defendant by Plaintiff), has described in general terms the categories of information within its control, and has also expressed its reluctance to aggravate its customer.  This is a case of World Avenue exerting pressure on DNS to restrict the information disclosed.   BSI asks that the order be expanded to include at least the 168 names, including domain names, fictitious names, trade names and legal entity names, attached to the subpoena.

_____/s/_____
Stephen H. Ring
**STEPHEN H. RING, P.C.**
506 Main Street, Suite 215
Gaithersburg, Maryland 20878
MD Bar Id. No. 04731764; USDC, MD: #00405
Telephone: 301-563-9249
Facsimile: 301-563-9639


_____/s/_____
Michael S. Rothman
E. Jefferson Street, Suite 201
Rockville, MD 20850
Phone: (301) 251-9660
Fax: (301) 251-9610

*Attorneys for Plaintiff*

## Certificate of Service

I certify that a copy of the foregoing documents was served on the date of ECF filing, via the ECF system, on all counsel of record.



_____/s/_____
Stephen H. Ring