IN THE U.S. DISTRICT COURT FOR MARYLAND
Southern Division
_____

| | |
|---|---|
| **BEYOND SYSTEMS, INC.** | * |
| | * |
| Plaintiff | * |
| | * |
| v. | *   **Case No. PJM 08 cv 0921** |
| | * |
| **WORLD AVENUE U.S.A., LLC** | * |
| successor by merger to NIUTECH, LLC., | * |
| **DBA The Useful,  et al.** | * |
| | * |
| Defendants | * |
| | * |

_____

## PLAINTIFF'S OPPOSITION TO DEFENDANT WAUSA'S MOTION TO COMPEL AS TO DEFENDANT'S THIRD REQUEST FOR PRODUCTION OF DOCUMENTS.

Plaintiff Beyond Systems, Inc. ("BSI") hereby opposes Defendant World Avenue USA, LLC's ("WAUSA's") Motion to Compel as to Defendant's Third Request for Production of Documents ("Motion").

## I.  Overview

The Motion should be denied in its entirety.  It seeks an order requiring production of  documents that BSI has already produced; documents BSI has agreed to produce, in some instances under arrangements for manageability; documents that are unrelated to any defense or claim or are so marginally related that the burden of production, and the intrusion on privacy, outweigh any marginal probative value; documents consisting of intermediary views of data created by investigators and/or

1

experts in other litigation; and documents that would simply be unduly burdensome to produce.

Plaintiff has produced thousands of pages of responsive documents as summarized in the attached letter from Ring to Greenberg, Traurig dated March 23, 2010, attached as Exhibit E-5, and an email from Ring to Greenberg Traurig dated March 24, 2010, attached as Exhibit E-6.  (Both sides have produced documents in digital form, including via pdf attachment to emails, via disc, and via FTP sites.)  Most importantly, BSI has produced over 70,000 emails that are the basis for the claims asserted in this case.  Moreover, Defendant's broad and far-ranging requests would require disclosure of private, confidential and privileged communications between and among individuals and businesses whose communications pass through BSI's servers, including communications involving BSI's customers.   Some of the items sought have been the subject of discovery rulings in the Kraft case.  See order at DE 207 in that case, attached as Exhibit E-3. ("The Court is not persuaded that Plaintiff acted in bad faith to alter said emails. As such, an order requiring Plaintiff to produce imaged copies, which would reveal confidential client information (e.g. social security numbers, bank account numbers, etc.) is not warranted in this case. See Fed. R. Civ. P. 26(b)(2)(c)(iii) (the court may limit discovery where "the burden or expense of the proposed discovery outweighs its likely benefit . . ."). Id. at 2.

## II. The Barale Materials

The document requests (Set 3) focus largely on materials from Sebastian Barale, a prolific spammer who operated under the name "MailCompanyX" or "MCX," and acted

as a marketer for WAUSA and/or other Ji entities.  (Entities reflected in Exhibits E-1, E-2 and E-8, attached.)  Thousands of emails from MCX promoting WAUSA's lead generation schemes, some of which also promoted Kraft's Gevalia brand of products, were received by BSI. A tremendous amount of time and effort was invested by the parties in the <u>Kraft</u> case to recover and evaluate the data that was recovered from Mr. Barale's servers, including services rendered by employees of KPMG as investigators and expert witnesses.

WAUSA'S Document Request 1 seeks "All documents produced by Sebastian Barale and MailCompanyX . . . "  The Motion at p.14  admonishes that "BSI should produce the complete, unaltered images" of this data – i.e., the unredacted raw data. Plaintiff is willing to produce a raw, forensic copy of the data recovered from two Barale/MCX servers to the extent it is required by stipulation or court order in Kraft, but objects to the broad request for work product derived from, or created in the process of, examining that raw data for several reasons, including the volume of data, the various permutations that can be created during the examination process, the burden, the lack of relevance, and the equal opportunity for WAUSA to conduct its own examination of the raw data.

KPMG was engaged by Steptoe and Johnson as counsel for BSI in the <u>Kraft</u> suit. Counsel for BSI in the instant case are also co-counsel of record for BSI in <u>Kraft</u>.  To the extent that production of Barale-related data and communications is required by stipulation or court order in <u>Kraft</u>, BSI will abide by those terms as they may also be

3

applied in the instant case.   Attached as Exhibit E-4 is a copy of KPMG's letter of April 13, 2010 stating its objections to WAUSA's subpoena for much of the same information sought here.  BSI adopts those same objections, and will abide by the outcome via order or stipulation.

