### IN THE U.S. DISTRICT COURT FOR MARYLAND, SOUTHERN DIVISION

| | | |
|---|---|---|
| BEYOND SYSTEMS, INC. | ) | |
| | ) | |
| Plaintiff | ) | |
| v. | ) | Case No. PJM 08 cv 0921 |
| | ) | |
| WAUSA USA, LLC, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————— | ) | |

## DEFENDANT, WORLD AVENUE USA, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FOR FRAUD ON THE COURT

Sanford M. Saunders, Jr., Esq.
USDC, MD #4734
saunderss@gtlaw.com
Nicoleta Burlacu, Esq.
BurlacuN@gtlaw.com
*Admitted Pro Hac Vice*
**GREENBERG TRAURIG, LLP**
2101 L Street, NW, Suite 1000
Washington, DC 20037
Telephone:  202-331-3100
Facsimile:  202-331-3101

Kenneth Horky, Esq.
Florida Bar No. 691194
horkyk@gtlaw.com
John L. McManus, Esq.
Florida Bar No. 0119423
mcmanusj@gtlaw.com
*Admitted Pro Hac Vice*
**GREENBERG TRAURIG, P.A.**
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, FL 33301
Telephone: 954-765-0500
Facsimile:  954-765-1477

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................. 1

II.  STATEMENT OF MATERIAL FACTS. .......................................................... 3

    A.   BSI Issues A Notice of 86 Subpoenas Enclosing Only One Subpoena And An Ominous E-Mail. ........................................................................................... 3

    B.   BSI Issues A Notice of Issuing 86 Subpoenas, Fails To Attach 85 of Them, And Actively Resists Providing Such Copies to WAUSA. ..................................... 4

    C.   BSI Misrepresents That The Subpoenas It Provided To WAUSA Were The Ones It Issued To The Third Parties. ......................................................................... 6

    D.   BSI Repeats Its Misrepresentations To This Court............................................ 7

    E.   The Court Quashes The 85 Unknown Subpoenas And Implicitly Agrees That The February 8, 2010 E-Mail From BSI Is Insufficient................................... 9

    F.   BSI Flouts A Clear and Unambiguous Federal Court Order For Forty Days, As Well As Disregarding Four Written Attempts By WAUSA To Obtain BSI's Voluntary Compliance. ... 9

    G.   BSI Issues A Letter Again Misrepresenting That It Had Complied. ............... 11

    H.   WAUSA Continues To Seek BSI's Compliance With The Court's April 12th Order At DE 212. ................................................................................................ 12

    I.   BSI Represents To This Court Five More Times That BSI Complied With The April 12th Court's Order By Producing Copies of the Original Subpoenas On February 8th.................. 13

    J.   WAUSA Discovers BSI's Fraud. ..................................................................... 13

        1.   The Summary Of The Fraud. ...................................................................... 14

        2.   The Direct Brands Fraud............................................................................. 14

        3.   The NetFlix Fraud........................................................................................ 19

        4.   The Match.Com Fraud ................................................................................. 20

        5.   The Experian Fraud ..................................................................................... 21

        6.   The Kraft Fraud............................................................................................ 22

        7.   BSI's Other Misrepresentations. ................................................................ 23

III.  ARGUMENT. ................................................................................................. 25

A.  Applicable Legal Standards For Fraud On The Court. ..................................... 25

B.  Applicable Legal Standards For Dismissal Based On Fraud On The Court..................... 28

C.  BSI Has Perpetrated A Fraud On The Court Of Sufficient Gravity That Its Claim Should Be Dismissed. ................................................................................................. 30

IV.  CONCLUSION ............................................................................................. 33

## TABLE OF AUTHORITIES

**Federal Cases**

*Aoude v. Mobil Oil Corp.*, 892 F. 2d 1115 (1st Cir. 1989)............................................................. 25

*Bryant-Bunch v. Northampton County*, 2006 WL 4500055 (E.D.N.C. 2006)................... 27, 31, 32

*C.B.H. Resources, Inc. v. Mars Forging Co.*, 98 F.R.D. 564 (W.D. Penn. 1983)................. 29, 32

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991 ....................................................................... 3, 26

*Combs v. Rockwell International Corp.*, 927 F. 2d 486 (9th Cir. 1991)................................ 28, 29

*Forsberg v. Pefanis*, 261 F.R.D. 694 (N.D. Ga. 2009) ................................................................. 28

*Green v. Mayor and City Council of Baltimore*, 198 F.R.D. 645 (D. Md. 2001)......................... 27

*Liva v. County of Lexington*, 972 F. 2d 340 (4th Cir. 1992).......................................................... 25

*U.S. v. Shaffer Equipment Co.*, 11 F.3d 450 (4th Cir. 1993). ............................................. 3, 24, 27

*Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585 (9th Cir. 1983)............................................ 25, 28

*Yanez v. America West Airlines, Inc.*, 2004 WL 2434725 (D. Md. 2004).................................... 25

**Other Authorities**

WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (Merriam-Webster 1988)............................. 25

**IN THE U.S. DISTRICT COURT FOR MARYLAND,**
**SOUTHERN DIVISION**

BEYOND SYSTEMS, INC.     )
                          )
    Plaintiff          )
    v.                )        Case No.PJM 08 cv 0921
                          )
WORLD AVENUE USA, LLC, et al. )
    Defendants     )
_____ )

**DEFENDANT, WORLD AVENUE USA, LLC'S MEMORANDUM OF LAW IN**
**SUPPORT OF MOTION TO DISMISS FOR FRAUD ON THE COURT**

Defendant, WORLD AVENUE USA, LLC ("WAUSA") hereby moves to dismiss the

pleadings of, and enter judgment against, Plaintiff, BEYOND SYSTEMS, INC. for fraud on the

Court, on grounds  BSI issued secret Subpoenas designed to injure Defendants and followed up

with a course of conduct designed to hide its malicious misconduct from WAUSA and the Court.

## I.    INTRODUCTION

BSI has perpetrated a fraud on this Court by three intersecting courses of conduct:

1.    BSI issued a notice of serving 86 non-party subpoenas but only served a copy of
one.  BSI issued multiple -- secret non-conforming subpoenas to non-parties,
requesting documents about non-existent law enforcement investigations
concerning WAUSA.  In doing so, BSI falsely implied that WAUSA was under
investigation for "illegal marketing".

2.    Later, BSI created bogus subpoenas that did not contain the false statements and
tendered them to WAUSA as genuine copies of the real subpoenas.

3.    BSI engaged in an extended cover up in filings with the Court wherein it
vigorously opposed WAUSA motions that would expose BSI's fraud.

More specifically:

- BSI created a set of at least five (5), and possibly as may as twenty two (22) more, abusive Subpoenas to issue to non-parties that falsely stated that WAUSA was under investigation by the "Federal Bureau of Investigations" [sic], the U.S. Department of Justice, and was associated with a band of criminals under indictment dubbed the "Ralsky Defendants." Specifically, the secret Subpoenas requested production of:

  > All DOCUMENTS produced to or RELATING TO investigations and/or litigation against WORLD AVENUE....and RELATING TO illegal marketing, including those by:

  > a. Any United States Attorney's Office in the United States and/or any of its Territories;

  > b. The Federal Bureau of Investigations [sic].

