**IN THE U.S. DISTRICT COURT FOR MARYLAND,**
**SOUTHERN DIVISION**

BEYOND SYSTEMS, INC.     )
    Plaintiff          )
    v.              )       Case No. PJM 08 cv 0921
                   )       **REDACTED VERSION**
WORLD AVENUE USA, LLC, et al. )
    Defendants     )
_____ )

## OPPOSITION TO THIRD-PARTY DEFENDANTS' MOTION TO DISMISS

Defendant and Third-Party Plaintiff, World Avenue USA, LLC ("WAUSA") respectfully submits this Memorandum of Points and Authorities in opposition to the Motion to Dismiss ("MTD") Third-Party Complaint ("TPC") filed by James Joseph Wagner and Hypertouch, Inc. ("Wagner", "Hypertouch", and collectively "Wagner/Hypertouch"). Wagner and Hypertouch's Motion should be denied because WAUSA sufficiently plead a plausible claim under *Twombly* and for purposes of a motion to dismiss, this Court already resolved these issues in a parallel case involving Wagner, Hypertouch, and BSI.

## INTRODUCTION

Plaintiff, Beyond Systems, Inc. ("BSI") alleges that WAUSA sent or assisted in sending tens of thousands of emails to BSI that supposedly contain deceptive header information and subject lines ("Emails at Issue"). *See* Amended Complaint ("Am. Compl.") at ¶¶ 97-82. However, admissions made by BSI and Wagner/Hypertouch, and other discovery, reveal that it was actually Wagner and Hypertouch, and not WAUSA, that sent BSI virtually all (99%) of the Emails at Issue. Accordingly, WAUSA filed its TPC against Wagner and Hypertouch for indemnification and contribution.

Wagner/Hypertouch seek dismissal of the TPC on several grounds.[1] Initially, they argue the TPC should be dismissed because they are an "interactive computer service" ("ICS") within the meaning of the Federal Communications Decency Act ("CDA"), 47 USCS § 230, and thus, immune from liability. This argument fails because WAUSA's claim is based on the transmittal and not the content of the emails. Furthermore, Hypertouch is not an ICS under the CDA because as alleged in the TPC, it had a specific business purpose for transmitting the Emails at Issue to BSI -- the purpose of manufacturing litigation in a more favorable jurisdiction -- and was not acting in any purported role as a supposed internet service provider ("ISP") routinely delivering email to its customers. Moreover, the CDA does not immunize Wagner or Hypertouch because they added original content to the Emails at Issue, and the CDA does not immunize a party that adds content to emails. Finally, as previously found by this Court in a parallel case, Wagner/Hypertouch's arguments raise factual issues that cannot be decided on a motion to dismiss.[2]

Wagner/Hypertouch's next argument is that the indemnification count fails to state a claim upon which relief can be granted because WAUSA's liability to BSI is limited to "active" or primary negligence, not "passive" or secondary negligence. This argument fails because BSI specifically alleges that WAUSA, and other un-served defendants, may be liable for passive rather than active negligence, *i.e.,* for assisting in the transmission, or conspiring with others who actually performed the transmission, of *all* the Emails at Issue.

---

[1] This Court addressed the identical facts and issues in a hearing held on October 19, 2009, in the related case *Beyond Systems Inc. v Kraft*, No. 08-cv-409 (PJM) (D. Md. filed Feb. 14, 2008), where the Court denied Joseph Wagner/Hypertouch's Motion to Dismiss. *See* DE 230.
[2] *Novak v. Overture Servs., Inc.,* 309 F. Supp. 2d 446, 452 (E.D.N.Y. 2004), *see infra* at pp 10-11. *See* transcript of hearing in Kraft Litigation on Wagner/Hypertouch's Motion to Dismiss at pp. 39-40, attached as Exhibit 1.

Wagner and Hypertouch's last argument is that the indemnification count should be dismissed because WAUSA did not allege a "special relationship" with Wagner or Hypertouch. This argument also falls short, because Maryland law does not require WAUSA allege a special relationship where, as here, they seek equitable indemnity implied in law (also known as tort indemnity).

## **FACTUAL BACKGROUND**

WAUSA filed the TPC against Wagner/Hypertouch almost a year ago, on August 7, 2009. *See* DE 86.  Initially Wagner/Hypertouch deliberately wasted this Court's time with a frivolous Motion to Quash Service claiming a hot of absurdities including that process was served on a five-year-old child. Now, they have filed an equally baseless MTD and cited that baseless motion as an excuse to file a separate motion to stay all discovery as to the Third Party Defendants pending ruling on the MTD (DE 230 and 310).

Knowing that discovery is currently scheduled to close in November 2010, they have done all this deliberately in order to refuse to participate in discovery until the discovery cutoff occurs.  Then they will doubtless claim that either discovery must be extended again, or move to sever the third party claims while crying that they had no opportunity to defend themselves. This Court needs to understand the real agenda and tactical gamesmanship underpinning the MTD, the filing of which is otherwise inexplicable since each of the arguments made therein have already been rejected by this Court in parallel litigation.  Only by understanding this backdrop can the Court truly appreciate how egregiously Wagner/Hypertouch's tactics are calculated to impede discovery and delay this case.[3]   Likewise, only by understanding this backdrop can the Court truly realize how decisively it must act to suppress this conduct.

---

[3] Under the Scheduling Order discovery is set to close on November 15, 2010.  *See* DE 243 and 244.

WAUSA commends to this Court its own ruling made in October 2009, where this Court denied a Motion to Dismiss made on similar grounds in *Beyond Systems Inc. v Kraft Foods Inc.,* No. 08-cv-409 (PJM) (D. Md. filed Feb. 14, 2008) ("*Kraft Litigation*"). Given that ruling and the rationale for it explained therein, there is simply no excuse for Wagner/Hypertouch ignoring this Court's ruling and, six months later, filing the MTD.[4]  *See* DE 230, No. 08-cv-409.

