UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BEYOND SYSTEMS, INC. | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 8:08-cv-00921 (PJM) (CBD) |
| WORLD AVENUE USA, LLC, *et al.* | ) | |
| Defendants. | ) | |

**DEFENDANT WORLD AVENUE USA, LLC'S MOTION TO STRIKE PORTIONS OF DECLARATION OF PAUL A. WAGNER FILED AT DE 322-1 AND INCORPORATED MEMORANDUM OF LAW**

Defendant World Avenue USA, LLC ("WAUSA") hereby moves to strike portions of the Declaration of Paul A. Wagner signed July 2, 2010 at DE 322-1 on grounds set forth in the following Memorandum of Law.

## I. Introduction.

WAUSA has filed a Motion to Compel Production of Documents Responsive to Fourth Request for Production and an accompanying Memorandum of Points and Authorities ("Memorandum"). *See* DE 272. The Motion was based on the fact that, in its public filings, BSI has openly and repeatedly disclosed the names of its claimed clients,[1] but has produced little or no documentation to support that such customers currently exist. In response, BSI has filed an

[1] *See* Declaration of Paul A. Wagner filed 2/23/10 in *Beyond Systems v. World Avenue USA, LLC*, Case No. 08-civ-0921 (D. Md.), DE 168 (disclosing 7 client names and supposed services for clients); *Beyond Systems, Inc. v. Kraft Foods, Inc.*, Civil Action No. PJM-08-0409 (D. Md.) ("*Kraft* Action"), DE 295-42, p. 5, ¶ 15 (disclosing 13 client names and purported services for clients); Declaration filed 2/7/05 in *Beyond Systems, Inc. v. Keynetics*, Inc., Civil Action No. PJM-04-00686 (D. Md.), DE 65-2 (disclosing 13 client names and claimed services for clients); Affidavit signed 1/24/04 in *Beyond Systems, Inc. v. Aesop Marketing Corp.*, Case No. 248499V (Montgomery County Circuit Court) (disclosing 13 client names and supposed services for clients).

Opposition at DE 322 and a Declaration of Paul A. Wagner at DE 322-1. The Declaration should be stricken in part because it is riddled with conclusory, hearsay statements lacking personal knowledge and purporting to introduce hearsay statements as a basis for attempting to rebut the myriad of inconsistencies raised in the Motion about BSI's so-called "customers."

## II. Paragraph 3 of the Declaration.

The Motion to Compel requested documents relating to three purported BSI customers, St. Luke's House, C3 Stats, and Young Woman's Christian Home. The Motion also observed that a subpoena for production of documents had been served on St. Luke's House, but that St. Luke's House had responded that there were no documents. *See* Exhibit I to Memorandum. Another purported customer, Young Woman's Christian Home, had not provided any documents either. *See* Exhibit N to Memorandum. A third purported customer, C3 Stats, claimed that there were no communications after January 1, 2000.[2] *See* Exhibit M. to Memorandum.

To try to rehabilitate the complete lack of documents evidencing any relationship with these so-called customers, Wagner states at Paragraph 3:

> "**I am aware that all of the BSI customers portrayed in Exhibits I, M, and N know BSI, and the exhibits do not show otherwise**."

---

[2] Contrary to Paragraph 3 of Wagner's Declaration under penalty of perjury, which claims that the customer in Exhibit M [C3 Stats] "know[s] BSI," in its BSI's Response to Request 13 served only a few months earlier, BSI asserted that *it* did not know who C3 Stats is. *See* DE 272-2, p. 17, ¶ 1, served May 5, 2010 ("Plaintiff further objects to this Request on the grounds that it is unaware of an entity whose legal name is "C3 Stats"). This is despite Paul Wagner having signed yet another Declaration on February 7, 200**5** under penalty of perjury that C3 Stats was a customer for whom BSI provided internet access. *See* Declaration of Paul Wagner dated 2/7/05 filed in *Beyond Systems, Inc. v. Keynetics*, DE 65-2 ("BSI has provided the services listed above for numerous clients including the following: …C3Stats, located in Fulton, New York; provided Internet access (server co-location) and DNS service, and email service, for multiple users"). BSI claims that it has no responsive documents, yet over five (5) full years ago Paul Wagner swore under oath this entity was BSI's customer. In fact, in response to a Rule 45 Subpoena issued in this action, C3 represented: "There has been no communication between C3 and BSI since January 1, 2000" – which is more than five (5) years before BSI's President, Paul Wagner, swore that C3 was its customer.

This portion of Paragraph 3 should be stricken as conclusory, lacking personal knowledge, and purporting to state what is in the minds or in the knowledge of third parties, and therefore showing a complete lack of personal knowledge. Paul Wagner is the President of Plaintiff BSI, and does not speak for these other entities. Aside from his speculation as to the knowledge of third parties and his lack of personal knowledge to engage in such speculation, Wagner's averment is made in conclusory fashion and should be disregarded. *See Barwick v. Celotex Corp.,* 736 F.3d 946, 960 (4th Cir. 1984) (striking affidavit where "[t]he entire content of the affidavit is conclusory, it does not set forth facts of which the plaintiff has personal knowledge and it does not give specific facts, but only generalities"); *Contracts Materials Processing, Inc. v. KataLeuna GMBH Catalysts*, 164 F. Supp.2d 520, 533 (D. Md. 2001) (striking affidavit paragraph as "conclusory statements of facts" where party averred that facts were disclosed to and agreed by a third party, but did not identify "who disclosed these facts to KataLeuna or how he became aware that KataLeuna agreed with this assessment."); *DataMill, Inc. v. U.S.*, 91 Fed Cl. 722, 738 (Fed. Ct. Cl. 2010) (striking affidavit as not based on personal knowledge and containing hearsay); *Numbers Licensing, LLC v. bVisual USA, Inc.*, 643 F. Supp.2d 1245, 1249 (E.D. Wash. 2009) (striking affidavit where "Ms. Renfroe alleges in ¶ 4 that her husband was paid $60.00 an hour for his services. Ms. Renfroe lacks personal knowledge to make such a statement"). Thus, this portion of Paragraph 3 should be stricken.

