IN THE U.S. DISTRICT COURT FOR MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| BEYOND SYSTEMS, INC. | * | |
| | * | |
| **Plaintiff** | * | |
| | * | |
| v. | * | **Case No. PJM 08-cv-0921** |
| | * | |
| WORLD AVENUE U.S.A., LLC | * | |
| successor by merger to NIUTECH, LLC., | * | |
| dba "The Useful"et al. | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

**PLAINTIFF'S RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION TO WASUA'S MOTION TO DISMISS FOR FRAUD ON THE COURT [DE 323] AND PLAINTIFF'S COUNTER-REQUEST FOR SANCTIONS PURSUANT TO 28 U.S.C. § 1927.**

Plaintiff Beyond Systems, Inc. ("BSI"), by and through undersigned counsel, hereby submits the present Response and Memorandum of Law in Opposition to Defendant World Avenue U.S.A., LLC's ("WAUSA") Motion to Dismiss For Fraud on the Court [DE 323]. As discussed more fully below, Defendant's Request is without merit in fact or in law. With this motion, Defendant raises the immaterial issue of protecting WAUSA's *allegedly proprietary information* in the hands of third parties into an issue it claims is deserving of the ultimate legal sanction by this Court against Plaintiff – *dismissal of its case alleging violations of Maryland's Consumer Protection Laws under MD-CEMA.* This Court cannot tolerate such abusive litigation and waste of

1

judicial resources.  Plaintiff requests appropriate sanctions reflecting the severity of the

Defendant's baseless allegations and lack of due diligence.

The instant Motion alerts the Court's attention to the discrepancy between some

of the subpoenas served by Plaintiff on non-party recipients (MTD, Ex. 14) and those

actually served on the Defendant (MTD, Ex. 23).  As Plaintiff describes below, this

discrepancy was the result of nothing more than the confluence of an inadvertent mistake

and an outdated software package.  *See* Rothman Aff. (¶¶ 4-28).  Plaintiff exhibited no

malicious intent or bad faith sufficient to warrant dismissal or even sanction in this case.

In fact, the damage that Defendant describes is, at worst, negligible.  Plaintiff has the

documentary support to issue those <u>same</u> subpoenas *duces tecum* to non-party recipients

today using the "Ralsky Definition" in the supposedly violative forms.  Moreover, the

Court's Order at DE 212 did not prohibit Plaintiff from seeking such information.  *See*

Order at DE 212.

On the other hand, Defendant could have avoided this entire motions practice, and

the tidal wave of litigation it spawned, by simply noting the differing versions it received

from Plaintiff and requesting an explanation.  **Such action would have required a single

question by WAUSA to Plaintiff's Counsel, "*Please explain how Defendant received

these subpoena notices at Exhibit 14 when we received these later non-party subpoena

responses from you at Exhibit 23*?"**  Instead, this simple discrepancy became the source

of WAUSA's increasingly acrimonious letters, demands, ultimatums, and filings that

wasted the Court's time and the Plaintiff's resources -- *all in a deliberate litigation

strategy of delay and avoidance by WAUSA*.  Defendant is in search of the ultimate

2

"gotcha" moment by ascribing bad motives to the Plaintiff's inadvertent mistake – of course, there is none.

On the other hand, by elevating this relatively minor issue into a series of ultimatums and subsequent motions practice, Defendant WAUSA successfully employed its ulterior motive – to run out the clock on the discovery period so that Plaintiff cannot conduct discovery into the Defendant World Avenue.  Although this case was filed in April 2008, Defendant has **refused** to offer dates for Plaintiff to take a **single** deposition of a WAUSA entity on the **merits** of the case as late as February 2010.  *See* MTD, Ex. 16 (p. 2 of 6)[1]

*During that same period, Defendant filed **four (4)** Motions to Dismiss the case [DE 13];  [DE 40]; [DE 55]; [DE 323] (present motion);  **one (1)** Partial Motion for Summary Judgment [DE 266];  **three (3)** Motions to Quash depositions or subpoenas, [DE 104], [DE 157], and [DE 159];  **seven (7)** Motions to Compel Compliance, [DE 131], [DE 195], [DE 230], [DE 232], [DE 297], [DE 323] and [DE 338]; and **seven (7)** Motions to either Challenge Confidentiality or seek a Protective Order, [DE 119], [DE 122 (supp. to DE 119)], [DE 131], [DE 162], [DE 293], [DE 324], and [DE 338].*

Amazingly, the Defendant filed these twenty-two (22) motions in just over a twenty-seven month period.  This list does not even include <u>any</u> of WAUSA's discovery

---

[1] In an email amongst *Defendants' Counsel* (and included as an exhibit with Defendant's present Motion), Defendant's Counsel notes that they have no intention of providing a witness for examination by Plaintiff.  "Perhaps Monday we file the first certificate of bad faith in connection with our motion for leave to serve additional discovery.  If Ring comes back w/ our failure to give him dates for Dale, etc., we can make the Amended Complaint argument.  Sandy" [DE 323] MTD Ex., 16 (p. 2 of 6).

disputes consisting demand letters and Motions to Compel, including **four (4)** separate

motions and countless correspondence and ultimatums.  At the same time, Defendant has

vigorously and aggressively prevented Plaintiff from gaining access to its own

discoverable information on the absurd "stovepipe" theory that none of the World

Avenue family of companies, housed in the same Florida office complex, has any

relevant information about any other World Avenue company.[2]

     In responding to WAUSA's relentless demands for information about the

discrepancies, Plaintiff sent compliance letter after compliance letter.  However, as

described below, Plaintiff's compliance or non-compliance with WAUSA's demands was

really not the issue.  Rather, Defendant's ulterior motive was a two-pronged litigation

strategy :  (1)  distract Plaintiff from discovery with senseless confidentiality motions

bearing no relationship to the underlying cause of action;  (2)  simultaneously deny

Plaintiff access to the Defendant's witnesses and information.

