**IN THE U.S. DISTRICT COURT FOR MARYLAND,
SOUTHERN DIVISION**

| | | |
|---|---|---|
| BEYOND SYSTEMS, INC. | ) | |
|     Plaintiff | ) | |
| | ) | |
|     v. | ) | Case No. PJM 08 cv 0921 |
| | ) | |
| WORLD AVENUE USA, LLC, et al. | ) | |
|     Defendants | ) | |
| _____ | ) | |

**DEFENDANT WORLD AVENUE USA, LLC'S REPLY MEMORANDUM IN SUPPORT
OF ITS MOTION TO CHALLENGE PLAINTIFF BEYOND SYSTEMS, INC.'S
DESIGNATION OF VIDEO INSPECTIONS AND DEPOSITIONS AS CONFIDENTIAL
AND FOR SANCTIONS**

Defendant WORLD AVENUE USA, LLC ("WAUSA"), hereby submits its Reply in

Support of its Motion to Challenge ("Motion to Challenge") Plaintiff BEYOND SYSTEMS,

INC.'s ("BSI") Designation of the Video Inspections of the premises located at 1612 Sherwood

Road, Silver Spring, Maryland 20902 [DE 266-5 and 267-5]; at 38 Maryland Ave, Unit 333,

Rockville, Maryland 20850 [DE 266-8 and 267-8]; at 9501 Anchorage Place, Bethesda,

Maryland 20817-4017 [DE 266-9 and 267-9]; at 1837 R Street, NW, Washington, D.C. 20009

[DE 266-12 and 267-12], ("Video Inspections"); the Depositions of Paul A. Wagner [DE 266-52

and 267-52], and of Alton K. Burton [DE 266-53 and 267-53], respectively, ("Depositions"),

collectively "Discovery Materials"[1].  WAUSA's Motion should be granted, and the Discovery Materials should be designated as non-Confidential for the reasons stated in the Motion and below.

## I.   INTRODUCTION

Plaintiff's Opposition fails to demonstrate that any of the challenged Discovery Materials warrant a Confidentiality designation under the Protective Order.[2]  Besides a conclusory statement that these materials meet the Confidentiality requirement of the Protective Order (Section 1(a)), Plaintiff, as the party asserting Confidentiality, offers nothing to substantiate its claim and thus to meet its burden.  Although BSI seems to be aware of the standard applicable in this Circuit to Confidentiality, BSI misapplies it to the facts *sub judice*.  However, under the Fourth Circuit standard and Plaintiff's own cited authorities, the materials do not warrant contravention of the legal presumption in favor of public access to court materials.

Absent a valid explanation as to why this information should be kept forever under seal, Plaintiff argues, like in all its latest filings in this matter, that WAUSA's legal defense of BSI's

---

[1] BSI claims that Defendant erroneously represented the facts concerning the designation of the William Wagner Deposition.  Opposition, p. 1.  BSI has it backwards:  BSI only de-designated the William Wagner after this Motion was filed.  Specifically, a*fter* WAUSA filed its Motion to Challenge on June 23rd and *after* William Wagner attached a complete un-redacted copy of its deposition to a filing in the District Court for the District of Columbia, *only then*, on June 24th, did counsel for William Wagner stated that he de-designates the deposition of William Wagner as Confidential.  *See* email from S. Ring to S. Saunders, dated June 24, 2010, attached as Exhibit 4.

[2] Stipulated Order Regarding Confidentiality of Discovery Materials ("Protective Order") [DE 97].

2

$100 million claim against it constitutes harassment and intimidation of BSI -- the Plaintiff, which initiated this lawsuit more than two years ago and which posits itself as an innocent ISP [Internet Service Provider] and a victim.  Plaintiff's tactic is designed to distract the Court's attention from the main issue: are these Discovery Materials in their entirety "sensitive personal information, trade secrets or other Confidential research, development, or commercial information" as the Protective Order requires for a proper good faith designation?  The answer is clear:  No, they are not.  Any other extraneous allegations and arguments made by Plaintiff are a red herring.

