IN THE U.S. DISTRICT COURT FOR MARYLAND,
SOUTHERN DIVISION

BEYOND SYSTEMS, INC.              )
                                 )
    Plaintiff                )
    v.                       )        Case No.PJM 08 cv 0921
                                 )
WORLD AVENUE USA, LLC, et al. )
    Defendants               )
_____ )

### DEFENDANT WORLD AVENUE USA, LLC'S MOTION TO QUASH FIFTEEN (15) NON-PARTY SUBPOENAS FOR PRODUCTION OF DOCUMENTS

Defendant, WORLD AVENUE USA, LLC ("WAUSA"), pursuant to Fed. R. Civ. P. 45, hereby files its Motion to Quash Fifteen (15) Non-Party Subpoenas served by Plaintiff, BEYOND SYSTEMS, INC. ("BSI"), and in support thereof, states:

### I.     INTRODUCTION

The Court should quash BSI's fifteen (15) non-party subpoenas (the "Subpoenas") identified in its August 9, 2010 notice for maliciously libeling WAUSA's business reputation by falsely stating that WAUSA is under criminal investigation by the United States Attorney's Office and the Federal Bureau of Investigation ("FBI"), and for falsely implying that WAUSA conducts business with a criminal ring convicted under federal indictment known as the "Ralsky Defendants." *See* Composite Exhibit 1. Such malicious misrepresentations were made without any good faith basis, both now and when they were originally made the first time they were served at the beginning of this year in January 2010.

The first time they were served, the Subpoenas were preceded by a written threat to serve them if the case did not settle on terms acceptable to BSI. The circumstances of the issuance of

1

the first set of subpoenas are described more fully in the Declaration of Sanford M. Saunders, Jr. at DE 323 and will be developed further in future filings.

The second time the Subpoenas were issued, they were sent not only to irreparably harm WAUSA's business relationships with the non-parties that received the Subpoenas, but to vent BSI's spite at WAUSA for having made an issue out of their having been served in the first place.  Proof of bad faith, and utter lack of any reasonable basis to believe that the complained-of portion of these Subpoenas could possibly develop evidence in this case, is manifest.   First, many of the Subpoenas were sent to non-parties who had already received them in January 2010 and responded, stating they had no responsive documents.  Yet nonetheless, these same non-parties were served with these same Subpoenas once again.  Having already been told that these non-parties had no responsive documents, BSI had no legitimate reason to ask again.

 Second, notwithstanding its protestations to the contrary, BSI never had a reasonable basis for believing that any Subpoena recipient would have any documents responsive to a request about FBI or US Attorney Investigations of WAUSA in the first place.  There has never been any excuse for serving these Subpoenas, let alone for the cover-up that ensued after the first round were issued in January 2010, or for the numerous misrepresentations BSI made to this Court to try to escape any consequences for what it had done.

Throughout this litigation, WAUSA has repeatedly warned BSI to cease making such scandalous allegations in its document requests. Notwithstanding this, BSI's latest Subpoenas continue to overtly -- and *falsely --* insinuate to critical business partners of WAUSA's affiliates that WAUSA engages in criminal business practices. Further, these libelous misrepresentations bear no relevance to the "claims or defenses involved in the action" -- the permissible scope of

2

discovery under Rule 45. Rather, the Subpoenas constitute a quintessential "fishing expedition" in that BSI seeks production of documents that "relate to" numerous companies that are not the focus of this action, all in order to try to develop new claims not currently pled, which is forbidden under applicable precedent.  Accordingly, the Court should enter an Order quashing the Subpoenas as a matter of law.

## II.    STATEMENT OF FACTS

### A.    The Subject Subpoenas.

On or about August 9, 2010, BSI served its Notice of Issuance of Subpoenas *Duces Tecum* to Non-Parties for Production of Documents without Deposition, whereby BSI informed WAUSA of its intent to serve the following entities with the Subpoenas: America Online, Inc.; Direct Brands, Inc.; Columbia House; Direct Brands, Inc.; Direct TV; Discover Financial Services; Dish Netowrk, L.L.; Experian / ConsumerInfo.com / Experian Information Solutions; Kraft Food, Inc.; Netflix; Rhapsody America, LLC; StyleMyHouse.net; Kraft Foods Global, Inc; and Vonage. The Subpoenas define "Ralsky Defendants" as "the persons who were charged and plead         guilty         in         the         41-count         indictment         per http://www.justice.gov/criminal/cybercrime/ralskyIndict.html, together with a list of individuals who are unrelated to WAUSA.

Among other things, the Subpoenas demand that the non-parties produce the following categories of documents:

1.    All DOCUMENTS that contain any communications with or RELATING to WORLD AVENUE, MAILCOMPANYX, ACCELERATEBIZ, the RALSKY DEFENDANTS, or any other BULK EMAILER.

2.    ALL DOCUMENTS that contain or RELATE TO any complaint or opt-out request in connection with any marketing activity by or on behalf of

3

WORLD AVENUE, MAILCOMPANYX, ACCELERATEBIZ, the RALSKY DEFENDANTS, or any other BULK EMAILER.

