# GT GreenbergTraurig

Sanford M. Saunders, Jr.
Tel. 202.331.3130
Fax 202.331.3101
saunderss@gtlaw.com

September 3 2010

**VIA CM/ECF**

Magistrate Judge Charles B. Day
United States District Court for the District of Maryland
6500 Cherrywood Lane
Greenbelt, Maryland 20770

Re:   Beyond Systems, Inc. v. World Avenue USA, LLC, et al.
      Case No. PJM 08 cv 0921

Magistrate Judge Day:

Pursuant to Section VII of the Agreement Regarding the Discovery of Electronically Stored Information ("ESI Agreement") adopted by this Court at DE 113-114 & 118,[1] Defendant World Avenue USA, LLC ("WAUSA") respectfully requests a hearing on issues relating to Electronically Stored Information ("ESI") and other issues contained in its Fifth Request for Production of Documents ("Fifth Request") served on July 13, 2010. On July 13, WAUSA served its Fifth Request, and, on August 13, Plaintiff Beyond Systems, Inc. ("BSI") responded. See Exhibits 1 and 2.

The Fifth Request relates to WAUSA's Motion to Dismiss For Fraud On The Court filed on July 6, 2010 ("Motion to Dismiss"), which arises of out BSI's issuing secret subpoenas to non-parties, including customers of WAUSA's affiliated companies, that contained false and inflammatory statements that WAUSA was the target of criminal investigations by the FBI and one or more U.S. Attorneys' Offices. See DE 323, 323-1. While the Court had already set the Motion to Dismiss for hearing on November 29, 2010 even *before* it was fully briefed, both the pending hearing and the recent events listed above make it imperative that the ESI discovery pertinent to WAUSA's Fifth Request for Production be provided immediately.[2]

At a hearing held on July 30th, WAUSA sought expedited discovery regarding these events. BSI assured the Court that all would be explained in filings it planned to make later that day, and argued

---

[1] Section VII of the ESI Agreement states, *inter alia*:

> Any disputes over ESI may be submitted to the Court under the following expedited basis: the requester shall issue a letter via fax or email, to which the opposition shall respond within 5 calendar days, each letter no longer than 5 pages. The requester shall arrange a conference call with the Court to address the ESI discovery issues in the letters. The option to invoke this procedure shall not impair the use of a conventional motion to compel under the rules.

See DE 114-2, p. 15, § VII.
[2] WAUSA normally would be reluctant to submit this letter on the eve of a holiday weekend, but with the hearing on the Motion to Dismiss set, time is a factor and, by sending the letter now, the parties can hit the ground running on Tuesday.

that the different sets of Subpoenas were nothing more than an inadvertent series of errors. BSI subsequently made the promised filing, which explained nothing pertinent and raised more questions than it answered. BSI then re-issued all the defamatory Subpoenas all over again, including to recipients who already responded they had nothing.

The above should make it clear that BSI is acting solely to harm Defendants. There is no discovery to be had, and there never was. There are no FBI or US Attorney investigations of Defendants. Non-parties who have already said they have nothing, are being reserved with the same defamatory Subpoenas. We have consulted with BSI counsel as to discovery regarding the Motion to Dismiss and are at an impasse.

### I.   Issue 1: Requests 4, 5, and 6 of the Fifth Request.

Requests 4, 5, and 6 request ESI relating to the Subpoenas issued by BSI. Specifically, Request 5 asks for a "complete native file electronic copy, with metadata intact" of the Subpoenas produced by BSI on February 8, 2010 and those Subpoenas that were the subject of the Motion to Dismiss. Ex. 1, p. 6, ¶ 5. Request 6 asks for redacted prints of all system directories and file directories showing the dates of creation and dates of modification of the Subpoenas. Ex. 1, p. 6, ¶ 6. Request 4 asks for "[c]opies of each and every Subpoena issued by BSI" to a third party. Ex. 1, p. 6, ¶ 4.

Section III.A.1 of the ESI Agreement clearly provides for the production of this ESI:

> The parties will produce the information in Native format with meta data intact, (including System MetaData, Substantive Meta-Data, and Embedded Meta-Data) whenever the documents exist in that format....System Meta-Data is data that is data that is automatically generated by a computer system. For example, System Meta-Data often includes information such as the author, date and time of creation, and the date a document was modified. Substantive Meta-Data is data that reflects the substantive changes made to the document by the user. For example, it may include the text of actual changes to the document. While no generalization is universally applicable, System Meta-Data is less likely to involve issues of work product and/or privilege.

*See* DE 114-2, p. 8, § III.A.1.

BSI raises a plethora of meritless objections to these Requests. *First*, BSI objects that the Requests are not reasonably calculated to lead to the discovery of admissible evidence, but does not explain why. Ex. 2, pp. 7-9. The Court has already set the Motion to Dismiss for hearing on November 29th -- which makes it relevant -- but BSI plainly wants the Court to conduct that hearing with as little evidence as possible of what BSI actually did. BSI's entire Opposition to the Motion to Dismiss is based on a series of purported inadvertent computer glitches that somehow caused 22 false and inflammatory Subpoenas to write themselves. *See* DE 373. The Meta-Data reflecting the dates of creation, dates of modification, and significantly, the authors and editors of the documents is clearly relevant.

