## IN THE U.S. DISTRICT COURT FOR MARYLAND,
## SOUTHERN DIVISION

| | | |
|---|---|---|
| BEYOND SYSTEMS, INC. | ) | |
| | ) | |
| Plaintiff | ) | |
| v. | ) | Case No.PJM 08 cv 0921 |
| | ) | |
| WORLD AVENUE USA, LLC, et al. | ) | |
| Defendants | ) | |
| _____ | ) | |

**DEFENDANT WORLD AVENUE USA, LLC'S REPLY MEMORANDUM IN SUPPORT
OF ITS MOTION TO QUASH FIFTEEN (15) NON-PARTY SUBPOENAS FOR
PRODUCTION OF DOCUMENTS**

Defendant, WORLD AVENUE USA, LLC ("WAUSA"), pursuant to Fed. R. Civ. P. 45,

hereby files its Reply Memorandum in Support of its Motion to Quash Fifteen (15) Non-Party

Subpoenas ("Motion to Quash") [DE 400] served by Plaintiff, BEYOND SYSTEMS, INC.

("BSI"), and in response to the Memorandum of Law in Opposition ("Opposition") filed by BSI

[DE 422] in opposition to the Motion, and states:

### I.   INTRODUCTION

The Court should quash BSI's fifteen (15) non-party subpoenas (the "Subpoenas")

identified in its August 9, 2010 notice for maliciously libeling WAUSA's business reputation by

asking without a legitimate good faith basis whether the Subpoena recipients had information

concerning whether WAUSA was under criminal investigation by the United States Attorney's

Office and the Federal Bureau of Investigation ("FBI"), and for falsely implying that WAUSA

1

was being investigated by those organizations with respect to a federal indictment regarding certain activities of a criminal ring known as the "Ralsky Defendants."

In its Motion to Quash, WAUSA argued that the Subpoena should be quashed because:

[1] the Subpoenas are an attempt to annoy, embarrass, and harass WAUSA [WAUSA Memorandum of Law in Support of Motion to Quash, DE 400 ("Memorandum of Law"), pp. 7-9];

[2] the Subpoenas falsely imply on their face that WAUSA is under criminal investigation by the U.S. Attorney's Office and the FBI [*id.*, pp. 9-10];

[3] the Ralsky case, consisting largely of prosecution of those accused of participating in a "pump and dump" scheme for penny stocks issued by Chinese or other Asian companies, is irrelevant to WAUSA and this case [*id.*, pp. 11-16];

[4] BSI is compounding the harm by harassing non-parties by needlessly issuing the same Subpoenas to non-parties who already responded that they had no responsive documents [*id.*, p. 17];

[5] the Subpoenas are not reasonably calculated to lead to the discovery of admissible evidence [*id.*, p. 17-18];

[6] the Subpoenas are overly broad [*id.*, pp. 18-20;

[7] the Subpoenas violate the particularity requirements of Rule 34 [*id.*, p. 20-21]; and

[8] the definitions in the Subpoenas render them overbroad [*id.*, pp. 21- 23].

2

Given the oppressive nature of the misconduct involved, and the repetitious nature of portions of the harassment committed, WAUSA also requested sanctions. *Id.*, p. 23.

BSI has opposed the Motion, contending:

[1] the Subpoenas seek relevant information [Opposition, pp. 2-3];

[2] the Subpoenas properly requested the documents from non-parties [*id.*, pp. 3];

[3] WAUSA itself has possession, custody, or control of the documents requested from the non-parties [*id.*, pp. 4-6];

[4] BSI made no materially false statements in the Subpoenas and such statements are not actionable [*id*, pp. 9-12];

[5] Although not a single responsive document has turned up to date, BSI has strong support for its contention that the non-parties have responsive documents [*id.*, p. 12-13];

[6] The Motion to Quash should be denied because WAUSA has deliberately misled Plaintiff and this Court regarding the documents in its possession, custody, or control [*id.*, pp. 13-21]; and

[7] WAUSA cannot resist discovery issued to it, then move to quash discovery to non-parties [*id.*, pp. 21-22].[1]  BSI also requested sanctions pursuant to 28 U.S.C. §

---

[1] BSI also argues that "WORLD AVENUE" cannot demonstrate a cognizable interest in the documents Plaintiff seeks from non-parties," (Opposition, p. 1), but makes no argument as to

3

1927.

