Exhibit 001
Attorney general communications: IL, OR, PA, MD, TX

Collier Shannon Scott, PLLC
Washington Harbour, Suite 400
3050 K Street, NW
Washington, DC 20007-5108
202.342.8400 TEL
202.342.8451 FAX

John P. Feldman
202.342.8577
JFeldman@colliershannon.com

# Collier Shannon Scott

April 22, 2005

**VIA FACSIMILE**                                    **CONFIDENTIAL**

Darrel J. Vandeveld, Esq.
Deputy Attorney General
Office of Attorney General
1001 State Street, Suite 1009
Erie, PA  16501

**Re:     April 18, 2005 Subpoena to Niutech, LLC**

Dear Mr. Vandeveld:

Thank you for speaking with us today.  As you requested, we will work with our client to compile information on complaints received from Pennsylvania consumers.   We understand that your office will hold the April 18, 2005 subpoena in abeyance while we collect this data.  In the meantime, if you have any questions, please do not hesitate to contact me.

Best regards,

Sincerely,

John P. Feldman

WA0003749

NIUTECH, LLC
Sabre Centre II
6001 Broken Sound Parkway, Ste. 200
Boca Raton, FL 33487

Homer P. Appleby
V.P. & General Counsel

Telephone: (561) 939-6904                         Email: happleby@adinfocenter.com

December 15, 2005

Office of Attorney General
State of Illinois
Clara Cruz
Citizen's Advocate
Consumer Protection Division
100 W. Randolph Street
Chicago, IL 60601

Re:    Elena Luca

Dear Ms. Cruz:

This is in reference to your letter of December 7, 2005, regarding the consumer complaint of the above referenced individual. For purposes of clarification, E Market Research Group is a registered fictitious name, i.e., "d.b.a.", of Niutech, LLC.

E Market Research Group was used as a marketing site for online incentive promotions during 2004. It has not been actively promoted during the current year, but recognizing that consumer complaints are sometimes made long after a particular promotion has ended the customer service department remain available to assist.

In this instance your letter was the Company's first notice of Ms. Luca's complaint. The letter was referred to customer service, and a copy of the email response that has been sent to Ms. Luca is enclosed, together with the attachments that accompanied the email. Customer service personnel will remain available to assist the consumer qualify for a laptop computer on the same terms as were in effect when the promotion was active.

Sincerely,

Homer Appleby

WA0003727

BSI FL AG      1921 of 3292

MAGNACENT, LLC
Sabre Centre II
6001 Broken Sound Parkway, Ste. 200
Boca Raton, FL 33487

Homer P. Appleby
V.P. & General Counsel

Telephone: (561) 939-6904                            Email: happleby@magnacent.com

June 29, 2006

State of Maryland
Office of the Attorney General
Consumer Protection Division
200 Saint Paul Place
Baltimore, Maryland 21202-2021

Attention: Mr. Wesley Hung, Mediator

In re:   Case No.: MU-114607
         Gary Hamilton

Dear Mr. Hung:

My office provides legal services to Consumer Incentive Promotions. Confirming our telephone conversation of earlier today with respect to the referenced matter, we have reviewed Mr. Hamilton's complaint.

Consumer Incentive Promotions is proud of its record of fulfillment for consumers who complete its promotions. In this instance, however, the email that accompanied the promotion was sent by an affiliate, and it does not meet Consumer Incentive Promotions' standards. Accordingly, even though Mr. Hamilton did not complete the participation requirements we are prepared to offer a compromise as a fair and equitable solution.

We will give Mr. Hamilton his choice of a $200.00 Visa debit card, or a check in the amount of Two Hundred Dollars, and unsubscribe him from our system. Please forward our offer to Mr. Hamilton and inform me of his decision.

Thank you for your assistance with this matter.

Sincerely,

Homer Appleby

WA0003740

# Greenberg Traurig

John S. Rainey
Tel. (713) 374-3529
Fax. (713) 374-3505
raineyc@gtlaw.com

August 23, 2006

Office of the Attorney General
Department of Justice
Civil Enforcement Division
1st Floor, Robertson Building
1215 State Street NE
Salem, Oregon 97301-4096

Attn: Ms. Sally O'Neil
Enforcement Officer

      Re:    Your File # FF0838-06
                Complainant Bill Rollins

Dear Ms. O'Neil:

This firm represents Gift Reward Center and its affiliate, NiuTech LLC, doing business in Florida as 123 Special Gifts, in the above-referenced matter. As more fully set out below, we believe that our client has not violated Oregon law or the Administrative Rules with respect to the use of the word "Free", because all of the terms were disclosed to Mr. Rollins prior to his participation in the program. However, our client is also interested in working with Mr. Rollins to help him satisfy the requirements of the program and obtain his free camera.

