IN THE U.S. DISTRICT COURT FOR MARYLAND,
SOUTHERN DIVISION

BEYOND SYSTEMS, INC.           )
                               )
       Plaintiff               )
                               )
v.                             )   Case No. PJM 08 cv 0921
                               )
WORLD AVENUE USA, LLC, et al.  )
                               )
       Defendants              )
_____)

**DEFENDANT WORLD AVENUE USA, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS APPLICATION AS TO AMOUNT OF ATTORNEYS' FEES**

Defendant WORLD AVENUE USA, LLC ("WAUSA") hereby submits its Memorandum of Points and Authorities in Support of its Application As to Amount of Attorneys' Fees awarded by this Court against BEYOND SYSTEMS, INC. ("BSI") in its Order dated October 7, 2010.

**I.     Introduction.**

On October 7, 2010, the Court granted WAUSA's Motion to Compel Production of Documents Responsive to Fourth Request for Production ("Motion to Compel"). *See* DE 441. The Court ordered WAUSA to "file a Declaration of Attorney's Fees and Costs incurred in connection with the Motion." The Court's Order was based on the following finding:

> Based on the conduct outlined in the memorandum in support of Defendant's Motion, the Court finds that an award of sanctions is merited and that Plaintiff's Opposition to Defendant's Motion was not substantially justified.

*See* DE 441.

The subject Order is just one of four Orders in which BSI and related parties have been sanctioned in this case and its companion case pending in the U.S. District Court for the District of Columbia, *World Avenue USA, LLC v. William J. Wagner*, Miscellaneous No. 09-557

(HHK/AK), (U.S. District Court, District of Columbia) ("District of Columbia Action"). In the companion District of Columbia Action, the Court Order stated:

> Given the revelation of responsive documents during the deposition [of William J. Wagner], Respondent's repeated failure to disclose their existence, and his refusal even now to adequately excuse that failure, this Court finds it appropriate to award Petitioner [World Avenue USA, LLC] costs and attorneys' fees related to responding to this instant renewed motion for sanctions.

*See* District of Columbia Action, DE 21, p. 9.

In addition to the underlying Order at issue here, this Court also entered a second Order sanctioning BSI for discovery violations in connection with the Motion to Compel Answers to Third Set of Interrogatories. *See* DE 444. The fourth time the Court sanctioned BSI for a meritless Motion to Seal. *See* DE 468.

The events triggering WAUSA's entitlement to an award of attorneys' fees are as follows. WAUSA served its Motion to Compel on BSI on May 14, 2010. WAUSA also served correspondence on BSI outlining its position, and conferred with BSI over the telephone on its position. After receiving no timely response, WAUSA filed the Motion to Compel and Memorandum of Points and Authorities on June 15, 2010. *See* DE 271-272. BSI filed an Opposition on July 2, 2010. *See* DE 322. WAUSA then served its Reply at DE 341. WAUSA served a Notice of Supplemental Authority on August 11, 2010 noting that BSI had filed at DE 382 copies of documents responsive to the Fourth Request for Production that were not yet produced to WAUSA. *See* DE 388.

WAUSA incurred $12,646.00 in attorneys' fees in connection with the Motion to Compel. The attorneys' fees are detailed in the Declaration of Sanford M. Saunders, Jr. and John L. McManus. *See* Exhibits 1 and 2.

## II.  Applicable Legal Standard.

### A.  The Lodestar Method And The *Johnson* Factors.

"This Court uses a lodestar analysis to determine attorneys' fees awards, an analysis which involves multiplying the number of reasonable hours expended by a reasonable hourly rate." *Trustees of the National Automatic Sprinkler Industry Welfare Fund v. Fire Sprinkler Specialties, Inc.*, Case No. RWT-08-1890, 2010 WL 723803, at *1, *1 (D. Md. Feb. 23, 2010) (Day, J.) (*citing Robinson v. Equifax Info. Serv.*, 560 F.3d 235, 243 (4th Cir. 2009)). "Reasonableness is key in this analysis and the twelve *Johnson* factors guide the Court in determining what are 'reasonable' hours and rates." *Id.* (*citing Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds*, *Blanchard v. Bergeron*, 489 U.S. 87 (1989)).  The twelve *Johnson* factors are:

> (1) time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectation at the out-set of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; (12) attorneys' fees awards in similar cases.

