## IN THE U.S. DISTRICT COURT FOR MARYLAND,
## SOUTHERN DIVISION

| | | |
|---|---|---|
| BEYOND SYSTEMS, INC. | * | **CONFIDENTIAL SEGMENTS DUE TO** |
| Plaintiff | * | **DEFENDANTS' DESIGNATIONS** |
| | * | **OF RESPONSES  AS CONFIDENTIAL** |
| | * | |
| | * | |
| v. | * | **Case No. PJM 08 cv 0921** |
| | * | |
| WORLD AVENUE USA, LLC | * | |
| successor by merger to NIUTECH, LLC., | * | |
| DBA THE USEFUL,  ET AL. | * | |
| | * | |
| Defendants | * | |

### MEMORANDUM IN SUPPORT OF
### PLAINTIFF'S MOTION TO COMPEL
### DEFENDANT WAUSA TO PROVIDE COMPLETE ANSWERS TO
### PLAINTIFF'S SECOND SET OF INTERROGATORIES

Plaintiff submits this memorandum in support of its Motion to Compel Defendant World Avenue USA, LLC ("WAUSA" or "World Avenue") to provide complete answers to plaintiff's second set of interrogatories, which were served on World Avenue on May 21, 2010.  WAUSA's responses are evasive, consist mostly of objections, and provide very little substance.

This memorandum is organized as follows:

I. Overview                                                              p. 2

II. WAUSA's General Objections                                          p. 3

III. WAUSA's Objections to Instructions                                 p. 3

     1. Burden; 2. Native Format; 3. New Company;  4. Spoliation

IV.  WAUSA'S Objections to Definitions                                  p. 12

     1. "You;" 2. "Documents;" 3. "Emails at issue;" 4. "Identify" etc.

V. WAUSA's Objections to Interrogatories; BSI's Exceptions.             p. 15

## I. Overview

BSI seeks information in discovery confirming World Avenue's ties to the commercial emails that promote its email-driven "lead generation" business.  The features and facts by which the emails can be traced to the persons responsible are needed because World Avenue relies on layers of concealment, denies the ties, and denies responsibility. World Avenue hides behind multiple identities: thousands of rotating trade names and domain names registered under false identities or proxies; at least 28 corporate names; and street addresses displayed in many of the email advertisements that turn out to be UPS Stores enlisted by its employees as mail drops. Its family of corporate entities, owned and controlled by Defendant Niuniu Ji (who moved to the US Virgin Islands during an attorney general investigation in 2007), have undergone a round-robin of mergers and name changes.  WAUSA contends it is a new entity created on September 22, 2006, shedding past liabilities, although the complaint clearly names WAUSA as a successor of Niutech, LLC by merger, and the articles of merger imbue WAUSA with the assets and liabilities of Niutech.  It has persuaded the court to misinterpret the effect of the "new WAUSA" in one discovery ruling at DE 257.  We ask the Court to correct this erroneous interpretation of the corporate history at least in the instant motion, as it threatens to shut off critical discovery. WAUSA's hall of mirrors is built on deception and concealment for an obvious reason: there is serious liability at stake. World Avenue itself has argued on the record that its exposure in this case exceeds $400,000,000.   In two attorney general investigations World Avenue escaped with a mere wrist slap (Florida, $1,000,000; Texas $800,000).

## II.  WAUSA's General Objections

WAUSA has repeated the general objections that are stated in all of its four sets of discovery responses to date.  It objects generally on the grounds of privilege, confidentiality and redundancy.

The protective order provides sufficient protection for confidential materials. To the extent that WAUSA nevertheless withholds documents on the grounds of privilege, BSI demands a privilege log for all items on which privilege is claimed, in accord with the local rules, the Discovery Guidelines, and the specific request for such a log in the discovery requests.  To date, World Avenue has failed to provide any such privilege log.

Documents that have already been produced in discovery and are in Plaintiff's possession need not be produced by WAUSA yet again.  However, certain sets of documents, such as those obtained via subpoena from the Florida Attorney General via a public information act request, are grossly incomplete.  Thus, World Avenue's argument that certain documents have already been produced applies to only a small portion of the entire set of documents sought.

## III.  Plaintiff's Replies to WAUSA's Objections to Instructions

### 1. Burden; Continuing Time Frame Objection

World Avenue objects to Instruction 7 on the grounds of "burden."  Instruction 7 reads, "Should Plaintiff produce additional e-mails or exhibits during discovery, responding party is obligated to supplement the present responses accordingly to account for any additional e-mails or exhibits produced."  WAUSA asserts its "time frame" objection, seeking to avoid the need to respond concerning later-produced emails.

3

BSI contends that because Defendants' business is built on concealment of identities, it is likely that after key information is obtained during discovery as to the means by which emails may be matched to Defendants as part of their promotional campaigns, the set of emails claimed may include some emails not currently among those identified to date; and on the other hand, that information could conceivably result in the elimination of some emails as <u>not</u> matched to Defendants.  (WAUSA has denied responsibility for all emails claimed.)  The court has already recognized that the claims are ongoing.  The Order at DE 213 reads in relevant part, "Accordingly, the scope of Plaintiff's concerns for purposes of discovery are those emails sent by Defendant from July 20, 2004 to present . . ."

World Avenue also argues burden based on its notion that BSI has "spoliated" emails for not retrieving and saving the images referenced in image URLs in the emails, which images reside on servers controlled by World Avenue or its marketers.  (This issue is addressed in BSI's first motion to compel as to answers to interrogatories, DE 307, at p. 7.)   World Avenue disseminated the images along with email templates to its email marketers prior to the ad campaigns.  The image URLs in the emails typically contain the same "throwaway" domain name as the sales URLs in the emails, indicating that the spammer both hosted the images and redirected the sales URLs to World Avenue's landing pages during a brief period after the spam run.  It is impossible for an ISP to open each and every one of the thousands of emails that cross its servers from thousands of sources daily, and download and save all images.  See Report of Paul A. Wagner, May 3, 2010 at DE 327-12 at pp. 3 - 6. The ties to World Avenue or any other particular sender might only be determined many weeks or months after a number of the emails have been received.

The emails claimed have been produced as they were archived in ordinary course, containing all of their original content except images referenced in URLs as just described. Since February 2008, BSI has retained another category of image, namely, so-called "embedded" images, which a few senders transmit with the email. Aside from images, there should be ample information in the emails for World Avenue to identify the persons who generated them.

## 2. The "Native Format" Objection

WAUSA objects to the discovery requests concerning documents in native format (interrogatories asking <u>about</u> the documents, and document request asking for production.) The ESI agreement provides in relevant part:

> III.
> A. Production in Native Format
> 1. <u>The parties will produce the information in Native format with all meta data intact</u>, (including System Meta-Data, Substantive Meta-Data, and Embedded Meta-Datal) whenever the documents exist in that format. If any elements of the Native format are missing, documents shall be produced in such format as most completely replicates Native format.

DE 113. [Emphasis added.] BSI requests that the documents that exist in native format be produced in that format pursuant to the ESI agreement.

Certain documents are needed in native format for search purposes. Native format provides detail that is needed to match the content of emails and/or graphics that may have been linked to them, with World Avenue and its marketers. In poor quality images, which may have been converted from one format to another or printed on paper and then re-scanned, the content can become obscured, losing data and detail that are essential for an accurate matching process.

As an example, in discovery in other litigation BSI obtained the email templates and images (collectively known as advertising "creatives") that were disseminated by the ad network

defendants to their affiliates.  Many of those affiliates, including MailCompanyX (headed by Sebastian Barale, mentioned in this case) and AccelerateBiz, have been heavily used by World Avenue as well.  In the other litigation, BSI was able to show a match between the creatives from ad networks, thousands of claimed emails and the Barale database.  The creatives must be produced in their original format, as they were disseminated to the affiliates, in order to match.

BSI has utilized data from the Barale database in additional ways to tie World Avenue to the claimed emails in this litigation, demonstrated in part in BSI's supplemental answer to World Avenue's Interrogatory No. 16, Set 1 (the interrogatory stated, ". . . identify the factual basis for your allegation/belief that the transmitting Server/computer was located in the State of Florida") and in BSI's answer to World Avenue's Interrogatory No. 1, Set 2 (the interrogatory stated, ". . . identify all information provided to you by Sebastian Barale concerning: (i) any (or any portion) of the EMAILS AT ISSUE; (ii) anyone who played any part in the creation, review or transmission of the EMAILS AT ISSUE; . . ." ).  In short, BSI has Barale's copy of some of the creatives; BSI needs World Avenue's copy of the creatives, which it disseminated to Barale and its other "affiliates" to compare.   In addition, the Schlotter deposition, taken for ESI purposes, reveals that the servers that upload creatives to "publishers" or advertisers, and thus assist in the initiation and transmission of the commercial emails, are located in Florida.  (See Exhibit K-12, Schlotter deposition excerpts, designated confidential by WAUSA. )  Those creatives are needed in native format to track the emails containing the creatives to World Avenue and the publishers it assisted by furnishing the creatives.

   **3.  New Company; Short Memory Objection; Successor by Merger.**

World Avenue contends it was formed on September 22, 2006 and therefore cannot know any facts prior to that date, has no documents or information prior to that date, and is not required to produce documents or information prior to that date.  (A substantial number of the emails claimed were sent in 2005.)   In its Objections to Instructions, WAUSA states:

> 3.  WAUSA objects generally to the Interrogatories to the extent that WAUSA was formed on September 22, 2006, and it is not reasonably calculated to lead to the discovery of admissible evidence to require WAUSA to respond to discovery concerning e-mails transmitted prior to its existence.

Responses at 2.   This objection is repeated more or less verbatim throughout the responses.

The Amended Complaint (DE 34) describes WAUSA as the successor entity of Niutech, LLC.  Id. at 2-3.  WAUSA's status as successor of Niutech, LLC by merger is confirmed in the secretary of state filings at Plaintiff's Exhibits K-1 through K-5, attached.

As successor of Niutech, WAUSA serves as a repository of the data and information from that predecessor.  The artificial curtain that WAUSA seems to be trying to insert as of September 22, 2006 does not shield the successor entity from the duty to provide information prior to that date.   We examine WAUSA's Answer, its merger documents, and the law.

The Answer filed on behalf of Defendant World Avenue USA, LLC at DE 76 states:

> 3. World Avenue admits that it is a limited liability company formed under the laws of Delaware and that it maintains its principal business offices in Sunrise, Florida, and that it is the successor in interest to Niutech, LLC through Articles of Merger. . . .

The Amended Answer at DE 85-3 states:

> 3. World Avenue admits that it is a limited liability company formed under the laws of Delaware and that it maintains its principal business offices in Sunrise, Florida, and that it ~~is~~was the successor in interest to Niutech, LLC through Articles of Merger. . . .

[Strikeout in original; emphasis added.]  The sole change in the entire Amended Answer, filed August 3, 2009, appears to be the replacement of "is" with "was" as shown above.  It would appear that this change was made to reflect the name change from "World Avenue USA, LLC' to "TheUseful, LLC."   But that name change should not affect successor entity status.

The name change from WAUSA to TheUseful was accomplished by the filing of two documents with the Florida Secretary of State on September 21, 2006: an application for WAUSA as a foreign entity (formed in Delaware) to conduct business in Florida, BSI SOS 88; and an amendment to the foreign application to change the name of WAUSA to TheUseful, LLC.  Exhibit K-4 at 3 (also at BSI SOS 91).

