**IN THE U.S. DISTRICT COURT FOR MARYLAND,
SOUTHERN DIVISION**

BEYOND SYSTEMS, INC.     )
                                 )
      Plaintiff          )
v.                            )        Case No. PJM 08 cv 0921
                                 )
WORLD AVENUE USA, LLC, et al. )
      Defendants     )
_____ )

**DEFENDANT WORLD AVENUE USA, LLC'S OPPOSITION TO
PLAINTIFF'S MOTION FOR ORDER TO COMPEL DEFENDANT WAUSA TO
PROVIDE COMPLETE ANSWERS TO PLAINTIFF'S SECOND SET OF
INTERROGATORIES**

Defendant World Avenue USA, LLC ("WAUSA") hereby submits its Opposition to

Plaintiff's Beyond Systems, Inc.'s ("BSI") Motion  for Order to Compel Defendant WAUSA

to Provide Complete Answers to Second Set of Interrogatories ("Motion to Compel"), and

states:

     **I.**      **Introduction.**

BSI's Motion to Compel further responses to its Second Set of Interrogatories is an

attempt to get an impermissible **sixth** "bite at the apple" on several Court Orders that have

carefully circumscribed the scope of discovery in this case.  BSI's transgressions fall into

four categories.  First, BSI takes another shot at having the Court revisit its previously-

established definition of the word "You," and require WAUSA to respond to all entities in

existence that may have any conceivable relationship with it.  Second, BSI takes a **fifth** bite

at the apple on the series of four Court Orders that confine it to discovery of facts concerning

the 41 domain names at issue.  Third, BSI takes another shot at trying to require responses to

discovery regarding the alleged violations of Florida law and Maryland law, when it elected

to provide that promised information by deposition, which has not yet occurred.  Fourth, BSI

tries to "get blood from a stone" and demand additional information where WAUSA has stated it has provided a complete answer.

In the process, BSI has filed its Motion and Memorandum of Law full of rhetoric that evidence has been withheld, but which is short on proof that documents or information exist that is being withheld. Because the evidence is missing, WAUSA has no obligation to provide further information. Notwithstanding, WAUSA will be providing supplemental answers to certain of the Interrogatories.

## II.    BSI Misstates The Facts.

### A.    BSI Incorrectly Describes The Corporate History Of The Defendant, World Avenue USA, LLC.

BSI incorrectly describes the corporate history of Defendant World Avenue USA, LLC, a Delaware limited liability company, all of which is available in the public records of the States of Florida and Delaware.

NiuTech was an unincorporated business that came into existence on January 1, 2001 in the State of North Carolina. *See* Exhibit 1, p. 3 (Certificate of Conversion of NiuTech, LLC). On December 24, 2002 at 12:34 p.m., a Certificate of Conversion was filed with the State of Florida Division of Corporations to convert NiuTech from an unincorporated business in North Carolina to a Florida limited liability company called NiuTech, LLC. *Id.* On that date, NiuTech, LLC filed its Articles of Organization with the State of Florida Division of Corporations. *Id.* The identifier at the top of the filing was L02000034730. *Id.*

On June 26, 2006 at 2:14 p.m., a company called World Avenue USA, LLC was formed under the laws of the State of Delaware as a limited liability company and given Secretary of State File Number **4181161**. *See* Composite Exhibit 2 (Certificate of Good Standing for TheUseful, LLC and Certificate of Formation filed June 26, 2006). This entity

2

is *not* the Defendant in this case.   A Delaware corporation's file number is a unique identifier, similar to a "VIN" number for an automobile.   It is the first number on the bottom left corner of the attached Certificates of Good Standing (*id.*, p. 1) and the top right corner of the Certificate of Formation (*id.*, p. 2).   When a Delaware corporation changes it name, it retains the same file number.

On June 29, 2006 at 9:13 a.m., a Certificate of Merger was filed with the State of Delaware that merged NiuTech, LLC, a Florida limited liability company, into World Avenue USA, LLC, a Delaware limited liability company bearing File Number 4181161, as the surviving company and identified with File Number **4181161**.   *See* Composite Exhibit 2 and Exhibit 3 (Certificate of Merger filed June 29, 2006).   Thus, NiuTech, LLC, the Florida limited liability company, was merged into World Avenue USA, LLC, the Delaware limited liability company bearing File Number 4181161.   *Id.*   On June 29, 2006 at 8:53 a.m., the Articles of Merger were filed with the State of Florida identifying NiuTech, LLC, bearing Florida document #L02000034730 as being merged into World Avenue USA, LLC, Delaware File # **4181161**.   *See* Exhibit 4.

Following this transaction, the corporate status of NiuTech, LLC was shown in the records of the State of Florida Division of Corporations as "inactive" because it had "merged."   *See* Exhibit 5, p. 1.

On August 9, 2006 at 9:16 a.m., World Avenue USA, LLC (Delaware File Number **4181161**) filed an Application by Foreign Limited Liability Company For Authorization to Transact Business in Florida.   *See* Exhibit 6.

On September 19, 2006 at 2:13 p.m., World Avenue USA, LLC -- the Delaware limited liability company registered with the file number **4181161** -- changed its name to

3

TheUseful, LLC in the records of the Delaware Department of Corporations.  *See* Exhibit 7

(Certificate of Amendment of Certificate of Formation).   The Delaware Department of

Corporations document reflecting the prior change of name in Delaware was filed with the

State of Florida Division of Corporations on September 21, 2006 at 10:20 a.m.  *See* Exhibit

8.

