IN THE U.S. DISTRICT COURT FOR MARYLAND,
SOUTHERN DIVISION

BEYOND SYSTEMS, INC.           )
                               )
        Plaintiff              )
v.                             )          Case No. PJM 08 cv 0921
                               )
WORLD AVENUE USA, LLC, et al.  )
                               )
        Defendants             )
_____)

**DEFENDANT WORLD AVENUE USA, LLC'S MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFF BEYOND SYSTEMS, INC.'S MOTION FOR
RECONSIDERATION OF DISCOVERY ORDER AT DE 444 REGARDING
PLAINTIFF'S RESPONSES TO DEFENDANT WAUSA'S THIRD SET OF
INTERROGATORIES**

Defendant WORLD AVENUE USA, LLC ("WAUSA") respectfully submits its
Opposition to Plaintiff BEYOND SYSTEMS, INC.'s ("BSI") Motion for Reconsideration of
Discovery Order at DE 444 Regarding Plaintiff's Responses To Defendant WAUSA's Third Set
of Interrogatories ("Motion for Reconsideration") [DE 449], and states:

**I.      Introduction.**

BSI's Motion for Reconsideration presents no grounds for this Court to revisit its Order
at DE 444 granting WAUSA's Motion to Compel as to the Third Set of Interrogatories ("Motion
to Compel").  First, BSI asks the Court to revisit its decision because it claims that the Court has
"overlooked" both BSI's Opposition to the Motion to Compel and "new" documents and
Interrogatory Answers, while itself overlooking the fact that the Opposition and the so-called
"new" documents were already addressed in WAUSA's Reply Brief at DE 347.  Second, BSI
asks the Court to reconsider the time frame of the Order because of the "limited" time frame in
an Order entered at DE 233 in the *Kraft* Action.  However, BSI fails to candidly advise the Court
that the time frame at issue in the Third Set of Interrogatories was not even requested in the

discovery at issue in DE 233.   Third, BSI asks the Court to reverse itself and find that the

decision in *Gordon v. Virtumundo*, Inc., 575 F.3d 1040 (9th Cir. 2009) is not instructive on the

issue of BSI's status as an interactive computer service.   BSI's position runs contrary to several

of this Court's rulings as well as the sound reasoning in *Gordon*.   Finally, BSI attempts to have

the Court revisit its Order on the discovery relating to Verizon, but provides no grounds to do so.

Thus, the Court should deny the Motion for Reconsideration.

> **II.      The Court Should Not Reconsider Its Decision Because The "New"
> Information That BSI Cites To Was Already Briefed Before The Court
> Entered Its Ruling.**

BSI contends that the Court should reconsider its ruling at DE 444 because the Court did

not consider "Plaintiff's memorandum in opposition at DE 321, and Plaintiff's good faith

production of information and materials in response to the Interrogatories."   Motion for

Reconsideration, p. 1.   BSI also asserts that this Court did not consider:   (1) BSI's unsworn

Supplemental Response and Objections to Interrogatory 1 of the Third Set of Interrogatories

(filed at DE 449-2); (2) BSI's production on June 30th of an unsworn Interrogatory Response

given in the Kraft case (filed at DE 449-3, 449-4); and (3) production of unspecified documents

identified at DE 250.

There is a complete absence of evidence supporting BSI's unfounded position that the

Court did not read its Opposition.   BSI's position that this Court did not read its Opposition at

DE 321 is not well-taken as the Court specifically noted that it had reviewed the Motion and

"related memoranda thereto".  *See* DE 444.[1]

BSI's position that the Court did not consider the supplemental productions of BSI on May 30, June 30th, and elsewhere is also unsupported.  WAUSA specifically addressed the documents attached to the Motion for Reconsideration in its Reply Memorandum [DE 347, pp. 2-3].  On Page 3 of DE 347, WAUSA specifically argued that  the materials produced on May 30th and on June 30th were insufficient because:  (i) the May 30th and June 30th materials were not verified or sworn to; (ii) the May 30th materials were limited to "*spam-related* litigation," but not all litigation; (iii) the May 30th materials did not include losses or information pre-dating 2005; (iv) the June 30th material was an Interrogatory Answer to another question in another case (*Kraft*); (v) the June 30th information did not include non-litigation profit and loss for 2008-2010. DE 347, pp. 2-3.  Thus, the Court had before it at the time of the ruling all of the evidence on which BSI now relies for reconsideration and soundly rejected such evidence.[2]

