# EXHIBIT 2

STATE OF FLORIDA
OFFICE OF THE ATTORNEY GENERAL

IN THE MATTER OF:

Case No. L07-3-1044

World Avenue USA, LLC, successor
by merger to NIUTECH, LLC., &
Niuniu Ji, an individual.
_____ /

## ASSURANCE OF VOLUNTARY COMPLIANCE

### A. INTRODUCTION

**PURSUANT** to the provisions of Chapter 501, Part II, Florida Statutes, the OFFICE OF THE ATTORNEY GENERAL, hereinafter referred to as the OAG, caused an inquiry to be made into and a civil action to be filed regarding the advertising and business practices pertaining to the internet marketing services of World Avenue USA, LLC, hereinafter referred to as "NiuTech," with a principal business address of 1613 NW 136th Avenue, Suite 100, Sunrise, FL 33323, and Niuniu Ji, an individual.

**NIUTECH** and Niuniu Ji have cooperated fully with the OAG's investigation and through this process have taken a leadership role in working with the OAG to establish best practices and standards for the internet marketing and advertising industries.

**IT IS AGREED** that this Assurance of Voluntary Compliance ("AVC") does not constitute any evidence or admission of any kind. The parties intend that this AVC shall not be used as evidence in any other action or proceeding, including third party proceedings. This AVC does not constitute a finding by any court or agency, including the OAG, that NiuTech or Niuniu Ji have engaged in any act or practice declared

unlawful by any laws, rules or regulations of the State of Florida. NiuTech enters into this AVC without any admission that NiuTech has violated the law and for the purpose of resolution of this matter, and the Deputy Attorney General, by and through the undersigned Assistant Attorney General, does in this matter accept this AVC in termination of this investigation with prejudice, pursuant to Section 501.207(6), Florida Statutes, and by virtue of the authority vested in the OAG by said statute and without any finding of wrongdoing on the part of NiuTech or Niuniu Ji. The OAG and NiuTech hereby agree and stipulate to the following:

## B. JURISDICTION AND VENUE

1. NiuTech is an online advertising network that provides a distribution platform for advertising of internet-marketed products and/or services to consumers.

2. **IT IS AGREED** by the parties that the State of Florida has jurisdiction over NiuTech solely for the purpose of entering into this AVC and in any enforcement or investigative actions arising out of this AVC.

3. **IT IS FURTHER AGREED** by the parties that venue for any matter relating to or arising out of this AVC shall lie solely in Leon County, Florida.

## C. DEFINITIONS

1. "Advertising" (including "advertisement" and "advertise") as used herein means any message created, published and/or distributed via the Internet by or under the direction or control of NiuTech directly to the general public or any segment thereof, that promotes or is likely to promote directly or indirectly Incentive Promotion Offers or Phone-Billed Offers.

2. "Clear and conspicuous" or "clearly and conspicuously" means that a statement, representation, claim or term being conveyed is readily noticeable and reasonably understandable by the persons to whom it is directed. When evaluating an Advertisement, the following, without limitation, shall be considered in determining whether a statement, representation, claim or term, is clearly and conspicuously disclosed:

   a. whether it is of sufficient prominence in terms of size, placement, color, contrast, duration of appearance, sound and speed, as to be readily noticeable and reasonably understandable by a person to whom it is directed;

   b. whether it is presented to the person(s) to whom it is directed in a coherent and meaningful sequence with respect to other representations, statements, claims, or terms conveyed;

   c. whether it is contradictory to any representations, statements, claims, or terms it purports to clarify, modify, or explain, or otherwise contradictory or confusing in relation to any other representations, statement, claim, or term being conveyed.

   d. whether abbreviations are being used and if so whether they are commonly understood by consumers acting reasonably under the circumstances;

   e. whether the language and terms used are free of technical or legal jargon and are commonly understood by consumers acting reasonably under the circumstances;

    f. whether, in print or electronic media or orally represented, it is in proximity to the representations, statements, claims, or terms it clarifies, modifies, explains, or to which it otherwise relates;

    g. whether it is presented in such a way as to be free of distractions, including but not limited to sound, graphics, or text, that compete for the attention of the consumer.

    h. Notwithstanding subsections (a) through (h) above, for purposes of this AVC, any statement, representation, claim or term shall be deemed to have been "clear and conspicuous" if such statement, representation, claim or term satisfies the then-current criteria of the Federal Trade Commission for "clear and conspicuous" disclosure for purposes of compliance with Section 5 of the FTC Act, 15 U.S.C. §45.

