# EXHIBIT 4

IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT IN
AND FOR PALM BEACH COUNTY,
FLORIDA

CASE NO.:

**50 2005 CA 0 0 8 5 1 5 XXXX NB**
JL

AG

STEVEN R. LEVINE,

        Plaintiff,

vs.

NIUTECH, LLC, and NIUNIU JI,

        Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, STEVEN R. LEVINE, by his undersigned counsel, hereby sues Defendants

NIUTECH, LLC and NIUNIU JI, and alleges as follows:

### I.    JURISDICTION AND PARTIES

1.    This is an action for damages in excess of $15,000.00 exclusive of attorney's fees
and costs.

2.    At all times material hereto, Plaintiff, STEVEN R. LEVINE, ESQ. (hereinafter
"LEVINE") was and is a resident of Broward County, Florida.

3.    At all times material hereto, Defendant, NIUTECH, LLC (hereinafter
"NIUTECH") was and is a Florida limited liability corporation licensed to and conducting
business in Palm Beach County, Florida.

4.    At all times material hereto, Defendant, NIUNIU JI (hereinafter "NIUNIU") was
and is a resident of Palm Beach County, Florida.

ADORNO & YOSS, LLP
350 East Las Olas Boulevard • Suite 1700 • Fort Lauderdale, Florida 33301 • Telephone (954) 763-1200 • Facsimile (954) 766-7800

5.    At all times material hereto, NIUNIU was the principal owner of NIUTECH and served in various capacities as a director, manager and product developer.

6.    On or about October 5, 2004, LEVINE began employment with NIUTECH as an Assistant General Counsel. LEVINE's immediate supervisor was NIUTECH's General Counsel, Homer Appleby ("Appleby").

7.    LEVINE's responsibilities as Assistant General Counsel included providing legal consultation, guidance and legal opinions on a wide variety of legal issues and risks.

8.    LEVINE, as an active member of The Florida Bar was, at all times material hereto, bound by the Florida Rules of Professional Conduct and by any and all ethical obligations created by common law, statute or otherwise.

## II.    NIUTECH'S BUSINESS OPERATIONS AND RELATIONSHIPS

9.    At all times material hereto, NIUTECH was primarily engaged in the business of online internet incentive promotions and advertising. NIUTECH solicited business through two main types of promotions, internet pop-up or banner ads and mass e-mail solicitations.

10.    Specifically, NIUTECH offered incentive based rewards such as free products or cash equivalents in exchange for the customer participating in and completing various surveys and promotional offers that appeared as pop-up or banner ads on internet websites.

11.    When a consumer clicked on the ad, they would be taken to a NIUTECH landing page and would be directed to complete a series of steps prior to qualifying for the "free" gift. In order to qualify for a "free" gift, the consumer always had to purchase something or sign up for some type of service.

12.    NIUTECH owned dozens of different websites, all with different domain names, to conceal its identity from the public.

ADORNO & YOSS, LLP
350 East Las Olas Boulevard · Suite 1700 · Fort Lauderdale, Florida 33301 · Telephone (954) 763-1200 · Facsimile (954) 766-7800

13.     NIUTECH, through the above-referenced websites and domains, contracted with other websites and domains to run its pop-up or banner ads (hereinafter "Partners").

14.     In order to conduct mass e-mail solicitations, NIUTECH contracted with and/or associated with thousands of "affiliate marketers" (hereinafter "Affiliates"). The Affiliates owned or had access to millions of e-mail addresses through comprehensive lists. The Affiliates sent e-mails in bulk to prospective NIUTECH customers on NIUTECH's behalf and at NIUTECH's direction.

15.     Internet advertising laws have been enacted and continue to evolve as Internet popularity grows. NIUTECH needed a legal staff to help it keep informed on industry standards and the law.

16.     NIUTECH created compliance guidelines ("Compliance Guidelines") to assist it in ensuring that its operations were legal. These guidelines also created an internal audit team that would monitor the conduct of NIUTECH employees and monitor the practices of all NIUTECH Affiliates and Partners. The goal of this program was for NIUTECH to police their actions, to ensure compliance with all laws and regulations and to ensure that the Affiliates and Partners published the appropriate content in the appropriate manner.

17.     NIUTECH also created an "Oversight Committee" to monitor in-house conduct and to ensure compliance with all laws and regulations. NIUTECH's Oversight Committee ("Committee") was the company's highest regulatory authority and was comprised of three upper level managers.     The Oversight Committee was specifically created pursuant to NIUTECH's Compliance Guidelines. Although, neither LEVINE nor the company's General Counsel, Appleby, served on the Committee, at least one member of NIUTECH's legal staff was required to attend and observe all Committee meetings.

