## IN THE U.S. DISTRICT COURT FOR MARYLAND, SOUTHERN DIVISION

| | | |
|---|---|---|
| BEYOND SYSTEMS, INC. | * | |
| | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | **Case No.** 8:08-cv-00921 |
| | * | |
| WORLD AVENUE USA, LLC, ET AL. | * | |
| | * | |
| Defendants | * | |

### DECLARATION OF DANIEL L. BALSAM

I declare under penalty of perjury under the laws of State of Maryland that the following statements are true and correct.

I am over the age of 18 years, have personal knowledge of the mattes stated below, and am competent to testify to these matters.  I am an attorney admitted to practice law in the state of California.

I was the *pro se* plaintiff in *Balsam v. World Avenue USA, LLC*, Case No. 821162, Superior Court of California, County of San Francisco, which was tried in open court on August 31, 2007 and resulted in an appeal heard on May 1, 2008.  In that case I alleged that World Avenue USA, LLC had violated certain anti-spam laws.

The documents listed below as Exhibits 001 through 005 were filed in Case No. 821162 described above.  The descriptions of the documents below are accurate and correct. Accurate copies of those documents are attached to this Declaration.

Daniel L. Balsam
3145 Geary Blvd. #225
San Francisco, CA 94118
Phone: (415) 869-2873

Date:  November 23, 2010

Doc. # NY-13108 v.2

Exhibits

001 – 12/1/05 Letter from "Jeffrey Richard, Manager, Compliance and Policy Enforcement Officer," to Daniel L. Balsam.

002 – 5/27/08 Decision on Small Claims Trial de Novo, Superior Court of California, County of San Francisco, Case No. CSM-07-0821162, 14 pp.

003 – 9/20/07 Defendant World Avenue U.S.A., LLC's Trial Brief, signed by "Jeff Richard, World Avenue U.S.A., LLC, Defendant, In Propria Personam." Proof of Service by signature that appears to be Jeff Richard, stating "not a party to the within action."

004 – 9/21/07 Declaration of Jeff Richard in Support of Defendant World Avenue U.S.A., LLC"s Trial Brief, Case No. 821162, Decision on Small Claims Trial de Novo, Superior Court of California, County of San Francisco, Trial date: August 31, 2007; "Jeff Richard, Manager, Compliance and Assessment, World Avenue USA, LLC."

005 – 4/10/08 Defendant World Avenue U.S.A., LLC's Small Claims Appeal Trial Brief, signed by "Ira P. Rothken, Attorneys for Defendant World Avenue U.S.A., LLC." Proof of Service by signature that appears to be Jeff Richard, stating "not a party to the within action."

Doc. # NY-13108 v.2

# EXHIBIT 1

5255 North Federal Hwy, 3rd Fl.
Boca Raton, FL 33487
December 1, 2005

Daniel L. Balsam
3145 Geary Blvd. #225
San Francisco, CA 94118

Via FedEx

RE:   October 31, 2005 Letters to SuperbRewards, YourSmartRewards, Incentive Reward Center
& Allegations of Unlawful Email Advertising - Violations of California Civil Code § 1770

Dear Mr. Balsam,

I am writing to you regarding your letters referenced above of October 31, 2005 asserting
unlawful email advertising in violation of California Civil Code § 1770.  Your letters offer no facts
to support your allegations of deception.  Additionally, you have not provided any practical way for
us to analyze the integrity of your claims or to investigate such claims.

Accordingly, in order to allow a thorough and prompt investigation regarding your claims, please
provide further factual data that you contend supports your allegations, including, but not limited
to, full, unredacted email exemplars, including printed and digital versions with header data intact.

If we come to learn, after reviewing this evidence and doing an investigation, that a particular
email message is not in compliance with applicable law we would agree to take prompt remedial
action. If you provide your email address(es) we will opt you out, if under our control, immediately.

You should be aware that we diligently comply with applicable law regarding email advertising
and we honor agreements and requests to opt in and opt out.

You appear to allege some sort of "deception" related to the opt in/opt out procedure.  Please
provide the email address(es) which you claim were involved in the alleged "deception" so that
we can investigate your claim that you did not "opt in" or, by implication, that you may have opted
out. Without such data we cannot practically assist you.

Finally, it appears that your alleged claims would be preempted by the Federal CAN-SPAM Act,
since what you describe is the alleged sending of unsolicited email, rather than facts that would fit
any "deception" exception to preemption contemplated by Congress.

We look forward to receiving the additional information requested.

Sincerely,

Jeff Richard

Manager, Compliance and Policy Enforcement Office

# EXHIBIT 2

San Francisco Superior Courts
Information Technology Group

# Document Scanning Lead Sheet

May-28-2008 4:19 pm

Case Number: CSM-07-821162

Filing Date: May-27-2008 3:23

Juke Box: 001     Image: 02135500

DECISION ON SMALL CLAIMS TRIAL DE NOVO

BALSAM, DANIEL L. VS WORLD AVENUE U.S.A. LLC (FORMERLY NIUTECH LLC)

001C02135500

**Instructions:**
Please place this sheet on top of the document to be scanned.

IMAGED
MAY 28 2008

FILED
San Francisco County Superior Court

MAY 27, 2008

GORDON PARK-LI, Clerk
by:
Deputy Clerk

1
2
3
4
5
6
7
8            SUPERIOR COURT OF THE STATE OF CALIFORNIA
9                  COUNTY OF SAN FRANCISCO
10
11
DANIEL L. BALSAM,                              Case No. CSM-07-0821162
12
            Plaintiff,
13
vs.                                            DECISION ON SMALL CLAIMS
14                                             TRIAL DE NOVO
WORLD AVENUE U.S.A., LLC, a
15   Delaware Limited Liability Company
(formerly Niutech LLC),
16
            Defendants.
17
18
        On February 5, 2008 plaintiff obtained a Small Claims judgment of $500 plus costs
19
against defendant. Defendant timely filed a request for trial de novo. The matter was assigned
20
to the Honorable Mary E. Wiss presiding in Department 504. Plaintiff Daniel L. Balsam
21
appeared by Timothy Walton of Walton & Roess LLP. Defendant World Avenue U.S.A., LLC
22
appeared by Ira P. Rothken of Rothken Law Firm LLP. Trial proceeded on May 1, 2008,
23
witnesses were called and exhibits received. The matter was argued on May 6, 2008 and
24
submitted on that date. The court finds in favor of plaintiff for the reasons set forth below.
25
26
27

1

2

## 1.    Factual and Procedural History.

Plaintiff testified that he received 15 commercial electronic mail messages ("emails")

3

4

from defendant during the period May 20, 2005 to September 22, 2005. The emails were sent to

5

plaintiff's email account through his IP server and were downloaded into plaintiff's Inbox and

6

Spam folders. Plaintiff testified he clicked through the emails and found that they were

7

unsolicited commercial emails. On October 31, 2005 plaintiff wrote to defendant, on behalf of

8

himself and all others in California, and citing the California Legal Remedies Act (CLRA), Civil

9

Code section 1750 et seq., demanded that defendant desist from sending unsolicited commercial

10

emails. (Exhibit 101.) Plaintiff commenced suit in the Small Claims Division of this Court on

11

12

April 25, 2007 seeking damages and injunctive relief. The Small Claims hearing resulted in a

13

judgment for plaintiff in the amount of $500.

14

## 2.    Contentions of the Parties.

15

Plaintiff claims that the unsolicited commercial emails violate California Business and

16

Professions Code section 17529.5 and the California Legal Remedies Act because the subject

17

lines of the emails are misleading, the emails fail to identify the sender's or advertiser's name,

18

and/or contain misleading statements in the body of the emails.

19

20

Defendant raises a number of defenses. Defendant claims that under CLRA, plaintiff was

21

not damaged because there was no actual damage and no injury. Defendant further claims that

22

plaintiff's 30-day notice was invalid because plaintiff failed to provide his email address and

23

failed to attach copies of the emails so that defendant was prevented from investigating the

24

subject of the 30-day notice letter, thus frustrating the purpose of the CLRA which is to allow a

25

defendant to rectify an unfair or unlawful practice.

26

27

1   Defendant asserts that the federal Controlling the Assault of Non-Solicited Pornography

2   and Marketing Act of 2003 ("CAN-SPAM") found at 15 U.S.C. §7701, et seq., preempts Bus. &

3   Prof. C. §17529.5, except for claims in violation of state law prohibiting falsity or deception.

4   Defendant also claims that plaintiff is time barred because plaintiff seeks liquidated

5   damages of $1,000 per email which constitutes a penalty governed by the one year statute of

6   limitations set forth in California Code of Civil Procedure section 340(a).

7   Moreover, defendant contends that it prepared marketing or advertising copy but did not

8   send the emails. Instead, defendant has contracts with "affiliates" or third party entities which

9   purchase the advertising copy and then promote and disseminate the advertising through emails.

10  Defendant contends that its agreement with its affiliates provides that the affiliates must comply

11  with all applicable law and that if there is a violation of §17529.5 or the CLRA, it is not at fault.

## 3. **Defendant Is Not Liable Under the CLRA.**

Plaintiff testified that when he opened his email Inbox folder and Spam folder he found

the 15 unsolicited commercial emails from defendant. The emails can be characterized as

promotions for such things as baby goods, soft drinks, chocolate and other items. Plaintiff did

not do anything further with regard to the 15 emails, did not attempt to engage in or enter the

promotions, and did not click through to any of the web addresses on any of the promotions.

Plaintiff noted the unsolicited emails and later wrote a 30-day notice to desist to defendant

pursuant to the CLRA.

The Consumer Legal Remedies Act (Civil Code §1750 et seq.) is designed to protect

consumers against unfair and deceptive business practices. Under §1761(d) of the CLRA,

"[c]onsumer means an individual who seeks or acquires, by purchase or lease, any goods or

services for personal, family or household purposes." In the facts before this court, plaintiff

does not meet the definition of a consumer because he did not seek to or acquire by purchase or lease any goods or services. By his own testimony, plaintiff clicked through the emails, did not seek goods or services, and did not take any steps to acquire goods or services as a result of the emails. Thus, plaintiff does not have standing in this case to pursue a remedy under the Consumer Legal Remedies Act. Accordingly, the court need not address defendant's remaining arguments regarding the applicability of the CLRA.

### 4.    Violation of Bus. & Prof. C. §17529.5.

Defendant's representative testified that it contracts with various companies to promote products. Defendant prepares advertising and promotional material for email distribution. This advertising copy, created by defendant, includes the text contained in the body of the email and an approved subject line. Defendant enters into contracts with affiliates which distribute the promotions via email. Affiliates download the advertising copy and subject lines from defendant and send the emails. Recipients of the emails can respond to the promotions and obtain goods. Defendant's representative testified that defendant distributes millions of dollars of products to consumers who respond to the emails.

### 4(A).   California Bus. & Prof. C. §17529.5 Is Preempted in Part.

The initial question for the court is whether California Business & Professions Code 17529.5 is preempted by the federal CAN-SPAM Act (15 U.S.C. 7701, et seq).

Bus. & Prof. C. §17529.5 provides:

> (a) It is unlawful for any person or entity to advertise in a commercial email advertise in a commercial e-mail advertisement either sent from California or sent to a California electronic mail address under any of the following circumstances:
> (1) The e-mail advertisement contains or is accompanied by a third-party's domain name without the permission of the third party.
> (2) The e-mail advertisement contains or is accompanied by falsified, misrepresented, or forged header information. This paragraph does not apply to

truthful information used by a third party who has been lawfully authorized by the advertiser to use that information.
(3) The e-mail advertisement has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message.

Section (a)(1) is not at issue here because plaintiff does not contend, and there was no evidence adduced at trial, that the email advertisements contain or are accompanied by a third-party's domain name without the permission of the third party.

Section (a)(2) is relevant because plaintiff claims that the emails here contain misrepresented header information.

Section (a)(3) is also relevant in that plaintiff claims the advertisement has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents of the subject matter of the message.

The CAN-SPAM Act provides in §7707(b) "[t]his chapter supersedes any statute, regulation, or rule of a State . . . that expressly regulates the use of electronic mail to send commercial messages, except to the extent that any such statute, regulation, or rule prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto." Thus, a state statue survives preemption only to the extent it prohibits falsity or deception. Falsity and deception are not defined in CAN-SPAM. Two cases in particular are instructive in analyzing the whether plaintiffs claims are preempted in this case.

