## IN THE U.S. DISTRICT COURT FOR MARYLAND,
## SOUTHERN DIVISION

BEYOND SYSTEMS, INC.                )
                                    )
    Plaintiff                )
    v.                       )       Case No.PJM 08 cv 0921
                                    )
WORLD AVENUE USA, LLC, et al. )
    Defendants               )
_____ )

## DEFENDANT WORLD AVENUE USA, LLC'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR FRAUD ON COURT

Pursuant to the Court's Order dated November 5, 2010 at Docket Entry 490 granting Defendant WORLD AVENUE USA, LLC ("WAUSA") the right to propound Interrogatories upon Michael S. Rothman and Amanda L. Ornitz in connection with WAUSA's Motion to Dismiss For Fraud on Court [DE 323, 323-1] based on a finding of a "*substantial justification*" for such inquiry, and pursuant to the Interrogatory Answers of Michael S. Rothman and Amanda L. Ornitz served on Wednesday, November 24, 2010 at 10:44 p.m., Defendant WAUSA hereby

1

files its Reply Memorandum in Support of Its Motion to Dismiss For Fraud On Court [DE 323, 323-1], on the first business day after receipt of such Interrogatory Answers and states:[1]

## I.      WAUSA Has Shown A *Prima Facie* Case Of Fraud On The Court.

### A.      BSI's Three-Stage Campaign of Deception.

Based on the magnitude of the filings facing the court, WAUSA will not repeat all of the facts here and simply relies on the following:

- BSI has engaged in a three-stage clandestine campaign of issuing Subpoenas containing deliberately false statements designed to injure WAUSA, conceal what had been done and thwart WAUSA's access to discovery.  Motion to Dismiss (DE 323, 323-1),  *See also* DE 157, 167, 172, 212, 232, 259, 337.

- Fraud on the court occurs "when a party deceives a court or abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process."  *U.S. v. Shaffer Equipment Co.*, 11 F.3d 450, 462 (4th Cir. 1993).

- The evidence to date shows clearly that BSI was deeply involved in the fraud perpetrated upon the Court, i.e., BSI was directly involved in at least 32 communications that appear to have involved the Subpoenas demonstrated by 19 separate communications involving BSI and evidently relating to Subpoenas to non-parties between December 24 and 29, 2009, including 14 distinct communications concerning the Subpoenas that appear to fall in the critical 36-

---

[1] WAUSA has done all that it could to avoid having to file this Memorandum today.  WAUSA filed a Motion for Expedited Discovery pertaining to this Motion [DE 338, 340] and asked for a hearing [DE 340], BSI opposed both efforts [DE 351, 352, 373], and the Motion for Expedited Discovery was denied [DE 369].  At the July 30, 2010 hearing, the Court stated:  "Now, it may be that in retrospect I will feel differently, but I am going to let this discovery request run its normal course and we will deal with any objections and concerns about privilege also on the backside".  *See* DE 404, Exhibit 2, p. 23, lines 16-19.  After filing this Motion [DE 323], WAUSA opposed BSI's attempt [DE 354] to delay filing its Response [DE 359], and BSI's Motion was granted [DE 364].  Anticipating months of delay from BSI, WAUSA moved for an extension of time to file this Reply Brief [DE 392], BSI opposed it [DE 393], WAUSA replied [DE 404], and the Motion is still pending.  WAUSA moved for expedited hearing on the discovery of Electronically Stored Information relating to the Motion [DE 415], the Court ordered production at a September 23, 2010 hearing [DE 428, 431], and BSI served a deficient response.  WAUSA tried to confer on August 4, 2010 about deposition notices for Amanda L. Ornitz and Michael S. Rothman, but BSI ignored it for fifteen (15) days.  *See* DE 404, Exhibit 3.  WAUSA served timely deposition notices for Amanda L. Ornitz and Michael S. Rothman, BSI and the deponents moved for protective order, WAUSA opposed it [DE 410, 411], and the Court granted Interrogatories in lieu of depositions [DE 490], ordering that the Answers be served on November 24, 2010.  The Interrogatory Answers, which are facially deficient, were served on November 24, 2010 at 10:44 p.m. WAUSA is filing on the *first* business day following receipt of such Interrogatory Answers.

hour period between December 28th and December 29th 2009.[2]

### B.      BSI's Fraud On The Court.

BSI's attempt to excuse its misconduct on the grounds that it is the result of inadvertence entirely fails to explain how the schedule of inflammatory and defamatory document requests to 23 Subpoenas apparently just authored themselves without any involvement by a human being. The Motion to Dismiss presents unrebutted evidence that the Subpoenas contain unexplained footers (such as "Doc. # NY-20712 v. 4") and other forensic artifacts that find no explanation in BSI's Opposition or the Declarations. *See* DE 373, DE 373-1.  Moreover, the Opposition fails to address the Subpoena attachment containing the false and inflammatory statements, and why a different version of that attachment was provided with all the backdated Subpoenas provided on February 8.  The Opposition simply confines itself to an explanation of the genesis of the first two pages of 12 of the 22 Subpoenas, which is not the part of the Subpoenas that contains the inflammatory statements BSI sought to conceal.

It remains uncontroverted that BSI's fraud on the Court began with its illicit motive to disrupt the business of WAUSA's affiliated companies to force a settlement of litigation.  As detailed in the Declaration of Sanford M. Saunders, Jr. [DE 323-4], BSI sent its e-mail on

---

[2] The December 28th communications are particularly critical because the very first e-mail communication on December 28th begins with an e-mail *from* Paul Wagner (presumably after the 4:15 a.m. computer access), followed by the 13 other communications within the critical time period.  Another eleven communications involving BSI and apparently concerning the Subpoenas appear in the critical period when the Subpoenas were drafted and issued between January 4 and 8th, 2010.  A sealed copy of the Plaintiff's Privilege Log reflecting these communications, designated Confidential, has been filed at DE 412. As the Court will note from reviewing the log, it is difficult to be precise about exactly what the topic of each communication was, because BSI has chosen to mask specifics by repetitively using the same description, over and over, for each entry on its log.  However, every single time, that description includes a specific reference to subpoenas.  As the Court will also note from reviewing the log, it conveniently but inappropriately ends with an entry dated January 12, 2010.  This entry vaguely indicates that "multiple e-mails per week continuing during ongoing litigation" were exchanged on the same topics for some unspecified period of time thereafter, which is highly significant considering what happened the following month when BSI produced falsified versions of the Subpoenas to WAUSA, and for months thereafter while BSI stubbornly and untruthfully continued to represent to the Court and WAUSA that it had produced true copies of all the Subpoenas.

