## IN THE U.S. DISTRICT COURT FOR MARYLAND,
## SOUTHERN DIVISION

| | | |
|---|---|---|
| BEYOND SYSTEMS, INC. | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | **Case No. PJM 08 cv 0921** |
| | * | |
| WORLD AVENUE USA, LLC | * | |
| successor by merger to NIUTECH, LLC., | * | |
| DBA "THE USEFUL," ET AL. | * | |
| | * | |
| Defendants | * | |

### PLAINTIFF'S OPPOSITION
### TO DEFENDANT'S MOTION (AT DE 499) FOR PROTECTIVE ORDER REGARDING
### DEPOSITION OF ITS GENERAL COUNSEL

Plaintiff, through counsel, files this memorandum in opposition to the Motion for

Protective Order Regarding the Deposition of Its General Counsel filed by Defendant World

Avenue USA, LLC at DE 499.  The filing deadline for this opposition was extended to

December 14, 2010 by the order at DE 544.

### I. Homer Appleby is a Fact Witness.

The Motion relies on declarations from Homer Appleby, Esquire, the attorney whose

deposition is sought by Plaintiff, and Sanford Saunders, Esquire, lead counsel for Defendant

WAUSA in this litigation.  Both declarations attempt to paint the role of Mr. Appelby as that of

an attorney whose sole function is to render services that are covered by attorney-client

privilege.

Having been admitted to practice in 2000, it appears that Mr. Appleby has had the good

fortune to spend most of his law career to date as an employee of Defendants.   Documents

obtained in this case, mostly from non-parties rather than from WAUSA, reveal that Mr.

Appleby has actively participated in the day-to-day operations of WAUSA and its associated

entities in routine business activities that are not protected by attorney-client privilege.  We

provide the following examples:

WAUSA 00306-07 et seq.     Sony logo letter.  Dispute with Sony over false impression of authorized use of logo and trademark in promotions offered by WAUSA and its marketers; communications with parties outside the World Avenue family of companies.

WAUSA 00313-14 et seq.     List of fictitious names, CONFIDENTIAL.  Names registered by Mr. Appleby in public records, apparently for use in World Avenue email marketing campaigns.

WAUSA 00142-156 et seq.    Fictitious name filings by Mr.  Appleby, for use in World Avenue email marketing campaigns.

WAUSA 006682 et seq.  Suppression lists and tracking, referred to Mr. Appleby.

FL AG 377-98 Levine complaint, allegations involving Appleby

FL AG 770  et seq.       11/7/06 OAG letter re consumer complaints, Mr. Appleby

FL AG  1850 et seq.       Niutech, LLC SOS listing, Mr. Appleby

FL AG  1910 e t seq.      fictitious names for email campaigns, Mr. Appleby

FL AG   1915 et seq.      Useful, change of address, Mr. Appleby

FL AG    1921 et seq.    consumer complaints, reference to Mr. Appleby

FL AG   1940 et seq.      consumer complaints, same

FL AG    1975 et seq.     documents to FL AG from Mr. Appleby

FL AG    2159 et seq.     documents to FL AG from Mr. Appleby

FL AG    2529 et seq.      Sony logo issue, handled by Mr. Appleby

WAUSA 000297-299 = BSI FL AG 1835-1837 of 3292 email 11/2/04 re newsletter

WAUSA 000308 12/1/04 letter to Sony re infringement, Mr. Appleby

WAUSA-007171-007186 Motion to dismiss in Levine suit, involving Mr. Appleby

WAUSA-007973 5/29/08 letter, Appleby to James Wagner, "Enclosed are our checks, each in the amount of $8,817.98, in payment of the default judgments in the referenced cases. . . . Sincerely,  Homer Appleby"

WAUSA-008096 letter re J. Wagner case, from Mr. Appleby

BSI FL AG 2013 of 3292 reference to Appleby by FL AG

BSI FL AG 3012 of 3292 FL AG reference to a cc to Mr. Appleby, to manufacture privilege
Deposition of Chris Peterson, pp. 138-141; reference to Mr. Appleby, question of privilege by
mere presence of attorney.

Appleby Declarations filed in this action.

Peterson deposition at 213-214, references to Mr. Appleby.

FL SOS filings by, or naming, Mr. Appleby (dozens of pages).

FL AG documents naming Mr. Appleby.

WAUSA documents naming Mr. Appleby.

WAH documents naming Mr. Appleby.

Commissions to affiliates and publishers; identification of affiliates and publishers.

Contracts with advertisers, performance, breach.

Content for advertisements; creatives, provided to marketers.

