IN THE U.S. DISTRICT COURT FOR MARYLAND,
SOUTHERN DIVISION

| | | |
|---|---|---|
| BEYOND SYSTEMS, INC. | ) | |
| | ) | |
| Plaintiff | ) | |
| v. | ) | Case No. PJM 08 cv 0921 |
| | ) | |
| WORLD AVENUE USA, LLC, et al. | ) | |
| Defendants | ) | |
| _____ | ) | |

**DEFENDANT, WORLD AVENUE USA, LLC'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR ENTRY OF PROTECTIVE ORDER AS TO THE DEPOSITION OF NON-PARTY DOUGLAS KROPP, VERIZON FIBER SOLUTIONS CENTER**

Defendant, WORLD AVENUE USA, LLC ("WAUSA") hereby submits its Reply Memorandum in Support of its Motion for Protective Order As To The Deposition of Non-Party Douglas Kropp, and states:

**I.      Introduction.**

This deposition is an attempt by BEYOND SYSTEMS, INC. ("BSI") to use a fact witness at Verizon having no personal or relevant knowledge to impugn the clear and unambiguous testimony of Verizon's subject matter expert on the relevant issue. The proffered testimony is irrelevant and the witness lacks personal knowledge. Accordingly, a protective order should issue.

The issue relates to BSI's lack of status as a *bona fide* internet service provider, which is set for trial in August 2011. Specifically, the evidence developed by WAUSA demonstrates that BSI is not a *bona fide* internet service provider due to its wholesale violation of the Terms of Service for its major upstream internet service providers, Verizon. By way of background, BSI claims to use a service offered by Verizon at its so-called "Point of Presence" at 1612 Sherwood Road, Silver Spring, Maryland 20902. *See* Declaration of Paul Wagner, Case No. 1:09-mc-

00557-HHK (D.C.) filed 12/3/09, p. 2, ¶9, attached as Exhibit 1.  The service, known as Verizon FIOS [Fiber Optic Service] for Business, provided Internet Protocol Addresses ("IP Addresses") to BSI.  *Id*.  In turn, BSI "assigns Internet Protocol ("IP") addresses it owns to clients for their use in accessing and providing services via the Internet." *Id*., ¶ 7.

In March 2010, WAUSA elicited clear and unambiguous deposition testimony from a Verizon witness, Ms. Tina Dempsey-Jones, that the type of use that BSI offers would violate the Terms of Service for Verizon FIOS for Business.

### II. Verizon's Subject Matter Expert On The Terms of Service For Verizon Business FIOS Has Previously Testified And Mr. Douglas Kropp Lacks Either Personal Knowledge Or Involvement With The Terms Of Service.

BSI argues that the deposition is merited because the prior Verizon witness, Ms. Dempsey-Jones, lacked personal knowledge.  In an attempt to impugn the testimony of Ms. Tina Dempsey-Jones, BSI is trying to take the deposition of a Verizon customer service employee who lacks personal knowledge of BSI's account or knowledge of the Terms of Service.  BSI's attempt should be rejected and a protective order should issue.

#### A. Verizon's Subject Matter Expert Has Spoken.

WAUSA took the deposition of Ms. Dempsey-Jones of Verizon, who is the senior marketing manager/product line manager for medium business customers at Verizon.  *See* Excerpted Transcript of Tina Dempsey-Jones, attached hereto as Exhibit 2, p. 8, lines 15-18. Ms. Dempsey-Jones, a high level employee at Verizon, works on "product marketing or product line management for high speed Internet and FIOS" for Verizon and is the "*subject matter expert for maintaining the product life cycle as well as training the sales force.*" *Id*., p. 9, lines 8-17 (emphasis added).  Thus, Ms. Dempsey-Jones is *the "subject matter expert"* at Verizon for its

2

Verizon FIOS for Business Service. *Id.*, p. 10, lines 3-13.  Verizon FIOS for Business is a product that is targeted for "internet service for business[es who] are small to medium business customers with a single location." *Id.*, p. 10, lines 21-22; p. 11, lines 1-3.

To receive Verizon, the customer, whether a small to medium business customer, must agree to the one set of "Terms of Service" to receive one product, Verizon FIOS for Business. *Id.*, p. 11, lines 10-22, p. 12, lines 1-3.  The small to medium business customer must agree to the Terms of Service, and it is not possible to sign up for Verizon FIOS for Business without agreeing to those Terms of Service. *Id.*, p. 12, lines 1-18.  Even if the small to medium business customer simply begins using the Verizon FIOS for Business service, that is an acceptance of the Terms of Service. *Id.*, p. 12, lines 12-18.  Ms. Dempsey-Jones is familiar with the Terms of Service, how they are implemented, and advises sales persons on the Terms of Service. *Id.*, p. 12, lines 21-22; p. 13, lines 1-19.

BSI states that Ms. Dempsey-Jones lacked personal knowledge.  This is not the case.  Ms. Dempsey-Jones authenticated the Terms of Service that were applicable to BSI's use of the Verizon FIOS for Business service from inception to date. *Id.*, p. 23, lines 7-8, 21-22; p. 24, lines 1-13 & Exhibit G (Terms of Service/Dempsey-Jones/Deposition Exhibit 2).  The Terms of Service provide that the customer cannot resell the Verizon FIOS for Business Service to third parties.  *See* Dempsey-Jones Transcript, p. 28, lines 4-10, 17-21 (emphasis added).

