IN THE U.S. DISTRICT COURT FOR MARYLAND,
SOUTHERN DIVISION

BEYOND SYSTEMS, INC.            )
                                )
    Plaintiff                   )
    v.                          )    Case No. PJM 08 cv 0921
                                )
WORLD AVENUE USA, LLC, et al.   )
    Defendants                  )
_____  )

**DEFENDANT, WORLD AVENUE USA, LLC'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR ENTRY OF PROTECTIVE ORDER REGARDING THE DEPOSITION OF ITS GENERAL COUNSEL**

Defendant, WORLD AVENUE USA, LLC ("WAUSA"), respectfully submits its Reply Memorandum in Support of its Motion for Entry of Protective Order Regarding the Deposition of Its General Counsel ("Motion") and states:[1]

    **I.**    **Summary of Material Facts.**

On November 11, 2010, WAUSA filed its Motion seeking a protective order as to the deposition of its General Counsel, Homer Appleby, Esq., that was noticed by BEYOND SYSTEMS, INC. ("BSI"). The Motion contended that: (i) the deposition sought irrelevant information; (ii) the deposition sought to intrude upon the attorney-client and work product privileges; and (iii) the deposition was sought for purposes of harassment. The Motion was

---

[1] By rulings made on November 29, 2010 and by Order dated November 30, 2010 at DE 544, the Court bifurcated the case, and stayed all discovery except as to issues that are the subject of the August trial in this case. As such, even if the Court denied the Motion for Protective Order, the deposition of WAUSA's General Counsel would only be taken after August 2011 and if BSI prevailed at trial.

supported by the Declaration of Mr. Appleby, who averred that his services were rendered "primarily for the purpose of rendering legal advice, and not for the giving of business advice." *See* DE 499-3, Declaration of Homer Appleby, ¶ 7. WAUSA's argument that the deposition was sought for the purpose of harassment was supported by the Declaration of Sanford M. Saunders, Jr., who averred that BSI repeatedly failed to set forth the subject matter of the deposition of Mr. Appleby.

On December 14, 2010, BSI filed its Opposition. *See* DE 564. In the Opposition, BSI tendered no admissible evidence or Declaration to rebut the averments of Mr. Appleby that the services that he renders are "primarily for the purpose of rendering legal advice, and not for the giving of business advice." Instead, BSI side-steps the issue by pointing out that Mr. Appleby renders services to WAUSA (and other entities), but failing to address: (i) the privilege attached to such services; (ii) the relevance of such services; or (iii) whether the information that BSI seeks could be obtained through a less-intrusive means of discovery. Moreover, despite the platform for explaining the topics of the deposition, BSI continues to ignore the issue and simply states that Mr. Appleby knows what the topics are.

For the reasons set forth in the Motion, the supporting Declarations, and herein, the Court should grant the protective order. In the alternative, should the Court deem the deposition appropriate, it should be conducted by written Interrogatory.

2

## II. BSI Fails To Rebut The Declaration That Mr. Appleby's Services Are Rendered Primarily For Purposes of Legal Advice.

### A. The Applicable Legal Framework.

WAUSA has the burden to prove the application of the attorney-client privilege to the communications upon which BSI seeks to question Mr. Appleby. *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No 1 B*, 230 F.R.D. 398, 409 (D. Md. 2005). The attorney-client privilege attaches to communications of in-house counsel and the same burden applies. *Id*. at 411 & fn. 20. Under Fourth Circuit law, the privilege attaches only if the communications are primarily for the purpose of securing legal advice. *Id*. at 410. "Where business and legal advice are intertwined, the legal advice must predominate for the communication to be protected." *Id*. at 411. On the other hand, where the "legal advice is merely incidental to business advice, the privilege does not apply." *Id*. at 411. A party seeking to assert the privilege must do so "specifically and factually to support his claim of privilege, usually by affidavit." *Id*. at 410.

