IN THE U.S. DISTRICT COURT FOR MARYLAND,
SOUTHERN DIVISION

| | | |
|---|---|---|
| BEYOND SYSTEMS, INC. | ) | |
| | ) | |
| Plaintiff | ) | |
| v. | ) | Case No. PJM 08 cv 0921 |
| | ) | |
| WORLD AVENUE USA, LLC, et al. | ) | |
| | ) | |
| Defendants | ) | |
| _____ | ) | |

**DEFENDANT WORLD AVENUE USA, LLC'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF BEYOND SYSTEMS, INC.'S MOTION FOR RECONSIDERATION OF ORDER AT DE 602 REGARDING PLAINTIFF'S MOTION AT DE 214 AS TO EXPERT WITNESSES**

Defendant WORLD AVENUE USA, LLC ("WAUSA") respectfully submits its Opposition to Plaintiff BEYOND SYSTEMS, INC.'s ("BSI") Motion for Reconsideration of Order at DE 602 Regarding Plaintiff's Motion at DE 214 as to Expert Witnesses ("Motion for Reconsideration") [DE 611] and the Supplement thereto at DE 612, and states:

## I. Introduction.

Once again BSI's Motion for Reconsideration presents no legitimate grounds for this Court to revisit a prior ruling. In this instance, BSI seeks reconsideration of the Court's February 16, 2011 Order at DE 602 denying Plaintiff's Motion for Determination of Timeliness and Sufficiency of Initial Rule 26(a)(2) Expert Designations, and/or for Extension of Time ("Motion for Determination"), and granting in part Defendants' Cross-Motion to Exclude Plaintiff's Expert Witnesses. [DE 218] ("Cross-Motion").[1]

---

[1] Although BSI spends at least five pages (*see* Motion for Reconsideration, pp. 2-7) arguing the issue of the hybrid witness, Paul Wagner, which creates the appearance that BSI also seeks reconsideration of the Court's

In clear disdain for Court's prior rulings on reconsideration, BSI disregards the parameters for reconsideration and relies upon arguments previously rejected by the Court at the February 16th hearing and the subsequent Court Order at DE 602. Because it the rehashes the same rejected arguments, the Court should deny Motion for Reconsideration.[2]

## II.   BSI Fails To Demonstrate That The Legal Requirements for Reconsideration are Met.

### A.   The Applicable Legal Standards.

The standard for the reconsideration is undisputed and should be well known to BSI since this Motion is BSI's fifth seeking reconsideration; the Court has rejected the prior 4. As with its previous motions for reconsideration, BSI misapplies the standard of review. As the Court stated in its Order DE 418, in Maryland, reconsideration is appropriate only if the motion satisfies one of three grounds: (1) a change in controlling law; (2) the availability of new evidence; or (3) the need to correct a clear error or prevent manifest injustice. *Potter v. Potter*, 199 F.R.D. 550, 552 n.1 (D. Md. 2001); *see also Jackson v. Geren*, No. AW-07-851, 2008 WL 7728653, at *1 (D. Md. 2008). "Motions for reconsideration are an extraordinary remedy which should be used sparingly." *AGV Sports Group v. Prostus IP Solutions, Inc.*, Case No. RDB-08-3388, 2010 WL 1529195, at *1-2 (D. Md. April 5, 2010) (internal quotations omitted); *American Ass'n of Blood Banks v. Boston Paternity, LLC*,

---

decision ordering Paul Wagner to submit a report in his capacity as a hybrid fact/expert witness, BSI's counsel advised WAUSA's counsel that BSI does not seek reconsideration of this part of the Order. *See* e-mail attached as Exhibit 2. Indeed, BSI subsequently served what purports to be a hybrid expert report from Mr. Wagner.

[2] Likewise, the Motion for Reconsideration states on Pages 1 and 13 that BSI requests that "Plaintiff be permitted to rely on Peter Resnick as an expert for purposes of the advisory jury trial set for August, 2011." *See* Motion for Reconsideration, pp. 1 and 13. In contradiction, BSI states on Page 8, that "[t]he Court has already directed that the hybrid witness, Mr. Wagner, assemble a new report. Dr. *Levine* could do the same...." *Id.*, p. 8 (emphasis added). However, BSI has made no argument for reconsidering the exclusion of Dr. Levine. Therefore, to the extent BSI seeks reconsideration of that aspect of the Order, the Motion for Reconsideration should be summarily denied.

