## IN THE U.S. DISTRICT COURT FOR MARYLAND,
## SOUTHERN DIVISION

BEYOND SYSTEMS, INC.      )
                                )
    Plaintiff              )
    v.                    )      Case No. PJM 08 cv 0921
                                )
WORLD AVENUE USA, LLC, et al. )
    Defendants          )
_____ )

## DEFENDANT WORLD AVENUE HOLDINGS, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL COMPLETE ANSWERS TO INTERROGATORIES FROM PLAINTIFF BEYOND SYSTEMS, INC. <u>RELATING TO THE AUGUST TRIAL</u>

Defendant WORLD AVENUE HOLDINGS, LLC ("Holdings"), hereby submits its Memorandum of Points and Authorities in Support of its Motion to Compel Complete Answers to Interrogatories Relating To August Trial from Plaintiff, BEYOND SYSTEMS, INC. ("BSI"), as a result of its failure to respond completely to Holdings' Interrogatories Relating to the August Trial. In support thereof, Holdings states:[1]

## I.      <u>INTRODUCTION.</u>

The background of Beyond Systems, Inc.'s ("BSI") action against Holdings and World Avenue USA, LLC ("WAUSA") for in excess of $100 million in alleged statutory damages for purported unsolicited commercial emails ("UCE"), and WAUSA's defense that BSI is not a *bona fide* Maryland resident, is not a *bona fide* interactive computer service provider, and that it conspired with Hypertouch, BSI President, Paul Wagner's brother, James Joseph Wagner ("Wagner"), and other members and friends of the Wagner family to funnel hundreds of

_____

[1] Holdings has made a diligent effort to resolve the subject matter of this Motion with counsel for BSI, but BSI has failed to agree to amend the Answers and to confer in an appropriate manner. *See* Local Rule 104 Certification, attached as Exhibit 1.

thousands of e-mails to BSI for the very purpose of manufacturing spam litigation, is well-known to this Court and Holdings will avoid repeating it.  This Motion is an effort to compel complete Answers to Interrogatories seeking information relevant to the three August Trial issues.  *See* Exhibits 2-3.  BSI's objections to the Interrogatories Relating to the August Trial should be overruled, and BSI should be compelled to serve complete and non-evasive Answers. The August trial is less than 4 months away and this behavior is prejudicing Defendants.

## III.    SUMMARY OF ARGUMENT.

The Court should enter an Order overruling BSI's objections, and ordering complete Answers to the Interrogatories.  First, BSI's General Objections to the Interrogatories should be overruled, and BSI should be compelled to provide complete Answers for any information withheld by reason of the General Objections.  Second, BSI's specific objections to Interrogatories 1-2, 8-10, 14-15, 17, and 23-25 are all similarly meritless and should be overruled.  Third, BSI's Answers to Interrogatories 1-2, 8-10, 14-15, 17, and 23-25 are as a whole incomplete and evasive, and BSI should be compelled to provide more complete and thorough Answers.  Finally, BSI should be sanctioned for its assertion of meritless objections and its evasive and incomplete answers.

## III.    ARGUMENT.

### A.    BSI's General Objections Should Be Overruled.

BSI's General Objections are excessive, unfounded and fail to meet the legal standard necessary to be sustained.  First, BSI's objection on the grounds of privacy or privilege should be overruled because its Privilege Log does not tie to information responsive to these Interrogatories, and it has thus waived any privilege relating thereto.  *See* Ex. 3, p. 3, ¶¶ 4-6.  In this District, a party has a duty to particularize its claims of privilege.  *Equal Rights Center v.*

*Lion Gables Residential Trust*, Case No. DKC 07-2358, 2010 WL 2483613, at *1, *6 (D. Md.

June 15, 2010) (Chasanow, J.); *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 264

(D. Md. 2008) (Grimm, J.)   Failure to provide a Privilege Log violates Rule 26(b)(5) and

Discovery Guideline 10(d) of the Local Rules and waives the privilege.   *See* Fed. R. Civ. P.

26(b)(5); Local Rules, Discovery Guideline 10(d); *Susko v. City of Weirton*, Case No. 5:-09-cv1,

2010 WL 2521423, at *1,  *2 (N.D.W.V. June 21, 2010) ("The plaintiff, however, never supplied

a privilege log to allow the magistrate judge to asses the privilege claims, as required by Federal

Rule of Civil Procedure 26(b)(5) … The plaintiff's objection, therefore, is improper.").   Thus,

BSI has waived privilege regarding information withheld on the basis of this General Objection.

BSI's objections to overbreadth and undue burden imposed by the Interrogatories should

also be overruled.  *See* Ex. 3, pp. 1, ¶¶ 1-3; p. 2, ¶ 1; p. 3, ¶ 2.  For instance, in Paragraph 2, BSI

objected "to the Instructions to the extent they are vague, ambiguous, overly broad, unduly

burdensome, oppressive, and/or not reasonably calculated to lead to the discovery of admissible

evidence." See Ex. 3, p. 3, ¶ 2.  However, BSI did not quantify or otherwise support this General

Objection with an affidavit or any other record evidence of the purported burden, and thus, this

General Objection should be overruled.   Further, as a matter of law, general objections to

discovery requests, *e.g.*, overbroad, vague, ambiguous, and unduly burdensome, are improper

because they are not sufficiently specific to allow a court to ascertain the objectionable character

of the discovery requests. Nor does a general objection fulfill a party's burden to explain its

objection.[2]  BSI, as the party resisting discovery, must show how each Interrogatory is deficient

based upon each specifically asserted objection, *e.g.*, what extraordinary effort is required to

---

[2] *See also Burns v. Imagine Films Entertainment, Inc.*, 164 F.R.D. 589, 592-93 (W.D.N.Y.
1996); *Chubb Integrated Sys. Ltd. v. National Bank of Washington*, 103 F.R.D. 52, 58 (D.D.C.
1984).

respond to an interrogatory designated "overbroad" or "unduly burdensome."  *See* Local Rules, Discovery Guideline 10(e).  This Court previously rejected similar general objections raised by BSI.  Specifically, during the oral argument on BSI's Motion for Reconsideration on WAUSA's Motion to Compel Complete Answers to First Set of Interrogatories, Magistrate Judge Charles B. Day stated:

> 21. The objections are boilerplate and most of them are
> 22. nonapplicable, objections such as "vague" or "ambiguous," or
> 23. whether it's burdensome with no supporting affidavit,
> 24. unspecified violations of plaintiff's right to privacy by rule,
> 25. law or regulation, objections about something being duplicative,
> 1. the assertions of attorney-client work product and other
> 2. privileges, which were all waived by disclosure in the Kraft
> 3. case, other agreements with third parties but no proffer of such
> 4. agreements being made.

