IN THE U.S. DISTRICT COURT FOR MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| **BEYOND SYSTEMS, INC.** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **-vs-** | * | **Case No. 8:08-cv-00921-PJM** |
| | * | |
| **WORLD AVENUE U.S.A., LLC et al** | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

**PLAINTIFF BEYOND SYSTEMS, INC'S OPPOSITION IN RESPONSE TO
DEFENDANT WORLD AVENUE HOLDINGS' MOTION FOR ORDER TO
COMPEL COMPLETE ANSWERS TO INTERROGATORIES FROM BSI
RELATING TO THE AUGUST TRIAL**

Plaintiff Beyond Systems, Inc. ("BSI"), by and through undersigned counsel,

hereby submits its Opposition in Response to Defendant World Avenue Holdings, LLC's

("HOLDINGS") Motion to Compel Complete Answers to Interrogatories from Plaintiff

BSI Relating to the August Trial, and on its behalf states as follows:

## I.     INTRODUCTION

HOLDINGS Motion to Compel further responses to interrogatories is the latest

bombardment of paper attacking Plaintiff with frivolous requests without any meaningful

dialogue between the parties.  On April 27, 2010, in its latest round of paper churning,

Defendant HOLDINGS served a Motion to Compel discovery responses on Plaintiff BSI

relating to the August Mini-Trial.  As per usual, Defendant portrays BSI's responses as

deliberately misleading, evasive, and non-responsive.  However, Defendant's rush to

compel responses from Plaintiff and Third Party Defendants is really just kabuki theater

1

for the benefit of the Court.  Plaintiff's responses were accurate, timely, and forthright.

As HOLDINGS bears the burden of demonstrating that BSI's responses were deficient in

some respect, Defendant's present motion must be denied.  Defendant alleges no new

information that Plaintiff has any other information other than what it provided to

Defendants.  The present motion is nothing more than a harassing fishing expedition

meant to sap Plaintiff's resources.

In reality, Defendants already have all the information they require for the August

trial many times over and, ultimately, do not care if they receive the information they

seek.  Defendants' ultimate objective is to overload Plaintiff's capacity to respond to their

frivolous discovery requests and ceaseless demands.  Ultimately, there is no amount of

discovery responses that will ever satisfy Defendant's insatiable demand for information

– whether relevant or not.  Thus, Defendant's Motion to Compel complete answers to

interrogatories from BSI should be denied for the following reasons :

First, HOLDINGS has failed to adequately conduct the required "meet-and-

confer" conference on any of the issues raised in its motion under either Local Rule

104.8, the Court's orders in this case, or the Partial Joint Discovery Schedule for the

August trial.  As documented in the attached exhibits, Defendants have refused to meet

and confer in good faith to narrow the issues for this Court.  *See* Exhibit A-1 (e-mails

between Counsel re: "meet-and-confer" regarding the present motions).  The Local

Rules, the Court's orders, and the Joint Stipulated Scheduling Order supposedly in place

now all call for the parties to conference and narrow the issues and certify the issues in

dispute.  Instead, Defendant continues to engage in monologue rather than dialogue, with

2

Defendant's counsel ticking off its various demands while not listening to Plaintiff's responses. This war of paper is contrary to the Court's earlier orders and for this reason alone Defendant's Motion should be denied.

As further evidence of its bad intent, Defendant's letters of deficiency all pre-date the supposed meet and confer conference the parties allegedly held. Defendant cites as evidence of its meet and confer obligations a thirty-five (35) page summary conference letter from opposing counsel dated April 18, 2011 (referenced as "April 19th" in the Motion to Compel). Both the letter and the Rule 104 Certification attached to the Motion state that a telephonic conference occurred on April 15, 2011. Yet all but one of the correspondence dates cited in the letter precede the date when Plaintiff's served answers to the February 4th interrogatories. Consequently, no meaningful conference on discovery disputes could have occurred under Defendant's version of events.

Second, HOLDINGS present Motion to Compel responses to BSI is untimely under any version of any Scheduling Order proposed by the parties for the August mini-trial. Not only have Defendants re-packaged the discovery requests served and satisfied nearly one year ago, it is now attempting to compel responses on Discovery Requests served late under the present Scheduling Order.[1] This cumulative waste of time is compounded by the fact that Defendants are now trying, in a separate motion, to compel

---

[1] In its other Motions to Compel discovery responses filed at the same time as the present motion, Defendants ask this Court to compel Hypertouch, Inc. and Joseph J. Wagner to provide discovery responses that were first propounded over one year ago on February 18, 2010.

Requests for Production of Documents propounded over one year earlier by other

Defendants on *February 18, 2010*.

Finally, BSI has fully responded to all of the interrogatories propounded by the

Defendants and this is yet another colossal exercise in paper shuffling concocted by the

Defendants.  The issues raised by the Defendant (again) in this motion to compel have

been hashed and re-hashed during the last three years of this case.  Defendant is well

aware of the answers it seeks from BSI through both the discovery it received during the

original Scheduling Order in this case, from the *Kraft Foods* case that echoes the present

case, and from the discovery responses that Plaintiff has already provided and

supplemented multiple times.  For all these reasons, Defendant's Motion to Compel

should be denied.

## II.       STATEMENT OF FACTS

### A.       Court's Admonitions Against Abusive Discovery Practices

On November 29, 2010 during a motions hearing, Judge Messitte warned the

parties about the pattern of excessive filings in this case, and its desire to see real

progress on the merits of the issues between the parties or work at settling the case :

> *[W]e're going to get to this case on the merits.  I'm telling you, we're going to get there and I'm going to make you do it, or you're going to settle it before that.  And if you don't settle it, fine, but no more of this thousand paper, 2000 paper filing.  It's just not helping things.  Let's find out what's going on in all this business right now.*

*See* Exhibit A-2, (Messitte 11/29/11 Tr. ) at 97:6-11.

> *I'm not going to make this a case where one or two large law firms on the defense side get to flood the law firm on the plaintiff's side by overwhelming them with paper.  That's not going to happen in this case.*

4

*See* Exhibit A-2 (Messitte 11/29/11 Tr. ) at 102:8-11.

