IN THE U.S. DISTRICT COURT FOR MARYLAND,
SOUTHERN DIVISION

BEYOND SYSTEMS, INC.            )
                                )
    Plaintiff               )
    v.                      )   Case No. PJM 08 cv 0921
                                )
WORLD AVENUE USA, LLC, et al.   )
    Defendants              )
_____)

### DEFENDANT WORLD AVENUE HOLDINGS, LLC'S REPLY IN SUPPORT OF MOTION TO COMPEL COMPLETE ANSWERS TO INTERROGATORIES FROM PLAINTIFF BEYOND SYSTEMS, INC. RELATING TO THE AUGUST TRIAL

Defendant WORLD AVENUE HOLDINGS, LLC ("Holdings"), hereby submits its Reply in Support of its Motion to Compel Complete Answers to Interrogatories Relating To August Trial from Plaintiff, BEYOND SYSTEMS, INC. ("BSI"), and states:

**I.** **Holdings Complied With the Local Rules, The Court's Orders, and the Joint Discovery Schedule, And, After Almost A Month Of Effort, BSI Still Won't Supplement Its Answers.**

BSI dedicates the bulk of the first 7 pages of its Opposition to arguing that Holdings failed to conduct a meet-and-confer on its Motion. BSI is incorrect. As per the Parties' Joint Discovery Schedule, as amended, at DE 571, 592, 613, and 636, the Parties were to conduct a Limited Discovery Conference on April 15th to discuss once and for all every disputed discovery issue relating to the August Trial.[1] On April 15th, the parties held a one and one-half hour call wherein Holding's counsel raised the issue of the deficiency of BSI's interrogatory responses.

---

[1] In BSI's Notice and Partial Certification of Issues For Immediate Court Attention [DE 647- filed April 23, 2011], BSI requested a lengthy extension of time to meet-and-confer. WAUSA opposed the request for extension the next business day at DE 649. The Court denied the requested extension of time at DE 656 for the reasons stated in the opposition. *See* DE 656-filed May 2, 2011.

On April 18th, BSI was provided a letter summarizing the deficiencies.[2] On April 22nd, BSI was provided a stipulation summarizing the deficiencies. Numerous conferences were held, including a 2 hour in-person meeting on May 10th and a 2 ½ hour call on May 11th. *See* Holdings' Amended Local Rule 104 Certification, filed herewith. Despite nearly a month of effort, BSI has still failed to withdraw its General Objections and has not agreed to amend, supplement, or re-visit even a single Interrogatory Answer. BSI's argument should be summarily rejected as a smokescreen.

## II. BSI Failed To Defend Its General Objections And They Should Be Summarily Overruled.

BSI lodged 3 1/2 pages of General Objections to Holdings' Interrogatories. *See* Memorandum of Points and Authorities ("Memorandum"), Exhibit ("Ex.") 3, pp. 1-4. Holdings addressed them comprehensively at Pages 2-4 of its Memorandum of Law. BSI completely failed to defend its General Objections in its Opposition, and as such, they should be overruled.

## III. BSI's Answers to Interrogatories 1-2 Are Still Deficient

BSI states that it should not have to answer Interrogatories 1 and 2 because it answered a *different* question from Co-Defendant World Avenue USA, LLC ("WAUSA"). *First*, the questions are not the same. The different question[3] asked about the *Servers* associated with all *Internet Protocol Addresses* ("IP Addresses) used by BSI. *This* question asked the *Location* and *dates of commencement* where BSI is currently storing or housing *Computer Equipment*, and the

---

[2] BSI states that the April 18th letter could not have addressed the deficiencies in BSI's Interrogatories Answers because all of the correspondence cited in the April 18th letter pre-date BSI's Answers to Holdings' Interrogatories. The Court should not be misled. The April 18th letter addressed BSI's non-compliance with discovery Orders entered in 2010 and other discovery issues, as well as the recent discovery answers. *See* Ex. 1 (excerpted copy of April 18th letter).

[3] Interrogatory 13 from WAUSA stated: "For each IP Address, identify the servers and physical location of all servers associated (primary or secondary) with each IP Address."

description of that Computer Equipment. Holdings defined Computer Equipment differently than WAUSA defined Servers in Interrogatory 13. Interrogatory 13 did not ask for the dates of commencement. Interrogatory 13 did not ask detailed information about the Location -- which Holdings specifically defined.

