IN THE U.S. DISTRICT COURT FOR MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| BEYOND SYSTEMS, INC. | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| -vs- | * | Case No. 8:08-cv-00921-PJM |
| | * | |
| WORLD AVENUE U.S.A., LLC et al | * | |
| | * | |
| Defendants. | * | |
| | * | |

**PLAINTIFF BEYOND SYSTEMS, INC AND THIRD PARTY DEFENDANT
HYPERTOUCH, INC.'S OPPOSITION IN RESPONSE TO DEFENDANT
WORLD AVENUE USA, LLC'S MOTION FOR ORDER TO SHOW CAUSE AS
TO THE AUGUST TRIAL DISCOVERY**

Plaintiff BEYOND SYSTEMS, INC. ("BSI"), by and through undersigned counsel, hereby submits its Opposition in Response to Defendant WORLD AVENUE USA, LLC's ("WAUSA") Expedited Motion for Order to Show Cause as to August Trial Discovery.  To the extent that it is necessary, Third Party Defendant HYPERTOUCH, INC. ("HYPERTOUCH"), joins the present Opposition and, on its behalf, states as follows :

**I.      INTRODUCTION**

WAUSA's Motion to Show Cause as to the August Trial Discovery is the latest bombardment of paper attacking Plaintiff and Third Party Defendant for the Parties' alleged failure to abide by the Court's prior orders.  While Defendant WAUSA cites 28

1

USC § 626 as the source of the Court's contempt power,[1] no such section exists in the United States Code. Instead, for the purposes of clarity (and eliminating another round of needless filings) Plaintiff will assume that Defendant meant to refer to 28 U.S.C. § 636(e). Regardless, under any standard, there are no grounds for the certification of civil contempt to the District Court, and Defendant's Motion should be denied.

In its Motion, Defendant WAUSA portrays BSI's and HYPERTOUCH's responses and supplemental responses as deliberately recalcitrant, evasive, and non-responsive. In reality, however, Defendant's rush to file a Show Cause Order generated a great deal of the confusion. In fact, three of Defendant's four areas of concern are now moot as a result of the Parties' discovery conferences and subsequent supplementation. In hindsight, Plaintiff's responses were accurate, timely, and forthright. The present Motion is nothing more than a harassing fishing expedition meant to sap Plaintiff's resources.

Ultimately, there is no amount of discovery responses that will ever satisfy Defendant's insatiable demand for information – whether relevant or not. Thus, Defendant's Motion for a Show Cause Order from BSI should be denied for the following reasons :

First, BSI and HYPERTOUCH have fully responded to three (3) of the four (4) areas of concern raised by the Defendant in the present motion. Defendant asks this Court to disregard the factual realities of what transpired between the parties during the course of discovery, and to grant itself the benefit of 20/20 hindsight to sanction Plaintiff

---

[1] *See* WAUSA Expedited Motion at p. 1.

and Third Party Defendant for its actions in this case. However, Defendant deliberately omits from the record the discovery supplementation that occurred between the parties once the Parties started the "meet-and-confer" process described under the Federal Rules, the Local Rules, and the August Trial Scheduling Order. As discussed more fully below, Plaintiff has worked diligently to address Defendants' continuing and incessant demands for documents (relevant or not), while carefully guarding its own privileges against disclosure. Defendant already has the answers it seeks from BSI through both the discovery it received during the original Scheduling Order in this case, from the *Kraft Foods* case that echoes the present case. For all these reasons, Defendant's motion should be denied.

## II. LEGAL STANDARD

The purpose of civil contempt is "to coerce obedience to a court order or to compensate the complainant for losses sustained as a result of the contumacy." *In re General Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995) (citing *Connolly v. J.T. Ventures,* 851 F.2d 930, 932 (7th Cir. 1988). Those losses include all losses "germinating from [the] misconduct." *Id*. at 259. A finding of civil contempt requires a showing, by clear and convincing evidence, of : (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) that the decree was in the movant's "favor"; (3) that the alleged contemnor by its conduct violated the terms of the decree, and had at least constructive knowledge of such violations; and (4) that the movant suffered harm as a result. *See e.g..*, *Ashcroft v. Conoco, Inc.,* 218 F.3d 288, 301 (4th Cir. 2000). Willfulness is not an element of civil contempt. *General

*Motors,* 61 F.3d at 258.

