**IN THE U.S. DISTRICT COURT FOR MARYLAND,**
**SOUTHERN DIVISION**

BEYOND SYSTEMS, INC.    )
            )
 Plaintiff       )
 v.         )   Case No. PJM 08 cv 0921
            )
WORLD AVENUE USA, LLC, et al. )
 Defendants     )
_____ )

**DEFENDANT WORLD AVENUE HOLDING'S MEMORANDUM OF POINTS AND**
**AUTHORITIES IN SUPPORT OF MOTION TO COMPEL HYPERTOUCH, INC. TO**
**PROVIDE COMPLETE ANSWERS  TO INTERROGATORIES**
**RELATING TO THE AUGUST TRIAL**

Defendant/Third Party Plaintiff, WORLD AVENUE HOLDINGS ("HOLDINGS"),

hereby submits its Memorandum of Points and Authorities in Support of its Motion to Compel

Complete Answers to Interrogatories Relating To The August Trial from Third Party Defendant,

HYPERTOUCH, INC. ("Hypertouch"), as a result of its failure to respond completely to

Holding's Interrogatories.  In support thereof, Holdings states:[1]

## I.  INTRODUCTION.

The background of Beyond Systems, Inc.'s ("BSI") action against WAUSA for in excess

of $100 million in alleged statutory damages for purported unsolicited commercial emails

("UCE"), and WAUSA's and Holdings' defense that BSI is not a *bona fide* Maryland resident, is

not a *bona fide* interactive computer service provider, and that it conspired with Hypertouch, BSI

President, Paul Wagner's brother, James Joseph Wagner ("Wagner"), and other members and

friends of the Wagner family to funnel hundreds of thousands of e-mails to BSI for the very

_____

[1] Holdings has made a diligent effort to resolve the subject matter of this Motion with counsel for Hypertouch, but Hypertouch has failed to provide complete answers and to confer in an appropriate manner.  *See* Local Rule 104 Certification, attached as Exhibit 1.  In this Motion, Holdings raises only issues pertinent to the Three Trial Issues, and defers on the remaining issues.

purpose of manufacturing spam litigation, is well-known to this Court and HOLDINGS will avoid repeating it. This Motion is an effort to compel complete Answers to Interrogatories seeking information relevant to the August Trial that were first requested in February 2010, and which Hypertouch has continually refused to provide since that time. *See* Exhibits 2-3. Hypertouch's objections to the Interrogatories Relating to the August Trial should be overruled, Hypertouch should be compelled to provide fulsome answers, and Hypertouch should be sanctioned for stonewalling through the assertion of spurious objections as part of a pattern of dilatory practices deliberately designed to frustrate discovery and prejudice Defendants.

## II.    SUMMARY OF ARGUMENT.

The Court should enter an Order overruling Hypertouch's objections, and ordering complete Answers to the Interrogatories. First, Hypertouch's General Objections to the Interrogatories should be overruled, and Hypertouch should be compelled to provide complete Answers for any information withheld by reason of the General Objections. Second, Hypertouch's specific objections to Interrogatories 1-2, 7-11, and 13-25 are all similarly meritless and should be overruled. Third, Hypertouch's Answers to Interrogatories 1-2, 7-11, and 13-25 are in whole incomplete and evasive, and Hypertouch should be compelled to provide complete and thorough Answers. Finally, Hypertouch should be sanctioned for its assertion of meritless objections and its evasive and incomplete answers..

## III.    ARGUMENT.

### A.    Hypertouch's General Objections Should Be Overruled.

Hypertouch's General Objections are excessive, unfounded and fail to meet the legal standard necessary to be sustained. *See* Ex. 3, pp. 1-5. The Court's rulings denying such blanket General Objections have served only to embolden Hypertouch for now the General Objections

cover five full pages.  First, Hypertouch's objection on grounds of privacy or privilege should be overruled because it has provided no Privilege Log relating to any of the General Objections which assert privilege or privacy rights, and has thus waived any privilege relating thereto.  See Ex. 3, p. 4, ¶ 5-7.[2]

Second, Hypertouch's objections to overbreadth and undue burden imposed by the Interrogatories should also be overruled.  See Ex. 3, p. 1, ¶¶ 1-2; p. 2, ¶¶ 3-5; p. 3, ¶¶ 6-7, 2; p. 4, ¶ 2.  For instance, in Paragraph 2, Hypertouch objected "to the Instructions to the extent they are vague, ambiguous, overly broad, unduly burdensome, oppressive, and/or not reasonably calculated to lead to the discovery of admissible evidence."  See Ex. 3, p. 4, ¶ 2.  However, Hypertouch did not quantify or otherwise support this General Objection with an affidavit or any other record evidence of the purported burden, and thus, this General Objection should be overruled.  Further, as a matter of law, general objections to discovery requests, e.g., overbroad, vague, ambiguous, and unduly burdensome, are improper because they are not sufficiently specific to allow a court to ascertain the objectionable character of the discovery requests.  Nor does a general objection fulfill a party's burden to explain its objection.[3]  Hypertouch, as the party resisting discovery, must show how each Interrogatory is deficient based upon each specifically asserted objection, e.g., what extraordinary effort is required to respond to an interrogatory designated "overbroad" or "unduly burdensome."  See Local Rules, Discovery

---

[2] In this District, a party has a duty to particularize its claims of privilege.  *Equal Rights Center v. Lion Gables Residential Trust*, Case No. DKC 07-2358, 2010 WL 2483613, at *1, *6 (D. Md. June 15, 2010) (Chasanow, J.); *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 264 (D. Md. 2008) (Grimm, J.)  Failure to provide a Privilege Log violates Rule 26(b)(5) and Discovery Guideline 10(d) of the Local Rules and waives the privilege.  *See* Fed. R. Civ. P. 26(b)(5); Local Rules, Discovery Guideline 10(d); *Susko v. City of Weirton*, Case No. 5:-09-cv1, 2010 WL 2521423, at *1,  *2 (N.D.W.V. June 21, 2010) ("The plaintiff, however, never supplied a privilege log to allow the magistrate judge to assess the privilege claims, as required by Federal Rule of Civil Procedure 26(b)(5) … The plaintiff's objection, therefore, is improper.").

[3] *See also Burns v. Imagine Films Entertainment, Inc.*, 164 F.R.D. 589, 592-93 (W.D.N.Y. 1996); *Chubb Integrated Sys. Ltd. v. National Bank of Washington*, 103 F.R.D. 52, 58 (D.D.C. 1984).

Guideline 10(e).   This Court previously rejected similar general objections raised by BSI.

Specifically, during the oral argument on BSI's Motion for Reconsideration on WAUSA's

Motion to Compel Complete Answers to First Set of Interrogatories, Magistrate Judge Charles

B. Day stated:

> 21. The objections are boilerplate and most of them are
> 22. nonapplicable, objections such as "vague" or "ambiguous," or
> 23. whether it's burdensome with no supporting affidavit,
> 24. unspecified violations of plaintiff's right to privacy by rule,
> 25. law or regulation, objections about something being duplicative,
> 1. the assertions of attorney-client work product and other
> 2. privileges, which were all waived by disclosure in the Kraft
> 3. case, other agreements with third parties but no proffer of such
> 4. agreements being made.

Feb. 16, 2011 Hearing Transcr. at pp. 73:21-25; 74:1-4, attached hereto as Ex. 4; *accord* DE 441,

444, attached as Exhibit 5 (granting motions to compel on WAUSA's Fourth Request for

Production and Third Set of Interrogatories).   Hypertouch should be compelled to provide all

information that it withheld on the basis of the General Objections.

### B.      The Answers To Interrogatories 1 and 2 Are Deficient.

#### 1.      Holdings' Interrogatories 1-2 and Hypertouch's Answers.

1.   Identify with Specificity all Computer Related Services[4] that Hypertouch or
James Joseph Wagner provide to BSI or Paul Wagner.

