## IN THE U.S. DISTRICT COURT FOR MARYLAND
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **BEYOND SYSTEMS, INC.** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **-vs-** | * | **Case No. 8:08-cv-00921-PJM** |
| | * | |
| **WORLD AVENUE U.S.A., LLC et al** | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

### THIRD PARTY DEFENDANT HYPERTOUCH, INC'S OPPOSITION IN RESPONSE TO DEFENDANT WORLD AVENUE HOLDINGS' MOTION TO COMPEL COMPLETE ANSWERS TO INTERROGATORIES RELATING TO THE AUGUST TRIAL

Third Party Defendant Hypertouch, Inc. ("Hypertouch"), by and through undersigned counsel, hereby submits its Opposition in Response to Defendant World Avenue Holdings, LLC's ("HOLDINGS" or "WAH") Motion to Compel Complete Answers to Interrogatories from Plaintiff BSI Relating to the August Trial, and on its behalf states as follows:

### I.        INTRODUCTION

The interrogatories are part of some 180 new written discovery requests issued by the Defendants purportedly aimed at the "Three Trial Issues" for the mini-trial now set for August 9, 2011.   These are in addition to the hundreds of requests issued by Defendants prior to the November 29, 2011 bifurcation.   The new sets are obviously designed to keep Plaintiff's busy and harassed.

The Motion is one of six motions to compel served by the Defendants on April

27, 2011, comprising 811 pages worth of material, not including an additional 142 page "show cause" motion.  The tactic of serving a rash of written discovery requests at the same time, then following up with "snap-shut" motions to compel based on hurried and incomplete "good faith" conferences, is a familiar pattern in this suit, as Defendants employed the same approach during 2010. The strategy is clearly intended to simply overwhelm their opponents with paper.  If the proponent has unlimited resources, as appears to be the case here, the strategy may succeed in keeping a smaller opponent preoccupied and perhaps off balance at times, at least during pre-trial activity.  We ask that this strategy not be permitted to impair a fair consideration of the merits, when that phase of the case finally arrives.

The Motion presents a set of follow-on questitons that would better be served, if they are permissible at all, in depositions. As per usual, Defendant portrays its opponents' responses as deliberately misleading and evasive. However, Defendant's rush to compel responses from Plaintiff and Third Party Defendants is really just kabuki theater for the benefit of the Court.

Hypertouch has stated objections while providing most of the information requested, and has further agreed, as a result of conferences between counsel, to revisit interrogatories 2, 7, 11, 15, 17, 18 with a view toward identification of responsive documents and information already provided in discovery, and to supplement its responses to those interrogatories where appropriate.   The agreed date for this supplementation is May 18, 2011.

In reality, Defendants already have all the information they could possibly require for the four-day August trial many times over and, ultimately, do not care if they receive the information they seek. Defendants' ultimate objective is to overload Hypertouch's capacity to respond to their ceaseless demands. Ultimately, there is no amount of discovery responses that will ever satisfy Defendant's demands for information – whether relevant or not.

## II.     BACKGROUND

### A.     Court's Admonitions Against Abusive Discovery Practices

At the motions hearing on November 29, 2010, Judge Messitte warned the parties about the pattern of excessive filings in this case, and its desire to see real progress on the merits of the issues between the parties or work at settling the case :

> *[W]e're going to get to this case on the merits. I'm telling you, we're going to get there and I'm going to make you do it, or you're going to settle it before that. And if you don't settle it, fine, but no more of this thousand paper, 2000 paper filing. It's just not helping things. Let's find out what's going on in all this business right now.*

*See* Exhibit A-2, (Messitte 11/29/11 Tr. ) at 97:6-11.

> *I'm not going to make this a case where one or two large law firms on the defense side get to flood the law firm on the plaintiff's side by overwhelming them with paper. That's not going to happen in this case.*

*See* Exhibit A-2 (Messitte 11/29/11 Tr. ) at 102:8-11.

