## IN THE U.S. DISTRICT COURT FOR MARYLAND,
### SOUTHERN DIVISION

BEYOND SYSTEMS, INC.     )
                                 )
    Plaintiff           )
    v.                 )        Case No. PJM 08 cv 0921
                                 )
WORLD AVENUE USA, LLC, et al. )
    Defendants     )
_____ )

### DEFENDANT WORLD AVENUE USA, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL JAMES JOSEPH WAGNER TO PROVIDE COMPLETE ANSWERS TO INTERROGATORIES RELATING TO THE AUGUST TRIAL

Defendant/Third Party Plaintiff, WORLD AVENUE USA LLC ("WAUSA"), hereby submits its Memorandum of Points and Authorities in Support of its Motion to Compel Complete Answers to Interrogatories Relating To August Trial from Third Party Defendant, JAMES JOSEPH WAGNER ("Wagner"), as a result of his failure to respond completely to WAUSA's Interrogatories Relating to the August Trial. In support thereof, WAUSA states:[1]

## I.    INTRODUCTION.

The background of Beyond Systems, Inc.'s ("BSI") action against WAUSA for in excess of $100 million in alleged statutory damages for purported unsolicited commercial emails ("UCE"), and WAUSA's defense that BSI is not a *bona fide* Maryland resident, is not a *bona fide* interactive computer service provider, and that it conspired with Hypertouch, Inc. ("Hypertouch"), its principal, Wagner, and other members and friends of the Wagner family to funnel hundreds of thousands of e-mails to BSI for the very purpose of manufacturing spam

_____

[1] WAUSA has made a diligent effort to resolve the subject matter of this Motion with counsel for Wagner, but Wagner has failed to provide fulsome answers and to confer in an appropriate manner. *See* Local Rule 104 Certification, attached as Exhibit ("Ex.") 1.

litigation, is well-known to this Court and WAUSA will avoid repeating it.  Wagner's objections to the Interrogatories Relating to the August Trial should be overruled and Wagner should be compelled to provide fulsome answers to all the questions.  *See* Ex. 2-3.  In addition, Wagner should be sanctioned for stonewalling through the assertion of spurious objections as part of a pattern of dilatory practices deliberately designed to frustrate and prevent discovery.  The August trial is less than 4 months away and this behavior is prejudicing Defendants.

## II.     SUMMARY OF ARGUMENT.

The Court should enter an Order overruling Wagner's objections, and ordering complete Answers to the Interrogatories.  First, Wagner's General Objections to the Interrogatories should be overruled, and Hypertouch should be compelled to provide complete Answers for any information withheld by reason of the General Objections.  Second, Wagner's specific objections to Interrogatories 2-3, 5, 7, 12-13, 15-16, 18, 20-21, and 24 are all similarly  meritless and should be overruled.  Third, Wagner's Answers to Interrogatories 2-3, 5, 7, 12-13, 15-16, 18, 20-21, and 24 are as a whole incomplete and evasive, and Wagner should be compelled to provide more fulsome Answers.  Finally, Wagner should be sanctioned for his assertion of meritless general and specific objections and evasive and incomplete answers.

## III.     ARGUMENT.

### A.     Wagner's General Objections Should Be Overruled.

Wagner's General Objections are excessive, unfounded and fail to meet the legal standard necessary to be sustained.  First, Wagner's objection to the overbreadth and undue burden imposed by the Interrogatories should be overruled.  In Paragraph 2, Wagner objected "to the Instructions to the extent they are vague, ambiguous, overly broad, unduly burdensome, oppressive, and/or not reasonably calculated to lead to the discovery of admissible evidence."

2

*See* Ex. 3, p. 3, ¶ 2; *see also* Ex. 3, pp. 1-2, ¶¶ 1-2; p. 2, ¶¶ 4-5; p. 3, ¶¶ 2, 6.  However, Wagner did not support his General Objections with any record evidence of the purported burden, and thus, the General Objection should be overruled.  General objections to discovery requests, *e.g.*, overbroad, vague, ambiguous, and unduly burdensome, are improper because they are not sufficiently specific to allow a court to ascertain the objectionable character of discovery requests, nor does a general objection fulfill a party's burden to explain its objection.[2]  Wagner, as the party resisting discovery, must show specifically how each interrogatory request is deficient based upon each asserted objection, *e.g.*, what extraordinary effort is required to respond to an interrogatory designated "overbroad" or "unduly burdensome."  *See* Local Rules, Discovery Guideline 10(e).  This Court previously rejected similar general objections raised by BSI, represented by the same counsel as Wagner.  Specifically, during the oral argument on BSI's Motion for Reconsideration on WAUSA's Motion to Compel Discovery responsive to First Interrogatory Request, Judge Day stated:

> 21. The objections are boilerplate and most of them are
> 22. nonapplicable, objections such as "vague" or "ambiguous," or
> 23. whether it's burdensome with no supporting affidavit,
> 24. unspecified violations of plaintiff's right to privacy by rule,
> 25. law or regulation, objections about something being duplicative,
> 1. the assertions of attorney-client work product and other
> 2. privileges, which were all waived by disclosure in the Kraft
> 3. case, other agreements with third parties but no proffer of such
> 4. agreements being made.

*See* Feb. 16, 2011 Hearing Transcr. at pp. 73:21-25; 74:1-4, attached as Ex. 4.

