**IN THE U.S. DISTRICT COURT FOR MARYLAND**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| BEYOND SYSTEMS, INC. | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| -vs- | * | Case No. 8:08-cv-00921-PJM |
| | * | |
| WORLD AVENUE U.S.A., LLC et al | * | |
| | * | |
| Defendants. | * | |
| _____ | * | |

**THIRD PARTY DEFENDANT JAMES JOSEPH WAGNER'S OPPOSITION IN RESPONSE TO DEFENDANT WORLD AVENUE USA, LLC'S MOTION TO COMPEL COMPLETE ANSWERS TO INTERROGATORIES RELATING TO THE AUGUST TRIAL**

Third Party Defendant James Joseph Wagner ("Wagner"), by and through undersigned counsel, opposes Defendant World Avenue USA, LLC's ("WAUSA") Motion to Compel Complete Answers to Interrogatories Relating to the August Trial.

### I. INTRODUCTION

According to the general counsel of WAUSA, "The Useful (WAUSA'S new name as of June, 2006) is an Internet marketing company that promotes products and/or services to the consuming public through third party affiliate networks and e-mail marketing companies." Homer Appleby Declaration, Exhibit 25 to Amended Complaint. The "World Avenue" family of companies, most of which reside under the same roof in Sunrise, Florida and in the U.S. Virgin Islands, have been in near-constant litigation over their spam-based marketing tactics since 2005. They might even be considered a "litigation factory," knowing that litigation is a natural and expected by-product of their law-taunting business practices.

When it comes to responsibility for the transmission of unlawful commercial emails (containing certain falsity or deception), the World Avenue companies are masters of denial, divorcing themselves from the emails, blaming the transmissions on rogues, "third parties," and supposed strangers for whom they deny responsibility. Yet these defendants furnish the scoundrels with the necessary tools and know-how, and pay them for the results of their efforts. This pattern of conduct by the World Avenue companies routinely exposes them to substantial civil damages under the state anti-spam laws, including those in play in this case. WAUSA claims its exposure is over $100 million.

Against this backdrop we have this suit, with docket entries now approaching 700 within 3 years, driven by a feverish filing of papers unlike any other case experienced by Judge Messitte, as he admonished counsel at the hearing on November 29, 2011. Plaintiff's counsel and their clients in this case, likewise, have never experienced such a frenetic series of filings, or repeated filings of such length, or such unnecessary complexity in the proceedings. Judge Messitte chided counsel for filings of "1,000 pages" and "2,000 pages." The Court issued the order of bifurcation, directing a mini-trial on limited issues, to stop a runaway train.

## II.  PROCEDURAL BACKGROUND

The interrogatories are part of some 180 new written discovery requests issued by the Defendants purportedly aimed at the "Three Trial Issues" for the mini-trial now set for August 9, 2011. This, in addition to the hundreds of requests issued by Defendants prior to the November 29, 2011 bifurcation. The new sets are obviously designed to keep Plaintiffs busy and harassed, and to provide more fodder for court filings.

The Motion is one of six motions to compel served by the Defendants on April 27, 2011, comprising 811 pages worth of material, not including an additional 142 page "show cause" motion. The tactic of serving a rash of written discovery requests at the same time, then following up with "snap-shut" motions to compel based on hurried and incomplete "good faith" conferences, is a familiar pattern in this suit, as Defendants employed the same approach during 2010. The strategy is clearly intended to simply overwhelm their opponents with paper. With seemingly unlimited resources, WAUSA can keep a smaller opponent preoccupied and off balance, at least during pre-trial activity. WAUSA tries to use procedure as a weapon, compensating for and distracting from its weaknesses on the merits. Defendants have now succeeded in turning the focus of the case on Plaintiff's standing to sue. While this is an important issue, we believe that trial will reveal that Defendants have grossly over-played it. Their use of fanfare, misdirection, grandiose overstatement and hyperbole will be plain for all to see. We ask that the Defendants' current procedural strategies not be permitted to impair a fair consideration of discovery issues, or ultimately, of the issues on the merits.

### III.   BACKGROUND

A.   **Court's Admonitions Against Abusive Discovery Practices**

At the motions hearing on November 29, 2010, Judge Messitte warned the parties about the pattern of excessive filings in this case, and its desire to see real progress on the merits of the issues between the parties or work at settling the case :

> *[W]e're going to get to this case on the merits. I'm telling you, we're going to get there and I'm going to make you do it, or you're going to settle it before that. And if you don't settle it, fine, but no more of this*

3

> *thousand paper, 2000 paper filing. It's just not helping things. Let's find out what's going on in all this business right now.*

*See* Exhibit A-2, (Messitte 11/29/11 Tr. ) at 97:6-11.

