## IN THE U.S. DISTRICT COURT FOR MARYLAND,
## SOUTHERN DIVISION

BEYOND SYSTEMS, INC.,            )
                                 )
            Plaintiff,           )
                                 )
v.                               )        Case No. PJM 08 cv 0921
                                 )
WORLD AVENUE USA, LLC, et al.,   )
                                 )
            Defendants.          )
_____  )

## DEFENDANT WORLD AVENUE USA, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL THIRD PARTY DEFENDANT HYPERTOUCH, INC. TO PROVIDE COMPLETE ANSWERS TO INTERROGATORIES RELATING TO THE AUGUST TRIAL

Sanford M. Saunders, Jr., Esq.
USDC, MD #4734
saunderss@gtlaw.com
Nicoleta Burlacu, Esq.
BurlacuN@gtlaw.com
*Admitted Pro Hac Vice*
GREENBERG TRAURIG, LLP
2101 L Street, NW, Suite 1000
Washington, DC 20037
Telephone:  202-331-3100
Facsimile:  202-331-3101

*Attorneys for World Avenue USA, LLC
and World Avenue Holdings, LLC*

Kenneth A. Horky, Esq.
horkyk@gtlaw.com
John L. McManus, Esq.
mcmanusj@gtlaw.com
GREENBERG TRAURIG, P.A.
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, Florida 33301
Telephone:  954-765-0500
Facsimile:  954-765-1477

*Attorneys for World Avenue USA, LLC
and World Avenue Holdings, LLC*

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION. ........................................................................................... 1

II.    SUMMARY OF ARGUMENT. ...................................................................... 2

III.   ARGUMENT. ................................................................................................. 2

    A.    Hypertouch's General Objections Should Be Overruled. ....................... 2
    B.    Hypertouch Should Be Compelled To Provide A Complete Answer to
         Interrogatory 1. ....................................................................................... 5

         1.    WAUSA's Interrogatory 1 and Hypertouch's Answer. ............................ 5
         2.    Hypertouch Should Be Compelled To Provide A Complete
              Answer To Interrogatory 1 ....................................................................... 7

             i.     The Objections Are Meritless. ....................................................... 7
             ii.    The Answer to Interrogatory 1 is Incomplete. ............................... 7

    C.    Hypertouch Should Be Compelled To Provide A Complete Answer to
         Interrogatory 2 ....................................................................................... 10

         1.    WAUSA's Interrogatory 2 and Hypertouch's Answer. .......................... 10
         2.    Hypertouch Should Be Compelled To Provide A Complete Answer To
              Interrogatory 2. ....................................................................................... 10

    D.    Hypertouch Should Be Compelled To Provide A Complete Answer to
         Interrogatory 4 ....................................................................................... 11

         1.    WAUSA's Interrogatory 4 and Hypertouch's Answer. .......................... 11
         2.    Hypertouch Should Be Compelled To Provide A Complete Answer To
              Interrogatory 4. ....................................................................................... 11

             i.     The Objections Are Meritless. ....................................................... 11

    E.    Hypertouch Should Be Compelled To Provide A Complete Answer to
         Interrogatories 5 and 6 ........................................................................... 14

         1.    WAUSA's Interrogatories 5-6 and Hypertouch's Answers..................... 14
         2.    Hypertouch Should Be Compelled To Provide A Complete Answer To
              Interrogatories 5 and 6. ........................................................................... 15

             i.     Hypertouch's Objections Should Be Overruled. ........................... 15
             ii.    The Answers To Interrogatories 5-6 Are Incomplete and
                 Evasive. ....................................................................................... 15

    F.    Hypertouch Should Be Compelled To Provide A Complete Answer to
         Interrogatory 12 ..................................................................................... 16

         1.    WAUSA's Interrogatory 12 and Hypertouch's Answer. ......................... 16
         2.    Hypertouch Should Be Compelled To Provide A Complete Answer
              To Interrogatory 12. ................................................................................ 18

i

| | | i. | Hypertouch's Objections to Interrogatory 12 Should Be Overruled. | 18 |
| | | ii. | The Answer To Interrogatory 12 Is Non-Responsive. | 19 |
| G. | | | Hypertouch Should Be Compelled To Provide A Complete Answer to Interrogatory 14 | 20 |
| | 1. | | WAUSA's Interrogatory 14 and Hypertouch's Answer. | 20 |
| | 2. | | Hypertouch Should Be Compelled To Provide A Complete Answer To Interrogatory 14. | 20 |
| H. | | | Hypertouch Should Be Compelled To Provide A Complete Answer to Interrogatory 15 | 21 |
| | 1. | | WAUSA's Interrogatory 15 and Hypertouch's Answer. | 21 |
| | 2. | | Hypertouch Should Be Compelled To Provide A Complete Answer To Interrogatory 15. | 22 |
| | | i. | The Objections Are Meritless. | 22 |
| | | ii. | There is One More Factor the Court Should Consider in Evaluating the Bona Fides of This Answer. | 23 |
| I. | | | Hypertouch Should Be Compelled To Provide A Complete Answer to Interrogatory 21 | 24 |
| | 1. | | WAUSA's Interrogatory 21 and Hypertouch's Answer. | 24 |
| | 2. | | Hypertouch Should Be Compelled To Provide A Complete and Truthful Answer To Interrogatory 21. | 25 |
| J. | | | Hypertouch Should Be Sanctioned. | 25 |

ii

## TABLE OF AUTHORITIES

### Federal Cases

*Brookfield Communications, Inc. v. West Coast Entertainment Corp.*,
    174 F.3d 1036 (9th Cir. 1999) ............................................................................ 22

*Burns v. Imagine Films Entertainment, Inc.*,
    164 F.R.D. 589 (W.D.N.Y. 1996) ........................................................................ 4

*Chubb Integrated Sys. Ltd. v. National Bank of Washington*,
    103 F.R.D. 52 (D.D.C. 1984) .............................................................................. 4

*Equal Rights Center v. Lion Gables Residential Trust*, Case No. DKC 07-2358, 2010 WL
    2483613, at *1, *6 (D. Md. June 15, 2010) ......................................................... 2

*Susko v. City of Weirton*, Case No. 5:-09-cv1, 2010 WL 2521423, at *1,  *2 (N.D.W.V.
    June 21, 2010) ..................................................................................................... 3

*Victor Stanley, Inc. v. Creative Pipe, Inc.*,
    250 F.R.D. 251 (D. Md. 2008) ............................................................................ 2

*Virtual Works, Inc. v. Volkswagen of America, Inc.*,
    238 F.3d 264 (4th Cir. 2001) .............................................................................. 22

*World Avenue USA, LLC v. William J. Wagner*, Case No. 09-557 (District of Columbia),
    DE 21 ................................................................................................................ 26

### Federal Rules

Fed. R. Civ. P. 26(b)(5) ............................................................................................ 2

*FTL 108,125,975v3 4-27-11*

Defendant/Third Party Plaintiff, WORLD AVENUE USA LLC ("WAUSA"), hereby submits its Memorandum of Points and Authorities in Support of its Motion to Compel Complete Answers to Interrogatories Relating To August Trial from Third Party Defendant, Hypertouch, Inc. ("Hypertouch"), as a result of its failure to respond completely to WAUSA's Interrogatories Relating to the August Trial.  In support thereof, WAUSA states:[1]

