IN THE U.S. DISTRICT COURT FOR MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| BEYOND SYSTEMS, INC. | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| -vs- | * | Case No. 8:08-cv-00921-PJM |
| | * | |
| WORLD AVENUE U.S.A., LLC et al | * | |
| | * | |
| Defendants. | * | |
| _____ | * | |

**THIRD PARTY DEFENDANT HYPERTOUCH, INC'S OPPOSITION IN RESPONSE TO DEFENDANT WORLD AVENUE USA, LLC'S MOTION TO COMPEL COMPLETE ANSWERS TO INTERROGATORIES RELATING TO THE AUGUST TRIAL**

Third Party Defendant Hypertouch, Inc. ("Hypertouch"), by and through undersigned counsel, hereby submits its Opposition in Response to Defendant World Avenue USA, LLC'S ("WAUSA") Motion to Compel Complete Answers to Interrogatories Relating to the August Trial.

### I. INTRODUCTION

WAUSA served Hypertouch with the motion to compel responses to its February 4, 2011 interrogatories on April 27, 2011, which was eight business days after the initial session of the meet and confer (initial confer on April 15, motion to compel served on April 27). Under the Stipulated Discovery Schedule, the motion is late. WAUSA alternatively invokes the abbreviated schedule under the Stipulated Scheduling order (including the amended versions submitted for Court approval), or excuses itself from such adherence, as it finds convenient, but it has cried outrage at Plaintiff under the same

circumstances, repeatedly refusing to "revive" lapsed deadlines. Under WAUSA's own standards, its motion should be deemed untimely and null.

Most or all of the additional inquiry now made by WAUSA in its voluminous letters and motions to compel, is better suited for deposition inquiry. Without waiving any of its objections, Hypertouch responds to the arguments in the motion.

## II. HYPERTOUCH'S RESPONSES TO WAUSA INTERROGATORIES

### Interrogatory 1. Server locations, current.

As a result of a face-to-face meeting between Mr. Saunders for WAUSA and Mr. Ring for Hypertouch on May 10, 2011, and based on a supplemental response by Hypertouch modifying two words in its answer, the parties are waiting for WAUSA to announce whether it will agree to withdraw its arguments as to Interrogatories 1 and 2 in the motion to compel. Without having heard whether such withdrawal will in fact take place, Hypertouch must address the dispute.

In short, the information sought has been provided. The Interrogatory asks to "Identify...," not "Describe...;" the term, "Identify" is defined only as to persons and documents. Hypertouch has accurately provided the locations of all of its servers used to provide services for users. A minor error in the original response was corrected in the Supplemental response of May 8, 2011, but all relevant street addresses were provided in the original answer, including the "Current CA Location Address" which also appears in Defendants' preliminary witness list. ("57. Niels Smaby, 4230 Ruthelma Avenue, #60, Palo Alto, CA 94303.") Hypertouch denies that it has "stalled" or "delayed" providing

any server information, having responded to the February 4, 2011 discovery requests in a timely manner. WAUSA served no interrogatories to Hypertouch prior to the set served on February 4, 2011, despite opportunity to do anytime during the preceding year prior to the suspension of discovery in November 2010. Further, though Hypertouch is not one of the three parties named in the December 15, 2010 scheduling order, even if Defendants believe they were entitled to submit Interrogatories to Hypertouch, they chose to delay nearly two months before propounding any written discovery requests. WAUSA was able to conduct video inspections of past and present locations where Hypertouch has maintained equipment during March, 2011. WAUSA's allegations of concealment and evasion are misplaced.

