**IN THE U.S. DISTRICT COURT FOR MARYLAND,**
**SOUTHERN DIVISION**

BEYOND SYSTEMS, INC.    )
                          )
    Plaintiff         )
    v.                 )       **Case No. PJM 08 cv 0921**
                          )
WORLD AVENUE USA, LLC, et al. )
    Defendants     )
_____ )

**DEFENDANT WORLD AVENUE USA, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL COMPLETE PRODUCTION OF DOCUMENTS FROM JAMES JOSEPH WAGNER RESPONSIVE TO FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**

Defendant/Third Party Plaintiff, WORLD AVENUE USA, LLC ("WAUSA"), hereby submits its Memorandum of Points and Authorities in Support of its Motion to Compel Complete Production of Documents Responsive to First Request for Production from Third Party Defendant, JAMES JOSEPH WAGNER ("Wagner"), as a result of his failure to respond completely to WAUSA's First Request for Production of Documents.  In support thereof, WAUSA states:[1]

## I.    <u>INTRODUCTION.</u>

The background of BSI's action against WAUSA for in excess of $100 million in alleged statutory damages for purported unsolicited commercial emails ("UCE"), and WAUSA's defense that BSI is not a *bona fide* Maryland resident, is not a *bona fide* interactive computer service provider, and that it conspired with Hypertouch, Inc. ("Hypertouch"), Wagner, and other

_____

[1] WAUSA has made a herculean effort to resolve the subject matter of this Motion with counsel for Wagner, but Wagner has failed to produce the responsive documents and to confer in an appropriate manner.  *See* Local Rule 104 Certification, attached as Exhibit 1.  In this Motion, WAUSA raises only issues pertinent to the Three Trial Issues, and defers on the remaining issues.

members and friends of the Wagner family to funnel hundreds of thousands of e-mails to BSI for the very purpose of manufacturing spam litigation, is well-known to this Court and WAUSA will avoid repeating it.  This Motion is an effort to compel the production of documents relevant to the Three Trial Issues set for the August Trial that were first requested in February 2010, and which Wagner has continually refused to provide since that time.  Wagner's objections to the First Request for Production should be overruled, and Wagner should be compelled to produce responsive documents.

## II.   PROCEDURAL BACKGROUND.

WAUSA filed the Third Party Complaint against Wagner twenty (20) months ago on August 7, 2009, and perfected service of process on August 21, 2009.  *See* DE 86, 101-102.  Wagner wasted this Court's time with a Motion to Quash Service filed on September 10, 2009 claiming a host of absurdities including that process was served on a five-year-old child.  *See* DE 106.  While the Motion was pending, WAUSA proceeded with serving discovery on Wagner on February 18, 2010.  *See* Ex. 2.  When this Court disposed of Wagner and Hypertouch's Motion to Quash Service on April 28, 2010, it found Wagner and Hypertouch's positions "unsupported and … a far cry from the presentation of 'strong and convincing evidence' necessary to prevail on their motion."  *See* DE 216, p. 2.

On May 10, 2010, as ordered by the Court, Wagner and Hypertouch filed an Answer to the Third Party Complaint, at which point the discovery had been pending since February 18th.  *See* DE 225-226.  Wagner continued to ignore his discovery obligations, and on May 13th, WAUSA moved to compel Wagner to respond to discovery.  *See* DE 230.  Despite being ordered to answer, and actually answering almost a month earlier, on June 8, 2010, Wagner filed a Rule 12(b)(6) Motion to Dismiss.  *See* DE 263.  That same day, Wagner responded to WAUSA's

motion to compel, and, for the first time, moved for a stay of the discovery served upon it (4) months earlier.  *See* DE 265.  The Motion to Stay was predicated on the pendency of the Motion to Dismiss, which never should have been filed since Wagner had been ordered to Answer and had waived the right to file any other responsive motion when he filed what amounted to a Rule 12(b)(5) motion to dismiss for insufficient service of process without simultaneously moving to dismiss on any other grounds.  *See* Rule 12(b)(5), (6) & Rule 12(b), Fed. R. Civ. P. ("A motion asserting any of these defenses must be made ***before a pleading*** if a responsive pleading is allowed") (emphasis added).  After the parties briefed the baseless Motion to Stay, the Court entered its September 29th Order denying the Motion to Stay.  *See* DE 432.  On that same date, the Court entered an Order granting WAUSA's Motion to Compel Hypertouch and Wagner to respond to the discovery served upon them seven months earlier in February 2010.  *See* DE 431.

Wagner and Hypertouch waited for another thirteen (13) days to run, and then, on October 12th, filed ***yet another*** Motion for Reconsideration and Renewed Motion for Protective Order and for Stay of Discovery [DE 447-1] that rehashed the same arguments raised in the first Motion for Stay at DE 265 and rejected in the Court Orders at DE 431 and 432.  *See* DE 447-1. WAUSA filed its Opposition on October 27th [DE 470].  The very next morning (October 28th), the Court denied the Motion for Reconsideration.  *See* DE 447-1.  Despite three Court Orders compelling him to respond to discovery at DE 431, 432, and 472, Wagner still failed to respond

FTL 108,117,999v1 4-26-11

to the discovery.  At that time[2] -- just as six months earlier as pointed out above -- Wagner once again waived all objections to the discovery.  Despite three Court Orders compelling him to do so [DE 431-432, 472], Wagner then still failed to respond to the discovery for another month -- at which point WAUSA advised that it would be filing a Motion for Contempt.  *See* Ex. 3. Documents were produced by Wagner and Hypertouch for the first time on November 15, 2010 -- nine (9) full months and three Court Orders after the discovery was served.  *See* Ex. 4. WAUSA's good faith efforts to obtain meaningful further compliance began immediately thereafter.  *See* Ex. 1.

