# EXHIBIT C

 GreenbergTraurig

Sanford M. Saunders, Jr.
Tel. 202.331.3100
Fax 202.331.3101
saunderss@gtlaw.com

December 21, 2010

**VIA E-MAIL**

Stephen H. Ring, Esq.                    Michael S. Rothman, Esq.
Stephen H. Ring, P.C.                    Law Office of Michael S. Rothman
506 Main Street, Suite 215               401 East Jefferson Street, Suite 201
Gaithersburg, Maryland 20878             Rockville, Maryland 20850

Re:    *Beyond Systems, Inc. v. World Avenue USA, LLC, et al.*
       Case No. PJM 08 cv 0921
       <u>U.S. District Court for Maryland (Southern Division)</u>

Dear Counsel:

In anticipation of the upcoming Conference on December 22nd, we provide an outline of the outstanding issues in discovery that are directly relevant to the three issues set forth in the Pre-Trial Order ("Trial Issues") and that are the subject of the trial in August. The items below are without waiver of other items set forth in the discovery and that will be raised in the Conference.

We take seriously the obligation imposed by the Court to individually review discovery disputes and to make serious good faith efforts. We believe that the Court's Order has raised the standard and the stakes in the ordinary discourse on discovery and imposes a heightened obligation of preparedness and good faith. Accordingly, we expect that BSI either will be prepared at the upcoming Conference to state the full and final position as to each of the following issues and support that position with factual information, record cites, and documentation or to commit to a date certain well in advance of the January 7, 2010 reporting date set forth in the Joint Scheduling Order; we suggest January 3, 2010. Several of the issues were discussed when we met on December 8, 2010 so hopefully we can reach finality on them by the December 22, 2010 deadline. In the event that BSI, Hypertouch, and James Joseph Wagner fall short of the mark in the Conference, we will have no choice but to alert the Court as to that fact.

In order to facilitate the resolution of these issues, we have included a few questions, the answers to which may go to whether the information is relevant to the Trial Issues.

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BERLIN••
BOSTON
BRUSSELS••
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON•
LOS ANGELES
MIAMI
MILAN••
NEW JERSEY
NEW YORK
ORANGE COUNTY
ORLANDO
PALM BEACH COUNTY
PHILADELPHIA
PHOENIX
ROME••
SACRAMENTO
SAN FRANCISCO
SHANGHAI
SILICON VALLEY
TALLAHASSEE
TAMPA
TOKYO••
TYSONS CORNER
WASHINGTON, D.C.
WHITE PLAINS
ZURICH••
*OPERATES AS GREENBERG
  TRAURIG MAHER LLP

**STRATEGIC ALLIANCE

## I.    <u>Discovery To BSI.</u>

1.    First, we need to receive the production of all the deposition, trial, hearing, or arbitration testimony of Paul, Joe, any representative of BSI, or any representative of Hypertouch in each and every proceeding at which they, or any of them, have ever testified.  These were requested in Document Request 16 of the Second Request for Production to BSI.  There BSI responded, in part, that: "Plaintiff has already produced documents responsive to this Request, and will produce other responsive documents in its possession, custody, or control that are not privileged or protected by a right to privacy. Discovery is continuing. Plaintiff expressly reserves the right to supplement this Response should additional information become available."   Since the copies we have obtained from other sources are incomplete, redacted and are largely fragments of public records, we request a complete set.  These documents contain relevant testimony on the three issues set for trial, and are important for the preparation of the limited scope depositions of the BSI witnesses.  Please let me know a date certain when all of these will be produced.

2.    Second, we need to receive copies of any expert reports by Paul Wagner or any other representative of BSI.  These were included in Request 17 of the Second Request for Production.    There, BSI responded: "Plaintiff has already produced documents responsive to this Request, and will produce other responsive documents in its possession, custody, or control that are not privileged or protected by a right to privacy. Discovery is continuing. Plaintiff expressly reserves the right to supplement this Response should additional information become available." We received in a few reports in the *Kraft* case, but not all of the expert reports. Moreover, many of the reports and/or affidavits that we have received by Paul Wagner and/or others were redacted and we need to review full copies of the reports and their exhibits.    These expert reports and information contain relevant data relating to the three issues set for trial.

3.    As a supplement to my prior e-mails on this point, we need a copy of the subpoena issued in the Kraft litigation to Daniel Balsam and a complete copy of his production. In the case of *Beyond Systems, Inc. v. Connexus*, a subpoena was issued to Daniel Balsam inquiring about other parties, HYP0022615-16, including what appears to be information about World Avenue. We have reviewed the production of the Balsam documents from BSI, BSI-JiCos-J16301-16531-BSI-Subpoena to Balsam 00001-BSI-Subpoena to Balsam - 002521, and it is unclear whether we have been produced all of the documents from the subpoena. Additionally, we are again requesting copies of any other subpoenas issued in the Kraft litigation regarding World Avenue, its personnel, its publishers or any other issue pertaining to this case. As we have previously noted, we regard it as a violation of Rule 45 if BSI is or was conducting discovery about World Avenue in another proceeding.   It is clear from the discovery that BSI has been collaborating with Balsam, as for example:

        From:
        Sent:
        To:

**Subject:**
Thanks.
Dan Balsam <dan@danbalsam.com>
Sunday, June 17, 2007 6:04 PM
'Joe Wagner' <joew@hypertouch.com>
RE: I need a copy of the small claims complaint against ValueClick asap
I've been doing VC stuff all day.
Gotta turn to W world Avenue soon.
I realized I can't send stuff to Steve because even ifhe's YOUR atty, he's
not MINE.
-----Original Message-----
From: Joe Wagner [mailto:joew@hypertouch.com]
Sent: Sunday, June 17,20073:53 PM
To: dan@danbalsam.com
Subject: RE: I need a copy of the small claims complaint against Value Click
asap
I don't seem to have kept copies of the complaint, I must have handed Dave
the packet with all the copies. He's swinging by here later on today and
I'll have him drop off copies that I can auto-scan to pdf.
Attached a screen capture of the linkedin website for the attachment.
Joe
At 02: 11 PM *611712007,* Dan Balsam wrote:
>Dave & Joe,
>
>1 need copies of the actual complaints to attach to declaration, in
>order to establish maximum possible damages to VC. Thanks.
>
>
>
>-----Original Message-----
>From: Joe Wagner [mailto:joew@hypertouch.com]
>Sent: Sunday, June 17,2007 10:32 AM
>To: dan@danbalsam.com
>Subject: RE: I need a copy of the small claims complaint against
> Value Click asap
>
>http://www.sccaseinfo.org/pa5.asp?full case number=2-07-SC-004386
>http://www.sccaseinfo.org/pa5.asp?full case number=2-07-SC-004385
>
>At 10:02 AM *611712007,* you wrote:
> >1 need case #'s, all defendants, actual case name (first defendant), etc.
>>
>>

HYP0013534/Hyp-WAUSA-0019438

4.      Further, we have previously requested documents reflecting the
relationship between BSI and Hypertouch, and was advised that they would be produced.
However, based on Hypertouch's production, it is clear that there are documents being
withheld by BSI.  In the Hypertouch production, there is a series of unexplained checks
from BSI to Hypertouch for which no documentation explains the apparent payment. *See*
Hyp-WAUSA-0019348, HYP0013068, HYP-WAUSA-0019350.

Moreover, there are documents produced by Hypertouch showing services
rendered between BSI and Hypertouch in respect of the ValueClick litigation, but BSI has

not produced similar documentation.   We request complete production by BSI.   For
example:

> **From:**
> **Sent:**
> **To:**
> **Cc:**
> **Subject:**
> <x-flowed>
> **Paul WagnerlBSI** <wagner@ai.mit.edu>
> Sunday, December 23, 2007 **11**: 18 **PM**
> joew <joew@hypertouch.com>; 6507148419 <6507148419@vtext.com>
> 3013513668 <3013513668@vtext.com>
> ValueClick search complete
> See MacMini, /Users/paul/spam. The search got to May 2007 before I cut it
> off at ~ 12 noon
> yesterday (after it ran ~8 hours).
> -- Paul
> <Ix-flowed>

> **CONFIDENTIAL HYP0014369**
> Hyp-WAUSA-

As another example:

> From:
> Sent:
> To:
> Subject:
> Paul Wagner <paulawagner2002@yahoo.com>
> Saturday, December 22,20074:49 AM
> Joe Wagner <joew@hypertouch.com>
> re: valueclick search terms
> Got your message. Will include your latest except for the strings with wildcards.
> (Am doing a search for string literals, rather than for regular expressions, because
> grep limits the file of regular expressions to a few lOs of thousands of characters,
> but does not limit the size of the file of string literal patterns.)
> -- Paul
> --- On Sat, *12/22/07,* Joe Wagner *<joew(jjJhypertouckcom>* wrote:
> From: Joe Wagner <joew@hypertouch.com>
> Subject: re: valueclick search terms
> To: paulawagner2002@yahoo.com
> Date: Saturday, December 22, 2007, 1 :30 AM
> If it's not too late, can you also add (note the "." at the end
> it's a file names for web image) the following search terms for
> images. If the
> wildcards are a problem, we can do it later separately:
> gc-legal.
> rg-legal.
> rewards_canspam.
> cpc-hdr.
> cpc-legal.

bestbuy-gc 01.
RG_*.gif <==== special wildcard e.g. RG_PSP_vs_NDS_03.gif,
RG_*.jpg <==== special wildcard e.g. RG_PSP_vs_NDS 03.gif,

CONFIDENTIAL HYP0014370
Hyp-WAUSA-0019462

In addition to these examples, there is the example of the email to "BSI Customer
Service <bsi@hypertouch.com>.   The nature of these so-called "services" remain
unproduced and unexplained in BSI's documentation, yet are at the core of the trial:

**From:**
**Sent:**
**To:**
**Subject:**
**BSI** Customer Service <bsi@hypertouch.com>
Monday, March 26,20072:19 AM
abuse **I-val** uecli ck <abuse **I-val** uecli ck@hypertouch.com>
Fwd: Get $500 worth of new clothes, housewares,
<x-flowed>
http://campb1ue.biz/c/sRDGYS-kZFHZFdzK4C33Q.htm1?2
GET /c/sRDGYS-kZFHZ]dzK4C33Q.htm1?2 HTTPIl.1
Host: campb1ue.biz
User-Agent: Mozilla/S.O (Windows; U; Windows NT S.2; en-US;
rv: 1.8.0.11) Gecko120070312 Firefoxll.S.0.11
Accept:
text/xm1,application/xm1,application/xhtm1 +xm1,textihtm1;q=0. 9 ,text/p1ain;q=0. 8,image/png, * /*
;q=O. S
Accept-Language: en-us,en;q=O.S
Accept-Encoding: gzip,deflate
Accept-Charset: ISO-88S9-1,utf-8;q=0. 7, *;q=O. 7
Keep-Alive: 300
Connection: keep-alive
HTTP/1.x 302 Moved Temporarily
Server: Apache-Coyotell.1
Location: http://www.cpaclicks.com/redirect. asp?a=3 81 &b=8221 &d=O&l=O&o=&p=O
Content-Length: 0
Date: Mon, 26 Mar 2007 07: 10:48 GMT

HYP-WAUSA-0019429.

