**IN THE U.S. DISTRICT COURT FOR MARYLAND,
SOUTHERN DIVISION**

BEYOND SYSTEMS, INC.            )
                                )
    Plaintiff                   )
    v.                          )        Case No. PJM 08 cv 0921
                                )
WORLD AVENUE USA, LLC, et al. )
    Defendants                  )
_____ )

**DEFENDANT WORLD AVENUE USA, LLC'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO COMPEL COMPLETE PRODUCTION
OF DOCUMENTS FROM HYPERTOUCH, INC. RESPONSIVE TO
<u>FIRST REQUEST FOR PRODUCTION OF DOCUMENTS</u>**

Defendant/Third Party Plaintiff, WORLD AVENUE USA, LLC ("WAUSA"), hereby

submits its Memorandum of Points and Authorities in Support of its Motion to Compel Complete

Production of Documents Responsive to First Request for Production from Third Party

Defendant, HYPERTOUCH, INC. ("Hypertouch"), as a result of its failure to respond

completely to WAUSA's First Request for Production of Documents.   In support thereof,

WAUSA states:[1]

## I.        INTRODUCTION.

The background of Beyond Systems, Inc.'s ("BSI") action against WAUSA for in excess

of $100 million in alleged statutory damages for purported unsolicited commercial emails

("UCE"), and WAUSA's defense that BSI is not a *bona fide* Maryland resident, is not a *bona

fide* interactive computer service provider, and that it conspired with Hypertouch, BSI President,

---

[1] WAUSA has made a herculean effort to resolve the subject matter of this Motion with counsel
for Hypertouch, but Hypertouch has failed to produce the responsive documents and to confer in
an appropriate manner.   *See* Local Rule 104 Certification, attached as Exhibit ("Ex.") 1.   In this
Motion, WAUSA raises only issues pertinent to the Three Trial Issues, and defers on the
remaining issues.

Paul Wagner's brother, James Joseph Wagner ("Wagner"), and other members and friends of the Wagner family to funnel hundreds of thousands of e-mails to BSI for the very purpose of manufacturing spam litigation, is well-known to this Court and WAUSA will avoid repeating it. This Motion is an effort to compel the production of documents relevant to the August Trial that were first requested in February 2010, and which Hypertouch has continually refused to provide since that time. Hypertouch's objections to the First Request for Production should be overruled, and Hypertouch should be compelled to produce responsive documents. The responses subject to this Motion are material to the three August Trial issues.

## II.      PROCEDURAL BACKGROUND.

WAUSA filed the Third Party Complaint against Hypertouch twenty (20) months ago and perfected service of process on August 21, 2009. *See* DE 86, 101-102. Hypertouch wasted this Court's time with a Motion to Quash Service filed on September 10, 2009 claiming a host of absurdities including that process was served on a five-year-old child. *See* DE 106. While the Motion was pending, WAUSA served discovery on Hypertouch on February 18, 2010. *See* Ex. 2. When this Court disposed of Hypertouch's Motion to Quash Service on April 28, 2010, it found Hypertouch's positions "unsupported and … a far cry from the presentation of 'strong and convincing evidence' necessary to prevail on their motion." *See* DE 216, p. 2.

On May 10, 2010, as ordered by the Court, Hypertouch filed an Answer to the Third Party Complaint, at which point the discovery had been pending for 3 months. *See* DE 225-226. Hypertouch continued to ignore its discovery obligations, and on May 13th, WAUSA moved to compel Hypertouch to respond to discovery. *See* DE 230. Approximately a month after filing the court-mandated Answer to the Third Party Complaint, on June 8, 2010, Hypertouch filed a Rule 12(b)(6) Motion to Dismiss. *See* DE 263. That same day, Hypertouch responded to

2

WAUSA's motion to compel, and, for the first time, moved for a stay of the discovery served upon it (4) months earlier. *See* DE 265. The Motion to Stay was predicated on the pendency of the improperly filed Motion to Dismiss.[2]  The Court denied the Motion to Stay on September 29th. *see* DE 432, and simultaneously entered an Order granting WAUSA's Motion to Compel Hypertouch and Wagner to respond to the discovery served upon it in February 2010. *See* DE 431.

In response, Hypertouch filed ***yet another*** Motion for Reconsideration and Renewed Motion for Protective Order and for Stay of Discovery [DE 447-1] rehashing the same arguments rejected in the Court Orders at DE 431 and 432. *See* DE 447-1. WAUSA filed its Opposition on October 27th [DE 470]. The very next morning (October 28th), the Court denied the Motion for Reconsideration. *See* DE 447-1. Despite three Court Orders compelling it to respond to discovery at DE 431, 432, and 472, Hypertouch still failed to respond to the discovery. At that

---

[2] Hypertouch never should have filed the motion to dismiss because the Court ordered to Answer and had waived the right to file any other responsive motion when it filed what amounted to a Rule 12(b)(5) motion to dismiss for insufficient service of process without simultaneously moving to dismiss. *See* Rule 12(b)(5), (6) & Rule 12(b), Fed. R. Civ. P. ("A motion asserting any of these defenses must be made ***before a pleading*** if a responsive pleading is allowed") (emphasis added).

3

time[3] -- if not six months earlier as pointed out above -- Hypertouch waived all objections to the

discovery.  Despite three Court Orders compelling it to do so [DE 431-432, 472], Hypertouch

still failed to respond to the discovery for another month -- at which point WAUSA advised that

it would be filing a Motion for Contempt.  *See* Ex. 3.  Documents were produced by Hypertouch

and Wagner for the first time on November 15, 2010 -- nine (9) full months and three Court

Orders after the discovery was served.  *See* Ex. 4.  WAUSA's good faith efforts began

immediately thereafter.  *See* Ex. 1.