### III.  Facts

WAUSA has used its multiple motions and memoranda as opportunities to attack BSI's status as an ISP, and to paint WAUSA as a legitimate online marketing operation. (World Avenue describes itself as "an Internet marketing company that promotes products and/or services to the consuming public through third party affiliate networks and e-mail marketing companies."  Appleby Declaration at 34-17, ¶ 4.)  WAUSA has fashioned its discovery in this context, forcing BSI to include some factual background, for purposes of creating reasonable parameters for WAUSA's far-flung discovery requests.

### A. BSI as an ISP.

BSI is a small Internet computer service provider ("ICSP" under MCEMA; colloquially, "ISP") incorporated in, and maintaining servers in, Maryland.  On the eve of the CAN-SPAM Act in December, 2003, BSI filed 20 suits against some of the most prolific spammers who had been clogging its servers with unwanted commercial email. All of those suits have concluded.  BSI filed four other spam suits, two of which remain pending (Kraft, referenced in the Motion, and the instant case).   Three of the BSI spam suits (BSI v. Keynetics, Inc., Kraft, and the instant case) entailed substantial time by BSI,

due to the extensive discovery and depositions involved.  In the <u>Kraft</u> consolidated

proceedings, Paul Wagner of BSI was deposed for 9 days.  WAUSA and other defendants

in BSI's spam suits have alternately criticized BSI for not adequately preserving the

emails on which its statutory claims are based, and then criticized BSI for being too

litigious for having saved the emails.

     WAUSA has gone to extremes to gather information it apparently feels may

discredit BSI as an ISP, serving document subpoenas on more than 50 individuals and

entities including family and friends of Paul Wagner, employers of his mother and

brothers, Joe Wagner's university, Joe Wagner's thesis advisor, Joe Wagner's former

landlord, the Veterans Administration, Stanford University, and dozens of other

customers, friends and family. as well as persons having little or no connection to BSI.

By the end of this week, WAUSA will have taken video depositions of Paul Wagner's

father, BSI's accountant, Verizon's marketing representative (for the wrong division of

Verizon, having nothing to do with BSI), and other non-parties; and conducting video

inspections of BSI's computers at two locations in Maryland and one in Washington,

D.C.  This onslaught is gross overkill, and pure harassment.  The information gathered

will ultimately show that BSI is simply a small ISP within the meaning of MCEMA.

     For the scope of discovery as to ISP status, the statutory language should be

considered.  The Maryland Commercial Mail Act (MCEMA) provides in relevant part:

[Commercial Law] § 14-3001 Definitions

. . .

    (1) "Interactive computer service provider" means an information service,

5

system, or access software provider that provides or enables computer
access by multiple users to a computer service.
(2) "Interactive computer service provider" includes a service or system
that provides access to the Internet and systems operated or services
offered by a library or educational institution.

§ 14-3002 Unauthorized, false, or misleading information through
electronic mail
. . .
(b) Prohibition.- A person may not initiate the transmission, conspire with
another person to initiate the transmission, or assist in the transmission of
commercial electronic mail that:
(1) Is from a computer in the State or is sent to an electronic mail address
that the sender knows or should have known is held by a resident of the
State; and
. . .
 (ii) Contains false or misleading information about the origin or the
transmission path of the commercial electronic mail; or
(iii) Contains false or misleading information in the subject line that has
the capacity, tendency, or effect of deceiving the recipient.
(c) Presumption.- A person is presumed to know that the intended
recipient of commercial electronic mail is a resident of the State if the
information is available on request from the registrant of the Internet
domain name contained in the recipient's electronic mail address.

§ 14-3003 Penalty
A person who violates this subtitle is liable for reasonable attorney's fees
and for damages:
(1) To the recipient of commercial electronic mail, in an amount equal to
the greater of $500 or the recipient's actual damages;
. . .
 (3) To an interactive computer service provider, in an amount equal to the
greater of $1,000 or the interactive computer service provider's actual
damages.
[2002, chs. 323, 324.]

     MCEMA clearly sets no requirement that in order to qualify as an ICSP (again,

using "ISP" colloquially) a claimant must charge fees at all, charge fees in any particular

amount, generate any particular revenue, be profitable, devote itself exclusively or

primarily to the services described in the statute, have any certain number of owners or employees, use any particular quantity or type of equipment or software, use any particular quantity or type of bandwidth, confine all of its physical equipment or points of presence to Maryland, use any particular size or type of physical facility, collaborate with others or not, or refrain from allowing litigation to occupy substantial blocks of its time. In fact, the statute <u>encourages</u> the filing of private lawsuits in furtherance of its public policy.  Thus, discovery aimed at these collateral, imaginary requirements, especially to the extent such discovery becomes abusive, should be forbidden.