- To conceal the subpoenas, BSI served a notice of issuing 86 Subpoenas, but only attached one of those Subpoenas, leaving 85 unknown Subpoenas. BSI then refused to provide copies of the 85 unknown Subpoenas and demanded legal authority as a precondition to serving copies of the subpoenas on WAUSA.

- To cover up its improper actions, BSI created Bogus Subpoenas that *did not contain the requests referring to non-existent investigations* and tendered these Bogus Subpoenas to WAUSA on February 8, 2010 as if they were genuine copies of the original Subpoenas that had been served on the non-parties.

- After WAUSA moved to compel, BSI filed an Opposition before this Court, misrepresenting the truth about the Subpoenas four (4) distinct times. To support its claim, BSI filed a copy of its February 8th Response to the Request for Copies.

- After this Court compelled "immediate" production of "copies of the original subpoenas" and documents responsive thereto, BSI willfully violated this Court's Order by waiting forty (40) days before it purportedly comply. BSI ignored WAUSA four written demands for compliance to buy time for its next move.

- After WAUSA filed a second motion to compel, BSI lied repeatedly to this Court that it had already produced copies of the original Subpoenas on February 8th and, based on that lie, again refused to produce copies of the original Subpoenas.

As shown below, these facts constitute multiple deliberate misrepresentations and an outrageous abuse of the subpoena power, all designed to harm WAUSA while impeding it from accessing information relevant to BSI's claims and WAUSA's defenses. Because these facts, as a matter of law, constitute a fraud upon the Court, BSI's Amended Complaint should be dismissed with prejudice. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991; *U.S. v. Shaffer Equipment Co.*, 11 F.3d 450, 462 (4th Cir. 1993).

## II.   STATEMENT OF MATERIAL FACTS.

### A.   BSI Issues A Notice of 86 Subpoenas Enclosing Only One Subpoena And An Ominous E-Mail.

On December 29, 2009, BSI served a Notice of Production to 86 non-parties (for production of documents without deposition) and attached only one of the Subpoenas to Tiggee, LLC a/k/a DNS Made Easy (the "Notice"). *See* Exhibit 1. Included with the Notice was an e-mail that BSI would seek "documents related to the FBI's investigation of Alan Ralsky, Scott Bradley, Scott Richter/Optinrealbig/mediabreakaway, their ties to the World Avenue companies; and any relevant AG investigations including FL, TX and any others, that may bear on the connections between the World Avenue companies and the bulk emailing practices at issue." *See* Exhibit 2. The e-mail was served in the midst of settlement negotiations, the detailed

circumstances of which are described in the Declaration of Sanford M. Saunders, Jr.  *See* Declaration of Sanford M. Saunders, Jr., attached as Exhibit 3.

**B.      BSI Issues A Notice of Issuing 86 Subpoenas, Fails To Attach 85 of Them, And Actively Resists Providing Such Copies to WAUSA.**

On February 1, 2010, WAUSA served a Request for Copies upon BSI for a copy of the 85 missing Subpoenas and the responses thereto.  *See* Exhibit 4.

On February 1, 2010, WAUSA became aware for the first time that BSI had apparently issued unknown Subpoenas not attached to the Notice to one, some, or all of the 85 other listed non-parties.   In a February 1 e-mail communication, BSI's counsel stated:   "This will acknowledge your request for copies of all materials received via subpoena.  We will respond as soon as possible, as it is still early and some of the recipients have requested more time to comply."  *See* Exhibit 5 (emphasis added).

On February 1, 2010, WAUSA responded:

> Please note that the Request was not simply for copies of all materials received via subpoena, but it was also a request for a signed copy of all signed subpoenas issued to date....We have also received the attached Notice dated December 29th containing a single signed Subpoena to a single entity together with a schedule of documents that referred to that single entity.  Since we have not been noticed as required under Rule 45 with a copy of any other signed Subpoena or schedule of documents pertaining to any other entity, including, but not limited to, a Rule 45 Subpoena that contains all of the information required in Rule 45, the address of the recipient, location of production, and the Court issuing the Subpoena, we are at a loss to understand your statement that "some of the recipients have requested more time to comply."  There could be only one "recipient" since we have only been given notice of one Subpoena (other than the ones to the "World Avenue family of companies").

*See* Exhibit 6, attached hereto.

On February 1, BSI responded:  "I will review the numerous issues in your email below and respond further as soon as possible.  I have several appearances and other matters over the next few days."  *See* Exhibit 7.

- 4 -

On February 2nd, BSI, hesitant to reveal what it had done by providing copies of the Subpoenas, requested: "Please direct me to the language in Rule 45 that requires that a copy of a subpoena to a non-party must be served on counsel for parties." *See* Exhibit 8.

On February 2nd, WAUSA responded:   "Thanks for clarifying that you have served subpoenas on non-parties without notice of the contents of the subpoenas to Defendants. We will act appropriately." *See* Exhibit 9.

On that same date, WAUSA sent BSI an e-mail communication responding to the earlier request for the appropriate language of Rule 45:

> Rule 45(b)(1) provides that if "the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served, a notice must be served on each party." Subdivision (b) of the Advisory Committee Notes on the 1991 Amendment to Rule 45 provide that the "purpose of such notice is to afford other parties an opportunity to object to the production or inspection, or to serve a demand for additional documents or things" and "when production or inspection is sought independently of a deposition, other parties may need notice in order to monitor the discovery and in order to pursue access to any information that may or should be produced." This is also consistent with Rule 45(c)(3)(A)-(B), which grant the right to a party "affected by a subpoena" or "[o]n timely motion" to move to quash or modify a subpoena based on the content of the Subpoena.
>
> Accordingly and consistent with our notice dated February 1, 2010 and Local Rule 104.7, we request that BSI (i) immediately withdraw each Subpoena not enclosed in the December 29, 2009 Notice and provide confirming notice to Defendants that notice of the withdrawal has been given to said non-parties; and (ii) immediately serve copies upon Defendants of the issued Subpoenas consistent with the February 1, 2010 Request for Copies. In the event that we do not receive BSI's complete and affirmative agreement to each of these requests by the close of business, then WAUSA will be forced to file an appropriate Motion.

*See* Exhibit 10.

On February 2, BSI responded:

> Am still in mediation but can you say how world ave cos are "affected by a subpoena"? In the case of the subpoena to dnsMadeEasy.com?

*See* Exhibit 11.

On February 2nd, WAUSA responded, in turn:

> Fishing expedition for proprietary information for a period post-dating the filing of the amended complaint. I can confirm WA did not do business with dns prior to 2009. *This is an example of the problem created by not having copies of the subpoenas -- we cannot tell whether proprietary or privileged documents/information/data is being sought.*

See Exhibit 12 (emphasis added).

On February 3rd, BSI stalled, declaring that it would respond at a later time on the issue of the notice of the 85 non-parties. *See* Exhibit 13.[1]

The close of business passed with no response from BSI. Accordingly, at 7:19 p.m. on February 3rd, WAUSA filed its Motion to Quash 85 Unknown Subpoenas. *See* DE 157.

### C. BSI Misrepresents That The Subpoenas It Provided To WAUSA Were The Ones It Issued To The Third Parties.

On February 8, 2010, BSI served an e-mail and a Response to the Request for Copies. The Response to the Request for Copies stated that BSI was serving "signed subpoenas issued by Plaintiff to all third parties; and 2) any documents it has received thus far pursuant to said subpoena. This will confirm that WORLD AVENUE has received copies and responses of all outstanding subpoenas and responses." See Exhibit 14 (emphasis added).