When this Court disposed of Wagner/Hypertouch's Motion to Quash Service it found Wagner/Hypertouch's positions "unsupported and … a far cry from the presentation of 'strong and convincing evidence' necessary to prevail on their motion."  *See* DE 216 at p. 2. Therefore, the Court properly denied Wagner/Hypertouch's Motion to Quash Service and ordered them to answer to the TPC within ten days. *Id.*  Figuratively thumbing their nose at the Court and WAUSA, they did indeed answer the TPC on May 10, 2010, but then filed the MTD on June 8, 2010.  DE 263-1.   Then, as outlined above, they used the existence of the MTD as an excuse to refuse to participate in discovery.

### A.     BSI's Allegations in the Amended Complaint.

 BSI alleges in the Second Amended Complaint [DE 34] that since 2004 it received at least 68,300 emails involving WAUSA.  *See* Am. Compl. ¶¶ 66, 100, Prayer for Relief. Specifically, BSI alleges, *inter alia*, that WAUSA:

- conspired to initiate, and/or assisted in the transmission of the Emails at Issue to recipients in Maryland, including Plaintiff;  ¶95;

- planned, prepared, designed, executed, approved, modified, condoned and ratified the sending of the Emails at Issue; ¶97;

---

[4] The MTD was filed one week before Wagner/Hypertouch filed their opposition to WAUSA's Motion to Compel Discovery arguing, three months after it failed to respond in any way at all to multiple discovery requests, that the Court should stay discovery against them until it rules on the MTD. The entire opposition to the Motion to Compel Discovery is built around the existence of the MTD.  *See* DE 230 and 310.

- WAUSA paid others for services related to the transmission, and received payment form advertisers and other for Defendants' services related to the transmission; ¶98;

- either directly of indirectly, caused product and services to be sold and/or derived as a result of the transmission; ¶98;

- that the transmissions of the emails identified herein were actions that each of the Defendants authorized, controlled or directed, or had the ability to authorize, control or direct, and were actions for which each of the Defendants is liable. ¶ 99.

- All conduct alleged [ ] was performed either directly by WAUSA or by persons acting as [its] agents. All persons who participated in the events alleged above acted as agents for WAUSA. *Id.*

BSI seeks in excess of $100,000,000 based on WAUSA's alleged transmission of approximately 68,300 allegedly unsolicited commercial electronic mails ("E-Mails At Issue") that purportedly violate Maryland and Florida law.[5]  BSI posits itself as a victimized Maryland resident burdened by the added time and expense spent processing unsolicited commercial e-mail, and asserts that it did nothing to bring such e-mail upon itself.  *See* Am. Compl., ¶ 64.

### B.    WAUSA' Allegations in the TPC

WAUSA filed its TPC on August 7, 2009 against Wagner and Hypertouch in light of admissions made by BSI and Wagner/Hypertouch, and based on other discovery, including discovery in *Kraft Litigation* that is publicly available.  Among other things, WAUSA alleges:

- Hypertouch is not a legitimate internet service provider and has no legitimate business purpose. Instead, Hypertouch's primary business activity is suing internet advertisers, affiliate networks, and others nationwide over alleged illegal commercial emails that it collects,(TPC ¶ 13);

- Wagner approached Paul Wagner and asked Paul Wagner/BSI to receive and

---

[5] Maryland Commercial Electronic Mail Act, Md. Code, *Commercial Law*, § 14-3001 *et seq.* and the Florida Electronic Mail Communications Act, Section 668.60 *et seq.*, Fla. Stat. ("FL-CEMA").

store certain emails that would be received by Wagner/Hypertouch. Paul Wagner agreed to Wagner's request. Wagner then configured the Wagner/Hypertouch email servers to send the emails it received to Paul Wagner/BSI in Maryland. Paul Wagner/BSI received and stored those emails, (TPC ¶ 15);

- Approximately 99% of the Emails at Issue in the underlying litigation filed by BSI were received by Paul Wagner/BSI directly from Wagner/Hypertouch (TPC ¶ 16); and

- But for the actions of Wagner/Hypertouch in sending or causing to be sent the Hypertouch Emails, BSI would not have received the Hypertouch Emails, would have no claim under the Maryland or Florida statutes, and would not have suffered any of its alleged damages claimed in its lawsuit as to the Hypertouch Emails. (TPC ¶ 24).

WAUSA seeks indemnification and contribution from Wagner and Hypertouch in light of these factually supported allegations. TPC ¶¶ 26 and 33.

### C. Wagner/Hypertouch Sent BSI Virtually All of the Emails at Issue to Manufacture The Underlying Litigation

Admissions made by BSI and Wagner/Hypertouch and, other indisputable evidence obtained during discovery in this case and in *Kraft Litigation*, demonstrate that BSI and Hypertouch are not legitimate ISPs but instead manufacture lawsuits including this one. To this end, Wagner/Hypertouch sent to BSI virtually all of the Emails at Issue in this lawsuit. *See* TPC at ¶ 16.

Although BSI purports to be a Maryland-based ISP, BSI is actually in the "business" of manufacturing lawsuits, having already manufactured at least 24 lawsuits involving commercial email similar to the instant litigation.[6] *See* http://www.beyondsystems.net/span_cases.html (listing lawsuits filed by Beyond Systems, attached to TPC [DE 86] as Exhibit A. Paul Wagner, leads BSI's litigation efforts. Joseph Wagner is Paul Wagner's brother. (Paul Wagner Deposition, taken Sept. 17, 2009, attached as Exhibit 2 ("P. Wagner Depo") at 10:17-21. *See also* Paul

---

[6] WAUSA filed a Motion for Partial Summary Judgment against BSI on this issue. *See* DE 267 and 267.