**III. Paragraph 7 of the Declaration.**

The Motion to Compel requested documents relating to a purported BSI customer, Keivan Khalachi. The Motion also observed that a production of documents had been made by Khalachi, but that it did not include all invoices or payments. In an attempt to explain away the inconsistency, Wagner states at Paragraph 7:

> "**Keivan Khalachi paid BSI by check for Internet services. BSI does not have a copy**."

Paragraph 7 should be stricken as a bare conclusion. It does not state how many, when, or for what such payment(s) were made. *Barwick,* 736 F.3d at 960; *Contracts Materials*, 164 F. Supp.2d at 533.

**IV. Paragraph 10 of the Declaration.**

The Motion to Compel requested documents relating to a purported BSI customer, St. Luke's House. The Motion also observed that a subpoena for production of documents had been served on St. Luke's House, but that the individual served with process, Diane Wagner, stated that there were no documents. In an attempt to suggest an excuse for why St. Luke's House produced no documents when BSI claimed it was a customer, Wagner speculated in Paragraph 10:

> "**The subpoena was directed to "Diane Wagner or any other person authorized to accept service." Diane Wagner is not the registered agent for St. Luke's House, Inc., and I understand that she is not authorized to accept service for that corporation. I am familiar with her level of knowledge about computers, and know that she would not be the right person to handle the task of locating and producing documents, whether paper or digital, pertaining to IT services of the type provided by BSI**."

This statement should be stricken for lack of personal knowledge, rank speculation, and musings as to what is in the mind of a third party. Paul Wagner is the President of Plaintiff BSI, and identifies no position that he holds with St. Luke's House that would confer personal knowledge upon him about who at St. Luke's House is authorized to accept service of process -- let alone entitle him to speculate on which person would be the appropriate person to search for documents. To be certain, St. Luke's House did not object that to service of process, but clearly responded that it had no documents in response to a subpoena calling for documents showing services performed by BSI. The Declaration attempts to introduce rank speculation and hearsay

as fact, through the statement "I understand that she is not authorized to accept service for that corporation."[3] *DataMill, Inc. v. U.S.*, 91 Fed Cl. at 738; *Numbers Licensing,* 643 F. Supp.2d at 1249. By his own implicit admission (*e.g.*, "I understand…"), Wagner lacks personal knowledge of who at St. Luke's House was authorized to accept service of a subpoena; and, in any event, said objection was waived when St. Luke's House failed to raise it in response to a Rule 45 subpoena.

The Court should strike Paragraph 10 of the Wagner Declaration.

**V. <u>Paragraph 11 of the Declaration</u>.**

The Motion to Compel requested documents relating to a purported BSI customer, the Young Woman's Christian Home. The Motion also observed that a subpoena for production of documents had been served on the Young Woman's Christian Home, but no documents had been produced. In an effort to explain why this "customer" produced nothing about the "services" supposedly rendered by BSI, Wagner declared as follows in Paragraph 11 of the Declaration:

> "**The Young Woman's Christian Home has a new resident director, who might not know the whereabouts of the earlier documents relating to BSI.**"

This statement should be stricken for lack of personal knowledge, rank speculation, and musings as to what is in the mind of a third party. *DataMill, Inc. v. U.S.*, 91 Fed Cl. at 738; *Numbers Licensing,* 643 F. Supp.2d at 1249. Paul Wagner is the President of Plaintiff BSI, and identifies no position that he holds with Young Woman's Christian Home that would confer personal knowledge upon him -- let alone entitle him to speculate on what the "new resident director" "***might***" know. The Affidavit does not identify the name of the "new resident director," when s(he) has hired, or the basis of Wagner's musings about her knowledge.

[3] Hearsay in an affidavit is inadmissible unless the offering party can demonstrate that a "recognized hearsay exception applies." *Mascone v. American Physical Society, Inc.*, 2009 WL 3156538, at *1, *4 (D. Md. 2009).

*Barwick,* 736 F.3d at 960; *Contracts Materials*, 164 F. Supp.2d at 533. The Court should strike this sentence of Paragraph 11 of the Wagner Declaration.

**WHEREFORE**, Defendant WORLD AVENUE USA, LLC respectfully requests that the Court enter an Order striking the aforementioned portions of the Declaration of Paul A. Wagner filed at DE 322-1, and for such other and further relief as this Court deems just and appropriate.

Dated this 16th day of July 2010.

Respectfully submitted,

*Attorneys for World Avenue USA, LLC*

/s John L. McManus

Sanford M. Saunders, Jr., Esq.
USDC, MD #4734
saunderss@gtlaw.com
Nicoleta Burlacu, Esq.
BurlacuN@gtlaw.com
*Admitted Pro Hac Vice*
GREENBERG TRAURIG, LLP
2101 L Street, NW, Suite 1000
Washington, DC 20037
Telephone: 202-331-3100
Facsimile: 202-331-3101

--and--

Kenneth Horky, Esq.
Florida Bar No. 691194
horkyk@gtlaw.com
John L. McManus, Esq.
Florida Bar No. 0119423
mcmanusj@gtlaw.com
*Admitted Pro Hac Vice*
GREENBERG TRAURIG, P.A.
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, FL 33301
Telephone: 954-765-0500
Facsimile: 954-765-1477