---

[2] *See* Opp. MTD, **Ex. A,** p. 259:1-22;  260:6-20. (WAUSA 30(b)(6) ESI Deposition of
Senior Security Architect Chad Schlotter) (Portions not filed under seal) (portions filed
under seal due to Defendant's Designation on 03/31/10)

While Plaintiff's actions represent nothing more than a harmless and inadvertent mistake described in more detail below, Defendant's actions bespeak of a much more insidious and harmful waste of the Court's resources.

For all these reasons, Defendant's Motion should be denied and Plaintiff's Request for Sanctions should be granted.

## INTRODUCTION

### "The best defense is a good offense"

Adage applied to many fields of endeavor, including games and military combat, and echoed in the writings of *Machiavelli* and *Sun Tzu*.[3]

### "Tempest in a teacup"

A small or unimportant event that is over-reacted to, as if it were of considerably more consequence.[4]

Defendant decries three intersecting courses of conduct that it alleges created a "Fraud on the Court" warranting dismissal of the case. *See* Mtn to Dismiss ("MTD") at 1. These alleged violations include : (1) Issuing "a notice of serving 86 non-conforming subpoenas to non-parties while issuing "secret non-conforming subpoenas to non-parties" which falsely "implied that WAUSA was under investigation for "illegal marketing." *See* MTD at 1. (2) Creating "bogus subpoenas that did not contain the false statements" and tendering them to WAUSA as genuine copies of the real subpoenas;  and (3) engaging in an extended cover up to conceal the "bogus" subpoenas. *See* MTD at 1.

---

[3] Located at http://en.wikipedia.org/wiki/The_best_defense_is_a_good_offense (last visited 07/25/10).
[4] Speculating on the origins of the phrase at

However, using the six areas of inquiry in the Fourth Circuit's *Shaffer* case, and cited with approval here by the Defendant, it is clear that the mistakes in this case do not rise to the level of a "Fraud on the Court" and certainly do not warrant dismissal of the case.  Moreover, it would be bad public policy, and against the public's interest, to allow a well-known purveyor of false and misleading commercial email, *like World Avenue*, to escape liability due to a minor dispute over an ancillary confidentiality issue.  For all these reasons, WAUSA's Motion to Dismiss should be denied.

## I.      STATEMENT OF MATERIAL FACTS

1.      On December 29, 2009, BSI served a "Notice of Issuance of Subpoenas to Non-Parties For Production of Documents without Deposition."  *See* MTD, Ex. 1. (*Agreed*).

2.      Along with the Notice, Plaintiff served on the Defendant a copy of a non-party subpoena *duces tecum* issued to Tiggee, LLC (aka DNSMadeEasy.com) also dated December 29, 2009.  This non-party subpoena contained an "Attachment A" listing "Instructions" and ten (10) Requests for responsive documents.  The subpoena had a return date of January 15, 2010.  *See* MTD, Ex. 1 (*Agreed*).

3.      The email from BSI Counsel Ring alerted Defendant that the served subpoena issued to Tiggee, LLC was the first in a series of subpoenas *duces tecum* to be served on non-parties.  It also noted areas of inquiry in which Plaintiff would be focusing in the future.  *See* MTD, Ex. 2 ("By way of further disclosure, <u>we will also be pursuing</u> documents related to the FBI's investigation of Alan Ralsky,

_____

http://www.phrases.org.uk/meanings/tempest-in-a-teapot.html (last visited 07/25/10).

Scott Bradley, Scott Richeter/Optinrealbig/mediabreakaway, their ties to the World Avenue companies;  and any relevant AG investigations including FL, TX, and any others that may bear on the connections between the World Avenue companies and the bulk emailing practices at issue.") (emphasis added) (*Agreed*).

4.   Just over one month later, on February 1, 2010, Defendant served Plaintiff with a "Request for Copies", seeking copies of the non-party subpoenas issued by Plaintiff.  *See* MTD, Ex. 4 (*Agreed*).

5.   That same day, Monday, February 1st, Plaintiff's Counsel responded to Defendant's Counsel with an email stating that they would respond, "as soon as possible, as it is still early and some of the recipients have requested more time to comply."  *See* MTD, Ex. 5 (*Agreed*).

6.   That same day later in the evening, Defendant clarified that they had received a copy of the "Notice of Issuance of Subpoenas to Non-Parties For Production of Documents without Deposition", as well as the Tiggee, LLC subpoena (Exhibit 1).  Defendant noted instead that they were seeking copies of materials received pursuant to the subpoenas issued, as well as a copy of the signed subpoenas issued.  *See* MTD, Ex. 6 (*Agreed*).  Plaintiff's counsel acknowledged receipt of the email, and promised to respond as soon as possible.  *See* MTD, Ex. 7 (*Agreed*).

7.   On February 2nd, Plaintiff's Counsel requested Defendant's Counsel provide appropriate citation as to why Defendant believed that it was entitled to service of

7

a copy of the signed subpoena, rather than simply responses.  *See* MTD, Ex. 8

(*Agreed*)

8.    That same day, Defendant responded with the language of Rule 45 that it claimed

supported its position.  Defendant cited to the language of Rule 45(b)(1)

pertaining to the receipt of "notice", then to a section of the Advisory Committee

Notes from 1991, as to how Defendant would be an "affected party" sufficient to

give WAUSA standing to file a Motion to Quash pursuant to Rule 45(c)(3)(A)-

(B).  *See* MTD, Ex. 10 (*Agreed*).