BSI has set up a fraudulent scheme that involves members of its President Paul Wagner's family, to manufacture litigation -- although it subscribes to receive e-mails through phony e-mail addresses and deliberately does not install any anti-spam filters.  Contrary to BSI's argument that WAUSA's discovery was conducted in bad faith as part of "scorched earth" litigation techniques, WAUSA was and is merely defending itself through the legal means provided by the Federal Rules of Civil Procedure.  The evidence obtained in the Inspections and Depositions is used as the basis of WAUSA's Motion for Partial Summary Judgment on the issue of Maryland residence pending in this Court.  *See* DE 266 and 267.

Additionally, BSI's unreasonable over-designation of the discovery materials is well known to the Court.  *See* DE 235.  Here again, Plaintiff violated the good faith requirement of the Protective Order and failed to prove that there was at least an attempt from its part to distinguish between Confidential and non-Confidential information in the Inspections and

3

Depositions. *See* Section 1(a) of the Protective Order.  The Parties never intended to exclude the deposition transcripts from the good faith designation requirement or to allow a "cloak of secrecy" of the depositions.  Therefore, the negotiated and agreed language is that "*portions of the depositions* … shall be deemed Confidential .."  *Id.* at Section (b) (emphasis added). Plaintiff's violation of the Protective Order is intended to shield from the public view its scheme to manufacture litigation seeking hundreds of millions in supposed damages.  BSI's ulterior motive for straining the limits of the Protective Order is that if the unveiled information becomes public, BSI's scheme will be revealed to the rest of the world, including other defendants sued by the BSI litigation machine.  This is a clear abuse of the legal process.  However, as Justice Lewis Brandeis stated:  "sunlight is said to be the best of disinfectants,"[3] and therefore, this information should become a matter of public domain.

For these reasons and as argued below, WAUSA's Motion should be granted and the Discovery Materials should be designated as non-Confidential.

---

[3] Specifically, Justice Brandeis stated:

> Publicity is justly commended as a remedy for social and industrial diseases. Sunlight is said to be the best of disinfectants; electric light the most efficient policeman.

Louis D. Brandeis, *Other People's Money-and How the Bankers Use It* 92 (1914).

4

## II.    ARGUMENT.

### A.    Plaintiff and The Non-Parties Failed To Demonstrate The Discovery Materials Are Confidential

#### 1.    The Video Inspections Are Not Confidential

In its Opposition, Plaintiff argues that (1) "non-parties had a good faith basis for believing that the videotaped inspections [] contained 'sensitive personal information,' 'trade secrets' or 'other Confidential research, development, or commercial information.'"  Opp. at p. 2.  However, Plaintiff failed to demonstrate that the information in the Inspections meets the requirements of the Protective Order and the applicable law.  Specifically, BSI does not show what specifically is "sensitive" about the "content [of the] home[4] [of William Wagner], [ ] areas of ingress and egress,"[5] or "his worldly contents".  Opp. at p. 8.  BSI argues that this is "private information" of William Wagner.  However, to be protected by the Confidentiality designation of the Protective Order, this information must also be sensitive.  Similarly, Plaintiff does not show how Paul Wagner's personal effects, "ingress and egress" and "his worldly contents" in the Inspections of BSI's so-named "office" in the District of Columbia are sensitive personal

---

[4] Although Plaintiff tried to create the appearance that the inspection of William Wagner's former and current residences were intrusive, the Inspections of the Sherwood Road Residence and Rockville Condominium were limited to the identified areas where BSI's related business is purportedly conducted.

[5] Although Plaintiff threw in the list also "security," it does not explain what this means and notably, William Wagner testified that neither he nor BSI take any security measures to protect the servers.