3.       ALL DOCUMENTS that contain or RELATE TO YOUR response, activity, or sanction taken in response to any complaint or opt-out request in connection with the marketing activity by or on behalf of WORLD AVENUE, MAILCOMPANYX, ACCELERATEBIZ, the RALSKY DEFENDANTS, or any other BULK EMAILER, which shall include reference to the following:  [followed by a laundry list of 10 items].

5.       All DOCUMENTS produced to or RELATING TO investigations and/or litigation against WORLD AVENUE, MAILCOMPANYX, ACCELERATEBIZ, the RALSKY DEFENDANTS, or any other BULK EMAILER and RELATING TO illegal marketing, including those by:

        a.     Any United States Attorney's Office in the United States and/or any of its Territories;
        b.     the Federal Bureau of Investigation.

\* \* \*

The Subpoenas, on their face, are harassing and scandalous.  Specifically, it is undisputed -- and BSI is aware -- that WAUSA has *never* been the subject of an investigation by "[a]ny United States Attorney's Office in the United States and/or any of its Territories" or "the Federal Bureau of Investigation."  BSI has now had multiple opportunities to try to identify any "investigations and/or litigation against WORLD AVENUE" by "[a]ny United States Attorney's Office in the United States and/or any of its Territories" and "the Federal Bureau of Investigation," but it has failed to identify any such "investigations and/or litigation against WORLD AVENUE."

Further, this is not the first time that BSI has insinuated that WAUSA conducts illegal activity. In January and February of 2010, BSI secretly served at least six and possibly twenty-three (23) non-party subpoenas that also falsely stated that WAUSA was under criminal investigation by the FBI and United States Attorney's Office and was associated with the

4

indictment of the Ralsky Defendants. In short, the Subpoenas are the latest in BSI's concerted scheme to undermine WAUSA's business reputation in the community, and intimidate WAUSA into settling this case.  This is not hypothesis - BSI put it in writing before the first round of Subpoenas went out.   Not only are the Subpoenas harassing, but further, they do not implicate "claims or defenses involved in the action", and thus should be quashed pursuant to Rule 45.

### III.    SUMMARY OF ARGUMENT

The Court should quash the Subpoenas for falsely stating that WAUSA is under investigation by the United States Attorneys' Office and the FBI, and is associated with the indictment issued against the Ralsky Defendants. In addition, the Subpoenas are harassing to the extent served again on non-parties who already received and responded to them.  Further, the Subpoenas' individual document requests are overly broad for seeking information that is immaterial to the claims pled in the Amended Complaint. The Subpoenas' individual requests further violate the "reasonable particularity" requirement of Rule 34 by requesting the production of categories of documents that "relate to" a particular subject.

### IV.    THE COURT SHOULD QUASH THE SUBPOENAS

#### A.    WAUSA Has Standing to Quash the Subpoenas.

Pursuant to Fed. R. Civ. P. 45(c)(3)(b), the Court may quash or modify a subpoena "to protect a person subject to *or affected by a subpoena*." (emphasis added). As a general rule, a party has standing to quash a subpoena issued to a non-party, if the party "claims some personal right or privilege in the information sought by the subpoena." *U.S. v. Idema*, 118 Fed. Appx. 740 (4th Cir. 2005) (unpublished); *Carolina Materials, LLC v. Continental Casualty Co.*, 2009 WL 4611519 (W.D.N.C. 2009) (noting that a party may quash a subpoena served on third party upon

5

making "specific showing of privilege or privacy" regarding the subject documents); *Green v. Sauder Moldings, Inc.*, 223 F.R.D. 304 (E.D. Va. 2004) (observing that party has standing to challenge subpoena served on non-party where "movant claims some personal right or privilege to the documents sought").

For example, in *Chemical Bank v. Dana*, 149 F.R.D. 11 (D. Conn. 1993), the defendant moved for a protective order with respect to a subpoena issued by the plaintiff to the defendant's opponent in a prior action that sought discovery of financial documents clearly unrelated to the case. The Court rejected the defendant's contention that the plaintiff lacked standing to challenge the non-party subpoena. Specifically, the Court emphasized that "[c]ompliance with the subpoena might infringe on certain privacy rights, in that [the plaintiff] would have easy access to unrelated financial and business dealings in detail, even though most of the documents are already a matter of public record." *Id.* at 13.  In fact, the Court granted the defendant's motion for protective order. In doing so, the Court underscored that the subpoena requested detailed information regarding defendant's unrelated business or personal affairs, and "the right to obtain relevant discovery is outweighed by the privacy interests in these documents." *Id.* at 14.

Further, in *Hoover v. Florida Hydro, Inc.,* 2008 WL 4467661 (E.D. La. 2008), the plaintiff moved to quash the defendant's third-party subpoenas issued to his friend and mother for certain computer files claiming they were unduly burdensome, and sought only to harass the witnesses. The defendants alleged that the plaintiff did not have standing to challenge the non-party subpoenas. In holding that the plaintiff had standing to challenge the subpoenas, the Court reasoned that "[while] the subpoenas were issued to his mother and to his friend, they seek information that may have been sent by or for [plaintiff] on their computers." *Id.; see also Jones*

6

*v. Connecticut Community Technical Colleges*, 258 F.R.D. 192 (D. Conn. 2009) (holding that plaintiff had standing to challenge a subpoena issued to her health care provider requesting production of mental health records for "[she] clearly has a personal privacy right and privilege with respect to the information contained in his psychiatric and mental health records"); *Ace Hardware Corp. v. Celebration Ace Hardware, LLC,* 2009 WL 3242561 (D. Del. 2009) (granting defendant's motion to quash subpoena served on non-party due to its privacy rights in financial information that was the subject of the subpoena).