The parties agree that an important case on fraud on the Court is *U.S. v. Shaffer Equip. Co.*, 11 F.3d 450, 461 (4th Cir. 1993). This evidence is relevant to factors under *Shaffer* which include, among other things, the degree of the wrongdoer's culpability and the extent of the client's blameworthiness in the fraud perpetrated upon the Court. Here, BSI has blandly asserted that it was not to blame. *See* DE 373, p. 22. The Motion to Dismiss presents unrebutted evidence that the Subpoenas contain unexplained

footers (such as "Doc. # NY-20712 v. 4) and other forensic artifacts that find no explanation in BSI's Opposition. *See* DE 373. Moreover, the Opposition fails to address the Subpoena attachment containing the false and inflammatory statements, and why a different version of that attachment was provided with all the backdated Subpoenas provided on February 8. The Opposition confines itself to an explanation of the genesis of the first two pages of 12 of the 22 Subpoenas.

*Second*, BSI claims that it has produced "all relevant discoverable documents related to the subpoenas." Ex. 2, p. 8. However, the record clearly shows BSI has not produced: a) the "native file electronic copy, with metadata intact," of the Subpoenas; b) "redacted prints of all system directories and file directories showing the dates of creation and dates of modification of the Subpoenas" (Ex. 2, p. 9); and c) "[c]opies of each and every version of each and every" one of the Subpoenas". BSI has only produced the first two pages of 12 of the Subpoenas in the Declarations filed at DE 373, and this Court previously made a finding of non-production in its Order on April 12th: "Despite the best efforts of Defendant, its attempts to obtain full copies of the subpoenas and attachments have been less than complete." *See* DE 212.

*Third*, BSI objects that producing the "native file electronic copy" of the Subpoenas produced on February 8th and those served on non-parties would invade the work product privilege. Likewise, BSI absurdly claims that the system and file directories (*i.e.*, the "System Meta-Data referenced above) showing the dates of creation and modification would invade the work product privilege. BSI does not explain why or how, which is telling given that BSI agreed in the ESI Agreement that such System Meta-Data "is less likely to involve issues of work product and/or privilege." *See* DE 114-2, p. 8, § III.A.1. BSI should be compelled to produce such System Meta-Data forthwith, and for all other documents and Meta-Data for which a privilege is claimed, BSI was ordered by the Court on July 30th to submit a Privilege Log, and although promising to do so, BSI has yet to submit it. *See* 7/30/10 Transcript (filed at DE 404-2, p. 25 of 29), p. 24: 10-13.

*Fourth*, as to these Requests and all other Requests, BSI objects that the Fifth Request exceeds the number of agreed document requests -- set at 100 by agreement of the parties. BSI counts WAUSA's document requests, including lettered sub-parts, to be 106 requests, excluding the Fifth Request. Ex. 2, p. 4. BSI's argument is a red herring. Aside from the fact that the agreement was made in contemplation of merits discovery, WAUSA never dreaming it would have to litigate over backdated phony Subpoenas and an ensuing cover-up, BSI also failed to be candid with the Court by mentioning that BSI itself has propounded *214* discovery requests and that WAUSA has responded to them all. BSI itself served a First Request for Production with 27 numbered requests and 148 lettered sub-parts, and a Second Request for Production with 39 additional numbered requests, for a total of 214 discovery requests. This is double what BSI claims WAUSA has served and double the agreed limit. Clearly, BSI's real fear is what complying with these requests will reveal, not their numerosity. Just as clearly, given what has occurred and the interests of justice at stake in the matter, BSI's objections to Requests 4, 5, and 6 are meritless. The Court should compel the production of the ESI requested therein.

II.     **Issue Two: Requests 1 and 2.**

In Requests 1 and 2, WAUSA sought documents showing the "drafting of, the preparation of, purpose in serving third parties" the Subpoenas. In Request 2, WAUSA also sought documents relating to the representations to the Court that BSI had produced or was producing complete copies of all Subpoenas. On their face these requests go to the heart of the matter in multiple ways.

BSI lodges a voluminous set of objections to these Requests. *First*, BSI objects that the Requests are not relevant. As with the ESI requested in Requests 4, 5, and 6, this ESI is relevant to the claimed defenses of BSI to the Motion to Dismiss and to the application of the *Shaffer* factors. *See Shaffer*, 11 F.3d at 461.

*Second*, BSI objects that the materials invade the attorney-client or work product doctrine. However, BSI has not produced the Privilege Log ordered by the Court at the July 30th hearing. On September 1, BSI represented to WAUSA that it will produce the privilege log but to date we have not received it. Since the Subpoenas and particularly, their attachments did not write themselves, a complete Privilege Log is necessary to test the extent of BSI's involvement (and blameworthiness) in preparing them. Indeed, BSI's very assertion of attorney-client privileged communications relating to the drafting of the Subpoenas undercuts its unsworn assertion that it had no hand in preparing, or any knowledge of, the false and defamatory Subpoenas *See* DE 373, p. 22. There is an inherent contradiction in claiming complete lack of any knowledge or involvement while simultaneously claiming that all communications about such non-existent knowledge or involvement are privileged. The Privilege Log, will assist the Court assess this objection.