For the reasons set forth in the Motion to Quash and below, the Motion to Quash should be granted and sanctions should be entered against BSI.

## II.     BSI'S FAILURE TO REBUT OR ADDRESS WAUSA'S GROUNDS FOR QUASHING THE SUBPOENAS IS A SUFFICIENT BASIS TO GRANT THE MOTION TO QUASH.

Although the Opposition is 24 pages long, nine of those pages are dedicated to an irrelevant issue -- WAUSA's purported non-compliance with discovery.  The remainder of the Opposition is largely non-responsive to the Motion to Quash.  The following arguments by WAUSA were not addressed and are therefore uncontested:

- BSI is harassing non-parties by issuing the same Subpoenas to non-parties who already responded that they had no responsive documents.  Astoundingly, BSI makes absolutely no attempt to justify this abuse.  [Memorandum of Law, p. 17];

- the Subpoenas and the definitions are overly broad [*id.*, pp. 18-23]; and

- the Subpoenas violate the particularity requirements of Rule 34 [*id.*, p. 20-21].

Because these arguments are uncontested in BSI's Opposition, WAUSA's Motion to Quash should be granted by default.

---

why this is so or why WAUSA's arguments on its standing made at Pages 5-7 are incorrect.  Since BSI has not supported its one-line assertion, the Court should reject it.

4

### III. THE SUBPOENAS FALSELY IMPLY THAT WAUSA IS UNDER INVESTIGATION BY THE FBI AND THE U.S. ATTORNEYS' OFFICE, AND SUCH STATEMENTS ARE NOT PRIVILEGED.

#### A. The Subpoenas *Do* Falsely Imply WAUSA Was Under Investigation By The FBI and The U.S. Attorneys' Office.

At page 11 of its Opposition, BSI argues that the Subpoenas do not "state or imply" that WAUSA is under investigation by the FBI and the U.S. Attorneys' Office. Opposition, p. 11. To the contrary, the Subpoenas refer to the U.S. Attorney's Office and FBI investigations as though such investigations and/or litigation existed and/or are ongoing. In the next breath, BSI argues that (although it did not imply this), there is nothing "materially false" about its Request.

#### B. BSI's Argument That The Subpoenas Are "Privileged" Is Not A Ground To Deny The Motion To Quash And, In Any Event, Is Incorrect.

Although completely irrelevant to the Motion to Quash, BSI argues that its conduct in issuing the Subpoenas is privileged. Opposition, p. 9. However, BSI's argument is misplaced.

BSI's false statements to third parties clearly imply that WAUSA is or was under criminal investigation by the FBI and certain Offices of the U.S. Attorney and are defamatory *per se* under Maryland law. The distinction between libel *per se* and regular libel, or libel *per quod*, is that "to recover the plaintiff must first show that the publication is defamatory. Where the words themselves impute the defamatory character, no innuendo - no allegation or proof of extrinsic facts - is necessary; but otherwise, it is." *Metromedia Inc v. Hilman*, 285 Md. 161, 173 (1979). "The presumption of harm to reputation still arises from the publication of words

5

actionable per se." *Gooch v. Maryland Mechanical Systems, Inc.*, 81 Md. App. 376, 394 (Md. App. 1990). "When one publishes matter which libels another per se, as in this case, there arises a presumption of the falsity of the allegation and a presumption of malice in publishing it." *Wetherby v. Retail Credit Co.,* 235 Md. 237, 241 (1964).

The accusation or implication that WAUSA has committed a crime is actionable *per se*. "Consistently this Court has held that words which falsely charge a person with or impute to him the commission of a crime for which he is liable to be prosecuted and punished are actionable *per se*." *American Stores Co. v. Byrd*, 229 Md. 5, 13 (1962); *Metromedia*, 285 Md. at 164.