Gift Reward Center is an affiliate of NiuTech and is the entity selected by NiuTech to handle all customer support, as well as fulfilling the sending of gifts and premiums to the thousands of persons each year that satisfy the reasonable conditions of our client's incentivized advertising program. Our client has referred the matter to us because they are concerned that their previous attempts to settle this matter with your office has not yet been fruitful. Please direct all future correspondence regarding this matter to the undersigned to make sure that your concerns are address in the most expeditious matter.

To summarize our understanding of the matter so far, the Complainant, Mr. Bill Rollins, contacted your office complaining that an advertisement of our client's that he saw on a camera website operated by other parties which advertised a free camera, and that he wanted his free camera without satisfying any of the conditions set forth by our client in connection with the offer. Your office first sent correspondence to 123 Special Gifts on February 21, 2006, which was promptly responded to by Gift Reward Center on March 3, 2006. On that same day, Gift Reward Center also sent to Mr. Rollins an e-mail indicating the location of

ALBANY
AMSTERDAM
ATLANTA
BOCA RATON
BOSTON
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LOS ANGELES
MIAMI
NEW JERSEY
NEW YORK
ORANGE COUNTY, CA
ORLANDO
SACRAMENTO
SILICON VALLEY
PHILADELPHIA
PHOENIX
TALLAHASSEE
TOKYO
TYSONS CORNER
WASHINGTON, D.C.
WEST PALM BEACH
ZURICH

WWW.GTLAW.COM

WA0003741

BSI FL AG    1935 of 3292

Ms. Sally O'Neal
August 23, 2006
Page 2

the terms and conditions of the promotional program to make certain he fully understood its terms.

On May 30, 2006, you wrote back to our client whereby you stated that it seemed from the material submitted by Mr. Rollins to you with his initial complaint that the terms and conditions of our client's promotion did not make it explicit that a purchase was required in order to obtain his free gift. You then referred my client to The Oregon Unlawful Trade Practices Act and the Oregon Administrative Rules 137-020-0015 with respect to misleading use of "free offers." After a review of the applicable law, plus the promotional terms and conditions our client made available to Mr. Rollins both at the outset of the promotional material and at any time thereafter if Mr. Rollins choose to revisit the site, leads us to determine that our client has not violated Oregon law or the administrative rules adopted by the Attorney General.

Our client's program is one commonly used in the Internet industry and is completely lawful. Our client offers individuals a free premium in the form of products for which the value is easily determined in exchange for the individuals agreeing to review and accept a few offers of third-party advertisers available through the 123 Special Gifts website. The number of offers that an individual must accept is based to some extent on the value of the premium our client is offering (i.e., to obtain a gift with a market value of $50, a participant will usually be required to accept offers from fewer third-party advertisers that if the gift had a market value of $500). But many of these offers involve no cost or nominal cost to the program participant. And the participant is always given a choice of offers from which to choose, with no single advertiser's offer being mandatory.

The ads of our client, then, are designed to attract a participant to view ads of third-party advertisers. Our client's ads will typically be short ads in text or in the form of a banner ad that appear or are "placed" on websites managed by others not affiliated with our client. If the participant is interested in the premium/gift featured in our client's ad, he or she may click on that ad and they will be directed to our client's website where the full terms and conditions are made available to the participant before any personal information is gathered and before the participant incurs any cost or obligation to our client or its third-party advertisers.

The first page that any person will be directed to after clicking on one of our client's text or banner ads that appear on Internet sites operated by third parties contains a short disclaimer regarding the premium being offered and clear text links to the details of our client's program terms and conditions. I noted in the materials you sent to our client that you did not include a copy of that page of disclaimers and conditions. I only assume that that Mr. Rollins did not send you a screen shot of that page. For your benefit, I have included both a copy of that page, and a copy of the terms and conditions that Mr. Rollins or any visitor to that page will see upon clicking the clear and conspicuous hypertext links on that page. I would point out that these were already provided to your office in the prior correspondence from my client, and **even before any personal data of any sort is obtained from the participant,** they must click a button certifying that they have agreed to the terms of the program. Those terms are provided in straight forward language that is easy to read. If Mr. Rollins failed to read the terms of participation, our client has no control over that circumstance. Our client's obligation is to provide Mr. Rollins with a fair opportunity to read the program requirements prior to Mr.

WA0003742

Ms. Sally O'Neal
August 23. 2006
Page 3

Rollins spending any money, or revealing any personal information, and our client has met that obligation.