*Trustees,* 2010 WL 723803, at *1 (*citing Johnson*, 488 F.2d at 714).

This Court has instructed that it finds *Johnson* factors one, three and nine most persuasive.  *Id*.  The U.S. Supreme Court has instructed that the most critical factor in determining the reasonableness of time spent and hourly rate billed is the "degree of success obtained." *See Dahn World Co., Ltd. v. Chung*, Case No. RWT 06-2170, 2009 WL 277603, at *1, *3 (D. Md. Feb. 5, 2009) (Titus, J.) (*citing Hensley v. Eckerhart*, 461 U.S. 424, 434-35 (1983)).

Once the movant has sustained its burden of showing that the "claimed rate and number of hours are reasonable, the resulting product is presumed to be the 'reasonable fee' to which counsel is entitled." *Deigert v. Baker*, Case No. RDB-09-00392, 2010 WL 3860639, at *1, *5 (D. Md. Sept. 30, 2010).

### B.     The Guidelines.

"[T]he Court also relies upon the Rules and Guidelines for Determining Attorneys' Fees in Certain Cases, Appendix B, Local Rules (D.Md.)." [the "Guidelines"]  *Trustees,* 2010 WL 723803, at *1.  However, the Guidelines are guidelines only and must yield to the *Johnson* factors established by case law when appropriate:

> These rates are intended solely to provide practical guidance to lawyers and judges when requesting, challenging and awarding fees. The factors established by case law obviously govern over them. One factor that might support an adjustment to the applicable range is an increase in the cost of legal services since the adoption of the guidelines. The guidelines, however, may serve to make the fee petition less onerous by narrowing the debate over the range of a reasonable hourly rate in many cases.

*See* Guidelines, § 3.

Thus, where the factors in the caselaw justify an hourly rate higher than those set forth in the Guidelines, an hourly rate in excess of the Guidelines is appropriate.  For example, in *Instant Tax Service 10060, LC v. TCA Financial, LLC*, Case No. PJM-08-2364, 2009 WL 2579806, at *1, *4 (D. Md. Aug. 17, 2009) (Messitte, J.), the Court awarded hourly rates of $590 and $580 for two partners, an hourly rate of $520 per hour for an associate, and an hourly rate of $310 for a law clerk.  This Court stated:  "While these rates are on the high side, the Court finds them to be not out of range from the hourly rates charged by other large law firms with clients throughout the United States and abroad." *Id*.

Likewise, in *Bethesda Asset Services, Inc. v. Bank of New York*, Case No. PJM 00-2116,

2005 WL 2106083, at *1,*35-*36 (D. Md. Aug. 30, 2005) (Connelly, J.), the court found that a partner rate of $495 per hour, a 7-year associate rate of $335 per hour, and a legal assistant/paralegal rate of $150 per hour was appropriate.  In doing so, the court drew on its experience in "examining other lawyers' invoices in other cases," "fee discussions with lawyers at professional gatherings," and "a review of legal periodicals in the Washington metropolitan area." *Id*. at 36.

Moreover, in *Whitaker v. Navy Federal Credit Union*, Case No. RDB-09-cv-2288, 2010 WL 3928616, at *1, *6 (D. Md. Oct. 4, 2010), the court awarded $450 per hour for a partner, which is above the Guidelines, where it was justified by the experience of the attorney.  Further, in *Johannssen v. District No. 1-Pacific Coast District*, Case No. AMD 96-2355, 2001 WL 770987, at *1, *5 fn 2 (D. Md. July 10, 2001), the court deviated from the Guidelines and awarded a higher fee where the evidence showed that the customary fee for like work was higher than the Guidelines.