It is clear that the answer was initially filed on behalf of the entity named "World Avenue USA, LLC" that is the successor of Niutech, LLC by merger.  The Amended Complaint amply describes the entity, regardless of the mere name change.  The same Federal Employer ID number (FEIN 26-0004483) is shown in the filings with the Florida Secretary of State for Niutech, LLC, World Avenue USA, LLC, TheUseful, LLC. All of these entities, except the now inactive Niutech, LLC, list the same physical address of 1613 NW 136TH Ave, Suite 100, Sunrise FL 33323.  Exibits K-2, K-3, K-4, attached.

Since the confirmed merger of Niutech, LLC into World Avenue USA, LLC in June, 2006 is incongruous with WAUSA's  argument that it only came into existence on September, 22, 2006.  WAUSA's pretense that it has no information prior to September 22, 2006 is likewise without basis, as it inherited Niutech's assets and liabilities, and stands in its place as a repository of records for the prior entity, which was clearly in spam-related litigation for years, and was therefore under a duty to preserve records pertaining to e-mail driven marketing.

The essential details of the merger, leaving WAUSA as the successor entity of Niutech, LLC, are the following: On June 29, 2006 Defendant Niuniu Ji signed for both sides of the merger of Niutech, LLC into World Avenue USA, LLC (WAUSA).  He signed the Articles of Merger (BSI SOS 81, three signatures by Mr. Ji  at -83) and an Agreement and  Plan of Merger (four signatures by Mr. Ji at -85).  The Articles of Merger very clearly identify World Avenue USA, LLC as a "Delaware Limited Liability Company" associated with "Delaware File #4181161;" show both entities at the same address, which at that time was 6001 Broken Sound Parkway, Suite 200, Boca Raton, Florida 33487; and recite in paragraph 3 that responsibility was transferred to WAUSA for the prior acts of Niutech, and that the merged entity, Niutech, LLC was eliminated. Exhibit K-2 at 5.   The Agreement and Plan of Merger, publicly filed along with the Articles, provides in paragraph 3 that the "Surviving Entity shall be subject to all the . . . . liabilities of the Constitutent Entities,"  and that all of the "liabilities and obligations of the respective Constituent Entities shall thenceforth attach to the Surviving Entity and may be enforced against it to the same extent as if . . . incurred by it."   Further, all of the "acts, plans, policies, contracts, approvals and authorizations" of the old entity were assumed by the new one. Id.  By virtue of this merger, it is clear that WAUSA existed in June, 2006, that it became the successor to Niutech, LLC, and that it assumed the assets and liabilities of the old entity. Florida law further establishes the survivor as the repository of all assets and liabilities of the predecessor entity(ies), and requires the termination of the predecessors.  Florida Statutes, Corporations, Sec 607. 1106, Effect of Merger or Share Exchange. ("(1)(c) The surviving corporation shall thenceforth be responsible and liable for all the liabilities and obligations of each corporation party to the merger").  See also, section 1101, "Merger."  Exhibit K-6, attached.

9

After 2006, WAUSA has continued to hold itself out as the successor of Niutech.  In August, 2008 WAUSA filed an action to preclude later disclosure of documents that had been produced during the Florida attorney general action in 2006-07.   FL AG 2179-87.  In the caption, WAUSA names itself, "World Avenue USA, LLC, successor by merger to Niutech, LLC."  The petition seeks a confidential designation for documents WAUSA identifies as, "Niutech 00014 - 42, 0044-10571, 10744-15745, 0016209-220, 0016510-16642 and WA001369-3651, WA003659 – 4025."  Thus far, to the best of our knowledge WAUSA has failed to produce those documents in the instant case.   We see no documents bearing Bates numbers beginning with the word, "Niutech" or "WA" (as distinct from "WAUSA"), or in the style of "Niutech 00014 . . .", or any documents Bates numbered "WA001369 . . ." etc. in the instant case; and if they happened to be in part redundant with documents that have been produced, certainly the entire set has not been produced or identified in any privilege log. (We have received none of the "confidential" documents from the Florida attorney general or WAUSA, nor seen any privilege log from WAUSA as of this writing.)  Further, WAUSA has not produced any documents numbered as high as 10,571 or 16,642, as referenced in that same order. It would appear that these are documents that were produced in the Florida AG proceedings on disc, but have not been produced in the instant action.  Plaintiff invites WAUSA to show where this contention is mistaken.

The Amended Complaint at DE 34 names as a defendant, "World Avenue U.S.A., LLC, successor by merger to Niutech, LLC, dba 'TheUseful'."  This same phrase was used to identify World Avenue in the Florida attorney general proceedings. See Exhibit K-11, FL AG 211-213. In the Texas attorney general investigation, the entity is referred to as "Niu Tech, LLC" See

10

Exhibit K-13, attached, TX AG 1-9), and as simply "World Avenue." (Id. at TX AG 28-33).   In

those actions, subpoenas and document requests were propounded and answered using those

names, without any protest that the attorneys general had named the wrong entities. WAUSA

was regarded as the central entity in these two attorney general actions, which were based on

considerable research and investigation.[1]   The settlement check for $1,000,000 in the Florida

AG action was written by WUASA.  Document FL AG 0046

      WAUSA should not be permitted to dodge discovery in this case on the pretense that it

lacks knowledge or information as to others in the "World Avenue group," having demonstrated

so clearly in the AG actions that it does in fact have the information and records, and can

produce them.

      The trade name, "TheUseful" has been used continuously in an email-based lead-

generation  business since the year 2000, as shown by World Avenue websites.  See Exhibit K-5.

 It has also been registered as a trade name of Niutech, LLC.  Exhibit K-2   Discovery on topics

related to the continuation this business, associated with the name, "TheUseful," should be

permitted through the era of Niutech's operations to the present.

    **4. The "Spoliation" Objection.**

      This objection is a repetition of the "burden" objection in Item 1, above, and addressed

on page 7 of BSI's first motion to compel at DE 307 and in the Wagner report at 327-12.  There

has been no "spoliation."  Further, there is ample information in the emails claimed by BSI, and

---

[1] WAUSA essentially admits to the reasonableness of the FL AG investigation in its petition for confidentiality described herein, stating: "4. The Department [of Legal Affairs of the Office of the Attorney General] is a Florida agency given investigative and enforcement authority under Chapter 501, Part II, Florida Statutes. Such authority is limited by the scope of such chapter and by the rights of Florida citizens under the Florida and United States Constitution to investigations that are reasonable in their scope and duration and precipitated by information creating reasonable grounds for the Department's belief that a violation of Florida law may have occurred." Document FL AG

produced by BSI in discovery, from which WAUSA should be able to respond to the discovery requests.  As described above, the images referenced in image URLs appearing in the claimed emails were never transmitted to BSI in the first place.  However, World Avenue should have preserved them, at least for purposes of pending litigation, lest it be guilty of "spoliation" itself.

### IV.  WAUSA's Objections to  Definitions.

World Avenue has objected to the definition of "You" as too broad, and has reiterated its position that it should not have to provide information prior to September 22, 2006, or information pertaining to other World Avenue entities.   In its Objections to Definitions, WAUSA states:

> 1.  WAUSA objects to the definition of "YOU". . . . . For purposes of responding to these interrogatory requests, WAUSA understands the terms "YOU" and "YOUR" to mean Defendant World Avenue USA, LLC, the named Defendant in this case formed on September 22, 2006.

Responses at 5.  This objection is repeated, more or less verbatim, throughout the responses.

To justify its narrow definition of "YOU," WAUSA refers to the order regarding discovery owed by Defendant World Avenue Holdings at DE 257.   Although that order was directed at jurisdictional discovery concerning Holdings in particular, it is nevertheless instructive.  It includes the following:

> The Court requires Defendant [World Avenue Holdings, LLC] to provide responsive information in the hands of its officers, directors, employees, agents, representatives and attorneys. . .
> [DE 257 at 3.]
> . . .
> Additionally, the court will look to the following factors: "(1) The agent's power to alter the legal relations of the principal; (2) The agent's duty to act primarily for the benefit of the principal; and (3) The principal's right to control

---

2180, Exhibit K-8, attached.

the agent." Id., at 583. In doing so, the court will look to the totality of the circumstances, not necessarily the presence of all factors. To the extent Plaintiff is seeking information <u>relating to these principles of agency, Plaintiff is entitled to said information</u>. . . .

    DE 257 at 4

    <u>Plaintiff may discover information to demonstrate an agency relationship between Holdings and USA, that justifies the exercise of jurisdiction over Holdings</u>.

DE 257 at 5.  [Emphasis added.]  Thus, the "You" debate embraces two issues: <u>who</u> must respond, and <u>what</u> they must produce.  Under the guidance of the order as to Holdings, the persons charged with responding are the named defendant (for present purposes, WAUSA), and its officers, directors, employees, agents, representatives and attorneys.  From documents produced in discovery to date, including documents from WAUSA and several non-parties (including at least the Florida Secretary of State, the Florida Attorney General, the Texas Attorney General, several UPS stores, Lashback and DNSMadeEasy.com), it is clear that there exists a considerable quantity of communications with WAUSA and its "officers, directors, employees, agents, representatives and attorneys," responsive to BSI's discovery requests, not yet provided in discovery.  For example, there are references to emails that have not been produced, and references to "creatives," that BSI contends have not been produced.

The definition of "You" is affected by World Avenue's status as a successor entity, which is addressed above.  Further, as part of a group of entities interacting on a daily basis at the same street address and suite, and sharing personnel, WAUSA should have broad knowledge about the other entities.

World Avenue's objection that "Internet Advertising" is not at issue is mistaken.  The emails contain content that advertises various products, and the sales URLs within the emails

take prospects to "landing pages" that are part of World Avenue's marketing scheme, and contain advertisements.  Tracing the emails to World Avenue entails review of that advertising content, among other things.  Also, the deception claimed includes falsity in the content.

World Avenue's objection that the definition of "documents" is too broad, is without merit.  It has failed to offer a specific counter-proposal, or to state which features of the definition are unreasonably broad.

World Avenue repeatedly invokes the "option' under Rule 33 to produce business records in response to interrogatories, pointing to reports of its retained expert, Dr. Krawetz, and to its general document production, much of which is extraneous to the discovery requests. This is an abuse of the Rule for two reasons: 1) the Rule does not contemplate reference to expert reports, but rather, to business records; and 2) the responses fail to refer to specific pages, instead referring to documents that are hundreds of pages long (Dr. Krawetz' first report is approximately 200 pages long) and to a mass of over 7,000 random documents produced in discovery that include such things as complaints filed in BSI's other litigation, and personal websites of the Wagner family.  Rule 33 states in relevant part:

> (d) Option to Produce Business Records.
>
> If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:
>
> (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and
>
> (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

14

FRCP 33.  Thus, WAUSA's vague references to "documents produced" and to its expert reports are an improper use of the records option under Rule 33.

World Avenue states an objection to the scope of the "emails at issue," seeking to limit them to those produced by Plaintiff in its initial production months ago.  The Court has already confirmed that the claims in this case are ongoing, as noted above.  The process of matching emails to World Avenue requires information from World Avenue, including, for example, creatives in original format and affiliate identifiers.  Thus, it is necessary to obtain critical information, including discovery responses from World Avenue before, not after, full production of all the emails can be made.

World Avenue states an objection to the definition of "identify," refusing to provide "affiliate identifiers," "referrer identifiers" or "principals in control."  World Avenue markets through networks of affiliates, who are identified in their emails by various codes.  By using these codes embedded in the emails, it is possible to credit the responsible marketer (affiliate network, or a publisher within the network) for the "lead" that was generated through an email. Regardless of the labels by which those codes are named, they are needed in discovery to permit more accurate and complete tracking of emails back to World Avenue.  In a sense, these codes serve as digital "fingerprints."