 The named Defendant in this case, World Avenue USA, LLC, is a Delaware limited

liability company formed on September 21,[1] 2006 at 11:51 a.m. and given Secretary of State

file number **4223730** ("WAUSA").   *See* Composite Exhibit 9 (Delaware Certificate of

Formation and Delaware Certificate of Good Standing for World Avenue USA, LLC).   At the

time the Defendant was formed, there was no entity in Delaware or Florida called World

Avenue USA, LLC.   It was the only World Avenue USA, LLC as of September 21, 2006

because the Delaware records had been updated on September 19, 2006.   On September 25,

2006 at 9:04 a.m., World Avenue USA, LLC filed an Application by Foreign Limited

Liability Company For Authorization To Transact Business in Florida.  *See* Exhibit 10.

 On April 11, 2008, BSI filed this case naming World Avenue USA, LLC, at which

time the only entity named World Avenue USA, LLC was the entity bearing File Number

**4223730** and formed on September 21, 2006.   All of the foregoing transactions are contained

in the public record.[2]

---

[1] WAUSA has one Certification from the State of Delaware suggesting a formation date of September 22nd (*see* Exhibit 10, p. 7) and one identifying a precise time of September 21, 2006 at 11:51 a.m. (*see* Composite Exhibit 9, pp. 1-2).  For the avoidance of doubt, WAUSA refers to the more precise record of formation.

[2] BSI makes much ado about an averment in WAUSA's Answer about it being a successor to NiuTech.  For the avoidance of any doubt, these facts are now explained in detail above. WAUSA intends to file an Amended Answer to reflect these facts.  In fact, by Order dated September 10, 2009 at DE 105, the Court granted permission for WAUSA to file an Amended Answer, but WAUSA did not file a separate Answer, and is still entitled to do so now.  In the

4

### B.   WAUSA Has Accurately Responded To Discovery That It Provides No Services That Are At Issue In This Case.

WAUSA has previously provided to BSI sworn Interrogatory Answers averring that:

- "WAUSA and no Sister Company or parent company to WAUSA transmitted the E-Mails At Issue;"

- "WAUSA did not, and based on this investigation, and to the best of WAUSA's knowledge, no other Sister Company of WAUSA received or paid any compensation as a result of any of the E-Mails At Issue;"

- "WAUSA does not engage in the transmission of commercial e-mail;"

- "WAUSA does not contract with outside sponsors, contractors, sub-contractors, advertisers, ad networks, affiliates, publishers, or vendor[s] to send e-commercial e-mail on behalf of WAUSA";

- "WAUSA did not enter into any contracts or agreements with any Person relating to the E-Mails At Issue;"

- "WAUSA did not pay, agree to pay, receive, or expect to receive any funds relating to the E-Mails At Issue;"

- "WAUSA does not control, run, operate, or pay any third party to send commercial e-mail on its behalf;"

- "WAUSA has not owned, operated, controlled, or registered any trade names or fictitious names…;"

- "WAUSA does not offer products via internet advertising or commercial e-mail."

*See* WAUSA's Answers to BSI's First Set of Interrogatories, pp. 16, 19, 21, 22, 24, 25, 27, 29, 38, 39, 40, 41, 43, 45, 46, 49.  Despite this sworn proof that WAUSA was not involved with the e-mails that are the subject of this case (the "E-Mails At Issue"), BSI has served an unsworn and uncorroborated series of assertions, styled as a Motion, claiming that more responsive information *must* exist because WAUSA *must* be involved with the E-Mails At Issue.

interest of judicial economy, WAUSA may do so in the event that the Court grants leave to BSI to amend its Amended Complaint at the November 29th hearing.

*FTL 107,888,234v1 10-11-10*

Absent from BSI's Motion is any reference to any of the responsive documents produced or information, albeit unpalatable and inconvenient to BSI, provided in response to the Interrogatories.

The law is clear.  When a party denies that it has responsive information to a discovery request, the requesting party has an evidentiary burden to show that indeed responsive information does exist.  *Sonnino v. University of Kansas Hospital Authority*, 220 F.R.D. 633, 640 (D. Kan. 2004); *Siggers v. Campbell*, Case No. 07-12495, 2009 WL 3125471, at *1, *6 (E.D. Mich. Sept. 25, 2009); *Scquare Int'l, Ltd. v. BBDO Atlanta, Inc.*, Case No. 1:04-CV-0641-JEC, 2008 WL 228032, at *1, *4 (N.D. Ga. 2008) (unpublished).  BSI's hollow rhetoric does not satisfy its burden.[3]

### III.   BSI's Instructions and Definitions Are Improper.

#### A.   WAUSA's Objection to Instruction 7 Should Be Sustained Because WAUSA Has No Obligation To Update Interrogatory Answers Each Time BSI Produces An E-Mail.

WAUSA objected to Instruction 7 on the ground that, in the future, it obligated WAUSA to supply a new Interrogatory Answer every time BSI produced new documents.  This is not a case of supplementing an existing Answer.  Instead, this is a question of answering an entirely new question about an entirely new e-mail each time BSI deigns to produce one.  BSI cites neither cases or other authorities interpreting Rules 26 or 33 to place this burden on a party.

#### B.   WAUSA Agrees That Both Parties Should Produce Privilege Logs.

At page 3, BSI demands a Privilege Log for the documents.  WAUSA agrees with BSI. BSI has not done so either at this point, and the parties can work out the timing of the exchange of Privilege Logs without the need for court intervention.

---

[3] Consistent with the Court's Order of September 23, 2010 that all parties should certify to final discovery responses, WAUSA is reviewing several interrogatory answers and identifies herein those as to which it may supplement in compliance with said Order as amended to provide additional time to comply.

6

**C.    WAUSA Is Under No Obligation To Produce Documents In Native Format Where The Native Format Cannot Be Located.**

BSI complains of a failure to produce documents in native format, but cites to no evidence that WAUSA has the documents in native format and is not producing them.  For example, it complains that WAUSA's response about an Attorney General investigation is "grossly" incomplete.  However, BSI fails to identify what is missing.  The only documents that BSI does refer to were adjudicated to be trade secrets in another action, and will be submitted as part of the privilege log.