### III.   The Court Should Not Reconsider The Time Frame Of Its Order At DE 444 Of January 1, 2000 To Present.

The Court should not reconsider its ruling that BSI should produce financial records from 2000 to date.   BSI argues that the Court "has consistently ruled in other discovery rulings that the bracketed time interval for discovery is limited…to three or four years prior to the filing of suit."  Motion for Reconsideration, p. 2.  In complete contradiction, BSI then argues that "[t]he

---

[1] If anything, the Court's Order at DE 444 affirmatively shows that the Court reviewed the Reply Brief as the Court noted that "Plaintiff shall provide full factual responses to all interrogatories, *signed under oath*, within seven (7) days.   Plaintiff's failure to do so before serving of Defendant's Motion is inexcusable…" *See* DE 444.  Because the original Interrogatory Answers were signed, the Court appeared to be referring to the *unsworn* and *unverified* Interrogatory Answers served on May 30 and June 30th, which were referenced in the Reply Brief.  These are the same documents that BSI now claims that the Court did not read before ruling on the Motion.

[2] BSI also refers to "similar production of documents in numerous installments as catalogued in the long list of such supplementation at DE 250."  Motion for Reconsideration, p. 2.  BSI does not identify what any of these documents are, and all productions relating to this Interrogatory are fully addressed in WAUSA's Motion and Reply Memorandum.  DE 277, 347.

time frame for discovery should be limited to January 1, 2010 to the present." Motion for Reconsideration, p. 11. BSI presents no reason for the Court to accept BSI's own internally-repugnant position. Indeed, ironically, it was BSI itself who injected the year 2000 finances into the factual mix when it filed a Declaration of Paul A. Wagner that averred as to BSI's revenue and expense since the year *2000* -- an averment upon which it now seeks to avoid discovery. *See* Declaration of Paul A. Wagner dated 2/18/10 in Kraft Action, p. 6, ¶ 18.

BSI continues to persist in its misplaced argument that this Court in the *Kraft* Action has somehow "limited" discovery on the financial issues to 2005 to 2010. *See* Motion for Reconsideration, p. 2 (citing Kraft Order at DE 233). The *Kraft* defendants moved to compel on Interrogatories seeking data from "2004 to present." *See* DE 181 in *Kraft* Action, p. 4 (Interrogatory 12); p. 5 (Interrogatory 14), excerpts attached as <u>Exhibit 1</u>. The Court granted discovery on the litigation and non-litigation related revenues "from 2004 to present." *See* DE 233, p. 2 in *Kraft* Action, attached as <u>Exhibit 2</u>. The *Kraft* defendants did not ask for, and the Court had no occasion to reject or "limi[t]" as BSI asserts in its Opposition, discovery from 2000 through 2004. The Court in *Kraft* again had occasion to consider the issue at DE 341 on April 21, 2010 and again, just treated the information as non-confidential, but did not "limit" the data. *See* Exhibit 1, pp. 4-5; Exhibit 2, p. 2, and DE 341, p. 2, in *Kraft* Action, attached as <u>Exhibit 3</u>.

**IV.**   **This Court Should Not Revisit Its Prior Rulings That *Gordon* Is Analogous To BSI's State-Based Claims Under Maryland and Florida Law.**

BSI asks this Court to reconsider its analysis that *Gordon* "is instructive on the issue of discovery of revenue and finances of internet services providers. The principles found in *Gordon* are equally applicable to the state-based claims here." *See* DE 444. The Court should reject this invitation because the Court has repeatedly made the same or a similar finding.