3. "Consumer" as used herein means a consumer who is a resident of the State of Florida.

4. "Incentive Promotion Offer" as used herein is an Advertising offer created and operated by NiuTech to a Consumer to earn a gift item in exchange for providing personally identifying information, completing a survey, completing third party sponsor offers and completing any other stipulated terms and conditions in a continuous order path. For the avoidance of doubt, a traditional rewards or loyalty program (e.g., American Airlines Miles) is not an Incentive Promotion Offer.

BSI-JiCos-008217

5. "Initial Representation" as used herein shall include all sponsored links, email subject lines, banner ads, pop-ups, and any and all other primary impressions presented by NiuTech or any of its contracted publishers.

6. "Negative option plan" as used herein shall mean when a seller presents a consumer with an opportunity to consent in advance to continue to receive products or services in the future, and the seller interprets the consumer's silence or failure to take an affirmative action to reject goods or services, or to cancel the sales agreement, as acceptance of the offer.

7. "Order path" as used herein shall mean the sequence of impressions, generally beginning with an initial representation via an online display advertisement (e.g., banner advertisement), search engine title and descriptions, or email advertisement, and including one or more web pages (for example, "landing" and "jump" pages), that together constitute the Advertisement.

8. "Person" as used herein shall mean a natural person or entity.

9. "Publisher" as used herein shall mean any third party independent entity, whether natural person, corporation, partnership, proprietorship, limited liability company, or other organization or legal entity, that applies to be and is accepted to do business with NiuTech as a distributor of Advertising as defined above, and that agrees to abide by the NiuTech Terms and Conditions of service.

10. "Phone-Billed Offer" as used herein shall mean an Advertising offer relating to any third-party provided wireless or landline content/services, the charges for which are stated as a recurring charge on the consumer's phone bill, and where NiuTech receives compensation from such third party in any form (cost per

acquisition, cost per click, cost per impression, revenue share agreement or other form of compensation).

### D. AGREEMENT OF COMPLIANCE

1. **IT IS AGREED** by the parties that this AVC applies to NiuTech, acting directly, or through any entity that NiuTech owns, in connection with the Advertising of Incentive Promotion Offers or Phone-Billed Offers.

2. **IT IS FURTHER AGREED** by the parties that, in the course and conduct of Respondent's business of Advertising Incentive Promotion Offers or Phone-Billed Offers, Respondent, with respect to any Advertising it creates and directly controls, shall not:

   a. In connection with any Incentive Promotion Offer or Phone-Billed Offer, permit the use of the terms "free", entirely or in part without a requirement of compensation in any form; or which tend to convey the impression to the consuming public that an article of merchandise or service is "free" without clearly and conspicuously (as defined in Section C.2) disclosing the material terms, conditions and obligations upon which receipt and retention of the "Free" item are contingent, unless the item can actually be received by a Consumer without making a purchase. For purposes of this AVC, the term "free" refers also to "complimentary," "no charge," "without charge," or other terms which reasonably lead a Consumer to believe that he or she may receive something of value without making a purchase. That disclosure relating to the use of the term "free" shall be as follows:

      i. With respect to Incentive Promotion Offers only, the Initial Representation (e.g. sponsored link) for every Incentive Promotion Offer shall clearly and conspicuously disclose that any item offered for "free" is offered subject to a consumer's completion of additional requirements. Examples of acceptable language, for purposes of this AVC, include but are not limited to: "Free Xbox, with completion of offer," "Free Xbox, simply buy or try sponsor offers," "Free Xbox, with completion of Program Requirements," "Free Xbox, details apply," "Free Xbox, terms apply," "Free Xbox, conditions apply," "Earn a Free Xbox," and "Free Xbox, participation required".