ADORNO & YOSS, LLP
350 East Las Olas Boulevard · Suite 1700 · Fort Lauderdale, Florida 33301 · Telephone (954) 763-1200 · Facsimile (954) 766-7800

### III.   **LEVINE'S RESPONSIBILITIES AT NIUTECH**

18.   Upon his hiring, LEVINE understood that his first priority for NIUTECH was to ensure that the company was in compliance with applicable law.

19.   NIUTECH, under the authorization of NIUTECH's owner, NIUNIU, assigned LEVINE the responsibility of creating and developing the Compliance Guidelines referenced in Paragraph 16, supra.

20.   NIUTECH's Compliance Guidelines were created with two (2) objectives:  1) they were meant to educate NIUTECH employees and management about the law and allow NIUTECH to adapt/conform business practices to comply with the law and thus established a procedure for NIUTECH management to communicate with the legal staff and direct corporate policy; and 2) to ensure that the Affiliates and Partners published appropriate content in the appropriate manner.

21.   In developing the Compliance Guidelines, LEVINE, along with a senior project manager, interviewed NIUTECH employees and supervisors from every department.  By November, 2004, LEVINE submitted a final version of the Compliance Guidelines to Appleby to be enacted by NIUTECH management.  NIUTECH was reluctant to sign the guidelines when presented by Appleby.

22.   On or about November 5, 2004, NIUNIU executed a memorandum to all employees at NIUTECH which put into action the Compliance Guidelines known as "Niutech Corporate Compliance Guidelines".

23.   LEVINE personally knew that the Compliance Guidelines were of utmost importance to NIUTECH because the long-term prosperity of the company depended on maintaining compliance with all applicable laws and regulations.

ADORNO & YOSS, LLP
350 East Las Olas Boulevard · Suite 1700 · Fort Lauderdale, Florida 33301 · Telephone (954) 763-1200 · Facsimile (954) 766-7800

24.    LEVINE was regularly requested by NIUTECH employees and management to render advice on day to day activities of NIUTECH. LEVINE was consulted on a wide variety of issues, including advertising law issues (false and deceptive advertising), licensing issues and trademark/copyright issues.

25.    LEVINE studied CANSPAM, the law that governed spam e-mail, to advise NIUTECH and ensure company compliance. LEVINE personally understood that he was required to facilitate NIUTECH's compliance with CANSPAM because if NIUTECH failed to comply with CANSPAM, the company would be subject to fines and penalties and the corporation would be otherwise at risk.

26.    LEVINE regularly communicated with NIUTECH management and rendered numerous opinions about NIUTECH's compliance with CANSPAM.

27.    LEVINE also rendered advice and consulted NIUTECH management on trademark disputes with a multitude of branded companies that contended that NIUTECH's advertising practices violated their trademarks.

28.    LEVINE oversaw and coordinated NIUTECH responses to inquiries from governmental agencies and the Better Business Bureau with respect to fraud allegations and customer complaints.

29.    LEVINE reviewed NIUTECH contracts with Affiliates, Partners and customers. LEVINE would also customarily be asked to render a "risk assessment" as to the feasibility of entering contracts with Partners.

30.    LEVINE was routinely invited to attend NIUTECH management level meetings that dealt with NIUTECH's growth prospects and strategies. LEVINE was regularly consulted during these meetings regarding his opinions on the propriety of NIUTECH's practices.

ADORNO & YOSS, LLP
350 East Las Olas Boulevard · Suite 1700 · Fort Lauderdale, Florida 33301 · Telephone (954) 763-1200 · Facsimile (954) 766-7800

## IV.  LEVINE'S DISCOVERY OF IMPROPER CONDUCT - - THE DISREGARD OF LEVINE'S ADVICE AND ALIENATION OF LEVINE

31.    LEVINE personally understood that pursuant to his ethical responsibilities as an attorney, he had a duty to keep NIUTECH management informed of any breaches of the Compliance Guidelines and applicable law.   LEVINE attempted to monitor NIUTECH management's activities to make sure they were following NIUTECH's policies and guidelines and behaving in a manner consistent with their initial directives to LEVINE and LEVINE's advice as to legal compliance.

32.    At all material times, LEVINE personally understood that he had an ethical obligation to alert NIUTECH management to willful violations of law and the Compliance Guidelines by employees, including NIUNIU.