In *Omega WorldTravel, Inc. v. Mummagraphics, Inc.* (4th Cir. 2006) 469 F.3d 348 the Fourth Circuit analyzed the Oklahoma anti-span law. The Oklahoma statute made it unlawful for a person to initiate an email message that the sender knows or has reason to know (1) misrepresents any information in identifying the point of origin or the transmission path of the email; (2) does not contain information identifying the point of origin or the transmission path of

1    the email; or (3) contains false, malicious, or misleading information which purposefully or

2    negligently injures a person.

3           The Fourth Circuit held that this statute was preempted by the federal CAN-SPAM Act

4
5    because it was expanded liability to situations which reached beyond common law fraud and

6    deceit. The statute is not limited to inaccuracies in transmission of information that were

7    material, led to detrimental reliance by the recipient, or were made by a sender who intended

8    that the misstatements be acted upon and either knew them to be inaccurate or was reckless

9    about the truth. (*Id.* at p. 354.)

10          It held that "deception" requires more than "bare error" and "falsity" can be used to

11   convey an element of tortiousness or wrongfulness. The court looked to the findings enacted in

12
13   the CAN-SPAM Act which make it clear that Congress saw commercial email as presenting

14   both benefits and burdens. Thus, the Fourth Circuit held that the Act does not ban all

15   commercial emails nor does it impose strict liability for insignificant errors. Congress targeted

16   only emails containing something more than an isolated error. (*Id.* at p. 354-355.)

17          The Fourth Circuit held that the Oklahoma statute was preempted because it effectively

18
19   imposed a strict liability standard to all commercial email. Because it would be impossible for

20   an email sender to exclude Oklahoma recipients, the effect of the Oklahoma statute would be

21   that commercial email senders would be held to a strict liability standard. The strict liability

22   standard imposed by Oklahoma would become a de facto national standard even though the Act

23   indicates a less demanding standard would best balance the competing interests at stake. (*Id.* at

24   p. 356.)

25          In *Kleffman v. Vonage Holdings Corp.* (C.D.Cal.2007) 2007 U.S. Dist. LEXIS 40487 the

26   court concluded that CAN-SPAM preempts all state statutes that regulate commercial email

27

1   except those that violate traditional fraud and deception. In *Kleffman* the plaintiff alleged he

2   received emails which violated §17529.5 because the headers falsely implied that they

3   originated from different sources. The court rejected this claim on the ground that §17529.5

4   does not prohibit the use of multiple email address and/or domain names for the sole purpose of

5   bypassing spam-filters and blacklists. Moreover, even if it did, the claim would be preempted

6   by the CAN-SPAM Act because it is not based on traditional tort theory.

7

8       This court agrees with the analyses set forth in *Omega* and *Kleffman*. Section

9   17529.5(a)(2) imposes strict liability for false, misrepresented or forged header information.

10  Thus, the court finds that plaintiff's claims that the headers contain misrepresentations in

11  violation of 17529.5(a)(2) are preempted by the CAN-SPAM Act.

12

13      Section 17529.5(a)(3) prohibits email advertisements which have a subject line that a

14  person knows would be likely to mislead a recipient, acting reasonably under the circumstances,

15  about a material fact regarding the contents or subject matter of the message. The court finds

16  that subdivision (a)(3) is not preempted because it requires knowledge and proof of a material

17  misrepresentation.

18      **4(B)   Liability of Defendant Under Section 17259.5(a)(3).**

19

20      Defendant claims that it is not liable under §17529.5(a)(3) because it did not send any of

21  the 15 emails in question. However, the plain language of §17529.5 does not require plaintiff to

22  show that defendant sent the emails. Instead, it requires plaintiff to show that defendant

23  advertised in a commercial email advertisement. Defendant does not dispute that it was the

24  author of the advertisements included in the 15 advertisements at issue in this case. Thus, it

25  advertised in a commercial email advertisement.

26

27

Defendant further contends that §17529.5 conflicts with CAN-SPAN based upon 15 U.S.C. 7705. Defendant's reliance of section 7705 is misplaced. That section protects the provider of the product being promoted (e.g. in this instance Hershey's, Pepsi, etc.), not defendant.

Thus, the question is whether any of the e-mail advertisements "have a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message" in violation of §17529.5(a)(3).

Five of the 15 emails have subject lines that mislead a recipient:

Exhibit 105 contains the subject line "Pepsi* or Coke*? – Receive $100 in gifts by joining our name brand cola survey?" However, the content of the email states "Receipt of your item requires compliance with offer terms, including: age and residency requirements; registration with valid email address, shipping address and contact phone number; completion of user survey and sponsor promotions."

Exhibit 107 contains the subject line "Hershey's* vs. Ghiradelli* get $100 in gifts by taking our survey now." However, the content of the email provides "Receipt of your item requires compliance with offer terms, including: age and residency requirements; registration with valid email address, shipping address and contact phone number; completion of user survey and sponsor promotions."

Exhibit 113 contains the subject line "Test a SONY PSP and keep it if you like it." However, the content of the email provides that "receipt of the membership incentive gift requires completion of offer terms, including: age and residency requirements, registration with a valid email address, completion of user survey, sponsor promotions and shipping address

verification." Only when all of these requirements are completed will the recipient receive the "incentive gift".

Exhibit 115 contains the subject line "Upgrade your kitchen with this Refrigerator on us." However, the content of the email provides "Receipt of your item requires compliance with offer terms, including: age and residency requirements, registration with valid email address, shipping address and contact phone number, completion of user survey and sponsor promotions."

Exhibit 116 contains the subject line "Complimentary $300 Visa Gift Card Giveaway." However, the content of the email provides "Receipt of your item requires compliance with offer terms, including: age and residency requirements; registration with valid email address, shipping address and contact phone number; completion of user survey and sponsor promotions."

The court finds that these emails violate §17529.5(a)(3) because the emails have a subject line that mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message, that is, that the recipient will receive free products but instead the recipient is required to participate in promotions and surveys in order to be eligible for the "free" products.

**4(C). Damages for Violation of Section 17529.5.**

Pursuant to Bus. & Prof. C. §17529.5(b)(1)(B)(ii) the court may award actual damages or $1,000 liquidated damages per email, or both. In closing argument, plaintiff purports to "elect" the $1,000 in liquidated damages. The statute does not provide that plaintiff is entitled to an "election" of remedies, but rather permits the court to award actual or liquidated damages.

There was no evidence which supports an award of actual damages to plaintiff in this case. Thus, the available remedy is the $1,000 liquidated damages. However, the inquiry does not end here.

Section 17529.5(b)(2) provides that if the court finds that the defendant "established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements that are in violation of this section, the court shall reduce the liquidated damages. . . to a maximum of one hundred dollars ($100) for each unsolicited commercial email advertisement . . .".

Defendant's representative testified that defendant enters into contracts with its affiliates. The contracts provide that affiliates will comply with all applicable law regarding spam. In addition the contract specifically provides that the affiliate "will not send any email Ads using a subject line that has not been approved by Company or Advertiser for use . . ." (Exhibit 126) Defendant's representative further testified that it provides approved subject matter lines for its advertising copy. Despite the agreement, the affiliates here altered the subject lines and inserted subject lines not approved by defendant.

Defendant maintains a compliance department which is charged with investigation of all complaints. (Exhibit 123, 124.) Defendant responded to plaintiff's complaint by writing to plaintiff and requesting a copy of the emails . Plaintiff did not respond to the letter. Plaintiff contends that he sent a copy of the emails with his October 31, 2005 letter. However, a duplicate could not be produced and defendant contends it was not attached. Defendant contends it was hindered in its investigation because it did not have the email. By the time plaintiff filed suit on April 25, 2007, the websites were down and defendant could not investigate further. Defendant's representative testified that it has terminated affiliates for

violation of its policies  But, there was no evidence that defendant previously terminated the affiliates which sent the subject emails or had knowledge that they would violate its contract by substituting non-approved subject lines in the emails.

Accordingly, the court finds that based upon the evidence produced at trial the liquidated damages of $1,000 should be reduced to $100 per email.  The court finds for plaintiff in the sum of $500.

## 5. The Plaintiff is Not Barred by the Statute of Limitations.

Defendant contends that plaintiff's action is barred because Code of Civ. Proc. 340(a) provides a one year statute of limitations for:

> (a) An action upon a statute for a penalty or forfeiture if the action is given to an individual, or to an individual and the state, except if the statute imposing it prescribes a different limitation.

No California appellate court has addressed the statute of limitations applicable to a violation of §17529.5.  Section, §17529.5 does not provide for a penalty or forfeiture.  Rather, the court may award $1,000 liquidated damages and/or actual damages.  CCP §338 provides for a three-year statute of limitations for "[a]n action upon a liability created by statute, other than a penalty or forfeiture.  Moreover, California's unfair competition law codified in Bus. & Prof. Code §17200, et seq. provides that unfair competitions shall mean . . . "untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."  Section 17529.5 is contained in that Chapter.  And, actions pursuant to §17200 are governed by a four year statute of limitations.

Thus, plaintiff has at least three and possibly four years from the date of the emails to bring this claim. Plaintiff received his emails between May 20 and September 22, 2005 and commenced his small claims action on April 25, 2007. Thus this action is timely.[1]

## 6.   The Request for an Injunction is Denied.

The request for an injunction pursuant to Civ. Code §1780(a)(2), Civ. Code §116.220(b) and California Rules of Court Rule 3.1280 is denied.

## 7.   The Request for Other Relief is Denied.

Plaintiff's request for attorneys fees pursuant to §17529.5(b)(1)(C), Civil Code §1780(d) and Code of Civ. Proc. §116.790 is denied. The request for attorneys' loss of earnings and transportation pursuant to §116.790(b) is denied.

IT IS HEREBY ORDERED that judgment be entered in favor of plaintiff in the amount of $500. Costs are awarded to plaintiff.

Dated: May 27, 2008

Mary E. Wiss
Judge of the Superior Court

---

[1] The court rejects plaintiff's argument that the statute of limitations is tolled because defendant continued to send unsolicited emails to plaintiff until 2007. There is no evidence that this occurred, or that any such emails violated any law.

## SUPERIOR COURT OF CALIFORNIA
### County of San Francisco

DANIEL L. BALSAM,

                      Plaintiff

        vs.

WORLD AVENUE USA, LLC,

                      Defendant

Case Number: CSM-07-821162

**CERTIFICATE OF MAILING**
(CCP 1013a (4) )

      I, Clark Banayad, a Deputy Clerk of the Superior Court of the County of San Francisco, certify that I am not a party to the within action.

      On May 27, 2008, I served the attached **JUDGMENT** filed on May 27, 2008 by placing a copy thereof in a sealed envelope, addressed as follows:

Timothy J. Walton, Esq.
WALTON & ROESS LLP
407 S. California, Suite 8
Palo Alto, CA 94306

Ira P. Rothken, Esq.
ROTHKEN LAW FIRM
3 Hamilton Landing, Suite 280
Novato, CA 94949

and, I then placed the sealed envelopes in the outgoing mail at 400 McAllister Street, San Francisco, CA. 94102 on the date indicated above for collection, attachment of required prepaid postage, and mailing on that date following standard court practices.

Dated:  May 27, 2008

                               GORDON PARK-LI, Clerk

                By:                                 
                            Clark Banayad, Deputy Clerk

# EXHIBIT 3

World Avenue U.S.A., LLC
6001 Broken Sound Parkway, Ste. 200
Boca Raton, Florida 33487
Telephone: (561) 674-9700
Facsimile: (561) 674-9812

*In Propria Personam*

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

SMALL CLAIMS DIVISION

| | |
|---|---|
| DANIEL L. BALSAM,<br><br>Plaintiff,<br>vs.<br><br>WORLD AVENUE U.S.A., LLC,<br><br>Defendant. | **Case No. 821162**<br><br>**DEFENDANT WORLD AVENUE U.S.A., LLC'S TRIAL BRIEF**<br><br>Trial Date: August 31, 2007<br>Time: 3:30 p.m.<br>Dept. 506<br>Commissioner Paul Slavit<br><br>Action Filed: April 25, 2007 |

## I. INTRODUCTION AND SUMMARY OF FACTS

This case is one of many brought by plaintiff Daniel Balsam, who operates a for-profit "spam" litigation business. Plaintiff currently has approximately 20 commercial email cases pending in this court, and other cases pending in other courts, including (without limitation) the Superior Courts of Santa Clara and San Francisco counties.