3

December 29th, 2009 at 6:47 p.m. foreshadowing its intent to "seek documents related to FBI investigations allegedly linked to WAUSA." *See* December 29th e-mail, attached to Motion to Dismiss, Exhibit 2, DE 323-3; Saunders Decl., ¶ 2, filed at DE 323-4.  The purpose of the e-mail, sent when settlement discussions were on the verge of breaking down, was "to intimidate WAUSA by creating the potential for disruption of its business through the dissemination of misleading and inflammatory subpoenas."  Saunders Decl., ¶ 2, filed at DE 323-4.[3]   Several days later when it became evident to BSI that WAUSA would not capitulate to its demands, BSI sent out the Subpoenas just as it had threatened to do.  In fact, and unbeknownst to WAUSA, the actual Subpoenas BSI issued were even worse than what it had threatened in its December 29, 2009 e-mail.

The motive is further shown by an email communication to a customer of one of WAUSA's affiliates, Direct Brands, BSI falsely told Direct Brands that:

> I would also like to send you a copy of the sponsor page that I referenced where World Avenue and MailCompanyX has appropriated the Direct Brand name and used it in connection with their advertisements.  I will forward that as soon as I get it.

*See* Exhibit 5 to DE 404, attached hereto.

The third stage of BSI's fraud upon the Court occurred when it covered up its actions in issuing the secret Subpoenas until after WAUSA filed its Motion to Dismiss.  When it back-dated the Subpoenas between February 3rd and 8th, 2010, BSI ***knew*** that the Subpoenas that it had served upon WAUSA on February 8th were not the Subpoenas that it had served upon the non-parties on January 7th-8th.  Yet, despite knowing it was wrong, BSI continued to represent to

---

[3] The settlement discussions nearly collapsed when BSI was informed that both it and its *alter ego* sister company, Hypertouch, Inc., as well as all of the Wagner-related clan, would need to settle all their claims, instead of allowing BSI to settle, and then Hypertouch to sue upon the same e-mails, similar to what appears to have happened in the *Kraft* litigation currently pending before this Court.

4

WAUSA and to this Court in multiple Court filings that the Subpoenas it had produced to WAUSA were the Subpoenas that it had actually issued to the non-parties.  BSI misrepresented this ***ten separate times***:

- On February 8th, BSI represented it was serving "signed Subpoenas issued by Plaintiff to all third parties; and 2) any documents it has received thus far pursuant to said subpoena.  This will confirm that WORLD AVENUE has received copies and responses of all outstanding Subpoenas and responses."  DE 323-15, p. 3 of 235.

- On February 23rd, BSI represented to the Court:  "Defendant received **copies of all the original signed Subpoenas** before the original return date listed in the Subpoenas, as well as **the documents received pursuant to those Subpoenas**.  *See* DE 167, p. 2, ¶ 7 (emphasis added).

- On February 23rd, BSI represented to the Court:  "On February 8th, BSI served a response to the Defendant's Request for Copies, which included electronic copies of the twenty-two (22) Non-Party Subpoenas Duces Tecum, along with any documents received pursuant to said Subpoenas."  *See* DE 167, p. 2, ¶ 7.

- On May 14th, BSI represented:  "….on February 1st, you received a copy of all the third party Subpoenas that had been served in this case up until that time."  *See* DE 323-21, p. 2 of 4.

- On May 22nd, BSI represented:  "On February 8 . . . . BSI produced copies of all the previously unserved Subpoenas to WAUSA counsel of record by email . . . ." *See* DE 323-23, p. 4 of 71.

- On June 3rd, BSI made the following five representations to the Court:

  o   "On February 8 … BSI produced copies of the previously served Subpoenas to WAUSA counsel of record by email as well as a Notice of Response to Defendant WAUSA's Request for Copies filed not seven days earlier.  See Exhibit A-3 [Rothman 02/08/10 email to all WAUSA Counsel of Record sending copies of served Subpoenas…]".  See DE 259, Plaintiff's Memorandum of Law in Support of its Opposition to Defendant World Avenue USA, LLC's Motion to Enforce Order at DE 212 And For Sanctions, p. 3 (emphasis added).

  o   "WAUSA continued to send letters on April 15, 29, and May 13 seeking compliance with the Court's Order at DE 122 [sic], although Plaintiff, by and through counsel, had previously communicated the requested information."  *Id.*, p. 4 (emphasis added).

- o "….Plaintiff had already responded to its prior requests - numerous times." *Id.*, pp. 1-2 (emphasis added).

- o "As Plaintiff has fully complied with all aspects of the Order at DE 212 in a prompt and reasonable fashion and under any interpretation, Defendant's claims are without merit and its motion denied [sic]." *Id.*, p. 2 (emphasis added).

- o "BSI was not attempting to conduct any secret discovery program, as there could be nothing to gain.  Defendant received copies of all Subpoenas issued once it sought a Request for Copies." *Id.*, p. 4 (emphasis added).

The repetitive nature of these representations is simply not "inadvertent."  BSI *knew* at the time that the representations were made to the Court and to WAUSA that such representations were false because -- at a minimum -- it knew the Subpoenas were back-dated. But the sheer number of times BSI deliberately sought to mislead WAUSA and this Court proves the deliberate nature of the conduct.