Tracking of transmissions, responses, delivery rates, reject rates, complaint and opt-out rates.

Creation of names, domain names, trade names.

Campaigns, content, tracking, identification.

Opt-outs, suppression lists, complaints from email recipients, from consumers re "free" gifts.

Lashback reports.

Quantities of emails initiated, delivered.

     These documents, many of which have already been filed as exhibits in voluminous

filings in this matter, demonstrate that Mr. Appleby routinely participated in the daily operations

of the business, in activities that cannot be considered as protected from discovery under the attorney-client privilege.  Samples are attached to this memorandum.

## II.  Subject Matters for Deposition

The Motion argues that counsel sought clarification of the scope of examination of Mr. Appleby in advance of the proposed deposition.  The Rules do not require that an individual be provided a list of subject matters as in a Rule 30(b)(6) deposition.  However, as acknowledged by counsel, Plaintiff's counsel indicated that Mr. Appleby would be examined on the routine business matters he handled at the World Avenue companies, as indicated in the documents in discovery.  Furthermore, the complaints, along with the memoranda and exhibits filed in this case set forth the subject matters at issue, and Mr. Appleby acknowledges in his declaration attached to the Motion that he has read most or all of the filings.  He should therefore be well prepared in responding to questions on the subject matters involved, without fear of undue surprise.

## III.  Legal Standard.

The scenario at hand is specific: the deposition of <u>house counsel</u>.  This is not the mere request for documents generated by opposing counsel, or a request for a deposition of opposing counsel within the same litigation. The scope sought here, as evident from the document list above, concerns routine business operations.  The fact that some of those operations may have led to litigation is irrelevant for purposes of privilege.

The burden to establish the attorney-client and work product privileges is squarely upon the party seeking to assert it.

> The [attorney-client] privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate

4

and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

U.S. v. Cohn, 303 F. Supp.2d 672, 679 (D. Md. 2003). (quoting U.S. v. Jones, 696 F.2d 1069, 1072 (4th Cir. 1982) (quotation marks omitted) (emphasis added)).  The privilege is waived by disclosure to a third party:

> Any voluntary disclosure by the client to a third party waives the privilege not only as to the specific communication disclosed, but often as to all other communications relating to the same subject matter.

*Id* at 680.  See also, *Koch v. Specialized Care Services, Inc*., 437 F. Supp.2d 362, 370 (D. Md. 2005) holding that privilege is lost where client intends that the communication be publicly-disclosed. Here, as to the communications between counsel and persons other than his employer/client, no privilege applies. Thus, all of Mr. Appleby's communications to third parties should be regarded as non-privileged.

When a party 'raises an issue which can only be effectively rebutted by inquiry into an attorney/client communication' the 'advice of counsel' is placed at issue and attorney-client privilege is typically deemed waived." *Cohn*, 303 F. Supp.2d at 680 (*citing McCafferty's, Inc. v. The Bank of Glen Burnie*,  No. Civ. A MJG-96-3656, 1998 U.S. Dist. LEXIS 12859, at *19 (D. Md. Jan. 26, 1998) *and U.S. v. Workman*, 138 F.3d 1261, 1263 (8th Cir. 1998) (holding that defendant could not "selectively assert privilege to block the introduction of information harmful to his case after introducing other aspects of his conversations with [his attorney] for his own benefit.")).  *See Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 731 (8th Cir. 2002) ("Application of the privilege under these circumstances would deny Dynasty access to vital information peculiarly possessed by the attorneys necessary to defend against Pamida's claims").  Here, Plaintiff alleges that Defendants have included false and/or deceptive information in the emails.  Testimony from Mr. Peterson has shown there were discussions over whether the content was deceptive.  Any comments from Mr. Appleby on this topic would therefore be germane to

the issue of falsity and deception, Key elements of the violations asserted in the complaint.

It is well-settled that "neither the Federal Rules of Civil Procedure nor the Federal Rules of Evidence prohibit taking the deposition of an opposing party's attorney." American Cas. Co. of Reading, Pa. v. Krieger, 160 F.R.D. 582 (S.D. Cal. 1995); *Dunkin' Donuts, Inc. v. Mandorico, Inc.*, 181 F.R.D. 208, 209 (D. Puerto Rico 1998). A deposition of general counsel would not disrupt the adversarial system nor detract opposing counsel from their business of preparing for trial, the main concerns expressed in <u>Shelton</u>.   Here, the deposition sought is not that of opposing counsel in the litigation, but rather, one step removed: house counsel.