Ms. Dempsey-Jones testified that reselling the Verizon FIOS for Business service meant that the business customer was prohibited from taking the Verizon FIOS for Business service to provide access to customers using the Internet:

>     6    Q   Now, what's your understanding of what it
>     7    means to resell the FIOS service being provided under

3

```
 8   the terms of service marked as Verizon Exhibit 2?
 9      A   To provide the service to a third party
10   other than the customer.
11      Q   And what's your understanding of what it
12   means to resell access to the service?
13      A   To provide Internet access to a third party.
14      Q   And to the extent there's a reference here
15   to reselling the service or access directly or
16   indirectly, what's your understanding of what that
17   means?
18      A   To charge -- or to sell for a price or to
19   provide to a third party without a price.
20      Q   So under the terms of service, is the
21   Verizon FIOS business subscriber permitted to turn
22   around and provide third parties access to the
 1   Internet for a fee?
 2      A   No.
 3      Q   Under these terms of services, is the
 4   business subscriber for Verizon FIOS permitted to host
 5   Internet services for customers using the Verizon FIOS
 6   Internet connection?
 7      A   No.
```

*See* attached Exhibit (p. 29, lines 6-22; p. 30, lines 1-7)

B.  **Mr. Kropp Lacks Personal Knowledge, Did Not Speak To The Terms And Conditions And Does Not Purport To Be The Subject Matter Expert.**

In essence, not content with the testimony of Verizon's representative on the point, BSI has shopped for other opinions -- without disclosing that it was doing so. Mr. Paul A. Wagner avers that three and a half months after the deposition of Ms. Dempsey-Jones, he called up the Verizon Fiber Solutions Center. *See* DE 517-3. Mr. Wagner does not mention that the Verizon Fiber Solutions Center is a technical support line, and it provides "dedicated technical support for the following FIOS services….Internet Services." *See* Exhibit 3, attached hereto. Indeed, Mr. Kropp is a supervisor in the escalation department over the technical support center. *See* DE 517-3.

4

Mr. Wagner appears to have called up a technical support center located in another state that does not even purport to deal with Terms of Service to try and undermine the testimony of Verizon's representative on the point.  However, the witness (Douglas Kropp) lacks personal knowledge, and Verizon has already put forth its "subject matter expert" on the point.

Mr. Wagner's Declaration in support of the Opposition for Protective Order is deficient and fails to demonstrate that WAUSA's motion should be denied.  Specifically, Mr. Wagner's Declaration is silent on whether he identified himself as being involved in litigation.  Mr. Wagner's Declaration is also silent on whether he informed either customer service representative at Verizon that Ms. Dempsey-Jones had testified on the issue.  Finally, Mr. Wagner's Declaration does not state that he informed Verizon that he was seeking a second opinion to impugn that of Ms. Dempsey-Jones.

Indeed, Mr. Wagner's Declaration does not state that he informed Verizon that he was looking for the subject matter expert on the Terms of Service for Verizon FIOS for Business.  His Declaration does not even mention Terms of Service for Verizon FIOS for Business.  His Declaration does not state whether these two employees had knowledge of the Terms of Service.  He asked for a person with knowledge of "written policies," but did not refer to the Terms of Service for Maryland or even for BSI.  Mr. Wagner did not inquire as to which version of Verizon FIOS for Business was being purchased.

Instead, Mr. Wagner states that after he spoke with one customer service representative, "Shawn", and, because that individual was unable to answer the question, Mr. Kropp called Mr. Wagner.  In other words, the first employee at the technical support center lacked the knowledge to answer Mr. Wagner's posed question, thereby demonstrating that the technical support center

5

does not have the expertise to answer this type of question.

The Declaration refers to the fact that Mr. Wagner was "providing Internet services to third parties." *See* DE 517-3.  The Declaration does not disclose what "third parties" means or how that relates to the Terms of Service.  The Declaration discloses an example about a landlord, but not the Terms of Service for that example.  Further, Mr. Wagner fails to even mention whether he asked about whether the examples disclosed met the Terms of Service to which BSI was a party.  The Declaration is silent on whether BSI could lawfully sell the service to another party.  Nowhere in the Declaration did Mr. Kropp state to Mr. Wagner that Mr. Kropp was authorized to opine on the Terms of Service.  In short, the proposed testimony is irrelevant and the witness lacks personal knowledge.

### III.     Conclusion.

For the foregoing reasons, a protective order should issue.

FTL 107963509v1 December 17, 2010

Dated: December 17, 2010

                          Respectfully submitted,

                          _____/s/_____
                          Sanford M. Saunders, Jr., Esq.
                          USDC, MD #4734
                          saunderss@gtlaw.com
                          Nicoleta Burlacu, Esq.
                          BurlacuN@gtlaw.com
                          *Admitted Pro Hac Vice*
                          GREENBERG TRAURIG, LLP
                          2101 L Street, NW, Suite 1000
                          Washington, DC 20037
                          Telephone:  202-331-3100
                          Facsimile:  202-331-3101

                          --and--

                          Kenneth Horky, Esq.
                          horkyk@gtlaw.com
                          John L. McManus, Esq.
                          mcmanusj@gtlaw.com
                          *Admitted Pro Hac Vice*
                          GREENBERG TRAURIG, LLP
                          401 East Las Olas Boulevard, Suite 2000
                          Fort Lauderdale, FL 33301
                          Telephone: 954-765-0500
                          Facsimile:  954-765-1477
                          *Attorneys for World Avenue USA, LLC*