However, once the party asserting a privilege has met its burden to protect attorney-client communications with an in-house counsel by affidavit that the communications were primarily for purposes of seeking legal advice, the party seeking discovery must offer evidence -- not simply speculation -- to rebut that contention. *Rabushka ex rel. U.S. v. Crane Co.*, 122 F.3d 559, 565-66 (8th Cir. 1997) ("Rabushka argues that some of the documents are not protected because they were prepared by Crane's general counsel when he was acting in his capacity as corporate secretary, not as attorney. Other than offering speculation based on a sampling of the

3

descriptions of documents listed in the privilege log, Rabushka has offered no evidence to contradict Crane's evidence that the questioned documents were prepared by Crane's counsel while acting in a legal capacity"), *cert. denied*, 515 U.S. 1142 (1995).

      **B.    The Documents Attached By BSI Do Not Rebut The Appleby Declaration.**

BSI attaches a series of documents to argue that Mr. Appleby has "actively participated in the day-to-day operations of WAUSA and its associated entities," but ignores the nature of Mr. Appleby's activities.

*First*, BSI attaches and refers to a series of dispute letters whereby Mr. Appleby receives or responds to complaints made by third parties. *See* Opposition, p. 2 (references to "Sony logo letter," "consumer complaints," "Sony logo issue," "Lashback reports," "letter to Sony re infringement") & DE 564-1, Exhibit 1, p. 1. Since BSI does not claim that the authenticity of the letters is at issue, it is clear that BSI wants to delve into Mr. Appleby's theory of defense for each complaint and the basis for each statement made in any response letter authored by Mr. Appleby. However, this is at the heart of the job of an in-house legal counsel, responding to claims against the company. By its very nature, it involves the rendition of legal advice to the company on factual positions and legal opinions on the merits of a particular complaint.

*Second*, BSI attaches and refers to a series of letters or court pleadings. BSI attaches a letter relating to the Florida Attorney General, but the letter clearly recognizes Mr. Appleby's status by referring to Mr. Appleby as representing his "client" and refers to "your client." See DE 564-1, p. 1 of 1. BSI refers to, but does not attach, "documents to FL AG from Mr.

Appleby", but these are merely productions of documents (which is at the heart of the role of a general counsel). Opposition, p. 2.[2] BSI refers to a letter settling a case brought by BSI's *alter ego*, Hypertouch, Inc., as if that somehow converts Mr. Appleby's position from legal counsel to business person. Opposition, p. 2.

BSI attaches a state court complaint in a case that was dismissed for failure to state a claim. *See* DE 564-3. In that Complaint, a former Assistant General Counsel makes unwarranted allegations about his supervisor, the General Counsel of TheUseful, LLC, Mr. Appleby. *See* DE 564-3, p. 2 of 22. The Complaint actually supports the Motion by referring to how the plaintiff and Mr. Appleby advised the company on legal matters. *Id*. Setting aside the fact that the former employee's complaints about his employment are irrelevant to this case, the Complaint goes out of its way to allege how plaintiff and Mr. Appleby were not members of the management committee on compliance with the law, but instead attended such meetings as legal advisor. *Id*., DE 564-3, p. 3 of 12, ¶ 17.

*Third*, BSI attaches and refers to a series of filings with the Florida Department of State, Division of Corporations, relating to filings made on behalf of corporate entities or relating to fictitious names. *See* DE 564-2 (Exhibit 2), Again, since BSI does not contend that the authenticity of public records is at issue, its clear intent is to delve into legal opinions of counsel

---

[2] BSI refers to a letter from Homer Appleby, VP & General Counsel, written to his outside counsel at Greenberg Traurig, that was produced to the Florida Attorney General and referred to document productions. Opposition (*citing* FL AG 1975). The letter highlights the role of Mr. Appleby responding to a subpoena on behalf of WAUSA and coordinating the production with outside counsel.

on the rationale for such fictitious names.