Case No. DKC 2009-2046, 2009 WL 3379893, at *1, *4 (D. Md. Oct. 16, 2009) (*citing*

*Pacific Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998), *cert. denied*,

525 U.S. 1104 (1999)). For this precise reason, motions for reconsideration are limited to

specific circumstances:

> The motion to reconsider would be appropriate where, for example, the
> Court has patently misunderstood a party, or has made a decision outside the
> adversarial issues presented to the Court by the parties, or has made an error
> not of reasoning but of apprehension. A further basis for a motion to
> reconsider would be a controlling or significant change in the law or facts
> since the submission of the issue to the Court. Such problems rarely arise
> and the motion to reconsider should be equally rare.

*Potter*, 199 F.R.D. at 552 (*citing Above the Belt, Inc. v. Bohannan Roofing, Inc.*, 99 F.R.D.

99 (E.D. Va. 1983) (emphasis in original)).

A motion to reconsider is not a license to re-argue the merits, to the contrary, it is

an extraordinary remedy which should be used sparingly. *Jarvis v. Enterprise Fleet*

*Services and Leasing Co.*, Civil Action N. DKC 07-3385, 2010 WL 1929845 (D. Md. May

11, 2010) (internal citations omitted). Thus, when a motion for reconsideration merely asks

the Court to change its mind, the motion should be denied. *Mitchell-Tracey v. United*

*General Title Ins., Co*, Civil No. WDQ-05-1428 2010 WL 18377723, at *2 (D. Md. May 5,

2010) (*citing Pritchard v. Wal-Mart Stores, Inc.*, 3 Fed Appx. 52, 2001 WL 101473, Civil

No. 00-1846 at *1 (4th Cir. 2001) (unpublished)). Similarly, "a party cannot get

reconsideration on the basis of case law or evidence available at the time of the court's

order." *Mitchell-Tracey*, 2010 WL 18377723, at *2; *AGV Sports Group*, 2010 WL

1529195, at *2; *Mateti v. Activus Financial, LLC,* Civil No. DKC 2008-0540, 2009 WL

3633339, at *5 (D. Md. Oct. 27, 2009).

## B.      The Legal Standard Has Not Been Met.

Here, although BSI does not assert the court "overlooked" a point from its original motion, BSI improperly uses its Motion for Reconsideration to recycle prior arguments first advanced in its Motion for Determination and then at the oral argument on said Motion. As with its previous attempts, BSI's reconsideration request is a baseless effort to re-discuss and re-litigate the very same facts that the Court ruled upon. *See* February 16, 2011 Hearing Transcript at p 75:22-25. ("I do not see a basis to reconsider. As was pointed out in defense argument, the foundation, the cornerstone for reconsideration is just not here. This is just a rediscussion. ... So I'm denying the motion for reconsideration. I'm granting sanctions."), excerpts attached as Exhibit 1. As such, BSI's filing is an abuse of the reconsideration process and its egregious conduct warrants sanctions.

## III.   BSI Fails To Demonstrate That The Court's Ruling To Exclude BSI's Untimely and Improper Expert Disclosures Constitutes Clear Error or Manifest Injustice

In its Motion, BSI does not contend that there has been an intervening change in controlling law, or that new evidence has been discovered. Plaintiff's sole allegation is that reconsideration is necessary because "there will be manifest injustice by preclusion of Plaintiff's use of retained experts, and in particular, Mr. Peter Resnick, whose expert disclosures were made 15 months prior to the scheduled trial date." Motion For Reconsideration at p. 2. However, "manifest injustice" refers to injustice that is apparent to the point of being almost indisputable and BSI fails to point to any. *Pacific Gas Elec. Co. v. United States*, 74 Fed. Cl. 779, 785 (2006); *Ammex v. United States*, 52 Fed. Cl. 555, 557 (2002) (defining "manifest" as "clearly apparent or obvious"). In other words, where the

4

basis of the motion for reconsideration is to correct a manifest injustice, the party must persuade the court that not only was the prior decision wrong, "but that it was clearly wrong and that adherence to the decision would create a manifest injustice." *In re City of Philadelphia Litig.*, 158 F.3d 711, 718 (3d Cir. 1998).