Feb. 16, 2011 Hearing Transcr. at pp. 73:21-25; 74:1-4, attached hereto as Ex. 4; *accord* DE 441, 444, attached as Ex. 5 (granting motions to compel on WAUSA's Fourth Request for Production and Third Set of Interrogatories).  Thus, this General Objections is also specious and should be overruled in light of this Court's prior decisions. BSI should be compelled to provide all information that it withheld on the basis of the General Objections and ordered to stop asserting objections that have been previously found inappropriate by this Court.

**B.     BSI's Answer to Interrogatories  1 -2 Is Deficient**

**1.     Holdings' Interrogatories 1-2 and BSI's Answers.**

Identify with Specificity the Location(s) and the date(s) of commencement where BSI/Paul Wagner is currently storing, housing, co-locating or is otherwise operating any Computer Equipment. For each Location(s), Identify each piece of Computer Equipment and how each piece of Computer Equipment is currently used.

**BSI'S ANSWER 1**

BSI objects that the interrogatory is overbroad and unduly burdensome. Plaintiff objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties. Plaintiff objects that this Interrogatory duplicates Interrogatory Set 1 No. 13, which effectively asked the

identical question:
INTERROGATORY NO. 13:
For each IP Address, identify the servers and physical location of all servers associated (primary or secondary) with each IP Address.
WAUSA defined "servers," in Set 1, but not in the current set of interrogatories, as follows:
…
19. Server/Servers. "Server" Of "Servers" shall mean all Computers dedicated to providing one or more services over a computer network, including but not limited to, Email services, Domain Name Resolution services (DNS services), Web Hosting services (storing and serving web pages), Internet Connectivity services, Database services, Data Backup services, Data Storage services, FTP services, NNTP services and E-commerce services.
WAUSA did not define "Computers" in Set 1. However, a widely used online dictionary (http://www.merriam-webster.com/dictionary/computer) defines "computer" to include "one that computes." Therefore WAUSA's use of "Computers" in Set 1 includes all "Computer Equipment" as defined in WAUSA's current set of interrogatories. WAUSA filed a motion to compel as to Set 1. BSI provided its responses in answers, supplemental answers, and second supplemental answers. BSI incorporates by reference these prior answers to WAUSA's Interrogatory Set 1 No. 13.
Discovery is ongoing. Plaintiff expressly reserves the right to supplement this Response should additional information become available.


2.   Identify with Specificity the Location(s) and the date(s) of commencement and termination where BSI/Paul Wagner has in the past stored, housed, co-located or have otherwise operated any Computer Equipment. For each Location(s), Identify with Specificity each piece of Computer Equipment and how each piece of Computer Equipment was used, and the date range that each piece of Computer Equipment was in use.


**BSI'S ANSWER 2**

BSI objects that the interrogatory is overbroad and unduly vague. Plaintiff objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties. Plaintiff objects that this Interrogatory duplicates Interrogatory Set 1 No. 13, which effectively asked the identical question:


13. For each IP Address, identify the servers and physical location of all servers associated (primary or secondary) with each IP Address.
WAUSA defined "servers," in Set 1, but not in the current set of interrogatories, as follows:
…
19. Server/Servers. "Server" Of "Servers" shall mean all Computers dedicated to providing one or more services over a computer network, including but not limited to, Email services, Domain Name Resolution services (DNS services), Weh Hosting services (storing and serving web pages), Internet Connectivity services, Database

services, Data Backup services, Data Storage services, FTP services, NNTP services and E-commerce services.

WAUSA did not define "Computers" in Set 1. However, a widely used online dictionary (http://www.merriam-webster.com/dictionary/computer) defines "computer" to include "one that computes." Therefore WAUSA' s use of "Computers" in Set 1 includes all "Computer Equipment" as defined in WAUSA's current set of interrogatories. WAUSA filed a motion to compel as to Set 1. BSI provided its responses in answers, supplemental answers, and second supplemental answers. BSI incorporates by reference these prior answers to WAUSA's Interrogatory Set 1 No. 13.

Discovery is ongoing. Plaintiff expressly reserves the right to supplement this Response should additional information become available.

## 2.  BSI Should Be Compelled To Provide A Complete Answer To Interrogatories 1-2.

### i.  BSI's Objections Are Meritless.

BSI's objections to Interrogatories 1 and 2 are meritless.  First, BSI has failed to support its burdensomeness objection with evidence, and as such, the objection should be overruled.  *See* footnote 2, *supra*.; Ex. 4; Ex. 5.  Second, the Interrogatory is directly relevant to the August Trial issue of whether BSI is a *bona fide* interactive computer service provider.  *See* DE 544, p. 2, ¶ 1. The Interrogatory goes to the issue of where BSI stores its Servers and Computer Equipment.

Third, BSI's objection that it already provided information in response to Interrogatory 13 of *WAUSA's* First Set of Interrogatories to BSI is meritless and misleading for three reasons. First, Interrogatory 13 was different.   *See* Ex. 6 (excerpt of WAUSA's First Set of Interrogatories, Interrogatory 13).  Interrogatory 13, which was propounded by *WAUSA* and not Holdings, asked "For each IP Address, identify the servers and physical location of all servers associated (primary or secondary) with each IP Address."  In its objections, BSI complains about the lack of definition of "*Server*" in *this* Set of Interrogatories although the word "*Server*" does not appear in *this* Interrogatory 1.  Instead, *this* Interrogatory asked for "Computer Equipment"

and BSI says nothing about the clear definition of Computer Equipment in these Interrogatories.[3] Third, BSI never answered in Interrogatory 13 about the Location of any Servers, but provided a vague description of the Servers.  *See* Ex. 7 (excerpt of BSI's Supplemental Answer to First Set of Interrogatories, Interrogatory 13).   Thus, the Answer is completely non-responsive when it simply "incorporates by reference these prior answers to WAUSA's Interrogatory Set 1 No. 13." *See* Ex. 3, Interrogatory Answer 2.