Since that time, the Court has been insisting that the parties conduct a meaningful discovery conference in order to narrow the disputes between them.  The Court even went as far as reminding the parties that the discovery conference had to be a conference where the parties directly spoke, rather than simply the passage of correspondence and email.  This meaningful conference requirement is embraced by the Local Rules of this Court, the Court's rulings in this case, and even the badly flawed Stipulated Discovery Order in this case.

### 1.      Local Rule 104.7

Local Rule 104.7 requires that the Parties conduct a meaningful discovery conference regarding the items in dispute prior to the serving of a Motion to Compel.  *See* L.R. 104.7.  Specifically, the Rule states :

### 7.      Conference of Counsel Required

Counsel shall confer with one another concerning a discovery dispute and make sincere attempts to resolve the differences between them. The Court will not consider any discovery motion unless the moving party has filed a certificate reciting (a) the date, time and place of the discovery conference, and the names of all persons participating therein, or (b) counsel's attempts to hold such a conference without success; and (c) an itemization of the issues requiring resolution by the Court.

*See* L.R. 104.7.

### 2.      Local Rule 104.8(b)

Local Rule 104.8(b) requires that the Parties conduct a meaningful discovery conference regarding the items in dispute prior to the serving of a Motion to Compel.  *See*

L.R. 104.8(b).  Specifically, the Rule states :

**b.     Conference of Counsel**

Counsel are encouraged to confer with one another before or immediately after a motion to compel is served. If they are unable to resolve their disputes, counsel must hold the conference required by L.R. 104.7 after serving upon one another all of the documents relating to the motion to compel.

*See* L.R. 104.8(b).

**B.     The Court's November 30th Order and March 24th Order**

In the last paragraph of the Court's November 30th Order, Judge Messitte gave the

following admonition to the Parties and even provided his own emphasis in bold letters :

22.     Counsel for the parties are **STRONGLY URGED** to consult in good faith and attempt to resolve any differences of opinion before filing pleadings with the Court.

*See* DE 544, (PJM Order 11/30/10) at ¶ 22 (emphasis in original).

And Magistrate Judge Day warned during the March 24th hearing that the parties

should certify their disputes and talk prior to filing anything with the Court.  Specifically,

in referring to Counsel in this case and the disastrous record of resolving discovery

disputes, Magistrate Judge Day noted :

[T]he two of you need to have a further dialogue as to those items that are pertinent to the August date, the August trial. And then whomever the moving party is needs to file a Certificate of Conference articulating the issues within that pending motion.

There are a zillion Motions to Compel this and that, saying which items are in play. It may be Interrogatory Number 5 or Request for Document Number Seven. That will be a more efficient use of our limited resources here.

6

*See* Exhibit A-3 (03/24/11 CBD Hearing) at pp 8:23-25 to 9:1-6.

      **C.**     **Defendants Failure to Conduct the Limited Discovery Dispute Conference**

In its April 18th letter and Rule 104.7 certification attached to the present discovery dispute, Defendant notes that the parties held a "telephonic discovery conference" on April 15th.  *See* 104.7 Certification at ¶ 1.  Defendant noted in the certification that Defendant World Avenue sent a letter listing the deficiencies on April 18th.  World Avenue contends that the 11 topics allegedly raised in the April 18 deficiency letter were also raised during the hour and a half telephonic conference that occurred on April 15th.  During that April 15th phone conference, Defendant's counsel was allegedly conferring with Plaintiff's counsel Ring also on matters involving Third Party Defendant Hypertouch, Inc. and James J. Wagner.  In addition, during the same one and a half hour phone conference, the Parties were also to have spoken about the deficiencies involving Third Party Defendant Hypertouch, Inc. and Third Party Defendant Joseph J. Wagner.

      **III.**     **PLAINTIFF'S RESPONSES IN OPPOSITION**

Plaintiff took great pains to make its objections specific to this most recent round of interrogatory requests by all the Defendants (six Motions to Compel served in all on April 27th, comprising 811 pages worth of material, which does not include an additional 142 page "show cause" motion).  Despite Defendant's contentions, the responses to the interrogatories were time consuming and labor intensive to obtain.  On April 8, 2011, Paul Wagner noted in an affidavit the burden of identifying, reviewing and producing

millions of documents requested by Defendants.  In Plaintiff's first response, Paul

Wagner noted that locating the information requested in the interrogatories would

require:

> searching through most or all of BSI's documents to find which ones do relate to
> [the request]; visually inspecting these documents prior to production to confirm
> relevance and insure that each document is not privileged, confidential, or a trade
> secret; conversion into a portable format like PDF; Bates labeling the pages and
> updating a table that correlates each document Request(s) to which it is
> responsive.

*See* Exhibit Wagner Aff., (served on 04/08/11)

### A.      BSI's Responses to Interrogatories 1 and 2.

WAH seeks to subject BSI to the same oppressive inquiry as WAUSA did with

WAUSA's Interrogatory Set 1 No. 13.  WAH's Interrogatories 1-2 and BSI's Answers

are as follows.

**INTERROGATORY 1:**

Identify with Specificity the Location(s) and the date(s) of commencement where
BSI/Paul Wagner is currently storing, housing, co-locating or is otherwise
operating any Computer Equipment. For each Location(s),  Identify each piece of
Computer Equipment and how each piece of Computer Equipment is currently
used.

### BSI RESPONSE TO INTERROGATORY 1 :

> BSI objects that the interrogatory is overbroad and unduly burdensome.
> Plaintiff objects to the extent this inquiry is not "directly relevant to the Trial
> Issues" as set by the Court at DE 544 and as agreed by the Parties. Plaintiff
> objects that this Interrogatory duplicates Interrogatory Set 1 No. 13, which
> effectively asked the identical question:

> INTERROGATORY NO. 13:
> For each IP Address, identify the servers and physical location of all
> servers associated (primary or secondary) with each IP Address.

8

WAUSA defined "servers," in Set 1, but not in the current set of interrogatories, as follows:

…

19. Server/Servers. "Server" Of "Servers" shall mean all Computers dedicated to providing one or more services over a computer network, including but not limited to, Email services, Domain Name Resolution services (DNS services), Web Hosting services (storing and serving web pages), Internet Connectivity services, Database services, Data Backup services, Data Storage services, FTP services, NNTP services and E-commerce services.