*Second*, the definitions are not the same. BSI claims it already answered the question for WAUSA on the twisted logic that although WAUSA specifically defined "Server" in Interrogatory 13, the word "Computer" in the definition of "Server" was not defined. Seven (7) months after BSI last answered Interrogatory 13, BSI supplies a new definition to explain what it really meant to answer in Interrogatory 13. *See* Opposition, p. 9 (*quoting* Answer to Interrogatory 2: "Computer to mean 'one that computes.'"). Having re-defined what it says it meant seven (7) months earlier, BSI then leaps to the conclusion that "Computer Equipment" in Interrogatories 1-2 is the same as "Server" in Interrogatory 13. In its semantic gymnastics to avoid having to answer Interrogatories 1 and 2, BSI ignores (i) the two different definitions of Computer Equipment and Servers; and (ii) the fact the "Computer" used in the definition of "Server" in Interrogatory 13 is not "one that computes" but a "Compute[r] dedicated to providing one or more services over a computer network."

*Third*, BSI did not answer with the information Holdings is looking for in Interrogatories 1-2. BSI implicitly admits this by claiming that the details questioned in Interrogatories 1 and 2 that are different than Interrogatory 13 are "harassment." Opposition, p. 14. BSI states that WAUSA knows that the Computer Equipment is located within Paul Wagner's parent homes in Maryland and Paul Wagner's Washington, D.C. residence (*see* Opposition, p. 15), but BSI's Answer to Interrogatory 13 identifies multiple cities in California. Memorandum, Ex. 7, p. 5 [p. 30 of Answers]. Interrogatory Answer 13 provides cities, but no addresses -- let alone

description of the owner of the Location and the place of the Computer Equipment in each residence. It provides partial IP Addresses (the full IP Address is concealed by a "*"), but no description of the Computer Equipment.[4] The jury is entitled to know whether BSI is and was parking Computer Equipment in its family and friends' garages or storage rooms -- as that inquiry is pertinent to the purpose of BSI's existence.

*Fourth*, BSI's Answer to Interrogatory 13 was false. BSI's Answer in September 2010 failed to disclose the move of the Servers to the current California location. Although BSI admits that its Answer to Interrogatory 13 was wrong (while simultaneously advocating that the Court should accept the wrong answer as the Answer to Interrogatories 1-2), it asserts -- without an affidavit -- that it had "no idea that Hypertouch had added a new location, and new IP addresses" and it was not "obligated to locate and report such IP addresses not in its possession, custody, or control." Opposition, p. 13. Both assertions are wrong.

BSI had actual knowledge of the new IP addresses in three ways. *First*, BSI's knowledge is shown through the changes in the IP Addresses mapped to some of the Domain Name Servers ("DNS") for the hypertouch.com domain name allegedly owned by BSI. *See* Composite ("Comp.") Ex. 2. Specifically, at some point between June 1, 2010 and July 30, 2010, the IP Addresses associated with some of the DNS servers for hypertouch.com were changed at the registrar of record for that domain. BSI claims to own hypertouch.com. Hypertouch.com is linked with 98% of the E-Mails At Issue. BSI is representing to the Court that: (i) it did not change its own domain; and (ii) it did not know its own domain was changed. *See* Comp. Ex. 2.

---

[4] BSI represents that it has no "information beyond what was provided." Opposition, p. 15. This is false. First, BSI did not answer Interrogatories 1-2 to start with. It didn't "provid[e]" anything. Second, Interrogatory 13 did not identify any Computer Equipment whatsoever -- only software, city names, and truncated IP Addresses.

*Second*, BSI's knowledge is shown by the edits to the Zone File for hypertouch.com that was made to update the new IP Addresses with the associated DNS server host names. *See* Comp. Ex. 2. A Zone File is a text file that contains information that defines mappings between domain names and IP Addresses. The Zone File for hypertouch.com was changed to reflect new IP Addresses associated with the DNS Servers. *See id.*

Third, BSI's knowledge is shown by the edits to the Zone Files for two other DNS Servers that are associated with a domain owned by BSI, namely, linkcenter.net. *Id.* During the same period, the DNS Servers associated with this domain also changed, reflecting BSI's knowledge that the IP Addresses had changed. *Id.*

Likewise, BSI's assertion that the IP Addresses that it used to host its own domains were "not in its possession, custody, or control" is without merit given BSI's long-standing relationship of sharing information about IP Addresses with Hypertouch, as well as its access to Hypertouch Servers. *See* Composite Exhibit 3 (CONFIDENTIAL-BSI-JiCos-019642 & BSI-JiCos-019685 [█████████████████████████████████████████████] and CONFIDENTIAL-HYP-WAUSA-0019611-0019612 [████████████████████████████]).