"Civil contempt is an appropriate sanction if we can point to an order of this Court which 'set[s] forth in specific detail an unequivocal command' which a party has violated." *Id.* (citing *Project B.A.S.I.C. v. Kemp,* 947 F.2d 11, 16 (1st Cir. 1991) ("[C]ivil contempt will lie only if the putative contemnor has violated an order that is clear and unambiguous.")). Once civil contempt is found, the only remaining issue is one of remedy. The appropriate remedy for civil contempt is within the court's broad discretion. *General Motors*, 61 F.3d at 259. District Courts are specifically granted great deference when civil contempt concerns a violation of the District Court's own order. *See JTH Tax, Inc. v. H&R Block Eastern Tax Serv., Inc.*, 359 F.3d 699, 704 (4th Cir. 2004) ("When a district court's decision is based on an interpretation of its own order, our review is even more deferential because district courts are in the best position to interpret their own orders.").

### III.  ARGUMENT

**A.  Paul Wagner's "Hybrid" Expert Report**

This item is now moot due to the Court's Order of May 10, 2011. *See* DE 660 (CBD Order), at p. 1-2. Defendant's Motion for Show Cause was actually filed before the Court's Order in time. *See* DE 653 & 653 (filed April 29, 2011). Defendant argues in that BSI has deliberately ignored the Court's February 16, 2011 rulings and failed to timely disclose its expert witnesses. *See* MSC, at ¶ 13 (p. 5). Neither the Court's Order at DE 660 nor the prior discussions between the parties, countenance such a position.

4

Magistrate Judge Day wrote :

To the extent that the Court required Paul Wagner's expected testimony to be limited to areas disclosed in writing under Local Rule 104.10, said requirement was erroneous. The Court has determined that Mr. Wagner should be allowed to testify as a hybrid fact expert. *Accordingly, Plaintiff correctly notes that prior to December 10, 2010, the Local Rules did not require the identification and/or summary of the facts and opinions to be offered by him.* The Court did correctly note that the ultimate decision as to the permitted scope of his expected testimony would be determined by the trial judge. The rulings by this Court regarding his expected testimony at the hearing of February 16, 2011 are still binding, however, his testimony cannot be limited solely to the areas discussed by the Court. *As there was no disclosure requirement, Mr. Wagner can still be offered as a hybrid fact expert on areas not specifically addressed at the hearing. This portion of Plaintiff's Motion is **GRANTED***.

*See* Exhibit A-1 (CBD Order at DE 660)(emphasis added).

Defendant was well aware of Plaintiff's position that BSI considered the matter resolved prior to the filing of the present motion. *See* A-2 (SHR Declaration/Summary of April 15 "Meet-and-Confer), at p. 4. In that document, Counsel for BSI noted that Defendant's only objection to Paul Wagner's Hybrid Expert Report was the references to reports by other experts at ¶ 83-85. *See Id.* However, no further explanations were forthcoming from Defendant, in writing or otherwise. Since that time, BSI has continued to maintain that the issue is now moot. In addition, Plaintiff has since argued in filings at DE 667 and 671 that the Court's order at DE 660 removes the need for any revision of the Wagner Hybrid Expert report. *See* DE 667 (BSI Opposition to Motion to Strike Wagner Expert Report) and DE 671 (Reply). As the Court subsequently clarified its

5

rulings from February 16th in its Order at DE 660, there is no order that Plaintiff could have consciously disobeyed.  This Matter is now moot

**B.     BSI and Hypertouch's Server Shell Game**

Defendant seeks an order of contempt against BSI for its allegedly false answers provided in its Supplemental Answers dated April 29, 2011.  *See* Def. MSC, at ¶ 26 (p. 8).  However, Defendant's imagined contempt is nothing more than the product of two independently run companies with different ownership and different technology assets.  Plaintiff BSI and Third Party Defendant HYPERTOUCH do not have the same assets, do not have unity of ownership, and certainly did not coordinate their responses to Defendant's discovery requests.

WAUSA's allegations that BSI and HYPERTOUCH colluded to offer deliberately misleading responses are baseless innuendo without a shred of proof to back it up.  The Motion states :

> Not only did [Hypertouch] move the Servers once it realized WAUSA had identified their original locations, but it refused on every manufactured pretext imaginable to answer discovery served long before the inspection deadline had passed and instead, only answered the question after the inspections had occurred.