**HYPERTOUCH'S OBJECTIONS AND RESPONSES:**
Hypertouch objects that the interrogatory is overbroad and vague; objects to the
extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at

---

[4] Holdings defined Computer Related Services as:

> all product or service offerings, work, duties, assistance, help or other actions, for a financial
> benefit, non financial benefit or for no benefit at all, including but not limited to, Web Hosting
> services, Domain Name Resolution (DNS) services, Email services, Internet Connectivity
> services, Database services, E-commerce services, Server Co-location services, Data Backup
> services, Web Site Design services and Data Storage services, performed by Hypertouch for BSI,
> by BSI for Hypertouch, or by BSI and/or Hypertouch for their alleged subscribers or clients.

*See* Ex. 2, pp. 4-5, ¶ 6.

DE 544 and as agreed by the Parties; objects to the extent that this Interrogatory duplicates prior interrogatories; objects to the extent that this Interrogatory exceeds the limit on the number of interrogatories that may be issued. Without waiving these objections, Hypertouch states:

Hypertouch provides email, DNS and web hosting services. (e.g., see HypWAUSA-0019116-Hyp-WAUSA-0019126.pdf) Hypertouch also incorporates by reference its full answer to Interrogatory No. 4.

2.  Identify with Specificity all Computer Equipment that Hypertouch or James Joseph Wagner are storing, locating, co-locating, or placing at an office or location of Paul Wagner/BSI, including, but not limited to, 1612 Sherwood Road, Silver Spring, Maryland 20902, 38 Maryland Avenue, Unit 333, Rockville, Maryland 20850, 9501 Anchorage Place, Bethesda, Maryland 20817, and/or 1837 R Street, N.W., Washington, D.C.

**HYPERTOUCH'S OBJECTIONS AND RESPONSES:**

Hypertouch objects that the interrogatory is overbroad and vague; objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties; objects to the extent that this Interrogatory duplicates prior interrogatories; objects to the extent that this Interrogatory exceeds the limit on the number of interrogatories that may be issued. Without waiving these objections, Hypertouch states:

See Hypertouch's objections and answer to WAUSA's Interrogatory #1.

## 2.      Complete Answers To Interrogatories 1 and 2 Are Warranted.

Interrogatory 1 asks Hypertouch to identify the services that it is providing to BSI. Hypertouch's objections to Interrogatories 1 and 2 are meritless.  First, Hypertouch has failed to support its burdensomeness and overbreadth objections with evidence, and as such, the objection should be overruled.  *See* footnote 2, *supra*.; Ex. 4; Ex. 5.  Second, Hypertouch's objection that it "duplicates prior interrogatories" and exceeds interrogatory limits is absurd given that this is interrogatory 1 of Holdings' First Set of Interrogatories to Hypertouch.  Third, in asking for the Computer-Related Services rendered by Hypertouch to BSI, the Interrogatory is directly relevant to show the "nature of the relationship" between BSI and Hypertouch.  *See* DE 544, p. 2, ¶ 1. Similarly, the existence of storage arrangements between the two companies is directly relevant to the nature of their relationship.  *Id*.

The Answer to Interrogatory 1 is non-responsive--"Hypertouch provides email, DNS and web hosting services."  The Answer does not give the *who*, *what*, *when*, *where*, *why*, and *how* of the Computer-Related Services.  It also refers to the Answer to Interrogatory 4, but Interrogatory 4 does not specify what Computer Related Services Hypertouch provides to BSI.  Moreover, the Answer refers to HYP-WAUSA-0019116-HYP-WAUSA-0019126.pdf, but that document does not provide the Answer either.  Instead, it is a series of seemingly random screen shots of server settings, but does not describe the Computer Related Services that Hypertouch provides to BSI.  Further, the responsive information cannot be ascertained because the content of this document (HYP-WAUSA-0019116-HYP-WAUSA-0019126.pdf) is extensively redacted.  This redaction has occurred without any indication of why this has occurred on a privilege log.  This was wholly improper. *See In re: State Street Bank & Trust Co. Fixed Income Funds Inv. Litig.*, Case No. 08-CIV-0333, 2009 WL 1026013, at *1, *1 (S.D.N.Y. 2009) (redaction of non-relevant information from documents improper where confidentiality exists); *Howell v. City of New York*, 2007 WL 2815738, at *1, *2 (E.D.N.Y. 2007) (same).

Interrogatory 2 delves into the relationship between Hypertouch and BSI by asking Hypertouch to Identify with Specificity all Computer Equipment that Hypertouch and Wagner are storing, locating, co-locating, or place at an office or location of BSI.  The Interrogatory is designed to force Hypertouch to specify what equipment is (and has been) where, and is relevant to show what specific Computer Equipment was and is operating at what addresses, and who that Computer Equipment is actually owned by -- Hypertouch or BSI.

The Answer is again non-responsive, and just refers back to Interrogatory 1. *See* Ex. 3 ("See Hypertouch's objections and answer to Interrogatory #1").  Interrogatory 1 did not relate to the location of Computer Equipment, but instead related to the Computer Related Services

provided by Hypertouch to BSI.   Thus, the reference to Interrogatory 1 is completely non-responsive and Hypertouch has managed to avoid answering both questions.   Moreover, Hypertouch does not name the Computer Equipment that is present anywhere.   Hypertouch should be compelled to provide a complete answer identifying all Computer Equipment that Hypertouch or James Joseph Wagner are storing, locating, co-locating, or placing at an office or location of Paul Wagner/BSI.

### C.   **The Answer to Interrogatory 7 Is Deficient.**

#### 1.   **Holdings' Interrogatory 7 and Hypertouch's Answer.**

7.   Identify with Specificity the total revenues that Hypertouch and/or James Joseph Wagner have received as a result of Computer-Related Services rendered to Persons

**HYPERTOUCH'S OBJECTIONS AND RESPONSES:**
Hypertouch objects that the interrogatory is overbroad and vague; objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties; objects to the extent that this Interrogatory duplicates prior interrogatories; objects to the extent that this Interrogatory exceeds the limit on the number of interrogatories that may be issued.
Hypertouch objects to the Interrogatories to the extent that they seek information which is protected from disclosure and discovery by virtue of Hypertouch's right to non-disclosure of confidential information, proprietary information, trade secrets, or other information protected by case law, statute, regulation, or order or otherwise protected. Hypertouch further objects to the extent that questions about its revenue, which are unrelated to BSI, are not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties. HYPERTOUCH objects to the extent the Interrogatories exceed 25 in number, including sub-parts and interrogatories from WAUSA. HYPERTOUCH asserts that since WAH has no claims against him in this suit, the Interrogatories of WAH should be added to the number issued by WAUSA, who uses WAH to serve additional interrogatories to escape the limit of 25.
Without waiving these objections, Hypertouch states:
Some customers have paid Hypertouch, Inc. for its Internet services, but most have not. Like Gmail, Yahoo Mail and Hotmail, Hypertouch, Inc. does not provide these services as a profit center from net hosting fees. Indeed, but for the burden imposed by spam, Hypertouch, Inc.'s hosting costs would be fully financed by its other outside consulting.

#### 2.   **Hypertouch Should Provide A Complete Answer To Interrogatory 7.**

Hypertouch's objections to Interrogatory 7 are meritless.  First, Hypertouch has failed to

support its overbreadth objection with evidence, and as such, the objection should be overruled. *See* footnote 2, *supra*.; Ex. 4; Ex. 5.   Second, Hypertouch says the Interrogatory is vague, but doesn't say why.   Third, Hypertouch's objection that it "duplicates prior interrogatories" and exceeds interrogatory limits is absurd given that this is interrogatory 7 of Holdings' First Set of Interrogatories to Hypertouch.   Fourth, Hypertouch's privilege objection was waived through the non-service of a privilege log.   *See* Fed. R. Civ. P. 26(b)(5); Local Rules, Discovery Guideline 10(d); *Susko*, 2010 WL 2521423, at *2.   Fifth, the Interrogatory is directly relevant to the *bona fide* nature of Hypertouch's business and whether "Mr. Joe Wagner, in fact, is doing anything other than manufacturing or sending these e-mails to his brother to allow these suits to be brought."   *See* Ex. 6, excerpted transcript of November 29, 2010 hearing.