Since that time, the Court has been insisting that the parties conduct a meaningful discovery conference in order to narrow the disputes between them. The Court reminded the parties that the discovery conference had to involve direct, live communication, rather than simply the passage of correspondence and email. This meaningful conference

3

requirement is embraced by the Local Rules of this Court, the Court's rulings in this case, and even the badly flawed Stipulated Discovery Order in this case.

### 1.    Local Rule 104.7

Local Rule 104.7 requires that the Parties conduct a meaningful discovery conference regarding the items in dispute prior to the serving of a Motion to Compel. *See* L.R. 104.7. Specifically, the Rule states :

> **7.    Conference of Counsel Required**
>
> Counsel shall confer with one another concerning a discovery dispute and make sincere attempts to resolve the differences between them. The Court will not consider any discovery motion unless the moving party has filed a certificate reciting (a) the date, time and place of the discovery conference, and the names of all persons participating therein, or (b) counsel's attempts to hold such a conference without success; and (c) an itemization of the issues requiring resolution by the Court.

*See* L.R. 104.7.

### 2.    Local Rule 104.8(b)

Local Rule 104.8(b) requires that the Parties conduct a meaningful discovery conference regarding the items in dispute prior to the serving of a Motion to Compel. *See* L.R. 104.8(b). Specifically, the Rule states :

> **b.    Conference of Counsel**
>
> Counsel are encouraged to confer with one another before or immediately after a motion to compel is served. If they are unable to resolve their disputes, counsel must hold the conference required by L.R. 104.7 after serving upon one another all of the documents relating to the motion to compel.

*See* L.R. 104.8(b).

**B.     The Court's November 30th Order and March 24th Order**

In the last paragraph of the Court's November 30th Order, Judge Messitte gave the

following admonition to the Parties and even provided his own emphasis in bold letters :

> 22.     Counsel for the parties are **STRONGLY URGED** to consult in
> good faith and attempt to resolve any differences of opinion before
> filing pleadings with the Court.

*See* DE 544, (PJM Order 11/30/10) at ¶ 22 (emphasis in original).

And Magistrate Judge Day warned during the March 24th hearing that the parties

should certify their disputes and talk prior to filing anything with the Court.  Specifically,

in referring to Counsel in this case and the disastrous record of resolving discovery

disputes, Magistrate Judge Day noted :

> [T]he two of you need to have a further dialogue as to those items that are
> pertinent to the August date, the August trial. And then whomever the
> moving party is needs to file a Certificate of Conference articulating the
> issues within that pending motion.
>
> There are a zillion Motions to Compel this and that, saying which items
> are in play. It may be Interrogatory Number 5 or Request for Document
> Number Seven. That will be a more efficient use of our limited resources
> here.

*See* Exhibit A-3 (03/24/11 CBD Hearing) at pp 8:23-25 to 9:1-6.  Defendant

resisted having an in-person discovery conference, relying on voluminous letters

instead, but eventually yielded and agreed to an in-person meeting in Bethesda on

May 10, 2011.  This meeting was re-convened by telephone on May 11, 2011, and

resulted in mutual compromises of position, at least in part, by both sides, and

exposed some of the parties' rationales for the positions taken, beyond the written

rhetoric.

5

### III.    DISPUTED ISSUES

We now respond to Holding's arguments on the disputed issues.

### Interrogatory 1.  Services provided by Hypertouch to BSI.

Hypertouch provided the information requested, describing the services provided. Interrogatory No. 1 says "Identify with Specificity all Computer Related Services..."; it does not say "Describe...," and the term, "Identify" is defined only as to persons and documents.  WAH defined "Computer-Related Services" to be a list of more than ten possible specific services.  Hypertouch answered the Interrogatory in part by identifying items from that list, with a comparable level of specificity.  WAH provides an entirely uninformative definition of "Specificity" -- specific as to what (dates, protocols, color, power consumption, reliability, etc.) and to what degree?

While it is not credible for WAUSA to pretend it does not fully understand what, for example, Hypertouch means when it identifies DNS services listing each DNS server, further inquiry can be had in deposition.  Testimony will explain that the documents show screen shots of 3 mail servers, a web server and a DNS server, as they were in operation during the principal era of the email activity that gives rise to this suit.  The redactions in the documents contain routing tables which in turn contain private information on Hypertouch users such as account names of individual users not associated with BSI, mailbox activity, and user access information.  The inquiry is about BSI and Paul Wagner, not others.