Second, Wagner's objection on the grounds of privacy or privilege should be overruled because he has provided no Privilege Log relating to any of the General Objections which assert

---

[2] *See Burns v. Imagine Films Entertainment, Inc.*, 164 F.R.D. 589, 592-93 (W.D.N.Y. 1996); *Chubb Integrated Sys. Ltd. v. National Bank of Washington*, 103 F.R.D. 52, 58 (D.D.C. 1984).

privilege or privacy rights, and he has thus waived any privilege relating thereto.  *See* Ex. 3, p. 4, ¶¶ 5-6.  In this District, a party has a duty to particularize its claims of privilege.  *Equal Rights Center v. Lion Gables Residential Trust*, Case No. DKC 07-2358, 2010 WL 2483613, at *1, *6 (D. Md. June 15, 2010) (Chasanow, J.); *Victor Stanley, Inc. v. Creative Pipe, Inc*., 250 F.R.D. 251, 264 (D. Md. 2008) (Grimm, J.)  Failure to provide a Privilege Log violates Rule 26(b)(5) and Discovery Guideline 10(d) of the Local Rules and waives the privilege.  *See* Fed. R. Civ. P. 26(b)(5); Local Rules, Discovery Guideline 10(d); *Susko v. City of Weirton*, Case No. 5:-09-cv1, 2010 WL 2521423, at *1,  *2 (N.D.W.V. June 21, 2010) ("The plaintiff, however, never supplied a privilege log to allow the magistrate judge to asses the privilege claims, as required by Federal Rule of Civil Procedure 26(b)(5) … The plaintiff's objection, therefore, is improper.").  Thus, Wagner has waived any claim of privilege regarding any information withheld on the basis of this General Objection.

**B.      Wagner Should Be Compelled To Provide A   Complete Answer to Interrogatories 2 and 3 Pertaining to Wagner's Involvement in BSI Litigation.**

**1.      WAUSA's Interrogatories 2-3 and Wagner's Answer.**

2.  Identify with Specificity your involvement in BSI's/Paul Wagner's initiation of any litigation or arbitration, including sorting, sifting, and identifying e-mails and targets, and advising on claims, facts, and targets.

**WAGNER'S ANSWER**

WAGNER objects that the interrogatory is vague, ambiguous, overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. The term, "involvement" and "initiation," applied to the role of a non-lawyer, is unduly vague. WAGNER objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties. WAGNER objects that this Interrogatory duplicates prior interrogatories. Without waiving these objections, WAGNER states:

BSI and Hypertouch's mail servers and their users, like most ISPs, receive spam sent by the same spammer. For example Sebastian Barale/Planet Revenue's email address database includes a number of Hypertouch and BSI customers as well

4

as email addresses at WAGNER's Stanford University, Paul Wagner's Massachusetts Institute of Technology, their attorney's law firms, the various defendants' law firms, etc. BSI and Hypertouch cooperate in protecting their users including attempting to identify the spammers who are sending such messages to their servers. The initiation of litigation by BSI is entirely a decision by BSI. All services provided by WAGNER to BSI are in WAGNER's capacity as president of Hypertouch.

Discovery is continuing. WAGNER expressly reserves the right to supplement this Response should additional information become available.

3.  Identify with Specificity all consulting services that you provided to BSI or Paul Wagner in connection with any litigation or arbitration.

**WAGNER'S ANSWER**

WAGNER objects that the interrogatory is vague, ambiguous, overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. The term, "involvement" and "initiation," applied to the role of a non-lawyer, is unduly vague. WAGNER objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties. WAGNER objects that this Interrogatory duplicates prior interrogatories. Without waiving these objections, WAGNER states:

WAGNER has served as a consultant to BSI's attorneys during a number of BSI's cases to perform analysis on entails, to aid in the technical production of exhibits, and to analyze evidence developed during the course of the case.

>    2.    **Wagner Should Be Compelled To Provide A Complete Answer To Interrogatories 2 and 3.**
>
>          i.    **Interrogatories 2 and 3 Seeks Relevant Information Regarding The Nature of the Relationship Between BSI and Hypertouch.**

Interrogatory 2 asked Wagner to Identify with Specificity[3] his involvement in BSI's/Paul Wagner's initiation of any litigation or arbitration, including sorting, sifting, and identifying e-mails and targets, and advising on claims, facts, and targets.  Similarly, in Interrogatory 3, WAUSA asked Wagner to identify with Specificity all consulting services that he provided to

---

[3] WAUSA defined Specificity as:

>    Specificity means the quality or state of being specific.  To be precise.  The opposite of being vague.

*See* Ex. 2, p. 8, ¶ 20.