> *I'm not going to make this a case where one or two large law firms on the defense side get to flood the law firm on the plaintiff's side by overwhelming them with paper. That's not going to happen in this case.*

*See* Exhibit A-2 (Messitte 11/29/11 Tr. ) at 102:8-11.

Since that time, the Court has been insisting that the parties conduct a meaningful discovery conference in order to narrow the disputes between them. The Court reminded the parties that the discovery conference had to involve direct, live communication, rather than simply the passage of correspondence and email. This meaningful conference requirement is embraced by the Local Rules of this Court, the Court's rulings in this case, and even the badly flawed Stipulated Discovery Order in this case.

### 1.     Local Rule 104.7

Local Rule 104.7 requires that the Parties conduct a meaningful discovery conference regarding the items in dispute prior to the serving of a Motion to Compel. *See* L.R. 104.7. Specifically, the Rule states :

> **7.     Conference of Counsel Required**
>
> Counsel shall confer with one another concerning a discovery dispute and make sincere attempts to resolve the differences between them. The Court will not consider any discovery motion unless the moving party has filed a certificate reciting (a) the date, time and place of the discovery conference, and the names of all persons participating therein, or (b) counsel's attempts to hold such a conference without success; and (c) an itemization of the issues requiring resolution by the Court.

*See* L.R. 104.7.

2.   **Local Rule 104.8(b)**

Local Rule 104.8(b) requires that the Parties conduct a meaningful discovery conference regarding the items in dispute prior to the serving of a Motion to Compel. *See* L.R. 104.8(b). Specifically, the Rule states :

> b.   **Conference of Counsel**
>
> Counsel are encouraged to confer with one another before or immediately after a motion to compel is served. If they are unable to resolve their disputes, counsel must hold the conference required by L.R. 104.7 after serving upon one another all of the documents relating to the motion to compel.

*See* L.R. 104.8(b).

B.   **The Court's November 30th Order and March 24th Order**

In the last paragraph of the Court's November 30th Order, Judge Messitte gave the following admonition to the Parties and even provided his own emphasis in bold letters :

> 22.   Counsel for the parties are **STRONGLY URGED** to consult in good faith and attempt to resolve any differences of opinion before filing pleadings with the Court.

*See* DE 544, (PJM Order 11/30/10) at ¶ 22 (emphasis in original).

And Magistrate Judge Day warned during the March 24th hearing that the parties should certify their disputes and talk prior to filing anything with the Court. Specifically, in referring to Counsel in this case and the disastrous record of resolving discovery disputes, Magistrate Judge Day noted :

> [T]he two of you need to have a further dialogue as to those items that are pertinent to the August date, the August trial. And then whomever the moving party is needs to file a Certificate of Conference articulating the issues within that pending motion.

> There are a zillion Motions to Compel this and that, saying which items are in play. It may be Interrogatory Number 5 or Request for Document Number Seven. That will be a more efficient use of our limited resources here.

*See* Exhibit A-3 (03/24/11 CBD Hearing) at pp 8:23-25 to 9:1-6. Defendant resisted having an in-person discovery conference, relying on voluminous letters instead, but eventually yielded and agreed to an in-person meeting in Bethesda on May 10, 2011. This meeting was re-convened by telephone on May 11, 2011, and resulted in mutual compromises of position, at least in part, by both sides, and exposed some of the parties' rationales for the positions taken, beyond the written rhetoric.

### IV.  THE MOTION

The Motion presents a set of follow-on questions that would better be served, if they are permissible at all, in depositions. Merits depositions have yet to begin, despite the age of this case.

As per usual, WAUSA portrays its opponents' responses as deliberately misleading and evasive. However, its rush to compel responses from Plaintiff and Third Party Defendants is really just kabuki theater for the benefit of the Court.

Hypertouch has stated objections while providing most of the information requested, and has further agreed, as a result of conferences between counsel, to revisit interrogatories 2, 3, 15, 16, 18, 20, 21, and 24 with a view toward identification of responsive documents and information already provided in discovery, and to supplement its responses to those interrogatories where appropriate. The agreed date for this supplementation is May 18, 2011.

6

In reality, Defendants already have all the information they could possibly require for the four-day August trial many times over and, ultimately, do not care if they receive the information they seek. Defendants' ultimate objective is to overload Hypertouch's capacity to respond to their ceaseless demands. There is no amount of discovery responses that will ever satisfy Defendant's demands for information – whether relevant or not.