## I.  **INTRODUCTION.**

The background of Beyond Systems, Inc.'s ("BSI") action against WAUSA is well-known to this Court and WAUSA will avoid repeating it.  This Motion is an effort to compel complete Answers to Interrogatories seeking information relevant to the August Trial that were first requested in February 2010, and which Hypertouch has continually refused to provide since that time.  *See* Exhibits 2-3.[2]  Hypertouch, following BSI's lead, has perpetuated the approach the Court criticized when it bifurcated the proceedings and the whole purpose underlying it -- to get at the truth through the immediate trial of 3 limited issues.  Clearly, they desperately want to get beyond the August Trial with the minimum transparency possible.  Hypertouch's objections to the Interrogatories Relating to the August Trial should be overruled and Hypertouch should be compelled to provide fulsome answers to all the questions.  In addition, Hypertouch should be sanctioned for stonewalling through the assertion of spurious objections as part of a pattern of dilatory practices deliberately designed to frustrate and prevent discovery.  Repeatedly, Hypertouch simply refuses to answer questions by making the questions different.  The August

---

[1]    WAUSA has endeavored to resolve the subject matter of this Motion with counsel for Hypertouch, but Hypertouch has failed to respond, amend the Answers, or to confer in an appropriate manner.  *See* Local Rule 104 Certification, attached as Exhibit 1.

[2]    The August Trial is on three issues: BSI is not a *bona fide* Maryland resident, is not a *bona fide* interactive computer service provider, and that it conspired with Hypertouch, BSI President, Paul Wagner's brother, James Joseph Wagner ("Wagner"), and other members and friends of the Wagner family to funnel hundreds of thousands of e-mails to BSI for the very purpose of manufacturing spam litigation.

trial is less than 4 months away and this behavior is prejudicing Defendants. Unfortunately, without further Court intervention, the August Trial will be a hollow exercise.

## II.   SUMMARY OF ARGUMENT.

The Court should enter an Order overruling Hypertouch's objections, and ordering complete Answers to the Interrogatories. First, Hypertouch's General Objections to the Interrogatories should be overruled, and Hypertouch should be compelled to provide complete Answers for any information withheld by reason of the General Objections. Second, Hypertouch's specific objections to Interrogatories 1-2, 4-6, 12, 14-15, and 21 are all similarly meritless and should be overruled. Third, Hypertouch's Answers to Interrogatories 1-2, 4-6, 12, 14-15, and 21 are in whole incomplete and evasive, and Hypertouch should be compelled to provide complete and thorough Answers. Finally, Hypertouch should be sanctioned for its assertion of meritless objections and its evasive and incomplete answers.

## III.   ARGUMENT.

### A.   Hypertouch's General Objections Should Be Overruled.

Hypertouch's General Objections are excessive, unfounded and fail to meet the legal standard necessary to be sustained. *See* Ex. 3, p. 3, ¶¶ 9-10; p. 5, ¶¶ 4-6. First, Hypertouch's objection on grounds of privacy or privilege should be overruled because it has provided no Privilege Log relating to any of the General Objections which assert privilege or privacy rights, and has thus waived any privilege relating thereto. In this District, a party has a duty to particularize its claims of privilege. *Equal Rights Center v. Lion Gables Residential Trust*, Case No. DKC 07-2358, 2010 WL 2483613, at *1, *6 (D. Md. June 15, 2010) (Chasanow, J.); *Victor Stanley, Inc. v. Creative Pipe, Inc*., 250 F.R.D. 251, 264 (D. Md. 2008) (Grimm, J.) Failure to provide a Privilege Log violates Rule 26(b)(5) and Discovery Guideline 10(d) of the Local Rules and waives the privilege. *See* Fed. R. Civ. P. 26(b)(5); Local Rules, Discovery Guideline 10(d);

2

*Susko v. City of Weirton*, Case No. 5:-09-cv1, 2010 WL 2521423, at *1,  *2 (N.D.W.V. June 21, 2010) ("The plaintiff, however, never supplied a privilege log to allow the magistrate judge to assess the privilege claims, as required by Federal Rule of Civil Procedure 26(b)(5) … The plaintiff's objection, therefore, is improper.").   Thus, Hypertouch has waived all claims of privilege regarding any information withheld on the basis of this General Objection.[3]

Second, General Objection 10 states that the date range of the Response is limited to the date range in the ESI Agreement, which BSI contends is 2004.  *See* Ex. 3, p. 3, ¶ 10.  The date range given in the Interrogatories is January 1, 2000 to date.  *See* Ex. 2, p. 10, ¶ 32.  The objection is inappropriate.  Hypertouch is not a party to the ESI Agreement,  *see* DE 114,  and the parties never agreed that as to all discovery, this is the appropriate date range.  Magistrate Judge Charles B. Day did not restrict WAUSA to the ESI date range when this issue was heard on February 16, 2011, or when this issue arose on two prior occasions when discovery issues concerning BSI's finances were heard on prior Motions to Compel and for Reconsideration.  *See* excerpt of February 16, 2011 hearing, p. 72, line 25 - p. 73, line 1-2, attached as Ex. 4 ("Requiring the plaintiff to produce financial records from January of 2000 in my estimation is not unreasonable"); DE 444, pp. 1-2, attached as Exhibit 5 ("The period from 2000 to present is equally reasonable given that Plaintiff's claims are dated from 2004 to present"). Given these rulings the objection is specious.

Hypertouch's objections to overbreadth and undue burden imposed by the Interrogatories should also be overruled.  *See* Ex. 3, pp. 1-3, ¶¶ 1-3, 4-7; p. 4, ¶ 2.  For instance, in Paragraph 2, Hypertouch objected "to the Instructions to the extent they are vague, ambiguous, overly broad,

---

[3]   Hypertouch clearly is familiar with the requirement to file a privilege log since it is represented by the same counsel as BSI, Steven Ring, which has been deemed to have waived privilege for failure to produce such a log.

unduly burdensome, oppressive, and/or not reasonably calculated to lead to the discovery of admissible evidence." *Id.* However, Hypertouch did not quantify or otherwise support this General Objection with an affidavit or any other record evidence of the purported burden, and thus, this General Objection should be overruled. Further, as a matter of law, general objections to discovery requests, *e.g.*, overbroad, vague, ambiguous, and unduly burdensome, are improper because they are not sufficiently specific to allow a court to ascertain the objectionable character of the discovery requests. Nor does a general objection fulfill a party's burden to explain its objection.[4] Hypertouch, as the party resisting discovery, must show how each Interrogatory is deficient based upon each specifically asserted objection, *e.g.*, what extraordinary effort is required to respond to an interrogatory designated "overbroad" or "unduly burdensome." *See* Local Rules, Discovery Guideline 10(e). This Court previously rejected similar general objections raised by BSI. Specifically, during the oral argument on BSI's Motion for Reconsideration on WAUSA's Motion to Compel Complete Answers to First Set of Interrogatories, Magistrate Judge Charles B. Day stated:

21. The objections are boilerplate and most of them are
22. nonapplicable, objections such as "vague" or "ambiguous," or
23. whether it's burdensome with no supporting affidavit,
24. unspecified violations of plaintiff's right to privacy by rule,
25. law or regulation, objections about something being duplicative,
1. the assertions of attorney-client work product and other
2. privileges, which were all waived by disclosure in the Kraft
3. case, other agreements with third parties but no proffer of such
4. agreements being made.