WAUSA complains that Hypertouch provided inaccurate information for the locations of servers, but mis-quotes Hypertouch's answer. On page 6 of the Memorandum WAUSA quotes,

> altmail.hasit.com: 9 Eagle Hill Terrace, Redwood City, CA 94062 (since April 2004 to approximately May 2006); 751 Upland Road, Redwood City, CA 94062 (since approximately May 2006 to June 2010); Current CA Location Address (June 2010 to present)
>
> altmail.reasonabledoubt.com: 9 Eagle Hill Terrace, Redwood City, CA 94062 (since April 2004 to approximately May 2006); 751 Upland Road, Redwood Ct CA 94062 since approximately <u>May 2006 to present</u>)

[Emphasis added.] The mail server's name is not, "altmail.reasonabledoubt.com." The correct name, as given in the original response of Hypertouch, is "mail.reasonabledoubt.com." The error over which WAUSA makes such a fuss is the

inadvertent inclusion of the phase, "to present," at the end of the second paragraph quoted above.  The supplemental response corrects this, stating:

> mail.reasonabledoubt.com: 9 Eagle Hill Terrace, Redwood City, CA 94062  (since April 2004 to approximately May 2006); 751 Upland Road, Redwood City, CA 94062  (since approximately May 2006 to June 2010); Current CA Location Address (June 2010 to present).

Both the original or supplemental response states that the phrase, "Current CA Location Address" means "4230 RUTHELMA AVE, Palo Alto CA 94306," and designates that address as confidential.

The agreed deadline for issuing notices of inspection, and the Defendants' actual notices of inspection, **preceded** April 8, 2011, which was the agreed date for Hypertouch's original answer to that Interrogatory.  That is, Defendants' had not been served and therefore did not rely on Hypertouch's answer to this Interrogatory in selecting locations to inspect in northern California, nor was Hypertouch under any obligation, obviously, to provide the responses prior to the due date.  WAUSA simply got tangled up in the schedule, trying to implement an unwieldy and excessive campaign of making video inspections of all locations it thought were even remotely related to its opponents.

WAUSA incorrectly states that "the Answer does not identify any specific Computer Equipment at all."  Hypertouch did identified its servers, and in the way it and many other ISPs do in their normal course of operation -- i.e., by the machine's Fully Qualified Domain Name (a.k.a. "FQDN").  WAUSA's Interrogatories did not instruct to identify the machines in any other fashion: no definition was provided for the word,

"Identify" in the context of Computer Equipment. WAUSA did not ask for a serial number or other obscure identifier for each piece of equipment.

WAUSA incorrectly states, "The Interrogatory ... is relevant to show what specific Computer Equipment was and is operating at what Internet Protocol Addresses and at what Domains, and who that Computer Equipment is actually owned by - Hypertouch or BSI." The Interrogatory does not ask about IP addresses, domain names or ownership of the machines.

Regarding "where the equipment is located and the identification of the owner or renter of each property," Defendants had already inspected all the California locations except Palo Alto before Hypertouch's answers to Interrogatories were due (in April), and were directed by the occupants to the relevant areas of each property they entered. Defendants already compiled an extensive list of Plaintiff's clients and Paul and/or Joe Wagner's family members, as appear in its Preliminary Witness List for the August mini trial. Plaintiff refers Defendants to their own Witness List. A few missing street addresses can be found on BSI's Preliminary Witness List.

In its Opposition to WAH's motion to compel as to Interrogatories (February 4 set), BSI has addressed Defendants' mistaken "Server Shell Game" accusation against BSI and Hypertouch.

WAUSA argues that it is entitled to a complete history of the locations of all "Computer Equipment," defined broadly in Definition 4 of the Interrogatories, to include "microchips, microcomputers (commonly referred to as "personal computers" or "PCs"),

5

laptop computers, notebook computers, portable computers, palmtop computers (commonly referred to as "personal digital assistants" or "PDAs"), minicomputers, servers, routers, switches, hubs, modems, RAID arrays, UPS (battery backup), computer monitors, cooling equipment, external hard drives, input and output devices, peripherals, equipment racks, printers, scanners, webcams and all other devices or equipment that support, connect to or within a computer or computer network."  WAUSA seeks the information about all this equipment, according to its Definition 32, "from January 1, 2000 to present." This creates an absurdly overbroad array of equipment that could conceivably be covered, and would impose a nearly impossible burden of identifying items used over the past eleven years, consisting of hundreds of pieces of equipment, including such items as mice, switches, routers, monitors, hard drives, thumb drives, cables, racks, etc.  The phrase, "and all other devices or equipment that support, connect to or within a computer or computer network. . ." is so broad that it would appear that the true goal of WAUSA is simply to create busy work for Hypertouch, rather than to pursue any information of relevance.