## III.   SUMMARY OF ARGUMENT.

Wagner's objections should be overruled and Wagner should be compelled to produce responsive documents and designate which documents are responsive to particular Requests of the Request for Production.  First, Wagner's objections were all waived.  *See* footnote 2, *supra*.

---

[2] *Zornes v. Specialty Indus., Inc.*, 166 F.3d 1212, 1998 WL 886997, at *1, *2 & fn. 3 (4th Cir. 1998) (unpublished) (affirming dismissal of case with prejudice for discovery violations where Magistrate Judge had held that failure to timely respond to discovery requests constituted a waiver of any objections that plaintiff had to any of the requests); *Mezu v. Morgan State Univ.*, 269 F.R.D. 565 (D. Md. Oct. 22, 2010) (holding that assertion of improperly-raised objections to discovery requests unsupported by particularized facts waived all such objections); *Washington D.C. Cement Masons Welfare Fund v. Rapid Response Constr.*, Case No. WMN-08-3434, 2009 WL 2578986, at *1, *2 (D. Md. 2009) (holding that defendants waived discovery objections to request for production where discovery objections were due on May 14, 2009, but the responses were not served until May 21, 2009, and denying motion for extension of time to serve discovery responses, *nunc pro tunc*); *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 356 (D. Md. 2008) (holding that the failure to object with particularity to a document request waives the objection); *Sabol v. Brooks*, 469 F. Supp.2d 324 (D. Md. 2006) ("Under Rule 34, failure to make particularized objections to document requests constitutes a waiver of those objections"); *Hall v. Sullivan*, 231 F.R.D. 468, 470 (D. Md. 2005) (holding that party responding to a discovery request who fails to assert specific, non-boilerplate and particularized objections waives the objections); *Marens v. Carrabba's Italian Grill, Inc.*, 196 F.R.D. 35, 38 (D. Md. 2000) (holding that a party responding to a discovery request who fails to allege specific facts showing the nature and extent of the burden or who asserts a privilege without supporting it, waives the objection) (internal citations and quotations omitted);  Fed. R. Civ. P. 34(b).

Second, Wagner's meritless General Objections should be overruled, and Wagner should be compelled to produce any responsive documents withheld by reason of the objections.  Third, Wagner's General Objections should be overruled and Wagner should be compelled to produce responsive documents to Requests 7, 10-12, 15, 18, 21, and 25-27.

## IV.   ARGUMENT.

### A.   Wagner's General Objections Should Be Overruled.

Wagner's objection to the time frame of the First Request should be overruled.   In Paragraph 6 of the Instructions, WAUSA specified that:   "Unless otherwise stated, the time frame is from January 1, 1997 to present."  *See* Ex. 2, p. 3, ¶ 6.  Wagner objected to Paragraph 6 of the Instructions "to the extent they call for discovery for a time period prior to 2004."  *See* Ex. 4, p. 3, ¶ 3.  This Court has already held that a time period of 2000 to present is a reasonable time period.  *See* excerpt of February 16, 2011 hearing, p. 72, line 25-p. 73, line 1-2, attached as Composite ("Comp.") Ex. 5 ("Requiring the plaintiff to produce financial records from January of 2000 in my estimation is not unreasonable").  The time period of January 1, 1997 to present is even more appropriate because it was in 1997 that Wagner and Hypertouch claim that Plaintiff BSI registered the domain name hypertouch.com in its name.  The purported ownership by BSI of Hypertouch's trademarked name, Hypertouch, in the domain name, hypertouch.com[3] although that domain is hosted exclusively on Hypertouch servers and the exclusive technical contacts for

---

[3] The addition of a .com to a domain name that contains a trademark is a distinction without a difference under the Lanham Act.  Both are equally entitled to the protection of the same trademark under the Lanham Act.  15 U.S.C. § 1125(d)(1)(A)(i)(I); *Virtual Works, Inc. v. Volkswagen of America, Inc.*, 238 F.3d 264, 269 (4th Cir. 2001) (protecting vw.net based on VW mark); *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1055 (9th Cir. 1999) (protecting moviebuff.com based on Moviebuff mark).

5

the domain are Hypertouch or Joseph Wagner, is relevant to the Third Trial Issue, which is the relationship between Hypertouch and BSI.

Wagner's objection to the overbreadth and undue burden imposed by the Request should be overruled. *See* Ex. 4, p. 2, ¶ 2. In Paragraph 2, Wagner objected "to the Instructions to the extent they are vague, ambiguous, overly broad, unduly burdensome, oppressive, and/or not reasonably calculated to lead to the discovery of admissible evidence." *Id*. However, Wagner did not support his General Objections with any affidavit or other record evidence of the purported burden, and thus, the General Objection should be overruled. *Id*. General objections to discovery requests, *e.g.*, overbroad, vague, ambiguous, and unduly burdensome, are improper because they are not sufficiently specific to allow a court to ascertain the objectionable character of discovery requests, nor does a general objection fulfill a party's burden to explain its objection.[4] Wagner, as the party resisting discovery, must show specifically how each document request is deficient based upon each asserted objection, *e.g.*, what extraordinary effort is required to respond to an interrogatory designated "overbroad" or "unduly burdensome." *See* Local Rules, Discovery Guideline 10(e). This Court previously rejected similar general objections raised by BSI. Specifically, during the oral argument on BSI's Motion for Reconsideration on WAUSA's Motion to Compel Discovery Responsive to Fourth Set of Interrogatories, Magistrate Judge Charles B. Day stated:

> 21. The objections are boilerplate and most of them are
> 22. nonapplicable, objections such as "vague" or "ambiguous," or
> 23. whether it's burdensome with no supporting affidavit,
> 24. unspecified violations of plaintiff's right to privacy by rule,
> 25. law or regulation, objections about something being duplicative,

---

[4] *See* cases cited in footnote 2*, supra.; see also Burns v. Imagine Films Entertainment, Inc.*, 164 F.R.D. 589, 592-93 (W.D.N.Y. 1996); *Chubb Integrated Sys. Ltd. v. National Bank of Washington*, 103 F.R.D. 52, 58 (D.D.C. 1984).