5.     Finally, contrary to representations made to Magistrate Judge Day in
connection with the September 23, 2010 hearing, usable files reflecting the configuration
of BSI are readily available.  For example, HYP0047115 and files that follow are usable
screen shots of the configuration files.  At the hearing, by contrast, it was argued:

MR. SAUNDERS: 6 was what I just read. We have no
documents identifying who the purchaser of the servers is and
this is important because we don't know who owns the servers,
and that goes to who the actual recipient is and the movement of
the e-mails, and we don't have usable copies of the
configuration files. While they produced certain information on

the configuration files to tell us how the servers are set up,
these are snapshots and we need -- and they gave us different
pieces of information which we can't link together. So, what we
need is the configuration files in their native format and in
the directory structure in which they are maintained and used by
BSI or their related servers. That's the best way we can tell
as to how they're operating and assess the movement of the
e-mails so that we can defend ourselves, because one of the
issues here is who sent them and what did BSI do to either
facilitate the receipt of the e-mails or actually did they flat
out agree and arrange for e-mails to be sent, and we have some
evidence of that, but in order to make it complete, we need the
production of these configuration files -- these configuration
logs in the native format as was agreed to in the ESI agreement
and we need them in the directory structure in which they are
actually maintained.
THE COURT: Thank you.
MR. SAUNDERS: That would actually be consistent with
the requirements of Rule 34, that information be produced in the
manner in which it's usually maintained by the party that
controls it.
THE COURT: Thank you. I'll hear from the plaintiff.
MR. RING: Counsel is asking for **a tremendous amount of
information**, Your Honor, and we have objected on the grounds of
**overbreadth**. We have stated **burden** as well and I believe that
there is, in fact, a declaration from Mr. Wagner describing the
burden of producing some of this data. I don't have it in front
of me at the moment. There are several declarations in the
case.
The defendants are seeking to essentially dissect the
plaintiff's computers in exquisite detail and we say to an
excessive degree. This case is about the sending of e-mails and
who sent them. We have produced copies of those e-mails.
They're trying to turn the tables to make the plaintiff the
victim and to force the plaintiff to come forward and divulge
all of its inner workings.

     6.     In request 7 of WAUSA's Third Request for Production of Documents,
BSI was requested to produce documents from the <u>Stamps.com</u> arbitration proceeding
involving Hypertouch. The discovery response from BSI states: "BSI has never been a
party to any 'Arbitration Case.' Regardless, Plaintiff will produce responsive, non-
privileged documents in its possession should it exist." The Opposition to the Motion to
Compel states that "Plaintiff will produce responsive, non-privileged documents in its
possession within 10 days." Opposition to Motion to Compel, p. 20. BSI has not
produced the documents at issue in the <u>Stamps.com</u> arbitration despite its promise to do
so.

Moreover, BSI's claims that it does not have access to or possession of the Stamps.com e-mails is a blatantly false misrepresentation, particularly given Paul A. Wagner's averment under penalty of perjury on July 27, 2005:

> *I am familiar with all emails that are a part of Hypertouch's claims in its arbitration against Stamps.com, Case No. 74 117 00953 04 SUB R, that were received by BSI.*

HYP-WAUSA-0019343.

These documents from Stamps.com are particularly relevant to the issue of the relationship between Hypertouch and BSI. This is particularly true in light of the Court's observation at the November 29th hearing:

> "*Let's see when you put your best case forward to a trier of fact whether they agree that you've got a bona fide residence here, whether they agree that Mr. Joe Wagner, in fact, is doing anything other than manufacturing or sending these e-mails to his brother to allow these suits to be brought.*"

7.      In Request 10 of the Third Request for Production from WAUSA to BSI, BSI was requested in Request 10 to produce documents reflecting the portion of BSI's gross revenues attributable to litigation from 2003 to present. BSI has only produced from 2005 to 2008. WAUSA has filed a Motion to Compel on this point. Will BSI agree to produce these documents? This does not change the broader requests that are the subject of the orders above and below.

8.      In Request 3 of the Third Request for Production, BSI was requested to produce "[a]ll e-mails upon which suit is or was brought by you in the Kraft Action or in any action brought by you that are identical to any of the E-Mails At Issue." Instead of responding to the Request, BSI produced ALL of the e-mails in the *Kraft* Action and did not designate those e-mails in the *Kraft* Action that are identical to the E-Mails At Issue. Will BSI agree to designate which documents within the *Kraft* e-mails are responsive to Request 3 by identifying the e-mails that are identical in *Kraft* and in this case? BSI represents to this Court that this is a "trivial task," and thus, it should be no hardship for BSI to comply. *See* BSI's Opposition to Motion to Compel on Third Request for Production, p. 20.

The same issue applies to the second part of Request 3 to wit, "[a]ll e-mails .... in any action brought by you that are identical to any of the E-Mails At Issue." Is BSI representing that the *Kraft* e-mails are the only e-mails that are identical to the E-Mails At Issue? If so, this is not apparent from the response, particularly because BSI produces documents that are not identified as responsive to any particular request.

9.      BSI has withheld documentation pertaining to its activities exchanged with numerous third parties that are not privileged. For example:

7

Date: Tue, 3 Apr 2007 13:08:47 -0700
From: "Craig E. Kleffman" <tkleff@gmai1.com>
To: "Paul Wagner" <nospam bsi@beyo.us>
Subject: Re: New member of the gang
Cc: dan@danbalsam.com, abuse@whew.com, bill@sorehands.com,
doug@mckinleylaw.com,
"j ferron@ferronlaw.com" <Jferron@ferronlaw.com>, j im@gordonworks.com,
rfg@monkeys.com, rgrabows@pacbell.net, timothy@computercounsel.com,
"Eric Menhart 1 MaryCLE" <eric.menhart@maryc1e.com>,
"Joe Wagner" <joew-spamgroup@hypertouch.com>
Hey Paul,
Do you, by chance, have a copy of the preemption order referenced below? If so, can you
please send me it (ideally, via .pdf).
Thanks!
--Craig.
On 4/3/07, **Joe Wagner** <joew-spamgroup@hypertouch.com>wrote:
Hi folks,
I'd like to (re )introduce two others:
"Paul Wagner" < nospam bsi@beyo.us> -- President of Beyond Systems,
Inc. (http://www.beyondsystems.net/spam cases.html) Last week got
good order finding per. jd. over Keynetics due to affiliates'
contacts _and_ no preemption by CAN-SPAM (addressing motion citing
the Mummagraphics decision made by the defence).
"Eric Menhart 1 MaryCLE" <eric.menhart@maryc1e.com > -- Attorney
licensed in Maryland and Massachusetts. Principle behind MaryCLE,
which successfully upheld Maryland's anti-spam act.
At 01 :53 PM 41212007, Dan Balsam wrote:
>Hi gang,
>
>**We have a new member of our merry band.**
>
>Mark Ferguson, meet the gang. Gang, meet Mark Ferguson. We should
>have a picnic or something. : -)
>
>To bring us all up to speed, we are:
>
>
>Dan Balsam - 2L law student, 22 small claims wins, dozens of
>settlements, and half a dozen cases currently in big kids' court.
>
>Mark Ferguson - Named plaintiff in Ferguson v. Friendfinders, in
>which the court held that CA's (old) spam law doesnt' violate the
>dormant commerce clause, and it's spammers' problem if they don't
>know what state the recipients are located in.
>
>John Ferron - Ohio attorney suing ValueClick, which makes me very very happy.
>
>Jim Gordon - As in, Gordon v. Impulse Marketing Group.
>
>Richard Grabowski - Just litigated (& settled) Phillips v. Netblue,

>nice order along the way that because the liquidated damages are a
>penalty, defendant cannot reduce its liability just because
>plaintiff never tried to opt out.
>
>Ron Guilmette - Plaintiff in Infinite Monkeys v. Global Resources;
>Nice order that all CAN-SP AM doesn't preempt CA law where there are
>false headers, and all parties involved in sending the spam are liable.
>
>Craig Kleffman - Works for LA County DA and sues spammers on the
>side, including a recently-filed class action against Vonage.
>
>Doug McKinley - Jim Gordon's attorney.
>
>Bill Silverstein - Goes into federal court in pro per and gets
>judgments. Amazing.
>
>Joe Wagner - Filed the first action under CAN-SPAM.
>
>Timothy Walton - Attorney to us all ... (Well, many of us)
>
>
>
>
>===================================
>Dan Balsam
>Sue a spammer! www.DanHatesSpam.com

HYP-WAUSA-0019444.