### III.    SUMMARY OF ARGUMENT.

Hypertouch's objections should be overruled and Hypertouch should be compelled to

produce responsive documents and designate which documents are responsive to particular

Requests of the Request for Production.  First, Hypertouch's objections were all waived.  *See*

footnote 3, *supra*.  Second, Hypertouch's General Objections are meritless and should be

---

[3] *Zornes v. Specialty Indus., Inc.*, 166 F.3d 1212, 1998 WL 886997, at *1, *2 & fn. 3 (4th Cir. 1998) (unpublished) (affirming dismissal of case with prejudice for discovery violations where Magistrate Judge had held that failure to timely respond to discovery requests constituted a waiver of any objections that plaintiff had to any of the requests); *Mezu v. Morgan State Univ.*, 269 F.R.D. 565 (D. Md. Oct. 22, 2010) (holding that assertion of improperly-raised objections to discovery requests unsupported by particularized facts waived all such objections); *Washington D.C. Cement Masons Welfare Fund v. Rapid Response Constr.*, Case No. WMN-08-3434, 2009 WL 2578986, at *1, *2 (D. Md. 2009) (holding that defendants waived discovery objections to request for production where discovery objections were due on May 14, 2009, but the responses were not served until May 21, 2009, and denying motion for extension of time to serve discovery responses, *nunc pro tunc*); *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 356 (D. Md. 2008) (holding that the failure to object with particularity to a document request waives the objection); *Sabol v. Brooks*, 469 F. Supp.2d 324 (D. Md. 2006) ("Under Rule 34, failure to make particularized objections to document requests constitutes a waiver of those objections"); *Hall v. Sullivan*, 231 F.R.D. 468, 470 (D. Md. 2005) (holding that party responding to a discovery request who fails to assert specific, non-boilerplate and particularized objections waives the objections); *Marens v. Carrabba's Italian Grill, Inc.*, 196 F.R.D. 35, 38 (D. Md. 2000) (holding that a party responding to a discovery request who fails to allege specific facts showing the nature and extent of the burden or who asserts a privilege without supporting it, waives the objection) (internal citations and quotations omitted);  Fed. R. Civ. P. 34(b).

4

overruled, and Hypertouch should be compelled to produce any responsive documents withheld by reason of the objections.  Third, Hypertouch's specific objections to Requests 1, 4-6, and 9-11, 12(a)-(b), 13-15 are similarly meritless and should be overruled, and Hypertouch should be compelled to produce documents responsive  thereto.

## IV.   ARGUMENT.

### A.   Hypertouch's General Objections Should Be Overruled.

Hypertouch's objection to the time frame of the First Request should be overruled.  In Paragraph 6 of the Instructions, WAUSA specified that:  "Unless otherwise stated, the time frame is from January 1, 1997 to present."  Hypertouch objected to Paragraph 6 of the Instructions "to the extent they call for discovery for a time period prior to 2004."  *See* Ex. 4, p. 3, ¶ 3.  This Court has already held that a time period of 2000 to present is a reasonable time period.  *See* excerpt of February 16, 2011 hearing, p. 72, line 25-p. 73, line 1-2, attached as Ex. 5 ("Requiring the plaintiff to produce financial records from January of 2000 in my estimation is not unreasonable").  The time period of January 1, 1997 to present is even more appropriate because it was in 1997 that Hypertouch claims that BSI registered the domain name hypertouch.com in BSI's name.  Hypertouch.com is the primary domain name concerning which BSI and Hypertouch bring their litigation:  BSI in the capacity as the purported "owner" of the domain name and an interactive computer service provider, and Hypertouch in its capacity as an interactive computer service provider for BSI.  The purported ownership by *BSI* of *Hypertouch's*

5

trademarked name, Hypertouch™, in the domain name, hypertouch.com[4] although that domain is hosted exclusively on Hypertouch servers and the exclusive technical contacts for the domain are Hypertouch or Wagner, is relevant to the Third Trial Issue, which is "the nature of the relationship" between Hypertouch and BSI. *See* DE 544, p. 2, ¶ 1.

Hypertouch's objection to the overbreadth and undue burden imposed by the Request should be overruled. In Paragraph 2, Hypertouch objected "to the Instructions to the extent they are vague, ambiguous, overly broad, unduly burdensome, oppressive, and/or not reasonably calculated to lead to the discovery of admissible evidence." *See* Ex. 4, p. 2, ¶ 2. However, Hypertouch did not support its General Objections with any record evidence of the purported burden, and thus, the General Objection should be overruled. General objections to discovery requests, *e.g.*, overbroad, vague, ambiguous, and unduly burdensome, are improper because they are not sufficiently specific to allow a court to ascertain the objectionable character of discovery requests, nor does a general objection fulfill a party's burden to explain its objection.[5] Hypertouch, as the party resisting discovery, must show specifically how each document request is deficient based upon each asserted objection, *e.g.*, what extraordinary effort is required to respond to an interrogatory designated "overbroad" or "unduly burdensome." *See* Local Rules, Discovery Guideline 10(e). This Court previously rejected similar general objections raised by BSI. Specifically, during the oral argument on BSI's Motion for

---

[4] The addition of a .com to a domain name that contains a trademark is a distinction without a difference under the Lanham Act. Both are equally entitled to the protection of the same trademark under the Lanham Act. 15 U.S.C. § 1125(d)(1)(A)(i)(I); *Virtual Works, Inc. v. Volkswagen of America, Inc.*, 238 F.3d 264, 269 (4th Cir. 2001) (protecting vw.net based on VW mark); *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1055 (9th Cir. 1999) (protecting moviebuff.com based on Moviebuff mark).

[5] *See* cases cited in footnote 3, *supra.; see also Burns v. Imagine Films Entertainment, Inc.*, 164 F.R.D. 589, 592-93 (W.D.N.Y. 1996); *Chubb Integrated Sys. Ltd. v. National Bank of Washington*, 103 F.R.D. 52, 58 (D.D.C. 1984).

Reconsideration on WAUSA's Motion to Compel Complete Answers to First Set of

Interrogatories, Magistrate Judge Charles B. Day stated:

> 21. The objections are boilerplate and most of them are
> 22. nonapplicable, objections such as "vague" or "ambiguous," or
> 23. whether it's burdensome with no supporting affidavit,
> 24. unspecified violations of plaintiff's right to privacy by rule,
> 25. law or regulation, objections about something being duplicative,
> 1. the assertions of attorney-client work product and other
> 2. privileges, which were all waived by disclosure in the Kraft
> 3. case, other agreements with third parties but no proffer of such
> 4. agreements being made.

Feb. 16, 2011 Hearing Transcr. at pp. 73:21-25; 74:1-4, attached hereto as Ex. 6; *accord* DE 441,

444 (granting motions to compel on WAUSA's Fourth Request for Production and Third Set of

Interrogatories).