The Florida statute (FL CEMA) states in relevant part:

**668.603 Prohibited activity.**

A person may not:

(1)    Initiate or assist in the transmission of an unsolicited commercial electronic mail message from a computer located in this state or to an electronic mail address that is held by a resident of this state which: . . .

    (b)    Contains falsified or missing routing information or otherwise misrepresents, falsifies, or obscures any information in identifying the point of origin or the transmission path of the unsolicited commercial electronic mail message;

    (c)    Contains false or misleading information in the subject line; or

    (d)    Contains false or deceptive information in the body of the message which is designed and intended to cause damage to the receiving device of an addressee or of another recipient of the message. . .

668.606 Remedies.

\*    \*    \*

(3)     A prevailing plaintiff in an action filed under this part is entitled to:

     (a)     An injunction to enjoin future violations of s. 668.603.

     (b)     Compensatory damages equal to any actual damage . . . or liquidated damages of $500 for each unsolicited commercial electronic mail message that violates s. 668.603.

     (c)     The plaintiff's attorneys fees and other litigation costs reasonably incurred in connection with the action.

Thus, FL CEMA does not address claims by ISP's, leaving the remedy uniform for all "plaintiffs."   Thus, discovery as to facts that might bear on BSI's ISP status has even less relevance under MCEMA.

BSI has provided Internet and computer services to others since its inception in 1996, enabling computer users to, among other things, access the Internet, access BSI-hosted Internet services (such as e-commerce services, database services, and backup services), and exchange e-mail.  As an ISP, BSI's servers receive and deliver thousands of e-mails each day to its individual and business subscribers.  BSI offers and provides a variety of other services, including the hosting of websites.  In addition to legitimate email, BSI receives each day thousands of unsolicited and misleading commercial e-mails ("spam.")  See, DE 168, Affidavit of Paul Wagner.

### B. WAUSA and the Ji Companies.

WAUSA is part of a sprawling online "lead generation"  business engineered by Defendant Niuniu Ji ("Ji").  Through dozens of corporate entities created by Ji, Defendants and the other Ji entities initiate, conspire and assist in the initiation of,

8

unlawful commercial emails, resulting in at least 70,287 received on BSI's servers in Maryland.

Defendants create and oversee email advertising campaigns to be broadcast by affiliate networks, which are groups of anonymous marketers who act as Defendants' agents by sending the advertisements via bulk email.  (See Levine Report at DE 3-3, p. 8; Amended Complaint, DE 34 at ¶¶ 35, 45.)

WAUSA and the other Ji companies are the outgrowth of Ji's foray into Internet marketing that began in his college dorm room about a decade ago.  Ji's first such venture was a clearinghouse for charitable donations that was never profitable and essentially stopped functioning in 2002.  FL AG 759.  (The documents cited here as FL AG 001, etc., are also filed at DE 215.)  Ji then found profit in the "lead generation" business, gathering and selling names, postal addresses and email addresses from various categories of prospective customers, via the Internet.  Defendants now reap a bounty ranging from $.90 (for a routine retail lead) to $75 (for a mortgage lead) for each prospect.  Relying on bulk email sent via affiliate networks, Defendants harvest thousands of leads per day.

Mr. Ji's lead generation operations have enjoyed dramatic growth.  With the aid of

his father, Yuandon Ji, a systems engineer and entrepreneur (FL AG 760), the young Mr.

Ji has created a collection of over two dozen corporate entities generating many millions

of dollars in sales annually. FL AG 13, 22.  The main base of operations occupies a

9

36,000 square foot office space in Sunrise, Florida.  (FL AG 2015)   Other operations are

housed in St. Thomas, USVI.  Mr. Ji also created entities in Bermuda.[1]

WAUSA (formerly Niutech, LLC) relies on commercial email messages offering

"free" gifts.  In fact the gifts are not free, but require purchases of other products or

services.  (See, e.g., Declaration of Michelle Huerta, at BSI FL AG 0002; interview

notes, employee Anne Marie Foster, at BSI FL AG 00012.)   The strategy is to require so

many web page visits and form fill-ins that the prospect is worn down, and "fulfillment"

(actual delivery of the "gift") is rare.  (Matthew Cohen interview at BSI FL AG 00015.)