The statement that BSI was serving "any documents it has received thus far pursuant to said subpoena" was false because there were no responsive documents produced by third parties enclosed with the February 8, 2010 e-mail. The statement that BSI is confirming that "WORLD

---

[1] Early in the day on February 3rd, counsel for BSI and WAUSA spoke, and BSI proposed to find out whether anyone has responded, and to re-issue the subpoenas. BSI promised to do so by the close of business on February 3.

AVENUE has received copies and responses of all outstanding subpoenas and responses" was false because, as detailed below, BSI had received "responses" to the subpoenas, but failed to produce them until May 21 and continuing to date.

The February 8, 2010 e-mail enclosed a file containing 23 purportedly real and genuine subpoenas to Account Now, AOL, Blockbuster Online DVD Rental, BMG Music Service a/k/a Direct Brands, Body Sculpture, Citibank MasterCard, Columbia House a/k/a Direct Brands, Inc. (Delaware), Columbia House (Pennsylvania), Direct Brands (Delaware), Direct TV, Discover Financial Services (Illinois/Maryland), Discover Financial Services (Maryland), Dish Network, Experian (Consumer Info.com), Intersections, Inc., Kraft Foods Global (aka TassimoDirect), Kraft Foods, Inc. (Maryland), Match.com, Netflix, Rhapsody America, LLC, Experian Information Solutions (a/k/a Star Club Rewards), StyleMyHouse, LLC, and Vonage.   See Exhibit 14.  In at least five cases, these were not the Subpoenas actually issued.

The Response was also evasive in that it did not state whether the other Subpoenas had been issued and did not state whether the other Subpoenas would be issued ex parte after the service of the Response.  See Exhibit 14.

### D.      BSI Repeats Its Misrepresentations To This Court.

On February 23, BSI filed its Opposition to the Motion to Quash, and contended that it did not violate Federal Rule 45.  See DE 167.  In the Opposition to the Motion to Quash, BSI certified and represented as follows to the Court:

> Defendant received **copies of all the original signed subpoenas** before the original return date listed in the subpoenas, as well as **the documents received pursuant to those subpoenas**.

*See* DE 167, p. 3 (emphasis added).

This representation to the Court was utterly false in two (2) different ways. First, as detailed below, the February 8 Response did not include "copies of all the original signed subpoenas." Second, the February 8 Response did not include "the documents received pursuant to those subpoenas." See DE 167, p. 3; Exhibit 14.

BSI also falsely represented to the Court in its Opposition on February 23 that: "On February 8th, BSI served a response to the Defendant's Request for Copies, which included electronic copies of the twenty-two (22) Non-Party Subpoenas Duces Tecum, along with any documents received pursuant to said subpoenas." See DE 167, p. 2, ¶ 7 (emphasis added). In its Opposition, BSI went to great lengths to prevent WAUSA from obtaining any relief from the Court by frivolously arguing that WAUSA "has no standing" to ask for copies of the Rule 45 Subpoenas issued to, inter alia, companies with which WAUSA does business. Id., p. 3, ¶ 2.

On February 23, 2010, WAUSA requested in writing that BSI correct its false representation to the Court that BSI had produced "documents received pursuant to said subpoenas," or "confirm your intent to file an amendment to correct your representations to the Court." See Exhibit 15. This was because BSI had represented to the Court that its February 8th Response included "documents received pursuant to said subpoenas," when in fact, BSI had not produced any such documents. Having had a clear chance to correct its false representations to the Court, BSI ignored the letter.

On February 27, 2010, WAUSA requested again: "In addition to the issues raised in my prior email, we request that you provide us with copies of any documents or other information produced in response to the 23 third-party subpoenas BSI issued." See Exhibit 16.

On March 1, WAUSA filed its Reply Memorandum.  See DE 172.  WAUSA argued in that Reply Memorandum that BSI's written attempt at compliance with WAUSA's Request for Copies on February 8 raised more questions than it answered and was insufficient.  Id.

### E.     The Court Quashes The 85 Unknown Subpoenas And Implicitly Agrees That The February 8, 2010 E-Mail From BSI Is Insufficient.

The Court evidently agreed that BSI's February 8, 2010 e-mail enclosing 23 purportedly genuine Subpoenas was insufficient.  See DE 212.  On April 12, the Court granted WAUSA's Motion and quashed the Subpoenas.

The Court hereby GRANTS Defendant's Motion.

* * *

Plaintiff shall provide a listing of all non-party subpoenas issued, the status of production for each non-party, and a summary of any discussions held regarding the efforts to obtain the requested materials subsequent to the service or attempted service of each subpoena.  **Plaintiff shall also produce copies of all original subpoenas with attachments issued to all non-parties.**  For any non-party who has not responded to Plaintiff's subpoena, Plaintiff shall immediately notify said non-party that the Court has quashed the subpoena and that they should not produce the requested material.  Plaintiff is not prohibited from seeking the same material, but must do so in full compliance with the rules of procedure as suggested herein.  Plaintiff shall produce to all parties complete copies of materials received in response to any subpoenas issued.

See DE 212 (emphasis added).

### F.     BSI Flouts A Clear and Unambiguous Federal Court Order For Forty Days, As Well As Disregarding Four Written Attempts By WAUSA To Obtain BSI's Voluntary Compliance.

On April 16, WAUSA sent a letter to BSI memorializing the Court Order at DE 212 and reminding BSI that WAUSA expected that BSI's compliance would be forthcoming.  See Exhibit 17.

Two weeks later, on April 29, WAUSA again requested compliance by BSI with the April 12th Court Order, and WAUSA warned that it would be filing a motion during the first

- 9 -

week of May 2010. See Exhibit 18. But in lieu of filing a Motion during the first week of May 2010, WAUSA allowed still further time for compliance by BSI with the Court's Order at DE 212.

When fifteen (15) more days passed without compliance by BSI, WAUSA then sent a third communication on May 13, 2010 asking BSI to account for its non-compliance with the April 12th Order, and requesting compliance by the close of business on Friday, May 14, 2010. See Exhibit 19.

BSI ignored the deadline, and then responded on the evening of Friday, May 14. See Exhibit 20. First, despite the fact that the Court had completely rejected BSI's position and in direct violation of the Order at DE 212, BSI pointed back to its February 8th communication as compliance with the April 12th Order. Id. The non-compliant nature of that February 8th communication was specifically raised by WAUSA in its Reply, and the Court agreed, granting the Motion. See DE 172, 212. Curiously, the May 14, 2010 e-mail did not reveal when the non-parties had been informed that the Subpoenas had been quashed. See Exhibit 20. Of course, this was important, since in the April 12th Order, the Court had ordered that this be done "immediately." See DE 212.

Furthermore BSI did not comply with the Order by producing the "copies of all original subpoenas with attachments issued to all non-parties." See DE 212 (emphasis added). Instead, BSI disregarded the clear mandate in the Court's April 12th Order and deemed its prior production of the purported "copies of all original subpoenas" produced on February 8th sufficient. See Exhibit 20. Thus, in willful violation of the  the Court's Order, instead of producing the actual "copies of all original subpoenas," BSI kept arguing.