Wagner Deposition taken in *Kraft Litigation* ("P. Wagner Kraft Depo"), attached as Exhibit 3, at 18:2-4.) Joseph Wagner runs Hypertouch out of his home. (Joseph Wagner Deposition taken in *Kraft Litigation,* attached as Exhibit. 4, ("J. Wagner Depo.") at 136:11-16).

Like BSI, Hypertouch is not a legitimate or a bona fide ISP, but is instead a lawsuit factory that affirmatively collects emails and then sues on them. (J. Wagner Depo. at 168:15-169:15; 189:8-192:5.); *see also* pictures of alleged Hypertouch's office taken in *Hypertouch, Inc. v. Kennedy-Western University*, No. C04-05203 SL, Exhibit 1000 and 1001, attached hereto as Exhibit 5.   In fact, Joseph Wagner admitted that he filed at least 16 lawsuits in his personal capacity and over 25 lawsuits in Hypertouch's name. (J. Wagner Depo. at 168:15-172:5.)

Paul Wagner/BSI and Joseph Wagner/Hypertouch have conspired with each other to manufacture lawsuits.  The Hypertouch "business" operated by Mr. Wagner seems primarily for his own benefit and that of his brother... "[Joseph] Wagner proudly proclaimed in the hearing that he has intentionally configured his email system and "service" so as to capture all "spam" sent to him and the nonoperational email in-boxes on his system. He routes this "spam" to his brother for further analysis and possible claims against the malefactors." (*Hypertouch, Inc. v. Stamps.com*, Final Award of Arbitrator (American Arbitration Assoc. Jan. 5, 2006) at 10-11, attached as Exhibit 6.)  This lawsuit is no different.

First, Wagner/Hypertouch received and stored "all e-mails," including alleged "spam," that were addressed to certain domains Wagner/Hypertouch "own[s], host[s] or manage[s]." (J. Wagner Depo. at 149:17-153:13; 189:8-192:9.). ██████████████████████████
██████████████████████████████████████

Second, several years prior to when BSI filed this case, Joseph Wagner/Hypertouch asked Paul Wagner/BSI "Would you archive for <u>hypertouch.com</u>" and otherwise store emails,

including alleged "spam," that Joseph Wagner/Hypertouch would forward to Paul Wagner/BSI. (P. Wagner Kraft Depo. at 88:5-11; J. Wagner Depo. at 190:3-192:20; 198:23-199:19; 301:25-302:10; 309:13-21.) Paul Wagner/BSI "said 'yes,' and pursuant to this agreement among brothers, Joseph Wagner/Hypertouch then forwarded emails to Paul Wagner/BSI knowing that the emails "would include spam." (P. Wagner Kraft Depo. at 9:9-15, 88:5-89:1; J. Wagner Depo. at 191:25-192:20; 195:6-10; 199:16-19; 200:21-25; 205:21-24.). ███████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████

    ███████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████ Indeed, <u>over 99%</u> of the

Emails at Issue in this suit were sent by Hypertouch to BSI. (TPC at ¶16). ███████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████

**ARGUMENT**

**I.      Standard of Review**

In reviewing a complaint for dismissal under FRCP 12(b)(6), courts accept the material facts alleged in the complaint as true and construe all reasonable inferences in the pleader's favor. *Bruce v. Riddle,* 631 F.2d 272, 273 (4th Cir. 1980).  A complaint should not be dismissed for failure to state a claim upon which relief may be granted under FRCP 12(b)(6) unless it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Ail Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  The TPC defines the Hypertouch Emails as the emails that BSI received from Wagner/Hypertouch. (TPC ¶ 18.).  Wagner/Hypertouch cannot prove their CDA affirmative defense or establish that WAUSA can be found liable only for active negligence if the Court assumes all of the allegations in the TPC to be true.  Accordingly, WAUSA's allegations sufficiently state a claim for indemnification and contribution against Wagner and Hypertouch, and WAUSA's TPC "raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 570.

**II.  The CDA Does Not Bar the Claims Against Hypertouch**

**1.      Hypertouch Is Not an "Interactive Computer Service" under the CDA**

Wagner/Hypertouch argue that § 230(c)(1) of the CDA bars the claims alleged against it in the TPC. That section provides:

> No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.

47 U.S.C. § 230(c)(1). Congress enacted this provision consistent with the CDA's express purpose of promoting "a forum for a true diversity of political discourse, unique opportunities for cultural development, and myriad avenues for intellectual activity."  47 U.S.C. § 230(a)(3).

Wagner/Hypertouch's argument that the CDA bars the claims alleged against them fails for several reasons.  First, the TPC alleges that Wagner and Hypertouch are liable for sending virtually all of the emails to BSI and not for the content of the emails.  Second, the TPC alleges that Hypertouch is not an ICS under the CDA because it sent virtually all of the Emails at Issue to BSI for its ***own purposes*** and in the furtherance of manufacturing this lawsuit, and not in its role as an alleged ISP that delivers emails intended for its customers.  The Court already questioned Hypertouch's *bona fide* ISP capacity in *Kraft Litigation*.  Specifically, it noted:

> there some question about whether these defendants really are *bona fide* internet service provider, and whether they aren't in effect in league with BSI to kind of manufacture lawsuits?  [ ] And I must tell you in candor, BSI has litigated a lot in this court, and I don't know what else BSI does besides file these suits, but it did raise a flag with me to see them back here yet again with other claims, and I'm wondering what else they do besides file lawsuits. [ ] Suppose they do meet technically some definitions, but in fact it could be established in the course of discovery that they really had an understanding with BSI to try and call all these potential spam messages and feed them to BSI so that BSI could file lawsuits based on them, which is what they're saying. Suppose they could put that out there in the record before a trier of fact.  Don't you think that that might affect the finding of the *bona fides* of your client? but you're here for Motion for hat's where we are now.