9.    Still on the same day, Plaintiff requested a clarification as to why Defendant

WAUSA would be "affected by a subpoena" to non-party Tiggee, LLC, so as to

trigger BSI's requirement to serve on Defendant a signed copy of the subpoena,

rather than simply the responses once received?  *See* MTD, Ex 11 (*Agreed*).

10.    Still on that same day, WAUSA responded :

> Fishing expedition for proprietary information for a period post-dating the
> filing of the amended complaint.  I can confirm WA did not do business
> with dns prior to 2009.  This is an example of the problem created by not
> having copies of the subpoenas – we cannot tell whether proprietary or
> privileged documents/information/data is being sought.

*See* MTD, Ex. 12 (*Agreed*).

11.    Still on the same day, BSI's Counsel responded to Defendant's Request for

Copies by noting that Defendant had received proper notice of the Tiggee, LLC

subpoena and agreeing to look into WAUSA's Request for Copies.  *See* MTD,

Ex. 13 (*Agreed*).

12.    On February 8th, BSI's Counsel served a response to Defendant's Request for
       Copies served on February 1st.  In its Response and in a final attempt to resolve
       any remaining issues, BSI's Counsel noted that BSI was serving "signed
       subpoenas issued by Plaintiff to all third parties;  and  2)  any documents it has
       received thus far pursuant to said subpoena.  This will confirm that WORLD
       AVENUE has received copies and responses of all outstanding subpoenas and
       responses."  *See* MTD, Ex. 14 (*Agreed*).

13.    BSI Counsel's email attached a file containing twenty-three (23) subpoenas *duces*
       *tecum*, along with corresponding "Instructions", "Definitions" and "Documents to
       Be Produced", included within a "Attachment A."  The subpoenas had an issue
       date of January 8, 2010, and were directed to the following entities :  Account
       Now, AOL, Blockbuster Online DVD Rental, BMG Music Service a/k/a Direct
       Brands, Body Sculpture, Citibank Mastercard, Columbia House a/k/a Direct
       Brands, Inc. (Delaware), Columbia House (Pennsylvania), Direct Brands
       (Delaware), Direct TV, Discover Financial Services (Illinois/Maryland), Discover
       Financial Services (Maryland), Dish Network, Experian (2 addresses),
       Intersections, Inc. Kraft Foods Global (aka Tassimo Direct), Kraft Foods, Inc.
       (Maryland), Match.com, Netflix, Rhapsody America, LLC, and Vonage.  *See*
       MTD, Ex. 14 (*Agreed*).

14.    On February 23rd, BSI filed its Opposition to the Motion to Quash the 85
       Unknown Subpoenas [DE 167], and noted that it served copies of "all the original

signed subpoenas before the original return date listed in the subpoenas, as well as the documents received pursuant to those subpoenas.  *See* DE 167, p. 3.  (*Agreed*).

15.   On April 12, the Court granted Defendant's Motion to Quash 85 Unknown Subpoenas.  The Court's Order contained the following language :

> Plaintiff shall provide a listing of all non-party subpoenas issued, the status of production for each non-party, and a summary of any discussions held regarding the efforts to obtain the requested materials subsequent to the service or attempted service of each subpoena.  Plaintiff shall also produce copies of all original subpoenas with attachments issued to all non-parties.  For any non-party who has not responded to Plaintiff's subpoena, Plaintiff shall immediately notify said non-party that the Court has quashed the subpoena and that they should not produce the requested material.  Plaintiff is not prohibited from seeking the same material, but must do so in full compliance with the rules of procedure as suggested herein.  Plaintiff shall produce to all parties complete copies of materials received in response to any subpoenas issued.

*See* DE 212 (CBD Order) (*Agreed*).

16.   BSI's Counsel received Defendant's demands for responses on April 16th (Ex. 17);  April 29th (Ex. 18);  May 13th (Ex. 19).  (*Agreed*)

17.   On Monday, May 17, Defendant filed its Motion to Enforce the Court Order at DE 212.  [DE 232] (*Agreed*)

18.   On Friday, May 22nd, BSI Counsel sent Defendant's Counsel a comprehensive "**Compliance Letter**" detailing its extensive efforts between February 1st and May 22nd to resolve any outstanding issues regarding the Court's April 12th Order [DE 212].  *See* MTD, Exhibit 22 [DE 323-23 (p. 3-5 of 71) (May 21st letter to Counsel bearing <u>files</u> <u>names</u> A-1 through A-8 and detailing the facts as just

recited);  *see also* Opp. MTD, **Exhibit B** (attached hereto as a copy)("the

Compliance Letter"). (Agreed)

19.     On the same day, May 22nd (*but in a different email and sixteen minutes later*),

BSI sent all of the responses it had received from any non-party, *whether*

*previously served upon WAUSA or not*, in an effort to resolve any remaining

issues with WAUSA regarding compliance with DE 212.  *See* MTD, Ex. 23 [DE

323-24 (p. 2 of 76).  (*Agreed*)

20.     Plaintiff (*not Defendant*) made this document production to Defendant using

original Bates Stamp numbers labeled with the numbers "BSI (Non-Party

Subpoena Responses)" Nos. 000001 through 000074.  *See* MTD, Ex. 23 [DE 323-

24 (pp. 3-76)] (*DISPUTED*)[5]

21.     The Metadata on Figure 2 appears to be correct for Exhibit 14 (0085-Direct

Brands).  *See* Opp. MTD **Exhibit C**, (Rothman Decl.) at ¶ 21;  *see also* Opp.