5

information.[6]   Opp. at p. 9.   Finally, Plaintiff fails to demonstrate that a "filing syste[m],",", "hardware connectivity," or "the size of [an] office" constitutes "*most sensitive personal information*" contained in the inspection of Anchorage Place.   Opp. at p. 11 (emphasis added).

In this District, however, "sensitive personal information" must consist of "intensely personal information" or "highly sensitive information of a personal and commercial nature." *Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 121 (D. Md. 2009).   The information in the Inspections does not meet this standard because they include footage of public streets and common areas, as well as of books and magazines on the shelves.   These are the "offices" of a purported Maryland ISP [internet service provider] claiming to sue in this Court.   The public has a right to know about private residences being used as purported principal offices of *faux* Maryland residents.

Moreover, Alton Burton is a Certified Public Accountant who offers his accounting and legal services to the public.   He advertises his practice to the public through a sign on the entrance door.   His clients visit his residence.   His clients can visit his conference rooms. Similarly, the R Street residence in the District of Columbia has been inspected because BSI directs whatever business it conducts from that location. This Inspection starts with footage of the entrance door and the street view of the house and includes footages of BSI's equipment,

---

[6] As with the rest of the Video Inspections, Plaintiff alleges in a conclusory manner that inspection of the R Street Residence, from which BSI conducts its business -- whatever it is -- contains "information about security" and "residents."   However, Plaintiff does not point WAUSA or the Court specifically to the information on the video inspection to which it refers. Opp. at . p. 8.

6

furniture and belongings.  It does not include any purely residential or personal areas of the house.[7]

Similarly, Plaintiff failed to demonstrate that any of the information in the Discovery Materials contains trade secrets as defined by the Maryland Uniform Trade Secrets Act:

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that:  (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

§11-1201 (e).

Nor did Plaintiff prove that any of the information contained in the Discovery Materials constitutes "Confidential research, development, or commercial information" and how any of the information, if made public, "might harm [its] competitive standing."  *See* Opp. at p. 5, *citing Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978).  It is undeniable that WAUSA does not compete with the Plaintiff in its alleged ISP business.  It is axiomatic that WAUSA does not compete with BSI in its actual business of manufacturing litigation.  Therefore, any alleged harm to BSI's competitive standing is purely speculative and does not convert obviously non-Confidential information to Confidential information.

Additionally, Plaintiff's argument that non-parties should be subjected to a different

---

[7] Paul Wagner stated during the inspection that there is no business being conducted from the second floor where the bedrooms are located.

7

standard than parties to the litigation with regard to Confidentiality designations is just plain wrong.  Specifically, the Protective Order, negotiated and entered into by BSI's counsel, who are also counsel for William Wagner, Paul Wagner and Alton Burton, provides that "[n]on-parties to this suit may obtain protection under the Stipulated Protective Order for information and materials they produce pursuant to subpoena or otherwise in connection with this action by following the provisions of paragraph 1 of this Order pertaining to designation of information and materials as Confidential, and signing the Certificate attached as Exhibit A." *See* Section 5 of the Protective Order.  Thus, the non-parties may designate such material as Confidential "*only when such person in good faith believes* it contains sensitive personal information, trade secrets or other Confidential research, development, or commercial information."  (emphasis added).

Moreover, Plaintiff's overzealous reference that these are non-parties "dragged into this matter" is misplaced. Opp. at p. 7.  As WAUSA stated in its Motion, William Wagner's former and current residences have been inspected because BSI represented that they constitute BSI's "offices" where it stores its equipment. *See* Motion at pp. 6-7.  Further, 9501 Anchorage Place was inspected because BSI designated it as BSI's "principal office" listed with the Maryland Department of Assessment and Taxation.  *Id.*  Finally, the R Street residence in DC was inspected because it is the place where BSI conducts most -- if not all -- of its activities in the present or during the period covered by this litigation.  *Id*. at pp. 9-10.  Thus, these are premises that BSI used to create an appearance of Maryland residency.