WAUSA has standing to quash the Subpoenas in light of the nature of the individual document requests. Specifically, the Subpoenas, on their face, falsely state that WAUSA is under criminal investigation and/or litigation by "[a]ny United States Attorney's Office in the United States and/or any of its Territories" or "the Federal Bureau of Investigation," for "illegal marketing activity."  The Subpoenas also falsely insinuate that WAUSA is connected with the Ralsky Defendants -- who pled guilty to a forty-one (41) count Criminal Indictment. As the Subpoenas directly threaten WAUSA's affiliate's business relationship with the recipients, WAUSA clearly has standing to file a motion to quash the Subpoenas.

> **B.     The Subpoenas are Harassing For Containing Materially False Statements about WAUSA.**
>
> > **1.     A Rule 45 Subpoena Cannot Be Used As A Means Of Harassment To Extract Concessions From Another Party In Litigation.**

It is well-settled that "[r]ule 26(c) of the Federal Rules authorizes a district court to…quash a subpoena in order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *In re Edelman*, 295 F. 3d 171 (2d Cir. 2002); *see also Bogosian v. Woloohojian Realty Corp.*, 323 F. 3d 55 (1st Cir. 2003) (underscoring that a factor

in quashing a subpoena is whether the "subpoena was issued primarily for purposes of harassment"); *Mattel, Inc. v. Walking Mountain Productions*, 353 F. 3d 792 (9th Cir. 2003) (affirming lower court's decision to quash subpoena "served for the purpose of annoying and harassment").

Here, the Subpoenas harass and embarrass WAUSA by falsely stating to critical clients of WAUSA's affiliates that it is under criminal investigation by the United States Attorneys' Office and FBI for "illegal marketing." The Subpoenas also misrepresent that WAUSA is connected with the Ralsky Defendants. WAUSA has repeatedly notified BSI of the falsity of these representations. Indeed, WAUSA filed a Memorandum of Law in Support of Motion to Dismiss for Fraud on the Court (the content of which is incorporated by reference herein) due to, *inter alia,* these blatant false representations in BSI's prior document requests (which were served unbeknownst to WAUSA). Yet, BSI persists in its campaign to defame WAUSA.  Thus, the Court should quash the Subpoenas for embarrassing, annoying and harassing WAUSA.

The real purpose for BSI's issuance of the Subpoenas is shown in its private correspondence with the non-parties following the issuance of the first round of secret subpoenas in January 2010.  In correspondence dated February 17, 2010 with Direct Brands, Inc., BSI stated:

> I would also like to send you a copy of the sponsor page that I referenced where World Avenue and MailCompanyX has appropriated the Direct Brand name and used it in connection with their advertisements.  I will forward that as soon as I get it.

*See* Exhibit 2.  The correspondence is particularly interesting because BSI issued it fourteen (14) days after BSI had refused to provide genuine copies of the subpoenas to the non-parties and just nine short days after BSI produced to WAUSA a copy of a subpoena to Direct Brands that

8

contained no requests whatsoever about Alan Ralsky.  *See* DE 323-15, Page 86 of 235 (containing WAUSA Bates Label 0085-DirectBrands).  A "sponsor page" is not an e-mail; it is other internet advertising.  This case is not about "sponsor page[s]."  The correspondence shows that BSI is trying to hijack a legal process to try to prejudice these parties against WAUSA based on "advertisements," but having nothing to do with electronic mail or this case.

The Subpoenas also misrepresent that WAUSA is connected with the Ralsky Defendants who were indicted in the Criminal Indictment. WAUSA has repeatedly notified BSI of the falsity of these representations. Indeed, WAUSA filed a Memorandum of Law in Support of Motion to Dismiss for Fraud on the Court due to, *inter alia,* these blatant false representations in BSI's prior document requests (which were served unbeknownst to WAUSA). Yet, BSI persists in its campaign to defame WAUSA.  Thus, the Court should quash the Subpoenas for embarrassing, annoying and harassing WAUSA.

> **2.** **The Subpoenas Are False On Their Face By Representing That WAUSA Is Under Criminal Investigation And/Or Litigation "By "[a]ny United States Attorney's Office In The United States and/or any of its Territories" Or "the Federal Bureau of Investigation," For "Illegal Marketing Activity."[1]**

The Subpoenas, on their face, falsely state that WAUSA is under criminal investigation and/or litigation by "[a]ny United States Attorney's Office in the United States and/or any of its

---

[1] To be clear to the Court, the part of the Subpoena that WAUSA maintains is false is Paragraph 5(a)-(b), which states that WAUSA is under criminal investigation and/or litigation by "[a]ny United States Attorney's Office in the United States and/or any of its Territories" or "the Federal Bureau of Investigation," for "illegal marketing activity," and the repeated intimation that WAUSA is part of the Ralsky spam gang. This clarification is important because, in recent filings, BSI has put up the "strawman" mischaracterization that WAUSA claims that, for example, there was not a settlement with the Florida Attorney General, and then BSI proceeds to refute that strawman argument as its defense.