*Third*, BSI claims that all "relevant discoverable documents related to the subpoenas have been produced." Ex. 2, pp. 5-6. BSI knows very well that no communications relating to Requests 1 and 2 have been produced, and its Response to these Requests is intended to mislead the Court. To this day BSI has not even produced a copy of all the Subpoenas themselves, let alone what is becoming increasingly evident (as will be demonstrated below) is a considerable body of correspondence and communications emanating from their issuance. Thus, BSI's objections to Requests 1 and 2 should be overruled, and BSI should be compelled to produce the responsive ESI and a Privilege Log.

### III.  Issue Three: Request 8 and 10.

Request 8 seeks a copy of all of the documents relating to BSI's compliance with this Court's April 12, 2010 Order at DE 212 that it was providing complete copies of all Subpoena responses and documents. At the hearing on July 30th, BSI represented to this Court that: (1) Defendants had received a copy of everything in BSI's possession; and (2) BSI prepared a May 22nd Chart that is a listing of every single contact between BSI and any non-party.[3] *See* 7/30/10 Transcript (filed at DE 404-2), p. 17, line 24 - p. 18, line 16.

Unfortunately, BSI again misled the Court. First, BSI never provided complete copies of the genuine Subpoenas served on January 8th. Instead, it provided the first two pages of only 12 of them. See DE 373-3, pp. 8-54. And, just days ago, WAUSA discovered the text of a brand new communication

---

[3] The representations were:

> Mr. Rothman: Anything that has been sent out and received since your April 22nd order [sic] and even before that as I detailed in my previous letter of compliance has been sent to the defendants. They have received everything. We received a subpoena from some information from last act, they have received that. They have received some information --- and that has been sent to them, so they are in possession of everything that has been sent to them. So, they are in possession of everything that has been in our possession. I also have done, although you didn't require it, I did a chart that was attached to my May 22nd compliance letter, it is attached as Exhibit A8 and that is a complete listing of every single contact I had with any non-party to that point. So, it is our belief and I believe I can show it that we were in 100 percent compliance with your April 12th order at [D]E 212.

never before produced by BSI, after WAUSA was forced to issue a non-party subpoena to obtain documents BSI never produced. In this email to a customer of one of WAUSA's affiliates, Direct Brands, BSI falsely told Direct Brands that:

> I would also like to send you a copy of the sponsor page that I referenced where World Avenue and MailCompanyX has appropriated the Direct Brand name and used it in connection with their advertisements. I will forward that as soon as I get it. (*See* DE 404-5).

This communication was on a computer available to BSI and therefore available for production, but it was concealed. Reading this makes it obvious why BSI did not want to produce it - it is a communication meant to harm the relationship between WAUSA's affiliate and its customer. But that is no excuse for yet another false representation to the Court.

Likewise, BSI's May 22nd Chart, which it represented to this Court was a listing of every single contact with every non-party pertaining to the Subpoenas, was false. *See* DE 323, p. 67 of 71. The Column of the Chart for Kraft Foods, Inc. under "Summary of Discussions Held" stated: "No Discussions Held." *Id.* Moreover, BSI had submitted a Declaration under penalty of perjury stating that it had served "all the responses BSI had received from any non-party, *whether previously served upon WAUSA or not.*" *See* DE 373-3, p. 5, ¶ 5. Both these representations were untrue as Kraft Foods had sent by e-mail and U.S. Mail a letter to BSI dated January 24, 2010 containing a listing of objections and summarizing a verbal discussion held. *See* DE 404-7. Thus, four separate false statements made by BSI to the Court have been revealed. This should be treated as intolerable and production should be ordered forthwith.

BSI's second major defense is that, although the 22 sets of Subpoena Requests relating to convicted felon Alan Ralsky were somehow a mistake, BSI was justified in issuing a Subpoena that falsely accused WAUSA of being the subject of a criminal investigation by the FBI and unidentified U.S. Attorney's Offices. Request 10 seeks the ESI pertaining to the evidence that BSI had seen or knew to exist as of (and not after) January 8, 2010 (the date the Subpoenas were issued) relating to this non-existent criminal investigation of WAUSA. Since BSI's objections to this Request are substantively identical to the remaining Requests, the Court should compel production of these documents.

Finally, as remaining Requests 3, 7, and 11 additionally seek relevant information to the Motion to Dismiss, and as BSI simply incorporates by reference its prior objections, the objections to these Requests should be overruled as well.

### IV.    Conclusion.

Before sending this letter, WAUSA addressed these issues in a phone conference that took place on September 1st, but was unable to resolve the issues. We respectfully request a hearing to address these issues.

Respectfully Submitted,

/s Sanford M. Saunders, Jr.

Sanford M. Saunders, Jr.

Enclosures