Although a privilege applies to statements "contained in pleadings, affidavits or other documents directly related to the case," *Keys v. Chrysler Credit Corp.*, 303 Md. 397, 403-04, 494 A.2d 200, 203 (1985), "for the privilege to apply, the statement must be made to ***further a purpose*** falling within the public interest underlying the privilege, *i.e.* the unfettered disclosure of information needed for a judicial or quasi-judicial decision-making process." *Norman v. Borison*, 192 Md. App. 405, 994 A. 2d 1019 (Md. App. 2010) (emphasis added); *see also Dixon v. DeLance*, 84 Md. App. 441, 448, 579 A. 2d 1213 (1990), *cert. denied*, 321 Md. 501, 583 A. 2d 275 (1991) (emphasizing that "[a]n attorney at law is absolutely privileged to publish defamatory matter concerning another in the course of a judicial proceeding in which he participates as ***counsel so long as the matter published has some reference or relation to the proceeding***") (emphasis added).

6

Indeed, the Maryland Court of Appeal has underscored that:

[t]he privilege is not an absolute and unqualified privilege and cannot be extended beyond the reason and principles on which it was founded….[a]nd if counsel in the trial of a cause maliciously slanders a party, or witness or any other person in regard to a ***matter that has no reference or relation to, or connection with***, the case before the Court, he is and ought to be answerable in an action by the party injured….[w]e cannot agree that for the abuse of his privilege he is amenable only to the authority of the court. Mere punishment by the court is no recompense to one who has thus been maliciously and wantonly slandered.

*Maulsby v. Reifsnider*, 69 Md. 143, 152, 14 A. 505 (1888).

The false and defamatory statements in the Subpoenas do not advance any purpose of this action.  Specifically, BSI falsely implied in its Subpoenas that WAUSA was under investigation by the FBI and unidentified Offices of the U.S. Attorney.  These defamatory statements have no salience whatsoever to the present proceeding because they have no basis in fact.  The exact reasons why they had no basis in fact were treated at length in the Motion to Quash.  No serious effort to squarely confront and rebut those reasons was made in the Opposition.  Accordingly, these defamatory statements cannot be said to have "any relation, or connection" to BSI's claims, and certainly do not further any purpose of BSI in prosecuting its claims by obtaining unfettered disclosure of information needed for a judicial decision-making process.  They never could, because they sought something that did not exist, and that BSI had no legitimate reason to think existed.  In fact, BSI's sole objective was to leverage WAUSA into settling the case on terms that would allow a second lawsuit against WAUSA, all by threatening to maliciously defame WAUSA's business reputation and interfere with valuable business relationships. Under the

7

above precedent, such statements do not fall within the scope of the litigation privilege, and thus, BSI's reliance on such privilege is misplaced.

## IV.   THE SUBPOENAS SEEK IRRELEVANT INFORMATION.

### A.   BSI Does Not Address The Complete Disconnect Between The Discovery Requests In The Subpoenas And This Case.

BSI does not dispute, rebut, or even address WAUSA's point that **none** of the E-Mails At Issue contain a product offering relating to the 15 non-parties -- save just four e-mails.[2]  That leaves 15 non-party recipients with no connection to the E-Mails at Issue.  BSI fails to answer the fundamental question:  *How are these Subpoenas relevant to the E-Mails at Issue when all of these recipients are not even in the E-Mails at Issue?*

### B.   BSI Does Not Specifically Address The Complete Absence of a Relationship Between The Criminal Case Against Alan Ralsky And This Case.

BSI's Opposition does not address the complete disconnect between Alan Ralsky ("Ralsky"), the criminal case against him ("Ralsky Criminal Case"), and the 15 Subpoenas that BSI issued.  BSI claims to be seeking information from the 15 Subpoena recipients about WAUSA's connection with Ralsky.  However, there is a complete disconnect between the 593 E-Mails At Issue that BSI claims to be from Ralsky and the 15 Subpoenas.  All 593 E-Mails At Issue that BSI claims to be from Ralsky all were sent on April 15, 2005.  All 593 appear to

---

[2] There are four e-mails that contain a product offering relating to Kraft Foods, but all four explicitly state that the product offering is not associated with or offered by Kraft Foods.