As the March 3, 2006 correspondence from Gift Reward Center to your office made clear, Mr. Rollins' entitlement to the free camera was clearly conditioned upon his participating in at least 8 of our advertiser's offers, and that a certain number of these offers came from specific pages in the program path Mr. Rollins needed to follow (the "Top-Offer Pages"). These web pages are offered to the participant sequentially, but a participant may skip ahead to see the offers on all of the Top-Offer Pages before selecting any of the offers. Many of these offers have no cost requirement to the participant. Some may provide free trials to the participant, but with the participant paying for shipping and handling. Others, if accepted by the participant, may, in fact, have a cost associated with them, but on information and belief, none of the goods or services that Mr. Rollins or others in his same situation could have accepted would obligate him to spend more than the value of the goods or services advertised in such offers would have cost if purchased in the open market. But as is fully explained in our client's program terms, while our client is compensated by third-party advertisers for sales leads generated through the incentivized advertising program, **the participant never pays our client one penny — not for the gift, not even for the shipping of the gift to the participant upon the completion of the program's requirements.**

**However, more importantly, none of the third-party advertiser's offers is under the control of our client.** Our client is the advertising network upon which these offers are displayed, but the offers are completely under the control of the advertiser, just as an offer shown on a broadcast TV network is totally under the control of the advertiser and not the network. While some of the advertisers are companies trying to develop a market for a new products, many times the advertisers are name-brand companies such as Disney, Discover Card, Netflix, BlockBuster or Columbia House records offering products well accepted in the marketplace. However, to make certain that the participant is not asked to sign up with our client to pursue a program for the free gift that inevitably will cost the participant more than the value of the promotional gift our client is offering as an incentive, NiuTech makes certain that there are always many offers on each page so that the participant has a choice from which to choose. For instance, if a promotional program requires a participant to accept at least 4 offers on the third Top-Offers Page of the program, frequently there will be 20 or more offers displayed on that page. The participant is encourage to select the offers in which they are genuinely interested. But importantly, because there is no requirement that the participant complete the registration and offer acceptance program on one day, or even within a short time frame, the participant may come back repeatedly to visit the site to see if new advertising has been posted that is for goods or services in which the participant has an interest.

Let me assure you that when Mr. Rollins asserts in his complaint that he suffered a loss of $200, this is completely without merit. Mr. Rollins never elected to accepted **any** offers of any advertiser. In short, he clicked through a small advertisement on a website not under the control of our client. This immediately took him to a page where he was given not only a fair opportunity to review all of the terms and conditions pertaining to the redemption of the free gift, but where he also certified by a click-through that he agreed to those terms. Mr. Rollins, as far as we are able to determine, never spent a dime through the 123 Special Gifts website. So

WA0003743

BSI FL AG 1937 of 3292

any loss he claims must be solely for the value of the camera he was seeking that he incredulously expected to receive without any obligation or action on his part, including any obligation to at least read and understand the terms of the program that were clearly and conspicuously made available to him before he even registered with our client. There is absolutely nothing in the Oregon statutes or the Administrative Rules that prevents our client from giving away the camera conditioned upon the participant following the program terms and conditions, as long as those terms and conditions are fully disclosed to the participant before they are prejudiced by a change in their position or an expenditure of funds. As is customary with the Internet, the hypertext link on the first page to which Mr. Rollins came that would take him directly to the participation terms is in separate color, underlined and of the same size font as the surrounding text. Furthermore, this link is displayed immediately next to the acceptance button that Mr. Rollins clicked on located on the first page of our client's web site. In addition, every page after that landing page also presents the same hyperlink, so that if he had any question regarding the program or its terms, he could immediately go and re-read them. And if he went part of the way into the program and determined that few of the advertiser's offers were acceptable to him, he could withdraw at any time and without any obligation to our client -- his only obligation would be to any advertiser whose offer he had already accepted. Even his personal e-mail data would be protected from future solicitations if he requested that he be unsubscribed from our client's e-mail database. There was absolutely no cost to Mr. Rollins unless and until he accepted an advertiser's offer, any obligation or cost he incurred was with the third-party liquidator, not NiuTech, he had many offers to choose from, and. most importantly, he never chose any. So he can not have suffered any monetary loss.

While the Oregon Unlawful Trade Practices Act contains no prohibition on the offering of a free gift as an incentive to a consumer to view several and accept a limited number of offers from merchants advertising their goods or services on a web site, we acknowledge that the Attorney General's office has enacted certain Administrative Rules in connection with "Free Offers." We do not believe our client has violated any of those Administrative Rules.

You cite to Section 137-020-0015 of the Administrative Rules in your letter of May 30th, but there are several parts to those rules just with respect to "Free Offers" and you failed to state the manner in which our client is alleged to have violated such Administrative Rules. If you would apprise us of the manner in which you believe that NiuTech has failed to meet the Administrative Rules requirements, then we will be in a better position to consider any changes that might be needed to the program, despite the fact that we believe that it currently meets both the spirit, as well as the letter, of the law. Virtually all of the goods or services offered by our advertisers are not of the type in which the price, quality or quantity is determined by bargaining between the merchant and the participant. We believe that every advertiser is making the offer for no more than the price at which that advertiser offers such good or service in the ordinary course of business, although as the advertising network, we do not believe that our client has a duty to verify this. Our client makes the terms of participation easily and readily available to each participant at any time and specifically prior to any participant registering with our client or being required to view or accept the offers of the advertisers. Furthermore, our client does not require the purchase of any specific good or service for the participant to achieve the free gift, our client does not require the attendance of the participant at any sales presentation, there

WA0003744

BSI FL AG    1938 of 3292

Ms. Sally O'Neal
August 23. 2006
Page 5

is no limit to the number of persons that may obtain the gift through the program, in fact, our client even pays all of the shipping and handling of the gift once the participant has completed the terms of participation. Accordingly, we are at a loss to understand what provision of the law or Administrative Rules you believe that our client has violated.