> **III.    WAUSA Is Entitled To An Award of $12,646.00 In Reasonable Attorneys' Fees Against BSI.**
>
> **A.    The Hourly Rates Sought Are Reasonable In The District of Maryland Legal Market.**
>
> **1.    The Saunders and McManus Declarations Support The Reasonableness Of The Hourly Rates Involved.**

The Saunders and McManus Declarations attest that the hourly rates sought in this matter are the customary rates charged for the legal services rendered.  *See* Declaration of Sanford M. Saunders, Jr. ("Saunders Decl."), ¶¶ 3-4; Declaration of John L. McManus ("McManus Decl.", ¶ 13.  The Court is entitled to receive evidence that the reasonable hourly rate in the district is the hourly rate of what was actually charged.  *See Depaoli v. Vacation Sales Assocs., LLC*, 489 F.3d 615, 622 (4th Cir. 2007) ("The market rate should be determined by evidence of 'what attorneys

earn from paying clients for similar services in similar circumstances,' which, of course, may include evidence of what the plaintiff's attorney actually charged his client").

Moreover, the independent evidence supports that the hourly rates charged are, in fact, reasonable in this District. Mr. Saunders is a 27-year practitioner, is admitted to the Maryland Bar, and routinely practices in this U.S. District Court. Mr. Saunders is the Co-Managing Shareholder of Greenberg Traurig's District of Columbia office. As a result of his vast experience, Mr. Saunders has knowledge of reasonable rates in the relevant community. The Saunders Declaration further avers that the hourly rates sought are customary in the District of Maryland legal market. Saunders Decl., ¶ 4. The McManus Declaration avers that the hourly rates are customary as well. McManus Decl., ¶ 13.

      **2.**      **The NATIONAL LAW JOURNAL's Annual Survey of Billing Rates Attests To The Reasonableness of The Hourly Billing Rates At Issue Here**.

The reasonableness of the hourly billing rates of the attorneys involved is also supported by the National Law Journal's annual survey of billing rates. *See* Leigh Jones, *Law Firm Fees Defy Gravity*, NATIONAL LAW JOURNAL (Dec. 8, 2008), attached as Exhibit 3. For example, billing rates at Steptoe & Johnson, LLP based in Washington, D.C. -- a firm that BSI has retained in connection with certain of its litigation in the District of Maryland -- has billing rates at $350 to $895 for partners and $210 to $685 for associates. *Id*., p. S-4.[1] The billing rates at Arent Fox based in Washington, D.C., range from $410 to $710 for partners and $260 to $465 for associates. *Id*., p. S. 2. The billing rates at Dickstein Shapiro based in Washington, D.C., range from $475 to $895 for partners and $250 to $475 for associates. *Id*., p. S. 2. The billing

---

[1] WAUSA made this same point in its Application for Fees when the District Court for the District of Columbia awarded sanctions against William J. Wagner (father of BSI principal, Paul A. Wagner) and William J. Wagner -- represented by the same counsel representing BSI here -- did not dispute that these are Steptoe & Johnson's rates.

rates at Patton Boggs based in Washington, D.C., range from $360 to $990 for partners and $244 to $535.  *Id*., p. S-4.

### 3. The Hourly Rates Are Reasonable Under The Particular Circumstances of This Case.

Given the foregoing, the hourly rates charged for the attorneys involved are reasonable in this District.  Mr. Saunders, who has more than 27 years of experience, has been recognized in Chambers and Partners' *2009 Chambers USA Guide* as one of the leading litigators in the country.  McManus Decl., ¶ 16.  Most recently 2010, Mr. Saunders was recognized for his litigation expertise in the 2010 edition of *Legal 500 United States*, an internationally-recognized client referral guide.  Mr. Saunders' hourly rate was $625 per hour and he worked for a half hour on the subject matters. *Id.*, ¶ 4.

Mr. McManus, a Shareholder who was the primary drafter of the Motion to Compel, is a 1997 graduate of the University of Florida College of Law having practiced law for 13 years in the areas of commercial litigation in federal and state courts.  *Id*., ¶ 16.  Mr. McManus's hourly rate is $450 per hour.  Mr. McManus was particularly well-suited to working on this matter since he has been involved in this case for the last two years.  *Id*., ¶ 15.  Mr. McManus has been representing WAUSA or other associated companies since prior to the inception of this litigation, and is extremely familiar with the issues involved.  *Id*., ¶ 15.  Mr. McManus was also well-suited to be the primary attorney working on the Motion to Compel because he drafted the Fourth Request for Production in the first instance.  Mr. McManus is based in Fort Lauderdale, Florida, close to the offices of the two Defendants, WAUSA and World Avenue Holdings, LLC ("Holdings").  *Id*., ¶ 15.