### V.  BSI's Objections to WAUSA's Answers to BSI's Interrogatories, Set 2

BSI seeks an order compelling WAUSA to respond fully to the interrogatories, which are restated here, followed by summaries of WAUSA's responses (the full text of the responses is attached as an exhibit), in turn followed by BSI's  exceptions.

15

For brevity, some of the boilerplate objections by WAUSA, which are addressed in

sections I, II and III above, are abbreviated by the following codes: Overbroad=OB; Not

reasonably calculated = NC; attorney-client privilege = AC; work product = WP; burdensome =

B; Duplicative = D; Senders not identified = "Senders;" "Vague" = V; "You' objection = Y; and

the "time frame" or "date of creation" objection = WAUSA 9-22-06.

INTERROGATORY 1. Identify all documents produced by you to the Office of the
Attorney General Office of Legal Affairs for the State of Florida, in Office of the Attorney
General vs. World Avenue U.S.A., LLC successor by merger to Niutech, LLC, et al, Case No.
07-00927-MB-CA-09 (Palm Beach County Circuit Court).

Response to Interrogatory No.1

Objections: WAUSA objects to this Interrogatory on the grounds that it is overbroad and
calls for information not relevant and reasonably calculated to lead to the discovery of
admissible evidence. WAUSA also objects to this Interrogatory on the grounds that it calls for
information protected by the attorney-client privilege or the work product doctrine. WAUSA
objects this Interrogatory on the grounds that it is unduly burdensome because it is duplicative
and calls for the production of documents already provided to Plaintiff in prior discovery
responses. WAUSA further objects to the definition of the term "YOU" insofar as it is
overbroad. Accordingly, WAUSA construes this Interrogatory to refer to World Avenue USA,
LLC, the named Defendant in this lawsuit formed on September 22, 2006, its officers, directors,
employees, agents, representatives and attorneys. See DE 257 at p. 2.

Answer:
Subject to and without waiving these objections, and pursuant to Rule 33 of the Federal
Rules of Civil Procedure, WAUSA already has identified the responsive documents related to
this investigation, and refers Plaintiff, including, but not limited to, the documents produced as
part of the production commenced on January 29, 2010, which are incorporated herein by
reference. WAUSA has no responsive information to this Interrogatory beyond what it
previously produced.

BSI's EXCEPTIONS:  WAUSA's objections are boilerplate in nature and therefore of no

effect.  They are largely repeated throughout the responses to all of BSI's discovery requests,

including the two sets of interrogatories and two sets of document requests issued to date. If the

16

Court nevertheless considers them, BSI's responses to WAUSA's general objections are stated in sections I, II and III, above.

WAUSA's denial that it has additional responsive documents is belied by information in documents obtained from non-parties. Unless WAUSA has destroyed documents, this response would appear to be untrue. The 3292 pages of documents produced by the Florida Attorney General pursuant to a Public Interest Act request by BSI's counsel reveal that WAUSA was allowed to designate certain documents as confidential. See Exhibit K-9, document FL AG 2174, attached, an order of September 26, 2008 referring to documents "Niutech 00014 - 42, 0044-10571, 10744-15745, 0016209-220, 0016510-16642 and WA001369-3651, WA003659 – 4025" (order also referenced in BSI's exceptions to WAUSA's general objections in Section III, above). WAUSA must have reviewed those documents before designating them in the attorney general action. Thus far, WAUSA has failed to produce any documents Bates numbered "Niutech 00014 . . ." etc. or any documents Bates numbered "WA001369 . . ." etc. that we can discern. Further, WAUSA has not produced any documents numbered as high as 10,571 or 16,642, as referenced in that same order. It would appear that the groups of documents listed in the order were produced in the Florida AG proceedings, but have not been produced in the instant action. Plaintiff invites WAUSA to show how this contention is mistaken.

Regardless of whether the documents are referenced in the order at FL AG 2174, BSI requests that WAUSA be ordered to produce all documents it produced in connection with the Florida attorney general action. WAUSA's vague references to documents "already produced" is not adequate. If WAUSA elects to refer to business records as an option under Rule 33, it must refer to specific pages by Bates number.

The documents sought are relevant because the subject matter of the Florida attorney general action involves some of the same falsity and deception as alleged in the instant suit. Both suits entail falsity and deception via email advertisements, including promotions offering various "free" items such as IPods and computers. See Second Amended Complaint at Exhibit K-11, FL AG 211. Documents already produced by the Florida Attorney General have shed considerable light on key facts in this case, well beyond any documents or information provided by Defendants in discovery. The documents related to those same Florida Attorney General proceedings that have not yet been produced, are likewise expected to be highly informative on key facts.

**INTERROGATORY 2**. Identify all documents relating to the "smoking gun" email referenced in Paragraph 35 of the [complaint in the] lawsuit captioned, Steven R. Levine vs. Niutech, LLC, Case No. Case No. 05-008515-MB-AG (Palm Beach Circuit Court) (BSI FL AG 3210 of 3292)

Response to Interrogatory No.2

Objections:  [OB, NR, AC, WP, B, D, C]

WAUSA objects to this Interrogatory on the grounds that it is overbroad and calls for information not relevant and reasonably calculated to lead to the discovery of admissible evidence. WAUSA also objects to this Interrogatory on the grounds that it calls for information protected by the attorney-client privilege or the work product doctrine. WAUSA objects this Interrogatory on the grounds that it is unduly burdensome because it is duplicative and calls for the production of documents already provided to Plaintiff in prior discovery responses. Confidential pursuant to the Confidentiality Agreement.

Answer:
Subject to and without waiving these objections, and pursuant to Rule 33 of the Federal Rules of Civil Procedure, WAUSA already has identified the responsive documents related to this case, and refers Plaintiff, including, but not limited to, the documents produced as part of the production commenced on January 29, 2010, which are incorporated herein by reference. WAUSA has no responsive information to this Interrogatory beyond what it previously produced.

18

BSI'S EXCEPTION:  The response leaves BSI to guess which document(s) are offered as responsive, among the thousands produced.  (The phrase, "the documents produced as part of the production commenced on January 29, 2010" is too general, including thousands of documents.)  WAUSA should be required to specify the relatively small number of documents that pertain to the "smoking gun" issue.

**INTERROGATORY 3**. Identify all documents produced by you to the Defendant in the lawsuit captioned, Steven R. Levine vs. Niutech, LLC, Case No. Case No. 05-008515-MB-AG (Palm Beach Circuit Court).

Response to Interrogatory No.3

Objections [OB, NR, AC, WP, B, D, Y, WAUSA 0906]

Answer:

Subject to and without waiving these objections, and pursuant to Rule 33 of the Federal Rules of Civil Procedure, WAUSA already has identified the responsive documents related to this case, and refers Plaintiff, including, but not limited to the documents produced as part of the production commenced on January 29, 2010, and its previous answers to **Interrogatory 17** of the First Set of Interrogatories and **Request 27** of the First Request for Production of Documents, which are incorporated herein by reference. WAUSA has no responsive information to this Interrogatory beyond what it previously produced.  [Emphasis added.]

BSI's EXCEPTIONS:  WAUSA has failed to identify any particular documents in response to this interrogatory.  It does not appear that WAUSA has produced any responsive documents, although some of the Levine suit documents were produced by the Florida attorney general's office in response to BSI's Public Interest Act request. WAUSA's "answer" to Interrogatory 17 of set 1, referenced in the Response, reads: "Pursuant to Rule 33 of the Federal Rules of Civil Procedure, WAUSA is producing documents reflecting complaints in which a party called World Avenue USA, LLC is named," without specifying any particular responsive

documents.  There is no "Request 27," as the first set of document requests were numbered 1 –

26.   Thus, the response here is completely inadequate.

The Levine suit is relevant because it addresses some of the same falsity and deception

involved with the emails claimed here.  Mr. Levine served as house counsel for Niutech, the

precursor of WAUSA.  His suit against his former employer identified deceptive business

practices that pertain to the deception alleged in the instant suit.  The complaint in the Levine

suit (FL AG 377 – 98, not sealed) includes the following detailed allegations of fact:

> 5. At all times material hereto, NIUNIU was the principal owner of NIUTECH and served in various capacities as a director-manager and product developer.

> 6. On or about October 5, 2004, LEVINE began employment with NIUTECH as an Assistant General CounseL  LEVINE's immediate supervisor was NIUTECH's General Counsel, Homer Appleby ("Appleby"). . . .

> 9. At all times material hereto, NIUTECH was primarily engaged in the business of online internet incentive promotions and advertising. NIUTECH solicited business through two main types of promotions, internet pop-up or banner ads and mass e-mail solicitations.

> 10. Specifically, NIUTECH offered incentive based rewards such as free products or cash equivalents in exchange for the customer participating in and completing various surveys and promotional offers that appeared as pop-up or banner ads on internet websites.

> 11. When a consumer clicked on the ad, they would be taken to a NIUTECH landing page and would be directed to complete a series of steps prior to qualifying for the "free" gift. In order to qualify for a "free" gift, the consumer always had to purchase something or sign up for some type of service.

> 12. NIUTECH owned dozens of different websites, all with different domain names, to conceal its identity from the public. . . .

> 14. In order to conduct mass e-mail solicitations, NIUTECH contracted with and/or associated with thousands of "affiliate marketers" (hereinafter "Affiliates"). The Affiliates owned or had access to millions of e-mail addresses through comprehensive lists. The Affiliates sent e-mails in bulk to prospective NIUTECH customers on NIUTECH's behalf and at NIUTECH's direction. . . .

34. In mid-November, 2004, LEVINE became aware of a serious risk to NIUTECH involving potential fraud allegations. He also learned of allegations related to potential tax issues.

35. On November 16, 2004, LEVINE received an e-mail from NIUTECH's Director of Client Services . . .  regarding high value "third-page offers". In the e-mail, NIUNIU was advised that he was making the promotions too difficult to complete (and thus NIUTECH would not have to pay the reward) and he was "forcing people into a situation where [it was] impossible for them to succeed." . .

37. . . . LEVINE submitted a memorandum to the Committee on November 22, 2004 advising them of potentially serious risks that NIUTECH committed fraud, false advertising and deceptive/unfair trade practices.

38. The November 22, 2004 memorandum clearly articulated LEVINE's concerns that certain NIUTECH "high value" promotions could put the company at serious risk in that NIUTECH's practices were potentially in violation of applicable laws and regulations. They were also in contravention of the newly enacted Compliance Guidelines. . . .

39. The Committee did not respond to LEVINE's November 22, 2004 memo. To the best of LEVINE's knowledge, the Committee never met to discuss the matter. LEVINE's supervisor, Appleby, received a copy of the memorandum but also failed to respond to LEVINE. To the best of LEVINE's knowledge, NIUTECH's management disregarded his advice.

40. LEVINE had reason to believe that NIUNIU was not concerned with legitimizing NIUTECH and making it a compliant organization. Rather, it appeared to LEVINE that NIUNIU was solely concerned with maximizing his own personal profit to the detriment of NIUTECH while doing everything possible to shield himself from personal liability. . . .

42. Specifically, LEVINE observed that it was an unwritten policy of NIUTECH to fail to enforce their contracts with Partners. If a Partner breached a contract, LEVINE was forbidden from demanding compliance with the contract or filing an appropriate lawsuit and from contacting the offending Partners. Upon information and belief, LEVINE was precluded from taking the actions necessary to protect the interests of NIUTECH, by and through the direction of NIUNIU. NIUTECH's actions (at the apparent direction of NIUNIU) made it impossible for LEVINE to render an appropriate risk assessment . . .

47. . . .  it became clear to LEVINE that NIUNIU and/or Appleby had some personal interest therein which was contrary to the long-term well-being and survival of NIUTECH as a corporation.