**D.    BSI's Overbroad Definition Of The Word "You" Has Been Overruled By This Court.**

BSI an oppressive definition of the word "*You*" that would encompass in its path any entity that is conceivably related to WAUSA.  BSI contends that, because it has propounded an overbroad definition of the word "*You*" in its discovery, it should be permitted free reign to obtain information related to distantly-related companies to WAUSA -- regardless of whether such information relates to WAUSA having transmitted the E-Mails At Issue to BSI.  The Court established limits on BSI's attempts to define the word "You" in its discovery to include a myriad of other entities in a June 2, 2010 Order:

> The Court finds the Local Rules of the Court instructive on this issue.  The Court requires Defendant to provide responsive information in the hands of its officers, directors, employees, agents, representatives and attorneys.  See Appendix D, Standard Interrogatories, Local Rules of the United States District Court for the District of Maryland.

BSI tries to enhance its prior argument by contending that it may discover the same information about related entities to WAUSA if it simply asserts that such parties are "agents" of WAUSA without further showing.  BSI ignores WAUSA's sworn Interrogatory Answers stating that it does not contract with affiliates or otherwise engage them as agents

7

and does not engage in commercial e-mail.  The key to the word "agents" is that the third party must have the right to a) legally bind the principal to new obligations; b alter existing contractual relationships; and c) the obligation to act in the interests of the principal ahead of its own.  It is axiomatic that since WAUSA does not engage in commercial email in the first place, by definition, there will be no evidence of any Sister Company to WAUSA acting as its "agent" for such purposes.

Moreover, the discovery inquiring about other companies is irrelevant to this case. The touchstone of discovery is whether it is "relevant to any party's claim or defense."  *See* Fed. R. Civ. P. 26(b)(1).[4]  "Relevant" evidence is that evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would without the evidence."  *See* Fed. R. Evid. 401.  BSI's discovery will not make it "more probable or less probable" that WAUSA transmitted the E-Mails At Issue, but is instead using this litigation as a fulcrum to churn up further purported claims against other parties and to further delay WAUSA's day in court to prove that it did not transmit the E-Mails At Issue.  Such an abuse of the court system should not be tolerated.

To be clear, WAUSA has provided information in its possession, custody, or control about other companies that are related to it, including its parent company and all of the other subsidiaries of its parent company.  WAUSA is a subsidiary of co-Defendant Holdings. WAUSA has provided Answers about its parent company, Holdings, in, *inter alia*, Interrogatory Answers 1 and 7.  For ease of reference, WAUSA has referred to the other subsidiaries of Holdings as "Sister Companies."  *See* Interrogatory Answer 4, p. 10.  WAUSA has provided (or will provide) information about Sister Companies in, *inter alia*, Interrogatory Answers 1, 2, 3, 4, 6, 7, 11, 13, 25, 26, 28, 29, 32.

---

[4] *See Wong v. Thomas*, 2008 WL 4224923, 05-2588, at *3 (D. N.J., Sept. 10, 2008) (internal citation omitted).

Accordingly, BSI has not met its burden to show the relevance and proper scope of its Interrogatories, and WAUSA's objection to the definition of "You" should be sustained.

### E.   BSI's Definition of "Internet Advertising" Is Objectionable.

BSI also contends that WAUSA should be required to respond to discovery about "internet advertising" without limitation despite this case being about the E-Mails At Issue, and not about "internet advertising." The Court has already ruled that the discovery in this case will be restricted to information about e-mails, and said ruling should equally apply to far-flung explorations of internet advertising having no relation to those emails:

> THE COURT: Well, let me make this easy for you. To the extent that you've got new incoming domain name names and other e-mails coming in that you think are attributable to the defense, fine. Do what you have been doing. ***But as to the litigation thus far, the cap is now at the 70,000 that we've been talking about for the last couple of years*. To the extent that you believe you've got some others that are attributable to the defense, file a motion. Judge Messitte or someone will rule upon that motion as to whether or not you get to explore those additional issues, those additional facts, and have an additional year or two**, whatever is necessary to complete the discovery trail that you all have been engaged in for some time.

*See* Excerpted Transcript of September 23, 2010 hearing, attached as Exhibit 11 (emphasis added).

### F.   WAUSA's Objection To The Definition "Identify" Is Proper.

WAUSA also objected to the overbroad and burdensome definition of "identify" propounded by BSI. BSI's definition would require WAUSA to try to respond about "affiliates" that it did not contract with and with whom it has no relationship. It is undisputed that WAUSA does not enlist any agents to send e-mail on its behalf, and thus, the definition is irrelevant, overbroad, and burdensome.

9

### G.  WAUSA's Objections on Spoliation and Burden Are Proper.

In its Answers, WAUSA objected to the Interrogatories to the extent that BSI admitted in sworn deposition testimony to conduct constituting spoliation of evidence and requested cost-shifting, and also objected on the ground of burden.  In its Motion, BSI has mischaracterized the first objection, and failed to respond to the second objection.

#### i.  THE SPOLIATION OBJECTION.

WAUSA specifically objected to BSI's admitted practice of destroying "embedded images" (actual images contained within the E-Mails At Issue) and "attachments" (external files associated with each of the E-Mails At Issue).  WAUSA quoted deposition testimony of BSI where it specifically admitted to these practices.  *See* Answers to Second Set of Interrogatories, pp. 2-4.