First, this ruling is one of several rulings in which this Court --either explicitly or implicitly (by use of language such as "bona fide") has held that the decision in *Gordon* is applicable to or "instructive on" BSI's state-based claims.  First, in the *Kraft* Action, this Court allowed discovery of BSI's finances in an Order dated October 21, 2009 at DE 233 in the *Kraft* Action (*see* Exhibit 2):

> The Court finds that that the information sought may inform the Court in its assessment of statutory damages. The motivations of Plaintiff, as well as those of the named Defendants, may be of value to the Court. Equally true, discovery of impeachment evidence is appropriate. *Newsome v. Penske Truck Leasing Corp.*, 427 F. Supp. 2d 431 (D. Md. 2006). The quantification of income derived from litigation endeavors, juxtaposed with those from the legitimate operation of an internet service provider, may influence the Court as to the motives of Plaintiff in light of any legislative intent. *See Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1056 (9th Cir. 2009) (plaintiff's company generates no revenue and is financed strictly through lawsuits against e-mail marketers). ***While the statute in Gordon is not controlling here, the Court's reasoning may be helpful in discerning the true harm inflicted upon Beyond Systems, Inc***.
> \*\*\*
> Plaintiff shall provide complete responses within 10 days of the date of this Order. Plaintiff's responses shall specify the gross revenues received by Beyond Systems, Inc. due to settlements and/or judgments obtained as a result of claims related to commercial electronic mail, for each calendar year from 2004 to present.

The Court's Order at DE 233 (Exhibit 2) remains unmodified.

Second, at a hearing on a Motion to Dismiss Third Party Complaint in the *Kraft* Action where the third party plaintiff cited the *Gordon* decision, the Court denied the motion to dismiss based on factual issues relating to Hypertouch, Inc.'s status as an internet service provider:

> Connexus and Hydra have contended in the litigation that BSI received these e-mails because of wrongful conduct of Wagner/Hypertouch. And again, the suggestion is that the Wagner brothers are in the business of manufacturing lawsuits and that Hypertouch is merely a facade, or an arrangement whereby Joe Wagner can operate. And it has been apparently established in discovery that Joe Wagner has filed multiple lawsuits relating to spam.

*See* Transcript of October 19, 2009 hearing in *Kraft* Action, p. 38, lines 10-17, excerpts attached

as <u>Exhibit 4</u>.

Third, when the Court denied summary judgment in the *Kraft* Action because the status

of BSI as a *bona fide* internet service provider was a jury issue, and that ruling necessarily

derived from *Gordon*:

> MR. BALDRIDGE [Counsel for Defendant]: Well, I think that the *Gordon* case, if you accept that logic, would say no. There are certain facts that you can come up with right now that paint the picture on summary judgment that this company is ***not a bona fide ISP***.
> THE COURT: Well, would it have to be -- it would have to be conclusive as matter of law that they were not, but they present some arguments that say they are, so why couldn't a jury decide whether in fact they are or aren't?
> ****
> THE COURT: Let me pose this question to you though which remains here. Can someone technically, technically qualify, but substantially, truly and ultimately really be in the business of litigation and not one who should be protected as a bona fide ISP, because that question really is out there and it may well be that that's a question that the trier of fact should look at, whether in fact BSI really does anything other than try and get spam and sue people. Even though it may, and this is just an argument that defendant makes, it may dress up its activity to make it look like an ISP, but that's not really what it is or what it does. So I don't hear the defendants conceding that they are an ISP in the sense that that issue is not on the table. They're saying substantially, you're not what an ISP is.
> MR. ONORATO [BSI's counsel]: Understood. And I believe in answer to your question, the answer is yes, that an ISP can qualify under the statutes. Yes, that is a question for the jury if there is a dispute as to whether or not BSI is an ISP. And yes, that is what we're asking you to find. We're not asking the Court to find that BSI is an ISP.
> * * * *
> THE COURT: This is a question where the Court exercising in some ways caution that I perhaps am too cautious about, I'm going to deny the motion insofar, the Motion for Summary Judgment insofar as it precludes the --
> ****
> The third category I will deny as to -- I will permit that to go forward; that is, the third category of matters sent directly to BSI on the following grounds. That the issue of the intimacy of these two entities, Hypertouch and BSI, is really a jury question throughout here. ***And the jury could well find on this record that in fact as argued earlier that BSI is in fact not a bona fide ISP, but really a litigation entity***. That in fact, they are so intimately connected with Hypertouch based on all the matters recited by the defendant, Mr. Baldridge, for the defendant earlier that the jury could conclude that they are essentially allied and the same entity. They may not be, but for purposes of summary judgment, I will permit the plaintiffs to argue that they are separate entities when the matter gets to trial. The defendants

obviously can argue. *And it all goes to the issue of whether in fact BSI is a, number one a bona fide ISP*.