      ii. With respect to Phone-Billed Offers only, the Initial Representation for every Phone-Billed Offer must contain the price and term of billing cycle of the offer. Examples of acceptable language, for purposes of this AVC, include but are not limited to: "$1,000 dollars in Free Grocery Coupons with sign-up for Voicemail services for $9.99 per month" or "Get 10 Free Ringtones When you Subscribe to the Ringtone Club for $9.99 per month".

b. For every Phone-Billed Offer where NiuTech creates and operates the phone number submit page NiuTech shall:

      i. clearly and conspicuously disclose the price and billing cycle of the recurring charge immediately adjacent to the landline submit

field, or cell phone submit field and the P.I.N. code submit field, e.g., "$9.99 per month;"

ii. clearly and conspicuously disclose on the landline submit web page or the cell phone number submit web page and the PIN Code submit web page the following material terms and conditions:

    a. the price per billing period, including the initial and recurring charge for content, goods or services,

    b. whether other charges may apply,

    c. if the offer is for a recurring subscription plan; that the consumer will be charged automatically with no further action on the part of the consumer; the frequency with which the charge will automatically be made to the account in the absence of cancellation of the plan; and that the consumer will continue to receive the charges until the consumer cancels the plan,

    d. how to cancel the plan, and

    e. the mechanism for charging the consumer, e.g., "on your cellphone bill or deducted from your prepaid balance on your cellphone account."

    f. that the purchaser of the mobile content must be 18 years of age or older, or have obtained the consent

of the account holder for such purchases.

  2. if applicable, clearly and conspicuously disclose that the content is not available through all carriers and clearly and conspicuously disclose for each type of content, the carriers that support each type of content being advertised.

  3. if applicable, clearly and conspicuously disclose that the content is not available on all phones.

  4. Not permit, without disclosure, the inclusion in any offer a term or condition to its acceptance whereby the consumer agrees to accept advertising or promotional messages delivered electronically to cell phones via text messaging, e-mail or otherwise, that are unrelated to the current offer.

  5. not permit the placement of prechecked boxes in an offer intended to be used for acceptance of a term(s) or condition(s) of the offer.

 iii. require that a hyperlink to the terms and conditions of the offer is placed on every landline submit page, cellphone submit page and PIN Code submit page in the order path, unless the terms and conditions are posted on the page itself.

3. NiuTech shall continue to direct its compliance group to monitor Advertiser and Publisher compliance with the provisions of paragraph D. (2) relating to the Advertising

of Incentive Promotion Offers and Phone-Billed Offers appearing within NiuTech's Incentive Promotion Path.

### E. CONTRIBUTION

1. Upon execution of this AVC by NiuTech, NiuTech shall make a contribution to the OAG of $1,000,000 (one million dollars) payable to the Department of Legal Affairs' Revolving Trust Fund to cover attorneys' fees and costs associated with the matters resolved herein and to assist with future efforts to develop and implement industry-wide standards and best practices. Such payment shall be made to the Department of Legal Affairs' Revolving Trust Fund by check, payable to the Department of Legal Affairs' Revolving Trust Fund and delivered to Will Haselden, Assistant Attorney General, Office of the Attorney General, The Capitol, PL-01, Tallahassee, Florida 32399-1050.

### F. REPORTING REQUIREMENTS

1. Within thirty (30) days of the date of execution of this AVC, NiuTech shall use its best efforts to produce to the OAG an excel spreadsheet of NiuTech's contracted internet marketers of products and/or services who bill on landline or wireless phone bills, including, to the extent available, the internet marketer's name, physical address and the name and address of the advertiser's contact person.

### G. COOPERATION IN INVESTIGATIONS AND PROCEEDINGS

**IT IS AGREED** by the parties that for a period of twelve (12) months following entry of this AVC, NiuTech shall, following thirty (30) days written notice to

NiuTech's legal counsel, Greenberg Traurig, P.A., and an opportunity to object, reasonably and promptly cooperate with the OAG with regard to the matters that are the subject of the investigation of NiuTech and this resulting AVC, and related investigations, proceedings and actions concerning any other person, concerning internet marketing of goods and services. NiuTech shall use reasonable efforts to ensure that NiuTech's officers, directors and employees also fully and promptly cooperate with the OAG in such investigations, proceedings and actions and NiuTech agrees to promptly respond and address any complaints or other inquiries by Consumers about receipt of gift items.