33.    LEVINE, as per the Compliance Guidelines and Rule 4-1.13 of the Florida Rules of Professional Conduct, submitted written memorandum to the Committee whenever he perceived breaches of company policy or was alerted to significant risks to the organization.

34.    In mid-November, 2004, LEVINE became aware of a serious risk to NIUTECH involving potential fraud allegations.  He also learned of allegations related to potential tax issues.

35.    On November 16, 2004, LEVINE received an e-mail from NIUTECH's Director of Client Services.  The e-mail chain reflects an e-mail from the Director of Client Services to NIUTECH's owner, NIUNIU, regarding high value "third-page offers".  In the e-mail, NIUNIU was advised that he was making the promotions too difficult to complete (and thus NIUTECH would not have to pay the reward) and he was "forcing people into a situation where [it was] impossible for them to succeed."

ADORNO & YOSS, LLP
350 East Las Olas Boulevard · Suite 1700 · Fort Lauderdale, Florida 33301 · Telephone (954) 763-1200 · Facsimile (954) 766-7800

36.     LEVINE immediately commenced an investigation into the matters contained within the e-mail which included meeting with several key employees at NIUTECH.

37.     Based on his findings, LEVINE submitted a memorandum to the Committee on November 22, 2004 advising them of potentially serious risks that NIUTECH committed fraud, false advertising and deceptive/unfair trade practices.

38.     The November 22, 2004 memorandum clearly articulated LEVINE's concerns that certain NIUTECH "high value" promotions could put the company at serious risk in that NIUTECH's practices were potentially in violation of applicable laws and regulations. They were also in contravention of the newly enacted Compliance Guidelines. LEVINE advised the Committee to meet and discuss the matter. LEVINE further advised of alternate promotions which would be more consistent with applicable laws and regulations as reflected in the Compliance Guidelines.

39.     The Committee did not respond to LEVINE's November 22, 2004 memo. To the best of LEVINE's knowledge, the Committee never met to discuss the matter. LEVINE's supervisor, Appleby, received a copy of the memorandum but also failed to respond to LEVINE. To the best of LEVINE's knowledge, NIUTECH's management disregarded his advice.

40.     LEVINE had reason to believe that NIUNIU was not concerned with legitimizing NIUTECH and making it a compliant organization. Rather, it appeared to LEVINE that NIUNIU was solely concerned with maximizing his own personal profit to the detriment of NIUTECH while doing everything possible to shield himself from personal liability.

41.     In late December, 2004, LEVINE advised NIUTECH management and Appleby of a perceived conflict of interest/ethical problem related to LEVINE's advice and counsel to NIUTECH as to risk assessments related to contractual relationships with Partners.

ADORNO & YOSS, LLP
350 East Las Olas Boulevard · Suite 1700 · Fort Lauderdale, Florida 33301 · Telephone (954) 763-1200 · Facsimile (954) 766-7800

42.     Specifically, LEVINE observed that it was an unwritten policy of NIUTECH to fail to enforce their contracts with Partners. If a Partner breached a contract, LEVINE was forbidden from demanding compliance with the contract or filing an appropriate lawsuit and from contacting the offending Partners. Upon information and belief, LEVINE was precluded from taking the actions necessary to protect the interests of NIUTECH, by and through the direction of NIUNIU. NIUTECH's actions (at the apparent direction of NIUNIU) made it impossible for LEVINE to render an appropriate risk assessment and to fulfill his ethical obligations to the corporation, NIUTECH. Such actions placed LEVINE in a conflict of interest and raised concern that LEVINE may somehow become implicated in improper NIUTECH conduct.

43.     Appleby, as a member of The Florida Bar, is and was at all material times aware of his, and LEVINE's ethical obligations to NIUTECH. Appleby was thus expressly aware of the conflict of interest which had been created and of the concomitant implications to LEVINE's future employment.

44.     LEVINE specifically advised the Director of Client Services and Appleby that in his opinion, he had a conflict of interest and was concerned that he was unable to fulfill his duties to NIUTECH. If LEVINE rendered a risk assessment on a contract but NIUTECH failed to enforce the safeguards within the contract and was subsequently harmed, LEVINE was concerned that he would be wrongfully scrutinized for authorizing the contract in the first place. LEVINE thus requested that he be given authority to cause NIUTECH to enforce their contracts and punish offending parties for breaches thereof, or, alternatively that NIUTECH refrain from seeking risk assessments from him. LEVINE recommended that he and NIUTECH obtain

{JMIELE/009900.0006/N0555694_1}                           8

ADORNO & YOSS, LLP
350 East Las Olas Boulevard · Suite 1700 · Fort Lauderdale, Florida 33301 · Telephone (954) 763-1200 · Facsimile (954) 766-7800

clarification from The Florida Bar's ethics committee as to the proper role and responsibilities of NIUTECH's legal staff.