Plaintiff claims he received fifteen (15) emails from defendant between May and September, 2005. He did not file this claim until April 25, 2007. Plaintiff does not claim that he was actually injured or misled by any of the commercial emails that form the basis of his claims in this case, and he has presented no evidence of actual injury. In fact, plaintiff's own evidence shows that he neither "clicked through" any of the emails he received, nor attempted to obtain any offered goods or services, nor even attempted to follow the instructions contained in the emails to opt out of receiving

further emails. Plaintiff presented no evidence that any of the offers made in the emails at issue were false. Instead, he bases his claims on alleged technical defects in the emails' header information and insufficient and unsubstantiated allegations that the subject lines were misleading.

Plaintiff's claims in this case are merely an attempt to profit from a strategy of serial litigation against commercial email providers, without proof of any actual fraud, deception or injury. (See Declaration of Jeff Richard ("Richard Decl."), ¶ 5-7, filed contemporaneously with this Trial Brief). Plaintiff Balsam, like the plaintiffs in Gordon *et al.* v. Virtumundo, Inc. *et al.*, Case No. 06-0204-JCC, (U.S. Dist.Ct., Washington, Western Dist., Seattle Div., Aug. 1, 2007) is engaged in a "spam business" involving "serial litigation" which is "ill-motivated, unreasonable and frivolous." (See Richard Decl., Exhibit A, District Court Order dated August 1, 2007). Judgment should be entered against plaintiff in this case, and defendant should be awarded its costs.

## I.   LEGAL ARGUMENT

### A.   Plaintiff Has Failed To Establish A Violation of the CLRA

#### 1. Plaintiff Does Not Have Standing For His CLRA Claim Because He Sustained No Damages And Never Relied On Any Alleged Misrepresentations of Defendant To His Detriment (Civil Code § 1780(a))

Plaintiff has failed to prove a claim under the California Consumer Legal Remedies Act, ("CLRA"), Civil Code § 1770 *et seq.*, because he suffered no damages or injury from the alleged conduct of World Avenue. He therefore lacks standing to bring this claim.

Civil Code § 1780(a), specifically limits civil actions under the CLRA to "any consumer who **suffers damage**." (Emphasis added). Although California cases generally discuss this issue in the context of class certification, it is clear that an unaffected plaintiff, or a plaintiff who has not suffered damage or injury, cannot bring a CLRA claim. A lack of damages, and a lack of detrimental reliance on a material misrepresentation of defendant are both fatal to a CLRA claim. See *Wilens v. TD Waterhouse Group, Inc.*, 120 Cal.App.4th 746, 755 (2003) (necessity of damage for CLRA action; each class member must be *entitled* to damages). See also *Massachusetts Mutual Life Ins. Co. v. Superior Court*, 97 Cal.App.4th 1282, 1292-1293 (2002), where the court ruled that direct or indirect

evidence of damages and reliance on misrepresentation is required for a CLRA action: "As Mass Mutual argues, this [CC § 1780(a)] limitation on relief requires that plaintiffs in a CLRA action show not only that a defendant's conduct was deceptive *but that the deception caused them harm*." (Emphasis added). See also *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal.App.4th 663, 695 (2006) The Colgan court emphasized that "Damages under the CLRA are a legal remedy, *intended to compensate those who suffer actual damage*." (Emphasis added).

*Caro v. Proctor & Gamble Co.*, 18 Cal.App.4th 664, 664-668 (1993) dealt, in part, with the necessity of detrimental reliance on a misrepresentation for bringing a CLRA claim. Caro involved a CLRA alleging, in part, misrepresentations as to the "freshness" of orange juice. The court affirmed the denial of class certification, in part, because there was substantial evidence that the class representative did not believe the orange juice at issue was actually fresh. The court stated "there can be no class certification unless it is determined by the trial court that similarly situated persons have sustained damage. There can be no cognizable class unless it is first determined that members who make up the class have sustained the same or similar damage." Caro, supra at 664. (Citations omitted).

Although the cases cited above deal with class certification, the principle applies to the instant case, which is not a class or representative action. Plaintiff failed to prove any actual damages as a result of the receipt of emails in this case. He never incurred any out of pocket expenses (outside of those associated with this litigation) as a result of receiving the emails. None of the emails allegedly received by plaintiff were shown to have caused the hard drive of plaintiff's computer to crash, or adversely affect his computer's processing power or damaged his computer system in any way.

At least two similar Superior Court case rulings are persuasive for the proposition that plaintiff's CLRA claims cannot stand. See the Santa Clara Superior Court decision by the Honorable Judge Kevin E. McKenney, granting Summary Judgment in a similar case brought against defendant's predecessor company by an associate and, on information and belief, spam litigation business partner, of plaintiff Balsam, in Walton v. Plasmanet *et al.*, Santa Clara Superior Court, Case No. 1-04-CV-033020, Order Re: Motion For Summary Judgment or Adjudication, dated January 5, 2007, at 2:1-10). (See Richards Decl., ¶ 7 and Exhibit B). In that case, summary judgment was

granted in defendant's favor because the plaintiff lacked standing to make CLRA claims, since he failed to show damages or causation. The same principle should apply in the instant case to bar plaintiff's CLRA claims.

Similarly, plaintiff herein, Balsam, was barred from bringing CLRA claims by the granting of a demurrer in another Santa Clara Superior Court case Balsam brought against a different and non-World Avenue-related defendant (in that case Balsam was represented by Timothy Walton, the plaintiff in the above-cited <u>Walton v. Plasmanet</u> case, and, on information and belief, a participant in Balsam's spam litigation business). The defendant's demurrer was granted to the CLRA claims, without leave to amend, by the Honorable Judge Joseph H. Huber, because Balsam failed to sufficiently allege that he suffered actual damages as a result of unlawful conduct by the defendant. See Order Re: Demurrer to Second Amended Complaint, <u>Balsam v. Expedite Media Group, Inc. et al.</u>, Santa Clara Superior Court No. 1-06-CV-068304, dated July 10, 2007, at 2:6-20. (See Richard Decl., ¶ 8 and Exhibit C).

In the instant case, there is no evidence that plaintiff ever detrimentally relied on any of the emails. Plaintiff apparently never even "clicked" on any of the emails for the purpose of accepting any goods or services offered in the emails; he apparently never clicked through on any of the offers made in the emails, and he never accepted any of the goods or services offered.    Because plaintiff never suffered any damages or injury, and never detrimentally relied on any alleged misrepresentations in the emails at issue, he cannot establish his claims under the CLRA.

**2.      Plaintiff Cannot Establish His CLRA Claims Because He Never Tendered A Valid Thirty Day Preliminary Notice And Demand Containing His Email Address (Civil Code § 1782)**

Civil Code § 1782(a) requires, as a condition precedent to filing a CLRA claim that thirty days prior to the commencement of an action, the plaintiff must:

> (1) Notify the person alleged to have employed or committed methods, acts, or practices declared unlawful by Section 1770 of the particular alleged violations of Section 1770.
>
> (2) Demand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of Section 1770.

Balsam v. World Avenue U.S.A., LLC.; Case No. 821162
Defendant's Trial Brief

Strict and literal compliance with the thirty-day notice provisions is required. See *Outboard Marine Corp. v. Superior Court*, 52 Cal.App.3d 30, 40-41. The clear intent of the provisions is to provide and facilitate pre-complaint settlements of consumer actions wherever possible and to establish a limited period during which such settlement may be accomplished. The purpose is also to give the defendant sufficient notice of the alleged defects to permit appropriate remedial action. Id. Failure to provide proper and timely notice, delivered in the proper fashion, is fatal to a CLRA claim. See *Von Grabe v. Sprint PCS*, supra at 1304.

In the instant case, no valid pre-filing notice was given because plaintiff failed to prove that he provided defendant with the information necessary to take remedial action—the email addresses at which plaintiff claims to have received the emails at issue. In other words, plaintiff intentionally frustrated the purpose of the CLRA's 30-day notice requirement so that he could bring this action.

Under these circumstances, plaintiff's 30-day notice was ineffective and a sham. Plaintiff did not fulfill the letter or the spirit of the 30-day pre-filing notice requirement, and therefore cannot establish a condition precedent for his CLRA claim in this case.

**B.    Plaintiff Has Failed to Establish Sufficient "Falsity" or "Deception" to Avoid Federal CAN-SPAM Preemption of His California UCE Claims**

Plaintiff's California UCE claims are preempted by the federal "spam" statutory scheme, the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003, 15 U.S.C. § 7701 *et seq.* ("CAN-SPAM") because plaintiff has failed to prove sufficient falsity or deception. Section 7707(b) of CAN-SPAM provides:

> (b) State law
> (1) In general
> This chapter supersedes any statute, regulation, or rule of a State or political subdivision of a State that expressly regulates the use of electronic mail to send commercial messages, except to the extent that any such statute, regulation, or rule prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto.

CAN-SPAM expressly occupies the field regarding the regulation of email, except with respect to acts of falsity or deception. As discussed *infra,* and in the Jeff Richard's Declaration filed

with this brief, plaintiff has failed to prove sufficient "falsity" or "deception" to avoid CAN-SPAM preemption of his California Unsolicited Commercial E-mail ("UCE") claims, Bus. & Prof. Code § 17529.5. At most, his claims constitute inadvertent error, not likely to mislead a reasonable consumer.

An instructive and persuasive case on this issue is the recent Fourth Circuit decision, *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348 (4th Cir. 2006). (A copy of the Omega case is attached as Exhibit D to the Richard Declaration, for the court's convenience). The facts of *Omega* are remarkably close to those alleged in the instant case. Mummagraphics, Inc. ("Mummagraphics") claimed damages under Oklahoma statutes in connection with unsolicited email advertising received by its president, Mark Mumma.[1] Mumma claimed that the email messages contained several inaccuracies. First, he claimed each message stated the recipient had subscribed to the advertiser's mailing list, but Mummagraphics had not done so. Each message included in its header multiple sending domain names, including one that was not connected to any sender of the email. The messages also contained in the "From:" header a defunct email address. *Omega, supra*, 469 F.3d 348.

Like the plaintiff in the instant case, Mumma attempted to "opt out" of receiving any further emails but refused to provide his email address. Instead, he called Omega's counsel and, when he received further emails, sent him a letter (again not specifying his email address) demanding payment for settlement of his claim that Omega had violated state and federal law. *Omega, supra*, 469 F.3d at 351.

Mummagraphics claimed it was entitled to damages under Oklahoma's "spam" law which prohibits email that contains "false" or "misleading" information, or that misrepresents or fails to contain information identifying the point of origin or transmission path of the email. Okla.Stat. tit. 15, § 776.1A. Mummagraphics also claimed Omega violated a provision requiring senders of unsolicited commercial email to comply with opt-out requests. Okla.Stat.tit. 15, § 776.6E. Finally, Mummagraphics claimed Omega had violated the Oklahoma Consumer Protection Act, Okla. Stat. tit.

---

[1] Mummagraphics also sued under CAN-SPAM, as an Internet Access Service Provider, under 15 U.S.C. § 7706(g), which creates a private right of action for providers of Internet access service. See *Omega, supra*, 469 F.3d at 357, note 3. No CAN-SPAM claim or right of action is alleged in the instant case.

15, §§ 751 *et seq.* by violating Oklahoma's email laws. See *Omega, supra,* 469 F.3d at 353, note 1.

The *Omega* court quickly disposed of the claims based on failure to comply with opt-out requests as clearly preempted by CAN-SPAM's preemption provision. *Id. Omega* then spent more time discussing and analyzing Mummagraphics' claims of "false" and "misleading" information, because CAN-SPAM exempts laws prohibiting falsity or deception from the reach of its preemption. In the end, *Omega* found that Mummagraphics' claims of falsity or deception were not material, and consequently held they were preempted by CAN-SPAM. Finally, *Omega* found that Mummagraphics' claims did not support a cause of action under Oklahoma's Consumer Protection Act. *Id.*

The *Omega* court decided that claims under Oklahoma statutes were preempted to the extent they applied to **immaterial** misrepresentation, and that all of the alleged falsity and misleading qualities of the emails were immaterial. *Omega, supra,* 469 F.3d at 353, 357-358. In doing so, the court analyzed the meaning of CAN-SPAM's "falsity" or "deception" exception to federal preemption of the field of commercial email. The court held that "'deception" requires more than "bare error" and that "falsity" requires "an element of tortiousness." The court found that that the errors in the emails at issue did not constitute deception or falsity so as to allow state law claims. *Id.* at 354.