BSI's culpability in the fraud on the Court is clear, as evidenced by the fact that BSI back-dated the Subpoenas produced to WAUSA on February 8th.  In the transcript of the hearing before the Court on July 30, 2010, after some probing questions from the Court, BSI finally admitted that it had affixed a signature to at least a dozen Subpoenas that bore the printed date of "1/8/2010" to the right of that signature even though the Subpoenas were signed sometime between February 1st and February 8th, which is after WAUSA requested copies (*i.e.*, *it "back-dated" the Subpoenas*):[4]

> 5 MR. ROTHMAN: So, **when we went back on February 1st**
> 6 when the Defendants made a request for copies, we went back
> 7 and I wanted her to go ahead and scan in all of the originals

---

[4] *See* MERRIAM-WEBSTER DICTIONARY ("to put a date earlier than the actual one on" (www.merriam-webster.com); THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE, (4th ed. 2000) ("To mark or supply with a date that is earlier than the actual date"); http://www.investorwords.com/6415/backdating.html ("Assigning a document an earlier date than when the document was actually created. This is often illegal.").

8 that we had including the Attachment A which were attached to
9 all of these 23 Subpoenas.
10 It turns out that we had inadvertently sent 12 of
11 the original 23, sent the originals instead of the copies, so
12 I instructed her to go ahead and use our old files.
13 The ones that we had previously made before and
14 just get a blue ink copied **to be signed and sent out and**
15 **attached to the file but they were sent to the Defendants on**
16 **February 8th**.
17 But, what happened was that in opening the old file
18 it appears that they were stored in Adobe Acrobat Reader
19 which apparently is a PDR reader that Adobe offers to the
20 public in general that does not allow you to save information
21 to it, it only keeps a temporary copy of the last five years.
22 So, I didn't have an original electronic copy of
23 the original file sent out and it turns out that she wasn't
24 even able to open those files using Adobe Acrobat.
25 So, she had to go ahead and use another PDF reader
1 which is Preview and she opened that up and that is what
2 turned the check mark into a circle, that is why you see the
3 difference in the check mark versus the circle.
4 There were no other changes nor was there intended
5 to be any other changes. There is no changed intended, it
6 was just a blue ink copy.
7 **THE COURT: So, you are not telling me that you**
8 **signed two different documents**?
9 MR. ROTHMAN: **That I signed two different —-**
10 THE COURT: **You signed twice for the same document**?
11 MR. ROTHMAN: **I signed twice for the same document**,
12 **when I created it a second time yes I signed the exact signed**
13 **subpoena that I thought I was signing the first time** .

*See* DE 404-2, Transcript of July 30, 2010 hearing, p. 16, lines 5-25; p. 17, lines 1-13 (emphasis

added).

As is demonstrated below, this is not matter of an "outdated software package and an

inadvertent subsequent production," as BSI now tells the Court.  *See* Motion, p. 13, ¶ 1.  A

subpoena is a Court Order.[5]  Court Orders are not collateral.  It is axiomatic that it is wrong to

---

7

back-date a single Court document.  It is beyond comprehension to back-date a dozen or more

Court documents.  *See* DE 323-15.  The impropriety is exacerbated by the production on

February 8th of those dozen or more back-dated Court documents to one's adversary as though

they were the real Court documents, coupled with failure to disclose the underlying conduct and

subsequent efforts to conceal it.  *See* DE 323-15.

### C.    WAUSA Has Met Its Burden Under *Shaffer* To Prove Prejudice.

#### 1.    WAUSA Has Met The Standard With The Motions Practice Triggered By BSI's Conduct.

BSI contends that no fraud upon the Court has occurred because there has no

"demonstrable harm" upon WAUSA.  Nothing could be further from the truth. BSI misconstrues

the applicable legal standard, which requires "prejudice" to the victim, not the successful

obliteration of the victim's business.  BSI has befouled the very system it invoked when it filed

its claims, and in so doing has used a discovery tool to seek something that it knew did not even

exist -- evidence of investigations that never occurred -- just to leverage its opponent into giving

in.  This is vile practice, subsequently concealed through the functional equivalent of multiple

forgeries.  Courts have found that just the expense of mere "additional motions practice" is

sufficient to meet this factor.  *Bryant-Bunch v. Northampton County*, 2006 WL 4500055, at *1,

*4 (E.D.N.C. 2006).  The standard has been more than met here, as WAUSA has been forced to

undergo an eight-month fire drill and voluminous motion practice (DE 157, 167, 172, 232, 259,

323, 337, 338, 340, 351-353, 373, 375, and 395) to get to the bottom of BSI's scheme, and the

Court has been forced to issue an Order (DE 212), conduct a hearing on July 30th (DE 390), and

---

[5] *See  Higginbotham v. KCS Int'l, Inc.*, 202 F.R.D. 444, 455 (D. Md. 2001) ("Even though Subpoenas are issued by attorneys, they are issued on behalf of the Court and should be treated as orders of the Court").

schedule another for November 29.

**2.      BSI's Publication Of False Statements Concerning WAUSA Is Defamatory *Per Se* And Is Not Privileged.**

**a.      BSI's False Statements That WAUSA is Under A Criminal Investigation By The FBI And Unspecified Offices of The U.S. Attorney Are Defamatory *Per Se*.**

BSI's false statements to third parties that WAUSA is under criminal investigation by the FBI and certain Offices of the U.S. Attorney is defamatory *per se* under Maryland law.   The distinction between libel *per se* and regular libel, or libel *per quod*, is that "to recover the plaintiff must first show that the publication is defamatory.   Where the words themselves impute the defamatory character, no innuendo - no allegation or proof of extrinsic facts - is necessary; but otherwise, it is." *Metromedia Inc v. Hilman*, 285 Md. 161, 173 (1979).   "The presumption of harm to reputation still arises from the publication of words actionable per se." *Gooch v. Maryland Mechanical Systems, Inc.*, 81 Md. App. 376, 394 (Md. App. 1990).   "When one publishes matter which libels another per se, as in this case, there arises a presumption of the falsity of the allegation and a presumption of malice in publishing it." *Wetherby v. Retail Credit Co.,* 235 Md. 237, 241 (1964).