The Eighth Circuit explained its underlying rationale in <u>Shelton v. American Motors Corp</u>., 805 F.2d 1323 (8th Cir. 986), as follows:

> It is not hard to imagine additional pretrial delays to resolve work-product and attorney client objections….the practice of deposing opposing counsel detracts from the quality of client representation. Counsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent… [i]f counsel were compelled to acknowledge whether certain specifically described document exist, she necessarily would reveal her mental selective process…consequently we hold that where, as here, the deponent is opposing counsel and opposing counsel has engaged in a process of selecting and compiling documents in preparation for litigation, there mere acknowledgment of the existence of those documents would reveal counsel's mental impressions, which are protected as work product.

*Id.* at 1327-1329. Indeed, the "Shelton test was intended to protect against the ills of deposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy." <u>Pamida, Inc. v. E.S. Originals, Inc.</u>, 281 F. 3d 726 (8th Cir. 2002). The <u>Shelton</u> case involved a deposition of <u>opposing counsel</u> in the <u>same action</u>. WAUSA's Motion ignores that this case does not involve the circumstances that concerned the court in <u>Shelton</u>.

Other courts have recognized the attorney-as-deponent scenario:  "Sometimes there are very legitimate reasons for deposing a party's attorney… examples where deposition of an

attorney is both necessary and appropriate are as follows. The attorney may be a fact witness, such as an actor or a viewer." <u>N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.</u>, 117 F.R.D. 83, 85 (M.D.N.C. 1987) (emphasis added). "In cases where the attorney's conduct itself is the basis of a claim or defense, there is little doubt that the attorney may be examined as any other witness." <u>Johnston Development Group, Inc. v. Carpenters Local Union No. 1578</u>, 130 F.R.D. 348, 352 (D.N.J. 1990). The attorney may be a fact witness whom defendants are entitled to depose, and it would therefore be inappropriate to preclude his deposition. *The Davis Companies, Inc. v. Emerald Casino*, No. 99C 6822, 2000 Lexis 7867 (N.D. Ill., June 2, 2000) (recognizing that role of in-house or general counsel differs from trial counsel).

Magistrate Judge Grimm of this Court analyzed attorney-client privilege at length in Stanley, Inc. v. Creative Pipe, Inc. Civil No. MJG-06-2662, USDC-MD, May 29, 2008, which was directed mainly at document production, including a claw-back of inadvertently produced documents. In his discursive review of the factors that must be considered in deciding whether privilege applies, Judge Grimm observes, "Often times, it is impossible to determine if the privilege applies without extrinsic evidence, which must be provided by affidavit, deposition transcript, or other source." Id at 38. After a challenge to a privilege log, ". . . the asserting party may no longer rest on the privilege log, but bears the burden of establishing an evidentiary basis–by affidavit, deposition transcript, or other evidence– for each element of each privilege/protection claimed . . . " Id. at 41  Thus, the specific information over which privilege is asserted must be addressed, so that a proper determination of privilege can be made.

## IV. Conclusion.

In the instant scenario, there is insufficient information before the court to permit any finding of privilege. It is clear that Mr. Appleby participated in daily business operations, in

addition to his role as house counsel.  His several filings of several of Defendants' trade names with the Florida Secretary of State under the heading, "Magnacent, LLC," without reference to his status as an attorney, certainly fall outside any privilege protection.  Indeed, given the documents already produced in discovery, and the inferences that can be drawn from them, Defendants have failed to identify any particular facts that would be privileged.

The issue or privilege raised in the Motion is not ripe for determination.  Plaintiff has shown ample evidence implicating Mr. Appleby in Defendants' routine business operations, and in activities that do not merit protection under attorney-client privilege.  The deposition should proceed when the discovery schedule permits, and the issues should be permitted to develop on the record.  There will likely be need for a court ruling before the deposition is concluded.  For all the above reasons, the Motion should be denied

/s/
_____
Stephen H. Ring
STEPHEN H. RING, P.C.
506 Main Street, Suite 215
Gaithersburg, Maryland 20878
MD Bar Id. No. 04731764; USDC, MD: #00405
Telephone: 301-563-9249
Facsimile: 301-563-9639

/s/
_____
Michael S. Rothman
E. Jefferson Street, Suite 201
Rockville, MD 20850
Phone: (301) 251-9660
Fax: (301) 251-9610

*Attorneys for Plaintiff*

**Certificate of Service**

8

I certify that a copy of the foregoing documents was served on the date of ECF filing, via the ECF system, on all counsel of record.

_____/s/_____
Stephen H. Ring