The legal nature of such documents is shown on their face. In one document offered by BSI, Mr. Appleby signs in the space for "Attorney Signature on behalf of Owner." *See* DE 564-2 (Exhibit 2), p. 5 of 15. In another, Mr. Appleby merely transmits corporate legal documents for filing with a government body. *See* DE 564-2 (Exhibit 2), p. 6 of 15; DE 564-2 (Exhibit 2), p. 8 of 15; DE 564-2 (Exhibit 2), p. 10 of 15; DE 564-2, p. 12 of 15. In another document, Mr. Appleby is identified as registered agent. See DE 564-4, p. 9 of 11; DE 564-4, p. 11 of 11. This is also at the heart of a general counsel's job, which is preparing and transmitting legal documents to the Florida Secretary of State, Division of Corporations. BSI's attachment of such documents falls woefully short of rebutting Mr. Appleby's Declaration that he is rendering legal services in transmitting the documents. BSI's documents do not give rise to an inference, let alone establish, that Mr. Appleby is playing a role other than legal advisor, scrivener, and administrative transmitter of such documents to the pertinent government body. More importantly, and as discussed below in Section IV, BSI fails to show that other discovery methods that are less likely to intrude upon the attorney-client privilege are unavailable to provide it with the discovery that it is seeking.

*Fourth*, BSI makes a fleeting reference to testimony by Chris Peterson as showing that there "were discussions over whether the content [of e-mails] was deceptive." Opposition, p. 5. BSI does not attach any testimony or provide the Court or WAUSA with a page reference. Nor does it identify whether Mr. Appleby was present. Instead, it states that "[a]ny comments from

6

Mr. Appleby on this topic would therefore be germane," as though BSI is entitled to invade the attorney-client privilege without foundation.

*Finally*, BSI also refers vaguely to still other documents ("many of which have been filed elsewhere" in docket entries that BSI does not identify) with vague descriptors, leaving the Court and WAUSA to guess at their content. BSI assures the Court that these unidentified and unattached documents "demonstrate that Mr. Appleby routinely participated in the daily operations." Opposition, p. 3. In contrast to Mr. Appleby's unrebutted Declaration, BSI's fleeting reference to promised documents to be found somewhere in the 500+ docket entries in this case fails to sustain BSI's burden.

The Court should find that WAUSA has made a *prima facie* showing of privilege and a showing that BSI only seeks to delve into areas protected by the attorney-client privilege.

### III.   BSI Misconstrues *Shelton*.

In demonstrating it is entitled to a protective order, WAUSA cited to *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986) for the rule that depositions of counsel are to be avoided and permitted under only limited circumstances. Indeed, it was precisely this case that the Court relied on in disallowing the deposition of Michael S. Rothman, Esq. and allowing only written interrogatories.

BSI represents to this Court that *Shelton* is distinguishable because it "involved the deposition of opposing counsel in the same action." Opposition, p. 6. BSI misreads *Shelton*. *Shelton* involved the deposition of Ms. "Rita Burns" who was "employed by AMC as an attorney

7

in its Litigation Department, and she was assigned specifically to the case at bar as AMC's supervising 'in house counsel'". *Shelton*, 805 F.2d at 1325.

*Shelton* is on all fours. Like the in-house counsel in *Shelton*, Mr. Appleby avers that he is primarily responsible for the legal aspects of this case on behalf of WAUSA. Declaration of Homer Appleby, ¶ 3. He is involved in this case on a day-to-day basis. *Id.*, ¶ 3. As part of his responsibilities, Mr. Appleby reviews motions, pleadings, electronic mail, correspondence, discovery, documents, and other matters pertaining to the case. *Id.*, ¶ 4. He participates frequently in telephone conference calls and meetings with WAUSA and Holdings' outside counsel in this case. *Id.*, ¶ 4. He personally reviews substantially all of the documents filed in this case. *Id.*, ¶ 4. Mr. Appleby has been involved in this case for over two and a half years. *Id.*, ¶ 5. Needless to say, because the docket entries in this case are approaching 500, that involvement is deep, substantial, and extensive. *Id.*, ¶ 5. By virtue of his extensive involvement in the case, he has detailed knowledge of the facts at issue in this case gleaned through the independent review and selection of the evidence, as well as through the mental impressions and work product conveyed to him by outside counsel. *Id.*, ¶ 6.

In other words, the exact same dangers identified by the Court in *Shelton* arising from the deposition of in-house counsel Ms. Rita Burns apply to the deposition of in-house counsel Homer Appleby.