Here, BSI fails to point to any indisputable and obvious error of the Court in reaching its decision to exclude BSI's experts. BSI simply attempts to re-litigate the Court's determination. Essentially, BSI seeks to have the Court change its mind, which is not the function of a Rule 59(e) motion. *See Frall Developers, Inc. v. Board of County Commissioners for Frederick County*, Civil No. CCB-07-2731, 2010 WL 672847 (D. Md. Feb. 22, 2010). As detailed below, the grounds BSI invokes as to why the Court should reconsider its decision are the same grounds that already have been both argued in its Motion for Determination and addressed and rejected by the Court during the hearing on February 16. Neither individually nor collectively do they constitute valid grounds for reconsideration.

### A.    BSI's Argument On The Scheduling Order Was Already Considered And Rejected By The Court.

First, BSI agues that due to bifurcation of the case, the Court scheduling an advisory jury trial for August and the Court's direction to the parties to submit a proposed scheduling order there still remains time for a new disclosure date and expert discovery "as well as other forms of discovery." Motion For Reconsideration at pp. 7, 8. But BSI offers nothing more than a mere conclusory statement that would be no prejudice and surprise to WAUSA. BSI made and the Court rejected the same argument during the February 16 hearing. Particularly:

4.

8. MR. RING: That is correct. And, Your Honor, what we
9. have now, the two important -- well, I guess two important
10. factors that are now before the court that are relevant to this
11. motion are, first, we have a proposed discovery schedule that's
12. been submitted by the parties at docket entry 571. It has been
13. somewhat modified and modifications are continuing, and that
14. proposed discovery schedule has not yet been approved by the
15. court, but even so, it posits a time frame for expert discovery
16. and it says, "June 1 to 30, 2011, time reserved for expert
17. discovery subject to court ruling on joint stipulation regarding
18. motions at docket entry 214 and 218," the instant motions before
19. the court today.
20. COURT: Is that to say that your adversary now
21. agrees with your position that there should be discovery for
22. expert issues?
23. MR. RING: Well, in his favor, I would acknowledge that
24. it's conditional. In other words, if the court were to grant my
25. motion at 214 and deny his at 218, then the time frame in June
5.
1. would apply.
2. Looking at the equities of the situation, plaintiff has
3. provided -- well, first of all, we're now looking at a new
4. scenario, in that there's an advisory jury trial set for August
5. 19, 2011. So, we're on a time line headed toward that event.
6. And then Judge Messitte said after that trial, if the case is to
7. proceed further, there will be another scheduling order issued.
8. So, as to expert opinions on the merits, I submit that
9. the time frame for expert discovery on the larger case is
10. deferred and what we're looking at right now is a question of
11. whether expert discovery as to the advisory jury trial set for
12. August should apply.
…
24. THE COURT: Well, let me start at a different place,
25. because one of the questions I have is what is it about
6.
1. plaintiff's conduct that is either justifiable, excusable or any
2. of the other qualifications, inadvertent, since it seems as
3. though the jump-off point for the plaintiff is driven by the
4. pendency of the motion to amend and the timing of the
5. plaintiff's record actions appears to coincide with the filing
6. of the defendants' expert disclosure. Let me get back to that
7. and try to weigh the equities and figure out if, in fact, that's
8. the place where the court should be looking at.
***
24.
2. Plaintiff's report utterly fails to comply with the

3. Rule 26(a)(2)(B) requirement and under the automatic sanction
4. provisions of Rule 37(c)(1), the court is required to prohibit
5. the plaintiff from introducing the expert testimony into
6. evidence unless the plaintiff has demonstrated that its actions
7. were substantially justified or harmless, and there can be no
8. cogent argument here to suggest that plaintiff has satisfied
9. either of those prongs.

\*\*\*

88.
11. MR. RING: May I also ask, Your Honor, as to the ruling
12. on experts, was that ruling intended to apply simply for the
13. advisory jury trial phase of the case or is that for the
14. duration of the case?
15. THE COURT: I think it's duration. Maybe Judge
16. Messitte will take a different approach as he wades his way
17. through the cases that he's dealing with. But to me the
18. discovery when it was -- the discovery order when it was issued
19. was for everything involved.

*See* February 16, 2011 Hearing Transcript at pp. 4-6, 24, 88, attached as part of Composite

Exhibit 1.

Thus, it is clear from the record that the Court denied BSI's argument that the

bifurcation of the case negates BSI's violation of the expert disclosure rules and of

discovery deadlines or that the scheduling of the advisory trial makes BSI's violation

justifiable or harmless. BSI's rationale would allow it to wait until the eve of trial to

disclose opinions of Mr. Resnick when BSI has had a copy of Dr. Krawetz's 228-page

single-spaced report since March 1, 2010. The Court was correct in excluding Mr.