Fourth, and most importantly, BSI's Supplemental Answer to Interrogatory 13 was false. The Court ordered BSI to provide a supplemental answer to Interrogatory 13.  *See* Ex. 8 (DE 428) & Ex. 9 (excerpt of September 23, 2010 hearing regarding Interrogatory 13).   BSI's September 2010 Supplemental Answer to Interrogatory 13 provided a listing of cities, *inter alia*, in California where Servers were located as of September 2010.  *See* Ex. 7.   However, when Hypertouch answered a similar Interrogatory in April 2011, it disclosed new and different addresses for the Servers, citing a move of the Servers made in June 2010 -- which is before the BSI Supplemental Answer to Interrogatory 13 tendered in September 2010.  *See* Ex. 10 (excerpt of Hypertouch Answer to Interrogatory 1).   For example, the addresses in Stanford and in Palo Alto are completely new.  *Compare* Exhibit 7, pp. 6-8 *with* Exhibit 10.   Hypertouch and BSI deliberately delayed answering these questions until after the time ran on February 4, 2011 for

--------------------------------

[3] Holdings defined "Computer Equipment" as follows:

> *Computer Equipment:*  The term "computer equipment" means microchips, microcomputers (commonly referred to as "personal computers" or "PCs"), laptop computers, notebook computers, portable computers, palmtop computers (commonly referred to as "personal digital assistants" or "PDAs"), minicomputers, servers, routers, switches, hubs, modems, RAID arrays, UPS (battery backup), computer monitors, cooling equipment, external hard drives, input and output devices, peripherals, equipment racks, printers, scanners, webcams and all other devices or equipment that support, connect to or within a computer or computer network.

noticing premises inspections under the August Trial's Scheduling Order (*see* DE 571, DE 636), instead leaving BSI's existing false Answer to Interrogatory 13 in place. *See* Exhibit 7.

### ii.       The Answers to Interrogatories 1 and 2 Are Incomplete.

For the foregoing reasons, it should be obvious that the Answer to refer back to the false September 2010 BSI Answer to Interrogatory 13 is non-responsive. The Answer to Interrogatory 1 is also incomplete for several additional reasons. First, the Interrogatory asks about "Computer Equipment" at the location, and the Answer does not identify the Computer Equipment at all. The Interrogatory is designed to force BSI to specify what equipment is (and has been) where, and is relevant to show what specific Computer Equipment was and is operating at what Internet Protocol Addresses and what Domains, and who that Computer Equipment is  actually owned by, as between Hypertouch and BSI.

Second, WAUSA asked BSI to provide the location of the equipment within each house and the name of the owner or renter of each property. The definition of Location requires the "Location" within the home where the equipment is located *and* the identification of the owner or renter of each property.[4]  BSI did not do so for each of the Locations. The Location and owner are relevant to the *bona fides* of the entire operation, including whether BSI and Hypertouch are housing Computer Equipment in the storage rooms, cellars and garages of the Wagner brothers' acquaintances. It is unclear who owned or owns these homes at the relevant times and all this must be made crystal clear at trial to show what is actually occurring. The full Answer to this Interrogatory is also necessary because BSI and Hypertouch have been caught deliberately misleading Defendants about the Server Locations, and BSI should be sanctioned for

---

[4] *See* Ex. 2, p. 9, ¶ 21 ("Location means the property type (such as an office building or single family home), property owner(s) and/or renter(s), postal address, city, state, zip code and the specific area within the Location (such as an office space, bedroom, data center, garage, etc)").

lying in September 2010 about where the Servers were when they had already been moved.

Holdings does not want to dwell on this subject overmuch, but what BSI and Hypertouch did here made a mockery of the Scheduling Order and the whole purpose underlying it, which is to get at the truth when this case is tried.  If the Court lets them get away with this then it had better be prepared to see much more of the same behavior.  And, the Court had also better be prepared for the August trial to be a complete waste of the Court's time.  This kind of conduct is really beyond toleration.  *See* Exs. 7-10.

### C.   BSI 's Answer to Interrogatory 8 Is Deficient

#### 1.   Holdings' Interrogatory 8 and BSI's Answer.

Identify with Specificity all Permissions or Privileges ever granted to Paul Wagner, Beyond Systems or any other employee or agent of Beyond Systems, by Hypertouch, to any Computer Equipment, Software or Product or Service Account owned, operated, used or paid for by Hypertouch.

**BSI'S ANSWER 8:**

BSI objects that the interrogatory is overbroad and unduly burdensome. Plaintiff objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties. Plaintiff objects that this Interrogatory duplicates prior interrogatories. Without waiving these objections, BSI states:

Hypertouch has granted BSI permission to access several of its Internet services and interactive computer services, including web, email and DNS services. Hypertouch grants BSI permissions sufficient to allow performance of the services described and reflected in BSI's responses to WAUSA's Interrogatory Set 1 No. 9, Requests for Production Set I Nos. 5 and 11-14, and Requests for Production Set 2 Nos. 23. BSI hereby incorporates those responses by reference.

BSI has client-level access to Hypertouch's email services. BSI has remote console access to Hypertouch DNS servers (dnsl.hypertouch.com and dns2.hypertouch.com) and a Hypertouch web server (www.hypertouch.com). BSI has physical access to dns2.hypertouch.com and www.hypertouch.com.. Hypertouch owns the Sambar web and (in the past) email server software hosted on a BSI machine in DC, on which www.hypertouch.com runs.

Discovery is ongoing. Plaintiff expressly reserves the right to supplement this Response should additional information become available.

2.    **BSI Should Be Compelled To Provide A Complete Answer To Interrogatory 8.**

i.    **The Objections Should Be Overruled.**

BSI's objections to Interrogatory 8 are meritless.  Not only has BSI has failed to support its burdensomeness objection, and as such, the objections should be overruled, *see* footnote 2, *supra*.; Ex. 4; Ex. 5, but the Interrogatory is directly relevant because it goes to the heart of the relationship between BSI and Hypertouch to cooperate in creating lawsuits, their real business. *See* DE 544, p. 2, ¶ 1.  Holdings requested BSI to Identify with Specificity[5] all Permissions or Privileges EVER granted to Paul Wagner, BSI, or their agents by Hypertouch to used ANY Computer Equipment, Software, Product, or Service Account owned, operated, used or paid for by Hypertouch.[6]  This question was asked for a reason.  Discovery to date has shown that no difference exists between Hypertouch and BSI:  they share the same Internet Protocol addresses, the same Servers, the same software, the same equipment, and the same domains (*e.g.*, BSI claims to own hypertouch.com, BSI unconvincingly explains that this is because Wagner thought a domain registrant had to be a corporation).

The mechanisms sued to accomplish this intermingling have two facets.   First, Hypertouch and BSI grant each other "Permissions" to access one another's Servers and computer systems; these "Permissions" essentially afford each access to the other's system.  Second, with this access, Hypertouch and BSI  monitor and set the parameters for their own and one another's servers utilizing remote access software through which BSI and Hypertouch can

---

[5] Holdings defined "Specificity" as "the quality or state of being specific. To be precise. The opposite of being vague."  *See* Ex. 2, p. 10, ¶ 29.