WAUSA did not define "Computers" in Set 1.  However, a widely used online dictionary   (http://www.merriam-webster.com/dictionary/computer)   defines "computer" to include "one that computes."   Therefore WAUSA's use of "Computers" in Set 1 includes all "Computer Equipment" as defined in WAUSA's current set of interrogatories.   WAUSA filed a motion to compel as to Set 1. BSI provided its responses in answers, supplemental answers, and second supplemental answers.   BSI incorporates by reference these prior answers to WAUSA's Interrogatory Set 1 No. 13.

Discovery is ongoing.  Plaintiff expressly reserves the right to supplement this Response should additional information become available.

## INTERROGATORY 2 :

Identify with Specificity the Location(s) and the date(s) of commencement and termination where BSI/Paul Wagner has in the past stored, housed, co-located or have otherwise operated any Computer Equipment. For each Location(s), Identify with Specificity each piece of Computer Equipment and how each piece of Computer Equipment was used, and the date range that each piece of Computer Equipment was in use.

### BSI'S RESPONSE TO INTEROGATORY 2:

BSI objects that the interrogatory is overbroad and unduly vague.  Plaintiff objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties. Plaintiff objects that this Interrogatory duplicates Interrogatory Set 1 No. 13, which effectively asked the identical question:

INTERROGATORY NO. 13:

9

For each IP Address, identify the servers and physical location of all servers associated (primary or secondary) with each IP Address.

WAUSA defined "servers," in Set 1, but not in the current set of interrogatories, as follows:

…

19. Server/Servers. "Server" Of "Servers" shall mean all Computers dedicated to providing one or more services over a computer network, including but not limited to, Email services, Domain Name Resolution services (DNS services), Weh Hosting services (storing and serving web pages), Internet Connectivity services, Database services, Data Backup services, Data Storage services, FTP services, NNTP services and E-commerce services.

WAUSA did not define "Computers" in Set 1.  However, a widely used online dictionary    (http://www.merriam-webster.com/dictionary/computer)    defines "computer" to include "one that computes."    Therefore WAUSA's use of "Computers" in Set 1 includes all "Computer Equipment" as defined in WAUSA's current set of interrogatories.   WAUSA filed a motion to compel as to Set 1. BSI provided its responses in answers, supplemental answers, and second supplemental answers.   BSI incorporates by reference these prior answers to WAUSA's Interrogatory Set 1 No. 13.

Discovery is ongoing.  Plaintiff expressly reserves the right to supplement this Response should additional information become available.

### 1.    Plaintiff's Objections Are Meritorious.

In its answer, BSI objected to Interrogatory 1 on the grounds that it was effectively the same as Interrogatory 13 in World Avenue USA, LLC's ("WAUSA") First Set of Interrogatories.  *See* Def.'s Ex. 6 (excerpt of WAUSA's first Set of Interrogatories, Interrogatory 13).  Defendant first claims that the Interrogatory is different because it was propounded by a different party (WAUSA there vs. WAH here) and contained a slight change in language ("Servers" there vs. "Computer Equipment" here).  This is the absurdity to which Defendant HOLDINGS now stoops.

10

## 2. Defendant Deliberately Misstates the Facts

More specifically, HOLDINGS complains in its motion that BSI's answers to its

Interrogatories are meritless and misleading :

> BSI's objection that it already provided information in response to
> Interrogatory 13 of WAUSA's First Set of Interrogatories to BSI is
> meritless and misleading for three reasons.  First, Interrogatory 13 was
> different.  See Ex. 6 (excerpt of WAUSA's First Set of Interrogatories,
> Interrogatory 13).  Interrogatory 13, which was propounded by WAUSA
> and not Holdings, asked "For each IP Address, identify the servers and
> physical location of all servers associated  (primary or secondary) with
> each IP Address.

MTC at 6.

However, in Defendant WAUSA's Interrogatory No. 13 Set 1, the Interrogatory

asked "For each IP Address, identify the servers and physical location."  In that First Set

of Interrogatories answered prior to the November 28, 2010 hearing, WAUSA defined

servers broadly (under Paragraph 19 of its Definitions Section) to mean anything that

computes on a network.  In its response, BSI noted that all its Computer Equipment had

sat on a network with an IP address.  In the same definitions section, WAUSA defined

"Identify" to mean the following :

> 6. Identify (with respect to documents): When referring to
> documents, to "identify" means to state the: (i) type of document;
> (ii) general subject matter; (iii) date of the document; and, (iv)
> author(s), addressee(s), and recipient(s) or, alternatively, to
> produce the document.

As a result, there can be little doubt that BSI responded to Interrogatory No. 13 by

identifying and describing its servers.  The parties have already litigated this issue before

the Court Plaintiff's responses to Interrogatory 13. *See* Def's Exhibit 8 (DE 428) &

September 23, 2010 hearing regarding Interrogatory 13 (Def's Exhibit 9).

> 2. **HOLDINGS and WAUSA Propounded the Same Interrogatory.**

BSI should not be required to answer the same interrogatories posed by different

related defendants when the matter has previously been deemed settled by this Court.

This is a blatant abuse of the discovery rules, and was certainly not the intent of this

Court when it set up the August mini-trial. HOLDINGS is in complete control of

WAUSA; HOLDINGS and WAUSA share the same officers, employees, attorneys and

physical office (Suite 100 in Sunrise, FL). HOLDINGS has been an active defendant in

this suit since the Amended Complaint was filed nearly 2.5 years ago on 12/22/2008.

Information in the hands of the attorneys of HOLDINGS can certainly be said to be in the

hands of WAUSA (and *vice versa*).

Furthermore, HOLDINGS complains in its Motion that :

In its objections, BSI complains about the lack of definition of "Server" in this Set of Interrogatories although the word "Server" does not appear in this Interrogatory 1. Instead, this Interrogatory asked for "Computer Equipment" and BSI says nothing about the clear definition of Computer Equipment in these Interrogatories.