Given that Interrogatories 1-2 are relevant, not duplicative, and Interrogatory 13 is false, BSI's objections to Interrogatories 1-2 should be overruled and a full answer required.

### IV. BSI's Answer to Interrogatory 8 Is Deficient

BSI's defense of its objections to Interrogatory 8 is contradictory. On one hand, BSI claims that it has provided all information in its possession, custody, and control. Opposition, p. 16. On the other, it claims that Holdings is looking for a data dump. *Id.* The fact is that BSI has simply *not* answered the question at all.

Holdings asked BSI to identify BSI's Privileges[5] to access Hypertouch's Computer Equipment -- which is relevant to the relationship between BSI and Hypertouch. BSI responded by referring to "Console Level Access," "Client Level Access," and "Physical Access." The Answer is insufficient. *First*, each of these terms are vague and undefined. Not even BSI/Hypertouch's own server software, CommunigatePro, uses these vague and undefined terms, but instead refers to other privileges. *See* Comp. Ex. 4 (Excerpted CommunigatePro Server Software Manual).

*Second*, to the extent that the terms can be understood, they only define that a computer system *can* be accessed, but not the *level* of that access. For example, BSI tries to supply the substance missing in its Interrogatory by stating that "Console Level Access" means that "BSI has access to the console of the designated Hypertouch machines via remote access software." Opposition, p. 17. The Interrogatory asked BSI to identify the level of access for it. *See* fn. 6, *supra*. For example, BSI may have administrative privileges (able to install software), printing privileges, access to only specified application, or other privileges. As a simple example, on the Apple Mac computer, a user account can be limited to having only certain rights or Privileges. *See* Figure 1 below.

---

[5] Holdings defined "Permissions" or "Privileges" as "the authorization and type of access given to any Person that enables that Person to access specific resources on a computer or computer network, such as data files, applications and Computer Equipment." *See* Ex. 2, p. 9, ¶ 22.



"Client Level Access" seems to suggest that a user can connect to a computer as a client (the computer runs a server). However, the level of access depends on the type of server and account on the server. For example, under BSI/Hypertouch's CommunigatePro software, the CommunigatePro user may be able to do anything from only accessing their own account to managing the entire server and creating new accounts. *See* Comp. Ex. 4.

Because BSI has not answered the Interrogatory at all, and the jury is entitled to examine

the level of access that BSI has to Hypertouch's machines, BSI should be compelled to provide a complete answer.

## V. BSI's Answer to Interrogatory 10 Remains Evasive.

BSI fails to address the fundamental flaw with its Answer to Interrogatory 10. Holdings asked for the payments by BSI/Paul Wagner to Hypertouch/Joseph Wagner -- which is relevant to the relationship between the two companies. However, BSI limited its response to those payments that were "related to the *operations* of BSI or Hypertouch." (emphasis added). The Interrogatory was not limited to "operations of BSI or Hypertouch." Instead, the Interrogatory asked for *all* payments.

BSI's remaining arguments also fail. *First*, BSI claims it has no further responsive information, but its representation is qualified by the way it has re-phrased the question: BSI has limited its response to payments related to the "operations of BSI or Hypertouch," and excluded other payments. *Second*, BSI claims that Holdings did not ask for the Specificity it now demands. Opposition, p. 19. The Interrogatory could not be clearer, and called on BSI to "Identify" "with Specificity, the reason(s) for such payments." BSI's three to five word descriptions miss the mark. Third, BSI fails to defend its objection that this Interrogatory duplicates prior interrogatories -- it refers to a response somewhere -- leaving the identity of that Answer a mystery. Thus, BSI should be compelled to give a complete answer.

## VI. BSI's Answers To Interrogatories 14-15 And 17 Remain Insufficient.[6]

The first trial issue is whether BSI is a resident of Maryland. Interrogatories 14-15 and 17 seek to get at the place where BSI and its sole employee and owner do their primary

---

[6] BSI makes no effort to defend the barrage of objections it lodged to these Interrogatories, and thus, such objections should be overruled.

activities. BSI claims it cannot recall where its employee(s) worked unless there is a "certified video or other biometric recordings" (*see* Opposition, p. 21), or it parses the contents of server logs. *Id.* Yet, this has not stopped BSI from submitting vague Declarations summarizing his time worked in Maryland, and inviting Defendants to make him quantify the time he spent there. *See* Memorandum, Ex. 12 (DE 344-3-filed 7/17/10).

It is time for a straight answer to the question: ***where do BSI's employees go to work every day?*** It is a simple question, and BSI doesn't need any "biometric recordings" to tell it the answer.