*See* MSC, at ¶ 26 (p. 8-9).

Defendant WAUSA's Interrogatory No. 13, Set 1 propounded upon BSI requested the following :

> 13.    For each IP Address, identify the servers and physical location of all servers associated (primary or secondary) with each IP Address.

*See* Exhibit A-3 (WAUSA First Set of Interrogatories to BSI).

As part of its First Set of Interrogatories, Defendant suggested the following definitions :

> 14. IP Addresses. The "IP Addresses" shall mean one or more of the following Internet Protocol Addresses: 66.88.123.229, 66.93.97.100, 67.115.175.254, 68.120.0.0-68.127.255.255, (68.120.0.0/16), 68.127.102.0.1, 68.127.102.0-68.127.1 03.255 (68.127.1 02.0/23), 68.127.1 02.94, 69.33.19.128-69.33.19.192 (69.33.19.128/26),69.33.19.128.26, 71.126.162.32-71.126.162.47 (71.126.162.32/28), 71.126.162.32.1, 74.95.0.24 - 74.95.0.31 (74.95.0.24/29),75.16.30.104.1, 75.16.30.104-75.16.30.111 (75.i6.30.104/29), and any others used by Plaintiff.
>
> 19. Server/Servers. "Server" Of "Servers" shall mean all Computers dedicated to providing one or more services over a computer network, including but not limited to, Email services, Domain Name Resolution services (DNS services), Web Hosting services (storing and serving web pages), Internet Connectivity services, Database services, Data Backup services, Data Storage services, FTP services, NNTP services and E-commerce services.

*See* Exhibit A-3 (WAUSA First Set of Interrogatories to BSI).

Plaintiff's original and supplemental responses to the interrogatories reflects BSI's best knowledge, information, and belief regarding the location and identity of the servers, IP addresses and locations. WAUSA has no contrary information and can produce no evidence otherwise. As BSI and HYPERTOUCH are separate companies, Plaintiff was not required to have knowledge that HYPERTOUCH added a new location (and new IP addresses,) just 3 months prior to Plaintiff's supplemental answer (according to HOLDINGS). More importantly, BSI does not "use" those new IP addresses, nor was it obliged to locate and report such IP addresses among many others.

> When it is using the services of other Interactive Computer Service Providers ("ICSP's"), Plaintiff uses the IP Addresses that are dynamically

7

> assigned to it. When BSI accesses the services of other ICSP's, vendors, information portals and other Internet resources, including servers and other devices of Hypertouch, Verizon, Speakeasy, Megapath, Google.com, Yahoo! Mail, CNN.com and LinkedIn.com, it does not necessarily know what IP address it is using at any one time. These third parties' can change their IP addresses anytime without notice to BSI, and indeed is transparent to BSI and to their many other clients.

*See* Exhibit A-4 (BSI's Responses to HOLDINGS MTC).

As further proof that Defendant did not conduct its due diligence before filing the present Motion, Defendant must concede that it never propounded Interrogatories to Hypertouch requesting more information about where its servers were located.  Defendants propounded only one round of document requests, to which Hypertouch responded on Nov 15, 2010, with 5 DVDs of documents.

Following the November 29th Hearing and Order, Judge Messitte stayed all further discovery, pending the August Mini-Trial.  *See* Messitte (Nov. 30, 2011 Order), DE 544, at ¶ 2.  No further requests or interrogatories were propounded to HYPERTOUCH.  Defendant only recently served its untimely Motion to Compel document production fourteen (14) month after the Requests were first propounded on HYPERTOUCH.  BSI has complied fully with all orders and has been diligent about supplementing its answers when appropriate.  Defendant cannot point to any court order that BSI (or HYPERTOUCH) has deliberately disobeyed.  While Defendant may not like BSI's responses, this is more properly a subject for depositions rather than the subject of a contempt request.  For all these reasons, Defendant's request should be denied.

**C.**     **Gross Revenue Documents.**

Defendant's request for a "Show Cause" order regarding the production of Gross Revenue Documents is also moot by virtue of Plaintiff's supplemental production of the requested documents. WAUSA's Request for Production of Documents, Set Three (3), Numbers 9 and 10 sought :

> 9. A copy of all documents reflecting your annual gross revenues for each year from 2003 to the present.
>
> 10. A copy of all documents reflecting the portion of your annual gross revenues for each year from 2003 to the present which are attributable to settlements or judgments obtained by you and/or Paul Wagner during the course of litigation in which you and/or Paul Wagner brought any claims related to commercial e-mail.