Hypertouch's Answer to this interrogatory is completely non-responsive: "Some customers have paid Hypertouch, Inc. for its Internet services, but most have not. Like Gmail, Yahoo Mail and Hotmail, Hypertouch, Inc. does not provide these services as a profit center from net hosting fees."   The Answer fails to identify who the Persons are, what the total revenues are, and the identifying information about the Persons who receive the Computer-Related Services.   Hypertouch should be compelled to provide a complete answer.

D. **The Answer to Interrogatory 8 Is Deficient.**

1. **Holdings' Interrogatory 8 and Hypertouch's Answer.**

8.   Identify with Specificity the number of hours each month that James Joseph Wagner spends on his post-graduate education versus business-related activities on behalf of Hypertouch.

**HYPERTOUCH'S OBJECTIONS AND RESPONSES:**
Hypertouch objects to the Interrogatories to the extent that they seek information which is protected from disclosure and discovery by virtue of Hypertouch's right to non-disclosure of confidential information, proprietary information, trade secrets, or other information protected by case law, statute, regulation, or order or otherwise protected. Hypertouch objects to the question to the extent they are in fact question

for JJW. HYPERTOUCH objects to the extent the Interrogatories exceed 25 in number, including sub-parts and interrogatories from WAUSA. HYPERTOUCH asserts that since WAH has no claims against him in this suit, the Interrogatories of WAH should be added to the number issued by WAUSA, who uses WAH to serve additional interrogatories to escape the limit of 25.

Without waiving these objections, and in the spirit of cooperation, Hypertouch states: The research conducted for JJW's Ph.D. and the value of his anticipated degree will provide in the future, make his hours of work directly supporting Hypertouch's endeavors.

### 2.       Hypertouch Should Provide A Complete Answer To Interrogatory 8.

Interrogatory 8 focuses on the role of Hypertouch and the nature of its business, which is the third issue for the August Trial.  Hypertouch's objections to Interrogatory 7 are meritless. First, Hypertouch's privilege objection was waived through the non-service of a privilege log. *See* Fed. R. Civ. P. 26(b)(5); Local Rules, Discovery Guideline 10(d); *Susko*, 2010 WL 2521423, at *2.   Second, Hypertouch's objection "to the question to the extent they are in fact question for [Wagner]" is meritless as Hypertouch is obliged to respond with information in its possession, custody, or control.  *Steel Software Systems, Corp. v. DataQuick Info. Sys., Inc*., 237 F.R.D. 561, 564 (D. Md. 2006).   Moreover, the Court has repeatedly defined the parties to include their employees, which includes Wagner.  *See, e.g*., DE 257.

Hypertouch does not answer Interrogatory 8 at all, and his failure to do so is telling.  It instead states that "the research conducted for [Wagner's] Ph.D and the value of his anticipated degree will provide in the future, make his hours of work directly supporting Hypertouch's endeavors."  This is completely unresponsive and fails to provide the number of hours for either the educational endeavors or the business-related endeavors.

### E.   The Answers to Interrogatories 9-10, and 13 Are Deficient.

### 1.       Interrogatories 9-10, and 13 and Hypertouch's Answer.

9.   Identify with Specificity Hypertouch/James Joseph Wagner's involvement with the Honeypots and the Honeypot E-mail Addresses.

**HYPERTOUCH'S OBJECTIONS AND RESPONSES:**

Hypertouch objects that the interrogatory is overbroad and vague; objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties; objects to the extent that this Interrogatory duplicates prior interrogatories; objects to the extent that this Interrogatory exceeds the limit on the number of interrogatories that may be issued. HYPERTOUCH objects to the extent the Interrogatories exceed 25 in number, including sub-parts and interrogatories from WAUSA. HYPERTOUCH asserts that since WAH has no claims against him in this suit, the Interrogatories of WAH should be added to the number issued by WAUSA, who uses WAH to serve additional interrogatories to escape the limit of 25.

Without waiving these objections, Hypertouch states:

See Hypertouch's objections and answer to WAUSA's Interrogatory #1.

10. Identify with Specificity all communications that you have had with Paul A. Wagner/BSI regarding the Honeypots or the Honeypot E-mail Addresses.

**HYPERTOUCH'S OBJECTIONS AND RESPONSES:**

Hypertouch objects that the interrogatory is overbroad and vague; objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties; objects to the extent that this Interrogatory duplicates prior interrogatories; objects to the extent that this Interrogatory exceeds the limit on the number of interrogatories that may be issued.

Hypertouch further objects to the Defendants' definition of Honeypots. Wikipedia defines Honeypot as: "In computer terminology, a honeypot is a trap set to detect, deflect, or in some manner counteract attempts at unauthorized use of information systems. Generally it consists of a computer, data, or a network site that appears to be part of a network, but is actually isolated and monitored, and which seems to contain information or a resource of value to attackers."

(http://en.wikipedia.org/wiki/Honeypot (computing))

The websites cited are not a fake or a trap. For example http://theserenitychair.com is a business website advertising unique wooden chairs. There is only one email address on the website which is used by the website's owner. HYPERTOUCH objects to the extent the Interrogatories exceed 25 in number, including sub-parts and interrogatories from WAUSA. HYPERTOUCH asserts that since WAH has no claims against him in this suit, the Interrogatories of WAH should be added to the number issued by WAUSA, who uses WAH to serve additional interrogatories to escape the limit of 25.

Without waiving these objections, Hypertouch states:

The person responsible for the receipt of email directed to the referenced email addresses is the original spammer or sender of the email. Hypertouch does not have the information requested.

13. Identify with Specificity all activities and actions that Hypertouch/Joseph Wagner take to monitor receipt of e-mails at the Honeypot E-Mail Addresses.

**HYPERTOUCH'S OBJECTIONS AND RESPONSES:**

Hypertouch objects that the interrogatory is overbroad and vague; objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties; objects to the extent that this Interrogatory duplicates prior interrogatories; objects to the extent that this Interrogatory exceeds the limit on the number of interrogatories that may be issued.

Hypertouch objects to the use of the definition of Honeypots. Wikipedia defines Honeypot as: "In computer terminology, a honeypot is a trap set to detect, deflect, or in some manner counteract attempts at unauthorized use of information systems. Generally it consists of a computer, data, or a network site that appears to be part of a network, but is actually isolated and monitored, and which seems to contain information or a resource of value to attackers." (http://en.wikipedia.org/wiki/Honeypot_(computing))  The websites cited are not a fake or a trap. For example http://theserenitychair.com is a business website advertising unique wooden chairs. There is only one email address on the website which is used by the website's owner.

Without waiving these objections, Hypertouch states:

Hypertouch does not monitor the receipt of emails sent to harvested addresses. However, the appearance of such an address in the course of responding to a spam complaint or investigation is instructive.

## 2.     A Complete Answer To Interrogatories 9-10, and 13 Is Warranted.

These Interrogatories ask for specifically Hypertouch and Wagner's involvement in the creation of the Honeypots.  Hypertouch's blanket objections should be rejected in short order.  It objects that the Interrogatory is "overbroad and vague," but doesn't say why.  It complains that this Interrogatory "duplicates prior interrogatories", which is nonsense given this is the First Set of Interrogatories from Holdings to Hypertouch.   Finally, Hypertouch's relevancy objection should be overruled.  Hypertouch programs and maintains websites that contain specific e-mail addresses embedded in the source code for the purpose of collecting e-mail and suing on them. These websites contain e-mail addresses invisible on the face of the individual web pages that make up the website, but are embedded in the source code of each web page.  The e-mails received at these addresses are either held by Hypertouch, re-transmitted to BSI, or both, for the

purpose of filing lawsuits.  These include, but are not limited to, the fourteen (14) Honeypots[5] that are the subject of Interrogatories 9-10, and 13.