Hypertouch further invokes the laws of California to protect the privacy of its users. See for example, California Constitution, Article 1.  The state Constitution gives each citizen an "inalienable right" to pursue and obtain "privacy."

## 2.  Location of Computer Equipment.

Hypertouch has provided detailed information as to the locations of its servers. However, the Interrogatory asks for an unfathomable inventory of even the tiniest, irrelevant electronic items, including "microcips" and "racks" under its definition of Computer Equipment.  Hypertouch asked during the meeting between counsel on May 11, 2011 that the time frame and scope of the request be modified, but WAH has refused. Hypertouch has nevertheless offered to revisit this interrogatory to see if there is some manageable set of additional information that would not entail the full encyclopedic, 10-year listing sought, and will respond further by the supplementation date of May 18, 2011.

The Interrogatory says "Identify...," not "Describe...," and the term, "Identify" is defined only as to persons and documents.  WAH argues that it is entitled to a complete history of the locations of all "Computer Equipment," defined broadly in Definition 4 of the Interrogatories, to include "microchips, microcomputers (commonly referred to as "personal computers" or "PCs"), laptop computers, notebook computers, portable computers, palmtop computers (commonly referred to as "personal digital assistants" or "PDAs"), minicomputers, servers, routers, switches, hubs, modems, RAID arrays, UPS (battery backup), computer monitors, cooling equipment, external hard drives, input and output devices, peripherals, equipment racks, printers, scanners, webcams and all other devices or equipment that support, connect to or within a computer or computer network."  WAH seeks the information about all this equipment, according to its

Definition 32, "from January 1, 2000 to present." This creates an absurdly overbroad array of equipment that could conceivably be covered, and would impose a nearly impossible burden of identifying items used over the past eleven years, consisting of hundreds of pieces of equipment, including such items as mice, switches, routers, monitors, hard drives, thumb drives, cables, racks, etc., including all replacements made over time, and all replaced equipment. The phrase, "and all other devices or equipment that support, connect to or within a computer or computer network" is so broad that it would appear that the true goal of WAUSA is simply to create busy work for Hypertouch, rather than to pursue any information of relevance.

The answer to WAUSA Interrogatory 1 provides identification and location of Hypertouch's servers that provide Internet services to users. Hypertouch has provided server information and has been targeted for video inspection as well; there is no basis for the encyclopedic list of equipment of all sorts, for all time, that WAH seeks.

**Interrogatory 7.   Total Revenues of Hypertouch and/or Joe Wagner from Computer-Related Services.**

The Interrogatory says "Identify...," not "Describe...," and the term, "Identify" is defined only as to persons and documents. This question is not relevant to BSI's Maryland residency, BSI's standing as an ISP, or to Hypertouch's relationship with BSI. However prior to the court suspending merits discovery of WAUSA's action against Hypertouch, Hypertouch produced a document, CONFIDENTIAL-Hyp-WAUSA-0019467-Hyp-WAUSA-0019469 which on page Hyp-WAUSA-0019469 included a list

8

of revenue figures that is responsive to this Interrogatory. WAH has asked for clarification of some of the entries on this list, and Hypertouch has agreed to review and supplement the information as may be appropriate, by the supplementation date of May 18, 2011.

**Interrogatory 8.  Number of Hours each month that Joe Wagner spends on Education versus on Hypertouch.**

The Interrogatory says "Identify...," not "Describe...," and the term, "Identify" is defined only as to persons and documents. This Interrogatory is somewhat analogous to WAH's Interrogatory 14 ("Hours working in Maryland") to BSI. See those responses in BSI.Opp.WAH.MTC.pdf. The Interrogatory absurdly asks Hypertouch to recall the number of hours Joe Wagner spent outside of work. A definition for the Interrogatory states, "24. The present tense includes the past and future tenses," but does not give a starting date.

Interrogatory 8 states:

> 8. Identify with Specificity the number of hours each month that James Joseph Wagner spends on his post-graduate education versus business-related activities on behalf of Hypertouch.