BSI or Paul Wagner in connection with any litigation or arbitration.  Interrogatories 2 and 3 seek information that is directly relevant to the third issue at trial, namely, the "nature of the relationship" between BSI and Hypertouch.  *See* DE 544, p. 2, ¶ 1.  Specifically at issue in the August Trial is whether "Mr. Joe Wagner, in fact, is doing anything other than manufacturing or sending these e-mails to his brother to allow these suits to be brought."  *See* Ex. 5, excerpted transcript of November 29, 2010 hearing.   The Court is already well aware that Wagner participates in the planning, drafting, initiation, and prosecution of spam litigation by his brother, Paul Wagner, and BSI, through BSI's now year-long crusade to avoid having to produce the Game Plan Document by flouting this Court's Orders compelling the production of the Game Plan Document, which spells out the plans during 2008 of the Wagner brothers to combine to bring tag-team lawsuits against selected deep pocket targets.  *See* DE 441 dated October 7, 2010 ("As the game plan document was not listed in a privilege log, it shall be produced"), attached as Ex. 6; DE 606 entered February 16, 2011 (denying Motion for Reconsideration of DE 441), attached as Ex. 7; Ex. 4 (excerpted transcript of February 11, 2011 hearing:  "Number one, the game plan memo, at first the plaintiff indicated that it had no responsive documents. That was set forth in electronic case file No. 272-2. Then plaintiff had claimed privilege but never provided a privilege log. Therefore, it was waived").

### ii.   Wagner's Objections To Interrogatories 2 and 3 Are Specious.

To avoid answering the question, Wagner lodges a phalanx of objections -- none of which have any merit.   First, Wagner has failed to support his objections of burden with evidence, and as such, the objections should be overruled.  *See* footnote 2, *supra*.; Ex. 4; Ex. 6. The Court should also take note that despite his failure to provide legally sufficient support for the objection,  Wagner's  objection that it is "unduly burdensome" to describe the extent of his

involvement in BSI and Paul Wagner's litigation is a very telling statement about the extent of the relationship between BSI and Hypertouch.  Second, Wagner objects that the Interrogatory is "vague, ambiguous, [and] overly broad," but fails to explain why, which requires that the objections be overruled.  *See* footnote 2, *supra*.; Ex. 4; Ex. 6.  Third, Wagner objects that this "duplicates prior interrogatories," which is untrue because this is WAUSA's first set of interrogatories to him, and Wagner does not identify those interrogatories that this question supposedly duplicates.  Fourth, Wagner's claims that as a non-lawyer, he does not know what the words "involvement" and "initiation" mean, is pathetic coming from a man who has spent 17 years pursuing his Ph.d. and his litigated numerous times in Courts throughout the country, while also claiming to be a litigation "consultant" in his brother's cases.  The Court should also note how frequently, when he finds it convenient, he makes use of dictionaries elsewhere in his Answers -- particularly when he wants to come up with a definition for a word that allows him to redefine a question to avoid answering it.  All of these objections should be overruled forthwith.

### iii.     The Answers To Interrogatories 2 And 3 Are Non-Responsive.

The Answers to Interrogatory 2 is non-responsive, and states:  "BSI and Hypertouch cooperate in protecting their users including attempting to identify the spammers who are sending such messages to their servers.  The initiation of litigation by BSI is entirely a decision by BSI.  All services provided by WAGNER to BSI are in WAGNER's capacity as president of Hypertouch."

Put simply, the Answer does not identify *what* the services are at all, *when* they were rendered, and in connection with *what* litigation and/or arbitration said services were rendered.  Instead, to avoid getting to the bottom of the relationship between BSI and Hypertouch, the Answer is a non-answer, and should be treated as a refusal to respond.  *See* Rule 37(a)(4), Fed.

7

R. Civ. P.  In any event, this is quite simple.  He should be ordered to provide a list of cases and an explicit list of each of the activities he engaged in each of those cases to select emails for litigation, to identify who he believed sent the emails, and anything else he did with respect to those cases.

Similarly, the Answer to Interrogatory 3 is also non-responsive, and states:  "WAGNER has served as a consultant to BSI's attorneys during a number of BSI's cases to perform analysis on emails, to aid in the technical production of exhibits, and to analyze evidence developed during the course of the case."  The Answer is similarly deficient.  It does not identify *what* the cases are at all, *when* they were rendered, and *what* exact work was being done.  The same list of cases mentioned above, coupled with a list of each specific consulting activity rendered in each of those cases, and the hours devoted to each and compensation therefor, should answer Interrogatory 3.

### C.     Wagner Should Be Compelled To Provide   A Complete Answer to Interrogatory 5

#### 1.     WAUSA's Interrogatory 5 and Wagner's Answer.

5.  Identify with Specificity all Servers where both BSI and Hypertouch use the same Server for their businesses.

**WAGNER'S ANSWER**

See # 4 above.

#### 2.     Wagner Should Be Compelled To Provide A Complete Answer To Interrogatory 5.

In Interrogatory 5, WAUSA asked Wagner to Identify with Specificity all Servers where both BSI and Hypertouch use the same Server for their businesses.  The requested information regarding shared Servers is directly relevant to the third trial issue, which is the nature of the relationship between BSI and Hypertouch.  *See* DE 544, p. 2, ¶ 1.

8

The requested Answer will assist in providing the jury with a geographic roadmap of *which* parties share the same Servers, *what* is the description of the Servers that are shared, *when* that roadmap changed over time, *where* BSI and Hypertouch house their Servers, and *why* BSI and Hypertouch so co-extensively share Servers.  Instead of providing that complete picture for the jury, Wagner leaves the answer shrouded in a mystery of Internet Protocol ("IP") Addresses[4] and machine names with no context whatsoever.  Servers are actual, specific machines with names and serial numbers.  This is not a question to shroud in the night and fog of IP addresses.