## V. DISPUTED ISSUES

**Interrogatories 2 and 3. Joe Wagner's Involvement in BSI Litigation.**

The Interrogatory says "Identify...," not "Describe...," and the term, "Identify" is defined only as to persons and documents. WAUSA asks for more detail concerning exactly what Joe Wagner has done in connection with spam litigation, beyond simply "attempting to identify the spammers," which is itself a major task, as World Avenue is well aware. WAUSA asks in follow-up that Mr. Wagner "Identify" more information, including "what" the services are, "when" they were rendered, and "what" litigation they pertained to. However, the word, "Identify" as defined by WAUSA does not include this "what" and "when" information as now specified in follow-up; the definition it applies, instead, to people and documents. The interrogatory itself does not require more information, but the topic may be suited for inquiry in deposition. Even so, in good faith, Wagner has offered to obtain additional detail, and to supplement. The topic is more suited for deposition inquiry than a series of written follow-up questions.

**Interrogatory 5.   Servers used by BSI and Hypertouch.**

The Interrogatory says "Identify...," not "Describe...," and the term, "Identify" is

defined only as to persons and documents. Joe Wagner's answer directly answers this interrogatory. See the response above, regarding WAUSA's Interrogatory 4 ("Permissions") to Hypertouch.. All of Hypertouch's and BSI's servers are clearly, completely and specifically identified by giving their FQDN and IP address. Joe Wagner will stand on his current response to this Interrogatory.

**Interrogatory 7.  How Hypertouch procured Sambar software.**

The Interrogatory says "Identify...," not "Describe...," and the term, "Identify" is defined only as to persons and documents. As indicated to counsel informally, Joe Wagner will testify that he does not know when the software was actually downloaded, but that the purchase date was approximately January 23, 2002.

**Interrogatory 12 & 13.  Hypertouch's Services to International Conference on Rehabilitation Robotics and  Phamily.com and Kien Pham.**

The Interrogatory says "Identify...," not "Describe...," and the term, "Identify" is defined only as to persons and documents. Web, email and DNS hosting have very specific meanings. Hypertouch described the services provided. While it is not credible for WAUSA to pretend it does not fully understand what, for example, Hypertouch answer means when it identifies DNS services including listing in other responses each DNS server. Further inquiry may be appropriate for a deposition. As indicated in the conference on May 10, Joe Wagner will stand on his original response to this Interrogatory.

**Interrogatories 15-16.   Every Remote Access by BSI from outside of Maryland since 2000.**

The Interrogatory says "Identify...," not "Describe...," and the term, "Identify" is defined only as to persons and documents.  This Interrogatory is substantially similar to WAH's Interrogatory 23 and 24 ("Remote Access") to BSI.  See those responses in BSI.Opp.WAH.MTC.pdf.  Wagner has offered to provide supplemental responses by May 18, 2011.  Wagner has asked WAUSA to tailor the time frame from the 10 years requested to the interval from January 1, 2004 to present, and WAUSA declined.  Wagner maintains his  objections on all points including the time frame, but will nevertheless supplement the response.

These interrogatories are also a prime example of the fishing expedition that WAUSA and Defendants are pursuing.  By the quantity of written requests (over 180 in 2011 alone) and their poor formulation and lack of precision, they are abusive.  Even attempting to roughly estimate minute-by-minute when BSI or Hypertouch staff were actively or otherwise accessing a BSI or Hypertouch server remotely, "from Computer Equipment physically located outside the State of Maryland where the BSI computer operator was Physically Present outside the State of Maryland," continually since 2000 would require speculation.  WAGNER has fully responded to the Interrogatory, and WAUSA cannot point to any information that would indicate otherwise.

These Interrogatories request that WAGNER obtain knowledge or conjure a recollection of the activities and physical location of Hypertouch and BSI personnel minute-by-minute since 2000, where no such records were kept.

These Interrogatories request that WAGNER determine, years after the fact, the physical location of each BSI computer operator (not the Hypertouch computer operator)

9

as well as any of their remote access activity.  It is therefore nonsensical for WAUSA to object. "First, BSI referred back to its Answer to Interrogatory 14, which is nonresponsive because Interrogatory 14 has nothing to do with remote access." Plaintiff incorporates by reference its objections to WAH's MTC for Interrogatories 14-15 and 17. Yet Defendant gives no clue what sort of records it believes might possibly divulge such information, or the whereabouts of Paul Wagner and other BSI employees or contractors continually since 2000. Plaintiff has no records or recollection of its minute-by-minute activities and whereabouts since 2000. Plaintiff does not know the answer to this Interrogatory beyond its current response.