Feb. 16, 2011 Hearing Transcr. at pp. 73:21-25; 74:1-4, attached hereto as Ex. 4; *accord* DE 441, 444, attached as Exhibit 6 (granting motions to compel on WAUSA's Fourth Request for

---

[4]    *See also Burns v. Imagine Films Entertainment, Inc.*, 164 F.R.D. 589, 592-93 (W.D.N.Y. 1996); *Chubb Integrated Sys. Ltd. v. National Bank of Washington*, 103 F.R.D. 52, 58 (D.D.C. 1984).

4

Production and Third Set of Interrogatories).  Thus, this General Objection is also specious and should be overruled in light of this Court's prior decisions.  Hypertouch should be compelled to provide all information that it withheld on the basis of the General Objections and ordered to stop asserting objections that have been previously found inappropriate by this Court.

**B.**     **Hypertouch Should Be Compelled To Provide A Complete Answer to Interrogatory 1.**

**1.**     **WAUSA's Interrogatory 1 and Hypertouch's Answer.**

State with Specificity the Location(s) and the date(s) of commencement where Hypertouch/Joseph Wagner is currently storing, housing, co-locating or is otherwise operating any Computer Equipment. For each Location(s), Identify each piece of Computer Equipment and how each piece of Computer Equipment is currently used.

**HYPERTOUCH'S ANSWER**

Hypertouch objects to this Interrogatory on the ground that it is vague, ambiguous, overbroad and unduly burdensome. Hypertouch further objects to the definition of "Hypertouch" as overly broad, unduly burdensome, and purporting to impose obligations on Hypertouch not supported in law. Hypertouch objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties; objects to the extent that this Interrogatory duplicates prior interrogatories; objects to the extent that this Interrogatory exceeds the limit on the number of interrogatories that may be issued. Like all technological start-ups in Silicon Valley "computers" are part of nearly every facet of business and the request is overbroad. Relevant to the issue in the case are computers that are the servers that provide Internet services.

Without waiving the above objections, Hypertouch responds as follows for the locations of its servers that are used to provide Internet services for its users: Hypertouch's DNS servers are identified by the following designations: dns1.hypertouch.com (173.164.218.248), dns2.hypertouch.com (71.126.148.133), dns3.hypertouch.com (173.164.218.245), dns4.hypertouch.com (173.13.253.139), dns5.hypertouch.com (173.164.218.249).

Hypertouch's mail servers are identified by the following designations: mail.hasit.com (173.164.218.248), altmail.hasit.com (173.164.218.245), mail.reasonabledoubt.com (173.164.218.247), upland.dyndns.org (173.164.218.249), upland2.dyndns.org (173.164.218.246).

Hypertouch's webservers are identified by the following designations: dns2.hypertouch.com, www.hypertouch.com (173.13.253.140), wiki.hypertouch.org/ fostercity.dyndns.org (171.64.48.139).

The following servers have been located at the following addresses:

5

Note: the address of the current location of Hypertouch's DNS/email servers in California is designated **CONFIDENTIAL**. The Hypertouch's servers presence at that residential address is not publically known and there are young children residing at the location. **CONFIDENTIAL**: **4230 RUTHELMA AVE, Palo Alto CA 94306 ("Current CA Location Address")**

dnsl.hypertouch.com: 9 Eagle Hill Terrace, Redwood City, CA 94062 (since April 2, 2004 to approximately May 2006); 751 Upland Road, Redwood City, CA 94062 (approximately May 2006 to June 2010); Current CA Location Address (June 2010 to present)

dns2.hypertouch.com: 1612 Sherwood Rd, Silver Spring MD 20902 (approximately May 2006 to present); 1837 R St NW, Washington DC 20009 (April 2, 2004 to approximately May 2006) www.hypertouch.com: 1837 R St NW, Washington DC 20009 (since April 2004-present)

dns3.hypertouch.com: 9 Eagle Hill Terrace, Redwood City, CA 94062 (since April 2004 to approximately May 2006); 751 Upland Road, Redwood City, CA 94062 (since approximately May 2006 to June 2010); Current CA Location Address (June 2010 to present)

dns4.hypertouch.com: 1837 R St NW, Washington DC 20009 (approximately May 2006-present); 101 Phillips Lane, Woodside, CA (April 2, 2004 to approximately May 2006)

dns5.hypertouch.com: Current CA Location Address (June 2010 to present)

mail.hasit.com: 9 Eagle Hill Terrace, Redwood City, CA 94062 (since April 2004 to approximately May 2006); 751 Upland Road, Redwood City, CA 94062 {since approximately May 2006 to June 2010); Current CA Location Address (June 2010 to present)

altmail.hasit.com: 9 Eagle Hill Terrace, Redwood City, CA 94062 (since April 2004 to approximately May 2006); 751 Upland Road, Redwood City, CA 94062 (since approximately May 2006 to June 2010); Current CA Location Address (June 2010 to present)

altmail.reasonabledoubt.com: 9 Eagle Hill Terrace, Redwood City, CA 94062 (since April 2004 to approximately May 2006); 751 Upland Road, Redwood Ct CA 94062 since approximately May 2006 to present)

upland.dyndns.org: 751 Upland Road, Redwood City, CA 94062 (January 2007 to June 2010); Current CA Location Address (June 2010 to present)

upland2.dyndns.org: 751 Upland Road, Redwood City, CA 94062 (January 2008 to June 2010); Current CA Location Address (June 2010 to present)

dns5.hypertouch.com: 417A Oak Grove Ave, Menlo Park CA 94025 (telephone number no longer operational) (since June, 2005); 359 Fort Royal Avenue, Foster City, California 94404 (former residence of Joe Wagner, telephone number no longer operational) (April 2, 2004-June, 2005), Current CA Location Address (June 2010 to present) fostercity.dyndns.org: 417A Oak Grove Ave, Menlo Park CA 94025 (since June, 2005); 359 Port Royal Avenue, Foster City, California 94404 (former residence of Joe Wagner, telephone number no longer operational) (April 2, 2004-June, 2005)

wiki.hypertouch.org: Center for Design Research, Building 560, 424 Panama Mall, Stanford, CA 94305-2232 (September 2009 — present)

Hypertouch provides Internet connectivity for the occupants of 751 Upland Road, Redwood City, CA 94062 and the Current CA Location Address. Discovery is continuing. Hypertouch expressly reserves the right to supplement this Response should additional information become available.

**2.      Hypertouch Should Be Compelled To Provide A Complete Answer To Interrogatory 1.**

### i.      The Objections Are Meritless.

Hypertouch's objections to Interrogatory 1 are meritless. First, Hypertouch has failed to support its burdensomeness objection with evidence, and as such, the objection should be overruled. *See* footnote 4, *supra*.; Ex. 4; Ex. 6. Second, the Interrogatory is directly relevant to the August Trial. At issue in the August Trial is whether "Mr. Joe Wagner, in fact, is doing anything other than manufacturing or sending these e-mails to his brother to allow these suits to be brought." *See* Ex. 7, excerpted transcript of November 29, 2010 hearing. As part of answering this question, the jury is entitled to see the documents whereby Wagner and Hypertouch maintain a façade of being a California corporation having a supposed principal place of business in California (in reality, a mailbox store located at 1259 El Camino Real, # 139, Menlo Park, CA 94025) and listing a vacant California apartment (417-A Oak Grove Avenue, Menlo Park, California 94025),[5] while in reality, an instruction to the U.S. Postal Service[6] forwards their mail to his in-law's residence at 17 Greenfield Street, Lowell, Massachusetts 01851, 3,000 miles away and where Hypertouch is really now based.