WAUSA's complaint that it was misled as to the locations of Hypertouch servers relies on two exhibits: BSI's responses to interrogatories in September, 2010, and the current Hypertouch responses to the February 4, 2011 interrogatories.  The specific questions asked of BSI and Hypertouch are not the same; BSI responded to the best of its knowledge as to the physical locations of servers that were not its own; Hypertouch moved its servers in June, 2010 within California, a distance of approximately 6 miles, to

an address that was included in Hypertouch's original answers. WAUSA timed its interrogatories asking about server locations, issued 50 days after the December 15, 2010 scheduling order, to coincide with the original deadline for inspections, February 4, 2011.

WAUSA states that "Hypertouch should be sanctioned for moving its servers in June 2010 and refusing to answer questions until after the inspection deadline," implying unsupported nefarious motives on Hypertouch's part. Besides failing to note that Defendants' inspections preceded and so did not rely upon Hypertouch's answer to Interrogatory No. 1, WAUSA neglected to mention that a possible motive for Hypertouch's move was the fact that the Vargases had a baby on the way, and needed the storage room used by Hypertouch.

**Interrogatory 2.  Server locations, past.**

Hypertouch incorporates its arguments as to Interrogatory #1, above.

**Interrogatory 4.  Permissions given to BSI or Paul Wagner.**

The Interrogatory says "Identify...," not "Describe...," and the term, "Identify" is defined only as to persons and documents. This item was addressed in a letter of May 9, 2011 from Mr. Ring to Mr. Saunders, and in the conference of May 10, 2011. WAUSA's Interrogatory 4 to Hypertouch reads:

> 4. Identify with Specificity all Permissions or Privileges ever granted to Paul Wagner, Beyond Systems or any other employee or agent of Beyond Systems, by Hypertouch or James Joseph Wagner, to any Computer Equipment, Software or Product or Service Account owned, operated, used or paid for by Hypertouch.

This interrogatory is identical to WAH's Interrogatory 8 to BSI, except that

7

WAUSA's adds the words, "or James Joseph Wagner." Hypertouch's answer was similar to BSI's, and WAUSA's exceptions to Hypertouch's answer are similar to WAH's exceptions to BSI's answer. The Definitions section of the interrogatories includes the following:

> 26. Specificity. Specificity means the quality or state of being specific. To be precise. The opposite of being vague.

Hypertouch responded as specifically as possible regarding permissions granted to BSI and Paul Wagner. WAUSA argues, "What is required here is a complete history from inception of business to present of every permission ever allowed for every server or other piece of equipment or software, every domain, every email account, and a precise explanation of what that permission allowed the holder to do. If the act could be done remotely, that should be admitted. If the scope of permissions changed over time, or were expanded (or contracted) to new or different equipment, software, domains or accounts, that must be explained with precision." The scope is absurdly broad. WAUSA also over-states the importance of permissions in trying to cobble together facts to support its "alter-ego" theory as to Hypertouch and BSI, which are separate and distinct corporations in separate states, having no common ownership.

The inquiry is more appropriate for a deposition. It is expected that the testimony will confirm that Hypertouch does not keep records of the history sought, especially at the fine level of granularity described in your letter, which is far beyond what is sought in the interrogatory. WAUSA has failed to demonstrate that Hypertouch has the information sought.

8

WAUSA further complains that Hypertouch uses terms without explaining what they mean, such as "console level access"; "client-level access"; or "physical access." These are commonly used terms in the industry. Hypertouch meant exactly what these words commonly mean: BSI has access to the console of the designated Hypertouch machines via remote access software. Defendant complains that Hypertouch responded to the Interrogatory by "referring to certain domains, but not by equipment, which was also specifically asked for."

Hypertouch proffers that, like other ISPs, Hypertouch identifies online equipment that it operates with a Fully Qualified Domain Name (e.g., mail.hasit.com or dns1.hypertouch.com) and provided these names in its Response. Hypertouch has fully stated what information it has in its possession, custody, and control, and WAUSA presents no information to the contrary.