\*\*\*
1. the assertions of attorney-client work product and other
2. privileges, which were all waived by disclosure in the Kraft
3. case, other agreements with third parties but no proffer of such
4. agreements being made.

*See* Comp. Ex. 5, Feb. 16, 2011 Hearing Transcr. at pp. 73:21-25; 74:1-4.

**B.**   **Wagner's Objections To Requests 7 and 21 On The Hypertouch Server Locations Should Be Overruled.**

**1.**   **WAUSA's Request 7 and 21 and Wagner's Responses.**

7. All documents, communications and correspondence that specify the exact location(s), including the postal address, where Hypertouch now or in the past has physically housed or houses, or has installed any Servers,[5] computers, computer networks, peripheral devices and Internet connectivity/bandwidth services.

OBJECTIONS AND RESPONSES:

Wagner objects on the grounds that the request is overbroad ("all documents") and is not reasonably tailored to lead to the discovery of admissible evidence. Wagner further objects to the extent the documents sought have already been produced in discovery. Wagner objects to the extent the request seeks information protected from disclosure by confidentiality, trade secret, privacy, the attorney-client privilege, attorney work-product doctrine, or any other doctrine or privilege. Subject to these objections, and without waiving them Wagner is willing to produce sufficient documents to identify the locations of servers that are related to the EMAILS AT ISSUE.

21. All communications with Jaime Vargas and/or the owners or lessees at 751 Upland Road, Redwood City, California 94062, 801 Woodside Rd. #14-235, Redwood City, California 94061-3758, 359 Port Royal Avenue, Foster City, California 94404, and 235 Belmont Ave, Redwood City, California 94061,

---

[5] WAUSA defined Server as follows:

*Server.* Server or Servers shall mean all Computers dedicated to providing one or more services over a computer network, including, but not limited to, Email services, Domain Name Resolution services (DNS), Web Hosting services (Storing and Serving Web Pages), Internet Connectivity services, Database services, Data Backup services, Data Storage services, FTP [File Transfer Protocol] services, NNTP services, and e-commerce services.

*See* Ex. 2, p. 6, ¶ 18.

7

concerning the placement and operation of the Subject Servers.

OBJECTIONS AND RESPONSES:

Wagner objects on the grounds that the request is overbroad, burdensome and is not reasonably tailored to lead to the discovery of admissible evidence. Wagner further objects to the extent the documents sought have already been produced in discovery. Hypertouch [sic] objects to the extent the request seeks information protected from disclosure by confidentiality, trade secret, privacy, or any other doctrine or privilege. Subject to these objections, and without waiving them, documents sufficient to show Hypertouch ISP status will be produced.

**2.    Wagner Should Be Compelled To Produce Responsive Documents To Requests 7 and 21.**

**i.    Request 7.**

Wagner should be compelled to produce the documents relating to the past or present location of the Hypertouch Servers, and not just "the locations of servers that are related to the E-Mails At Issue." *See* Ex. 4, p. 7, ¶ 7. At issue in the August Trial is whether "Mr. Joe Wagner, in fact, is doing anything other than manufacturing or sending these e-mails to his brother to allow these suits to be brought." *See* Ex. 6, excerpted transcript of November 29, 2010 hearing. As part of answering this question, the jury is entitled to see the documents whereby Wagner and Hypertouch keep up the façade of being a California corporation having a bogus principal place of business in California (a mailbox store located at 1259 El Camino Real, # 139, Menlo Park, CA 94025) and listing a vacant California apartment (417-A Oak Grove Avenue, Menlo Park, California 94025),[6] while a secret document[7] forwards their mail to his in-law's residence at 17 Greenfield Street, Lowell, Massachusetts 01851, where Hypertouch is really currently based. Thus, Wagner should be compelled to produce responsive documents.

---

[6] *See* Declaration of Thomas Cabral, attached hereto as Exhibit 7.

[7] See Exhibit 8 (U.S. Postal Service Response To Request For Forwarding Address for 417-A Oak Grove Avenue, Menlo Park, California).

8

The documents requested in Request 7 go to the heart of the Hypertouch-BSI conspiracy. By his own admission, Mr. Wagner moved to Massachusetts.  *See* Ex. 4, p. 5, ¶¶ 1-2.  Yet, during this time, Hypertouch's servers were based out of California.  Instead of locating them at a central business or secure facility -- like a *bona fide* ISP would do -- Hypertouch appears to house them in the residences of family members and friends all to ensure no interruption in the flow of millions of e-mails from Hypertouch to BSI.  Request 7 delves at the precise circumstances whereby Hypertouch houses its Servers.  The jury is entitled to examine the operations of Hypertouch to know exactly where all the Servers are, how they are moved around, and where they have been in the past during the periods of time pertaining to this case. Moreover, Wagner's objection that he will produce documents relating to the location of the Servers relating to the E-Mails At Issue is without merit.  *See* Ex. 4, p. 7, ¶ 7.  WAUSA is entitled to the documents relating to the location of *all* of Hypertouch's Servers, not just those that Wagner deems relevant.