    Hypertouch's production of communications with it pertaining to its spam
operations does not absolve BSI of its production obligations and these documents are
directly relevant to the conspiracy between BSI and Hypertouch to coordinate and
cooperate with a "merry band" of other spam litigants to bring further litigation.

    10.    We do not recall receiving a Privilege Log from BSI in respect of its
production or Interrogatory Answers, and believe that the same is long overdue.  We do
note receipt of one from Ms. Ornitz and Mr. Rothman.  Please advise if it was produced.
BSI should bear in mind the Court's prior rulings on the so-called joint defense privilege
in the Kraft matter as well as the complete waiver of the "game plan" document.  For
each and every objection that BSI lodged on the ground of attorney-client, work product,
or joint defense privilege, per Court order that objection is now waived.  We request that
BSI go through its production file for every document that was withheld on this basis and
produce all such documents because the privilege is now waived.

## II.    Discovery To Joseph Wagner and Hypertouch.

    1.    We need all the deposition, trial, hearing, and arbitration testimony of
James Joseph Wagner and Hypertouch per Request 5 of the Hypertouch Request for
Production and the declarations, affidavits, reports of Joseph Wagner, Hypertouch, or any

9

representative of Hypertouch per Request 25 of the Joseph Wagner Request for Production. On Request 5, Hypertouch stated: "Subject to these objections, and without waiving them, Hypertouch will produce non-privileged, non-confidential documents." On Request 25, Joe stated: "Subject to these objections, and without waiving them, documents will be produced." These documents contain relevant testimony on the three issues set for trial, and are important for the preparation of the limited scope depositions of the BSI witnesses.

2.      In addition, from Joseph Wagner and BSI, we need the Stamps.com production per Request 3 of the Hypertouch Request for Production. There Hypertouch stated: "Subject to these objections, and without waiving them, Hypertouch will produce nonprivileged documents." We have the same request out to BSI in Request 7 of the Third Request for Production to which BSI responded. The Stamps.com documents are important for the reasons set forth above.

3.      We do not recall receiving a Privilege Log from James Joseph Wagner and Hypertouch, Inc. in respect of their production or Interrogatory Answers, and believe that the same is long overdue. Please advise if it was produced, or, if not, a date certain when will it be tendered (if not already waived). In preparing same, BSI should bear in mind the Court's prior rulings on the so-called joint defense privilege in the Kraft matter as well as the complete waiver of any privileges pertaining to the "game plan" document.

4.      We believe this an appropriate time to address the objections of Hypertouch to the discovery directed to them, and attempt to reach an accommodation resolving the relevant points that are germane to the trial, while reserving on all remaining issues, which need not be addressed, or brief, per Court Order of November 30th.

### Third Party Hypertouch, Inc.'s Responses and Objections To Third Party Plaintiff World Avenue USA, LLC's First Request for Production of Documents.

a.      We believe in Paragraph 1, 2 and 4 of the Objections to Definitions that the definitions should adhere to the Court's determination of what "You" means as it applied to World Avenue Holdings, LLC.

b.      We believe that Hypertouch's objection in Paragraph 3, Page 3 to the time frame of the Request has been ruled on in other contexts by Judge Day. Specifically, Judge Day ruled in the context of BSI's financial information that financial data from 2000 to date of production was an appropriate time frame, and thus, the objection to all data prior to 2004 should be withdrawn.

c.      As noted above, we are unsure what documents are withheld on the basis of attorney client, work product, privacy, or the Constitution of California. We request that this objection be withdrawn.

d.      With regard to Request 1, 4,  we do not have any Privilege Log that reflects withholding of information on the basis for attorney-client, work product, or "other doctrine or privilege," and thus, these documents should be produced.

e.      With regard to Request 3 on the Stamps.com arbitration, we do not have any record of these documents as having been "produced in discovery," and thus we request that this part of the objection be withdrawn.  Additionally, we think that the documents are clearly relevant for the reasons explained more fully above.  This is actually one of the more important Requests associated with this letter because we believe that Hypertouch has perpetrated a shell game with its ownership of the Hypertouch and related domain names through which it claims ownership *vel non* of the domain names when the time suits it.

f.      With regard to Request 4 on the prior litigation:

        i.      this is at the heart of the upcoming trial, and thus, the objection of relevance is without merit.  Further, because this is Hypertouch's first production, its objection that the documents have already been produced in discovery is nonsensical.  It is no objection to Hypertouch if documents may be produced elsewhere; Hypertouch has an obligation to produce.

        ii.      With regard to Hypertouch's objection that this is overbroad, we will agree to the pleadings of record in the cases at issue, together with responses to document requests and specifically the Interrogatory Answers in each of the cases, expert reports and attachments, and affidavits and declarations by Joseph Wagner.

g.      On Request 5 on the transcripts, this is addressed above.  Clearly, the documents are relevant.  As noted above, we do not have complete, unredacted copies of Joseph Wagner's testimony, and what we do have is redacted fragments (since de-designated by various court orders) and bits and pieces filed elsewhere.  For the reason stated above, even if the document was produced by BSI, Hypertouch has not produced the document.  Further, notwithstanding the representation of full production, we do not find the production to be complete.

h.      On Request 6 about Hypertouch's finances, also addressed above:

        i.      Hypertouch followed the typical BSI pattern by re-cycling a document produced in another case that does not apply to the case at issue, nor to the request at issue, nor to the time frame at issue.  While there is an economy of scale in re-cycling discovery over and over, we are entitled to a response to this discovery request.  The document, HYP0014725, HYP-

WAUSA-0019469, is only through the year 2008, and does not include 2009 or 2010. This does not include, for example, Hypertouch's cut of recent BSI settlements.

ii.   The document also does not define what it means by "Income, Collected Spam Judgements and Settlements." *Id.* It is also curious that all of the numbers just so happen to be round numbers for the year and for each collection on a litigation judgment or settlement. The document also refers to several categories as "Unclassified" and it is unclear what that refers to. Does this include all litigation and non-litigation related income, or a subset of the above? The document does not tell us and is not responsive.

iii.   Moreover, the documents do not support Hypertouch's expenditure of costs in order to develop and maintain its infrastructure, which is necessary to understand the overall financial model. For example, in 2008, the income of Hypertouch was purportedly $5,200, but there is no evidence of litigation vs. non-litigation expense from which the jury could understand Hypertouch's profit motive in remaining open for business. These documents are clearly available to Hypertouch and are a simple matter of generating the report of the type for the AMEX card in HYP-WAUSA-019115 from 2004-2008, even assuming that represents 100% of the costs for running the business. If it does not, we request the entire report on costs. At a minimum, Hypertouch should have all this raw data available as supporting documentation for any items expensed as business expenses on its tax returns.

By my calculation based on Hyp-WAUSA-0019469, Hypertouch has earned a total of $93,595 in income since January 1, 2000. Hypertouch earned no income in 2001. From 2002 to 2008, the non-litigation related income was $4,645. However, during 2004-2008 alone, the expenses were $27,172.86, which was many times BSI's income for those years. HYP-WAUSA-019115. From 2000 to 2008, the vast majority ($44,819) of the $49,464.00 in purportedly non-litigation related income was from BSI's payment to Hypertouch during the year 2000.

iv.   More importantly, the definition of Hypertouch did include its employees, which does include James Joseph Wagner. It is clear to us that James Joseph Wagner has directly received distributions of settlements from BSI collected litigation as well as from "consulting fees" generated in connection therewith. For example, HYP-WAUSA-0019350, shows consulting fees during 2000. **[JEFF RICHARD ARE THERE EXAMPLES OF BIG PAYOUTS TO HYPERTOUCH].**

vi.   The documents should also include donations paid by litigants to third parties on behalf of Hypertouch, as for example, the

"donation" by Stamps.com at HYP-WAUSA-019294.

    vii.    The Response states that "Hypertouch is willing to produce non-privileged documents sufficient to identify non-confidential yearly revenues and gross aggregate revenues." First, the Court has already ruled on the privilege issue in respect of finances and confidentiality in this case and in the *Kraft* case, and there is no need to require the Court to replow the same ground already briefed and decided elsewhere.

    Second, to the extent that HYP-WAUSA-0019469, is the tendered document, it is woefully deficient for the reasons explained above (i.e., it does not cover the entire time period, it is unclear what revenues are covered, it does not cover donations, it does not cover Joseph Wagner, and it does not cover expenses).

    viii. Also, the data shows that Hypertouch has withheld documents from its document production on finances (HYP-WAUSA-0019469), as shown by the document set forth below and others that appear to not be reflected on the Hypertouch, Inc. income schedule:[1]

---

[1] Since we have now shown, as detailed on the two pages that follow, that Hypertouch has misrepresented its income in HYP-WAUSA-0019469, we believe that we have made a sufficient showing to request its tax returns in discovery to get at the real numbers. Since the Court would like us to try to work out discovery disputes of this type in advance, please advise if Hypertouch would be willing to produce its tax returns for the period of January 1, 2000 to present.

Foster City, CA 94404
Tel: 650-714-8419
joew@hypertouch.com

Re:    Hypertouch v. K.I. Auctions, et al.
       San Mateo Superior Court, Case No. CIV427015
       Our File:      22247

Dear Joe:

We have finally received the settlement check from opposing couns
amount of $20,000.00.  Pursuant to my correspondence dated February 18, 2
find our trust check in the amount of $8,793.79 payable to Hypertouch, Inc.

Thank



THE LAW OFFICES OF JOHN L. FALLAT
P.O. BOX 354
KENTFIELD, CA 94904-0354
(415) 457-3773

BANK OF AMERICA
GREENBRAE, CA
11-35/1210

PAY TO THE
ORDER OF    Hypertouch, Inc.