### B.   Hypertouch's Objections To Requests 1 and 4 Relating to Hypertouch's Litigation Should Be Overruled.

#### 1.   WAUSA's Requests 1 and 4 and HYPERTOUCH'S Response

1. All documents reflecting communications between you or James Joseph Wagner and Paul Wagner or BSI or anyone else relating to the filing of this or any other lawsuit, claims against World Avenue, or the EMAILS AT ISSUE.

**HYPERTOUCH'S OBJECTIONS AND RESPONSES:**

Hypertouch objects to the use of the word "reflecting" as vague and undefined, while definitions have been stated for other words that could have been used in this request. Hypertouch objects to the extent the request seeks information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, or any other doctrine or privilege.

Subject to these objections, and without waiving them, Hypertouch will produce non-privileged documents.

4. A copy of all documents concerning all lawsuits that you or James Joseph Wagner have brought concerning commercial e-mail from 1997 to present.

**HYPERTOUCH'S OBJECTIONS AND RESPONSES:**
Hypertouch objects on the grounds that the request is not reasonably tailored to lead to the discovery of admissible evidence. Hypertouch further objects to the

7

extent the documents sought have already been produced in discovery. Hypertouch objects to the extent the request seeks information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, or any other doctrine or privilege. As an example of the volume of documents involved: "all documents" in the Azoogle case would include almost 400,000 emails. "All documents" in the ValueClick case would be 45,000 emails, and over 30,000 pages of interrogatory responses.

Subject to these objections, and without waiving them, Hypertouch is willing produce representative, non-privileged documents pursuant to such terms as counsel may agree upon.

## 2. **Hypertouch Should Be Compelled To Produce Discovery Responsive to Requests 1 and 4**

Although Requests 1 and 4 are all relevant to the Third Issue set forth for the August 2011 trial, no complete discovery has been provided. *First*, there is no Privilege Log to reflect Hypertouch's withholding of information on the basis of attorney-client, work product, or "other doctrine or privilege"[6]  *See* Ex. 4, p. 5-6, ¶¶ 1, 4.   In this District, a party has a duty to particularize its claims of privilege. *Equal Rights Center v. Lion Gables Residential Trust*, Case No. DKC 07-2358, 2010 WL 2483613, at *1, *6 (D. Md. June 15, 2010) (Chasanow, J.); *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 264 (D. Md. 2008) (Grimm, J.)  Failure to provide a Privilege Log violates Rule 26(b)(5) and Discovery Guideline 10(d) of the Local Rules and waives the privilege.  *See* Fed. R. Civ. P. 26(b)(5); Local Rules, Discovery Guideline 10(d); *Susko v. City of Weirton*, Case No. 5:-09cv1, 2010 WL 2521423, at *1, *2 (N.D.W.V. June 21, 2010) ("The plaintiff, however, never supplied a privilege log to allow the magistrate judge to

_____

[6] BSI has not identified the specific privilege or privacy rights applicable to a specific responsive fact, the requisite facts to establish the asserted privilege, or the nexus between the right and the responsive information.  *See* Fed. R. Civ. P. 26(b)(5); Local Rules, Discovery Guideline 10(d).  Moreover, in the *Kraft* Action, the Court has limited any "common interest privilege" to "privileged communications  occurring between December 1, 2004 and May 30, 2005, regarding the litigation against KWU and Gevalia, are also protected from discovery under the common interest rule."  *See Beyond Systems, Inc. v. Kraft Foods, Inc.*, Civil Action No. PJM-08-0409 ("*Kraft* Action"), DE 344.

8

asses the privilege claims, as required by Federal Rule of Civil Procedure 26(b)(5) … The plaintiff's objection, therefore, is improper.").  Thus, Hypertouch has waived claim of privilege regarding documents responsive to Requests 1 and 4, and the documents should be produced.

*Second*, the Requests are clearly relevant.  With regard to Request 4 on the prior litigation -- this is at the heart of the upcoming trial, which concerns whether BSI and its *alter ego*, Hypertouch, are professional plaintiffs masquerading as internet service providers.  *See* Ex. 11, *infra*., Transcript of November 29, 2010 hearing (THE COURT:  "Let's see when you put your best case forward to a trier of fact whether they agree . . .that Mr. Joe Wagner, in fact, is doing anything other than manufacturing or sending these e-mails to his brother to allow these suits to be brought").  Thus, the objection of relevance is without merit.

*Third*, because this is Hypertouch's first production, its objection that "the documents sought have already been produced in discovery" is nonsensical.  *See* Ex. 4, p. 6, ¶ 4.  It is no objection to Hypertouch if documents may have been produced in other litigation or by BSI; Hypertouch has an obligation to produce in this case.  To the extent that Hypertouch has claimed to have produced these documents *in this case*, it has failed to comply with Rule 34 by identifying which documents are responsive.  Rule 34 requires that the documents be produced "in the usual course of business or must organize and label them to correspond to the categories in the request."  *See* Rule 34(b)(2)(E)(i).  BSI has, in the past, failed to comply with this dictate. It is not sufficient to point to a mountain of documents and state that said documents are responsive to several of the requests for production.  Rule 34(b)(2)(E)(i) means what it says:  the documents themselves must be organized and labeled to correspond to the categories in the Request. *See Porreca v. Mitchell L. Morgan Management, Inc.*, Case No. JLM 08-1924, 2009 WL 400626, at *1, *3 (D. Md. Feb. 13, 2009) (Motz, J.) ("In Plaintiffs' response to Defendants'

requests for document production, rather than organizing and labeling the documents to correspond to the categories in the request as required by Rule 34(b)(2)(E)(I) of the Federal Rules of Civil Procedure, they merely respond 'see attached documents' for every request, even when there are no corresponding documents attached"); *T.N. Taube Corp. v. Marine Midland Mortgage Corp.*, 136 F.R.D. 449, 456 (W.D.N.C. 1991) ("Here, Defendant obviously has the ability to inform Plaintiff which of the produced documents respond to particular requests for production….As such the Court believes the purposes of discovery, and basic considerations of fairness, require Defendant to organize the documents produced on 1 October 1990 in a manner clearly indicating which of these documents respond to Plaintiff's specific requests for production"); *Frontier-Kemper Constructors, Inc. v. Elk Run Coal Co., Inc.*, 246 F.R.D. 522, 528 (S.D.W.V. 2007) ("There is no indication that Plaintiff produced its Rule 26(a)(1) disclosures as they were kept in the usual course of business or that they were otherwise organized and labeled"); Rule 34(b)(2)(E)(i), Fed. R. Civ. P. (amended effective 2006) (providing that ESI be produced in the ordinary course or labeled to correspond to the categories of the discovery request). Thus, the Court should overrule this objection and order the production of documents responsive to this Request, as well as ordering that the documents be labeled to correspond to the categories of the Request and that Hypertouch respond *which* of the sixty (60) cases it *does* and *does* not have transcripts and records.