Defendants meanwhile "submit" the harvested contact data from the page fill-ins,

receiving compensation at rates from .90 for a customer's name and zip code, or up to

$3.00 for a full postal address.  FL AG 15, 17.  Other sources state that World Avenue

was paid "as little as a nickel per lead . . . and as much as $50 to $75 per lead for a

mortgage refinance lead."  FL AG 22. Handling angry customers who complained about

---

1  Public records and websites, including sample records from the Florida and Delaware
secretaries of state filed at DE 215, reveal at least the following entity names for Mr. Ji's
companies: 1) World Avenue USA, LLC t/a "The Useful"; 2) TheUseful, LLC "a World
Avenue Company;" 3) World Avenue Holdings, LLC; 4) Niupercent, Inc.; 5) Net Radiance,
LLC; 6) World Avenue Management, Inc., f/k/a Niupercent, Inc.; 7) World Avenue IP, LLC;
8) World Avenue, LLC; 9) Apercent, LLC; 10) World Avenue (Bermuda) Limited Corp.;
11) Infrastructure International Limited Corp.; 12) World Avenue Services, LLC; 13)
Intrepid Investments, LLC; 14) Right Mail Marketing, LLC; 15) Q Holdings, Inc; 16) Vente
Holdings, Inc.; 17) Magnacent, LLC; 18) Ji Holdings, LLC,;19) Magdalen Holdings, Inc.;
20) Bravatas LLC,; 21) Iadexpress, LLC; 22) Gift Reward Center, LLC; 23) Outonthenet
LLC; 24) Jinius, Inc., 25) WA-BVI, Ltd.; 26) Warwick Interactive, LLC; 27) Bristol
Interactive, LLC; 28) Island Interactive, Inc.

deception over the word, "free," the customer service employees were instructed not to give out the physical address of the office.  FL AG 16.

Ji's "World Avenue" operations grew from 10 employees to 230 in 2006.  FL AG 22.  At that time the business generated 3 to 5 million customer leads per month.  Id.  The offers of "free gifts" under various trade names by WAUSA and its related entities have generated thousands of consumer inquiries and hundreds of complaints. FL AG 23.

World Avenue relies on affiliate marketing for emailing its promotions, using its own lists of email addresses in addition to the affiliates' lists.  FL AG 2955, Peterson deposition.   Due to division and mingling of functions, few employees grasp the entire picture of the business model.  FL AG 17.  Plaintiff has identified over a dozen employees who have each worked for least two Ji companies simultaneously.  Exhibit E-9.

World Avenue trades under dozens of names, including the corporate names listed above, plus Niuniu Ji d/b/a Emarket Reseearchgroup, Netprime, Theuseful, Theuseful.com, Earn-Free-Gifts, Get a Gift Online, Online Easter Gifts, Great Gift Rewards, Funny Free Clips, America's Top Brands, Your Smart Rewards, Incentive Reward Center, Superb Rewards, Consumer Incentive Reward, Get Your Free Bracelet, Online Gift Rewards, Premiere Gift Center, Your Exclusive Rewards, Online Mother's Day Gifts, United Opinion Panel, Consumerincentivepromotion, Mychoicerewards.com, Incentivegiftcenter.com, Productopinionpanel.com, 123specialgifts.com, Topgiftincentives.com, Exprewards.com, Myselectgifts.com, Incentive gift center, My

11

choice rewards, Product Opinion Panel, 123 Special Gifts, Top Gift Incentives, My

Select Gifts, Program Reward Center, Online Reward Center, Choice Survey Group, My

Premium Rewards, American Survey Panel, Online Survey Panel, EMarket Ads,

National Survey Panel, Credit for 1 Year, Consumer Taste Panel, Brand Survey Panel,

Shield Your PC, National Issue Panel, Smart Gift Rewards, My First Savings Bond, My

Great Rewards, Premium Products Online, Consumer Gift Center, Exclusive Gift Center,

Exclusive Gift Cards, My Great Incentives, Consumers Choice Rewards, Reward Gift

Center, My Cool Rewards, Top Choice Incentives, My Exclusive Rewards, My Supreme

Rewards, Premium Holiday Gifts, Reward Center USA, Exp Rewards, Jinius, Free Hot

Gifts, I Got My Free Gift, Hot Gift Zone, Online Promo for You, and others, all using the

street addresses 6001 Broken Sound Parkway, Suite 200, Boca Raton, FL 33487 (Palm

Beach County), or, more recently, 1613 NW 136th Avenue, Suite 100, Sunrise, FL

33323.  FL AG 35, -215, -945.

On August 20, 2007, the Florida Attorney General filed a civil action in the

Circuit Court for Palm Beach County, Florida against World Avenue USA, LLC and

Niuniu Ji  (Case no. #50-2007-013940XXXXMB AD; the "FL AG action;" complaint at

FL AG 211). The complaint in that action focuses on the promotion of "free" gifts that

are not in fact free, as a violation of the Florida unfair trade practices act. FL AG 211-

212. (See also, Second Amended Complaint at FL AG 299.)  BSI contends that the same

deception is present in many of the emails that give rise to this suit.