On Friday, May 14th, WAUSA responded:

Mike:

Thank you for your email, but it misses the point. We are not asking about copies of previously served subpoenas, rather we seek compliance with a month old court order pursuant to which you were to provide specific information and to take specific action. Magistrate Judge Day ruled that your subpoenas were invalid and directed as follows:

Plaintiff shall provide a listing of all non-party subpoenas issued, the status of production for each non-party, and a summary of any discussions held regarding the efforts to obtain the requested materials subsequent to the service or attempted service of each subpoena. Plaintiff shall also produce copies of all original subpoenas with attachments issued to all non-parties. For any non-party who has not responded to Plaintiff's subpoena, Plaintiff shall immediately notify said non-party that the Court has quashed the subpoena and that they should not produce the requested material. Plaintiff is not prohibited from seeking the same material, but must do so in full compliance with the rules of procedure as suggested herein. Plaintiff shall produce to all parties complete copies of materials received in response to any subpoenas issued.

We have not received either an update on the status of the served subpoenas or a copy of any communication notifying the recipient of the withdrawal. Clearly, you have not complied with the Court's Order and, despite our effort to resolve the issue informally, the non-responsive response indicates that will not be the case.

Since it is Friday, we will wait until Monday morning to file the appropriate Motion.

*See* Exhibit 21.

Contrary to its promise on Friday, May 14th, BSI did not respond at all on Monday, May 17th, at any time. Thus, WAUSA filed its Motion to Enforce the Court's Order at DE 212 on Monday, May 17. See DE 232.[2]

**G.      BSI Issues A Letter Again Misrepresenting That It Had Complied.**

---

[2] Since even after the filing of the Motion on May 17 BSI continued to ignore the April 12 Order, counsel discussed BSI's compliance on the telephone on Friday, May 21st.

- 11 -

At 12:52 a.m. on Saturday, May 22nd -- forty (40) days after the Court issued its Order -- BSI provided a letter purporting to explain its conduct. See Exhibit 22. The letter sent at 12:52 a.m. claimed that "BSI has sent a letter to all non-parties..." to comply with the Court Order. The letter did not either include a copy of the letters to all non-parties or detail the timing of when such letters were sent. Id.

At 1:00 a.m. on Saturday, May 22nd -- forty (40) days after the Court issued its Order -- BSI purported to comply by serving what it represented to be the Subpoena responses by the third parties. See Exhibit 23. Even this representation was false, because, BSI had in fact received other responses, but chose not to produce them. See, infra., at pp. 23-24.

**H.      WAUSA Continues To Seek BSI's Compliance With The Court's April 12th Order At DE 212.**

BSI's violations of the Federal Rules and the Court's April 12 Order did not end with BSI's 40-day late May 22nd correspondence. See Exhibits 22-23. As with the copies of the original subpoenas, BSI was strangely reticent to produce copies of the communications whereby it withdrew the Subpoenas under the Court's April 12th Order. See Exhibit 24. These were the letters that the Court ordered shall be sent "immediately." See DE 212. This did not go unnoticed. On May 24, WAUSA responded in writing to BSI's May 22nd communication, and stated "we [WAUSA] do not agree BSI now is in compliance with the Court's April 12, 2010 letter," as for example, no letter to the subpoena recipients was attached. See Exhibit 24.

On May 24, BSI denied that it had any obligation to provide a copy of the letter withdrawing the subpoenas, and further claimed -- although its purported notices of compliance were sent at 12:52 a.m. and 1:00 a.m., respectively, on Saturday, May 22nd -- that "a letter was sent to all subpoena recipients on May 21st, 2010." See Exhibit 25. BSI further noted that its

representations of compliance were being made by an officer of the Court, implying that WAUSA should not have the effrontery to further question its word.

Thus, contrary to the Court's April 12th Order that this action be taken "immediately," BSI waited until Friday, May 21st -- forty (40) days later to send its purported letters, which it now refuses to this day to produce or to substantiate proof of their service on May 21st. See Exhibit 25.

**I.      BSI Represents To This Court Five More Times That BSI Complied With The April 12th Court's Order By Producing Copies of the Original Subpoenas On February 8th.**

On June 3, 2010, BSI acted in furtherance of its fraud on the Court and made the following additional misrepresentations:

- "On February 8 ... BSI produced copies of the previously served subpoenas to WAUSA counsel of record by email as well as a Notice of Response to Defendant WAUSA's Request for Copies filed not seven days earlier.  See Exhibit A-3 [Rothman 02/08/10 email to all WAUSA Counsel of Record sending copies of served subpoenas...]".  See DE 259, Plaintiff's Memorandum of Law in Support of its Opposition to Defendant World Avenue USA, LLC's Motion to Enforce Order at DE 212 And For Sanctions, p. 3 (emphasis added).

- "WAUSA continued to send letters on April 15, 29, and May 13 seeking compliance with the Court's Order at DE 122 [sic], although Plaintiff, by and through counsel, had previously communicated the requested information." *Id.*, p. 4 (emphasis added).

- "....Plaintiff had already responded to its prior requests - numerous times." *Id.*, pp. 1-2 (emphasis added).

- "As Plaintiff has fully complied with all aspects of the Order at DE 212 in a prompt and reasonable fashion and under any interpretation, Defendant's claims are without merit and its motion denied [sic]." *Id.*, p. 2 (emphasis added).

- "BSI was not attempting to conduct any secret discovery program, as there could be nothing to gain.  Defendant received copies of all subpoenas issued once it sought a Request for Copies." *Id.*, p. 4 (emphasis added).

**J.      WAUSA Discovers BSI's Fraud.**

1.      **The Summary Of The Fraud.**

The Subpoena Responses produced on May 22nd make it abundantly clear that BSI's February 8, 2010 representation, *to wit*, that it had provided "signed subpoenas issued by Plaintiff to all third parties; and 2) any documents it has received thus far pursuant to said subpoena" and that "WORLD AVENUE has received copies and responses of all outstanding subpoenas and responses," was completely false and misleading. *See* Exhibits 14, 23.

Although these misrepresentations alone were egregious, what WAUSA discovered next reveals that BSI engaged in an unconscionable scheme and sought to cover it up in violation of the Court's Order, both of which merit the ultimate sanction. To summarize:

- **First,** BSI lied in writing on February 8, 2010 that it was producing "signed subpoenas issued by Plaintiff to all third parties." *See* Exhibit 14.

- **Second,** BSI lied to this Court on February 23 that "Defendant received copies of all the original signed subpoenas before the original return date listed in the subpoenas" and that BSI's response to the Request for Copies "included electronic copies of the twenty-two (22) Non-Party Subpoenas Duces Tecum." *See* DE 167. BSI attached its February 8, 2010 Response to Request for Copies to its February 23 Memorandum of Law filed in this Court, thereby constituting an independent misrepresentation to this Court. *Id.*

- **Third,** BSI lied to WAUSA on May 14th: "To date, you have received copies of all subpoenas served." *See* Exhibit 20.

- **Fourth,** BSI lied to the Court five more times on June 3. *See* DE 259, pp. 1-4; *see also infra.* at pp. 13-14, ¶ 33.