October 19, 2009 Hearing Transcript. at pp. 26-27.

Third, Wagner/Hypertouch are not subject to immunity under the CDA because Wagner/Hypertouch ***added*** and changed the original content to the emails that were sent to BSI and, therefore, the emails that Wagner/Hypertouch sent did not consist ***solely*** of "information provided by another content provider."  *See* Excerpts of Initial Expert Report of Dr. Neal Krawetz, pp. 26-38, Section 4: "Email Archive Analysis"; and Excerpts of Initial Expert Report Rebuttal of Dr. Neal Krawetz, pp. 6-15, Sections "Email Modifications; Missing Content Corruption; Content Boundary without Attachments, and Absolute Copies", attached hereto as composite Exhibit 7.  Finally, and critically, Wagner/Hypertouch's arguments raise fact issues

that preclude granting the MTD.  As the Court stated during the hearing on a similar Motion to Dismiss in the *Kraft Litigation,* "all the arguments raised by the third-party defendants are factual issues that cannot be resolved on a Motion to Dismiss, and the Court agrees that the Motion to Dismiss in whole or part is denied, and that discovery should go forward on that point as appropriate, and we'll see where we are as to that."   October 19, 2009 Hearing Transcript. at pp. 39-40.

Moreover, the TPC alleges that Hypertouch is not an "interactive computer service provider" within the meaning of the CDA.  The CDA defines "interactive computer service" (or "ICS") as:

> any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions.

47 U.S.C. § 230(f)(2).

In turn, courts, including the Fourth Circuit, have limited the definition of ICS to an entity that engages in the "exercise of a publisher's traditional editorial functions — such as deciding whether to publish, withdraw, postpone, or alter content."  *Zeran,* 129 F. 3d at 329 (4th Cir. 1997).  Thus, the Fourth Circuit in *Zeran* held that America On Line (AOL) was an ICS because it offered a "connection to the Internet as a whole" and allowed its "subscribers to access information communicated and stored only on each computer service's individual proprietary network." *Id.* at 329-330.  Similarly, the court in *Chicago Lawyers* held that Craigslist, an operator of a website that publishes notices, statements or advertisements with respect to the sale or rental of dwellings, was an ICS because it provided "access" to a website at issue in the lawsuit. *Chicago Lawyers' Committee for Civil Rights Under the Law, Inc. v. Craigslist, Inc.,* 461 F. Supp. 2d 681, 698 (N.D. Ill. 2006).  And, in *Murawski,* the court found that Ask.com, an

internet search engine at issue in the lawsuit, qualified as an ICS because it provided "access" to a directory of web pages. *Murawski v. Pataki,* 514 F. Supp. 2d 577, 591 (S.D.N.Y. 2007).

Additionally, in interpreting whether a plaintiff was an Internet Access Service ("ISA") under the CAN-SPAM Act (a statute governing topics similar to CDA), the court in *Gordon v. Virtumondo* found that merely expanding "time and resources seeking out and capturing massive volumes of spam, which [the plaintiff] collects by setting up domains as 'spam traps' and then organiz[ing] [them] for use in [his] prolific lawsuits," does not create standing under the act as an ISA. 575 F.3d 1040, 1056, 1057 (9th Cir. 2009). Solely arguments of technical compliance with this standing component, without any regard for the overarching congressional purpose, are not compelling where "[t]he CAN-SPAM Act was enacted to protect individuals and legitimate business - not to support a litigation mill for entrepreneurs like Gordon." *Id.* at 1052, 1057. The Court embraced Gordon argument during the hearing on Wagner/Hypertouch's Motion to Dismiss in *Kraft Litigation* noting even if Hypertouch arguably would meet "technically some definitions, but in fact it could be established in the course of discovery that they really had an understanding with BSI to try and call all these potential spam messages and feed them to BSI so that BSI could file lawsuits based on them … that that might affect the finding of the *bona fide"* of Hypertouch. October 19, 2009 Hearing Transcript. at pp. 26-27; *supra* at pp. 10-11.

Furthermore, in stark contrast to the facts in which courts found ICS status, the TPC alleges that:

> Hypertouch is not a legitimate internet service provider and has no legitimate business purpose. Instead, Hypertouch's primary business activity is suing internet advertisers, affiliate networks, and others nationwide over alleged illegal commercial emails that it collects.

(TPC ¶ 13.)

Thus, the TPC alleges specific facts showing that Hypertouch's use of computers to manufacture lawsuits does not involve a "publisher's traditional editorial functions — such as deciding whether to publish, withdraw, postpone, or alter content" within the meaning of the CDA as interpreted by *Zeran* or any other court. Instead, Wagner/Hypertouch's actions are more like the defendant's actions in *Doe* where the court rejected defendant's claim that it was an ICS where it merely forwarded emails containing third-party content that it found "relevant or interesting," and noted that such activity was not "akin to a blog, website, or listserv." *Doe v. City of New York,* 583 F. Supp. 2d 444, 449 (S.D.N.Y. 2008).

Further, whether Hypertouch is an ICS is a legal question which potentially requires the resolution of disputed facts, and thus, is at this stage a fact question for the jury. It is the subject of discovery WAUSA has served upon Wagner/Hypertouch,[7] and BSI on this very issue. October 19, 2009 Hearing Transcript. at pp. 39-40. However, all  involved continue to resist disclosure of the facts underlying this relationship. Whether Hypertouch is within the class of entities that the CDA is intended to protect is also subject to discovery. *Ferron v. Echostar Satellite, LLC,* No. 2:06-CV-453, 2008 U.S. Dist. LEXIS 38257, * 12 (S.D. Ohio Feb. 6, 2008) (ordering discovery to examine whether plaintiff qualified as a "consumer" under an Ohio statute where plaintiff "developed a scheme aimed at receiving, gathering, and sorting huge volumes of emails for the sole purpose of formulating and asserting lawsuits."). However, as pointed out above, Hypertouch has contrived a specious excuse to refuse to participate in discovery and will stay this course until the Court puts an end to it.