MTD, **Ex. D** (Ornitz Decl.) at ¶ 16. (Agreed).

22.     As Figure 2 indicates, the document appears to have been created on February 3rd

using the application "ScanSnap Manager."  ScanSnap is a scanner that Plaintiff's

Counsel uses to turn tangible copies into digital copies using the .pdf extension.

The creation date noted by World Avenue represents the date that the hard copies

of the non-party subpoenas were scanned to create the electronic copy to be sent

---

[5] The documents produced by Defendant at MTD, Ex. 23 [DE 323-24 (p. 2 - 76)] came
labeled that way when sent electronically.  WAUSA was so busy impugning BSI's
Counsel, it failed to check its own facts.  Defendant entirely omits mention of the second
email, sent sixteen minutes later at 1:08 a.m.

to the Defendants.  *See* **Ex. C** (Rothman Decl.), ¶ 21 (Rothman Declaration);  **Ex. D**, (Ornitz Decl.), ¶ 16. (*Agreed*)

23.    A creation date of May 3rd (even with a modification date of May 8th, for argument's sake) would be logical.  Defendant served a demand for copies of the non-party subpoenas on February 1.  On February 8th, Plaintiff served Defendant's Counsel with copies of outstanding subpoenas and notices.  *See* Opp. MTD, **Ex. B** (Compliance Letter), at 2, ¶ 4 & file A-3 (*Agreed*).

24.    WAUSA continues to disagree with BSI's prior assessment that BSI is in compliance with the Court's April 12th Order.  *See* MTD, Ex. 24 (pp. 2-3) (*DISPUTED*).

25.    On May 22nd, Plaintiff's Counsel <u>did</u> <u>indeed</u> refuse to provide WAUSA with the letters it wrote to the non-party subpoena recipients, as detailed in the email. Specifically, the Court's Order at [DE 212] stated,

> For any non-party who has not responded to Plaintiff's subpoena, Plaintiff ***shall immediately notify said non-party*** that the Court has quashed the subpoena and that they should not produce the requested material.

> *See* Order [DE 212] (CBD Order) re:  WAUSA Motion to Quash Eighty-Five (85) Unknown Subpoenas [DE 157] (emphasis added) (*Agreed*).

26.    Undersigned counsel stated in its entirety :

> Sandy,

> Judge Day's Order did not say that I had to send you a copy of my letters to the prior subpoena recipients.  I am an officer of the court and I told you that they were sent.  I would be happy to send you a declaration if you need I, but I am under no obligation to send you a copy of the letters I sent to the subpoena recipients.  I can tell you that a letter was sent to all

subpoena recipients on May 21st, 2010, notifying all recipients that they
should not send any further materials pursuant to the subpoena received,
and that a new one would be forthcoming.

Best,

Mike Rothman

*See* Ex. 25 [DE 323-26], (p. 2 of 5) (*Agreed*).

27.     As a matter of clearing up any misconceptions as to Plaintiff's Compliance with

DE 212, Plaintiff submits a copy of the letters sent to all non-Party subpoena

recipients with a send date of May 21st.  *See* Opp. MTD, **Exhibit C** (Rothman

Decl.), (Disregard Notices );  *see also* Opp. MTD, **Exhibit D** (Ornitz Decl.) at

(Disregard Notices).

28.     The following Subpoena Discrepancy Chart (Fig. 1), addresses *seriatim* the

inconsistencies raised by Defendant in its Motion.

## SUBPOENA DISCREPANCY CHART
### Figure 1

| Non-Party Subpoena Recipient | Exhibit 14 (Ltr. of Compliance, Ex. A-3) | Exhibit 23 [05/22/10 BSI (NPSR)] | Alleged Differences | Notes |
|---|---|---|---|---|
| Direct Brands | 86 of 235 | BSI (NPSR) 000030 | *  Circle<br>*Attachment A<br>*Definitions<br>*Schedule<br>* Forwarding Address<br>* Ralsky Def's | MSR Decl. at ¶¶ 13-15; 18-24; ALO Decl. at ¶¶ 4, 13. |
| Netflix | 186 of 235 | **BSI (NPSR) 000013; MTD, Ex. 28** | * FBI Investigation<br>* Wrong Date | MSR Decl. at ¶¶ 13-15; 18-24; ALO Decl. at ¶¶ 4, 13. |

| Non-Party Subpoena Recipient | Exhibit 14 (Ltr. of Compliance, Ex. A-3) | Exhibit 23 [05/22/10 BSI (NPSR)] | Alleged Differences | Notes |
|---|---|---|---|---|
| Match.com | 176 of 235 | BSI (NPSR) 000046 | * Wrong Date<br>* Signatures<br>* Attachment A<br>* Instructions<br>* Definitions<br>* **Two Different Schedules TBP**<br>* **Neither Matched A-3**<br>* Forwarding Address<br>* Ralsky Def's | MSR Decl. at ¶¶ 13-15; 18-24; ALO Decl. at ¶¶ 4, 13. |
| Experian, I (a.k.a Star Club Rewards) | 136 of 235 | **BSI (NPSR) 000042;  MTD Ex. 26 (2 of 12)[6]** | * Different Signature<br>* Ralsky Def's | MSR Decl. at ¶¶ 13-15; 18-24; ALO Decl. at ¶¶ 4, 13. |
| Kraft Global (Tassimo) | 156 of 235 | **Ex 23 (No response located).** | * Wrong Date<br>* Different Signature<br>* Check Box Different<br>* Footer<br>* **Two Different Schedules TBP**<br>* **Neither Matched A-3**<br>* Ralsky Def's | MSR Decl. at ¶¶ 13-15; 18-24; ALO Decl. at ¶¶ 4, 13. |
| Kraft Food | 166 of 235 | **Ex 23 (No response located); MTD Ex. 27 (2-17) (both sets)[7]** | | MSR Decl. at ¶¶ 13-15; 18-24; ALO Decl. at ¶¶ 4, 13. |