Significantly, one of the purported innocent non-parties that BSI alleges WAUSA harassed has been ordered to pay attorneys' fees and costs to WAUSA for that non-party's filing of a frivolous motion for sanctions against WAUSA in the U.S. District Court for the District of Columbia.  Plaintiff mentioned that Motion in its Opposition, as another example of "World Avenue's harassment." *See* Opp. at p. 2, footnote 1.  Specifically, William Wagner filed a Motion for Sanctions against WAUSA two months after the taking of his deposition, where he appeared voluntarily and for which a Protective Order was not filed.  Among the many facts William Wagner withheld from the Court, most importantly, he failed to inform the U.S. District Court for the District of Columbia that during the deposition he admitted having the documents that were previously requested by the subpoena issued by WAUSA and that William Wagner previously had answered he had none.  *See* Magistrate Kay's Order issued on July 30, 2010, case 1:09-mc-00557-HHK-AK, DE 21 (D.D.C.), attached hereto as Exhibit 1.  The Court noted that, because "there were doubts as to the veracity of [William Wagner's] replies to [WAUSA's] earlier subpoena, … the Court suggested deposing [William Wagner] if [WAUSA] continued to doubt his assertions."  *Id.* at p. 7.  The Court concluded that:

> extent of the questioning was necessary to establish whether or not [William Wagner] did or did not actually have responsive documents in his possession. Moreover, as discussed below, the deposition did uncover evidence that [William Wagner] had withheld information about responsive documents in his possession. As such, [William Wagner's] motion [for Sanctions] fails to establish that either the subpoena or the depositions imposed an undue burden on him.

> *Id.*

9

## 2. The Depositions Are Not Confidential

>    i.    **Deposition of Rule 30(b)(6) Designee of BSI on Electronically Stored Information (ESI) -- Paul Wagner.**

For similar reasons, Plaintiff has failed to demonstrate that the Depositions include Confidential information under the Protective Order.  Plaintiff merely asserts in a conclusory fashion that they contain "sensitive personal information."  Opp. at p. 13.  Notably, with regard to the deposition of the Rule 30(b)(6) deposition of BSI's designee on Electronically Stored Information (Paul Wagner), although BSI continues to ague that it should be designated Confidential in its entirety, the record of the deposition shows that it is only partially Confidential.  *See* cover page of the transcript attached thereto as Exhibit 2.  Counsel for WAUSA inquired as to why BSI believed that it had designated the entire deposition of Paul Wagner as Confidential, but it never received an answer for Plaintiff's counsel.  *See* email from S. Saunders to S. Ring and M. Rothman dated July 23, 2010 attached hereto as Exhibit 3. Further, contrary to BSI's representation, Paul Wagner was not deposed in his individual capacity.  Instead, Paul Wagner was deposed as the Rule 30(b)(6) designee of BSI on the issue of Electronically Stored Information (ESI).

Additionally, as WAUSA noted in the Notice of Joinder to Motion Filed by Non-Party Connexus Corp. at 324 [DE 356], BSI makes inconsistent misrepresentations to the Court and to WAUSA, and false representations to Connexus -- all designed to shield abusively designated documents as Confidential from the public and other defendants.  *See* DE 356 at p. 1.

10

Specifically, on one hand, BSI opposes WAUSA's Motion to challenge Confidentiality on the grounds that it has a "good faith belief that the information contained in the [Paul Wagner's deposition transcript] represent[s] 'sensitive personal information' that should rightly be shielded form public views using the Confidential Designation" and thus, the entire transcript is Confidential.   On the other hand, BSI's argument for denying Connexus' access to the entire deposition of Paul Wagner is that "it is WAUSA counsel that is in control of de-designating the appropriate portions of the transcript."  *See* email from T. Onorato to A. Rothman, dated July 19, 2010 attached as Exhibit 5.   Thus, BSI's inconsistent position is additional proof of its utter motive to hide behind its abusive Confidentiality designation of the Paul Wagner deposition.