9

Territories" or "the Federal Bureau of Investigation," for "illegal marketing activity."  BSI has

absolutely no basis to state that there is an investigation of or litigation against WAUSA by

"[a]ny United States Attorney's Office in the United States and/or any of its Territories" or "the

Federal Bureau of Investigation," for "illegal marketing activity."

BSI bases its claim on a ***terminated*** Criminal Proceeding against one Alan Ralsky.  BSI

alleges that there are 593 E-Mails At Issue sent by Alan Ralsky.[2]  All 593 appear to be sent on

April 15, 2005.  All 593 appear to advertise "Startbucks or "Dunkin Donuts."  BSI tries to tie a

sending domain (jriad.info) to Alan Ralsky by picking and choosing unverified information that

suits it on a website that purports to list spammers and their domains.[3]  Thus, while BSI picks

information from the site that is to its benefit, it ignores the complete absence of any reference to

WAUSA as an affiliate of Ralsky anywhere on the site, or to any information relating to the 15

---

[2] The 593 E-Mails At Issue  that BSI claims to be from Alan Ralsky include e-mails to
thompson@hypertouch.com, which is a phony e-mail address that the Wagners use to opt into
electronic mail campaigns.  *See* Composite Exhibit 3.  The 593 E-Mails At Issue that BSI claims
to be from Alan Ralsky also include e-mails to jmuir@hypertouch.com, who is none other than
Lisa FitzGerald Wagner, Esq., an attorney and the wife of Third Party Defendant James Joseph
Wagner, who monitors her e-mail, forwards it to her husband, and asks him "*Is this spam or for
real*?" so that he can use it in the Wagner family business.  *See* Composite Exhibit 4.  These are
the types of so-called "customers" whom the Court is being asked to protect.

[3] The website at issue (www.spamhaus.org) conspicuously disclaims reliance on the contents of
its website by individuals:

> The Spamhaus Project makes every effort to avoid errors in information in the
> ROKSO database, and will correct any errors as soon as it is able to verify the
> correction, but ***accepts no responsibility or liability for any errors or omissions,
> or liability for any loss or damage, consequential or otherwise, incurred in
> reliance on the material in these pages. The Spamhaus Project makes no
> warranties or representations as to the accuracy of the Information in ROKSO
> records. The information in the ROKSO database is for information purposes
> only and is not intended as legal advice of any kind***.

See http://www.spamhaus.org.

recipients of its Subpoenas.

> **i.      The Case Of *United States v. Alan M. Ralsky, et al.*, Case No. 2:07-CR-20627, Has Nothing To Do With WAUSA.**

The Criminal Indictment and Criminal Conviction in the case of *U.S. v. Alan M. Ralsky, et al.*, Case No. 2:07-CR-20627, U.S. District Court, Eastern District of Michigan, has nothing to do with WAUSA -- and, worse still, BSI knows it.  A copy of the Ralsky Indictment is attached as Exhibit "5."

*The Sending Domains Do Not Match*.  None of the sending Domains[4] referenced in the Ralsky Indictment are included in the E-Mails At Issue.  BSI's President, Paul Wagner, agrees and knows this because he tendered Declarations to this Court attesting to the domains in the E-Mails At Issue and the domains in the Ralsky Indictment were not included.  *See* DE 34, DE 176-1.  Thus, by BSI's own admission, it knows that the Domains in the E-Mails At Issue were not in any way, shape, or form referenced in the Ralsky Indictment.

*The Time Periods Do Not Match*.  The materially false domain registrations at issue in the Ralsky Indictment are of a later time frame than the e-mails in the E-Mails At Issue that BSI claims are from Ralsky.  *See* Exhibit 5, Ralsky Indictment, p. 10, ¶ 33 ("*Spamming With Materially False Domain Registrations*. 33.  Beginning in or about May 2005 and continuing until in or about September 2005….").  The time periods for the sending of the e-mails in the

---

[4]  The sending Domains are:  weyhityu.com, petsne.com, letyouseeme.com, leidoerti.com, kertyimpo.com, serthyouto.com, himtosee.com, marscoban.com, pertletno.com, sieki.com, batrovsi.com, hideiy.com, frostonme.com, pertindo.com, garoleben.com, soeperty.com, ketometer.com, mastomety.com, estobenca.com, darobenca.com, farmokombe.com, perletyou.com, amostade.com, vercane.com, wescombilia.com, wudkneit.com, lernalotto.com, nomargene.com, carpomoza.com, clemontuz.com, farbemove.com, lestormun.com, alunpoke.com, esstockwatch.com, and keepsea.info

11

Ralsky Indictment are of a different time from than the e-mails in the E-Mails At Issue that BSI claims are from Ralsky.  *See* Exhibit 5, Ralsky Indictment, p. 11, ¶ 38 ("From on or about June 1, 2004, through on or about August 31, 2004, and also from on or about May 1, 2005, through on or about July 31, 2005….").  The dates of the transmission of the millions of e-mails in the Ralsky Indictment are different than the date of transmission of the e-mails in the E-Mails At Issue that BSI claims are from Ralsky.  *See* Exhibit 5, Ralsky Indictment, p. 12, ¶ 43 ("5/23/2005, 5/24/2005, 5/25/2005, 5/26/2005, 5/27/2005, 5/28/2005, 5/29/2005, 5/31/2005, 6/17/2005, 6/25/2005, 7/6/2005, 7/23/2005").