8

advertise "Startbucks" or "Dunkin Donuts."   None of those E-Mails At Issue contain any reference to the 15 recipients.

In its Motion to Quash, WAUSA made the following points showing the complete absence of a relationship between the Ralsky Criminal Case and this case:

- None of the Domains that sent the E-Mails At Issue that BSI claims are from Ralsky match any of the Domain Names in the Ralsky Indictment (Memorandum of Law, p. 11);

- The time period covered by the E-Mails At Issue that BSI claims are from Ralsky do not match any of the time periods in the Ralsky Indictment (*Id.*, pp. 11-12);

- The dates of the transmission of the E-Mails At Issue that BSI claims are from Ralsky are different than the e-mails in the Ralsky Indictment (*Id.*, pp. 11-12);

- The Ralsky Indictment involved a penny stock "pump and dump" scheme that BSI has never alleged existed in this case (*Id.*, pp. 12-13);

- None of the stocks being pumped in the Ralsky Indictment are in the E-Mails At Issue (*Id.*, p. 12);

- None of the co-Defendants to Ralsky are claimed to be associated with WAUSA (*Id.*, p. 12);

- None of the subjects of the E-Mails At Issue match the Ralsky emails (*Id.*, p. 13);

- The 15 recipients of the Subpoenas are not referenced in the Ralsky Indictment (*Id.*, p. 13);

- The Ralsky criminal case was over on November 30, 2009 when Ralsky was sentenced, and BSI had no basis on August 9, 2010 to believe that there was "criminal" "investigation" or "litigation" ongoing against Ralsky that linked to WAUSA (*Id.*, p. 14);

- The existence of civil litigation does not mean that there is a criminal litigation or

9

investigation (*Id.*, p. 15);

- BSI's claim of a relationship between Opt-In-Real Big and Alan Ralsky does not mean that WAUSA is under investigation by the FBI and the U.S. Attorney's Office (*Id.*, pp. 15-16); and

- The existence of criminal litigation against Ralsky does not mean that these 15 discrete third parties would have any information about such criminal litigation or investigations against WAUSA (*Id.*, p. 16).

BSI does not deign to answer even one of these contentions. It makes four misplaced arguments. *First*, BSI argues that the U.S. Attorney conducted an investigation into Ralsky's "incentive award offers." Opposition, p. 11. Given the myriad of ways in which the Ralsky Criminal Case is different from this case -- which BSI did not address -- this argument is fails to connect with, let alone refute, a single point listed above .

*Second*, BSI argues that the U.S. Attorney later made a presentation in which he referred to "free Playstations," then asserts that WAUSA e-mailed about "free Playstations," and therefore "reasons" that the two must be the same. Opposition, pp. 11-12. BSI's "logic" is self-refuting: there is no evidence that the "Playstations" are the same in both instances. But far worse, BSI is trying to mislead the Court: none of the E-Mails at Issue that BSI claims came from Ralsky contain any offer relating to "Playstations." Thus, the point is not only incorrect, but again fails to connect with any of WAUSA's points explaining why the Ralsky Criminal Case has nothing to do with this case.

*Third*, BSI claims it is undisputed that there were investigations by the Florida and Texas

10

Attorneys General.  Opposition, p. 12.  BSI fails to respond to WAUSA's obvious point that this does not mean that there are FBI or U.S. Attorney's Office investigations.

*Fourth*, BSI contends that it has strong support for its contention that the non-parties have responsive documents.  Opposition, p. 12.  However, BSI's cited "strong support" consists of cites where it has bandied about accusations about Ralsky, but not even one about the 15 non-parties, their connection to the E-Mails at Issue, or, most importantly, their connection to the Ralsky Criminal Case.  In short, once more a complete disconnect - BSI has shown no basis whatever to believe that these 15 non-parties had anything relating to Ralsky.

Perhaps the most telling argument is the simplest one.  Not one of these non-parties has produced a single responsive document concerning FBI or U.S. Attorneys' investigations -- despite each being subpoenaed twice.