Accordingly, we respectfully request that you apprise us of the specific provisions of Oregon law or the Administrative Rules you believe our client fails to satisfy and the manner in which they were deficient. If a telephone call between you or any member of the attorney general's staff with me would be helpful, please feel free to call me directly.

However, we also reiterate our client's offer to Mr. Rollins to continue through the program to receive the gift or premium he selected. Gift Reward Center sends out in excess of 20,000 premiums each year to participants on NiuTech's websites that read the program's terms and understood the need to complete a certain number of offers from our advertisers to successfully complete the incentivized gift program. We regret that Mr. Rollins did not also have this same level of understanding, but our client has offered to assist him in proceeding through the program, and there are customer support personnel available by telephone during normal business hours that can answer his questions or guide him through the process. If he has accepted an advertiser's offer and believes that the advertiser failed to deliver as promise, we invite him to provide us the details of that offer and acceptance so we may assist him in both getting the good or service he sought from the advertiser and in completing the program requirements for his camera. If he has any information regarding his expenditures to date from participating in our client's program that is different than what I stated above, I would ask him to submit such information to our client, or he may choose to submit the information through your office directly to the undersigned.

I look forward to speaking directly with you or other counsel at the Attorney General's office.

Sincerely,

John S. Rainey

WA0003745

BSI FL AG     1939 of 3292



STATE OF TEXAS
OFFICE OF THE ATTORNEY GENERAL
CONSUMER PROTECTION DIVISION



# CIVIL INVESTIGATIVE DEMAND

TO: Niu Tech, L.L.C.
6001 Broken Sound Parkway #300
Boca Raton, FL 33433

*Via Certified Mail,*
*Return Receipt Requested*

Pursuant to the authority of § 17.61 of the TEXAS DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION ACT, § 17.41 *et seq.*, TEX. BUS. & COM. CODE ("DTPA"), you are hereby directed to produce the documentary material listed in Exhibit C. Please review the "Definitions" and "Instructions" applicable to the Civil Investigative Demand. They are labeled as Exhibits A and B, respectively.

You are to make available the documentary material described in Exhibit C to the person designated below as "authorized agent." This material shall be produced on or before March 21, 2006 for inspection and copying at your place of business. In the alternative, copies of the requested material may be sent by courier or certified mail to the Office of Attorney General, 300 W. 15th St., 9th Floor, Austin, TX 78701, and are due on April 7, 2006. Please contact the authorized agent named below to advise where you wish to produce the materials.

This Civil Investigative Demand is relevant to the subject matter of an investigation of possible violations of §§ 17.46(a) and (b) of the DTPA, in the advertising, marketing, and sale of Internet services in Texas.

TAKE NOTICE THAT pursuant to § 17.62, TEX. BUS. & COM. CODE, any person who attempts to avoid, evade, or prevent compliance, in whole or in part, with this directive by removing, concealing, withholding, destroying, mutilating, altering, or by any other means falsifying any documentary material may be guilty of a misdemeanor and on conviction is punishable by a fine of not more than $5,000.00 or by confinement in the county jail for not more than one year, or both.

ISSUED THIS day of March 7, 2006.

*Abbott.*
*+*
*McBee*

*Dept. Att. Gen —*

Corey David Kintzer
Assistant Attorney General
CONSUMER PROTECTION AND PUBLIC HEALTH DIVISION
300 W. 15th Street, 9th Floor
Austin, Texas 78701

*Paul Cormena*

AUTHORIZED AGENT:
Gary Adkins
(512) 475-4177
(512) 473-8301 (FAX)

WA0003751

BSI FL AG     1945 of 3292

## EXHIBIT A

### DEFINITIONS

1.  "Consumer Incentive Promotions," "eMarket Research Group," "you," and "your" means "NiuTech, L.L.C.," its officers, directors, equity owners, representatives, employees, agents, attorneys, successors, and assigns. The terms also include all natural persons and entities acting or purporting to act on behalf of any of the above, as well as any predecessor, successor, affiliate, subsidiary, parent, or wholly-owned or -controlled entity. The phrase shall be construed to include present and former officers, directors, equity owners, agents, employees, representatives, consultants, attorneys, associates, and all other persons acting or purporting to act on your behalf, and any predecessor, successor, affiliate, or subsidiary entity or person(s), including all present and former officers, directors, agents, employees, and all other persons exercising or purporting to exercise discretion, make policy, or make decisions.