Kenneth A. Horky, a Shareholder who assisted on the Motion to Compel, is a 1986 graduate of the Florida State University College of Law having practiced for 24 years in the area

of commercial litigation. *Id.*, ¶ 16. Mr. Horky is also based out of Greenberg Traurig's Fort Lauderdale office, close to the offices of WAUSA and Holdings. *Id.*, ¶ 15. Mr. Horky has represented WAUSA or other associated companies since approximately 2006. *Id.*, ¶ 15. Mr. Horky has been involved in this case for the past two years. *Id.*, ¶ 15. Mr. Horky worked on the matters at hand for 2.1 hours at a $460 hourly rate. *Id.*, ¶ 4.

For her part, Ms. Burlacu, an associate, is a 2000 law school graduate, who, after completing her Master's in 2001, obtained an LL.M in International and Comparative Law in 2006 from The George Washington University Law School. *Id.*, ¶ 16. Ms. Burlacu practiced as a foreign attorney with Greenberg Traurig, LLP, from 2006 until January 2008, when she was admitted to the Bar of New York. *Id.*, ¶ 16. Ms. Burlacu has ten years of experience practicing foreign and international law, including working as a Staff Attorney for the U.S. Department of Justice, Criminal Division, Office of Overseas Prosecutorial Development, Assistance and Training. *Id.*, ¶ 16. Ms. Burlacu has been practicing in private practice since her New York bar admission in January 2008. *Id.*, ¶ 16. Ms. Burlacu has been working on this case for over two years, and is admitted *pro hac vice* in this case. *Id.*, ¶ 16. Ms. Burlacu spent 4 hours at a $290 hourly rate. *Id.*, ¶ 4.

Ms. Burlacu would ordinarily be in a position to take a leading role in a discovery motion, such as the Motion to Compel. For example, when WAUSA applied for attorneys' fees in response to the Court's Order granting sanctions in the District of Columbia Action, the records reflected that the work was done almost primarily by Ms. Burlacu, with the assistance of Mr. Saunders. However, during the period of time involved here, Ms. Burlacu was heavily dedicated toward other issues in the case and the Motion to Compel was assigned to Mr. McManus to draft in her stead.

The reasonableness of Ms. Burlacu's $290 hourly rate is even more pronounced when compared with the hourly rates charged for her peer group (based on years of private practice of domestic law). Hogan & Hartson based in Washington, D.C., bills out third year associates at $360 per hour. *See* Exhibit 3, p. S-5. Dickstein Shapiro bills out third year associates at $350 to $395 per hour. *Id.*, p. S-5. Steptoe & Johnson, LLP bills out third year associates at $355 per hour. *Id.*, p. S-6. Patton Boggs bills out third year associates at $350 per hour. *Id.*, p. S-6.

      **B.**      **The Hours Expended Were Reasonable.**

            **1.**      **WAUSA Has Met Its Burden To Show Reasonableness.**

WAUSA has satisfied its burden to show the reasonableness of the hours expended in (i) preparing its good faith correspondence about the Motion to Compel; (ii) preparing the Motion to Compel; (iii) evaluating the Opposition; (iv) drafting the Reply Memorandum; (v) drafting the Notice of Supplemental Authority; and (vi) drafting further correspondence about the content of documents produced relating to the Notice of Supplemental Authority. WAUSA has submitted the McManus Declaration and the Saunders Declaration attesting to the reasonableness of the attorneys' fees incurred. *See* Exhibits 1-2. WAUSA is also submitting a Chart detailing exactly what the attorneys did for each hour or portion thereof for which recovery is sought. *See* Exhibit 4. Greenberg Traurig maintains contemporaneous time records of hours (or portions thereof) dedicated toward particular matters based on six minute increments. WAUSA has also submitted redacted photocopies of the bills for the work performed reflecting the actual timekeepers and task descriptions for time worked. *See* Exhibit 5.[2]

---

[2] Exhibit 4 details the work performed except as follows. In the Columns at the far right, the undersigned have caused to be inserted a sub-total of hours (or portions thereof) for the work performed and a sub-total of monies due for the work performed. This is necessary because the actual time entries on the bills (Exhibit 5) necessarily include work performed on other tasks unrelated to the Motion to Compel, which have been excluded from the time entries on Exhibit 4.