48. In approximately late December, 2004, LEVINE was asked to render an oral opinion on an advertising campaign offering free trips to Las Vegas and Hawaii. The campaign was to begin immediately. LEVINE understood that any delay, given it was holiday time, would prove very costly to NIUTECH.

49. During a meeting with NIUNIU, LEVINE was informed that NIUTECH had no intention of actually providing an airline ticket or hotel accommodations to customers who ostensibly earned the "reward." Instead, participants would receive the cash equivalent of such a trip (commencing from the least expensive or most convenient connecting city). . . .

51. At the direction of NIUNIU, contrary to LEVINE's opinion or suggestion to seek an additional legal opinion, NIUTECH commenced the promotional program offering free travel packages.

52. To the best of LEVINE's knowledge, none of NIUTECH's customers ever received an airline ticket, hotel accommodation or even a travel voucher from NIUTECH. To the best of LEVINE's knowledge, nobody ever went to Hawaii or Las Vegas on a trip fully paid for by NIUTECH.

53. After this incident, it became clear to LEVINE that NIUNIU did not want him to provide honest opinions if such opinions were contrary to NIUNIU's personal financial interests and revenue generation. It also became clear that NIUNIU did not want NIUTECH to genuinely follow the Compliance Guidelines because it would be less profitable to do so.

54. As a result of the above . . . LEVINE's ability to remain as the company's Assistant General Counsel was in jeopardy. His continued employment appeared to be conditioned on his providing opinions only supportive of NIUNIU's practices, even if those opinions were contrary to law or carried excessive risk to NIUTECH. It appeared to LEVINE that NIUNIU was attempting to further insulate himself from personal risk by ostensibly obtaining a legal opinion consistent with his improper business practices. . . .

60. LEVINE believed and ultimately learned that NIUTECH, at the direction of NIUNIU and Appleby, was knowingly concealing and misrepresenting the on-going improper practices.

61. On January 26, 2005, LEVINE submitted an e-mail memorandum to the

Committee regarding significant risks caused by illegal e-mails being sent and with customers not receiving rewards due to them.

63. The Committee disregarded LEVINE's advice and to the best of LEVINE's knowledge, never met to discuss the illegal e-mails or the potential customer fraud/fulfillment issues before LEVINE's departure.

64. As a result of Niuniu's and NiuTECH's management's blatant avoidance of LEVINE and apparent business improprieties accomplished at the direction ofNiuniu (and the legal and ethical issues presented thereby), it was clear that Niuniu and NruTECH had effectively and constructively abrogated LEVINE's duties and responsibilities.

71. LEVINE advised Appleby that in his opinion, NIUTECH, at the direction of NIUNIU, was willfully violating their own Compliance Guidelines and that such behavior would prove harmful to NIUTECH.

72. Finally, LEVINE advised Appleby of concerns with his personal well-being and potential issues related to The Florida Bar and criminal exposure because of the activities ongoing at NIUTECH. . . .

76. During the first quarter, 2005, fraud and consumer complaints against NIUTECH with the Better Business Bureau ("BBB") skyrocketed. No one at NIUTECH advised LEVINE of the magnitude of the problem or requested his assistance to resolve the matters as had been customary in the past.

77. LEVINE did not learn of the true nature ofNIUTECH's BBB problems until he
viewed a March IS, 2005 article about the company that appeared in the San Francisco Chronicle. The article appeared as a result of a "Google" search routinely conducted by LEVINE to keep abreast of any issues developing with NIUTECH.

78. Also during the first quarter, 2005, the Florida Attorney General's Office began an investigation of NIUTECH due to excessive customer fraud complaints. . . .

117. During LEVINE's employment with NIUTECH, as more fully described above, LEVINE objected to and/or refused to participate in, an activity, policy, or practice ofNIUTECH which was in violation of a law, rule or regulation. Specifically, LEVINE pointed out, among other things, the following areas of noncompliance:

(a) deceptive and false advertising;

23

    (b) fraud;
    (c) CANSPAM;
    (d) e-mail suppression lists; and
    (e) trademark/copyright violations.

See Levine complaint, attached. BSI contends that the falsity and deception alleged in the

instant case is on all fours with the falsity and deception described in the Levine

complaint, and the request for identification of documents from that suit is therefore

reasonably calculated to lead to the discovery of admissible evidence.


    **INTERROGATORY 4**. Identify all documents, including email, sent to Defendant
Niuniu Ji by you referring or relating to the Emails at Issue.

    Response to Interrogatory No.4

    Objections  [WAUSA 09-22-06; B;  S; Y;  AC; WP]

    Answer:
Subject to and without waiving these objections, WAUSA does not engage in the transmission of
commercial e-mail and WAUSA does not contract with outside sponsors, contractors, sub-
contractors, advertisers, ad networks, affiliates, publishers, or vendors to send ecommercial [sic]
e-mail on behalf of WAUSA. WAUSA does not control, run, operate, or pay any third party to
send commercial e-mail on its behalf. The nature of WAUSA's business is to function as a
services company, which renders human resources, accounting, and technology services to
World Avenue Holdings, LLC, its parent company, and other subsidiaries of World Avenue
Holdings, LLC, (hereinafter, a "Sister Company" or "Sister Companies"). WAUSA does not
have any emails responsive to the request that pre-date December 22, 2008. Any information
documents post dated December 22, 2008 would be covered by the attorney client privilege and
work product doctrine.

    BSI's EXCEPTIONS:  The answer evades the question.  There is no explanation as to

why "WAUSA does not have any emails . . . that pre-date December 22, 2008," whether they

were destroyed, or never existed.  A full answer, including a privilege log, should be required.  If

privilege is claimed, the facts and circumstances relied upon are subject to discovery.

Communications between and among the defendants, including WAUSA and Niuniu Ji, are

within the scope of permissible discovery.  Communications with Mr. Ji prior to this litigation

relating to the ad campaigns that generated the Emails at Issue relate to the Emails at Issue.  The

scope of inquiry includes discussions relating to actions by or complaints about MailCompanyX

(headed by Sebastian Barale), Alan Ralsky or the AccelerateBiz gang The inclusion of counsel

in communications that are not directed to specific litigation should not insulate the information

from discovery.   Other documents obtained in discovery reveal that internal emails with Mr. Ji

were common.

INTERROGATORY 5. Identify all documents, including email, sent by Defendant
Niuniu Ji to you regarding the Emails at Issue.

Objections: [WAUSA 9-22-06; B; Y; AC; WP]

Answer 5:
Subject to and without waiving these objections, WAUSA avers this request is duplicative with
Interrogatory No.4 and WAUSA incorporates by reference its answer thereto.

BSI'S EXCEPTIONS: BSI adopts its exceptions to the response to Interrogatory 4,

above.  Further, Interrogatory 5 asks for identification of "all documents," sent by Mr. Ji to

"you."  The information is relevant because it is likely to bear on Mr. Ji's involvement in the

activities that pertain to the emails that give rise to this suit.


INTERROGATORY 6. Describe the purpose of the Compliance Guidelines, who
administers it currently, who administered it previously, and who is responsible for its oversight
both currently and since January 1, 2004?

Objections: [WAUSA 9-22-06; Vague; NC]

Answer 6:
Subject to and without waiving these objections, WAUSA does not engage in the transmission of
commercial e-mail and WAUSA does not contract with outside sponsors, contractors, sub-
contractors, advertisers, ad networks, affiliates, publishers, or vendors to send commercial e-mail
on behalf of WAUSA. WAUSA does not control, run, operate, or pay any third party to send
commercial e-mail on its behalf. The nature of WAUSA's business is to function as a services

company, which renders human resources, accounting, and technology services to other Sister Companies and its parent company. WAUSA avers that it does not administer "Compliance Guidelines" as part of its business.

BSI's EXCEPTIONS: WAUSA's denials are at odds with its behavior and contentions in the Florida attorney general action in which it came forward as the responding party on all issues and took ownership of the Compliance Guidelines.

The complaint in the Levine suit made specific allegations about Niutech's creation of, and subsequent refusal to use, Compliance Guidelines.  See Exhibit K-10, Levine Complaint, at paragraphs 16, 23, 38, 71 and 72.  The scope of BSI's interrogatory is not limited to emails transmitted directly by WAUSA, nor solely to conduct under WAUSA's current contracts "to send commercial e-mail **on behalf of WAUSA**."  [Emphasis added.]  However, BSI does not dispute that WAUSA "does not administer 'Compliance Guidelines'."


INTERROGATORY 7. Describe the basis of your contention in Paragraph 7 of the Respondent's Answer to Petition to Compel Compliance filed in Office of the Attorney General v. World Avenue U.S.A., LLC, successor by merger to Niutech, LLC, et al, Case No. 07-00927-MB-CA-09 (Palm Beach County Circuit Court) admitting that "Ji indirectly owns, manages, or controls World Avenue."

Objections: Vague; AC.

Answer 7:
Subject to and without waiving the foregoing objection, WAUSA avers: WAUSA is a wholly-owned subsidiary of World Avenue Holdings, LLC. World Avenue Holdings, LLC is a subsidiary of World Avenue Management Inc. Niuniu Ji is a member of World Avenue Management, LLC. WAUSA incorporates by reference its prior answers, including, but not limited, to Interrogatory 15 of Plaintiffs First set of Interrogatories and refers Plaintiff to the documents produced in response thereof pursuant to Ru1e 33 of the Federal Rules of Civil Procedure. WAUSA has no responsive information to this Interrogatory beyond what it previously produced.

BSI EXCEPTIONS:  None.

26

INTERROGATORY 8. Identify all the "Affiliate Marketers" or "Affiliates" mentioned in Paragraph 14 (BSI FL AG 3207 of 3292), Steven R. Levine vs. Niutech, LLC, Case No. Case No. 05-008515-MB-AG (Palm Beach Circuit Court).

Objections: [Vague; NC]

Answer 8:
Subject to and without waiving these objections, WAUSA does not engage in the transmission of commercial e-mail and WAUSA does not contract with outside sponsors, contractors, sub-contractors, advertisers, ad networks, affiliates, publishers, or vendors to send ecommercial e-mail on behalf of WAUSA. WAUSA does not control, run, operate, or pay any third party to send commercial e-mail on its behalf. The nature of WAUSA's business is to function as a services company, which renders human resources, accounting, and technology services to other Sister Companies and its parent company. WAUSA was not part of this litigation and does not have the information to identify those references by a Plaintiff in an unrelated litigation regarding "Affiliate Marketers" or "Affiliates." WAUSA further incorporates by reference its prior answers to Plaintiff's First set of Interrogatories.

BSI's EXCEPTIONS:  WAUSA is the successor of Niutech by merger, as briefed above, and therefore stands as the heir to Niutech's assets and liabilities, and its repository of documents and information.  Upon information and belief, employees and agents of WAUSA have been employees and agents of Niutech, allowing the transfer of information to the new entity.  The name change to TheUseful, LLC has no impact on the availability of the information.  WAUSA should be able to name the affiliates sought.  The information sought is relevant because it bears on  the identification of persons causing the emails that give rise to this suit.  The information sought will confirm that the falsity and deception in the emails giving rise to the suit are part of a pattern and practice of such conduct by WAUSA and its cohorts, not merely a one-time occurrence or an aberration.

**INTERROGATORY 9:** Identify all the persons or entities who own, rent, lease, use or allow others to use the domain names and/or other fictitious entities listed in Plaintiff's Exhibit 38 at docket entry 176.