In its Motion, BSI admits to destroying the embedded images and attachments, but claims that such information is unneeded to trace e-mails.  Aside from the unsworn nature of BSI's assertions, BSI's logic is flawed because the two mechanisms for stripping of attachments and embedded images are not the forensic fingerprints of a discarded attachment or embedded image. There are other E-Mails At Issue where attachments are listed, but the content has been removed, which are not mentioned in BSI's Memorandum.  For example, SPAM-W080144 lists the following embedded images that have been stripped:

```
------=_Part_989_841894156066
Content-Type: message/external-body;
access-type=local-file;
name=Embedded\274292.gif
Content-ID: <5359577293148768499>
Content-Type: image/gif; name=274292.gif
Content-Transfer-Encoding: base64
------=_Part_989_841894156066
Content-Type: message/external-body;
access-type=local-file;
name=Embedded\274290.gif
Content-ID: <5375951254423510299>
Content-Type: image/gif; name=274290.gif
Content-Transfer-Encoding: base64
```

Thus, the removal of the attachments and images has further prejudiced WAUSA and contributed to the burden involved in responding to the Interrogatories.

ii. THE BURDEN OBJECTION.

In its General Objections, WAUSA further objected to the burden upon WAUSA -- which did not transmit the E-Mails At Issue -- in figuring out for BSI who actually transmitted the E-Mails At Issue and other information.  It its Interrogatory Answers, WAUSA responded on behalf of WAUSA as to each Interrogatory, and WAUSA requested cost-shifting as a precondition of responding to the Interrogatories as it related to other companies.   In Interrogatory Answer 13 to the First Set of Interrogatories, WAUSA provided further quantitative data showing the burdensomeness of the Request.  WAUSA further supplements this record with the Declaration of Jeff Richard, attached as Exhibit 12, which shows the burden involved.  In its Memorandum, BSI offered no challenge or question regarding the need for cost-shifting as proposed by WAUSA.

**H.     WAUSA Properly Lodged Its Other Objections.**

In its objections, WAUSA also pointed out that the Plaintiff in this case, BSI, objected to some of the same types of Interrogatories that it is now trying to compel WAUSA to answer. BSI specifically objected to identifying which parties sent the E-Mails At Issue:  "BSI states that it has not completed its investigation of the participants behind each of the E-Mails At Issue and awaits discovery from Defendant."

BSI tries to distinguish its inconsistency by claiming that "World Avenue relies on layers of concealment."  Memorandum, p. 2.  Enough is enough.  BSI needs to quit hiding behind this smokescreen and present facts -- not rhetoric -- that show that <u>WAUSA</u> -- not some other company -- transmitted the E-Mails At Issue.   The following facts from the Answers to

11

Case 8:08-cv-00921-PJM   Document 482-22   Filed 10/30/10   Page 12 of 26

Interrogatories are *evidence* and belie BSI's *rhetoric*:    "WAUSA and no Sister Company or parent company to WAUSA transmitted the E-Mails At Issue;" "WAUSA did not, and based on this investigation, and to the best of WAUSA's knowledge, no other Sister Company of WAUSA received or paid any compensation as a result of any of the E-Mails At Issue;" "WAUSA does not engage in the transmission of commercial e-mail;" "WAUSA does not contract with outside sponsors, contractors, sub-contractors, advertisers, ad networks, affiliates, publishers, or vendor[s] to send e-commercial e-mail on behalf of WAUSA"; "WAUSA did not enter into any contracts or agreements with any Person relating to the E-Mails At Issue;" "WAUSA did not pay, agree to pay, receive, or expect to receive any funds relating to the E-Mails At Issue;" "WAUSA does not control, run, operate, or pay any third party to send commercial e-mail on its behalf;" "WAUSA has not owned, operated, controlled, or registered any trade names or fictitious names…;" "WAUSA does not offer products via internet advertising or commercial e-mail." *See* Answers to First Set of Interrogatories, pp. 16, 19, 21, 22, 24, 25, 27, 29, 38, 39, 40, 41, 43, 45, 46, 49.  Absent such evidence directly tied to WAUSA, WAUSA should not be forced to buy the boat for BSI's fishing expedition.

## IV.    WAUSA Properly Responded To Plaintiff's Interrogatories.

### A.    WAUSA Properly Responded To Interrogatory 1 On Documents Produced To The Florida Attorney General.

BSI's first Interrogatory asks for a copy of all documents produced by WAUSA to the Florida Attorney General.  BSI's apparent complaint is that the Bates Labels on the documents produced to the Florida Attorney General are not the same Bates Labels as WAUSA's production.  First, there is no requirement that documents produced in this litigation bear the exact same bates labels as they were produced to the Florida Attorney General.  Second, most -- if not all -- of the specific documents listed by BSI have been adjudicated to be trade secrets and

FTL 107,888,234v1 10-11-10

will be listed on the privilege log.  WAUSA is reviewing its response and to the extent that any

further Answer is necessary, WAUSA will supplement its Answers to the Second Set of

Interrogatories consistent with the Court's September 23, 2010 Order.

**B.    WAUSA Has Appropriately Responded To Interrogatory 2
       Requesting An E-Mail To General Counsel Steven R. Levine, Esq. To
       A Company Employee**.

In Interrogatory 2, BSI requests all documents relating to a so-called "smoking gun" e-

mail referenced in a Complaint filed against Niutech, LLC n/k/a TheUseful, LLC.   The

allegations of the Complaint reflect that an employee of Niutech, LLC sent an e-mail to Steven

Levine, an in-house lawyer to Niutech, LLC, and which on its face, is privileged.  *See* Exhibit K-

10.   The documents are also irrelevant as they relate to offers contained on the internet

registration path of Niutech, LLC, *i.e.*, the fulfillment of rewards to willing participants in email

programs, and do not relate to whether e-mails were unsolicited or deceptive, *i.e.*, the gist of

BSI's allegations.   Thus, WAUSA properly objected to the relevance of the documents, as well

as on the basis of the attorney-client privilege.