Transcript of June 14, 2010 Hearing in *Kraft* Matter, p. 18, lines 9-16; p. 22, lines 16-25; p. 23, lines 1-10, p. 67, lines 9-12; p. 68, lines 5-20 (emphasis added), excerpts attached as Exhibit 5.

**V.    This Court Should Not Revisit Its Prior Analysis That *Gordon* Is Instructive Because The Court's Analysis Is Fundamentally Correct**.

BSI argues that the Court should reconsider the application of *Gordon* because "the rulings on standing in Gordon are particular to CAN-SPAM and do not apply to state statutes." Motion for Reconsideration, p. 4.  However, the Court knows that *Gordon* is a CAN-SPAM case, but is applying its principles in a state law context.  *Gordon* did not hold that its principles were inapplicable to state law claims, but only that the defendant in *that* case did not "contest Gordon's standing to bring CEMA claims" and "we must frame the issue as it comes to us." *Gordon*, 575 F.3d at 1058.  The Court's ruling at DE 444 accords with the reasoning of the *Gordon* district court opinion that awarded fees in the *Gordon* case:

> First, it is obvious that Plaintiffs are testing their luck at making their "spam business" extraordinarily lucrative by seeking statutory damages through a strategy of spam collection and serial litigation. Plaintiffs are parties to ten additional cases similar to the instant case in the Western District of Washington alone, *see* Case Nos. C06-1118-MJP, C06-1129-JCC, C06-1210-TSZ, C06-1284-TSZ, C06-1348-MJP, C06-1350-JCC, C06-1469-MJP, C06-1537-JCC, C07-222-RSM, and C07-386-MJP, as well as at least one "spam" case in the Eastern District of Washington, *see* Case No. C05-5079-FVS. The Court is not merely speculating on Plaintiffs' motives or assessment of potential profits. In analyzing Plaintiffs' CAN-SPAM standing, this Court noted that Gordon testified that the "benefits" of receiving spam can be quantified in terms of his dissertation research, as well as "settlement agreements for people who have said that they wouldn't spam me any longer." (May 15, 2007 Order 7.) The Court recounted the lists of Gordon and Omni "clients," more than half of whom share the "Gordon" surname. ( *Id.* at 6-7.) The Court recognized that Gordon took over control of e-mail accounts for "gordonworks" clients in order to continue collecting spam. ( *Id.* at 7.) The Court noted that none of the Omni or Gordon clients has paid Plaintiffs for their services. ( *Id.*) Gordon testified that all of Plaintiffs' income or revenue for 2006 and 2007 has been from settlements and disputes. ( *Id.* at 7-8.) Gordon also testified regarding the "time-consuming process" of collecting,

> sorting, and compiling spam regarding these and other defendants. ( *Id.* at 8.) Clearly, Plaintiffs are assembling a litigation factory, which, if successful, could net millions of dollars in profit, at least theoretically.
>
> Moreover, after assessing the utter lack of evidence going to any technical impact or financial harm due to the alleged illegal spam, this Court found it significant that Gordon did not seek actual damages in the instant litigation, because none exist, and that he is instead seeking solely statutory damages for each e-mail sent. ( *Id.* at 8.) Plaintiffs admitted that they benefit from receiving spam, and this Court concluded that "Plaintiffs' continued use of other people's e-mail addresses to collect spam and their undisputed ability to separate spam from other e-mails for generating lawsuit-fueled revenue directly contradicts any hint of adverse effect that otherwise might exist." ( *Id.* at 15.) Not only are Plaintiffs "not the type of entity that Congress intended to possess the limited private right of action it conferred on adversely affected bona fide Internet access service providers" ( *id.* at 15), they are not the type of plaintiff that should be allowed to pursue the strategy outlined above without financial cost.

*See Gordon v. Virtumundo*, 2007 WL 2253296, at *1, *5 (W.D. Wash. Aug. 3, 2007) (unpublished). Furthermore, the Court's ruling at DE 444 also accords with the concurring opinion in *Gordon*, which held that the common law never created "remedies for people who gratuitously created circumstances that would support a legal claim and acted with the chief aim of collecting a damage award." *See Gordon*, 575 F.3d at 1068 (Gould, J., concurring). Thus, the Court should deny BSI's Motion on this ground as well.