## H. RECORDKEEPING PROVISIONS

1. **IT IS FURTHER AGREED** by the parties that for a period of twelve (12) months from the date of execution of the AVC, NiuTech shall retain those material records in connection with the Advertising of internet-marketed goods and services that it currently maintains, and shall make such records available for inspection following thirty (30) days notice to NiuTech's counsel with an opportunity to object.

2. **IT IS FURTHER AGREED** by the parties that for a period of twelve (12) months from the date of the execution of the AVC, NiuTech shall promptly notify the OAG of any changes in corporate structure that may affect compliance obligations arising under the AVC, including but not limited to a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor entity; the creation or dissolution of a subsidiary, parent, or affiliate entity that engages in any acts or

practices subject to this AVC; the filing of any bankruptcy petition; a change in the corporate name or address.

3. **IT IS FURTHER AGREED** by the parties that for a period of twelve (12) months from the date of the execution of the AVC, NiuTech shall notify the OAG of any material change in any corporate ownership or control.

4. For the purposes of this AVC, NiuTech shall, unless otherwise directed by OAG representatives, mail all written notifications to the OAG, identifying all written communications as in reference to OAG Case No. L07-3-1044, and sent to:

>   Will Haselden
>   Office of Attorney General
>   The Capitol, PL-01
>   Tallahassee, Florida 32399-1050.

5. For the purposes of this AVC, the OAG shall, unless otherwise directed by NiuTech, mail all written notifications to NiuTech to:

>   Mark Schnapp, Esq.
>   Greenberg Traurig, P.A.
>   1221 Brickell Avenue
>   Miami, FL  33131

6. For purposes of this AVC, if the OAG believes that a material breach of the AVC has occurred, the OAG shall give written notice to NiuTech within twenty (20) days of the alleged material breach. The notice shall describe in detail the claimed material breach. NiuTech shall have sixty (60) days from the receipt of the notice within which to provide a good faith written response to the OAG's notice. The response shall include, at a minimum, either:

A. A statement explaining why NiuTech believes it is in full compliance with the AVC; or

B. An explanation of how the alleged material breach occurred; and

BSI-JiCos-008225

1. A statement that the alleged breach has been cured, and explaining how; or

2. A statement that the alleged breach cannot be reasonably cured within sixty (60) days from receipt of the notice, but (1) NiuTech has begun to take corrective action to cure the alleged breach; (2) NiuTech is pursuing such corrective action with reasonable due diligence; and (3) NiuTech has provided the OAG with a detailed and reasonable timetable for curing the alleged breach.

## I. NO ADMISSION OF LIABILITY OR WAIVER OF DEFENSES

1. This AVC is not and shall not in any event be construed, deemed to be, and/or used as: (a) an admission or evidence of the validity of any claim that the OAG has or could assert against NiuTech or NiuNiu Ji, or an admission of any alleged wrongdoing or liability by NiuTech or Niuniu Ji; and/or (b) an admission or evidence of any fault, fact, act or omission of NiuTech or Niuniu Ji in any civil, criminal, or administrative proceeding in any court, administrative agency or other tribunal. Moreover, by entering into this AVC and agreeing to the terms and conditions provided herein, NiuTech does not intend to waive and does not waive any defenses it may have in any other action or proceeding that has been or may be brought against it by any person, entity or agency arising from advertising or promoting content. It is the specific intent that this AVC release NiuTech, Niuniu Ji, and all employees of NiuTech and its affiliates from any and all claims described in the lawsuits filed in the Circuit Court of Palm Beach County, Case No. 07-009272-MB-CA 09, and Case No. 50-2007-013940XXXXMB AD ("PBC Suit"), including any and all claims which could have been brought in said actions. The OAG recognizes that NiuTech and Niuniu Ji never intended to leave the jurisdiction of the State of Florida and,

further, that NiuTech and Niuniu Ji are committed to cooperating with the OAG to address best practices and standards for the internet marketing and advertising industry. Upon execution of this AVC by both parties, the OAG shall dismiss both cases with prejudice, the parties to bear their own fees and costs.