45.     Rather than obtain such an opinion, and because LEVINE would not acquiesce in this conduct to the detriment of NIUTECH, LEVINE was instructed that he no longer would be asked to render risk assessments on contracts and therefore there was no reason to consult The Florida Bar.

46.     NIUTECH's General Counsel, Appleby, was present during a meeting where this matter was discussed with NIUTECH management.  Appleby remained silent although he too was a member of The Florida Bar.  Furthermore, Appleby took no position in the presence of LEVINE as to LEVINE's opinion that NIUTECH should seriously re-evaluate their tolerance of contractual breaches by their Partners and Affiliates.

47.     As a result, in part, of the tolerance for contractual breaches by the Partners and Affiliates, it became clear to LEVINE that NIUNIU and/or Appleby had some personal interest therein which was contrary to the long-term well-being and survival of NIUTECH as a corporation.

48.     In approximately late December, 2004, LEVINE was asked to render an oral opinion on an advertising campaign offering free trips to Las Vegas and Hawaii.  The campaign was to begin immediately.  LEVINE understood that any delay, given it was holiday time, would prove very costly to NIUTECH.

49.     During a meeting with NIUNIU, LEVINE was informed that NIUTECH had no intention of actually providing an airline ticket or hotel accommodations to customers who ostensibly earned the "reward."  Instead, participants would receive the cash equivalent of such a trip (commencing from the least expensive or most convenient connecting city).

{JMIELE/009900.0006/N0555694_1}          9

50.     LEVINE knew that NIUTECH was not a licensed travel agent.   LEVINE felt NIUTECH's plan was inherently risky and deceptive.   LEVINE specifically advised NIUNIU and other NIUTECH management that in his opinion, plans for the promotion should be discontinued immediately.   In the alternative, LEVINE suggested NIUTECH obtain an opinion from outside counsel before commencing the program.

51.     At the direction of NIUNIU, contrary to LEVINE's opinion or suggestion to seek an additional legal opinion, NIUTECH commenced the promotional program offering free travel packages.

52.     To the best of LEVINE's knowledge, none of NIUTECH's customers ever received an airline ticket, hotel accommodation or even a travel voucher from NIUTECH.   To the best of LEVINE's knowledge, nobody ever went to Hawaii or Las Vegas on a trip fully paid for by NIUTECH.

53.     After this incident, it became clear to LEVINE that NIUNIU did not want him to provide honest opinions if such opinions were contrary to NIUNIU's personal financial interests and revenue generation.   It also became clear that NIUNIU did not want NIUTECH to genuinely follow the Compliance Guidelines because it would be less profitable to do so.

54.     As a result of the above and of LEVINE's ethical responsibilities to NIUTECH, LEVINE's ability to remain as the company's Assistant General Counsel was in jeopardy.   His continued employment appeared to be conditioned on his providing opinions only supportive of NIUNIU's practices, even if those opinions were contrary to law or carried excessive risk to NIUTECH.   It appeared to LEVINE that NIUNIU was attempting to further insulate himself from personal risk by ostensibly obtaining a legal opinion consistent with his improper business practices.

ADORNO & YOSS, LLP
350 East Las Olas Boulevard • Suite 1700 • Fort Lauderdale, Florida 33301 • Telephone (954) 763-1200 • Facsimile (954) 766-7800

55.    As LEVINE voiced his concerns, he was ignored by NIUTECH management, and, more specifically, NIUNIU.

56.    For approximately three weeks after LEVINE personally advised NIUNIU against the travel promotions, NIUNIU avoided any and all direct communication with LEVINE contrary to prior patterns.

57.    The Director of Sales ultimately advised LEVINE that NIUNIU was unhappy with LEVINE's opinions because he felt that those opinions were too "cautious."

58.    In approximately early January, 2005, LEVINE's workload greatly diminished. LEVINE was not invited to attend management level meetings which were held every Monday afternoon. Until then, LEVINE was routinely present at similar meetings.

59.    LEVINE noticed that another manager, the Director of Client Services, stopped consulting LEVINE on legal issues and instead, met directly with Appleby. LEVINE was not invited to attend these meetings and on one occasion, LEVINE entered the room and was asked to leave. This was a drastic change from prior practice and procedure.

60.    LEVINE believed and ultimately learned that NIUTECH, at the direction of NIUNIU and Appleby, was knowingly concealing and misrepresenting the on-going improper practices.