*Omega* found that "bare error" in emails was not sufficient to constitute "falsity" for preemption exception, and that this was supported by various sections of CAN-SPAM. For example, the portion of CAN-SPAM that establishes a civil cause of action regarding "false or misleading transmission information" prohibits only "header information that is *materially* false or *materially* misleading." 15 U.S.C. § 7704(a)(1). *Omega* at 354. The *Omega* court discussed the reason for the requirement of materiality:

> There are good reasons for this. Congress did not intend "falsity" to encompass bare error because such a reading would upset the Act's careful balance between preserving a potentially useful commercial tool and preventing its abuse. The Act's enacted findings make clear that Congress saw commercial email messages as presenting both benefits and burdens....Congress noted that states had sought to regulate commercial emails, but it found that the resulting patchwork of liability standards had proven ineffective....Congress implemented these findings by creating a national standard that would be undermined to the point of near-irrelevancy by Mummagraphics' interpretation of the preemption clause....While Congress evidently believed that it would be undesirable

1
2
3
4
5
6

to make all errors in commercial emails actionable, Mummagraphics'
interpretation would allow states to bring about something very close to
that result. The ensuing consequences would undermine Congress' plain
intent....Because Mummagraphics' reading of the "falsity or deception"
exception would thus permit an exception to preemption to swallow the
rule and undermine the regulatory balance that Congress established,
Mummagraphics' reading of the exception is not compatible with the
structure of the CAN-SPAM act as a whole. *Omega, supra,* 469 F.3 at
355-356.

7
8
9
10
11
12

The *Omega* court found that imposing a "bare error" standard
rather than requiring *material and tortious misrepresentation*, as argued
by Mummagraphics and, in essence, by plaintiff here, would impose a
strict liability standard on email advertisers. Because it is difficult or
impossible to determine where an email recipient resides, such a standard
would become a de facto national standard, with all the burdens that
imposed, even though the CAN-SPAM act indicates that Congress
believed a less demanding standard would best balance the competing
interests at stake. *Id.* at 356.

13
14
15
16
17
18
19
20

By giving the federal preemption exception provision its proper limited scope, *Omega* was able
to avoid resolving the "difficult constitutional question concerning the compatibility of Oklahoma's
commercial e-mail provisions with the dormant commerce clause." *Id.* Likewise, by interpreting CAN-
SPAM's preemption provision in line with the *Omega* court's analysis, difficult dormant commerce
clause issues can be avoided in this case. If plaintiff's *de facto* broad interpretation of the exception to
CAN-SPAM preemption is accepted, so as to allow the kind of immaterial falsity or error alleged here
to be actionable under California law, it is likely that the dormant commerce clause will be violated.
See *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

21
22
23

The *Omega* case is squarely on point with the instant case. Its thorough and persuasive analysis
should be adopted and applied here to defeat plaintiff's claims, because he failed to sufficiently prove
material "falsity" or "deception" as required to come outside of CAN-SPAM preemption.

24
25
26
27
28

As applied to this case, *Omega's* reasoning is persuasive. It is also consistent with the
provisions of CAN-SPAM specifically dealing with the "prohibition of deceptive subject headings."
See 15 U.S.C. § 7704(a)(2). This provision expressly applies Federal Trade Commission ("FTC")
standards, pursuant to 15 U.S.C. § 45 to the determination of whether subject headings are materially
misleading to reasonable consumers. 15 U.S.C. § 45(n) requires that alleged misconduct be proven to
be "likely to cause *substantial injury* to consumers *which is not reasonably avoidable by consumers*

*themselves and not outweighed by countervailing benefits to consumers or to competition.*

(Emphases added). Case law has interpreted "deception" under FTC standards (as applicable here) to require proof of three elements consistent with this provision:

> Three elements must be demonstrated: "First, the FTC must show *probable, not possible, deception* ("likely to mislead," not "tendency and capacity to mislead"). Second, the FTC must show potential deception of *"consumers acting reasonably in the circumstances," not just any consumers.* Third, ... consider[ed] as material only deceptions that are *likely to cause injury to a reasonable relying consumer* ..." *Banga v. American Express Cards,* 2007 WL 474182, *3 (E.D.Cal. 2007), citing *Southwest Sunsites, Inc. v. F.T.C.,* 785 F.2d 1431, 1436 (9th Cir.1986) (Emphases added).

To the extent the "misleading subject lines" alleged by plaintiff herein do not meet this high standard for deception, plaintiff's claims are preempted by CAN-SPAM. Accordingly, plaintiff's California UCE claims should be rejected by this court.

### C.   Plaintiff Has Failed To Prove Violations of California's UCE.

As discussed in detail in Jeff Richard's Declaration, filed herewith, judgment should also be entered against plaintiff because he failed to prove by a preponderance of the evidence violations of California's UCE in this case.

Bus. & Prof. Code § 17529.5 defines three actionable violations:

> (a) It is unlawful for any person or entity to advertise in a commercial e-mail advertisement either sent from California or sent to a California electronic mail address under any of the following circumstances:
> (1) The e-mail advertisement contains or is accompanied by a third-party's domain name without the permission of the third party.
> (2) The e-mail advertisement contains or is accompanied by falsified, misrepresented, or forged header information. This paragraph does not apply to truthful information used by a third party who has been lawfully authorized by the advertiser to use that information.
> (3) The e-mail advertisement has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message.

Plaintiff failed to submit any evidence of a violation of subsection (a)(1). Plaintiff's evidence of violations of the other two subsections constitute, at most, evidence of "bare error," and not of material falsity and deception sufficient to constitute UCE violations. (See Richard's Decl., ¶¶ 12-

1    19).

2         The Santa Clara Superior Court ruling in another case brought by plaintiff herein is persuasive

3    against plaintiff's "multiple domain" names allegations as a basis for finding misrepresentation or

4    falsity. Plaintiff in the instant case bases a substantial part of his California Unsolicited Commercial

5    E-mail ("UCE") claims, Bus. & Prof. Code § 17529.5, on his argument that sending email from

6    multiple domain names is a violation and is "deceptive." In a similar case brought by plaintiff Balsam

7    in Santa Clara County Superior Court against a different commercial email company, the Honorable

8    Judge Joseph H. Huber rejected this theory of liability under the UCE in his persuasive opinion, cited

9    supra, Balsam v. Expedite Media Group, Inc. *et al.*, Santa Clara Superior Court No. 1-06-CV-068304,

10   dated July 10, 2007, at 1:27-28. (See Richard Decl., attached Exhibit C). Judge Huber found that

11   California's UCE does not prohibit the use of multiple domain names, and there is nothing deceptive

12   or unlawful about such conduct. As explained by Jeff Richard, there are substantial legitimate

13   business reasons for using multiple domain names. (Richard's Decl., ¶ 10). Plaintiff's claims that use

14   of multiple domain names constitute a violation of the UCE should be rejected in this case as well.

15        As explained in detail by Jeff Richard, and consistent with the legal argument, *supra,*

16   plaintiff's claims of misleading subject lines, deceptive sender names, falsified sender email

17   addresses, and false domain name header information are also without merit, and are not supported

18   by the evidence. (Richard Decl., ¶¶ 12-19). At a minimum, the technical defects plaintiff attempts to

19   establish should not be elevated to the tortuous falsity and deception necessary to make out a UCE

20   claim.

21                 **II.    CONCLUSION**

22        Based on the foregoing, defendant World Avenue prays for judgment against plaintiff Balsam

23   as follows:

24        1.  That plaintiff take nothing by way of his claims and complaint;

25        2.  That judgment be entered in favor of defendant World Avenue U.S.A., LLC;

26        3.  That defendant World Avenue be awarded its costs;

27        4.  Such other and further relief as the Court may deem just and proper.

28

Dated: September 20, 2007.

By: _____
Jeff Richard
World Avenue U.S.A., LLC
Defendant *In Propria Personam*

# EXHIBIT 4

1  World Avenue U.S.A., LLC
2  6001 Broken Sound Parkway, Ste. 200
   Boca Raton, Florida 33487
3  Telephone:    (561) 674-9700
   Facsimile:    (561) 674-9812
4
5  *In Propria Personam*

6                  SUPERIOR COURT OF THE STATE OF CALIFORNIA
7                            COUNTY OF SAN FRANCISCO
8                             SMALL CLAIMS DIVISION
9
10 DANIEL L. BALSAM,                          Case No. 821162
11           Plaintiff,                       DECLARATION OF JEFF RICHARD IN
12      vs.                                   SUPPORT OF DEFENDANT WORLD
                                              AVENUE U.S.A., LLC'S TRIAL BRIEF
13 WORLD AVENUE U.S.A., LLC,
                                              Trial Date:   August 31, 2007
14           Defendant.                       Time:         3:30 p.m.
15                                            Dept.         506
                                              Commissioner Paul Slavit
16
17
                                              Action Filed:  April 25, 2007
18

19        I, Jeff Richard, do declare:

20        1.    I am an employee of defendant World Avenue U.S.A., LLC ("World Avenue"). I

21 make this declaration in support of defendant World Avenue's trial brief. All statements made herein

22 are made on personal knowledge, except as to those statements made on information and belief, and

23 those statements I believe to be true. If called as a witness, I could competently testify as to the

24 matters stated herein.

25        2.    I am employed by defendant World Avenue as a Manager of Compliance and

26 Assessment, and have been so employed by World Avenue and its predecessor company (Niutech,

27 LLC) since October 2004. My duties include (without limitation) monitoring, reporting and

28 enforcing company advertising policies, including (without limitation) compliance with all

---

Balsam v. World Avenue U.S.A., LLC.; Case No. 821162
Declaration of Jeff Richard In Support of Defendant's Trial Brief

applicable state and federal laws. Such laws include, without limitation, the federal Controlling The Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CAN-SPAM"), 15 U.S.C. § 7701 *et seq.*

3.      My duties as Manager of Compliance and Assessment include developing, documenting and implementing policies, processes and procedures to ensure compliance with CAN-SPAM and other applicable laws governing email advertising, and managing policy development and compliance regarding other issues related to email advertising that impact company reputation, goodwill, and customer relations and operations. I monitor company and external client compliance with company policies, and manage a team of compliance associates. My duties also include educating clients regarding complying with World Avenue advertising policies and complying with applicable state and federal law. I am also in charge of acquiring and managing World Avenue's domain name portfolio.

4.      I am familiar with the above-captioned action, attended the hearing on this matter on August 31, 2007, and have reviewed the pleadings and statements of plaintiff.

5.      On information and belief, plaintiff Daniel Balsam is in the business of bringing claims and instituting litigation against e-mail advertisers, and the instant case against defendant World Avenue was brought as part of his profit-making business. On information and belief, plaintiff Daniel Balsam makes claims and brings small claims and other actions against email advertisers as a money-making operation, and Balsam has reaped profits in excess of $50,000 in the last year by bringing such claims, according to his own recent deposition testimony in another case brought in San Francisco Superior Court (Unlimited Jurisdiction) against an email advertiser, Expedite Media Group Inc. (<u>Balsam v. Expedite Media Group, Inc. *et al.*</u>, Case No. CGC-05-441627). Plaintiff admitted, in item 9 of the Small Claims Court Claim form that he filed to initiate the instant case, that he has filed more than 12 other small claims within the last twelve (12) months in California. On information and belief, plaintiff has currently at least twenty (20) such cases in this court alone, as part of his for-profit email advertising litigation business. In addition, plaintiff Balsam has instituted other California Superior Court email related litigation in at least San Francisco Superior Court and Santa Clara Superior Court.

6.      In my opinion, Daniel Balsam is a profit motivated "serial litigator," in the same manner as the plaintiffs whom the Honorable Judge John C. Coughenor, United States District Judge of the United States District Court, Western District of Washington at Seattle, recently ordered to pay defendants' attorneys' fees in the case of Gordon et al. v. Virtumundo, Inc. et al., Case No. 06-0204-JCC, Order dated August 1, 2007 (U.S. Dist.Ct., Washington, Western Dist., Seattle Div., Aug. 1, 2007). (A true and correct copy of the Order is attached as Exhibit A). In that case, Judge Coughenor, in discussing why he ordered plaintiffs to pay defendants' attorneys' fees stated:

"First, it is obvious that Plaintiffs are testing their luck at making their "spam business" extraordinarily lucrative by seeking statutory damages through a strategy of spam collection and serial litigation. Plaintiffs are parties to ten additional cases similar to the instant case in the Western District of Washington alone...[.] [Citations omitted]. The Court is not merely speculating on Plaintiffs' motives or assessment of potential profits. ...Clearly, Plaintiffs are assembling a litigation factory, which, if successful, could net millions of dollars in profit, at least theoretically. Moreover, after assessing the utter lack of evidence going to any technical impact or financial harm due to the alleged illegal spam, this Court found it significant that [Plaintiff] Gordon did not seek actual damages in the instant litigation, because none exist, and that he is instead seeking solely statutory damages for each e-mail sent....The Court finds that Plaintiffs' instant lawsuit is an excellent example of the ill-motivated, unreasonable, and frivolous type of lawsuit that justifies an award of attorneys' fees to Defendants under Fogerty. The context of this litigation and the context of Plaintiffs' overall litigation strategy, involving at least a dozen federal actions, indicate that Plaintiffs are motivated by the prospect of multi-million-dollar statutory damages awards in exchange for their relatively paltry spam-collection and spam-litigation costs. Plaintiffs have alleged no actual damages in this action. (Ex.A, Order, at 8:14-10:1).