**b.      BSI's False Statements Lack Any Privilege.**

Although a privilege applies to statements "contained in pleadings, affidavits or other documents directly related to the case," *Keys v. Chrysler Credit Corp.*, 303 Md. 397, 403-04, 494 A.2d 200, 203 (1985), "for the privilege to apply, the statement must be made to ***further a purpose*** falling within the public interest underlying the privilege, *i.e.* the unfettered disclosure of information needed for a judicial or quasi-judicial decision-making process." *Norman v. Borison*, 192 Md. App. 405, 994 A. 2d 1019 (Md. App. 2010) (emphasis added); *see also Dixon v. DeLance*, 84 Md. App. 441, 448, 579 A. 2d 1213 (1990), *cert. denied*, 321 Md. 501, 583 A. 2d

9

275 (1991) (emphasizing that "[a]n attorney at law is absolutely privileged to publish defamatory matter concerning another in the course of a judicial proceeding in which he participates as *counsel so long as the matter published has some reference or relation to the proceeding*") (emphasis added).

> Indeed, the Maryland Court of Appeal has underscored that:

> [t]he privilege is not an absolute and unqualified privilege and cannot be extended beyond the reason and principles on which it was founded….[a]nd if counsel in the trial of a cause maliciously slanders a party, or witness or any other person in regard to a *matter that has no reference or relation to, or connection with*, the case before the Court, he is and ought to be answerable in an action by the party injured….[w]e cannot agree that for the abuse of his privilege he is amenable only to the authority of the court. Mere punishment by the court is no recompense to one who has thus been maliciously and wantonly slandered.

*Maulsby v. Reifsnider*, 69 Md. 143, 152, 14 A. 505 (1888).

The false and defamatory statements in the Subpoenas do not advance any purpose of this action.  Specifically, BSI falsely stated in its Subpoenas that WAUSA was under investigation by the FBI and unidentified Offices of the U.S. Attorney.  These defamatory statements have no salience whatsoever to the present proceeding.  Accordingly, these defamatory statements cannot be said to have "any relation" to BSI's claims, and certainly do not further any purpose of BSI in prosecuting its claims.  They never could, because they sought something that did not exist, and that BSI had no legitimate reason to think existed.  In fact, BSI's sole objective was to leverage WAUSA into settling the case on terms that would allow a second lawsuit against WAUSA, all by threatening to maliciously defame WAUSA's business reputation and interfere with lucrative business relationships. Under the above precedent, such statements do not fall within the scope of the litigation privilege, and thus, BSI's reliance on such privilege is misplaced.

### 3.    BSI's Defense Of "No Harm, No Foul" Is Irrelevant.

Moreover, BSI's defense of "no harm, no foul" is irrelevant to the fraud on the Court

analysis as a party cannot be permitted to abuse or besmirch the judicial process, try to avoid being caught, and then walk off to the sidelines with a slap on the wrist, ready to resume waiting for that system to reward it.  *See C.B.H. Resources, Inc. v. Mars Forging Co.*, 98 F.R.D. 564, 569 (W.D. Penn. 1983) ("We cannot allow a party which has demonstrated such a flagrant disregard for our rules simply to receive a small penalty and then go forward with its claim").

> **D.    WAUSA Has Met Its Prima Facie Case For The Remaining *Shaffer* Factors.**

Finally, WAUSA has met its burden under *Shaffer* for the remaining factors, which include "prejudice to the judicial process and the administration of justice," "availability of other sanctions to rectify the wrong by punishing culpable persons," and "the public interest."  *Shaffer*, 11 F.3d at 462-63; *Bryant-Bunch*, 2006 WL 4500055, at *4 ("preserving the integrity of the judicial system and the orderly administration of justice strongly serve the public interest").

**III.    The Declarations Of Michael S. Rothman and Amanda L. Ornitz Fail To Explain The Fraud Or Rebut The *Prima Facie* Case.**

The Declarations submitted by Michael S. Rothman and Amanda L. Ornitz attempt to explain away the fraud on the Court by claiming that the events were all a series of computer errors.  However, Mr. Rothman and Ms. Ornitz confine their discussions to the first two pages of the Subpoenas and do not address the origin of the Attachment A's to the Subpoenas, which is what the Motion is about.  Defendants' computer forensic expert, Neil A. Krawetz, Ph.D. has examined the documents produced by Ms. Ornitz and Mr. Rothman and the Affidavits, and concluded that the Affidavits are contradicted by the electronically-stored information produced by Mr. Rothman and Ms. Ornitz.  *See* Declaration of Neil A. Krawetz, Ph.d, Exhibit 1.

Among other things, Dr. Krawetz concludes:

- The Subpoenas have been backdated.

11

- BSI's explanation for its actions is inaccurate and BSI has understated to the Court the number of Subpoenas that were Re-Signed in February 2010. In particular, Mr. Rothman and Ms. Ornitz aver that only twelve (12) subpoenas were re-signed when this statement is demonstrably false.

- BSI has not produced for examination the 11 original Subpoenas that it claimed to have in its possession or copies of the full Subpoenas.

- BSI's explanation for its actions is inaccurate because Apple Preview did not change the check marks to the circles.

- BSI's explanation for its actions is inaccurate because Ms. Ornitz misrepresented not knowing about changes being saved.