As recognized by this Court at DE 490, the existence of other less-intrusive means to obtain the same discovery must be explored. BSI has failed to do so. Here, the relevance of the

deposition is questionable.  As averred by Mr. Appleby, he has no personal knowledge of the 70,000 E-Mails At Issue and does not engage in e-mail marketing.  Weighed against the irrelevance of the deposition and the intrusion into privilege, BSI's position is meritless because it fails to identify how other depositions of non-attorneys will not provide it with the discovery it seeks.

### IV. BSI's Dogged Refusal to Identify The Subjects of Deposition Betrays Its Intent To Harass.

Consistent with this Court's repeated admonitions that the parties should confer amongst themselves, WAUSA tried repeatedly -- through several telephone calls and in writing -- to extract from BSI a listing of the subjects on which BSI sought to depose Mr. Appleby.  BSI refused.  *See* Declaration of Sanford M. Saunders, Jr., filed with Motion.

Instead, ignoring this Court's warnings, BSI insisted that it need not confer because an individual need not be provided with a "list of subject matters as in a Rule 30(b)(6) deposition" -- not even when such a listing would be helpful in narrowing issues in connection with a to-be-filed motion for protective order.  Opposition, p. 4.  BSI indicates that it was sufficient for BSI to vaguely state that "Mr. Appleby would be examined on the routine business matters he handled," as if that helps the issue.  Opposition, p. 4.

Having been given a public stage to provide this Court and WAUSA with a listing of the specific matters and purpose for the deposition, BSI simply states that Mr. Appleby has acknowledged reading most of the 500+ filings in the case, so he already knows the topics on which he will be examined.  Opposition, p. 4.  Perhaps most striking about this is the fact that

9

BSI filed its Opposition on December 14, 2010 *after* the Court ordered at Docket Entry 544 on November 30, 2010 the parties to confer on disputed issues, and still, despite a Court Order, BSI refuses to cooperate.

BSI's repeated dodging of a specification of the topics for the deposition smacks of harassment and bad faith.  The filing of this motion was made necessary by the fact that BSI purposefully evaded having a good faith discussion about the subject matter of the proposed testimony.  A good faith discussion requires more than an excuse that an individual deponent need not be given a listing of topics prior to a deposition -- particularly where an in-house counsel was at issue.[3]

### V. Conclusion.

WAUSA believes that the circumstances, including the failure of BSI to confer in good faith concerning the Motion for Protective Order, justify the complete entry of a Protective Order preventing Mr. Appleby's deposition.  If, however, the Court disagrees and believes that inquiry of Mr. Appleby is appropriate, were suitable subject areas ever to be identified, and to date they have not been, a more appropriate means of inquiry would be written questions as the Court previously ruled with respect to Mr. Rothman and Ms. Ornitz.  *See* Order dated November 3, 2010 at DE 490.  WAUSA very respectfully requests an award of sanctions pursuant to Rule 37, and in weighing this request, prays that the Court bear in mind BSI's complete lack of efforts to

---

[3] As noted in the Motion, this is in contravention to WAUSA's approach when it first noticed the depositions of Mr. Rothman and Ms. Ornitz, wherein WAUSA tried to confer on the topics when such depositions were noticed, but was ignored by BSI.

confer on this and other occasions.

Dated: January 5, 2011

        Respectfully submitted,

        _____/s/_____
        Sanford M. Saunders, Jr., Esq.
        USDC, MD #4734
        saunderss@gtlaw.com
        Nicoleta Burlacu, Esq.
        BurlacuN@gtlaw.com
        *Admitted Pro Hac Vice*
        GREENBERG TRAURIG, LLP
        2101 L Street, NW, Suite 1000
        Washington, DC 20037
        Telephone:  202-331-3100
        Facsimile:  202-331-3101

        --and--

        Kenneth Horky, Esq.
        horkyk@gtlaw.com
        John L. McManus, Esq.
        mcmanusj@gtlaw.com
        *Admitted Pro Hac Vice*
        GREENBERG TRAURIG, LLP
        401 East Las Olas Boulevard, Suite 2000
        Fort Lauderdale, FL 33301
        Telephone: 954-765-0500
        Facsimile:  954-765-1477
        *Attorneys for World Avenue USA, LLC*