Resnick's (or anyone else's) eleventh hour opinions.

Moreover, the transcript of the hearing on November 29th unambiguously reveals

that Judge Messitte bifurcated the case and ordered limited discovery on the three trial

issues within the context of the previously agreed terms of merits discovery. For example,

during merits discovery the parties agreed on a limit of 15 depositions, therefore the Court

decided that for the purpose of limited discovery on the three trial issues, WAUSA would

be allowed to take a total of 10 depositions, which means that WAUSA's 5 additional depositions will be left for the merits of the case should the case go forward after the advisory trial. *See* November 29, 2010 Hearing Transcript at pp. 113:4-6; 114:10-25, excerpts attached as Composite Exhibit 3; Order 544 at p. 3, attached as Exhibit 4. Contrary to BSI's contention, the unequivocal language of the Court Order's bifurcating the case demonstrates that the Court did not intend for the parties to come up with a "new schedule, including discovery aimed at the three Trial Issues" disregarding any prior discovery that has been taken in the case, but ordered the parties to propose a discovery schedule limited only to the issues within the scope of the trial:

> Counsel for the parties shall confer regarding **a discovery schedule** as to the issues within the scope of the trial to be held in the summer of 2011, and shall file with the Court a joint proposed discovery schedule within **15 DAYS** of the date of this Order;

DE 544 at p. 4, attached as Exhibit 4.

Worse still, BSI is making contradictory statements to the Court because BSI itself acknowledged that discovery on the limited advisory trial issues should not be conducted as new discovery, but as a continuation of what the parties have already accomplished. By way of example, BSI asked the Court to preclude WAUSA from deposing William Wagner again because "has been deposed already by Mr. Saunders in this case once." *Id.* at p. 115:18-22. Therefore, the Court should deny BSI's Motion for Reconsideration on this ground.

**B.    The Court Specifically Rejected BSI's Argument That Disclosure Was Made.**

Second, BSI argues that the Court should reconsider its decision on the grounds that "disclosure [was] actually made." *See* Motion for Reconsideration at p. 8. As demonstrated

below, BSI's argument has been rejected by the Court because BSI failed to make a timely

disclosure in the form required by the Federal Rules of Civil Procedure:

20.
3. First of all, I find the plaintiff failed to make a
4. timely disclosure. The communications between the parties
5. supports the defendants' contention that the plaintiff did not
6. realize the import of its action until after the defense had
7. filed their required expert disclosure. This is not tantamount
8. to an inadvertent disclosure given the previous requests for
9. extensions to do so. Plaintiff's suggestion that the filing of
10. its motion for leave to file an amended complaint should somehow
11. create a stay of deadlines is without any support under the
12. rules of procedure.
13. Sixty days after the plaintiff's disclosures were due
14. is when plaintiff files the present motion. Now it seeks a
15. determination from the court that its expert statements and
16. declarations submitted in its motions for expedited discovery
17. and other pleadings are sufficient to satisfy the initial
18. disclosure rules provided in the court's scheduling order and
19. under Federal Rule of Civil Procedure 26(a)(1) and (a)(2) or,
20. alternatively, plaintiff should be allowed to make required
21. disclosures.
22. If the court were merely to rule as a matter of form
23. over substance, then defendants prevail. Defendants, however,
24. also should not be required to speculate as to the actual
25. opinions and the support for each of those opinions to be

21.

1. offered by the plaintiff. Defendant should not be required to
2. collect or to assimilate or to guesstimate as to the positions
3. that are going to be taken by experts over the course of lengthy
4. litigation represented in this case by years of discovery and
5. superimposed on discovery obtained from other equally
6. substantial swaths of litigation in other locations. To require
7. the defendants to do that unnecessarily requires the defense to
8. incur fees, expenses, to identify subject areas of disclosure
9. that the federal rules have squarely placed upon the plaintiff.
10. To require the defense to do so also leaves the defense with an
11. unreasonable litigation risk that should their consolidation and
12. hobbling together of these various expert opinions be incorrect,
13. then they do so at their own peril.
14. Form over substance, yes, I could go down that road
15. very easily, but I'm going to take a long look and have taken a

16. long look at the actual filings made by the plaintiff and to
17. make some substantive rulings.
18. Dr. John Levine. The information provided by him was
19. not provided according to the required designations of
20. 26(a)(2)(B) but as support for motions to take expedited
21. discovery way back in May of 2008.

February 16, 2011 Hearing Transcript at pp. 20:3-25; 21:1-21, attached as part of Composite Exhibit 1.