[6] Holdings defined "Permissions" or "Privileges" as "the authorization and type of access given to any Person that enables that Person to access specific resources on a computer or computer network, such as data files, applications and Computer Equipment."  *See* Ex. 2, p. 9, ¶ 22.

operate out of physical locations in Washington, D.C. and Massachusetts, respectively, to remotely access Servers situated in Maryland and California, states they like to litigate in. This particular Interrogatory seeks to pinpoint the history, chronologically and by each piece of equipment, of the exact type and exact extent of the "Permissions" granted to each other. This is directly relevant to a key point of the August Trial, to wit, the "nature of the relationship" between BSI and Hypertouch. *See* DE 544, p. 2, ¶ 1. For example, when an individual opens a Verizon or AT&T account to provide internet connectivity into their home, they do not grant Verizon or AT&T complete and unfettered access to all of their computers and computer systems for purposes of controlling the operation of the system, *e.g.*, retransmitting emails to other computers or allowing access to third parties to store or download illicit materials. If opening an account equated to such access, it would certainly raise a question. This Interrogatory is intended to pinpoint the extent of that access between BSI and Hypertouch, rather then rely on meaningless labels such as "client-level access."

There are at least three things wrong with BSI's answer. First, it is given in the present tense only and ignores the imperative for a complete history of all Permissions. Having seen how Hypertouch moves its servers around, it takes little imagination to see that Permissions may have changed. Second, it uses terms without explaining what they mean. What is "console level access?" What is "account level access?" Third, it answers the question by referring to certain domains, but not by equipment, which was also specifically asked for. Similarly it refers to email accounts, but does not identify them, and the question calls for precise identification of all Service Accounts.

What is required here is a complete history from inception of business to present of every Permission ever allowed for every Server or other piece of equipment or software, every domain,

11

every email account, and a precise explanation of what that permission allowed the holder to do. If the act could be done remotely, that should be admitted.  If the scope of Permissions changed over time, or were expanded (or contracted) to new or different equipment, software, domains or accounts, that must be explained with precision.  These litigants are masters at evading questions by engaging in semantics.  To avoid wasting everyone's time at trial, they should be forced to answer with the highest degree of precision, explaining their terms in detail, and in chronological order for every account, domain, piece of equipment or software for which these Permissions have been granted.

**ii.      The Answer Is Evasive and Incomplete.**

In its Answer, BSI does not comply with the definition of Specificity.  Hypertouch also does not specify the time frames any Permissions were granted for specific activities, which is extremely important.   BSI also does not define what is "client-level access", "remote console access," "physical access".  The phrases are not terms of art, Holdings does not know what they mean and in any event, BSI's definition could differ from Hypertouch's definition or simply change to suit the needs of the moment in the future.  Thus the Court should order BSI to say exactly what this means.

The Court should also note that the definitions of Permissions and Privileges call for detailed information (*see* footnote 5, *supra*.), none of which has been provided.  BSI states vaguely that BSI has been granted by Hypertouch access to "several of its Internet services and interactive computer services, including web, email and DNS services."  However, BSI does not identify with Specificity what they are, or where they are located.   BSI also states that Hypertouch "owns the Sambar web and (in the past) email server software hosted on a BSI machine in DC, on which www.hypertouch.com runs, but does not say what "*in the past*" means.

### D.   BSI's Answer to Interrogatory 10 Is Deficient.

#### 1.   Holdings' Interrogatory 10 and BSI's Answer.

Identify with Specificity all payments ever made to Hypertouch or James Joseph Wagner by BSI or Paul Wagner, including, with Specificity, the reason(s) for such payments.

**BSI'S ANSWER 10:**
BSI objects that the interrogatory is overbroad and unduly burdensome. Plaintiff objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties. Plaintiff objects that this Interrogatory duplicates prior interrogatories. Without waiving these objections, BSI states:
Paul Wagner is not a party to this action. Paul Wagner, as an individual, has never paid Hypertouch. Paul Wagner and Joe Wagner, as brothers, have exchanged funds for various personal reasons over the years, unrelated to the operations of BSI or Hypertouch.
BSI has paid Hypertouch as follows:

| Date | Payee | Purpose | $ Amount |
|------|-------|---------|----------|
| 1/1/2000 | Hypertouch, Inc. | for time on Motorola project | -15,000.00 |
| 4/2/2000 | Hypertouch, Inc. | | -7,000.00 |
| 6/2/2000 | Hypertouch, Inc. | for time on Motorola project | -22,500.00 |
| 19-Sep-2002 | Hypertouch | for little Macintosh email server | -1.00 |
| 3-Jan-2003 | Hypertouch | | -118.10 |
| 12-Feb-2003 | Hypertouch, Inc. | reimbursement for Accurint | -32.00 |
| 11-Mar-2003 | Hypertouch, Inc. | reimbursement for Accurint | -140.00 |
| 2-Jul-2003 (never deposited) | Hypertouch, Inc. | reimbursement for Accurint | -40.05 |
| 29-Dec-2005 | Hypertouch, Inc. | reimbursement for Accurint | -1,400.00 |

Discovery is ongoing. Plaintiff expressly reserves the right to supplement this Response should additional information become available.

#### 2.   BSI Should Be Compelled To Provide A Complete Answer To Interrogatory 10.

##### i.   BSI's Objections to Interrogatory 10 Should Be Overruled.

BSI's objections to Interrogatory 10 are meritless.  First, the objections state that the Interrogatories are vague and overbroad, but fails to say why.  This question is specific and these objections are specious.  *See also* footnote 2, *supra*.; Ex. 4; Ex. 5.  Second, the requested discovery is directly relevant to show the nature of the relationship between BSI and Hypertouch.  *See* DE 544, p. 2, ¶ 1.  Third, BSI's objections that it "duplicates prior interrogatories" is absurd given that this is Holdings' First Set of Interrogatories to BSI.

13

ii.     <u>**The Answer To Interrogatory 10 Is Incomplete and Evasive**</u>.