HOLDINGS misreads BSI's response to the Interrogatory. BSI stated that it

answered WAUSA's Interrogatory No. 13 Set 1, which contains the defined term

"Servers" and that set of Interrogatories defined "Servers" to mean "all Computers." The

definition of "Computer Equipment" this February 4th set Interrogatories (Set 4) overlaps

the definition of "Servers" in Set 1, for BSI's equipment.  HOLDINGS further complains that :

> *Third, BSI never answered in Interrogatory 13 about the Location of any Servers, but provided a vague description of the Servers.*

Defendant's statement is absolutely incorrect.  In its answer to Interrogatory 13, BSI provided the IP address for each computer, and the location for each IP address. Finally, HOLDINGS complains that :

> *Fourth, and most importantly, BSI's Supplemental Answer to Interrogatory 13 was false.*

HOLDINGS claims that because BSI and Hypertouch answered differently to the question regarding the server locations that BSI must be held responsible for the mistake. As HOLDINGS knows all too well, Hypertouch, Inc. is a Third-Party Defendant in this case and separate legal entity.  Unlike the Defendants in this case, BSI and Hypertouch do not have a unity of ownership, location, and leadership.  Plaintiff responded to the Interrogatory that to the best of its knowledge, the servers, IP addresses and locations provided in its original and supplemental answers were accurate.  Plaintiff had no idea that Hypertouch had added a new location, and new IP addresses, just 3 months prior to Plaintiff's supplemental answer (according to HOLDINGS).  More importantly, Plaintiff does not believe it was it obligated to locate and report such IP addresses not in its possession, custody, or control.  In fact, WAUSA Interrogatories Set 1 provided the following definition for "IP Addresses" :

> 14.   IP Addresses. The "IP Addresses" shall mean one or more of the
>        following Internet Protocol Addresses: 66.88.123.229,
>        66.93.97.100, 67.115.175.254, 68.120.0.0-68.127.255.255,

(68.120.0.0/16), 68.127.102.0.1, 68.127.102.0-68.127.1 03.255
(68.127.1 02.0/23), 68.127.1 02.94, 69.33.19.128-69.33.19.192
(69.33.19.128/26), 69.33.19.128.26, 71.126.162.32-71.126.162.47
(71.126.162.32/28), 71.126.162.32.1, 74.95.0.24 - 74.95.0.31
(74.95.0.24/29),75.16.30.104.1, 75.16.30.104-75.16.30.111
(75.i6.30.104/29), and any others used by Plaintiff.

When it is using the services of other Interactive Computer Service Providers

("ICSP's"), Plaintiff uses the IP Addresses that are dynamically assigned to it.  When BSI

accesses the services of other ICSP's, vendors, information portals and other Internet

resources, including servers and other devices of Hypertouch, Verizon, Speakeasy,

Megapath, Google.com, Yahoo! Mail, CNN.com and LinkedIn.com, it does not

necessarily know what IP address it is using at any one time.  These third parties' can

change their IP addresses anytime without notice to BSI, and indeed is transparent to BSI

and to their many other clients.

### 3.      HOLDINGS's Demand For Specificity is Simply Harassment

HOLDINGS justifies asking the same interrogatory again to BSI by complaining

that BSI's prior responses are incomplete.  This argument should not be given any

weight.  In this demand, Defendants' plan to swamp Plaintiff with meaningless demands

is finally laid bare.  HOLDINGS cannot make any good faith argument that this

information is necessary to its case or represents anything other than harassment.

HOLDINGS argues that :

> The Interrogatory is designed to force BSI to specify what equipment is
> (and has been) where, and is relevant to show what specific Computer
> Equipment was and is operating at what Internet Protocol Addresses and
> what Domains, and who that Computer Equipment is actually owned by,
> as between Hypertouch and BSI.  Second, WAUSA asked BSI to provide

the location of the equipment within each house and the name of the owner or renter of each property.

The present interrogatory propounded by HOLDINGS seeks "the Location(s) and the date(s) of commencement"; "how each piece of Computer Equipment is currently used,"; "Location means the property type (such as an office building or single family home), property owner(s) and/or renter(s), postal address, city, state, zip code and the specific area within the Location (such as an office space, bedroom, data center, garage, etc)."

This directly overlaps with Interrogatory 13, and Defendants know perfectly well that BSI's equipment is located in office spaces within residences owned by William & Diane Wagner in Maryland and Paul Wagner in DC.

As for HOLDINGS request for an exact chronology of the Locations and uses of every piece of equipment BSI has ever stored, housed, co-located or otherwise operated, Plaintiff simply does not recall, nor keep records of, such information beyond what was provided.  Plus, HOLDINGS definition of "Computer Equipment" when expanded to the point of logical absurdity encompasses everything from a mouse to a hard drive.  Plaintiff has provided all the information in its possession, custody and control;  has certified the responses as such;  and HOLDINGS (or any other Defendant for that matter) has not provided Plaintiff or this Court with any other contrary information.

**B.     BSI's Responses to Interrogatory 8.**

HOLDINGS Interrogatory 8 and BSI's Response were noted as follows :

**INTERROGATORY 8:**

15

Identify with Specificity all Permissions or Privileges ever granted to Paul Wagner, Beyond Systems or any other employee or agent of Beyond Systems, by Hypertouch, to any Computer Equipment, Software or Product or Service Account owned, operated, used or paid for by Hypertouch.

### BSI's RESPONSE TO INTERROGATORY 8:

BSI objects that the interrogatory is overbroad and unduly burdensome. Plaintiff objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties. Plaintiff objects that this Interrogatory duplicates prior interrogatories.  Without waiving these objections, BSI states:

Hypertouch has granted BSI permission to access several of its Internet services and interactive computer services, including web, email and DNS services.  Hypertouch grants BSI permissions sufficient to allow performance of the services described and reflected in BSI's responses to WAUSA's Interrogatory Set 1 No. 9, Requests for Production Set 1 Nos. 5 and 11-14, and Requests for Production Set 2 Nos. 23.  BSI hereby incorporates those responses by reference.