BSI's "Answer" is a non-answer. BSI answered that its computers were turned on around the clock, and that "BSI does not have figures on the hours of physical presence at" each location. Opposition, p. 24-2. This is exactly what Holdings instructed was unacceptable.[7] BSI should answer each Interrogatory in full, or alternatively, the Court should preclude BSI from introducing any evidence at trial on the issue, except that BSI tries to have its computers on around the clock.

## VII.   BSI's Answers to Interrogatories 23-24 Are Deficient

Interrogatories 23-24 seek to show that BSI is not a resident of Maryland by showing that BSI uses remote access software such as Timbuktu, Secure Shell (SSH), VNC (Virtual Network Computing) to access, control, and administer Servers parked at Paul Wagner's parent's homes in Maryland. *See* Memorandum, Ex. 15 (excerpted Declaration of Neal A. Krawetz, ¶¶ 26-31); Ex. 16 (Excerpted Declaration of Paul A. Wagner dated December 3, 2009, p. 3, ¶ 11). Consistent with its inability to identify the physical place where its employees work absent

---

[7] The definition of Physically Present means a "living, breathing Person is physically and actually located at a particular place or Location, rather than present virtually, or through virtual or other agents, daemons, or other virtual presence." *See* Memorandum, Ex. 2, p. 9, ¶ 24.

"certified videos or biometric recordings" (*see* Interrogatory Answers 14-15, and 17), BSI claims to be unable to say when it remotely accessed computers in Maryland where it was Physically Present outside of Maryland. BSI refers to the difficulty of identifying the physical location of its "personnel" -- as though the answer would involve anyone other than BSI's President, owner, and sole employee, Paul Wagner. Finally, BSI claims that the answer would be found on server logs; however the Court has never ruled whether server logs should be produced for purposes of remote access. Thus, BSI should be compelled to provide a complete answer.

### VIII. BSI's Answer to Interrogatory 25 Is Deficient.

BSI's excuses for not providing full contact information for the so-called customers identified in Interrogatory Answer 25 are meritless. First, it is no excuse that these customers might be ascertained somewhere in public records. *Convolve, Inc. v. Compaq Computer Corp.*, 643 F. Supp.2d 336, 341 (S.D.N.Y. 2008) (party had obligation to produce documents within its control although such documents were now injected into the public domain); *Davidson v. Goord*, 215 F.R.D. 73, 77 (W.D.N.Y. 2003) ("A requested party may not refuse to respond to a requesting party's discovery request on the ground that the requested information is in the possession of the requesting party"). BSI itself says it cannot find 5 of them. Opposition, p. 29. Second, it is no excuse that Holdings has listed some so-called customers on *its* Preliminary Witness List -- Holdings is entitled to the answer with the correct address from BSI. Third, and perhaps most insulting, is the intimation that "[a] few missing street addresses can be found on BSI's Preliminary Witness List." Opposition, p. 29. BSI's Preliminary Witness List, in violation of the Joint Discovery Schedule reached by the parties at DE 571, 592, 613, and 636, doesn't list the addresses of the witnesses, but lists Paul Wagner's home address for 32 separate individuals. *See* Exhibit 5 (excerpt of BSI's Preliminary Witness List).

For the foregoing reasons, BSI should be compelled to provide complete and non-evasive Answers to Interrogatories 1-2, 8-10, 14-15, 17, and 23-25, and should be sanctioned.

Dated: May 12, 2011.

>Respectfully submitted,
>
>*Attorneys for World Avenue USA, LLC*
>
>GREENBERG TRAURIG, LLP
>
>   /s/
>   _____
>Sanford M. Saunders, Jr., Esq.
>USDC, MD #4734
>saunderss@gtlaw.com
>Nicoleta Burlacu, Esq.
>BurlacuN@gtlaw.com
>*Admitted Pro Hac Vice*
>GREENBERG TRAURIG, LLP
>2101 L Street, NW, Suite 1000
>Washington, DC 20037
>Telephone:  202-331-3100
>Facsimile:  202-331-3101
>
>--and--
>
>Kenneth Horky, Esq.
>Florida Bar No. 691194
>horkyk@gtlaw.com
>John L. McManus, Esq.
>Florida Bar No. 0119423
>mcmanusj@gtlaw.com
>*Admitted Pro Hac Vice*
>GREENBERG TRAURIG, LLP
>401 East Las Olas Boulevard, Suite 2000
>Fort Lauderdale, FL 33301
>Telephone: 954-765-0500
>Facsimile:  954-765-1477