At the February 16, 2011 hearing, the Court gave BSI a choice:

> I'm going to require the tax documents unless you can produce all the documents as required by this document request.

*See* Exhibit A-6 (CBD Hearing February 16, 2011).

That is, either produce the tax documents or produce all the requested documents. In response, BSI did both. In addition to the tax documents, it produced a copy of its accounting ledgers in the form of an itemized spreadsheet of revenues and expenses year by year. This workbook of spreadsheets is not a "summary" document as WAUSA repeatedly and wrongfully describes it, but rather itemizes the specific transactions. The entries are valid business records of BSI. Plaintiff has not created any other document that reflects its annual gross revenues, so no other responsive documents exist.

On 4/6/2011, BSI produced:

| BSI-JiCos-117509 to BSI-JiCos-117511 | Supp for RRPD set 3 no 10, lit proc, costs CONFID.pdf |

| BSI-JiCos-117512 to BSI-JiCos-117526 | Supp for RRPD set 3 no 9, non-lit proc, costs CONFID.pdf |

On 4/19/2011, BSI produced:

| BSI-JiCos-127079 to BSI-JiCos-127104 | CONFID--tax_return_for_Beyond_Systems--2003.pdf |
| BSI-JiCos-127105 to BSI-JiCos-127130 | CONFID--tax_return_for_Beyond_Systems--2004.pdf |
| BSI-JiCos-127131 to BSI-JiCos-127157 | CONFID--tax_return_for_Beyond_Systems--2005.pdf |
| BSI-JiCos-127158 to BSI-JiCos-127190 | CONFID--tax_return_for_Beyond_Systems--2006.pdf |
| BSI-JiCos-127191 to BSI-JiCos-127217 | CONFID--tax_return_for_Beyond_Systems--2007.pdf |
| BSI-JiCos-127218 to BSI-JiCos-127242 | CONFID--tax_return_for_Beyond_Systems--2008.pdf |
| BSI-JiCos-127243 to BSI-JiCos-127275 | CONFID--tax_return_for_Beyond_Systems--2009.pdf |
| BSI-JiCos-127276 to BSI-JiCos-127277 | CONFID--sig_pages_of_tax_returns_for_BSI_2007_and_2008.pdf |

Plaintiff also directs the Court's attention to the fact that Defendant is now seeking documents that it never sought under its Requests. Defendant's Request for Production of Documents Set Three (3), Number 9 makes the following Request :

All documents reflecting your annual gross revenues for each year as appears in WAUSA's RPD 9 Set 3. However, Defendant's current demand is for all documents reflecting any revenue. The single redaction on p. 9 of the 2009 federal tax return is neither revenue nor expense, nor a taxable event. Plaintiff hereby logs it as privileged reflecting legal and accounting advice.

In addition, BSI produced its itemized spreadsheet of revenues and expenses in

addition to its tax returns to clarify how BSI calculated its annual pre-tax figures.  If Defendant finds the itemized spreadsheet unacceptable, its questions would more properly be the subject of a deposition rather than a Motion to Show Cause.

BSI does not retain "backup" of its gross revenues beyond what appears in the spreadsheet and tax returns.  Each year at tax time, BSI presents the year's spreadsheet to its accountant.  BSI and its accountant rely on the spreadsheet as the primary source of the figures contained in the Company's tax return.

Plaintiff again objects that it has not received an unredacted version of Exhibit 17 from Defendants, which reflects one of the four issues in this MSC.  Plaintiff has complied fully with the Court's order regarding the Gross Revenue Documents, and Defendant's Motion should be denied as a result.

**D.     The Game Plan Document**

Defendant WAUSA's Motion requires a showing, by clear and convincing evidence, that there existed previously :  (1) a valid decree of which the alleged contemnor had actual or constructive knowledge;  (2) that the decree was in the movant's "favor";  (3) that the alleged contemnor by its conduct violated the terms of the decree, and had at least constructive knowledge of such violations; and  (4) that the movant suffered harm as a result.  *See e.g., Ashcroft v. Conoco, Inc.,* 218 F.3d 288, 301 (4th Cir. 2000).  Willfulness is not an element of civil contempt. *General Motors,* 61 F.3d at 258.