The Answer to Interrogatory 9 is non-responsive.  It just refers back to the Answer to Interrogatory 1.  Interrogatory 1 does not relate to the Honeypots or the Honeypot E-Mail Addresses.[6]  Instead, it relates to the services rendered by Hypertouch to BSI.  Thus, the Answer is a complete disconnect from the question.  Interrogatory 1 has nothing to do with the Honeypots.

Interrogatory 10 asks for specifically the communications between Hypertouch and Paul Wagner regarding the Honeypots or Honeypot E-Mail Addresses.  The Answer is non-responsive:  "Hypertouch answers that the person responsible for the receipt of e-mail directed to the referenced email addresses is the original spammer or sender of the email…."  This is argumentative and ignores the question, which is to identify the communications regarding the Honeypots.  Then, in classic Hyper-speak, Hypertouch just redefines what "Honeypots" means by citing to Wikipedia, a computer dictionary that can be edited at any time by any one.

---

[5] WAUSA defined "*Honeypot/Honeypots*" as "the following web pages with embedded email addresses:
• http://www.bihn.org
• http://www.hypertouch.com
• http://www.hypertouch.com/index2.html
• http://legal.hypertouch.com
• http://legal.hypertouch.com/legal.htm
• http://www.katka-steve.com
• http://metrikproperties.com
• http://motiongranted.com/rep-transactions.html
• http://www.reasonabledoubt.com
• http://rehabrobotics.org
• http://www.serenitychair.com
• http://theserenitychair.com
• http://recipes.hypertouch.com
• http://www2.hypertouch.com".

*See* Ex. 2, pp. 6-7, ¶ 14.

[6] WAUSA defined "*Honeypot E-Mail Addresses*" as "the email addresses embedded in the source code of the Honeypots."  *See* Ex. 2, p. 7, ¶ 15.

"Honeypots" was defined in the Definitions as just fourteen (14) specific web pages, no more and no less.  *See* footnote 5, *supra*.  Hypertouch appears to be answering some other Interrogatory -- it either had communications or it did not.

The Answer to Interrogatory 13 is likewise non-responsive.  Interrogatory 13 asks for the actions taken to monitor receipt of e-mails at the Honeypot E-Mail Addresses.  The Answer states that Hypertouch does not monitor "harvested email addresses.  The Answer is not responsive to the Honeypot Email Addresses, and avoids the question posed.

### F.  The Answer to Interrogatory 11 Is Deficient.

**HOLDING'S INTERROGATORY 11**

Identify with Specificity all monies that have been spent to improve the storage capacity for electronic mail of Hypertouch, Inc./Joseph Wagner.

**HYPERTOUCH'S OBJECTIONS AND RESPONSES:**
Hypertouch objects that the interrogatory is overbroad and vague; objects to the extent this inquiry is not ''directly relevant to the Trial Issues'' as set by the Court at DE 544 and as agreed by the Parties; objects to the extent that this Interrogatory duplicates prior interrogatories; objects to the extent that this Interrogatory exceeds the limit on the number of interrogatories that may be issued. HYPERTOUCH objects to the extent the Interrogatories exceed 25 in number, including sub-parts and interrogatories from WAUSA. HYPERTOUCH asserts that since WAH has no claims against him in this suit, the Interrogatories of WAH should be added to the number issued by WAUSA, who uses WAH to serve additional interrogatories to escape the limit of 25. Without waiving these objections, Hypertouch states:
Hypertouch elects to refer to business records in response to this Interrogatory, pursuant to FRCP 33. See documents WAUSA-0019I 10-Hyp-WAUSA-0019113.

### 2.  Hypertouch Should Provide A Complete Answer To Interrogatory 11.

Interrogatory 11 asked for all money spent to improve the storage capacity of Hypertouch and Wagner.  Hypertouch complains that this Interrogatory "duplicates prior interrogatories", which is nonsense given this is the First Set of Interrogatories from Holdings to Hypertouch. Interrogatory 11 is directly relevant to the "nature of the relationship" between BSI and Hypertouch.  The central thread of the relationship between the two parties is that Hypertouch

and BSI claims that BSI uses the California-based Servers of Hypertouch because such Servers

have a more "robust gateway", but that Hypertouch uses the BSI Servers because BSI has a

better capacity to store e-mail:

> 22   Q.   Is there any -- let me go -- what are the
> 1  technical reasons?
> 2    A.   Well, Hypertouch's gateway servers have
> 3  tended to be more robust, more reliable.  BSI's
> 4  servers tend to have a better capacity to store
> 5  e-mail or receive and store e-mail.  It is not always
> 6  the case, but in general, I had more -- bigger RAID
> 7  systems, R-A-I-D.
> 8    Q.   When you say more robust, what do you
> 9  mean, when you are talking about the Hypertouch
> 10  gateway being more robust?
> 11    A.   It seems to handle the high loads of the
> 12  e-mails coming in more reliably than BSI's in part
> 13  because he monitored it more closely than I monitor
> 14  my servers.
> 15    Q.   You said BSI is better at receiving and
> 16  storing?
> 17    A.   It has tended to be.

*See* Deposition of Paul A. Wagner taken September 17, 2009, p. 95, line 22; p. 96, lines 1-17.

The monies expended by Hypertouch to improve its storage capacity would be relevant toward

this Server-sharing arrangement.

The Answer to Interrogatory 11 is non-responsive.  Hypertouch refers to business records

WAUSA-0019110-Hyp-WAUSA-0019113, which is a Detailed Spending Report on the AMEX

Costco Business Card from January 2004 to June 2008.  The reference does not answer the

question as to the monies spent to improve the storage capacity of Hypertouch.  First, the

document does not contain the responsive documents for the time frame of the Interrogatory,

which is from January 1, 2000 to present.  *See* Ex. 2, Definitions, ¶ 34.  The documents prior to

2004 have been cut-off, as are the documents subsequently to June 2008.  Second, the document

purports to contain *all* purchases of Hypertouch, but the business records do not segregate those

purchases made to improve the storage capacity of Hypertouch.  For example, the "Explanation" at the far right of the document contains references to "Spam Filter," a "Mac mini," "Second Internet Connection," "Data Recovery Software  and a "Hard Drive."  The document does not answer the Interrogatory by designating which of the items is dedicated toward improvement of the storage capacity of Hypertouch/Wagner.  Consequently, the document is non-responsive to the Interrogatory, and BSI must provide a more complete Answer by identifying those items acquired during the relevant time to improve the storage capacity of Hypertouch.

### G.  The Answers to Interrogatories 14 and 16 Are Deficient.

#### 1.  Holding's Interrogatory 14 and 16 and Hypertouch's Response

Identify with Specificity all Customers of BSI/Paul Wagner that are also Customers of Hypertouch/Joseph Wagner.

**HYPERTOUCH'S OBJECTIONS AND RESPONSES:**
Hypertouch objects that the interrogatory is overbroad and vague; objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties; objects to the extent that this Interrogatory duplicates prior interrogatories; objects to the extent that this Interrogatory exceeds the limit on the number of interrogatories that may be issued.
WAGNER objects to the term "Customer," as neither MD-CEMA nor FL-CEMA use that term. WAGNER further objects to the limited definition of "Customer," and the absence of a complete source cite for the definition in the discovery requests. The online Merriam Webster Dictionary includes a broader description than that quoted by Defendant:
I. a person who buys a product or uses a service from a
business. Synonyms account, client, guest, patron, punter [chiefly
British] Related Words consumer, end user, user; buyer, correspondent,
purchaser, vendee; browser, prospect, shopper, window-shopper;
bargainer, haggler; regular . .
http://www.meniam-webster.com/thesaurus/customer, last visited March 31, 2011.
HYPERTOUCH objects to the extent the Interrogatories exceed 25 in number, including sub-parts and interrogatories from WAUSA. HYPERTOUCH asserts that since WAH has no claims against him in this suit, the Interrogatories of WAH should be added to the number issued by WAUSA, who uses WAH to serve additional interrogatories to escape the limit of 25. Without waiving these objections, WAGNER states:
WAGNER does not know which of BSI's users are "one that purchases" a commodity, product or service, nor when if ever they did.