In its motion, WAH fails to state why Mr. Wagner's educational activities are "directly relevant to the Trial Issues." WAH incorrectly says "Interrogatory 8 focuses on the role of Hypertouch and the nature of its business, which is the third issue for the August Trial." The Interrogatory does not seek Hypertouch's role, or the nature of its business, but rather the number of hours Joe Wagner spends at education versus Hypertouch. Further, the Third Issue is the relationship between BSI and Hypertouch,

not "the nature of its [Hypertouch's] business."

      WAH's motion ignores Hypertouch's objection...

> to the extent the Interrogatories exceed 25 in number, including
> sub-parts and interrogatories from WAUSA. HYPERTOUCH asserts that
> since WAH has no claims against him in this suit, the Interrogatories
> of WAH should be added to the number issued by WAUSA, who uses WAH

to

> serve additional interrogatories to escape the limit of 25."

      WAH incorrectly states:

> Hypertouch does not answer Interrogatory 8 at all, and his failure to
> do so is telling. It instead states that "the research conducted for
> [Wagner's] Ph.D and the value of his anticipated degree will provide
> in the future, make his hours of work directly supporting Hypertouch's
> endeavors."

In fact, Mr. Wagner did answer the Interrogatory.  Mr. Wagner will testify that the time related to his post-graduate education, which is essentially research, are "his hours of work [that] directly support[] Hypertouch's endeavors."  Thus all of Mr. Wagner's hours doing post-graduate research may be regarded as part of Hypertouch's research and development as an innovative company.  Mr. Wagner's post-graduate education is not "versus" Hypertouch's activities.  Mr. Wagner is receiving his Ph.D. at Stanford University with a history replete with graduate students and staff whose research effort were the basis of the companies that because titains of the Internet, for example Yahoo, Google, and Hewlett-Packard.  Sun Microsystems originally stood for "Stanford University Network."

      Hypertouch and Mr. Wagner do not maintain records that would enable either to quantify the time Joe Wagner spent at one activity or another, hour by hour since some

indefinite time in the past. It is therefore not practical or possible to determine the time division for the activities of Joe Wagner.

**Interrogatories 9-10, and 13.   Honeypots and the Honeypot E-mail Addresses.**

The Interrogatory says "Identify...," not "Describe...," and the term, "Identify" is defined only as to persons and documents.   These Interrogatories are similar to WAUSA's Interrogatory 12 ("Honeypots") to Hypertouch, and WAH's exceptions to Hypertouch's answers here are similar to WAUSA's exceptions.   Hypertouch incorporates its objections to WAUSA's motion to compel as to Interrogatory 12 by reference.

WAH states, "The Answer to Interrogatory 9 is non-responsive. It just refers back to the Answer to Interrogatory 1."  Hypertouch does not agree with the characterization , but nevertheless now informally supplementats its answer by incorporating its answer to WAUSA's Interrogatory 12 ("Honeypots") by reference.  Hypertouch already answered that it "placed email addresses in webpages that give notice of Hypertouch's email policy," that "[t]he websites cited are not a fake or a trap" and that "[t]here is only one email address on the [http://theserenitychair.com] website which is used by the website's owner."   "[M]anagement of ... E-Mail Addresses" is nonsensical where a wildcard address is used; a mail account can be managed, but the email addresses cannot."

Hypertouch fully answered Interrogatory 10, including the statement, "Hypertouch does not have the information requested."

Regarding Interrogatory 13, WAH states:

11

> The Answer states that Hypertouch does not monitor "harvested email addresses.  [sic -- no closing quotation mark] The Answer is not responsive to the Honeypot Email Addresses, and avoids the question posed.

To the contrary, Hypertouch explained that "a honeypot is a trap."  Normally spammers are detected by such traps when they harvest and spam to such email addresses (or sell them to other spammers).  Hypertouch further stated that "[t]he websites cited are not a fake or a trap" and, in particular, "Hypertouch does not monitor the receipt of emails sent to harvested addresses."