The Answer to Interrogatory 5 is non-responsive because it simply referred back to his Answer to Interrogatory 4.  Interrogatory 4 asked for an identification of all of the IP Addresses that both Hypertouch and BSI use.  The Answer to Interrogatory 4 is not a substitute for an Answer to Interrogatory 5.  Interrogatory 4 was about shared *IP Addresses*.  Interrogatory 5 is about shared *Servers*.  The Answer to Interrogatory 4, however, did not provide an *identification* of each Server, *where* it was located, and *when* it was used by both BSI and Hypertouch.  The definition of Specificity called for specific detailed information that Wagner did not provide. *See* footnote 3, *supra*.  WAUSA has no idea which machines are shared now, than before asking the question.  Thus, Wagner should be compelled to provide a thorough and complete Answer.

**D.     Wagner Should Be Compelled To Provide A   Complete Answer to Interrogatory 7**

---

[4] An IP Address is a numerical label assigned to each device (e.g., computer, printer) participating in a computer network that uses the Internet Protocol to communicate.
[6] *See* Ex. 9, DE 444, p. 2 ("These requests are reasonably calculated to lead to the discovery of admissible evidence pursuant to Fed. R. Civ. P. 26.  One of the issues is whether Plaintiff is a lawful provider of internet access.  The deposition testimony from an employee from Verizon provides at least a colorable argument that Plaintiff is not a lawful provider…Plaintiff shall provide full and complete answers to each interrogatory as they relate to Verizon DSL Service or Verizon FIOS for Business Service"); Ex. 10, DE 605 (denying reconsideration of DE 444).

1.      **WAUSA's Interrogatory 7 and Wagner's Answer.**

Identify how Hypertouch procured Sambar software for its Servers or Computer Equipment.

**WAGNER'S ANSWER**

WAGNER objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties. Without waiving these objections, WAGNER states:

Hypertouch downloaded it via a link from Sambar's website.

2.      **Wagner Should Be Compelled To Provide A Complete Answer To Interrogatory 7.**

Interrogatory 7 is directly relevant to the status of BSI as a *bona fide* interactive computer service provider and the nature of the relationship between BSI and Hypertouch.   In Interrogatory 7, Wagner was asked how Hypertouch procured Sambar software for its Servers or Computer Equipment.  Sambar server software was software available until approximately 2007 which provided for, among other things, administration privileges for a computer administrator for a computer server.  Hypertouch, Wagner, and/or BSI used Sambar server software as part of their e-mail processing, as evidenced by some of the e-mails produced in this case.  However, when subpoenaed for documents, Sambar produced the applicable End-user License Agreement for Sambar Server software that provided that the license to use the Sambar Server software was "for academic, research, and internal business purposes only."  *See* Ex. 8, WAUSA 0016 ("Sambar Technologies grants to the possessor of this copy (the Licensee) a royalty-free, non-exclusive right to use, copy, and modify the binary code of the Sambar Server, the sample source code, and any related documentation (the Software) ***for academic, research and internal business purposes only*** . . . .") (emphasis added).  Similar to BSI's impermissible use of Verizon's FIOS for Business Service -- which the Court has already ***twice*** found to be relevant[6] -- the Interrogatory regarding Sambar Software would tend to show if Hypertouch and BSI are

10

acting as *bona fide* internet computer service providers, and further, the nature of the relationship between Hypertouch and BSI respecting their use of the Sambar Software.

The Interrogatory sought to get to the *who*, *what*, *when*, *where*, and *why* of Hypertouch's use of the Sambar Software.  When it was downloaded, what terms and conditions applied, what limitations applied to use, should all be detailed.  However, Wagner avoided giving any detail, responding that Hypertouch "downloaded it via a link from Sambar's website."  Wagner does not state *when* he downloaded it, or any other particulars of the event.  Thus, the Answer is non-responsive and incomplete.

### E.   Wagner Should Be Compelled To Provide A Complete Answer to Interrogatory 12

#### 1.   WAUSA's Interrogatory 12 and Wagner's Answer.

Identify with Specificity all Computer Related Services that you or Hypertouch render to the International Conference on Rehabilitation Robotics.

**WAGNER'S ANSWER**

WAGNER objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties. Without waiving these objections, WAGNER states:

Hypertouch provides web, email and DNS hosting. All Computer Related Services that WAGNER provides to the Conference are in WAGNER's capacity as president of Hypertouch.

#### 2.   Wagner Should Be Compelled To Provide A Complete Answer To Interrogatory 12.

In Interrogatory 12, Wagner was asked to Identify with Specificity all Computer Related Services that Wagner or Hypertouch render to the International Conference on Rehabilitation Robotics.  A website relating to the International Conference on Rehabilitation Robotics, http://rehabrobotics.org, is one of the "Honeypot" or spam trap websites at issue in this case. Hypertouch programs and maintains websites that contain specific e-mail addresses embedded in

11

the source code for the purpose of collecting e-mail and suing on them.  These websites contain

e-mail addresses invisible on the face of the individual web pages that make up the website, but

are embedded in the source code of each web page.  For example, the site currently contains the

following e-mail addresses, among others, embedded in the source code:

```
<a href="mailto:thelmadewicorr10@hyperbackup.com">
<a href="mailto:igotchaicorr10@hyperbackup.com">
<a href="mailto:gotchaicorr10@hyperbackup.com">
<a href="mailto:porkchopicorr10@hyperbackup.com">
<a href="mailto:whereareyouicorr10@hypertouch.com">
<a href="mailto:havenoshameicorr10@hypertouch.com">
<a href="mailto:wicorrnewicorr10@hypertouch.com">
<a href="mailto:notrealicorr10@hypertouch.com">
<a href="mailto:icorrsupporticorr10@hypertouch.com">
<a href="mailto:NoUCEicorr10@hypertouch.com">
<a href="mailto:hereyouareicorr10@hypertouch.com">
<a href="mailto:wwwicorr2icorr10@hyperbackup.com">
<a href="mailto:krispy9icorr10@hyperbackup.com"> -->
```