Interrogatory 16 appears to be flawed in that it seeks to identify "instances on which Hypertouch" or Joe Wagner accessed a BSI or Hypertouch server in Maryland from "where the BSI computer operator was Physically Present outside the State of Maryland."  Hypertouch believes that has never occurred.  In its MTC, WAUSA deceptively miscites its own Interrogatories by saying "where the computer operator was Physically Present outside Maryland," omitting "BSI" before "computer operator."

Finally, WAUSA illogically argues that "although Wagner seeks to hide behind a prior order denying production of certain server logs, the Court has not ruled that information on server logs is entirely off limits.  Wagner should be required to look at one type of log reflecting remote access and provide whatever information it holds about the number of times that has occurred for as far back as the information is available." Retrieving, assembling and producing what would be the major part of a multitude of server logs -- i.e., "whatever information it holds [that pleases WAUSA] for as far back

as the information is available" -- is precisely the sort of exhaustive and intrusive exercise the Court has denied both sides numerous times in the past.  This is supposed to be a mini trial.

In WAH's motion to compel Plaintiff as to interrogatories regarding substantially the same Interrogatories, WAH specifically concedes in two place [pp. 19, 22] that the server logs are not necessary or sufficient to determine a computer operator's physical whereabouts:

> BSI objects that the Answer requires inspection of "server logs,"
> which is absurd because the Interrogatories require no such thing and
> no inspection of "sever [sic] logs" [server logs] would tell Wagner
> where he was on any given day.

Likewise, here WAUSA gives no indication as to what sort of records might possibly divulge the whereabouts of the "BSI computer operator" and other Hypertouch and BSI employees or contractors every hour since 2000. Hypertouch has no records or recollection of its minute-by-minute activities and whereabouts since 2000.  Plaintiff does not know the answer to this Interrogatory beyond its current response.  Critically, WAUSA has provided no evidence to the contrary.

**Interrogatory 18.  Every Remote Access by Hypertouch to BSI's Servers.**

The Interrogatory says "Identify...," not "Describe...," and the term, "Identify" is defined only as to persons and documents.  This Interrogatory is analogous to WAH's Interrogatory 23 and 24 ("Remote Access") to BSI.  Wagner has agreed to supplement with more detail by May 18, 2011, while preserving all objections.

11

**Interrogatory 20.  Wireless Hotspot operated by Hypertouch.**

The Interrogatory says "Identify...," not "Describe...," and the term, "Identify" is defined only as to persons and documents.  Hypertouch has identified with the address its two California points of presence, the Upland address and the Current CA Address. WAUSA has asked for a more specific answer that would spell out the addresses. Wagner questions the relevance of this information to the Three Trial Issues. WAUSA apparently contends that hot spots created or maintained by Hypertouch could have served as a means by which emails were gathered and then forwarded or routed to BSI for suit, and contends that some of the emails claimed in this case were so gathered.  Mr. Wagner's testimony, and the documentary evidence, will contradict this thesis, but Wagner has nevertheless supplement this response with more detail by May 18, 2011.

**Interrogatory 21.   Services rendered out of Wagner's residence in Massachusetts.**

The Interrogatory says "Identify...," not "Describe...," and the term, "Identify" is defined only as to persons and documents.  Without waiving any objections, Wagner has agreed to provide a supplemental response by May 18, 2011.

**Interrogatory 24.  Persons that use a domain name hosted by Hypertouch.**

The Interrogatory says "Identify...," not "Describe...," and the term, "Identify" is defined only as to persons and documents (not as to Location).  The documents, CONFIDENTIALHyp- WAUSA-0096902-HYP-WAUSA-0096926, which WAUSA says were not included in data produced in November, 2010,  will be produced

12

## VI. CONCLUSION

For all these reasons, Defendant World Avenue USA, LLC's Motion to Compel Complete Answers to Interrogatories Relating to the August Trial should be denied.

Respectfully submitted :

| | |
|---|---|
| /s/ | 05/11/11 |
| Michael S. Rothman, Esq. | Date |

USDC MD Bar No. 14568
401 E. Jefferson Street
Suite 201
Rockville, MD 20850
Phone: (301) 251-9660
Fax: (301) 251-9610

| | |
|---|---|
| /s/ | 05/11/11 |
| Stephen H. Ring, Esq. | Date |

Stephen H. Ring, P.C.
USDC MD Bar No. 00405
506 Main Street, Suite 215
Gaithersburg, MD 20878
Phone: (301) 540-8181

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on this 11th day of May 2011, a copy of the foregoing was served upon the counsel named below via electronic mail :

Sanford M. Saunders, Jr., Esq.
USDC, MD #4734
GREENBERG TRAURIG, LLP
2101 L Street, NW
Suite 1000
Washington, DC 20037

Attorney[s] for World Avenue USA, LLC

          _____/s/_____
               Stephen H. Ring