### ii.      The Answer to Interrogatory 1 is Incomplete.

The Answer to Interrogatory 1 is also incomplete for several reasons. First, the Interrogatory asks about "Computer Equipment" at the location, and the Answer does not

---

[5]     *See* Declaration of Thomas Cabral, attached hereto as Exhibit 8.

[6]     See Exhibit 9 (U.S. Postal Service Response To Request For Forwarding Address for 417-A Oak Grove Avenue, Menlo Park, California).

7

identify any specific Computer Equipment at all.   The Interrogatory is designed to force Hypertouch to specify what equipment is (and has been) where, and is relevant to show what specific Computer Equipment was and is operating at what Internet Protocol Addresses and at what Domains, and who that Computer Equipment is actually owned by - Hypertouch or BSI.

Second, WAUSA asked Hypertouch to provide the location of the equipment within each house and the name of the owner or renter of each property.   The definition of Location requires the "Location" within the home where the equipment is located *and* the identification of the owner or renter of each property.   *See* Ex. 2, p. 8, ¶ 19 ("Location means the property type (such as an office building or single family home), property owner(s) and/or renter(s), postal address, city, state, zip code and the specific area within the Location (such as an office space, bedroom, data center, garage, etc)").   Hypertouch did not do so for each of the Locations.   The Location and owner are relevant to the *bona fides* of the entire operation, including whether Hypertouch is housing Servers in storage rooms, cellars and garages of Wagner's acquaintances.   It is unclear who owned or owns these homes at the relevant times and all this must be made crystal clear at trial to show what is actually occurring.

The full Answer to this Interrogatory is also necessary because BSI and Hypertouch have misled the Defendants about the Server Locations.   Hypertouch deliberately stalled producing any documents about this subject when previously requested.   BSI answered but it provided inaccurate information about the location of the Servers as of September 2010.   *See* Exhibit 10 (excerpt of BSI's September 27, 2010 Supplemental Answer to Interrogatory 13).

For example, the addresses in Stanford and in Palo Alto that Hypertouch first disclosed a month after all the premises inspections were concluded are completely new.   *Compare* Exhibit 3, pp. 6-8 *with* Exhibit 10.   Hypertouch conveniently delayed answering these questions until

8

after the time ran on February 4, 2011 for noticing premises inspections under the August Trial's Scheduling Order (*see* DE 571, DE 636); meanwhile BSI had falsely answered similar questions in September 2010 after the Server move, but before the deadline ran.  *See* Exhibit 10.  As a result Defendants wasted their resources conducting premises inspections of locations Hypertouch and BSI knew did not house any Hypertouch servers.  Hypertouch and BSI have engaged in a classic shell game - secretly moving the servers to new locations, one party refusing to answer questions while running out the clock, while the other party provided stale information.  There can be no valid explanation given the close relationship between the parties, their principals and their joint counsel.  Hypertouch should be compelled to fully answer the question, Defendants should be permitted to conduct immediate premises inspections of the latest current locations of the Hypertouch Servers (as an exception to the time limits set forth in the Scheduling Order given the misconduct),  Hypertouch should be sanctioned for moving its servers in June 2010 and refusing to answer questions until after the inspection deadline, and BSI should be sanctioned for failing to properly investigate the location of the Servers when answering the Interrogatory.

The next, and third problem, is the answer to Interrogatory 1 also uses this terminology: "provides Internet connectivity for the occupants of 751 Upland [Jaime Vargas' house]."  *See* Ex. 3, p. 8.  The word "provides" is undefined.  It appears, based on one of the premises inspections, to mean that Hypertouch is "providing connectivity" by paying AT & T - SBC or Mega Path to bring a line into an unfinished storage room in the residence of Jaime Vargas, an acquaintance of Joseph Wagner.  If that is the case Hypertouch should be required to say so.  If something else is the case, Hypertouch should be required to explain exactly what is being done.  The issue is significant, since Hypertouch's mere purchase of another internet service provider's

9

services for the benefit of a third party does not make Hypertouch  an internet service provider itself and this will be a major evidentiary point at the trial.  The contrary argument is akin to saying the purchase of an airline ticket makes one an airline.  Thus, crystal clarity is required as to exactly what Hypertouch is really doing.

### C.   Hypertouch Should Be Compelled To Provide A Complete Answer to Interrogatory 2

#### 1.   WAUSA's Interrogatory 2 and Hypertouch's Answer.

Identify with Specificity the Location(s) and the date(s) of commencement and termination where Hypertouch/Joseph Wagner has in the past stored, housed, colocated or have otherwise operated any Computer Equipment. For each Location(s), Identify with specificity each piece of Computer Equipment and how each piece of Computer Equipment was used, and the date range that each piece of Computer Equipment was in use.

**HYPERTOUCH'S ANSWER**

See Answer #1. Hypertouch reserves the right to supplement this Response should additional information become available.

#### 2.   Hypertouch Should Be Compelled To Provide A Complete Answer To Interrogatory 2.

Interrogatory 2 requested with Specificity[7] all the Locations and dates of commencement and termination for Locations where Hypertouch/Wagner have in the past stored, housed, colocated or have otherwise operated any Computer Equipment.  For each Location, Hypertouch was to identify each piece of Computer Equipment and how each piece of Computer Equipment was used, and the date range that each piece of Computer Equipment was in use.  The reasons why this information is important were explained above.

The Answer just refers back to Answer 1, which does not answer this Interrogatory..  The Answer to Interrogatory 1 was itself deficient for the reasons given above, including that the

---

[7]   WAUSA defined "Specificity" as "the quality or state of being specific.  To be precise.  The opposite of being vague."  *See* Ex. 2, p. 9, ¶ 26.

Answer itself did not identify the actual Computer Equipment, the Location, or what was meant by the word "provides."  A full and complete answer should be compelled.

### D.    Hypertouch Should Be Compelled To Provide A Complete Answer to Interrogatory 4

#### 1.    WAUSA's Interrogatory 4 and Hypertouch's Answer.

Identify with Specificity all Permissions or Privileges ever granted to Paul Wagner, Beyond Systems or any other employee or agent of Beyond Systems, by Hypertouch or James Joseph Wagner, to any Computer Equipment, Software or Product or Service Account owned, operated, used or paid for by Hypertouch.

**HYPERTOUCH'S ANSWER**

Hypertouch objects that the interrogatory is overbroad and vague; objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties; objects to the extent that this Interrogatory duplicates prior interrogatories; objects to the extent that this Interrogatory exceeds the limit on the number of interrogatories that may be issued. Without waiving these objections, Hypertouch states:
BSI has console level access to dns 2.hypertouch.com, dns 1.hypertouch.com and www.hypertouch.com.   BSI has account level access to email accounts on mail.hasit.com and mail.reasonabledoubt.com.   Hypertouch expressly reserves the right to supplement this Response should additional information become available.

#### 2.    Hypertouch Should Be Compelled To Provide A Complete Answer To Interrogatory 4.

##### i.    The Objections Are Meritless.

Hypertouch's objections to Interrogatory 4 are meritless.  Not only has Hypertouch failed to support its burdensomeness objections with evidence, *see* footnote 4, *supra*.; Ex. 4; Ex. 6, but the Interrogatory is directly relevant because it goes to the heart of the relationship between BSI and Hypertouch to cooperate in creating lawsuits, their real business.