Without waiving any objections, through counsel, Hypertouch has provided informal supplementation via letter on May 10, 2011, stating:

> Hypertouch has granted BSI permission to access several of its Internet services and interactive computer services, including web, email and DNS services. Hypertouch grants BSI permissions sufficient to allow performance of the services described and reflected in BSI's responses to WAUSA's Interrogatory Set 1 No. 9, Requests for Production Set 1 Nos. 5 and 11-14, and Requests for Production Set 2 Nos. 23. Those responses are hereby incorporated by reference.
> BSI has client-level access to Hypertouch's email services. BSI has remote console access to Hypertouch DNS servers (dns1.hypertouch.com and dns2.hypertouch.com) and a Hypertouch web server (www.hypertouch.com). BSI has physical access to dns2.hypertouch.com and www.hypertouch.com. BSI also has remote console access to Hypertouch DNS servers (dns3.hypertouch.com), Hypertouch mail servers (mail.hasit.com, mail.reasonabledoubt.com, upland.dyndns.org, upland2.dyndns.org) and non-deployed reserve computer ("mini.local"). Hypertouch owns the Sambar web and

(in the past) email server software hosted on a BSI machine in DC, on which www.hypertouch.com runs.

**Interrogatories 5 and 6. Payments between BSI and Hypertouch**

WAUSA's Interrogatory 5 to Hypertouch reads:

> 5. Identify all payments ever received by Hypertouch or James Joseph Wagner from Beyond Systems or Paul Wagner, including, with Specificity, the reason(s) for such payments.

In short, the information sought has been provided. The Interrogatory says "Identify...," not "Describe...," and the term, "Identify" is defined only as to persons and documents. This item was addressed briefly in a letter from Mr. Ring dated May 9, and in the conference of May 10.

This interrogatory is substantially similar to WAH's Interrogatory 10 to BSI. Hypertouch's answer was similar to BSI's, and WAUSA's exception to Hypertouch's answer are similar to WAH's exceptions to BSI's answer.

Hypertouch has communicated to WAUSA through counsel that with the exception of one reimbursement in 2005, there have been no payments between BSI and Hypertouch for the past 8 years, and that the list of payments provided is correct. Information has been provided for payments during the remote years 2000 – 2003, and the one reimbursement in 2005. WAUSA fails to demonstrate any basis for believing that the facts are otherwise, in a pointless fishing expedition. WAUSA expressed concern over the "qualifier" in the answer, limiting the information to the operations of Hypertouch and BSI. This is the appropriate scope of inquiry, as WAUSA has confirmed through counsel that it is not seeking information about one brother paying the other's

restaurant bill, or reimbursing the other for concert tickets, or anything in the personal realm; the inquiry concerns the operations of the two entities, and the responsive information has been provided.

WAUSA cites "Joseph Wagner's consultant work for BSI" where Joe "WAGNER has served as a consultant to BSI's attorneys during a number of BSI's cases to perform analysis on entails [sic], to aid in the technical production of exhibits, and to analyze evidence developed during the course of the case." Hypertouch has responded through counsel that, as will be shown in depositions, BSI never paid Joe Wagner for such work, directly or indirectly.

Hypertouch has no specific recollection, and no records, describing the purpose of the $7,000 payment to Hypertouch in April 2000, or on the $118.10 payment to Hypertouch in January 2003. However, Hypertouch has communicated to WAUSA through counsel that, from the context and the place in the chronology, it believes that the $7,000 was "for time on Motorola project," but that now, 10 years later, the information is no longer in the possession, custody, or control of Hypertouch.

In its claimed list of deficiencies, WAUSA claims that Hypertouch's responses lack specificity when the Interrogatory made no such demand. WAUSA asserts that "the requested discovery is directly relevant to show the nature of the relationship between BSI and Hypertouch." See Motion to Compel, at 15. It also claims that it seeking "all payments" and "the exact reasons they were made." See id., at 15. This is a fishing expedition.

WAUSA did not ask for "specificity" in its Interrogatory, but now inserts that term in follow-up, and applies convenient, expansive meaning. WAUSA cannot go back now and re-write the interrogatory as it wishes the query had been written.

As for Plaintiff's objection to the duplication of discovery already propounded by WAUSA, Plaintiff repeats its argument above that knowledge in the hands of WAUSA's officers, employees and attorneys is also in the hands of WAH. Hypertouch's Response described all payments between BSI and Joe Wagner (there were none) and BSI and Hypertouch.