Wagner's objections based on "confidentiality, trade secret, privacy, the attorney-client privilege, attorney work-product doctrine, or any other doctrine or privilege" should be overruled, as this shotgun assortment of complaints has been waived through his failure to produce a Privilege Log.  In this District, a party has a duty to particularize its claims of privilege.  *Equal Rights Center v. Lion Gables Residential Trust*, Case No. DKC 07-2358, 2010 WL 2483613, at *1, *6 (D. Md. June 15, 2010) (Chasanow, J.); *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 264 (D. Md. 2008) (Grimm, J.)  Failure to provide a Privilege Log violates Rule 26(b)(5) and Discovery Guideline 10(d) of the Local Rules and waives the privilege.  *See* Fed. R. Civ. P. 26(b)(5); Local Rules, Discovery Guideline 10(d); *Susko v. City of Weirton*, Case No. 5:-09cv1, 2010 WL 2521423, at *1,  *2 (N.D.W.V. June 21, 2010) ("The

plaintiff, however, never supplied a privilege log to allow the magistrate judge to asses the privilege claims, as required by Federal Rule of Civil Procedure 26(b)(5) … The plaintiff's objection, therefore, is improper."); Comp. Ex. 5, excerpt of February 16, 2011 hearing, p. 87, lines 6-12 ("Then plaintiff [BSI] had claimed privilege, but never provided a privilege log. Therefore, it was waived").

To the extent that Wagner claims that he has already produced responsive documents, Wagner did not designate the documents responsive to any particular Request.  Rule 34 requires that the documents be produced "in the usual course of business or must organize and label them to correspond to the categories in the request."  *See* Rule 34(b)(2)(E)(i).  It is not sufficient to point to a mountain of documents and state that said documents are responsive to several of the requests for production.  Rule 34(b)(2)(E)(i) means what it says:  the documents themselves must be organized and labeled to correspond to the categories in the Request.  *See Porreca v. Mitchell L. Morgan Management, Inc*., Case No. JLM 08-1924, 2009 WL 400626, at *1, *3 (D. Md. Feb. 13, 2009) (Motz, J.) ("In Plaintiffs' response to Defendants' requests for document production, rather than organizing and labeling the documents to correspond to the categories in the request as required by Rule 34(b)(2)(E)(I) of the Federal Rules of Civil Procedure, they merely respond 'see attached documents' for every request, even when there are no corresponding documents attached"); *T.N. Taube Corp. v. Marine Midland Mortgage Corp*., 136 F.R.D. 449, 456 (W.D.N.C. 1991) ("Here, Defendant obviously has the ability to inform Plaintiff which of the produced documents respond to particular requests for production….As such the Court believes the purposes of discovery, and basic considerations of fairness, require Defendant to organize the documents produced on 1 October 1990 in a manner clearly indicating which of these documents respond to Plaintiff's specific requests for production"); *Frontier-Kemper Constructors, Inc. v.*

10

*Elk Run Coal Co., Inc.*, 246 F.R.D. 522, 528 (S.D.W.V. 2007) ("There is no indication that Plaintiff produced its Rule 26(a)(1) disclosures as they were kept in the usual course of business or that they were otherwise organized and labeled"); Rule 34(b)(2)(E)(i), Fed. R. Civ. P. (amended effective 2006) (providing that ESI be produced in the ordinary course or labeled to correspond to the categories of the discovery request).

### ii.     Request 21.

Similarly, Request 21 seeks all communications with Jaime Vargas and the residents, owners, or lessees of 751 Upland Road, Redwood City, California; 801 Woodside Road, Redwood City, California; 359 Port Royal Avenue, Foster City, and 235 Belmont Avenue, Redwood City, California, regarding the use of their premises to house and hold Hypertouch's Servers.

Put simply, this Request goes to the heart of the Hypertouch scheme, which is to place Servers in the homes and residences of friends and acquaintances, while operating from other, distant locations.  As such, Hypertouch is able to claim that it is a "California" corporation.

Contrary to Wagner's suggestion, responsive documents have not been produced; and if any could be located in BSI's production, they have not been labeled to correspond to the categories of the Request.  *See* Rule 34(b)(2)(E)(i), Fed. R. Civ. P.  Nor would any production by BSI relieve Wagner of his obligation to produce.  A *bona fide* interactive computer service provider would not locate Servers in the houses of friends of its President, but a company seeking to pose as a legitimate California interactive computer service provider would.

11

**C.**     **Wagner Should Be Compelled to Produce Documents Responsive to Request 10.**

      **1.**     **Request 10 and Wagner's Response**.

10. All documents, communications and correspondence evidencing the Person or Persons that have Administrative Rights or Administrative Permissions[8] or Restrictive Rights or Restrictive Permissions[9] to access any Hypertouch owned Server for the purpose of creating email accounts @hypertouch.com, reasonabledoubt.com, @hasit.com, @has-it.com and Zone Files for any Domain Name on the DNS server identified as dns1.hypertouch.com having the assigned IP address of 75.16.30.108.

OBJECTIONS AND RESPONSES:

Wagner objects to the extent the documents sought have already been produced in discovery.  Wagner objects on the grounds that the request is overbroad, vague, ambiguous and is not reasonably tailored to lead to the discovery of admissible evidence. Wagner objects to the extent the request seeks information protected from disclosure by confidentiality, trade secret, privacy, the attorney-client privilege, attorney work-product doctrine, or any other doctrine or privilege.

      **2.**     **Wagner Should Be Compelled To Produce Documents Responsive To Request 10**.

Request 10 of the Request for Production also goes to the heart of the conspiracy between

---

[8] WAUSA defined Administrative Rights and Administrative Permissions as:

    The terms "Administrative Rights" or "Administrative Permissions" shall mean a local account or local security group with complete and unrestricted access to create, delete and modify files, folders and settings on a particular computer, Server or other network device.

*See* Ex. 2, p. 3, ¶ 1.