Eight Thousand Seven Hundred Ninety-Three and 79/100************************************

Hypertouch, Inc.
359 Port Royal Ave.
Foster City, CA 94404

MEMO    22247 - Settlement Disbursement

⑈000306⑈ ⑆121000358⑆ 16647⑈10946⑈

COOKING.COM

DATE: MAY 17, 2004
TO: JOE WAGNER, HYPERTOUCH
CC:
FROM: LAURA SHAFF
RE: SETTLEMENT

Joe,

As we agreed, I have included a check for $2,500 to Hypertouch.

Sincerely,

Laura Shaff
Vice President
Cooking.com
lshaff@cooking.com
Ph: (310) 450-3270 ext 250
Fx: (310) 314-4828

21156

| COOKING.COM, INC. | SILICON VALLEY BANK | |
| 2850 OCEAN PARK BLVD # 310 | SANTA CLARA, CALIFORNIA 95054 | |
| SANTA MONICA, CA 90405 | 90-4659-1211 | 5/13/2004 |
| PH. 310-664-1283 | | |

PAY TO THE
ORDER OF   Hypertouch                                            $ **2,500.00

Two Thousand Five Hundred and 00/100************************************************   DOLLARS

Hypertouch
Attn: James Joseph Wagner
359 port Royal Avenue
Foster City, CA 94404

MEMO   Settlement

⑈021156⑈ ⑆121140399⑈ 3300352497⑈

COOKING.COM, INC.                                                 21156

Hypertouch                                          5/13/2004

| Date | Type | Reference | Original Amt. | Balance Due | Discount | Payment |
|------|------|-----------|---------------|-------------|----------|---------|
| 05/04/2004 | Bill | Settlement 05/04/04 | 2,500.00 | 2,500.00 | | 2,500.00 |
| | | | | | Check Amount | 2,500.00 |

15

i.     Request 9, which concerns the forwarding, redirection and routing of the E-Mails At Issue, goes to the heart of the Court's comments at the November 29th hearing:

Let's see when you put your best case forward to a
19 trier of fact whether they agree that you've got a bona fide
20 residence here, **whether they agree that Mr. Joe Wagner, in fact,**
21 **is doing anything other than manufacturing or sending these**
22 **e-mails to his brother to allow these suits to be brought.**
* * * *
THE COURT: Well, I suppose it probably should,
7 shouldn't it? I mean, we're going to see whether you have a
8 right to be here at all. That's really what the issue is right
9 now. What difference does it make, even if they are involved in
10 spam activities, if you don't have a bona fide residence, if
11 **you've got somebody who is really, in effect, contributing to**
12 **the, quote/unquote, injury that BSI suffers,** you may come back
13 with a verdict that says you really don't belong in court at
14 all. And so it doesn't matter what they've done. You may have
15 to go after them somewhere else. Somebody else will have to go
16 after them.

We are surprised if, that given these comments, Hypertouch would stand on its objection that "the request is overbroad and not reasonably tailored to lead to the discovery of admissible evidence."

Further, we are mystified by Hypertouch's objection that "the documents sought have already been produced in discovery" because they most certainly have not. We cannot imagine what could be privileged about how Hypertouch routes e-mails from its servers to BSI, and thus, we request withdrawal of these objections.

Finally, when Hypertouch states that it will produce non-privileged documents to show "re-direction," that is only partially responsive to the Request for Production and those documents have not been produced. If they have been produced, we request that Hypertouch designate documents to correspond to the categories of the Request as recently ordered by the Court in another context. (We note that BSI has a Motion for Reconsideration pending on the issue of designation to correspond to the categories of the Request, but are doubtful that it will succeed in re-writing the Federal Rules of Civil Procedure, and thus request compliance on that basis).

j.     As to Request 10, which again goes to the heart of the case by inquiring about services rendered from Hypertouch to BSI and vice versa, we think that Hypertouch's objections are without merit in light of the

16

Court's rulings on November 29th. Although Hypertouch produced a few checks dating back to 2000 (HYP-WAUSA-0019348), the documents do not post-date that date to show the nature of the services rendered. There are a number of e-mails exchanged between James Joseph Wagner and Paul Wagner post-dating this date, but nothing to show the nature of the relationship and services rendered, nor the purpose of the services and payments associated therewith.

k.      We have reviewed the document productions in respect to Requests 11, 12, 13, and 14, and find that (i) Hypertouch has not designated documents responsive to these requests to enable us to fully determine the fulsomeness of the production and (ii) based on what we have reviewed the production is incomplete.

l.      As to Request 15, the production is woefully inadequate. As you know, to funnel e-mail to BSI, Hypertouch programs and maintains spam trap websites for the purpose of collecting e-mail and suing on them. These include, but are not limited to, the Selected Domains that are the subject of Request 15. This is part of the overall business model of Hypertouch and BSI and documents to show that activity are critical. We have reviewed the production and find that (i) Hypertouch has not designated documents responsive to Request 15 to enable us to fully determine the fulsomeness of the production and (ii) based on what we have reviewed the production is incomplete.

Further, the objections are contradictory. On one hand, Hypertouch states that it is unintelligible. On the other hand, Hypertouch states that documents have already been produced (which they have not). With regard to the Court's ruling at the September 29, 2010 hearing on "server logs" generally, we do not understand the Court to have ruled on the issue of the http logs reflecting the hits at the Selected Domains, but if you have an understanding otherwise, please identify the page and line number of the hearing transcript wherein this ruling was made.

5.      We believe this an appropriate forum in which to address the objections of James Joseph Wagner to the discovery directed to it, and attempt to reach an accommodation resolving the relevant points that are germane to the trial, while reserving on all remaining issues, which need not be addressed, or brief, per Court Order of November 30th.

### James Joseph Wagner's Objections to First Request for Production of Documents.

a.      The same points on Hypertouch apply to Joseph Wagner's objections at Paragraphs 1 and 2 on Page 1 (definition of Hypertouch and BSI) such that the Court's ruling as to the definition of "You" as to Holdings should be dispositive.

b.      The same points on Hypertouch on privilege apply to Joseph Wagner's objections on privilege and privacy.

c.      The same points on the efficacy of the pre-2004 time frame on Hypertouch apply with equal force to Joseph Wagner's objection to pre-2004 documents.

d.      With regard to the cell phone bills in Request 3, we agree that Joseph Wagner's response is adequate and no production of the cell phone bills need be made, with one exception. We believe that the jury is entitled to examine the documents showing how Hypertouch although a purported California based corporation had some type of arrangement to forward mail to the Oak Grove Avenue address (vacant as of August 2010) to the Lowell, Massachusetts address. We request the face page of the document showing the cell phone bill address and redacted as to all other information.

e.      With regard to the government agency documents issue in Request 4, the jury is entitled to see the documents whereby Hypertouch keeps up the façade of being a California corporation having a bogus principal place of business in California (a P.O. box) and lists a bogus and vacant California apartment to the telephone company (Oak Grove), while a secret document forwards mail to Massachusetts, where Hypertouch is really based. We request that these documents that show the postal forwarding information be provided.

f.      With regard to Request 7, these documents go to the heart of the Hypertouch-BSI conspiracy. By its own admission at Pages 6 and 7, Mr. Wagner moved to Massachusetts. Yet, during this time, Hypertouch's servers are based out of California. Instead of locating them at a central business or secure facility -- like a bona fide ISP would do -- Hypertouch appears to house them in the residences of friends and acquaintances all to ensure no interruption in the flow of millions of e-mails from Hypertouch to BSI. This request delves at the precise circumstances whereby Hypertouch houses the servers. We are entitled to know exactly where all the servers are, and have been in the past during the periods of time pertaining to this case.

The objections to the request are without merit. First, as explained above, it is clearly relevant. Second, the documents have not been produced in discovery as Hypertouch has not produced any prior documents.

g.      Request 10 of the Request for Production also goes to the heart of the conspiracy between BSI and Hypertouch to manufacture spam litigation. This requests asks for the persons who have Administrative Rights or Administrative Permissions or Restrictive Rights or Restrictive Permissions to access any Hypertouch Servers. The response inexplicably states that documents have already been produced in discovery: they have not, Hypertouch cannot identify them, and Hypertouch is not relieved of its obligation to produce even if another party did produce. We are unclear on what privilege could conceivably be covered by administrative permissions, but in any event, said privilege was waived by the non-provision of a Privilege Log respecting same.

h.      Request 11 goes to the relationship between Hypertouch and Lisa FitzGerald Wagner and reasonabledoubt.com, which is, no doubt, one of the domains that Hypertouch relies on to be claiming it is an internet service provider.  The request is directly relevant to the trial and there is no conceivable privilege that would shield the relationship.   Specifically, the documents should be provided showing the services provided by Hypertouch to Lisa FitzGerald Wagner, and those spam-forwarding services provided by Lisa FitzGerald Wagner to Hypertouch.  Ms. Wagner provided copies of those documents herself in response to her subpoena, and Hypertouch is not relieved of its obligations via her production.

i.      Request 12 goes to the identity of the persons who programmed the embedded, invisible code in the Selected Domain Names.  As explained above, this is a critical aspect of Hypertouch's business model in order to bring spam lawsuits.  The documents most certainly have not been produced in discovery, and any production does not relieve Hypertouch of its obligation to produce.   Perhaps most curious is Hypertouch's claim that the name of the persons who programmed the secret code into the Websites is privileged or secret.  There is no conceivable privilege applicable to this activity and the question arises: who is Hypertouch trying to hide?

j.      Request 13 goes to the reasoning for the embedded invisible code. Repeatedly, BSI has claimed that California law required at some point secret, embedded e-mail addresses, yet no documents have ever been produced substantiating the reasoning for the embedded, fake email addresses.  Again, Hypertouch claims this is privileged. The information is exposed for all of the world to see, what could possibly be the privilege? In what log is it asserted?

k.      Request 15 asks for communications about your [Hypertouch and James Joseph Wagner's] access to *and* registration of any e-mail address on any web site….".  The objection objects to "Access to an email address" as "unreasonably vague and unclear," but fails to respond to the "registration" of any e-mail address on any website.