*Fourth*, with regard to Hypertouch's objection that this is overbroad (Ex. 4, p. 6, ¶ 4), the concern is easily cured by the production of the pleadings of record in the cases at issue, together with responses to document requests and specifically the Interrogatory Answers in each of the cases, expert reports and attachments, and affidavits and declarations by Joseph Wagner.

FTL 108,034,141v4 4-26-11

### C.   Hypertouch Should Be Compelled To Produce The Transcripts Responsive To Request 5.

#### 1.   WAUSA's Request 5 and Third Party Defendants' Response

5. A copy of each transcript of testimony given by you in your corporate capacity or by James Joseph Wagner in deposition, arbitration, trial, or hearing in all lawsuits that you or James Joseph Wagner have brought concerning commercial e-mail from 1997 to present.

HYPERTOUCH'S OBJECTIONS AND RESPONSES:

Hypertouch objects on the grounds that the request is not reasonably tailored to lead to the discovery of admissible evidence. Hypertouch further objects to the extent the documents sought have already been produced in discovery. Hypertouch objects to the extent the request seeks information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, or any other doctrine or privilege. Hypertouch objects to the extent it requests documents for non-Hypertouch litigation not in Hypertouch's possession Subject to these objections, and without waiving them, Hypertouch will produce non-privileged, non-confidential documents.

#### 2.   Hypertouch Should Be Compelled To Produce Discovery Responsive to Request 5

The most obvious example of Hypertouch's stonewalling of discovery is its refusal to produce transcripts of Joseph Wagner's testimony and other litigation documents. Hypertouch objects on the grounds of privilege, relevance, and prior production. The privilege objection is meritless as Hypertouch does not identify the documents subject to the "attorney-client privilege, attorney work-product doctrine," or identify the "other doctrine or privilege," or produce a competent Privilege Log, which waives the privilege. *See Equal Rights Center*, 2010 WL 2483613, at *6; *Victor Stanley*, 250 F.R.D. at 264; Fed. R. Civ. P. 26(b)(5); Local Rules, Discovery Guideline 10(d); *Susko*, 2010 WL 2521423, at *2.

Clearly, the transcripts are directly relevant to the upcoming limited purpose deposition of Wagner, and will help to streamline questioning to fit within the parameters requested by Wagner and granted by the Court. *See* DE 544, [Trial Order], p. 2, ¶ 3 ("Defendants may depose

11

Joseph Wagner . . . for no more than six (6) hours each").

Hypertouch's objection that the transcripts "have already been produced in discovery" is meritless as this is Hypertouch's first production.  *See* Ex. 4, p. 6, ¶ 5.  WAUSA does not have complete, un-redacted copies of Joseph Wagner's testimony, and only has redacted fragments and bits and pieces of testimony collected from public filings elsewhere.  WAUSA's exhaustive efforts to secure a complete production without having to file this motion are detailed in Exhibit 1. In a letter dated January 14, 2011, Hypertouch stated that it "will continue retrieving them from archives" and "check[ing] archives" and then would "provide more installments as we gather these items," thereby admitting that its production was incomplete.  *See* Ex. 12, pp. 5, 10. WAUSA even provided a listing of the approximately sixty (60) lawsuits in which Hypertouch, Wagner, BSI and Paul Wagner were involved (*see* Ex. 1, ¶¶ 23-24, Ex. C-D), but the complete production was not forthcoming from Hypertouch.  Months of stonewalling delay in providing these materials is inappropriate from a litigant who requested that his deposition be limited in duration.  Because the transcripts are clearly relevant, Hypertouch should be ordered to produce responsive documents and label them to correspond to the Request.  *See* Rule 34(b)(2)(E)(i); *Porreca*, 2009 WL 400626, at *3; *T.N. Taube Corp.,* 136 F.R.D. at 456; *Frontier-Kemper*, 246 F.R.D. at 528.  Hypertouch should be ordered to respond *which* of the sixty (60) cases it *does* and *does* not have transcripts and records, so that WAUSA does not have to guess at whether they exist.

### D.      Hypertouch Should Be Compelled To Produce The Gross Revenue Documents Responsive To Request 6.

### 1.      WAUSA's Request 6 and Hypertouch's Response

6. A copy of all documents reflecting the portion of your annual gross revenues for each year from 2003 to the present which are attributable to settlements or judgments obtained by you and/or James Joseph Wagner during the course of

12

litigation in which you and/or James Joseph Wagner brought any claims related to commercial e-mail.

**HYPERTOUCH'S OBJECTIONS AND RESPONSES:**

Hypertouch objects on the grounds that the request is overbroad ("all documents") and is not reasonably tailored to lead to the discovery of admissible evidence. Hypertouch further objects to the extent the documents sought have already been produced in discovery. Hypertouch objects to the extent the request seeks information protected from disclosure by confidentiality, trade secret, privacy, the attorney-client privilege, attorney work-product doctrine, or any other doctrine or privilege.

Subject to these objections, and without waiving them, Hypertouch is willing to produce non-privileged documents sufficient to identify non-confidential yearly revenues and gross aggregate revenues.

**2.    Hypertouch Should Be Compelled To Produce All Discovery Documents  Responsive to Request 6**

**i.    Hypertouch's Objections Should Be Overruled.**

Hypertouch's objections on the basis of relevance, overbreadth, prior production, and privilege should be overruled.  First, the Request is clearly relevant as the Court has already ruled several times:

Motion GRANTED.  The Maryland statute indicates that an "interactive computer service provider" means an information service, system, or access software provider that provides or enables computer access by multiple users to a computer service.  The statute does not require a minimum number of sales or a degree of profitability.  A nearly identical definition exists under the Florida statute which is also at issue in this case.