The FL AG complaint alleges the defendants' misdeeds in great detail, including

the following:

> 17, Consumers typically come into contact with Defendants either by receiving an e-mail solicitation, or an internet "pop-up" or by doing a search on Google or some other search engine, which Defendants' advertisement appears as a sponsored link. Defendants use a wide variety of trade names when contacting consumers, but the gist of each advertisement is believed to be always the same: that consumers can receive "free" merchandise if certain program requirements are met. A sample of one of Defendants' many advertisements is attached hereto, as Exhibit "A." . . .

FL AG 215.

The FL AG complaint contains a description of the "registration path" that includes the defendants' "landing page." FL AG 217. Similar allegations are made in the instant suit. Amended Complaint, DE 34 at p. 13. These allegations are repeated in the Second Amended Complaint (DE 177-2 at para 54 – 58).

Mr. Ji's propensity to create new entities on an *ad hoc* basis is further illustrated by the facts behind the following allegations by the FL AG:

> 37. … Defendants did not timely infonn the [Florida] ATTORNEY GENERAL's office concerning the Virgin Islands relocation efforts, and they only disclosed these facts after it became clear that the ATTORNEY GENERAL's office had independently learned of these efforts. … 38. When Defendants learned that their business might not receive relocation tax incentives from the Virgin Islands, their authorized representatives informed Virgin Islands Officials that the company could simply move its' operations to Bermuda, and further informed Virgin Islands Officials that NTUNIU JI had already incorporated a company under the name of WORLD AVENUE BERMUDA, LLC.

FL AG 220-221.  Thus, Mr. Ji has literally been a moving target, creating new entities, playing one island against another, and ultimately moving his physical location offshore.

The FL AG considered World Avenue's "free" offers to be at the core of its "long-standing deception:"

> NIUTech Group should be barred from "any and all" use of the word "free" because it has proven itself incapable of using the word in any manner other than a "misleading" manner. Watering down an AVC with adjectives such as "misleading" would enable NIUTech to continue its long-standing deception for many more years, by simply continuing to deny that its use of the word "free" is misleading. This is particularly true where the AVC does not factually admit that any deception ever occured. Niutech has always claimed that its usage of the word "free" is not misleading because of its "terms and conditions" disclosures, but those disclosures, even if they were revised so as to be more clear and transparent, would still not be adequate, because they are not always read by consumers. The agreement would be more readily enforceable and meaningful if it barred use of the word "free" altogether, and any similar words.

FL AG 2874.  Fearing Ji's move offshore, the FL AG moved quickly to settle, calculating potential damages at $6.3 million to $63 million, depending on whether the penalties were assessed at $1,000 per violation, or at the maximum $10,000 per violation.  FL AG 284-287; FL AG 1384, -1022.  The spreadsheet used for these calculations describes advertisements containing the same or similar representations regarding "free" gifts as appear in the emails that give rise to this suit.  Id.  The FL AG hurried to close the settlement for a relatively modest $1 million.

14

In the context described above, Defendants have provided their marketers (spammers) with images, text and other features, uploaded from Defendants' servers, and have provided assistance in the advertising campaigns.  By providing this content, Defendants have a direct hand in the creation and control of the emails and their content. WAUSA engaged in this type of interaction with Barale, about whom WAUSA seeks to force BSI to produce data.  WAUSA has also sought the same type of information from BSI in connection with all of the emails that give rise to this suit, which were likewise sent by WAUSA's own marketing representatives.  WAUSA is in a far better position than BSI to know about the activities of its own marketers.

Also, as shown in the facts recited above and in the exhibits, Defendants have designed their business model to conceal their identities from the recipients of the emails that promote their marketing schemes.  The task of matching emails to Defendants, and providing related data, is thus compounded by Defendants' own actions, and requires additional discovery before BSI can complete the task of matching all violative emails to Defendants.  Plaintiffs have filed two motions to compel, and a motion for leave to file Second Amended Complaint (naming additional Ji entities as defendants), all of which remain pending.