      2.      **The Direct Brands Fraud:  BSI Creates a Bogus Subpoena To Produce To WAUSA To Cover Up BSI's Service Of A Subpoena Upon Direct Brands That Made A Materially False Statement About WAUSA.**

All nine (9) misrepresentations to the Court were intended to cover up the fact that BSI had issued at least five, and possibly more, secret subpoenas to non-parties -- an abuse of Rule 45 -- and defame WAUSA in order to leverage settlement in this case.

- 14 -

BSI produced in its May 22nd communication a copy of the Direct Brands, Inc. response to a subpoena that had been served on it, which response included a copy of the Subpoena. *See* Exhibit 23, BSI (Non-Party Subpoena Responses) 000030. If BSI had been telling the truth, the Direct Brands Inc. subpoena produced with Direct Brands, Inc.'s response would be the same one appended to BSI's February 8th e-mail. *See* Exhibits 14 (0085-Direct Brands)[3], 23.

Instead, the Direct Brands Subpoena was a far cry from BSI previously gave WAUSA. It was a different Subpoena. The signatures of counsel on the two Subpoenas do not match. *Compare* Exhibit 14 (0085-Direct Brands) *with* Exhibit 23, BSI (Non-Party Subpoena Responses) 000030. A circle over a box on the real Subpoena does not match the Bogus Subpoena. *Id. See* <u>Figure 1</u> below.

---

[3] For the Court's convenience, WAUSA has bates-labeled the Subpoenas produced in February by BSI.

Bogus Subpoena Signature Materially Different

Secret Subpoena Signature Materially Different

The Bogus Subpoena and the real Subpoena have a pre-printed date of "1/8/2010" at the bottom-right corner. However, the metadata shows that the actual Bogus Subpoena document that was tendered to WAUSA was created for the first time on February 3, 2010. *See* Figure 2 below; Exhibit 14 (0085-DirectBrands). This just so happens to be two days after WAUSA tendered its Request for Copies of the 85 unknown Subpoenas. *See* Exhibits 4-13; DE 157.



The real Direct Brands Subpoena is a completely different subpoena than the Bogus Direct Brands Subpoena that BSI presented to this Court.  The "Attachment A" on Page 3 of the real Subpoena and the Bogus Subpoena are different.  *Compare* Exhibit 14 (0087-DirectBrands) *with* Exhibit 23, BSI (Non-Party Subpoena Responses) 000032.   The definitions in the real Subpoena and the Bogus Subpoena are different.  *Compare* Exhibit 14 (0088-DirectBrands) *with* Exhibit 23, BSI (Non-Party Subpoena Responses 000032-000034.  The schedule of documents to be produced was completely different in the real Subpoena and the Bogus Subpoena.  *Compare* Exhibit 14 (0092-0094-DirectBrands) *with* Exhibit 23, BSI (Non-Party Subpoena Responses

000036-0000038.  Tellingly, the real Subpoena contained a forwarding address for responses, while the Bogus Subpoena did not.  *Compare* Exhibit 14 (0094-DirectBrands) *with* Exhibit 23, BSI (Non-Party Subpoena Responses 000039).

More importantly, the real Subpoena falsely stated that WAUSA was named in the case together with a defined term the "RALSKY DEFENDANTS", who "shall mean the persons who were charged and plead guilty in the 41-count indictment…"  *See* Exhibit 23, BSI (Non-Party Subpoena Responses) 000034.  The real Direct Brands, Inc. Subpoena stated that WAUSA was under investigation by the FBI and the U.S. Attorney's Office.  *See* Exhibit 23, BSI (Non-Party Subpoena Responses) 000037.  *See* Figure 3 below.



3.     **The NetFlix Fraud:  BSI Creates a Bogus Subpoena To Produce To WAUSA To Cover Up BSI's Service Of A Subpoena Upon NetFlix That Made A Materially False Statement About WAUSA.**

With its production on Saturday, May 22nd at 1:00 a.m., BSI produced a set of February 9, 2010 Objections to a Subpoena issued to Netflix, which, if BSI was telling the truth, was presumably the very same NetFlix Subpoena enclosed in BSI's February 8 e-mail.  *Compare* Exhibit 14 *with* Exhibit 23.  Except for one thing:  NetFlix reprinted verbatim in its Objection the categories of production in the NetFlix Subpoena with which *it* had been served and those

categories of documents were *not* the categories in the February 8 e-mail.  *Compare* Exhibit 14 (0185-Netflix) *with* Exhibit 23.

Instead, the documents requests in the real Subpoena that NetFlix responded to stated that WAUSA was under investigation by the United States Attorney's Office and the FBI, among others.  *See* Exhibit 23, BSI (Non-Party Subpoena Responses) 000013, Request, ¶ 5 ("All documents produced to or RELATING TO investigations and/or litigation against WORLD AVENUE... including those by: "a.  Any United States Attorney's Office in the United States and/or any of its Territories; b. the Federal Bureau of Investigations" [sic]).  Indeed, when the real Netflix subpoena was produced by Netflix, the date on the real Netflix subpoena was January 7, while the date on the Bogus Netflix Subpoena was January 8.  *Compare* Exhibit 14 (0175-Match.com) *with* Exhibit 28.

### 4.     The Match.Com Fraud:  BSI Creates a Bogus Subpoena To Produce To WAUSA To Cover Up BSI's Service Of A Subpoena Upon Match.com That Made A Materially False Statement About WAUSA.

BSI produced in its May 22nd communication a copy of a Match.com response to a subpoena that had been served on it, which response included a copy of that subpoena.  *See* Exhibit 23.  The Match.com Subpoena was completely different than the bogus Match.com Subpoena that BSI tendered to WAUSA on February 8th and represented to the Court that it had already produced.  The real Match.com Subpoena was dated January 7th, while the Bogus Match.com Subpoena was dated January 8th.[4]  *Compare* Exhibit 14 (0175-Match.com) *with* Exhibit 23, BSI (Non-Party Subpoena Responses) 000046. Needless to say, the signatures on the real Match.com Subpoena and the Bogus Match.com Subpoena were different:  one contained

---

[4] BSI represented to the Court at DE 167, p. 1, ¶ 2 that it had served the Subpoenas on January 8th.  This was false, as the real Match.com Subpoena was dated January 7.  *See* Exhibit 22, BSI (Non-Party Subpoena Responses) 000046.

brackets, one did not. *Id.* The "Attachment A" to the real Match.com Subpoena was different than the Bogus Match.com Subpoena:  the real Match.com Subpoena contained a footer "Doc. # NY-20712 v. 4" not found on the Bogus Match.com Subpoena. *Compare* Exhibit 14 (0177-Match.com) *with* Exhibit 23, BSI (Non-Party Subpoena Responses) 000048.   Both the Instructions and the Definitions of the real Match.com Subpoena and the Bogus Match.com Subpoena were different. *Compare* Exhibit 14 (0177-Match.com) *with* Exhibit 23, BSI (Non-Party Subpoena Responses) 000056-000058.   The real Match.com Subpoena contained two different schedules of documents to be produced, but neither schedule of documents even vaguely resembled the Bogus Match.com Subpoena. *Compare* Exhibit 14 (0181-Match.com-0184-Match.com) *with* Exhibit 23, BSI (Non-Party Subpoena Responses) 000059 & 000064-000068. Once again, the real Match.com Subpoena contained forwarding information, while the Bogus Match.com Subpoena did not. *Compare* Exhibit 14 (0184-Match.com) *with* Exhibit 23, BSI (Non-Party Subpoena Responses) 000067.