---

[7] Once again, and as mentioned above, WAUSA was forced to file a Motion to Compel on Wagner/Hypertouch because they resist providing responsive information that would prove facts regarding Hypertouch's bona fide ISP status.

Beyond the plausible scenario plead in the TPC, WAUSA references the following evidence showing that, contrary to the assertions in eth MTD, Hypertouch did not act as BSI's ISP.

- BSI alleges that it is an internet service provider itself, thereby making any claim that it needs Hypertouch's alleged ICS services (specifically internet services) dubious at best. (Am. Com. ¶ 2.)

- 
    ; *see also* J. Wagner Depo. at 46:16-24; s*ee supra* at pp. 7-8.

Furthermore, as a matter of law, a finding that Hypertouch is an ICS and immune from suit would undermine the express purposes of the CDA, which includes promoting "a forum for a true diversity of political discourse, unique opportunities for cultural development, and myriad avenues for intellectual activity." 47 U.S.C. § 230(a)(3).  Indeed, through the CDA, Congress "sought to prevent lawsuits from shutting down websites and other services on the Internet" and not facilitate lawsuits.  *Batzel v. Smith,* 333 F.3d 1018, 1027-28 (9th Cir. 2003) (emphasis added). Like in *Gordon*,  simply because Hypertouch operates under the façade of an ISC or, in its own words, merely "considers itself to be an internet service provider," or even has "technical compliance" with the statutory definition, does not entitle it to statutory protection where its activities are focused on collecting emails to manufacture lawsuits. MTD at 5.

 Wagner/Hypertouch and Paul Wagner/BSI have a well-documented history of initiating baseless lawsuits against companies that are involved in internet advertising. Joseph Wagner/Hypertouch and BSI do so by collecting emails for years and then sue for windfalls in statutory damages. For example, BSI maintains that it is entitled to a total of over a hundred million dollars in statutory damages but claims to have incurred ▮▮▮▮▮▮▮ in actual

damages. *See* BSI's response to Discovery Request, BSI-DISCL 000001-09, attached as Exhibit 8. Allowing Wagner/Hypertouch to invoke immunity will allow them to continue proliferating lawsuits that seek to put legitimate on-line advertising companies out of business, thereby frustrating the CDA's purpose to promote internet speech. Indeed, if Hypertouch is found to be an ICS, then anyone that cloaks itself as an ICS could shield itself from immunity and create endless lawsuits, and the CDA "would exempt virtually all Internet use from liability, expanding the statute's reach beyond that which Congress intended." *Doe v. City of New York,* 583 F. Supp. 2d 444, 449 (S.D.N.Y. 2008). "Unquestionably the courts, in interpreting a statute, have some scope for adopting a restricted rather than a literal or usual meaning of its words where acceptance of that meaning would lead to absurd results or would thwart the obvious purpose of the statute." *Comm'r v. Brown,* 380 U.S. 563, 571 (U.S. 1965) (citations and quotations omitted). The Court should reject Wagner/Hypertouch's attempt to contort the statute into protecting companies that use the internet to manufacture lawsuits.

### 2.    WAUSA Is Entitled to Indemnification Because Joseph Wagner/Hypertouch Sent the Emails to BSI

Wagner/Hypertouch argue that "liability here would make a service provider 'liable for information originating from a third-party user of the service.'" MTD at ¶16. However, the TPC alleges that WAUSA is entitled to indemnification and contribution from Wagner and Hypertouch because Wagner/Hypertouch sent to BSI essentially all of the Emails at Issue in the first place and not for the content in the emails as required for the CDA to apply. *Id.* ¶¶19 and 20.

For example, the Fourth Circuit held that AOL can not be liable for harm to a plaintiff caused by an unidentified party's posting on an AOL website that accused plaintiff of selling goods that celebrated the Oklahoma City bombing. *Zeran v. America Online, Inc.,* 129 F. 3d

327, 328-329 (4th Cir. 1997).  Likewise, the court in *Noah* held that AOL could not be held liable where plaintiff claimed it was harmed by "harassing" statements about the Islamic religion posted by someone other than AOL.  *Noah v. AOL Time Warner Inc.,* 261 F. Supp. 2d 532, 535-38 (E.D. Va. 2003).  Similarly, the court in *Blumenthal* held that AOL was not liable where someone else posted information that harmed plaintiff by reporting that he had committed spousal abuse.  *Blumenthal v. Drudge,* 992 F. Supp. 44, 50 (D.D.C. 1998).  Other courts have found that CDA immunity applies where the harm results from the contents of the message.  *See, e.g., Ben Ezra, Weinstein, and Co. v. America Online, Inc.,* 206 F.3d 980, 983 (10th Cir. 2000) (plaintiff harmed by third party's incorrect information concerning plaintiffs stock price and share volume); *Patentwizard, Inc. v. Kinko's, Inc.,* 163 F. Supp. 2d 1069, 1070 (D.S.D. 2001) (plaintiffs harmed by "numerous disparaging statements" that defamed them and interfered with their prospective business relationships).