---

[6] N.B.  Plaintiff's Counsel here cites to BSI (NPSR) 000042 (ltr. from Paralegal Marina Velari dated 1/21/10);  Defendant's Counsel here cites to MTD Ex. 26, (2 of 12).  The discrepancy occurs because WAUSA contacted Ms. Velardi on its own, and presumably in anticipation of the present motion, and received documents without providing any notice of such correspondence to Plaintiff's Counsel until now.

[7] N.B.  Neither Plaintiff nor Defendant's Counsel has located a subpoena to Kraft Foods Global, other than that provided in Exhibit 14.

29.    On May 22nd, Plaintiff's Counsel created a chart of the known contacts with all of

       the non-parties served with subpoenas in this case, of its own volition and in the

       interests of clarity.  *See* Opp. MTD, **Ex. B** (Letter of Compliance) at 3, under

       "Status Listing" ¶ 2;  *see also* MTD, Exhibit 22 [DE 323-23 (p. 3-5 of 71)

       (*Agreed*).

30.    BSI cannot locate a copy of the Vonage Letter;  the Dish Network Letter;  the

       Blockbuster Online DVD Letter;  the Intersections, Inc. Letter;  the Citibank

       Mastercard Letter;  the AccountNow Letter;  or the StyleMyHouse Letter

       referenced in Plaintiff's Non-Party Contact Chart attached to the Compliance

       Letter as Exhibit A-8 sent to the Defendant on May 22nd.  *See* Opp. MTD, **Ex. C**

       (Rothman Decl.) at ¶ 28.  (*Agreed*).

## II.      STANDARD OF LAW

As the Fourth Circuit noted in *Shaffer*, the inherent power of a court to impose

order, respect, decorum, silence, and compliance with lawful mandates is "organic" and

does not arise from any statute or rule for its definition.  *See United States v. Shaffer

Equip. Co*, 11 F.3d 450, 461 (4th Cir. 1993).  As this inherent power is undemocratic and

"is not regulated by Congress or the people and is particularly subject to abuse, it must be

exercised with the greatest restraint and caution, and then only to the extent necessary."

*See Shaffer*, 11 F.3d at 462.  Dismissal of a case without reaching the merits is an

extreme sanction that is not to be undertaken lightly.[8]  *United States v. Shaffer Equip. Co*,

---

[8] *United States v. Shaffer Equip. Co*, 11 F.3d 450, 462 (4th Cir. 1993) ("Mindful of the
strong policy that cases be decided on the merits, and that dismissal without deciding the

11 F.3d at 462 (affirming the District Court's finding that a breach of ethical conduct occurred, but *vacating* the judgment of the district court dismissing the case and remanding for the imposition of sanctions short of dismissal).

When "the orderly administration of justice and the integrity of the process have not been permanently frustrated," the sanction of a dismissal is entirely **unwarranted**. *See Shaffer*, 11 F.3d at 463. This is especially true when through an outright dismissal Defendant would receive relief far in excess of the harm allegedly done to it by the improper conduct. *See Shaffer*, 11 F.3d at 463. ("*[T]he defendants receive the benefit of a total release from their obligations . . . [which] would provide the defendants relief far beyond the harm caused by the . . . improper conduct and would frustrate the resolution on the merits of a case which itself has strong policy implications.*") *(emphasis added)*

In vacating the dismissal of the case by the trial court, the *Shaffer Court* noted six factors a Court should consider when the "inherent power of the court" is invoked to dismiss a case, as the Defendant does here :  (1)  the degree of the wrongdoer's culpability;  (2)  the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney, recognizing that we seldom dismiss claims against blameless clients;  (3)  the prejudice to the judicial process and the administration of justice;  (4) the prejudice to the victim;  (5)  the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future;  and  (6)  the public interest.

---

merits is the most extreme sanction, a court must not only exercise its inherent power to dismiss with restraint, but it may do so only after considering several factors.")

A discussion of the factors is discussed below.

## III.     ARGUMENT

**A.      The Degree of Plaintiff's Culpability.**

### *lie (noun)*

1.      A false statement deliberately presented as being true; a falsehood.
2.      Something meant to deceive or give a wrong impression.

### *v. lied, ly·ing, lies (verb intransitive)*

1.      To present false information with the intention of deceiving.
2.      To convey a false image or impression: *Appearances often lie.*[9]

Defendant's Counsel failed to conduct its due diligence regarding the non-identical versions of subpoenas to non-parties it received -- preferring instead to spin the facts into allegations of a nefarious plot to take "secret discovery."  Nothing could be further from the truth.  As Plaintiff's Counsel's declaration notes, the multiple versions are nothing more than the result of an outdated software package and an inadvertent subsequent production.  *See* **Ex. C** (Rothman Declaration) at ¶¶ 4-27;  *see also* **Ex. D** (Ornitz Declaration) at ¶¶ 3-18.