### ii.    <u>Deposition of Alton Burton.</u>

Similarly, Alton Burton has been deposed pursuant to the Court's Order as BSI's CPA and registered agent.   Further, although BSI argues that counsel for Alton Burton "objected numerous times during the deposition on the basis of the Attorney/Client privilege and the Accountant/Client privilege", the information was not disclosed during the deposition and thus is not in danger. BSI has not identified a single instance where attorney-client or accountant-client privileged information was disclosed during the deposition.   Therefore, the Depositions of Paul Wagner and Alton Burton should be designated as non-Confidential.

### B.    <u>Plaintiff Failed To Demonstrate That The Non-Parties' and Its Interest Outweigh the Public Interest In Access to Civil Proceedings</u>

Plaintiff argues that the Discovery Materials should be kept Confidential because "once these materials are placed in the public record, there is a strong likelihood that the Defendant will

11

misuse the information, proprietary or otherwise, to the detriment of non-parties out of spite, harassment, or outright intimidation;" and that the privacy interests of non-parties outweigh the "scorched earth litigation tactics of Defendant's counsel." Opp. at pp. 2, 7.

However, this unsupported allegation shows why this Court should "sacrif[ice] the traditional interest of the public in obtaining access to civil proceedings…" *Minter*, 258 F.R.D. at 121 (*quoting Virginia Dep't of State Police v. The Washington Post*, 386 F.3d 567, 580 (4th Cir. 2004) and *In re: Grand Jury Subpoena*, 836 F.2d 1468, 1475 n.11 (4th Cir. 1988)). As argued in the Motion to Challenge, this Court has recognized that "the mere existence of a Confidentiality order protecting Confidential information, does not guarantee a right to seal all documents claimed to be sensitive." *Minter*, 258 F.R.D. at 123. Plaintiff has to show good cause for permanently sealing the record and conclusory allegations do not suffice. *See In re Air Crash at Lexington, Kentucky, August 27, 2006*, 2009 WL 1683629, *7, 5:06-CV-316-KSF (June 16, 2009, E.D. Ky.) (Noting that the burden is on the designating party to "show good cause for a protective order *for each item*," "[c]onclusory statements will not suffice," "[e]vid333entiary support is required.") (emphasis added). The parties and non-party equally have a burden of coming forward with specific evidence to prove good cause. The public right of access cannot be swept aside by conclusory allegations.

Here, William Wagner, Paul Wagner and Alton Burton offer nothing but a speculative harm coming from a Defendant that is mounting a defense against a lawsuit seeking in excess of $100 million in supposed damages. Discovery on William Wagner was conducted pursuant to

12

counsel's agreement.   Paul Wagner was designated as BSI's 30(b)(6) designee for an ESI deposition.   Similar to the Sherwood Road and Rockville premises' inspections, the videotaped inspection of the R Street Residence in the District of Columbia was conducted pursuant to counsel's agreement.   Finally, Alton Burton was deposed and the inspection of his office located in his residence was conducted pursuant to this Court's Order.   Significantly, a sister court has held last week that WAUSA has not conducted discovery on William Wagner in bad faith and it has not imposed undue burden on him.   *See* Exhibit 1.   As stated above, the District of Columbia awarded WAUSA's costs and attorney's fees related to responding William Wagner's motion for sanctions.   *Id.*, at p. 9.

Thus, contrary to what the BSI and these non-parties say, discovery was ordered by the Court, agreed by the parties and conducted pursuant to the Federal Rules of Civil Procedure.   If the non-parties or BSI felt any abuse during this procedure, they failed to mention it or to file for a Protective Order.   Therefore, post-factum arguments of harassment, intimidation and embarrassment are misplaced.   Moreover, it bears no significance on the issue whether the Discovery Materials are Confidential pursuant to the Stipulated Protective Order in their entirety. As shown above, they are not and therefore, Plaintiff failed to demonstrate that the non-parties' privacy interest is at risk at all.   Accordingly, it does not outweighs the public interest of the publicity of the legal process.