*The Ralsky Indictment Involved A Stock "Pump and Dump" Scheme That BSI Has Not Alleged Existed Here.*  The objective of the Ralsky e-mails was different than the apparent purpose of the claimed Ralsky e-mails in the E-Mails At Issue.  *See* Exhibit 5, Ralsky Indictment, p. 15, ¶ 47 ("The object of the unlawful spam e-mail conspiracy was personal financial gain….by receiving payments and proceeds from the sale of stocks whose prices were inflated as a result of being advertised and promoted through false and fraudulent pretenses, promises and representations."  None of the stocks being pumped[5] in Ralsky's "pump-and-dump" scheme are included in the E-Mails At Issue that BSI claims are from Ralsky, or, for that matter, in any of the E-Mails At Issue.  None of the co-Defendants to Ralsky are associated with WAUSA.[6]

---

[5] The stocks are:  China World Trade Corporation (CWTD), China Digital Media Corp. (CDGT), Pingchuan Pharmaceutical, Inc. (PGCN), World Wide Biotech and Pharmaceutical Company (WWBP).

[6] The co-Defendants are:  Scott K. Bradley, Judy M. Devenow, John S. Brown, William C. Neil, Anki K. Neil, James E. Bragg, James E. Fite, Peter Severa, How Wai John Hui, Francis A. ("Frankie") Tribble.

12

The Press Release cited by BSI proves that the Indictment related to the use of spam for a "pump and dump" scheme:

> United States Attorney Stephen J. Murphy said, "Today's charges seek to knock out one of the largest illegal spamming and fraud operations in the country, an international scheme *to make money by manipulating stock prices through illegal spam e-mail promotions*. I commend the excellent investigative work of the FBI, Postal Inspection Service, and the IRS-Criminal Investigation Division. I also wish to recognize the significant support and expertise provided by the Computer Crime and Intellectual Property Section of the Criminal Division of the Department of Justice."
> * * *
> The charges arose after a three-year investigation, led by agents from the Federal Bureau of Investigation, with assistance from the U.S. Postal Inspection Service and the Internal Revenue Service, revealed a sophisticated and extensive spamming operation that, as alleged in the indictment, *promoted a stock "pump and dump" scheme, in which the defendants sent spam touting thinly traded Chinese penny stocks, drove up their stock price, and reaped profits by selling the stock at artificially inflated prices*.
> * * *
> The indictment charges that the defendants earned profits when recipients responded to the spam and purchased the touted products and services. According to the indictment, Hui's primary role in the scheme was to act as *a conduit for Chinese companies who wanted their stocks pumped by the scheme*.

A copy of the Press Release is attached as Exhibit 6 (emphasis added).

> ***None of The Subjects of The E-Mails At Issue Match The Ralsky E-Mails In The Indictment***. Although all 593 of the E-Mails At Issue that BSI claims are from Alan Ralsky appear to advertise "Starbucks" or "Dunkin Donuts," Starbucks and Dunkin Donuts are not referenced in the Ralsky Indictment. Neither are the recipients of the 15 Subpoenas -- America Online, Inc. (AOL), Direct Brands, Inc./Columbia House, and Doubleday, Columbia House, Discover Financial Services, Direct Brands, Inc., Direct TV, Dish Network, Experian/Consumer.Info, Experian Information Solutions (a.k.a Star Club Rewards), Kraft Food, Inc., NetFlix, Rhapsody America, LLC, StyleMyHouse.net, Kraft Foods Global, or Vonage.

13

There is a complete disconnect:  BSI issued 15 Subpoenas to companies that have nothing to do with the 593 E-Mails At Issue claimed to be from Ralsky.  Rather than seek discovery relating to the 593 E-Mails At Issue, BSI issued the discovery to recipients for whom it believed WAUSA would be most injured, and then cobbled together excuses after-the-fact regarding Alan Ralsky to defend its outrageous conduct.

***BSI Had No Basis To Believe That The Litigation and Investigation Of Alan Ralsky Is Ongoing Such That WAUSA Could Somehow Be Drawn Into It.***  Moreover, Alan Ralsky was sentenced and the case closed as to him on November 30, 2009.  A copy of the docket is attached as Exhibit 7.  BSI had no basis on August 9, 2010 to believe that there was criminal "litigation" ongoing as to Alan Ralsky that linked in any way to WAUSA.

14

        **ii.**      **The Existence of *Civil* Litigation Against WAUSA Does Not Mean That There Is A *Criminal* "Investigation" Or "Litigation" By "Any United States Attorney's Office in the United States and/or any of its Territories" or "the Federal Bureau of Investigation."**

BSI contends that there must be a ***criminal*** investigation of WAUSA by "[a]ny United States Attorney's Office in the United States and/or any of its Territories" or "the Federal Bureau of Investigation," for "illegal marketing activity," because WAUSA was named in a ***civil*** investigation by the Florida and Texas Attorney General.  The fact of a ***civil*** lawsuit does not create a ***criminal*** investigation or litigation by "[a]ny United States Attorney's Office in the United States and/or any of its Territories" or "the Federal Bureau of Investigation."  These are completely separate law enforcement agencies enforcing different laws.  BSI simply has no evidence for or basis to believe that WAUSA is under a ***criminal*** investigation and/or litigation by "[a]ny United States Attorney's Office in the United States and/or any of its Territories" or "the Federal Bureau of Investigation," for "illegal marketing activity."