## V.   WAUSA'S PURPORTED DISCOVERY NON-COMPLIANCE IS A RED HERRING, NOT GROUNDS TO DENY THE MOTION TO QUASH.

Incredibly, BSI dedicates the majority of its Opposition to an argument that WAUSA has failed to comply with unrelated discovery, and therefore, WAUSA cannot complain when BSI issues defamatory Subpoenas to non-parties.  *See* Opposition, pp. 13-22.  This "argument" is completely non-responsive.  BSI's finger-pointing provides no basis to excuse BSI's issuance of false, harassing, defamatory Subpoenas for which no good faith basis in fact ever existed.  This argument will be given all the attention it deserves in response to BSI's newly-minted discovery motions, but once again, utterly fails to connect with any of the issues germane to this Motion to

11

Quash and should accordingly be rejected.

### VI.   SANCTIONS SHOULD BE IMPOSED AGAINST BSI.

Sanctions should be imposed against BSI pursuant to Federal Rule 26(c)(3), which provides that: "Rule 37(a)(5) applies to the award of expenses" for a motion for protective order. Rule 37(a)(5) states that the court, if the motion is granted, must "after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion including attorney's fees." Fed. R. Civ. P. 37(a)(5). Because BSI's conduct was without substantial justification in law or fact, particularly in issuing the Subpoenas for a second time to non-parties who had already responded they had no responsive documents, the Motion to Quash should be granted and the Court should issue sanctions. Notably, in its Opposition, BSI does not provide any specific reasons why it should not be sanctioned.

### VII.   BSI'S OWN REQUEST FOR SANCTIONS PURSUANT TO 28 U.S.C. § 1927 SHOULD BE DENIED.

At pages 22-24 of its Opposition, BSI makes a request for sanctions pursuant to 28 U.S.C. § 1927, based solely on WAUSA's supposed non-compliance with discovery requests that are not the subject of the Motion to Quash. BSI makes no argument that the Motion to Quash itself is sanctionable, but only that the Motion to Quash is part of a broader set of actions that merit sanctions. The sole issue before the Court is WAUSA's attempt to defend itself from a campaign of harassment, which the Court recognized as potentially problematic in the recent

12

hearing of September 23, 2010.  *See* Transcript of September 23, 2010, at p. 88, lines 10-14.

BSI's request for sanctions is completely unwarranted and should be denied.[3]

Accordingly, WORLD AVENUE USA, LLC respectfully requests entry of an Order quashing the Subpoenas, entering an award requiring BSI to pay all attorneys' fees and costs incurred in the briefing of the Motion to Quash through and including this Reply, and requests such other and further sanctions or other relief deemed necessary by this Court to stop BSI's abuse of the subpoena power.

Dated:  October 4, 2010.

Respectfully submitted,

*Attorneys for World Avenue USA, LLC*

GREENBERG TRAURIG, LLP

   /s John L. McManus
Sanford M. Saunders, Jr., Esq.
USDC, MD #4734
saunderss@gtlaw.com
Nicoleta Burlacu, Esq.
BurlacuN@gtlaw.com
*Admitted Pro Hac Vice*
GREENBERG TRAURIG, LLP
2101 L Street, NW, Suite 1000
Washington, DC 20037

---

[3] The request should also be denied based on a complete failure to prove bad faith.  "A finding of bad faith must precede any award of attorney's fees under this section." *U.S. for Use and Benefit of Union Light and Power Co. v. CamCo Const. Co., Inc.*, 221 F. Supp. 2d 630 (D. Md. 2002), *quoting Thomas v. Treasury Management Ass'n, Inc.*, 158 F.R.D. 364 (D. Md. 1994).

13

Telephone:  202-331-3100
Facsimile:  202-331-3101

--and--

Kenneth Horky, Esq.
Florida Bar No. 691194
horkyk@gtlaw.com
John L. McManus, Esq.
Florida Bar No. 0119423
mcmanusj@gtlaw.com
*Admitted Pro Hac Vice*
GREENBERG TRAURIG, P.A.
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, FL 33301
Telephone: 954-765-0500
Facsimile:  954-765-1477

14