2.  Without limiting the term, a document is deemed to be within your "control" if you have ownership, possession, or custody of the document, or the right to secure the document or copy thereof from any person or public or private entity having physical possession thereof.

3.  "Document" or "documentation" means and includes all written, printed, recorded, and graphic matter, regardless of authorship, both originals and non-identical copies, in your possession, custody, or control, or known by you to exist, irrespective of whether the writing was intended for or transmitted internally by you, or intended for or transmitted to any other person or entity. It includes communications in words, symbols, pictures, photographs, sounds, films, and tapes, as well as information stored in or accessible through computer or other information storage and retrieval systems, together with all codes and/or programming instructions and other materials necessary to understand and use such systems. The term also includes electronic mail or "e-mail," web pages and/or web page source code, as well as facsimile transmissions.

4.  As used herein, the words "and" and "or" shall be construed either conjunctively or disjunctively as required by the context to bring within the scope of this request any answer, response or document that might be deemed outside its scope by another construction.

5.  "Any" means any and all.

6.  "Showing" and "reflecting" a given subject shall mean any document or communication that constitutes, evidences, contains, embodies, comprises, respects, relates to, concerns, touches upon, incident to, identifies, states, refers to, deals with, comments on, responds to, describes, involves or is in any way pertinent to that subject including but not limited to documents concerning the presentation of other documents.

WA0003752

BSI FL AG      1946 of 3292

7.    "Relate," "related," and "relating" mean and include all information that in any manner or form is relevant in any way to the subject matter in question, including, without limitation all information that, directly or indirectly, contains, records, reflects, summarizes, evaluates, refers to, indicates, comments upon, or discusses the subject matter or that in any manner states the background of, or was/were the basis or bases for, or that record, evaluate, comment upon, relate to, or were referred to, relied upon, utilized, generated, transmitted, or received in arriving at your conclusion(s), opinion(s), estimate(s), position(s), decision(s), belief(s), or determination(s).

8.    "Identifying" means to give a reasonable, detailed description thereof. When referring to a person, it includes providing a present or last known address, telephone number, title or position, and place of employment, and, if previously or presently employed by you, the date he or she was hired and the date he or she was terminated, if applicable.

WA0003753

BSI FL AG      1947 of 3292

# EXHIBIT B

## INSTRUCTIONS

1.      Unless otherwise stated, the scope of this Civil Investigative Demand (CID) relates to all
        actions or omissions of action since January 1, 2004.

2.      It is not sufficient to fail to provide documents if you can obtain them from persons
        reasonably available to you or under your control.

3.      If the requested information is stored only on software or otherwise is "computer-based
        information," you are directed either to produce the raw data along with codes and programs
        necessary for translating it into usable form by The Office of the Attorney General of Texas,
        or to produce the information in a finished usable form. In either case, you must include all
        necessary glossaries, keys, indices, and software necessary for interpretation of the material.

4.      Each document and other tangible thing produced shall be clearly designated as to which
        Request, and each sub-part of a Request, that it satisfies.

5.      In any situation in which it is not clear in which capacity you are responding, you are to
        designate all relevant capacities.

WA0003754

BSI FL AG        1948 of 3292

## EXHIBIT C

1.    Produce documents reflecting your authority to do business in Texas. Include but do not limit your response to articles of incorporation or association, amendments thereto, filings of name changes, assumed name certificates, doing business as records filed with any county, certificates of authority and all other documents submitted to or issued by any Texas state or local governmental entity as a predicate for engaging in business.

2.    Produce documents identifying all Texas customers who have registered via your website(s) to receive an "account", whether currently closed or active, with Consumer Incentive Promotions or eMarket Research Group for the purpose of receiving a good or service from Niu Tech, L.L.C. or any companies under its control or direction.

3.    Produce documents identifying all names under which you have conducted business, including active and dead corporate entities and assumed names (d/b/a's) under which you have offered "free, promotional, or incentive gifts."

4.    Produce a sample copy of all contract forms, rules, and disclaimers used by you in offering your Consumer Incentive Promotions and eMarket Research Group goods or services.

5.    Produce documents identifying all third-party entities from whom consumers may acquire any goods or services, thereby satisfying any requirement necessary to obtain any goods or services from Niu Tech, L.L.C or any companies under its control.

6.    Produce documents constituting any agreements or contracts between you and any affiliates or third-party entities identified in response to request No. 5 above.

7.    Produce documents showing any communication between you and any third-party entities identified in response to request No. 5 above regarding Texas consumers.

8.    Produce documents identifying all third-party affiliates who have received compensation from you since January 1, 2005 for the referral of customers to your website(s).

9.    Produce documents reflecting any advertising used to offer or promote Consumer Incentive Promotions or eMarket Research Group offers, goods, or services. Include, but do not limit your response to print advertisements, television or radio commercials, copies of websites, pop-up or pop-under ads, banner ads, and electronic mail.