This evidence more than demonstrates reasonableness and creates a presumption that the hours expended are reasonable. *See Holbrook v. District of Columbia*, 305 F. Supp.2d 41, 45-46 (D.D.C. 2004) ("Plaintiffs have demonstrated that the number of hours expended on particular tasks was reasonable. Plaintiffs' counsel submitted time records that show the specific tasks she performed, the hours she expended on each task (calculated in tenth-hour segments), and the date each task was performed. She also submitted a detailed affidavit explaining the hours claimed for each task identified by DCPS as unreasonable in its Disputed Items List").

### 2. The Complexity of The Matter Required Intensive and Extensive Effort.

Counsel's time and effort spent in preparing the Motion to Compel was reasonable for several reasons. The work began with the drafting of an e-mail communication outlining the issues for discussion in a later telephone conference. McManus Decl., ¶ 9. The Memorandum of Points and Authorities ("Memorandum") filed in support of the Motion by WAUSA concerned at least 23 requests for production of documents and was 36-pages long, with at least 73 additional pages of Exhibits. *Id*., ¶ 9. Far from simply contesting BSI's objections, the Memorandum affirmatively showed that BSI's claims to having a multitude of customers were extremely dubious. Id., ¶ 9. The Memorandum analyzed seven (7) different internet websites, http://www.hypertouch.com/index2/html, http://www.princehotelhanoi.com, http://www.hanoiprincehotel.com, http://www.prontolabels.com, http:www.colorvivofilms.com, http://www.colorvivofilms.net, and http://www.achimkrebs.de/colovivofilms/. *Id*., ¶ 9. The Memorandum made reference to documents in three other legal proceedings, *Beyond Systems, Inc. v. Kraft Foods, Inc*., Case No. PJM-08-409 (D. Md.), *Beyond Systems, Inc. v. Keynetics*, Civil Action No. PJM-04-00686 (D. Md.), *Beyond Systems, Inc. v. Aesop Marketing Corp*., Case No. 248499V (Montgomery County Circuit Court), and *In the Matter of Arbitration between*

*Hypertouch, Inc., Claimant, v. Stamps.com*, Case No. AAA 74 117 00953 04 SUBR, which required mastery of the contents of those documents. *Id.*, ¶ 9.

Following service of the Motion, BSI then served a seven (7) page Memorandum in Opposition [DE 322] and a three (3) page Declaration of Paul A. Wagner which claimed that all of the customers who denied having documents or claimed that they did not know BSI, in fact, knew BSI. [DE 322-1]. *Id.*, ¶ 10. WAUSA then filed a nine (9) page Reply Memorandum pointing out the deficiencies of BSI's response to the Fourth Request and the Memorandum in Opposition at DE 341. *Id.*, ¶ 10.

Even after the Motion was briefed, BSI filed at DE 382 copies of documents responsive to the Fourth Request for Production that were not produced to WAUSA. *Id.*, ¶ 11. This required WAUSA to file a Notice of Supplemental Authority at DE 388 pointing out BSI's inconsistent positions in objecting to WAUSA's discovery requests, on one hand, and then filing responsive, but unproduced documents, in court filings, when the occasion suited it. *Id.*, ¶ 11.

### 3.     The Results In Other Cases.

This Court does look at attorneys' fees awards in other cases in determining a reasonable fee. *Trustees*, 2010 WL 723803, at *1. WAUSA has located at least 23 other cases filed by BSI in this District and in other Courts. *See* Exhibit 6 (attaching http://www.beyondsystems.net/spam_cases.html). Of all of those cases, WAUSA only has knowledge of one other Order granting sanctions against BSI. *See* DE 401 in *Beyond Systems, Inc. v. Kraft Foods, Inc.*, Case No. 8:08-CV-00409-PJM (D. Md.). The amount of that award has not been determined as of the filing of this Application. Thus, setting aside the *four* Court Orders for sanctions entered against BSI and William J. Wagner in this case and the companion

District of Columbia case, the granting of sanctions against BSI is virtually unprecedented.  This speaks volumes about the quality of advocacy that led to the result that BSI now disparages.