Objections: [WAUSA 9-22-06; Burden; Duplicative]

Answer 9: Subject to and without waiving these objections, WAUSA does not engage in the transmission of commercial e-mail. WAUSA does not control, run, operate, or pay any third party to send commercial e-mail on its behalf. The nature of WAUSA's business is to function as a services company, which renders human resources, accounting, and technology services to other Sister Companies and its parent company. WAUSA incorporates by reference its prior answers, including, but not limited to, those to Interrogatory 11 of Plaintiffs First set of Interrogatories and refers Plaintiff to the documents produced in response thereof and to ESI Agreement pursuant to Rule 33 of the Federal Rules of Civil Procedure, and the documents produced as being responsive to Request No.4 of Plaintiffs First Request of Production of Documents. WAUSA has no responsive information to this Interrogatory beyond what it previously produced.

 BSI's EXCEPTIONS:  WAUSA's response is too broad, and does not identify the

"persons who own, rent, lease [or] use the domain names . . ."  etc. that BSI has listed.  Instead, it

sends BSI to go figure out this information by sifting through a multitude of documents that may

contain various names, some of which belong to the "persons who own" etc. and some not; and it

is impossible for BSI to sort out which of the many names might be responsive.  WASUA is in a

better position to know who uses its domain and trade names in the course of its own marketing

campaigns.  WAUSA was able to provide discovery on similar topics in the Florida attorney

general action.  A full answer, listing names and identifying information, should be required.

The information sought is relevant because ownership of domain names and trade names,

which appear in the emails claimed or in linked landing pages, is likely to lead to the

identification of the persons who caused the emails that give rise to this suit.  Exhibit 38 lists

domain names that are registered to non-existent companies or to a proxy, and trade names that

are not registered to any company in Florida.  Yet, as Exhibit 38 describes, WAUSA controls

and uses these domain names.  The information sought here will confirm that the falsity and

deception in the emails giving rise to the suit are part of a pattern and practice of such conduct

by WAUSA and its cohorts, not merely a one-time accident or aberration.

28

INTERROGATORY 10. Identify and describe all documents in your possession, custody or control that were created before September 22, 2006.

Objections: [WAUSA 9-22-06; B; Y; AC; WP]

Answer:  Subject to and without waiving these objections, WAUSA avers that absent more direction and the identification of relevant subject matter, WAUSA cannot answer this request.

BSI's EXCEPTIONS: WAUSA fails to state what additional "direction and . . .  relevant subject matter" would enable it to respond.  By inviting such additional guidance, WAUSA clearly implies it has responsive information.  WAUSAdoes not specify how to  interpret its response; nor does it specify what "direction and . . . identification of  relevant subject matter" is needed.

Regardless of WAUSA's request for guidance, it should be able to respond fully. WAUSA has claimed it cannot provide information that pre-dates 9/22/06; yet it stands as successor to Niutech, LLC by merger and should therefore have the information and documents from that entity as its predecessor.  Niutech was in the same line of business: lead generation via commercial email advertising.  At least the categories of documents generated in that business should be within WAUSA's knowledge.  A full response should be required.

INTERROGATORY 11. Identify all of your employees, officers, contractors or affiliates who have worked for more than one of your companies or sister companies concurrently or consecutively and, for each such person, identify the companies and dates of work.

Objections: [WAUSA 9-22-06; You]

Answer 11:
Subject to and without waiving these objections, and pursuant to Rule 33 of the Federal Rules of Civil Procedure, WAUSA already has identified its employees in its prior discovery responses and incorporates by reference its prior answers, including, but not limited to, **Interrogatories Nos. I and 15** of Plaintiffs First set of Interrogatories, and **Supplemental**

**Production** of World Avenue Holdings, LLC pursuant to Court Order, dated June 2, 2010. [Emphasis added.]

BSI's EXCEPTIONS:  The response fails to state the information sought, which is more than just a list of WAUSA's employees.  The references to prior responses do not provide the information sought. (See attached exhibits including **Interrogatories Nos. I and 15** of Plaintiffs First set of Interrogatories, and **Supplemental Production** of World Avenue Holdings, LLC, Exhibit K-17, pursuant to Court Order, dated June 2, 2010 at DE 257.)    It is not possible for BSI to determine efficiently which of the employees held positions at multiple World Avenue companies either simultaneously or consecutively, as requested; World Avenue is in a much better position to provide this information.  The information sought is relevant because World Avenue hides behind the theory that the various functions of its marketing schemes are fragmented, handled by various entities within the World Avenue family, each blind to the others.  However, BSI has shown based in part on Florida secretary of state records that the following ten (10) entities all share the same street address and suite at 1613 NW 136th Avenue, Suite 100, Sunrise, FL 33323:

1. World Avenue U.S.A., LLC
2. World Avenue Holdings, LLC
3. TheUseful, LLC
4. World Avenue Management, Inc.
5. World Avenue IP, LLC
6. World Avenue Services, Inc.
7. Jinius Corporation
8. IADExpress, LLC
9. Gift Reward Center, LLC
10. Magnacent, LLC

and the following five (5) entities all share the same street address (with no suite specified) at 5326 Yacht Haven Grande, Suite 201, St. Thomas, VI:

1. Warwick Interactive, LLC
2. Bristol Interactive, LLC (d/b/a Kitara Media)
3. Q Holdings, Inc.
4. Magdalen Holdings, Inc.
5. Intrepid Investments, LLC

BSI contends, and some documents have already shown, that certain employees hold positions at

multiple World Avenue companies, blurring the divisions, and proving that the various entities

have knowledge about each other, and suggesting that the companies assist or conspire together,

or are agents of each other.  Such information is clearly relevant to proof of "assistance" and

"conspiracy" under the statutes, in causing the emails sent to BSI and other Marylanders, and the

nature and extent of the roles played.

INTERROGATORY 12. Identify and describe all documents referring or relating to BSI, Hypertouch, their clients, their attorneys, family members, friends, or other associates of James Joseph Wagner or Paul Wagner, including communications.

Answer 12:
This request seems solely designed to seek copies of documents covered by attorney client privilege and work-product doctrine. This request cannot be answered without Plaintiff, Hypertouch, Paul Wagner and Joe Wagner providing the names of all their "clients, attorneys, family members, friends, or other associates." Subject to and without waiving these objections, WAUSA answers that it has no nonprivileged responsive information pre-dating this litigation. Additionally, pursuant to Federal Rules of Civil Procedure, WAUSA provided Plaintiff copies of all third party discovery requests and responses, and communications in this case and refers Plaintiff to those documents.

BSI's EXCEPTIONS:  Documents produced in discovery reveal that WAUSA has

conducted extensive research on the Wagners, gathering data on their residences, as well as

personal and professional information, even before the video inspections.  Much of the

information came from non-parties whom WAUSA refused to identify.  For example, on August

16, 2010, WAUSA issued a Subpoena Duces Tecum to Motorola, Inc. seeking documents

"relating to the services provided by Beyond Systems, Inc. to Motorola, Inc. under the attached

Consultant Agreement dated September 3, 1999." However, it is not clear how or from whom

WAUSA obtained the Motorola-BSI contract in the first place. We are not aware that WAUSA

gave BSI (1) notice of WAUSA's request to some non-party for the contract, nor (2) notice of

some non-party's response containing that contract, prior to attaching it to WAUSA's subpoena

of August 16, 2010. Both Motorola and BSI regarded the project, and communications relating

to it, as highly confidential, and BSI continues to regard this information as confidential.

BSI reserves its rights regarding relief it might seek for what WAUSA has called "secret

discovery," by WAUSA itself.   In order to identify any other secret inquiry by WAUSA, and in

order to have the option to conduct its own (properly noticed) inquiry, BSI asks that all such

information be disclosed in response to this interrogatory.

INTERROGATORY 13. For each email identified in Plaintiff's production with Bates
Numbers SPAM-W000001 through SPAM-W081981, identify and describe the legal name and
address of the sender of the email.

Objections:  [WAUSA 9-22-06; Burden]

Answer 13:
Subject to and without waiving these objections, WAUSA does not engage in the
transmission of commercial e-mail and WAUSA does not contract with outside sponsors,
contractors, sub-contractors, advertisers, ad networks, affiliates, publishers, or vendors to send
commercial e-mail on behalf of WAUSA. The nature of WAUSA's business is to function as a
services company, which renders human resources, accounting, and technology services to other
Sister Companies and World Avenue Holdings, LLC, its parent company. WAUSA further
avers that Hypertouch is the sender of the Emails at Issue to BSI. WAUSA incorporates by
reference its prior answers to Plaintiff's First set ofInterrogatories.

BSI's EXCEPTIONS:  "Sender," in common usage, means the person who initiated or

procured the initiation of the email, not an entity (such as Hypertouch, Inc.) that conducted

automated routing via a Mail Transfer Agent.  If WAUSA knows, or can determine, the likely

identity of the sender of any of the claimed emails, this information is obviously relevant to

32

BSI's allegations regarding violative emails and attribution to WAUSA, as well as to WAUSA's

affirmative defenses. A full, responsive answer should be required.

INTERROGATORY 14. Identify any person who created or produced any of the Emails at Issue.

Objections: [WAUSA 9-22-06;Burden; Duplication; Vague]

Answer 14:
Subject to and without waiving these objections, WAUSA does not engage in the transmission of commercial e-mail and WAUSA does not contract with outside sponsors, contractors, sub-contractors, advertisers, ad networks, affiliates, publishers, or vendors to send commercial e-mail on behalf of WAUSA. The nature of WAUSA's business is to function as a services company, which renders human resources, accounting, and technology services to Sister Companies and World Avenue Holdings, LLC, its parent company. WAUSA incorporates by reference its prior answers to Plaintiffs First set of Interrogatories.

BSI's EXCEPTIONS:  The answer does not identify the persons who created or produced

the emails.  Documents produced in the Florida attorney general proceedings demonstrate that

WAUSA has this type of information, and can name its employees.  Clearly, WAUSA knows

who does what within the promotional campaigns.  WAUSA is the correct entity to ask, as it was

able to respond to the State's discovery requests in the Florida attorney general action.

INTERROGATORY 15. Identify all employees who have been terminated or left your company since January 1, 2004.

Objections: WAUSA 9-22-06; You; Burden; Duplicative]

Answer 15:
Subject to and without waiving these objections, and pursuant to Rule 33 of the Federal Rules of Civil Procedure, WAUSA already has identified its employees in its prior answers and incorporates by reference the documents produced in response to Interrogatories Nos. 1 and 15 of Plaintiff's First set of Interrogatories.

BSI's EXCEPTIONS:  The answer is unresponsive. The prior answers do not address terminations, and in any event are not current.  These individuals are potential witnesses on several issues including the misconduct alleged by BSI.

INTERROGATORY 16. Identify and describe your contention that Plaintiff BSI consented to receive the Emails at Issue.

Objections:  [Vague; OB; You]

Answer 16:
Subject to and without waiving these objections, WAUSA states, inter alia, that BSI agreed to accept email from Hypertouch and Joe Wagner. Furthermore, BSI has disabled o otherwise purposefully engaged in various practices designed to assure that spam reaches its servers and client email accounts. BSI has taken affirmative steps to interfere with potential efforts to avoid spam being sent to its servers or purported "client accounts," such as not using spam filters. Additionally, pursuant to Rule 33 of the Federal Rules of Civil Procedure, WAUSA refers Plaintiff to the Initial Expert Report of Dr. Neal Krawetz (see Sections 5, 6 and 9) and the responsive documents produced, including, but not limited to Request 10 of the First Request for Documents, which are incorporated by reference.

BSI's EXCEPTIONS:   The answer is unresponsive.  It essentially describes the role of Hypertouch as a mail transfer agent routing all emails, not just those from WAUSA's marketers, to BSI servers; and criticizes the supposed manner of use or non-use of filters.   As Defendant is aware, the emails were addressed to , and were sent to, email addresses at domain names owned by BSI, and were accordingly received on BSI's servers.   The option to produce business records under rule 33 does not include expert reports.  The references to Dr. Krawetz' report, sections 5, 6 and 9, embrace some 58 pages of material.  The reference to unspecified "responsive documents" is vague, leaving BSI to guess which of the 7,000 pages of mostly irrelevant material produced by defendants, is intended.  The response to Request 10, referenced by WAUSA, is not in fact responsive to this Request.