WAUSA will submit a Privilege Log that contains the privilege objection.   WAUSA is

reviewing its response and to the extent that any further Answer is necessary, WAUSA will

supplement its Answers to the Second Set of Interrogatories consistent with the Court's

September 23, 2010 Order.

**C.    WAUSA Has Fully Responded To Interrogatory 3 Requesting
       Documents Produced In The Levine Suit**.

BSI asserts that WAUSA has not produced any documents that were produced to the

plaintiff in the Levine case.   BSI offers not one iota of proof that discovery is being withheld.

WAUSA will be amending its Answer to provide a docket that shows that no request for

production was made and no documents were produced in that case.   Instead, the case settled

*FTL 107,888,234v1 10-11-10*

after the Court dismissed the Complaint.  Since, no documents were produced, there is nothing to compel.

>    **D.    WAUSA Has Properly Responded To Interrogatories 4  and 5 Requesting "All Documents, Including E-Mail, Sent To [or From] Defendant Niuniu Ji By You Referring Or Relating To The Emails At Issue."**

In Interrogatory 4, BSI requested all "documents, including e-mail, sent to Defendant Niuniu Ji by you referring or relating to the Emails at Issue."  Likewise, in Interrogatory 5, to Interrogatory 5 seeking all e-mails sent by Niuniu Ji to Defendant WAUSA regarding the E-Mails At Issue.  WAUSA properly objected because the Interrogatory improperly presumes that WAUSA transmitted the E-Mails At Issue -- which it did not.  WAUSA further objected to the Interrogatory as overbroad.  WAUSA will submit a Privilege Log that contains the privilege objection.  WAUSA is reviewing its response and to the extent that any further Answer is necessary, WAUSA will supplement its Answers to the Second Set of Interrogatories consistent with the Court's September 23, 2010 Order.

>    **E.    WAUSA Has Properly Responded To Interrogatory 6 Regarding The Compliance Guidelines.**

In Interrogatory 6, BSI requests WAUSA "describe the purpose of the Compliance Guidelines, who administers it currently, who administered it previously, and who is responsible for its oversight both currently and since January 1, 2004."  BSI complains that WAUSA has not answered the Interrogatory.  However, the Compliance Guidelines are not WAUSA's, but those of a Sister Company.  WAUSA is reviewing its response and to the extent that any further Answer is necessary, WAUSA will supplement its Answers to the Second Set of Interrogatories consistent with the Court's September 23, 2010 Order.

**F.   WAUSA Has Appropriately Responded To Interrogatory 7 Relating To An Allegation In a Pleading In The Florida Attorney General Case.**

In Interrogatory 7, BSI requests WAUSA explain an allegation in the Attorney General litigation that Niuniu "Ji indirectly owns, manages, or controls World Avenue." BSI states that it has no "exceptions." Notwithstanding, WAUSA is reviewing its response and to the extent that any further Answer is necessary, WAUSA will supplement its Answers to the Second Set of Interrogatories consistent with the Court's September 23, 2010 Order.

**G.   WAUSA Has Properly Responded To Interrogatory 8 Relating To Affiliate Marketers Or Affiliates.**

In Interrogatory 8, BSI requests WAUSA to identify what Plaintiff Steven Levine was referencing in a lawsuit when he referred to "Affiliate Marketers" or "Affiliates." BSI begins its argument with the misplaced notion that WAUSA is the successor to Niutech when it is not. BSI then makes it worse by asking WAUSA to guess at what Mr. Levine was thinking when he used those words. The Interrogatory calls for speculation and is clearly improper.

**H.   WAUSA Has Completely Answered Interrogatory 9.**

In Interrogatory 9, BSI asks for all persons who rent, own, or use the "domain names and/or other fictitious entities listed in Plaintiff's Exhibit 38 at docket entry 176." For the Court's reference, a copy of Exhibit 38 at Docket Entry 76 is attached as Exhibit 13. It consists of a 37 page, three-column, single-spaced listing of domain names and fictitious names that BSI claims relate to WAUSA. By conservative estimates, the Interrogatory would require WAUSA to provide nearly 5,000 answers.

This issue should sound familiar to the Court, as it has ruled on the question four times and confined discovery to the 41 domain names in the E-Mails At Issue. On April 16, 2010, the Court entered an Order granting in part WAUSA's Motion to Quash Plaintiff BSI's Subpoena

Issued to a Non-Party, DNS Made Easy, which confined the domains to 41.  *See* Exhibit 14.
Notwithstanding the unambiguous language of the April 16th Order (Exhibit 13), BSI asked the
Court to rule on its Motion to Compel DNS Made Easy to Respond Fully To Subpoena For
Document Production, and as a result, the Court issued a June 23, 2010 Order.  *See* Exhibit 15.
Not satisfied with being rejected twice in Court Orders, BSI moved for reconsideration of the
April 16th Order, which was denied in an Order dated September 9, 2010.  *See* Exhibit 16.  BSI
also tried again with another non-party to go beyond the 41 domain names that BSI itself had
identified as being associated with the E-Mails At Issue.  That attempt was denied on September
23, 2010 in a paperless Order as the Court reaffirmed and adopted the same rationale as in its
April 16, 2010, June 23, 2010, and September 9, 2010 Orders (*see* Exhibit 17).

To be certain, WAUSA already identified in response to the first round of discovery
requests (i) that it has no trade names; and (ii) all of the domain names registered to it.  BSI's
attempt to circumvent four Court Orders should be rejected.