## VI.   BSI Provides No Cognizable Grounds To Revisit The Court's Ruling On The Verizon Interrogatories.

BSI asks the Court to reconsider its ruling on the propriety of the Verizon Interrogatories (Interrogatories 5-12 of the Third Set of Interrogatories), claiming that there has been "no competent evidence to support any suggestion that BSI is anything but a legally operating user and provider of ISP services." Motion for Reconsideration, pp. 6-7. Coupled with its use of the word "*competent*" is BSI's serious accusation that Tina Dempsey-Jones, a third party witness for Verizon, was "**coaxed in deposition** by WAUSA's counsel over objection into giving a 'legal opinion.'" *Id.*, p. 7 (emphasis added). Having made such a serious personal accusation of

sanctionable professional misconduct against the 25-plus year practitioner who took the deposition, Sanford M. Saunders, Jr., one would think that BSI would support its representation to this Court with record evidence of "coax[ing]" -- but there is not a shred of evidence in the Motion for Reconsideration.  The reason is that BSI knows exactly what this witness testified to -- but has deliberately withheld from this Court:

> Q   What communications did you have with the
>     Law Firm Greenberg Traurig before today's deposition?
> A   None.
> Q   Did you meet with anyone to prepare for
>     today's deposition?
> A   I met with my attorney.

*See* Transcript of Deposition of Tina Dempsey-Jones, p. 76, lines 1-6, excerpt attached as <u>Exhibit 6</u>.

Although BSI's blatant misrepresentation to the Court is alone enough to deny this ground for reconsideration, BSI's remaining grounds provide no basis for relief either.  BSI claims that there has not been any "hint of objection from Verizon, as to the use of the BSI business account with static IP addresses, clearly intended for multiple users."   Motion for Reconsideration, p. 7.  BSI's argument suffers from two debilitating flaws.  First, Verizon's representative has testified that the conduct described would violate the terms of service for the Verizon FIOS for Business and the Verizon DSL Service.  *See generally*, testimony of Tina Dempsey-Jones cited in Motion to Compel, pp. 9-14.  It is not the responsibility of Verizon to determine whether BSI is violating the terms of service, and the fact that BSI can secretly violate the terms of service does not legalize BSI's conduct.  Second, according to Ms. Dempsey-Jones, the described usage, use of a "business account" "clearly intended for multiple users" within a single business office at a single location does not violate the terms of service.  Instead, it is the use of the Verizon FIOS Service to operate as a competing internet service provider to Verizon

and engage in the other activities that BSI claims to engage in, that does violate the terms of service.[3]   BSI cites to no record evidence that Verizon had knowledge of BSI's conduct in violation of the terms of service.   Accordingly, because the Interrogatories seek relevant information to the question of whether BSI is lawfully operating as an internet service provider, the Court should not reconsider its Order.

### VII.    Conclusion.

For the foregoing reasons, the Court should deny the Motion for Reconsideration.  BSI had no legal basis for seeking reconsideration under the grounds where it is appropriate, and accordingly, the Court should award further sanctions for the inexcusable waste of the Court's and the opposing party's resources relitigating issues where it was inappropriate to file such a motion.

---

[3] Finally, BSI claims that "BSI's documents showing its Verizon usage provide at least some of the information sought by WAUSA in the interrogatories."  Motion for Reconsideration, p. 7.  Of course, BSI does not identify which documents provide such information, and thus, BSI has not given the Court any basis for reconsideration.

Dated: November 1, 2010

Respectfully submitted,
*Attorneys for World Avenue USA, LLC*

GREENBERG TRAURIG, LLP

___/s John L. McManus_____
Sanford M. Saunders, Jr., Esq.
USDC, MD #4734
saunderss@gtlaw.com
Nicoleta Burlacu, Esq.
BurlacuN@gtlaw.com
*Admitted Pro Hac Vice*
GREENBERG TRAURIG, LLP
2101 L Street, NW, Suite 1000
Washington, DC 20037
Telephone:  202-331-3100
Facsimile:  202-331-3101

--and--

Kenneth Horky, Esq.
Florida Bar No. 691194
horkyk@gtlaw.com
John L. McManus, Esq.
Florida Bar No. 0119423
mcmanusj@gtlaw.com
*Admitted Pro Hac Vice*
GREENBERG TRAURIG, P.A.
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, FL 33301
Telephone: 954-765-0500
Facsimile:  954-765-1477