### J. APPLICATION, EFFECT AND OTHER TERMS

1. **IT IS FURTHER AGREED** by the parties that this AVC shall become effective upon its acceptance by the Attorney General, by and through a Deputy Attorney General who may refuse to accept it at his discretion. The receipt or deposit by the OAG of the monies called for in Section E of this Agreement does not constitute acceptance by the OAG, and such monies received will be immediately returned if the Attorney General does not accept this Agreement.

2. NiuTech will implement the terms of this AVC within one hundred twenty (120) days following the effective date of the AVC.

3. No waiver, modification or amendment of the terms of this AVC shall be valid or binding unless made in writing, signed by the parties and then only to the extent set forth in such written waiver, modification, or amendment.

4. This AVC shall be governed by, construed and enforced exclusively in accordance with and subject to the laws of the State of Florida, including, but not limited to, its choice of law principles.

5. No waiver of any term, provision, or condition of this AVC, whether by conduct or otherwise, in any one or more instances, shall be deemed to be, or shall constitute, a waiver of any other provision hereof, whether or not similar, nor shall such waiver

constitute a continuing waiver, and no waiver shall be binding unless executed in writing by the party making the waiver.

6. If any clause, provision, or section of the AVC shall, for any reason, be held illegal, invalid, or unenforceable, such illegality, invalidity, or unenforceability shall not affect any other clause, provision, or section of this AVC, and this AVC shall be construed and enforced as if such illegal, invalid, or unenforceable clause, section, or other provision had not been contained herein.  If the United States Federal Trade Commission ("FTC") subsequent to execution of this AVC adopts rules or regulations imposing lower standards or requirements than those specified in this AVC or enters into an agreement with a competitor of NiuTech's agreeing to lower standards, or if the OAG enters into a subsequent AVC imposing lower standards or requirements than those specified in this AVC, NiuTech shall conform to such standards or requirements rather than those specified in this AVC.

7. NiuTech shall be responsible for delivering a copy of this AVC to all of their officers, directors, successors, and managers within ten (10) days of the date of execution of this AVC. NiuTech must also deliver a summary (to be agreed upon by NiuTech and the OAG) of Paragraph D of this AVC to their publishers, affiliate entities, and Phone-Billed Offer providers with whom they currently do business related to the subject matter of this AVC.  This summary will be provided within ten (10) days of agreement by NiuTech and the OAG on its content.  For current personnel, delivery shall be within 10 days of the date of execution of this AVC.

8. NiuTech shall not effect any change in the form of doing business or their organizational identity for the purpose of avoiding the terms and conditions set forth in this AVC.

9. Violations of this AVC shall subject NiuTech to civil penalties and sanctions provided by law, and payment of attorney's fees and costs incurred in enforcing the provisions of this AVC.

10. This AVC shall become effective upon its execution by all parties.

**IN WITNESS WHEREOF**, NiuTech [for all named parties] _____, has caused this Assurance of Voluntary Compliance to be executed by _____, as_____ of _____, as a true act and deed, in _____ County, _____, this \_\_\_\_ day of _____, 2008.

By my signature I hereby affirm that I am acting in my capacity and within my authority as _____ of _____, and that by my signature I am binding the corporation to this agreement.

_____

_____

By: _____, _____

STATE OF _____
COUNTY OF _____

BEFORE ME, an officer duly authorized to take acknowledgments in the State of_____, personally appeared_____, as _____ of _____, and acknowledged before me that he executed the foregoing instrument for the purposes therein stated, on this \_\_\_\_ day of _____, 2008.

Sworn to and subscribed before me this ___ day of _____, 2008.

_____

_____(print name)
NOTARY PUBLIC

_____
(Print, type or stamp commissioned name of Notary Public)

Personally known ____ or Produced Identification _____ (check one)

Type of Identification Produced:
_____

_____
WILLIAM M. HASELDEN
ASSISTANT ATTORNEY GENERAL

Accepted this ____ day of _____, 2008.

_____
_____
Deputy Attorney General
OFFICE OF THE ATTORNEY GENERAL
The Capitol, PL-01
Tallahassee, Florida 32399-1050
(850) 487-1963

*FTL 106,929,498v1 1/14/2008*