61.    On January 26, 2005, LEVINE submitted an e-mail memorandum to the Committee regarding significant risks caused by illegal e-mails being sent and with customers not receiving rewards due to them.

62.    In the memorandum, LEVINE requested that the Committee meet to discuss the risks and that LEVINE be invited to attend that meeting. The Committee never responded.

63.    The Committee disregarded LEVINE's advice and to the best of LEVINE's knowledge, never met to discuss the illegal e-mails or the potential customer fraud/fulfillment issues before LEVINE's departure.

64.    As a result of NIUNIU's and NIUTECH's management's blatant avoidance of LEVINE and apparent business improprieties accomplished at the direction of NIUNIU (and the legal and ethical issues presented thereby), it was clear that NIUNIU and NIUTECH had effectively and constructively abrogated LEVINE's duties and responsibilities.

65.    In early February, 2005, LEVINE expressed all of his concerns to NIUTECH's General Counsel, Appleby, during a meeting in Appleby's office.

66.    LEVINE advised Appleby that he felt his employment status at NIUTECH was conditioned upon his providing opinions to substantiate the correctness of NIUNIU's improper business decisions designed solely to make NIUNIU the most money irrespective of the risk inherent to NIUTECH. LEVINE believed NIUNIU was not serious in legitimizing NIUTECH and complying with the law.

67.    LEVINE advised Appleby of the behavioral changes of NIUTECH management towards him and that he was getting the "cold shoulder", especially from the company's owner, NIUNIU.

68.    LEVINE advised Appleby that his wife was expecting their first child in the summer and asked Appleby if he was about to be fired so that he could begin searching for new work.

69.    LEVINE advised Appleby that his workload was almost non-existent despite the fact NIUTECH's growth recently exploded from under fifty employees to almost one hundred.

ADORNO & YOSS, LLP
350 East Las Olas Boulevard • Suite 1700 • Fort Lauderdale, Florida 33301 • Telephone (954) 763-1200 • Facsimile (954) 766-7800

70.     LEVINE advised Appleby that the NIUTECH personnel universally discontinued responding to his inquiries for information pertaining to legal matters or risk.   LEVINE specifically mentioned that NIUTECH personnel ignored his January 26, 2005 memorandum and request for Committee action.

71.     LEVINE advised Appleby that in his opinion, NIUTECH, at the direction of NIUNIU, was willfully violating their own Compliance Guidelines and that such behavior would prove harmful to NIUTECH.

72.     Finally, LEVINE advised Appleby of concerns with his personal well-being and potential issues related to The Florida Bar and criminal exposure because of the activities on-going at NIUTECH.

73.     Appleby advised LEVINE that he would not be held responsible for NIUTECH's activities and assured LEVINE that NIUTECH was still committed to following the Compliance Guidelines.   Appleby, however, provided no explanation for the drastic change in LEVINE's responsibilities or the attitude of NIUNIU and NIUTECH's management.   Nor did Appleby dispute LEVINE's opinions as to the questionable nature of NIUTECH's business activities.   At the conclusion of the meeting with Appleby, LEVINE ended the meeting by requesting Appleby to involve him more in NIUTECH's activities in the same manner as when he was first hired. Appleby agreed.   Appleby advised LEVINE that there were no immediate plans to terminate his employment.

74.     Despite Appleby's assurances as set forth above, nothing changed. LEVINE would come to work in the morning and had nothing to do.

75.     In contrast, NIUTECH's legal problems continued to worsen.

ADORNO & YOSS, LLP
350 East Las Olas Boulevard • Suite 1700 • Fort Lauderdale, Florida 33301 • Telephone (954) 763-1200 • Facsimile (954) 766-7800

76.     During the first quarter, 2005, fraud and consumer complaints against NIUTECH with the Better Business Bureau ("BBB") skyrocketed.  No one at NIUTECH advised LEVINE of the magnitude of the problem or requested his assistance to resolve the matters as had been customary in the past.

77.     LEVINE did not learn of the true nature of NIUTECH's BBB problems until he viewed a March 18, 2005 article about the company that appeared in the San Francisco Chronicle.  The article appeared as a result of a "Google" search routinely conducted by LEVINE to keep abreast of any issues developing with NIUTECH.

78.     Also during the first quarter, 2005, the Florida Attorney General's Office began an investigation of NIUTECH due to excessive customer fraud complaints.

79.     LEVINE was advised of the investigation by Appleby, but was never consulted by NIUTECH management or NIUNIU.  Oddly, nobody at NIUTECH ever spoke with LEVINE about the investigation even though LEVINE understood it was part of his job description to handle such matters on NIUTECH's behalf.