Plaintiff Balsam, herein, like the plaintiffs in Gordon, supra, does not allege or seek actual damages due to spam, and has presented no evidence of actual damages due to spam, "because none exist." Plaintiff Balsam, like the plaintiffs in Gordon, supra, instead seeks statutory damages for each email sent as part of an overall litigation strategy involving many similar cases, which indicates that plaintiff is motivated by large potential profits gained at relatively "paltry" spam litigation costs. In my opinion, plaintiff in the instant case is, like the plaintiff in Gordon, supra, engaged in a "spam business" involving "serial litigation" which is "ill-motivated, unreasonable and frivolous."

7.      Plaintiff in the instant case presented no evidence that he was misled by any of the emails allegedly sent by defendant World Avenue, or that he "clicked through" on any of the emails,

purchased any products, or suffered actual damage in any way as a result of any conduct by

defendant World Avenue. On information and belief, plaintiff's lack of actual damages at a

minimum absolutely bars his claims under the Consumer Legal Remedies Act ("CLRA"), Civil

Code § 1770 et seq.. See Civil Code § 1780(a). See also, as persuasive authority, the Santa Clara

Superior Court's decision by the Honorable Judge Kevin E. McKenney, granting Summary

Judgment in a similar case brought against defendant's predecessor company by an associate and, on

information and belief, spam litigation business partner of plaintiff Balsam, Walton v. Plasmanet *et*

*al.*, Santa Clara Superior Court, Case No. 1-04-CV-033020, Order Re: Motion For Summary

Judgment or Adjudication, dated January 5, 2007, at 2:1-10). (A true and attached copy of said

Order is attached hereto as Exhibit B). In that case, summary judgment was granted in defendant's

favor because plaintiff lacked standing to make CLRA claims, since he failed to show damages or

causation. The same principle should apply in the instant case to bar plaintiff's CLRA claims.

8.       Plaintiff Balsam was also barred from bringing CLRA claims by the granting of a

demurrer in another Santa Clara Superior Court case Balsam brought against a different and non-

World Avenue-related defendant (in that case Balsam was represented by Timothy Walton, the

plaintiff in the above-cited Walton v. Plasmanet case, and, on information and belief, a participant in

Balsam's spam litigation business). The defendant's demurrer was granted to the CLRA claims,

without leave to amend, by the Honorable Judge Joseph H. Huber, because Balsam failed to

sufficiently allege that he suffered actual damages as a result of unlawful conduct by the defendant.

See Order Re: Demurrer to Second Amended Complaint, Balsam v. Expedite Media Group, Inc. *et*

*al.*, Santa Clara Superior Court No. 1-06-CV-068304, dated July 10, 2007, at 2:6-20. (A true and

correct copy of said Order is attached hereto as Exhibit C).

9.       Plaintiff in the instant case bases a substantial part of his California Unsolicited

Commercial E-mail ("UCE") claims, Bus. & Prof. Code § 17529.5, on his argument that sending

email from multiple domain names is a violation and is "deceptive." In a similar case brought by

plaintiff Balsam in Santa Clara County Superior Court against a different commercial email

company, the Honorable Judge Joseph H. Huber rejected this theory of liability under the UCE in his

persuasive opinion, cited supra, Balsam v. Expedite Media Group, Inc. *et al.*, Santa Clara Superior

1    Court No. 1-06-CV-068304, dated July 10, 2007, at 1:27-28. (See attached Exhibit C). Plaintiff's

2    claims that use of multiple domain names constitute a violation of the UCE should be rejected in this

3    case as well.

4         10.    In my experience and training, there are numerous legitimate business reasons for the

5    use of multiple domain names, including (without limitation) the following:

6              a.  Email list segmentation;

7              b.  Consumer demographics;

8              c.  ISP rate limitations or allowed connections;

9              d.  Capacity to handle SMTP sessions;

10             e.  Separate lines of business or divisions of advertisers.

11        11.    Plaintiff's entire case is based on what appear to be, at worst, inadvertent and

12   insignificant error, not constituting deception or falsity, not likely to mislead a reasonable consumer,

13   and therefore not actionable under either CAN-SPAM or state law. See the recent leading case on

14   CAN-SPAM preemption, and the requirement of material falsity or deception to make a claim under

15   either CAN-SPAM or state law, *Omega World Travel, Inc. v. Mummagraphics, Inc.,* 469 F.3d 348

16   (4th Cir. 2006). (A copy of the *Omega* case is attached hereto as Exhibit D, for the court's

17   convenience). Plaintiff denies that any of the subject lines or other information contained in the body

18   or headers of the emails at issue were false, deceptive, or likely to mislead a reasonable consumer.

19   At worst, the information relied upon by plaintiff for his claims constituted non-actionable "bare

20   error." See *Omega World Travel, Inc. v. Mummagraphics, Inc., supra,* 469 F.3d at 354-355.

21        12.    Plaintiff's claim that subject lines in the emails at issue were misleading is without

22   legal or factual basis. World Avenue denies that the subject lines at issue were deceptive in any

23   manner. The conditions for obtaining the offers made were clearly spelled out and visible in the

24   subject lines themselves, and/or in the body of the emails. Plaintiff cites inapplicable Federal Trade

25   Commission (FTC) guidelines, designed for entirely different circumstances, to support his baseless

26   claim of misleading subject lines. If any FTC guidelines do apply, they are pursuant to 15 U.S.C. §

27   45. See CAN-SPAM, 15 U.S.C. § 7704(a)(2). 15 U.S.C. § 45(n) requires that alleged misconduct be

28   proven to be "likely to cause ***substantial injury*** to consumers ***which is not reasonably avoidable by***

1    ***consumers themselves and not outweighed by countervailing benefits to consumers or to***

2    ***competition.*** (Emphases added). Plaintiff's evidence utterly fails to meet this high standard by any

3    stretch of the imagination.

4        13.      Plaintiff's claims in the instant case involve fifteen (15) email messages that were sent

5    between May and September 2005. By delaying filing this case until April 25, 2007, plaintiff has

6    made the obtaining of information and evidence regarding the alleged emails, necessary for the

7    defense of this case, extremely difficult, and, in some regards, impossible. Due to plaintiff's delay, it

8    is now impossible for World Avenue to determine with accuracy who or what entities initiated the

9    15 emails at issue. Many of the second level domain names used in the email messages have expired,

10    or, if currently registered, were registered by persons or entities, after expiration, who are unrelated

11    to the owners of the domain names when the emails were allegedly sent. There is no indication that

12    the IP addresses found in the emails' headers are bound to the entities who originally initiated them.

13    The URLs (links) within the emails no longer function. For all of these reasons, World Avenue

14    cannot accurately identify the parties who initiated the emails, and therefore cannot determine if

15    consent or a pre-existing or current business relationship existed between plaintiff and the initiators

16    of the emails. However, World Avenue itself maintains CAN-SPAM compliant email lists for the

17    emails it initiates, and, as a matter of practice and policy, does not itself and has not knowingly

18    initiated or sent unsolicited commercial email advertisements to recipients who have not consented

19    to receive them, or for whom no pre-existing or current business relationship exists.

20        14.      World Avenue denies that it knowingly used deceptive sender names in any of the

21    emails at issue in the instant case. Plaintiff cites a "Request For Comment" ("RFC") to support his

22    argument that sender names were deceptive. An RFC is merely advisory and experimental, and is

23    not binding on Internet users or businesses.

24        15.      Plaintiff's claim that five (5) of the emails at issue contained falsified sender email

25    addresses, based on his "error bounce back messages" is without legal or factual basis, and is based

26    on a misunderstanding of how email works. I reviewed each of the emails in plaintiff's Exhibit 11,

27    and determined that each of the 5 email's error messages come under three categories. The

28    categories of error messages and an explanation of their meaning, showing that they do no indicate

deceptive sender email addresses in the messages, include the following:

a.      ***"Cannot append message to destination file /var/abuse/luser: error writing message: File too large***— This error specifies a problem writing the message received to a file. There are a number of reasons for the problem, including file permissions, file size and message size allowed.

b.      ***"Sorry, I wasn't able to establish an SMTP connection. (#4.4.1) I'm not going to try again.  Message has been in queue too long."***—This error message indicates a deferral or delay (4.4.1).  Example causes may be increased security by the ISP, the host not being able to respond, intermittent networks errors, DNS resolution, or a variety of other reasons.

c.      ***"Cannot append message to destination file /var/abuse/luser: cannot create file exclusively: No such file or directory."***— This error seems to indicate permissions problems with creating the file to write the email message to.

Therefore, none of these error messages indicate the sending email addresses are invalid.

16.    Plaintiff alleges that 2 emails initiated by "Etrack Media" were accompanied by email headers that contained forged information, specifically involving the mail server machine name "a.somespecial.com" (also known as a 3rd level domain name or host name). Plaintiff supports his claim based on the publicly available "whois" database results for "somespecial.com" (the second level domain name), which shows the second level domain name was purportedly suspended by the Registrar of Record some 90 days prior because of incorrect contact information. In this claim, the Plaintiff has failed to properly diagnose an email header and has also failed to follow through with proper DNS queries to support the allegations.

17.    Computers communicate using IP addresses, not host names or domain names. Humans use host names and domains names because it is easier for computer users to remember these rather than numerical IP addresses. The headers of the 2 email messages, parsed by Yahoo's computer systems, were correct because Yahoo's computers are reporting the Reverse DNS records (PTR) for the IP addresses 72.11.143.72 and 72.11.143.94 (IP address → Host Name resolution).

18.    The Plaintiff is assuming that the authoritative name servers once bound to the second level domain name "somespecial.com" prior to the alleged suspension, which defined the resource

1   records for Forward DNS records, or <u>Forward Zones</u>, such as the A, MX, NS and other resource

2   records, also defined the resource records for Reverse Zones (PTR records).  This is not always true

3   in DNS and is not true in this case. Defendant World Avenue USA, LLC has provided Exhibit E

4   showing the proper DNS resource record queries that should have been conducted by the Plaintiff,

5   which clearly prove that Yahoo's email servers properly parsed the header and the Reverse Zone

6   entries for the IP addresses 72.11.143.72 and 72.11.143.94.

7        19.      Plaintiff claims that several email messages were received where the recipient names

8   were Scott, John, Ken, Frank and Michael, and that this constitutes deception. Defendant World

9   Avenue denies that use of such names constitutes deception, and, if such occurred, it was done

10  inadvertently, and not knowingly. Email lists maintained by an entity contain unique email addresses,

11  and may also contain other identifying data for each unique consumer, such as First Name, Last

12  Name, Postal Addresses, Phone Number, Transaction Details and Gender. One of the most common

13  pieces of identifying data merged into commercial email messages is the First Name of the recipient,

14  used to personalize the message. The First Name of a recipient can be merged into an email message

15  in almost any location, including the header and body of an email message.  Based on World Avenue

16  USA, LLC's experience in the email marketing industry and the fact we have no concrete information

17  on the identity of the initiator of the email messages, it is more likely than not errors occurred when

18  merging the First Name into the email messages. The First Names Scott, John, Ken, Frank and

19  Michael likely belonged to other email addresses maintained by the email list manager. World

20  Avenue USA, LLC does not believe the errors, if any there were, were knowing or intended to

21  mislead or deceive. In any event, such errors were not likely to mislead a reasonable consumer.