Moreover, Mr. Rothman and Ms. Ornitz have recently served their Answers to Interrogatories, which Interrogatories were authorized by a finding by Magistrate Judge Day that there was a "substantial justification" made by WAUSA. *See* Exhibits 2 and 3, attached hereto. First, while injecting the issue of BSI/Paul A. Wagner's non-involvement in BSI's Opposition, Mr. Rothman and Ms. Ornitz refuse to answer any questions about BSI or Paul A. Wagner's involvement in the Subpoenas. *See* Exhibit 2, Amanda L. Ornitz Interrogatory Answers, p. 11-13, Interrogatory Answers 10, 12, 14; Exhibit 3, Michael S. Rothman Interrogatory Answers, p. 5-8, 17, Interrogatory Answers 2, 4, 5, 15. Having injected the issue into the case, BSI cannot hide under privilege, and the Court should construe these Interrogatory Answers against BSI.

Indeed, the telltale digital fingerprint of BSI's involvement with these subpoenas is the footer ("Doc. #NY-20712 v. 4") shown on certain of the subpoena schedules. Although Mr. Rothman is purportedly the author of the document and both Mr. Rothman and Ms. Ornitz refuse to answer questions about BSI (*see* id.), even Mr. Rothman can't anwer where the footer came from. *See* Exhibit 3, pp. 5-6, Interrogatory Answer 3.

Second, despite the fact that it is forensically proven that Mr. Rothman signed and back-dated more than twelve (12) subpoenas (*see* Exhibit 4, *supra*.), both Mr. Rothman and Ms.

Ornitz swear *again* that Mr. Rothman only signed twelve (12) subpoenas.  *See* Exhibit 2, p. 7-9, Interrogatory Answer 5-6; Exhibit 3, pp. 8-10, 17, Interrogatory Answer 6, 14.  The fact that Mr. Rothman signed more than twelve (12) subpoenas completely undercuts the entire explanation for BSI's actions.

Third, despite the fact that their claim that certain "check marks" were turned to "circles" on the subpoenas can be forensically disproven (*see* Exhibit 1, *supra.*) by, among other things, the existence of circles on the original January Subpoenas, both Mr. Rothman and Ms. Ornitz swear *again* that it was the software that turned the "check marks" to "circles."  *See* Exhibit 2, p. 7, 9, Interrogatory Answer 5-6; Exhibit 3, p. 9, Interrogatory Answer 6.  Significantly, although Mr. Rothman avers that he knew that there was a problem with the software and he purchased new software to avoid the problem in the future, he still served the false subpoena Attachment A's and represented to the Court repeatedly that they were the real subpoenas.  Exhibit 2, p. 9, Interrogatory Answer 6.  At the same time Mr. Rothman was on notice of the supposed software problems before making his representations to the Court and WAUSA, he was also on notice of issues relating to the subpoenas that he had served on the non-parties (namely, that there were two schedules to one subpoena), but this information was ignored.  *See* Exhibit 3, Interrogatory Answer 8, p. 12 ("I do not specifically recall reviewing or focusing on the 'two Attachment A' issue cited by Mr. Graham in his letter until after the instant dispute arose").

**III.   The Subpoenas Were False On Their Face.**

      **A.   The Subpoenas Are False On Their Face By Representing That WAUSA Is Under Criminal Investigation And/Or Litigation "By "[a]ny United States Attorney's Office In The United States and/or any of its Territories" Or "the Federal Bureau of Investigation," For "Illegal Marketing Activity."**

The Subpoenas, on their face, falsely state or, at a minimum, imply, that WAUSA is

under criminal investigation and/or litigation by "[a]ny United States Attorney's Office in the United States and/or any of its Territories" or "the Federal Bureau of Investigation," for "illegal marketing activity." BSI has absolutely no basis to state that there is an investigation of or litigation against WAUSA by "[a]ny United States Attorney's Office in the United States and/or any of its Territories" or "the Federal Bureau of Investigation," for "illegal marketing activity."

BSI bases its claim on a **terminated** Criminal Proceeding against one Alan Ralsky. BSI alleges that there are 593 E-Mails At Issue sent by Alan Ralsky. All 593 appear to be sent on April 15, 2005. All 593 appear to advertise "Startbucks or "Dunkin Donuts." BSI tries to tie a sending domain (jriad.info) to Alan Ralsky by picking and choosing unverified information that suits it on a website that purports to list spammers and their domains. Thus, while BSI picks information from the site that is to its benefit, it ignores the complete absence of any reference to WAUSA as an affiliate of Ralsky anywhere on the site, or to any information relating to the 15 recipients of its Subpoenas.

> **i.** **The Case Of _United States v. Alan M. Ralsky, et al._, Case No. 2:07-CR-20627, Has Nothing To Do With WAUSA.**

The Criminal Indictment and Criminal Conviction in the case of _U.S. v. Alan M. Ralsky, et al._, Case No. 2:07-CR-20627, U.S. District Court, Eastern District of Michigan, has nothing to do with WAUSA -- and, worse still, BSI knows it. A copy of the Ralsky Indictment is attached as Exhibit "4."

_**The Sending Domains Do Not Match**_. None of the sending Domains[6] referenced in the

---

[6] The sending Domains are: weyhityu.com, petsne.com, letyouseeme.com, leidoerti.com, kertyimpo.com, serthyouto.com, himtosee.com, marscoban.com, pertletno.com, sieki.com, batrovsi.com, hideiy.com, frostonme.com, pertindo.com, garoleben.com, soeperty.com, ketometer.com, mastomety.com, estobenca.com, darobenca.com, farmokombe.com, perletyou.com, amostade.com, vercane.com, wescombilia.com, wudkneit.com, lernalotto.com,

Ralsky Indictment are included in the E-Mails At Issue.  BSI's President, Paul Wagner, agrees and knows this because he tendered Declarations to this Court attesting to the domains in the E-Mails At Issue and the domains in the Ralsky Indictment were not included.  *See* DE 34, DE 176-1.  Thus, by BSI's own admission, it knows that the Domains in the E-Mails At Issue were not in any way, shape, or form referenced in the Ralsky Indictment.