Therefore, similar to the Dr. Levine "disclosure", BSI's "disclosure" of Mr. Resnick was two months late. Further, the substance of the disclosure was also inappropriate and in violation of Rule 26, Fed. R. Civ. P. In particular, Mr. Resnick was not disclosed in May of 2008 or at any time prior to May 3, 2010.

BSI has not sustained its burden of showing manifest injustice regarding the exclusion of Mr. Resnick as an expert witness. Indeed, although BSI did not deign to attach his report to its Motion for Reconsideration, Mr. Resnick's purported report is neither relevant to the August advisory jury trial nor to the key issues in the case.

Having failed to provide any competent expert report from Mr. Resnick, BSI then attached a series of reports authored by Mr. Resnick in *other* cases to which WAUSA was not a party involving *other* e-mails, *other* evidence, *other* parties, and *other* issues as a substitute for Mr. Resnick's opinions in this case. *See* BSI Expert Disclosure of Mr. Resnick, attached as Exhibit 5 ("One or more expert reports by Mr. Resnick in other cases involving similar subject matters will be attached to his current report as exhibits."). Over nine months then passed before the February 16th hearing, and BSI never tendered any supplement to Mr. Resnick's expert report that tied it to this case, thereby compounding the prejudice and surprise to WAUSA.

The sufficiency of Mr. Resnick's untimely so-called "report" was specifically addressed and briefed by the parties on the Motion for Determination and Cross-Motion. Specifically, WAUSA raised the later disclosure on page 5 of its Opposition to BSI's Expert Motion, footnote 5:

> BSI's subsequent actions put the lie to its claim that it disclosed and intended to disclose its experts in May of 2008. On the evening of May 3, 2010, BSI served a collection of reports from other cases and an new, abridged report under the style of this case from Mr. Levine and one Pete Resnick -- an individual who was not disclosed in May of 2008 or at any time prior to May 3, 2010. BSI offers no excuse for its failure to timely disclose Mr. Resnick in the first place or its failure to timely disclose the new, abridged reports from Mr. Resnick and Mr. Levine. BSI offers no excuse that Messrs. Resnick's and Levine's report refer to their conclusions as developing in nature. BSI offers no excuse that Mr. Resnick himself admits that he is only "recently retained." Certainly, if BSI is asking this Honorable Court for a declaration that BSI disclosed its experts in May of 2008, BSI has now answered that question in the negative -- by disclosing new opinions from at least one new individual and disclosing new opinions far outside the scope of the May 2008 reports.

*See* DE 218 at p. 5.

Thus, BSI offers no new facts that were not in front of the Court when it determined that BSI's disclosure of Mr. Resnik  was late and in violation of the rules:

> 28.
> 18. There was also some discussion at one point about a
> 19. Mr. Resnick. I didn't see any initial disclosure regarding him.
> 20. Therefore, the automatic sanction is going to be in play and
> 21. it's going to exclude his testimony all together.

February 16, 2011 Hearing Transcript at p. 28:18-21.

Thus, Mr. Resnick's testimony was untimely and properly excluded by the Court. Accordingly, BSI failed to demonstrate any grounds for reconsideration based on this argument.

### C.   BSI's Incorrectly Argues It Is Not The Plaintiff And Fails To Supply Any Ground For Reconsideration.

Third, BSI argues that "the dynamics of the mini-trial, in which the Defendants will try to disprove that Plaintiff is a Maryland resident and that it provides services, cast the Defendant as the true moving party on the Three Trial Issues." *See* Motion for Reconsideration at p. 9. However, no matter how dissatisfied BSI is with the bifurcation of the case and the advisory trial, and the risk it poses to its entire existence as a litigation machine, BSI cannot make WAUSA the Plaintiff in this case. BSI is the Plaintiff and is suing for damages exceeding $100,000,000. WAUSA has been forced to defend itself for almost three years and has not yet filed a counterclaim against BSI.. The Court's Order clearly mandated that the Plaintiff was to disclose its experts first. *See* Scheduling Order dated April 28, 2009, DE 58, attached as Exhibit 6, p. 2 (*"Plaintiff's* Rule 26(a)(2) disclosures *re* experts...June 29, 2009") (emphasis added). "Plaintiff" does not mean anything except "Plaintiff," *i.e.*, BSI.