BSI's Answer to Interrogatory 10 is evasive.   First, in BSI's Answer, it limited its response to those payments that were "unrelated to the *operations* of BSI or Hypertouch." (emphasis added).   The Interrogatory was not limited to "operations of BSI or Hypertouch." Instead, the Interrogatory asked for *all* payments.   As all payments may not have been fully disclosed and explained given this qualification that effectively changed the question posed, the Court should order Hypertouch to give a full answer to the question actually posed.   This is not a mere question posed from curiosity, but goes to a key aspect of the relationship between BSI and Hypertouch that both are trying desperately to avoid disclosing by re-wording the question, namely, Joseph Wagner's consultant work for BSI.   *See* Ex. 11 (excerpt of James Joseph Wagner's Answers to WAUSA's Interrogatories, p. 7, ¶ 2 ("WAGNER has served as a consultant to BSI's attorneys during a number of BSI's cases to perform analysis on entails [sic], to aid in the technical production of exhibits, and to analyze evidence developed during the course of the case").   This is a prime example of how these professional litigants redefine questions to avoid a meaningful answer.   Holdings is improperly forced to speculate what exactly are "the operations of BSI or Hypertouch" at this moment and whether they include lawsuits and their proceeds.   The Interrogatory was not limited to "*operations* of BSI or Hypertouch," whatever that means.   Instead, the Interrogatory asked for *all* payments.   After all payments and the reasons for them have been disclosed, the Court and the jury will be in a position to determine what they mean.   As all payments may not have been fully disclosed and explained due to this qualification effectively changing the question posed, the Court should order BSI to fully answer the question.

Second, this Interrogatory calls not just for disclosure of all payments made between

Hypertouch, Wagner, BSI and Paul Wagner, but also for the exact reasons they were made.  BSI does not provide any information on the $7,000 payment to Hypertouch in April 2000, or on the $118.10 payment to Hypertouch in January 2003.  For the remaining payments, the information is woefully deficient.  For example, on Motorola, the question calls for an explanation of exactly what work was done on the Motorola project.  On Accurint, the question calls for exactly what was done for Accurint for which reimbursement was paid.  All of this information goes to the Third Trial Issue of illuminating the precise nature of the relationship between Hypertouch and BSI.  *See* DE 544, p. 2, ¶ 1.

### D.     BSI's Answers to Interrogatories 14-15 and 17 Are Deficient

#### 1.     Holdings Interrogatories 14-15, and 17 and BSI's Answer.

14. For each month during the time period from January 1, 2000 to present, Identify with Specificity the number of hours per month that Paul Wagner spent working on BSI business while Physically Present at 1612 Sherwood Road, Silver Spring, Maryland 20902.

**BSI'S ANSWER 14:**

BSI objects that the interrogatory is overbroad. Plaintiff objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties. Plaintiff objects that this Interrogatory duplicates prior interrogatories. BSI objects to the extent that Paul Wagner, individually, is not a party to this action.
Plaintiff further objects to the extent that Defendant seeks to obtain or have Plaintiff attempt to parse server logs, which contain dense intermingled transactions and personal identifying information of clients. The Court has ruled multiple times that neither Party must produce some or all of its server logs. Plaintiff objects to the extent that Defendants seek to reopen this issue.
Plaintiff does not maintain records that would enable it to quantify the time it spent at various physical locations, doing BSI business, minute by minute or hour by hour since January 1, 2000. As Defendants have illogically argued ad infinitum, the existence of remote access software on Plaintiffs computers in Maryland purportedly means that Paul Wagner is seldom in Maryland. (Defendants failed to acknowledge that such software has allowed Mike Whitley, Joe Wagner, Keivan Khalichi, Eric Menhart and others to access BSI's servers.) By the same illogic, the existence of remote access software on all of Plaintiffs computers in DC likewise would mean Paul Wagner is seldom in DC. The fact is that Paul Wagner often access BSI's

computers in both Maryland and DC remotely, using secure shell or Timbuktu sometimes, but frequently using other remote access programs as well. Often this access is through a series of computers at multiple locations. Paul Wagner sometimes composes emails at one location, pastes the content remotely into a mail program at another location, and sends from the other location remotely. Paul Wagner often connects remotely from a dynamic IP address (e.g., while using a wireless PC card [EV-DO] on a laptop), which is not tied to a fixed geographical origin. Plaintiff often stays logged in for days at a time. Many log files are automatically overwritten in a matter of months.

Similarly, it is not possible to accurately determine what tasks Paul Wagner was performing doing every minute of every hour since 2000. See Answer to No. 12, above.

It is therefore not practical or possible to determine the physical location of Paul Wagner while he was working on BSI business during every minute since 2000, unless certified video or other hiometric recordings of him (such as tapes of Mr. Wagner's depositions) and/or his computer screens are available.

Without waiving these objections, BSI states:

BSI provides interactive computer services at the Silver Spring, MD location 24 hours a day, 7 days a week. The equipment at that location is constantly monitored and maintained locally or from other locations. BSI does not have figures on the hours of physical presence at the Silver Spring location.

Discovery is ongoing. Plaintiff expressly reserves the right to supplement this Response should additional information become available.

15. For each month during the time period from January 1, 2007 to present, Identify with Specificity the number of hours per month that Paul Wagner spent working on BSI business while Physically Present at 38 Maryland Avenue, Unit 333, Rockville, Maryland 20850.

**BSI'S ANSWER 15:**

BSI objects that the interrogatory is overbroad. Plaintiff objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties. Plaintiff objects that this Interrogatory duplicates prior interrogatories. BSI objects to the extent that Paul Wagner, individually, is not a party to this action.

Plaintiff further objects to the extent that Defendant seeks to obtain or have Plaintiff attempt to parse server logs, which contain dense intermingled transactions and personal identifying information of clients. The Court has ruled multiple times that neither Party must produce some or all of its server logs. Plaintiff objects to the extent that Defendants seek to reopen this issue.

Objection: See Answer to No. 14, above Without waiving these objections, BSI states:

BSI provides interactive computer services at the Silver Spring, MD location 24 hours a day, 7 days a week. The equipment at that location is constantly monitored

and maintained locally or from other locations. BSI does not have figures on the hours of physical presence at the Rockville location.

Discovery is ongoing. Plaintiff expressly reserves the right to supplement this Response should additional information become available.

17. For each month during the time period from January 1, 2000 to present, Identify with Specificity the number of hours per month that Paul Wagner spent working on BSI business while Physically Present at 1837 R Street, N.W., Washington, D.C.

**ANSWER 17:**

BSI objects that the interrogatory is overbroad, and the time frame is unreasonably long. Plaintiff objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties. Plaintiff objects that this Interrogatory duplicates prior interrogatories. BSI objects to the extent that Paul Wagner, individually, is not a party to this action.

Plaintiff further objects to the extent that Defendant seeks to obtain or have Plaintiff attempt to parse server logs, which contain dense intermingled transactions and personal identifying information of clients. The Court has ruled multiple times that neither Party must produce some or all of its server logs. Plaintiff objects to the extent that Defendants seek to reopen this issue.

Objection: See Answer to No. 14, above Without waiving these objections, BSI states:

BSI provides interactive computer services at the D.C. location 24 hours a day, 7 days a week. The equipment at that location is constantly monitored and maintained locally and from other locations. BSI does not have figures on the hours of physical presence at the D.C. location.