BSI has client-level access to Hypertouch's email services.  BSI has remote console access to Hypertouch DNS servers (dns1.hypertouch.com and dns2.hypertouch.com) and a Hypertouch web server (www.hypertouch.com). BSI has physical access to dns2.hypertouch.com and www.hypertouch.com.. Hypertouch owns the Sambar web and (in the past) email server software hosted on a BSI machine in DC, on which www.hypertouch.com runs.

Discovery is ongoing.  Plaintiff expressly reserves the right to supplement this Response should additional information become available.

In HOLDINGS' Motion to Compel, the Defendant admonishes that the Plaintiff has not been "specific" in its answers, and even goes to the pains of providing a dictionary definition of "specificity" (which ironically is quite vague).  *See* MTC, Footnote 5 at 10.  But what HOLDINGS really desires is a tremendously time consuming and potentially limitless data dump.  However, as BSI has previously noted, it has provided all information in its possession, custody, and control and cannot provide that

which it does not have.  It is HOLDINGS' burden to demonstrate that BSI is in

possession of such information that has not already been provided.  However,

HOLDINGS has not raised any evidence to the contrary.  While HOLDINGS, as per

usual, is long on demands, it is short on details.  In its Motion, it warns that BSI's

responses are deficient and noted what was really sought by the Interrogatory.

> What is required here is a complete history from inception of business to
> present of every Permission ever allowed for every Server or other piece
> of equipment or software, every domain, every email account, and a
> precise explanation of what that permission allowed the holder to do.

Plaintiff has provided and certified all information in its possession, custody, and

control.  If any "permissions" existed and were not provided in the initial response, it

means that the information no longer exists.  HOLDINGS has provided no evidence to

the contrary that any such information was not provided by BSI.  WAH further complains

that BSI uses terms without explaining what they mean, such as "console level access";

"client-level access";  or "physical access."  These are all commonly used terms in the

industry.  Plaintiff meant exactly what these word intended :  BSI has access to the

console of the designated Hypertouch machines via remote access software.

Defendant complains that BSI responded to the Interrogatory by "referring to

certain domains, but not by equipment, which was also specifically asked for."  See

MTC, at 11.

Like other users, Plaintiff identifies equipment that it accesses with a three-part Fully Qualified Domain Name (e.g., mail2.beyondsystems.net or ftp.linkcenter.net) and provided these names in its Response.  Plaintiff further answered:

> BSI's responses to WAUSA's Interrogatory Set 1 No. 9, Requests for Production Set I Nos. 5 and 11-14, and Requests for Production Set 2 Nos. 23. BSI hereby incorporates those responses by reference.

Plaintiff has fully stated what information it has in its possession, custody, and control, and HOLDINGS can provide no information to the contrary.

**C.      BSI's Responses to Interrogatory 10.**

HOLDINGS Interrogatory 10 and BSI's Response is listed below :

**INTERROGATORY 10:**

Identify with Specificity all payments ever made to Hypertouch or James Joseph Wagner by BSI or Paul Wagner, including, with Specificity, the reason(s) for such payments.

**ANSWER 10:**

BSI objects that the interrogatory is overbroad and unduly burdensome. Plaintiff objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties. Plaintiff objects that this Interrogatory duplicates prior interrogatories.  Without waiving these objections, BSI states:

Paul Wagner is not a party to this action.  Paul Wagner, as an individual, has never paid Hypertouch.  Paul Wagner and Joe Wagner, as brothers, have exchanged funds for various personal reasons over the years, unrelated to the operations of BSI or Hypertouch.

In its responses, BSI provided to Defendants the following chart :

| Date | Payee | Purpose | $ Amount |
|------|-------|---------|----------|
| 1/1/2000 | Hypertouch, Inc. | for time on Motorola project | -15,000.00 |
| 4/2/2000 | Hypertouch, Inc. | | -7,000.00 |
| 6/2/2000 | Hypertouch, Inc. | for time on Motorola project | -22,500.00 |
| 19-Sep-2002 | Hypertouch | for little MacIntosh email server | -1.00 |

18

| | | | |
|---|---|---|---|
| 3-Jan-2003 | Hypertouch | | -118.10 |
| 12-Feb-2003 | Hypertouch, Inc. | reimbursement for Accurint | -32.00 |
| 11-Mar-2003 | Hypertouch, Inc. | reimbursement for Accurint | -140.00 |
| 2-Jul-2003 | Hypertouch, Inc. | reimbursement for Accurint | -40.05  (never deposited) |
| 29-Dec-2005 | Hypertouch, Inc. | reimbursement for Accurint | -1,400.00 |

Discovery is ongoing.  Plaintiff expressly reserves the right to supplement this Response should additional information become available.

In its claimed list of deficiencies, HOLDINGS claims that BSI's responses lack specificity when the Interrogatory made no such demand for information.  HOLDINGS asserts that "the requested discovery is directly relevant to show the nature of the relationship between BSI and Hypertouch."  *See* MTC, at 13.  It also claims that it seeking "all payments" and "the exact reasons they were made."  See id., at 13.  This is the essence of the impermissible fishing expedition.  Taken to its logical extreme, such a request is virtually meaningless.  HOLDINGS did not place any specificity in its Interrogatory, now it is requiring it in BSI's response.  HOLDINGS cannot go back now and seek to add detail to an impermissibly vague request -- particularly as to payments by Paul Wagner.  It is undisputed that Paul Wagner in his individual capacity is not directly related to the three mini trial issues, and Defendants have neither alleged nor proven otherwise.

As for Plaintiff's objection to the duplication of discovery already propounded by WAUSA, Plaintiff repeats its argument above that knowledge in the hands of WAUSA's officers, employees and attorneys is also in the hands of WAH.  BSI's Response described all payments between BSI and Joe Wagner (there were none) and BSI and Hypertouch.

HOLDINGS cites "Joseph Wagner's consultant work for BSI" where Joe "WAGNER has served as a consultant to BSI's attorneys during a number of BSI's cases to perform analysis on entails [sic], to aid in the technical production of exhibits, and to analyze evidence developed during the course of the case."  To clarify the record, BSI never paid Joe Wagner for such work, including through its attorneys.  Again, HOLDINGS has no evidence to the contrary, and certainly cannot implicate Paul Wagner in his personal capacity.