This document originally became public as part of Defendants' filings in the case captioned *BSI v. Kraft Foods, Inc. et al*, Case No. 8:08-cv-00409 (PJM)(CBD).  *See* Exhibit A-5, (BSI Mtn.).  In that case, Defendants Connexus and Hydra attached the

11

document as Exhibit 22 to its Motion for Summary Judgment. *See* Exhibit A-5 (BSI Mtn.), at p. 4. Plaintiff eventually discovered that the document was inadvertently produced to Plaintiff's retained experts. The document was Bates stamped as KLENSIN 002210-002218.[2]

On March 29, 2010, Defendant WAUSA's served its Fourth Request for Production of Documents. The first Request in the Fourth set sought from Plaintiff BSI the production of documents relating to the following :

>  1. A copy of the game plan or document evidencing a game plan or plan of action for the action against World Avenue USA, LLC, including all documents related thereto.

*See* DE 271-72 (Defendant's MTC Fourth RPD from BSI).

The request is very specific. It does not ask for documents regarding a "plan of action" against just <u>any</u> of the "World Avenue family" of entities; it concerns just one single entity: World Avenue USA, LLC. (Plaintitff has previously demonstrated that the "family," at last check, includes some 29 entities. *See, e.g.* DE 496-1 through 496-7). The Request also limits itself to just one "action," described in the Request as "the action."

BSI's original response to Request 1 was:

BSI objects to this Request on the ground that it is vague, overbroad, compound, and unduly burdensome . . . protected from disclosure by the

---

[2] While Exhibit 22 itself contains the email and attachment as sent to Plaintiff's Expert Klensin, in the course of preparing the instant motion, Plaintiff uncovered the related disclosure of the copies as sent under separate cover to Dr. John Levine and Peter J. Resnick. Those copies were identified as LEVINE 001593-001601 and RESNICK 004412-004420.

attorney-client privilege, attorney work product doctrine . . . Subject to the foregoing objections, including the General Objections above which are all incorporated herein by reference, Plaintiff responds as follows: Plaintiff has no responsive documents.

The final sentence in this response was literally true: there is no memorandum as described, using the precise name given. However, the 2008 memo loosely refers to, "World Avenue USA a.k.a. 'TheUseful.' It was produced inadvertently to Plaintiff's experts on February 12, 2008 in connection with the Kraft litigation. The "claw-back" battle over this document resulted in a ruling that the document was privileged and should be returned to Plaintiff. The Court has ruled in Kraft that this document is covered by attorney-client privilege and is not subject to discovery. *See* A-6 (Messitte Order at DE 370 in Kraft). This battle brought the memo to the attention of WAUSA, leading WAUSA to focus on this specific document in discovery here.

The Motion mentions two "game plan" documents: one created in 2006 and one created in 2008.

> 11. In turn, Exhibit 12 to the Kraft Action filing disclosed a September 11, 2006 "draft case summary prepared for Chadbourne & Parke." See Ex. 5, excerpt of DE 290 in Kraft Action, Exhibit 12, p. 1, Document 2. BSI-JiCos-117527 to BSI-JiCos-117597 contain a heavily-redacted version of the September 11, 2006 Game Plan Document. (see Ex. 10), but not the 2008 Game Plan Document.

WAUSA Memorandum at 4. The "2006 Game Plan" mentions "TheUseful," in a plan of action against MetaReward/Experian.

Prior to the phone conference of April 15, 2011 between counsel, See Exhibit A-2 (Declaration of Stephen H. Ring with exhibits), Plaintiff understood that it had satisfied

WAUSA's request for the game plan document. *See* Counsel Ring's email of 4/14/2011:

> The litigation plan memo (I do not know who coined the term, "game plan" but we call it litigation plan) has been produced. It is listed in the BSI Document Production Table as "BSI-JiCos-117527 to BSI-JiCos-117597 4/12/2011 LIT PLAN DOCS BSI-K0004405 – 4472 combo, lit pln etc, 71 pp.pdf RPD Set 4 No. 1; RPD Set 2 No. 3.