Hypertouch uses multiple DNS servers geographically distributed to ensure robust service for its users. All users of Hypertouch who received email services from Hypertouch are receiving services from BSI because BSI operates one of the DNS servers and provides upstream connectivity for another of the DNS servers that Hypertouch uses to provide service to its users.

16. Identify with Specificity all Persons who receive Computer-Related Services from Hypertouch/Joseph Wagner that also receive Computer-Related Services from BSI/Paul Wagner.

**HYPERTOUCH'S OBJECTIONS AND RESPONSES:**
Hypertouch objects that the interrogatory is overbroad and vague; objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties; objects to the extent that this Interrogatory duplicates prior interrogatories; objects to the extent that this Interrogatory exceeds the limit on the number of interrogatories that may be issued. HYPERTOUCH objects to the extent the Interrogatories exceed 25 in number, including sub-parts and interrogatories from WAUSA. HYPERTOUCH asserts that since WAH has no claims against him in this suit, the Interrogatories of WAH should be added to the number issued by WAUSA, who uses WAH to serve additional interrogatories to escape the limit of 25.
Without waiving these objections, Hypertouch states:
Hypertouch uses multiple DNS servers geographically distributed to ensure robust service for its users. All users of Hypertouch who received email services from Hypertouch are receiving services from BSI because BSI operates one of the DNS servers and provides upstream connectivity for another of the DNS servers that Hypertouch uses to provide service to its users. See Answer to Interrogatory #4, above.

## 2.   Complete Answers To Interrogatories 14 and 16 Are Warranted.

Hypertouch objects that the Interrogatory is "overbroad and vague," but doesn't say why. It complains that this Interrogatory "duplicates prior interrogatories", which is nonsense given this is the First Set of Interrogatories from Holdings to Hypertouch.  The relevancy objection should be overruled, as the existence of shared customers between BSI and Hypertouch is directly relevant to show the "nature of the relationship" between BSI and Hypertouch.  *See* DE 544, p. 2, ¶ 1.

The Answer to Interrogatory 14 is completely non-responsive.  Interrogatory 14 asked Hypertouch to identify all Customers of BSI/Paul Wagner that are also customers of

Hypertouch/Joseph Wagner.  Rather than answer the question, Hypertouch claims that "all users of Hypertouch" are "receiving services from BSI".  Hypertouch does not identify who the shared users are, or which ones receive e-mail services from Hypertouch.  Hypertouch also states that "BSI operates *one* of the DNS servers" and "provides upstream connectivity for another of the DNS servers", but does not identify what those DNS servers are, and which shared customers receive those shared services.

Similarly, Interrogatory 16 asked for all persons who received Computer Related Services from Hypertouch/Wagner that receive Computer Related Services from BSI/Paul Wagner.  The Answer is long winded, but is non-responsive and does not provide the identification of the Persons requested.  Not a single Person is identified.  Hypertouch also refers back to its Answer to Interrogatory 4, but Interrogatory 4 gives numbers of Persons, but not a single Person is identified by their name and address.

### H.  The Answer to Interrogatory 15 Is Deficient.

#### 1.  Holdings' Interrogatory 15 and Hypertouch's Answer.

Identify all Communications that you have had with Paul A. Wagner/BSI regarding archiving, forwarding, or retransmitting electronic mails sent to hypertouch.com.

**HYPERTOUCH'S OBJECTIONS AND RESPONSES:**
Hypertouch objects that the interrogatory is overbroad and vague; objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties; objects to the extent that this Interrogatory duplicates prior interrogatories; objects to the extent that this Interrogatory exceeds the limit on the number of interrogatories that may be issued. Without waiving these objections, Hypertouch states:
Since it was founded, Hypertouch, Inc. has configured its servers to accept all email and, for various reasons, has implemented a policy never to delete emails. Hypertouch, Inc.'s virus checker and spam filter label suspect mails, unless a customer specifically requests other action. This guarantees delivery of all legitimate email, which is a major reason why many of Hypertouch, Inc.'s customers use Hypertouch, Inc.'s email service rather than other services.
Incoming emails are archived for a number of reasons, including to preserve emails that users might want but that could be misaddressed or misrouted in the event of

mail server routing table errors. There is no technological way to delete spam automatically without also deleting legitimate, desired email. Hypertouch, Inc., as a matter of policy, believes it is important to deliver and retain all legitimate email for its customers. It is physically impossible to sift through hundreds of thousands of emails every day manually in order to distinguish the legitimate emails from the spam.

Hypertouch, Inc. similarly routes copies of many customers' emails received by Hypertouch, Inc.'s servers to other third party email service providers (e.g. Gmail, HotMail, and Yahoo Mail). Most of these customers' domains have existed for the better part of a decade, and 99% of the email routed on to these other ISPs is spam.

In 2002 or 2003, the volume of email that Hypertouch, Inc.'s servers received daily had grown beyond Hypertouch, Inc.'s ability to robustly archive in a manner that would not degrade the mail servers' performance or their reliability. Therefore, Hypertouch, Inc. asked BSI, which had hardware more capable of robustly archiving emails, if BSI would archive BSI's hypertouch.com email and Hypertouch, Inc.'s customer email. BSI agreed. BSI has retrieved email from those archives, including for example emails for Jaime Vargas that were routed to BSI due to a routing table error in a secondary mail server.

Many if not most other ISPs route emails that their mail servers receive to other ISPs. Some might be on a per email account basis. For example Google's Gmail allows users to setup routing to other ISP's mail servers for their email addresses. On the other hand, Google's Postini is a California based email provider that can receive all emails received by a domain name owned by a third party, process the email and route all emails to the owner's mail server located in another state.

Hypertouch does not speak for BSI in this answer. Hypertouch expressly reserves the right to supplement this Response should additional information become available.

## 2. Hypertouch Should Provide A Complete Answer To Interrogatory 15.

Hypertouch's objections should be overruled. It objects that the Interrogatory is "overbroad and vague," but doesn't say why. It complains that this Interrogatory "duplicates prior interrogatories", which is nonsense given this is the First Set of Interrogatories from Holdings to Hypertouch. The relevancy objection should be overruled, as the existence of archiving, forwarding, or retransmitting electronic mails sent to hypertouch.com between BSI and Hypertouch is directly relevant to show the "nature of the relationship" between BSI and Hypertouch. *See* DE 544, p. 2, ¶ 1.

Holdings asked for all communications with Paul Wagner regarding archiving, forwarding or transmitting of e-mails, but the Answer is non-responsive. Even if Hypertouch

were to claim it cannot remember all conversations, the Answer mentions not a single communication between Wagner and Paul Wagner relating to archiving, forwarding, or transmitting emails.  The Answer omits any written communications.  Further, the assertion that Hypertouch does not speak for BSI is irrelevant if it has the information in its possession, custody, or control.  *Steel*, 237 F.R.D. at 564.

## I.   The Answer to Interrogatory 17 Is Deficient.

### 1.   Holdings' Interrogatory 17 and Hypertouch's Answer.

Identify with Specificity all Communications that you have had with Paul A. Wagner/BSI regarding the ownership of the domain name hypertouch.com.

**HYPERTOUCH'S OBJECTIONS AND RESPONSES:**

Hypertouch objects that the interrogatory is overbroad and vague; objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties; objects to the extent that this Interrogatory duplicates prior interrogatories; objects to the extent that this Interrogatory exceeds the limit on the number of interrogatories that may be issued. HYPERTOUCH objects to the extent the Interrogatories exceed 25 in number, including sub-parts and interrogatories from WAUSA. HYPERTOUCH asserts that since WAH has no claims against him in this suit, the Interrogatories of WAH should be added to the number issued by WAUSA, who uses WAH to serve additional interrogatories to escape the limit of 25.
Without waiving these objections, Hypertouch states:
Beyond Systems has always been the owner of the Hypertouch.com domain name since it was first registered in 1997. In 1997 when .11W first invented the business name Hypertouch, as he was operating as a dlb/a. After reading the terms for registering a domain name he concluded that only a corporation was allowed to register a .COM domain name. He asked Paul Wagner that since Hypertouch was a d/b/a, would BSI be willing to register the domain name and let Hypertouch use it. He agreed.
Hypertouch does not speak for BSI in this answer. Hypertouch expressly reserves the right to supplement this Response should additional information become available.