Defendant has not shown that the email addresses in question were used by BSI or any other client of Hypertouch's.  This Interrogatory is simply part of Defendant's fishing expedition, and the request for more information in response to this interrogatory should be denied.

### Interrogatory 11.   All Monies spent to improve storage capacity for electronic mail.

The Interrogatory says "Identify...," not "Describe...," and the term, "Identify" is defined only as to persons and documents.  WAH seeks a precise breakdown of all of Hypertouch's expenditures for storage capacity, which WAH now says spans "from January 1, 2000 to present." (even though the Interrogatory gave no date range).  Hypertouch has produced all the information it has on point.  Hypertouch does not have further records or recollection for such expenditures during the past 11.5 years.  Notwithstanding the foregoing, as a result of the conference between counsel on May 10-11, 2011, Hypertouch has agreed to review the figures provided to determine if they can

be allocated to storage versus other costs, and to supplement if any additional storage cost information is identified.

**Interrogatories 14 and 16.  Customers of BSI and also of Hypertouch.**

Hypertouch fully answered Interrogatory 14.  Joe Wagner is expected to testify that Hypertouch does not know which of BSI's clients actually pay for services that receive services from Hypertouch.  Consistent with its discovery responses in the Kraft case, Hypertouch will supplement its answers with emails from 13 clients who voluntarily agreed to be identified as such who have received email services from Hypertouch.  Hypertouch explains in both answers the categories of its service that utilize interactive computer services from BSI.  WAH is therefore incorrect when it states:

> Hypertouch claims that "all users of Hypertouch" are "receiving
> services from BSI".

Although Interrogatories 14 and 16 seek the identities of persons, WAH complains that Hypertouch "does not identify what those DNS servers are, ..."   Again, the effort is clearly to conveniently expand and re-write the Interrogatory, ignoring the actual wording.

**<u>Interrogatory 15.   Communications with BSI regarding archiving, forwarding, or retransmitting electronic mails sent to hypertouch.com.</u>**

 Hypertouch will testify, through Joe Wagner, that additional discussions between Hypertouch and BSI about mail routing and archiving only occurred during a change by BSI or Hypertouch to their mail system that would affect the other necessitating change by the other company. Those discussion would happen in real time ask that changes were

occurring with no record kept. Hypertouch will supplement with further description of the types of discussions

**Interrogatory 17.   Communications with BSI regarding ownership of hypertouch.com.**

In prior discovery Defendants have already sought, and Hypertouch has already produced, documents reflecting communications between it and BSI.  Hypertouch adds that BSI and Hypertouch rarely discussed "ownership" or who is the registrant of hypertouch.com.  There was some discussion of this in 1997 with the original registration of the domain, which has not changed since.   Hypertouch will supplement the response to this interrogatory pursuant to the conference between counsel.

**Interrogatory 18.   Identify Computer Equipment that both Hypertouch and BSI use.**

The Interrogatory says "Identify...," not "Describe...," and the term, "Identify" is defined only as to persons and documents.   The testimony is expected to be that Hypertouch does not know the serial numbers or the model of Hypertouch computer equipment that both Hypertouch and BSI used in the past, and even less so for BSI computer equipment.  Computer hardware is brought online, taken offline and swapped as conditions dictate without a record being made.  Furthermore, some machines are custom built and have no serial numbers

Hypertouch does not maintain records of the model, serial numbers and type of all its equipment, except if a label happens to be visible on an existing device. Hypertouch does not identify equipment by serial numbers, but rather by the machine's Fully

Qualified Domain Name ("FQDN") – e.g., mail.hasit.com or dns1.hypertouch.com. Using these commonly used identifiers, Hypertouch has already identified the Hypertouch equipment that BSI is permitted to use; the Interrogatory is duplicative of WAUSA's Interrogatory No. 4 to Hypertouch of February 4, 2011.