The e-mails received at these addresses are either held by Hypertouch, re-transmitted to

BSI, or both, for the purpose of filing lawsuits.  This is directly relevant to whether BSI is a

*bona fide* interactive computer service provider, and the relationship between BSI and

Hypertouch.  This question is also straightforward and can be answered with objective, year by

year information on exactly what activities he engaged in for each year he has participated,

including in each year's annual convention (held in disparate locations around the world).

Wagner's Answer is evasive and non-responsive.  Wagner responded as follows to

Interrogatory 12:  "Hypertouch provides web, email, and DNS hosting."  The Answer is

incomplete.  It does not answer *what* services were specifically provided, *when* they were

provided, to *whom*, and using *what* mechanisms.  It does not answer what the web site is, what

domains are used, and what is meant by "web … hosting," *i.e.*, what is being hosted. It does not

answer what Wagner means by "in the past," or when that was.  It does not answer who

12

authorized Hypertouch to provide any services.  In short, the Answers are completely non-responsive and unhelpful, written by a professional litigant intent on providing as little information as possible regardless of what he is asked.

**F.      Wagner Should Be Compelled To Provide A  Complete Answer to Interrogatory 13**

      **1.      WAUSA's Interrogatory 13 and Wagner's Answer.**

Identify with Specificity all Computer Related Services that you or Hypertouch render to Phamily.com and Kien Pham.

**WAGNER'S ANSWER**

      WAGNER objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties. Without waiving these objections, WAGNER states:
Web, email and DNS hosting in the past, currently email hosting. All Computer Related Services that WAGNER provides to the Conference are in WAGNER's capacity as president of Hypertouch.

      **2.      Wagner Should Be Compelled To Provide A Complete Answer To Interrogatory 13.**

In Interrogatory 13, Wagner was asked to Identify with Specificity all Computer Related Services that you or Hypertouch render to Phamily.com (a site that used to contain content in the past) or Kien Pham, a Hypertouch acquaintance.

Again, this is an objective and straightforward question and again, Wagner's Answer is evasive and non-responsive.  Wagner responded as follows to Interrogatory 13:  "Web, email and DNS hosting in the past, currently email hosting." Wagner did not answer *what* services were specifically provided, *when* they were provided, to *whom*, and using *what* mechanisms.  It does not answer what the web site is, what domains are used, and what is meant by "web … hosting," *i.e.*, what is being hosted. It does not answer what Wagner means by "in the past," or when that was.  It does not answer who authorized Hypertouch to provide any services.  In short, the

Answers are completely non-responsive and unhelpful.

### G.      Wagner Should Be Compelled To Provide A Complete Answer to Interrogatories 15-16

#### 1.      WAUSA's Interrogatories 15-16 and Wagner's Answers.

15. Identify with Specificity, for each month from January 1, 2000 to date, the instances on which BSI or Paul Wagner have remotely accessed a Hypertouch/Joseph Wagner or BSI/Paul Wagner Server located in Maryland from Computer Equipment physically located outside the State of Maryland where the BSI computer operator was Physically Present outside the State of Maryland.

**WAGNER'S ANSWER**

WAGNER objects to this inquiry on the ground that it is vague, overbroad, compound, and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. WAGNER objects that the interval, "for each month from January 1, 2000 to date," reaches back eleven years, seeking data organized by month, for 132 months. WAGNER objects to the Request to the extent that it is not directly relevant to the mini-trial issues, and is redundant with earlier requests. WAGNER objects to the broad span of time, "for each month from January 1, 2000 to date," as unreasonably wide in scope.

WAGNER objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties. Without waiving these objections, WAGNER states:

WAGNER does not keep a record of this information. WAGNER does not have a record or detailed knowledge of Paul Wagner's transient locations during the course of the day. The Court has already ruled against production of server logs. Even such logs would not disclose where Paul Wagner was located at a particular point in time. Servers are rarely accessed via a keyboard, mouse and monitor directly connected to the server but are rather "remotely accessed"—even when the user is sitting right in front of the server. Often when "remotely accessing" one machine, the user connects from that remote server to another server including a chain that may lead through numerous machines and IP addresses including dynamic IP addresses.

16. Identify with Specificity, for each month from January 1, 2000 to date, the instances on which Hypertouch or you have remotely accessed a Hypertouch/Joseph Wagner or BSI/Paul Wagner Server located in Maryland from Computer Equipment physically located outside the State of Maryland where the BSI computer operator was Physically Present outside the State of Maryland.