Interrogatory 4 asked Hypertouch to Identify with Specificity all Permissions or Privileges EVER granted to Paul Wagner, BSI, or their agents, for ***any*** Computer Equipment or

Software of Hypertouch.[8]   This question was asked for a reason.   Discovery to date has shown that no difference exists between Hypertouch and BSI.   They share the same Internet Protocol addresses, the same Servers, the same software, the same equipment, and the same domains (*e.g.*, BSI claims to own <u>hypertouch.com</u>; Hypertouch unconvincingly explains that this is because it understood that domains had to be registered by a corporation.   Why that might be is left to the imagination).

The mechanisms used to accomplish this intermingling have two facets.   First, Hypertouch and BSI grant each other "Permissions" to access one another's servers and computer systems; these "Permissions" essentially afford each access to the other's system. Second, with this access, Hypertouch and BSI monitor and set the parameters for their own and one another's servers, utilizing remote access software through which BSI and Hypertouch can operate out of physical locations in Washington, D.C. and Massachusetts, respectively, to remotely access Servers situated in Maryland and California, states they like to litigate in.   This particular Interrogatory seeks to pinpoint the history, chronologically and by each piece of equipment, of the exact type and extent of the "Permissions" granted to each other.   This is directly relevant to a key focal point of the August Trial, to wit, the "nature of the relationship" between BSI and Hypertouch.   *See* DE 544, p. 2, ¶ 1.   For example, when an individual opens a Verizon or AT&T account to provide internet connectivity into their home, they do not grant Verizon or AT&T complete and unfettered access to all of their computers and computer systems for purposes of controlling the operation of the system, *e.g.*, retransmitting emails to other computers or allowing access to third parties to store or download materials.   If opening an

---

[8]   WAUSA defined "Permissions" or "Privileges" as "the authorization and type of access given to any Person that enables that Person to access specific resources on a computer or computer network, such as data files, applications and Computer Equipment."   *See* Ex. 2, p. 8, ¶ 20.

12

account equated to such access, it would certainly raise a question.   This Interrogatory is intended to pinpoint the extent of that access between BSI and Hypertouch.

There are at least three things wrong with Hypertouch's answer.  First, it is given in the present tense only and ignores the imperative for a complete history of all permissions.  Having seen how Hypertouch moves its servers around, it takes little imagination to see that permissions may have changed.  Second, it uses terms without explaining what they mean.  What is "console level access?"  What is "account level access?"  Third, it answers the question by referring to certain domains, but not by equipment, which was also specifically asked for.  Similarly it refers to email accounts, but does not identify them, and the question calls for precise identification of all Service Accounts.

What is required here is a complete history from inception of business to present of every permission ever allowed for every server or other piece of equipment or software, every domain, every email account, and a precise explanation of what that permission allowed the holder to do. If the act could be done remotely, that should be admitted.  If the scope of permissions changed over time, or were expanded (or contracted) to new or different equipment, software, domains or accounts, that must be explained with precision.  The Court should be mindful when ruling on this question that these litigants are masters at avoiding answering things they do not want to answer by using imprecise terms and claiming later that they mean whatever is convenient at the moment.  To avoid wasting everyone's time at trial, they should be forced to answer with the highest degree of precision, explaining their terms in detail, and in chronological order for every account, domain, piece of equipment or software for which these permissions have been granted.

The Court should note that the definitions of Permissions and Privileges call for detailed information (*see* footnote 8, *supra*.), none of which has been provided.  This Interrogatory is

13

absolutely critical to show the nature of the relationship between BSI and Hypertouch, which is one of the three Trial Issues.  *See* DE 544, p. 2, ¶ 1.

### E. Hypertouch Should Be Compelled To Provide A Complete Answer to Interrogatories 5 and 6

#### 1. WAUSA's Interrogatories 5-6 and Hypertouch's Answers.

Identify all payments ever received by Hypertouch or James Joseph Wagner from Beyond Systems or Paul Wagner, including, with Specificity, the reason(s) for such payments.

**HYPERTOUCH'S ANSWER**

Hypertouch objects that the interrogatory is overbroad and vague; objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties; objects to the extent that this Interrogatory duplicates prior interrogatories; objects to the extent that this Interrogatory exceeds the limit on the number of interrogatories that may be issued. Without waiving these objections, Hypertouch states:

Hypertouch has received payments and reimbursements from BSI as follows:

| Date | Payee | Purpose | $ Amount |
|------|-------|---------|---------|
| 1/1/2000 | Hypertouch, Inc. | for time on Motorola project | $15,000.00 |
| 4/2/2000 | Hypertouch, Inc. | | $7,000.00 |
| 6/2/2000 | Hypertouch, Inc. | for time on Motorola project | $22,500.00 |
| 19-Sep-2002 | Hypertouch | for little MacIntosh email server | $1.00 |
| 3-Jan-2003 | Hypertouch | | $118.10 |
| 12-Feb-2003 | Hypertouch, Inc. | reimbursement for Accurint | $32.00 |
| 11-Mar-2003 | Hypertouch, Inc. | reimbursement for Accurint | $140.00 |
| 2-Jul-2003 (never deposited) | Hypertouch, Inc. | reimbursement for Accurint | $40.05 |
| 29-Dec-2005 | Hypertouch, Inc. | reimbursement for Accurint | $1,400.00 |

No payments related to the operations of BSI or Hypertouch have been made by BSI or Paul Wagner to Joe Wagner in his individual capacity, to the best knowledge of Hypertouch.

14

**INTERROGATORY 6**

Identify all payments made to Beyond Systems or Paul Wagner by Hypertouch or James Joseph Wagner, including, with Specificity, the reason(s) for such payments.

**HYPERTOUCH'S ANSWER**

Hypertouch objects that the interrogatory is overbroad and vague; objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties; objects to the extent that this Interrogatory duplicates prior interrogatories; objects to the extent that this Interrogatory exceeds the limit on the number of interrogatories that may be issued. Without waiving these objections, Hypertouch states:

No payments related to the operations of BSI or Hypertouch have been made by Hypertouch or Joe Wagner to BSI or Paul Wagner, to the best knowledge of Hypertouch. Hypertouch expressly reserves the right to supplement this Response should additional information become available.

**2.    Hypertouch Should Be Compelled To Provide A Complete Answer To Interrogatories 5 and 6.**

**i.    Hypertouch's Objections Should Be Overruled.**

Hypertouch's objections to Interrogatory 5 and 6 are meritless.  First, the objections state that the Interrogatories are vague and overbroad, but fails to say why.  These two questions are specific and these objections are specious.  Second, the requested discovery is directly relevant to show the nature of the relationship between BSI and Hypertouch.  *See* DE 544, p. 2, ¶ 1.  Third, Hypertouch's objection that it "duplicates prior interrogatories" is absurd given that this is WAUSA's First Set of Interrogatories to Hypertouch.