**Interrogatory 12. "Honeypots."**

The Interrogatory says "Identify...," not "Describe...". We discussed this item in our conference today, and I indicated that Hypertouch will stand on its position, but we add the following comments.

WAUSA complains at length about obscure details, despite the full response given. WAUSA essentially admits that Hypertouch did answer the Interrogatory, but it does not like the answer:

> ... the Answer eventually gets around to admitting that Joseph Wagner "placed email addresses in webpages that give notice of Hypertouch's policy," this disingenuous non-answer (the hidden addresses say nothing about any policy, they are only addresses) does not reveal whether Joseph Wagner was the only person who did so, or when he did so, or what were the circumstances of his doing so.

As I understand Joe Wagner will testify in deposition, Hypertouch did not identify any other person who put the email addresses in the web pages because nobody else did. Hypertouch did not mention the date when the email addresses were first placed in the

12

web pages because, even if Hypertouch could recall the dates of such changes, the Interrogatory does not seek such dates. Rather, it asks simply to "Identify with Specificity the Person(s) responsible for the creation ..., management ..., and receipt ..." -- where "with Specificity" means simply "being specific." Although the Interrogatory did not ask for the "circumstances" of the responsibility, Hypertouch provided it: Hypertouch "placed confirmation email addresses in some of the web pages it hosts to conform to California B&P 17538.45 which requires proof that spammers had notice of Hypertouch's email policy." It should be noted Hypertouch answer users the accurate term "confirmation email addresses," because the Interrogatory uses false inaccurate terminology, for example email addresses such as rebeka@serenitychair.com, which is in fact the only email address on the cited serenitychair.com and is the owners's contact email address for her fledgling business. This is consistent with WAUSA's stated opinion that any email address found online is an explicit invitation to receive their spam. For example WAUSA states that an email sent in 1998, ironically to the "a Computer Privacy mailing list" whose archive is available online, is an "Explicit Opt-In" for to received World Avenue spam in 2010.

  WAUSA mistakenly states that Hypertouch "merely says he placed email addresses that give notice of Hypertouch's policy in the websites, and as stated above, none of these addresses say a single word about any such policy." Hypertouch said "webpages that give notice of Hypertouch's mail policy"; the email addresses themselves did not give notice of policy; the webpages did. Thus the spammers necessarily received

13

the notice of policy in order for them to have harvested those addresses.

"[T]he Person(s) responsible for ... management of the Honeypots and Honeypot E-Mail Addresses" was already answered in part and is nonsensical in part.  WAUSA defined as follows: "Honeypot or Honeypots shall mean the following web pages ..."  Hypertouch already answered that it "placed email addresses in webpages that give notice of Hypertouch's email policy," that "[t]he websites cited are not a fake or a trap" and that "[t]here is only one email address on the [http://theserenitychair.com] website which is used by the website's owner."  "[M]anagement of ... E-Mail Addresses" is nonsensical where a wildcard address is used; a mail account can be managed, but the email addresses cannot."

WAUSA has not shown that the email addresses in question were used by BSI or any other client of Hypertouch's.  This inquiry is truly a fishing expedition.  WAUSA may follow up in deposition.

Our live discussion of discovery issues on May 10, 2011 ended at 6:12 p.m. after we addressed this Interrogatory 12.

### Interrogatory 14.  Seeded Addresses.

WAUSA's Interrogatory 14 states:

> Identify with Specificity the Person(s) responsible for the creation of the Seeded E-Mail Addresses, management of the Seeded Email Addresses and receipt of email directed to the Seeded Email Addresses.

Hypertouch provided a complete response.  The Interrogatory says "Identify...," not "Describe...".  WAUSA complains: "Once again, Hypertouch evades the question by

14

engaging in the art of redefinition.  Hypertouch says it 'does not seed lists.'  But the question did not ask about lists."  Hypertouch did not "redefine" the term, "Seeded E-mail Address;" WAUSA never defined it in the first place.  The definition found by Hypertouch is standard for the industry.  Hypertouch contends that WAUSA, being in an industry that depends on email lists and bulk emailing, knows very well that "Seeded Email Addresses" are typically kept in lists, and the definition used by Hypertouch fully describes what an individual seeded email address is.