[9] WAUSA defined Restrictive Rights or Restrictive Permissions as:

    The terms "Restricted Rights" or "Restricted Permissions" shall mean a local account or a local security group with restricted access to create, delete and modify files, folders and settings on a particular computer, Server or other network device.

*See* Ex. 2, p. 6, ¶ 15.

BSI and Hypertouch to manufacture spam litigation.  This requests asks for the persons who have Administrative Rights or Administrative Permissions or Restrictive Rights or Restrictive Permissions to access any Hypertouch Servers.  Discovery to date has shown that no difference exists between Hypertouch and BSI:  they share the same Internet Protocol addresses, the same Servers, the same software, the same equipment, and the same domains (*e.g.*, BSI claims to own [hypertouch.com](hypertouch.com)).  The mechanisms to accomplish this intermingling have two facets.  First, Hypertouch and BSI have "Administrative Permissions" or "Restrictive Permissions" to access one another's Servers.  Second, with the free reign given by the Administrative Permissions granted one another, Hypertouch and BSI access their own and one another's Servers through remote access software through which BSI and Hypertouch can operate out of Washington, D.C. and Massachusetts, respectively.  This particular Request seeks to pinpoint the exact extent of the Administrative Permissions and Restrictive Permissions granted to one another, and is directly relevant to one focal point of the August Trial, to wit, the "nature of the relationship" between BSI and Hypertouch.  *See* DE 544, p. 2, ¶ 1.

Wagner's Response inexplicably states that documents have already been produced in discovery.  See Ex. 4, ¶ 10.  They have not:  Wagner did not identify them, and Wagner is not relieved of his obligation to produce even if another party did produce.  *See* Rule 34(b)(2)(E)(i), Fed. R. Civ. P.

Second, although Wagner asserts privilege as to the production of the documents, he fails to identify to identify what privilege could conceivably be covered by Administrative Permissions, but in any event, said privilege was waived by the non-provision of a Privilege Log. *See* Fed. R. Civ. P. 26(b)(5); Local Rules, Discovery Guideline 10(d); *Susko*, 2010 WL 2521423, at *2.  Thus, Wagner should be compelled to produce responsive documents and designate which

documents are responsive.  *See* Rule 34(b)(2)(E)(i), Fed. R. Civ. P.

**D.     Wagner Should Be Compelled To Produce Documents To Request 11.**

**1.     WAUSA's Request 11 and Wagner's Response**.

11. All documents, communications and correspondence evidencing all business relationships between Hypertouch, Lisa Fitzgerald Wagner and the domain name reasonabledoubt.com owned by Lisa Fitzgerald.

OBJECTIONS AND RESPONSES:

Wagner objects to the extent the documents sought have already been produced in discovery. Wagner objects on the grounds that the request is overbroad ("all documents"), vague, ambiguous and is not reasonably tailored to lead to the discovery of admissible evidence. Wagner objects to the extent the request seeks information protected from disclosure by confidentiality, trade secret, privacy, the attorney-client privilege, attorney work-product doctrine, or any other doctrine or privilege. Subject to these objections, and without waiving them, sufficient documents will be produced to demonstrate the business relationships about which this request inquires.

**2.     Wagner Should Be Compelled To Produce Documents Responsive to Request 11.**

Request 11 goes to the relationship between Hypertouch and Lisa Fitzgerald Wagner and

reasonabledoubt.com, which is one of the domains that Hypertouch relies on to claim it is an

interactive computer service provider.  Lisa Fitzgerald Wagner is the domain owner.  The request

is directly relevant to the August Trial and there is no conceivable privilege that would shield the

relationship, and any such privilege was waived. *See* Fed. R. Civ. P. 26(b)(5); Local Rules,

Discovery Guideline 10(d); *Susko*, 2010 WL 2521423, at *2.  Specifically, the documents should

be provided showing the services provided by Hypertouch to Lisa Fitzgerald Wagner, and those

spam-forwarding services provided by Lisa Fitzgerald Wagner to Hypertouch.  Ms. Wagner

provided copies of those documents herself in response to her subpoena, and Wagner is not

relieved of his obligations via her production.

14

**E.**     **Wagner Should Be Compelled To Produce Documents To Request 12**

    **1.**     **WAUSA's Request and Wagner's Response**.

12. All documents, communications and correspondence evidencing the Person or Persons responsible for the development of the web pages and the web page's source code found now and in the past on the Selected Domain Names.[10]

OBJECTIONS AND RESPONSES:

Wagner objects to the extent the documents sought have already been produced in discovery.  Wagner objects on the grounds that the request is overbroad, vague, ambiguous and is not reasonably tailored to lead to the discovery of admissible evidence. Wagner objects to the extent the request seeks information protected from disclosure by confidentiality, trade secret, privacy, the attorney-client privilege, attorney work-product doctrine, or any other doctrine or privilege. Subject to these objections, and without waiving them, documents will be produced for the domain names related to the emails at issue and sufficient to establish ISP status of Hypertouch.

    **2.**     **Wagner Should Be Compelled To Produce Documents Responsive to Request 12.**

Request 12 goes to the identity of the persons who programmed the embedded, invisible code in the Selected Domain Names.  Hypertouch programs and maintains websites that contain specific e-mail addresses embedded in the source code for the purpose of collecting e-mail and suing on them.  These websites contain e-mail addresses invisible on the face of the individual web pages that make up the website, but are embedded in the source code of each web page.

---

[10] WAUSA defined the Selected Domains as:

> "Selected Domains" shall mean beyondsystems.net, hypertouch.net, legal.hypertouch.com, icorr2011.org, hypertouch.net, metrikproperties.com, senderagreestopay500dollarspermessage.hypertouch.net, katka-steve.com, motiongranted.com, reasonabledoubt.com, bihn.org, rehabrobotics.org, serenitychair.com, and theserenitychair.com, including all web pages available and viewable when accessing the Selected Domains via an internet browser now and in the past and all source code created or complied applicable to all such web pages.