As Mr. Wagner knows, he registered the e-mail addresses in the E-Mails At Issue in order that the e-mails be received. For examples of Mr. Wagner registering bogus e-mail addresses into websites and opting in to receive e-mails, see Hyp-WAUSA-0029746, Hyp-WAUSA-0030668, and Hyp-WAUSA-0030687.

l.      Request 16 asks for all e-mails in the E-MAILS AT ISSUE that Hypertouch or Joseph Wagner sued upon in any other case.  This is pertinent to the issue that Judge Messitte granted summary judgment upon in the *Kraft* matter, as well as to the general purpose of the conspiracy between Hypertouch and BSI.  Curiously, Hypertouch responds that it is "burdensome."  Is it really so burdensome to figure out which e-mails that BSI is suing on that Hypertouch already sued upon?  Shouldn't the answer be none? The response states that documents will be produced, but they have not been produced, and the documents have not been labeled to correspond to the categories of the request, so

even if the e-mails were buried in the production, their location is indecipherable.

      m.    Request 18 asks for the documents substantiating the purchase and use of anti-spam software on any computer or server owned by Hypertouch.   The responses states that the request is irrelevant.   Instead, this is directly relevant to the question of the bona fide operation of Hypertouch and BSI, as explained in *Gordon v. Virtumundo*:

> In addition to his nominal role in providing Internet-related
> services, we are also troubled by the extent to which Gordon
> fails to operate as a *bona fide* e-mail provider. As discussed
> in greater detail below, Gordon has purposefully avoided taking
> even minimal efforts to avoid or block spam messages.
> Instead, Gordon devotes his resources to adding his "clients' "
> e-mail addresses to mailing lists and accumulating spam
> through a variety of means for the purpose of facilitating litigation.
> * * *
> We expect a legitimate service provider
> to secure adequate bandwidth and storage capacity and
> take reasonable precautions, such as implementing spam filters,
> as part of its normal operations. Courts should take an
> especially hard look at the cited harm if it suspects at the outset
> that a plaintiff is not operating a *bona fide* Internet access
> service, as is the case here.
> ***
> It is also compelling that
> Gordon purposefully refuses to implement spam filters in a
> typical manner or otherwise make any attempt to block allegedly
> unwanted spam or exclude such messages from users' email
> inboxes. In fact, Gordon acknowledges that he was able
> to "blacklist" domain names at the server level, so that the
> GoDaddy server would reject e-mails from online marketers
> such as Virtumundo.

    Moreover, we fail to understand how Hypertouch can log an objection on the basis of privilege or privacy to a request for its anti-spam software configuration on its servers and computers.   This is particularly so where Hypertouch has failed to tender any Privilege Log.

      n.    Request 21 seeks all communications with Jaime Vargas and the residents, owners, or lesssees of 751 Upland Road, Redwood City, California; 801 Woodside Road, Redwood City, California; 359 Port Royal Avenue, Foster City, and 235 Belmont Avenue, Redwood City, California, regarding the use of their premises to hold Hypertouch's servers.   This seems to be a touchy issue for Joseph Wagner given the number of objections that he lodged to the request.

Put simply, this Request goes to the heart of the Hypertouch scheme, which is to place servers in the homes and residences of friends and acquaintances, while operating from other, distant locations. As such, Hypertouch is able to claim that it is a "California" corporation.

Contrary to Hypertouch's suggestion, responsive documents have not been produced; and if any could be located in BSI's production, they have not been labeled to correspond to the categories of the Request. Nor would any production by BSI relieve Hypertouch of its obligation to produce.

We reject Hypertouch's attempt to re-word its response to this Request, to wit, stating that Hypertouch will produce "...documents sufficient to show Hypertouch ISP status...." This is insufficient. The Request asks for the arrangements for the locations of the servers. A bona fide ISP would not locate servers in the houses of friends of its President, but a company seeking to pose as a legitimate California ISP would.

o.   Hypertouch and Joseph Wagner have not yet produced all responsive documents on the ownership, licensing, payment for, registration, or allocation of the IP Addresses and the Domain Names. Further, there is nothing in the documents that specifically states which documents are responsive to this Request. Instead, Hypertouch has dumped a mountain of documents, most of which appear to be from other cases, and claimed that responsive documents can be located therein. This is clearly improper, as the Court has already ruled on this point several times.

p.   With respect to Request 25 (already mentioned above), Hypertouch's objections are without merit. First, Hypertouch's objection that it is "burdensome" to assemble all of its declarations, affidavits, reports, depositions, or trial testimony for Joseph Wagner underscores our point that Hypertouch and BSI have no business masquerading as an ISP in the first place. Notwithstanding, the objection is without merit, and only a small fraction of such documents have been produced. We request a full and complete production of responsive documents. This is directly relevant to the upcoming limited purpose depositions, and will help to streamline questioning to fit within the parameters requested by Hypertouch and granted by the Court.

q.   Request 26 concerning litigation and non-litigation proceeds has already been addressed in detail above. In short, we believe that the Court has already ruled on this matter in the Kraft case and again in this case in holding that under Gordon, it is relevant to discover from 2000 to date the litigation and non-litigation proceeds of Hypertouch and Joseph Wagner. The production that we have reviewed has pieces of costs from 2004 to 2008, and some proceeds from 2000 to 2008, but it is not adequate for the reasons discussed above. Those reasons include the fact that the documents are re-cycled documents from another case, for another time frame, they do not include donations, do not include income or payments made directly to Joseph Wagner, do not define what the "income" is, as well as other reasons cited above.

r.   Request 27 concerning the permission to access Verizon FIOS and

21

Verizon DSL has already been addressed by Court Order in this case wherein the Court held that it was directly relevant. The objections raised were specifically ruled upon, and the reasons raised by Hypertouch here are no different.

6.     We also note that Hypertouch and James Joseph Wagner appear to have withheld documentation responsive to the Request for Production. One of these relates to the ersatz princehotelhanoi.com website that BSI and Hypertouch both claim as a customer. Specifically, Hypertouch and/or Joseph Wagner produced HYP-WAUSA-0019351:

> **dzung@princehotelhanoi.com.** *10/22/002:30* PM -0700, PrinceHotelHanoi.COM
> To: dzung@princehotelhanoi.com
> From: Joe Wagner <joew@hypertouch.com>
> Subject: **PrinceHotelHanoi.COM**
> Cc: joew@hypertouch.com
> Bcc:
> X-Attachments:
> Hello Ngo Xuan Dzung,
> Yesterday I realized it has been just over two years since I visited Hanoi
> and stayed at the Prince Hotel at the suggestion of our mutual friend, Kien Pham.
> Shortly afterwards I created for you and began hosting the web site and email for
> princehotelhanoi.com in exchange for one free night stay at the Prince Hotel for
> every two months of hosting. While I have not had the chance to return to Vietnam, I
> know I will some day soon.
> The reason I am writing today is that the princehotelhanoi.com domain name
> is now due for renewal. The web site has been viewed more than 7000 times since its
> creation. Our network and server uptimes have been substantially higher than other
> commercial providers. I would just like to confirm that you would like me to renew
> the registration and continue our agreement. **I will pay for the renewal fees.** On
> November 15 I will have accrued 12 nights stay, so any future free nights stay would
> accrue after that date.
> I hope the international exposure provide by having a web site (hosted in
> Silicon Valley) has attracted many new customers. I hope you will decide to continue
> our arrangement for another two years and look forward to hearing your reply.
> Thank you,
> Joe Wagner

Hypertouch and/or Joseph Wagner then appended to the same .pdf a second email labeled HYP-WAUSA 019353, that made it appear that it was part of the same e-mail string -- when in fact it was six months later, with a different subject line, and a different party:

> From: "Prince Hotel" <ngodzung@hn.vnn.vn>
> To: <joew@hypertouch.com>
> Cc: <info@hypertouch.com>
> Subject: Renew the Web site: (www.princehotelhanoi.com)
> Date: Wed, 11 Jul 2001 13:56:03 +0700
> X-Mailer: Microsoft Outlook Express 5.50.4133.2400
> Dear Mr Joe Wagner,
> We are Prince Hotel - Hanoi where you have been stayed over two years, at suggestion of Mr
> Kien Pham. And

afterthat, you created for us the web site and email for:princehotelhanoi.com
We know, **now is the time to renew it,** because it has been viewed more than 7000 times since its creation.
We thank you for everything you do to attract many customers visiting our Website.
Following to your suggestion, we would like you and your company to renew our website, and continue our
agreement for other 2 years as you demanded as follows:
1. You will pay for the renewal fees, and we will give you some future free nights stay at Prince Hotel on Octorber.
We warmly welcome you back to Prince Hotel.
2. We will pay for you in cash via Mr Kien Pham( I have told him this morning - it is OK)
So, we deeply hope you will decide to continue our arrangement. We highly appreciate your co-operation.
We look forward to hearing you soon.
Yours sincerely,
Hotel manager,
Ngodzung.
PIS: Should we send you some new pictures of Prince Hotel by email or post? ( all of the other has not change:
Prince hotel, Address: 51 Luong Ngoc Quyen Steet, Hanoi- Vietnam, Tel: ( 84 - 4) 8280155.
Fax (84 - 4) 8280156
Email: ngodzung@hn.vnn.vn
Website( + email): www.princehotelhanoi.com
**And we would like to know how much it costs for the renewal?**
Thank you.

In addition to the interesting situation of a so-called ISP offering to pay for domain renewal fees so that, a few years later, it could claim the Prince Hanoi Hotel as a client in the Stamps.com arbitration, and the fact that BSI claims the Prince Hanoi Hotel as a client, but so does Hypertouch, and BSI is no where mentioned in the e-mails referenced above, it is clear that the foregoing e-mail set has been doctored to combine two disparate e-mails into one .pdf file to make it appear as part of one conversation when, in fact, it is not. We request a complete copy of all e-mail chains from which this e-mail chain was composed, including the real response to the first e-mail. If there was a six month delay in responding to the first e-mail, we request to be informed of this fact.