While the federal statute applicable in <u>Beyond Systems, Inc. v. Kraft</u>, Civil Action No. PJM-08-409, uses more expansive definitions, it also does not require a minimum number of sales or a degree of profitability.  However, the analysis in <u>Gordon v. Virtumundo</u>, 575 F.3d 1040 (9th Cir. 2009) is instructive on the issue of the discovery of revenue and finances of internet service providers.  The principles found in <u>Gordon</u> are equally applicable to the state-based claims here.  Accordingly, Plaintiff shall provide the requested information.

The period from 2000 to present is equally reasonable given that Plaintiff's claims are dated from 2004 to present.

13

*See* DE 444, pp. 1-2, attached as Ex. 13.   Reconsideration was denied on February 16[th.]   *See*

excerpt of February 16, 2011 hearing, p. 72, line 25-p. 73, line 1-2, attached as Comp. Ex. 5

("Requiring the plaintiff to produce financial records from January of 2000 in my estimation is

not unreasonable"); *see* Ex. 14 [DE 233 in *Kraft* Action] (The information sought by these

interrogatories is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R.

Civ. P. 26(b)(1). . . .The quantification of income derived from litigation endeavors, juxtaposed

with those from the legitimate operation of an internet service provider, may influence the Court

as to the motives of Plaintiff in light of any legislative intent").

Second, Hypertouch's objection based on "confidentiality, trade secret, privacy, the

attorney-client privilege, attorney work-product doctrine, or any other doctrine or privilege" was

long ago waived by its failure to serve a Privilege Log.  *See* Fed. R. Civ. P. 26(b)(5); Local

Rules, Discovery Guideline 10(d); *Susko*, 2010 WL 2521423, at *2.  The Response states that

"Hypertouch is willing to produce non-privileged documents sufficient to identify non-

confidential yearly revenues and gross aggregate revenues."  First, the Court has already ruled on

and rejected the privilege issue in respect of finances and confidentiality in this case and in the

*Kraft* case.  *See* Ex. 13 (DE 444); DE 233 in *Kraft* Action.

### ii.     Hypertouch's Production Is Deficient.

Hypertouch's production in response to Request 6 is deficient.   First, Hypertouch

followed the typical BSI/Hypertouch pattern by re-cycling a document produced in another case

14

that does not apply to the case at issue, nor to the request at issue, nor to the time frame at issue.[7] The document, HYP0014725, HYP-WAUSA-0019469, ███████████████████████ ████████████████████  *See* Exhibit 7.  WAUSA is entitled to a response through the present. In fact, in correspondence dated January 14, 2011, Hypertouch/Wagner promised "[W]e will supplement in accord with the discovery rulings, concerning later recoveries," (*see* Ex. 12, p. 9), but it has failed to do so.

The document also does not define what it means by ████████████████ ████████████████████  *See* Exhibit 7.  ████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████Or something else?  The document does not tell this and is not responsive.

Second, t████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████ █ ████████████████████████████████████████████████

---

[7] BSI followed this same pattern by producing a set of Interrogatory Answers showing its revenues that was unsworn and an Interrogatory Answer given in the *Kraft* Case.  *See* Transcript of February 16, 2011 hearing, p. 72, lines 17-20 ("The Supplement on May 30, 2010, while late, wasn't even sworn, and plaintiff fails to appreciate that the unsigned answers to interrogatories are defective under Federal Rule of Civil Procedure 33 and 37(a)(4)"), attached as Exhibit 5.

*FTL 108,034,141v4 4-26-11*

██████████████████████████████████.[8]

Third, the data shows that Hypertouch has withheld documents from its document production on finances (HYP-WAUSA-0019469). █████████████████████

████████████████████████████████████████████████████

███████████████████. *See* Exhibits 9-10, attached hereto. Given the inconsistency between Hypertouch's *created* summary (Ex. 7) and the actual documents (Exs. 9-10), similar to how this Court ruled for BSI,[9] Hypertouch should be compelled to produce all supporting documents for its revenues and costs *and* all its federal and state tax returns for the years in question.

**E.      Hypertouch Should Be Compelled To Produce Documents Relating to The Forwarding of the E-Mails At Issue In Request 9.**

**1.      <u>WAUSA's Request 9 and Hypertouch's Response</u>**

9. All documents reflecting each of the EMAILS AT ISSUE that were forwarded, mirrored, redirected by Communigate/SIMS RULE or were overflowed to BSI, beyondsystems.net, an account at beyondsystems.net, or any server owned or controlled by BSI, from you.

**HYPERTOUCH'S OBJECTIONS AND RESPONSES:**

---

[8] ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████

[9] At the February 16, 2011 hearing, the Court ruled:

> I'm going to require the tax documents unless you can produce all the documents as required by this document request, which reflect the annual gross revenues for each year from 2003 to present. That's No. 9. And No. 10, the portion of annual gross revenues for each year from 2003 to present attributable to settlements or judgments obtained.

*See* Excerpt of Transcript of February 16, 2011 hearing, p. 52, line 25-p. 53, line 5, attached hereto as Exhibit 5.

*FTL 108,034,141v4 4-26-11*

Hypertouch objects on the grounds that the request is overbroad and is not reasonably tailored to lead to the discovery of admissible evidence. Hypertouch further objects to the extent the documents sought have already been produced in discovery. Hypertouch objects to the extent the request seeks information protected from disclosure by confidentiality, trade secret, privacy, the attorney-client privilege, attorney work-product doctrine, or any other doctrine or privilege. Discovery of server logs as requested here has already been denied by the Court in this action.

Subject to these objections, and without waiving them, Hypertouch will produce non-privileged documents sufficient to show re-direction.

### 2. Hypertouch Should Be Compelled To Produce Discovery Responsive to Request 9

Request 9, which concerns the forwarding, redirection and routing of e-mail, goes to the heart of the Court's comments at the November 29th hearing:

> 18. Let's see when you put your best case forward to a
> 19 trier of fact whether they agree that you've got a bona fide
> 20 residence here, **whether they agree that Mr. Joe Wagner, in fact**,
> 21 **is doing anything other than manufacturing or sending these**
> 22 **e-mails to his brother to allow these suits to be brought**.
> * * * *
> THE COURT: Well, I suppose it probably should,
> 7 shouldn't it? I mean, we're going to see whether you have a
> 8 right to be here at all. That's really what the issue is right
> 9 now. What difference does it make, even if they are involved in
> 10 spam activities, if you don't have a bona fide residence, if
> 11 **you've got somebody who is really, in effect, contributing to**
> 12 **the, quote/unquote, injury that BSI suffers**, you may come back
> 13 with a verdict that says you really don't belong in court at
> 14 all. And so it doesn't matter what they've done. You may have
> 15 to go after them somewhere else. Somebody else will have to go
> 16 after them.