## IV.   ARGUMENT

**A.   BSI Has Already Produced (or Agreed to make arrangements to produce) All Discoverable Responsive Documents in Its Possession, Custody, and/or Control.**

**1.   BSI's General Objections**

BSI has objected to the abusive and harassing nature of WAUSA's broad document requests, which are vague, broad and sweeping in nature.  This approach is consistent with WAUSA's other abuses of the discovery process: it has issued over fifty (50) subpoenas to non-parties as described above., including Paul Wagner; his parents; his brothers; his mother's and brothers' employers, university, thesis advisor and former landlord (St. Luke's House IT Director; IFC; Veterans Administration; Stanford University; and dozens of other customers, friends and family.  In its latest effort to harass Plaintiff, its clients and family, WAUSA issued subpoenas to Motorola (BSI's client 11 years ago), the NASD (BSI's client 12 years ago) and Andrea Danko-Koenig (Director of Human Relations, St. Luke's House and Paul Wagner's mother's employer) absurdly requesting from them "1. A copy of all MailCompanyX Inc. servers…" and "2. A copy of all Sebastian Barale servers…"

While Rule 26 of the Federal Rules permits a party to obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party if it appears reasonably calculated to lead to admissible evidence, Defendant has not articulated why the information it seeks is relevant, no less discoverable.

## 2.    Requests for Barale and MAILCOMPANYX Documents.

Defendant complains that the following requests remain unanswered :

Request No. 1 --

> *All documents produced by Sebastian Barale and MailCompanyX, Inc. in the Kraft Action or produced to you directly.*

Request No. 2 --

 *All communications between you and your counsel and Sebastian Barale or MailCompanyX.*

Request No. 4 --

 *All documents concerning IP Addresses associated with Sebastian Barale or MailCompanyX.*

Request No. 5 --

 *All documents relating to Servers associated with Sebastian Barale or MailCompanyX.*

Request No. 6 --

 *A copy of the Servers received from Sebastian Barale in the Kraft Action or which were produced to you directly or indirectly.*

Request No. 11 --

 *A copy of any and all draft and signed settlement agreements between you and Sebastian Barale andlor MailCompanyX, Inc.*


**BSI Responses** :

 In its Response to Document Request No. 1, BSI describes how it managed to

unravel the Defendant's affiliate code system and determine that the data contained on

the Barale databases were also attributable to Defendants.  *See* Ex. E-2 (Req. No. 1, BSI

Responses to Third RPD).  BSI obtained the data as a result of the analysis of its experts,

including KPMG.  BSI possesses the analysis data in the form of five (5) .sql files and a

few other file fragments, which were derived from the two (2) original Barale servers.

KPMG, who is Plaintiff's expert consultant in the litigation in *Beyond Systems, Inc. vs.*

17

*Kraft Fods, Inc. et al*., forensically copied the raw data from the hard drives of the servers, analyzed and catalogued the data, and, based on the analysis, extracted, reconstructed and stored numerous tables in the five (5) .sql files.  The largest file, mail.sql, contains hundreds of millions of email addresses and is 72 GB in size, uncompressed.  BSI produced three (3) of the .sql files to Defendant (i.e., "aolers 20090311 1041.sql.zip," "ion 20090312 1158.sql.zip" and "SRE 20090311 1108.sql.zip").  However, Defendant found the data to be offensive, inadequate and unacceptable.  See, World Avenue Exhibit 1 in support of its Motion.  Instead, Defendant seeks the original, raw data BSI received from Sebastian Barale and MailCompanyX in the same form received.  BSI itself never received the original, raw data from KPMG.  While KPMG has the original data, it has raised objections to the discovery of such information as its own work product.  *See* Ex. E-3 (KPMG Objections to WAUSA Subpoena).  BSI likewise objects to the extent that Defendant additionally seeks to discover confidential and privileged information of BSI's non-testifying experts or the analyzed data that BSI possesses regarding the raw data it received from Barale and MailCompanyX.  Regardless, BSI will abide by orders and stipulations reached as to this body of the Barale data.

Regarding communications between BSI and its counsel on the one hand, and Sebastian Barale or MailCompanyX on the other, BSI will abide by rulings and any stipulations in the <u>Kraft</u> case, to the extent they apply here as well.

18

Regarding documents concerning IP Addresses associated with Sebastian Barale or MailCompanyX, BSI's responses already address this.  WAUSA contradicts itself in the following three sentences:

> BSI has produced SPAM-W000001 through SPAM-W068306, and advised that 57,305 of the Sebastian Barale E-Mails At Issue are "in" the 68,306 e-mails.  It also claims that it has identified the Sebastian Barale E-Mails At Issue in an index that it produced.  BSI has not, however, identified pursuant to Rule 33 exactly which documents within the 68,306 are the emails responsive to this particular request.