More importantly, the real Match.com Subpoena stated that WAUSA was under investigation by the U.S. Department of Justice and the FBI. *See* Exhibit 23, BSI (Non-Party Subpoena Responses) 000065, p. 6, ¶ 5 ("All DOCUMENTS produced to or RELATING TO investigations and/or litigation against WORLD AVENUE....and relating to illegal marketing, including those by:  a. Any United States Attorney's Office in the United States and/or any of its Territories; b. the Federal Bureau of Investigation." The real Match.com Subpoena falsely stated that WAUSA was one of the RALSKY Defendants, who were under indictment. *Id.*

     **5.**     **The Experian Fraud:  BSI Creates A Bogus Subpoena To Produce To WAUSA To Cover Up BSI's Service Of A Subpoena Upon Experian That Made A Materially False Statement About WAUSA.**

BSI produced on February 8th a Subpoena to Experian Information Solutions, I (a.k.a Star Club Rewards). *See* Exhibit 14 (0135-ExperianConsmr). However, the real Experian Subpoena provided to WAUSA by Experian is much different than the Bogus Experian Subpoena. *Compare* Exhibit 14 (0135-ExperianConsmr) *with* Exhibit 26. The signature is different. The check in the box is different. The Attachment is different. The Definitions are different. The Requests are different. The real Subpoena has a forwarding address at the end, while the Bogus Subpoena does not. *Compare* Exhibit 14 (0144-ExperianConsmr) *with* Exhibit 26. More importantly, the real Subpoena contains the false statement about the "Federal Bureau of Investigations [sic]" and the U.S. Attorney's Office investigations about the "illegal marketing" of WAUSA, while the Bogus Subpoena does not. *Compare* Exhibit 14 (0143-ExperianConsmr) with Exhibit 26.

6.   **The Kraft Fraud: BSI Creates A Bogus Subpoena To Produce To WAUSA To Cover Up BSI's Service Of A Subpoena Upon Kraft That Made A Materially False Statement About WAUSA.**

BSI produced on February 8th a Subpoena to Kraft Foods, Inc. *See* Exhibit 14 (0165-KraftFood). However, the real Kraft Subpoena provided to WAUSA by Kraft is much different than the Bogus Kraft Subpoena. *Compare* Exhibit 14 (0165-KraftFood) *with* Exhibit 26. The Bogus Kraft Subpoena is dated in print January 8, 2010, while, in the real Kraft Subpoena, the date is handwritten "1/7/10." *Id*. The signature is different. The check in the box is different. The real Kraft Subpoena has a footer on its third page ("Doc. # NY-20712 v.4) that is absent from the Bogus Kraft Subpoena. *See* Exhibit 14 (0167-KraftFood). The Attachments are different. The Definitions are different. The real Kraft Subpoena contains two schedules of "Documents To Be Produced" -- neither one of which is the schedule of "Documents To Be Produced" in the Bogus Kraft Subpoena. However, like the other false Subpoenas, the real Kraft

Subpoena falsely states that WAUSA is under investigation by the "United States Attorney's Office in the United States" and the "Federal Bureau of Investigations [sic]." *See* Exhibit 26, p. 6, ¶ 5 ("All DOCUMENTS produced to or RELATING TO investigations and/or litigation against WORLD AVENUE…RELATING TO illegal marketing, including those by: a. Any United States Attorney's Office in the United States…the Federal Bureau of Investigations [sic]").

### 7.      BSI's Other Misrepresentations.

Because BSI has withheld the real Subpoenas, it is impossible to determine the extent of BSI's campaign to secretly propound Subpoenas intended to destroy WAUSA's business reputation.   Indeed, had NetFlix, Direct Brands, and Match.com not attached (or reprinted the terms of) the process that had been served upon them, BSI's fraud upon the Court and upon WAUSA would never have been revealed.

There were a number of other representations that were false:

a.     Although BSI represented it had produced all "documents" and "responses" on February 8th, BSI received a letter from Vonage on January 14, 2010 prior to its February 8 representation later filed with the Court that it had produced all "responses", but it failed to provide it on either February 8th or in May. *See* Exhibit 22, attaching Chart.

b.     BSI received a letter from Dish Network on January 12, 2010, but failed to produce it on February 8th or at any time to date. *See* Exhibit 22.

c.     BSI received a letter from Blockbuster Online DVD on January 12, 2010, but failed to produce it on February 8th or at any time to date. *See* Exhibit 22.

d.   BSI received a letter from Intersections, Inc. on January 11, 2010, but failed to produce it on February 8th or at any time to date. *See* Exhibit 22.

e.   BSI received a letter from Citibank Mastercard on January 11, 2010, but failed to produce it on February 8th or at any time to date. *See* Exhibit 22.

f.   BSI received a letter on January 12 from AccountNow, but failed to produce it on February 8th or at any time to date. *See* Exhibit 22.

g.   BSI received a letter on January 11 from StyleMyHouse, but failed to produce it on February 8th or at any time to date. *See* Exhibit 22.

In short, BSI has repeatedly violated the Court's April 12th Order, as well as Federal Rule 45, and succeeded in perpetrating a fraud upon the Court:

- BSI issued *at least five* -- and possibly 23, or more -- secret subpoenas;

- The secret subpoenas were calculated to leverage settlement and to intimidate third parties by embarrassing, defaming, and destroying WAUSA by falsely stating that WAUSA was under investigation by the FBI and the U.S. Attorneys' Office and that WAUSA was named as a "Defendant" in the case with a band of criminals dubbed the "RALSKY DEFENDANTS."

- BSI lied to WAUSA by producing a February 8th Response to Request for Copies that purported to contain "signed subpoenas issued by Plaintiff to all third parties," when, in fact, at least five (5) and possibly more, of those subpoenas were bogus.

- BSI lied to the Court once by filing an Opposition at DE 167 on February 23 representing that "Defendant received copies of all the original signed subpoenas before the original return date listed in the subpoenas."

- BSI lied to the Court a second time by attaching to that Opposition the same Response to Defendant World Avenue USA, LLC's Request for Copies that purported to contain "signed subpoenas issued by Plaintiff to all third parties," when, in fact, at least five, and possibly more, of the "signed subpoenas" produced with that Response were bogus subpoenas.

- BSI lied to WAUSA again when it represented on May 14th: "To date, you have received copies of all subpoenas served."

- 24 -

- BSI lied to WAUSA again on March 22nd when it attempted to claim that the February 8 e-mail contained "copies of all the previously-served subpoenas to WAUSA."

- BSI lied to the Court five more times when it filed its Opposition to WAUSA's Motion to enforce the April 12th Order at DE 212.

- In short, BSI lied that it had produced the secret subpoenas it issued, when, in fact, the real secret was the sleight of hand that BSI had pulled in issuing these abusive subpoenas in the first place.

- In addition to the foregoing perpetration of a fraud upon the Court, BSI is in contempt of the Court's April 12 Order by, among other things, (i) failing to produce the copies of the original subpoenas issued to non-parties; (ii) failing to provide all responses to all subpoenas; (iii) failing to provide a complete description of the status of the efforts to obtain production; (iv) failing to "immediately" notify non-parties of the Court's April 12th Order in writing; and (v) failing to provide copies of such correspondence.