Here, WAUSA does not seek to hold Wagner/Hypertouch liable for the content in the emails but instead for sending the emails: "[B]ut for the actions of Joseph Wagner/Hypertouch in sending or causing to be sent the Hypertouch Emails, Beyond Systems would not have received the Hypertouch Emails, would have no claim under the Maryland or Florida statutes, and would not have suffered any of its alleged damages claimed in its lawsuit as to the Hypertouch Emails."  TPC  ¶  24.  Accordingly, and unlike the cases cited by Wagner/Hypertouch, WAUSA seeks only indemnity for allegations based solely on transmittal:

> Such an enormous volume of unsolicited and unwanted email traffic places a tremendous strain on resources, especially on private Internet Services Providers such as BSI.  To maintain the same level of service to its clients, ISP's must purchase more equipment, purchase additional software, and hire more staff to handle the overwhelming  volume of unsolicited and unwanted email traffic to maintain the same level of service to its clients.  These additional maintenance costs are eventually passed

on to ISP customers - both consumers and businesses - in the form of higher costs and
higher monthly access fees.

BSI's Amended Complaint ¶ 18, DE 34.

Thus, contrary to Wagner/Hypertouch's argument, the TPC alleges that WAUSA is
entitled to indemnification and contribution because Wagner/Hypertouch sent to BSI the emails
in the first place and not for the information in the emails.  In an analogous case, *Anthony v.
Yahoo Inc.,* 421 F. Supp. 2d 1257 (N.D. Cal. 2006), the court denied a motion to dismiss
plaintiff's claims that Yahoo! sent users false profiles for the purpose of luring them into
renewing their subscriptions. *Id.* at 1262.  The court held that the CDA did not shield an ISP
from such allegations "[b]ecause [the plaintiff] posits that Yahoo!'s *manner of presenting the
profiles — not the underlying profiles themselves — constitute fraud*[.]" *Id.* at 1263 (emphasis added).
Therefore, as in *Anthony,* the CDA does not immunize Hypertouch insofar as its wrongdoing is
unrelated to the content itself.

Furthermore, Wagner/Hypertouch's argument that WAUSA "wants to deflect or recoup
any economic damage from legal liability arising from its promotional spam arising from its
marketers like Mr. Ralsky" is the baseless standard "Ralsky argument" that BSI, and now
Wagner/Hypertouch, invokes any time they have no valid substantive or legal response.  *See*
WAUSA's Motion to Dismiss for Fraud on Court, filed on July 6, 2010 at DE 323.
Additionally, this argument fails because neither BSI, nor Wagner/Hypertouch was able to link
the alleged Emails at Issue to WAUSA and thus even if Ralsky had any involvement in this
matter there is no evidence connecting him to WAUSA.

**3      Hypertouch Added Original Content to the Emails.**

Hypertouch argues that the spam emails "were without question 'provided by another information content provider.'" MTD at 17. This argument fails because Wagner/Hypertouch admitted to adding original content to Emails at Issue before sending them to BSI, and the content that Wagner/Hypertouch added goes to the heart of whether the emails have false and misleading header information and raises factual issues that cannot be resolved in a motion to dismiss. *See* infra.

The CDA defines an "information content provider" as "any person or entity that is responsible in whole *or in part*, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3) (emphasis added). Thus, the CDA protects ISCs from liability based *only* on "information provided by *another* information content provider," and does not immunize a party that *adds* original content. 47 U.S.C. § 230(c)(1) (emphasis added).

Here, Wagner/Hypertouch admitted that Hypertouch computers added (as opposed to altered) content at least to the headers in Emails at Issue. (J. Wagner Depo. at 234:4-236:16, 238:7-239:1, 244:5-11, 368:22-25; 379:2-17, 381:2-382:1, 391:5-393:22, 398:3-9, 412:11-413:4.) And, the email headers are the very parts of the emails that BSI alleges are false and misleading. (Am. Complaint ¶ 79.) Thus, Joseph Wagner/Hypertouch's addition of content and raise factual issues that cannot be resolved on a FRCP 12(b)(6) motion. *Anthony,* 421 F. Supp. at 1263 ("The critical issue is whether [the party] acted as an information content provider with respect to the information that appellants claim is false or misleading").

The holdings in *Anthony* and *Hy Cite* are instructive on this issue as well. In *Anthony,* the court found that the CDA did not apply where the plaintiff alleged "that Yahoo! *creates* false profiles, not merely fails to delete them," and noted that "[n]o case of which this court

is aware has immunized a defendant from allegations that it created tortious content." *Anthony,* 421 F. Supp. 2d at 1262-63. Likewise, in *Hy Cite,* the court denied defendants' FRCP 12(b)(6) motion where plaintiff alleged that the actionable content were created by the defendants. *Hy Cite Corp. v. badbusinessbureau.com, LLC,* 418 F. Supp. 2d 1142, 1148-49 (D. Ariz. 2005).[8] Whether the information Wagner/Hypertouch added is false or misleading remains to be seen, and in all events raises fact issues as described more fully below.

### 4. Wagner/Hypertouch's CDA Arguments Raise Factual Issues That Cannot Be Resolved In The Motion to Dismiss.

As the Court found in *Kraft Litigation* on similar facts and arguments, fact issues preclude granting Joseph Wagner/Hypertouch's motion to dismiss. October 19, 2009 Hearing Transcript. at pp. 39-40.   Because the facts and arguments are identical to those in *Kraft Litigation*, the results should be the same, and Wagner/Hypertouch's Motion to Dismiss should be denied.

Additionally, "invocation of Section 230(c) immunity constitutes an affirmative defense," and [a]s the parties are not required to plead around affirmative defenses, such an affirmative defense is generally not fodder for a Rule 12(b)(6) motion." *Novak v. Overture Servs., Inc.,* 309 F. Supp. 2d 446, 452 (E.D.N.Y. 2004).

This allegations and facts here differ from those in *Keynetics* at least because WAUSA contest that Hypertouch is an ICS and because Wagner/Hypertouch added contents to Emails at Issue. *Beyond Sys., Inc. v. Keynetics, Inc.,* 422 F. Supp. 2d 523 (D. Md. 2006).