Defendant can produce no evidence that Plaintiff's Counsel intended to deceive the court or demonstrated a lack of candor with the court in any material respect that would erode the integrity of the court or the validity of the process.  Defendant's complaints about Plaintiff's candor fall into three main areas, as discussed above : (1) Issuing "a notice of serving 86 non-conforming subpoenas to non-parties while issuing

---

[9] *See* The American Heritage Dictionary, Fourth Ed. 2000 (2009 Update) located at

"secret non-conforming subpoenas to non-parties" which falsely "implied that WAUSA was under investigation for "illegal marketing." *See* MTD at 1.  (2)  Creating "bogus subpoenas that did not contain the false statements" and tendering them to WAUSA as genuine copies of the real subpoenas;  and (3)  engaging in an extended cover up to conceal the "bogus" subpoenas.  *See* MTD at 1.  These issues are addressed below.

First, Plaintiff's original December 29, 2009, "Notice of Issuance of Subpoenas to Non-Parties" complied with the letter and spirit of Rule 45(b)(1).  *See* Ex. 1 at 2, ¶ 1, Compliance Letter, [Exhibit A-1].  Rule 45(b)(1) states :

(b)   **Service**

(1)   **By Whom;  Tendering Fees;  Serving a Copy of Certain Subpoenas**.  Any person who is at least 18 years old and not a party may serve a subpoena.  Serving a subpoena requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law.  Fees and mileage need not be tendered when the subpoena issues on behalf of the United States or any of its officers or agencies.  If the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served, a notice must be served on each party.

Fed. R. Civ. P. 45(b)(1) (emphasis added).

Defendant later decried that it **<u>never</u>** received notice of the subpoenas to the non-parties, but that was exactly what was intended by Plaintiff's Notice.  Only one subpoena was attached to the Notice and only one had been served by December 29th -- the date of the Notice.  *See* Ex. 1, Compliance Letter at 2, ¶ 1.  No other subpoenas had then been served.

---

http://www.thefreedictionary.com/lie.

Defendant's second complaint was that Plaintiff issued "secret non-conforming subpoenas to non-parties" which "falsely stated that WAUSA was under investigation by the 'Federal Bureau of Investigations' [sic], the U.S. Department of Justice, and was associated with a band of criminals under indictment dubbed the 'Ralsky Defendants.'" *See* MTD at 2. The allegedly offensive "secret subpoena" requests included the following offensive document request in its entirety :

> 5.      All DOCUMENTS produced to or RELATING TO investigations and/or litigation against WORLD AVENUE, MAILXOMPANYX, ACCELLERATEBIZ, the RALSKY DEFENDANTS, or any other BULK EMAILER and RELATING TO illegal marketing, including those by :
>
> > a.      Any United States Attorney's Office in the United States and/or any of its Territories;
> > b.      the Federal Bureau of Investigations [sic]
> > c.      the Federal Trade Commission
> > d.      The State of Florida
> > e.      The State of Texas
> > f.      Wal-Mart Stores, Inc.
> > g.      Microsoft, Inc.
> > h.      Myspace.com
> > i.      John Ferron
> > j.      Daniel Balsam
> > k.      James Wagner
> > l.      Timothy Walton
> > m.      Beyond Systems, Inc.

Assuming the truth of the Plaintiff's statements in its Declaration that the non-conforming Attachment A's were served upon the Defendant in error, WAUSA's only real complaint is that the Plaintiff was seeking documents that implied that WAUSA was under investigation.  As noted above, however, these were merely document requests

seeking information in the hands of non-parties that the Plaintiff had more than sufficient cause to issue.

It is undisputed that there have been multiple federal and state investigations into email-based marketing by WAUSA and by Mr. Ralsky, and that Mr. Ralsky was a marketer for World Avenue before he began his federal prison term.  BSI has produced over five hundred (500) emails it claims in this case are attributed to Mr. Ralsky and promote World Avenue's business.

In addition, it is undisputed that World Avenue was investigated by the attorneys general of several states (including voluntary settlements with the Attorneys' General of both Florida and Texas), in cases based on extensive investigations, and allegations related to its spam-based advertising.

Plaintiff produced a Press Release issued by the Department of Justice several times in this case already describing a plea agreement from Mr. Ralsky and his co-defendants procured by the Eastern District of Michigan.  *See* [DE 351 plus Ex. 1 (DOJ Press Release) and Ex. 2 (SHR email providing Ralsky email documents)].

Specific reference to Mr. Ralsky has been made in court filings in this case as follows:

[DE 1] Complaint at 11; ¶¶ 34, 35, 48 and Ex. 3;  [DE 13-2] World Avenue Holdings' MTD, at pp. 2, 8, referring to complaint;  p. 18, fn. 14, describing Ralsky living in Michigan, sending through China;  pp. 24, 25;  [DE 19] BSI opposition to motion to dismiss at pp. 12, 13;  [DE 124-4] Spamhaus listing;  [DE 249] Email, shr to ss, offensive content from Ralsky;  [DE 263-1] at 8-9, Memorandum in support of third

party defendants MTD;  Ex. H2 - email;  Ex. H7 - DOJ announcement June 22, 2009;

[DE 263-8] DOJ press release of 6/22/09 (again);  [DE 297-6] BSI Opp. to WAUSA

Motion to Compel re documents, set 3, at p. 24;  [DE 307-2] BSI's first motion to compel

WAUSA re interrogatories at p. 11;  [DE 324-3] at p. 3, email, Scott Bielecki To Ari

Rothman;  [DE 332] Defendant 's Opp. to Third Party Defendant's MTD, at p. 17.