Additionally, as the Court is aware Plaintiff engages in an overuse of the Confidentiality label.   Specifically, BSI designated as Confidential 68,300 emails that are the basis for its claims

13

and the Court granted WAUSA's Motion to Challenge this designation. DE 235.  Further, BSI's practice raises the Confidentiality label to the absurd as BSI filed the Opposition to WAUSA's Motion to Challenge entirely under seal.  However, nothing in the content of the Opposition is subject to sealing, to wit: pages 1-2: summary of argument; page 2-3: statement of facts of when items were designated Confidential; pages 3-6: citation of caselaw and legal standards; pages 6-7: legal argument; pages 7-end: contains legal argument on why each item designated should be Confidential -- but is not itself by any stretch of imagination itself Confidential.

Thus, this constitutes another example of Plaintiff's abusive Confidentiality designation practice that supports improper motives *to wit*, to impede free flow of information to other targets of BSI's litigation machine.  It also calls into questions Plaintiff's Confidentiality designation practice.[8] *In re Ullico Inc. Litigation*, 237 F.R.D. 314, 317-18 (D.D.C. 2006) (holding that flagrant unwarranted designation of documents that not only exceeded the scope of the two categories (similar to the Protective Order in this case), but also fall into categories of obviously non-Confidential, publicly available documents, called into question a party's usage of the "Confidentiality" label).

Finally, Plaintiff's argument that the "information that WAUSA allegedly obtained about BSI during this inspection[s] [] was negligible at best" is disingenuous. Opp. at pp. 8-9.  The evidence secured through this discovery serves as part of the basis for WAUSA's Motion for Partial Summary Judgment on the issue of BSI's purported Maryland residency.  Further,

---

[8] WAUSA has filed an Opposition to the Interim Motion to Seal the Opposition.  *See* DE 385.

14

whether "WAUSA's claim about a 'nerve center'" is relevant or irrelevant has yet to be adjudicated by the Court. *Id.* at p.10. Additionally, the evidence secured through Inspections and Depositions can and might be used to challenge BSI's purported ISP status and its standing to bring any claims as a legitimate ISP. Thus, WAUSA engaged in good faith in discovery and Plaintiff's attack on WAUSA for defending itself actually unveils its fear that if this information becomes public other defendants might use to defend themselves against a professional plaintiff.

## C. Plaintiff Violated The Good Faith Requirement of the Stipulated Protective Order and Its Conduct Warrants Sanctions

The Stipulated Protective Order requires that a party, as well as a non-party, designate information Confidential only "when such person *in good faith* believes it contains sensitive personal information, trade secrets or other Confidential research, development, or commercial information." Section 1(a) (emphasis added). Thus, pursuant to the Protective Order and Rule 26 of the Federal Rules of Civil Procedure, Plaintiff's designation of information as "Confidential" is governed by "an overarching requirement of good-faith." *In re Ullico Inc. Litigation*, 237 F.R.D. at 317.

There are no doubts and Plaintiff does not even contend that it tried to distinguish between Confidential and non-Confidential or public information contained in the Inspections and the Depositions. However, as WAUSA alleged in its Motion to Challenge, the Discovery Materials contain public information. Additionally, BSI tries to hide behind the non-parties and to argue that they designated the materials as Confidential and thus, this additional designation should buttress the designation of BSI itself. Opp. at p. 14. If BSI takes the position that

15

designation belongs to third parties, then Plaintiff has no standing to oppose the de-designation as it failed to articulate any of BSI's protected privacy interests at issue.