        **iii.**     **The Existence Of An Alleged Relationship Between A Third Party, Opt-In-Real Big And Alan Ralsky Does Not Mean That WAUSA Is Under An "Investigation" Or "Litigation" By "Any United States Attorney's Office in the United States and/or any of its Territories" or "the Federal Bureau of Investigation."**

BSI's attempt to buttress the truth of its false allegation against WAUSA with references through a purported relationship with a third party also fails.  BSI alleges that WAUSA retained a company called Opt-In-Real Big, which, in turn, retained Alan Ralsky, and this allegation entitled it to issue the Subpoenas at issue.

BSI's reasoning is flawed, as shown by the following analogy:  A commercial landlord owns a warehouse and various other commercial properties.  It rents the 6th floor of one building

15

in Dallas, Texas to a tenant business called the Texas School Book Depository.  Lee Harvey

Oswald, a rogue employee of the tenant, shoots President John F. Kennedy from one of the

windows.  BSI's rationale would allow it to issue subpoenas to all the other tenants on other

floors of the warehouse, as well as all the other tenants in any other buildings owned by the

landlord, and state that it is requesting documents about the conspiracy between the commercial

landlord and Lee Harvey Oswald, as well as the Federal Bureau of Investigation's and U.S.

Attorney's Office's investigation of the commercial landlord's role in the conspiracy.  In the end,

BSI had no basis to state that WAUSA was a party to a criminal investigation or litigation by the

U.S. Attorney's Office or the FBI.

> **iv.**  **The Existence of Criminal Litigation Against Alan Ralsky Does Not Mean That Private Third Parties -- Such As The 15 Non-Parties -- Would Have Documents In Their Possession Pertaining To A Fictitious Investigation or Litigation Of The "Any United States Attorney's Office in the United States and/or any of its Territories" or "the Federal Bureau of Investigation."**

Finally, BSI had no basis whatsoever to subpoena third party private companies for

documents relating to a federal government investigation or litigation by either a United States

Attorney's Office or the Federal Bureau of Investigation.  BSI had no good faith basis -- and

there is no basis -- to believe that the FBI or the AUSA's Offices would willy-nilly turn over the

results of their non-existent investigations or litigations to private third party companies.  This is

particularly so where:  (i) none of the Ralsky sending Domains involved the third parties; and (ii)

the third party companies had nothing to do with the Ralsky criminal investigation.  Certainly,

BSI put its head in the sand as to the fact that the website on which it relies -- www.rokso.org --

listed *nothing* about these 15 recipients.

**C.**    **BSI's Conduct In Issuing Virtually The Same Subpoena To Parties Who Already Responded That They Had No Responsive Documents To The First Version Of The Subpoena Constitutes Harassment.**

The Subpoenas should also be quashed because BSI has deliberately re-issued oppressive Subpoenas to parties that already responded to BSI's secret subpoenas issued in January 2010 that they have no responsive documents.  For example, BSI re-issued two of the 15 subpoenas to Experian -- even though Experian responded that it had no responsive documents.  See Chart, attached to DE 373-2., p. 2; DE-323-24, p. 44 of 76 ("Despite a thorough search of its records, Experian is unable to locate any responsive documents").  BSI issued another subpoena to America Online (AOL), even though AOL advised BSI:  "After a diligent search, AOL, Inc. does not have in its possession, custody, or control any information that you are seeking."  *See* DE 323-24, p. 76 of 76.  BSI issued subpoenas to Direct Brands, Inc., even though it responded that it had no records relating to BMG Music Service.  Id., 373-2, p. 3.  These parties responded to BSI that they had no responsive documents to the original subpoenas issued in January 2010 -- even before this Court quashed those original subpoenas.  The non-parties had sufficient time to do so prior to this Court's Order because BSI refused to -- and still does refuse to -- provide genuine copies of what it served on the non-parties and then flouted this Court's Order at DE 212 for at least 40 days (and continuing to date).

**D.**    **The Subpoenas Are Harassing Because They Seek Irrelevant Information Not Reasonably Calculated To Lead To The Discovery Of Admissible Evidence.**

All of the 15 Subpoenas seek irrelevant information and are not reasonably calculated to lead to the discovery of admissible evidence.  BSI's claims are based on MD-CEMA and FL-CEMA, which create a civil cause of action based on electronic mails.  In an purported attempt

17

to support those claims, BSI has issued the fifteen Subpoenas to non-parties.  However, none of the fifteen non-parties are involved with the E-Mails At Issue.  Specifically, *none* of the E-Mails At Issue contain a product offering relating to AOL (America Online), Columbia House, Discover Card/Discover Financial Services, Direct Brands/Direct Brands, Inc., Direct TV or DirecTV, Dish Network, Experian/ConsumerInfo.com, Star Club Rewards/StarClubRewards, NetFlix, Rhapsody, StyleMyHouse, Tassimodirect.com, or Vonage.  Four of the E-Mails At Issue contain a product offering relating to Kraft Foods, but all four explicitly state that the product offering is not associated with or offered by Kraft Foods.  Thus, the Subpoena purport to discover information on how these 15 companies treat "bulk e-mailers," but none of these companies are referenced in any of the E-Mails At Issue -- save just 4 e-mails from Kraft.  BSI's "reasoning" appears to be that, while these companies are not referenced in the E-Mails At Issue, they may be included somewhere in some other advertising associated with WAUSA.  However, other advertising of WAUSA or any other company is not at issue in this case -- only the actionable nature of the E-Mails At Issue.  Weighed against the clear evidence of harassment and the oppressive overbreadth discussed below, the Subpoenas have no relevance whatsoever.