10.   Produce a sample copy of any scripts, training manuals, or other instructional material provided to owners, managers, or employees of Niu Tech, L.L.C. who respond to consumer inquiries.

11.   Produce documents identifying all Texas consumers who have received from you any "free" product or promotional "gift." Include in your response documents identifying what such product or gift was received.

12.   Produce documents reflecting complaints which have been submitted to you by residents of the State of Texas regarding any of your "free" product or promotional "gift" offers. Include, but do not limit your response to:

WA0003755

BSI FL AG      1949 of 3292

     a.    All complaints and commemorations thereof (where the complaint was delivered by telephone, for example, provide notes of all such telephone conversations);

     b.    All documents generated by you in response to the above complaints; and

     c.    All documents commemorating resolution of those complaints.

 13. Produce documents of all terms and conditions of all of your offers of goods or services to consumers.

14. Produce documents constituting your privacy policy regarding consumer information.

15. To the extent not provided in this request or in response to previous requests, produce sample copies of any other disclosure forms or written information provided to current or prospective customers or otherwise maintained by you or your affiliates relating to Consumer Incentive Promotions and eMarket Research Group.

WA0003756

BSI FL AG     1950 of 3292

## ATTORNEY GENERAL OF TEXAS
### GREG ABBOTT

September 19, 2006

**VIA FACSIMILE (214) 665-5976 AND**
**VIA FIRST CLASS U.S. MAIL**

Mr. Hugh E. Hackney
Greenberg Traurig
2200 Roff Avenue; Suite 5200
Dallas, TX 75201

**Re:    Additional Documents Request**

Dear Mr. Hackney:

As you know, our office has for several months been reviewing Niu Tech's business practices related to their various, internet-based "free-gift" programs. As a follow-up to our conversation on September 18, 2006, I am sending this letter is to facilitate the production of desired documents with an explanation of some of the requests from our March 7th, 2006 CID and to make additional requests as an extension of that CID.

**March 7th, 2006 CID**

The CID defined Consumer Incentive Promotions and eMarket Research Group as Niu Tech, L.L.C. However, many of the responses seemed to have been limited to only Consumer Incentive Promotions and eMarket Research Group. When we refer to Consumer Incentive Promotions or eMarket research Group, we mean Niu Tech, L.L.C, which is to include any name or URL it uses for any of its promotional programs. The following explanations pertain to Exhibit C of the CID:

In paragraph 2 we requested the production of documents identifying all Texas customers who have registered for an account to receive free, promotional, or incentive gift merchandise from any website owned, operated, controlled, or registered by Niu Tech. For example, this request includes Texas accounts created from eatoutfreetoday.com, freegamessource.com, myselectgifts.com, and any of the other numerous websites attributed to Niu Tech.

In paragraph 3 we asked for a list of other names under which Niu Tech L.L.C. is offering free, promotional, or incentive gifts. For purposes of this request, we consider each and every URL or web address that Niu Tech is using or has used to fall under the rubric of "other names under which you have conducted business." In addition to what has already been produced, please provide us with a complete list of all URLs that Niu Tech has used or is using to offer free, promotional, or incentive gifts.

Bates Stamped items NIUTECH000003-NIUTECH000005 are the Program Requirements for only a laptop computer. However, in Paragraph 4, we requested "all contract forms, rules, and disclaimers." We are requesting the production of all such items used by Niu Tech for all of its free, promotional, and incentive gift offers. For example, the program requirements for a "free $100 Chili's Gift Card" are different than that of a laptop computer. Additionally, we have discovered that the wording and format of some of the Program Requirements and of the Terms and Conditions (Bates Stamped items NIUTECH000006-NIUTECH000010) have changed or have been updated. Please produce all versions, both outdated and updated, of any and all Program Requirements and the Terms and Conditions of participation.

WA0003762

POST OFFICE BOX 12548, AUSTIN, TEXAS 78711-2548 TEL: (512)463-2100 WEB: WWW.OAG.STATE.TX.US
*An Equal Employment Opportunity Employer · Printed on Recycled Paper*

BSI FL AG      1956 of 3292

In paragraph 5 we requested a list of companies for which Niu Tech lists offers on its free, promotional, or incentive gift offer websites. For example, to participate in a promotional offer, customers can get a Discover card, sign up with Columbia House, or join Netflix all through links Niu Tech provides. Please produce a list of companies making promotional offers on Niu Tech's websites such as Discover, Columbia House, and Netflix.

In paragraph 6 we requested documents reflecting any agreement(s) between Niu Tech and any companies making offers on any of Niu Tech's websites. For example, we want to see what arrangements Niu Tech has with companies (Discover, Columbia House, and Netflix, for example) to which Niu Tech is driving its online-customers.