Moreover, in a recent case that WAUSA has been able to locate in which a court has awarded fees against a plaintiff in the context of alleged unsolicited commercial e-mail, the court awarded attorneys' fees sought in the amount of $806,978.84.  *See ASIS Internet Services v. Optin Global, Inc.*, Case No. C 05-05124 JCS, 2010 WL 2035327, at *1, *3 (N.D. Cal. May 19, 2010).

**IV.     Conclusion.**

In this and several other cases,[3] BSI has used its so-called "customers" to try to prove that it was a legitimate internet service provider.  Subpoenas issued to those "customers" came up empty-handed.  Yet, when those documents were requested from BSI in the Fourth Request for Production, BSI doggedly refused to provide the discovery and unravel the mystery.  When the Motion to Compel was filed, BSI obstinantly "st[oo]d on its objections" as to 22 of the 23 Requests for Production without even explaining to the Court why it was resting on those objections.  *See* DE 322, pp. 2-6.

Despite being sanctioned, BSI still -- to this very day -- is trying to avoid complying with the Court's Order by filing yet another Motion for Reconsideration.  This is now the fourth Motion for Reconsideration that BSI and its affiliates have filed in this and the companion

---

[3] *See* Declaration of Paul A. Wagner filed 2/23/10 in *Beyond Systems v. World Avenue USA, LLC*, Case No. 08-civ-0921 (D. Md.), DE 168 (disclosing 7 client names and supposed services for clients); *Beyond Systems, Inc. v. Kraft Foods, Inc.*, Civil Action No. PJM-08-0409 (D. Md.) ("*Kraft* Action"), DE 295-42, p. 5, ¶ 15 (disclosing 13 client names and purported services for clients); Declaration filed 2/7/05 in *Beyond Systems, Inc. v. Keynetics*, Inc., Civil Action No. PJM-04-00686 (D. Md.), DE 65-2 (disclosing 13 client names and claimed services for clients); Affidavit signed 1/24/04 in *Beyond Systems, Inc. v. Aesop Marketing Corp.*, Case No. 248499V (Montgomery County Circuit Court) (disclosing 13 client names and supposed services for clients).

District of Columbia Action. Moreover, this Court has issued sanctions to BSI three times, and two of those three Orders are the subject of Motions for Reconsideration.

BSI's current intransigence is a mere continuation of the type of conduct that multiplied the costs of moving to compel compliance with the Fourth Request for Production. Having caused those attorneys' fees to be incurred, BSI cannot now be heard to complain of the quality of the advocacy that led to its being sanctioned. Accordingly, this Court should issue an Order awarding $12,646.00 in attorneys' fees, plus post-judgment interest, against BSI, and reserving jurisdiction to order further sanctions upon the denial of BSI's Motion for Reconsideration. *See* 28 U.S.C. 1961(a).

**WHEREFORE**, WORLD AVENUE USA, LLC respectfully requests entry of an Order awarding $12,646.00 in attorneys' fees against Plaintiff BEYOND SYSTEMS, INC. to be paid in 14 days, with interest accruing at the statutory rate under 28 U.S.C. § 1961(a) on all unpaid amounts until the same are paid, and for such other and further relief as this Court deems just and appropriate.

Dated: October 28, 2010

        Respectfully submitted,
        *Attorneys for World Avenue USA, LLC*

        GREENBERG TRAURIG, LLP

        __/s John L. McManus_____
        Sanford M. Saunders, Jr., Esq.
        USDC, MD #4734
        saunderss@gtlaw.com
        Nicoleta Burlacu, Esq.
        BurlacuN@gtlaw.com
        *Admitted Pro Hac Vice*
        GREENBERG TRAURIG, LLP
        2101 L Street, NW, Suite 1000
        Washington, DC 20037
        Telephone:  202-331-3100
        Facsimile:  202-331-3101

        --and--

        Kenneth Horky, Esq.
        Florida Bar No. 691194
        horkyk@gtlaw.com
        John L. McManus, Esq.
        Florida Bar No. 0119423
        mcmanusj@gtlaw.com
        *Admitted Pro Hac Vice*
        GREENBERG TRAURIG, P.A.
        401 East Las Olas Boulevard, Suite 2000
        Fort Lauderdale, FL 33301
        Telephone: 954-765-0500
        Facsimile:  954-765-1477