The response does not address any purported "consent' from BSI to any marketer

engaged in a World Avenue campaign, for purposes of the emails claimed.   BSI regards this

response as an admission by WAUSA that it has no evidence of any such consent.


INTERROGATORY 17. For each email at issue, identify any "original content" that you allege that Hypertouch or BSI inserted into the email and describe all facts in support of your claims.

Objections:  [Vague; OB; You]

Answer:
Subject to and without waiving these objections, and pursuant to Rule 33 of the Federal Rules of Civil Procedure, WAUSA refers Plaintiff to the Initial Expert Report of Dr. Neal Krawetz which is incorporated by reference. See Sections 3 and 4.

BSI's EXCEPTIONS:  The answer is unresponsive.  The reference to documents is

intended for business records, not expert reports.  The Krawetz report is voluminous and vague

in many places; the sections cited include some 35 pages and it is unclear what particular

information is intended in response to this interrogatory.  WAUSA should be required to identify

specifically the "original content" it contends was inserted, and the factual basis relied upon, or

be prohibited from asserting this contention.


INTERROGATORY 18. For each email at issue, identify any "original content" you allege that Hypertouch or BSI inserted into the email and was not created by an automatic technical process in the course of Hypertouch's or BSI's transmission, routing, relaying, handling, or storing of the email.

Objections. [Vague; OB; You; WAUSA 9-22-06]

Answ.er:
Subject to and without waiving these objections, and pursuant to Rule 33 of the Federal Rules of Civil Procedure, WAUSA refers Plaintiff to the Initial Expert Report of Dr. Neal Krawetz which is incorporated by reference. See Sections 3 and 4.

BSI's EXCEPTIONS:  The answer is unresponsive.  The reference to documents is intended for business records, not expert reports.  The Krawetz report is voluminous, and the sections cited consist of some 35 pages.  It is unclear what particular information is intended in response to this interrogatory.  WAUSA should be required to identify specifically the "original content" it contends was inserted, or be prohibited from asserting this contention.

INTERROGATORY 19. Identify all documents related to the sender of any of the emails giving rise to this suit.

Objections. [WAUSA 9-22-06; B; Vague; AC; WP; D]

Answer:
Subject to and without waiving these objections, WAUSA avers Hypertouch and Joe Wagner sent the emails and any responsive documents are related to the defense of this litigation. Pursuant to Rule 33 of the Federal Rules of Civil Procedure, WAUSA incorporates by reference its response to including, but not limited to Interrogatory 12 and refers Plaintiff to the Initial Expert Report of Dr. Neal Krawetz, which are incorporated by reference. See Sections 5, 6 and 9.

BSI's EXCEPTIONS:   The answer is unresponsive, and sarcastic.  It is clear that the "sender" who initiated the emails was not Hypertouch or Joe Wagner.  While Hypertouch did route some of the emails to BSI, it is clear that such routing was done as an MTA, not as a "sender."   The "sender" is clearly intended to mean one who initiates, and not one who relays or routes messages downstream in the transmission path.  The reference to documents is intended for business records, not expert reports.  The Krawetz report is voluminous and vague, and the sections cited are themselves long (some 58 pages) and it is unclear what particular information is intended in response to this interrogatory.  WAUSA should be required to identify specifically the information requested, or else admit that the information in the claimed emails misidentifies the senders.

36

INTERROGATORY 20. Identify which emails at issue you contend were sent to a "spamtrap" email address, and provide all facts supporting your contention.


Objections. [V; OB; You]

Answer:
Subject to and without waiving these objections, WAUSA refers BSI to its production of the Emails at Issue. In addition, pursuant to Rule 33 of the Federal Rules of Civil Procedure, WAUSA refers Plaintiff to the Initial Expert Report of Dr. Neal Krawetz (see Sections 5, 6 and 9), and Paul Wagner, ESI Testimony, taken on September 17, 2009, which is incorporated by reference.

BSI's EXCEPTIONS:  The answer is unresponsive, and evasive.  The option to refer to

documents is intended for business records, not expert reports.  The Krawetz report is

voluminous and vague, and the sections cited (some 58 pages) are themselves long and it is

unclear what particular information is intended in response to this interrogatory.  WAUSA

should be required to identify specifically the information requested, or be prohibited from

making this assertion.


Interrogatory Number 21:
For each violation alleged by Plaintiff in every email giving rise to this suit that you contend does not violate the Maryland or Florida antispam statutes, describe all facts that support your contention.


Objections:
WAUSA objects to this Interrogatory on the grounds that Plaintiff failed to indentify [sic] "each violation ... in every email" and, thus, WAUSA cannot answer this request. WAUSA further objects to the vague and ambiguous nature of the term "emails giving rise to this suit".

Answer:
Subject to and without waiving these objections, WAUSA avers, inter alia, that BSI affirmatively consented to the receipt of the Emails at Issue by virtue of its agreement and or

relationship with Hypertouch and Joe Wagner and, as such, cannot claim that it is in receipt of same in violation of MD-CEMA and FCEMA. Additionally, the Emails at issue were not sent to Maryland from a computer in Florida, and as such, do not violate the Maryland and Florida antispam statutes. Further, pursuant to Rule 33 of the Federal Rules of Civil Procedure, WAUSA refers Plaintiff to the Initial Expert Report of Dr. Neal Krawetz (See Sections 5, 6 and 90), and WAUSA's Motion for Partial Summary Judgment, DE 266 and 267 and incorporates them by reference herein.

BSI's EXCEPTIONS:  None.  BSI regards the above "Answer" as a complete statement

of all of the responsive information that WAUSA intends to present at trial.

Interrogatory Number 22:
Identify all documents, including communications, referring or relating to advertising or creative content that has ever been used in From: lines, Subject: lines or message bodies (e.g., in HTML or plaintext formats) on behalf of YOU, including on behalf of any "Sister Company."

Objections. [You; OB; WAUSA 9-22-06; B]

Answer:
Subject to and without waiving these objections, WAUSA does not engage in the transmission of commercial e-mail and WAUSA does not contract with outside sponsors, contractors, sub-contractors, advertisers, ad networks, affiliates, publishers, or vendors to send commercial e-mail on behalf of WAUSA. The nature of WAUSA's business is to function as a services company, which renders human resources, accounting, and technology services to other Sister Companies and its parent company.WAUSA incorporates by reference its prior answers to Plaintiff's First set of Interrogatories.

BSI's EXCEPTIONS:   The Answer fails to identify specifically the documents that

contain "creative content," which is a key element of defendants' participation in and assistance

in the initiation of the emails.  WAUSA did provide some creatives, but they are grossly

incomplete as a group.  They are also illegible in many places, do not contain  full content for

each creative, and are not in native format as requested in the instructions and pursuant to the

ESI agreement. The reference to prior interrogatory answers in wholesale fashion is

unreasonably  vague.

For example, the body of a  MailCompanyX spam claimed by BSI and sent on 6/8/2005 containing "Test a SONY PSP and keep if you like it." in the Subject line appears to match WAUSA 000359.  (See Exhibit K-15.)    BSI has found that 5,871 emails giving rise to the suit were sent by MailCompanyX on 5/25/2005, 6/2/2005, 6/6/2005, 6/7/2005, 6/8/2005, 6/10/2005, 7/8/2005, 7/16/2005 or 7/17/2005 containing the words, "Test a SONY PSP and keep if you like it." in the Subject line.  However, the few remnants of creatives produced by WAUSA thus far, such as WAUSA 000359, are extremely grainy, low-quality renderings of HTML files and image files, apparently printed on paper and scanned back into low quality black-and-white images. They are not fully legible even in their rendered form; the underlying source code is not visible at all; and they are not digital and do not contain the original HTML and image files or formats. In addition, WAUSA produced none of the promotional language used in its commercial emails' Subject lines (such as "Subject: Test a SONY PSP and keep if you like it.") and From lines (such as "From: Customer Service").  All of this responsive information should be required.

Interrogatory Number 23:

For each email at issue, identify any email that you contend was a transactional message, was a relationship message, was sent to the recipient with the recipient's affirmative consent, was sent to the recipient with the recipient's implied consent, and who gave such consent to whom.

Objections. [WAUSA 9-22-06; OB; You; Senders]

Answer:

Subject to and without waiving these objections, WAUSA does not engage in the transmission of commercial e-mail and WAUSA does not contract with outside sponsors, contractors, sub-contractors, advertisers, ad networks, affiliates, publishers, or vendors to send ecommercial e-mail on behalf of WAUSA. The nature of WAUSA's business is to function as a services company, which renders human resources, accounting, and technology services to other Sister Companies and its parent company. All Emails at Issue were sent with the recipient's consent to the extent they are emails transmitted by Hypertouch to BSI. WAUSA refers BSI to its production of the Emails at Issue .. In addition, pursuant to Rule 33 of the Federal RuIes of

Civil Procedure, WAUSA refers Plaintiff to the Initial Expert Report of Dr. Neal Krawetz which is incorporated by reference. See Sections 5, 6 and 9.

BSI's EXCEPTIONS:  The answer is unresponsive, and evasive.  The option to refer to documents is intended for business records, not expert reports.  The Krawetz report is voluminous and vague, and the sections cited (some 58 pages) are themselves long and it is unclear what particular information is intended in response to this interrogatory.  WAUSA has demonstrated that it is in a position to provide the information sought, if such information exists, as the successor of Niutech (See comparison of Answer and Amended Answer, *supra*, Section 3 of BSI's responses to WAUSA's general objections)  and as the entity that later changed its name to TheUseful, LLC.  WAUSA has also produced documents pertaining to several of its alter-egos or "family" of companies, and is clearly in possession of information about them. WAUSA should be required to identify specifically the information requested, if any such information exists, or admit that BSI did not consent to receive the claimed emails.

Interrogatory Number 24:
State all facts and identify all documents supporting your contentions in the previous Interrogatory.

Objections. [OB; You; WAUSA 9-22-06; B; D]

Answer:
Subject to and without waiving these objections, WAUSA refers Plaintiffs to its prior answers to Plaintiffs First set of Interrogatories. Further, ail the emails were sent with recipient's consent to the extent they are emails transmitted by Hypertouch to BSI. Furthermore, pursuant to RuIe 33 of the Federal Rules of Civil Procedure, WAUSA cites to the deposition transcript of Paul Wagner ESI Deposition, taken on September 17, 2009 and refers Plaintiff to the Initial Expert Report of Dr. Neal Krawetz which is incorporated by reference. See Sections 5, 6 and 9.

BSI's EXCEPTIONS:   BSI regards the "Answer" as a complete statement of all

responsive information that WAUSA intends to produce at trial, and asks that WAUSA be

prohibited from presenting any additional information.

Interrogatory Number 25:

Identify all documents related to any publisher, affiliate, middleman, advertiser, sister
company, parent company, subsidiary or other email-related vendor you have terminated,
suspended, warned or given notice of a complaint.

Objections  [WAUSA 9-22-06; B; OB; You]

Answer:
Subject to and without waiving these objections, WAUSA does not engage in the
transmission of commercial e-mail and WAUSA has not contracted with any sponsor, contractor,
sub-contractor, advertiser, ad network, affiliate, publisher, and/or vendor relating to INTERNET
ADVERTISING. WAUSA does not control, run, operate, or pay any third party to send
commercial e-mail on its behalf. The nature of WAUSA's business is to function as a services
company, which renders human resources, accounting, and technology services to other Sister
Companies and its parent company. Accordingly, WAUSA does not have any information
responsive to this request. Additionally, pursuant to Rule 33 of the Federal Rules of Civil
Procedure, WAUSA incorporates by reference its prior answers, including, but not limited to,
Interrogatories 2,3,8,9, and 10 of the Plaintiffs First set of Interrogatories.