## I.      WAUSA Has Properly Answered Interrogatory 10.

In Interrogatory 10, BSI calls for the identification of "all documents in your possession,
custody, or control that were created before September 22, 2006."  Aside from the fact that the
Interrogatory is absurdly overbroad and seeks irrelevant information, BSI's justification for
propounding it is false.  BSI claims WAUSA should have all such documents as the successor to
Niutech, LLC.  However, since WAUSA is not the successor to NiuTech (*see* § II.A *supra*.), the
premise is misplaced.  To the extent that any further Answer is necessary, WAUSA will be
supplementing its Answers to the Second Set of Interrogatories.

**J.      WAUSA Has Properly Responded To Interrogatory 11**.

In Interrogatory 11, BSI asks for all employees who have worked for more than one of "your companies" or sister companies concurrently or consecutively.    WAUSA has no subsidiaries, so the answer to the first part of the question is clearly no.  WAUSA will provide a supplemental listing on sister companies.  WAUSA also objected to the overbroad request for all "contractors" or "affiliates" since, as already explained, WAUSA does not contract with them for purposes of commercial e-mail.  Notwithstanding, WAUSA is reviewing its response and to the extent that any further Answer is necessary, WAUSA will supplement its Answers to the Second Set of Interrogatories consistent with the Court's September 23, 2010 Order.

**K.      WAUSA Has Appropriately Answered Interrogatory 12**.

In Interrogatory 12, BSI asks WAUSA to identify all documents relating to BSI, Hypertouch, their clients, their attorneys, family members, friends, and other associates of Joe Wagner or Paul Wagner.   The request calls for information generated post-litigation on the Wagners and protected by the attorney-client privilege and the work product doctrine. Moreover, the request is impossible to answer because it does not identify the friends and family members.   BSI does not quarrel with this, but asserts that information must exist because WAUSA attached a Motorola contract from the 2000 time period.  However, the document was publicly filed in one of the 20 or 30 cases that BSI has been involved with in Maryland courts. Indeed, BSI's very example shows the type of work product that BSI is seeking to invade. WAUSA discovered the document post-litigation, and BSI did not request a post-litigation privilege log.  Notwithstanding, WAUSA is reviewing its response and to the extent that any further Answer is necessary, WAUSA will supplement its Answers to the Second Set of Interrogatories consistent with the Court's September 23, 2010 Order.

17

**L.     WAUSA Has Properly Responded To Interrogatory 13-14 and 19.**

In Interrogatory 13, BSI asks WAUSA to identify the sender of all of the E-Mails At Issue.   Interrogatory 14 asks for all persons who created or produced the E-Mails At Issue. Interrogatory 19 asks for all documents on the sender of the E-Mails At Issue.   WAUSA has provided qualitative evidence of the burden of doing BSI's homework for it, which evidence BSI has not rebutted.   *See* Exhibit 12.   Notwithstanding, WAUSA is reviewing its response and to the extent that any further Answer is necessary, WAUSA will supplement its Answers to the Second Set of Interrogatories consistent with the Court's September 23, 2010 Order.

**M.     WAUSA Has Properly Answered Interrogatory 15**.

In Interrogatory 15, BSI asked for an identification of all former employees of WAUSA. BSI's time frame is incorrect since WAUSA did not exist before September 21, 2006. Notwithstanding, WAUSA is reviewing its response and to the extent that any further Answer is necessary, WAUSA will supplement its Answers to the Second Set of Interrogatories consistent with the Court's September 23, 2010 Order.

**N.     WAUSA Has Properly Responded To Interrogatory 16**.

In Interrogatory 16, BSI asks for a description of the contention that BSI consented to the receive the E-Mails At Issue.   WAUSA is reviewing its response and to the extent that any further Answer is necessary, WAUSA will supplement its Answers to the Second Set of Interrogatories consistent with the Court's September 23, 2010 Order.

**O.     WAUSA Has Properly Answered Interrogatories 17 and 18.**

In Interrogatories 17 and 18, BSI asked for the identification of all original content that BSI placed into the E-Mails At Issue, and what changes were not the result of routine handling of the E-Mails At Issue.   WAUSA is reviewing its response and to the extent that any further

18

Answer is necessary, WAUSA will supplement its Answers to the Second Set of Interrogatories consistent with the Court's September 23, 2010 Order.

### P.      WAUSA Has Appropriately Answered Interrogatory 20.

Interrogatory 20 requests identification of all emails that went to a "spam trap" e-mail account.  BSI contends, without support, that WAUSA cannot respond to Interrogatories by reference to expert reports, even though the e-mail issues are highly complex and even though BSI's principal does exactly that.  BSI cites to no authority for its contention, and its argument should be rejected.  WAUSA is reviewing its response and to the extent that any further Answer is necessary, WAUSA will supplement its Answers to the Second Set of Interrogatories consistent with the Court's September 23, 2010 Order.

### Q.      WAUSA Has Properly Responded To Interrogatory 21.

Interrogatory 21 asks for all facts supporting the contention that the E-Mails At Issue do not violate Florida law or Maryland law.  WAUSA moved to compel on BSI's contentions that the E-Mails At Issue violated Florida and Maryland law.  Instead of providing an Answer, BSI opted to testify by deposition as to each of the 70,000 emails, as shown by the following colloquy at the September 23, 2010 hearing:

> MR. SAUNDERS: And, Your Honor, I think it's safe to
> say it may also be -- we'll see if we can work it out with
> counsel. We will need more than seven hours.
> THE COURT: You might. You just might in this case,
> yes. I can't argue with you there.
> So, as to No. 1, that motion is denied. As to No. 2,
> that goes to the header information, I believe.
> ****
> MR. SAUNDERS: Your Honor, it still leaves us shooting
> at a moving target because what we'll find out is we have
> options A, B, C and D, and now we have to go through 70,000
> times in order to provide that -- get that information. It's
> their burden. They're going to have to --
> THE COURT: It's their burden to answer the question,