80.     When the Attorney General's Office met with NIUTECH representatives, LEVINE was shocked to learn that he was not welcome to attend and observe the meeting.

81.     In addition to the escalating consumer fraud issues, NIUTECH faced a serious threat in March, 2005 when it was discovered that NIUTECH's competition was sending illegal spam e-mails and forged NIUTECH's domain information.  As a result, NIUTECH was blamed for sending or causing to be sent illegal e-mails.

82.     NIUTECH was aware of the situation but prohibited LEVINE from intervening.  Drafts of a cease and desist letter were sent to NIUTECH management by LEVINE but same were ignored.

ADORNO & YOSS, LLP
350 East Las Olas Boulevard · Suite 1700 · Fort Lauderdale, Florida 33301 · Telephone (954) 763-1200 · Facsimile (954) 766-7800

83.     LEVINE received an e-mail from the head of NIUTECH's audit team on March 21, 2005 advising him that the forged e-mails continued for over two weeks.

84.     As referenced in the response from LEVINE, NIUTECH forbid LEVINE from taking any legal action against the offending party. LEVINE suggested the audit team provide a detailed memo to the Committee. To the best of LEVINE's knowledge, the Committee ignored any and all requests to take action.

85.     Following the March 21, 2005 e-mail, LEVINE continued to perceive significant risk associated with the above referenced abuses by NIUTECH's competitor.

86.     Specifically, the illegal e-mails were in direct violation of NIUTECH's out of court settlement agreement with a major company related to alleged trademark/copyright violations. Through numerous telephone conversations with the company, LEVINE became aware that litigation risk was growing exponentially each day. LEVINE did his best to cooperate with the company and explain to the company that NIUTECH should not be held responsible for the actions of a third-party.

87.     On March 28, 2005, LEVINE sent an e-mail to NIUTECH's owner, NIUNIU and the Vice-President of Operations pleading with them to take action or to allow him to take action as their attorney.

88.     Despite the fact that four people received the e-mail, including NIUNIU and Appleby, nobody responded. LEVINE's plea to take reasonable legal action was ignored.

89.     Three days later on March 31, 2005, LEVINE sent an e-mail to five people at NIUTECH requesting information regarding a Sony Playstation promotion to ensure compliance with a prior settlement agreement.

{JMIELE/009900.0006/N0555694_1}                    15

ADORNO & YOSS, LLP
350 East Las Olas Boulevard · Suite 1700 · Fort Lauderdale, Florida 33301 · Telephone (954) 763-1200 · Facsimile (954) 766-7800

90.     In the past, Sony accused NIUTECH of stealing their trademark and profiting from it without permission. LEVINE, on NIUTECH's behalf, settled the dispute out of court and warranted that NIUTECH would permanently cease and desist from any unlawful, unlicensed use of Sony's trademarks.

91.     LEVINE was advised that NIUTECH once again used Sony's trademarked images without a license. The promotion was run without LEVINE's knowledge and appears to have been deliberately concealed from LEVINE.

92.     LEVINE's March 31, 2005 e-mail was completely ignored.

93.     As a result of the foregoing, LEVINE was required to terminate his relationship with NIUTECH.

94.     LEVINE has retained the undersigned attorneys to protect his interests in this action and is obligated to pay the undersigned's legal fees for said representation.

95.     LEVINE has performed all conditions precedent to the institution of this action, or said conditions have been excused or otherwise waived.

## AS AND FOR A FIRST
## CAUSE OF ACTION
### (Constructive Discharge/Termination)

96.     LEVINE repeats and realleges each and every allegation contained in Paragraphs "1" through "95" above, with the same force and effect as if set forth more fully herein.

97.     As more fully described above, LEVINE was employed by NIUTECH as Assistant General Counsel to provide, among other things, legal consultation, guidance and legal opinions on a wide variety of issues and risks.

98.     During the course of LEVINE's employment with NIUTECH, LEVINE voiced his concerns regarding the legal risks associated with several of NIUTECH's policies, procedures and conduct directed, authorized and/or ratified by NIUNIU and/or Appleby and

{JMIELE/009900.0006/N0555694_1}                    16

NIUTECH's management. In fact, LEVINE advised Appleby, NIUNIU and several other management level personnel, on multiple occasions, of the unlawful practices undertaken by NIUTECH at the direction of NIUNIU.