22  //

23  //

24  //

25  //

26  //

27  //

28

1      I declare under penalty of perjury under the laws of the State of California and the United

2  States that the foregoing is true and correct, and that, as to those matters sworn to on information and

3  belief, I believe them to be true; and that I execute this declaration in Boca Raton, Florida on

4  September 21, 2007.

5

6                      By: _____

7                         Jeff Richard

8                         Manager, Compliance and Assessment
                           World Avenue USA, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 5

1   Ira P. Rothken (SBN #160029)
    ROTHKEN LAW FIRM LLP
2   3 Hamilton Landing, Suite 280
3   Novato, CA 94949
    Telephone:    (415) 924-4250
4   Facsimile:    (415) 924-2905

5
    Attorneys for Defendant
6   World Avenue U.S.A., LLC

7

8                   SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                          COUNTY OF SAN FRANCISCO

10                          SMALL CLAIMS DIVISION

11

12  DANIEL L. BALSAM,                    Case No. CSM-07-821162

13              Plaintiff,               DEFENDANT WORLD AVENUE U.S.A.,
                                         LLC'S SMALL CLAIMS APPEAL TRIAL
14          vs.                          BRIEF

15  WORLD AVENUE U.S.A., LLC,
                                         Trial Date:    April 10, 2008
16              Defendant.               Time:          9:00 a.m.
                                         Dept.          525
17

18
                                         Action Filed:  April 25, 2007
19
                          I.    INTRODUCTION AND SUMMARY OF FACTS
20
21          Plaintiff filed the instant action on April 25, 2007, claiming the receipt of 15 unlawful

22  unsolicited emails from defendant between April and May 2005. Trial was held in the small claims

23  division on August 31, 2007, and judgment for $500 was entered for plaintiff on February 5, 2008.

24  Defendant filed a timely Notice of Appeal, and the instant matter is set for trial *de novo* before the

    Superior Court on April 10, 2008.
25
            This case is one of many brought by plaintiff Daniel Balsam, who operates a for-profit
26
    "spam" litigation business. At or about the time plaintiff filed the instant Small Claims Division case,
27
    plaintiff had approximately 20 commercial email cases pending in this court, and other cases pending
28
    in other courts, including (without limitation) the Superior Courts of Santa Clara and San Francisco

counties.

Plaintiff claims he received fifteen (15) emails from defendant between May and September, 2005. He did not file this claim until April 25, 2007. Plaintiff does not claim that he was actually injured or misled by any of the commercial emails that form the basis of his claims in this case, and he has no evidence of actual injury. In fact, plaintiff's own evidence shows that he neither "clicked through" any of the emails he received, nor attempted to obtain any offered goods or services, nor even attempted to follow the instructions contained in the emails to opt out of receiving further emails. Plaintiff presented no evidence that any of the offers made in the emails at issue were false nor did he provide legally recognizable evidence that the alleged deceptive content was created by defendant World Avenue. Instead, he bases his claims on alleged technical defects in the emails' header information and insufficient and unsubstantiated allegations that the subject lines were misleading and then concludes in a factual void that World Avenue should be responsible. **Indeed, the evidence will show that World Avenue did not create the alleged deceptive content nor did it send the emails and World Avenue's terms of use actually prohibit any potential unlawful conduct and thus World Avenue is immune from liability under the Communications Decency Act Section 230 as the content was provided by another user of the Interactive Computer Services email services provider.**

Plaintiff's claims in this case are merely an attempt to profit from a strategy of serial litigation against commercial email providers, without proof of any actual fraud, deception or injury. (See Declaration of Jeff Richard ("Richard Decl."), ¶ 5-7, filed Defendant's Trial Brief, a copy of which is submitted herewith). Plaintiff Balsam, like the plaintiffs in <u>Gordon *et al.* v. Virtumundo, Inc. *et al.*</u>, Case No. 06-0204-JCC, (U.S. Dist.Ct., Washington, Western Dist., Seattle Div., Aug. 1, 2007) is engaged in a "spam business" involving "serial litigation" which is "ill-motivated, unreasonable and frivolous." (See Richard Decl., Exhibit A, District Court Order dated August 1, 2007). Judgment should be entered against plaintiff in this case, and defendant should be awarded its costs.

## II.   LEGAL ARGUMENT

## A.   Plaintiff Cannot Establish A Violation of the CLRA

### 1. Plaintiff Does Not Have Standing For His CLRA Claim Because He Sustained No Damages And Never Relied On Any Alleged Misrepresentations of Defendant To His Detriment (Civil Code § 1780(a))

Plaintiff's claim under the California Consumer Legal Remedies Act, ("CLRA"), Civil Code § 1770 *et seq.*, is without merit. Plaintiff cannot prove a claim under the CLRA because he suffered no damages or injury from the alleged conduct of World Avenue. He therefore lacks standing to bring this claim.

Civil Code § 1780(a), specifically limits civil actions under the CLRA to "any consumer who **suffers damage.**" (Emphasis added). Although California cases generally discuss this issue in the context of class certification, it is clear that an unaffected plaintiff, or a plaintiff who has not suffered damage or injury, cannot bring a CLRA claim. A lack of damages, and a lack of detrimental reliance on a material misrepresentation of defendant are both fatal to a CLRA claim. See *Wilens v. TD Waterhouse Group, Inc.*, 120 Cal.App.4th 746, 755 (2003) (necessity of damage for CLRA action; each class member must be *entitled* to damages). See also *Massachusetts Mutual Life Ins. Co. v. Superior Court*, 97 Cal.App.4th 1282, 1292-1293 (2002), where the court ruled that direct or indirect evidence of damages and reliance on misrepresentation is required for a CLRA action: "As *Mass. Mutual* argues, "this [CC § 1780(a)] limitation on relief requires that plaintiffs in a CLRA action show not only that a defendant's conduct was deceptive *but that the deception caused them harm.*" (Emphasis added). See also *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal.App.4th 663, 695 (2006) The *Colgan* court emphasized that "Damages under the CLRA are a legal remedy, *intended to compensate those who suffer actual damage.*" (Emphasis added).

*Caro v. Proctor & Gamble Co.*, 18 Cal.App.4th 664, 664-668 (1993) dealt, in part, with the necessity of detrimental reliance on a misrepresentation for bringing a CLRA claim. *Caro* involved a CLRA claim alleging, in part, misrepresentations as to the "freshness" of orange juice. The court affirmed the denial of class certification, in part, because there was substantial evidence that the class representative did not believe the orange juice at issue was actually fresh. The court stated "there can be no class certification unless it is determined by the trial court that similarly situated persons have

sustained damage. There can be no cognizable class unless it is first determined that members who make up the class have sustained the same or similar damage." *Caro, supra* at 664. (Citations omitted).

Although the cases cited above deal with class certification, the principle applies to the instant case, which is not a class or representative action. Plaintiff failed to prove any actual damages as a result of the receipt of emails in this case. He never incurred any out of pocket expenses (outside of those associated with this litigation) as a result of receiving the emails. None of the emails allegedly received by plaintiff were shown to have caused the hard drive of plaintiff's computer to crash, or adversely affect his computer's processing power or damaged his computer system in any way.

At least two similar Superior Court case rulings are persuasive for the proposition that plaintiff's CLRA claims cannot stand. See the Santa Clara Superior Court decision by the Honorable Judge Kevin E. McKenney, granting Summary Judgment in a similar case brought against defendant's predecessor company by an associate and, on information and belief, spam litigation business partner, of plaintiff Balsam, in *Walton v. Plasmanet et al.,* Santa Clara Superior Court, Case No. 1-04-CV-033020, Order Re: Motion For Summary Judgment or Adjudication, dated January 5, 2007, at 2:1-10). (See Richards Decl., ¶ 7 and Exhibit B). In that case, summary judgment was granted in defendant's favor because the plaintiff lacked standing to make CLRA claims, since he failed to show damages or causation. The same principle should apply in the instant case to bar plaintiff's CLRA claims.

Similarly, plaintiff herein, Balsam, was barred from bringing CLRA claims by the granting of a demurrer in another Santa Clara Superior Court case Balsam brought against a different and non-World Avenue-related defendant (in that case Balsam was represented by Timothy Walton, the plaintiff in the above-cited *Walton v. Plasmanet* case, and, on information and belief, a participant in Balsam's spam litigation business). The defendant's demurrer was granted to the CLRA claims, without leave to amend, by the Honorable Judge Joseph H. Huber, because Balsam failed to sufficiently allege that he suffered actual damages as a result of unlawful conduct by the defendant. See Order Re: Demurrer to Second Amended Complaint, *Balsam v. Expedite Media Group, Inc. et al.,* Santa Clara Superior Court No. 1-06-CV-068304, dated July 10, 2007, at 2:6-20. (See Richard

Decl., ¶ 8 and Exhibit C).

In the instant case, there is no evidence that plaintiff ever detrimentally relied on any of the emails. Plaintiff apparently never even "clicked" on any of the emails for the purpose of accepting any goods or services offered in the emails; he apparently never clicked through on any of the offers made in the emails, and he never accepted any of the goods or services offered.    Because plaintiff never suffered any damages or injury, and never detrimentally relied on any alleged misrepresentations in the emails at issue, he cannot establish his claims under the CLRA.

## 2.    Plaintiff Cannot Establish His CLRA Claims Because He Never Tendered A Valid Thirty Day Preliminary Notice And Demand Containing His Email Address (Civil Code § 1782)

Civil Code § 1782(a) requires, as a condition precedent to filing a CLRA claim that thirty days prior to the commencement of an action, the plaintiff must:

> (1) Notify the person alleged to have employed or committed methods, acts, or practices declared unlawful by Section 1770 of the particular alleged violations of Section 1770.
> (2) Demand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of Section 1770.

Strict and literal compliance with the thirty-day notice provisions is required. See *Outboard Marine Corp. v. Superior Court*, 52 Cal.App.3d 30, 40-41. The clear intent of the provisions is to provide and facilitate pre-complaint settlements of consumer actions wherever possible and to establish a limited period during which such settlement may be accomplished. The purpose is also to give the defendant sufficient notice of the alleged defects to permit appropriate remedial action. *Id.* Failure to provide proper and timely notice, delivered in the proper fashion, is fatal to a CLRA claim. See *Von Grabe v. Sprint PCS, supra* at 1304.

In the instant case, no valid pre-filing notice was given because plaintiff failed to prove that he provided defendant with the information necessary to take remedial action—the email addresses at which plaintiff claims to have received the emails at issue. In other words, plaintiff intentionally frustrated the purpose of the CLRA's 30-day notice requirement so that he could bring this action.

Under these circumstances, plaintiff's 30-day notice was ineffective and a sham. Plaintiff did

not fulfill the letter or the spirit of the 30-day pre-filing notice requirement, and therefore cannot establish a condition precedent for his CLRA claim in this case.

**B.    Plaintiff's UCE Claims Are Preempted by the Federal CAN-SPAM Statute Because He Cannot Establish Knowledge or Tortious or Material "Falsity" or "Deception."**

Plaintiff's California Unsolicited Commercial E-mail claims ("UCE"), Bus. & Prof. Code § 17529.5, are preempted by the federal "spam" statutory scheme, the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003, 15 U.S.C. § 7701 *et seq.* ("CAN-SPAM") because plaintiff cannot prove material falsity or deception. Section 7707(b) of CAN-SPAM provides:

> (b) State law
> (1) In general
> This chapter supersedes any statute, regulation, or rule of a State or political subdivision of a State that expressly regulates the use of electronic mail to send commercial messages, except to the extent that any such statute, regulation, or rule prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto.