   ***The Time Periods Do Not Match***.  The materially false domain registrations at issue in the Ralsky Indictment are of a later time frame than the e-mails in the E-Mails At Issue that BSI claims are from Ralsky.  *See* Exhibit 4, Ralsky Indictment, p. 10, ¶ 33 ("*Spamming With Materially False Domain Registrations*. 33.  Beginning in or about May 2005 and continuing until in or about September 2005….").  The time periods for the sending of the e-mails in the Ralsky Indictment are of a different time from than the e-mails in the E-Mails At Issue that BSI claims are from Ralsky.  *See* Exhibit 4, Ralsky Indictment, p. 11, ¶ 38 ("From on or about June 1, 2004, through on or about August 31, 2004, and also from on or about May 1, 2005, through on or about July 31, 2005….").  The dates of the transmission of the millions of e-mails in the Ralsky Indictment are different than the date of transmission of the e-mails in the E-Mails At Issue that BSI claims are from Ralsky.  *See* Exhibit 4, Ralsky Indictment, p. 12, ¶ 43 ("5/23/2005, 5/24/2005, 5/25/2005, 5/26/2005, 5/27/2005, 5/28/2005, 5/29/2005, 5/31/2005, 6/17/2005, 6/25/2005, 7/6/2005, 7/23/2005").

   ***The Ralsky Indictment Involved A Stock "Pump and Dump" Scheme That BSI Has Not Alleged Existed Here.***  The objective of the Ralsky e-mails was different than the apparent purpose of the claimed Ralsky e-mails in the E-Mails At Issue.  *See* Exhibit 4, Ralsky

---

nomargene.com,   carpomoza.com,   clemontuz.com,   farbemove.com,   lestormun.com, alunpoke, esstockwatch.com, and keepsea.info

Indictment, p. 15, ¶ 47 ("The object of the unlawful spam e-mail conspiracy was personal financial gain….by receiving payments and proceeds from the sale of stocks whose prices were inflated as a result of being advertised and promoted through false and fraudulent pretenses, promises and representations." None of the stocks being pumped[7] in Ralsky's "pump-and-dump" scheme are included in the E-Mails At Issue that BSI claims are from Ralsky, or, for that matter, in any of the E-Mails At Issue. None of the co-Defendants to Ralsky are associated with WAUSA.[8]

The Press Release cited by BSI proves that the Indictment related to the use of spam for a "pump and dump" scheme:

> United States Attorney Stephen J. Murphy said, "Today's charges seek to knock out one of the largest illegal spamming and fraud operations in the country, an international scheme *to make money by manipulating stock prices through illegal spam e-mail promotions*. I commend the excellent investigative work of the FBI, Postal Inspection Service, and the IRS-Criminal Investigation Division. I also wish to recognize the significant support and expertise provided by the Computer Crime and Intellectual Property Section of the Criminal Division of the Department of Justice."
> * * *
> The charges arose after a three-year investigation, led by agents from the Federal Bureau of Investigation, with assistance from the U.S. Postal Inspection Service and the Internal Revenue Service, revealed a sophisticated and extensive spamming operation that, as alleged in the indictment, *promoted a stock "pump and dump" scheme, in which the defendants sent spam touting thinly traded Chinese penny stocks, drove up their stock price, and reaped profits by selling the stock at artificially inflated prices*.
> * * *
> The indictment charges that the defendants earned profits when recipients responded to the spam and purchased the touted products and services. According

---

[7] The stocks are:  China World Trade Corporation (CWTD), China Digital Media Corp. (CDGT), Pingchuan Pharmaceutical, Inc. (PGCN), World Wide Biotech and Pharmaceutical Company (WWBP).

[8] The co-Defendants are:  Scott K. Bradley, Judy M. Devenow, John S. Brown, William C. Neil, Anki K. Neil, James E. Bragg, James E. Fite, Peter Severa, How Wai John Hui, Francis A. ("Frankie") Tribble.

16

to the indictment, Hui's primary role in the scheme was to act as *a conduit for Chinese companies who wanted their stocks pumped by the scheme*.

A copy of the Press Release is attached as Exhibit 5 (emphasis added).

*None of The Subjects of The E-Mails At Issue Match The Ralsky E-Mails In The Indictment*.   Although all 593 of the E-Mails At Issue that BSI claims are from Alan Ralsky appear to advertise "Startbucks" or "Dunkin Donuts," Starbucks and Dunkin Donuts are not referenced in the Ralsky Indictment.   Neither are the recipients of the 15 Subpoenas -- America Online, Inc. (AOL), Direct Brands, Inc./Columbia House, and Doubleday, Columbia House, Discover Financial Services, Direct Brands, Inc., Direct TV,   Dish Network, Experian/Consumer.Info, Experian Information Solutions (a.k.a Star Club Rewards), Kraft Food, Inc., NetFlix, Rhapsody America, LLC, StyleMyHouse.net, Kraft Foods Global, or Vonage. There is a complete disconnect:  BSI issued 15 Subpoenas to companies that have nothing to do with the 593 E-Mails At Issue claimed to be from Ralsky.  Rather than seek discovery relating to the 593 E-Mails At Issue, BSI issued the discovery to recipients for whom it believed WAUSA would be most injured, and then cobbled together excuses after-the-fact regarding Alan Ralsky to defend its outrageous conduct.

*BSI Had No Basis To Believe That The Litigation and Investigation Of Alan Ralsky Is Ongoing Such That WAUSA Could Somehow Be Drawn Into It*.  Moreover, Alan Ralsky was sentenced and the case closed as to him on November 30, 2009.  A copy of the docket is attached as Exhibit 6.  BSI had no basis on August 9, 2010 to believe that there was criminal "litigation" ongoing as to Alan Ralsky that linked in any way to WAUSA.