Plaintiff bears the burden on each of the issues at the August trial. First, BSI bears the burden to show that it is entitled to sue under Maryland law as a resident of Maryland. Second, BSI bears the burden to show that it is a *bona fide* interactive computer service provider. Third, BSI bears the burden of proving that it did not create its own claimed injury by conspiring with Hypertouch, Inc. to forward the E-Mails At Issue from California to Maryland.

As the Court stated during the February 16 hearing, "Defendants, however, [] should not be required to speculate as to the actual opinions and the support for each of those opinions to be offered by the plaintiff." February 16, 2011 Hearing transcript at p. 20:23-25; 21:1, attached as Composite Exhibit 1. The *sua sponte* bifurcation of this case

does not make WAUSA the Plaintiff, and BSI fails to provide any legal authority for its inversion of the parties' roles. Therefore, this argument also fails.

### D.   BSI's Argument Relating To The Stay of The *Kraft* Case Provides No Basis For Reconsideration.

Finally, related to its previous arguments for reconsideration, BSI argues that because "[t]he Court has issued an order staying the Kraft case pending the outcome of the mini-trial in this case, as the Three Trial Issues are deemed to be the same in both cases, [] Mr. Resnik's opinion as to BSI's status as a service provider should be regarded as equally valid in both cases." Motion for Reconsideration at p. 11. Although Connexus' Motion to Stay was pending when BSI argued its Expert Motion, BSI did not raise this issue with the Court. Thus, it cannot constitute a valid ground for reconsideration. *See L & W Innovations, LLC v. Linli Const., Inc.*, No. 07-cv-00563-CBS-MJW, 2009 WL 189942 (D. Col. 2009) ("The basis for the second motion must not have been available at the time the first motion was filed."); *see also Quaker Alloy Casting Co. v. Gulfco Industries, Inc.*, 123 F.R.D. 282 (N.D. Ill. 1988) ("the Court's opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure.").

Additionally, BSI improperly attempts to comingle the two cases. BSI "reasons" that the *Kraft* case has been stayed based on the August trial in this case, and therefore, "Mr. Resnick's opinion as to BSI's status as a service provider should be regarded as equally valid in both cases, apart from the timeliness issue." Motion for Reconsideration, p. 11. As a threshold matter, an Order entered on March 2, 2011 in another case to which WAUSA is not a party has nothing to do with whether BSI violated the Court's Scheduling Order and Federal Rule 26 in this case by failing to disclose an expert report nearly a year earlier on March 1, 2010. BSI does not cite to any case law that would support its argument

and therefore it should also be rejected. It is axiomatic that Mr. Resnick's opinion in other cases is not a substitute for the timely disclosure here. WAUSA is entitled to know Mr. Resnick's opinion in this case based on the record established in this case. BSI did not provide a report in a timely manner and compounded the prejudice by waiting, and indeed continuing to wait, for nine months (and counting) after the first untimely and insufficient disclosure from Mr. Resnick.

Moreover, the fact that "Mr. Resnick has served as an expert witness opposite to Dr. Krawetz [WAUSA's expert] in the past," bears no relevance as to BSI's timely or proper disclosure of Mr. Resnick. *See* Motion for Reconsideration, p. 11. If anything, his prior experience opposing Defendants' expert is all the more reason for strict adherence to Court-ordered deadlines - deadlines that in this case were violated without a shred of an excuse.

**IV.**  **BSI Fails To Demonstrate That the Court's Finding That There is No Good Faith Justification for BSI's Failure to Provide Timely Expert Disclosure Constitutes Clear Error or Manifest Injustice**

Plaintiff next argues that "[t]here are two additional factors we ask the Court to consider, that helped create a 'perfect storm'" in addition to the argument presented in its pleadings and at the hearing and denied by the Court as justifying ignoring the deadline. Motion for Reconsideration at p. 10. However, the alleged "perfect storm" does not demonstrate good cause for BSI's utter disregard of the Court's deadlines. BSI proffers nothing demonstrating that its conduct is "either justifiable, excusable, or [ ] inadvertent." February 16, 2011 Hearing Transcript at p. 6; 1:3, attached as Exhibit 1. Additionally, the "additional factors" were all known to BSI when it filed its Motion for Determination and

at the hearing on February 16, 2011, and thus do not constitute legitimate grounds for reconsideration. *See supra* at p. 13.