Discovery is ongoing. Plaintiff expressly reserves the right to supplement this Response should additional information become available.

> **2.   BSI Should Be Compelled To Provide A Complete Answer To Interrogatories 14-15, and 17.**
>
> **i.   Interrogatories 14-15, and 17 Seek Relevant Information.**

In Interrogatories 14-15, and 17, Holdings sought to get at the place where BSI and its sole employee and owner do their primary activities.  The Interrogatories were necessary because Paul Wagner submitted a Declaration [*see* DE 344-3: filed 7/17/10, excerpt attached as Exhibit 12] stating:

> In fact, I physically visit BSI's two Maryland points of presence frequently, and normally communicate with those sites by electronic means many times daily.  I do not recall World Avenue ever asking BSI to quantize the amount of time in each location where its personnel or agents work on BSI's ISP

17

or consulting business."

              * * *

        My father and I have different working hours at the Silver Spring, MD house, for different reasons.  He typically is up and out of the premises before rush hour.  I typically stop by in the evening and work late into the night.  It is not unusual that we would both enter and exit the same day without seeing each other.

              * * *

        The presence of remote access software on BSI's MD and DC computers does not indicate whether BSI personnel, or certain clients, spend time physically at those computers.  I frequently spend long hours at the Silver Spring location, as well as in DC, repairing, upgrading and configuring servers.

              * * * *

        I frequently work at the house or condo (or elsewhere) in Maryland, and sometimes stay overnight in Maryland.

*See* Ex. 12, DE 344-3.

Specifically, Interrogatory 14 asked for the number of hours per month that Paul Wagner spent working on BSI business while Physically Present[7] at 1612 Sherwood Road, Silver Spring, Maryland 20902.  Interrogatory 15 asked the same question about BSI's second supposed Maryland location at 38 Maryland Avenue, Unit 333, Rockville, Maryland.  Interrogatory 17 asked the same question about BSI's Washington, D.C., location.

        **ii.**      **BSI's Objections to Interrogatories 14-15 and 17 Are Specious.**

Interrogatories 14-15, and 17 go to the heart of the issue of whether BSI is a *bona fide* resident of Maryland.  *See* DE 544, ¶ 1.  In an effort to distract attention from that crucial issue, BSI raised a series of abusive and arm-waving excuses why it should not have to give a straight

---

[7] Holdings defined *Physically Present* as

    The term Physically Present shall mean that a living, breathing Person is physically and actually located at a particular place or Location, rather than present virtually, or through virtual or other agents, daemons, or other virtual presence.

*See* Ex. 2, p. 9, ¶ 24.

answer.  First, the objections state that the Interrogatories are overbroad, but fails to say why. This question is specific and these objections are specious.  *See also* footnote 2, *supra*.; Ex. 4; Ex. 5.  Second, BSI complains that this Interrogatory "duplicates prior interrogatories", which is nonsense because this is the First Set of Interrogatories from Holdings to WAUSA, and BSI does not identify the supposedly duplicative Interrogatories.  Third, although BSI objects that BSI "Paul Wagner, individually, is not a party to this action," the Court has repeatedly defined the parties to include their "employees", which includes Paul Wagner.  *See* Ex. 13 (DE 257). Fourth, BSI objects that the Answer requires inspection of "server logs," which is absurd because the Interrogatories require no such thing and no inspection of "sever logs" would tell Wagner where he was on any given day.

Fifth, the objections state that the time frame of January 1, 2000 to present is "unreasonably long."  However, Magistrate Judge Day did not restrict WAUSA when this issue was heard on February 16, 2011, or when this issue arose on two prior occasions when discovery issues concerning BSI's finances were heard on prior Motions.  *See* excerpt of Feb. 16, 2011 hearing, p. 72, line 25-p. 73, line 1-2, attached as Ex. 4 ("Requiring the plaintiff to produce financial records from January of 2000 in my estimation is not unreasonable"); DE 444, pp. 1-2, attached as Exhibit 14 ("The period from 2000 to present is equally reasonable given that Plaintiff's claims are dated from 2004 to present").

### iii.    BSI Avoids Answering The Questions.

After injecting the issue into the case through the Declaration at Ex. 12/DE 344-3, and stating that he was never asked to "quantize the amount of time in each location where its personnel or agents work on BSI's ISP or consulting business", BSI refuses to answer exactly that question.  For each Interrogatory, BSI simply answered that its computers were turned on

around the clock, and that "BSI does not have figures on the hours of physical presence at" each location. This is exactly what Holdings instructed was unacceptable. The definition of Physically Present means a "living, breathing Person is physically and actually located at a particular place or Location, rather than present virtually, or through virtual or other agents, daemons, or other virtual presence." *See* Ex. 2, p. 9, ¶ 24. BSI is essentially claiming to be a *bona fide* resident of Maryland because its computers in Maryland run around the clock. BSI should answer each Interrogatory in full, or alternatively, the Court should preclude BSI from introducing any evidence at trial on the issue, except that BSI's computers are on around the clock. This is a critical set of questions going to whether BSI is a *bona fide* resident of Maryland, and BSI should not be permitted to hide behind a phalanx of abusive objections.

**E.     BSI;s Answers to Interrogatories 23-24 Are Deficient**

**1.     Holdings' Interrogatories 23-24 and BSI's Answer.**

23. Identify with Specificity, for each month from January 1, 2000 to date, the instances on which BSI/Paul Wagner has remotely accessed a Hypertouch or BSI Server located in Maryland from Computer Equipment physically located outside the State of Maryland where the BSI computer operator was Physically Present outside the State of Maryland.

**BSI'S ANSWER**

BSI objects that the interrogatory is overbroad. Plaintiff objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties. Plaintiff objects that this Interrogatory duplicates prior interrogatories. Plaintiff further objects to the extent that Defendant seeks to obtain or have Plaintiff attempt to parse server logs, which contain dense intermingled transactions and personal identifying information of clients. The Court has ruled multiple times that neither Party must produce some or all of its server logs. Plaintiff objects to the extent that Defendants seek to reopen this issue. Without waiving these objections, BSI states:
See Answer to No. 14, above. Plaintiff further states that it often remotely accesses a series of computers at one time, often through different remote access programs. Plaintiff often stays logged in for days at a time. Many log files are automatically overwritten in a matter of months. Plaintiff does not have minute-by-minute records of its activities between login events. It is impossible to provide an accurate answer to this question.

Discovery is ongoing. Plaintiff expressly reserves the right to supplement this Response should additional information become available.