BSI has no recollection, and no records, describing the purpose of the $7,000 payment to Hypertouch in April 2000, or on the $118.10 payment to Hypertouch in January 2003.  It is reasonable to assume that the $7,000 was "for time on Motorola project."  But one thing is certain:  10 years later the information is no longer in the possession, custody, or control of BSI, and it has certified as such.

### D.    BSI's Responses to Interrogatories 14-15 and 17.

The following is a recitation of HOLDINGS Interrogatories 14-15, and 17, and BSI's Responses are as follows :

**INTERROGATORY 14:**

For each month during the time period from January 1, 2000 to present, Identify with Specificity the number of hours per month that Paul Wagner spent working on BSI business while Physically Present at 1612 Sherwood Road, Silver Spring, Maryland 20902.

**BSI'S RESPONSE TO INTERROGATORY 14:**

BSI objects that the interrogatory is overbroad.  Plaintiff objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties. Plaintiff objects that this Interrogatory duplicates prior interrogatories.  BSI objects to the extent that Paul Wagner,

20

individually, is not a party to this action.

Plaintiff further objects to the extent that Defendant seeks to obtain or have Plaintiff attempt to parse server logs, which contain dense intermingled transactions and personal identifying information of clients. The Court has ruled multiple times that neither Party must produce some or all of its server logs. Plaintiff objects to the extent that Defendants seek to reopen this issue.

Plaintiff does not maintain records that would enable it to quantify the time it spent at various physical locations, doing BSI business, minute by minute or hour by hour since January 1, 2000. As Defendants have illogically argued ad infinitum, the existence of remote access software on Plaintiff's computers in Maryland purportedly means that Paul Wagner is seldom in Maryland. (Defendants failed to acknowledge that such software has allowed Mike Whitley, Joe Wagner, Keivan Khalichi, Eric Menhart and others to access BSI's servers.) By the same illogic, the existence of remote access software on all of Plaintiff's computers in DC likewise would mean Paul Wagner is seldom in DC. The fact is that Paul Wagner often access BSI's computers in both Maryland and DC remotely, using secure shell or Timbuktu sometimes, but frequently using other remote access programs as well. Often this access is through a series of computers at multiple locations. Paul Wagner sometimes composes emails at one location, pastes the content remotely into a mail program at another location, and sends from the other location remotely. Paul Wagner often connects remotely from a dynamic IP address (e.g., while using a wireless PC card [EV-DO] on a laptop), which is not tied to a fixed geographical origin. Plaintiff often stays logged in for days at a time. Many log files are automatically overwritten in a matter of months.

Similarly, it is not possible to accurately determine what tasks Paul Wagner was performing doing every minute of every hour since 2000. See Answer to No. 12, above.

It is therefore not practical or possible to determine the physical location of Paul Wagner while he was working on BSI business during every minute since 2000, unless certified video or other biometric recordings of him (such as tapes of Mr. Wagner's depositions) and/or his computer screens are available.

Without waiving these objections, BSI states:

BSI provides interactive computer services at the Silver Spring, MD location 24 hours a day, 7 days a week. The equipment at that location is constantly monitored and maintained locally or from other locations. BSI does not have figures on the hours of physical presence at the Silver Spring location.

21

Discovery is ongoing.  Plaintiff expressly reserves the right to supplement this Response should additional information become available.

## INTERROGATORY 15:

For each month during the time period from January 1, 2007 to present, Identify with Specificity the number of hours per month that Paul Wagner spent working on BSI business while Physically Present at 38 Maryland Avenue, Unit 333, Rockville, Maryland 20850.

### BSI'S RESPONSE TO 15:

BSI objects that the interrogatory is overbroad.  Plaintiff objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties. Plaintiff objects that this Interrogatory duplicates prior interrogatories.  BSI objects to the extent that Paul Wagner, individually, is not a party to this action.

Plaintiff further objects to the extent that Defendant seeks to obtain or have Plaintiff attempt to parse server logs, which contain dense intermingled transactions and personal identifying information of clients.  The Court has ruled multiple times that neither Party must produce some or all of its server logs. Plaintiff objects to the extent that Defendants seek to reopen this issue.

Objection:   See Answer to No. 14, above     Without waiving these objections, BSI states:

BSI provides interactive computer services at the Silver Spring, MD location 24 hours a day, 7 days a week.  The equipment at that location is constantly monitored and maintained locally or from other locations.  BSI does not have figures on the hours of physical presence at the Rockville location.

Discovery is ongoing.  Plaintiff expressly reserves the right to supplement this Response should additional information become available.

## INTERROGATORY 17:

For each month during the time period from January 1, 2000 to present, Identify with Specificity the number of hours per month that Paul Wagner spent working on BSI business while Physically Present at 1837 R Street, N.W., Washington, D.C.

**BSI'S RESPONSE TO INTERROGATORY 17:**

BSI objects that the interrogatory is overbroad, and the time frame is unreasonably long.  Plaintiff objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties. Plaintiff objects that this Interrogatory duplicates prior interrogatories. BSI objects to the extent that Paul Wagner, individually, is not a party to this action.

Plaintiff further objects to the extent that Defendant seeks to obtain or have Plaintiff attempt to parse server logs, which contain dense intermingled transactions and personal identifying information of clients.  The Court has ruled multiple times that neither Party must produce some or all of its server logs. Plaintiff objects to the extent that Defendants seek to reopen this issue.

Objection:   See Answer to No. 14, above      Without waiving these objections, BSI states:

BSI provides interactive computer services at the D.C. location 24 hours a day, 7 days a week.  The equipment at that location is constantly monitored and maintained locally and from other locations.  BSI does not have figures on the hours of physical presence at the D.C. location.

Discovery is ongoing.  Plaintiff expressly reserves the right to supplement this Response should additional information become available.