During the discussion on April 15, 2011, Mr. Saunders clarified that WAUSA wanted the unredacted versions of both the 2006 Litigation Plan and the 2008 Litigation Plan. Mr. Ring and Mr. Saunders ended the conference with Mr. Ring agreeing to investigate whether and which portions of the 2008 Litigation Plan were required to be produced under the Court's rulings. The matter was further complicated by the ruling in the *Kraft* litigation in which the Court found the 2008 document to be privileged.

BSI Counsel Ring was out of the country from April 23 through May 1, and during the interim the parties have been exchanging multiple memoranda on a variety of issues not visible to the Court, including other discovery-related matters, in addition to ECF filings. Plaintiff is now about to make production of what it believes is required in accord with the parameters set by the Court's rulings on discovery as well as the scope of the document request itself.

Plaintiff now proffers that the only part of the 2008 memorandum that is responsive to the Defendant's Fourth Request for the Production of Documents, Set One, relevant to any "action against World Avenue USA, LLC," consists of the following:

   8. World Avenue USA, a.k.a. TheUseful    35,573 emails

The Useful
6001 Broken Sound Parkway NW
Boca Raton / FL / 33487

      561-674-9813
      www.theuseful.net
      tubrr@theuseful.net

The document does not contain any explanation or descriptive text that would indicate that the document is a "game plan or plan of action for the action against World Avenue USA, LLC." The material in the memorandum is simply the text listed above.

WAUSA argues on its page 2 that "BSI did not produce the Game Plan Document. Instead, it filed a false Response stating: "Plaintiff has no responsive documents." BSI responds that the quote is accurate, but denies that it was false for the reasons stated above.

For all these reasons, WAUSA has failed to demonstrate that the specific memorandum at issue is responsive to the document request. Plaintiff's production of the 2006 memo was in good faith. Plaintiff's production of the 2008 memorandum, while is not strictly responsive to the document request, is nevertheless being produced here out of an abundance of caution. There is no basis for a finding of contempt arising from anything related to the "Game Plan Memo" or the "Litigation Plan Memo."

## CONCLUSION

For all these reasons, Defendant WAUSA's Expedited Motion to Show Cause as to the August Trial Discovery should be denied.

                                            Respectfully submitted :

      /s/                                                 05/17/11

| | |
|---|---|
| Michael S. Rothman, Esq.<br>USDC MD Bar No. 14568<br>401 E. Jefferson Street<br>Suite 201<br>Rockville, MD 20850<br>Phone: (301) 251-9660<br>Fax: (301) 251-9610 | Date |
| /s/<br>Stephen H. Ring, Esq.<br>Stephen H. Ring, P.C.<br>USDC MD Bar No. 00405<br>506 Main Street, Suite 215<br>Gaithersburg, MD 20878<br>Phone: (301) 540-8181 | 05/17/11<br>Date |

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of May 2011, a copy of the foregoing was served upon the counsel named below via the Court's CM/ECF electronic filing system :

Sanford M. Saunders, Jr., Esq.
USDC, MD #4734
GREENBERG TRAURIG, LLP
2101 L Street, NW
Suite 1000
Washington, DC 20037
202-331-3100
202-331-3101

John L McManus, Esq.
Greenberg Traurig PA
401 E Las Olas Blvd Ste 2000
Fort Lauderdale , FL 33301
19547688291
Fax: 19547651477

Email: mcmanusj@gtlaw.com
PRO HAC VICE
ATTORNEY TO BE NOTICED

Kenneth A Horky
Greenberg Traurig PA
401 E Las Olas Blvd Ste 2000
Fort Lauderdale , FL 33301
19547688273
Fax: 19547651477
Email: horkyk@gtlaw.com
PRO HAC VICE
ATTORNEY TO BE NOTICED

Nicoleta Burlacu
Greenberg Traurig LLP
2101 L Str NW Ste 1000
Washington , DC 20037

Attorney[s] for World Avenue USA, LLC


                        _____/s/_____
                              Michael S. Rothman

**EXHIBIT LIST**

A-1    CBD Order at DE 660

A-2    SHR Declaration and Notice of April 15, 2011 Conference

A-3    WAUSA First Set of Interrogatories to BSI

A-4    BSI Opposition to HOLDINGS MTC Interrogatory Responses

A-5    BSI v. Kraft Foods (Motion for the Return of Inadvertently Produced Documents), at DE 290.