### 2.   Hypertouch Should Provide A Complete Answer To Interrogatory 17.

Hypertouch's objections should again be denied.  It objects that the Interrogatory is "overbroad and vague," but doesn't say why.  It complains that this Interrogatory "duplicates

prior interrogatories", which is nonsense given this is the First Set of Interrogatories from Holdings to Hypertouch.  The relevancy objection should also be overruled because it goes to the central issue of why BSI purports to own hypertouch.com.  The purported ownership by BSI of Hypertouch's trademarked name, Hypertouch, in the domain name, hypertouch.com[7], is very odd.  It is all the stranger given that  the domain is hosted exclusively on Hypertouch servers and the exclusive technical contacts for the domain are Hypertouch or Joseph Wagner.  This is relevant to the Third Trial Issue.  *See* DE 544, p. 2, ¶ 1.

The Answer is completely non-responsive.   This Interrogatory asked for all communications that Hypertouch has had with Paul Wagner/BSI regarding ownership of hypertouch.com.  The Answer provides one communication in 1997.  It provides no references to any communications after 1997.  The Interrogatory Answer requires the Court to assume that Hypertouch and BSI had one communication concerning the ownership of BSI's alleged ownership of hypertouch.com, and that the matter was not discussed again for the ensuing thirteen (13) years.  Moreover, the Answer provides no email references.  Thus, the Answer is incomplete and evasive.  Hypertouch should be compelled to provide a better Answer.

**J.  The Answer to Interrogatory 18 Is Deficient.**

**1.      Holdings' Interrogatory 18 and Hypertouch's Answer.**

Identify with Specificity (by model and serial numbers, and type) all Computer Equipment that both Hypertouch/Joseph Wagner and BSI/Paul Wagner use.

**HYPERTOUCH'S OBJECTIONS AND RESPONSES:**
Hypertouch objects that the interrogatory is overbroad and vague; objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at

---

[7] The addition of a .com to a domain name that contains a trademark is a distinction without a difference under the Lanham Act. Both are equally entitled to the protection of the same trademark under the Lanham Act.  15 U.S.C. § 1125(d)(1)(A)(i)(I);  *Virtual Works, Inc. v. Volkswagen of America, Inc.*, 238 F.3d 264, 269 (4th Cir. 2001) (protecting vw.net based on VW mark); *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1055 (9th Cir. 1999) (protecting moviebuff.com based on Moviebuff mark).

DE 544 and as agreed by the Parties; objects to the extent that this Interrogatory duplicates prior interrogatories; objects to the extent that this Interrogatory exceeds the limit on the number of interrogatories that may be issued. HYPERTOUCH objects to the extent the Interrogatories exceed 25 in number, including sub-parts and interrogatories from WAUSA. HYPERTOUCH asserts that since WAH has no claims against him in this suit, the Interrogatories of WAH should be added to the number issued by WAUSA, who uses WAH to serve additional interrogatories to escape the limit of 25.

Without waiving these objections, Hypertouch states:

See Hypertouch's objections and answer to WAUSA's Interrogatory #1.

### 2.      Hypertouch Should Provide A Complete Answer To Interrogatory 18.

Hypertouch's recycled, but meritless, objections should again be denied. It objects that the Interrogatory is "overbroad and vague," but doesn't say why. It complains that this Interrogatory "duplicates prior interrogatories", which is nonsense given this is the First Set of Interrogatories from Holdings to Hypertouch. It objects to relevancy despite the germane nature of an Interrogatory that would identify shared Computer Equipment between the two companies, which is directly relevant to the "nature of the relationship" between BSI and Hypertouch. To understand the relationship between BSI and Hypertouch, the jury needs to have a roadmap of all of the connections: the precise descriptions of the shared Computer Equipment, the owner of the shared Computer Equipment, where that shared Computer Equipment is located, when that location changed, the IP Addresses associated with each item of shared Computer Equipment, the Domains hosted on each item of shared Computer Equipment, the shared Customers, the shared Domains, the shared IP Addresses, and the flow of electronic mail traffic between the two companies. Defendants' objectives in propounding these and other Interrogatories is to cast light upon them so that the jury can examine them in detail. Wagner, BSI, and Hypertouch's objectives have been to shroud those connections in as much mystery as possible, re-word the questions, answer questions not asked, and force motions to be filed to extract every single morsel of detail -- bit by bit.

This Interrogatory Answer is a blueprint for the entire Hypertouch-BSI strategy. The Interrogatory calls for the identification of all Computer Equipment that *both* BSI and Hypertouch use. The Answer provides a reference to Interrogatory 1, which does *not* answer the question. Interrogatory 1 related to the services provided by Hypertouch to BSI, and did not identify the specific Computer Equipment shared by both companies. Thus, this Answer is also completely non-responsive.

### K.  The Answer to Interrogatory 19 Is Deficient.

#### 1.  Holdings' Interrogatory 19 and Hypertouch's Answer.

Identify all Computer-Related Services that Hypertouch/Joseph Wagner currently provide or, at any time in the past, to Benjamin Haller, Keewon Haller a/k/a Keewi Haller, and/or Stick Software.

**HYPERTOUCH'S OBJECTIONS AND RESPONSES:**

Hypertouch objects that the interrogatory is overbroad and vague; objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties; objects to the extent that this Interrogatory duplicates prior interrogatories; objects to the extent that this Interrogatory exceeds the limit on the number of interrogatories that may be issued. HYPERTOUCH objects to the extent the Interrogatories exceed 25 in number, including sub-parts and interrogatories from WAUSA. HYPERTOUCH asserts that since WAH has no claims against him in this suit, the Interrogatories of WAH should be added to the number issued by WAUSA, who uses WAH to serve additional interrogatories to escape the limit of 25.
Without waiving these objections, Hypertouch states:
Hypertouch currently provides or has provided in the past to Benjamin Haller, Keewon Haller, and/or Stick Software upstream Internet connectivity, as well as DNS, email, web hosting, computer support, repair and upgrade services. Hypertouch also references Ben Hailer's declaration filed in Hypertouch 's Motion to Dismiss.

#### 2.  Hypertouch Should Provide A Complete Answer To Interrogatory 19.

After reciting the usual litany of boilerplate objections, all of which have been addressed at length above, Hypertouch objects that the Request is not relevant. However, the Request is geared at showing the nature of Hypertouch's business, and whether it has any real customers, or

is simply a cover for a spam-litigation mill.  This Interrogatory asks for all Computer Related Services that Hypertouch provides to Wagner family friends and current Canadian residents, Keewon Haller and Ben Haller.  The Answer is evasive, and states that Hypertouch "currently provides *or* has provided in the past to Benjamin Haller, Keewon Haller, and/or Stick Software upstream Internet connectivity, as well as DNS, email, web hosting, computer support, repair and upgrade services." For starters, the Answer avoids stating whether the Computer Related Services are currently provided.  Then, the Answer is very vague in referring "in the past," but provides no specific dates. Moreover, the Answer is entirely devoid of a specification of the precise services rendered to this Customer, but instead just refers vaguely to "DNS, email, web hosting, computer support, repair and upgrade services."  Thus, the Answer is incomplete.

### L.  The Answer to Interrogatory 20 Is Deficient.

#### 1.  Holdings' Interrogatory 20 and Hypertouch's Answer.

20. Identify with Specificity how Hypertouch/Joseph Wagner furnish or provide Jane Bihn with an electronic mail account.  Identify how does Jane Bihn access the electronic mail account.