To make Hypertouch examine or recall every piece of equipment it has ever owned this way is absurdly burdensome and not likely to lead to the discovery of admissible evidence.  Hypertouch is willing to supplement with serial numbers of machines currently deployed by looking up their serial numbers as available via console, although WAH does not explain why this information would be relevant.  Joe Wagner could identify Hypertouch's machines by their physical appearance in his deposition. To retrieve the serial numbers of hard drives, computer memory, enclosures, etc would be extremely disruptive, compromising the services to users.  WAH fails to provide any cogent explanation as to why it supposedly needs Hypertouch to ferret out and provide every serial number on all computer equipment it ever had.  Pursuant to the conference between counsel on May 10-11, 2011, Hypertouch will supplement its response.

**Interrogatory 19.  Services to Benjamin Haller, Keewon Haller and/or Stick Software.**

WAH's Interrogatory 19 reads:

> Identify all Computer-Related Services that Hypertouch/Joseph Wagner currently provide or, at any time in the past, to Benjamin Haller, Keewon Haller a/k/a Keewi Haller, and/or Stick Software.

The Interrogatory says "Identify...," not "Describe..."  In its answer, Hypertouch identifies the specific Computer-Related Services that it provided to these clients.  It also

15

"references Ben Hailer's declaration filed in Hypertouch's Motion to Dismiss."  WAH ignores the declaration and complains that Hypertouch "provides no specific dates" and its "Answer is entirely devoid of a specification of the precise services rendered to this Customer."  However, the Interrogatory does not ask for dates and indeed does not ask for "Specificity" (WAH's vaguely-defined term).  By "Customer," WAH presumes that the Hallers are paying clients.

Hypertouch has fully responded to this Interrogatory, , however Hypertouch will supplement its responses


**Interrogatory 20.  Identify how Jane Bihn gets an email account.**

WAH's Interrogatory 20 seeks:

> Identify with Specificity how Hypertouch/Joseph Wagner furnish or
> provide Jane Bihn with an electronic mail account. Identify how does
> Jane Bihn access the electronic mail account.

The response is complete.  The Interrogatory says "Identify...," not "Describe...," and the term, "Identify" is defined only as to persons and documents.  In its answer, Hypertouch identifies the specific Computer-Related Services that it provided to this client.  It also "references Jane Bihn's declaration filed in Hypertouch's Motion to Dismiss."  WAH ignores the declaration and complains that Hypertouch "does not answer the Interrogatory by identifying how it is that Hypertouch furnishes her with an email address."  The bizarre Interrogatory is completely vague about how it wants Hypertouch to describe the manner of its furnishing the email address.  Does WAH mean, how did Hypertouch build its mail server?  Or how did it create a mailbox on the server

using the bihn.org domain name?  Or how Hypertouch does furnish the service on an ongoing basis by enabling access to her account via POP, IMAP and webmail interfaces, and providing tech support?  Or how does Ms. Bihn initiate provision of the service using an email program?   Ironically the Interrogatory asks for the answer to be "with Specificity," which itself is vaguely-defined by WAH.

Hypertouch has fully responded to this Interrogatory, but may elect to voluntarily expand on its response.

**Interrogatory 21.  Services to Julienne Correa and/or Pronto Labels.**

WAH's Interrogatory 21 seeks:

> Identify with Specificity all Computer-Related Services that Hypertouch/Joseph Wagner provide to Julienne Correa and/or Pronto Labels. Identify how precisely Hypertouch/Joseph Wagner furnish or provide Julienne Correa and/or Pronto Labels with access to the internet.

The answer is complete.  The Interrogatory says "Identify...," not "Describe...," and the term, "Identify" is defined only as to persons and documents.  In its answer, Hypertouch identifies the specific Computer-Related Services that it provided to these clients.  It also "references Julienne Correa's declaration filed in Hypertouch's Motion to Dismiss."  WAH ignores the declaration and complains that Hypertouch "does not identify precisely what are the Computer-Related Services" or "identify when the Computer-Related Services were rendered."

However, the Interrogatory asks for the answer to be "with Specificity," which itself is vaguely-defined by WAH.  Moreover, the Interrogatory does not ask for dates.

WAH further complains that Hypertouch "does not identify what the Computer-

Related Services are that are provided that enable her to access the internet"  in fact Hypertouch is quite specific that it does not provide her with upstream access as it does two locations in California.