**WAGNER'S ANSWER**

14

WAGNER objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties. Without waiving these objections, WAGNER states:

Neither WAGNER nor Hypertouch keeps a record of WAGNER' s local travels. However, every year since 1994, including 2010 WAGNER has been in California more than in any other state. Even if one were to take the unduly burdensome effort to attempt an inspection of server logs (a step against which the Court has ruled in discovery), they would not definitively disclose where WAGNER was located at a given point in time. Servers are rarely accessed via a keyboard, mouse and monitor directly connected to the server but rather via the broad term that "remotely accessed" covers—even when the user is sitting right in front of the server. Often when "remotely accessing" one machine one connects from that remote server to another server including a chain that may lead through numerous machines and IP addresses including dynamic IP addresses.

### 2.   Wagner Should Be Compelled To Provide A Complete Answer To Interrogatories 15 and 16.

In Interrogatories 15, WAUSA sought to get at the place where BSI and its sole employee and owner do their primary activities.  Similarly, Interrogatory 16 sought the instances on which Hypertouch/Wagner have remotely accessed either a BSI/Paul Wagner or Hypertouch/Wagner Server in Maryland from Computer Equipment outside the State of Maryland where the computer operator was Physically Present[7] outside Maryland.   The Interrogatories were necessary because Paul Wagner submitted a Declaration [*see* DE 344-3: filed 7/17/10, excerpt attached as Exhibit 11] stating:

In fact, I physically visit BSI's two Maryland points of presence frequently, and normally communicate with those sites by electronic means many times daily.  I do not recall World Avenue ever asking BSI to quantize the amount of time in each location where its personnel or agents work on BSI's ISP

---

[7] Holdings defined *Physically Present* as

The term Physically Present shall mean that a living, breathing Person is physically and actually located at a particular place or Location, rather than present virtually, or through virtual or other agents, daemons, or other virtual presence.

*See* Ex. 2, p. 9, ¶ 24.

FTL 108,119,082v3 4-27-11

or consulting business."

       * * *

       My father and I have different working hours at the Silver Spring, MD house, for different reasons.  He typically is up and out of the premises before rush hour.  I typically stop by in the evening and work late into the night.  It is not unusual that we would both enter and exit the same day without seeing each other.

       * * *

       The presence of remote access software on BSI's MD and DC computers does not indicate whether BSI personnel, or certain clients, spend time physically at those computers.  I frequently spend long hours at the Silver Spring location, as well as in DC, repairing, upgrading and configuring servers.

       * * * *

       I frequently work at the house or condo (or elsewhere) in Maryland, and sometimes stay overnight in Maryland.

*See* Ex. 11, DE 344-3.

### ii.    Wagner's Objections to Interrogatories 15-16 Are Specious.

Interrogatories 15-16 go to the heart of the issue of whether BSI is a *bona fide* resident of Maryland and the nature of the relationship between BSI and Hypertouch.  *See* DE 544, ¶ 1.  In an effort to distract attention from those crucial issues, Wagner raised a series of abusive and arm-waving excuses why he should not have to give a straight answer.  First, the objections state that the Interrogatories are overbroad, but fails to say why.  This question is specific and these objections are specious.  *See also* footnote 2, *supra*.; Ex. 4; Ex. 5.  Second, BSI complains that this Interrogatory is "redundant" with earlier "requests", which is nonsense because this is the First Set of Interrogatories from WAUSA to Wagner, and BSI does not identify the supposedly "redundant" Interrogatories.

Fourth, the objections state that the time frame of January 1, 2000 to present is "unreasonably wide in scope."  However, Magistrate Judge Charles B. Day did not restrict WAUSA when this issue was heard on February 16, 2011, or when this issue arose on two prior occasions when discovery issues concerning BSI's finances were heard on a prior Motion to

16

Compel or a prior Motion for Reconsideration.  *See* excerpt of February 16, 2011 hearing, p. 72, line 25-p. 73, line 1-2, attached as Ex. 4 ("Requiring the plaintiff to produce financial records from January of 2000 in my estimation is not unreasonable"); Ex. 9, DE 444, pp. 1-2 ("The period from 2000 to present is equally reasonable given that Plaintiff's claims are dated from 2004 to present").  All of these objections should be overruled.

### iii.    BSI Avoids Answering The Questions.

After his brother injected the issue into the case through the Declaration at Ex. 11/DE 344-3, and stating that he was never asked to "quantize the amount of time in each location where its personnel or agents work on BSI's ISP or consulting business", Wagner refuses to answer exactly that question.  For each Interrogatory, Wagner provided a typical non-answer: "Servers are rarely accessed via a keyboard, mouse and monitor directly connected to the server but are rather "remotely accessed"—even when the user is sitting right in front of the server. Often when "remotely accessing" one machine, the user connects from that remote server to another server including a chain that may lead through numerous machines and IP addresses including dynamic IP addresses."

This non-answer is unacceptable.  First, this is exactly what WAUSA instructed was unacceptable.  The definition of Physically Present means a "living, breathing Person is physically and actually located at a particular place or Location, rather than present virtually, or through virtual or other agents, daemons, or other virtual presence."  *See* Ex. 2, p. 9, ¶ 24. Wagner is not being asked whether the remote access occurred in the same room.  BSI is essentially claiming to be a *bona fide* resident of Maryland because its computers in Maryland run around the clock, and neither Wagner, Hypertouch, or BSI have provided any Answer whatsoever regarding the remote access. The Answer does not even attempt to quantify how

17

many times or how often that Paul Wagner or BSI remotely access the Hypertouch/Wagner Computer Equipment and Servers.