**ii.    The Answers To Interrogatories 5-6 Are Incomplete and Evasive.**

These Interrogatories call not just for disclosure of all payments made between Hypertouch, Wagner, BSI and Paul Wagner, but also for the exact reasons they were made. Hypertouch does not provide any information on the $7,000 payment to Hypertouch in April 2000, or on the $118.10 payment to Hypertouch in January 2003.  For the remaining payments,

15

the information is woefully deficient.   For example, on Motorola, the question calls for an explanation of exactly what work was done on the Motorola project.   On Accurint, the question calls for exactly what was done for Accurint for which reimbursement was paid.   All of this information goes to the Third Trial Issue of illuminating the precise nature of the relationship between Hypertouch and BSI.   *See* DE 544, p. 2, ¶ 1.

Finally, and importantly, the Answer is evasive by qualifying it with the words "no payments related to the operations of BSI or Hypertouch have been made."   This is a prime example of how these professional litigants redefine questions to avoid revealing things they do not wish to reveal.   One is improperly forced to guess what exactly are "the operations of BSI or Hypertouch" in their minds at this moment and whether or not they include lawsuits and their proceeds.   These issues go to the heart of the August trial and should be answered.

The fact is the Interrogatory was not limited to "operations of BSI or Hypertouch," whatever that means.   Instead, the Interrogatory asked for *all* payments.   After all payments and the reasons for them have been disclosed, the Court and the jury will be in a position to determine what they mean.   As all payments may not have been fully disclosed and explained due to this qualification effectively changing the question posed, the Court should order Hypertouch to fully answer the question.

### F.   Hypertouch Should Be Compelled To Provide A Complete Answer to Interrogatory 12

#### 1.   WAUSA's Interrogatory 12 and Hypertouch's Answer.

Identify with Specificity the Person(s) responsible for the creation of the Honeypots and Honeypot E-Mail Addresses, management of the Honeypots and Honeypot E-Mail Addresses, and receipt of email directed to the Honeypot Email Addresses.

**HYPERTOUCH'S ANSWER**

Hypertouch objects that the interrogatory is compound, overbroad and vague; objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties; objects that this Interrogatory duplicates prior interrogatories; objects that this Interrogatory exceeds the limit on the number of interrogatories that may be issued; objects to the extent that Defendant seeks server logs or data from such logs, as the Court has ruled multiple times against such production.

Hypertouch further objects to the use of the definition of Honeypots. Wikipedia defines Honeypot as: "In computer terminology, a honeypot is a trap set to detect, deflect, or in some manner counteract attempts at unauthorized use of information systems. Generally it consists of a computer, data, or a network site that appears to be part of a network, but is actually isolated and monitored, and which seems to contain information or a resource of value to attackers." (http://en.wikipedia.org/wiki/Honeypot(computing)) The websites cited are not a fake or a trap. For example http://theserenitychair.com is a business website advertising unique wooden chairs. There is only one email address on the website which is used by the website's owner.

Subject to the above objections, Hypertouch answers that the person responsible for the receipt of email directed to the referenced email addresses is the original spammer or sender of the email. Hypertouch has placed confirmation email addresses in some of the web pages it hosts to conform to California B&P 17538.45 which requires proof that spammers had notice of Hypertouch's email policy. Hypertouch obtained a copy of that statute, which includes the following language:

(3) (A) In any action brought pursuant to paragraph (1), the electronic mail service provider shall be required to establish as an element of its cause of action that prior to the alleged violation, the defendant had actual notice of both of the following:

(i) The electronic mail service provider's policy on unsolicited electronic mail advertising.

(ii) The fact that the defendant's unsolicited electronic mail advertisements would use or cause to be used the electronic mail service provider's equipment located in this state.

(B) In this regard, the Legislature finds that . . Internet service providers are already experimenting with embedding policy statements directly into the software running on the computers used to provide electronic mail services in a manner that displays the policy statements every time an electronic mail delivery is requested. . the Legislature believes that, in a given case at some future date, a showing that notice was supplied via electronic means between the sending and receiving computers could be held to constitute actual notice to the sender for purposes of this paragraph.

FTL 108,125,975v3 4-27-11

WAGNER, as president of Hypertouch, placed email addresses in webpages that give notice of Hypertouch's email policy. Hypertouch expressly reserves the right to supplement this Response should additional information become available.

2.    **Hypertouch Should Be Compelled To Provide A Complete Answer To Interrogatory 12.**

i.    **Hypertouch's Objections to Interrogatory 12 Should Be Overruled.**

Hypertouch's blanket objections should be rejected in short order.  It objects that the Interrogatory is "compound, overbroad and vague," but doesn't say why.  It complains that this Interrogatory "duplicates prior interrogatories", which is nonsense given this is the First Set of Interrogatories from WAUSA to Hypertouch.  Finally, the relevancy objection should be overruled.  Hypertouch programs and maintains websites that contain specific e-mail addresses embedded in the source code for the purpose of collecting e-mail and suing on them.  These websites contain e-mail addresses invisible on the face of the individual web pages that make up the website, but are embedded in the source code of each web page.  The e-mails received at these addresses are either held by Hypertouch, re-transmitted to BSI, or both, for the purpose of filing lawsuits.  These include, but are not limited to, the Honeypots[9] that are the subject of

---

[9]    WAUSA defined "*Honeypot/Honeypots*" as "the following web pages with embedded email addresses:

- http://www.bihn.org
- http://www.hypertouch.com
- http://www.hypertouch.com/index2.html
- http://legal.hypertouch.com
- http://legal.hypertouch.com/legal.htm
- http://www.katka-steve.com
- http://metrikproperties.com
- http://motiongranted.com/rep-transactions.html
- http://www.reasonabledoubt.com
- http://rehabrobotics.org
- http://www.serenitychair.com
- http://theserenitychair.com
- http://recipes.hypertouch.com
- http://www2.hypertouch.com".

*See* Ex. 2, pp. 6-7, ¶ 14.

18

Interrogatory 12.

### ii. The Answer To Interrogatory 12 Is Non-Responsive.

Now then: Interrogatory 12 asks who is responsible for the creation of the Honeypots and Honeypot E-mail Addresses.[10] The answer is non-responsive:  "Hypertouch answers that the person responsible for the receipt of e-mail directed to the referenced email addresses is the original spammer or sender of the email…."  This is argumentative and ignores the question. Then, in classic Hyper-speak, Hypertouch redefines what "Honeypots" means by citing to Wikipedia, a computer dictionary that can be edited at any time by any one.  "Honeypots" was defined in the Definitions as fourteen (14) specific web pages, no more and no less.  *See* footnote 9, *supra*.  Then, though the Answer eventually gets around to admitting that Joseph Wagner "placed email addresses in webpages that give notice of Hypertouch's policy," this disingenuous non-answer (the hidden addresses say nothing about any policy, they are only addresses) does not reveal whether Joseph Wagner was the ***only*** person who did so, or when he did so, or what were the circumstances of his doing so.  Nor does he actually admit placing the embedded email addresses in the websites, since he merely says he placed email addresses that give notice of Hypertouch's policy in the websites, and as stated above, none of these addresses say a single word about any such policy.  Therefore if he were telling the truth, he has not answered this question at all.