WAUSA has not demonstrated that the answer is incomplete.  Hypertouch stands on its response.


**Interrogatory 15.  Hypertouch.com registration.**

Hypertouch has fully responded.  The Interrogatory says "Identify...," not "Describe...," and the term, "Identify" is defined only as to persons and documents.  As noted previously, the inquiry is a "why" question about the use of the Belmont Avenue postal address. Hypertouch gave a full answer.

Clearly a notice regarding a technical difficulty mailed first to BSI would take longer to reach Hypertouch than if it were mailed to the technical contact directly.  WAUSA, not satisfied with the answer, raises multiple follow-up questions that are more suitable for a deposition.  More information is provided by Hypertouch in its response to Holdings' Interrogatory 17.  BSI has always been the owner of the domain name, hypertouch.com; Hypertouch, Inc. did not hold a trademark on the name, "hypertouch,"

15

when the registration of "hypertouch.com" was first made.  Further inquiry may be appropriate via deposition.

      WAUSA's sarcastic comment is nonsensical:

> The answer could not, of course, possibly have anything to do with the desire of both parties to claim in different lawsuits that they hold the right to sue on the exact same emails.  There are of course no email communications between the two brothers where they specifically discuss doing exactly that.

      Hypertouch has never claimed to be the registrant of the hypertouch.com domain name, nor does it need to be in order to defend itself under California law B&P §17529.5: in fact none of the CA anti-spam statutes listed at http://www.spamlaws.com/state/ca.shtml require that the victim be the registrant of the domain name in order to have standing.  Likewise, MD-CEMA does not require that the intended recipient of the commercial email be the registrant of the domain name in the recipient's email address; rather, it is sufficient (but not necessary) that the information about the recipient's residency be available on request from the registrant of that domain.  Nor is it necessary that the ICSP be the registrant of that domain name.

      WAUSA purports to be shocked that Network Solutions did not produce photocopies of its paper technical notices regarding Hypertouch.com dating back to 1997:

> However, documents subpoenaed from Network Solutions contradict this statement and demonstrate that Hypertouch has not answered in good faith.  ...  This Answer is therefore profoundly disturbing and warrants further disclosure.

      There is no contradiction; WAUSA has simply learned that Network Solutions does not maintain copies that date back 14 years.

**Interrogatory 21. "Why" embedded e-mail addresses; "Honeypot."**

Hypertouch gave a full response to this "why" question. Further follow-up, if any, belongs in deposition. The Interrogatory says "Identify...," not "Describe...," and the term, "Identify" is defined only as to persons and documents. WAUSA asks "why there are embedded e-mail addresses in the source code of the Honeypot." This is another "why" question to which Hypertouch has provided a response that WAUSA does not like. WAUSA may follow up in deposition.

## CONCLUSION

For all these reasons, Defendant World Avenue USA, LLC's Motion to Compel Complete Answers to Interrogatories from Hypertouch Relating to the August Trial should be denied.

| /s/ | 05/11/11 |
|---|---|
| Stephen H. Ring, Esq. | Date |

Stephen H. Ring, P.C.
USDC MD Bar No. 00405
506 Main Street, Suite 215
Gaithersburg, MD 20878
Phone: (301) 563-9249

| | |
|---|---|
|       /s/       |    05/11/11    |
| Michael S. Rothman, Esq. | Date |

USDC MD Bar No. 14568
401 E. Jefferson Street
Suite 201
Rockville, MD 20850
Phone: (301) 251-9660
Fax: (301) 251-9610

*Attorneys for Third Party Defendant Hypertouch, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of May 2011, a copy of the foregoing Opposition was served on the counsel named below via electronic mail:

Sanford M. Saunders, Jr., Esq.
USDC, MD #4734
GREENBERG TRAURIG, LLP
2101 L Street, NW
Suite 1000
Washington, DC 20037
202-331-3100
202-331-3101

Attorney[s] for World Avenue USA, LLC

                                                       /s/                 
                                                    Stephen H. Ring