*See* Ex. 2, p. 6, ¶ 17.

The e-mail collected is either held by Hypertouch, re-transmitted to BSI, or both, for the purpose of filing lawsuits. These include, but are not limited to, the Selected Domain Names that are the subject of Request 12. This is part of the overall business model of Hypertouch and BSI and documents to show that activity are critical.

Wagner objects that "the documents sought have already been produced in discovery." *See* Ex. 4, ¶ 12. The documents most certainly have not been produced in discovery, and even if they had been, any production does not relieve Wagner of his own obligation to produce. In any event, no documents were identified. *See* Rule 34(b), Fed. R. Civ. P. Perhaps most curious is Wagner's claim that the name of the persons who programmed the secret code into the Selected Domains is privileged or secret. Although this response indicates that Wagner knows who is responsible, there is no conceivable privilege applicable to this activity and in any event, no Privilege Log has been provided, which waived any privilege had there been one. *See* Fed. R. Civ. P. 26(b)(5); Local Rules, Discovery Guideline 10(d); *Susko*, 2010 WL 2521423, at *2.

F.   **Wagner Should Be Compelled To Produce Documents To Request 15.**

1.   **WAUSA's Request and Wagner's Response**.

15. All documents, communications and correspondence of any kind concerning your access to and registration of any email address on any web site defined in any of Paul Wagner's Declarations filed in this action.

OBJECTIONS AND RESPONSES:

Wagner objects to the extent the document request is not intelligible. "Access to an email address" is unreasonably vague and unclear.

2.   **Wagner Should Be Compelled To Produce Documents Responsive to Request 15.**

Request 15 asks for communications about "your [Hypertouch and James Joseph Wagner's] access to *and* registration of any e-mail address on any web site….". *See* Ex. 2, p. 11,

¶ 15.   The objection objects to "Access to an email address" as "unreasonably vague and unclear," but fails to respond to the "registration" of any e-mail address on any website.  *See* Ex. 4, p. 9, ¶ 15.  By letter dated January 14, 2011, Wagner elected to "stand on his prior responses, objections, and production until and unless ordered otherwise."  *See* Ex. 10.   Wagner did not state where in the production, if any, the documents were located, leaving WAUSA to guess at where they might be.  *See* Ex. 10; Fed. R. Civ. P. 26(b)(5); Local Rules, Discovery Guideline 10(d); *Susko*, 2010 WL 2521423, at *2.

The documents are relevant.  The discovery shows that Wagner registers e-mail addresses in websites so that he can collect e-mail for litigation.  For examples of Mr. Wagner registering bogus e-mail addresses into websites and opting in to receive e-mails, *see* Comp. Ex. 9 (containing Hyp-WAUSA-0029746, Hyp-WAUSA-0030668, and Hyp-WAUSA-0030687).

### F.   Wagner Should Be Compelled To Produce Responsive Documents To Request 18

#### 1.   WAUSA's Request and Wagner's Response.

18. All documents, communications and correspondence of any kind evidencing Hypertouch's purchase, installation and use of anti-spam software on any Server or computer owned or operated by Hypertouch.

OBJECTIONS AND RESPONSES:

Wagner objects on the grounds that the request is overbroad, and is not reasonably tailored to lead to the discovery of admissible evidence. Wagner further objects to the extent the documents sought have already been produced in discovery. Hypertouch [sic] objects to the extent the request seeks information protected from disclosure by confidentiality, trade secret, privacy, or any other doctrine or privilege. Subject to these objections, and without waiving them, documents sufficient to show use will be produced.

#### 2.   Wagner Should Be Compelled To Produce Responsive Documents.

Request 18 asks for the documents substantiating the "purchase, installation, and use" of anti-spam software on any computer or server owned by Hypertouch.   The objections are

17

meritless. First, the responses state that the Request is irrelevant. This Request is directly relevant to the question of the *bona fide* operation of Hypertouch and BSI, as explained in *Gordon v. Virtumundo*:

> In addition to his nominal role in providing Internet-related services, we are also troubled by the extent to which Gordon fails to operate as a *bona fide* e-mail provider. As discussed in greater detail below, Gordon has purposefully avoided taking even minimal efforts to avoid or block spam messages. Instead, Gordon devotes his resources to adding his "clients'" e-mail addresses to mailing lists and accumulating spam through a variety of means for the purpose of facilitating litigation.
> * * *
> We expect a legitimate service provider to secure adequate bandwidth and storage capacity and take reasonable precautions, such as implementing spam filters, as part of its normal operations. Courts should take an especially hard look at the cited harm if it suspects at the outset that a plaintiff is not operating a *bona fide* Internet access service, as is the case here.
> ***
> It is also compelling that Gordon purposefully refuses to implement spam filters in a typical manner or otherwise make any attempt to block allegedly unwanted spam or exclude such messages from users' email inboxes. In fact, Gordon acknowledges that he was able to "blacklist" domain names at the server level, so that the GoDaddy server would reject e-mails from online marketers such as Virtumundo.

*See Gordon v. Virtumundo*, 575 F.3d 1040, 1052, 1054-55 (9th Cir. 2009).