We request complete production of all of the correspondence with the Prince Hanoi Hotel, particularly those relating to the ongoing maintenance of that site to present date, who is paying the renewal fees, and how many times Joseph Wagner has visited Hanoi since that time. Also, since it relates to a so-called customer of BSI, we request the correspondence with Kien Pham and the documents relating to phamily.com.

7.      In addition, Discs 1, 3, and 4 consist of what appear to be all zone files registered through Verisign. This is equivalent to turning over a copy of the telephone book and stating that your advertisement is listed in there. We searched the document and hypertouch.com and many other domains purportedly belonging to Hypertouch are not in there. Please identify specifically which documents are in these discs that have anything to do with this Request for Production. Hypertouch should have its own zone files. This is directly responsive to several of the Requests for Production. Zone files are critical to show which is the authoritative server assigned to particular domains and in what order. These files will likely contain discoverable evidence that the files of BSI are intermingled with and indistinguishable from those of Hypertouch.

8.      Disc 2 is unreadable and we request a workable copy.

9.      Hypertouch has produced Postfix mail server logs labeled HYP-WAUSA-23569-27784 and HYP-WAUSA-22951-23568.  However, Hypertouch does not use -- to our knowledge and per disclosures to date, Postfix mail servers, and thus, it is unclear to us the purpose of production of these documents.

### III.    Information Subject To Motions For Reconsideration.

We understand that BSI's position is that it is not obligated to comply with discovery that is the subject of one of its Motions for Reconsideration.  Notwithstanding, we wanted to discuss whether BSI would voluntarily produce certain documents or provide Interrogatory Answers that are subject to BSI's Motions for Reconsideration.

1.      We wanted to discuss the issue of potential resolution of BSI's current Motions for Reconsideration and production of documents.  The first issue is whether BSI is willing to produce the documents and information about its finances in Interrogatories 1, 2, and 4 of the Third Set of Interrogatories and about Verizon in Interrogatories 5 through 12 of the Third Set of Interrogatories as ordered by the Court notwithstanding BSI's pending Motion for Reconsideration.  BSI has not produced the financial records of profit and loss ordered by the Court for the time periods in the motion (2008-2010 and pre-2003).  This is the subject of the Motion for Reconsideration.  This is directly relevant to the status of BSI as a *bona fide* service provider, which is one on the three issues set for the trial.  In the underlying Order the Court held that the issue of BSI's finances and the Verizon documents were clearly relevant to one of the issues set for trial, to wit, whether BSI is a *bona fide* internet service provider.

2.      We wanted to discuss whether BSI would voluntarily produce the "Game Plan" documents notwithstanding BSI's Motion for Reconsideration.  The Court's Order held that:  "As the game plan document was not listed in a privilege log, it shall be produced."  DE 441.  The "Game Plan" document goes to the heart of the case because it shows the careful planning between BSI and Hypertouch to manufacture litigation and split the proceeds thereof.

3.      On the Fourth Request for Production, which is subject to BSI's Reconsideration Motion, Request 21 of the Fourth Request for Production asked for:  "A copy of the front and back of the check, credit card receipt, cash receipt, or wire transfer for the payments of any invoice to Keivan Khalachi."  In its Response, BSI stated that it "will produce responsive, non-privileged documents dated January 1, 2004 or later, as per the ESI agreement between the Parties."  *See* DE 272, p. 11.  In its Opposition to the Motion to Compel, BSI stated: "To the extent that responsive non-privileged documents created after January 1, 2004 are in BSI's *possession*, supplemental production will be made."  *See* DE 322, p. 6, ¶ 21 (emphasis added).  BSI has indeed produced Invoices *to* Mr. Khalachi (KK001, KK002, KK003) but no payments *by* him.  Tellingly, BSI's Motion for Reconsideration did not even address Request 21, and that is because BSI has

not produced any evidence of payment by Mr. Khalachi for these invoices.

The same rationale of evidence of payment for services applies to numerous other clients for invoices, although those are within the scope of the Request. These include:

      1.    Young Women's Christian Home (BSI-JiCos-017307)  There is an invoice, but no evidence of payment.

      2.    Solar Electric Light Company (BSI-JiCos-017509-23)  There are no documents evidencing payment or any present services.

      3.    St. Luke's House.  There are no documents evidencing the nature of the present services, and no evidence of payment.

      4.    Mike Snow (MS001).  There is a document showing an invoice, but no evidence of payment or of services.

      5.    Barcroft Human Power Vehicles (BSI-JiCos-017306/17373).  There are no documents evidencing payment for services.

      6.    Yelverton Law Firm, PLLC (BSI-JiCos-017508)--Invoice in February 1, 2010.  There is an invoice, but no other evidence of the services rendered to this client or customer and no documents evidencing payment.

      7.    Flybuddies/Devin Marks (BSI-JiCos-017802).  There are no documents evidencing payment for services.

      8.    Exhibits, Inc./H. Austin Esfandiary (BSI-JiCos-017767).  There are no documents evidencing payment for services.

      9.    Ned Malik, Vision Online. (VO001).  There is a document showing an invoice, but no other evidence of the services rendered to this client or customer, and no documents evidencing payment.

      10.    Mr. Keith Buffo at ohcopyboy.com.  BSI produced a document reflecting a purported backlog at ohcopyboy.com (BSI-JiCos-017344) and a document listing Mr. Buffo as a "person receiving service," (BSI-Ji-Cos-17722), but, when subpoenaed, Mr. Buffo's response related only to Joseph Wagner and Hypertouch and no document at all referenced BSI or Paul A. Wagner individually.  Further to the point, Joseph Wagner averred under penalty of perjury that Keith Buffo was a client of Hypertouch and did not mention BSI.

      11.    To the same effect, Ms. Correa of Pronto Labels averred that she was a client or customer of Hypertouch and did not mention BSI.  Yet, BSI claims her as a client.  To date, BSI has produced no counter-affidavit wherein Ms. Correa retracts her averment or documents substantiating her status as a BSI

client. She is listed by Hypertouch on its site as a Hypertouch client. Affidavit(s) were submitted with Hypertouch's Motion to Dismiss claiming that she is a Hypertouch client. She produced documents in response to a subpoena between her and Joseph Wagner, but nothing to show that she is in any way a client or customer of BSI. We request that the documents substantiating her status as a client be produced. There are no BSI bills to her, and no evidence of payment to BSI.

12.     Likewise, NEIT Solutions is listed as a person receiving service (BSI-JiCos-017722) and BSI produced e-mails routed from NEIT, but when subpoenaed, NEIT Solutions responded that it had no information and that BSI had never provided service. There are no documents evidencing payments or service.

13.     WEPA Productions and SalsaWeb are listed as clients in 2005 (BSI-JiCos-017722), but public records reflect that these entities or organizations were disbanded or went inactive years earlier. There are no documents evidencing any payments by these organizations, and nothing recent to indicate whether they are clients since before 2004.

14.     Mr. Paul Wagner provided a Declaration that Boxerox was a client, but save a single e-mail in the name of that entity (BSI-JiCos-017722), there are no records on this fact.

15.     Mr. Brian Mangino, Jason Venner, and Matt McQueen are apparently listed as a "person receiving service" (BSI-JiCos-017723), but each responded that he had no responsive information when he was served with a subpoena. WAUSA-3rd PARTY-00963.

16.     As to the elusive Alexander Feshenko, BSI produced a document showing it is involved in e-mailing on behalf of Mr. Feshenko (BSI-JiCos-17618), and a single invoice (AF001), but no evidence of payment at all.

17.     BSI lists Bradley Clark as a person receiving service, but there is no evidence of any services rendered since before 2004, and no evidence of payment for services.

18.     Another purported customer is William J. Wagner. Mr. Wagner testified that he paid BSI, and he admitted he issued the last check approximately six months prior to his deposition. *See* Transcript of William J. Wagner p. 0153, lines 10-19. BSI produced an invoice to William J. Wagner dated December 19, 2009 and September 14, 2008 for services rendered allegedly the year and 15 months, respectively. WW001-WW002. However, BSI produced no checks reflecting the payments made by Mr. Wagner to BSI. From discovery (HYP-WAUSA-0019350), we understand that BSI holds a banking relationship with Chevy     Chase     Bank     n/k/a     Capitol     One     Bank.          *See*

http://www.capitalone.com/welcome/?bank=ccb.  Capitol One Bank displays on its website the ability to obtain online access to banking records.  Capitol One Bank specifically states that users have the ability to "view and print check images" and "order copies of paid checks or statements."  *See* http://www.capitalone.com/online-banking/faq/?linkid=WWW_Z_BANK_A1B70B1BA7C1BA8D1BA9E160CF1B60G1B62_OBHOME_L1_01_T_OBFAQ.  Consequently, BSI does not even need to request copies of documents from third party banking institutions, but has direct, online access to obtain the checks at issue.  Likewise, BSI has the ability to obtain copies of its monthly statements which presumably must show the deposit of at least some amounts corresponding to the amounts listed on these invoices.  Where are they? [2]

19.    Likewise, Diane Wagner responded to a subpoena in this case that she had no documents.  Yet, BSI produced two invoices purported to be to her, allegedly for the same services going to the same computer(s) in the same room in the Rockville Condominium that William J. Wagner uses. DW001-002.  By sheer coincidence, like Mr. Wagner, the Invoice is dated December 19, 2009 and September 14, 2008.  Does Ms. Wagner not know that she received invoices?  Or, did she not receive them at all?  If so, why were they produced?  If she paid them, like the ones for her husband for use of the same computer services, the checks showing the payments by her should be readily available to BSI.  Further, although Ms. Wagner listed that she had no responsive documents in her response to the Subpoena, Ms. Wagner is listed as one of the "Castalians" holding a BSI e-mail account in BSI's documents.  BSI-JiCos-017712.  Does Ms. Wagner not know that she has an account through BSI?  How many other "Castalians" do not know that they are "Castalians?"