*See* Exhibit 11.

Hypertouch's objections to the Request are meritless. Notwithstanding these instructions, Hypertouch has stood on its objection that "the request is overbroad and not reasonably tailored to lead to the discovery of admissible evidence." *See* Ex. 4, pp. 7-8, ¶ 9. Second, Hypertouch's

objection that "the documents sought have already been produced in discovery" is meritless because they most certainly have not as this is Hypertouch's first discovery production. *Id*. When Hypertouch states that it will produce non-privileged documents to show "re-direction," that is only partially responsive to the Request for Production and those documents, whatever they are, have not been produced. *Id*. WAUSA is entitled to receive exactly what it asked for, particularly given the transcript reference above.

Finally, there is nothing privileged about how Hypertouch routes e-mails from its servers to BSI, and Hypertouch has failed to serve a Privilege Log covering any such documents. Hypertouch's failure to do so waives the privilege. *See Equal Rights Center*, 2010 WL 2483613, at *6; *Victor Stanley*, 250 F.R.D. at 264; Fed. R. Civ. P. 26(b)(5); Local Rules, Discovery Guideline 10(d); *Susko*, 2010 WL 2521423, at *2.

Moreover, to the extent that Hypertouch has claimed to already have produced these documents, it has failed to comply with Rule 34 by identifying which documents are responsive. *See* Rule 34(b)(2)(E)(i); *Porreca*, 2009 WL 400626, at *3; *T.N. Taube Corp.,* 136 F.R.D. at 456; *Frontier-Kemper*, 246 F.R.D. at 528. Thus, the Court should overrule the objections and order the production of documents responsive to this Request, as well as ordering that the documents be labeled to correspond to the categories of the Request.

**F.   Hypertouch Should Be Compelled To Produce Documents Responsive To Request 10.**

**1.   WAUSA's Request 10 and Hypertouch's Response**

10. Documents reflecting all Services provided by Hypertouch to BSI and by BSI to Hypertouch, including service commencement date and contract/agreement and method of payment for Services.

**HYPERTOUCH'S OBJECTIONS AND RESPONSES:**

18

Hypertouch objects on the grounds that the request is overbroad and is not reasonably tailored to lead to the discovery of admissible evidence. Hypertouch further objects to the extent the documents sought have already been produced in discovery. Hypertouch objects to the extent the request seeks information protected from disclosure by confidentiality, trade secret, privacy, the attorney-client privilege, attorney work-product doctrine, or any other doctrine or privilege.

Subject to these objections, and without waiving them, Hypertouch will produce non-privileged documents.

### 2.   Hypertouch Should Be Compelled To Produce Discovery Responsive to Request 10

At the November 29th hearing, the Court placed at the front and center of the focus the relationship between Hypertouch and BSI.  *See* DE 544, p. 2, ¶ 1 (". . . .the nature of the relationship between Plaintiff [BSI] and Third Party Defendant [Hypertouch].").  Request 10 seeks documents going directly to that relationship.  Although Hypertouch produced a few checks dating back to 2000 (HYP-WAUSA-0019348), the documents do not post-date that date to show the nature of the services rendered by and between BSI and Hypertouch.  Bluntly put, no underlying consulting agreements or work papers show what the payments were for.  And while there are a number of e-mails exchanged between James Joseph Wagner and Paul Wagner post-dating this date, nothing shows the nature of the relationship and services rendered, nor the purpose of the services and payments associated therewith.  Nor are there any communications referencing Joe Wagner's forwarding of emails to Paul Wagner, nor their plans to both sue on some or all of those emails, nor their plans to sue various third parties, all of which have emerged in fragmentary and redacted form in this and various other litigation.[10]  All these things are representative of responsive materials that exist and should be produced along with all similar

---

[10] BSI's flouting of two Court Orders entered on October 7, 2010 at DE 441 and on February 16, 2011 at DE 606 by refusing to produce these "Game Plan" documents in complete and unredacted format will be the subject of a Motion against BSI as well.

19

materials.   Further, Hypertouch should be compelled to identify those documents that are responsive to this Request.  Rule 34(b)(2)(E)(i), Fed. R. Civ. P.

### G.   Hypertouch Should Be Compelled To Produce Responsive Documents To Requests 11-14.

#### 1.   WAUSA's Requests 11-14 and Hypertouch's Response

11. All documents concerning the registration, ownership, maintenance, operation, and control of hypertouch.com, from January 1, 1997 to date.

**HYPERTOUCH'S OBJECTIONS AND RESPONSES:**

Hypertouch objects on the grounds that the request is overbroad, nonsensical and is not  reasonably tailored to lead to the discovery of admissible evidence. Hypertouch further objects to the extent the documents sought have already been produced in discovery.

Subject to these objections, and without waiving them, Hypertouch will produce non-privileged documents.

12. All documents reflecting the ownership, possession, maintenance, and operation of the Subject Servers,[11] including, but not limited to:

---

[11] WAUSA defined the "Servers" and "Subject Servers" as:

*Server/Servers*.  "Server" or "Servers" shall mean all Computers dedicated to providing one or more services over a computer network, including but not limited to, Email services, Domain Name Resolution services (DNS services), Web Hosting services (storing and serving web pages), Internet Connectivity services, Database services, Data Backup services, Data Storage services, FTP services, NNTP services and E-commerce services.

*Subject Servers*:  The term "Subject Servers" shall mean the Servers, as defined above, located at 1612 Sherwood Road, Silver Spring, Maryland 20902; 417 Oak Grove Avenue, Apartment A, Menlo Park, California 94025-3246; 1837 R Street N.W., Washington, D.C.; 9501 Anchorage Place, Bethesda, Maryland 20817, Suite L15-1000; 11160 Veirs Mill Road, Wheaton, MD 20902; 801 Woodside Rd. #14-235, Redwood City, CA 94061-3758; 359 Port Royal Avenue, Foster City, CA 94404; 235 Belmont Ave, Redwood City, CA 94061; 751 Upland Road, Redwood City, CA 94062, and any other place where BSI or Hypertouch conduct business.