> [World Ave's MTC RRPD Set 3--Memorandum in Support, pp. 12-13]

First, it can be readily observed that each .mbx file as produced is a single document.  The emails were retained as part of larger daily .mbox and .mbx files.  Second, BSI <u>has identified</u> the Barale emails in its table of violations.  WAUSA concedes this in its second sentence, but then illogically asserts in its third sentence that BSI <u>has not identified</u> the Barale emails within the 68,306.

In BSI's Response to Defendant's Second Set of Interrogatories, Plaintiff explains how the emails at issue can be attributed to Sebastian Barale.  *See* Exhibit E-7 (Plaintiff's Responses to WAUSA's Second Set of Interrogatories, Nos. 1 and 2).

### 3.   Documents Related to the Emails at Issue

<u>Request No. 3 –</u>

> *All e-mails upon which suit is or was brought by you in the Kraft Action or in any action brought by you that are identical to any of the EMAILS AT ISSUE.*

Request No. 7 –

    *All documents in native format which were at issue in the arbitration styled Hypertouch vs. Stamps. com, AAA Arbitration Case Number 74 117 00953 04 Subr., and which use the words "superbrewards" or any other address.*

Request No. 12 –

    *All computer materials and documents relating to the results of the process by which of each by you, Hypertouch, Inc, or James Joseph Wagner "clicked-through" or "clicked" on any link in any of the E-MAILS AT ISSUE, including native file versions of all output of such "click-throughs."*

Regarding whether any e-mails in other suits are identical to the e-mails giving rise to this suit, to avoid any doubt, those emails are available for download at the following links:

http://www.beyondsystems.net/UCE/Connexus/Connexus_20050215-20080531_Bt.mbx.zip

http://www.beyondsystems.net/UCE/Kraft/Kraft_20050214-20080526_Bt.mbx.zip

Each .mbx file as produced is a single document.  WAUSA has already demonstrated that it is capable of performing the trivial task of identifying identical emails.

Regarding documents from the Hypertouch vs. Stamps. com arbitration, as the last sentence in BSI's RRPD says, " . . . , Plaintiff will produce responsive, non-privileged documents in its possession within 10 days.

## WAUSA'S DOCUMENT REQUEST 12:

All computer materials and documents relating to the results of the process by which of each by you, Hypertouch, Inc, or James Joseph Wagner "clicked-through" or

"clicked" on any link in any of the E-MAILS AT ISSUE, including native file versions of all output of such "click-throughs."

Plaintiff agreed to produce, and will produce responsive, non-privileged

documents in its possession within 10 days.

## V. DOCUMENT REQUESTS RELATING TO BSI'S STATUS AS AN ISP

### WAUSA'S DOCUMENT REQUEST 8:
A copy of all Server and Configuration Logs shared or used by you or

Hypertouch, Inc.

WAUSA's argument does not explain why BSI's email server logs are relevant to

BSI's status as an ISP.  The emails themselves contain the same substantive data as would

appear in the logs.  WAUSA argues:

> This information is needed by WAUSA's expert in order to perform
> a complete analysis of issues which include spoliation and the recreation
> of evidence through what BSI refers to as the "rendering" process.

This statement does not explain <u>what</u> analysis WAUSA wants its "expert" to

undertake, or how, or why.  BSI's email server logs reflect literally hundreds of millions

of transmissions; their production would be unwieldy to say the least.

Defendants have given no proof of spoliation as justification for obtaining the

logs.  Mr. Krawetz's report, served on April 1, 2010, does not mention the word

"spoliate" or "spoliation."   His suggestion on pp. 39-41 of possible "tampering" is

completely unsupported, and would not be clarified with server logs.  WAUSA's

argument about recreating evidence through "rendering" is nonsensical.  A "rendered"

email is created simply by displaying an original email (from the .mbx file) in a browser,

which interprets the email's HTML source code to format the email and retrieve

referenced images from remote servers.  Plaintiff has done that for a few exhibited

emails.  WAUSA can do the same.  WAUSA's assertion that:

> The E-Mails At Issue, as produced by BSI, contain multiple
> deletions of relevant information, dead hyperlinks and unreadable
> source codes (Request no. 8)

is vague and unsupported.  What source code is "unreadable?"  None of the imagined,

potential issues above depend on mail server logs.

Moreover, WAUSA has not shown that BSI actually did act in bad faith to alter

the emails giving rise to this suit.  This same court found no such act by Plaintiff in

Beyond Systems, Inc. v. Kraft et al., ruling as follows:

> The Court is not persuaded that Plaintiff acted in bad faith to
> alter said emails. As such, an order requiring Plaintiff to
> produce imaged copies, which would reveal confidential client
> information (e.g. social security numbers, bank account numbers,
> etc.) is not warranted in this case. See Fed. R. Civ. P. 26(b)(2)(c)(iii) (the court may
>  limit discovery  where "the burden or expense of the proposed discovery outweighs
> its likely benefit . . .").