## III.   ARGUMENT.

**A.   Applicable Legal Standards For Fraud On The Court.**

Fraud on the court occurs "when a party deceives a court or abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process." *U.S. v. Shaffer Equipment Co.*, 11 F.3d 450, 462 (4th Cir. 1993). Likewise, it exists "if a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Liva v. County of Lexington*, 972 F. 2d 340 (4th Cir. 1992) (unpublished) (affirming dismissal of complaint) (*citing Aoude v. Mobil Oil Corp.*, 892 F. 2d 1115 (1st Cir. 1989). Fraud on the court also "occurs where a party has engaged in the litigation process in a manner that intentionally prevents the court from impartially adjudicating the claim, as by impeding its opponent from accessing information relevant to its claim or defense." *Yanez v. America West Airlines, Inc.*, 2004 WL 2434725, at *1, *7 (D. Md. 2004) (*citing Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir.1989) and *Wyle v. R.J. Reynolds*

- 25 -

*Indus., Inc.*, 709 F.2d 585, 589 (9th Cir.1983)).

A fraud on the court exists "where 'it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of some opposing party's claim or defense.'" *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989).  The requirement that the fraud on the court be committed "sentiently" requires that the party committing the fraud be "of the mind" or set the scheme into motion knowingly.  WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY, p. 1072  (Merriam-Webster 1988) (defining "sentient" as "1: responsive to or conscious of sense impressions 2: Aware 3: finely sensitive in perception or feeling.").

Fraud on the court is "a doctrine more difficult to define than to apply...[c]ourts routinely hold that only fraud which does, or attempts to, defile the court itself, or is perpetrated by its officers, constitutes fraud on the court....[b]ecause the contours of this doctrine are elusive, the existence of fraud on the court depends on the circumstances of the particular case. It is clear, however, that perjury or the fabrication of evidence alone, or fraud that is primarily inter partes, does not constitute fraud on the court absent the encouragement or involvement of the attorneys involved **or other court involvement**." *Outen v. Baltimore County, Md.*, 177 F.R.D. 346 (D. Md. 1998) (emphasis added).

The record in this case leaves no doubt that BSI has repeatedly *lied to a federal court* in its filings and presented phony documents to a federal court.  In addition, it repeatedly violated the Court's April 12th Order, as well as Federal Rule 45.  In short it :

- BSI issued *at least five* -- and possibly 23, or more -- secret subpoenas;

- The secret subpoenas were calculated to leverage settlement and to intimidate third parties by embarrassing, defaming, and destroying WAUSA by falsely stating that WAUSA was under investigation by the FBI and the U.S. Attorneys' Office and that WAUSA was named as a "Defendant" in the case with a band of criminals dubbed the "RALSKY DEFENDANTS."

- BSI lied to WAUSA by producing a February 8th Response to Request for Copies that purported to contain "signed subpoenas issued by Plaintiff to all third parties," when, in fact, at least five (5) and possibly more, of those subpoenas were bogus.

- BSI lied to the Court once by filing an Opposition at DE 167 on February 23 representing that "Defendant received copies of all the original signed subpoenas before the original return date listed in the subpoenas."

- BSI lied to the Court a second time by attaching to that Opposition the same Response to Defendant World Avenue USA, LLC's Request for Copies that purported to contain "signed subpoenas issued by Plaintiff to all third parties," when, in fact, at least five, and possibly more, of the "signed subpoenas" produced with that Response were bogus subpoenas.

- BSI lied to WAUSA again when it represented on May 14th: "To date, you have received copies of all subpoenas served."

- BSI lied to WAUSA again on March 22nd when it attempted to claim that the February 8 e-mail contained "copies of all the previously-served subpoenas to WAUSA."

- BSI lied to the Court five more times when it filed its Opposition to WAUSA's Motion to enforce the April 12th Order at DE 212.

- In short, BSI lied that it had produced the secret subpoenas it issued, when, in fact, the real secret was the sleight of hand that BSI had pulled in issuing these abusive subpoenas in the first place.

- In addition to the foregoing perpetration of a fraud upon the Court, BSI is in contempt of the Court's April 12 Order by, among other things, (i) failing to produce the copies of the original subpoenas issued to non-parties; (ii) failing to provide all responses to all subpoenas; (iii) failing to provide a complete description of the status of the efforts to obtain production; (iv) failing to "immediately" notify non-parties of the Court's April 12th Order in writing; and (v) failing to provide copies of such correspondence.

Now that BSI is caught, it will no doubt exclaim, "No harm, no foul." This is not and cannot be the law in Maryland.

**B.      Applicable Legal Standards For Dismissal Based On Fraud On The Court.**

Once the Court has determined that BSI perpetrated a fraud upon the Court, the next step is to determine the sanction that is commensurate with the fraud. "Due to the very nature of the court as an institution, it must and does have an inherent power to impose order, respect, decorum, silence, and compliance with lawful mandates. This power is organic, without need of a statute or rule for its definition, and it is necessary to the exercise of all other powers." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). "Under the inherent power, a court may issue orders, punish for contempt, vacate judgments obtained by fraud, conduct investigations as necessary to exercise the power, bar persons from the courtroom, assess attorney's fees, and dismiss actions."

In this District, "before exercising [its] inherent power to dismiss a case, a court must consider the following" six factors:

> (1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney, recognizing that we seldom dismiss claims against blameless clients; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest.

*Shaffer*, 11 F.3d at 462-63.

This Court has previously dismissed a case for fraud on the Court where a party has submitted bogus documents to the Court. In *Green v. Mayor and City Council of Baltimore*, 198

- 28 -

F.R.D. 645 (D. Md. 2001), when a police officer sued various officials, his case was dismissed for fraud on the court after he submitted fraudulent affidavits in opposition to a summary judgment motion.  Specifically, the plaintiff signed the signatures of the affiants, without any indication of agency, and, as to each of them, sealed the documents with his notary's seal.  In dismissing the case, the Court held that the plaintiff "willfully deceiv[ed] the court and engag[ed] in conduct utterly inconsistent with the orderly administration of justice." *Id.*  The Court held that the plaintiff's false notarizations are not simply a formal or immaterial matter.  Instead, the Courts rely on trustworthiness on those who submit documents before the Court.

Likewise, in *Bryant-Bunch v. Northampton County*, 2006 WL 4500055, at *1 (E.D.N.C. 2006), the defendants moved to dismiss pro se plaintiff's complaint for violating a court order which prohibited her incarcerated husband from representing her in the action.  In response to the motion, the plaintiff admitted that her husband signed, drafted and filed her pleadings.  The court dismissed the action with prejudice.  *Id.* (*citing Aoude*, 892 F. 2d at 1118) (recognizing the inherent power to dismiss where a party "defiles the judicial system in committing a fraud on the court") and *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F. 2d 585, 589 (9th Cir. 1983) ("[C]ourts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice.")).

Federal courts have consistently held that dismissal is a commensurate sanction for mendacious court filings. For example, in *Combs v. Rockwell International Corp.*, 927 F. 2d 486 (9th Cir. 1991), the plaintiff authorized his counsel to alter his deposition testimony upon review of the transcript. The plaintiff signed the revised deposition transcript and swore that he reviewed the transcript. The Ninth Circuit affirmed the trial court's dismissal of the complaint and emphasized that "falsifying evidence is grounds for the imposition of dismissal." *Id.* at 488.