Here, the specific factual issues to be resolved include whether Hypertouch is an ICS under the CDA. Indeed, whether Hypertouch is within the class of entities that the CDA is

---

[8] *See also Doe v. Friendfinder Network, Inc.,* 540 F. Supp. 2d 288 (D.N.H. 2008) (the CDA offers no protection to a service provider for publishing tortious content created by the provider itself).

intended to protect is subject to discovery, and WAUSA has alleged specific facts tending to show that Hypertouch is not an ICS under the CDA.   To that end, WAUSA served on Wagner and Hypertouch discovery that seeks information targeted at these issues, but Wagner/Hypertouch resist discovery and improperly moved for a stay, three months after they response was due. DE 230; 265 1-4; and 310.

Further, the full extent of information Wagner/Hypertouch added to the emails, and whether such information is false or misleading, is also subject to ongoing fact and expert discovery.  *See* Excerpts of Initial Expert Report of Dr. Neal Krawetz, pp. 26-38, Section 4: "Email Archive Analysis"; and Excerpts of Initial Expert Report Rebuttal of Dr. Neal Krawetz, pp. 6-15, Sections "Email Modifications; Missing Content Corruption; Content Boundary without Attachments, and Absolute Copies", attached hereto as composite Exhibit 7.   Joseph Wagner claimed that he realized for the first time at his deposition that his computers added information to the emails. (J. Wagner Depo. at 413:23-414:8.)  Accordingly, the full scope of content that Hypertouch added to the emails remains to be seen in fact and expert discovery, and raises a factual inquiry that cannot be resolved in a motion to dismiss brought pursuant to FRCP 12(b)(6) (even if Wagner/Hypertouch argue that the information is accurate). *Hy Cite Corp. v. badbusinessbureau.com, LLC,* 418 F. Supp. 2d 1142, 1148-49 (D. Ariz. 2005) (denying motion to dismiss brought under FRCP 12(b)(6) where plaintiff alleged that the actionable content were created by the defendants). For these reasons, the TPC withstands Wagner/Hypertouch's Motion to Dismiss under Rule 12(b)(6).

### III.   The TCP States A Plausible Claim For Indemnification Under Maryland Law

### 1. Wagner/Hypertouch's Indemnification Arguments Raise a Factual Dispute

"In deciding whether to grant indemnity, ordinarily an active-passive analysis will be employed." *Bd. of Trustees of Baltimore Cty Comm. Cols. v. RTKL Assocs, Inc.,* 559 A.2d 805, 811 (Md. 1989).   Although the court in *RTKL* seemed to have imposed a relationship requirement with respect to certain indemnification claims, the court in *Pulte Home* clarifies that indemnity implied by fact arises "from a special relationship between the parties, usually contractual in nature, or from a course of conduct" but that the right to indemnity that Defendant WAUSA's claim here, indemnity implied by law, does not. *Bd. of Trustees of Baltimore Cty Comm. Cols. v. RTKL Assocs, Inc.,* 559 A.2d 805, 810-11 (Md. 1989); *Pulte Home Corp. v. Parex, Inc.,* 942 A.2d 722, 730 (Md. 2008).

"Under this analysis, a party is only entitled to indemnification when the party's actions, although negligent, are considered to be passive or **secondary** to those of the primary tort-feasor." *Id.* (emphasis added).   Wagner/Hypertouch's argument that the TPC should be dismissed because WAUSA can be found liable only for "active" negligence fails because whether a party is primarily or secondarily liable to a plaintiff is a fact question that cannot be resolved in a motion brought pursuant to FRCP 12(b)(6).   *Pacific Indemnity Co. v. Whaley,* 560 F. Supp. 2d 425, 432 (D. Md. 2008) (refusing to dismiss indemnification claim where "there is a genuine issue of material fact as to whether [defendant] and/or [third-party defendant] were negligent, and if so, as to whether their negligence was active or passive.")[9]

Here, WAUSA alleges in the TPC that Wagner/Hypertouch is the primary — if not the only — tortfeasor with respect to the emails that  Wagner/Hypertouch sent to BSI:

> But for the actions of Joseph Wagner/Hypertouch in sending or causing to be sent the Hypertouch Emails, Beyond Systems would not have received the Hypertouch

---

[9] *RTKL Assocs.,* 559 A.2d at 811 ("The jury, however, could have determined from the evidence in the case that the negligence of [defendant] as it related to that of Gonnsen and Can was of a passive character, namely only that of supervising. Hence, indemnity was not precluded nor mandated to RTKL as a matter of law.")

Emails, would have no claim under the Maryland or Florida statutes, and would not have suffered any of its alleged damages claimed in its lawsuit as to the Hypertouch Emails. (TPC ¶ 24.)

Thus, whether Wagner/Hypertouch on the one hand, or WAUSA or somebody else on the other hand, is primarily liable for sending the emails to BSI raises factual issues for the jury to decide, and the indemnification claim cannot be dismissed under FRCP 12(b)(6) for this reason.

## 2.    BSI Alleges that WAUSA can be held Liable for Passive Negligence

Under Wagner/Hypertouch's own argument, their MTD as to the indemnification claim should be denied because BSI's Amended Complaint alleged that WAUSA can be held liable also for passive negligence.  MTD at 20.  Specifically, BSI alleges, *inter alia*, that WAUSA either should be liable because it directly or by persons acting as its agents "conspired to initiate, and/or assisted, planned, prepared, designed, executed, approved, modified, condoned and ratified the sending of the Emails at Issue; paid others for services related to the transmission, and received payment form advertisers and other for Defendants' services related to the transmission; caused product and services to be sold and/or derived as a result of the transmission; or directed, or had the ability to authorize, control or direct. *See* BSI's Am. Compl. ¶¶95-99; supra at pp. 4-5.  Thus, it is clear from BSI's allegation that it according to BSI, WAUSA can be held liable for passive negligence for merely "assisting" in transmitting the emails while another party could be primarily responsible for sending them.[10]  Therefore, the

---

[10] Additionally, on WAUSA's Motion to Dismiss for failure to state a claim, BSI argued that the "individual affiliates ... depend on the assistance  … [of a] help-desk … which has "human beings who are trained and skilled at how to make via the internet, quote unquote, which we call spamming, but marketing via the internet" but also that the defendants "assist in the composition of the email … [a]nd its transmission." Trans. Motion Hearing pp. 21, 24, 25, 26, 33.  BSI also conceded that none of the routing information on the face of the 4 emails indicates they were sent by WAUSA. DE 19.