     *See also.,* WAUSA settlement with the Attorney General's Office of the State of

Florida (FL AG Documents 1-3292 produced to Defendants);  WAUSA settlement with

Attorney General's Office of the State of Texas ( TX AG Documents 1-32);  Presentation

at the University of Michigan by United States Attorney for the Eastern District of

Michigan Terrence Berg, "To Catch (and Prosecute) a Spammer :  A Case Study of

United States v. Alan Ralsky et. al.", presented at the SUMIT_09 Conference on Security

at the University of Michigan, with a copy located at

http://ummedia10.rs.itd.umich.edu/flash/its/sumit_berg.html (referencing emails using

the deceptive subject lines "basically free Playstations);  this is cross-referenced with

WAUSA 000633 CONFIDENTIAL, demonstrating that more than 18 months after a

Whistleblower lawsuit by one of WAUSA's own internal counsel, WAUSA kept using

the promises of a free Playstation as an incentive award to get unwitting participants to

hand over personal identifying information.  *See* FL AG Documents, WA00003821, ¶ 89.

     As for the notion that Plaintiff sent these altered "Attachment A's" and

Definitions and Instructions included therein as some sort of "secret" discovery program,

common sense should prevail.  The fact that Plaintiff sent more than one copy of non-

conforming Attachment A's to Kraft Global and Match.com that apparently didn't even

match the one sent to WAUSA should more than prove the point of inadvertence.  What could be the advantage of sending two separate non-conforming subpoenas to a non-party?

Regardless, Plaintiff sent a letter to all non-party subpoena recipients on May 21, requesting that they disregard the prior subpoena.  *See* Opp. MTD, **Ex. C** (Rothman Declaration), Exhibit B and Opp. MTD, **Ex. D** (Ornitz Declaration), Exhibit B.  This final letter should have mitigated any harm that may have been visited upon the Defendant.

**B.     The Extent of a Client's Blameworthiness.**

Without belaboring the point, the Client was not to blame.  This inadvertent mistake rests firmly in the hands of Plaintiff's counsel.  Counsel did not intend any malice, nor did it intend to deceive the Court through the use of these non-party subpoenas.

**C.     The Prejudice to the Judicial Process and the Administration of Justice.**

Other than the Plaintiff attempting to re-create the exact same subpoena that had been previously sent out, there can be no prejudice to the Judicial Process or the Administration of Justice.  In the *Shaffer* case, the District Court found that the government's attorneys misrepresented the academic credentials of the EPA's On-Scene Administrator, and this information had not been brought to the Court's attention, and repeatedly and deliberately violated their duty of candor to the court developed using that record.  *See Shaffer*, 11 F.3d at 454.  Two days after the deposition containing the misrepresentation, the government's attorney's researched the issue and found that the witnesses credibility was relevant to the litigation and concluded as a matter of law.  *See*

*Shaffer*, 11 F.3d at 455.  Nevertheless, the government's attorneys failed to supplement

its response and continued "to litigate the matter unabated."  *See Shaffer*, 11 F.3d at 459.

Moreover, the Court found that the credentials of the witness were "material" to the

analysis of the record.  *See id.*

In this case, Plaintiff's Counsel describes the non-conforming subpoenas as the

result of an innocent and inadvertent mistake.  *See* Opp. MTD, **Ex. C** (Rothman Decl.) at

¶¶ 4-27.  Even more importantly, the issue of the non-conforming subpoenas is entirely

immaterial as to the overall issue raised by Plaintiff's lawsuit.  Plaintiff has alleged

Defendant is distributing false and misleading unsolicited commercial email to Maryland

under the MD-CEMA and sent from Florida under the FL-CEMA.  Whether Defendant

has been defamed by Plaintiff's subpoena requests to non-parties is utterly immaterial.

Leaving aside the issue of whether a corporation can be defamed or whether the Request

for Documents can be defamatory, there is an absolute privilege for defamatory

statements uttered in the course of a trial or contained in pleadings, affidavits or other

documents related to the case.  *See Wallace v. Mercantile County Bank*, 514 F. Supp. 2nd

776, 794 (D. Md. 2007)  (citing with approval) *Bochetto v. Gibson,* 580 Pa. 245, 860

A.2d 67, 71 (Pa. 2004) (explaining that "a person is entitled to absolute immunity for

'communications which are issued *in the regular course of judicial proceedings* and

which are *pertinent and material to the redress or relief sought*'") (internal citations

omitted; italics in the original); *Keys v. Chrysler Credit Corp.,* 303 Md. 397, 494 A.2d

200, 203 (Md. 1985) (stating that there is "an absolute privilege for defamatory

statements uttered in the course of a trial or contained in pleadings, affidavits or other documents directly related to the case") (internal citations omitted).

**D.      The Prejudice to the Victim.**

There is no prejudice to the victim.  Defendant has been the subject of an investigation by numerous State Attorneys General (Florida and Texas).   Defendant's false and misleading emails can be traced to a series of individuals who have entered pleas of guilt to sending false and misleading commercial email.  Defendant is well aware of the allegations against them.

**E.      The Availability of Other Sanctions to Rectify the Wrong.**

No sanctions necessary.  Plaintiff committed no intentional wrongs, violated no rules of professional responsibility, and did not damage the integrity of the court's or its ability to seek the truth.

**F.      The Public Interest.**

The public interest should prevent the dismissal of the underlying case.  The present action is brought based on Plaintiff's contentions that the Defendant violated the Consumer Protection Laws of the State of Maryland and Florida using false and misleading communications directed to its residents.  WAUSA should not be permitted to succeed in its ultimate goal of a dismissal in this case due to Plaintiff's Counsel's inadvertent mistakes.