Thus, Plaintiff's abusive blanket designation as Confidential of all the Video Inspections and Depositions imposes an obvious burden on WAUSA and justifies imposition of sanctions for massive over-designation. *See* Motion to Challenge at p. 14, citing and discussion *Del Campo v. American Corrective Counseling Services, Inc.*, No. C-01-21151 JP (PTV), 2007 WL 3306496 (Nov. 6, 2007, N. D. Cal.); *Humphreys v. Regents of The Univ. of Calif.*, No. C-04-03808 SI (EDL), 2006 U.S. Dist. LEXIS 97906 (Nov. 14, 2006, N.D. Cal.); *see also In re Ullico*, 237 F.R.D. at 319 (ordering the designating party abusing Confidentiality designation to pay challenging party reasonable expenses, including attorney's fees, incurring in bringing the motion). Therefore, the Court should sanction BSI's abusive behavior and award WAUSA's reasonable attorneys' fees and costs in the amount determined later.

Sanctions are warranted by the record in this case. This case has been replete with examples of BSI not obeying the rules, taking specious positions, ignoring Court orders, ignoring deadlines and generally doing whatever it pleases. Many times the Court has noted in Orders that BSI's conduct was either borderline sanctionable or, in fact, over the line -- yet, in many instances, the Court has expressly stated that it was refraining from the imposition of sanctions. *See, e.g.*, DE 183, p. 3 ("Plaintiff was permitted to pursue discovery, and here, its approach was inappropriate. Plaintiff's attempt at a 'mulligan' was immediately frustrated by the quick action of Defendant. As the Court will prohibit Plaintiff from conducting the depositions it seeks, the

16

Court is satisfied that further court action by way of sanctions, while extremely tempting, is not required"); DE 212, p. 2 ("Given the lack of clarity in the Rules, the Court finds that the award of fees and expenses to be inappropriate in the circumstances"); DE 213, p. 2 ("Plaintiff shall be limited to the discovery of those items set forth in the declaration until some other good faith basis has been established.  Any effort by Plaintiff to go beyond the parameters of good faith discovery may run afoul of the principles of Fed. R. Civ. P. 11"); DE 234, p. 2 ("Given the resolution of this motion, the court does not find sanctions to be appropriate"); DE 305 ("Accordingly, the scope of the ESI deposition here shall be limited to the negotiated definitions of the ESI Agreement. There shall be no "bleeding over" into merits discovery under this notice. Plaintiff is limited to the discovery of the location and the nature of electronically stored information. As presently drafted, the ESI deposition notice goes far beyond the scope of the ESI Agreement and is impermissible"); DE 304, p. 2, ¶2 ("Chances are, however, that similar circumstances in the future will be met with harsher results").[6]

Given this history, the Court should enter sanctions.

### III.   CONCLUSION

Based upon the foregoing, WAUSA's Motion should be granted and the Court should entry an Order de-designating the Video Inspections and Depositions as Confidential, and granting an award of attorneys' fees and costs incurred by WAUSA in litigating the Motion, together with such other and further relief that this Court deems just and proper.

17

Dated:  August 5, 2010.

Respectfully submitted,

_____/s/_____

Sanford M. Saunders, Jr., Esq.
USDC, MD #4734
saunderss@gtlaw.com
Nicoleta Burlacu, Esq.
BurlacuN@gtlaw.com
*Admitted Pro Hac Vice*
GREENBERG TRAURIG, LLP
2101 L Street, NW, Suite 1000
Washington, DC 20037
Telephone:  202-331-3100
Facsimile:  202-331-3101

--and--

Kenneth Horky, Esq.
Florida Bar No. 691194
horkyk@gtlaw.com
John L. McManus, Esq.
Florida Bar No. 0119423
mcmanusj@gtlaw.com
*Admitted Pro Hac Vice*
GREENBERG TRAURIG, P.A.
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, FL 33301
Telephone: 954-765-0500
Facsimile:  954-765-1477

*Attorneys for World Avenue USA, LLC*

18