### E.    The Subpoenas are Overly Broad for Requesting the Production of Business Records for Entities that are Not Parties to this Lawsuit.

Federal Rule of Civil Procedure 26(b) governs the scope of discovery, and states "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." The Advisory Committee's notes to the 2000 amendment of Rule 26 make clear that the face of the complaint establishes the plaintiff's scope of discovery.

> The Committee intends that the parties and the court focus on the
> *actual claims and defenses* involved in the action ….[t]he rule
> change signals to the court that it has the authority to confine

18

> discovery to the claims and defenses asserted in the pleadings, and **signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings**.

*See* Rule 26, Advisory Committee Notes, 2000 Amendment (emphasis added)

"Discovery in the absence of any operative pleading....does not fit easily within the framework established by the Federal Rules. Such pre-action discovery is generally not permitted." *In re Flash Memory Antitrust Litigation*, 2008 WL 62278, at *1 (N.D. Cal. 2008) (emphasis added). Moreover, "although relevance is not defined by Rule 26(b)(1), the definition in Fed. R. Evid. 401 is useful - whether the information has any tendency to make a fact that is of consequence to the litigation more probable or less probable than it would be without it. **Consequential facts are those that prove elements of claims and defenses asserted in the pleadings, so again we are instructed to look to the pleadings to determine relevance**." *Johns Hopkins University v. Datascope Corp.*, 2007 WL 1450367, at *1 (D. Md. 2007) (denying the plaintiff's motion to compel given its failure to demonstrate that the requests fall within the scope of discovery under Rule 26) (emphasis added); *see also Behler v. Hanlon,* 199 F.R.D. 553 (D. Md. 2001) (noting that "the revised scope of discovery adopted on December 1, 2000, the scope of discovery **was narrowed** to cover facts that are not privileged that are relevant to the claims and defenses raised in the pleadings"); *AG-Innovations, Inc. v. U.*S., 82 Fed. Cl. 69 (Fed. Cl. 2008) (opining that "[u]nder the current standard, courts are advised to focus upon **the specific claims or defenses** when determining the scope of discovery") (emphasis added).

Here, BSI's Subpoenas should be quashed for requesting production of records for non-party entities and persons that are not named defendants in the Amended Complaint -- the operative pleading on the date of service of the Subpoenas. These records have no relevance to

19

the claims or defenses raised in the Amended Complaint.

**F.     The Subpoenas' Document Requests Violate Rule 34.**

Further, the vast majority of BSI's individual document requests in the Subpoenas violate

the "reasonable particularity" requirement of Rule 34. Rule 34(b)(1) provides that each request

"must describe with reasonable particularity each item or category of items to be inspected."

For example, the Subpoenas contain the following document requests:

1.   All documents……***relating to*** World Avenue, MailCompanyX, AccelerateBiz, the Ralsky Defendants or any other Bulk Emailer.

2.   All documents that…***relate to*** any complaint or opt-out request in connection with any marketing activity…

3.   All documents that….***relate to*** your response, activity or sanction taken in response to any complaint or opt-out request…

4.   All documents that….***relate to*** contracts, modifications and/or amendments….

5.   All documents……***relating to*** investigations and/or litigation..

BSI ignores that discovery requests employing omnibus terms such as "relating to,"

*when applied in a context of an overbroad discovery request*, violate the "reasonable

particularity" requirement of Rule 34. *Lipari v. U.S. Bancorp, N.A.*, 2008 WL 4642618 (D. Kan.

2008);  *see also In re Urethane Antitrust Litigation*, 2008 WL 110896 (D. Kan. 2008) (holding

that discovery request is overly broad and unduly burdensome on its face if it uses terms such as

"relating to" as "such broad language make[s] arduous the task of deciding which of numerous

documents may conceivably fall within its scope"); *Robbins v. Camden City Bd. of Education*,

105 F.R.D. 49 (D.N.J. 1985) (holding that document request for all documents that refer or relate

to the plaintiff was too broad as "a copy of every document in [the defendant's] possession could

conceivably refer or relate to the plaintiff"); *Parsons v. Jefferson-Pilot Corp.*, 141 F.R.D. 408

20

(M.D.N.C. 1992) (noting that "broad and undirected requests for all documents which relate in any way to the complaint are regularly stricken as too ambiguous").

As explained by a federal court in *Audiotext Communications v. U.S. Telecom, Inc.*, 1995 WL 18759 (D. Kan. 1995):

> Requests should be reasonably specific, allowing the respondent to readily identify what is wanted. Requests which are worded too broadly or are too all inclusive of a general topic function like a giant broom, sweeping everything in their path, useful or not. They require the respondent either to guess or ***move through mental gymnastics which are unreasonably time-consuming and burdensome*** to determine which of many pieces of paper may conceivably contain some detail, either obvious or hidden, within the scope of the request. The court does not find that reasonable discovery contemplates that kind of wasteful effort.
> (emphasis added).