In paragraph 9 we requested any type of advertisement that Niu Tech currently owns or has had created for the purpose of offering free, promotional, or incentive gifts. Those advertisements include but are not limited to any email or pop-up ad Niu Tech has sent or has paid for to be sent to consumers offering any free, promotional, or incentive gift, if such documents are in Niu Tech's possession. This request is in response to consumers alleging that they have received advertisement emails and pop-up ads linked to web addresses leading back to Niu Tech.

In paragraph 11 we requested documents identifying all of Niu Tech's Texas customers that received a free product or promotional gift. In case there was any misunderstanding, I wanted to clarify that the response was not to be limited to Consumer Incentive Promotions and eMarket Research Group. Our request was for all of Niu Tech's Texas customers regardless of what promotional website they were using.

In paragraph 12 we requested all complaints that Niu Tech has received from Texas customers. However, aside from a few BBB complaints you submitted, we received from you a sheet of what Niu Tech has dubbed "inquiries." We are requesting that Niu Tech separate the complaints from the list of inquiries we received and designate them as "complaints." Please also provide a summary of the customers' complaints.

<u>Additional Requests</u>

We request that, as an extension to our March 7th, 2006 Civil Investigative Demand, your client provide the following additional documents for our review:

1. Produce documents reflecting any designations, identification numbers, or any other identifying name or number every entity, company, corporation, partnership, or any other organization uses to identify you to acknowledge when you have listed their offers on any of your websites or when your customers have successfully satisfied their offers through links from your website.

2. Pursuant to your Call Center Process document, page 2 sec. 4.1, your employees make notes when each Incoming Ticket is closed. Produce any and all notes any of your employees have made regarding any Texas customer calls. Notes are to include but not limited to the reason the customer called in the first place, why the ticket was closed without sending it to another department, and the date of the resolution.

3. Pursuant to your Call Center Process document, page 2 sec. 4.2.1, your employees make notes when a customer call has been transferred for review. Produce any and all notes any of your employees have made regarding any Texas customer calls that have been transferred for review.

4. Produce documents reflecting your internal policy for emailing consumers advertisements and/or offers of "gifts" or "free" merchandise.

WA0003763

BSI FL AG     1957 of 3292

We appreciate Niu Tech's cooperation to date in providing documents pursuant to our March 7th, 2006 CID. After examining the above requests, please contact me to discuss your expected time line for production. As always, thank you for your cooperation in this matter.

Sincerely,

Corey David Kintzer
Assistant Attorney General
Consumer Protection and Public Health Division
(512) 936-0585 (telephone)
(512) 322-0578 (facsimile)
corey.kintzer@oag.state.tx.us (e-mail)

WA0003764

BSI FL AG     1958 of 3292

Request #7

1. Jonathan S. Madorsky v. National Survey Panel, Court of Common Pleas, Civil Division,
   Cuyahoga County, Ohio, Case No. CV-06-605185;
See below

2. Jonathan S. Madorsky v. Your Handy Tips, Court of Common Pleas, Civil Division, Cuyahoga
   County, Ohio, Case No. CV-06-604590;
See below

3. Jonathan S. Madorsky v. Your Handy Tips, Court of Common Pleas, Civil Division, Cuyahoga
   County, Ohio, Case No. CV-06-604144;
See below

4. Jonathan S. Madorsky v. National Issue Panel, Court of Common Pleas, Civil Division, Cuyahoga
   County, Ohio, Case No. CV-06-604156;
See below

5. Jonathan S. Madorsky v. Online Gift Rewards, Court of Common Pleas, Civil Division, Cuyahoga
   County, Ohio, Case No. CV-06-604591;
See below

6. Jonathan S. Madorsky v. Your Handy Tips, Court of Common Pleas, Civil Division, Cuyahoga
   County, Ohio, Case No. CV-06-603455;
Summary: All the Madorsky cases were filed by a pro se litigant in Ohio claiming that he had participated in a promotion (all separate promotions) and was entitled to the gift each promotion offered.
Disposition: Settled all six for $2,250 total for economic reasons. Settlement agreement entered into with confidentiality clause and Madorsky agreed to never again participate in any of our promotions.

Resolved Consumer Complaints:

1) Sondra Ostheimer/Wisconsin: Ms. Ostheimer participated in a promotion for a $25 gift card and a Disney princess birthday party package for a child's party. After completing some offers on one page, she ended up on a new page with a series of offers which only a smoker would be interested in. She doesn't smoke. Company decided to give her the gift card and the party package. She received the Disney party package after her child's birthday and was still unhappy but said she was planning a party for Christmas and would

WA0003775

be happy if she received the "ultimate cat party package" in time for the Christmas party. Company sent her the ultimate cat party package, resulting in the letter I sent you earlier today.

2) David Samra/Florida: Company believed Samra had found a way to scam them by exploiting a weakness in their system and triggering it to make the system show that he had signed up for various promotions needed to qualify for gifts when he hadn't really done so. Ultimately when we went into the details with them they could not actually prove he had done that. Although they were still suspicious, company decided to accept what proofs of purchase Samra could offer and agreed to give him a Zales $1500 Gift Card, a Panasonic Pro AG-DVC30 3-CCD Mini/DV Camcorder, a Palm Treo Smartphone, a Samsung 42" plasma TV and an Alienware Laptop Computer.