BSI's EXCEPTIONS:   The answer is unresponsive, and evasive.  The reference to other

interrogatory answers is unresponsive, as those answers do not contain the information requested

here. WAUSA has demonstrated that it is in a position to provide the information sought, as the

successor of Niutech, LLC and by its other statements in its Answer to the Amended Complaint.

(See comparison of Answer and Amended Answer, *supra*, Section 3 of BSI's responses to

WAUSA's general objections) and as the entity that later changed its name to TheUseful, LLC.

Niutech was clearly involved in the "lead generation" business at issue in this suit, and as its

successor by merger, WAUSA stands in a position to provide information held by Niutech.

WAUSA has also produced documents showing that the World Avenue companies purported to

41

rely on terms and conditions in their relationships with publishers, vendors and marketers, regardless of their names.  WAUSA should be required to identify specifically the information requested, if any such information of terminations or suspensions exists.  This information bears on the efforts made to curtail or prevent email abuse by marketers, which is relevant to Defendants' efforts to conduct their business without violating MCEMA or FL-CEMA, the state statutes at issue.   The nature and extent of such efforts bears on Defendants' assistance and conspiracy in perpetuating the campaigns of deception and abuse

Interrogatory Number 26:

Identify all documents, including communications, relating to suspected or actual deception, falsity or fraud in advertising or email.

Objections. [WAUSA 9-22-06; B; Vague;]

Answer:

Subject to and without waivmg these objections, WAUSA does not engage in the transmission of commercial e-mail and WAUSA has not contracted with any sponsor, contractor, sub-contractor, advertiser, ad network, affiliate, publisher, and/or vendor relating to INTERNET ADVERTISING. WAUSA does not control, run, operate, or pay any third party to send commercial e-mail on its behalf. The nature of WAUSA's business is to function as a services company, which renders human resources, accounting, and technology services to other Sister Companies and its parent company. Accordingly, WAUSA does not have any information responsive to this Interrogatory.

BSI's EXCEPTIONS:  The answer is unresponsive, and evasive.  WAUSA pretends not to know, and not to be in a position to know, the information sought.  WAUSA has demonstrated that it is in a position to provide the information sought, as the successor of Niutech, LLC and by its other statements in its Answer to the Amended Complaint. (See comparison of Answer and Amended Answer, *supra*, Section 3 of BSI's responses to WAUSA's general objections) and as the entity that later changed its name to TheUseful, LLC.  Niutech was clearly involved in the

"lead generation" business at issue in this suit, and as its successor by merger, WAUSA stands in

a position to provide information held by Niutech.  WAUSA should be required to identify

specifically the information requested, if any such information of terminations or suspensions

exists.  This information bears on the efforts made to curtail or prevent email abuse by

marketers, which is relevant to Defendants' efforts to conduct their business without violating

MCEMA or FL-CEMA, the state statutes at issue.  The nature and extent of such efforts bears on

Defendants' assistance and conspiracy in perpetuating the campaigns of deception and abuse.

Interrogatory Number 27:

Identify all documents related to hijacked mail servers or otherwise compromised computers
suspected or known to promote any of your business, and YOUR response thereto.

Objections. [You; Vague; OB; NC]

Answer:
Subject to and without waiving these objections, WAUSA does not engage in the
transmission of commercial e-mail and WAUSA has not contracted with any sponsor, contractor,
sub-contractor, advertiser, ad network, affiliate, publisher, and/or vendor relating to INTERNET
ADVERTISING. WAUSA does not control, run, operate, or pay any third party to send
commercial e-mail on its behalf. The nature of WAUSA's business is to function as a services
company, which renders human resources, accounting, and technology services to other Sister
Companies and its parent company. WAUSA avers that it does not have any information
responsive to this Interrogatory.

BSI's EXCEPTIONS:  None.  BSI reserves the right to disprove this "Answer."

Interrogatory Number 28:

Describe all occasions where "tactics to deliberately falsify email headers with the intent
to deceive the recipient and/or the ISP" [W AUSA-006685] have been used or suspected
by anyone of being used in internet advertising on your behalf, any response from you,
and all related documents.

Objections. [OB; You]

Answer:
Subject to and without waiving these objections, WAUSA does not engage in the

transmission of commercial e-mail and WAUSA has not contracted with any sponsor, contractor, sub-contractor, advertiser, ad network, affiliate, publisher, andlor vendor relating to INTERNET ADVERTISING. WAUSA does not control, run, operate, or pay any third party to send commercial e-mail on its behalf. The nature of WAUSA's business is to function as a services company, which renders human resources, accounting, and technology services to other Sister Companies and its parent company. WAUSA incorporates by reference its prior answers to Plaintiffs First set of Interrogatories. WAUSA avers that is has no information responsive to this request beyond the documents produced in response to previous discovery.

BSI's EXCEPTIONS: None.  BSI reserves the right to disprove this "Answer."

Interrogatory Number 29:
Describe all occasions where you sought to ascertain whether there has been an intent to deceive through the "tactics" referenced in the previous Interrogatory.

Objections.
WAUSA's incorporates by reference the Objections made to previous Interrogatory.

Answer:
WAUSA's incorporates by reference the Answer made to previous Interrogatory.

BSI's EXCEPTIONS:  None.  BSI reserves the right to disprove this "Answer."

Interrogatory Number 30:

How have deceptive tactics in email advertising been "damaging" to you [per WAUSA-006685] or caused "confusion" among consumers [per WAUSA-006687j?

Objections. [You; WAUSA 9-22-06; B]

BSI's EXCEPTIONS: None.  BSI regards the "Answer" as WAUSA's representation of all of its knowledge about the information sought.

Interrogatory Number 31:
Describe your "legitimate business practices" [W AUSA-006685] and how you determined that they were "legitimate."

Objections.  [You; WAUSA 9-22-06; B; NC;]

Answer:
The nature of WAUSA's business is to function as a services company, which renders human resources, accounting, and technology services to other Sister Companies and its parent company. WAUSA complies with all applicable state and federal laws, including and not limited to those regarding payment of its registration fees, work place safety, the maintenance of

44

appropriate work environment, equal employment opportunities, and the withholding of taxes. WAUSA incorporates by reference its prior answers to Plaintiffs First set of Interrogatories.

BSI's EXCEPTIONS:  None.  BSI regards the "Answer" as WAUSA's representation of all of its knowledge about the information sought.

Interrogatory Number 32:
Identify all signed versions of the contracts at WAUSA-006509 through WAUSA-006675.

Objections. [B; D]

Answer:
Pursuant to Rule 33 of the Federal Rules of Civil Procedure, WAUSA produced the signed copy of the agreement it has, labeled WAUSA-006674-Confidential. The remaining documents are standard form commercial agreements that have been used, or offered for, negotiation from time to time by Sister Companies.

BSI's EXCEPTIONS:   WAUSA  produced the blank versions of the documents and is

aware of the information sought.  It should be required to identify all responsive documents

(signed versions of the contracts) as requested, as this information will held identify the persons

responsible and the roles played, in connection with the misconduct alleged.

Interrogatory Number 33:
Identify all affiliate networks with whom you have had a contract and all records of payments to or from them since January 1,2004.

Objections [WAUSA 9-22-06; B; You; Senders]

Answer:
    Subject to and without waiving these objections, WAUSA does not engage in the transmission of commercial e-mail and WAUSA has not contracted with any sponsor, contractor, sub-contractor, advertiser, ad network, affiliate, publisher, and/or vendor relating to INTERNET ADVERTISING. WAUSA does not control, run, operate, or pay any third party to send commercial e-mail on its behalf. The nature of WAUSA's business is to function as a services company, which renders human resources, accounting, and technology services to other Sister Companies and its parent company. WAUSA avers that is has no inforrnation responsive to this Interrogatory. Accordingly, WAUSA incorporates by reference its prior answers, including, but not limited, to Interrogatory No.4 of Plaintiffs First set of Interrogatories and Request No.4 of the First Request for Production of documents.

BSI's EXCEPTIONS:  The response to Interrogatory 4 recites boilerplate objections and then argues that neither WAUSA nor its "sister companies" sent any of the emails at issue" as re-defined by WAUSA.  This information is not responsive.  World Avenue has clearly maintained a marketing campaign based on commercial email, and has paid commissions to its marketers. WAUSA should be required to provide a complete and responsive answer under oath.

Interrogatory Number 34:

Identify all persons (including, but not limited to, any sponsor, contractor, sub-contractor, advertiser, ad network, affiliate, publisher, vendor and/or you) who participated or benefited in any fashion from the emails giving rise to this suit identified since January 29, 2010, which shall include the creation, sending, marketing, advertising and customer service of those same e-mails.

Objections  [WAUSA 9-22-06; B; You; Senders; Vague]

Answer:
Subject to and without waiving these objections, WAUSA does not engage in the transmission of commercial e-mail and WAUSA has not contracted with any sponsor, contractor, sub-contractor, advertiser, ad network, affiliate, publisher, and/or vendor relating to INTERNET ADVERTISING. WAUSA does not control, run, operate, or pay any third party to send commercial e-mail on its behalf. The nature of WAUSA's business is to function as a services company, which renders human resources, accounting, and technology services to other Sister Companies and its parent company. WAUSA avers that is has no information responsive to this request beyond what it has previously produced. Accordingly, WAUSA incorporates by reference its prior answers, including, but not limited to, Interrogatory No: 2 of Plaintiffs First set of Interrogatories.

BSI's EXCEPTIONS:  The answer is unresponsive, and evasive.  The reference to another interrogatory answer is unresponsive, as it does not contain the information requested here. WAUSA has demonstrated that it is in a position to provide the information sought, as the successor of Niutech, LLC and by its other statements in its Answer to the Amended Complaint. (See comparison of Answer and Amended Answer, *supra*, Section 3 of BSI's responses to WAUSA's general objections) and as the entity that later changed its name to TheUseful, LLC.

Niutech was clearly involved in the "lead generation" business at issue in this suit, built on

email-based marketing campaigns, and as its successor by merger, WAUSA stands in a position

to provide information held by Niutech.  In addition, WAUSA's personnel work in close contact

with those of the other World Avenue companies, and WAUSA purportedly handles a variety of

information and provides services for those companies.  WAUSA has possession or control over

the information sought, which goes to the heart of the determination of the persons who

conspired or assisted in the transmission of the emails that give rise to this suit.

Interrogatory Number 35:
Identify all persons (including, but not limited to, sponsors, contractors, sub-contractors,
advertisers, ad networks, affiliates, publishers, and/or vendors) with whom you have
entered into a contract or agreement relating to the emails giving 'rise to this suit
identified since January 29, 2010, whether or not the Internet is expressly mentioned in
the contract or agreement, and state the nature of the services to be provided under each
agreement.

Objections [WAUSA 9-22-06; B; You; Senders; Vague]

Answer:
Subject to and without waiving these objections, WAUSA does not engage in the transmission of
commercial e-mail and WAUSA has not contracted with any sponsor, contractor, sub-contractor,
advertiser, ad network, affiliate, publisher, and/or vendor relating to INTERNET
ADVERTISING. WAUSA does not control, run, operate, or pay any third party to send
commercial e-mail on its behalf. The nature of WAUSA's business is to function as a services
company, which renders human resources, accounting, and technology services to other Sister
Companies and its parent company: WAUSA avers that is has no information responsive to this
request beyond what it has previously produced. Accordingly, WAUSA incorporates by
reference its prior answers to including, but not limited to Interrogatory No: 3 of Plaintiffs First
set of Interrogatories.