19

yes. It is their burden to answer the question. All I'm
shaping is the form, because I do think that they can answer
that question as to any particular e-mail in the space of five
to 15 seconds. Conversely, it's going to take a bit longer to
write and edit and fax and put it in an answer to interrogatory
to you in a different way.
MR. SAUNDERS: Your Honor, if we're going to set ground
rules, then that -- and maybe we need to come back and set
ground rules for the 30(b)(6) deposition -- that the witness
they produce is going to provide a definitive answer as to all
these questions for 70,000 e-mails at that deposition, then that
may work. But what I'm afraid of --
***
MR. SAUNDERS: My understanding -- and I appreciate
Your Honor's effort to do it this way -- is that under Rule 30 a
deponent is only required to answer what the deponent recalls at
the moment sitting in the deposition.
THE COURT: Oh, no, no. A 30(b)(6) deponent is
required to do the investigation and speak on behalf of the
corporation.
MR. SAUNDERS: He's to be -- if we can cover that with
a topic, we can turn these into a topic for the deposition, in
essence, 70,000 times?
THE COURT: Yes, that's what it amounts to. Now, if
the plaintiff decides that they'd rather do it with the longhand
in writing, I'll give you that election. I'm just trying to
save everybody some time and effort. But, Mr. Ring, you tell me
what is your preference.
MR. RING: We prefer to let it go through in
deposition.
THE COURT: There you have it.
MR. RING: We think we've already given sufficient
information anyway, but we'll do it in deposition

*See* Exhibit 18.

As the promised deposition has not yet occurred, WAUSA is not in a position to respond
to each of these contentions.   Notwithstanding, WAUSA act consistently with the Court's
September 23, 2010 Order.

### R.     WAUSA Has Properly Answered Interrogatory 22.

Interrogatory 22 asks for all documents relating to creative content that has been used by
WAUSA or "you," including WAUSA's Sister Companies.  BSI fails to defend the blatantly

20

overbroad and overreaching discovery request as it is not limited to the E-Mails At Issue.

Further, as already explained, since WAUSA does not provide creative, it has no responsive

information.  Likewise, BSI's attempt to extend the definition of "you" to all Sister Companies

violates a specific Court Order.  WAUSA is reviewing its response and to the extent that any

further Answer is necessary, WAUSA will supplement its Answers to the Second Set of

Interrogatories consistent with the Court's September 23, 2010 Order.

**S.     WAUSA Has Properly Answered Interrogatories 23 and 24**.

Interrogatories 23 and 24 ask for a specification of the facts that the E-Mails At Issue

were sent with the affirmative or implied consent of the recipient of the e-mails.  WAUSA is

reviewing its response and to the extent that any further Answer is necessary, WAUSA will

supplement its Answers to the Second Set of Interrogatories consistent with the Court's

September 23, 2010 Order.

**T.     WAUSA Has Properly Responded To Interrogatory 25**.

Interrogatory 25 asks for all publisher, affiliate, middleman, advertiser, sister company,

parent company, subsidiary, or other e-mail related vendors that were terminated, suspended or

warned.  As explained, WAUSA does not engage in commercial e-mail and it does not contract

with these companies.  Therefore, its objections are appropriate.  WAUSA is reviewing its

response and to the extent that any further Answer is necessary, WAUSA will supplement its

Answers to the Second Set of Interrogatories consistent with the Court's September 23, 2010

Order.

**U.     WAUSA Has Properly Answered Interrogatories 26-30**.

In Interrogatory 26, WAUSA was asked for all documents regarding suspected or actual

falsity, fraud, or deception in advertising or email.  In Interrogatory 27, BSI asks about all

instances of fraud in e-mail headers.  In Interrogatory 29, BSI asks about whether WAUSA has tried to determine if there has been an intent to deceive.  In Interrogatory 30, BSI asks for a description of legitimate business practices of WAUSA.

This is a good example of what BSI seeks to do in this case.  BSI propounds discovery on WAUSA and uses a broad brush to draw in information about the "Sister Companies."  WAUSA responds with a document that is not WAUSA's, but that of the Sister Company.  In this case, WAUSA produced a Compliance Policy of TheUseful, LLC.  BSI then ignores the important distinction and treats the document as though it was WAUSA's document, and as proof that WAUSA engages in e-mail marketing.

As explained, BSI's Motion is premised on the incorrect assumption that WAUSA is a successor to NiuTech -- which as demonstrated above -- is false.  Moreover, WAUSA properly objected to the overbreadth of the request as it does not relate to the issues in this case.  In Interrogatory 31, WAUSA provided a listing of business practices, and BSI does not specify what in the listing is deficient.  WAUSA is reviewing its response and to the extent that any further Answer is necessary, WAUSA will supplement its Answers to the Second Set of Interrogatories consistent with the Court's September 23, 2010 Order.

## V.      WAUSA Has Properly Responded To Interrogatories 32-33.

In the Electronically Stored Information Agreement ("ESI Agreement") between WAUSA and BSI, WAUSA agreed to produce documents of a Sister Company reflecting its contracts with affiliates and advertisers.  WAUSA did so by producing blank form contracts used for these purposes.  In Interrogatory 32, BSI now wants a signed copy of each of the contracts of the Sister Company, regardless of when, whether it relates to the E-Mails At Issue, or whether it is relevant.  Similarly, in Interrogatory 33, BSI asks for all affiliate networks with which

22

WAUSA has a contract, again ignoring that WAUSA has no affiliate contracts.  WAUSA is reviewing its response and to the extent that any further Answer is necessary, WAUSA will supplement its Answers to the Second Set of Interrogatories consistent with the Court's September 23, 2010 Order.