99.    In response to these concerns, NIUNIU and NIUTECH refused to allow LEVINE to continue acting as Assistant General Counsel. More specifically, LEVINE was no longer provided an opportunity to voice his opinions on legal matters affecting NIUTECH, LEVINE was removed from responsibilities and duties which he was previously obligated to perform, and LEVINE was completely ignored by NIUNIU, Appleby and other managerial personnel at NIUTECH with respect to his legal opinions.

100.    Additionally, NIUNIU's and NIUTECH's actions made LEVINE feel uncomfortable, unwanted and unnecessary, among other things.

101.    NIUNIU and NIUTECH knew that they could not terminate LEVINE's employment without being subject to a retaliatory discharge claim, and thus, chose to make LEVINE as uncomfortable as possible in order to force his resignation from NIUTECH.

102.    Furthermore, in an effort to preclude LEVINE from doing his job and complying with the ethical responsibilities of a licensed Florida attorney, NIUNIU and NIUTECH ignored LEVINE, did not seek his advice or any legal issues and deliberately excluded him from meetings concerning legal issues and strategies effecting NIUTECH. They did so even after LEVINE had brought his concerns to their attention and he was assured that things would change.

103.    The foregoing precluded LEVINE from complying with his legal and ethical obligations and in performing the responsibilities of his job. As a result of the working

ADORNO & YOSS, LLP
350 East Las Olas Boulevard · Suite 1700 · Fort Lauderdale, Florida 33301 · Telephone (954) 763-1200 · Facsimile (954) 766-7800



conditions created by NIUNIU and NIUTECH, and the difficult situation they created for LEVINE's employment, LEVINE was forced to resign and did so.

104.    As a direct and proximate result of the foregoing, LEVINE suffered substantial damages.

## AS AND FOR A SECOND
## CAUSE OF ACTION
### (Hostile Work Environment)

105.    LEVINE repeats and realleges each and every allegation contained in Paragraphs "1" through "95" above, with the same force and effect as if set forth more fully herein.

106.    As more fully described above, LEVINE was employed by NIUTECH as Assistant General Counsel to provide, among other things, legal consultation, guidance and legal opinions on a wide variety of legal issues and risks.

107.    During the course of LEVINE's employment with NIUTECH, LEVINE voiced his concerns regarding the legal risks associated with several of NIUTECH's policies, procedures and conduct directed, authorized and/or ratified by NIUNIU and/or Appleby and NIUTECH's management.   In fact, LEVINE advised Appleby, NIUNIU and several other management level personnel, on multiple occasions, of the unlawful practices undertaken by NIUTECH at the direction of NIUNIU.

108.    In response to these concerns, NIUNIU and NIUTECH refused to allow LEVINE to continue acting as Assistant General Counsel.   More specifically, LEVINE was no longer provided an opportunity to voice his opinions on legal matters affecting NIUTECH, LEVINE was removed from responsibilities and duties which he was previously obligated to perform, and LEVINE was completely ignored by NIUNIU, Appleby and other managerial personnel at NIUTECH with respect to his legal opinions.

ADORNO & YOSS, LLP
350 East Las Olas Boulevard • Suite 1700 • Fort Lauderdale, Florida 33301 • Telephone (954) 783-1200 • Facsimile (954) 766-7800

109.   Additionally, NIUNIU's and NIUTECH's actions made LEVINE feel uncomfortable, unwanted and unnecessary, among other things.

110.   NIUNIU and NIUTECH knew that they could not terminate LEVINE's employment without being subject to a retaliatory discharge claim, and thus, chose to make LEVINE as uncomfortable as possible in order to force his resignation from NIUTECH.

111.   Furthermore, in an effort to preclude LEVINE from doing his job and complying with the ethical responsibilities of a licensed Florida attorney, NIUNIU and NIUTECH ignored LEVINE, did not seek his advice or any legal issues and deliberately excluded him from meetings concerning legal issues and strategies effecting NIUTECH. They did so even after LEVINE had brought his concerns to their attention and he was assured that things would change.

112.   The foregoing precluded LEVINE from complying with his legal and ethical obligations and in performing the responsibilities of his job.  As a result of the working conditions created by NIUNIU and NIUTECH, and the difficult situation they created for LEVINE's employment, LEVINE was forced to resign and did so.

113.   As a direct and proximate result of the foregoing, LEVINE suffered substantial damages.

**AS AND FOR A THIRD**
**CAUSE OF ACTION**
**(Retaliatory Personnel Action in Violation**
**of Section 448.102, Florida Statutes)**

114.   LEVINE repeats and realleges each and every allegation contained in Paragraphs "1" through "95" above, with the same force and effect as if set forth more fully herein.