CAN-SPAM expressly occupies the field regarding the regulation of email, except with respect to acts of falsity or deception. As discussed *infra,* and in the Jeff Richard's Declaration filed with this brief, plaintiff has failed to prove sufficient knowledge or material "falsity" or "deception" to avoid CAN-SPAM preemption of his California Unsolicited Commercial E-mail ("UCE") claims, Bus. & Prof. Code § 17529.5. At most, his claims constitute inadvertent error, not likely to mislead a reasonable consumer and are not actionable against World Avenue who is immune under the Federal Communications Decency Act immunity.[1]

---

[1] In addition, since the alleged deceptive "content" was created by a third party who then forwarded it to the email list services provider in an unauthorized manner (who then sent such email via an interactive services provider or ISP) World Avenue cannot be held secondarily liable for the alleged tortuous acts of a third party either under State law or under the Communications Decency Act Section 230 which immunizes "users" of an interactive service, such as World Avenue, from state tort liability for content provided by third parties. *Barrett v. Rosenthal,* 40 Cal. 4th 33 (2006). *Batzel v. Smith* (9th Cir.2003) 333 F.3d 1018. Most relevant to the instant case in *Batzel* the Court declared: "There is no dispute that the Network uses interactive computer services to distribute its on-line mailing and to post the listserv on its website. Indeed, to make its website available and to mail out the listserv, the Network *must* access the Internet through some form of "interactive computer service." Thus, both the Network website and the listserv are potentially immune under § 230.... Critically, however, § 230 limits immunity to information "provided by

1

2   **1.     CAN-SPAM Imposes a Knowledge Requirement, Thereby Rendering
3          Plaintiff's Claims under B&P Code § 17529.5 Invalid.**

4          By its title, California Business and Professions Code § 17529.5, the statute under which

5   plaintiff brings his UCE claim, seeks to regulate "[u]nlawful activities relating to commercial e-mail

6   advertisements." However, plaintiff's claims under B&P Code § 17529.5 are expressly limited by

7   the federal CAN-SPAM Act, 15 U.S.C. § 7701 et seq., which states:

8
           This chapter supersedes any statute, regulation, or rule of a State…that expressly
9          regulates the use of electronic mail to send commercial messages, except to the extent
           that any such statute, regulation, or rule prohibits falsity or deception in any portion of
10         a commercial electronic mail message or information attached thereto.

11  15 U.S.C. 7707(b).

12         Recent judicial decisions, in both federal and state courts alike, emphasize Congress's intent

13  to draft a statute that requires a plaintiff, in order to prevail on its alleged spam action, to prove

14  knowledge of the wrongdoing by each defendant, because "strict liability standards for errors would

15  impede unique opportunities for the development and growth of frictionless commerce." *See Omega*

16  *World Travel, Inc. et al. v. Mummagraphics, Inc. et al.*, 469 F. 3d 348, 355 (4th Cir. 2006).

17  Likewise, in rejecting plaintiffs' arguments for strict liability in state anti-spam statutes, courts have

18  pointed out that if states were permitted to impose strict liability in these scenarios, the significant

19  variance in different states' anti-spam statutes would cause senders to "assume that their messages

20  were governed by the most stringent state laws in effects", thereby rendering Congress's intent

21  meaningless. *Mummagraphics* at 355-56. Thus, California Business and Professions Code §

22  17529.5 is only valid to the extent it comports with the standards of the CAN-SPAM Act relating to

23  knowledge of the defendants and to materiality of allegedly false or deceptive portions of

24

25  another information content provider."§ 230(c)(1). An "information content provider" is defined by the statute to
    mean "any person or entity that is responsible, in whole or in part, for the creation or development of information
26  provided through the Internet or any other interactive computer service."§ 230(f)(3). The reference to "*another*
    information content provider" (emphasis added) distinguishes the circumstance in which the interactive computer
27  service itself meets the definition of "information content provider" with respect to the information in question. The
    pertinent question therefore becomes whether Smith was the sole content provider of his e-mail, or whether Cremers
28  can also be considered to have "creat[ed]" or "develop[ed]" Smith's e-mail message forwarded to the listserv.[FN17]

commercial emails.

Specifically, in *Mummagraphics*, the Fourth Circuit Court of Appeals held that an Oklahoma statute, similar to the California one at issue, was preempted to the extent that the statute did not require a plaintiff to prove knowledge by the defendant of wrongdoing related to the alleged spam email. "The strict liability standard imposed by a state such as Oklahoma would become a de facto national standard, with all the burdens that imposed." Id. at 356. *Mummagraphics* thus "stands for the…proposition[] that…the CAN-SPAM preemption clause *does not allow states to create strict liability for inaccuracies in commercial email.*" See *Kleffman v. Vonage Holdings Corp.*, 2007 WL 1518650 (C.D. Cal. 2007) (finding that plaintiff's claims under Cal. B&P Code § 17529.5 were preempted). (Emphasis added). Here, plaintiff has not alleged, nor can he prove or in good faith allege, that defendants had knowledge of any allegedly misleading statements in commercial emails.

### 2.   Plaintiff's Cannot Prove Tortious Falsity or Deception As He Must to Avoid CAN-SPAM Preemption

In the saving clause of CAN-SPAM's preemption section, Congress allowed states to prohibit "falsity or deception in any portion of a commercial email message or information attached thereto." 15 U.S.C. § 7704(a). However, this savings clause only allows states to extend their traditional fraud prohibitions to the realm of commercial emails.[1] *Kleffman v. Vonage Holdings Corp., supra* at *3. In the *Kleffman* case, the court cites to California case law that delineates the elements of fraud and deceit, as examples of traditional tort theories that plaintiffs could use to allege falsity and deception in commercial emails. *Id. Kleffman* holds that CAN-SPAM "left states room only to extend their *traditional* fraud prohibitions to the realm of commercial emails." *Id.* (Emphasis in the original).

---

[1] The elements of fraud are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage. To establish a claim for deceit based on intentional misrepresentation, the plaintiff must prove seven essential elements: (1) the defendant represented to the plaintiff that an important fact was true; (2) that representation was false; (3) the defendant knew that the representation was false when the defendant made it, or the defendant made the representation recklessly and without regard for its truth; (4) the defendant intended that the plaintiff rely on the representation; (5) the plaintiff reasonably relied on the representation; (6) the plaintiff was harmed; and (7) the plaintiff's reliance on the defendant's representation was a substantial factor in causing that harm to the plaintiff. Kleffman at *3 (citing Manderville v. PCG & S Group, Inc., 146 Cal.App.4th 1486, 1498 (Ct. App. 2007)).

In the present case, plaintiff does not have evidence related to most of the elements of the claims of fraud or deceit. Specifically, plaintiff cannot show evidence of the intent to defraud, justifiable reliance by plaintiff or damage resulting from justifiable reliance on any misrepresentation. Indeed, plaintiff was not even misled. As a result, plaintiff cannot present evidence sufficient to support a cause of action under B&P Code § 17529.5.

### 3.   CAN-SPAM Imposes a Materiality Requirement, Which Plaintiff Cannot Meet, Rendering His Claims under B&P Code § 17529.5 Invalid.

Plaintiff's claims of UCE violation appears to boil down to his arguments (a) that the emails are misleading because they claim to provide free goods, and (b) that that the use of multiple domain names is *per se* unlawful because it allows a sender to evade spam filters. Neither of these claims have merit.

Bus. & Prof. Code § 17529.5 defines three actionable violations:

(a) It is unlawful for any person or entity to advertise in a commercial e-mail advertisement either sent from California or sent to a California electronic mail address under any of the following circumstances:

    (1) The e-mail advertisement contains or is accompanied by a third-party's domain name without the permission of the third party.

    (2) The e-mail advertisement contains or is accompanied by falsified, misrepresented, or forged header information. This paragraph does not apply to truthful information used by a third party who has been lawfully authorized by the advertiser to use that information.

    (3) The e-mail advertisement has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message.

Plaintiff has no evidence of a violation of subsection (a)(1). Plaintiff's evidence of violations of the other two subsections constitute, at most, evidence of "bare error," and not of material falsity and deception sufficient to constitute UCE violations. (See Richard's Decl., ¶¶ 12-19).

*Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348 (4th Cir. 2006) is instructive on the requirement that alleged falsity or deception must be material and tortious to avoid CAN-SPAM preemption. (A copy of the Omega case is attached as Exhibit D to the Richard Declaration, for the court's convenience). The facts of *Omega* are remarkably close to those alleged in the instant case. Mummagraphics, Inc. ("Mummagraphics") claimed damages under Oklahoma statutes in

connection with unsolicited email advertising received by its president, Mark Mumma.[1] Mumma

claimed that the email messages contained several inaccuracies. First, he claimed each message stated

the recipient had subscribed to the advertiser's mailing list, but Mummagraphics had not done so.

Each message included in its header multiple sending domain names, including one that was not

connected to any sender of the email. The messages also contained in the "From:" header a defunct

email address. *Omega, supra,* 469 F.3d 348.

Like the plaintiff in the instant case, Mumma attempted to "opt out" of receiving any further

emails but refused to provide his email address. Instead, he called Omega's counsel and, when he

received further emails, sent him a letter (again not specifying his email address) demanding payment

for settlement of his claim that Omega had violated state and federal law. *Omega, supra,* 469 F.3d at

351.

Mummagraphics claimed it was entitled to damages under Oklahoma's "spam" law which

prohibits email that contains "false" or "misleading" information, or that misrepresents or fails to

contain information identifying the point of origin or transmission path of the email. Okla.Stat. tit. 15,

§ 776.1A. Mummagraphics also claimed Omega violated a provision requiring senders of unsolicited

commercial email to comply with opt-out requests. Okla.Stat.tit. 15, § 776.6E. Finally,

Mummagraphics claimed Omega had violated the Oklahoma Consumer Protection Act, Okla. Stat. tit.

15, §§ 751 *et seq.* by violating Oklahoma's email laws. See *Omega, supra,* 469 F.3d at 353, note 1.

The *Omega* court quickly disposed of the claims based on failure to comply with opt-out

requests as clearly preempted by CAN-SPAM's preemption provision. *Id. Omega* then spent more

time discussing and analyzing Mummagraphics' claims of "false" and "misleading" information,

because CAN-SPAM exempts laws prohibiting falsity or deception from the reach of its preemption.

In the end, *Omega* found that Mummagraphics' claims of falsity or deception were not material, and

consequently held they were preempted by CAN-SPAM. Finally, *Omega* found that Mummagraphics'

claims did not support a cause of action under Oklahoma's Consumer Protection Act, a law that is

---

[1] Mummagraphics also sued under CAN-SPAM, as an Internet Access Service Provider, under 15 U.S.C. § 7706(g), which creates a private right of action for providers of Internet access service. See *Omega, supra,* 469 F.3d at 357, note 3. No CAN-SPAM claim or right of action is alleged in the instant case.

Balsam v. World Avenue U.S.A., LLC.; Case No. CSM-07-821162
Defendant's Appeal Trial Brief

similar to California's UCE. *Id.*

The *Omega* court decided that claims under Oklahoma statutes were preempted to the extent they applied to **immaterial** misrepresentation, and that all of the alleged falsity and misleading qualities of the emails were immaterial. *Omega, supra,* 469 F.3d at 353, 357-358. In doing so, the court analyzed the meaning of CAN-SPAM's "falsity" or "deception" exception to federal preemption of the field of commercial email. The court held that "'deception" requires **more than "bare error"** and that "falsity" requires **"an element of tortiousness."** The court found that that the errors in the emails at issue did not constitute deception or falsity so as to evade CAN-SPAM preemption and permit state law claims. *Id.* at 354.

*Omega* found that "bare error" in emails was not sufficient to constitute "falsity" for preemption exception, and that this was supported by various sections of CAN-SPAM. For example, the portion of CAN-SPAM that establishes a civil cause of action regarding "false or misleading transmission information" prohibits only "header information that is *materially* false or *materially* misleading." 15 U.S.C. § 7704(a)(1). *Omega* at 354. The *Omega* court discussed the reason for the requirement of materiality:

> There are good reasons for this. Congress did not intend "falsity" to encompass bare error because such a reading would upset the Act's careful balance between preserving a potentially useful commercial tool and preventing its abuse. The Act's enacted findings make clear that Congress saw commercial email messages as presenting both benefits and burdens....Congress noted that states had sought to regulate commercial emails, but it found that the resulting patchwork of liability standards had proven ineffective....Congress implemented these findings by creating a national standard that would be undermined to the point of near-irrelevancy by Mummagraphics' interpretation of the preemption clause....While Congress evidently believed that it would be undesirable to make all errors in commercial emails actionable, Mummagraphics' interpretation would allow states to bring about something very close to that result. The ensuing consequences would undermine Congress' plain intent....Because Mummagraphics' reading of the "falsity or deception" exception would thus permit an exception to preemption to swallow the rule and undermine the regulatory balance that Congress established, Mummagraphics' reading of the exception is not compatible with the structure of the CAN-SPAM act as a whole. *Omega, supra,* 469 F.3 at 355-356.

1
2
3
4
5
6

> The *Omega* court found that imposing a "bare error" standard
> rather than requiring *material and tortious misrepresentation*, as argued by
> Mummagraphics and, in essence, by plaintiff here, would impose a strict
> liability standard on email advertisers. Because it is difficult or impossible
> to determine where an email recipient resides, such a standard would
> become a de facto national standard, with all the burdens that imposed,
> even though the CAN-SPAM act indicates that Congress believed a less
> demanding standard would best balance the competing interests at stake.
> *Id.* at 356.