17

**ii.    The Existence of *Civil* Litigation Against WAUSA Does Not Mean That There Is A *Criminal* "Investigation" Or "Litigation" By "Any United States Attorney's Office in the United States and/or any of its Territories" or "the Federal Bureau of Investigation."**

BSI contends that there must be a ***criminal*** investigation of WAUSA by "[a]ny United States Attorney's Office in the United States and/or any of its Territories" or "the Federal Bureau of Investigation," for "illegal marketing activity," because WAUSA was named in a ***civil*** investigation by the Florida and Texas Attorney General.  The fact of a ***civil*** lawsuit does not create a ***criminal*** investigation or litigation by "[a]ny United States Attorney's Office in the United States and/or any of its Territories" or "the Federal Bureau of Investigation."  These are completely separate law enforcement agencies enforcing different laws.  BSI simply has no evidence for or basis to believe that WAUSA is under a ***criminal*** investigation and/or litigation by "[a]ny United States Attorney's Office in the United States and/or any of its Territories" or "the Federal Bureau of Investigation," for "illegal marketing activity."

**iii.    The Existence Of An Alleged Relationship Between A Third Party, Opt-In-Real Big And Alan Ralsky Does Not Mean That WAUSA Is Under An "Investigation" Or "Litigation" By "Any United States Attorney's Office in the United States and/or any of its Territories" or "the Federal Bureau of Investigation."**

BSI's attempt to buttress the truth of its false allegation against WAUSA with references through a purported relationship with a third party also fails.  BSI alleges that WAUSA retained a company called Opt-In-Real Big, which, in turn, retained Alan Ralsky, and this allegation entitled it to issue the Subpoenas at issue.

BSI's reasoning is flawed, as shown by the following analogy:  A commercial landlord owns a warehouse and various other commercial properties.  It rents the 6th floor of one building in Dallas, Texas to a tenant business called the Texas School Book Depository.  Lee Harvey

18

Oswald, a rogue employee of the tenant, shoots President John F. Kennedy from one of the windows.  BSI's rationale would allow it to issue subpoenas to all the other tenants on other floors of the warehouse, as well as all the other tenants in any other buildings owned by the landlord, and state that it is requesting documents about the conspiracy between the commercial landlord and Lee Harvey Oswald, as well as the Federal Bureau of Investigation's and U.S. Attorney's Office's investigation of the commercial landlord's role in the conspiracy.  In the end, BSI had no basis to state that WAUSA was a party to a criminal investigation or litigation by the U.S. Attorney's Office or the FBI.

**IV.  Further Discovery Is Warranted Due to BSI's Violation of The Court's Order At Docket Entry 212**.

On April 12, 2010, the Court issued an Order at DE 212 quashing 85 unknown Subpoenas issued by BSI and ordering compliance by BSI.  *See* DE 212  The April 12th Order arose out of the fact that BSI noticed its intent to issue approximately 85 Subpoenas without providing any notice of the content thereof to WAUSA.  WAUSA's Motion was based on the fact that BSI was conducting secret discovery using the discovery powers conferred upon it by the Federal Rules of Civil Procedure without allowing simple due process to WAUSA.

In the Order, the Court ordered that:

The Court hereby GRANTS Defendant's Motion.

* * *

Plaintiff shall provide a listing of all non-party subpoenas issued, the status of production for each non-party, and a summary of any discussions held regarding the efforts to obtain the requested materials subsequent to the service or attempted service of each subpoena.  Plaintiff shall also produce copies of all original subpoenas with attachments issued to all non-parties.  For any non-party who has not responded to Plaintiff's subpoena, Plaintiff shall immediately notify said non-party that the Court has quashed the subpoena and that they should not produce the requested material.  Plaintiff is not prohibited from seeking the same material, but must do so in full compliance with the rules of procedure as suggested herein.

Plaintiff shall produce to all parties complete copies of materials received in response to any subpoenas issued.

*See* DE 212.

When BSI did not comply in a timely manner with the Court's April 12th Order, WAUSA filed on May 14, 2010 its Motion to Enforce Court Order at Docket Entry 212 and For Sanctions.

The subject of BSI's compliance with the Court's April 12th Order was a subject of a Court finding of fact at the September 23, 2010 hearing.  At the hearing, the Court made a finding that BSI had not complied with the Order of April 12, 2010 at DE 212 and stated as follows:

> But I do not intend to release the plaintiffs
> from their continuing obligation. Simply put, my letter order
> of April 12 said as follows: "Plaintiff shall provide a listing
> of all non-party subpoenas issued, the status of production for
> each non-party, and a summary of any discussions held regarding
> the efforts to obtain the requested materials subsequent to the
> service or attempted service of each subpoena. Plaintiff shall
> also produce copies of all original subpoenas with attachments
> issued to all non-parties."
> I'm not sure that that has been fully complied with.
> The court is interested in the state of full compliance with its
> orders. I'm not going to require further amplification of a
> privilege log, but ***I am going to require the production of
> electronically stored information regarding each of these
> subpoenas and each attachment relating to each subpoena. That I
> think really goes to the merits of my initial order, which I
> just do not find has been complied with***. I am deeply troubled.
> It's not for me to decide the question of fraud, but that will
> in effect grant in part defendants' motion

*See* Transcript of September 23, 2010 hearing, p. 94, lines 6-24 (emphasis added), attached as Exhibit 8.

The Court therefore held that BSI was required to produce Electronically Stored Information pertaining to the April 12, 2010 Order as follows:

MR. RING: When you direct us to produce all copies,

20

the assembling of a subpoena today with today's electronics, you
have the court provided PDF fill-in version. Then we correct --
counsel generally in the community will create in a word
processing format a list of documents and subject matters and
then eventually make a PDF that glues, I say, the whole thing
together. So, as a result of that, there are a lot of little
pieces that are floating around out there typically in a law
office. To reconstruct all drafts, all versions, all thoughts
that went into the final version could be a monstrous task and
then for us to have to come back and say it's all there is going
to be very difficult because you never know. There's a lot of
little stuff.
If we're required to produce the final version that
actually left the law office to some destination, whether it be
counsel or the party to whom the subpoena was issued, that's
easier to corral and to identify, but if we had to go back and
get all the parts, that would be almost impossible.
THE COURT: If I understand your concern, it's really
that these attachments go through many iterations over many
years.
MR. RING: Well, weeks, days, whatever.
THE COURT: Well, that's easy to address. The first
subpoena went out in February 2010?
MR. RING: The initial notice went out in December, but
I think there was no subpoena attached to that one. That was to
DNS, I believe.
THE COURT: We'll go from November 2009 to present.
MR. RING: Will it encompass the final versions that
left the law office?
THE COURT: Yes.
MR. RING: Thank you.
MR. SAUNDERS: When you say the final version that
left, part of the question is which time? So it's got to be
multiples.
THE COURT: Every one that went out of the office.
MR. SAUNDERS: Including what was sent to us and
represented to us --
THE COURT: ***Every one that went out of the office.
That includes you. That includes to whoever the subject of the
subpoena was. That includes any redrafting, reediting, all of
those***.