The first factor invoked by BSI is the settlement discussions that took place prior to the March 1, 2010 deadline. Initially, BSI argues that the settlement discussions impacted "Plaintiff's counsel's focus on expert preparation … as the expectation of a conclusion of the case that was felt by both sides obviously caused a relaxation of the focus on experts." Motion for Reconsideration, at p. 12. To buttress its argument, BSI cites to a WAUSA filing on January 11, 2010 and claims that it shows WAUSA's admission that settlement discussions were time-consuming. *See* Motion for Reconsideration (*citing* DE 149, WAUSA's Reply Memorandum in Support of Motion for Extension of Time To Comply With Joint Deadline For Reciprocal Exchange of Discovery And Electronically Stored Information Deposition and For Protective Order, filed January 11, 2010). To be clear, the "time-consuming" period that impacted WAUSA, as explained in its Reply Memorandum at DE 149, was from December 14, 2009 through January 8, 2010. *See* DE 149, p. 3. The deadline at issue here was on March 1, 2010, which left the better part of two months to comply with the Court's Scheduling Order and Rule 26, Fed. R. Civ. P. At its root, BSI is arguing that three weeks of settlement discussions two months before the expert deadline allow it to file its expert report(s) a year late.

More importantly, the filing that BSI points to at DE 149 is WAUSA's filing about the impact of the settlement negotiations *upon WAUSA*, not the impact *upon BSI*. BSI's lack of candor is striking as it fails to advise the Court that BSI had *opposed* WAUSA's requested extension of time, *denying* that settlement negotiations had any such impact. *See* Motion for Extension at DE 142; DE 144 (BSI Opposition to Motion for Extension of

Time). In its other filings, BSI argued that a claim that settlement talks impacted other activities in the case is "absurd." *See* DE 152, BSI's Reply to Response to Motion to Expedite Rulings on d. 143, 142. Specifically, in its January 10, 2010 letter to the Court BSI stated:

> WAUSA argues that the recent settlement talks it initiated have paralyzed all of its other activity in the case. This is absurd. The parties have raised the concept of settlement at several points, over a period of months. WAUSA has a team of lawyers and staff working this case feverishly, as noted in more detail below. Plaintiff has a much smaller team. WAUSA should be able to handle settlement talks while the proceedings move forward. If WAUSA's argument had any traction, litigation would freeze every time either side raised the possibility of settlement. The best impetus for settlement is to let the proceedings move ahead, not to create a freeze. It would be different if both sides agreed to seek a stay, with the mutual understanding that settlement was indeed imminent.

*Id.; see also* DE 144 ("WAUSA argues that the recent settlement talks it initiated have paralyzed all of its other activity in the case. This is absurd.").[3]

This is not the first time that BSI has not been candid with the Court and made contradictory and self-serving statements. In short, the settlement discussion did not constitute excusable neglect for BSI's failure to timely disclose its Experts. As the Court emphasized at the hearing:

20.

---

[3] Indeed, BSI's own actions on the very filing cited by BSI --WAUSA's Motion for Extension of Time at DE 142 -- show that BSI was clearly not impacted nor distracted by anything. WAUSA filed the Motion for Extension of Time on Friday, January 8, 2010. On **Sunday**, January 10, 2010, BSI filed a Motion to Strike WAUSA's Motion for Extension of Time. See DE 143. On that same Sunday, BSI filed a Response to WAUSA's Motion for Extension of Time, attaching twelve (12) exhibits, a Notice of Filing in support of the Response, and a Motion to Expedite the ruling on the Motion for Extension and the Motion to Strike. See DE 144, 145, 146. This prompted, on the next day, Monday, January 11th, 2010, a Reply in support of the Motion for Extension, a Response to the Motion to Expedite, a Response to the Motion to Strike, a Certificate of Counsel, and a Notice of Filing a Declaration -- all by WAUSA. See DE 147-151. That **very same Monday** -- January 11, 2010 -- and literally hours later, BSI responded with a Reply Brief in support of its Motion to Expedite. See DE 152. All of this was eventually resolved by a Stipulation at DE 155-156. However, the point remains that BSI was able to churn out multiple filings over the weekend and within hours of receiving WAUSA's filings. This is but one example of the myriad of rapid-fire BSI filings in the first three months of 2010, and BSI's *seriatim* filings betray its claim that it was distracted by either settlement or personal events.

4. ... The communications between the parties

5. supports the defendants' contention that the plaintiff did not

6. realize the import of its action until after the defense had

7. filed their required expert disclosure. This is not tantamount

8. to an inadvertent disclosure given the previous requests for

9. extensions to do so. Plaintiff's suggestion that the filing of

10. its motion for leave to file an amended complaint should somehow

*See* February 16, 2011 Hearing Transcript at p. 20:4-10.