24. For each instance identified in your Answer to Interrogatory 23, Identify with Specificity the Computer Equipment that BSI/Paul Wagner remotely accessed, the Location of the Computer Equipment, and the Location from which BSI/Paul Wagner remotely accessed the Computer Equipment.

**BSI 'S ANSWER 24:**

BSI objects that the interrogatory is overbroad. Plaintiff objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties. Plaintiff objects that this Interrogatory duplicates prior interrogatories. Plaintiff further objects to the extent that Defendant seeks to obtain or have Plaintiff attempt to parse server logs, which contain dense intermingled transactions and personal identifying information of clients. The Court has ruled multiple times that neither Party must produce some or all of its server logs. Plaintiff objects to the extent that Defendant seek to reopen this issue. Without waiving these objections, BSI states:
Plaintiff hereby incorporates its full answer to Interrogatory No. 23 by reference. Discovery is ongoing. Plaintiff expressly reserves the right to supplement this Response should additional information become available.

2.      **BSI Should Be Compelled To Provide A Complete Answer To Interrogatories 23-24.**

i.      **Interrogatories 23-24 Seek Relevant Information.**

Interrogatories 23-24 also go to the heart of the issue of whether BSI is a *bona fide* resident of Maryland. *See* DE 544, ¶ 1. Following up on Interrogatories 14-15, and 17, regarding physical presence at BSI's two offices in Maryland, in Interrogatories 23 and 24, Holding sought discoverable information concerning the instances of BSI and Paul Wagner's remote computer access from outside of Maryland to a BSI or Hypertouch Server in Maryland. Interrogatory 24 sought follow-up information regarding the same topic, including the Location of the Computer Equipment accessed. These Interrogatories go to the heart of the *bona fide* residency of BSI. As explained above (*see* III.C.2, *supra*.), BSI and Hypertouch can operate out of physical locations in Washington, D.C. and Massachusetts, respectively, using remote access

software such as Timbuktu, Secure Shell (SSH), VNC (Virtual Network Computing), through which they can access, control, and administer Servers situated in Maryland.  *See* Ex. 15 (excerpted Declaration of Neal A. Krawetz, ¶¶ 26-31).   Indeed, BSI freely admits remotely accessing the Computer Equipment in Maryland.  *See* Ex. 16 (Excerpted Declaration of Paul A. Wagner dated December 3, 2009, p. 3, ¶ 11 ("Some servers [at the Sherwood Road house and the Rockville Condo] have no monitor, keyboard or mouse attached to them, and are only accessed remotely via an administrative password")).

### ii.    BSI's Objections to Interrogatories 23-24 Are Meritless.

BSI's objections lodged to avoid giving a straight answer are meritless.  BSI objects that the Interrogatories are overbroad, but fails to say why.   This question is specific and these objections are specious.  *See also* footnote 2, *supra*.; Ex. 4; Ex. 5.  Second, BSI complains that this Interrogatory "duplicates prior interrogatories", which is nonsense because this is the First Set of Interrogatories from Holdings to WAUSA, and BSI does not identify the supposedly duplicative Interrogatories.   Third, BSI objects that the Answer requires inspection of "server logs," which is absurd because the Interrogatories require no such thing and no inspection of "sever logs" would tell Wagner where he was on any given day.

### iii.    The Answers are Evasive.

Once again, BSI avoided giving the Answer to Interrogatories 13-14.  First, BSI  referred back to its Answer to Interrogatory 14, which is non-responsive because Interrogatory 14 has nothing to do with remote access.   Then, BSI states:  "Plaintiff further states that it often remotely accesses a series of computers at one time, often through different remote access programs."   This is a non-answer to the question of how often BSI or Hypertouch when physically located outside of Maryland access one of their Servers or Computer Equipment in

22

Maryland.   The answer does not identify the "series of computers" nor the "remote access programs," nor how often the access occurs.  BSI also states:  "Plaintiff often stays logged in for days at a time. Many log files are automatically overwritten in a matter of months. Plaintiff does not have minute-by-minute records of its activities between login events."  This is also non-responsive and does not identify the frequency with which the remote access occurs.  This is also a non-answer to the question of *when* the Computer Equipment or Servers are remotely accessed from outside of Maryland.  BSI then states that "[i]t is impossible to provide an accurate answer to this question."  BSI's answer is incomplete and meritless, and BSI must provide a complete answer or be precluded pursuant to Rule 37 from introducing evidence on this topic.

      **F.**        **BSI's Answer to Interrogatory 25 Is Deficient**

            **1.**      **Holdings' Interrogatory 25 and BSI's Answer.**

Identify with Specificity, for each month, the name and Location of each Customer of BSI/Paul Wagner that was a Customer from January 1, 2000 to date.

**BSI'S ANSWER 25**

BSI objects that the interrogatory is overbroad and vague. Plaintiff objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties. Plaintiff objects that this Interrogatory duplicates prior interrogatories. Plaintiff further objects to the extent that Defendant seeks to obtain or have Plaintiff attempt to parse server logs, which contain dense intermingled transactions and personal identifying information of clients. The Court has ruled multiple times that neither Party must produce some or all of its server logs. Plaintiff objects to the extent that Defendants seek to reopen this issue. Without waiving these objections, BSI states:

Plaintiff objects to the term "Customer," as neither MD-CEMA nor FL-CEMA use that term. Wagner further objects to the limited definition of "Customer," and the absence of a complete source cite for the definition in the discovery requests. The online Merriam Webster Dictionary includes a broader description than that quoted by Defendant:

1. a person who buys a product or uses a service from a business. Synonyms account, client, guest, patron, punter [chiefly British] Related Words consumer, end user, user; buyer, correspondent, purchaser, vendee; browser, prospect, shopper, window-shopper; bargainer, haggler; regular .

http://www.merriam-webster.com/thesaurus/customer, last visited March 31, 2011.