These interrogatories are a prime example of the fishing expedition that

HOLDINGS and Defendants are foisting on this Court.  The Interrogatories are absurd,

abusive, and cannot be answered with any specificity.  Even attempting to roughly

estimate where and what BSI staff might have been during every hour since 2000 would

require wild and unverifiable speculation.  BSI has fully responded to the Interrogatory,

and HOLDINGS cannot point to any information that would indicate otherwise.  BSI

maintains no time clock or log of foot traffic.  Plaintiff cannot say where it was and what

its personnel were doing 1,000 hours ago, or 80,000 hours ago.  Plaintiff has certified its

responses about the information in its possession, custody, or control.

HOLDINGS provides no clue as to what records might possibly divulge the

whereabouts of Paul Wagner and other BSI employees or contractors every hour since

2000.  Plaintiff agrees that the Court has allowed inquiry into financial records since

2000.  Unfortunately, Plaintiff has no records or recollection of its minute-by-minute

activities and whereabouts since 2000.  Plaintiff does not know the answer to this

Interrogatory beyond its current response.

     **E.**     **BSI's Responses to Interrogatories 23-24.**

HOLDINGS Interrogatories 23-24, as well as BSI's Responses are as follows.

**INTERROGATORY 23:**

Identify with Specificity, for each month from January 1, 2000 to date, the
instances on which BSI/Paul Wagner has remotely accessed a Hypertouch or BSI
Server located in Maryland from Computer Equipment physically located outside
the State of Maryland where the BSI computer operator was Physically Present
outside the State of Maryland.

     **BSI's RESPONSE TO INTERROGATORY 23:**

     BSI objects that the interrogatory is overbroad.  Plaintiff objects to the extent this
inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544
and as agreed by the Parties.  Plaintiff objects that this Interrogatory duplicates
prior interrogatories.  Plaintiff further objects to the extent that Defendant seeks to
obtain or have Plaintiff attempt to parse server logs, which contain dense
intermingled transactions and personal identifying information of clients.  The
Court has ruled multiple times that neither Party must produce some or all of its
server logs.  Plaintiff objects to the extent that Defendants seek to reopen this
issue. Without waiving these objections, BSI states:

        See Answer to No. 14, above.  Plaintiff further states that it often remotely
accesses a series of computers at one time, often through different remote access

programs. Plaintiff often stays logged in for days at a time.  Many log files are automatically overwritten in a matter of months.  Plaintiff does not have minute-by-minute records of its activities between login events.  It is impossible to provide an accurate answer to this question.

Discovery is ongoing.  Plaintiff expressly reserves the right to supplement this Response should additional information become available.

**INTERROGATORY 24:**

For each instance identified in your Answer to Interrogatory 23, Identify with Specificity the Computer Equipment that BSI/Paul Wagner remotely accessed, the Location of the Computer Equipment, and the Location from which BSI/Paul Wagner remotely accessed the Computer Equipment.

**ANSWER 24:**  BSI objects that the interrogatory is overbroad.  Plaintiff objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties. Plaintiff objects that this Interrogatory duplicates prior interrogatories.  Plaintiff further objects to the extent that Defendant seeks to obtain or have Plaintiff attempt to parse server logs, which contain dense intermingled transactions and personal identifying information of clients.  The Court has ruled multiple times that neither Party must produce some or all of its server logs.  Plaintiff objects to the extent that Defendant seek to reopen this issue. Without waiving these objections, BSI states:

Plaintiff hereby incorporates its full answer to Interrogatory No. 23 by reference.

Discovery is ongoing.  Plaintiff expressly reserves the right to supplement this Response should additional information become available.

These interrogatories are also a prime example of the fishing expedition that

HOLDINGS and Defendants are foisting on this Court.  The Interrogatories are absurd,

abusive, and cannot be answered with any specificity.  Even attempting to roughly

estimate minute-by-minute when BSI staff were actively or otherwise accessing a BSI or

Hypertouch server remotely, "from Computer Equipment physically located outside the

State of Maryland where the BSI computer operator was Physically Present outside the

State of Maryland," continually since 2000 would require wild and unverifiable speculation. BSI has fully responded to the Interrogatory, and HOLDINGS cannot point to any information that would indicate otherwise.

Like Interrogatories 14-15 and 17, these Interrogatories request that Plaintiff conjure a recollection of the activities and physical location of its personnel minute-by-minute since 2000, where no such records were kept.

Like Interrogatories 14-15 and 17, these Interrogatories request that BSI determine, years after the fact, the physical location of each BSI computer operator as well as any of their remote access activity.  It is therefore nonsensical for HOLDINGS to object.  "First, BSI referred back to its Answer to Interrogatory 14, which is non-responsive because Interrogatory 14 has nothing to do with remote access."  Plaintiff incorporates by reference its objections to WAH's MTC for Interrogatories 14-15 and 17.

Yet WAH gives no clue what sort of records might possibly divulge such information, or the whereabouts of Paul Wagner and other BSI employees or contractors continually since 2000.  Unfortunately, Plaintiff has no records or recollection of its minute-by-minute activities and whereabouts since 2000.  Plaintiff does not know the answer to this Interrogatory beyond its current response.

### F.      BSI's Responses to Interrogatory 25.

HOLDINGS Interrogatory 25 and BSI's Response are as follows.

**INTERROGATORY 25:**

Identify with Specificity, for each month, the name and Location of each
Customer of BSI/Paul Wagner that was a Customer from January 1, 2000 to date.

**BSI RESPONSE TO INTERROGATORY 25:**

BSI objects that the interrogatory is overbroad and vague.  Plaintiff objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties. Plaintiff objects that this Interrogatory duplicates prior interrogatories.   Plaintiff further objects to the extent that Defendant seeks to obtain or have Plaintiff attempt to parse server logs, which contain dense intermingled transactions and personal identifying information of clients.  The Court has ruled multiple times that neither Party must produce some or all of its server logs.  Plaintiff objects to the extent that Defendants seek to reopen this issue. Without waiving these objections, BSI states:

Plaintiff objects to the term "Customer," as neither MD-CEMA nor FL-CEMA use that term.  Wagner further objects to the limited definition of "Customer," and the absence of a complete source cite for the definition in the discovery requests.  The online Merriam Webster Dictionary includes a broader description than that quoted by Defendant:

1.      a person who buys a product or uses a service from a business. Synonyms account, client, guest, patron, punter [chiefly British] Related Words consumer, end user, user; buyer, correspondent, purchaser, vendee; browser, prospect, shopper, window-shopper; bargainer, haggler; regular . . . http://www.merriam-webster.com/thesaurus/customer , last visited March 31, 2011.