**HYPERTOUCH'S OBJECTIONS AND RESPONSES:**

Hypertouch objects that the interrogatory is overbroad and vague; objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties; objects to the extent that this Interrogatory duplicates prior interrogatories; objects to the extent that this Interrogatory exceeds the limit on the number of interrogatories that may be issued. HYPERTOUCH objects to the extent the Interrogatories exceed 25 in number, including sub-parts and interrogatories from WAUSA. HYPERTOUCH asserts that since WAH has no claims against him in this suit, the Interrogatories of WAH should be added to the number issued by WAUSA, who uses WAH to serve additional interrogatories to escape the limit of 25.
Without waiving these objections, Hypertouch states:
Hypertouch provides Jane Bihn with an email address at the domain name bihn.org. Jane Bihn is able to access her email account via POP, IMAP and webmail interfaces. To the best of Hypertouch's knowledge, Jane Bihn typically accesses her account using Eudora software downloading the email via POP but it does not monitor how

she accesses it. Hypertouch also references Jane Bihn's declaration filed in Hypertouch's Motion to Dismiss.

### 2.  Hypertouch Should Provide A Complete Answer To Interrogatory 20.

Hypertouch's repetitive objections have been addressed at length, and Interrogatory 20 is relevant for the same reason as Interrogatory 19 -- it relates to Hypertouch's status and relation with BSI.  This  Interrogatory specifically asks with specificity how Hypertouch furnishes Jane Bihn with an account.   The answer is half-responsive because it does not answer the Interrogatory by identifying *how* it is that Hypertouch furnishes her with an email address.   In other words, Hypertouch states that it "provides Jane Bihn with an email address at bihn.org," but does not identify with Specificity "*how* Hypertouch/Joseph Wagner furnish or provide Jane Bihn with an electronic mail account."   Hypertouch has parroted the language of the question, but not answered it.

### M. The Answer to Interrogatory 21 Is Deficient.

### 1.  Holdings' Interrogatory 21 and Hypertouch's Answers.

Identify with Specificity all Computer-Related Services that Hypertouch/Joseph Wagner provide to Julienne Correa and/or Pronto Labels. Identify how precisely Hypertouch/Joseph Wagner furnish or provide Julienne Correa and/or Pronto Labels with access to the internet.

**HYPERTOUCH'S OBJECTIONS AND RESPONSES:**
Hypertouch objects to the compound nature of the Interrogatory. Hypertouch objects that the interrogatory is overbroad and vague; objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties; objects to the extent that this Interrogatory duplicates prior interrogatories; objects to the extent that this Interrogatory exceeds the limit on the number of interrogatories that may be issued. HYPERTOUCH objects to the extent the Interrogatories exceed 25 in number, including sub-parts and interrogatories from WAUSA. HYPERTOUCH asserts that since WAH has no claims against him in this suit, the Interrogatories of WAH should be added to the number issued by WAUSA, who uses WAH to serve additional interrogatories to escape the limit of 25.
Without waiving these objections, Hypertouch states:
Hypertouch has provided Julienne Correa and/or Pronto Labels with as DNS, email, web hosting, computer support, and consulting services. Hypertouch also references

Julienne Correa's declaration filed with Hypertouch's Motion to Dismiss. Hypertouch does not provide Julienne Correa and/or Pronto Labels with upstream connectivity, but Julienne Correa and her business Pronto Labels would not be accessible to the rest of the Internet without Hypertouch's services.

### 2.   Hypertouch Should Provide A Complete Answer To Interrogatory 21.

Hypertouch's recycled objections have been addressed at length, and Interrogatory 20 is relevant for the same reason as Interrogatories 19 and 20 -- it relates to Hypertouch's status and relation with BSI.   The Interrogatory asks Hypertouch to identify with specificity the services provided to Pronto Labels and Julienne Correa  -- a purported Hypertouch customer. The Answer is half responsive because it does not identify precisely what are the Computer-Related Services rendered to her and ProntoLabels.   Nor does it identify when the Computer-Related Services were rendered.   It also does not identify what the Computer-Related Services are that are provided that enable her to access the internet.   It states that without Hypertouch's services, she would not be able to access the internet, but it does not state what the services are.   Holdings is left guessing at what it is that Hypertouch provides, and it certainly does not answer how Hypertouch provides her with access to the internet.

### N.   TheAnswer to Interrogatory 22 Is Deficient.

#### 1.   Holdings' Interrogatory 22 and Hypertouch's Answer.

Identify with Specificity all Computer-Related Services that Hypertouch/Joseph Wagner provide to Niels Smaby or Smaby.org. Identify with Specificity how precisely Hypertouch/Joseph Wagner furnish or provide Niels Smaby with an electronic mail account. How does Niels Smaby access the electronic mail account.

**HYPERTOUCH'S OBJECTIONS AND RESPONSES:**

Hypertouch objects to the compound nature of the Interrogatory.  Hypertouch objects that the interrogatory is overbroad and vague; objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties; objects to the extent that this Interrogatory duplicates prior interrogatories; objects to the extent that this Interrogatory exceeds the limit on the number of interrogatories that may be issued. HYPERTOUCH objects to the extent

the Interrogatories exceed 25 in number, including sub-parts and interrogatories from WAUSA. HYPERTOUCH asserts that since WAH has no claims against him in this suit, the Interrogatories of WAH should be added to the number issued by WAUSA, who uses WAH to serve additional interrogatories to escape the limit of 25.
Without waiving these objections, Hypertouch states:
Hypertouch provides Niels Smaby upstream Internet connectivity, as well as DNS, email, web hosting, computer support, and consulting services. Hypertouch also references Niels Smaby's declaration filed with Hypertouch's Motion to Dismiss. Niels Smaby is able to access his email account via POP, IMAP and webmail interfaces. To the best of Hypertouch's knowledge, Niels Smaby typically accesses email sent to his account by having Hypertouch route a copy to an account he has with Google's Gmail or using Eudora software downloading the email via POP. However, Hypertouch does not monitor how he accesses it.

## 2.      Hypertouch Should Provide A Complete Answer To Interrogatory 22.

The Interrogatory requires Hypertouch to identify with specificity all services provided to Neils Smaby, who is the current owner of the California residence wherein the Hypertouch Servers are currently stationed.[8]   The Answer is completely non-responsive and just parrots the question. It just repeats the phraseology of the question, but does not say in Specificity what it is that Hypertouch provides to Niels Smaby. It states that "Hypertouch provides Niels Smaby upstream Internet connectivity, as well as DNS, email, web hosting, computer support, and consulting services," but it provides no detail on any of those Computer Related Services, such as what they are, when they commenced, and where they are rendered.   The Answer avoids stating how Hypertouch "provides" Niels Smaby with "upstream Internet connectivity," or what it means by the word "provides" in this context.   It also does not say exactly how Hypertouch provides him with an email account.   Thus, the answer is completely non-responsive.

### O.   The Answer to Interrogatory 23 Is Deficient.

#### 1.      Holdings' Interrogatories 23 and Hypertouch's Answer.

Identify with Specificity all Computer Related Services that Hypertouch/Joseph

---

[8] Hypertouch's repetitive objections have been addressed at length, and Interrogatory 22 is relevant for the same reason as Interrogatories 19 through 21 -- it relates to Hypertouch's status and relation with BSI.

Wagner provide to Jaime Vargas. Identify with Specificity how precisely Hypertouch/Joseph Wagner provide Jaime Vargas with access to the internet.

**HYPERTOUCH'S OBJECTIONS AND RESPONSES:**

Hypertouch objects to the compound nature of the Interrogatory.  Hypertouch objects that the interrogatory is overbroad and vague; objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties; objects to the extent that this Interrogatory duplicates prior interrogatories; objects to the extent that this Interrogatory exceeds the limit on the number of interrogatories that may be issued. HYPERTOUCH objects to the extent the Interrogatories exceed 25 in number, including sub-parts and interrogatories from WAUSA. HYPERTOUCH asserts that since WAH has no claims against him in this suit, the Interrogatories of WAH should be added to the number issued by WAUSA, who uses WAH to serve additional interrogatories to escape the limit of 25.