WAH goes further and claims that it "is left guessing at what it is that Hypertouch provides, and it certainly does not answer how Hypertouch provides her with access to the internet."  The first half of this sentence is not true: Hypertouch stated "DNS, email, web hosting, computer support, and consulting services" and it referenced Julienne Correa's declaration.  The second half is misleading: Hypertouch does not provide her Internet access in the first place. Hypertouch's answer is clear, however, that the rest of the Internet would not be able to surf to Pronto Labels' website or to send Pronto Labels email for orders or customer service without Hypertouch's services because Hypertouch's provides Pronto Labels with its email and web hosting services. Hypertouch's web servers hosting Pronto Labels receive their upstream connectivity from Beyond Systems.  Hypertouch augments the services it provides Pronto Labels through secondary mail server and DNS services from Beyond Systems, to ensure a robust Internet presence even in the event of local failures.

Hypertouch has fully responded to this Interrogatory as required, but may elect to expand on its answer.

**Interrogatory 22.  Services to Niels Smaby or Smaby.org.**

WAH's Interrogatory 22 seeks:

> Identify with Specificity all Computer-Related Services that
> Hypertouch/Joseph Wagner provide to Niels Smaby or Smaby.org. Identify
> with Specificity how precisely Hypertouch/Joseph Wagner furnish or

> provide Niels Smaby with an electronic mail account. How does Niels
> Smaby access the electronic mail account.

The answer is complete.  The Interrogatory says "Identify...," not "Describe...," and the term, "Identify" is defined only as to persons and documents.  In its answer, Hypertouch identifies the specific Computer-Related Services that it provided to these clients.  It also "references Niels Smaby's declaration filed in Hypertouch's Motion to Dismiss."  WAH ignores the declaration and complains that Hypertouch "provides no detail on any of those Computer Related Services, such as what they are, when they commenced, and where they are rendered."

However, the Interrogatory does not ask for any such details.  It simply asks for the answer to be "with Specificity," which itself is vaguely-defined by WAH.

WAH further demands to know "how Hypertouch" provides Dr. Smaby with Internet connectivity, what Hypertouch means by the word "provides," and "how Hypertouch provides him with an email account." Unfortunately WAH's Interrogatory did not specify that the answer include any of these attributes.  It is clearly incorrect to say, "the answer is completely non-responsive."

Hypertouch has fully responded to this Interrogatory as required, but may elect to expand on its answer.

**Interrogatory 23.  Services to Jaime Vargas.**

WAH's Interrogatory 23 seeks:

> Identify with Specificity all Computer Related Services that
> Hypertouch/Joseph Wagner provide to Jaime Vargas. Identify with
> Specificity how precisely Hypertouch/Joseph Wagner provide Jaime
> Vargas with access to the internet.

The Interrogatory says "Identify...," not "Describe...," and the term, "Identify" is defined only as to persons and documents.  In its answer, Hypertouch identifies the specific Computer-Related Services that it provided to this client.  It also "references Jaime Vargas's declaration filed in Hypertouch's Motion to Dismiss."  WAH ignores the declaration and, in only 6 sentences, lodges its complaints: i.e., that Hypertouch "does not state in Specificity what are the Computer-Related Services" or "how the services are provided."

However, the Interrogatory does not ask for any such details.  It simply asks for the answer to be "with Specificity," which itself is vaguely-defined by WAH.

WAH further misleadingly complains that "Holdings asked how does he get provided with access to the internet by Hypertouch/Wagner, and Hypertouch responded that it provides him with upstream access to the Internet."  This is not an accurate recital of Hypertouch's answer.

WAH does not address the substance of Hypertouch's answer; instead, to quote its own terse accusation, WAH "just parrots the language of the question itself."

Hypertouch has fully responded to this Interrogatory as required, but may elect to expand on its answer.

**Interrogatory 24.  Hypertouch Servers that BSI does not have permission to access.**

WAH's Interrogatory 24 seeks:

> Identify each Server owned by Hypertouch/Joseph Wagner that BSI and/or Paul A. Wagner do not have Permission to access directly or remotely.