The Answer to Interrogatory 16 is even worse.  Wagner states that he does not keep a record of his travels, "every year since 1994, including 2010, Wagner has been in California more than in any other state."  This non-answer does not even attempt to quantify how many times or how often that Hypertouch or Wagner remotely access the Hypertouch/Wagner or BSI/Paul Wagner Computer Equipment and Servers located within Maryland.

BSI should answer each Interrogatory in full, or alternatively, the Court should preclude BSI from introducing any evidence at trial on the issue, except that BSI's computers are on around the clock.  This is a critical set of questions going to whether BSI is a *bona fide* resident of Maryland, and the relationship of BSI and Hypertouch, and BSI should not be permitted to hide behind a phalanx of abusive objections and non-responses.

Finally, although Wagner seeks to hide behind a prior order denying production of certain server logs, the Court has not ruled that information on server logs is entirely off limits.  Wagner should be required to look at one type of log reflecting remote access and provide whatever information it holds about the number of times that has occurred for as far back as the information is available.  That information is exceedingly important to the question of whether BSI and Hypertouch actually operate from where they say they do, or instead operate from somewhere else entirely and rarely go to the states in which they prefer to file suit.  In Hypertouch's case, the most recent remote access information, that since Joe Wagner moved to Massachusetts in 2010, would be not only the most accessible but also the most probative of whether Hypertouch is a California resident-ISP as it claims or instead a sham helping gin up lawsuits for both its own and BSI's benefit.

**H.**     **Wagner Should Be Compelled To Provide A Complete Answer to Interrogatory 18**

   **1.**     **WAUSA's Interrogatory 18 and Wagner's Answer.**

18. Identify with Specificity how often you or Hypertouch remotely access BSI/Paul Wagner Servers in the District of Columbia or Maryland, respectively.

**WAGNER'S ANSWER**

   WAGNER objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties. Without waiving these objections, WAGNER states:
   The term "BSI/Paul Wagner Servers" is undefined. The most obvious interpretation of it is in the sense of any server owned or hosted/co-located by BSI/Paul Wagner. WAGNER does not keep a record of such accesses, however, servers are accessed in a highly variable incidence, typically only occasionally, on the order of a few times a month or less, as updates need to be applied or a new domain needs to be setup.

   **2.**     **Wagner Should Be Compelled To Provide A Complete Answer To Interrogatory 18.**

   The same argument applies as to Interrogatories 15-16.  Similar to Interrogatories 15-16, in Interrogatory 18, Wagner was asked to identify how often Wagner or Hypertouch remotely access BSI/Paul Wagner's Servers in the District of Columbia or Maryland.  After taking the position in Interrogatories 15 and 16 that this would be burdensome to quantify the remote access, Wagner now flip-flops and states that the servers are "accessed in a highly variable incidence, typically only occasionally, on the order of a few times a month or less, as updates need to be applied or a new domain needs to be setup."  Wagner should be compelled to provide a complete answer to this Interrogatory specifying the instances of access.

**I.**     **Wagner Should Be Compelled To Provide A   Complete Answer to Interrogatory 20**

   **1.**     **WAUSA's Interrogatory 20 and Wagner's Answer.**

20. Identify with Specificity any Wireless Hotspot that is operated by Hypertouch/Joseph Wagner.

**WAGNER'S ANSWER**

WAGNER objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties. Without waiving these objections, WAGNER states:
Hypertouch operates wireless hotspots at its two points of presence in California where it provides Internet connectivity, previously identified. In addition, depending upon the need, Hypertouch's sever at Stanford's Center for Design Research is activated for limited periods of time.

### 2.   Wagner Should Be Compelled To Provide A Complete Answer To Interrogatory 20.

In Interrogatory 20, Wagner was asked to Identify with Specificity any Wireless Hotspot that is operated by Hypertouch/Joseph Wagner. Wagner responded that it "operates wireless hotspots at its two points of presence in California where it provides Internet connectivity, previously identified."  This is a evasive and incomplete answer.  Wagner does not provide the address or any other particulars regarding the supposed hotspots.  He does not identify what the "two points of presence are", where they are located, what wireless equipment is there, the range of the hotspot, or any other information whatsoever.  It refers back to something that was "previously identified," but does not say where it was identified, and, as set forth above, nothing was identified.

### J.   Wagner Should Be Compelled To Provide   A Complete Answer to Interrogatory 21

#### 1.   WAUSA's Interrogatory 21 and Wagner's Answer.

21. Identify with Specificity all Computer-Related Services that are rendered to Customers or Persons out of your current residence in Massachusetts.

**WAGNER'S ANSWER**

WAGNER objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties. Without waiving these objections, WAGNER states:

All Hypertouch Internet services to its customers are rendered by servers in CA or MD, or DC. Every year since 1994, including 2010, WAGNER has been physically in California more than in any other state.

### 2.   Wagner Should Be Compelled To Provide A Complete Answer To Interrogatory 21.

The answer to this question would be revealing for many of the same reasons as recent activity covered by Interrogatories 15 - 16 would be revealing.  In Interrogatory 21, Wagner was asked to Identify with Specificity all Computer-Related Services rendered out of Wagner's current residence in Massachusetts.  Rather than actually answer the question, Wagner states that "All Hypertouch Internet services to its customers are rendered by servers in CA or MD, or DC. Every year since 1994, including 2010, WAGNER has been physically in California more than any other state."