Further, there is actual reason to believe that Joseph Wagner may not have been the only one who embedded the hidden addresses on these websites.  Some of them are others' websites - including reasonabledoubt.com, which is Mr. Wagner's wife's website, and www.bihn.org,

---

[10]   WAUSA defined "*Honeypot E-Mail Addresses*" as "the email addresses embedded in the source code of the Honeypots."  *See* Ex. 2, p. 7, ¶ 15.

which is the website of an attorney in Ohio.  Without a straight answer, it is impossible to know

whether anyone else participated in embedding the e-mail addresses.  Finally, the Answer does

not say anything at all about who maintains the Honeypots and Honeypot Email Addresses.  Nor

does it answer who manages receipt of email directed to the Honeypot Email Addresses.  These

questions are simply ignored.  Complete answers to all should be compelled forthwith.

### G.    Hypertouch Should Be Compelled To Provide A Complete Answer to Interrogatory 14

#### 1.    WAUSA's Interrogatory 14 and Hypertouch's Answer.

Identify with Specificity the Person(s) responsible for the creation of the Seeded
E-Mail Addresses, management of the Seeded Email Addresses and receipt of
email directed to the Seeded Email Addresses.

**HYPERTOUCH'S ANSWER**

Hypertouch objects that the interrogatory is overbroad and vague; objects to the
extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court
at DE 544 and as agreed by the Parties; objects that this Interrogatory exceeds the
limit on the number of interrogatories that may be issued; objects to the extent
that Defendant seeks server logs or data from such logs, as the Court has ruled
multiple times against such production.
Hypertouch further objects in that "Seeded Email Address" is not a defined term
in the interrogatories.  However, a definition for seed email address is found at
http://www.superglossary.com/Definition/Email/Seed_List.html: "A list of email
addresses that should be included in every email event to monitor delivery across
email platforms."  Hypertouch does not seed lists.  Hypertouch expressly reserves
the right to supplement this Response should additional information become
available.

#### 2.    Hypertouch Should Be Compelled To Provide A Complete Answer To Interrogatory 14.

This Interrogatory specifically asks Hypertouch to Identify with Specificity the Person(s)

responsible for the creation of the Seeded E-Mail Addresses, management of the Seeded E-Mail

Addresses and receipt of email directed to the Seeded E-Mail Addresses.  As with the prior

Answers, Hypertouch's blanket objections are without merit.  Hypertouch objects on overbreadth

and vagueness, but fails to explain either objection.  Hypertouch objects on relevance, but this

20

Interrogatory is relevant for the same reason as Interrogatory 12: it goes to BSI and Hypertouch's real business of churning spam litigation by collecting e-mail.

Hypertouch's "answer" is similarly non-responsive.  Once again, Hypertouch evades the question by engaging in the art of redefinition.  Hypertouch says it "does not seed lists." But the question did not ask about lists.  The only reason lists come up in the answer is because Hypertouch again reached out to the web for a definition that talked about lists.  The answer is completely unresponsive. Who creates, manages and receives email directed to seeded email addresses?  Hypertouch knows very well what seeded email addresses are, and should be compelled to answer the Interrogatory.

    **H.**    **Hypertouch Should Be Compelled To Provide A Complete Answer to Interrogatory 15**

    **1.**    **WAUSA's Interrogatory 15 and Hypertouch's Answer.**

Identify with Specificity why, in 1997, the domain name hypertouch.com was registered with a postal address of 235 Belmont Ave., Redwood City, CA 94061, yet the registrant name of that domain was Beyond Systems.

**HYPERTOUCH'S ANSWER**

Hypertouch objects that the interrogatory is overbroad and vague; objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties; objects to the extent that this Interrogatory duplicates prior interrogatories; objects to the extent that this Interrogatory exceeds the limit on the number of interrogatories that may be issued. Without waiving these objections, Hypertouch states:
***In 1997, Network Solutions sent paper postal confirmation and notices of successful domain registrations. While Beyond Systems was the owner, sending any notice of technical difficulties to Hypertouch's address would speed up the resolution of any such difficulties.*** Discovery is ongoing.  Hypertouch expressly reserves the right to supplement this Response should additional information become available.

21

2.      **Hypertouch Should Be Compelled To Provide A Complete Answer To Interrogatory 15.**

        i.      **The Objections Are Meritless.**

Hypertouch's blanket objections to the Interrogatory should be overruled.  It objects on the grounds of overbreadth and vagueness, but doesn't say why either objection is applicable.  It objects that the Interrogatory duplicates prior Interrogatories, again absurd since this is the First Set of Interrogatories from WAUSA to Hypertouch.  It claims this Interrogatory exceeds a limit on Interrogatories, but it is only Interrogatory 15 of the first set.  The Interrogatory is plainly relevant to the relationship between Hypertouch and BSI.  BSI supposedly owns the hypertouch.com website.  Hypertouch claims that BSI is the owner of the domain name hypertouch.com in BSI's name.  Why?  This is Hypertouch's trademarked name.  The first sentence of the answer explains nothing.  The second sentence of the answer is an unexplained assertion - why are technical difficulties more speedily resolved if addressed to Hypertouch, who does not own its own trademark?

There is certainly a reason for this convoluted relationship, but one can not find it reading this answer.  The purported ownership by BSI of Hypertouch's trademarked name, Hypertouch, in the domain name, hypertouch.com[11], is a reasonable point of inquiry.  It is made more so given that  the domain is hosted exclusively on Hypertouch servers and the exclusive technical contacts for the domain are Hypertouch or Joseph Wagner.  This is relevant to the Third Trial Issue, the relationship between Hypertouch and BSI.  *See* DE 544, p. 2, ¶ 1.  The answer could not, of course, possibly have anything to do with the desire of both parties to claim in different

---

[11]    The addition of a .com to a domain name that contains a trademark is a distinction without a difference under the Lanham Act.  Both are equally entitled to the protection of the same trademark under the Lanham Act.  15 U.S.C. § 1125(d)(1)(A)(i)(I); *Virtual Works, Inc. v. Volkswagen of America, Inc.*, 238 F.3d 264, 269 (4th Cir. 2001) (protecting vw.net based on VW mark); *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1055 (9th Cir. 1999) (protecting moviebuff.com based on Moviebuff mark).

22

lawsuits that they hold the right to sue on the exact same emails.  There are of course no email communications between the two brothers where they specifically discuss doing exactly that.

This Interrogatory Answer is at best nonresponsive and at worst a lie under oath.  The Court may be gentle and order a full and truthful answer, or be harsher given what it has already seen in this and the *Kraft* case, but the Court can not tolerate this kind of dishonesty.

> **ii.     There is One More Factor the Court Should Consider in Evaluating the Bona Fides of This Answer.**

Remember that Hypertouch attempts to explain why a supposedly BSI-owned domain name (hypertouch.com) has Hypertouch as its contact address by swearing to this:  "***In 1997, Network Solutions sent paper postal confirmation and notices of successful domain registrations***. ***While Beyond Systems was the owner, sending any notice of technical difficulties to Hypertouch's address would speed up the resolution of any such difficulties***." *See* Ex. 3 (emphasis added).