Second, Wagner's objection on the basis of privilege or privacy relating to its anti-spam software configuration on its servers and computers is meritless where Wagner has failed to tender any Privilege Log. *See* Fed. R. Civ. P. 26(b)(5); Local Rules, Discovery Guideline 10(d); *Susko*, 2010 WL 2521423, at *2. Third, Wagner's objections on the basis of overbreadth should be overruled as unsupported (*see* footnote 4, *supra.*), and already of the type rejected by this Court. *See* Comp. Ex. 5, Feb. 16, 2011 Hearing Transcr. at pp. 73:21-25; 74:1-4. Fourth, Wagner's objection that the documents have "already been produced" is without merit since this

18

is Wagner's first document response, and he has never identified where in his production, if anywhere, the documents are located. *See* Rule 34(b)(2)(E)(i), Fed. R. Civ. P. Finally, Wagner's response impermissibly narrows the request to producing only documents on "use," while ignoring the Request for "purchase" or "installation." Wagner's objections should be overruled, and he should be compelled to produce all responsive documents and label them.

**H.   Wagner Should Be Compelled To Produce Documents Responsive to Request 25.**

**1.   WAUSA's Request and Wagner's Response.**

25. A complete copy of any declaration, affidavit, report, or any deposition or trial transcript in which you testified in any proceeding, case, or arbitration brought by Hypertouch, BSI or in your individual capacity.

OBJECTIONS AND RESPONSES:

Wagner objects on the grounds that the request is overbroad, burdensome and is not reasonably tailored to lead to the discovery of admissible evidence. Wagner further objects to the extent the documents sought have already been produced in discovery. Hypertouch objects to the extent the request seeks information protected from disclosure by confidentiality, trade secret, privacy, the attorney-client privilege, attorney work-product doctrine, or any other doctrine or privilege Subject to these objections, and without waiving them, documents will be produced.

**2.   Wagner Should Be Compelled To Produce Responsive Documents To Request 25.**

Wagner's objections to Request 25 are without merit. First, Wagner's objection that it is "burdensome" to assemble all of its declarations, affidavits, reports, depositions, or trial testimony for Wagner underscores the point that Hypertouch and BSI are professional litigants who have no business masquerading as an interactive computer service provider in the first place. Notwithstanding, the objection is without merit, and only a small fraction of such transcripts have been produced. WAUSA's exhaustive efforts to secure a complete production without having to file this motion are detailed in Exhibit 1. In a letter dated January 14, 2011,

Wagner stated that he "will continue retrieving them from archives" and "check[ing] archives" and then would "provide more installments as we gather these items," thereby admitting that his production was incomplete.  *See* Ex. 10, pp. 5, 10.   WAUSA even provided a listing of the approximately sixty (60) lawsuits in which Hypertouch, Wagner, BSI and Paul Wagner were involved (*see* Exhibit 1, ¶¶ 23-24, Ex. C-D), but additional documents were not forthcoming. The documents are directly relevant to the upcoming limited purpose deposition of Wagner, and will help to streamline questioning to fit within the parameters requested by Wagner and granted by the Court.  Months of stonewalling delay in providing these materials is inappropriate from a litigant who requested that his deposition be limited in duration.

### I.     Wagner Should Be Compelled To Produce Responsive Documents To Request 26.

#### A.     WAUSA's Request and Wagner's Response.

26. A copy of all documents reflecting the allocation of litigation proceeds and nonlitigation proceeds for Hypertouch, Inc. for the period from January 1, 2000 to present.

OBJECTIONS AND RESPONSES:

Wagner objects on the grounds that the request is overbroad, burdensome and is not reasonably tailored to lead to the discovery of admissible evidence. Wagner further objects to the extent the documents sought have already been produced in discovery. Hypertouch objects to the extent the request seeks information protected from disclosure by confidentiality, trade secret, privacy, the attorney-client privilege, attorney work-product doctrine, or any other doctrine or privilege Subject to these objections, and without waiving them, Wagner will produce non-privileged documents sufficient to identify non-confidential yearly revenues and gross aggregate revenues.

20

**B.**   **Wagner Should Be Compelled To Produce Responsive Documents**.

**i.**   **Wagner's Objections Should Be Overruled.**

Request 26 seeks documents reflecting litigation and non-litigation proceeds from January 1, 2000 to present, and is relevant to the upcoming August Trial.  First, the Request is clearly relevant as the Court has already ruled several times:

> Motion GRANTED.  The Maryland statute indicates that an "interactive computer service provider" means an information service, system, or access software provider that provides or enables computer access by multiple users to a computer service.  The statute does not require a minimum number of sales or a degree of profitability.  A nearly identical definition exists under the Florida statute which is also at issue in this case.
>
> While the federal statute applicable in <u>Beyond Systems, Inc. v. Kraft</u>, Civil Action No. PJM-08-409, uses more expansive definitions, it also does not require a minimum number of sales or a degree of profitability.  However, the analysis in <u>Gordon v. Virtumundo</u>, 575 F.3d 1040 (9th Cir. 2009) is instructive on the issue of the discovery of revenue and finances of internet service providers.  The principles found in <u>Gordon</u> are equally applicable to the state-based claims here.  Accordingly, Plaintiff shall provide the requested information.
>
> The period from 2000 to present is equally reasonable given that Plaintiff's claims are dated from 2004 to present.

*See* DE 444, pp. 1-2, attached as Ex. 11.  Reconsideration was denied on February 16[th.]  *See* excerpt of February 16, 2011 hearing, p. 72, line 25-p. 73, line 1-2, attached as Comp. Ex. 5 ("Requiring the plaintiff to produce financial records from January of 2000 in my estimation is not unreasonable"); *see* DE 233 in *Kraft* Action (The information sought by these interrogatories is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). . . .The quantification of income derived from litigation endeavors, juxtaposed with those from the legitimate operation of an internet service provider, may influence the Court as to the motives of Plaintiff in light of any legislative intent"), attached as Ex. 16.

Second, Wagner's objection based on "confidentiality, trade secret, privacy, the attorney-

client privilege, attorney work-product doctrine, or any other doctrine or privilege" was long ago waived by his failure to serve a Privilege Log. *See* Fed. R. Civ. P. 26(b)(5); Local Rules, Discovery Guideline 10(d); *Susko*, 2010 WL 2521423, at *2.