20.    Likewise, Ms. Julie Lopez is also listed as one of the "Castalians" holding a BSI e-mail account in BSI's documents.  BSI-JiCos-017712.  How is it that she has nothing to do with BSI and does not want her deposition taken if she has an e-mail account?  Does she not know of the account?  If so, what purpose does the account serve?

21.    Further, we requested documents relevant to the services rendered to Achim Krebs, ColorvivoFilms, Laura Cordero, and Guy Genniloud, and find that they were listed as having e-mail accounts in December of 2005 (BSI-JiCos-017713) but no documents showing e-mail accounts beyond that time.  When did this service end?  What documents evidence invoices to these entities and payments from these entities?

Specifically, the documents do not answer the following question:  How is BSI authorized to host the dormant domains (colorvivofilms.com and colorvivofilms.net), and why do they exist when the real site below is unassociated with BSI:

---

[2] Even if Banking Institutions have changed from Capitol One, virtually any bank has online access.



22.     We understood from numerous Declarations that Peter Wagner stopped using his account due to high spam load.  Yet, in 2005 (BSI-JiCos 017714), BSI produced a document showing peter@castalia.net having 49 MB of e-mail in his in-box.  What is the purpose of having this account open and is he a client?  If he is a client, the documents should be produced showing services rendered to him, invoices to him, and payments to him.

23.     Chris Kaminsky.  Paul Wagner represented as follows in his May 3, 2010 Report:

*"Nobody at BSI knows the Chris Kaminsky depicted by Dr. Krawetz,*
*Bruno Jones or Justin Pennock, much less assigned them email*
*addresses."*

This is very curious given Paul Wagner's communications with Chris Kaminsky (chriskaminsky@hotmail.com) and purported customer Keivan

Khalachi,[3] conversing over domains and other issues.  HYP-WAUSA 0022726. We request a retraction of the statement in the Wagner Report and an explanation, as well as a complete production of documents with this so-called customer. However, the chriskaminsky@hotmail.com issue raises another question: why he appears to have an e-mail address assigned at BSI that he does not use?  Does he know about it?

24.    We have never reviewed any documents showing the services performed by BSI for Tenon Intersystems, and would request that the same be supplemented.

25.    Finally, one common problem with all of the discovery relating to BSI's so-called "customers" or "clients" that we note is that BSI insists on producing exhibits and documents from other cases dated back in 2005 and even further back in time.  Although we can understand the economies of scale in BSI re-cycling prior discovery productions from five years ago as responsive to a 2010 discovery request, the time frame of the request includes a production to the date of the response, and, accordingly, we are entitled to discover the status of the clients at present and not simply re-cycled lists from prior litigation.  There is no answer to that question from the discovery responses on the clients, and therefore, we request that BSI update its discovery.

Moreover, in addition to receiving evidence of payment and documents evidencing payments, we are entitled to know which live human beings or corporate entities are customers or clients and *know* that they are customers or clients.  For example, Mr. Peter Wagner is listed as a client or customer or person receiving service, but numerous Declarations of Paul Wagner state that Peter abandoned service long ago.  If he abandoned his account, why does BSI list him as a client?

Finally, BSI is fond of throwing around numbers of "clients" or "customers", but has never, to date, identified who are these "clients" or "customers" in document productions.  Moreover, we do not know how these numbers were calculated.  Is BSI counting every employee at St. Luke's House as a "customer?"

## IV.    Other Issues.

1.    The recent Reply in support of the motion for protective order as James Wagner and Hypertouch states that the Court has granted the Motion in part as relating to the Rule 30(b)(6) request.  On what categories of the 30(b)(6) request has the Court granted the Motion?  I am attaching a reprint of the 30(b)(6) categories for Hypertouch,

---

[3] This communication with Keivan Khalachi was withheld from production by BSI, and thus, we request all Khalachi communications including those from Keivan@khalachi.com.

Inc. together with appropriate strike-throughs on what has been narrowed in our view. We welcome your view and would like to reach a stipulation on what is appropriate.

     2.     The Court ordered that the deposition of Steven Wagner be taken. Will BSI be objecting to the service of a subpoena?

     3.     Steven Wagner long ago lodged objections to the subpoena for documents served upon him. That subpoena sought relevant documents relating to Mr. Wagner's status as a World Bank employee, as well as a purported in-house counsel for BSI. I would like to meet and confer on those objections. Part of the objections were that the subpoena was abusive and irrelevant. Another part of the objections were that Mr. Wagner was immune from discovery as a World Bank employee.

As to the first part of the objection, I believe that the Court has already ruled on the issue. First, the Court held that the deposition could be taken, and second, the Court observed as follows:

     MR. RING: Your Honor, if I may, Steve Wagner works at
23 the World Bank. His employer has been subpoenaed. They want
24 his employer to produce all kinds of records about his
25 activities.
1 THE COURT: I don't know what Steve Wagner's role is
2 in all this.
3 MR. RING: He has been counsel to his brothers. He
4 has served as legal counsel on more or less an informal basis.
5 THE COURT: He's a full-time employee of the World
6 Bank, but he's legal counsel to the corporation?
7 MR. RING: Well, within the family. I mean, he's an
8 attorney and he's a sharp individual.
9 MR. SAUNDERS: We haven't sent a subpoena to World
10 Bank. We've served subpoenas on him, because we want to know
11 his role. We believe Steve Wagner plays a role meeting with the
12 family members to decide how to move this e-mail and how to
13 protect it. They've asserted attorney/client privilege as to
14 communications with him in the *Kraft* litigation. There's been
15 issues about whether he really functions as an attorney or not.
16 He's in this, and now they run in and say, oh, don't ask me any
17 questions.
18 THE COURT: There's no -- but you haven't served a
19 subpoena on World Bank, and you don't intend to?
20 MR. RING: I misunderstood. The subpoena was served
21 on Steve Wagner, not on the World bank.
22 MR. STEVE WAGNER: At the World Bank asking for my
23 employment contract at the World Bank.
24 THE COURT: You were served at the World Bank.
25 MR. STEVE WAGNER: I was served at World Bank asking

1 for my employment contract at the World Bank.
2 THE COURT: *It may preclude you from rendering other*
3 *services. I suspect that's what they're after. It may preclude*
4 *you from doing anything other than working full-time for the*
5 *bank and that's a part of their argument, I suppose, about the*
6 *bona fides of your whole operation. I don't know. I mean, it's*
7 *not unreasonable to ask about your contact with the bank*, but
8 you don't have to go to the employer to do that, Mr. Saunders.

As to the second part of the objection, we believe that Mr. Wagner misreads relevant law because while one is arguably immune for actions taken within the scope of his/her employment with IFC/World Bank group, the legal services provided to BSI are clearly outside the scope of that employment and may even be prohibited under Mr. Wagner's employment contract.

Sincerely,

/s Sanford M. Saunders, Jr.

Sanford M. Saunders, Jr.

Enclosure
cc:     Kenneth A. Horky, Esq.
        Nicoleta Burlacu, Esq.
        John L. McManus, Esq.

1.    ~~Hypertouch, Inc.'s ("Hypertouch") role in the research for, generation of,~~ ~~edits to, and propounding of the Subpoenas that are the subject of the Motion to Dismiss~~ ~~for Fraud Upon the Court ("Motion to Dismiss") set for hearing on November 29, 2010~~ ~~and the other allegations of the Motion to Dismiss.~~

2.    Hypertouch's alleged status as an "interactive computer service provider" or "interactive computer service" as asserted in the Amended Complaint.

3.    ~~All alleged false and deceptive subject lines, "from" lines, registered~~ ~~domain names, information about origin or in the transmission path, information in the~~ ~~message body, information in the opt-out lines, information in the sender identification~~ ~~information, forged mailserver information, false HELO/EHLO parameters in the 68,300~~ ~~E-MAILS AT ISSUE and the superseding additional E-Mails At Issue (collectively, the~~ ~~"E-Mails At Issue"), including the violations in the Tables of Violations and Spreadsheets~~ ~~of Violations provided by BSI.~~

4.    ~~The allegations that World Avenue USA, LLC ("WAUSA") and World~~ ~~Avenue Holdings, LLC ("Holdings") or others initiated, conspired to initiate, or assisted~~ ~~in the transmission of any or all of the E-Mails At Issue.~~

5.    ~~The assertions that WAUSA and Holdings knew, prior to or at the time of~~ ~~their transmission, that any of the E-Mails At Issue contained purported violations of law.~~

6.    Whether E-Mails At Issue were unsolicited and not consented to by BSI, and BSI's express or implied consent to receive the E-Mails At Issue.

7.    Alleged ownership, configuration, creation, management, use and deletion of the recipient e-mail addresses and domain names found in the E-Mails At Issue,

including the alleged state of residency, including Maryland, for the person(s) alleged to own or hold each recipient email addresses.