*See* Ex. 2, p. 6, ¶¶ 14, 16.

*FTL 108,034,141v4 4-26-11*

(a) Documents evidencing the identity of the purchaser of the Subject Servers and documents reflecting that the ownership of the Subject Servers is currently titled in BSI or Hypertouch;

(b) Documents evidencing the Specifications for each Subject Server;

* * * *

**HYPERTOUCH'S OBJECTIONS AND RESPONSES:**

Hypertouch objects on the grounds that the request is overbroad, vague, unintelligible and is not reasonably tailored to lead to the discovery of admissible evidence. Hypertouch further objects to the extent the documents sought have already been produced in discovery.

Hypertouch objects to the extent the request seeks information in the possession of another party[I.e. non-Hypertouch servers at that address] Hypertouch objects to the extent the request seeks information protected from disclosure by confidentiality, trade secret, privacy, the attorney-client privilege, attorney work-product doctrine, or any other doctrine or privilege.

Subject to these objections, and without waiving them, Hypertouch will produce responsive documents sufficient to demonstrate Hypertouch's status as an ISP.

**13.** All documents reflecting ownership, possession, maintenance, and operation of the IP Addresses, including, but not limited to:

(a) Documents evidencing the purchase, delegation and/or ownership of the IP Addresses[12] by Hypertouch; and

(b) Documents evidencing the upstream carrier, date first provisioned for use, and

---

[12] WAUSA defined IP Addresses or Internet Protocol Addresses as:

The "IP Addresses" shall mean one or more of the following Internet Protocol Addresses: 66.88.123.229, 66.93.97.100, 67.115.175.254, 68.120.0.0-68.127.255.255 (68.120.0.0/16), 68.127.102.0.1, 68.127.102.0-68.127.103.255 (68.127.102.0/23), 68.127.102.94, 69.33.19.128-69.33.19.192 (69.33.19.128/26), 69.33.19.128.26, 71.126.162.32-71.126.162.47 (71.126.162.32/28), 71.126.162.32.1, 74.95.0.24 - 74.95.0.31 (74.95.0.24/29), 75.16.30.104.1, 75.16.30.104-75.16.30.111 (75.16.30.104/29), and any others used by Hypertouch.

*See* Ex. 2, p. 5, ¶ 8.

executed service agreements.

**HYPERTOUCH'S OBJECTIONS AND RESPONSES:**

Hypertouch objects on the grounds that the request is overbroad ("all documents"), vague, unintelligible and is not reasonably tailored to lead to the discovery of admissible evidence. Subject to these objections, and without waiving them, Hypertouch will produce sufficient information to show use of IP addresses.

**14.** All documents reflecting ownership, possession, maintenance, and operations of the Domains,[13] and including, but not limited to:

(a) Documents evidencing the purchase, payment for, and title/ownership of the Domains by BSI or Hypertouch;

(b) Documents evidencing the current and past IP Addresses mapped to the Domains as defined by the Zone Files resident on the Hypertouch and/or BSI authoritative primary and secondary DNS Servers; and

---

[13] WAUSA defined "Domains" as:

*Domains/Domain Names.* The "Domains or Domain Names" shall mean one or more of the following domain names domain names, including sub-domains/host names of the below, whether BSI or Hypertouch is acting as the primary mail server or secondary (backup) mail server: iepadvocate.com, beyo.us, bihn.org, colorverde.com, colorvivofilms.com, hypertouch.com, stlukeshouse.com, beyond-systems.com, beyondspam.com, beyondspam.net, beyondsys.net, beyondsystems.net, castalia.net, colorvivofilms.net, dceventslist.com, latindancer.com, legal.hypertouch.com, linkcenter.net, safemailbox.com, safemailbox.net, sherwoodroad.com, stockgard.com, stopbrowserwise.com, stopxupiter.com, videocastle.com, videofeast.com, videopalette.com, wepa.net, bihn.com, brianmangino.com, hasgreatfood.com, has-great-food.com, hasit.com, has-it.com, hoadley.org, hyperbackup.com, hypertouch.net, hypertouch.org, ibismed.com, jasonvenner.com, katka-steve.com, keewon.org, sticksoftware.com, matthewmcqueen.com, metrikproperties.com, mibed.com, motiongranted.com, ohcopyboy.com, peterwagner.com, peterwagner.org, princehotelhanoi.com, prontolabels.com, reasonabledoubt.com, rehabrobotics.org, ringlaw.us, smaby.org, susan-jaime.us, vassallo.org, vietnamforum.com, and ryanfitzgerald.org.

*See* Ex. 2, p. 4, ¶ 5.

22

(c) Documents evidencing the primary email Server, backup email Server and any other Server in use today, or was in use in the past, that is/was assigned to authoritatively process inbound and/or outbound email for the Domains.

**HYPERTOUCH'S OBJECTIONS AND RESPONSES:**

Hypertouch objects on the grounds that the request is overbroad, vague, unintelligible and is not reasonably tailored to lead to the discovery of admissible evidence. Hypertouch further objects to the extent the documents sought have already been produced in discovery. Hypertouch objects to the extent the request seeks information in the possession of another party or is a violation of the privacy of its users.

Subject to these objections, and without waiving them, Hypertouch will produce responsive documents related to domains in the EMAILS AT ISSUE and those sufficient to prove Hypertouch's status as an ISP.

### 2. Third Party Defendants' Response to Requests 11-14 Are Incomplete

Hypertouch's objections to Requests 11 through 14 are without merit. First, the documents sought are relevant. As explained in Section IV.A, *supra*., the documents requested in Request 11 about the domain hypertouch.com are directly relevant to the "nature of the relationship" between Hypertouch and BSI because Hypertouch claims that BSI owns hypertouch.com although Hypertouch owns the trademark Hypertouch™. *See* DE 544, p. 2, ¶ 1. Request 12(a)-(b) and 13 relating to the Servers and the Internet Protocol Addresses are likewise relevant to the "nature of the relationship" between BSI and Hypertouch because the documents would tend to show which of the two companies, or both, purchased, assigned, or used such Servers or IP Addresses. Likewise, Request 14 relating to the Domains is relevant to show the "nature of the relationship" between BSI and Hypertouch because the documents would tend to show the common ownership and/or use of the same Domains.