DE 207, order of 2009-08-28.  This finding logically applies to server logs in

particular, which contain communications from doctors, lawyers and minors.  These

persons would have to be located, notified of pending production, and approve of

proposed redactions.  BSI has never been compelled to produce its server logs.  The

detection, redaction, sequencing and compilation of many millions of records from

hundreds of files would be extremely burdensome relative to the undemonstrated

likelihood of it leading to the discovery of admissible evidence.  This is especially true

given that the substantial information appears in the headers of the emails by design, the

number of bytes likewise is directly reflected in the emails (and would be trivial to

forge), and the rest (and majority) of the log data is routine, repeated handshake

commands.

> If production were required, BSI would expect reciprocal treatment, being

allowed to obtain copies of Defendants' email and web server logs pursuant to BSI's

document requests 7, 18 and 22, which are the subject of BSI's own motion to compel.

### WAUSA'S DOCUMENT REQUEST 9:
A copy of all documents reflecting your annual gross revenues for each year from 2003 to the present.

### WAUSA'S DOCUMENT REQUEST 10:
A copy of all documents reflecting the portion of your annual gross revenues for each year from 2003 to the present which are attributable to settlements or judgments obtained by you and/or Paul Wagner during the course of litigation in which you and/or Paul Wagner brought any claims related to commercial e-mail.

> BSI will produce documents reflecting the information in Requests 9 and 10 to

the extent required by order or stipulation in Kraft or in the instant case.

## VI. DOCUMENT REQUESTS RELATING TO BSI'S ALLEGATIONS REGARDING THIRD PARTIES INVOLVED WITH THE EMAILS AT ISSUE

### WAUSA'S DOCUMENT REQUEST 13:
All documents concerning or supporting your averment at DE 126 and elsewhere in the record that AcceIBiz or AccelerateBiz was involved with the E-MAllS AT ISSUE.

BSI has produced responsive documents.  BSI will produce additional responsive

documents within 10 days.

**WAUSA'S DOCUMENT REQUEST 14:**
All documents concerning or supporting your allegation in the Complaint that
Alan Ralsky was involved with the E-MAILS AT ISSUE.


BSI has produced its responsive documents.  Ralsky__.zip (3.3 MB).



**WAUSA'S DOCUMENT REQUEST 15:**
All documents concerning or supporting your allegation at DE 126 that Scott
Richter and OptinRealBig were involved with the E-MAILS AT ISSUE.


BSI has produced responsive documents.  BSI will produce additional responsive

documents, if any, within 10 days.

**F.      Defendants Are Not Entitled to Sanctions.**

BSI has made the required production pursuant to its announced intent to do so

prior to service of the Motion, and has stated valid objections to WAUSA's overbroad,

vague and unduly intrusive document requests.  There is no basis for sanctions.

## V.  CONCLUSION

For all these reasons, Defendant's Motion to Compel as to Defendant's Third

Request for Production of Documents should be denied and for Sanctions should be

denied.

Respectfully submitted :


_____/s/_____          _____05/03/10_____
Stephen H. Ring                              date
**Stephen H. Ring, P.C.**
506 Main Street, Suite 215
Gaithersburg, Maryland 20878
USDC, MD: #00405
Telephone: 301-563-9249
Facsimile: 301-563-9639


_____/s/_____          _____05/03/10
Michael S. Rothman, Esq.                     date
401 E. Jefferson Street Suite 201
Rockville, MD 20850
USDC MD Fed. Bar No. 14578
Telephone: (301) 251-9660
Fax: (301) 251-9610

*Attorneys for Plaintiff*

25

## EXHIBIT LIST

E-1     Letter, Homer Appleby, register fictitious names to Magnacent, LLC
E-2     Lists of fictitious names
E-3     Kraft DE 207, order on native format, litigation proceeds
E-4     KPMG Objections to WAUSA Subpoena
E-5     Letter, March 23, 2010, Ring listing document production
E-6     email, Ring to Greenberg Traurig dated March 24, 2010
E-7     Plaintiff's Responses to Def's Second Set of Interrogatories; Nos. 1-2.
E-8     Selected pages from FL Attorney General documents.
E-9     LinkedIn listings summary, employees, multiple Ji companies

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of May, 2010, a copy of the foregoing

Opposition was sent by electronic mail to counsel of record.


_____/s/_____
                Stephen H. Ring