Similarly, in *Forsberg v. Pefanis*, 261 F.R.D. 694 (N.D. Ga. 2009), the defendant submitted a false statement of a non-party witness denying that the alleged sexual harassment occurred. The witness later acknowledged that the defendant's principals implied that his continued employment was contingent on executing the false declaration. The Court held that the fraudulent statement warranted the "ultimate sanction" and struck its answer. "The use of a forged document in defense of a lawsuit prejudices both the opposing party and ***the judicial system itself***." *Id.* at 702 (emphasis added).

District courts have also not hesitated to dismiss cases for fraud on the court where a party abused the subpoena power, such as submitting a bogus subpoena. *C.B.H. Resources, Inc. v. Mars Forging Co.*, 98 F.R.D. 564 (W.D. Penn. 1983). For example, *C.B.H. Resources*, the court dismissed a claim where a party compelled the appearance of a non-party at deposition by use of a bogus subpoena intended to simulate a real subpoena. Applying the foregoing cases to the facts, it is clear that BSI has perpetrated a fraud upon the Court.

**C.     BSI Has Perpetrated A Fraud On The Court Of Sufficient Gravity That Its Claim Should Be Dismissed.**

Applying the six *Shaffer* factors, the Court should dismiss BSI's Amended Complaint for fraud on the Court. *Shaffer*, 11 F.3d at 462-63. First, regarding "the degree of the wrongdoer's culpability" and the "extent of the client's blameworthiness," it is clear that this was no accident. BSI threatened in an e-mail on December 29th that it would seek discovery regarding FBI investigations. *See* Exhibit 1. BSI did not attach the subpoenas it issued. BSI refused to provide copies of the subpoenas without legal support. BSI then intentionally created phony subpoenas, and tendered them as the real thing.

This was no mistake or paperwork error: the signatures were different, the schedules were different, the footers were different, checks on the boxes were different, the Attachments were

different, the Definitions were different, almost every request was different and, in particular, the abusive, false requests were different. The metadata of the .pdf file provided to WAUSA shows that the file was created on February 3rd -- two days after WAUSA's Request for Copies. The conclusion is inescapable: BSI created a new document to cover up the abusive, false Subpoenas. BSI then vigorously opposed and briefed a motion seeking copies of the Subpoenas and responsive documents. BSI then disobeyed this Court's Order at DE 212 for forty (40) days, and pretended to comply once WAUSA filed another motion to compel compliance. In that filing, although the Court had ordered production of "copies of the original subpoenas," BSI again disobeyed this Court's Order and pointed to its production of the Bogus Subpoenas on February 8th as compliance with the Court's April 12th Order. BSI lied a total of nine (9) times in its filings in this Court.

Second, the "prejudice to the judicial process and the administration of justice" is clear. BSI abused the subpoena power by issuing secret Subpoenas to conduct a secret discovery campaign. BSI lied to the Court nine (9) times in its filings. BSI forced the Court to read caselaw and issue an Order [DE 212] on a fully-briefed issue that BSI created in order to avoid complying with the plain language of Rule 45 and normal practice -- all in order to cover up what BSI had done with the Subpoenas. This is egregious behavior from a litigant that the Court

has already observed in the past was unfairly monopolizing the Court's time.[5]   BSI then disobeyed for forty (40) days the resulting Order at DE 212 which ordered "immediate" compliance and still has not complied to this very day.

Third, the prejudice to the victim is clear.  BSI used legal process to falsely inform third parties that WAUSA was under an investigation by the "Federal Bureau of Investigations" [sic] and the U.S. Department of Justice.  Third parties have been informed that Defendant is under investigation by the FBI.  Since other courts have found that the expense of mere "additional motions practice" is sufficient to meet this factor, *Bryant-Bunch*, 2006 WL 4500055, at *4, *a fortiorari*, the standard is met here.

No other sanction other than dismissal will adequately address the harm done to the judicial process, which cannot be undone.  Moreover, strong sanctions are warranted in light of the repeated, continuous, and knowing nature of the misconduct.  *Bryant-Bunch*, 2006 WL 4500055, at *4 (rejecting lesser sanctions of dismissal without prejudice or monetary sanctions "in light of the repeated, direct, and willful filings that the plaintiff made"); *C.B.H. Resources,* 98

---

[5] At a July 14, 2009 hearing, the Court warned Plaintiff:

> You know you folks [BSI] are becoming regular visitors of my court in a way that somehow inappropriately, I think, monopolizes the time of the Court. You're back on jurisdictional issues again and again. I think you've got to tighten your game a little bit. This time around certainly is a good example of it, because we have to scramble through to see exactly how these folks get into the case. ... I think you guys have been sloppy on this, I really do. You may have a case to make, but you've just let it go on this jurisdictional issue ... You folks seem to be in this business right now of suing spammers so-to-speak, what you believe to be spammers. If you're in the business, you've got to be much more careful on the jurisdictional issue because it's tortuous.

*See* DE 121, Exhibit 1, 29:22-30:03; 38:20-23, 48:17-22

F.R.D. at 569 ("We cannot allow a party which has demonstrated such a flagrant disregard for our rules simply to receive a small penalty and then go forward with its claim").

Finally, the public interest strongly favors severe sanctions for this misconduct. *Shaffer*, 11 F.3d at 458; *Bryant-Bunch*, 2006 WL 4500055, at *4 (stating that "preserving the integrity of the judicial system and the orderly administration of justice strongly serve the public interest"). Quite simply, the behavior here was nothing short of outrageous.

## IV.    CONCLUSION

Litigation is not a game of chance in which parties can abuse the subpoena power, make false representations to the Court, disobey Court Orders, conjure up phony documents, lie about what it did to avoid being caught, and then claim "no harm, no foul" after it is caught. The truth has caught up with BSI, and it cannot be heard to pretend these events never happened. This Court should dismiss BSI's Amended Complaint with prejudice and enter judgment against BSI for fraud on the Court and enter an award of attorneys' fees and costs as sanctions.

**WHEREFORE**, Defendant WORLD AVENUE USA, LLC respectfully requests entry of judgment dismissing Plaintiff's Amended Complaint with prejudice based on its perpetration of a fraud on the Court, and awarding attorneys' fees and costs against Plaintiff, and for such other and further relief as this Court deems just and appropriate.

Dated:  July 6, 2010.

Respectfully submitted,

*Attorneys for World Avenue USA, LLC*

GREENBERG TRAURIG, LLP

___/s/_____

Sanford M. Saunders, Jr., Esq.
USDC, MD #4734
saunderss@gtlaw.com
Nicoleta Burlacu, Esq.
BurlacuN@gtlaw.com
*Admitted Pro Hac Vice*
GREENBERG TRAURIG, LLP
2101 L Street, NW, Suite 1000
Washington, DC 20037
Telephone:  202-331-3100
Facsimile:  202-331-3101

--and--

Kenneth Horky, Esq.
Florida Bar No. 691194
horkyk@gtlaw.com
John L. McManus, Esq.
Florida Bar No. 0119423
mcmanusj@gtlaw.com
*Admitted Pro Hac Vice*
GREENBERG TRAURIG, P.A.
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, FL 33301
Telephone: 954-765-0500
Facsimile:  954-765-1477

- 34 -