Amended Complaint does not only allege acts of active negligence.  *Pacific Indemnity Co. v. Whaley,* 560 F. Supp. 2d 425, 432 (D. Md. 2008).

### 3.     No "Special Relationship" is Required for Tort Indemnity

WAUSA is not required to allege a "special relationship" to state a claim for equitable indemnity implied by law (or tort indemnity).  "In Maryland, indemnification is appropriate if there is a legal relationship mandating it, e.g. contract or respondeat superior, **or** when one party's role is so passive or secondary that it would be inequitable to require that party to sustain any of the burden of judgment."  *Sherwin-Williams Co. v. ARTRA Group, Inc.,* 125 F. Supp. 2d 739, 754 (D. Md. 2001) (citations and quotations omitted) (emphasis added).  Indeed, the Maryland Court of Appeals recently held that equitable indemnity implied by law applies merely where "one person is unjustly enriched at the expense of another when the other discharges liability that it should be his responsibility to pay."  *Pulte Home Corp. v. Parex, Inc.,* 403 Md. 367, 382 (Md. 2008) (citations and quotations omitted). Thus, equitable indemnity implied by law is available to promote fairness and to avoid unjust enrichment regardless of whether a "special relationship" exists. MTD at 19.

Here, "fairness" and the avoidance of unjust enrichment dictate that Hypertouch bear liability for sending emails to BSI, as Wagner/Hypertouch would be unjustly enriched if WAUSA was forced to pay for the alleged harm to BSI that resulted from Joseph Wagner/Hypertouch sending the emails to BSI.  Indeed, as alleged in the TPC and shown above, BSI would not have received the vast majority of the emails without Hypertouch and Wagner having sent them to BSI.

Further, at least one court has held that a claim for indemnification survives a motion to dismiss where a defendant electronic marketing company brought claims against third-party

defendants that solicited emails from defendant in an attempt "to exacerbate legal claims."

(*Gordon v. Impulse Marketing Group, Inc.,* No. CV-04-5125-FVS at *9 (E.D. Wash. March 9,

2006) attached as Exhibit 9).  In *Gordon,* the court found the allegations that:

> third-party defendant specifically intended to drive email messages to [plaintiff's]
> domain, and repeatedly solicited, unsubscribed, and then repeatedly re-solicited
> email from [defendant] and its marketing partners with the sole intention of
> fabricating and exacerbating claims against [defendant] sufficiently satisfied the
> general pleading standards and survived dismissal.

*Id.*

Even though WAUSA is not required to allege a "special relationship," discovery

established that one does in fact exists. ████████████████████████████████████████

████████████████████████████████████████████████████  Paul Wagner also

testified in *Kraft Litigation*, that BSI, on the one hand, and Defendants there, on the other, have

a tort relationship in the form of a sender and a recipient. (P. Wagner Kraft Depo. at 256:16-

258:2.) ████████████████████████████████████████████████████████

████████████████████████████████████████████  Thus, and unlike the

cases Wagner/Hypertouch cited, Joseph Wagner/Hypertouch were not a "complete stranger

to the dealings between the putative indemnitor and the party injured." *See FLF, Inc. v. World*

*Publs.,* 999 F. Supp. 640, 643 (D. Md. 1998) (cited in MTD 24-25).  Thus even if a "special

relationship" was required for tort indemnity, under the logic espoused under oath by BSI's

principal, Paul Wagner, in this case, Wagner/Hypertouch would still be potentially liable for

indemnification of WAUSA.

## CONCLUSION

For the above stated reasons, World Avenue USA, LLC respectfully requests the

Court deny James Joseph Wagner and Hypertouch, Inc.'s Motion to Dismiss.  Additionally,

because James Joseph Wagner and Hypertouch, Inc. filed this Motion after the Court already

ruled on identical issues in the *Kraft Litigation* (DE), all for the blatant ulterior motive of

creating an excuse to refuse to participate in discovery when they knew full well that each of the

arguments made in the MTD had already been rejected by this Court, World Avenue USA,

LLC. respectfully request the Court, under its inherent power, order James Joseph Wagner and

Hypertouch, Inc. to pay reasonable costs and attorneys' fees incurred with opposing this motion.

Anything less is an affront to justice and an incentive to further gamesmanship.

Dated:  July 9, 2010.

Respectfully submitted,

_____/s/_____
Sanford M. Saunders, Jr., Esq.
USDC, MD #4734
saunderss@gtlaw.com
Nicoleta Burlacu, Esq.
BurlacuN@gtlaw.com
*Admitted Pro Hac Vice*
GREENBERG TRAURIG, LLP
2101 L Street, NW, Suite 1000
Washington, DC 20037
Telephone:  202-331-3100
Facsimile:  202-331-3101

--and--

Kenneth Horky, Esq.
horkyk@gtlaw.com
John L. McManus, Esq.
mcmanusj@gtlaw.com
*Admitted Pro Hac Vice*
GREENBERG TRAURIG, LLP
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, FL 33301
Telephone: 954-765-0500
Facsimile:  954-765-1477
*Attorneys for World Avenue USA, LLC*