### IV.      PLAINTIFF'S REQUEST FOR SANCTIONS Under 28 U.S.C. § 1927

Defendant WAUSA's excessive, vexatious multiplication of litigation is

sanctionable under 28 U.S.C. § 1927.  Under 28 U.S.C. § 1927 "[a]ny attorney . . . who

so multiplies the proceedings in any case unreasonably and vexatiously may be required

by the court to satisfy personally the excess costs, expenses, and attorneys' fees

reasonably incurred because of such conduct."  *See Epps v. Way of Hope, Inc*., 2010 U.S.

Dist. LEXIS 49061, at *10-11 (D. Md. May 18, 2010).

    In that case, the court stated, "it is counsel's obligation under the statute and

codes of ethics to pursue only meritorious claims and positions.  The Court reluctantly

imposes sanctions in any case, but defense counsel's position resulted in the totally

unnecessary expenditure of plaintiff's counsel time and treasure."  *Id*.  "Vexatious

conduct involves either subjective or objective bad faith."  *Davis v. Home Depot U.S.A.,

Inc*., 2010 U.S. Dist. LEXIS 30223, at *4-5 (D. Md. Mar. 26, 2010) (quoting *U.S. for Use

& Benefit of Union Light & Power Co. v. CamCo Const. Co., Inc*., 221 F. Supp. 2d 630,

634 (D. Md. 2002)).

    In particular, Defendants have excessively, deliberately, and vexatiously

multiplied the proceedings in this case and wasted the time and treasure of this Court and

the Plaintiff by the following acts :

- Filling at least twenty-two (22) separate Motions while simultaneously denying Plaintiff access to WAUSA witnesses;

- Acknowledging in its own communication amongst its attorneys that its litigation strategy was one based on delay rather than deliberate prosecution of the case.[10]

- Refusing to provide dates to Plaintiff for merits discovery while simultaneously filing frivolous confidentiality motions.

---

[10] [DE 323] MTD Ex., 16 (p. 2 of 6).

- Encouraging its client and witnesses to provide false and misleading answers during depositions. [11]

- Insisting that Defendant WAUSA did not exist prior to 2006, when the Secretary of State's Records for both Florida and Delaware clearly indicate that WAUSA did exist prior to that date, that a company named Niutech, LLC owned and operated by the Defendant was merged into WAUSA, then blatantly denying such fact.

Each of these facts individually supports a finding of bad faith, vexatious multiplication of proceedings, and wasteful motions practice by World Avenue. Together, the effect on the Court and the Plaintiff is undeniable.  Even if the present Motion to Dismiss is denied, WAUSA has ultimately achieved its actual goals:  to harass BSI with its filings, force BSI to brief the same issue at least three times, and delay BSI's day in court.  As such, this is a textbook case for sanctions under 28 U.S.C. § 1927.  *See also Brubaker v. City of Richmond*, 943 F.2d 1363, 1382 n.25 (4th Cir. 1991) ("The statute 'imposes a continuing obligation in the conduct of litigation.'  Attorneys must not multiply proceedings through unreasonable and vexatious conduct.").

---

[11] *See* Opp. MTD, **Ex. A** , p. 259:1-22;  260:6-20.  WAUSA ESI Deposition (Chad Schlotter) (filed under seal at Defendant's WAUSA Designation on 03/31/10

In addition to the authority granted under § 1927, courts also possess the inherent authority in appropriate cases to assess attorney's fees and impose other sanctions against a litigant or a member of the bar who has "acted in bad faith, vexatiously, wantonly, and for oppressive reasons." *Davis*, 2010 U.S. Dist. LEXIS 30223, at *4-5 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991)).  "Bad faith may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation." *Davis*, 2010 U.S. Dist. LEXIS 30223, at *4-5 (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980)).  For the same reasons as previously stated, sanctions under the inherent powers of the Court are warranted.

## V.    CONCLUSION

For all these reasons, Plaintiff respectfully requests that this Court deny Defendant World Avenue USA, LLC's Motion to Dismiss For Fraud on the Court, and award Plaintiff sanctions based on Defendant's conduct in prosecuting the instant Motion.

Respectfully submitted,


_____/s/_____          _____07/30/10_____
Stephen H. Ring                                Date
STEPHEN H. RING, P.C.
506 Main Street, Suite 215
Gaithersburg, Maryland 20878
MD Bar Id. No. 04731764; USDC, MD: #00405
Telephone: 301-563-9249


_____/s/_____          _____07/30/10_____
Michael S. Rothman, Esq.                     Date

27

Law Office of Michael S. Rothman
USDC, MD # 14568
401 E. Jefferson Street
Suite 201
Rockville, MD 20850
Phone: (301) 251-9660
Fax: (301) 251-9610

*Attorneys for Plaintiff*

## Certificate of Service

I certify that a copy of the foregoing documents was served on this 30th day of July 2010, via the ECF system, on all counsel of record.



                /s/
        Michael S. Rothman


## EXHIBITS


**Exhibit A**        Schlotter ESI Deposition, [30(b)(6) designee Chad Schlotter] (filed under Seal)

**Exhibit B**        The Compliance Letter.  (Attached here for convenience is pp. 3-5 of MTD, Exhibit 22 [DE 323-23 (May 21st letter to Counsel bearing files names A-1 through A-8).

**Exhibit C**        Rothman Declaration (with Exhibits A & B)

**Exhibit D**        Ornitz Declaration (with Exhibits A & B)