Here, document request numbers 1-5, 8-10 and 13-14 are overly broad for using the omnibus language "relating to" and "related to" that violates Rule 34. BSI must narrowly tailor its individual document requests to conform to the reasonable particularity requirement of Rule 34. As it stands now, the Subpoenas are overly broad on its face, and thus, should be quashed.

**G.     The Definitions In The Subpoenas Render Them Overbroad And Oppressive.**

**1.     The Subpoenas Violate The Court's June 2, 2010 Order And The Court's April 28, 2009 Scheduling Order Establishing The Requisite Definition of The Word "You."**

In this Court's April 28, 2009 Scheduling Order, the Court directed the parties to adhere to the Discovery Guidelines of the Local Rules.  *See* DE 58, p. 3, ¶ y ("Please be familiar with the Discovery Guidelines of this Court which are Appendix A to the Local Rules"); Local Rule 104(12) ("Counsel should be familiar with the Discovery Guidelines that are an appendix to these Rules").  BSI's oppressive definition of the word "*You*" violates the definition of the word

21

"You" in the Discovery Guidelines, as endorsed by this Court's Scheduling Order and the Local

Rules, as follows:

| Definition of the Word "You" in the Local Rules | Plaintiff's Definition of the Word "You" |
|---|---|
| 9. *You/Your: The terms "you" or "your" include the person(s) to whom these requests are addressed, and all of that person's agents, representatives and attorneys.* | 8. *The terms "YOU" and "YOUR" means the person or entity to who the attached subpoena is addressed, its former and current employees, shareholders, officers, consultants, attorneys, accountants, agents, affiliates and representatives, including corporate affiliates, subsidiaries, and parent corporations, and all other persons acting or purporting to act on their behalf.* |
| Local Rules, Appendix A, Discovery Guidelines, Standard Interrogatories, Definitions, p. 94; Local Rules, Discovery Guidelines, Standard Requests for Production, Definitions, p. 100, ¶ 7. | Plaintiff's Subpoenas, Definitions, p. 1, ¶ 1; |

The Court directly established the requisite definition in its June 2, 2010 Order [DE 257]:

The Court finds the Local Rules of the Court instructive on this issue. The Court requires Defendant to provide responsive information in the hands of its officers, directors, employees, agents, representatives and attorneys. See Appendix D, Standard Interrogatories, Local Rules of the United States District Court for the District of Maryland.

BSI, through its Definition, has intentionally flouted two separate Court Orders.

### 2.     The Overbreadth of the Definitions to the Subpoenas Render Compliance Virtually Impossible.

BSI has ignored the remaining definitions in the Local Rules, and included a set of

Definitions in the Subpoenas which render it virtually impossible for any recipient to comply,

and thus, are overbroad. "World Avenue," for example, contains not only WAUSA, but, in an

22

effort to circumvent discovery restrictions, a laundry list of numerous other entities.  The sheer irrelevant and overbreadth of the Definitions likewise requires that the Subpoenas be quashed.

### H.    The Court Should Issue Sanctions.

The Court should issue sanctions for this subpoena.  BSI has issued a facially-false subpoena claiming that WAUSA is under criminal investigation and/or litigation by the U.S. Attorney's Office and the FBI.  BSI actually knows better, as explained above.  The Ralsky "connection" shows only a disconnect.  The "tell" in the cards is that BSI didn't even ask anything about the 593 Starbucks and Dunkin Donuts e-mails that it claims are from Ralsky.  Instead, it subpoenaed 15 other parties who have nothing to do with the 593 e-mails, have nothing to do with the E-Mails At Issue, and have nothing to do with Ralsky.  BSI has also re-issued subpoenas to third parties who already responded to BSI that they have no responsive documents.  There cannot even be a contrary argument to re-issue a subpoena for someone who already has answered it.

**WHEREFORE,** WORLD AVENUE USA, LLC respectfully requests the entry of an Order quashing or modifying the Subpoenas, entering an award of attorneys' fees and costs, and for such other and further relief that this Court deems just and proper.

23

Dated:  August 23, 2010.

Respectfully submitted,

*Attorneys for World Avenue USA, LLC*

GREENBERG TRAURIG, LLP

____/s John L. McManus_____
Sanford M. Saunders, Jr., Esq.
USDC, MD #4734
saunderss@gtlaw.com
Nicoleta Burlacu, Esq.
BurlacuN@gtlaw.com
*Admitted Pro Hac Vice*
GREENBERG TRAURIG, LLP
2101 L Street, NW, Suite 1000
Washington, DC 20037
Telephone:  202-331-3100
Facsimile:  202-331-3101

--and--

Kenneth Horky, Esq.
Florida Bar No. 691194
horkyk@gtlaw.com
John L. McManus, Esq.
Florida Bar No. 0119423
mcmanusj@gtlaw.com
*Admitted Pro Hac Vice*
GREENBERG TRAURIG, P.A.
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, FL 33301
Telephone: 954-765-0500
Facsimile:  954-765-1477

24