3) Gary Hamilton/Maryland: Mr. Hamilton completed one of ten offers needed to qualify for a laptop computer. He claimed he completed three offers of what he understood to be a required five. So essentially there was a dispute about the number of offers needed (probably because he never even made it to the third screen and didn't even know about the remaining offers) and a dispute about the number of offers he completed. He demanded $5,000 for "fraud." The laptop was worth perhaps a fifth of that at most. The company offered him a $200 gift card as a gesture of good faith. He demanded $2500 in response. I spoke with the mediation office of the State of Maryland Office of the Attorney General and was told that the mediator thought the company was being reasonable and that Mr. Hamilton was not. They asked whether we would increase our offer by $50 and put it on the table as a final offer. We agreed and I sent a letter on October 30 doing that. We have not heard from Mr. Hamilton since and he never accepted the offer.

4) Jason Savage/Florida: Mr. Savage complains that he is entitled to $12,000 in various free gifts and has made frequent and vociferous complaints to the Florida Department of Agriculture and Consumer Services, the BBB and most recently the Palm Beach County Consumer Protection Agency. The company believes he too was scamming it by having found a way to register falsely that he had signed up for various promotions. He is known to be a contributor to a website called "Scam.com" where techniques for doing this have supposedly been discussed online, according to the client. The company's response to him has been to say that whatever gifts he can provide proofs of purchase for, he will be given. He has complained for a long time that it is unreasonable to make him look for credit card statements or email confirmations from advertisers from 6 - 9 months ago. Most recently he sent in 130 pages of proofs of purchase and the preliminary analysis of them by the client is that they show he never completed all the offers required on any promotion to qualify for any of the gifts - but he has completed some. At this point the company is evaluating what it wants to do, but it has not given him anything to date.

WA0003776

NIUTECH, LLC
Sabre Centre II
6001 Broken Sound Parkway, Ste. 200
Boca Raton, FL 33487

Homer P. Appleby
V.P. & General Counsel

Telephone: (561) 939-6904                              Email: happleby@adinfocenter.com

November 14, 2006

Mr. Edward Walker
Consumer Protection Investigator
Department of Agriculture, Trade and
Consumer Protection
200 North Jefferson Street - Suite 146-A
Green Bay, WI 54301-5198

RE:   *File No. 473701 (Complaint of Sondra Ostheimer)*

Dear Mr. Walker:

I have reviewed the complaint of Sondra Ostheimer and have gone back into our files to
attempt to reconstruct what occurred.

One of Ms. Ostheimer's complaints concerns the $25.00 Wal-Mart giftcard offer. I have
reviewed the wording of that offer and have concluded that her complaint is justified.
The wording of the $25.00 Wal-Mart giftcard offer was extremely confusing. We have
completely rewritten the wording to make the terms of the offer perfectly clear.

Indeed, we wish to thank Ms. Ostheimer for pointing out this confusion to us. It is not
our practice to provide confusing offers.    Since her complaint is completely
understandable, we are proceeding to acquire and will provide to her a $25.00 Wal-Mart
giftcard at our expense.

Ms. Ostheimer also indicates that she proceeded as directed and wound up in a window
or a box which was devoted entirely to smokers and that she was not a smoker. She
indicates that she was unable "to get out of [the smoker's] boxes . . . ." We have
attempted to replicate her experience, without success. These windows or boxes are
designed to allow the user to exit at any time. Frankly, we cannot explain why she was
not able to exit the smoker's box. Nonetheless, we do not dispute her claim, even though
we have not been able to replicate what happened.

WA0003746

The system we have in place is not designed to require two and a half hours of effort to reach a prize. We do regret that she devoted so much time pursuing this prize. As a part of our resolution of Ms. Ostheimer's complaint, we will provide her with the Disney Princess Party Package.

One other point needs mentioning. Ms. Ostheimer questions whether any prizes are ever received by participants. I can assure you that many prizes are earned in these various programs, and that the system is designed to allow participants to receive prizes with a minimum of effort.

I hope this explanation resolves this inquiry to your satisfaction. We will be happy to respond to any further inquiries you may have and, in the meantime, are proceeding to process the transmission of the $25.00 Wal-Mart giftcard and the Disney Princess Party Package to Ms. Ostheimer.

If you have any further questions, please contact our local counsel, Robert H. Friebert, at the following address:

Friebert, Finerty & St. John, S.C.
330 East Kilbourn Avenue, Suite 1250
Milwaukee, WI 53202
(414) 271-0130
rhf@ffsj.com

Thank you for your attention to this matter.

Very truly yours,

NIUTECH, LLC


Homer Appleby

WA0003747