BSI's EXCEPTIONS:  The Answer to Interrogatory No. 3 of Set 1 does not satisfy this

interrogatory.  The subject is clearly at the heart of the facts in this case: with whom did World

Avenue (including the entire family of companies) enter contracts relating to the emails that give

rise to this suit.  WAUSA has possession or control of the information and should be ordered to

provide a complete answer.


Interrogatory Number 36:
Describe any and all compensation that you paid, agreed to pay, received, or are expected
to receive, relating to the emails giving rise to this suit identified since January 29, 2010.
Your response shall include information sufficient to identify the payor and/or payee; the
date such payment was made or received or expected to be made or received; the amount
of compensation; and identifying information for the Internet Advertising Campaign,
related to each email giving rise to this suit identified since January 29, 2010.
Confidential pursuant to the Confidentiality Agreement 45

Objections [WAUSA 9-22-06;B; V;  NC; D]

Answer:
Subject to and without waiving these objections, WAUSA does not engage in the
transmission of commercial e-mail and WAUSA does not contract with outside sponsors,
contractors, sub-contractors, advertisers, ad networks, affiliates, publishers, or vendors to send e-
commercial e-mail on behalf of WAUSA. The nature of WAUSA's business is to function as a
services company, which renders human resources, accounting, and technology services to other
Sister Companies and its parent company. WAUSA avers that is has no information responsive
to this request beyond what it has previously produced. Accordingly, WAUSA incorporates by
reference its prior answers, including, but not limited to, Interrogatory No: 4 of Plaintiffs First
set of Interrogatories.

BSI's EXCEPTIONS:  The Answer to Interrogatory No. 4 of Set 1 does not satisfy this

interrogatory.  The subject is clearly at the heart of the facts in this case: with whom did World

Avenue (including the entire family of companies) enter contracts relating to the emails that give

rise to this suit?  WAUSA has possession or control of the information as demonstrated above,

and should be ordered to provide a complete answer.

Interrogatory Number 37:
Identify and describe for each email giving rise to this suit identified since January 29,
2010 in the Amended Complaint:
  (a) Who provided the text and/or graphics for each e-mail or web page received?
  (b) Who approved the final content of the e-mail and/or web page received?
  ( c) Who made the final decision to send each e-mail and/or web page received?
  (d) Who initiated and/or assisted in the transmission of each e-mail or web page

48

received?
(e) Who received or would have received compensation as a result of any sales procured by each e-mail or web page received?
Response to Interrogatory No. 37:

Objections [You; WAUSA 9-22-06; V; B]

Answer:
Subject to and without waiving these objections, WAUSA does not engage in the transmission of commercial e-mail and WAUSA does not contract with outside sponsors, contractors, sub-contractors, advertisers, ad networks, affiliates, publishers, or vendors to send commercial e-mail on behalf of WAUSA. The nature of WAUSA's business is to function as a services company, which renders human resources, accounting, and technology services to other Sister Companies and its parent company. WAUSA avers that is has no information responsive to this Interrogatory. WAUSA incorporates by reference its prior answers, including, but not limited to, Interrogatory No: 14 of Plaintiffs First set of Interrogatories.

BSI's EXCEPTIONS:  The Answer to Interrogatory No. 14 of Set 1 does not satisfy this

interrogatory.  The subject is clearly at the heart of the facts in this case:  who conducted the

essential tasks, and who was paid, for the emails claimed?  WAUSA has possession or control of

the information as demonstrated above, and should be ordered to provide a complete answer.

Interrogatory Number 38:
Identify and describe any lawsuit or civil enforcement action brought by any governmental entity, either federal, state, or local, against you.

Objections:
WAUSA objects to the overbroad definition of the term "YOU" insofar as it is overbroad. Accordingly, WAUSA construes this Interrogatory to refer to World Avenue USA, LLC, the named Defendant in this lawsuit formed on September 22, 2006, its officers, directors, employees, agents, representatives and attorneys. See DE 257 at p. 2.

Answer:
Subject to and without waiving these objections, and pursuant to Rule 33 of the Federal Rules of Civil Procedure, WAUSA already has identified the responsive documents reflecting complaints in which a party called World A venue USA, LLC is named and refers Plaintiff to prior answers, including, but not limited to, Interrogatory 17 and Request 27 of Plaintiffs First set of Interrogatories and First Request for Documents.

BSI's EXCEPTIONS:  WAUSA has demonstrated that it is in a position to provide the

information sought, as the successor of Niutech, LLC and by its other statements in its Answer to

the Amended Complaint. (See comparison of Answer and Amended Answer, *supra*, Section 3 of

BSI's responses to WAUSA's general objections) and as the entity that later changed its name to

TheUseful, LLC.  Niutech was clearly involved in the "lead generation" business at issue in this

suit, built on email-based marketing campaigns, and as its successor by merger, WAUSA stands

in a position to provide information held by Niutech.  In addition, WAUSA's personnel work in

close contact with those of the other World Avenue companies, and WAUSA purportedly

handles a variety of information and provides services for those companies.  WAUSA has

possession or control of information on other suits against the World Avenue companies, and

should be required to provide it.


Interrogatory Number 39:
Identify and describe any lawsuit or consumer protection action brought any person
against you for false or misleading commercial email or business practices using
electronic mail.

Objections:
WAUSA objects to this Interrogatory on the grounds that the term "YOU" is overly
broad, unduly burdensome and oppressive. For purposes of responding to these Interrogatories,
WAUSA understands the terms "YOU" and "YOUR" to mean Defendant World Avenue USA,
LLC, the named Defendant in this case formed on September 22, 2006, its officers, directors,
employees, agents, representatives and attorneys. See DE 257 at p. 2. WAUSA objects this
Interrogatory on the grounds that it is unduly burdensome because it is duplicative and calls for
the production of documents already provided to Plaintiff in prior
discovery responses.

Answer:
Subject to and without waiving these objections, and pursuant to Rule 33 of the Federal
Rules of Civil Procedure, WAUSA already has identified the responsive documents reflecting
lawsuits in which a party called World Avenue USA, LLC is named and refers Plaintiff to, but
not limited, to answers to Interrogatory 17 and Request 27 of Plaintiffs First set of
Interrogatories and First Request for Documents.

BSI's EXCEPTIONS:  WAUSA should respond as to all suits against all entities within

the meaning of "you" in the definitions section of the interrogatories, which includes the entire

World Avenue "family."  BSI asks for an update as to this and all responses.


Interrogatory Number 40:
If you or any portion of your company is located overseas or in a United States Territory
or Foreign Territory or country, identify and describe those companies and identify its
purpose and any relation, if any, to you.

Objections:
WAUSA objects to the overbroad definition of the term "YOU" and "YOUR" insofar as
it is overbroad. Accordingly, WAUSA construes this Interrogatory to refer to World Avenue
USA, LLC, the named Defendant in this lawsuit formed on September 22, 2006, its officers,
directors, employees, agents, representatives and attorneys. See DE 257 at p. 2. WAUSA objects
this Interrogatory on the grounds that it is unduly burdensome because it is duplicative and calls
for the production of documents already provided to Plaintiff in prior discovery responses.

Answer:
Subject to and without waiving the foregoing objections, WAUSA responds as follows:
WAUSA is a company formed under the laws of and registered in the State of Delaware.
WAUSA was formed on September 22, 2006. WAUSA's office is located at 1613 NW 136th
Avenue, Suite 100, Sunrise, Florida 33323. WAUSA is a wholly-owned subsidiary of World
Avenue Holdings, LLC. WAUSA incorporates by reference its prior answers, including, but not
limited, to Interrogatory No. 15 of Plaintiffs First set of Interrogatories.

BSI's EXCEPTIONS:  The response ignores the other entities within the definition of

"you," which includes the World Avenue family.  At least some of the World Avenue companies

are known to conduct some of their functions in the U.S. Virgin Islands, although the division of

roles among the entities is unclear.  Identification of the overseas entities is a legitimate party of

BSI's inquiries to ascertain the locations and functions of the World Avenue entities that may

have assisted and/or conspired in the conduct that gives rise to the claims asserted.  WAUSA

should be directed to respond in full.

Plaintiff requests an order compelling Defendant World Avenue USA, LLC to provide complete and responsive answers to the interrogatories, under oath, and further seeks an order imposing costs and sanctions on Defendant for unreasonably withholding information and failing to meet its discovery obligations in providing full responses in the first place.


_____/s/_____
Stephen H. Ring
STEPHEN H. RING, P.C.
506 Main Street, Suite 215
Gaithersburg, Maryland 20878
USDC, MD: #00405
Telephone: 301-563-9249
Facsimile: 301-563-9639


_____/s/_____                     __September 18, 2010__
Michael S. Rothman                                                  Date
401 E. Jefferson Street Suite 201
Rockville, MD 20850
Telephone: (301) 251-9660 Fax: (301) 251-9610

*Attorneys for Plaintiff*


## Exhibits

K-1 Declaration of Stephen H. Ring, authenticity of documents from secretaries of state

K-2   Niutech documents. (BSI SOS 106, 107 of 117; 2003 to 2006 annual reports;  DE 202-7, pp. 1-11 FL SOS filings, merger;  WA003718-20, TheUseful.com as fictitious name of Niutech, LLC.)

K-3  WAUSA documents from FL Secretary of State (Including at 4, September 21, 2006 Application by WAUSA as a foreign entity (Delaware) to conduct business in Florida, signed Defendant Niuniu Ji, also at BSI SOS 88).

K-4  TheUseful, LLC documents from FL Secretary of State (Including, at 3, September 21, 2006 Amendment of foreign application, changing the name of  WAUSA to TheUseful, LLC. Also BSI SOS 91.)

K-5  Websites for TheUseful.com, 2002 - 2008

K-6  Florida Statutes, Corporations, Sec 607.1101 and -.1106, mergers

K-7  Report of Paul A. Wagner, May 3, 2010 at DE 327-12 at pp. 3 - 6.

K-8 August, 2008, WAUSA petition to seal; WAUSA names itself,  "World Avenue USA, LLC, successor by merger to Niutech, LLC." Documents FL AG 2179-87.

K-9 (at p. 14)  Order of  September 26, 2008 in FL Attorney General action by WAUSA, re documents "Niutech 00014 - 42, 0044-10571, 10744-15745, 0016209-220, 0016510-16642 and WA001369-3651, WA003659 – 4025"  (FL AG 2174.); with WAUSA's petition.

K-10 (at p. 16) Levine suit complaint (FL AG 377-98; FL AG 3207)

K-11 (at p. 14) FL Attorney General Second Amended Complaint at FL AG 211-13, excerpts

K-12  Deposition of Schlotter, excerpts (pp. 66 et seq., 166 et seq.)  CONFIDENTIAL PER WAUSA DESIGNATION.

K-13 Texas attorney general documents referring to "Niu Tech, LLC" and "World Avenue" (Documents TX AG 1-9, TX AG 28-33)

K-14  WAUSA check for $1,000,000 in Florida AG action; Document FL AG 0046

K-15 Creative, "Click here to claim your SONY PSP." WAUSA 000359.

K-16 Response to Request 10 of the First Request for Documents.  (referenced by WAUSA in its response to Interrogatory 17.)  CONFIDENTIAL BY WAUSA DESIGNATION

K-17  Supplemental Production of World Avenue Holdings, LLC pursuant to Court Order, dated June 2, 2010, from defendants.  WAH 617-19.  CONFIDENTIAL BY WAUSA DESIGNATION