### W.   WAUSA Has Properly Responded To Interrogatory 34.

Interrogatory 34 asks WAUSA -- which did not transmit the E-Mails At Issue and does not contract with any Person to send commercial e-mails -- to identify all Persons who participated and benefited from the E-Mails At Issue.  WAUSA has already provided a clear explanation the first time that this question was asked that "WAUSA and no other Sister Company or parent company to WAUSA transmitted the E-Mails At Issue."  First Set of Interrogatories, Answer to Interrogatory 2, p. 17.  BSI moves to compel based on rhetoric -- and not proof.  BSI's Motion is based on assumption rather than *proof* that WAUSA's Interrogatory Answer is false, and that WAUSA did send the E-Mails At Issue.  It is unclear what is missing from the Interrogatory Answer.  WAUSA has explained that it, its parent company, and its Sister Companies did not transmit the E-Mails At Issue.

### X.   WAUSA Has Appropriately Answered Interrogatory 35.

Interrogatory 35 asked WAUSA to identify who it contracted with relating to the E-Mails At Issue.  WAUSA has already answered that it did not transmit the E-Mails At Issue and it "did not enter into any contracts or agreement with any Person relating to the E-Mails At Issue."  See Answers to First Set of Interrogatories.  BSI argues that its oppressive definition of the word "You" covers contracts with any of the World Avenue companies.  Again, the definition is objectionable and BSI fails to sustain its burden.  WAUSA has explained that it, its parent company, and its Sister Companies did not transmit the E-Mails At Issue.  WAUSA is reviewing

23

its response and to the extent that any further Answer is necessary, WAUSA will supplement its Answers to the Second Set of Interrogatories consistent with the Court's September 23, 2010 Order.

### Y. WAUSA Has Properly Answered To Interrogatory 36.

Interrogatory 36 asked for all compensation that WAUSA paid, agreed to pay, received, or are expected to receive relating to the E-Mails At Issue. WAUSA has previously answered that it, its parent company, and its Sister Companies did not transmit the E-Mails At Issue. *See* Answers to First Set of Interrogatories. Further, WAUSA has previously explained that it "did not pay, agree to pay, receive, or expect to receive any funds relating to the E-Mails At Issue." *See* Answers to First Set of Interrogatories. WAUSA has described its search of the Legacy system, which is shared by its Sister Company, TheUseful, LLC. The Legacy system is a system that ties any payment to a unique customer. None of the addresses of the E-Mails At Issue are in the Legacy System, therefore, there was no compensation to TheUseful, LLC either. The Interrogatory has been fully answered. WAUSA is reviewing its response and to the extent that any further Answer is necessary, WAUSA will supplement its Answers to the Second Set of Interrogatories consistent with the Court's September 23, 2010 Order.

### Z. WAUSA Has Properly Answered To Interrogatory 37.

Interrogatory 37 asks WAUSA -- which did not transmit the E-Mails At Issue or enlist any third party to transmit the E-Mails At Issue -- to identify five categories of information regarding the origin of the E-Mails At Issue. BSI contends that WAUSA has avoided the question. To the contrary, WAUSA has answered the question. WAUSA did not send the E-Mails At Issue. Further record evidence of the burden of performing BSI's homework for it is set forth in the Declaration attached as Exhibit "12." WAUSA is reviewing its response and to

24

the extent that any further Answer is necessary, WAUSA will supplement its Answers to the Second Set of Interrogatories consistent with the Court's September 23, 2010 Order.

### aa.      WAUSA Has Properly Responded To Interrogatory 38.

In Interrogatory 38, BSI asks for all lawsuits by any governmental entities against WAUSA.  WAUSA has already provided the responsive information, and it is unclear what is missing.  WAUSA is reviewing its response and to the extent that any further Answer is necessary, WAUSA will supplement its Answers to the Second Set of Interrogatories consistent with the Court's September 23, 2010 Order.

### bb.      WAUSA Has Properly Responded To Interrogatory 39.

In Interrogatory 39, BSI asks for all lawsuits against WAUSA by persons alleging false and misleading business practices.  WAUSA has already responded.  WAUSA is reviewing its response and to the extent that any further Answer is necessary, WAUSA will supplement its Answers to the Second Set of Interrogatories consistent with the Court's September 23, 2010 Order.

### cc.      WAUSA Has Properly Responded To Interrogatory 40.

In Interrogatory 40, BSI asks whether any portion of WAUSA is located overseas. WAUSA has already responded to this Interrogatory, and BSI has no information to the contrary.

### V.      Conclusion.

For the reasons set forth herein, Plaintiff's Motion should be denied and attorneys' fees and costs should be awarded pursuant to Rule 37.

FTL 107,888,234v1 10-11-10

Dated:  October 11, 2010.

Respectfully submitted,

*Attorneys for World Avenue USA, LLC and World Avenue Holdings, LLC*

___/s John L. McManus_____
Sanford M. Saunders, Jr., Esq.
USDC, MD #4734
saunderss@gtlaw.com
Nicoleta Burlacu, Esq.
BurlacuN@gtlaw.com
*Admitted Pro Hac Vice*
GREENBERG TRAURIG, LLP
2101 L Street, NW, Suite 1000
Washington, DC 20037
Telephone:  202-331-3100
Facsimile:  202-331-3101

--and--

Kenneth Horky, Esq.
Florida Bar No. 691194
horkyk@gtlaw.com
John L. McManus, Esq.
Florida Bar No. 0119423
mcmanusj@gtlaw.com
*Admitted Pro Hac Vice*
GREENBERG TRAURIG, P.A.
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, FL 33301
Telephone: 954-765-0500
Facsimile:  954-765-1477

FTL 107,888,234v1 10-11-10