115.   Pursuant to the Florida Whistle-Blower's Act, an employer can be liable to its employee for "retaliatory personnel action" taken against the employee based upon the

ADORNO & YOSS, LLP
350 East Las Olas Boulevard • Suite 1700 • Fort Lauderdale, Florida 33301 • Telephone (954) 763-1200 • Facsimile (954) 766-7800

employee's participation in any one of the following three types of protected whistle-blowing conduct:

(a)   Disclosure - An employee who discloses or threatens to disclose the employer's unlawful activity to a government agency;

(b)   Assistance - An employee who assists an agency with an on-going investigation of the employer's alleged unlawful activity; and

(c)   Objection - An employee who objects or refuses to participate in the employer's unlawful activity.

116.   During LEVINE's employment with NIUTECH, as more fully described above, LEVINE:

(a)   Engaged in statutorily protected expression by complaining to NIUNIU, NIUTECH and NIUTECH's management and/or principals of the ongoing noncompliance with regulatory guidelines; and

(b)   Suffered an adverse employment action in that LEVINE was forced to resign from NIUTECH on or about April 1, 2005 due to NIUNIU and NIUTECH's conduct in precluding LEVINE from fulfilling his job responsibilities and creating a hostile work environment due to LEVINE's complaints to NIUNIU, NIUTECH and NIUTECH's management and/or principals; and

(c)   There was a material causal relationship between LEVINE's forced resignation and the prior complaints regarding NIUTECH's noncompliance with the law and internal policies and procedures.

(d)   In addition, there was a material causal relationship between LEVINE's forced resignation and NIUTECH's lack of response to his previous complaints.

ADORNO & YOSS, LLP
350 East Las Olas Boulevard • Suite 1700 • Fort Lauderdale, Florida 33301 • Telephone (954) 763-1200 • Facsimile (954) 766-7800

(e)    NIUTECH and NIUNIU were aware of the foregoing protected expression at the time of the adverse employment actions against LEVINE.

117.    During LEVINE's employment with NIUTECH, as more fully described above, LEVINE objected to and/or refused to participate in, an activity, policy, or practice of NIUTECH which was in violation of a law, rule or regulation. Specifically, LEVINE pointed out, among other things, the following areas of noncompliance:

      (a)    deceptive and false advertising;
      (b)    fraud;
      (c)    CANSPAM;
      (d)    e-mail suppression lists; and
      (e)    trademark/copyright violations.

118.    LEVINE reported his concerns over the above-referenced violations to the designated management of NIUTECH, including NIUNIU; however, instead of being commended for his allegiance and loyalty to NIUTECH, he was reprimanded and ignored.

119.    As a direct and proximate result of the foregoing, LEVINE was forced to resign due to the differences in philosophy between himself, NIUNIU and NIUTECH which made for an uncomfortable and difficult work environment.

120.    LEVINE has retained the undersigned to represent him in this action and is obligated to pay the undersigned legal fees for said representation. Pursuant to Section 448.104, Florida Statutes, LEVINE is entitled to recover his attorneys' fees from NIUTECH and NIUNIU.

WHEREFORE, Plaintiff STEVEN R. LEVINE demands judgment against Defendants NIUTECH, LLC and NIUNIU JI, as follows:

A.    Enter a judgment for Plaintiff and against Defendants for compensatory and punitive damages;

B.    Award Plaintiff reasonable attorneys' fees pursuant to Section 448.104, Florida

Statutes, together with court costs, expenses and for such other and further relief as this Court

may deem just and proper; and

## DEMAND FOR JURY TRIAL

A trial by jury is demanded on all issues so triable as of right.


Dated: _September 8, 2005_


ADORNO & YOSS LLP


Jan Douglas Atlas
Florida Bar No. 226246
Joseph R. Miele, Jr.
Florida Bar No. 426636
350 East Las Olas Boulevard, Suite 1700
Fort Lauderdale, Florida 33301-4217
Phone: (954) 763-1200
Fax: (954) 766-7800


{JMIELE/009900.0006/N0555694_1}                          22

ADORNO & YOSS, LLP
350 East Las Olas Boulevard • Suite 1700 • Fort Lauderdale, Florida 33301 • Telephone (954) 763-1200 • Facsimile (954) 766-7800

STATE OF FLORIDA • PALM BEACH COUNTY
I hereby certify that the
foregoing is a true copy
of the record in my office.
THIS 8 DAY OF Nov , 20 10
SHARON R. BOCK
CLERK & COMPTROLLER
By _____
DEPUTY CLERK