7   By giving the federal preemption exception provision its proper limited scope, *Omega* was able

8   to avoid resolving the "difficult constitutional question concerning the compatibility of Oklahoma's

9   commercial e-mail provisions with the dormant commerce clause." *Id.* Likewise, by interpreting CAN-

10  SPAM's preemption provision in line with the *Omega* court's analysis, difficult dormant commerce

11  clause issues can be avoided in this case. If plaintiff's *de facto* broad interpretation of the exception to

12  CAN-SPAM preemption is accepted, so as to allow the kind of immaterial falsity or error alleged here

13  to be actionable under California law, it is likely that the dormant commerce clause will be violated.

14  See *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

15  The *Omega* case is squarely on point with the instant case. Its thorough and persuasive analysis

16  should be adopted and applied here to defeat plaintiff's claims, because he cannot prove material

17  "falsity" or "deception" as required to come outside of CAN-SPAM preemption.

18  *Omega's* reasoning should also be applied in the instant case because it is consistent with the

19  provisions of CAN-SPAM specifically dealing with the "prohibition of deceptive subject headings."

20  See 15 U.S.C. § 7704(a)(2). This provision expressly applies Federal Trade Commission ("FTC")

21  standards, pursuant to 15 U.S.C. § 45 to the determination of whether subject headings are materially

22  misleading to reasonable consumers. 15 U.S.C. § 45(n) requires that alleged misconduct be proven to

23  be "likely to cause *substantial injury* to consumers *which is not reasonably avoidable by consumers*

24  *themselves and not outweighed by countervailing benefits to consumers or to competition*.

25  (Emphases added). Case law has interpreted "deception" under FTC standards (as applicable here) to

26  require proof of three elements consistent with this provision:

27
28

> Three elements must be demonstrated: "First, the FTC must show
> *probable, not possible, deception* ("likely to mislead," not "tendency and capacity
> to mislead"). Second, the FTC must show potential deception of *"consumers*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

***acting reasonably in the circumstances," not just any consumers.*** Third, ...
consider[ed] as material only deceptions that are ***likely to cause injury to a
reasonable relying consumer*** ..." *Banga v. American Express Cards,* 2007 WL
474182, *3 (E.D.Cal. 2007), citing *Southwest Sunsites, Inc. v. F.T.C.,* 785 F.2d
1431, 1436 (9th Cir.1986) (Emphases added).

To the extent the "misleading subject lines" alleged by plaintiff herein do not meet this high

standard for deception, plaintiff's claims are preempted by CAN-SPAM. Accordingly, plaintiff's

California UCE claims should be rejected by this court. See also *Gordon v. Virtumundo, Inc.,* 2007

WL 1459395 (Wash. 2007)(holding, in pertinent part, that plaintiff's claims under Washington state

statute preempted by CAN-SPAM).

With respect to plaintiff's argument that the use of multiple domain names is unlawful, the

court in *Kleffman, supra,* clearly rejects this theory of liability, explaining, "if the legislature had

intended to draft legislation requiring the adoption of procedures that would allow for the effective

operation of spam filters, it surely could have said so in plain English." *Id.* at *2. Accordingly, the

use of multiple domain names "created for the sole purpose of by-passing spam-filters and

blacklists" is not actionable under California law. *Id.*

The Santa Clara Superior Court's ruling in another case brought by plaintiff herein is also

persuasive authority against plaintiff's theory that "multiple domain" names allegations provide a

basis for finding misrepresentation or falsity. In a similar case brought by plaintiff Balsam in Santa

Clara County Superior Court against a different commercial email company, the Honorable Judge

Joseph H. Huber rejected this theory of liability under the UCE in *Balsam v. Expedite Media Group,

Inc. et al.,* Santa Clara Superior Court No. 1-06-CV-068304, dated July 10, 2007, at 1:27-28. (See

Richard Decl., attached Exhibit C). Judge Huber found that California's UCE does not prohibit the

use of multiple domain names, and there is nothing deceptive or unlawful about such conduct. As

explained by Jeff Richard, there are substantial legitimate business reasons for using multiple domain

names. (Richard's Decl., ¶ 10). Plaintiff's claims that use of multiple domain names constitute a

violation of the UCE should be rejected in this case as well.

As explained in detail by Jeff Richard, and consistent with the legal argument, *supra,*

plaintiff's claims of misleading subject lines, deceptive sender names, falsified sender email

addresses, and false domain name header information are also without merit, and are not supported by

the evidence. (Richard Decl., ¶¶ 12-19). At a minimum, the technical defects plaintiff attempts to establish should not be elevated to the tortuous falsity and deception necessary to make out a UCE claim.

Plaintiff has had no difficulty following links in the emails and using reverse-look-up to identify the defendant herein. Likewise, the allegedly misleading "free" offers are preceded by clearly delineated terms and conditions, and thus cannot be deemed misleading, let alone materially so. Under CAN-SPAM, therefore, the emails would not be materially "false or deceptive" vis-à-vis defendants, and Plaintiff's B&P Code § 17529.5 claims are preempted by CAN-SPAM.

The above is also consistent with the provisions of CAN-SPAM specifically dealing with the "prohibition of deceptive subject headings." See 15 U.S.C. § 7704(a)(2). This provision expressly applies Federal Trade Commission ("FTC") standards, pursuant to 15 U.S.C. § 45 to the determination of whether subject headings are materially misleading to reasonable consumers. 15 U.S.C. § 45(n) requires that alleged misconduct be proven to be "likely to cause *substantial injury* to consumers *which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition*. (Emphasis added). Case law has interpreted "deception" under FTC standards (as applicable here) to require proof of three elements consistent with this provision:

> Three elements must be demonstrated: "First, the FTC must show *probable, not possible, deception* ("likely to mislead," not "tendency and capacity to mislead"). Second, the FTC must show potential deception of *"consumers acting reasonably in the circumstances," not just any consumers*. Third, ... consider[ed] as material only deceptions that are *likely to cause injury to a reasonable relying consumer* ..." *Banga v. American Express Cards,* 2007 WL 474182, *3 (E.D.Cal. 2007), citing *Southwest Sunsites, Inc. v. F.T.C.,* 785 F.2d 1431, 1436 (9th Cir.1986) (Emphases added).

Plaintiff Balsam has not met, and cannot meet, this burden of proof.

**C.     Plaintiff's Complaint Should Be Dismissed Because It Does Not Belong In Small Claims Court.**

Judgment should also be entered against plaintiff and in favor of defendant because

plaintiff's complaint does not belong in small claims court. Plaintiff's complaint involves complex and novel issues of fact and law, a penal claim rather than a claim for damages or "recovery of money," and issues of federal preemption and other matters pertaining to federal law. The small claims division is not a proper forum for this case.

### 1.   The Small Claims Court Is Not a Proper Forum for this Case

The small claims court has jurisdiction only over actions for the "recovery of money," such as on contract or tort claims. *See Leuschen v. Small Claims Court*, 191 Cal. 133, (1923); *In re Marriage of Lackey*, 143 Cal. App. 3d 698, 704 (1983) (dismissing action in small claims court because it was not a claim for money owed or based on contract or tort theories of recovery). In this case, plaintiff is not seeking the "recovery" of any money. Instead, he is seeking to enforce a **statutory penalty**. While small claims jurisdiction extends to both contract and tort claims, it was not intended to encompass statutory penalty claims as those alleged in this matter. *See In re Marriage of Lackey, supra.* .

Business and Professions Code Section 17529.5(b)(1)(B) states that any person eligible to bring suit may recover actual damages or a penalty of up to thousand dollars ($1,000) per email (reduced to a maximum of $100 per email if "defendant established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements that are in violation of this section"). Cal. Bus. & Prof. Code § 17529.5(b)(1)(B). However, in *Phillips v Netblue, Inc.*, the court unequivocally stated that while section 17529.5 does indeed permit recovery of "either or both" actual or statutory damages, the statutory damage portion of the statute is penal in nature. In *Phillips v Netblue, Inc.,* No. C-05-4401 SC, 2006 WL 3647116 at *5 (N.D. Cal. Dec 12, 2006). After determining that the statutory damages under the Federal CAN-SPAM Act were penalties, the court found that the statutory damages available under § 17529.5 have an "overwhelming penal purpose" because there are criminal penalties available for violations of its prohibitions. *Id.* at *6; Cal. Bus. & Prof. Code § 17529.5(c). The court stated, "by allowing a plaintiff to recover 'either or both' of actual damages and statutory damages, this section makes clear that the two kinds of damages are different and thus logically serve different purposes: compensatory in the case of the former and penal in the case of the latter."

Id. at *5. Accordingly, in the absence of actual damages, there is no claim for "recovery of money" and small claims jurisdiction is improper.

In this action, Balsam seeks to use the small claims courts to impose the statutory penal penalties described in § 17529.5, while neglecting to plead any actual compensatory damages. The small claims courts were not designed to permit individuals to seek statutory penalties, but rather were created to permit the recovery of money for actual damages in an efficient, inexpensive and compensatory manner. The judicial procedures for resolving small claims were designed to promote the legislative purpose of resolving "minor civil disputes expeditiously, inexpensively, and fairly." Cal. Code Civ. Pro. § 116.120; *General Electric Capital Auto Financial Services, Inc. v. Appellate Division,* 88 Cal. App. 4th 136, 142, (2001).

The legislature established the small claims divisions to provide an accessible judicial forum to resolve individual "minor civil disputes." *See* Code of Civil Procedure § 116.120(a), (b) and (c). The claim brought here is anything but a "minor civil dispute." Instead, this claim involves the judicial determination of a complicated and unresolved area of law, involving federal preemption and implicating the U.S. Constitution's Dormant Commerce Clause. The instant action necessarily requires the court to make extensive and complex legal and factual findings, some of which involve complex high technology. Because of the complexity of this matter, both factually and legally, the need for significant factual development, the penal nature of the claim and the potential for abuse by plaintiffs such as Balsam, this action is not an appropriate case for the small claims court.

### 2.   Plaintiff Is Improperly Using The Small Claims System To Disadvantage Defendant.

Balsam has instituted multiple small claims actions against defendants from distant venues in order to disadvantage them. This should not be permitted. While surely there must be advertisers in the Bay Area that Balsam could file these amorphous claims against, he has chosen, in every case defendant has been able to identify, to sue out-of-state defendants or California defendants located outside of the Bay Area.

The filing of a lawsuit in a distant venue for the ulterior motive of impairing a defendant's

rights to defend the suit and/or to coerce inequitable settlements and default judgments has been found to be an actionable abuse of process, even if the venue is technically proper. *Barquis v. Merchants Collection Ass'n of Oakland, Inc.*, 7 Cal. 3d 94,107-108 (1972) (finding abuse of process where defendants had a "pattern and practice" of knowingly filing actions in distant counties in order to gain an unconscionable advantage in the small claims case); *Yu v. Signet Bank/Virginia*, 103 Cal. App. 4th 298, 311 (2002) (recognizing that filing a lawsuit in a distant venue can be an abuse of process). The judiciary "has a strong interest in eliminating any systematic misuse of the judicial machinery." Id. at 107.

## III.   CONCLUSION

Based on the foregoing, defendant World Avenue prays for judgment against plaintiff Balsam as follows:

1. That plaintiff take nothing by way of his claims and complaint;

2. That judgment be entered in favor of defendant World Avenue U.S.A., LLC;

3. That defendant World Avenue be awarded its costs;

4. Such other and further relief as the Court may deem just and proper.

Dated: April 10, 2008                          ROTHKEN LAW FIRM LLP


By: _____
                                                            Ira P. Rothken
                                                            Attorneys for Defendant
                                                            World Avenue U.S.A., LLC

# PROOF OF SERVICE

**Balsam v. World Venue U.S.A., LLC**
**San Francisco Superior Court Case No. 821162**

I am over the age of 18 years, employed in the county of Palm Beach, Florida, and not a

party to the within action; my business address is 6001 Broken Sound Parkway, Second Floor, Boca

Raton, FL 33487.

On April 10, 2008 I served the within:

**DEFENDANT WORLD AVENUE U.S.A., LLC'S SMALL CLAIMS APPEAL TRIAL BRIEF**

on the parties in said action in Court via HAND DELIVERY on:

Daniel L. Balsam
3145 Geary Blvd., #225
San Francisco, CA 94118

I declare under penalty of perjury under the laws of the State of California and the State of

Florida that the foregoing is true and correct.

Executed on April 10, 2008.