See Exhibit 8, September 23, 2010 Transcript, p. 95, lines 2-25; p. 96, lines 1-18 (emphasis

added).

On October 14, 2010, BSI purported to comply with the Court's Order at DE 212 and the Court's ruling on September 23, 2010 by producing various information pertaining to the subpoenas *duces tecum* secretly issued by it in January of 2010 and the bogus subpoenas thereafter produced by it to WAUSA in February of 2010. The subpoena productions consisted of three archives titled "Subpoena Copies MR1.zip" (hereinafter "Home"), "Subpoena Copies MR2.zip" (hereinafter, "Work"), "Subpoena responses MR 3.zip" (hereinafter "Responses"), and "Subpoenas MR4.zip" ("ALO").

BSI's subpoena production has been examined by WAUSA's computer forensic examiner, Dr. Neal Krawetz, and the production is woefully deficient in the following particulars:

> (1)   BSI did not produce all required versions and copies. Specifically, BSI did not provide Microsoft Word documents of two known revisions, did not produce all copies of the combined subpoena form with Attachment A documents, and did not provide documents representing all files transferred between home and office locations. These missing files are known to exist because they are referenced in the produced files' metadata.[9]  *See* Declaration of Neal Krawetz, Ph.d., ¶ 6(1), attached as Exhibit 7.

> (2) Metadata is missing from the Home and Work archives. The missing metadata means that four files have an unknown origin.  *Id*., ¶ 6(2).

> (3) Documents were removed from the Home archive. At least two files are known to be missing based on the absence of sequential information in the metadata.  *Id*., ¶ 6(3).

> (4) Files were planted on the Home systems. According to the produced metadata, files in the Home archive came from emails that were saved on the home system no more than a few hours before the production to WAUSA. These are not original copies from a home system.  *Id*., ¶ 6(4).

> (5) Files in the Work archive are from on an unidentified system that was not one of the office/work systems. According to the produced metadata, files in the Work archive were saved from email attachments. Moreover, nearly half of the files were placed on the system *after* they were produced to WAUSA in February 2010.  *Id*., ¶ 6(5).

---

[9] *Metadata* is "data about data" that is common found inside or associated with specific file formats. Metadata usually includes information about a file's origin.

(6) BSI did not provide copies of the archives that were used to create the Home and Work archives. The provided metadata identifies the existence of archives that contained copies of the subpoenas and that were emailed between systems. The archives, which contain copies of the subpoenas, were not produced. *Id*., ¶ 6(6).

(7) Files in the ALO archive came from unidentified sources. Specifically, there are 24 PDF files that lack the metadata that identifies the files' origin. *Id*., ¶ 6(7).

(8) The ALO, Home, and Work archives contain backdated documents. Specifically, **there are 69 documents with a date on the signature line that does not match the metadata**. The original copies of the January subpoenas also contain different signatures. *Id*., ¶ 6(8).

(9) BSI has not produced all copies of the signature forms and signed documents. This is known because the signature forms and signed documents in the ALO archive are unrelated. *Id*., ¶ 6(9).

(10) BSI did not produce files sent between home and work computers, as attested in Michael Rothman's affidavit. In his affidavit, he explicitly mentions sending files between his home and office systems between February 5th and 7th, 2010. However, no files have been produced that show changes, modifications, saving, or copying to any system during those dates. *Id*., ¶ 6(10).

(11) PDF and Word documents are missing for documents sent to third-party subpoena recipients. The Court order required *all* copies of subpoenas that went out of the office. However, BSI has not produced any full copies of the subpoenas sent to third party recipients in January 2010. *Id*., ¶ 6(11).

Accordingly, BSI should also be compelled to comply with the Court's Order at DE 212 and the Court's ruling at the September 23, 2010 hearing.

WHEREFORE, Defendant WORLD AVENUE USA, LLC respectfully requests that the claims of BEYOND SYSTEMS, INC. be dismissed for fraud upon the Court, failing which, the Court should compel BSI to comply with the Court's Order at DE 212 and the Court's ruling at the September 23, 2010 hearing and conduct such further proceedings as it deems just and appropriate.

Dated:  November 26, 2010.

Respectfully submitted,

*Attorneys for World Avenue USA, LLC*

GREENBERG TRAURIG, LLP

___/s John L. McManus_____
Sanford M. Saunders, Jr., Esq.
USDC, MD #4734
saunderss@gtlaw.com
Nicoleta Burlacu, Esq.
BurlacuN@gtlaw.com
*Admitted Pro Hac Vice*
GREENBERG TRAURIG, LLP
2101 L Street, NW, Suite 1000
Washington, DC 20037
Telephone:  202-331-3100
Facsimile:  202-331-3101

--and--

Kenneth Horky, Esq.
Florida Bar No. 691194
horkyk@gtlaw.com
John L. McManus, Esq.
Florida Bar No. 0119423
mcmanusj@gtlaw.com
*Admitted Pro Hac Vice*
GREENBERG TRAURIG, P.A.
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, FL 33301
Telephone: 954-765-0500
Facsimile:  954-765-1477