The second factor BSI invokes to allegedly demonstrates good faith, notwithstanding its untimely disclosure, is the unfortunate circumstance whereby BSI counsel [Mr. Ring] was "severe[ly] distract[ed] by his mother's declining health, and her death on April 19, 2010, all of which required time, attention and travel out of state." Motion for Reconsideration at p. 12. However, aside from the fact that this unfortunate event occurred seven weeks after the deadline expired, BSI is also represented by Mike Rothman (and Steve Wagner) which keeps the unfortunate tragedy in Mr. Ring's life from being dispositive regarding BSI's ability to comply with the expert disclosure deadline.[4] A simple glimpse at the docket for the period of "few months of 2009, and the first 3.5 months of 2010" shows that BSI made ***more than twenty filings*** with the Court (DE 165, 166, 267, 168, 169, 170, 171, 176, 177, 181, 187, 188, 197, 198, 199, 200, 202, and 203).

---

[4] *See McLaughlin v. City of La Grange*, 662 F.2d 1385, 1387 (4th Cir. 1981); *see also Livingston v. State of South Carolina*, 836 F.2d 1342, 1988 WL 1029, at *1 (4th Cir. 1988) (affirming the district court's decision and noting that normal problems of a busy attorney or an increased attorney workload are not extraordinary circumstances and do not constitute excusable neglect.); *Johnson v. Rinaldi*, No. 99cv170, 2000 WL 1229726, at *1 (M.D.N.C. July 21, 2000) (holding that plaintiff's busy schedule and inadvertence in missing the deadline does not constitute excusable neglect); *Marquee Television Network V. Early*, 713 F.2d 837 (D.C. Cir. 1983) (solo practitioner's involvement in a criminal matter, full teaching load and financial inability to secure assistance did not excuse failure to file brief, respond to order to show cause or timely seek extension). "[I]nadvertence, ignorance of the rules, or mistakes concerning construing the rules do not usually constitute 'excusable neglect.'" *Pioneer Investment Services Co.*, 507 U.S. at 391.

Thus, it is obvious that BSI was represented by counsel during the alleged period and was vigorously litigating throughout.[5]

Thus, BSI has failed to demonstrate that its failure to meet the deadline is justified and that the Court's decision was clearly erroneous and should be reconsidered.

## VII.     Conclusion.

For the foregoing reasons, the Court should deny the Motion for Reconsideration. BSI had no legal basis for seeking reconsideration under the applicable grounds, and accordingly, the Court should award further sanctions for the inexcusable waste of the Court's and the opposing party's resources re-litigating issues where it was inappropriate to file such a motion.

---

[5] Additionally, when the shoe was on the other foot BSI previously argued that personal matters of its counsel are not justifiable grounds for missing or rescheduling a deadline when there are multiple counsel working on the case. In particular, BSI stated:

> The disclosure of the personal medical situation of WAUSA's general counsel elicits our condolences and best wishes for his recovery, but has nothing to do with the current issues. WAUSA is represented by a large law firm with plenty of resources and talent. There has been no showing that the hip surgery has impaired WAUSA's ability to appear for a deposition as agreed and confirmed, or to respond to written discovery requests that were served 6 months ago. WAUSA fails to explain how its general counsel was able to participate in "four weeks" of settlement negotiations surrounding the surgery date, but that WAUSA finds itself unable to meet its discovery obligations due to that same surgery.

*See* DE 144, p. 2.

Dated:    March 21, 2011

Respectfully submitted,
*Attorneys for World Avenue USA, LLC*

GREENBERG TRAURIG, LLP


   __/s/_____
Sanford M. Saunders, Jr., Esq.
USDC, MD #4734
saunderss@gtlaw.com
Nicoleta Burlacu, Esq.
BurlacuN@gtlaw.com
*Admitted Pro Hac Vice*
GREENBERG TRAURIG, LLP
2101 L Street, NW, Suite 1000
Washington, DC 20037
Telephone:  202-331-3100
Facsimile:  202-331-3101

--and--

Kenneth Horky, Esq.
Florida Bar No. 691194
horkyk@gtlaw.com
John L. McManus, Esq.
Florida Bar No. 0119423
mcmanusj@gtlaw.com
*Admitted Pro Hac Vice*
GREENBERG TRAURIG, P.A.
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, FL 33301
Telephone: 954-765-0500
Facsimile:  954-765-1477