The following persons have paid BSI for interactive computer services since 2000:

| | | |
|---|---|---|
| Abby Livingston | DC | 1/2010 to present |
| Alexander Feshenko/East Republic | DC & MD | 2/2007 to present |
| Barcroft HPV, Inc. | Arlington, VA | 1999 to 8/2008 |
| Benedicte Aubrun | DC | 4/2010 to 5/2010 |
| Bonifacio Yap | DC | Spring 2010 to present |
| Boxorox | unknown | 2/2000 to 6/2000 |
| Brandon Frazier | DC | 4/2010 to 9/2010 |
| David Darbouze | DC | 4/2010 to present |
| Diane Wagner | Silver Spring/Rockville, MD | 1/2002 to present |
| Editorial Perspectives | | 2/2007 to present |
| Eric Gaidos | DC | 9/2010 to 1 0/20 10 |
| Fanny Momboisse | DC | 4/2010 to 1/2011 |
| Futrek Corporation | Silver Spring, MD | 1999 to 7/2002 |
| Keivan Khalichi | Alexandria, VA | 312006 to present |
| Mark Matarella | has lived in MD and VA | 1999 to 7/2000 |
| Motorola | Schaumberg, IL | 1999 to 4/2000 |
| SELCO | Bethesda, MD | 1999 to 2/2001 |
| Sports & Spinal Physical Therapy | DC | 11/2006 to 12/2007 |
| Stephen H. Ring, P.C. | Germantown/Gaithersburg, MD | 3/2006 to 12/09 |
| Vision Online | Herndon, VA | 4/2008 to present |
| William Wagner | Silver Spring/Rockville, MD | 1/2002 to present |
| Young Woman's Christian Home | DC | 10/2001 to present |

Many of these persons, and at least hundreds of others, have received free interactive computer services from BSI outside these date ranges. Plaintiff often does not know they cease using BSI's services, if ever.

Discovery is ongoing. Plaintiff expressly reserves the right to supplement this Response should additional information become available.

## 2.   BSI Should Be Compelled To Provide A Complete Answer To Interrogatory 25.

### i.   BSI's Objections to Interrogatory 25 Are Meritless.

BSI's objections to Interrogatory 25 are meritless.  BSI objects that the Interrogatories are overbroad and vague, but fails to say why.  This question is specific and these objections are specious.  *See also* footnote 2, *supra.*; Ex. 4; Ex. 5.   Second, BSI complains that this Interrogatory "duplicates prior interrogatories", which is nonsense because this is the First Set of Interrogatories from Holdings to WAUSA, and BSI does not identify the supposedly duplicative Interrogatories.  Third, BSI objects that the Answer requires inspection of "server logs," which is absurd because the Interrogatories require no such thing.  If BSI needs a "server log" to tell it

who is its "Customer", then, by definition, that person is not a Customer.[8]

ii.      **BSI Should Be Compelled To Provide A Complete Answer.**

In Interrogatory 25, Holdings sought the name and Location of each Customer of BSI/Paul Wagner that was a customer from January 1, 2000 to date.  However, when BSI provided its Answer, it did not provide the addresses for any of the so-called Customers, but instead identified such Persons by the city in which they are purportedly located.  BSI should provide the address and Location of these so-called Customers.  This information is particularly important because several of these individuals have been difficult, and/or impossible to serve with process for purposes of trial and discovery.

H.      **BSI Should Be Sanctioned.**

BSI should be sanctioned for three compelling reasons.  First, notwithstanding having been warned at the February 16, 2011 hearing by Magistrate Judge Charles B. Day about boilerplate general objections, BSI lodged a torrent of unsupported general objections identical to many already overruled before.  The legal term for this is ignoring the Judge and wasting scarce judicial resources.   Second, as to each Interrogatory, BSI objected repeatedly with meritless objections.  Finally, the answers to many of these Interrogatories were deliberately evasive, through the magic of re-wording the question.  Other answers just ignored unpleasant questions and still other answers were to every appearance flat out lies made under oath.

The Rules provide that this behavior is sanctionable.  *See* Rule 37(a)(4), Fed. R. Civ. P. ("For purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response,

---

[8] Holdings defined "*Customer*" as "hav[ing] the meaning assigned to it in the English language by the following two dictionaries. First, Merriam-Webster Online Dictionary defines customer as "*one that purchases a commodity or service*." Second, the Webster's Ninth New Collegiate Dictionary defines customer as "*one that purchases a product or service*."  *See* Ex. 2, p. 6, ¶ 5.

must be treated as a failure to disclose, answer, or respond"). The Court is no doubt aware that the BSI-Hypertouch parties have been sanctioned before (*see* DE 441, 444, 468, 484, 502, 605, 605, 606; *World Avenue USA, LLC v. William J. Wagner*, Case No. 09-557 (District of Columbia), DE 21 (awarding sanctions)).

To date, these sanctions have had no visible effect on these litigants' behavior as they repeat the sanctioned behavior with impunity.[9] The Court has imposed monetary sanctions at least eight times in this case. Yet the behavior persists. The caselaw cited before to this Court in other contexts states that striking pleadings is appropriate for litigants who commit a fraud on the judicial system. But the Court has indicated it does not want to impose this penalty, and Defendants respect that ruling. Therefore, Defendants respectfully suggest the Court compel BSI to fully, completely, truthfully and immediately answer these Interrogatories, award any monetary sanctions the Court deems appropriate, and exercise its power to issue adverse inference jury instructions if said answers are not forthcoming.

## IV. CONCLUSION

For the foregoing reasons, BEYOND SYSTEMS, INC. should be compelled to provide complete and non-evasive Answers to Interrogatories 1-2, 8-10, 14-15, 17, and 23-25, and should be sanctioned.

---

[9] For example, on February 16, 2011, the Court entered three sanctions awards. *See* DE 605 (sanctions for BSI's Motion for Reconsideration on Third Set of Interrogatories); DE 605 (sanctions for BSI's Motion for Determination of Timeliness And Sufficiency of Initial Rule 26(a)(2) Expert Designations And/Or For Extension of Time [DE 214-filed 4/20/10]); DE 606 (sanctions for BSI's Motion for Reconsideration on WAUSA's Fourth Request for Production). Notwithstanding the three February 16th sanctions Orders, BSI filed its next Motion for Reconsideration on March 2nd [DE 611] and again on the same issue on April 6th [DE 638] in a motion effectively seeking to revisit Magistrate Judge Day's rulings at the February 16, 2011 hearing.

Dated: April 27, 2011.

Respectfully submitted,

*Attorneys for World Avenue USA, LLC*

GREENBERG TRAURIG, LLP

___/s/_____
Sanford M. Saunders, Jr., Esq.
USDC, MD #4734
saunderss@gtlaw.com
Nicoleta Burlacu, Esq.
BurlacuN@gtlaw.com
*Admitted Pro Hac Vice*
GREENBERG TRAURIG, LLP
2101 L Street, NW, Suite 1000
Washington, DC 20037
Telephone:  202-331-3100
Facsimile:  202-331-3101

--and--

Kenneth Horky, Esq.
Florida Bar No. 691194
horkyk@gtlaw.com
John L. McManus, Esq.
Florida Bar No. 0119423
mcmanusj@gtlaw.com
*Admitted Pro Hac Vice*
GREENBERG TRAURIG, LLP
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, FL 33301
Telephone: 954-765-0500
Facsimile:  954-765-1477