The following persons have paid BSI for interactive computer services since 2000:

| | | |
|---|---|---|
| Abby Livingston | DC | 1/2010 to present |
| Alexander Feshenko/East Republic | DC & MD | 2/2007 to present |
| Barcroft HPV, Inc. | Arlington, VA | 1999 to 8/2008 |
| Benedicte Aubrun | DC | 4/2010 to 5/2010 |
| Bonifacio Yap | DC | Spring 2010 to present |
| Boxorox | unknown | 2/2000 to 6/2000 |
| Brandon Frazier | DC | 4/2010 to 9/2010 |
| David Darbouze | DC | 4/2010 to present |
| Diane Wagner | SS/Rockville, MD | 1/2002 to present |
| Editorial Perspectives | | 2/2007 to present |
| Eric Gaidos | DC | 9/2010 to 10/2010 |
| Fanny Momboisse | DC | 4/2010 to 1/2011 |
| Futrek Corporation | Silver Spring, MD | 1999 to 7/2002 |
| Keivan Khalichi | Alexandria, VA | 3/2006 to present |
| Mark Matarella | has lived in MD and VA | 1999 to 7/2000 |
| Motorola | Schaumberg, IL | 1999 to 4/2000 |

| | | |
|---|---|---|
| SELCO | Bethesda, MD | 1999 to 2/2001 |
| Sports & Spinal Physical Therapy | DC | 11/2006 to 12/2007 |
| Stephen H. Ring, P.C. | Germantown/Gaithersburg, MD | 3/2006 to 12/09 |
| Vision Online | Herndon, VA | 4/2008 to present |
| William Wagner | SS/Rockville, MD | 1/2002 to present |
| Young Woman's Christian Home | DC | 10/2001 to present |

Many of these persons, and at least hundreds of others, have received free interactive computer services from BSI outside these date ranges. Plaintiff often does not know they cease using BSI's services, if ever.

Discovery is ongoing.  Plaintiff expressly reserves the right to supplement this Response should additional information become available.

HOLDINGS only grievance with this Interrogatory appears to be that it believes that "BSI should provide the address and Location of these so-called Customers." HOLDINGS says it requires the information "to serve with process for purposes of trial and discovery."  As with the previous Interrogatories, HOLDINGS did not give BSI a meaningful opportunity to address this concern.

WAH's Interrogatories contained this definition:

21.    Location: Location means the property type (such as an office building or single family home), property owner(s) and/or renter(s), postal address, city, state, zip code and the specific area within the Location (such as an office space, bedroom, data center, garage, etc).

The reality is that BSI does not maintain records of physical addresses, particularly current physical addresses of most, if not all its paying clients.  BSI normally communicates with its paying clients electronically or in person.

The physical addresses of BSI's paying clients are available to BSI and to HOLDINGS in most cases through public sources.  Indeed, HOLDINGS has already

compiled an extensive list of Plaintiff's clients and Paul and/or Joe Wagner's family

members.  These addresses appear in its Preliminary Witness List for the August mini

trial.  Plaintiff refers HOLDINGS to its own Witness List.  A few missing street

addresses can be found on BSI's Preliminary Witness List.  Plaintiff does not know the

Location for the following Customers:

> Benedicte Aubrun
> Boxorox
> Editorial Perspectives
> Futrek Corporation
> Mark Matarella

As has become fairly typical, HOLDINGS resorts to the use of unsupported and

untrue assertions in reaching its conclusion that multiple BSI "answers were to every

appearance flat out lies made under oath."

Plaintiff objects to HOLDINGS inaccurate statement that "For the foregoing

reasons, BEYOND SYSTEMS, INC. should be compelled to provide complete and non-

evasive Answers to Interrogatories 1-2, 8-10, 14-15, 17, and 23-25, and should be

sanctioned."

## <u>CONCLUSION</u>

For all these reasons, Defendant World Avenue Holdings, LLC's Motion to

Compel Complete Answers to Interrogatories From BSI should be denied.

Respectfully submitted :


_____/s/_____          _____05/05/11_____
Michael S. Rothman, Esq.                              Date

USDC MD Bar No. 14568
401 E. Jefferson Street
Suite 201
Rockville, MD 20850
Phone: (301) 251-9660
Fax: (301) 251-9610


/s/ _____                            _____ 05/07/11 _____
Stephen H. Ring, Esq.                                                    Date
Stephen H. Ring, P.C.
USDC MD Bar No. 00405
506 Main Street, Suite 215
Gaithersburg, MD 20878
Phone: (301) 540-8181

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on this 5th day of May 2011, a copy of the foregoing

Reply was served upon the counsel named below via electronic mail :

Sanford M. Saunders, Jr., Esq.
USDC, MD #4734
GREENBERG TRAURIG, LLP
2101 L Street, NW
Suite 1000
Washington, DC 20037
202-331-3100
202-331-3101

John L McManus, Esq.
Greenberg Traurig PA
401 E Las Olas Blvd Ste 2000
Fort Lauderdale , FL 33301
19547688291
Fax: 19547651477
Email: mcmanusj@gtlaw.com
PRO HAC VICE
ATTORNEY TO BE NOTICED

Kenneth A Horky
Greenberg Traurig PA
401 E Las Olas Blvd Ste 2000
Fort Lauderdale , FL 33301
19547688273
Fax: 19547651477
Email: horkyk@gtlaw.com
PRO HAC VICE
ATTORNEY TO BE NOTICED

Nicoleta Burlacu
Greenberg Traurig LLP
2101 L Str NW Ste 1000
Washington , DC 20037

Attorney[s] for World Avenue USA, LLC

_____/s/_____
Michael S. Rothman

**<u>EXHIBIT LIST</u>**


A-1     Excerpts from 11/30/10 Transcript (PJM)

A-2     April 18, 2011 Letter from Sandy Saunders to Stephen Ring.

A-3     Excerpts from 03/24/11 Transcript (CBD)