Without waiving these objections, Hypertouch states:

Hypertouch provides Jaime Vargas upstream. Internet connectivity, as well as DNS, email, web hosting, computer support, and consulting services. Hypertouch also references Jaime Vargas's declaration filed with Hypertouch's Motion to Dismiss. Jaime Vargas is able to access his email account via POP, IMAP and webmail interfaces. To the best of Hypertouch's knowledge, Jaime Vargas typically accesses email sent to his account by multiple means using IMAP on his computers and unknown protocols for the various PDAs he may use. However, Hypertouch does not monitor how he accesses it.

Hypertouch provides Jaime Vargas access to the Internet by connecting his computers via wired Ethernet and wireless WiFi connections to Hypertouch's routers on its network. The network's upstream providers have varied sometime including provisioning by two upstream providers at once.

## 2.        Hypertouch Should Provide A Complete Answer To Interrogatory 23.

The Interrogatory requires Hypertouch to identify with specificity all services provided to Jaime Vargas.[9]   The Answer is again vague and does not state in Specificity what are the Computer-Related Services provided to him.  Nor does it state *how* the services are provided to Jaime Vargas. Instead, it just parrots the language of the question itself.  Holdings asked how does he get provided with access to the internet by Hypertouch/Wagner, and Hypertouch responded that it provides him with upstream access to the Internet.  This is incomplete and non-responsive.

---

[9] The objections should be overruled for the same reasons as the objections to Interrogatories 19-22.

**P.  The Answer to Interrogatory 24 Is Deficient.**

**1.    Holdings' Interrogatory 24 and Hypertouch's Answer.**

24.  Identify each Server owned by Hypertouch/Joseph Wagner that BSI and/or Paul A. Wagner do not have Permission to access directly or remotely.

**HYPERTOUCH'S OBJECTIONS AND RESPONSES:**

Hypertouch objects that the interrogatory is overbroad and vague; objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties; objects to the extent that this Interrogatory duplicates prior interrogatories; objects to the extent that this Interrogatory exceeds the limit on the number of interrogatories that may be issued. HYPERTOUCH objects to the extent the Interrogatories exceed 25 in number, including sub-parts and interrogatories from WAUSA. HYPERTOUCH asserts that since WAH has no claims against him in this suit, the Interrogatories of WAH should be added to the number issued by WAUSA, who uses WAH to serve additional interrogatories to escape the limit of 25.
Without waiving these objections, Hypertouch states:
Paul Wagner/BSI have been highly trusted outside persons who have worked cooperatively with Hypertouch for more than a decade. Of the servers listed in Hypertouch's answer to WAUSA's Interrogatory #1, BSI/Paul Wagner does not have permission to access wiki.hypertouch.org, without request. BSI/Paul Wagner do not have permission to access physically any of the servers in California, without request.

**2.    Hypertouch Should Provide A Complete Answer To Interrogatory 24.**

The Interrogatory requires Hypertouch to identify each Server owned by Hypertouch that BSI does *not* have permission to access directly or remotely.  The Answer does not specify which remote Servers owned by Joseph Wagner and/or Hypertouch that Paul Wagner and/or BSI do not have Permission to access directly or remotely.

**Q.  The Answer to Interrogatory 25 Is Deficient.**

**1.    Holdings' Interrogatory 25 and Hypertouch's Answer.**

Identify with Specificity (model, serial, description, etc.) each Server owned by BSI or Paul A. Wagner that Hypertouch/Joseph Wagner do not have Permission to access for administrative or log-in purposes directly or remotely.

**HYPERTOUCH'S OBJECTIONS AND RESPONSES:**
Hypertouch objects that the interrogatory is overbroad and vague; objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at

DE 544 and as agreed by the Parties; objects to the extent that this Interrogatory duplicates prior interrogatories; objects to the extent that this Interrogatory exceeds the limit on the number of interrogatories that may be issued. HYPERTOUCH objects to the extent the Interrogatories exceed 25 in number, including sub-parts and interrogatories from WAUSA. HYPERTOUCH asserts that since WAH has no claims against him in this suit, the Interrogatories of WAH should be added to the number issued by WAUSA, who uses WAH to serve additional interrogatories to escape the limit of 25.

Without waiving these objections, Hypertouch states:

Hypertouch's access of BSI's network in DC is restricted to the two servers outside its firewall, www.hypertouch.com and dns4.hypertouch.com (a.k.a., dns2.linkcenter.net). Hypertouch does not have Permission to breach BSI's firewall, and thus is not aware of what servers are active behind the firewall, without request. Hypertouch's understanding is that there are non Apple computers both at BSI's Silver Spring and Rockville points of presence and if so, it does not have Permission to access to those, without request.

## 2.   <u>Hypertouch Should Provide A Complete Answer To Interrogatory 25.</u>

Hypertouch's objections to Interrogatory 25 have been addressed and length above and should be rejected here as well.  The Interrogatory requires Hypertouch to identify each Server owned by BSI and Paul Wagner that Hypertouch and Joseph Wagner have *no* Permission to access.  The Answer is completely non-responsive for several reasons.  First, it speaks to "Hypertouch's access to BSI's network in DC", but the Interrogatory asked for all Servers -- wherever located -- that Hypertouch does not have Permission to access.  Second, the Answer builds an artificial distinction in the District of Columbia between what is within and outside BSI's "firewall," but does not describe the parameters of the firewall, and which Servers -- located anywhere -- are either within or outside the firewall. The Answer is likewise non-responsive because it provides domain names, but the Interrogatory calls for the identification of specific Computer Equipment.   These are machines with names, descriptions, and serial numbers, not just fleeting references.  The reference to "non-Apple Computers" is also non-responsive.  In other Interrogatories, Hypertouch's principal, Joseph Wagner, admits he has been to the Silver Spring "point of presence" and his parent's apartment in Rockville, but somehow

cannot remember the "non Apple Computers" located therein.

### R.      Hypertouch Should Be Sanctioned.

Hypertouch should be sanctioned for three compelling reasons.  First, notwithstanding having been warned at the February 16, 2011 hearing by Magistrate Judge Charles B. Day about boilerplate general objections, Hypertouch lodged a torrent of unsupported general objections identical to many already overruled before.   The legal term for this is ignoring the Judge and wasting scarce judicial resources.   Second, as to each Interrogatory, Hypertouch objected repeatedly with a myriad meritless objections.    Finally, the answers to many of these Interrogatories were deliberately evasive, through the magic of re-wording the question.   Other answers just ignored unpleasant questions and still other answers were to every appearance flat out lies made under oath.

The Rules provide that this behavior is sanctionable.  *See* Rule 37(a)(4), Fed. R. Civ. P. ("For purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response, must be treated as a failure to disclose, answer, or respond").   The Court is no doubt aware that the BSI-Hypertouch parties have been sanctioned before (*see* DE 441, 444, 468, 484, 502, 605, 605, 606; *World Avenue USA, LLC v. William J. Wagner*, Case No. 09-557 (District of Columbia), DE 21 (awarding sanctions)).

Dated: April 27, 2011.

Respectfully submitted,

*Attorneys for World Avenue Holdings*

GREENBERG TRAURIG, LLP

   /s/
Sanford M. Saunders, Jr., Esq.
USDC, MD #4734
saunderss@gtlaw.com
Nicoleta Burlacu, Esq.
BurlacuN@gtlaw.com
*Admitted Pro Hac Vice*
GREENBERG TRAURIG, LLP
2101 L Street, NW, Suite 1000
Washington, DC 20037
Telephone:  202-331-3100
Facsimile:  202-331-3101

--and--

Kenneth Horky, Esq.
Florida Bar No. 691194
horkyk@gtlaw.com
John L. McManus, Esq.
Florida Bar No. 0119423
mcmanusj@gtlaw.com
*Admitted Pro Hac Vice*
GREENBERG TRAURIG, LLP
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, FL 33301
Telephone: 954-765-0500
Facsimile:  954-765-1477