20

The Interrogatory says "Identify...," not "Describe...," and the term, "Identify" is defined only as to persons and documents.  WAH devotes a grand total of two sentences to raise its exception to this Interrogatory: sentence #1 restates the Interrogatory; sentence #2 appears to lodge a complaint.  However, WAH's one-sentence terseness makes it difficult to decipher how it wishes Hypertouch would change its answer.  First, it is not clear what WAH means by "remote Servers."  Remote to whom -- BSI or Hypertouch?  Second, that detail seems irrelevant, since the Interrogatory covers Servers accessed either "directly or remotely."

Regardless, Hypertouch listed its Servers in its answer to WAUSA's Interrogatory #1, and identified those which BSI/Paul Wagner do not have permission to access in this answer.  Sentence #2 appears to be incorrect.

Hypertouch has fully responded to this Interrogatory.


**Interrogatory 25.  BSI Servers that Hypertouch does not have permission to access.**

WAH's Interrogatory 25 seeks:

> Identify with Specificity (model, serial, description, etc.) each
> Server owned by BSI or Paul A. Wagner that Hypertouch/Joseph Wagner do
> not have Permission to access for administrative or log-in purposes
> directly or remotely.

The Interrogatory says "Identify...," not "Describe...," and the term, "Identify" is defined only as to persons and documents.  WAH complains that "The Answer is completely non-responsive."  It states that "the Interrogatory asked for all Servers,"

21

implying without proof that Hypertouch did not identify them all.

It now wants Hypertouch to "describe the parameters of the firewall, and which Servers -- located anywhere -- are either within or outside the firewall," though the Interrogatory does not specify this. Instead, Hypertouch properly identified the Servers that it does not have permission to access, as the Interrogatory asked.

WAH's confusion continues: "The Answer is likewise nonresponsive because it provides domain names, but the Interrogatory calls for the identification of specific Computer Equipment." Like BSI, Hypertouch does not identify Servers it uses by serial numbers, but rather by the machine's Fully Qualified Domain Name ("FQDN") - e.g., www.hypertouch.com and dns4.hypertouch.com.  FQDNs are a particular type of domain name.  Hypertouch does not know the serial numbers of BSI's machines.

WAH wonders how Joe Wagner "cannot remember the "non Apple Computers" located" in BSI's POPs in Silver Spring and Rockville, forgetting that these are computers owned by others, which he does not have permission to access and are in towns he rarely visits.  WAH criticizes Mr. Wagner that he "does not describe the parameters of the firewall, and which Servers -- located anywhere -- are either within or outside the firewall."  However he does describe the two machines outside BSI's firewall and as for inside the firewall or its parameters, that contradicts the very definition of a firewall whose intended purpose is not to allow examination of itself or the network it protects. Joe Wagner has never managed or accessed BSI's firewall, nor the network behind it.

It is not clear what else WAH wants Mr. Wagner to remember.  It is clear, however, that WAH should have asked BSI this Interrogatory instead.

22

Hypertouch has responded to this Interrogatory as fully as possible.

## CONCLUSION

For all these reasons, Defendant World Avenue Holdings, LLC's Motion to

Compel Complete Answers to Interrogatories Relating to the August Trial should be

denied.


_____/s/_____          _____05/11/11_____
Michael S. Rothman, Esq.                          Date
USDC MD Bar No. 14568
401 E. Jefferson Street
Suite 201
Rockville, MD 20850
Phone: (301) 251-9660
Fax: (301) 251-9610


/s/_____          _____05/11/11_____
Stephen H. Ring, Esq.                          Date
Stephen H. Ring, P.C.
USDC MD Bar No. 00405
506 Main Street, Suite 215
Gaithersburg, MD 20878
Phone: (301) 540-8181

*Attorneys for Third Party Defendant Hypertouch, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 11th day of May 2011, a copy of the foregoing

Reply was served upon the counsel named below via electronic mail :

Sanford M. Saunders, Jr., Esq.
USDC, MD #4734
GREENBERG TRAURIG, LLP
2101 L Street, NW
Suite 1000
Washington, DC 20037
202-331-3100
202-331-3101

Attorney[s] for World Avenue USA, LLC

_____/s/_____
Stephen H. Ring