This Answer is non-responsive, and does not state what services are rendered in Massachusetts.  Instead, it just completely avoids the question altogether.

### L.   Wagner Should Be Compelled To Provide   A Complete Answer to Interrogatory 24

#### 1.   WAUSA's Interrogatory 24 and Wagner's Answer.

24. Identify with Specificity the name and Location of each Person that actually uses a domain name that you host for their business.

**WAGNER'S ANSWER**

WAGNER objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties. Without waiving these objections, WAGNER states:
Please refer to CONFIDENTIAL-Hyp-WAUSA-0096902-Hyp-WAUSA0096926 and the declarations in Hypertouch's Motion to Dismiss for customers that have agreed to be identified.

#### 2.   Wagner Should Be Compelled To Provide A Complete Answer To Interrogatory 24.

In Interrogatory 24, WAUSA sought Wagner to Identify with Specificity the name and

21

Location of each Person that actually uses a domain name that you host for their business. Instead of answering the Interrogatory, Wagner referred to CONFIDENTIAL-Hyp-WAUSA-0096902-HYP-WAUSA-0096926.  The document was not produced.  All of the Confidential-Hyp-WAUSA documents start with 001 or 002 on DVD 5 produced by Hypertouch and Wagner. No Confidential-Hyp-WAUSA document with this Bates Label exists.  Thus, the Answer is completely non-responsive.  Moreover, the document would need to identify the Persons that are ***actually using*** the domain name, as opposed to having Wagner/Hypertouch register a dormant domain name in the name of such Persons.  Accordingly, notwithstanding the possible existence of a document listing domains, Wagner should be compelled to provide a better answer that explains exactly who "actually uses" the domain.

### IV.    WAGNER SHOULD BE SANCTIONED.

Wagner should be sanctioned for three compelling reasons. First, notwithstanding having been warned at the February 16, 2011 hearing by Magistrate Judge Charles B. Day about boilerplate general objections, Wagner -- represented by the same counsel as BSI -- lodged a torrent of unsupported general objections identical to many already overruled before.  The legal term for this is ignoring the Judge and wasting scarce judicial resources.  Second, as to each Interrogatory, Wagner objected repeatedly with a myriad meritless objections.  Finally, the vast majority of the answers to these Interrogatories were just downright evasive, through the magic of re-wording the question and answering the question the way Wagner wanted it posed.  Other answers just ignored unpleasant questions and still other answers were to every appearance flat out lies made under oath.

The Rules provide that this behavior is sanctionable.  *See* Rule 37(a)(4), Fed. R. Civ. P. ("For purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response,

must be treated as a failure to disclose, answer, or respond").  The Court is no doubt aware that the BSI-Hypertouch parties have been sanctioned before (*see* DE 441, 444, 468, 484, 502, 605, 605, 606; *World Avenue USA, LLC v. William J. Wagner*, Case No. 09-557 (District of Columbia), DE 21 (awarding sanctions)).

To date, these sanctions have had no visible effect on these litigants' behavior as they repeat the sanctioned behavior with impunity.[8]  The Court has imposed monetary sanctions at least eight times in this case.  Yet, the behavior persists.  The caselaw cited before to this Court in other contexts states that striking pleadings is appropriate for litigants who commit a fraud on the judicial system.  But the Court has indicated it does not want to impose this penalty, and WAUSA respects that ruling.

Therefore, WAUSA respectfully suggests that the Court compel Wagner to fully, completely, truthfully and immediately answer these Interrogatories in a period of time not to exceed ten (10) days, award any monetary sanctions the Court deems appropriate, and exercise its power to issue adverse inference jury instructions if said answers are not forthcoming forthwith.

---

[8]     For example, on February 16, 2011, the Court entered three sanctions awards.  *See* DE 605 (sanctions for BSI's Motion for Reconsideration on Third Set of Interrogatories); DE 605 (sanctions for BSI's Motion for Determination of Timeliness And Sufficiency of Initial Rule 26(a)(2) Expert Designations And/Or For Extension of Time [DE 214-filed 4/20/10]); DE 606 (sanctions for BSI's Motion for Reconsideration on WAUSA's Fourth Request for Production). Notwithstanding the three February 16th sanctions Orders, BSI filed its next Motion for Reconsideration on March 2nd [DE 611] and again on the same issue on April 6th [DE 638] in a motion effectively seeking to revisit Magistrate Judge Day's rulings at the February 16, 2011 hearing.

Dated: April 27, 2011.

Respectfully submitted,

*Attorneys for World Avenue USA, LLC*

GREENBERG TRAURIG, LLP

___/s/_____

Sanford M. Saunders, Jr., Esq.
USDC, MD #4734
saunderss@gtlaw.com
Nicoleta Burlacu, Esq.
BurlacuN@gtlaw.com
*Admitted Pro Hac Vice*
GREENBERG TRAURIG, LLP
2101 L Street, NW, Suite 1000
Washington, DC 20037
Telephone:  202-331-3100
Facsimile:  202-331-3101

--and--

Kenneth Horky, Esq.
Florida Bar No. 691194
horkyk@gtlaw.com
John L. McManus, Esq.
Florida Bar No. 0119423
mcmanusj@gtlaw.com
*Admitted Pro Hac Vice*
GREENBERG TRAURIG, LLP
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, FL 33301
Telephone: 954-765-0500
Facsimile:  954-765-1477