However, documents subpoenaed from Network Solutions contradict this statement and demonstrate that Hypertouch has not answered in good faith.  The documents Network Solutions produced in this case show that Joseph Wagner received an e-mail confirmation of his registration of the domain name hypertouch.com in 1997.  *See* Comp. Ex. 11 (WAUSA-3[rd]-PARTY-02168-October 17, 1997 e-mail from "Joe Wagner" to domain registrar (hostmaster@internic.net) for domain hypertouch.com; WAUSA-3[rd]-PARTY-02179-October 18, 1997 e-mail from domreg@internic.net to joew@cdr.stanford.edu confirmation domain registration for hypertouch.com; WAUSA-3[rd]-PARTY-02182-83-October 17, 1997 e-mail to joew@cdr.stanford.edu to hostmaster@internic.net for domain hypertouch.com; WAUSA-3[rd]-PARTY-02179-October 18, 1997 e-mail from domreg@internic.net to joew@cdr.stanford.edu).  And, when the domain registrar for hypertouch.com was changed in 2000, an e-mail

23

confirmation was received then as well.  *See* Ex. 12 (WAUSA-3[rd]-PARTY-02196-October 20, 2000 e-mail Notification of Transfer Request).   No U.S. Mail confirmation of the domain registration in 1997 has been produced.  To repeat: Network Solutions produced no such U.S. Mail confirmation in response to WAUSA's subpoena.  Thus, Hypertouch and Joseph Wagner directly received e-mail confirmations.  *See* Comp. Ex. 11-12.  This Answer is therefore profoundly disturbing and warrants further disclosure.

Moreover, this Answer also fails to explain why sending the non-existent postal confirmations to California would speed up processing technical problems when BSI is based in Washington, D.C. (or Maryland, as claimed).  It appears this part of the Answer is also deficient and WAUSA asks the Court to compel Hypertouch to provide a complete answer.

## I.   Hypertouch Should Be Compelled To Provide A Complete Answer to Interrogatory 21

### 1.   WAUSA's Interrogatory 21 and Hypertouch's Answer.

Identify with Specificity all reasons why there are embedded e-mail addresses in the source code of the Honeypots.

**HYPERTOUCH'S ANSWER**

Hypertouch objects that the interrogatory is overbroad and vague; objects to the extent this inquiry is not "directly relevant to the Trial Issues" as set by the Court at DE 544 and as agreed by the Parties; objects that this Interrogatory duplicates prior interrogatories; objects that this Interrogatory exceeds the limit on the number of interrogatories that may be issued; and objects that there is a false premise in the erroneous definition of "honeypot". Without waiving these objections, Hypertouch states:

See Hypertouch's response to Interrogatory #12. In addition, a typical falsehood that spammers (and the ad networks that hire them) claim is that their email is solicited or from an "explicit opt-in." The presence of one or more of those email addresses in a spam run shows the falsity of the claim of opt-in only email addresses, or that the email addresses were legitimately acquired. Hypertouch expressly reserves the right to supplement this Response should additional information become available.

**2.      Hypertouch Should Be Compelled To Provide A Complete and Truthful Answer To Interrogatory 21.**

The general objections to this Interrogatory are similar to all those made in the prior Answers, and should be overruled for the same reasons.   The objection states that the Interrogatory is vague and overbroad, but doesn't say why.  Relevance should also be overruled as this Interrogatory is relevant for the same reasons as Interrogatories 12 and 14 above.

The Answer is also evasive and incomplete.  This Interrogatory asked for "all reasons" why there are embedded email addresses in the source code of the Honeypots.  The Answer was two-fold.  The first part was to see the Answer to Interrogatory 12, which, in effect asked who did the embedding and monitoring.  *See* § III.F, *supra*.  That has been dealt with above, and was redefined into complete non-responsiveness as previously explained.  The second part of the Answer was to explain that finding a Honeypot E-Mail Address in what Hypertouch refers to as a "spam run" shows the falsity of any claim that email addresses were legitimately acquired from opt-ins or otherwise.

The problem with this Answer is it contradicts what Hypertouch said earlier, which was that California law supposedly required such embedding as a form of warning, even though the addresses warn of nothing.  Given the contradiction, the Court can infer that either the Answer is false, or at a minimum, incomplete.  The Court can likewise infer that the Answer is incomplete because it fails to mention anything about putting more email addresses into circulation to attract spam.  The question asked for "all" reasons.  A full, complete and non-argumentative answer should be compelled forthwith.

**J.      Hypertouch Should Be Sanctioned.**

Hypertouch should be sanctioned for three compelling reasons. First, notwithstanding having been warned at the February 16, 2011 hearing by Magistrate Judge Charles B. Day about

25

boilerplate general objections, Hypertouch lodged a torrent of unsupported general objections identical to many already overruled before.  The legal term for this is ignoring the Judge and wasting scarce judicial resources.  Second, as to each Interrogatory, Hypertouch objected repeatedly with a myriad meritless objections.  Finally, the answers to many of these Interrogatories were deliberately evasive, through the magic of re-wording the question.  Other answers just ignored unpleasant questions and still other answers were to every appearance flat out lies made under oath.

The Rules provide that this behavior is sanctionable.  *See* Rule 37(a)(4), Fed. R. Civ. P. ("For purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response, must be treated as a failure to disclose, answer, or respond").  The Court is no doubt aware that the BSI-Hypertouch parties have been sanctioned before (*see* DE 441, 444, 468, 484, 502, 605, 605, 606; *World Avenue USA, LLC v. William J. Wagner*, Case No. 09-557 (District of Columbia), DE 21 (awarding sanctions)).

To date, these sanctions have had no visible effect on these litigants' behavior as they repeat the sanctioned behavior with impunity.[12]  The Court has imposed monetary sanctions at least eight times in this case.  Yet the behavior persists.  The caselaw cited before to this Court in other contexts states that striking pleadings is appropriate for litigants who commit a fraud on the judicial system.  But the Court has indicated it does not want to impose this penalty, and Defendants respect that ruling.

---

[12]    For example, on February 16, 2011, the Court entered three sanctions awards.  *See* DE 605 (sanctions for BSI's Motion for Reconsideration on Third Set of Interrogatories); DE 605 (sanctions for BSI's Motion for Determination of Timeliness And Sufficiency of Initial Rule 26(a)(2) Expert Designations And/Or For Extension of Time [DE 214-filed 4/20/10]); DE 606 (sanctions for BSI's Motion for Reconsideration on WAUSA's Fourth Request for Production).    Notwithstanding the three February 16th sanctions Orders, BSI filed its next Motion for Reconsideration on March 2nd [DE 611] and again on the same issue on April 6th [DE 638] in a motion effectively seeking to revisit Magistrate Judge Day's rulings at the February 16, 2011 hearing.

Therefore, Defendants respectfully suggest the Court compel Hypertouch and Joseph Wagner to fully, completely, truthfully and immediately answer these Interrogatories, award any monetary sanctions the Court deems appropriate, and exercise its power to issue adverse inference jury instructions if said answers are not forthcoming.

Dated:  April 27, 2011.

Respectfully submitted,

*Attorneys for World Avenue USA, LLC*

GREENBERG TRAURIG, LLP

     /s/
Sanford M. Saunders, Jr., Esq.
USDC, MD #4734
saunderss@gtlaw.com
Nicoleta Burlacu, Esq.
BurlacuN@gtlaw.com
*Admitted Pro Hac Vice*
GREENBERG TRAURIG, LLP
2101 L Street, NW, Suite 1000
Washington, DC 20037
Telephone:  202-331-3100
Facsimile:  202-331-3101

--and--

Kenneth A. Horky, Esq.
Florida Bar No. 691194
horkyk@gtlaw.com
John L. McManus, Esq.
Florida Bar No. 0119423
mcmanusj@gtlaw.com
*Admitted Pro Hac Vice*
GREENBERG TRAURIG, LLP
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, FL 33301
Telephone: 954-765-0500
Facsimile:  954-765-1477