### ii.    Wagner's Production Is Deficient.

Wagner's response is deficient for several reasons. *First*, Wagner followed the typical BSI/Hypertouch pattern by re-cycling a document produced in another case that does not apply to the case at issue, nor to the request at issue, nor to the time frame at issue.[11]  The document, HYP0014725/HYP-WAUSA-0019469, ██████████████████████████████████████

████████  *See* Ex. 12.  WAUSA is entitled to a response through the present.  In fact, in correspondence dated January 14, 2011, Hypertouch/Wagner promised "[W]e will supplement in accord with the discovery rulings, concerning later recoveries," (*see* Ex. 10, p. 9), but it has failed to do so.

*Second*, the document also does not define what it means by "████████████████████

████████████████████████████  *See* Ex. 12.  I█████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████  Or something else?  The document does not tell this and is not responsive.

---

[11] BSI followed this same pattern by producing a set of Interrogatory Answers showing its revenues that was unsworn and an Interrogatory Answer given in the *Kraft* Case. *See* Transcript of February 16, 2011 hearing, p. 72, lines 17-20 ("The Supplement on May 30, 2010, while late, wasn't even sworn, and plaintiff fails to appreciate that the unsigned answers to interrogatories are defective under Federal Rule of Civil Procedure 33 and 37(a)(4)"), attached as Comp. Exhibit 5.

*Third*, ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████.[12]

*Fourth*, the data shows that Wagner has withheld documents from his document production on finances (*see* Ex. 12, HYP-WAUSA-0019469).   ████████████████

████████████████████████████████████████████

████████████████████████████████   *See* Exs. 14-15, attached hereto.  Given the inconsistency between Hypertouch's *created-for-litigation* summary (Ex. 12) and the actual documents (Exs. 14-15), similar to how this Court ruled for BSI,[13] Hypertouch should be

_____

[12] ████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
███████████

[13] At the February 16, 2011 hearing, the Court ruled:

> I'm going to require the tax documents unless you can produce all the documents as required by this document request, which reflect the annual gross revenues for each year from 2003 to present. That's No. 9. And No. 10, the portion of annual gross revenues for each year from 2003 to present attributable to settlements or judgments obtained.

*See* Excerpt of Transcript of February 16, 2011 hearing, p. 52, line 25-p. 53, line 5, attached hereto as Comp. Exhibit 5.

23

compelled to produce all supporting documents for its revenues and costs to show gross and net

proceeds and all its federal and state tax returns from 2000 to date.

I.      **Wagner Should Be Compelled To Produce Responsive Documents To Request 27.**

A.      **WAUSA's Request and Wagner's Response.**

27. All documents reflecting your use and permission to use Verizon FIOS for
Business and Verizon DSL Services.

OBJECTIONS AND RESPONSES:
Wagner objects on the grounds that the request is overbroad, burdensome and is
not reasonably tailored to lead to the discovery of admissible evidence. Wagner
further objects to the extent the documents sought have already been produced in
discovery. Hypertouch objects to the extent the request seeks information
protected from disclosure by confidentiality, trade secret, privacy, the attorney-
client privilege, attorney work-product doctrine, or any other doctrine or
privilege.

B.      **Wagner Should Be Compelled To Produce Responsive Documents**.

Wagner's objections to Request 27 should be overruled.  First, Wagner's objections on

the basis of overbreadth and burden should be overruled as unsupported (*see* footnote 4, *supra.*),

and already of the type rejected by this Court.  *See* Comp. Ex. 5, Feb. 16, 2011 Hearing Transcr.

at pp. 73:21-25; 74:1-4.  Second, the topic of the access to Verizon and Verizon DSL has already

been addressed by Court Order granting the Motion to Compel on the Third Set of

Interrogatories from WAUSA to BSI wherein the Court held that it was directly relevant:

Motion GRANTED.  These requests are reasonably calculated to lead to the
discovery of admissible evidence pursuant to Fed. R. Civ. P. 26.  One of the
issues is whether Plaintiff is a lawful provider of internet access.  The deposition
testimony of an employee from Verizon provides at least a colorable argument
that Plaintiff is not a lawful provider.  The claimed objections by Plaintiff have
either been abandoned or by this order are stricken as having no basis in fact.
Plaintiff shall provide full and complete answers to each interrogatory as they
relate to Verizon DSL Service or Verizon FIOS for Business Service.

*See* DE 444, pp. 1-2, attached as Ex. 11.

The objections raised were specifically ruled upon, and the reasons raised by Wagner here are no different.  Wagner should be compelled to produce responsive documents, and label them to correspond to the categories of the Request.  *See* Rule 34(b), Fed. R. Civ. P.

Dated: April 26, 2011.

Respectfully submitted,

*Attorneys for World Avenue USA, LLC*

GREENBERG TRAURIG, LLP

___/s/_____
Sanford M. Saunders, Jr., Esq.
USDC, MD #4734
saunderss@gtlaw.com
Nicoleta Burlacu, Esq.
BurlacuN@gtlaw.com
*Admitted Pro Hac Vice*
GREENBERG TRAURIG, LLP
2101 L Street, NW, Suite 1000
Washington, DC 20037
Telephone:  202-331-3100
Facsimile:  202-331-3101

--and--

Kenneth A. Horky, Esq.
Florida Bar No. 691194
horkyk@gtlaw.com
John L. McManus, Esq.
Florida Bar No. 0119423
mcmanusj@gtlaw.com
*Admitted Pro Hac Vice*
GREENBERG TRAURIG, LLP
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, FL 33301
Telephone: 954-765-0500
Facsimile:  954-765-1477