8.      ~~Damages sustained by Beyond Systems, Inc. ("BSI") or Hypertouch as a result of the E-Mails At Issue.~~

9.      ~~Allegations that the E-Mails At Issue were sent by MailCompanyX, Sebastian Barale, Alan Ralsky, Scott Richter, Opt-In Real Big, MediaBreakaway, AccelerateBiz, the HQ spammer or any other alleged affiliate marketer of any defendant named in this case or named in any version of any amended complaint ever provided by BSI to Defendants.~~

10.     ~~Any settlement or proposed settlement with MailCompanyX, Sebastian Barale, Internet Endeavours, or any related company.~~

11.     ~~The origin and source of transmission of any or all of the E-Mails At Issue.~~

12.     All IP Addresses assigned to, owned, controlled, or used by BSI or Hypertouch in any capacity, including but not limited to those assigned to BSI by Verizon, Speakeasy, Comcast and Megapath, including 66.88.123.229, 66.93.97.100, 67.115.175.254,       68.120.0.0-68.127.255.255,       68.127.102.0-68.127.103.255, 69.33.19.128–69.33.19.192, 71.126.162.32- 71.126.162.47, 74.95.0.24  -  74.95.0.31, 75.16.30.104-75.16.30.111,       71.126.148.128–71.126.148.143,        141.156.133.77, 141.156.131.164, 141.156.133.197, and BSI's compliance and/or non-compliance with the terms and conditions, or any other policy, of any of BSI's upstream Internet service providers or providers of bandwidth services, including but not limited to Verizon, Speakeasy, Comcast, and Megapath.

13.     The lawful zoning, regulation, and oversight of BSI's locations, and the locus of each of BSI's servers and other computer equipment, and BSI's efforts to comply with same.

14.     The purpose, interplay and networking of computer systems, including but not limited to web servers, email servers, DNS servers and data backup servers, between Hypertouch, Inc. and BSI.

15.     The level of administrative access, remote access, or other access BSI has to Hypertouch servers and computer equipment and the level of administrative access, remote access, or other access Hypertouch has to BSI servers and computer equipment, and vice-versa.

16.     The operation of any business from and the maintenance of any BSI or Hypertouch servers (at any time) at 1612 Sherwood Road, Silver Spring, Maryland 20902; 417 Oak Grove Avenue, Apartment A, Menlo Park, California 94025-3246; 1837 R Street N.W., Washington, D.C. 20009; 9501 Anchorage Place, Bethesda, Maryland 20817, Suite L15-1000; 11160 Veirs Mill Road, Wheaton, MD 20902; 801 Woodside Rd. #14-235, Redwood City, CA 94061-3758; 359 Port Royal Avenue, Foster City, CA 94404; 235 Belmont Ave, Redwood City, CA 94061; 751 Upland Road, Redwood City, CA 94062, 17 Greenfield Street, Lowell, Massachusetts, and any other address, used, owned, or controlled, by BSI.

17.     The operation, control, and ownership of the following domain names; iepadvocate.com, beyo.us, bihn.org, colorverde.com, colorvivofilms.com, hypertouch.com, stlukeshouse.com, beyond-systems.com, beyondspam.com, beyondspam.net, beyondsys.net, beyondsystems.net, castalia.net, colorvivofilms.net,

dceventslist.com, latindancer.com, hypertouch.com, linkcenter.net, safemailbox.com, safemailbox.net, sherwoodroad.com, stockgard.com, stopbrowserwise.com, stopxupiter.com, videocastle.com, videofeast.com, videopalette.com, wepa.net, bihn.com, brianmangino.com, hasgreatfood.com, has-great-food.com, hasit.com, has-it.com, hoadley.org, hyperbackup.com, hypertouch.net, hypertouch.org, ibismed.com, jasonvenner.com, katka-steve.com, keewon.org, sticksoftware.com, matthewmcqueen.com, metrikproperties.com, mibed.com, motiongranted.com, ohcopyboy.com, peterwagner.com, peterwagner.org, princehotelhanoi.com, prontolabels.com, reasonabledoubt.com, rehabrobotics.org, ringlaw.us, smaby.org, susan-jaime.us, vassallo.org, vietnamforum.com, ostendarp.org, soohee.net and ryanfitzgerald.org, yelvertonforcongress.com, and any other domain BSI or Hypertouch have provided services to, owned, controlled, registered or used by BSI or Hypertouch, in whole or in part.

18.    The actions taken by Hypertouch to prevent its receipt of unsolicited electronic mails including blacklisting, spam software, anti-spam software (SpamAssassin, PolluStop, Sambar, Cloudmark, etc.), filtering, or other methods.

19.    The actions taken by BSI, Hypertouch, Joe Wagner, Steve Wagner or Paul Wagner to enroll, sign up for, or provide any personal identifying information -- whether complete, incomplete, real or otherwise for alleged "testing" -- of any internet web site.

20.    The actions taken by BSI, Hypertouch, Joe Wagner, Steve Wagner or Paul Wagner to attract, collect, forward and harvest electronic mail.

21.    The "game plan", strategy, plan, discussion or plan of action between Paul, Joseph, and/or Steven Wagner and/or others to initiate any litigation over unsolicited e-

mails, including the E-Mails At Issue in this case and any plans to sue more than once over any or all of such E-Mails At Issue.

22.    All reasons why prior to February of 2008 Hypertouch did not save all content, attachments, and embedded content in all e-mails, and why after February 2008 BSI changed this "policy".

23.    The testing and analysis by Hypertouch of the E-Mails At Issue including all click-throughs or source code analyses, or any other testing or analysis by BSI.

24.    The person or persons responsible for the design and HTML source code for any web pages that exist now or in the past on; iepadvocate.com, beyo.us, bihn.org, colorverde.com, colorvivofilms.com, hypertouch.com, stlukeshouse.com, beyond-systems.com, beyondspam.com, beyondspam.net, beyondsys.net, beyondsystems.net, castalia.net, colorvivofilms.net, dceventslist.com, latindancer.com, legal.hypertouch.com, linkcenter.net, safemailbox.com, safemailbox.net, sherwoodroad.com, stockgard.com, stopbrowserwise.com, stopxupiter.com, videocastle.com, videofeast.com, videopalette.com, wepa.net, bihn.com, brianmangino.com, hasgreatfood.com, has-great-food.com, hasit.com, has-it.com, hoadley.org, hyperbackup.com, hypertouch.net, hypertouch.org, ibismed.com, jasonvenner.com, katka-steve.com, keewon.org, sticksoftware.com, matthewmcqueen.com, metrikproperties.com, mibed.com, motiongranted.com, ohcopyboy.com, peterwagner.com, peterwagner.org, princehotelhanoi.com, prontolabels.com, reasonabledoubt.com, rehabrobotics.org, ringlaw.us, smaby.org, susan-jaime.us, vassallo.org, vietnamforum.com, ostendarp.org, yelvertonforcongress.com                                      ryanfitzgerald.org, http://www.soohee.net/correa.hypertouch.com/,

http://www.soohee.net/www.louisianataxfree.com/,

http://www.soohee.net/www.phamily.com/,        http://www.soohee.net/www.isdg.org/,

http://www.soohee.net/www.lacasadelasguayaberas.com/,

http://www.soohee.net/www.endovasculardoc.com/,

http://www.soohee.net/www.4realsoftware.com/ and any other URL, domain, sub-domain

or host name BSI has provided services to, owned, controlled or used by BSI or contains

any email addresses purportedly owned and operated by BSI, in whole or in part.

     25.    The Terms of Service documents, Privacy Policies, Uptime Policies or

Acceptable Use Policies any BSI customer must execute, sign, adhere to or is otherwise

bound to as part of the alleged services provided to the customer by BSI.

     26.    The business operations or practices of Hypertouch and BSI, whether

routine and customary or specialized to the needs of any particular customer, including

the existence of any customers, and knowledge by any customers that each such customer

knew and agreed to be customers of BSI.

     27.    The business addresses and principal offices used by Hypertouch and BSI

and the exact nature of operations by BSI at each such business address and principal

offices.

     28.    Each computer-related service rendered to each alleged claimed customer

of Hypertouch or BSI, including the Prince Hanoi Hotel I, II, and III, Pronto Labels,

Colorvivo Films, Achim Krebs, Laura Elena Cordero, Flybuddies, Exhibits, Inc., IBM,

Motorola, St. Luke's House, Keivan Khalachi, Barcroft Human Power Vehicles, C3 Stats,

Bonafacio Yap, Boxorox, NEIT Solutions, John Evans, Young Woman's Christian Home,

Hypertouch, Inc., Peter Wagner, Diane Wagner, Steve Wagner, Dr. William J. Wagner,

Lisa Fitzgerald Wagner, NASD, FINRA, Alexander Feshenko, Vietway.net, Stephen H. Ring, Brian Mangino, Julienne Correa, Machiel Van Der Loos, Henrik Van Der Loos, Matthew McQueen, Jason Venner, Timothy Walton, Hal Lonhart, Metrik Properties, Jaime Vargas, Jennifer Hector, Stick Software, Andrea Danko-Koenig, Katerina Vlckova a/k/a Katka Wagner, Andrea Hoadley, Keewon and Ben Haller, Keith Buffo, Michael Whitley, Niels Smaby, Ryan Fitzgerald, Phamily.com, Vietnam Forum Foundation, Rehabilitation Robotics, Stanford University, Rebeka Brady, Andrea Bihn, the Vassallo Family, Tenon Intersystems, and Vida Ghaffari.

29.     ~~Rendering of the images in the E-Mails At Issue, and all tampering of or with the E-Mails At Issue.~~

30.     ~~All actions taken by Hypertouch to investigate the Emails At Issue as to the complete nature and extent of specific conduct committed by World Avenue in connection with each such email for the purpose of bringing this action and to respond to discovery.~~

31.     The specific components of all of Hypertouch's and BSI's litigation and non-litigation related income year by year from 2000 to present (except for confidential/privileged information about BSI's and Hypertouch's litigation/settlements).

32.     The other lawsuits filed by BSI, Hypertouch, Joseph Wagner, and Paul Wagner including all lawsuits in which e-mails that are part of the E-Mails At Issue were asserted in such litigation or all lawsuits in which actual or other damages asserted by BSI in this case were asserted in such litigation.

~~33.     The existence of personal jurisdiction over Holdings, including the commission of a tort by Holdings in Maryland or the conspiracy to commit a tort in Maryland by Holdings.~~

33.     All Expert Reports and any disputes with any of the contents of any of Defendants' Expert Reports.