Second, the objection that the documents have already been produced in discovery is non-sensical because this is Hypertouch's first production and it did not identify where the documents are located. *See* Rule 34(b)(2)(E)(i); *Porreca*, 2009 WL 400626, at *3; *T.N. Taube*

23

*Corp.,* 136 F.R.D. at 456; *Frontier-Kemper*, 246 F.R.D. at 528.

Third, the objections based on privacy are without merit, as Hypertouch placed those relationships at issue, and in any event, Hypertouch waived such objections through its non-service of a Privilege Log. *See Equal Rights Center*, 2010 WL 2483613, at *6; *Victor Stanley*, 250 F.R.D. at 264; Fed. R. Civ. P. 26(b)(5); Local Rules, Discovery Guideline 10(d); *Susko*, 2010 WL 2521423, at *2.

Finally, WAUSA has reviewed the document productions in respect to Requests 11, 12(a)-(b), 13, and 14, and (i) Hypertouch has not designated documents responsive to these requests to enable WAUSA to fully determine the fulsomeness of the production; and (ii) based on the documents provided, the response is incomplete.

**H.     Hypertouch Should Be Compelled To Produce Responsive Documents To Request 15.**

**1.     WAUSA's Requests 15 and Third Party Defendants' Response**

15. All documents relating to the creation, programming and setup of the web pages resident on the Selected Domains[14] including, but not limited to:

(a) The identities of the person(s) who programmed the source code;
(b) All agreements and correspondence relating to the programming of the source code;
(c) All correspondence and communications relating to the purpose of the embedded e-mail addresses in the source code; and
(d) A copy of the http logs for the Servers running the Selected Domains, reflecting non personally identifying information concerning access to the Servers

---

[14] WAUSA defined "Selected Domains" as follows:

> *Selected Domains.* "Selected Domains" shall mean beyondsystems.net, hypertouch.net, metrikproperties.com, senderagreestopay500dollarspermessage.hypertouch.net, katka-steve.com, motiongranted.com, reasonabledoubt.com, bihn.org, rehabrobotics.org, serenitychair.com, and theserenitychair.com.

*See* Ex. 2, p. 6, ¶ 13.

FTL 108,034,141v4 4-26-11

by any user or internet protocol (lP) address.

**HYPERTOUCH'S OBJECTIONS AND RESPONSES:**

Hypertouch objects on the grounds that the request is overbroad, vague, unintelligible and is not reasonably tailored to lead to the discovery of admissible evidence. Hypertouch further objects to the extent the documents sought have already been produced in discovery.

Hypertouch objects to the extent the request seeks information in the possession of another party, equally accessible to the defendants or is a violation of the privacy of its users. Discovery of server logs as requested here has already been denied by the Court in this action.

Subject to these objections, and without waiving them, Hypertouch will produce responsive documents related to domains in the EMAILS AT ISSUE and those sufficient to prove Hypertouch's status as an ISP.

### 2. Hypertouch Should Be Compelled To Produce Discovery Responsive to Request 15

Hypertouch programs and maintains websites that contain specific e-mail addresses embedded in the source code for the purpose of collecting e-mail and suing on them.  These websites contain e-mail addresses invisible on the face of the individual web pages that make up the website, but are embedded in the source code of each web page.  The e-mail collected is either held by Hypertouch, re-transmitted to BSI, or both, for the purpose of filing lawsuits. These include, but are not limited to, the Selected Domains that are the subject of Request 15. This is part of the overall business model of Hypertouch and BSI and documents to show that activity are critical.  Hypertouch has not designated documents responsive to Request 15 and no responsive documents are discernable in the production.  *See* Rule 34(b)(2)(E)(i), Fed. R. Civ. P.

Further, Hypertouch's objections are contradictory.  On one hand, Hypertouch states that the request is unintelligible.  On the other hand, Hypertouch states that documents have already been produced (which they have not).  Although the Court considered "server logs" at the September 23, 2010 hearing, the Court did not rule on the http logs reflecting the hits at the

Selected Domains.  When challenged, Hypertouch could not identify the page and line number of the hearing transcript wherein any ruling to the contrary was made.  *See* Exhibit 1, Exhibit B thereof, p. 13, and Exhibit 12 (excerpt of January 14, 2011 letter).  In fact, just last Saturday, April 23, 2011, BSI attached an incomplete set of http logs for certain domains to an "expert" report from an excluded expert.[15]

Let us finish with a little common sense.  These are Hypertouch's domains.  They are filled with hidden email addresses, and Hypertouch has maintained in court that it is legally required to place them there to comply with some California state law warning persons against sending unsolicited spam.  Putting aside the silliness of that explanation (warnings need not be rendered invisible to the naked eye; indeed they are less effective when so constructed) the fact remains that these are Hypertouch's domains.  Hypertouch surely knows who put these hidden addresses on those domains and who has permitted access to add to or alter their content.  Hypertouch should be required to disclose, for every single hidden address for each and every single domain, who put those addresses there and who has administrative access to those domains.

**WHEREFORE**, Defendant WORLD AVENUE USA, LLC moves this Court for entry of an Order compelling production of all the items sought within a time certain not to exceed ten (10) days from the date of any Order entered hereon, requests sanctions as Hypertouch's objections are spurious, follow a lengthy history of delay and are otherwise without a legally substantial basis, and request such other and further relief as this Court deems appropriate.

---

[15] BSI's flouting of the Court's rulings on February 16, 2011 regarding the exclusion of BSI's experts is the subject of a separate Motion.

Dated: April 26, 2011.

Respectfully submitted,

*Attorneys for World Avenue USA, LLC*

GREENBERG TRAURIG, LLP

___/s/_____

Sanford M. Saunders, Jr., Esq.
USDC, MD #4734
saunderss@gtlaw.com
Nicoleta Burlacu, Esq.
BurlacuN@gtlaw.com
*Admitted Pro Hac Vice*
GREENBERG TRAURIG, LLP
2101 L Street, NW, Suite 1000
Washington, DC 20037
Telephone:  202-331-3100
Facsimile:  202-331-3101

--and--

Kenneth Horky, Esq.
Florida Bar No. 691194
horkyk@gtlaw.com
John L. McManus, Esq.
Florida Bar No. 0119423
mcmanusj@gtlaw.com
*Admitted Pro Hac Vice*
GREENBERG TRAURIG, LLP
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, FL 33301
Telephone: 954-765-0500
Facsimile:  954-765-1477